ORIGINAL

1  JONATHAN E. NUECHTERLEIN
   General Counsel

2  DAMA J. BROWN
   Regional Director

3

4  REID TEPFER
   rtepfer@ftc.gov
   Texas Bar No. 24079444

5  LUIS GALLEGOS
   lgallegos@ftc.gov

6  Oklahoma Bar No. 19098
   Federal Trade Commission

7  1999 Bryan Street, Suite 2150
   Dallas, Texas 75201

8  (214) 979-9395 (Tepfer)
   (214) 979-9383 (Gallegos)
   (214) 953-3079 (fax)

9

10 RAYMOND McKOWN
   rmckown@ftc.gov

11 California Bar No. 150975
   10877 Wilshire Boulevard, Suite 700

12 Los Angeles, California 90024
   (310) 824-4325(voice)
   (310) 824-4380 (fax)

13 Attorneys for Plaintiff Federal Trade Commission

14          UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA

15 FEDERAL TRADE COMMISSION,        Case No. CV15 - 04527-GW

16                Plaintiff,        UNDER SEAL

17         v.                       COMPLAINT FOR PERMANENT
                                    INJUNCTION AND OTHER
18 BUNZAI MEDIA GROUP, INC., a      EQUITABLE RELIEF
   California corporation, also doing
19 business as AuraVie, Miracle Face Kit,
   and Attitude Cosmetics;

20 PINNACLE LOGISTICS, INC., a
   California corporation;

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

FILED
CLERK, U.S. DISTRICT COURT

JUN 16 2015

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1   JONATHAN E. NUECHTERLEIN
    General Counsel
2
    DAMA J. BROWN
3   Regional Director

4   REID TEPFER
    rtepfer@ftc.gov
    Texas Bar No. 24079444
5   LUIS GALLEGOS
    lgallegos@ftc.gov
6   Oklahoma Bar No. 19098
    Federal Trade Commission
7   1999 Bryan Street, Suite 2150
    Dallas, Texas 75201
8   (214) 979-9395 (Tepfer)
    (214) 979-9383 (Gallegos)
    (214) 953-3079 (fax)
9
    RAYMOND McKOWN
10  rmckown@ftc.gov
    California Bar No. 150975
11  10877 Wilshire Boulevard, Suite 700
    Los Angeles, California 90024
12  (310) 824-4325(voice)
    (310) 824-4380 (fax)

LODGED
CLERK, U.S. DISTRICT COURT

JUN 15 2015

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

13  Attorneys for Plaintiff Federal Trade Commission

14      **UNITED STATES DISTRICT COURT**
        **CENTRAL DISTRICT OF CALIFORNIA**

15  **FEDERAL TRADE COMMISSION,**        Case No. CV15 - 04527 -GW(PLAx)

16              Plaintiff,                **UNDER SEAL**

17          v.                            **COMPLAINT FOR PERMANENT**
                                          **INJUNCTION AND OTHER**
18  **BUNZAI MEDIA GROUP, INC.,** a       **EQUITABLE RELIEF**
    California corporation, also doing
19  business as AuraVie, Miracle Face Kit,
    and Attitude Cosmetics;
20
    **PINNACLE LOGISTICS, INC.,** a
    California corporation;

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1   **DSA HOLDINGS, INC.,** a California
2   corporation;

**LIFESTYLE MEDIA BRANDS,**
3   **INC.,** a California corporation;

4   **AGOA HOLDINGS, INC.,** a
    California corporation;

5
    **ZEN MOBILE MEDIA, INC.,** a
6   California corporation;

7   **SAFEHAVEN VENTURES, INC.,** a
    California corporation;

8   **HERITAGE ALLIANCE GROUP,**
    **INC.,** a California corporation, also
9   doing business as AuraVie Distribution;

10  **AMD FINANCIAL NETWORK,**
    **INC.,** a California corporation;

11  **SBM MANAGEMENT, INC.;** a
    California corporation;

12  **MEDIA URGE, INC.,** a California
    corporation;
13
    **ADAGEO, LLC,** a California limited
14  liability corporation;

15  **CALENERGY, INC.,** a California
    corporation;

16  **KAI MEDIA, INC.,** a California
    corporation;
17
    **INSIGHT MEDIA, INC.,** a California
18  corporation;

19  **ALON NOTTEA** , individually and as
    an officer or manager of BunZai Media
    Group, Inc. and Pinnacle Logistics, Inc.;
20

1  **MOTTI NOTTEA**, individually and as
   an officer or manager of BunZai Media
2  Group, Inc.;

3  **DORON NOTTEA**, individually and as
   an officer or manager of BunZai Media
4  Group, Inc. and Pinnacle Logistics, Inc.;

   **IGOR LATSANOVSKI**, individually
5  and as an officer or manager of BunZai
   Media Group, Inc, Pinnacle Logistics,
6  Inc., and Zen Mobile Media, Inc.;

7  **OZ MIZRAHI**, individually and as an
   officer or manager of BunZai Media
8  Group, Inc. and Pinnacle Logistics, Inc.;

   **ROI REUVENI**, individually and as an
9  officer or manager of BunZai Media
   Group, Inc. and Pinnacle Logistics, Inc.;
10
   and
11
   **KHRISTOPHER BOND**, also known
12 as Ray Ibbot, individually and as an
   officer or manager of BunZai Media
   Group, Inc.
13
                    **Defendants.**
14

15         Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

16         1.     The FTC brings this action under Sections 13(b) and 19 of the

17 Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, Section

18 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404,

19 and Section 917(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C.

20 § 1693o(c), to obtain temporary, preliminary, and permanent injunctive relief,

   rescission or reformation of contracts, restitution, the refund of monies paid,

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF     Page | 3

1    disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts

2    or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section

3    4 of ROSCA, 15 U.S.C. § 8403, and Section 907(a) of EFTA, 15 U.S.C.

4    § 1693e(a), in connection with the sale of skincare products through a negative

5    option continuity plan.

6                           SUMMARY OF THE CASE

7         2.      Defendants collectively market skincare products over the Internet

8    using deceptive offers with hidden costs, negative option features, and return

9    policies. Specifically, Defendants offer "risk-free" trials of skincare products to

10   consumers nationwide through online banners, pop-up advertisements, and

11   websites. Defendants require consumers who accept the "risk-free" trials to

12   provide their credit or debit card billing information, purportedly to pay nominal

13   shipping and handling fees to receive the advertised products. However, 10 days

14   after receiving consumers' billing information, Defendants charge consumers the

15   full costs of the products included in the "risk-free" trials, imposing charges of up

16   to $97.88 onto consumers' credit or debit cards. Defendants refuse to provide

17   refunds for product returns unless consumers meet onerous conditions that are not

18   adequately disclosed. Additionally, after charging consumers, Defendants enroll

19   consumers in a negative option continuity plan, in which Defendants ship

20   additional products each month and charge consumers' credit or debit cards the

1   full costs of the products, usually $97.88 per month. Defendants' scheme has

2   deceived consumers nationwide out of millions of dollars.

3       3.      As explained more fully below, Defendants operate a common

4   enterprise through which they: (a) fail to disclose adequately material terms of

5   their sales offer, including the offer's costs and negative option features; (b)

6   falsely represent that consumers can obtain their products on a "trial" or "risk-

7   free" trial basis for only a nominal shipping and handling fee; (c) fail to obtain a

8   consumer's informed consent to the material terms, including the negative option

9   feature, of the transaction before charging the consumer; (d) falsely represent their

10  business is accredited by the Better Business Bureau with an "A-" rating; (e) fail

11  to provide consumers a simple method of cancelling their negative option

12  continuity plan, and (f) debit consumers' bank accounts on a recurring basis

13  without obtaining written authorization from the consumer or providing a written

14  copy of the authorization to the consumer.

15              JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

16      4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C.

17  §§ 1331, 1337(a), and 1345 and 15 U.S.C. §§ 45(a), 53(b), and 57b.

18      5.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and

19  (b)(2), and 15 U.S.C. § 53(b).

20      6.      Assignment to the Western Division is proper because Defendants'

primary place of business is in Los Angeles County.

**PLAINTIFF**

7.     The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. Additionally, the FTC enforces ROSCA, 15 U.S.C. §§ 8401-05, which prohibits certain methods of negative option marketing on the Internet, as well as EFTA, 15 U.S.C. § 1693 *et seq.*, which regulates the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.

8.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, ROSCA, and EFTA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 8404, and 1693o(c).

**DEFENDANTS**

9.     Defendant **BunZai Media Group, Inc.**, also doing business as AuraVie, Miracle Face Kit, and Attitude Cosmetics, is or was a California corporation with its principal place of business at 7900 Gloria Avenue, Van Nuys, California 91406 ("the Van Nuys Office"). BunZai Media Group, Inc. also uses a

1  mailbox with the address of 16161 Ventura Boulevard, #378, Encino, California

2  91436 ("Encino Mailbox A"). At times material to this Complaint, BunZai Media

3  Group, Inc. has advertised, marketed, distributed, or sold skincare products, or

4  provided customer service for such products, to consumers throughout the United

5  States. BunZai Media Group, Inc. transacts or has transacted business in this

6  district and throughout the United States.

7      10.   Defendant **Pinnacle Logistics, Inc.** is or was a California corporation

8  with its principal place of business at the same location as BunZai Media Group,

9  Inc. at the Van Nuys Office. Pinnacle Logistics, Inc. has a secondary address of

10  6914 Canby Avenue, Suite 107, Reseda, California 91335 ("the Reseda Office").

11  At times material to this Complaint, Pinnacle Logistics, Inc., has advertised,

12  marketed, distributed, or sold the skincare products at issue in this case, or

13  provided customer service for such products, to consumers throughout the United

14  States. Pinnacle Logistics, Inc. transacts or has transacted business in this district

15  and throughout the United States.

16      11.   Defendant **DSA Holdings, Inc.** is or was a California corporation

17  with its principal place of business at the same location as BunZai Media Group,

18  Inc., at the Van Nuys Office, and a secondary address of 8335 Winnetka Avenue,

19  #118, Winnetka, California 91306. At times material to this Complaint, DSA

20  Holdings, Inc., has advertised, marketed, distributed, or sold the skincare products

1   at issue in this case to consumers throughout the United States. DSA Holdings,

2   Inc., transacts or has transacted business in this district and throughout the United

3   States.

4       12.    Defendant **Lifestyle Media Brands, Inc.** is or was a California

5   corporation with its principal place of business at the Van Nuys Office and a

6   secondary address of 8335 Winnetka Avenue, #112, Winnetka, California 91306.

7   At times material to this Complaint, Lifestyle Media Brands, Inc. has advertised,

8   marketed, distributed, or sold the skincare products at issue in this case to

9   consumers throughout the United States. Lifestyle Media Brands, Inc. transacts or

10   has transacted business in this district and throughout the United States.

11       13.    Defendant **Agoa Holdings, Inc.** is or was a California corporation

12   with its principal place of business at the Van Nuys Office. At times material to

13   this Complaint, Agoa Holdings, Inc. has advertised, marketed, distributed, or sold

14   the skincare products at issue in this case to consumers throughout the United

15   States. Agoa Holdings, Inc. transacts or has transacted business in this district and

16   throughout the United States.

17       14.    Defendant **Zen Mobile Media, Inc.** is or was a California

18   corporation with its principal place of business at the Van Nuys Office and a

19   secondary address of 4335 Van Nuys Boulevard #167, Sherman Oaks, California

20   91403. Zen Mobile Media, Inc. also uses a commercial mail receiving agent

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF    Page | 8

1   mailbox, 16830 Ventura Boulevard, #360, Encino, California 91436 ("Encino

2   Mailbox B"). At times material to this Complaint, Zen Mobile Media, Inc. has

3   advertised, marketed, distributed, or sold the skincare products at issue in this case

4   to consumers throughout the United States. Zen Mobile Media, Inc. transacts or

5   has transacted business in this district and throughout the United States.

6        15.   Defendant **Safehaven Ventures, Inc.** is or was a California

7   corporation with its principal place of business at the Van Nuys Office and a

8   secondary address of 548 South Spring Street, #406, Los Angeles, California

9   90013. Safehaven Ventures, Inc. also uses Encino Mailbox B. At times material to

10  this Complaint, Safehaven Ventures, Inc. has advertised, marketed, distributed, or

11  sold the skincare products at issue in this case to consumers throughout the United

12  States.  Safehaven Ventures, Inc. transacts or has transacted business in this

13  district and throughout the United States.

14       16.   Defendant **Heritage Alliance Group, Inc.** also doing business as

15  AuraVie Distribution, is or was a California corporation with its principal place of

16  business at the Van Nuys Office and a secondary address of 21113 Osborne

17  Street, Canoga Park, California 91304. At times material to this Complaint,

18  Heritage Alliance Group, Inc. has advertised, marketed, distributed, or sold the

19  skincare products at issue in this case to consumers throughout the United States.

20

1   Heritage Alliance Group, Inc. transacts or has transacted business in this district

2   and throughout the United States.

3       17.    Defendant **AMD Financial Network, Inc.** is or was a California

4   corporation with its principal place of business at the Van Nuys Office and a

5   secondary address of 9820 Owensmouth Avenue, #15, Chatsworth, California

6   91311. At times material to this Complaint, AMD Financial Network, Inc. has

7   advertised, marketed, distributed, or sold the skincare products at issue in this case

8   to consumers throughout the United States. AMD Financial Network, Inc.

9   transacts or has transacted business in this district and throughout the United

10  States.

11      18.    Defendant **SBM Management, Inc.** is or was a California

12  corporation with its principal place of business at 655 North Central Avenue,

13  Suite 1700, Glendale, California 91203. SBM Management, Inc. also uses Encino

14  Mailbox B. At times material to this Complaint, SBM Management, Inc. has

15  advertised, marketed, distributed, or sold the skincare products at issue in this case

16  to consumers throughout the United States. SBM Management, Inc. transacts or

17  has transacted business in this district and throughout the United States.

18      19.    Defendant **Media Urge, Inc.** is or was a California corporation with

19  its principal place of business at 18757 Burbank Boulevard, Suite 205, Tarzana,

20  California 91436. At times material to this Complaint, Media Urge, Inc. has

1  advertised, marketed, distributed, or sold the skincare products at issue in this case

2  to consumers throughout the United States. Media Urge, Inc. transacts or has

3  transacted business in this district and throughout the United States.

4      20.    Defendant **Adageo, LLC** is or was a California limited liability

5  corporation with Encino Mailbox A listed as its registered place of business.

6  Adageo, LLC also uses Encino Mailbox B. At times material to this Complaint,

7  Adageo, LLC has advertised, marketed, distributed, or sold the skincare products

8  at issue in this case to consumers throughout the United States. Adageo, LLC

9  transacts or has transacted business in this district and throughout the United

10  States.

11      21.    Defendant **CalEnergy, Inc.** is or was a California corporation with

12  its principal place of business at 6925 Canby Avenue, #105, Reseda, California

13  91335, which is in the same complex as the Reseda Office. At times material to

14  this Complaint, CalEnergy, Inc. has advertised, marketed, distributed, or sold the

15  skincare products at issue in this case to consumers throughout the United States.

16  CalEnergy, Inc. transacts or has transacted business in this district and throughout

17  the United States.

18      22.    Defendant **Kai Media, Inc.** is or was a California corporation with

19  its principal place of business at the same location as BunZai Media Group, Inc. at

20  the Van Nuys Office. Kai Media, Inc. also uses Encino Mailbox B. At times

material to this Complaint, Kai Media, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. Kai Media, Inc. transacts or has transacted business in this district and throughout the United States.

23.     Defendant **Insight Media, Inc.** is or was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. at the Van Nuys Office. Insight Media, Inc. also uses Encino Mailbox B. At times material to this Complaint, Insight Media, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. Insight Media, Inc. transacts or has transacted business in this district and throughout the United States.

24.     Defendant **Alon Nottea** is or was a Chief Executive Officer ("CEO") of BunZai Media Group, Inc., a manager of Pinnacle Logistics, Inc., a consultant for Media Urge, Inc., and an owner of Adageo, LLC. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts or practices set forth in this Complaint. By and through the corporate defendants, he has harmed consumers nationwide with his unfair and deceptive business practices. Defendant Alon Nottea resides in this district and, in connection with the matters alleged

1    herein, transacts or has transacted business in this district and throughout the

2    United States.

3         25.    Defendant **Motti Nottea** was also a CEO of BunZai Media Group,

4    Inc. and he held a merchant account in his name for BunZai Media Group, Inc.'s

5    use. At times material to this Complaint, acting alone or in concert with others, he

6    has formulated, directed, controlled, had the authority to control, or participated in

7    the acts or practices set forth in this Complaint. Defendant Motti Nottea resides in

8    this district and, in connection with the matters alleged herein, transacts or has

9    transacted business in this district and throughout the United States.

10        26.    Defendant **Doron Nottea** is or has been a manager at BunZai Media

11   Group, Inc. and Pinnacle Logistics, Inc. At times material to this Complaint, he

12   has formulated, directed, controlled, had the authority to control, or participated in

13   the acts or practices set forth in this Complaint. Defendant Doron Nottea resides in

14   this district and, in connection with the matters alleged herein, transacts or has

15   transacted business in this district and throughout the United States.

16        27.    Defendant **Oz Mizrahi** is or has been a CEO of Defendant Pinnacle

17   Logistics, Inc. and a CEO of Media Urge, Inc. At times material to this

18   Complaint, he has formulated, directed, controlled, had the authority to control, or

19   participated in the acts or practices set forth in this Complaint. Defendant Mizrahi

20   was integrally involved in establishing Pinnacle Logistics, Inc., its business

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF        Page | 13

practices and operations, and in transitioning Defendant BunZai Media Group, Inc.'s business to Defendant Pinnacle Logistics, Inc. Defendant Oz Mizrahi resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

28.     Defendant **Igor Latsanovski** is or was an owner of BunZai Media Group, Inc. and CEO of Zen Mobile Media Group, Inc. At times material to this Complaint, he has formulated, directed, controlled, had the authority to control, or participated in the acts or practices set forth in this Complaint. Defendant Igor Latsanovski resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

29.     Defendant **Roi Reuveni** is or has been a manager at BunZai Media Group, Inc. and Pinnacle Logistics, Inc. He was a manager of the customer service and chargebacks departments at Defendant Pinnacle Logistics, Inc. Further, he is owner or CEO of Agoa Holdings, Inc. At times material to this Complaint, he has formulated, directed, controlled, had the authority to control, or participated in the acts or practices set forth in this Complaint. Defendant Roi Reuveni resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

30.   Defendant **Khristopher Bond**, also known as Ray Ibbot, is or has been an owner of BunZai Media Group, Inc. At times material to this Complaint, he has formulated, directed, controlled, had the authority to control, or participated in the acts or practices set forth in this Complaint. Defendant Bond was integrally involved in the day-to-day operations of BunZai Media Group, Inc. and, among other things, trained customer-service representatives on responding to consumer complaints. Bond resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

### COMMON ENTERPRISE

31.   Defendants BunZai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, Inc.; CalEnergy, Inc.; Kai Media, Inc.; and Insight Media, Inc. (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unlawful acts and practices alleged herein. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations. Further, the companies commingle

1   funds, use the same sales techniques, and have a centralized recordkeeping

2   system. Because these Corporate Defendants have operated as a common

3   enterprise, each of them is jointly and severally liable for the acts and practices

4   alleged below.

5        32.    Defendants Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi,

6   Igor Latsanovski, Roi Reuveni, Khristopher Bond, also known as Ray Ibbot,

7   (collectively, "Individual Defendants") have formulated, directed, controlled, had

8   the authority to control, or participated in the acts and practices of the Corporate

9   Defendants that constitute the common enterprise.

10                    **COMMERCE**

11        33.    At all times material to this Complaint, Defendants have maintained

12   a substantial course of trade in or affecting commerce, as "commerce" is defined

13   in Section 4 of the FTC Act, 15 U.S.C. § 44.

14           **DEFENDANTS' BUSINESS PRACTICES**

15        34.    Defendants have advertised, marketed, distributed, and sold skincare

16   products online from multiple Internet websites, including auraviefreetrial.com,

17   auravietrialkit.com, and mymiraclekit.com, since at least 2010. Defendants

18   deceptively offer free trials of their products under a variety of brand names

19   including "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit"

20   (collectively, "AuraVie").

35.     Defendants' online offers fail to disclose adequately and materially misrepresent the terms of their trial offers.

### Defendants' Risk-Free Trial Offers

36.     Defendants contract with a network of third parties, known as "affiliate marketers," to direct consumers to Defendants' websites. The affiliate marketers use a variety of Internet advertising techniques, including banner and pop-up advertisements, sponsored search terms, and offers to drive consumer traffic to Defendants' websites. Defendants provide affiliate marketers with advertisements describing the offers for the affiliate marketers to use. Some affiliate marketers also create their own advertising.

37.     Defendants also purchase advertising space on third-party websites such as Amazon.com, Huffingtonpost.com, and Lowes.com, and offer consumers a "risk-free" trial or "trial order" of Defendants' skincare products. After consumers click on these advertisements and are directed to Defendants' websites, Defendants lure consumers into providing their credit or debit card information by representing that consumers need to pay only a nominal shipping and handling charge, typically $4.95 or less, to receive a "risk-free" trial or a "trial order" of their products.

38.     Defendants' websites prominently claim that their offer is merely a "trial":

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF     Page | 17





(screen capture from http://auraviefreetrial.com, last visited August 28, 2014)

1    Defendants promote their offer as a "risk-free" trial and, on most sites, claim that

2    customer satisfaction is "100% guaranteed":



3

4

5

6

7    (screen capture from http://mymiraclekit.com, last visited April 13, 2015)

8         39.    Defendants also use deceptive pop-up advertisements that discourage

9    consumers from leaving Defendants' websites without accepting a trial offer.

10   When consumers attempt to leave the websites, a text box appears that offers to

11   ship the trial offer at an even lower shipping price. These pop-up advertisements

12   contain false representations that AuraVie is accredited by the Better Business

13   Bureau ("BBB") with an "A-" rating:

14

15

16

17

18

19

20



(screen capture from http://auravietrialkit.com, last visited April 13, 2015)

In fact, AuraVie is not accredited by the BBB and has an F rating.

### *Defendants' Hidden Costs, Continuity Plan Features, and Return Policy*

40.    Defendants' marketing practices are materially deceptive and employ tactics including hidden costs, signing up consumers for negative option continuity plans without their consent, and undisclosed and onerous return policies. In their advertisements and sales offers, Defendants fail to disclose adequately that they will charge consumers' credit or debit accounts for the trial product, typically as much as $97.88, after a 10-day period.

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF        Page | 20

41.     Defendants also fail to disclose adequately that consumers who accept the trial offer will be enrolled into a continuity program. Under the continuity program, Defendants send consumers additional shipments of Defendants' skincare product each month and charge consumers' credit or debit cards the full cost of each product shipped until consumers affirmatively cancel their membership in the continuity program.

42.     Consumers are typically unaware that they have been enrolled in this continuity program until they discover the charges—usually $97.88 a month—on their credit or debit card statements. And often, by that time, it is too late for consumers to return the product for a refund.

43.     Further, although they promote their offer as "risk-free" with "100% satisfaction guaranteed," Defendants fail to disclose, or disclose adequately, material terms of their return policy. Defendants fail to disclose adequately that, if the consumer opens the product, the product must be returned and received by Defendants within 10 days of placing the order to avoid a $97.88 fee. Defendants also fail to disclose adequately that after 10 days, only unopened products may be returned for a refund and that no refunds will be provided for any product returned after 30 days.

44.     In fact, because consumers often do not receive their "risk-free" trial until after 10 days have elapsed (or nearly elapsed), many consumers cannot

1  return the product in time to avoid the $97.88 fee. Moreover, Defendants fail to

2  disclose adequately to consumers that they often assess a "restocking" fee of up to

3  $15 for returning the products. Accordingly, consumers who accept Defendants'

4  trial offer are likely to incur unexpected charges.

5      45.    Defendants' websites do not contain a disclosure concerning the

6  initial charges for the product, continuity program, or return policies until the

7  "final step" of the Defendants' ordering page. Many consumers report never

8  seeing such a disclosure, even when they specifically looked for such a disclosure.

9  As the screen capture below illustrates, the disclosure is in significantly smaller

10  print and is obscured by a variety of graphics and text:

11

12

13

14

15

16

17

18

19

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  (screen capture from http://auraviefreetrial.com, last visited April 13, 2015; not to

16  scale)

17  In contrast, Defendants represent—in bold, red font at the top-center of the page—

18  that their trial shipment costs "$0.00."

19

20

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF      Page | 23

46.     Even if the disclosure were prominently displayed, it fails to mention many material terms and conditions of Defendants' offer. Defendants' disclosure states:

> We take great pride in the quality of our products & are confident that you will achieve phenomenal results. By submitting your order, you agree to both the terms of this offer (click link below) & to pay $4.95 S&H for your 10 day trial. If you find this product is not for you, cancel within the 10 day trial period to avoid being billed. After your 10 day trial expires, you will be billed $97.88 for your trial product & enrolled in our monthly autoship program for the same discounted price. Cancel anytime by calling 866.216.9336. Returned shipments are at customer's expense. This trial is limited to 1 offer per household.

47.     Defendants' disclosure paragraph fails to disclose: (a) that the 10-day trial period begins on the day that the product is ordered; (b) that, to avoid charges, the consumer must also return the product to Defendants before the end of the trial period; (c) that consumers may not return the product for a refund after 10 days if it has been opened; (d) that consumers may not return the product for a refund after 30 days, even if it has not been opened; and (e) that a restocking fee, usually $15, may be charged when a product is returned.

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF     Page | 24

48.    Most of the material terms and conditions of Defendants' offer can only be found in a separate, multi-page terms and conditions webpage that is accessible by hyperlink. On many of Defendants' affiliate sites, this hyperlink can only be found by scrolling to the bottom of the website and clicking on a hyperlink labeled "T&C":



(screen capture from auravietrialkit.com, last visited April 13, 2015 )

49.    Defendants also send consumers who sign up for a trial offer a confirmation email that reinforces the false impression that they will receive a free shipment of Defendants' skincare product. These emails show no charges for the "risk-free" trial other than the nominal shipping and handling fees.

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF      Page | 25

50.     Further, Defendants' confirmation emails do not disclose that consumers will be charged the full cost of the product, usually $97.88, after 10 days unless the consumer cancels the order and returns the product during that time.  Defendants' confirmation emails do not disclose that the consumer has been enrolled into a continuity program that will result in future shipments of product and a monthly charge of $97.88 on their credit or debit cards. These emails also fail to state when the charge will be imposed or how consumers can avoid the charge. Nor do the emails disclose that unopened products may be returned for a refund only within 30 days of ordering.

### *Defendants' Cancellation and Refund Practices*

51.     After consumers learn that Defendants have charged their accounts and signed them up for a continuity plan, they often have significant difficulty receiving a refund and cancelling the continuity plan.

52.     Many consumers have difficulty contacting Defendants' customer service representatives, despite calling Defendants' toll-free number numerous times. Even when consumers speak with a representative, consumers often continue to receive shipments and unauthorized charges after cancelling the continuity plan. Still others report receiving multiple charges from Defendants without receiving products. As a result, consumers continue to incur unwanted and unauthorized charges.

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF          Page | 26

53.     When consumers call Defendants to complain about the unauthorized charges, Defendants often tell consumers that, while the continuity plan will be cancelled, their money will not be refunded. In some instances, Defendants inform consumers they will offer only a partial refund. Other times, Defendants condition a partial refund upon the consumer's promise or signed statement that they will not complain to any government authority or to the Better Business Bureau.

54.     Many of Defendants' charges for their continuity program result in chargeback requests by consumers. In response, Defendants provide false documents to payment processing companies and exaggerate the measures they take to communicate the terms of their offer to consumers.

55.     Further, Defendants often do not honor return policies, even when consumers satisfy them. For example, Defendants often tell consumers that they cannot obtain a refund on any product returned even when the product remains unopened and the 30-day period has not yet elapsed, contrary to Defendants' terms and conditions. Some consumers report being refused a refund by Defendants despite sending the product back within the permissible time period, with Defendants' customer service representative stating that Defendants never received the return shipment.

56.     In other instances, consumers receive refunds from Defendants only after they have complained to their credit card companies, state regulatory

1   authorities, or the Better Business Bureau. Even in those instances, however,

2   Defendants have not always issued full refunds.

3                          **VIOLATIONS OF THE FTC ACT**

4         57.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or

5   deceptive acts or practices in or affecting commerce."

6         58.    Misrepresentations or deceptive omissions of material fact constitute

7   deceptive acts or practices prohibited by Section 5(a) of the FTC Act. Acts or

8   practices are unfair under Section 5 of the FTC Act if they cause substantial injury

9   to consumers that consumers cannot reasonably avoid themselves and that is not

10  outweighed by countervailing benefits to consumers or competition. 15 U.S.C. §

11  45(n).

12                               **Count I.**

13        **Failure to Disclose Adequately Material Terms of Offer**

14        59.    In numerous instances, in connection with the advertising, marketing,

15  promotion, offering for sale, or sale of skincare products, including but not limited

16  to AuraVie products, Defendants have represented, directly or indirectly,

17  expressly or by implication, that consumers who provide their credit or debit card

18  billing information will be charged only a nominal shipping and handling fee to

19  receive a trial shipment of Defendants' skincare products and, that their

20  satisfaction is guaranteed.

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF        Page | 28

60.     In numerous instances in which Defendants have made the representation set forth in Paragraph 59 of this Complaint, Defendants have failed to disclose, or disclose adequately to consumers, material terms and conditions of their offer, including:

(a)     That Defendants will use consumers' credit or debit card information to charge consumers the full costs of the trial products, usually $97.88, upon the expiration of a limited trial period;

(b)     The dates on which the trial period begins and ends;

(c)     That Defendants will automatically enroll consumers in a negative option continuity plan with additional charges;

(d)     The cost of the continuity plan, and the frequency and duration of the recurring charges;

(e)     The means consumers must use to cancel the negative option program to avoid additional charges; and

(f)     Requirements of their refund policies.

61.     Defendants' failure to disclose, or to disclose adequately, the material information described in Paragraph 60, in light of the representation described in Paragraph 59, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

1

2

**Count II.**

3

**False "Risk-Free" Trial Claim**

4   62.   Through the means described in Paragraph 34-56, Defendants have

5   represented, directly or indirectly, that consumers can try AuraVie "risk-free."

6   63.   The representation set forth in Paragraph 62 is false. Consumers

7   could not try Defendants' products "risk-free," because Defendants charged

8   consumers the full cost if the "risk-free" product was opened and not returned

9   within 10 days of placing the order, often assessed a restocking fee of up to $15,

10  and consumers had to bear the additional expense of returning the product to the

11  Defendants. In addition, Defendants failed, in numerous instances, to refund

12  consumers' charges assessed for the trial order, despite consumers having returned

13  the product according to the offer's terms and conditions.

14  64.   Therefore, the making of the representation as set forth in Paragraph

15  62 of this Complaint constitutes a deceptive act or practice in or affecting

16  commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

17

**Count III.**

18

**False Better Business Bureau Accreditation and Rating Claims**

19  65.   In numerous instances in connection with the advertising, marketing,

20  promotion, offering for sale, or sale of skincare products, Defendants have

1   represented, directly or indirectly, expressly or by implication, that Defendants are

2   accredited by and have a rating of "A-" with the Better Business Bureau.

3       66.    In truth and in fact, Defendants are not accredited by and do not have

4   a rating of "A-" with the Better Business Bureau. Defendants' rating with the

5   Better Business Bureau is an "F."

6       67.    Therefore, Defendants' representation as set forth in Paragraph 65 of

7   this Complaint is false or misleading and constitutes a deceptive act or practice in

8   violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

9   **Count IV.**

10   **Unfairly Charging Consumers Without Authorization**

11       68.    In numerous instances, Defendants have caused charges to be

12   submitted for payment to the credit and debit cards of consumers without the

13   express informed consent of consumers.

14       69.    Defendants' actions cause or are likely to cause substantial injury to

15   consumers that consumers cannot reasonably avoid themselves and that is not

16   outweighed by countervailing benefits to consumers or competition.

17       70.    Therefore, Defendants' practices as described in Paragraph 68 above

18   constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15

19   U.S.C. §§ 45(a) and 45(n).

20

VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT

71.     In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-05, which became effective on December 29, 2010. Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business." Section 2 of ROSCA, 15 U.S.C. § 8401.

72.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(u), unless the seller: (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the charge; and (c) provides a simple mechanism to stop recurring charges. *See* 15 U.S.C. § 8403.

73.     The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or

1    services or to cancel the agreement is interpreted by the seller as acceptance of the

2    offer." 16 C.F.R. § 310.2(u).

3        74.    As described above, Defendants advertise and sell Defendants'

4    skincare products to consumers through a negative option feature as defined by

5    the TSR. *See* 16 C.F.R. § 310.2(u).

6        75.    Under Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of

7    ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15

8    U.S.C. § 57a.

9                              **Count V.**

10          **Violation of ROSCA – Auto-Renewal Continuity Plan**

11       76.    In numerous instances, in connection with the selling of skincare

12   products on the Internet through a negative option feature, Defendants have failed

13   to:

14          (a)    clearly and conspicuously disclose all material

15                 terms of the negative option feature of the

16                 skincare products transaction before obtaining the

17                 consumer's billing information;

18          (b)    obtain the consumer's express informed consent

19                 to the negative option feature before charging the

20                 consumer's credit card, debit card, bank account,

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF     Page | 33

1                 or other financial account for the transaction;

2                 and/or

3         (c)     provide simple mechanisms for a consumer to

4                 stop recurring charges for skincare products to the

5                 consumer's credit card, debit card, bank account,

6                 or other financial account.

7       77.     Defendants' practices as set forth in Paragraph 76 are a violation of

8 Section 4 of ROSCA, 15 U.S.C. § 8403, and are treated as if they are a violation

9 of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, 15

10 U.S.C. § 8404(a).

11        **Violations of the Electronic Fund Transfer Act and Regulation E**

12       78.     Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), provides that a

13 "preauthorized" electronic fund transfer from a consumer's account may be

14 "authorized by the consumer only in writing, and a copy of such authorization

15 shall be provided to the consumer when made."

16       79.     Section 903(10) of EFTA, 15 U.S.C. § 1693a(10), provides that

17 the term "preauthorized electronic fund transfer" means "an electronic fund

18 transfer authorized in advance to recur at substantially regular intervals."

19       80.     Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides

20

1    that "[p]reauthorized electronic fund transfers from a consumer's account may be

2    authorized only by a writing signed or similarly authenticated by the consumer.

3    The person that obtains the authorization shall provide a copy to the consumer."

4        81.    Section 205.10 of the Federal Reserve Board's Official Staff

5    Commentary to Regulation E, 12 C.F.R. § 205.10(b), Supp. I, provides that "[t]he

6    authorization process should evidence the consumer's identity and assent to the

7    authorization." ¶ 10(b), cmt 5. The Official Staff Commentary further provides

8    that "[a]n authorization is valid if it is readily identifiable as such and the terms of

9    the preauthorized transfer are clear and readily understandable." ¶ 10(b), cmt 6.

10                              **Count VI.**

11              **Unauthorized Debiting from Consumers' Accounts**

12        82.    In numerous instances, Defendants debit consumers' bank accounts

13   on a recurring basis without obtaining a written authorization signed or similarly

14   authenticated from consumers for preauthorized electronic fund transfers from

15   their accounts, thereby violating Section 907(a) of EFTA, 15 U.S.C.

16   § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

17        83.    Further, in numerous instances, Defendants debit consumers' bank

18   accounts on a recurring basis without providing a copy of a written authorization

19   signed or similarly authenticated by the consumer for preauthorized electronic

20   fund transfers from the consumer's account, thereby violating Section 907(a) of

1   EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. §

2   205.10(b).

3        84.    Under Section 917 of EFTA, 15 U.S.C. § 1693o(c), a violation of

4   EFTA and Regulation E constitutes a violation of the FTC Act.

5        85.    Accordingly, by engaging in violations of EFTA and Regulation E as

6   alleged in Paragraphs 82 and 83 of this Complaint, Defendants have engaged in

7   violations of the FTC Act. 15 U.S.C. § 1693o(c).

8                     **CONSUMER INJURY**

9        86.    Consumers have suffered and will continue to suffer substantial

10   injury as a result of Defendants' violations of the FTC Act, ROSCA, and EFTA.

11   In addition, Defendants have been unjustly enriched as a result of their unlawful

12   acts or practices. Absent injunctive relief by this Court, Defendants are likely to

13   continue to injure consumers, reap unjust enrichment, and harm the public

14   interest.

15          **THIS COURT'S AUTHORITY TO GRANT RELIEF**

16        87.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this

17   Court to grant injunctive and such other relief as the Court may deem appropriate

18   to halt and redress violations of any provision of law enforced by the FTC. The

19   Court, in the exercise of its equitable jurisdiction, may award ancillary relief,

20   including rescission or reformation of contracts, restitution, the refund of monies

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF    Page | 36

1   paid, and the disgorgement of ill-gotten monies, to prevent and remedy any

2   violation of any provision of law enforced by the FTC.

3        88.     Section 19 of the FTC Act, 15 U.S.C. § 57b, Section 5 of ROSCA, 15

4   U.S.C. § 8404, and Section 917(c) of EFTA, 15 U.S.C. § 16930(c), authorize this

5   Court to grant such relief as the Court finds necessary to redress injury to

6   consumers resulting from Defendants' violations of the FTC Act, ROSCA, and

7   EFTA, including the rescission or reformation of contracts and the refund of

8   money.

9                        PRAYER FOR RELIEF

10      Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act,

11  15 U.S.C. §§ 53(b), 57b, Section 5 of ROSCA, 15 US.C. § 8404, Section 917(c)

12  of EFTA, 15 U.S.C. § 1693o(c), and the Court's own equitable powers, requests

13  that the Court:

14      A.     Award Plaintiff such preliminary injunctive and ancillary relief as

15             may be necessary to avert the likelihood of consumer injury during

16             the pendency of this action and to preserve the possibility of effective

17             final relief, including but not limited to temporary and preliminary

18             injunctions, an order freezing assets, immediate access, and

19             appointment of a receiver;

20

B.     Enter a permanent injunction to prevent future violations of the FTC
Act, ROSCA, and EFTA by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to
consumers resulting from Defendants' violations of the FTC Act,
ROSCA, and EFTA, including, but not limited to, rescission or
reformation of contracts, restitution, the refund of monies paid, and
the disgorgement of ill-gotten monies; and

D.     Award Plaintiff the cost of bringing this action, as well as such other
additional relief the Court determines to be just and proper.

1   Respectfully submitted,

2                                         JONATHAN E. NUECHTERLEIN
                                          General Counsel

3                                         DAMA J. BROWN
                                          Regional Director

4

5   Dated: 6/15/15                         ____/s/ Reid Tepfer_____
                                          REID TEPFER,
6                                         Texas Bar No. 24079444
                                          LUIS GALLEGOS
7                                         Oklahoma Bar No. 19098
                                          Federal Trade Commission
8                                         1999 Bryan Street, Suite 2150
                                          Dallas, Texas 75201
9                                         (214) 979-9395 (Tepfer)
                                          (214) 979-9383 (Gallegos)
10                                        (214) 953-3079 (fax)
                                          rtepfer@ftc.gov; lgallegos@ftc.gov
11
                                          RAYMOND MCKOWN
12                                        California Bar No. 150975
                                          10877 Wilshire Boulevard, Suite 700
13                                        Los Angeles, California 90024
                                          (310) 824-4325(voice)
14                                        (310) 824-4380 (fax)
                                          rmckown@ftc.gov
15

16

17

18

19

20

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF     Page | 39