Thomas H. Vidal (SBN 204432)
**ABRAMS GARFINKEL MARGOLIS BERGSON, LLP**
5900 Wilshire Blvd. Suite 2250
Los Angeles, CA 90036
310-300-2900
310-300-2901- Fax
Email: tvidal@agmblaw.com

Brandi J. McKay (SBN 203941)
**SCHEEF & STONE, L.L.P.**
500 N. Akard, Suite 2700
Dallas, Texas  75201
214-706-4200
214-706-4242 - Fax
Email: Kelly.crawford@solidcounsel.com
Email: brandi.mckay@solidcounsel.com

Attorneys for Receiver
CHARLENE C. KOONCE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br>**Plaintiff**, <br><br>v. <br><br>**BUNZAI MEDIA GROUP, INC.**, a California corporation, also doing business as AuraVie and Miracle Face Kit, et al. <br><br>**Defendants.** | Case No. CV 15-4527-GW(PLAx) <br><br>**RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE, AND EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INFORMATION** |

Charlene Koonce, the Court-appointed Temporary Receiver (the "Receiver"), files this Affidavit of Non-Compliance and moves the Court to compel production of documents and information.  Pursuant to the terms of the Receivership Order described

below, the Receiver requests identification and production of all documents of the Receivership Defendants, including those documents in email accounts used to conduct the business of the Receivership Defendants, identification of all email accounts used in connection with the operation or control of the Receivership Defendants, and identification of all email credentials necessary for the Receiver to access those email accounts. In support, the Receiver respectfully shows the Court as follows:

## BACKGROUND

1. On June 16, 2015, the Court issued the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Receivership Order").

2. The Receivership Order defines Receivership Defendants as "Bunzai Media Group, Inc., d/b/a AuraVie and Miracle Face Kit; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc., also doing business as AuraVie Distribution; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; Calenergy, Inc.; KAI Media, Inc.; Insight Medial, Inc.; and their successors and assigns, as well as any subsidiaries, fictitious business entities, or business names created or used by these entities or by the Individual Defendants that

are related to, or receive funds from, the sale of skincare or other products online." Receivership Order ¶ 4(b).

3. Of these entities, only Calenergy, Inc. and Adageo, LLC are represented.[1] Pursuant to California law, the following Receivership Defendants were dissolved before the Receivership Order was issued: Agoa Holdings, LLC, Bunzai Media Group, Inc., Pinnacle Logistics, Inc., DSA Holdings, Inc., Zen Mobile Media, Inc. Safehaven Ventures, Inc., Heritage Alliance Group, Inc., and Media Urge, Inc.[2] (the "Dissolved Receivership Defendants").

4. While still active corporate entities, Receivership Defendants Lifestyle Media Brands, Inc., AMD Financial Network, Inc. Kai Media, Inc. and Insight Media Inc. (collectively, the "Active Receivership Defendants") are not represented and have made no appearance. SBM Management, Inc. is likewise not represented and has made no appearance.

5. The Receivership Order requires

"Defendants and Defendants' officers, …, who receive actual notice of this Order, … shall upon notice of this Order … immediately transfer or deliver to the Temporary Receiver possession, custody, and control of, the following: …
   B. All documents of the Receivership Defendants[3]…;
   C. All computers and data in whatever form used to conduct the business of the Receivership Defendants; and
   D. All usernames, keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants…

---

[1] *See* Stipulation to Continue, Docket No. 26.
[2] *See* Declaration of Brent McPeek, Docket No. 1, Exhibit 6, ¶¶ 6-13 and 16; and Stipulation to Continue, Docket No. 26, n. 1.

Receivership Order, ¶ XVII.

6. Additionally, the Receivership Order requires

"Defendants shall provide to the Temporary Receiver, immediately upon request… :
   A. A list of all locations where documents of the Receivership Defendants are located, and the means to access such documents within five hours of the Temporary Receiver's request…

Receivership Order, ¶ XVIII.

7. Furthermore, the Receivership Order requires

"Defendants and Defendants' officers… who receive actual notice of this Order, … [to] fully cooperate with and assist the Temporary Receiver in taking and maintaining possession, custody, or control of the assets and documents of the Receivership Defendants…. [including]

   A. Providing information to the Temporary Receiver that the Temporary Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Temporary Receiver under this Order;

Receivership Order, ¶ XIX.

8. On June 18, 2015, my team and I undertook efforts to serve the Receivership Order and began performing its mandate. At the time of my initial entry into the leased commercial space utilized by the Receivership Defendants at 6925 Canby Avenue, Units 105 and 109, and 6850 Canby, Unit 103, Reseda, California, 91335 (collectively the "Office"), I personally served a copy of the Receivership Order on Defendant Doron Nottea and informed him of his obligation to comply with its provisions and assist me in securing the compliance of all Individual Defendants with

all terms of the Receivership Order, including providing me with documents and information.

9. All of the Individual Defendants have since also been served with a copy of the Receivership Order and are thus aware of their obligations under the Order.

10. Documents and information located at the time of our initial entry or shortly after, demonstrated that the Receivership Defendants and the Individual Defendants use multiple email accounts and computers in conducting their business. Moreover, documents created by the Defendants demonstrate that each of the Receivership Defendants, as well as many, many other entities, were operated from the Office in connection and furtherance of the conduct enjoined by the Receivership Order. The Receivership Defendants and the additional entities are or were subject to the control of at least Doron Nottea, Alon Nottea and/or Roi Rueveni. Signed checks for the Receivership Defendants, bank account passwords, credit cards issued to the entities, active and up-to-date Quick Books entries, mail, RSA devices necessary to access the entities' bank accounts, as well as  summaries regarding the nature of the business conducted by these entities (i.e, "free trial sales" "marketing" etc.) were all located in the Office or on the Office computers and substantiate the Defendants' control over the Receivership Defendants.[4]

---

[4] When asked to provide computer access information to the computer in the office where Doron Nottea was sitting when we entered the Office, Doron's counsel initially stated that Doron was just temporarily using that office and did not have the access information. After being advised that the walls of the office were covered with family portraits,

11. Beginning on June 18, 2015 at approximately midnight when my team and I discovered email addresses for the Individual Defendants, I emailed a copy of the Receivership Order to each and requested that each provide extensive information including, all documents of the Receivership Defendants, and all computer and email credentials. None of the Individual Defendants complied, although Doron Nottea did state that he wished to speak with counsel before providing any information.

12. All of the Individual Defendants except Khristopher Bond[5] have retained counsel. In communicating with the Individual Defendants' counsel, I renewed my requests for all documents and email credentials used in connection with the operation of the Receivership Defendants, including the Individual Defendants' email accounts.

13. Email credentials for Mr. Latsanovski and Calenergy, Inc. have been provided, subject to an agreement regarding privilege protocols involving an independent review by a neutral IT consultant and Mr. Latsanovski's agreement to pay for those protocols. Based on an assertion of attorney-client privilege, the remaining Individual Defendants,[6] however, has refused to provide email credentials for any of

---

including Doron, his wife, and children and many, many personal items demonstrating Doron's permanent occupation of that office, the computer access information was provided.

[5] Bond has communicated directly with my counsel and reports not having any work email accounts or records related to the operation of the Receivership Defendants.

[6] Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi, and Roi Reuveni (all individual defendants except Mr. Latsanovski and Mr. Bond) are referenced above collectively as the "Nottea Defendants." All of the Nottea Defendants are currently represented by Robert M. Ungar and William Rothbard. Following extensive negotiations focused on obtaining a negotiated compromise to the issue presented above, Mr. Rothbard informed me on June 30, 2015 that Motti Nottea and Doron Nottea had engaged new counsel. As of the time of filing, new counsel has not made an appearance, however. Changes in representation, particularly in light of the extensive time given Doron and Motti through their prior counsel, are no excuse for the continuing failure to comply with the Receivership Order.

the Nottea Defendants or any of the emails accounts used by or affiliated with the Receivership Defendants.[7]

14. I have exchanged multiple emails with counsel for the Nottea Defendants, including providing authorities supporting the arguments below, in an attempt to resolve this issue without the Court's assistance. Nonetheless, to date the Nottea Defendants have failed and refused to provide any email credentials for email accounts used by the Receivership Defendants (or to even identify all email accounts used by those entities), and continue to assert a privilege regarding documents which may be located in the computers at the Office. The Nottea Defendants' refusal is premised on the assertion of privilege in documents and email accounts created by, used by, or owned by the Receivership Defendants.

15. The Nottea Defendants' failure to provide the requested documents and email account and access information violates numerous provisions of the Receivership Order and vastly increases the costs to the receivership estate in attempting to obtain all documents of the Receivership Defendants, including those saved to email accounts.

16. The Receivership Order authorizes me to file an *Ex Parte* "Affidavit of Noncompliance" regarding any persons' failure to comply with the terms of the Order

---

[7] To date, the Nottea Defendants have likewise failed to provide most information required by the Receivership Order, and have failed to provide most information I have specifically requested, including but not limited to their sworn financial statements, identification of the locations of inventory, other business locations used by the Receivership

- 7 -
RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND EMERGENCY MOTION
TO COMPEL PRODUCTION OF DOCUMENTS AND INFORMATION

and request turnover of assets or any other equitable writs or relief necessary to enforce the Order. Receivership Order, ¶ XVII.[8] Accordingly, I request that the Court issue an order compelling the Nottea Defendants to immediately identify all email accounts and addresses used in connection with or in operation of the Receivership Defendants, and produce all documents of the Receivership Defendants and all usernames and passwords for email accounts used in connection with the business of the Receivership Defendants.

17. I respectfully request that the Court review the relief requested above, on an emergency basis.[9] The Permanent Injunction hearing is currently set for August 6, 2015, and despite the Receivership Order's requirement that the information above be provided *immediately or within five hours of request*, two weeks have passed since the Nottea Defendants were first asked to provide this information. The Nottea Defendants' refusal to comply with my initial requests and their counsel's continued persistence in refusing to provide the requested information based on a privilege that

---

Defendants, and a list of all entities and their owners, officers or directors with which the Nottea Defendants or the Receivership Defendants are affiliated. A motion regarding that issue will be forthcoming if not immediately corrected.

[8] "In the event that any person or entity fails to deliver or transfer any asset or document or otherwise fails to comply with any provision of this Section [requiring turnover of property, documents, data and all information necessary to access documents], the Temporary Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Temporary Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other item covered by this Section and to deliver it to the Temporary Receiver." Receivership Order, ¶ XVII.

[9] The Receiver respectfully requests that the Court order a Response from the Nottea Defendants be filed before the close of business on July 6, 2015 and that any Reply be filed on behalf of the Receiver before the close of business on July 8, 2015.

either does not exist for dissolved entities, or which I hold for any active entities, creates an urgent need for production of the requested information and documents.[10]

## ARGUMENT

The Receiver cannot perform her mandate without access to all documents of the Receivership Defendants, including the email accounts used by the Receivership Defendants. Because of the emergency nature of the Receivership Order and the mandate in it, timing is crucial. Likewise, the Receivership has a good faith belief and evidence that *someone* has already deleted some information from at least one email account utilized by the Nottea Defendants' in operating the Receivership Defendants.

The Receivership Order requires that the Nottea Defendants transfer possession of all documents of the Receivership Defendants to the Receiver, and specifically requires the Defendants to provide the Receiver with the means to access such documents *within five hours of a request*. Receivership Order, ¶¶ XVII - XVIII. Likewise, the Receivership Orders requires Defendants to provide all computers and data, including all user names, codes and passwords necessary to gain access or secure the Receivership Defendants documents, *immediately upon request*. Further, the law defeats the Nottea Defendants' on reliance on an attorney-client privilege as an excuse for complying with the Receivership Order's provisions.

---

[10] Moreover, based on access to one email account that the Defendants did not know we had obtained, I discovered that information viewed in one email account on June 18th and 19th related to the Receivership Defendants' operations, has been deleted. Evidence is being gathered regarding the individual responsible for this matter, and the issue will be presented to the Court in the future.

With regard to dissolved receivership defendants, Courts have repeatedly held that a "dead" corporation does not have the same privileges as a "dead" person. *See Gilliland v. Geramita*, 2006 WL 2642525 at *5 (W.D.Pa. 2006) (holding that insolvent companies were not permitted to assert the attorney-client privilege and documents were ordered produced); *Lewis v. United States*, 2004 WL 3203121 at *4 (W.D.Tenn. 2004) (holding that a defunct corporation could not assert the attorney-client privilege). California federal courts follow the same rule. *Lopes v. Viera*, 688 F. Supp. 2d 1050, 1061 (E.D.Cal.) *on reconsideration*, 719 F. Supp. 201199 (E.D. Cal. 2010)("Similarly, a corporation dissolved pursuant to California law may not invoke or waive the attorney-client privilege even when it must defend itself as a party to litigation.") For instance, in *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193 (C.D.Cal. 2007), the Court strictly construed the privilege and found that a dissolved corporation lost its right to assert the attorney-client privilege when its dissolution was complete. *Id*. at 1201.

No dispute exists that the Dissolved Receivership Defendants are in fact dissolved. Accordingly, those entities have no privilege to assert, and the Nottea Defendants' refusal to identify the email accounts used by those Dissolved Receivership Defendants, the credentials necessary to access those accounts, and produce and all documents related to those entities' operation wholly lacks support or justification.

Moreover, only the Receiver can assert the attorney-client privilege on behalf of the Active Receivership Defendants. *U.S. v. Plache*, 913 F.2d 1375, 1381 (9th Cir. 1990)(Holding that the right to assert the attorney-client privilege on behalf of a corporation passed when a receiver was appointed by the court); *see also, Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985)(Holding bankruptcy trustee held the privilege for the debtor entity, because "[d]isplaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties."). Thus the Active Receivership Defendants no longer have the authority to assert any privilege, nor do the Nottea Defendants have such authority on behalf of the Active Receivership Defendants.

And of course, counsel for the Nottea Defendants represents *only* Adageo, LLC and thus has no standing to assert a privilege for entities they do not represent. Moreover, the Nottea Defendants have made absolutely no showing that any of those individuals would even be entitled to assert any privilege on behalf of any of the Active Receivership Defendants. Indeed, the manner in which the Receivership Defendants and the many additional entities affiliated with the Receivership Defendants are structured, demonstrates a conscious effort by the Nottea Defendants to distance themselves from those Receivership Defendants, despite evidence

demonstrating the Nottea Defendants' control and receipt of proceeds from those Receivership Defendants' on-line sales and skin-care promotion campaigns.

No privilege exists for the Dissolved Receivership Defendants, the Nottea Defendants lack standing to assert any privilege for the Active Receivership Defendants other than Adageo, and any privilege for all Active Receivership Defendants is held by the Receiver. Accordingly, the Receiver respectfully requests that the Court issue an order compelling the Nottea Defendants to immediately produce all documents of the Receivership Defendants, identify all email accounts used in connection with the operation or control of the Receivership Defendants, and provide all email credentials necessary for the Receiver to access those email accounts.

Further, the Receiver requests that the Nottea Defendants be directed to pay the costs and expenses incurred by the receivership estate in connection with this motion.[11] Rule 37 provides that if a motion to compel is granted, "…the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed.R.Civ.P. 37(a)(5)(A). The Receiver respectfully requests that any costs and expenses awarded include the costs and expenses incurred in implementing any

---

[11] If the Court is inclined to award such costs and fees, the Receivership will submit a Declaration detailing those costs and fees.

privilege protocols requested by the Nottea Defendants.[12]  The Receiver requests such other and further relief to which she may show herself entitled.

I, Charlene C. Koonce, declare under penalty of perjury under the laws of the United States of America that I am over the age of 18 years, have never been convicted of a crime involving moral turpitude, and am competent to make this Declaration.  I have personal knowledge of the facts stated above, each of which are true and correct.

>	*/s/Charlene Koonce*
>	Charlene C. Koonce
>	500 N. Akard Street, Suite 2700
>	Dallas, Texas 75201
>	Telephone: 214-706-4200
>	Telecopier: 214-706-4242
>	**Receiver**
>	*Pro Hac Vice Motion Pending*
>
>	**SCHEEF & STONE, L.L.P.**
>	Brandi J. McKay (California SBN 203941)
>	500 N. Akard Street, Suite 2700
>	Dallas, Texas 75201
>	Telephone: 214-706-4200
>	Telecopier: 214-706-4242
>
>	**Counsel for Receiver**

---

[12] The Receiver agreed with counsel for the Nottea Defendant that certain privilege protocols could be implemented until the issues raised in this motion regarding attorney-client privilege could be determined by the Court and also agreed that privilege protocols were appropriate for email accounts utilized solely by the Nottea Defendants in their individual capacity. The purpose of the agreement was to expedite production of the requested documents and information, while the Court resolves the issue. To date, the Receiver and the Nottea Defendants' counsel, however, have been unable to reach agreement regarding how any such privilege protocols would apply to the Receivership Defendants' emails and documents.

## CERTIFICATE OF CONFERENCE

The undersigned certifies that beginning on June 18, I requested the information described above from the Nottea Defendants. I have been requesting the same information from their counsel since his engagement (which occurred not later than June 22, 2015), and began discussing privilege issues and potential agreements to avoid this motion, not later than June 27, 2015. The Nottea's counsel, William I. Rothbard and I have conferred extensively, in a good faith effort to avoid the necessity of this Motion. Mr. Rothbard and I were unable to reach an agreement regarding the relief sought in this motion, but will continue discussions in effort to reach an agreement and will advise the Court immediately if any such agreement is reached. I have had no communications with any other counsel on behalf of any of the Nottea Defendants but the names of new counsel for Doron Nottea and Oz Misrahi were provided to me at approximately 11:00 am CST on July 1, 2015. A copy of this Motion will be emailed to those attorneys. No new attorney has been identified for Motti Nottea.

　　　　　　　　　　　　　　　　　　　*/s/ Charlene C. Koonce*
　　　　　　　　　　　　　　　　　　　CHARLENE C. KOONCE

# CERTIFICATE OF SERVICE

The undersigned certifies that on July 1, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

William I. Rothbard  
1217 Yale Street, #104  
Santa Monica, CA  90404  
bill@rothbardlaw.com  

Reid Tepfer  
Luis Gallegos  
Brent D. McPeek  
Federal Trade Commission  
1999 Bryan Street, Suite 2150  
Dallas, TX  7520  
rtepfer@ftc.gov  
lgallegos@ftc.gov  
bmcpeek@ftc.gov  

Marc S. Harris  
Scheper Kim & Harris, LLP  
601 W. Fifth Street, 12th Floor  
Los Angeles, CA 90071  
mharris@scheperkim.com  

Robert M. Ungar  
Crosswind Law  
14724 Ventura Blvd Penthouse  
Sherman Oaks, CA 91403  
rmu@crosswindlaw.com  

Additionally, Michael Stoller, and Erik Syverson, have been identified as counsel for Doron Nottea and Oz Mizrahi respectively and will be served electronically with a copy of this Motion.

*/s/ Charlene C. Koonce*  
CHARLENE C. KOONCE