Michael J. Weiss (SBN 206473)
**ABRAMS GARFINKEL MARGOLIS BERGSON, LLP**
5900 Wilshire Blvd. Suite 2250
Los Angeles, CA 90036
310-300-2900
310-300-2901- Fax
Mweiss@agmblaw.com

Kelly M. Crawford (TX SBN 05030700)
*Admitted Pro Hac Vice*
David B. Dyer (TX SBN 06313500)
*Admitted Pro Hac Vice*
Brandi J. McKay (SBN 203941)
**SCHEEF & STONE, L.L.P.**
500 N. Akard, Suite 2700
Dallas, Texas  75201
214-706-4200
214-706-4242 - Fax
Kelly.crawford@solidcounsel.com
David.dyer@solidcounsel.com
brandi.mckay@solidcounsel.com

Attorneys for Receiver
CHARLENE C. KOONCE

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> BUNZAI MEDIA GROUP, INC., a California corporation, also doing business as AuraVie and Miracle Face Kit; et. al., <br><br> Defendants. | Case No. 2:15-CV-4527-GW(PLAx) <br><br> **RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND EMERGENCY MOTION FOR SHOW CAUSE HEARING** |

Charlene Koonce, the Court-appointed Temporary Receiver, files this Affidavit of Non-Compliance and moves the Court for a "Show Cause" Hearing for Adageo, LLC; Alon Nottea; and Roi Reuveni (the "Noncompliant Defendants") to demonstrate why they should not be held in civil contempt for violating various provisions of the Receivership Order. Pursuant to the terms of the Receivership Order described below, the Temporary Receiver requests that the Noncompliant Defendants provide the Temporary Receiver with access to certain electronically stored information ("ESI") and other documents. In support, the Receiver respectfully shows the Court as follows:

## BACKGROUND

1. On June 16, 2015, the Court issued the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue[1] (the "Receivership Order").

2. The Receivership Order defines Receivership Defendants as

"Bunzai Media Group, Inc., d/b/a AuraVie and Miracle Face Kit; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc., also doing business as AuraVie Distribution; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; Calenergy, Inc.; KAI Media, Inc.; Insight Medial, Inc.; and their successors and assigns, as well as any subsidiaries, fictitious business entities, or business names created or used by these entities or by the Individual Defendants that are related to, or receive funds from, the sale of skincare or other products online."

---
[1] Document 14.

Receivership Order ¶ 4(b). Similarly, the term "Individual Defendants" refers to Alon Nottea, Motti Nottea, Doron Nottea, Igor Latsanovski, Oz Mizrahi, Roi Reuveni, and Khristopher Bond a/k/a Ray Ibbot, individually, collectively, or in any combination. Receivership Order ¶ 4(a).

3. The Receivership Order requires

> "Defendants and Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person with possession, custody or control of assets or documents relating to the Receivership Defendants shall upon notice of this Order … immediately transfer or deliver to the Temporary Receiver possession, custody, and control of, the following: …
> B. All documents of the Receivership Defendants…;
> C. All computers and data in whatever form used to conduct the business of the Receivership Defendants; and
> D. All usernames, keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants…

Receivership Order, ¶ XVII.

4. Furthermore, the Receivership Order requires

> "Defendants and Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order shall fully cooperate with and assist the Temporary Receiver in taking and maintaining possession, custody, or control of the assets and documents of the Receivership Defendants. This cooperation and assistance shall include:
>
> A. Providing information to the Temporary Receiver that the Temporary Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Temporary Receiver under this Order;

Receivership Order, ¶ XIX.

5. On June 18, 2015 when I and my team first undertook efforts to serve the Receivership Order and perform its mandate, Receivership Defendants were operating out of leased commercial space located at 6925 Canby Avenue, Units 105 and 109, and 6850 Canby, Unit 103, Reseda, California, 91335 (collectively the "Office").

6. Documents and information located at the time of our initial entry or shortly after, demonstrated that the Receivership Defendants and the Individual Defendants use multiple email accounts and computers in conducting their business. Moreover, documents created by the Defendants demonstrate that each of the Receivership Defendants, as well as many, many other entities, operated from the Office in connection and furtherance of the conduct enjoined by the Receivership Order. The Receivership Defendants and the additional entities are or were subject to the control of at least Doron Nottea, Alon Nottea and/or Roi Rueveni. Signed checks for the Receivership Defendants, bank account passwords, credit cards issued to the entities, active and up-to-date Quick Books entries, mail, RSA devices necessary to access the entities' bank accounts, as well as summaries regarding the nature of the business conducted by these entities (i.e, "free trial sales" "marketing" etc.) were all located in the Office or on the Office computers and substantiate the Individual Defendants' control over the Receivership Defendants.

7. Beginning on June 18, 2015 at approximately midnight when my team and I discovered email addresses for the Individual Defendants, I emailed a copy of the Receivership Order to each and requested that each provide extensive information including, all documents of the Receivership Defendants, and all computer and email credentials. None of the Individual Defendants complied, although Doron Nottea did state that he wished to speak with counsel before providing any information.

8. All of the Individual Defendants have been served with a copy of the Receivership Order and are thus aware of their obligations under the Order. All of the Individual Defendants except Khristopher Bond[2] have retained counsel. In communicating with the Individual Defendants' counsel, I renewed my requests for all documents and email credentials used in connection with the operation of the Receivership Defendants, including the Individual Defendants' email accounts.

9. Email credentials for Mr. Latsanovski and Calenergy, Inc. have been provided, subject to an agreement regarding privilege protocols involving an independent review by a neutral IT consultant and Mr. Latsanovski's agreement to pay for those protocols. Based on an assertion of attorney-client privilege, the remaining Individual Defendants,[3] however, refused to provide email credentials for any of the

---

[2] Bond has communicated directly with my counsel and reports not having any work email accounts or records related to the operation of the Receivership Defendants.

[3] Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi, and Roi Reuveni (all Individual Defendants except Mr. Latsanovski and Mr. Bond) are referenced above collectively as the "Nottea Defendants." Until approximately June 30, 2015, all of the Nottea Defendants were represented by Robert M. Ungar and William Rothbard. Following numerous and repeated demands for the email account identification and credentials from Mr. Rothbard, and extensive negotiations focused on obtaining a negotiated compromise to the issue presented above, Mr. Rothbard provided me with contact

- 5 -
RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING

Nottea Defendants' personal use email accounts, or any of the emails accounts used by or affiliated with the Receivership Defendants.

10. I exchanged multiple emails with counsel for the Nottea Defendants, including providing authorities demonstrating the absence of any privilege for dissolved entities and my control over the privilege for all Receivership Defendants, in an attempt to obtain access to all email accounts, including those of the Receivership Defendants. For more than ten days, the Nottea Defendants failed and refused to provide any email credentials for email accounts used by the Receivership Defendants (or to even identify all email accounts used by those entities), and continued to assert a privilege regarding documents which may be located in the computers at the Office. Notably, more than half of the Receivership Defendants are dissolved, and, counsel for the Nottea Defendants represents only Adageo, LLC, one of the Receivership Defendants. Despite my having provided counsel with authorities demonstrating that dissolved entities have no privilege, and that I as the Receiver hold any privilege for the Receivership Entities, the Nottea Defendants continued withholding identification of and credentials to access all relevant email accounts premised on a claim of privilege.

---

information for a new lawyer who confirmed his representation of Doron Nottea. On or about July 2, 2015, I contacted that lawyer, who confirmed the representation. Subsequently, on July 5, yet different lawyers, James Spertus and Ezra Landes filed notices of appearances for Doron and Motti Nottea.

11. The Receivership Order authorizes me to file an *Ex Parte* "Affidavit of Noncompliance" regarding any persons' failure to comply with the terms of the Order and request turnover of assets or any other equitable writs or relief necessary to enforce the Order. Receivership Order, ¶ XVII.[4] Accordingly, on July 1, 2015, I filed an Affidavit of Non-Compliance, and Emergency Motion to Compel Production of Documents and Information[5] (the "Motion to Compel"), seeking an order compelling the Nottea Defendants to immediately identify all email accounts and addresses used in connection with or in operation of the Receivership Defendants, and produce all documents of the Receivership Defendants and all usernames and passwords for email accounts used in connection with the business of the Receivership Defendants.

12. The Permanent Injunction hearing is currently set for August 6, 2015. I filed the Motion to Compel on an emergency basis because, despite the Receivership Order's requirement that the information above be provided *immediately or within five hours of request*, two weeks had passed since the Nottea Defendants were first asked to

---

[4] "In the event that any person or entity fails to deliver or transfer any asset or document or otherwise fails to comply with any provision of this Section [requiring turnover of property, documents, data and all information necessary to access documents], the Temporary Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Temporary Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other item covered by this Section and to deliver it to the Temporary Receiver." Receivership Order, ¶ XVII.

[5] Document 36. This motion and the relief requested above with respect to the Noncompliant Defendants moots and supersedes the relief requested with respect to those defendants in the Motion to Compel.

provide this information, and yet they had continued in refusing to provide the requested information to me.[6]

13. Within hours after I filed the Motion to Compel, the Noncompliant Defendants' counsel agreed to my terms for a Stipulation for Order Re: Defendants' Non-Waiver of Attorney-Client and Attorney Work Product Privileges in Production of Documents under the Temporary Restraining Order[7] (the "Stipulation"), which the Defendants' had requested. Defendants had initially proposed the Stipulation but offered only broad protections for all emails and documents of the Receivership Defendants', including dissolved entities and entities the Noncompliant Defendants' counsel do not represent. Pursuant to the Stipulation, the Noncompliant Defendants' agreed to:

a) Identify all relevant email accounts and credentials necessary to access them *within 24 hours* of execution of the stipulation;

b) Provide hard copies of all Receivership Defendants' documents to me, regardless of any assertion of privilege; and,

c) Identify *personal use* email accounts in which Alon Nottea or Roi Ruenveni asserted privileged communications between either of them and their

---

[6] Moreover, based on access to one email account that the Defendants did not initially know we had obtained, I discovered that information viewed in one email account on June 18th and 19th related to the Receivership Defendants' operations, had been deleted. Evidence is being gathered regarding the individual responsible for this matter, and the issue will be presented to the Court in the future.

[7] Document 44.

counsel would be located and which would thus be subject to the privilege protocols in the Stipulation.

14. The Noncompliant Defendants also requested that I immediately withdraw the Motion to Compel, and because I was in a deposition on July 2, 2015 and could not confer in agreement on all terms of the Stipulation until the deposition ended, requested that I contact the Court to advise the Court of the pending agreement on the Stipulation.  Based on the representation that the Noncompliant Defendants agreed to the terms of the Stipulation and were prepared to provide all of the information required by it, I contacted the Court twice on July 2, 2015.

15. Agreement on the Stipulation was reached at approximately 5 p.m. PST, July 2, 2105.[8]  Yet, Defendants were "unable" to provide any information identifying the relevant email accounts or the passwords until after 1 a.m. on July 3, 2015.

16. More importantly, however, and even more disturbing is the Noncompliant Defendants' evasive and incomplete identification of email amounts. Specifically,  the Noncompliant Defendants (a) failed to identify many email accounts I know were used in connection with their operation of the Receivership Entities, including but not limited to alon@bunzaimedia.com, accounting@pinlogistics.com, mbmanager@mediaurge.com, vigorgect@gmailcom (Alon's primary personal

---

[8] A true and correct copy of the Stipulation, Docket No. 44 is attached as **Exhibit A**.

account), and accounting@sbmmgmt.com;[9] (2) designating Receivership Defendant business email accounts as personal use accounts to obtain potential privilege protection for those email accounts and documents included in the email accounts, for instance email accounts for david@mediaurge.com and frivas@pinlogistics.com;[10] and, (3) designating email accounts as the Noncompliant Defendants' personal use accounts, where the name on the account demonstrates use by neither individual Noncompliant Defendant, for instance, david@mediaurge.com, paul@mediaurge.com, and leor@pinlogistics.com. Additionally, based on email traffic for one account I have been able to access, I know the email accounts the Noncompliant Defendants have designated as personal use, are or were used to conduct the business operations of the Receivership Defendants. For instance, several of those email accounts were used in communicating with vendors, employees, and third parties with whom the Receivership Defendants conducted business.[11]

17. Further, counsel for the Noncompliant Defendants does not represent Media Urge, Inc., or Pinnacle Logistics, Inc. two of the Receivership Defendants

---

[9] I am aware of these email accounts because third parties with whom the Receivership Defendants and the Non-Compliant Defendants emailed and *recently* conducted business provided these email accounts to me, and identified the primary users of the accounts as Alon Nottea or persons subject to his control. Many, many additional accounts exist which were not identified by the Noncompliant Defendants.

[10] A true and correct copy of the Defendant's identification of email accounts is attached as **Exhibit B**. The exhibit was redacted and provided to me by the third party IT firm which is searching personal email accounts for privileged information. The Stipulation allows the Noncompliant Defendants to designate personal use email accounts that will be "segregated for safekeeping by the third party litigation support firm and withheld from the Plaintiff and Temporary Receiver…" Stipulation ¶ 2(d). Noncompliant Defendants are thus designating email accounts which are by definition not personal use, given the inclusion of the entity name in the domain for the account, to obtain the protection of the Stipulation for personal use accounts.

- 10 -
RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING

whose emails the Noncompliant Defendants seek to protect and withhold from me. And Media Urge, Inc. and Pinnacle Logistics, Inc. are dissolved. Despite the absence of standing to assert any privilege in those entities' email accounts, the Noncompliant Defendants are nonetheless attempting to protect and withhold documents for those entities by designating email accounts used by those entities as their personal email accounts.

18. Many more email accounts used by the Receivership Defendants but controlled by the Noncompliant Defendants exist. The Noncompliant Defendants, however, failed to identify those accounts or provide the credentials necessary to access the accounts.

19. The Noncompliant Defendants' conduct demonstrates baseless excuses in failing and refusing to provide the requested email access, followed by dishonesty regarding their ability and willingness to identify relevant email accounts, capped by woefully deficient and disingenuous identification and designation of email accounts.

20. The Noncompliant Defendants' failure to provide the requested documents and email accounts and access credentials violates numerous provisions of the Receivership Order and vastly increases the costs to the receivership estate in attempting to obtain all documents of the Receivership Defendants, including those saved to email accounts. Further, the Noncompliant Defendants' evasive and

---

[11] As an example only, true and correct copies of emails demonstrating the business use of several of the

incomplete identification of email accounts, their attempt to protect accounts utilized by (or at least assigned to) individuals other than the Noncompliant Defendants, as well as the disingenuous designation of business use accounts as personal use, demonstrates the urgency of my need to access the email accounts and documents stored there.

## ARGUMENT

The Receiver cannot perform her mandate without access to all documents of the Receivership Defendants, including the email accounts used by the Receivership Defendants. The Receivership Order requires that the Individual Defendants transfer possession of all documents of the Receivership Defendants to the Receiver, and specifically requires the Defendants to provide the Receiver with the means to access such documents *within five hours of a request*. Receivership Order, ¶¶ XVII - XVIII. Likewise, the Receivership Orders requires Defendants to provide all computers and data, including all user names, codes and passwords necessary to gain access or secure the Receivership Defendants documents, *immediately upon request*. By refusing to provide the usernames and passwords requested by the Receiver, The Noncompliant Defendants are in violation of paragraph XVII of the Receivership Order.

And, the Receivership Order requires that Defendants "fully cooperate with and assist the Temporary Receiver in taking and maintaining possession, custody, or

---

accounts designated by the Noncompliant Defendants are attached as **Exhibit C**.

control of the assets and documents of the Receivership Defendants." Receivership Order, ¶ XIX. However, the Noncompliant Defendants are failing and refusing to "[provide] information to the Temporary Receiver that the Temporary Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Temporary Receiver under this Order…" Receivership Order, ¶ XIX. Thus, the Noncompliant Defendants are also in violation of paragraph XIX of the Receivership Order.

Courts possess inherent authority to enforce compliance with their orders through civil contempt. *See United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). In instances where a party fails and refuses to comply with a valid, lawful, clear order, and yet possessed the ability to comply, the Court may impose a coercive sanction such as incarceration to obtain the parties' compliance. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989)("As we have previously stated, civil contempt is appropriate when a party fails to comply with a specific and definite court order," citing *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984)).

Despite the plain language of the Receivership Order, and even after entering into the Stipulation, the Noncompliant Defendants continue to refuse to provide the information required by the Receivership Order and requested by the Receiver.

Accordingly, the Receiver respectfully requests that the Court issue an Order scheduling a Show Cause hearing at the earliest possible date and time[12] and direct the Noncompliant Defendants to appear and show cause why they should not be held in civil contempt for failing to comply with the Receivership Order as set forth above. In addition, the Receiver requests an order from the court finding that any email account which uses one of the Receivership Defendants' names (i.e. _____@mediaurge.com) is not a personal use email account, and that the Noncompliant Defendants cannot assert any type of personal privilege based on an email that is not their personal account (i.e. a "David" account for "Alon" or "Roi"). Further, the Receiver requests that the Noncompliant Defendants be directed to pay the costs and expenses incurred by the Receivership Estate in connection with this motion, as well as the additional IT costs related to the on-going efforts to obtain access to the email accounts at issue.[13] Finally, the Receiver requests such other and further relief to which she may show herself entitled.

I, Charlene C. Koonce, declare under penalty of perjury under the laws of the United States of America that I am over the age of 18 years, have never been convicted of a crime involving moral turpitude, and am competent to make this Declaration. I have personal knowledge of the facts stated above, each of which are true and correct.

---

[12] The Receiver can be in Los Angeles for a hearing upon approximately 24 hours' notice. Alternatively, she can be available by telephone upon three hours' notice.

[13] If the Court is inclined to award such costs and fees, the Receivership will submit a Declaration detailing those costs and fees.

/s/Charlene Koonce
Charlene C. Koonce (Texas SBN 11672850)
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Charlene.koonce@solidcounsel.com
Telephone: 214-706-4200
Telecopier: 214-706-4242

*Receiver*

**SCHEEF & STONE, L.L.P.**
Kelly M. Crawford (Texas SBN 05030700)
Kelly.crawford@solidcounsel.com
*Admitted Pro Hac Vice*
David B. Dyer (Texas SBN 06313500)
David.dyer@solidcounsel.com
*Admitted Pro Hac Vice*
Brandi J. McKay (California SBN 203941)
Brandi.mckay@solidcounsel.com
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: 214-706-4200
Telecopier: 214-706-4242

*Counsel for Receiver*

## CERTIFICATE OF CONFERENCE

I conferred extensively and multiple times with the Noncompliant Defendants' counsel about the information requested, prior to entry of the Rule 502 Stipulation. Because Defendants' partial, evasive designation and disingenuous claims regarding personal email use following entry of the Stipulation demonstrate an intentional and continuing disregard for the requirements of the Receivership Order, I am presenting the matter to the Court without further conference, as authorized by paragraph XVII of the Receivership Order.

*/s/ Charlene C. Koonce*
CHARLENE C. KOONCE

# CERTIFICATE OF SERVICE

The undersigned certifies that on July 6, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

| | |
|---|---|
| Tom Vidal<br>Michael Weiss<br>Nina Nahal Ameri<br>Abrams Garfinkle Margolis Bergson<br>5900 Wilshire Blvd Suite 2250<br>Los Angeles, CA 90036<br>nameri@agmblaw.com<br>*Local counsel for Receiver* | James W. Spertus<br>Ezra D. Landes<br>Spertus, Landes & Umhofer, LLP<br>1990 South Bundy Drive, Suite 705<br>Los Angeles, CA 90025<br>jim@spertuslaw.com<br>ezra@spertuslaw.com<br>*Counsel for Doron Nottea and Motti Nottea* |
| Erik S Syverson<br>Raines Feldman LLP<br>9720 Wilshire Boulevard Fifth Floor<br>Beverly Hills, CA 90212<br>esyverson@raineslaw.com<br>*Counsel for Oz Mizrahi, as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.* | Marc S. Harris<br>Scheper Kim & Harris, LLP<br>601 W. Fifth Street, 12th Floor<br>Los Angeles, CA 90071<br>mharris@scheperkim.com<br>*Counsel for Igor Latsanovski and Calenergy, Inc.* |
| Robert M. Ungar<br>Crosswind Law<br>14724 Ventura Blvd Penthouse<br>Sherman Oaks, CA 91403<br>rmu@crosswindlaw.com<br>*Counsel for Alon Nottea, Roi Rueveni and Adageo, LLC* | Reid Tepfer<br>Luis Gallegos<br>Federal Trade Commission<br>1999 Bryan Street, Suite 2150<br>Dallas, TX 75201<br>rtepfer@ftc.gov<br>lgallegos@ftc.gov |

Raymond E McKown
Federal Trade Commission
10877 Wilshire Boulevard Suite 700
Los Angeles, CA 90024
rmckown@ftc.gov

A copy of the foregoing document was emailed to:

William I. Rothbard
1217 Yale Street, #104
Santa Monica, CA  90404
bill@rothbardlaw.com
*Co-Counsel for Alon Nottea, Roi Rueveni and Adageo, LLC*

                                        */s/  Charlene C. Koonce*
                                        CHARLENE C. KOONCE