Michael J. Weiss (SBN 206473)
**ABRAMS GARFINKEL MARGOLIS BERGSON, LLP**
5900 Wilshire Blvd. Suite 2250
Los Angeles, CA 90036
310-300-2900
310-300-2901- Fax
Mweiss@agmblaw.com

Kelly M. Crawford (TX SBN 05030700)
*Admitted Pro Hac Vice*
David B. Dyer (TX SBN 06313500)
*Admitted Pro Hac Vice*
Brandi J. McKay (SBN 203941)
**SCHEEF & STONE, L.L.P.**
500 N. Akard, Suite 2700
Dallas, Texas  75201
214-706-4200
214-706-4242 - Fax
Kelly.crawford@solidcounsel.com
David.dyer@solidcounsel.com
brandi.mckay@solidcounsel.com

Attorneys for Receiver
CHARLENE C. KOONCE

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>BUNZAI MEDIA GROUP, INC., a California corporation, also doing business as AuraVie and Miracle Face Kit, et al.<br><br>    Defendants. | Case No. 2:15-CV-4527-GW(PLAx)<br><br>**RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE, AND EMERGENCY MOTION FOR SHOW CAUSE HEARING** |

Charlene Koonce, the Court-appointed Temporary Receiver (the "Receiver"), files this Affidavit of Non-Compliance, and moves the Court for a "Show Cause" Hearing for Motti Nottea and Doron Nottea (herein, the "Nottea Defendants") to demonstrate why they should not be held in civil contempt for violating numerous provisions of the Receivership Order outlined below.   In support, the Receiver respectfully shows the Court as follows:

## BACKGROUND

1.     On June 16, 2015, the Court issued the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Receivership Order").

2.     The Receivership Order required

"...Defendants shall each:
A. Within five (5) days after service of this Order, prepare and provide to Plaintiff and the Temporary Receiver complete and accurate financial statements, on the forms attached as **Attachments A** and **B** of this Order, disclosing all personal assets and all assets of corporations, partnerships, trusts or other entities that each Defendant owns or controls, jointly or individually…"

*Receivership Order*, ¶ VII.

3.     Further, the Receivership Order required

"…If any assets or documents relating to the Receivership Defendants' finances or business practices are located in the residence of any Defendant or are otherwise in the custody or control of any Defendant, then such Defendant

shall produce them to the Temporary Receiver within forty-eight (48) hours of service of this Order."

*Receivership Order*, ¶ XV.

4.      The Receivership Order also required

"Defendants shall provide to the Temporary Receiver, immediately upon request, without need of any subpoena or further order, the following:
        A. A list of all locations where documents of the Receivership Defendants are located, and the means to access such documents within five hours of the Temporary Receiver's request; and
        B. Within forty-eight (48) hours of service of this Order, the Receivership Defendants shall produce to the Temporary Receiver a list of all agents, employees, officers, and those persons in active concert and participation with it, who have been associated or done business with the Receivership Defendant(s).

*Receivership Order*, ¶ XVIII.

5.      Finally, the Receivership Order requires

"Defendants and Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order shall fully cooperate with and assist the Temporary Receiver in taking and maintaining possession, custody, or control of the assets and documents of the Receivership Defendants. This cooperation and assistance shall include:

        A. Providing information to the Temporary Receiver that the Temporary Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Temporary Receiver under this Order;

*Receivership Order*, ¶ XIX.

6.      On June 18, 2015, my team and I undertook efforts to serve the Receivership Order and began performing its mandate.  At the time of my initial entry into the leased commercial space utilized by the Receivership Defendants at 6925

RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING

Canby Avenue, Units 105 and 109, and 6850 Canby, Unit 103, Reseda, California, 91335 (collectively the "Office"), I personally served a copy of the Receivership Order on Defendant Doron Nottea and informed him of his obligation to comply with its provisions and assist me in securing the compliance of all Individual Defendants with all terms of the Receivership Order, including providing me with documents and information.

7.    Motti Nottea and all of the other Individual Defendants have since also been served with a copy of the Receivership Order and are thus aware of their obligations under the Order.

8.    Beginning on June 18, 2015 at approximately midnight when my team and I discovered email addresses for the Individual Defendants, I emailed a copy of the Receivership Order to each and requested that each provide extensive information including, all documents of the Receivership Defendants, and all computer and email credentials.  None of the Individual Defendants complied, although Doron Nottea did state that he wished to speak with counsel before providing any information.

9.    The Nottea Defendants, along with other Individual Defendants except Kristopher Bond and Igor Latsinovski, initially hired Robert M. Unger and William Rothbard to represent them in this matter.  I and my counsel had *extensive* communications with Mr. Rothbard and Mr. Unger, pursuant to which I requested very specific information from the Nottea Defendants.

10.    In communicating with the Individual Defendants' counsel, I renewed my requests for all documents used in connection with the operation of the Receivership Defendants, including email credentials for email accounts used by the Receivership Defendants, financial statements, bank account information, and information regarding all persons and entities through which the Defendants do business or with which they are affiliated.  I sent multiple emails to the Individual Defendants' counsel requesting specific data in an attempt to resolve this issue without the Court's assistance.  Mr. Rothbard and Mr. Unger provided limited access to some bank accounts and QuickBooks, along with a password and access to Doron Nottea's computer, and the signed Consent to repatriate assets.[1]  On July 6, 2015, counsel for Alon Nottea, Roi Rueveni and Adageo, LLC, provided additional information, which I am currently reviewing.

11.    To date, Doron Nottea and Motti Nottea have failed and refused to provide the following requested information, including:

a.    The identity of all email accounts used to conduct the business of the Receivership Defendants and any affiliated entities engaged in the same or similar business activities (*i.e.*, All Star Beauty Products, Focus Media Solutions, DMA Media Holdings, Shalita Holdings, Trigen, LLC, etc.), and all credentials necessary to log in to those email accounts and access all data (including documents) stored there;[2]

---

[1] The information the Nottea defendants initially provided was largely available to me through requests to banks, a fact of which Defendants were aware which I believe dictated the information that they chose to provide and that which was withheld.

[2] An Affidavit of Non-Compliance and an Emergency Motion to Compel with respect to these email issues is pending.  [Docket No. 47] This Motion for Show Cause Hearing is in the further alternative to the relief requested in the Motion to Compel, with respect to Defendants Motti and Doron Nottea.

     b.     Complete and accurate financial statements in the form of Attachments A and B to the Receivership Order, which were due 5 days after service of the Receivership Order;

     c.     A list of all locations where documents of the Receivership Defendants are located, and the means to access such documents (including passcodes, etc.), which was due within 48 hours after the Receiver first requested the information; and

     d.     A list of all agents, employees, officers, and those persons in active concert and participation with Doron Nottea, who have been associated or done business with the Receivership Defendants.  This information was due within 48 hours after the Receiver first requested it.[3]

     e.     Identification of all entities through which the Nottea Defendants conduct business, including the date of incorporation, the active/dissolved status of the entity, the officers, directors and owners of those entities, a list of bank accounts for those entities, including the signatories on the accounts and the current balances, and the nature of business in which each is engaged.[4]

     f.     Confirmation that Doron Nottea served a copy of the TRO on all such entities, employees, agents and persons acting in concert with the Receivership Defendants;

     g.     Password/user names and all credentials necessary to access all webpages used to "push" traffic to the sites used by Defendants to sell skin-care products, including Auravie, LeOR and Dellure;

     h.     Password/user names, answers to all "security/challenge" questions or other credentials necessary to access *all* on-line bank accounts for the individual defendants, the Receivership Defendants, and all affiliated entities,

---

[3] As discussed below, my partner and lead counsel, Kelly Crawford, also sent follow up emails to Mr. Stoller on July 1, 2015, and on July 5, 2015 to James Spertus and Ezra Landes, the Nottea Defendants' third set of attorneys, requesting this information and indicating I would file an Affidavit of Non-Compliance if the requested information was not provided immediately.

[4] The Receivership Defendants' documents, as well as information available on the computers in the Receivership Defendants' business location and bank records, deposit slips, mail, endorsement stamps and credit cards demonstrate *dozens* of entities operated by or affiliated with the Nottea Defendants and the Receivership Defendants, many of which utilize merchant accounts to sell skin care products on-line, or which receive funds from entities which conduct that enjoined conduct.

RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING

including in addition to those named Receivership Defendants, Secured Merchants, Secured Commerce, Impulse Media Group, Insight Media Group, Shalita Holdings; Chargeback Armor, Focus Media Solutions, and DMA Media Holdings, LLC; and

       i.     Agreement by Doron Nottea for the Receiver to open and inspect the contents of his safe deposit box at Bank of America.[5]

12.    Mr. Rothbard informed me on June 30, 2015 that Doron and Motti Nottea had engaged new counsel, and identified Michael Stoller as new counsel. I and my counsel immediately sent requests to Mr. Stoller for the information listed above, which the Nottea Defendants had failed and refused to provide, despite representation by Mr. Rothbard and Mr. Unger for more than 10 days.  On or about July 2, 2015, Mr. Stoller confirmed his representation, but provided none of the requested information. Subsequently, on July 5, 2015, Ezra Landes and James Spertus filed notices of appearance for Motti and Doron.  Within less than 30 minutes of the time at which counsel filed their Notices of Appearance, I and my counsel had each sent demands for the outstanding information, provided notice of the pending motion to compel, and provided notice that this Motion would be filed on today's date if the information requested above was not provided before midnight on July 5, 2015.  Doron and Motti's counsel stated they "would" provide "much of" the requested information the next day. I then requested that to demonstrate their intent to provide all of what was requested,

---

[5] The Receiver found the key to the safe deposit box at the Office, and asked Nottea to identify the location of the safe deposit box.  He refused, but Bank of America identified the location.  Although the Receiver informed Nottea that all of his assets were frozen, including the safe deposit box, before he left the Office, Nottea went immediately to

RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING

they identify the email accounts for the entities and provide the credentials to access them, by the end of the night.  I informed Doron and Motti's counsel that if the email information was produced before midnight on July 5, 2015, I would hold off on filing this Motion.  As of the time of filing this Motion, no information has been received from Doron or Motti's current counsel.

13.     Changes in representation, particularly in light of the extensive time given Doron Nottea and Motti Nottea through their prior counsel, are no excuse for their continuing failure to comply with the Receivership Order.  Doron and Motti Nottea are responsible for their failure and refusal to provide the requested information.

14.     Further, Doron and Motti have been, and are, wholly uncooperative and uncommunicative and have sought to hinder my performance of my duties as Receiver.  For example, Doron Nottea, using accounting818@gmail.com, quickly deleted information from his email account after receiving notice of the Temporary Restraining Order.[6]  Moreover, my request for account identification and access to email accounts of the Receivership Defendants has been repeatedly denied by the Nottea Defendants, which necessitated the filing of the pending Receiver's Affidavit of

---

Bank of America and asked for access to the box, lying to the branch manager by stating he "had lost his key."  Bank of America denied the access.

[6] Based on access to one email account that the Defendants did not know we had obtained, I  discovered that information viewed in one email account on June 18th and 19th related to the Receivership Defendants' operations, has been deleted.  The email account at issue receives emails in which the senders address Doron Nottea.  Google generally maintains copies of deleted data, however, and I am in the process of obtaining the deleted information from Google.

RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING

Non-Compliance, and Emergency Motion to Compel Production of Documents and Information by the Receiver.

15.    Doron and Motti Nottea's failure to provide the requested information violates numerous provisions of the Receivership Order, and vastly increases the costs to the receivership estate in attempting to obtain all documents of the Receivership Defendants, and the information necessary to report to the Court as required by the Receivership Order.

16.    The Receivership Order authorizes me to file an *Ex Parte* "Affidavit of Noncompliance" regarding any persons' failure to comply with the terms of the Order, and request turnover of assets or any other equitable writs or relief necessary to enforce the Order.  Receivership Order, ¶ XVII.[7]  Accordingly, to obtain the necessary financial statements, bank account information, affiliated entity information and all documents of the Receivership Defendants, I request a Show Cause hearing at which Doron Nottea and Motti Nottea are directed to demonstrate why they should not be held in civil contempt and incarcerated until such time as they provide the requested information.

---

[7]  "In the event that any person or entity fails to deliver or transfer any asset or document or otherwise fails to comply with any provision of this Section [requiring turnover of assets to the Receiver], the Temporary Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Temporary Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other item covered by this Section and to deliver it to the Temporary Receiver." *Receivership Order*, ¶ XVII.

RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING

17.    I respectfully request that the Court review the relief requested above, on an emergency basis.  The Permanent Injunction hearing is currently set for August 6, 2015, and despite the Receivership Order's requirement that the information above be provided *immediately or within 48 hours of receiving the Order*, over two weeks have passed since the Nottea Defendants were first asked to provide this information.  Their refusal to comply with my initial requests, their continued persistence in refusing to provide the requested information, and Doron Nottea's efforts to destroy and hide evidence and other requested documents, creates an urgent need for production of the information and documents requested herein.

## ARGUMENT

Access to bank account information, financial statements and information regarding entities under which the Nottea Defendants do business is crucial for the Receiver to perform her mandate. The Receivership Order implicitly recognizes the importance of that access by requiring *within 48 hours of service of the Order* that Defendants turn over documents and assets relating to the business practices of the Receivership Defendants, identify locations where the documents are stored and provide access to the documents, and provide a list of agents, employees and entities affiliated with the Receivership Defendants. *Receivership Order*, ¶ XV, XVIII. Further, the Receivership Order specifically requires the turnover of complete and

accurate financial statements within five days after service of the Order. *Receivership Order*, ¶ VII.

By refusing to provide the financial statements, asset information, affiliated entity information, and other information requested by the Receiver, the Nottea Defendants are in violation of paragraphs VII, XV, and XVIII of the Receivership Order.

Likewise, the Receivership Order requires that "Defendants ... shall fully cooperate with and assist the Temporary Receiver in taking and maintaining possession, custody, or control of the assets and documents of the Receivership Defendants." Receivership Order, ¶ XIX. The Nottea Defendants are failing and refusing to "[provide] information to the Temporary Receiver that the Temporary Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Temporary Receiver under this Order…" Receivership Order, ¶ XIX. Thus, the Nottea Defendants are also in violation of paragraph XIX of the Receivership Order.

Courts possess inherent authority to enforce compliance with their orders through civil contempt. *See United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). In instances where a party fails and refuses to comply with a valid, lawful, clear order, and yet possessed the ability to comply, the Court may impose a coercive sanction such as incarceration to obtain the parties' compliance. *Int'l Union, United*

*Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989)("As we have previously stated, civil contempt is appropriate when a party fails to comply with a specific and definite court order," citing *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984)).

Accordingly, the Receiver respectfully requests that the Court issue an Order scheduling a Show Cause hearing at the earliest possible date and time[8] and directing Doron and Motti Nottea to appear and show cause why they should not be held in civil contempt and incarcerated until such time as each complies with the Receivership Order as set forth above. Further, the Receiver requests that Doron and Motti Nottea be directed to pay the costs and expenses incurred by the Receivership Estate in connection with this motion, as well as the additional costs related to the on-going efforts to obtain financial statements and the pertinent information requested by the Receiver and described herein.[9] The Receiver requests such other and further relief to which she may show herself entitled.

I, Charlene C. Koonce, declare under penalty of perjury under the laws of the United States of America that I am over the age of 18 years, have never been convicted

---

[8] The Receiver respectfully requests that the Court order schedule the Show Cause Hearing at the earliest possible date and time. She can attend such a hearing on 24 hours' notice, or if the court prefers, attend by telephone.
[9] The Nottea Defendants are required to pay their counsel from sources other than their frozen personal assets. The Receiver respectfully requests that they use the same source to pay the costs and fees associated with this motion.

RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING

of a crime involving moral turpitude, and am competent to make this Declaration.  I

have personal knowledge of the facts stated above, each of which are true and correct.

*/s/Charlene Koonce*
Charlene C. Koonce (Texas SBN 11672850)
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: 214-706-4200
Telecopier: 214-706-4242
charlene.koonce@solidcounsel.com

**Receiver**
*Admitted Pro Hac Vice*


**SCHEEF & STONE, L.L.P.**
Kelly M. Crawford (Texas SBN 05030700)
Kelly.crawford@solidcounsel.com
*Admitted Pro Hac Vice*
David B. Dyer (Texas SBN 06313500)
David.dyer@solidcounsel.com
*Admitted Pro Hac Vice*
Brandi J. McKay (California SBN 203941)
Brandi.mckay@solidcounsel.com
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: 214-706-4200
Telecopier: 214-706-4242

***Counsel for Receiver***

RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING

## CERTIFICATE OF CONFERENCE

I personally conferred with Doron Nottea about the information requested on the day I served him with the TRO, June 18, 2015.  I also conferred extensively and multiple times with Doron and Motti Nottea's prior counsel about the information requested.  And, I or my counsel have conferred with Doron and Motti's current counsel, their third, requesting the same information.  I provided current counsel notice on July 5, 2015 at approximately 3:00 p.m. CST that I would be filing this motion on July 6, 2015, but agreed to wait on filing this motion if Doron and Motti provided the email accounts and credentials which are the subject of a motion to compel, by midnight on July 5, 2015. No information was provided, however. Because information has already been deleted from an email account subject to Doron's control, because neither Doron or Motti have demonstrated any intention to provide the information the Receivership Order required them to provide within hours of notice of the Order, I am presenting the matter to the Court without further conference, as authorized by paragraph XVII of the Receivership Order.

*/s/  Charlene C. Koonce*
CHARLENE C. KOONCE

RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 6, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court.  The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd Suite 2250
Los Angeles, CA 90036
nameri@agmblaw.com
*Local counsel for Receiver*

James W. Spertus
Ezra D. Landes
Spertus, Landes & Umhofer, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
jim@spertuslaw.com
ezra@spertuslaw.com
*Counsel for Doron Nottea and Motti Nottea*

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi, as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.*

Marc S. Harris
Scheper Kim & Harris, LLP
601 W. Fifth Street, 12th Floor
Los Angeles, CA 90071
mharris@scheperkim.com
*Counsel for Igor Latsanovski and Calenergy, Inc.*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea, Roi Rueveni and Adageo, LLC*

Reid Tepfer
Luis Gallegos
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, TX 75201
rtepfer@ftc.gov
lgallegos@ftc.gov

Raymond E McKown
Federal Trade Commission
10877 Wilshire Boulevard Suite 700
Los Angeles, CA 90024
rmckown@ftc.gov

      A copy of the foregoing document was emailed to:

William I. Rothbard
1217 Yale Street, #104
Santa Monica, CA  90404
bill@rothbardlaw.com
*Co-Counsel for Alon Nottea, Roi Rueveni and Adageo, LLC*

Steve Gebelin
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
sgebelin@raineslaw.com
*Co-Counsel for Oz Mizrahi, as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.*

                     */s/  Charlene C. Koonce*
                     CHARLENE C. KOONCE

RECEIVER'S AFFIDAVIT OF NON-COMPLIANCE AND
EMERGENCY MOTION FOR SHOW CAUSE HEARING