Michael J. Weiss (SBN 206473)
**ABRAMS GARFINKEL MARGOLIS BERGSON, LLP**
5900 Wilshire Blvd. Suite 2250
Los Angeles, CA 90036
310-300-2900
310-300-2901- Fax
Mweiss@agmblaw.com

Charlene C. Koonce (Texas SBN 11672850)
***Admitted Pro Hac Vice***
**SCHEEF & STONE, L.L.P.**
500 N. Akard, Suite 2700
Dallas, Texas  75201
214-706-4200
214-706-4242 - Fax
Charlene.koonce@solidcounsel.com
RECEIVER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                Plaintiff,<br><br>        v.<br><br>BUNZAI MEDIA GROUP, INC., a California corporation, also doing business as AuraVie and Miracle Face Kit, et al.<br><br>                Defendants. | Case No. 2:15-CV-4527-GW(PLAx)<br><br>**RECEIVER'S RESPONSE TO CERTAIN DEFENDANTS' MOTION TO VACATE OSC, AND DECLARATION IN SUPPORT** |

Charlene Koonce, the Court-appointed Temporary Receiver (the "Receiver"),

files this Response to Defendants Motti Nottea and Doron Nottea's (herein, the

"Nottea Defendants") Motion To Vacate Order to Show Cause,[1] and in support, the Receiver respectfully shows the Court as follows:

## SUMMARY

Pursuant to the Receivership Order,[2] the Receiver was tasked with gathering information about the operations, document and finances of the "Receivership Defendants." The Receivership Order directs her to report to the Court regarding efforts to ensure compliance with the Order, and indeed to take possession and control over the Receivership Defendants' assets, records and operations. To aid the Receiver in performing her mandate, the Receivership Order also authorizes the Receiver to file *Ex Parte* Affidavits of Non-Compliance and seek equitable writs to obtain the compliance with the Receivership Order. The Receiver has attempted, through request, demand, and motions, to obtain the information the Nottea Defendants were required to provide pursuant to the Receivership Order.

The Nottea Defendants, however, complain about the difficulty inherent in complying with the Receivership Order and the Receiver's efforts to enforce the Order. Yet, the Nottea Defendants', together with Alon Nottea and others, are wholly responsible for the deep and wide web of deceit, indeed fraud that permeates their operation of the Receivership Defendants and numerous other entities, and most

---

[1] Docket No. 60.
[2] The *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Receivership Order").

importantly, their marked lack of cooperation following issuance of the Receivership Order.

For instance, despite having been required to provide financial statements on or before June 23, 2015, having been asked to provide email account information and credentials *at the time the Receivership Order was served on June 18, 2015,* and, asked to provide additional information required by the Receivership Order, such as a complete list of all entities through which they conduct business, as of the date and time the Receiver filed her Motion for Show Cause Hearing (the "Motion"), *none* of that information had been provided. Further, even after the Motion was filed, the Nottea Defendants have not provided truthful or complete information. This conduct, as well as the conduct outlined in the Motion provide context and demonstrates the necessity for and appropriateness of the Motion. After amputating their own foot, Defendants now complain about their limp.

## **BACKGROUND AND ARGUMENT**

1.    Defendant Doron Nottea's contumacious conduct began immediately following his departure from the office location at which he was served with the Receivership Order. Despite having been informed that his assets were frozen,[3] and

---

[3] Indeed, before he left the Office, Doron was provided with a *summary* of his obligations under the Receivership Order created by the Receiver's counsel. A true and correct copy of the summary, which was handed to Doron Nottea, is attached as **Exhibit A**. Before he left, the Receiver also requested that he provide a copy of the Receivership Order and the summary to his business associates and all other Defendants. During the days and weeks since they were served with the Receivership Order, however, Doron and Motti chose to provide very little of the information required by the Order, and more specifically requested by the Receiver.

having been specifically asked to identify the location of a safe deposit box connected to a key the Receiver located in his office and which she retained possession of, Doron Nottea went straight to Bank of America after leaving the office location.  Bank of America informed the Receiver that Nottea lied to the branch manager, saying he had lost his key to the box and asked for access.  Access was denied.

2.      The Receiver has asked Doron's counsel, including current counsel, multiple times, for permission to inspect and inventory the contents of the safe deposit box.  To date, no response has been received to that request.  And, notably, Doron's sworn financial statement, which was not provided until late in the afternoon on July 6, 2015, hours after the Receiver had filed her Motion for Show Cause Hearing, identified the contents of the safe deposit box, vaguely, as "jewelry and cash."  The Receiver has asked for a more precise description of the contents of that safe deposit box, but to date none has been received.[4]

3.      The urgency of obtaining email account information and passwords, which Doron and Motti failed and refused to provide and which their former counsel justified with a disingenuous claim of privilege related to entities they did not represent, was underscored by Doron Nottea's destruction of evidence. *After* the

---

[4] The contents of the safe deposit box are also particularly important given the *dozens* of checks written on bank accounts for the Receivership Defendants, payable to banks, for instance, checks written on a Bank of America account for Zen Mobile Media, payable to Wells Fargo. The proceeds of the checks are untraceable. Doran's financial statement, however, lists only the balance of his frozen bank accounts; not any amount of cash stored in his safe deposit box.  The conclusion arising from that omission is that the cash in the safe deposit box belongs to a Receivership Defendant, not Doron.

Receiver filed her Motion for Show Cause, Doron admitted what the Receiver already believed based on circumstantial evidence; he was the primary user of the email account accounting818@gmail.com, an email account from which extensive information for the Receivership Defendants was sent and received.

4.      Yet, because Doron did not know that the Receiver was able to access that one email account – with the initial access occurring between the hours of approximately ten p.m. and four a.m.[5] on June 18th - 19th – the Receiver discovered that Doron Nottea[6] accessed the email account, sent bank account access information and passwords to Alon Nottea, and then *deleted files.*[7]

5.      As noted in the Receiver's Motion, she conferred extensively, prior to filing the Motion, and has continued to do so following entry of the Court's order for a

---

[5] Veiled complaints about working during holiday weekends and on little sleep merit no sympathy and provide no excuse for failing to comply with the Receivership Order. The Order mandates immediate compliance and the Nottea Defendants chose to ignore it on weekdays, weeknights, during weekends, and certainly over the holiday.  Moreover, current counsel states his firm was retained on July 3, two days before he filed an appearance, and *two days before he made any response to the Receiver's requests*.  Indeed, counsel did not reach out to the Receiver at all – he responded to the Receiver and her counsel's requests seeking to obtain the Nottea Defendants' compliance.  At no time on July 3rd, 4th or even on July 5th, did current counsel initiate contact with the Receiver to address his clients' known failures to comply with the Receivership Order.  The Receiver and her team, however, have worked exhaustively – into the small hours of most nights, through every weekend, and certainly over the holiday, seeking but not obtaining Defendants' compliance with the Order.  The time spent by the Receiver and her team, all of which will be billed and for which payment will be requested from the estate assets, would otherwise have been a fraction of what has been necessary because of the lack of cooperation and the complexity and scope of Defendants' fraud.

[6] Although Doron Nottea admits control and use of the email account, he also reports that another individual, Phillip Camerino, uses the same email account.  *Defendants' **Exhibit O.*** Camerino was on payroll for Calenergy, Inc., as well as Shalita Holdings, Inc., an entity whose current CEO as reported by Defendants, is listed solely as a fraud.  And, other individuals who have communicated with the Receiver report that Camerino was Doron's assistant and subject to Doron's control.

[7] A true and correct copy of a Declaration from the Receiver's counsel, setting out the details regarding the deleted information is attached as **Exhibit B.**  The same information was sent to Defendants on June 26, 2015 at approximately 11:40 p.m. CST, on June 26, 2015, immediately after the issue was discovered.  At the time notice of the issue was sent to the Nottea Defendants, they were represented by the same attorney as Alon Nottea and Roi Rueveni, and who denied any of those defendants' involvement in deleting data.  The Receiver is still waiting on Google to provide the

RECEIVER'S RESPONSE TO CERTAIN DEFENDANTS'
MOTION TO VACATE

Show Cause Hearing.[8]  The Nottea Defendants, however, although having provided some information, have not been truthful in the information provided.

6.     For instance, in one email exchange regarding the Nottea Defendants' request that the hearing be cancelled, counsel for Doron Nottea stated Nottea "is *not aware of* the email account doron@bunzai.com."[9]  The statement, however, is contradicted by Mr. Nottea's accountant, David Davidian. Davidian provided a list of email accounts he used to communicate with Doron and Alon, shortly after receiving a copy of the Receivership Order, and that list included doron@bunzai.com.  Davidian prepared the tax returns for Mr. Nottea personally as well as at least 29 companies operated by or in affiliation with Doron, Alon and the other Receivership Defendants, including Bunzai Media.  The statement is also not consistent with the representation in Defendants' Motion or the later representation about that account after Defendants were confronted with the Receiver's knowledge that it existed; that "Doron Nottea *did not have the credentials* for that account."[10]

---

information regarding what IP address was used to delete that information, as well as copies of everything that was deleted.

[8] Defendants' **Exhibit F** is incomplete and lacks the portion of the Receiver's email which continues to confer in an effort to resolve the Defendants' lack of compliance.  The complete email sent to Defendants is attached as **Exhibit C.**

[9] *See*, July 8, 2015 email from Nottea counsel, attached as **Exhibit D.** *See also*, **Exhibit R** to Defendants' Motion pursuant to which the Receiver requested a declaration regarding Doron's use of the bunzimedia account Doron had failed to identify until prompted.

[10] *Defendants' Motion*, p. 3. Ll. 14-16.  Notably, Nottea has failed to identify anyone other than himself who might have those credentials.

7.     Initially, Doron Nottea also failed to identify at least three additional business use email accounts until prompted,[11] and to date, Motti Nottea has not identified *any* email accounts he uses or has used.

8.     Moreover, assertions that the Nottea Defendants were "in full compliance" with the Receivership Order as of July 6 at 3:15 p.m, are untrue.  For instance, paragraph XXV requires the Defendants to distribute the Order to their employees, affiliates, etc., and provide a sworn confirmation that they have done so. Defendants have not served the Receivership Order on *any* of the "known affiliates" - the one with whom Defendants continue efforts to conceal information or otherwise circumvent the provisions of the Receivership Order - that the Receiver has contacted, nor have they provided any confirmation regarding efforts to comply.

9.     Likewise, the Nottea Defendants have come nowhere close to complying with paragraph XVII, which requires delivery of the documents and assets of the Receivership Defendants.   Indeed, every person interviewed or deposed by the Receiver reported Doron provided the bookkeeping and accounting functions for the Receivership Defendants. The information in Doron's computer, likewise, revealed Doron's intimate connection with the accounting functions for the Receivership Defendants, and his control over the Receivership Defendants' financial records, if not the entities themselves.  He has not, however, provided any records for Zen Mobile

---

[11] *See* email string attached as **Exhibit D**.

Media, Kai Media Group, and numerous other Receivership Defendants whose records were or are subject to his control, or has he provided any financial statement for those entities.[12]

10. The Nottea Defendants have similarly failed to comply with paragraph XVIII B. of the Receivership Order, which required them to produce, *within 48 hours of service of the Receivership Order,* a list of all agents, employees, officers, and persons in active concert and participation with each of them and with each Receivership Defendant. Although communications from counsel listed some individuals, the Nottea Defendants conveniently omitted scores of people listed on their own documents for tracking the merchant accounts affiliated with the Receivership Defendants and companies that fall within that definition.

11. For instance, a summary of the "contact" persons for many of the entities lists Sean Brenneck as the "contact person" for All-Star Beauty, Inc., one of the merchant entities from which the skin care products at issue were sold. Defendants likewise fail to identify Jason Menin, the purported CEO or contact person for DSA Holdings, Inc., one of the named Receivership Defendants. The Nottea Defendants fail to identify and provide contact information for Annsofie Algarp, the purported CEO or contact person for AMD Financial Network, Inc., another Receivership

---

[12] Notably, although Defendants have structured the Receivership Defendants *very* carefully so as to create an illusion of distance from the Nottea Defendants and Alon Nottea, a lack of legal responsibility created by officer and director status does not negate the Defendants' *actual* control over the Receivership Defendants and those entities' records. Arguments to the contrary are simply more attempts at evasion and demonstrate a lack of cooperation.

Defendant.  And Defendants identify Erin Link as the CEO for Shalita Holdings, another entity from which skin care products were or are sold. That representation, however is false because Erin Link himself states he has no connection to Shalita and his signature was forged on various bank records associated with its' operations.

12.    Defendants' financial statements, as required by paragraph VII of the Receivership Order are similarly deficient.  As one example only, Motti Nottea's financial statement indicates he was an employee of three Receivership Defendants but fails to identify, what if any "position" he held for those entities.[13] In other words, Motti failed to provide any facts related to his involvement with those entities.

13.    And, neither Nottea Defendant has complied with the Receiver's requests for information following entry of the Show Cause Order.[14] That compliance is required by paragraph XVIII A. of the Receivership Order, and given the evasive, incomplete information provided, the Receiver's requests and Defendants' compliance must continue.

14.    The Nottea Defendants' excuses, promises, and complaints about the Receiver's requests for information, as necessary to perform the mandate, should also be viewed against the backdrop of the pervasive fraud inherent in the operations of the Receivership Defendants. In addition to the Defendants' conduct as alleged in the Complaint regarding deceptive sales practices, as will be reported more fully in the

---

[13] Copies of the relevant pages from Motti Nottea's financial statement are attached as **Exhibit E.**

Receiver's Initial Report the Defendants have forged signatures of non-parties on applications for bank and merchant accounts, used fictitious names in corporate filings, and falsified information in tax filings.[15] Many of the documents evidencing the fraud were found either in Doron's office, Doron's computer, or otherwise in records maintained at the office location from which Doron Nottea operated the Receivership Defendants, together with other individuals.

15.     Finally, between 10 p.m. on July 6, 2015 and 3 p.m. on July 7, 2015, the Receiver's attention was focused on recapturing assets that had been transferred out of an account for an unnamed Receivership Defendant to another entity affiliated with and controlled by defendants.[16]   In emails and on the telephone, the Nottea Defendants were informed that their demands to withdraw the setting on the Motion to Show Cause would not be addressed until that issue had been resolved.   Nonetheless, within approximately two hours after receiving confirmation that the funds had been returned, the Receiver emailed counsel for both sets of Nottea Defendants and offered to pass the hearing until after the PI hearing. The full text of that email highlights the

---

[14] *See,* Exhibit I to Defendant's Motion. The information requested in that email has not been provided to date.
[15] To date, the Receiver has discovered at least three individuals whose social security numbers and/or signatures were fraudulently included in documents maintained by Defendants, One of those individuals has already provided a Declaration, the second is in the process of preparing a Declaration, and the third individual confirmed the fraud at issue over the telephone.
[16] *See,* email string attached as **Exhibit F.**   After extensive investigation and communications, including preparation of another Motion for Show Cause Hearing, the funds were voluntarily returned.

RECEIVER'S RESPONSE TO CERTAIN DEFENDANTS'
MOTION TO VACATE

Receiver's unwillingness to withdraw the Motion, based on the continuing tooth-pulling involved in getting complete and accurate information from Defendants:[17]

> "Counsel - I know you both have made good faith efforts to get me the information I have requested, which is needed on a continuing and rolling basis. I also believe there is some information subject to the motions referenced above that I don't have. And I am certain that I still don't know what I don't know. For instance, I believe when Eric has had a chance to review emails he may discover additional accounts.
>
> Nonetheless, in an effort to conserve everyone's time and stay focused on compliance and moving forward, I propose that I ask the court to continue the hearings set for next week, and all briefing obligations regarding those hearings, until after the PI hearing.   We can also get all Rule 502 stips and confidentiality agreements in place in the interim.   If your clients continue to cooperate, it may be unnecessary for resolution of my pending motions and I will withdraw them at that point.
>
> Please let me know if you are agreeable to this proposal and I will get something on file with the court first thing in the morning (my secretary is gone for the day)."

16.    Rather than accepting the Receiver's offer to reset the Show Cause hearing, however, the Nottea Defendants filed the instant motion.  Doing so ignores the incomplete and evasive information provided regarding the email account issues – after the Show Cause Motion was filed, – their numerous other failures to comply with the Receivership Order including their obligations to comply with the Receiver's continuing requests, and the Receiver's efforts to balance their contumacious conduct

---

[17] **Exhibit S** to Defendants' Motion.

with her need for information and conservation of the fees necessitated by their conduct.

17.     Nonetheless, because the goal of the Show Cause Motions is compliance[18] and Defendants have provided a great deal of information since the Court set the Show Cause Hearing, and based on their counsel's promises to continue doing so, as noted in Defendants' Exhibit S, the Receiver again states that she will agree to *continue* the hearings scheduled for July 16, 2015, to some date after the PI hearing set for August 6, 2015.   If Defendants fail to provide information as noted above, or continue providing only partial, evasive information, the Receiver will request an earlier setting. Further, the Receiver reserves the right to seek sanctions from Defendants for the prior contumacious conduct, the costs and fees necessitated by the prior motions and this response, and any future contumacious conduct.

WHEREFORE, PREMISES CONSIDERED, the Receiver respectfully requests that the Court deny the Nottea Defendants' Motion to Vacate, and that the Court reset all hearings scheduled for July 16, 2015 in this case to any date at least one week after August 6, 2015.  The Receiver also requests such other and further relief to which she may show herself entitled.

---

[18] Defendants' argument that the Court could not issue the orders requested pursuant to the Motion is not supported.  The Receiver requested *hearings* at which Defendants would have an opportunity to appear and be heard- the purpose of conducting a hearing.  Moreover, Defendants had both advance notice of the Receiver's intent to file the Motion for Show Cause Hearing, an opportunity to provide email information before the motion was filed so as to eliminate the necessity for the motion, and currently have an opportunity to appear at the hearing and be heard.

I, Charlene C. Koonce, declare under penalty of perjury under the laws of the United States of America that I am over the age of 18 years, have never been convicted of a crime involving moral turpitude, and am competent to make this Declaration.  I have personal knowledge of the facts stated above, each of which are true and correct.

*/s/Charlene Koonce*
Charlene C. Koonce (Texas SBN 11672850)
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: 214-706-4200
Telecopier: 214-706-4242
charlene.koonce@solidcounsel.com

**Receiver**
*Admitted Pro Hac Vice*

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Alon Nottea, Roi Rueveni and Adageo, LLC, and those parties agree with my request to continue all hearings currently scheduled for July 16, 2015 in this case, to a date after the PI hearing scheduled for August 6, 2015.

*/s/  Charlene C. Koonce*
CHARLENE C. KOONCE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 9, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court.  The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd Suite 2250
Los Angeles, CA 90036
nameri@agmblaw.com
*Local counsel for Receiver*

James W. Spertus
Ezra D. Landes
Spertus, Landes & Umhofer, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
jim@spertuslaw.com
ezra@spertuslaw.com
*Counsel for Doron Nottea and Motti Nottea*

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi, as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.*

Marc S. Harris
Scheper Kim & Harris, LLP
601 W. Fifth Street, 12th Floor
Los Angeles, CA 90071
mharris@scheperkim.com
*Counsel for Igor Latsanovski and Calenergy, Inc.*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
Counsel for Alon Nottea, Roi Rueveni
and Adageo, LLC

Reid Tepfer
Luis Gallegos
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, TX  75201
rtepfer@ftc.gov
lgallegos@ftc.gov
Counsel for the FTC

Raymond E McKown
Federal Trade Commission
10877 Wilshire Boulevard Suite 700
Los Angeles, CA 90024
rmckown@ftc.gov

A copy of the foregoing document was emailed to:

Steve Gebelin
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
sgebelin@raineslaw.com
*Co-Counsel for Oz Mizrahi, as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.*

/s/  Charlene C. Koonce
CHARLENE C. KOONCE