

NOTICE TO ALL DEFENDANTS:

The United States District Court for the Central District of California has entered a Temporary Restraining Order in Case No. CV 15-4527-GW(PLAx), *Federal Trade Commission v. Bunzai Media Group, Inc. et al* (the "Order"). The Order requires you to take certain actions and prohibits you from taking other actions. Failure to comply with the Order IN ALL RESPECTS will result in a motion to hold you in contempt of court. The following is a summary and is being provided to you as a courtesy only. READ THE ENTIRE ORDER, AND DO NOT IGNORE ANY PART OF IT. As you read the contents of the Order, please pay careful attention to the following provisions:

- Section I- Prohibited Business Activities (p.16-17): Section I prohibits certain business activities related to the disclosure and misrepresentation of the terms and conditions of offers made by the Defendants.

- Section II- Prohibitions Against Unfair and Deceptive Negative Option (p.18): Section II prohibits certain practices related to the charging of a consumer in an Internet-based sale of a good or service sold through a negative option.

- Section III- Prohibitions Against Debiting Consumers' Bank Accounts Without Authorization. (p. 18-19): Section III prohibits Defendants from failing to timely obtain written authorization from consumers for any Preauthorized Electronic Fund Transfer before initiating a Preauthorized Electronic Fund Transfer. Section III further prohibits Defendants from failing to provide consumers a copy of any such valid written authorization.

- Section IV- Asset Freeze (p. 19-20): Pursuant to Section IV, the assets of Defendants have been frozen. Defendants are prohibited from certain actions, including any action to assign, conceal, convert, disburse, dissipate, encumber, liquidate, loan, pledge, sell, spend, transfer, or withdraw assets. The assets affected by this Section include both existing assets and assets acquired after the effective date of this Order. Please note that Defendants may not make any charges to credit cards.

- Section VII- Financial Statement (p. 23): Section VII requires Defendants to provide certain information to the Temporary Receiver including financial statements, federal and state income tax forms, within five days of service of the Order. Defendants must also immediately provide a Consent to Release Financial Records to be provided to any financial institutions located outside the United States.

- Section VIII- Repatriation of Assets and Documents (p. 24): Section VIII requires Defendants to take all actions necessary to repatriate all assets and documents located outside the United States and prevent any disposition, transfer, or dissipation of such assets.

- Section IX- Noninterference with Repatriation (p. 24-25): Defendants are prohibited from taking any action that may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by Section VIII.

- Section XI- Preservation of Records and Report New Business Activity (p. 25-26): Section XI requires Defendants to preserve any documents, including electronically stored materials, that relate in any way to the business practices or business personal finances of Defendants and any entities under the control of Defendants. Defendants must report any new business activity to the Federal Trade Commission.

- Section XII- Prohibition on Release of Customer Information or Customer Lists (p. 26-27): Section XII prohibits the release of customer information or customer lists by Defendants and further prohibits Defendants from benefitting from the personal identifying information of any person obtained in connection with the activities alleged in the Complaint.

- Section XV- Access to Business Offices and Documents (p. 33-35): Section XV requires that Defendants provide the Federal Trade Commission and the Temporary Receiver with access to Receivership Defendants' business premises and business and financial documents, including electronically stored information. Defendants are required to produce to the Temporary Receiver any assets or documents relating to Receivership Defendants' finances or business practices located in the residence of any Defendant with forty-eight hours of service of the Order.

- Section XVII- Delivery of Receivership Property (p. 36-37): Section XVII requires Defendants to immediately transfer and deliver all assets, documents, etc. of Receivership Defendants identified in the Order to the Temporary Receiver.

- Section XVIII- Provision of Information to Temporary Receiver (p. 37-38): Section XVIII requires Defendants to provide the Temporary Receiver with certain information within five hours of the Temporary Receiver's request and lists of the Receivership Defendants' agents, employees, officers, etc. within forty-eight hours of service of this Order.

- Section XIX- Cooperation with the Temporary Receiver (p. 38-39): Section XIX requires Defendants to fully cooperate with and assist the Temporary Receiver in taking and maintaining possession, custody, or control of the assets and documents of the Receivership Defendants, which includes providing any requested information to the Receiver.

- Section XX- Noninterference with the Temporary Receiver (p. 39-40): Section XX prohibits the Defendants from interfering with the Temporary Receiver in the exercise of the Temporary Receiver's duties as outlined by the Order.

- Section XXV- Distribution of Order by Defendants (p. 44): Section XXV requires Defendants to distribute the Order as outlined and provide the Federal Trade Commission with a sworn statement that each Defendant has complied with this provision within ten days from the date of entry of this Order.

EXHIBIT B

Michael J. Weiss (SBN 206473)
**ABRAMS GARFINKEL MARGOLIS BERGSON, LLP**
5900 Wilshire Blvd. Suite 2250
Los Angeles, CA 90036
310-300-2900
310-300-2901- Fax
Mweiss@agmblaw.com

J. Mitch Little (TX SBN 24043788)
*Admitted Pro Hac vice*
**SCHEEF & STONE, L.L.P.**
500 N. Akard, Suite 2700
Dallas, Texas  75201
214-706-4200
214-706-4242 - Fax
Mitch.little@solidcounsel.com
Attorneys for Receiver
CHARLENE C. KOONCE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BUNZAI MEDIA GROUP, INC., a California corporation, also doing business as AuraVie and Miracle Face Kit; | Case No. CV 15-4527-GW(PLAx)<br><br>**DECLARATION OF JASON MITCHELL LITTLE** |

I, J. Mitchell Little, declare under penalty of perjury under the laws of the United States of America, that the following statements are true and correct:

- 1 -
DECLARATION OF JASON MITCHELL LITTLE

1.     I am over the age of 18 years, have never been convicted of a crime involving moral turpitude, and am otherwise competent to make this Declaration. I have personal knowledge of the facts stated herein.

2.     I am an attorney licensed to practice law in Texas and am also a partner with the law firm of Scheef & Stone, LLP. I have been licensed to practice law in Texas since 2004. I am one of the team of attorneys representing the Receiver appointed in the case styled above.

3.     I accompanied the Receiver during the initial access to 2925 Canby, Suite 105. Our access began at 10:46 a.m. on June 18, 2015. We encountered three individuals at the location: Doron Nottea, Alan Argaman, and Philip Camerino. Camerino was working at a computer when I walked in, and it was logged in to a series of Wells Fargo Bank accounts when we instructed him to stop doing what he was doing. The computer was an Apple iMac that listed the user account as "Doron." I identified this as a computer that I wanted to examine as soon as possible.

4.     CACI imaged the computers over the next nine to ten hours or so, then reinstalled the hard drives in the various computers. I asked CACI to first re-install the hard drive in the iMac at which I found Camerino. This happened at approximately 9 pm on June 18, 2015.

5.     This computer turned out to be very important, as it had username and password information pre-logged in or easily autofilled for various sites. Over the next

- 2 -
DECLARATION OF JASON MITCHELL LITTLE

six hours, I examined all of the data I could reasonably obtain from this computer. A key source of data was the Google account on which a user "accounting818@gmail.com" was already logged in. This account had access to a Google Drive that contained a variety of Excel spreadsheets and Word documents, as well as access to a gmail account that contained approximately 400 emails in the main box, with an additional 200+ sent emails.

    6.    Beginning at 2:18 a.m. on June 19, 2015, I began forwarding the spreadsheets on the Google Drive to my work email account, mitch.little@solidcounsel.com. I felt this was the most effective way to demonstrate the source of these files if the Defendants attempted to delete the web-based storage remotely. The files forwarded included:

Focus Media Accounting.xlsx
AuraVie Inventory.docx
JL Prices.docx
Bank Balance.xlsx
Pill Inventory.xlsx
Pending Settlement Report.pdf
UMS CBA BANK Sales and CB Data Jan through May 12 2015.xlsx
Combined 2015.xlsx
SafetyNet OPK.xlsx
Optimized SafetyNet D.xlsx
Networks and Direct Offers.xlsx
Rich Open.xlsx
Shelley Open.xlsx
Daily Bank Deposits.xlsx
Tech.xlsx
Direct Pay.xlsx
Bills and Expenses.xlsx

Reserves Release.xlsx
Avi UPS.xlsx
Shelley.xlsx
Lifescript.xlsx
GrafiPak.xlsx
New Media Lines 2011.xlsx
Daily Inc & Exp.xlsx
LL Acct Refunds.xlsx
invoice.mediaurge.march.xlsx
UPC All.xlsx
JoyLite Amazon Template.xlsx
joy lite v1.0.xlsx
flat.file.health.com_joy-lite.xlsx
Jacem Products.xlsx
ACH CBK Armor.xlsx

The forwarding continued until 2:42 a.m. (Pacific time) on June 19, 2015.

7. Because there was not sufficient time or equipment to download or forward all of the relevant electronic mail from the gmail account, I decided to wait and access it remotely via the web. I had the ability to do this because a file contained on the Google Drive named Combined 2015.xlsx contained a series of usernames and passwords that could be used to access certain bank accounts, online Quickbooks accounting, email, and credit card accounts. The login information for the gmail account was (accounting818@gmail.com; xxxxxxxx00).

8. On June 26, 2015 at 4:45p.m. central time, I used the above-referenced username and password to access the Google Drive and gmail account. Almost all of the spreadsheets I obtained on June 19, 2015 had been remotely deleted by a user from the Google Drive. I began printing emails and attachments to PDF (portable

document format) from the gmail account. After letting the Receiver know of my access, she asked that Eric Robi and I work to preserve the data electronically. I provided the username and password to Eric Robi for this purpose.

9. As of today, July 9, 2015, most of the documents are still missing from the Google Drive. The items that remain in the Google Drive today are:

1-3-14 EOM Inc & Exp balance.xlsx (Last modified Jun 26, 2015)
20130805.csv (Last modified Jun 26, 2015)
Avi UPS.xlsx
Daily Inc & Exp.xlsx
flat.file.health.com_joy-lite.xlsx
joy lite v1.0.xlsx
JoyLite Amazon Template.xlsx
Rich Open.xlsx
Shelley.xlsx
Shelley Open.xlsx
Weekly Report – EOM Inc & Exp balance.xlsx

10. To date, no explanation has been provided by the Defendants for the deletion of these documents, nor have they attempted to recover them or provide copies to the Receiver.

Executed this 9th day of July 2015.

/s/J. Mitchell Little
J. Mitchell Little

**Sent:** Monday, July 06, 2015 5:26 PM
**To:** 'Jim Spertus'; Kelly Crawford
**Cc:** Ezra Landes; Mitch Little
**Subject:** RE: FTC v. Bunzai

Jim- thank you for this response. I will evaluate and get back to you about your request to withdraw the Motion for Show Cause, but not before I receive additional email accounts and credentials.

As with Alon and Roi (see the Motion to Show Cause filed regarding those individuals this morning), Doron has not provided any of the email accounts he uses personally. (I will agree to privilege protocols for those so that I do not have access to any privileged information subject to his personal entitlement to privilege, but am not waiving any right to emails he exchanged prior to entry of the TRO with any counsel for the entities and am entitled to review the content of any non-privileged personal emails). Likewise, Doron has not identified or provided the credentials for numerous other business email accounts, including, but certainly not limited to, doron@bunzaimedia.com.

And, we can agree to disagree about the sufficiency of my conference regarding the motion, but I also note that the TRO permitted me to file *ex parte* motions regarding non-compliance. I conferred with Doron's former counsel *extensively*, and Doron, rather than your firm was required to comply with the TRO. Still, my preference would be to resolve this matter between ourselves without the court's assistance, and I look forward to receiving the additional email information from you.

Thank you.



**CHARLENE KOONCE**
**PARTNER**

500 N. Akard, Suite 2700
Dallas, Texas 75201
**214.706.4215 (Direct)**
214.706.4200 (Main)
214.706.4242 (Facsimile)
charlene.koonce@solidcounsel.com
www.solidcounsel.com

# SCHEEF & STONE, L.L.P.
LEGAL COUNSEL BASED ON SOLID PRINCIPLES



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for

EXHIBIT D

**From:** Jim Spertus [mailto:jim@spertuslaw.com]
**Sent:** Wednesday, July 08, 2015 12:57 AM
**To:** Charlene Koonce; Kelly Crawford
**Cc:** Ezra Landes
**Subject:** RE: Activity in Case 2:15-cv-04527-GW-PLA Federal Trade Commission v. Bunzai Media Group, Inc. et al Order

Charlene,

Mr. Nottea is not aware of the email account doron@bunzai.com.

The credentials for doron@nftholdings.com are http://webmail.nftholdings.com/imp/login.php username: doron@nftholdings.com password:

The credentials for accounting@nftholdings.com are http://webmail.nftholdings.com/imp/login.php username: accounting@nftholdings.com password:

Mr. Nottea did not use the account stephan@sbmmgmt.com.

Mr. Nottea does not have credentials to access accounting@pinlogistics.com, but believes that Phillip Camerino may have those credentials.

Mr. Nottea did not have an account for mediaurge.com.

We are now going to turn to our opposition and further briefing in response to your affidavit of noncompliance. Thank you.


JAMES W. SPERTUS
SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr, Suite 705 | Los Angeles, CA 90025
t: (310) 826-4700 | f: (310) 826-4711 | jim@spertuslaw.com

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Thank you.

**From:** Charlene Koonce [mailto:charlene.koonce@solidcounsel.com]
**Sent:** Tuesday, July 07, 2015 3:36 PM
**To:** Jim Spertus; Kelly Crawford
**Cc:** Ezra Landes
**Subject:** RE: Activity in Case 2:15-cv-04527-GW-PLA Federal Trade Commission v. Bunzai Media Group, Inc. et al Order

Jim-  these were identified for me and are still missing, and I may discover others:

doron@bunzai.com

doron@nftholdings.com

accounting@nftholdings.com

accounting@pinlogistics.com

Stephan@sbmmgmt.com   (I am informed this account was not used by Stephan Bauer, and need to know whether Doron used it or Alon, and need one of them to provide the access credentials.).   I also need to know if Doron had an email account for mediaurge.com.  And, if Doron does not have the credentials to access the accounting@pinlogistics.com, please let me know who does.

I will agree not to attempt to access any *personal use* email accounts until we have protocols in place.  In the order setting the show cause hearing for Alon and Roi, the court determined that no email account with the domain name of any receivership entity is a personal use email account.  I am not agreeing to delay access to any business use email account, but will agree not to provide any potentially privileged information in any of the business use accounts to the FTC or any third party, except pursuant to the protocols I agreed to regarding Alon and Roi and except in furtherance of my mandate (which I doubt will require any production at all before we can get protocols in place).

I do not have the final word version of the Stipulation – I sent only a very red-line version of that back to Alon's former counsel, Bill Rothbard.  He (or Robert Unger) should have the last word version of it.  The pdf that was filed  is attached. (I'm looking for the proposed order, but haven't seen that in our system, and will need to forward it to you from an email) Likewise, I do not have a Confidentiality Order to send to you.  Rothbard sent a proposal on that, but it included confidential treatment for every single email in every single account, which is patently unacceptable.  Please send me your proposal for that- I don't think one is necessary and thus will not spend time drafting one from scratch, but will certainly consider what you send and agree to reasonable provisions if I can.



### Charlene Koonce
### Partner

500 N. Akard, Suite 2700
Dallas, Texas 75201
**214.706.4215  (Direct)**
214.706.4200 (Main)
214.706.4242 (Facsimile)
charlene.koonce@solidcounsel.com
www.solidcounsel.com

# SCHEEF & STONE, L.L.P.
LEGAL COUNSEL BASED ON SOLID PRINCIPLES



**Important:**  This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

## BACKGROUND INFORMATION

### Item 1. Information About You

| Full Name: Motti Nottea | Social Security No. | |
|---|---|---|
| Current Address of Primary Residence | Driver's License No. | State Issued: CA |
| | Phone Numbers Home: 818 Fax: ( ) | Date of Birth: / / (mm/dd/yyyy) Place of Birth |
| ☐ Rent ☐ Own From (Date): / / (mm/dd/yyyy) | E-Mail Address | |
| Internet Home Page | | |

**Previous Addresses for past five years** (if required, use additional pages at end of form)

| Address | From: / / (mm/dd/yyyy) | Until: / / (mm/dd/yyyy) |
|---|---|---|
| | ☐ Rent ☐ Own | |
| Address | From: / / | Until: / / |
| | ☐ Rent ☐ Own | |
| Address | From: / / | Until: / / |
| | ☐ Rent ☐ Own | |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

### Item 2. Information About Your Spouse or Live-In Companion

| Spouse/Companion's Name: Rachel Nottea | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
|---|---|---|
| Address (if different from yours) | Phone Number (818) ☐ Rent ☐ Own | Place of Birth From (Date): / / (mm/dd/yyyy) |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

| Employer's Name and Address | Job Title | |
|---|---|---|
| | Years in Present Job | Annual Gross Salary/Wages $ |

### Item 3. Information About Your Previous Spouse

| Name and Address: N/A | Social Security No. |
|---|---|
| | Date of Birth / / (mm/dd/yyyy) |

### Item 4. Contact Information (name and address of closest living relative other than your spouse)

| Name and Address: James W. Spertus, Spertus, Landes & Umhofer, LLP, 1990 S. Bundy Dr., Ste. 705, Los Angeles, CA 90025 | Phone Number: ( ) (310) 826-4700 |
|---|---|

Initials: MH

## Item 5. Information About Dependents (whether or not they reside with you)

| Name and Address | Social Security No. | Date of Birth (mm/dd/yyyy) |
|---|---|---|
| N/A | | |
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth (mm/dd/yyyy) |
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth (mm/dd/yyyy) |
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth (mm/dd/yyyy) |
| | Relationship | |

## Item 6. Employment Information/Employment Income

Provide the following information for this year-to-date and for each of the previous five full years, for each business entity of which you were a director, officer, member, partner, employee (including self-employment), agent, owner, shareholder, contractor, participant or consultant at any time during that period. "Income" includes, but is not limited to, any salary, commissions, distributions, draws, consulting fees, loans, loan payments, dividends, royalties, and benefits for which you did not pay (e.g., health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
|---|---|---|---|---|
| Symbiotic Capital Group<br>19528 Ventura Blvd., #444<br>Tarzana, CA 91356 | From (Month/Year)<br>06 / 2013 | To (Month/Year)<br>current | Year<br>2015<br>2014<br>2013 | Income<br>$ 10,000<br>$ 0<br>$ 0 |
| Ownership Interest? ☑ Yes ☐ No | | | | |
| Positions Held<br>CEO | From (Month/Year)<br>/ | To (Month/Year)<br>/ | | |
| | / | | | $ |
| | / | | | $ |

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
|---|---|---|---|---|
| DMA Media Holdings, Inc.<br>19528 Ventura Blvd., #224<br>Tarzana, CA 91356 | From (Month/Year)<br>/ 2013 | To (Month/Year)<br>current | Year<br>2015<br>2014<br>2013<br>2012 | Income<br>$ N/A<br>$ 21,000<br>$ 18,000<br>$ 20,000 |
| Ownership Interest? ☐ Yes ☑ No | | | | |
| Positions Held | From (Month/Year) | To (Month/Year) | | |
| | / | / | | |
| | / | / | | $ |

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. | |
|---|---|---|---|---|
| Calenergy Inc.<br>23679 Calabasas Rd., #531<br>Calabasas, CA 91302 | From (Month/Year)<br>/ | To (Month/Year)<br>/ | Year<br>2014<br>2013 | Income<br>$ 5,000<br>$ 12,500 |
| Ownership Interest? ☐ Yes ☑ No | | | | $ |
| Positions Held | From (Month/Year) | To (Month/Year) | | $ |
| | / | / | | $ |
| | / | / | | $ |

Bunzai Media Group Inc., 16161 Ventura Blvd., #378, Encino, CA 91436    2012: $50,000    Initials: MH
(No ownership interest)

RECEIVER'S RESPONSE TO CERTAIN DEFENDANTS' 028

**From:** Charlene Koonce
**Sent:** Tuesday, July 07, 2015 10:36 PM
**To:** 'Robert Ungar' (rmu@ungarlaw.com); jim@spertuslaw.com; Ben Pettit (ben@benpettit.com); Sagar Parikh (sp@beverlyhillslawcorp.com)
**Cc:** Tepfer, Reid A.; Kelly Crawford; Mitch Little; Leslie Sanderson; Brandi McKay; David Dyer
**Subject:** $ transfer to USM Productions
**Importance:** High

Counsel - we have discovered a matter that requires your urgent attention. As each you know, I believe, Focus Media Solutions falls within the TRO's definition of Receivership Defendant – based on its activities in selling and/or marketing skin care products, its status as the successor to Media Urge, etc. FMS' account at B of A has been frozen for some time. Evidently, a check written by Calenergy in the amount of $325k to FMS on 6/16, cleared FMS's Wells Fargo account on 6/17 or after. After the date of the TRO, after the date Alon and Paul Medina had been notified of the TRO, those funds (and more) left FMS's WF account and were transferred by wire to an account in the name of USM Productions.

We are tracking banking records for these transfers. In the interim, I ask for your assistance in the same process. Who owns/controls USM Productions, who are the signatories on that account and why were the funds transferred? Most importantly, who initiated those wire transfers out of FSM's account. (I will be able to obtain this information from the banks – please provide it voluntarily to assist). We consider this an extremely serious violation of the TRO and need to have these transfers reversed and have those funds returned to FMS' account immediately.

Also, if any of the lawyers have been paid with funds received, directly or indirectly from USM, please let me know. These funds need to be returned to the FMS account (or me directly) asap. At this point, I am asking for your assistance rather than immediately filing a motion for a show cause hearing. Please help me make that relief unnecessary.



### CHARLENE KOONCE
### PARTNER

500 N. Akard, Suite 2700
Dallas, Texas 75201
**214.706.4215 (Direct)**
214.706.4200 (Main)
214.706.4242 (Facsimile)
charlene.koonce@solidcounsel.com
www.solidcounsel.com

## SCHEEF & STONE, L.L.P.
LEGAL COUNSEL BASED ON SOLID PRINCIPLES