**SCHEPER KIM & HARRIS LLP**
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
ANNAH S. KIM (State Bar No. 190609)
akim@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone: (213) 613-4655
Facsimile: (213) 613-4656

**Attorneys for Defendants**
**Igor Latsanovski and Calenergy, Inc.**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> BUNZAI MEDIA GROUP INC., et al., <br><br> Defendants. | CASE NO. CV 15-04527 GW (PLAx) <br><br> **REPLY IN SUPPORT OF *EX PARTE APPLICATION* FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER OF DEFENDANTS IGOR LATSANOVSKI AND CALENERGY, INC.** <br><br> **Date:** TBD <br> **Time:** TBD <br> **Judge:** Hon. George Wu |

2015.07.16 Reply ISO Ex Parte App for Partial Relief from TRO.doc

---

DEFENDANTS' *EX PARTE* APPLICATION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER

Seeking relief to feed his family and keep legitimate businesses open, Calenergy, Inc. ("Calenergy") and Igor Latsanovski ("Latsanovski") attempted to obtain this relief from FTC, but could not do so.  Kim Declaration (Doc. No. 90-5), ¶¶ 5-7, Ex. F-I (Doc. Nos. 90-8 to 90-11).[1]  Only after the FTC rejected their proposal, did Mr. Latsanovski and Calenergy approach this Court for emergency relief.  Ignoring these efforts and the demonstrated hardships that Mr. Latsanovski and legitimate businesses are currently suffering under the TRO [*see Ex Parte* Application (Doc. No. 90) at 16-17 and Latsanovski Declaration (Doc. No. 90-1), ¶¶ 21-26(a)-(d)], the FTC asks this Court to wait until August 6, 2015 so it can present additional evidence to support its *ex parte* request for a receiver and asset freeze. FTC Opp. (Doc. No. 93) at 3.  But the time to present evidence to justify the current freeze and temporary receivership was back in June, when it applied for this extreme relief.  As demonstrated by both the FTC Opposition and the Receiver's Response, the FTC continues to make exaggerated claims lacking any significant evidentiary support to justify the imposition of a freeze or receivership here.

First, the FTC has not established any involvement of Mr. Latsanovski in the alleged consumer fraud in the internet skincare business.  At most, Mr. Latsanovski, through Calenergy, provided money to Alon Nottea to use in his internet skincare business.  It is undisputed that Mr. Latsanovski, Calenergy's CEO, did not play any role in the business operations of the internet skincare business:  he was not consulted about any decisions regarding this business; he did not have authority to make any decisions regarding the business; and he did not receive any reports of customer complaints.  See Latsanovski Decl. (Doc. No. 90-1), ¶¶ 6-7.  The FTC

---

[1] Contrary to the FTC's assertion, Mr. Latsanovski and Calenergy, Inc. are not seeking the dissolution of the TRO, but rather relief from the asset freeze and receivership.

relies heavily on the fact that Mr. Latsanovski was allegedly a partner in Bunzai Group, but this allegation alone does not establish that Mr. Latsanovki "had actual knowledge of material misrepresentations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth." *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1138 (9th Cir. 2010).

Although the FTC claims that Mr. Latsanovski ignored "countless warning signs" of fraud, the FTC fails to identify any of them (Doc. No. 93 at 7). Nor could it as it is undisputed that Mr. Latsanovski did not perform any functions in the business operation of the internet skincare business – he had no involvement in advertising, payment processing, billing, product fulfillment, customer service, returns -- and he did not receive any customer complaints. Latsanovski Decl. (90-1), ¶ 7. Accordingly, the FTC is not entitled to any injunctive relief as it cannot establish that either Mr. Latsanovski or Calenergy violated any provisions of the FTC Act.

Second, it is undisputed that Mr. Latsanovski or Calenergy did not dissipate any funds. At most, the FTC contends generally that the Receiver "has already had significant difficulty tracking down the scattered assets" of Defendants but does not identify or explain any difficulty that the Receiver had in tracking down Mr. Latsanovski or Calenergy's assets. FTC Opp. (Doc. No. 93) at 13. And Receiver also did not address or identify any dissipation of assets by Mr. Latsanovski or Calenergy, Inc. *See* generally Receiver Response (Doc. No. 91). Because there is no evidence of the likelihood of dissipation, there can be no asset freeze. *Johnson v. Couturier*, 572 F.2d 1067, 1085 (9th Cir. 2009)(a likelihood of dissipation of assets is essential for an asset freeze); *FTC v. John Beck Amazing Profits, LLC*, 2009 WL 7844076, at *15 (C.D. Cal. Nov. 17, 2009) (finding that mere evidence of deceptive marketing, uncoupled with evidence of dissipation, is insufficient to impose an asset

freeze); *see also FTC v. Evans Products Co.*, 775 F. 2d 1084, 1089 (9th Cir. 1985) (no irreparable harm because FTC failed to prove that the defendant "is likely to secret away assets before relief can be effectuated").

Finally, even if the FTC could establish Calenergy's or Latsnavoski's liability (which they have not), the balance of the equities requires that the asset freeze and receivership be lifted as to Calenergy and Mr. Latsanovski.  Here, Mr. Latsanovski has established that businesses, which range from real estate investments to comic content providers, will lose substantial investments, be unable to pay outstanding salaries and be forced to shut down if relief is not immediately granted.  *See* Latsanovski Decl., ¶ 26(a)-(d).  The FTC has not offered any justification for these businesses (and their third party investors) to suffer these significant losses.  Nor has the FTC offered any justification why Mr. Latsanovski cannot use his personal accounts to support his family other than its assertion that Mr. Latsanovski should be held liable for $69 million based upon his $317,746.05 investment return.

At most, the FTC contends that because Mr. Latsanovski was willing to provide funds to Alon Nottea and received payment on his investments with Mr. Nottea, he and his businesses should be shut down.  FTC Opp. (Doc. No. 93) at 5-12.  But Mr. Latsanovski's investment is not what caused the consumer harm at issue here.  Further, the FTC's own evidence confirms Mr. Latsanovski's understanding that the internet skincare business ceased well before 2015.  For example, the September 27, 2013 letter to Mr. Latsanovski's attorney states that the "media operation, MediaUrge, Inc ("MediaUrge") has no assets and will be dissolved" and that the "retail merchant corporations … will stop marketing and selling the "AuraVie" brand product line.  *See* September 27, 2013 Letter (Doc. No. 92-1) and Latsanovski Decl. (Doc. No. 90-1), ¶ 20 (skincare business "ceased taking new orders sometime in 2014").  Because there is no evidence that Mr. Latsanovski participated or knew about the skincare business operations and legitimate

businesses will face significant losses or closure if the receiver and asset freeze remain in place, the asset freeze and receivership should be lifted.

DATED: July 16, 2015          SCHEPER KIM & HARRIS LLP
                              MARC S. HARRIS
                              ANNAH S. KIM


                              By:  /s/  Annah S. Kim
                                   Annah S. Kim
                                   Attorneys for Defendants Igor Latsanovski
                                   and Calenergy, Inc.