**SCHEPER KIM & HARRIS LLP**
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
ANNAH S. KIM (State Bar No. 190609)
akim@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA  90071-2025
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

**Attorneys for Defendants**
**Igor Latsanovski and Calenergy, Inc.**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BUNZAI MEDIA GROUP INC., et al.,<br><br>Defendants. | CASE NO. CV 15-04527 GW (PLAx)<br><br>**JOINT STATUS REPORT BY DEFENDANTS IGOR LATSANOVSKI, CALENERGY, INC., PLAINTIFF FTC, AND TEMPORARY RECEIVER RE LIVING EXPENSES**<br><br>**Date:    July 23, 2015**<br>**Time:    8:30 am**<br>**Court:   Hon. George Wu** |

STIPULATION TO CONTINUE PRELIMINARY INJUNCTION HEARING

1    Pursuant to this Court's July 20, 2015 Order (Doc. No. 97), counsel for
2  defendants Calenergy, Inc. and Igor Latsanovski conferred telephonically with the
3  Receiver, her counsel, Kelly Crawford, and FTC counsel, Reid Tepfer on July 21,
4  2015 regarding (1) the amount of money required for Mr. Latsanovski's living
5  expenses until August 6, 2015 and (2) the source of funds that may be released for
6  these expenses.  The parties agreed that any position taken regarding a carve-out for
7  Mr. Latsanovski's position was without prejudice, was solely for the purpose of
8  providing Mr. Latsanovski's sufficient living expenses until August 6, 2015, and did
9  not waive any position that any party would take at the hearing for preliminary
10  injunction.

11    The parties agreed not to include money for car leases, credit card payments,
12  and mortgage payments based on the understanding that the TRO prohibits creditors
13  from pursuing any legal action for delinquent payments, notwithstanding the impact
14  on Mr. Latsanovski's credit rating.  Despite their best efforts, the parties were unable
15  to agree to an acceptable amount for Mr. Latsanovski's living expenses or a source
16  of funds for the disbursement of these living expenses.  The parties dispute which
17  funds should be available for this disbursement and the amount of money to be
18  disbursed.  Set forth below are the positions of the parties.

19    **Position of Igor Latsanovski and Calenergy, Inc.**  As set forth in its *ex*
20  *parte* papers, Mr. Latsanovski received approximately $317,000 in net proceeds
21  from the internet skincare business in the Calenergy business accounts.  Aside from
22  the amounts received in Calenergy's business accounts, the FTC and Receiver
23  cannot identify how much $317,000 net return received from the Bunzai Group was
24  distributed to Mr. Latsanovski's personal or business accounts or which accounts
25  were tainted, and the parties dispute which funds should be subject to the asset
26  freeze and receivership.

27    In an attempt to avoid this dispute at this time, Mr. Latsanovski identified
28  other accounts, his personal Wells Fargo account (approximately $55,000) and his

business Vastpay Bank of America account (approximately $42,000) as potential untainted sources for this one-time disbursement for Mr. Latsanovski and his family's living expenses.

Contrary to the FTC's position that Mr. Latsanovski should only rely upon his income, Mr. Latsanovski has supplemented his income in the past from his savings and past investments. Accordingly, his disbursement should not be limited to what his purported two week income would be and should cover outstanding bills such as medical bills and insurance premiums. As to the FTC's suggestion that Mr. Latsanovski should take out loans to cover his living expenses, he cannot under the current terms of the TRO and would have no security to provide for such a loan as his assets are subject to the TRO as well. Mr. Latsanovski is the sole provider for his wife, Tatiana, and two children, Anna (age 18) and Mihail (age 22). Mr. Latsanovski requested a one time disbursement of $8,800 for his living expenses from either his personal Wells Fargo Account, which has approximately $55,000, or the Vastpay Bank of America Account, which has $42,000. The $8,800 would be allocated as follows:

| | |
|---|---|
| Food (for four people) | $1,500 |
| Internet | $300 |
| Cell Phone (4 People) | $400 |
| Utilities (Water, Electricity, Gas) | $1,200 |
| Medical Insurance (to pay outstanding and past due bills) | $2,100 |
| Gas Money for Cars (four cars) | $600 |
| Outstanding therapist bills (to pay past due bills) | $2,700 |
| | |
| Total | $8,800 |

**Position of FTC.** The Federal Trade Commission and Defendant Igor Latsanovski dispute both the source and amount of funds needed to pay his personal expenses, and those of his wife and two adult children. The FTC asserts that frozen assets should not be released but should be preserved for future consumer restitution. Further, the FTC contends that the Court should not consider

2

1  Latsanovski's request until he has complied with all the provisions of this Court's

2  Order.  At this time, Latsanovski has not. Lastly, the FTC contends that these

3  expenses should only be paid by funds frozen for future consumer restitution as a

4  last resort, after Defendant has attempted to secure personal loans and employment.

5  Latsanovski has submitted egregiously deficient financial disclosure

6  statements in violation of the TRO. In these sworn statements, Latsanovski claims to

7  have $263,736 in annual expenses (based on $21,978 in monthly expenses).

8  However, he also claims in those same disclosure statements that he made only

9  $43,000 in 2014. In his most recent tax returns (2013), Defendant Latsanovski

10  reported to the IRS that he earned only $34,000 in income. His FTC financial

11  disclosures for that same year lists $24,000 in income. Latsanovski has provided no

12  credible information concerning his income or assets, and this Court should

13  therefore deny his request for a release of funds.

14  Latsanovski initially claimed to require $25,000 for living expenses for the

15  next two weeks—a sum equal to the total amount of reported income for all of 2012

16  based on his financial disclosures. Despite these inconsistencies, Latsanovski states

17  he is the sole source of income for his household. No release of assets should be

18  considered under these circumstances.

19  Notwithstanding these deceptions, the FTC offered to stipulate to the release

20  of $1,653.85 for Defendant Latsanovski's personal expenses for the next two weeks.

21  This amount is equivalent to two weeks of income from the highest income year

22  reported to either the IRS or the FTC since 2011. This offer, however, was rejected

23  by Latsanovski. And while Latsanovski has reduced his claimed financial need from

24  the initial $25,000 to $8,800, an accounting of Latsanovski's expenses make this

25  request too seem excessive.  Based on these requests, the FTC believes Latsanovski

26  remains unwilling to alter his lavish lifestyle despite his circumstances.

27  Although Defendants emphasize the need for money for basic amenities such

28  as groceries and medical expenses, these claims are dubious. Latsanovski has been

1  able to hire legal assistance despite the asset freeze. Further, defense counsel has

2  refused to identify the source of the funds used to pay for their services. These funds

3  have either been received in violation of the Court's asset freeze,  or could offer a

4  potential source of relief for Latsanovski until he is able to secure legitimate

5  employment.

6      **Position of Receiver**.  Defendants have requested release of funds from

7  Latsanovski's personal or Vastpay LLC's bank accounts, and the FTC proposes

8  releasing funds from a personal Line of Credit at WF, which is in Latsanovski's

9  name only.  None of the subject accounts are within the Receiver's scope of control

10  or responsibility, and no information regarding whether any Receivership Assets

11  secure the Line of Credit has been provided.   The Receiver accordingly expresses

12  no opinion as to Defendant's request for relief from those accounts or the FTC's

13  agreement to release funds from the LOC.  To date, the Receiver has not traced

14  assets from any Receivership Defendant to Vastpay LLC, although as noted in prior

15  filings, substantial funds have been traced to Latsanvoski personally, as well as

16  CalEnergy and Sunset Holdings.

17  DATED: July 22, 2015        SCHEPER KIM & HARRIS LLP

18                                    MARC S. HARRIS
                                  ANNAH S. KIM

19

20

21                                By:   /s/  Marc S. Harris

22                                     Marc S. Harris
                                   Attorneys for Defendants Igor Latsanovski

23                                     and Calenergy, Inc.

24

25

26

27

28

JOINT STATUS REPORT RE LATSANOVSKI'S LIVING EXPENSES

1     DATED: July 22, 2015        FEDERAL TRADE COMMISSION

2                                           REID TEPFER

3                                           RAYMOND McKOWN

4

5                              By:    /s/ Reid Tepfer

6

7                              Attorneys for Plaintiff Federal Trade
                             Commission

8

9     DATED: July 22, 2015        SCHEEF & STONE LLP

10                                           CHARLENE KOONCE

11

12                              By:    /s/ Charlene Koonce

13                                Charlene Koonce

14                                Receiver

15         I hereby attest that all of the signatories electronically listed above concur in

16 this filing's content and have authorized the filing in compliance with Local Rule 5-

17 4.3.4.(a)(2)(i).

18                                      /s/ Marc S. Harris

19                                      Marc S. Harris

20

21

22

23

24

25

26

27

28

JOINT STATUS REPORT RE LATSANOVSKI'S LIVING EXPENSES