# Exhibit M

# OPERATING AGREEMENT

# OF

# SUNSET HOLDING PARTNERS, LLC

### A California Limited Liability Company

**AGREEM ENT**,  Date:  **01-16-2015**
Made among:

Managing: **IGOR LATSANOVSKI**
Address: 

Member: **CALENERGY, INC**
Address: 

Hereafter referred to as "Member or members".

### W I T N E S S E T H :

      **WHEREAS,** the parties hereto desire to form a limited liability company pursuant to the laws of the State of California for the purposes hereinafter set forth, and to establish their respective rights and obligations in connection with the limited liability company; and

      **NOW, THEREFORE,** in consideration of the mutual covenants set forth herein and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Managing Member and Members agree as follows:

### 1. Formation

      The parties hereby confirm that they have formed a limited liability company (the "Limited Liability Company") pursuant to the provisions of the California Limited Liability Company Act, California Statutes Annotated, Chapter 2.5, *et seq.,* as the same may be amended from time to time, for the purposes and the period and upon the terms and conditions hereinafter set forth. The parties have caused to be filed the Articles of Organization of the Limited Liability Company, and shall execute, acknowledge, swear to and file any other documents required under applicable law.

1

## 2. Name

The name of the Limited Liability Company shall be "SUNSET HOLDING PARTNERS, LLC" and all business of the Limited Liability Company shall be conducted under said name, or such other name as the Member from time to time may determine.

## 3. Purpose

The purposes of the Limited Liability Company are to HOLD and TRANSACT REAL ESTATE PROPERTY.

To incur indebtedness, secured and unsecured; to enter into and perform contracts and agreements of any kind necessary to, in connection with or incidental to the business of the Limited Liability Company: and to carry on any other activities necessary to, in connection with or incidental to the foregoing, as the Managing Member in their discretion may deem desirable.

## 4. Place of Business

The principal place of business and specified office of the Limited Liability Company at which the records required to be maintained by the Limited Liability Company under the California Limited Liability Company Act are to be kept shall be at 23679 CALABASAS ROAD UNIT 531, CALABASAS, CA 91302 or at such other or additional places of business within or outside of the Slate of California as the Managing Member from time to time may designate. The Managing Member shall notify the other Members of any change of the principal place of business and specified office.

The Limited Liability Company hereby designates SIMA CORPORATE GROUP (Registered Agent), whose address is 200 N Maryland Avenue, Suite300, GLENDALE, CA 91206 as the Registered Agent of the Limited Liability Company for service of process.

The Managing Member may change the registered office and Registered Agent from time to time by filing, the prescribed forms with the appropriate governmental authorities.

## 5. Capital Contributions

The capital of the Limited Liability Company shall be CONTRIBUTED shall consist of the aggregate of the capital contributions to be made pursuant to this Article 6.

Each of the Members shall contribute to the capital of the Limited Liability Company the % set forth opposite his name below:

```
1 - Member:    IGOR LATSANOVSKI_____1.00%
2 - Member:    CALENERGY INC      _____99.00%
```

The Members shall not be required to make any additional capital contributions.

Except as specifically provided in this Agreement or required by law, no Member shall have the right to withdraw or reduce his contributions to the capital of the Limited Liability Company until the termination of the Limited Liability Company. No Member shall have the right to demand and receive any distribution from the Limited Liability Company in any form other than cash, regardless of the nature of such Member's capital contribution. No Member shall be paid interest on capital contributions to the Limited Liability Company.

The liability of any Member for the losses, debts, liabilities and obligations of the Limited Liability Company shall be limited to paying: the capital contribution of such Member when due under this Agreement; such Member's share of any undistributed assets of the Limited Liability Company; and (only if and to the extent at any time required by applicable law) any amounts previously distributed to such Member by the Limited Liability Company.

### 6. Loans and Advances by Members

If any Member shall loan or advance any funds to the Limited Liability Company in excess of the capital contribution of such Member prescribed herein, such loan or advance shall not be deemed a capital contribution to the Limited Liability Company and shall not in any respect increase such Member's interest in the Limited Liability Company.

### 7. Allocations and Distributions

As used in this Agreement, the terms "net profits" and "net losses" shall mean the profits or losses of the Limited Liability Company from the conduct of the Limited Liability Company's business, after all expenses incurred in connection therewith have been paid or provided for. The net profits or net losses of the Limited Liability Company shall be determined by the Limited Liability Company's accountants in accordance with generally accepted accounting principles applied in determining the income, gains, expenses, deductions or losses, as the case may be, reported by the Limited Liability Company for Federal income tax purposes.

The term "cash receipts" shall mean all cash receipts of the Limited Liability Company from whatever source derived, including without limitation capital contributions made by the Member; the proceeds of any sale, exchange, or other disposition of all or any part of the assets of the Limited Liability Company; the proceeds of any loan to the Limited Liability Company; the proceeds of any insurance policy payable to the Limited Liability Company; and the proceeds from the liquidation of the assets of the Limited Liability Company following a termination of the Limited Liability Company.

The "capital account" for each Member shall mean the account established, determined and maintained for such Member in accordance with Section 704(b) of the Internal Revenue Code and Treasury Regulation Section 1.704-l(b)(2)(iv). The capital account for each Member shall be increased by (1) the amount of money contributed by such Member to the Limited Liability Company, (2) the fair market value of property contributed by such Member to the Limited Liability Company (net of liabilities secured by such contributed property that the Limited Liability Company is considered to assume or take subject to under Section 752 of the Internal Revenue Code), and (3) allocations to such Member of Limited Liability Company income and gain (or items thereof), including income and gain exempt from tax and income and gain described in Treasury Reg. Section 1.704-l(b)(2)(iv)(g), but excluding income and gain described in subsection (b)(4)(i) of said Regulation, and shall be decreased by (4) the amount of money distributed to such Member by the Limited Liability Company, (5) the fair market value of property distributed to such Member by the Limited Liability Company (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Section 752 of the Code), (6) allocations to such Member of expenditures of the Limited Liability Company described in Section 705(a)(2)(B) of the Code, and (7) allocations of Limited Liability Company loss and deduction (or items thereof) including loss and deduction described in Treasury Reg. Section 1.704-l(b)(2)(iv)(g), but excluding items described in (6) above and loss or deduction described in subsections (b)(4)(i) or (b)(4)(iii) of said Regulation. Net profits

such capital account the items described in Treasury Reg. Sections 1.704-l(b)(2)(ii)(d)(4), (5) and (6). This provision is intended to constitute a qualified income offset within the meaning of Treasury Reg. Section 1.704-l(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(4) Gross <u>Income Allocation</u> ~ In the event any Member has a deficit capital account at the end of any fiscal year which is in excess of the sum of the amounts such Member is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Reg. Sections 1.704-2(g)(l) and 1.704-2(i)(5), each such Member shall be allocated items of the Limited Liability Company's income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this provision shall be made only if and to the extent that such Member would have a deficit in such Member's capital account in excess of such sum after all other allocations provided for in this Article 8 have been tentatively made as if this provision and the provisions of clause (3) above were not in this Agreement.

(5) Nonrecourse <u>Deductions</u> — Nonrecourse deductions (within the meaning of Treasury Reg. Section 1.704-2(b)(l)) for any fiscal year shall be allocated among the Member in proportion to the Members' Percentage Interests.

(6) Part<u>ner Nonrecourse Deductions</u> - Any partner nonrecourse deductions (within the meaning of Treasury Reg. Sections 1.704-2(b)(1) and 1.704-2(b)(2)) for any fiscal year shall be allocated to the Member who bears the economic risk of loss with respect to the partner nonrecourse debt (within the meaning of Treasury Reg. Section 1.704-2(b)(4)) to which such partner nonrecourse deductions are attributable in accordance with Treasury Reg. Section 1.704-2(i)(l).

(7) Othe<u>r Mandatory Allocations</u> - In the event Section 704(c) of the Internal Revenue Code or the Regulations thereunder require allocations in a manner different than that set forth above in this Article 8, the provisions of Section 704(c) and the Regulations thereunder shall control such allocations among the Members.

It is the intention of the Members that the allocations hereunder shall be deemed to have "substantial economic effect" within the meaning of Section 704 of the Internal Revenue Code and Treasury Reg. Section 1.704-1. Should the provisions of this Agreement be inconsistent with or in conflict with Section 704 of the Code or the Regulations thereunder, then Section 704 of the Code and the Regulations shall be deemed to override the contrary provisions hereof. If Section 704 or the Regulations at any time require that limited liability company operating agreements contain provisions which are not expressly set forth herein, such provisions shall be incorporated into this Agreement by reference and shall be deemed a part of this Agreement to the same extent as though they had been expressly set forth herein, and the Managing Member shall be authorized by an instrument in writing to amend the terms of this Agreement to add such provisions, and any such amendment shall be retroactive to whatever extent required to create allocations with a substantial economic effect.

8. Books. Records and Tax Returns

At all times during the continuance of the Limited Liability Company, the Managing Member shall keep or cause to be kept complete and accurate records and books of account in which shall be entered each transaction of the Limited Liability Company in accordance with generally accepted accounting principles.

The fiscal year of the Limited Liability Company for both accounting and income tax purposes shall be the calendar year. The Limited Liability Company shall report its operations, net income and net losses in accordance with the methods of accounting selected by the Managing Member.

The Managing Member may employ on behalf of the Limited Liability Company and at the expenses of the Limited Liability Company such firm of certified public accountants as the Managing Member in their sole discretion deems appropriate to serve as the Limited Liability Company's accountants.

The Managing Member shall furnish to each Member, within seventy-five days after the end of each fiscal year, an annual report of the Limited Liability Company which shall include a balance as of the end of such fiscal year; a profit and loss statement of the Limited Liability Company for such fiscal year: a statement of the balance in the capital account of such Member; and the amount of such Member's share of the Limited Liability Company's income, gain, losses, deductions and other relevant items for Federal income tax purposes.

The Managing Member shall prepare or cause to be prepared all Federal, State and local income tax and information returns for the Limited Liability Company, and shall cause such tax and information returns to be filed timely with the appropriate governmental authorities. Within seventy-five days after the end of each fiscal year, the Managing Member shall forward to each person who was a Member during the preceding fiscal year a true copy of the Limited Liability Company's information return filed with the Internal Revenue Service for the preceding fiscal year. The Managing Member shall not be liable to any Member if any taxing authority disallows or adjusts any deductions or credits in the Limited Liability Company's income tax or information returns.

All elections required or permitted to be made by the Limited Liability Company under the Internal Revenue Code, and the Managing Member shall make the designation of a tax matters partner pursuant to Section 6231(a) (7) of the Internal Revenue Code for all purposes permitted or required by the Code. The tax matters partner shall take such action as may be necessary to cause each other Member to become a notice member within the meaning of Section 6223 of the Code. The tax matters partner may not take any action contemplated by Sections 6222 through 6232 of the Code without the consent of the Managing Members.

All such records, books of account, tax and information returns, and reports and statements. together with executed copies of this Agreement, shall at all times be maintained at the principal place of business of the Limited Liability Company, and shall be open to the inspection and examination of the Members or their duly authorized representatives during regular business hours. Each Member, or a duly authorized representative of such Member, may make copies of the Limited Liability Company's books of account and records at the expense of such Member. Any Member, at the expense of such Member, may conduct an audit of the Limited Liability Company's books of account and records.

The Managing Member shall furnish to each Member, promptly upon request, a current list of the name and address of the Managing Member and other Members of the Limited Liability Company, and any other persons or entities having any financial interest in the Limited Liability Company.

The cost of preparing all of the aforesaid records, books, returns and other items shall be borne by the Limited Liability Company. Upon request of the Managing Member, the Members shall pay to the Limited Liability Company, in proportion to the Members' Percentage Interests, the cost of preparing same, not to exceed in the aggregate $2,000 for each fiscal year.

### 9. Bank Accounts

All funds of the Limited Liability Company shall be deposited in the Limited Liability Company's name in such bank account or the Managing Member shall designate accounts as. Withdrawals from any such bank accounts shall be made only in the regular course of business of the Limited Liability Company and shall be made upon such signature or signatures as the Managing Member from time to time may designate.

5

## 10. Management of the Limited Liability Company

The Members hereby designate IGOR LATSANOVSKI to serve as the Managing Member for the Limited Liability Company.

The business and affairs of the Limited Liability Company shall be conducted and managed by the Managing Member of the Limited Liability Company in accordance with this Agreement and the laws of California.

At any time there is more than one Managing Member, a majority in number of the Managing Members shall decide any difference arising as to any matter within the authority of Managing Member.

If at any time the Managing Member do not own. in the aggregate, at least 20 percent of the Member's Percentage Interests, all of the Members shall be Managing Member until such time as the Members duly elect Managing Members who do own at least 20 percent of the Member's Percentage Interests.

The Managing Member shall have responsibility for the day-to-day management of the business and affairs of the Limited Liability Company and shall devote such time and attention as the Managing Member deem necessary to the conduct and management of the business and affairs of the Limited Liability Company.

Each of the Managing Member hereby is given sole power and authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company. Unless authorized by the Managing Member, no other person shall have the power or authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company. No person, firm or corporation dealing with the Limited Liability Company shall be required to investigate the authority of the Managing Member or to secure the approval of or confirmation by the Members of any act of the Managing Members in connection with the business or affairs of the Limited Liability Company.

No Member, other than the Managing Member or their designees, shall have the authority, or shall take any action as a Member, to bind the Limited Liability Company.

Notwithstanding any other provision of this Agreement, the Managing Member shall not. without the prior written consent of the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests, sell, exchange, lease, assign or otherwise transfer all or substantially all of the assets of the Limited Liability Company; borrow money on behalf of the Limited Liability Company in the excess of $ 0; lend any Limited Liability Company funds or other assets to any person in an amount or with a value in the excess of $0 establish any reserves for working capital repairs and
replacements, improvements or any other purpose, in excess of an aggregate of $0 confess a
judgment against the Limited Liability Company: settle, compromise or release, discharge or pay any
claim, demand or debt in excess of $0 including claims for insurance; approve a merger or
consolidation of the Limited Liability Company with or into any other limited liability company, corporation,
partnership or other entity: or change the nature or character of the business of the Limited Liability Company.

The Managing Member shall be reimbursed by the Limited Liability Company for all direct out-of-pocket expenses incurred by the Managing Member on behalf of the Limited Liability Company in connection with the performance of their duties hereunder, including without limitation amounts payable by the Managing Member for office, accounting, bookkeeping and other services, materials, facilities and professional and legal services rendered or furnished to the Limited Liability Company.

As compensation for the services of the Managing Member in arranging the transactions contemplated by the Limited Liability Company and the continuing management of the Limited Liability Company, the Limited Liability Company shall pay the Managing Member a limited liability company management fee of $0 per annum payable monthly. The compensation for the services of the Managing Member to the Limited Liability Company may be modified from time to time by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests.

A Managing Member's duty of care in the discharge of the Managing Member's duties to the Limited Liability Company and the Members is limited to refraining from engaging in grossly negligent conduct, intentional misconduct, or a knowing violation of law. In discharging the duties of a Managing Member, the Managing Member shall be fully protected in relying in good faith upon the records of the Limited Liability Company and upon such information, opinions, reports or statements by other Managing Member, Members, agents or other persons as to matters the Managing Member reasonably believes are within such person's professional or expert competence, including without limitation information, opinions, reports or statements as to the value or amount of the assets, liabilities, profits or losses of the Limited Liability Company or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

To the extent of the Limited Liability Company's assets, and to the extent permitted by law, the Limited Liability Company shall indemnify and hold each Managing Member harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred by the Managing Member by reason of any act or omission of the Managing Member made in good faith on behalf of the Limited Liability Company.

Except as expressly provided elsewhere in this Agreement, any decisions which arc to be made by the Members, rather than the Managing Member, shall be made by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests.

### 11. Assignment of Interests

Except as otherwise provided in this Agreement, no Member or other person holding any interest in the Limited Liability Company may assign, pledge, hypothecate, transfer or otherwise dispose of all or any part of his interest in the Limited Liability Company, including without limitation the capital, profits or distributions of the Limited Liability Company without the prior written consent of the other Members in each instance.

The Members agree that no Member may voluntarily withdraw from the Limited Liability Company without the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests (other than the withdrawing Member).

A Member may assign all or any part of such Member's interest in the allocations and distributions of the Limited Liability Company to any of the following (collectively the "permitted assignees"): any person, corporation, partnership or other entity as to which the Limited Liability Company has given consent to the assignment of such interest in the allocations and distributions of the Limited Liability Company by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests. An assignment to a permitted assignee shall only entitle the permitted assignee to the allocations and distributions to which the assigned interest is entitled, unless such permitted assignee applies for admission to the Limited Liability Company and is admitted to the Limited Liability Company as a Member in accordance with this Agreement.

An assignment, pledge, hypothecation, transfer or other disposition of all or any part of the interest of a Member in the Limited Liability Company or other person holding any interest in the Limited Liability Company in violation of the provisions hereof shall be null and void for all purposes.

7

No assignment, transfer or other disposition of all or any part of the interest of any Member permitted under this Agreement shall be binding upon the Limited Liability Company unless and until a duly executed and acknowledged counterpart of such assignment or instrument of transfer, in form and substance satisfactory to the Managing Member, has been delivered to the Limited Liability Company.

No assignment or other disposition of any interest of any Member may be made if such assignment or disposition, alone or when combined with other transactions, would result in the termination of the Limited Liability Company within the meaning of Section 708 of the Internal Revenue Code or under any other relevant section of the Code or any successor statute. No assignment or other disposition of any interest of any Member may be made without an opinion of counsel satisfactory to the Managing Member that such assignment or disposition is subject to an effective registration under, or exempt from the registration requirements of, the applicable State and Federal securities laws. No interest in the Limited Liability Company may be assigned or given to any person below the age of 21 years or to a person who has been adjudged to be insane or incompetent.

Anything herein contained to the contrary, the Managing Member and the Limited Liability Company shall be entitled to treat the record holder of the interest of a Member as the absolute owner thereof, and shall incur no liability by reason of distributions made in good faith to such record holder, unless and until there has been delivered to the Managing Member the assignment or other instrument of transfer and such other evidence as may be reasonably required by the Managing Member to establish to the satisfaction of the Managing Member that an interest has been assigned or transferred in accordance with this Agreement.

### 12. Admission of New Members

The Members may admit new Members (or transferees of any interests of existing Members) into the Limited Liability Company by the unanimous vote or consent of the Members.

As a condition to the admission of a new Member, such Member shall execute and acknowledge such instruments, in form and substance satisfactory to the Managing Member, as the Managing Member may deem necessary or desirable to effectuate such admission and to confirm the agreement of such Member to be bound by all of the terms, covenants and conditions of this Agreement, as the same may have been amended. Such new Member shall pay all reasonable expenses in connection with such admission, including without limitation reasonable attorneys' fees and the cost of the preparation, filing or publication of any amendment to this Agreement or the Articles of Organization, which the Managing Member may deem necessary or desirable in connection with such admission.

No new Member shall be entitled to any retroactive allocation of income, losses, or expense deductions of the Limited Liability Company. The Managing Member may make pro rata allocations of income, losses or expense deductions to a new Member for that portion of the tax year in which the Member was admitted in accordance with Section 706(d) or the Internal Revenue Code and regulations thereunder.

In no event shall a new Member be admitted to the Limited Liability Company if such admission would be in violation of applicable Federal or State securities laws or would adversely affect the treatment of the Limited Liability Company as a partnership for income tax purposes.

13. Withdrawal Events Regarding Members and
Election to Continue the Limited Liability Company

In the event of the death, retirement, withdrawal, expulsion, or dissolution of a Member, or an event of bankruptcy or insolvency, as hereinafter defined, with respect to a Member, or the occurrence of any other event which terminates the continued membership of a Member in the Limited Liability Company pursuant to the laws of California (each of the foregoing being hereinafter referred to as a "Withdrawal Event"), the Limited Liability Company shall terminate sixty days after notice to the Members of such Withdrawal Event unless the business of the Limited Liability Company is continued as hereinafter provided.

Notwithstanding a Withdrawal Event with respect to a Member, the Limited Liability Company shall not terminate, irrespective of applicable law, if within aforesaid sixty day period the remaining Members, by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests (other than the Member who caused the Withdrawal Event), shall elect to continue the business of the Limited Liability Company.

In the event of a Withdrawal Event with respect to any Member, any successor in interest to such Member (including without limitation any executor, administrator, heir, committee, guardian, or other representative or successor) shall not become entitled to any rights or interest of such Member in the Limited Liability Company, other than the allocations and distributions to which such Member is entitled, unless such successor in interest is admitted as a Member in accordance with this Agreement.

An "event of bankruptcy or insolvency" with respect to a Member shall occur if such Member: applies for or consents to the appointment of a receiver, trustee or liquidator of all or a substantial part of his assets; or makes a general assignment for the benefit of creditors; or is adjudicated a bankrupt or an insolvent; or files a voluntary petition in bankruptcy or a petition or an answer seeking an arrangement with creditors or to take advantage of any bankruptcy, insolvency, readjustment of debt or similar law or statute, or an answer admitting the material allegations of a petition filed against him in any bankruptcy, insolvency, readjustment of debt or similar proceedings; or takes any action for the purpose of effecting any of the foregoing; or an order, judgment or decree shall be entered, with or without the application, approval or consent of such Member, by any court of competent jurisdiction, approving a petition for or appointing a receiver or trustee of all or a substantial part of the assets of such Member, and such order, judgment or decree shall continue unstated and in effect for thirty days.

14. Dissolution and Liquidation

The Limited Liability Company shall terminate upon the occurrence of any of the following: the election by the Members to dissolve the Limited Liability Company made by the unanimous vote or consent of the Members; the occurrence of a Withdrawal Event with respect to a Member and the failure of the remaining Members to elect to continue the business of the Limited Liability Company as provided for in Article 14 above; or any other event which pursuant to this Agreement, as the same may hereafter be amended, shall cause a termination of the Limited Liability Company.

The liquidation of the Limited Liability Company shall be conducted and supervised by the Managing Member or if there be none then by a person designated for such purposes by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests (the "Liquidating Agent"). The Liquidating Agent hereby is authorized and empowered to execute any and all documents and to take any and all actions necessary or desirable to effectuate the dissolution and liquidation of the Limited Liability Company in accordance with this Agreement.

Promptly after the termination of the Limited Liability Company, the Liquidating Agent shall cause to be prepared and furnished to the Members a statement setting forth the assets and liabilities of the Limited Liability Company as of the date of termination. The Liquidating Agent, to the extent practicable, shall liquidate the assets of the Limited Liability Company as promptly as possible, but in an orderly and

9

businesslike manner so as not to involve undue sacrifice and in accordance with the provisions of the California Limited Liability Company Act.

The proceeds of sale and all other assets of the Limited Liability Company shall be applied and distributed in the following order of priority: (a) to the payment of the expenses of liquidation and the debts and liabilities of the Limited Liability Company, other than debts and liabilities to Members; (b) to the payment of debts and liabilities to Members; (c) to the setting up of any reserves which the Liquidating Agent may deem necessary or desirable for any contingent or unforeseen liabilities or obligations of the Limited Liability Company, which reserves shall be paid over to an attorney-at-law admitted to practice in the State of California as escrowee, to be held for a period of two years for the purpose of payment of the aforesaid liabilities and obligations, at the expiration of which period the balance of such reserves shall be distributed as hereinafter provided; (d) to the Members in proportion to their respective capital accounts until each Member has received cash distributions equal to any positive balance in his capital account, in accordance with the rules and requirements of Treasury Reg. Section 1.704-l(b)(2)(ii)(b); and (e) to the Members in proportion .o the Members' Percentage Interests. #

The liquidation shall be complete within the period required by Treasury Reg. Section 1.704-l(b)(2)(ii)(b).

If the Liquidating Agent shall determine that it is not practicable to liquidate all of the assets of the Limited Liability Company, the Liquidating Agent may retain assets having a fair market value equal to the amount by which the net proceeds of liquidated assets are insufficient to satisfy the debts and liabilities referred to above. If, in the absolute judgment of the Liquidating Agent, it is not feasible to distribute to each Member his proportionate share of each asset, the Liquidating Agent may allocate and distribute specific assets to one or more Member in such manner as the Liquidating Agent shall determine to be fair and equitable, taking into consideration the basis for tax purposes of each asset.

Upon compliance with the distribution plan, the Members shall cease to be such, and the Managing Member shall execute, acknowledge and cause to be filed such certificates and other instruments as may be necessary or appropriate to evidence the dissolution and termination of the Limited Liability Company.

### 15. Representations Of Members

Each of the Members represents, warrant? and agrees that the Member is acquiring the interest in the Limited Liability Company for the Member's own account as an investment and not with a view to the sale or distribution thereof; the Member, if an individual, is over the age of 21, or if the Member is an organization, such organization is duly organized, validly existing and in good standing under the laws of its State of organization and that it has full power and authority to execute and perform its obligations under this Agreement; and the Member shall not dispose of such interest or any part thereof in any manner which would constitute a violation of the Securities Act of 1933, the Rules and Regulations of the Securities and Exchange Commission, or any applicable laws, rules or regulations of any State or other governmental authorities, as the same may be amended.

### 16. Certificates Evidencing Membership

A Certificate of Membership issued by the Managing Member shall evidence every membership interest in the Limited Liability Company. Each Certificate of Membership shall set forth the name of the Member holding the membership interest and the Member's Percentage Interest held by the Member, and shall bear the following legend:

10

The membership interest represented by this certificate is subject to, and may not be transferred except in accordance with, the provisions of the Operating Agreement <sub>of</sub> <u>SUNSET HOLDING PARTNERS, LLC</u> dated as of <u>JANUARY 16, 2015</u>, as the same from time to time may be amended, a copy of which Operating Agreement is on file at the principal office of the Limited Liability Company.

The Members agree promptly to deliver to the Managing Member any Certificates of Membership previously issued for the purpose of adding the foregoing legend thereto.

### 17. Notices

All notices, demands, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder shall be in writing and shall be deemed to have been properly given if sent by FedEx or similar private express service or by registered or certified mail, return receipt requested, with postage prepaid, addressed as follows: (a) if to the Limited Liability Company, to the Limited Liability Company c/o the Managing Member at their address first above written or to such other address or addresses as may be designated by the Limited Liability Company or the Managing Member by notice to the Members pursuant to this Article 17; (b) if to the Managing Member, to the Managing Member at their address first above written or to such other address or addresses as may be designated by the Managing Member by notice to the Limited Liability Company and the Members pursuant to this Article 18; and (c) if to any Member, to the address of said Member first above written, or to such other address as may be designated by said Member by notice to the Limited Liability Company and the other Members pursuant to this Article 17. Each Member shall keep the Limited Liability Company and the other Members informed of such Member's current address.

### 18. Amendments

This Agreement may not be altered, amended, changed, supplemented, waived or modified in any respect or particular unless the same shall be in writing and agreed to by the affirmative vote or consent of Members holding two-thirds of the Members' Percentage Interests. No amendment may be made to Articles 5, 7, 12 and 14 hereof, insofar as said Articles apply to the financial interests of the Members, except by the vote or consent of all of the Members. No amendment of any provision of this Agreement relating to the voting requirements of the Members on any specific subject shall be made without the affirmative vote or consent of at least the number or percentage of Members required to vote on such subject.

### 19. Miscellaneous

This Agreement and the rights and liabilities of the parties hereunder shall be governed by and determined in accordance with the laws of the State of California. Every provision of this Agreement is intended to be severable. If any provision of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this Agreement, which shall remain in full force and effect.

The captions in this Agreement are for convenience only and are not to be considered in construing this Agreement. All pronouns shall be deemed to be the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require. References to a person or persons shall include partnerships, corporations, limited liability companies, unincorporated associations, trusts, estates and other types of entities. The Managing Member and the Members collectively are referred to herein as the Members. Any one of the Members is referred to herein as a Member. References to the Internal Revenue Code shall mean the Internal Revenue Code of 1986, as amended, and any successor or superseding Federal revenue statute.

11

In the presence of:

<u>IGOR LATSANOVSKI</u>
Member


<u>IGOR LATSANOVSKI on belaf of</u>
<u>CALENERGY INC</u>
Member

12

   This Agreement, and, any amendments hereto may be executed in counterparts all of which taken together shall constitute one agreement.

   This Agreement sets forth the entire agreement of the parties hereto with respect to the subject matter hereof. It is the intention of the Members that this Agreement shall be the sole source of agreement of the parties, and, except to the extent a provision of this Agreement provides for the incorporation of Federal income tax rules or is expressly prohibited or ineffective under the California Limited Liability Company Act, California Statutes Annotated, Chapter 2.5, *et seq.,* as the same may be amended from time to time, this Agreement shall govern even when inconsistent with, or different from, the provisions of any applicable law or rule. To the extent any provision of this Agreement is prohibited or otherwise ineffective under the California Limited Liability Company Act. California Statutes Annotated, Chapter 2.5, *et seq.,* such provision shall be considered to be ineffective to the smallest degree possible in order to make this Agreement effective under the California Limited Liability Company Act, California Statutes Annotated, Chapter 2.5, *et seq.* If the California Limited Liability Company Act, California Statutes Annotated, Chapter 2.5, *et seq.,* is subsequently amended or interpreted in. such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

   Subject to the limitations on transferability contained herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors and assigns.

   No provision of this Agreement is intended to be for the benefit of or enforceable by any third party.

   **IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the date first above written.

In the presence of:

<u> IGOR LATSANOVSKI </u>
Member


<u>IGOR LATSANOVSKI on behalf of</u>
<u>CALENERY INC     </u>
Member

13