respective directors, officers, employees (the "Advertiser Indemnified Parties") for any claims, liabilities, costs and expenses (including reasonable attorney's fees) made against the Advertiser Indemnified Parties by a third party or parties as a result of acts of gross negligence or willful misconduct by ABOVE ALL OFFERS CORPORATION. The indemnifying party may participate in the defense of the indemnified party at its own expense.

12. **Other Agreements.** This Agreement, together with any applicable signed addendum's, sets forth the entire agreement of the parties and supersedes any and all prior oral or written agreements or understandings between the parties as to the subject matter hereof. Only a writing signed by both parties may change this Agreement, except for changes in the CPA fees, which may be changed by a written offer and acceptance between the parties.

13. The situs for any dispute under this agreement and jurisdiction shall be the Circuit Court of Lane County, Oregon, unless arbitration is agreed upon as per paragraph 9.

14. There are no written or oral modifications of this agreement. This document is the full agreement of the parties.

(THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK)

ACCEPTED AND AGREED TO BY:

ADVERTISER:
Company: _Medinabage Inc_
Signature: _[signature]_
Title: _VP_
Date: _4-25-13_
Print Name: _Paul Medina_
Personally and individually

ABOVE ALL OFFERS CORPORATION:
Signature: _[signature]_
Title: _Network Manager_

Advertiser Initials _PM_

Submit by Email | Print Form

Direct Deposit Agreement Form

I hereby authorize Above All Offers to initiate automatic deposits to my account at the financial institution named below. I also authorize Above All Offers to make withdrawals from this account in the event that a credit entry is made in error.

Further, I agree not to hold Above All Offers responsible for any delay or loss of funds due to incorrect or incomplete information supplied by me or by my financial institution or due to an error on the part of my financial institution in depositing funds to my account.

This agreement will remain in effect until Above All Offers receives a written notice of cancellation from me or my financial institution, or until I submit a new direct deposit form to the Payroll Department.

Account Information

| | |
|---|---|
| Name of Financial Institution: | Focus Media Solutions |
| Routing Number: | |
| Account Number: | 6565 ⊙ Checking \| ○ Savings |

Authorized Signature (Primary): _____ Date: 7-12-15

Authorized Signature (Joint): _____ Date:

FORM ACH - 5-17-2013

| Form **W-9**<br>(Rev. December 2011)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | Give Form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

Name (as shown on your income tax return)
**Focus Media Solutions Inc.**

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:
☐ Individual/sole proprietor   ☑ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

☐ Other (see instructions) ▶

☐ Exempt payee

Address (number, street, and apt. or suite no.)
**18375 Ventura Blvd #660**

City, state, and ZIP code
**Tarzana, CA 91356**

Requester's name and address (optional)

List account number(s) here (optional)

**Part I    Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Social security number: [   -   -    ]

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Employer identification number: 5 9 3 0

**Part II   Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

Sign Here   Signature of U.S. person ▶ *[signature]*   Date ▶ 8/29/14

### General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X                                    Form **W-9** (Rev. 12-2011)

**TERMS AND CONDITIONS:**

This insertion order (the "Insertion Order"), together with **Exhibit A** attached and incorporated herein, (collectively, the "Agreement") constitutes the entire understanding of the parties with respect to its subject matter and supersedes all prior understandings and agreements, whether oral or written, regarding this matter. Any changes, modifications, revisions, supplements or waivers to this Agreement must be in writing and signed by an authorized representative of both parties; the only exception to this is that price increases may be confirmed via email which will be serving as a binding contractual agreement. Advertiser hereby grants to ABOVE ALL OFFERS CORPORATION a non-exclusive royalty-free license to use the Advertiser's intellectual property, including without limitation trademarks, service marks and copyrights, throughout the world pursuant to the Agreement. ABOVE ALL OFFERS CORPORATION will distribute Advertiser's campaign(s) described above through ABOVE ALL OFFERS CORPORATION's performance-based affiliate advertising network at ABOVE ALL OFFERS CORPORATION's sole discretion.

**ACCEPTED AND AGREED TO BY:**

ADVERTISER:
Company: Bunzai Media Group
Signature: *Nyalley*
Title: Director of Marketing
Date: 8/6/2012
Print Name: Nastassia Yalley

ABOVE ALL OFFERS CORPORATION
Signature: *[signature]*
Title: Network Manager

### Terms and Conditions/Exhibit A

The following terms and conditions govern the placement and delivery of advertising ("Ad") as set forth in the Insertion Order ("IO") to which these terms and conditions are attached (the IO and these terms and conditions are collectively referred to herein as the "Agreement"). For purposes of this Agreement, "Action" means an act or event by a third party upon which the CPA Payment is based, as set forth in the IO.

1. **Creative:** Advertiser will provide ABOVE ALL OFFERS CORPORATION ("ABOVE ALL OFFERS CORPORATION") with the creative materials for the advertisements ("Ads") and/or campaigns, including product/service descriptions, graphic images, logos, and copy (the "Copy"). If ABOVE ALL OFFERS CORPORATION provides the creative, that creative will be exclusive to ABOVE ALL OFFERS CORPORATION and the advertiser shall not permit any third parties to use the creative materials. If such a breach occurs this will cause irreparable harm to ABOVE ALL OFFERS CORPORATION and the Advertiser shall be responsible for paying ABOVE ALL OFFERS CORPORATION 50% of the revenue that is generated from that creative indefinitely.

2. **Terms of Payment and Pricing:** It is agreed that the pricing for the specific campaign(s) shall be pursuant to the Insertion Order (the "Insertion Order"), attached and incorporated herein by reference under the "CPS Payment" section. For all payments to ABOVE ALL OFFERS CORPORATION, Advertiser shall pay within the number of days set forth in the "Payment Terms" portion of the IO, if no number is set forth payment will be made within seven (7) days after the end of the seven (7) day period in which the payments are earned (the "CPS Payment"). Advertiser will provide ABOVE ALL OFFERS CORPORATION with tracking of actions submitted via access to its reporting system, and will also place tracking codes (pixels) on Advertiser sites as requested by ABOVE ALL OFFERS CORPORATION. Advertiser shall be bound by ABOVE ALL OFFERS CORPORATION's determination of the number of Actions. ABOVE ALL OFFERS CORPORATION will bill the Advertiser on the higher of the following 2 numbers: 1) The number that the Advertiser provided; 2) the number of times ABOVE ALL OFFERS CORPORATION's pixel fired. If there is a discrepancy larger than 10%, both parties will take all

Advertiser Initials *My*

reasonable measures to come to a reasonable and fair outcome. If ABOVE ALL OFFERS CORPORATION's number of actions is higher than the Advertiser's ABOVE ALL OFFERS CORPORATION will provide the advertiser with proof such as but not limited to order ID's, IP addresses, and Time Stamps of each payable Action. If there is any potential scrub of leads/actions/sales ("Actions"), this must be made clear by the Advertiser in the Insertion Order attached herein by reference: the Advertiser cannot scrub (not pay) on Actions for any reason that is not set forth in the Insertion Order. If the Insertion Order contains reasons for why an Action can be scrubbed, the Advertiser must provide ABOVE ALL OFFERS CORPORATION a full lead report (including commercially reasonable data supporting the invalidity of the Actions and setting forth which Actions are alleged to be invalid) that proves beyond a doubt why an Action will not be paid on within three (3) days from the time that the action took place in order for any Actions to be invalidated or scrubbed. If the Advertiser does not dispute the total count of CPA Actions (or ABOVE ALL OFFERS CORPORATION's invoice) within 3 business days of the end of the billing cycle (via email), the amount invoiced will be binding. If invoice is not paid within 15 days of its due date, a late fee of 5% per month will be applied until the balance is paid in full.

3. **Ownership of Data:** Unless otherwise provided in the Insertion Order, Advertiser will retain the sole and exclusive right to use all data delivered to Advertiser from the campaign, provided that ABOVE ALL OFFERS CORPORATION may use and disclose the visitors data (other than personally identifiable information) derived from Advertiser's campaign only for (1) ABOVE ALL OFFERS CORPORATION reporting purposes consisting of compilation of aggregated statistics about its services (e.g., the aggregate number of messages delivered) that may be provided to customers, potential customers and the general public, and (2) if required by court order, law or government Advertiser.

4. **Suppression Lists:** Advertiser is required to provide ABOVE ALL OFFERS CORPORATION with a suppression list of opt-outs and unsubscribes (the "List") no more than forty-eight (48) hours after receiving such transmission from third party user. ABOVE ALL OFFERS CORPORATION is not liable for any result or consequence arising out of (a) Advertiser's failure to timely provide ABOVE ALL OFFERS CORPORATION with a Suppression List; (b) any Suppression List provided by Advertiser that is in any way inaccurate or incomplete; (c) any Publisher's failure to scrub its database against the Suppression List provided by Advertiser; and/or (d) any violations of Advertiser's privacy policy in ABOVE ALL OFFERS CORPORATION delivery of the Suppression List to Publishers.

5. **Relationship of the Parties and Term/Cancellation:** The parties have agreed to work together as independent contractors. This Agreement shall commence on the first day it is signed by the Advertiser (fax signatures are acceptable and enforceable) and are considered originals and, subject to each party's right to cancel, shall run as provided in the Insertion Order. Unless otherwise agreed herein, either party may cancel with notice of three (3) business days, which means that the advertiser must give ABOVE ALL OFFERS CORPORATION 3 business days to pause or cancel the campaign.

6. **Representations and Warranties:** Each party represents and warrants that (i) such party has all of the requisite right, title and authority to enter into this Agreement, to grant the rights and to perform the acts required of it hereunder; and (ii) the entry into the Agreement and performance hereunder do not and will not violate any agreement of such party or by which such party is bound. Further, it is agreed that Advertiser is responsible for the accuracy, completeness and ownership of any and all information provided to ABOVE ALL OFFERS CORPORATION and similarly, that Advertiser will be responsible for ensuring the acquisition of all required consents in respect of the use of all such information, including, without limitation, all intellectual property contained in these materials. Advertiser represents and warrants that any information provided to ABOVE ALL OFFERS CORPORATION, or action taken pursuant to this Agreement will not(a) infringe on any third party's copyright, patent, trademark, trade secret or other proprietary rights or right of publicity or privacy; (b) violate any law, statute, ordinance or regulation, including, without limitation, laws and regulations governing export control, Section 5 of the FTC Act, false advertising or unfair competition; (c) be defamatory or libelous; (d) be pornographic or obscene; or (e) contain viruses, trojan horses, worms, time bombs, cancelbots or other similar harmful or deleterious programming routines. Advertiser represents and warrants that it complies with all applicable laws governing privacy and that it has a posted privacy policy to which it adheres in all respects. Advertiser further represents and warrants that the product or service that is being promoted through any Campaign hereunder is not the subject of any ongoing investigation by any local, state or federal regulatory or quasi-regulatory authorities.

Advertiser Initials _My_

Advertiser represents and understands that information provided by consumers to Advertiser may be inaccurate, whether intentionally or negligently, and that such inaccuracies are not caused by ABOVE ALL OFFERS CORPORATION nor fraud committed by ABOVE ALL OFFERS CORPORATION or its affiliates. The signatory on behalf of the Advertiser below warrants and represents that they have the power and authority to bind Advertiser, and that they have read and understood the entirety of this Insertions order and ABOVE ALL OFFERS CORPORATION's Terms and Conditions. Advertiser will hold ABOVE ALL OFFERS CORPORATION harmless and indemnify it including attorney's fees for any misrepresentation under this paragraph.

7. **Down Time.** Advertiser is responsible for keeping the internet site that ABOVE ALL OFFERS CORPORATION is sending traffic to up and running functionally at all times. Unless the advertiser provides ABOVE ALL OFFERS CORPORATION with at least twenty-four (24) hour notice that the internet site will be temporarily down for a specific period of time, the advertiser is liable for crediting ABOVE ALL OFFERS CORPORATION for all Actions that would have occurred. Both parties will make a fair and reasonable effort to determine how many Actions would have occurred during any down time based off of the number of clicks that were sent while the internet site was down, and the average conversion rate preceding and following the down time.

8  LIMITATIONS OF LIABILITY. IN NO EVENT SHALL ABOVE ALL OFFERS CORPORATION BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, FOR BREACH OF CONTRACT, WARRANTY, NEGLIGENCE OR STRICT LIABILITY), OR FOR INTERRUPTED COMMUNICATIONS, LOSS OF USE, LOST BUSINESS, LOST DATA OR LOST PROFITS (EVEN IF ABOVE ALL OFFERS CORPORATION WAS ADVISED OF THE POSSIBILITY OF ANY OF THE FOREGOING), ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND UNDER NO CIRCUMSTANCES SHALL ABOVE ALL OFFERS CORPORATION BE LIABLE TO ADVERTISER OR ANY THIRD PARTY.

9. **Miscellaneous**. This Agreement will be governed and construed in accordance with the laws of the State of Oregon County of Lane, without giving effect to conflict of laws principles. Advertiser and ABOVE ALL OFFERS CORPORATION, agree to submit to exclusive jurisdiction in Oregon and venue in the courts of Lane County Oregon. If any provision of this Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force and effect as though the invalid or unenforceable provision(s) had not been included herein. Advertiser may not assign this Agreement without the prior written consent of ABOVE ALL OFFERS CORPORATION. The parties' rights and obligations will bind and insure to the benefit of their respective successors, heirs, executors and joint administrators and permitted assigns. The parties to this Agreement are independent contractors, and no agency, partnership, joint venture or employee-employer relationship is intended or created by this Agreement. This Agreement may be executed in counterparts, and shall be deemed to be an original, but all of which taken together shall constitute but one and the same instrument. This Agreement may be executed and delivered by facsimile and the parties agree that such facsimile execution and delivery shall have the same force and effect as delivery of an original document with original signatures. If both parties agree disputes shall be settled by using the American Arbitration Association at Eugene, Oregon.

10  **Confidential Information.** "Confidential Information" shall mean any and all oral or written information that is identified as confidential and is provided by one party to the other. Neither Advertiser nor ABOVE ALL OFFERS CORPORATION shall disclose or use the other party's Confidential Information for any purpose other than the purposes contemplated by this Agreement, unless such disclosure or use is allowed by written permission of the other party. Notwithstanding any other provisions hereof, either party may disclose the other party's Confidential Information to the extent required by applicable law, but only after five (5) days prior written notification to the other party of such required disclosure. Upon termination, cancellation or expiration of this Agreement for any reason, or upon request by either party, all Confidential Information of the requesting party, together with any copies thereof, shall be returned to that party or certified destroyed. Advertiser's Confidential Information shall remain the property of Advertiser, and ABOVE ALL OFFERS CORPORATION's Confidential Information shall remain the property of ABOVE ALL OFFERS CORPORATION.

11.  **Indemnity**. Advertiser agrees to indemnify, defend, and hold harmless ABOVE ALL OFFERS CORPORATION, its parents, successors, subsidiaries, and affiliates, and their respective directors, officers, agents and employees (the "ABOVE ALL OFFERS CORPORATION Indemnified Parties") for any claims, liabilities, costs and expenses (including reasonable attorney's fees) made against the ABOVE ALL OFFERS CORPORATION Indemnified Parties by a third party or parties or a government agency as a result of: (i) any breach of the terms of this Agreement, including but not limited to the foregoing representations and warranties; (ii) any claim arising from the sale or license of Advertiser's goods or services; (iii) any violation of an applicable law, rule, or regulation by Advertiser; or (iv) any other act, omission or misrepresentation by Advertiser. ABOVE ALL OFFERS CORPORATION agrees to indemnify, defend, and hold harmless Advertiser, its parents, successors, and subsidiaries, and their

Advertiser Initials _____

respective directors, officers, employees (the "Advertiser Indemnified Parties") for any claims, liabilities, costs and expenses (including reasonable attorney's fees) made against the Advertiser Indemnified Parties by a third party or parties as a result of acts of gross negligence or willful misconduct by ABOVE ALL OFFERS CORPORATION. The indemnifying party may participate in the defense of the indemnified party at its own expense.

12. **Other Agreements.** This Agreement, together with any applicable signed addendum's, sets forth the entire agreement of the parties and supersedes any and all prior oral or written agreements or understandings between the parties as to the subject matter hereof. Only a writing signed by both parties may change this Agreement, except for changes in the CPA fees, which may be changed by a written offer and acceptance between the parties.

13. The situs for any dispute under this agreement and jurisdiction shall be the Circuit Court of Lane County, Oregon, unless arbitration is agreed upon as per paragraph 9.

14. There are no written or oral modifications of this agreement. This document is the full agreement of the parties.

(THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK)

ACCEPTED AND AGREED TO BY:

ADVERTISER:
Company: Bunzai Media Group
Signature: [signature]
Title: Director of Marketing
Date: 8/6/2012
Print Name: Nastasia Yalley
Personally and individually

ABOVE ALL OFFERS CORPORATION:
Signature: [signature]
Title: Network Manager

Advertiser Initials [initials]



## ABOVE ALL OFFERS ADVERTISING AGREEMENT

### 1. Advertiser Information

| Legal Company Name | | State/Prov. | Country |
|---|---|---|---|
| Daria Media, INC | | California | US |
| **Billing Address** | | **City** | **Zip Code** |
| 155 N Lake Ave #800 | | Pasadena | 91101 |

### 1.1 Representative Contact Information

| Representative Name | Phone Number | Fax Number |
|---|---|---|
| Daria | (626) 639-8788 | |
| **Email Address** | | |
| dariamediainc@gmail.com | | |

### 1.2 Accounting Contact Information

| Accounting Contact | Phone Number | Fax Number |
|---|---|---|
| Daria | (626) 639-8788 | |
| **Email Address** | | |
| dariamediainc@gmail.com | | |

### 1.3 Above All Offers Corporation Contact Information

| Above All Offers Corporation | Management | Accounting Contact |
|---|---|---|
| 72 W. Broadway Ave | Eli Aloisi | Tracie Jones |
| Suite #200 | **Phone Number** | **Phone Number** |
| Eugene, OR 97401 | | |
| Phone: +1 (503) 298-5912 | **Email Address** | **Email Address** |
| Fax: +1 (866) 284-1674 | | A |



| Advertiser Initial |
|---|
| *(initialed)* |

| | |
|---|---|
| **Campaign(s) Name** | InLyte |
| **Placements/Promotion Methods** | Contextual,Display,Network,PPC,PPV,SEO,Social Media |
| **Accepted Country(s)** | US |
| **Other Display Criteria** | |
| **Start Date** | 07/07/2014 |
| **End Date** | indefinitely |
| **CPA Payment** | 45USD |
| **Order Quantity** | |
| **Total Spend** | |
| **Tracking** | Pixel tracking, but advertiser is responsible for providing a login for stats, or to send them daily |
| **Payment Terms** | Weekly Net 7 |
| **Additional Comments** | US OnlyNo Incent or Co-RegConextual, SEO,network, Social,survey, Display, PPV and PPC Only. |

Advertiser Initial

This ADVERTISING AGREEMENT is effective as of _____ between Above All Offers Inc. ("Company") and _____ ("Advertiser")

Company runs an advertising network that creates a forum where advertisers can list advertising campaign and offers; and publishers, also known as affiliates, can display and promote those advertisements to their consumer base for the purpose of generating compensable traffic for the advertiser. Advertiser wishes to place their advertisement with Company for the purpose of generating traffic.

By signing this Agreement, Company and Advertiser agree to be bound by the following terms and conditions with respect to the creation, placement and delivery of advertising campaigns by publishers of the Company for the benefit of the Advertiser.

## DEFINITIONS

"Action" means the completion of all necessary steps by the consumer, as deemed by the Advertiser, so that the Advertiser may acquire the consumer's business, as a direct result of the actions of the Publisher.

"Confidential Information" means any information, technical data, contacts, traffic sources, specialized knowledge or know-how, including, but not limited to, that which relates to research, business plans, marketing plans, contract terms, budgets, product plans, products and services, customers, vendors, markets, software, developments, inventions, processes, designs, drawings, engineering, hardware configuration information, and marketing or finances of the disclosing party whether communicated in writing, orally, or through electronic means. Confidential information does not include information which was already in the possession of the recipient; information that is in the public domain; or information which the recipient becomes aware of through a third party that is not related to the disclosing party.

"CPA" or "Cost Per Action" is a means of measuring the cost for the Company sending advertisements via email to consumers where the cost is measured per Action taken by a consumer and includes Cost-Per-Click ("CPC"), Cost-Per-Lead ("CPL"), and Cost-Per-Sale ("CPS") and Revenue-sharing ("Revshare")

"CPM" or "Cost Per Mil" is a means of measuring the cost for the Company sending advertisements via email to consumers where the cost to the Advertiser is measured per thousand emails sent rather than per action or click by the consumer.

"Publisher" or "Affiliate" means the person, persons or company that holds an approved account with the Company to distribute Advertisers' offers via online channels to consumers for compensation.

## TERMS AND CONDITIONS

Advertiser Initial _____

1. **INSERTION ORDER.** The specific terms of each advertising campaign provided by Advertiser to Company may be outlined on a separate Insertion Order. In the event of any conflict of terms between the terms written on the Insertion Order and this Agreement, the terms of the Insertion Order shall prevail. The above "Definitions" will apply to the Insertion Order unless otherwise agreed to in writing.

2. **TERM.** This Agreement shall commence on the date first written above and continue unless terminated as set forth below.

3. **TERMINATION.** This agreement may be terminated by either party at any time by providing written notice of its intent to terminate at least three (3) business days prior to the termination. Advertiser will pay for all work performed by Company and all compensable traffic delivered under this Agreement up to and including the termination date and time. Where applicable, Company shall retain all rights to any creatives, advertisement graphics and/or links created on behalf of Advertiser.

4. **TRACKING AND PAYMENT.** Advertiser agrees to pay Company for all compensable advertising traffic provided by Company's Affiliates. Advertiser will provide Company with reporting and tracking of compensable traffic in real-time or as otherwise specified on an Insertion Order. As Company will also provide tracking, Advertiser agrees not to modify, disable or re-direct links provided to Company or in any way impede or impair the Company's ability to track the amount of payable actions. If requested, Company will invoice Advertiser for traffic for each applicable period, but failure to receive an invoice does not alter the payment terms or due date. Payments must be made according to the terms expressed on the Insertion Order, and no extension of payment due date will be allowed without express written authorization from Company. If no express payment due date or term is listed on the Insertion Order, Advertiser must pay in full by the fifteenth of the following month in which the compensable traffic was sent, unless other payment terms are specified on the applicable Insertion Order. A deposit, where applicable, will be specified in the Insertion Order. All late payments will accrue interest at the rate of 1.5% per month or the maximum allowable interest, whichever is greater. Advertiser will have seven (7) days from the close of the month in which the action was made in order to dispute its validity, including any specific credit card charge-backs or fraudulent credit card activity. Any dispute must be provided to Company in writing along with documentation of the disputed actions. All compensable traffic not subject to dispute is due under the terms of the Insertion Order. The Parties agree in good faith to discuss any disputes and attempt to reach a mutually acceptable agreement. Company reserves the right to audit the books and records of Advertiser, upon ten (10) business day notice, during the term of this Agreement and for a period of one year following termination in the event of any non-payment for disputed traffic.

5. **ADVERTISING CONTENT AND TESTING.** Advertiser agrees to accept sole responsible for any liability arising out of or relating to (1) the advertisement(s), (2) any claims made in the advertisements, including health and earnings claims, (3) any products or

Advertiser Initial