| | |
|---|---|
| 36 | leorantiwrinkle.com |
| 37 | leorsolution.com |
| 38 | miraclefacegift.com |
| 39 | miraclefacekit.com |
| 40 | myAuraVie.com |
| 41 | myAuraVieonline.com |
| 42 | myAuraViesecret.com |
| 43 | myAuraViesolution.com |
| 44 | myAuraViesystem.com |
| 45 | myAuraVietreatment.com |
| 46 | myAuraVietrial.com |
| 47 | mydellure.com |
| 48 | mydelluretrial.com |
| 49 | myleoronline.com |
| 50 | myleorskincare.com |
| 51 | myleorsolution.com |
| 52 | myleorsystem.com |
| 53 | myleortreatment.com |
| 54 | orderAuraVie.com |
| 55 | shopAuraVie.com |
| 56 | theAuraViesystem.com |
| 57 | theAuraVietreatment.com |
| 58 | theleortreatment.com |
| 59 | tryAuraVie.com |
| 60 | tryAuraVienow.com |
| 61 | tryAuraVieskincare.com |
| 62 | trydellure.com |
| 63 | trymiraclefacekit.com |
| 64 | yourAuraVie.com |
| 65 | yourAuraViekit.com |
| 66 | yourdellure.com |



# DECLARATION OF ERAN LINK

I, Eran Link, hereby declare as follows: That all statements contained herein are true and correct and within my personal knowledge.

1. On or about December 30, 2012 my partner Matt Amatsia Meron passed away. Upon his death Mr Alon Nottea contacted me and requested that I take over the merchant account assigned to my partner Mr. Meron [Shalita Holdings]

2. Based on Alon Nottea relationship with both myself and my partner, I agreed to follow Alon Nottea's request and switch the merchant account to my name. Since that time I have not authorized any subsequent use of my name and my signature, including bank accounts or merchant accounts.

3. From the time that I agreed to switch the merchant accounts until the present, I have never received any monetary compensation from Shalita Holdings. Also, I am not aware of how Mr. Nottea was going to use the merchant account. Further, I was unaware of what type of products were being transacted under the merchant account.

4. I was only approached by Alon Nottea in connection to Shalita Holdings.

5. I am involved in the business of selling garage doors on line for the past 15 years.

6. I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge and understanding.

_____
ERAN LINK

7/14/15
DATE

DECLARATION OF ERAN LINK         -1-

EXHIBIT 51

SUPPLEMENTAL DECLARATION OF ERAN LINK

I, Eran Link, hereby declare as follows: That all statements contained herein are true and correct and within my personal knowledge.

1. The only Shalita Holdings merchant account that I agreed to be on was the one that was switched from Mr. Meron to my self upon his death. I did not and have not agreed to be on any additional merchant accounts connected to Shalita Holdings.

2. I did not authorize any one to open or sign on my behalf any new accounts for Shalita Holdings using my name and information.

3. The account held at Bank of America Optimized Media Service Inc., Account No. 1288 was not opened by me or authorized by me. Any documents bearing my name and or signature is without my knowledge and or permission.

4. I never knew that such accounts existed until I was made aware of this lawsuit, sometime in July of 2015. The only account that I have access to online at Bank of America is Mega Access Inc. Garage door business Account No. 210-3. Therefor, I am asking that hold be released from the above referenced account.

5. I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge and understanding

_____
ERAN LINK

7-15-15
DATE

DECLARATION OF ERAN LINK      -1-



# OPERATING AGREEMENT

## OF

## SUNSET HOLDING PARTNERS, LLC

### A California Limited Liability Company

**AGREEM ENT,**  Date:  **01-16-2015**
Made among:

Managing: **IGOR LATSANOVSKI**
Address: 23679 CALABASAS ROAD UNIT 531, CALABASAS, CA 91302

Member: **CALENERGY, INC**
Address: 23679 CALABASAS ROAD UNIT 531, CALABASAS, CA 91302

Hereafter referred to as "Member or members".

### W I T N E S S E T H :

**WHEREAS,** the parties hereto desire to form a limited liability company pursuant to the laws of the State of California for the purposes hereinafter set forth, and to establish their respective rights and obligations in connection with the limited liability company; and

**NOW, THEREFORE,** in consideration of the mutual covenants set forth herein and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Managing Member and Members agree as follows:

### 1. Formation

The parties hereby confirm that they have formed a limited liability company (the "Limited Liability Company") pursuant to the provisions of the California Limited Liability Company Act, California Statutes Annotated, Chapter 2.5, *et seq.*, as the same may be amended from time to time, for the purposes and the period and upon the terms and conditions hereinafter set forth. The parties have caused to be filed the Articles of Organization of the Limited Liability Company, and shall execute, acknowledge, swear to and file any other documents required under applicable law.



EXHIBIT 53

## 2. Name

The name of the Limited Liability Company shall be "SUNSET HOLDING PARTNERS, LLC" and all business of the Limited Liability Company shall be conducted under said name, or such other name as the Member from time to time may determine.

## 3. Purpose

The purposes of the Limited Liability Company are to HOLD and TRANSACT REAL ESTATE PROPERTY.

To incur indebtedness, secured and unsecured; to enter into and perform contracts and agreements of any kind necessary to, in connection with or incidental to the business of the Limited Liability Company: and to carry on any other activities necessary to, in connection with or incidental to the foregoing, as the Managing Member in their discretion may deem desirable.

## 4. Place of Business

The principal place of business and specified office of the Limited Liability Company at which the records required to be maintained by the Limited Liability Company under the California Limited Liability Company Act are to be kept shall be at 23679 CALABASAS ROAD UNIT 531, CALABASAS, CA 91302 or at such other or additional places of business within or outside of the Slate of California as the Managing Member from time to time may designate. The Managing Member shall notify the other Members of any change of the principal place of business and specified office.

The Limited Liability Company hereby designates SIMA CORPORATE GROUP (Registered Agent), whose address is 200 N Maryland Avenue, Suite300, GLENDALE, CA 91206 as the Registered Agent of the Limited Liability Company for service of process.

The Managing Member may change the registered office and Registered Agent from time to time by filing, the prescribed forms with the appropriate governmental authorities.

## 5. Capital Contributions

The capital of the Limited Liability Company shall be CONTRIBUTED shall consist of the aggregate of the capital contributions to be made pursuant to this Article 6.

Each of the Members shall contribute to the capital of the Limited Liability Company the % set forth opposite his name below:

| | | |
|---|---|---|
| 1 - Member: | IGOR LATSANOVSKI | 1.00% |
| 2 - Member: | CALENERGY INC | 99.00% |

The Members shall not be required to make any additional capital contributions.

2

Except as specifically provided in this Agreement or required by law, no Member shall have the right to withdraw or reduce his contributions to the capital of the Limited Liability Company until the termination of the Limited Liability Company. No Member shall have the right to demand and receive any distribution from the Limited Liability Company in any form other than cash, regardless of the nature of such Member's capital contribution. No Member shall be paid interest on capital contributions to the Limited Liability Company.

The liability of any Member for the losses, debts, liabilities and obligations of the Limited Liability Company shall be limited to paying: the capital contribution of such Member when due under this Agreement; such Member's share of any undistributed assets of the Limited Liability Company; and (only if and to the extent at any time required by applicable law) any amounts previously distributed to such Member by the Limited Liability Company.

### 6. Loans and Advances by Members

If any Member shall loan or advance any funds to the Limited Liability Company in excess of the capital contribution of such Member prescribed herein, such loan or advance shall not be deemed a capital contribution to the Limited Liability Company and shall not in any respect increase such Member's interest in the Limited Liability Company.

### 7. Allocations and Distributions

As used in this Agreement, the terms "net profits" and "net losses" shall mean the profits or losses of the Limited Liability Company from the conduct of the Limited Liability Company's business, after all expenses incurred in connection therewith have been paid or provided for. The net profits or net losses of the Limited Liability Company shall be determined by the Limited Liability Company's accountants in accordance with generally accepted accounting principles applied in determining the income, gains, expenses, deductions or losses, as the case may be, reported by the Limited Liability Company for Federal income tax purposes.

The term "cash receipts" shall mean all cash receipts of the Limited Liability Company from whatever source derived, including without limitation capital contributions made by the Member; the proceeds of any sale, exchange, or other disposition of all or any part of the assets of the Limited Liability Company; the proceeds of any loan to the Limited Liability Company; the proceeds of any insurance policy payable to the Limited Liability Company; and the proceeds from the liquidation of the assets of the Limited Liability Company following a termination of the Limited Liability Company.

The "capital account" for each Member shall mean the account established, determined and maintained for such Member in accordance with Section 704(b) of the Internal Revenue Code and Treasury Regulation Section 1.704-l(b)(2)(iv). The capital account for each Member shall be increased by (1) the amount of money contributed by such Member to the Limited Liability Company, (2) the fair market value of property contributed by such Member to the Limited Liability Company (net of liabilities secured by such contributed property that the Limited Liability Company is considered to assume or take subject to under Section 752 of the Internal Revenue Code), and (3) allocations to such Member of Limited Liability Company income and gain (or items thereof), including income and gain exempt from tax and income and gain described in Treasury Reg. Section 1.704-l(b)(2)(iv)(g), but excluding income and gain described in subsection (b)(4)(i) of said Regulation, and shall be decreased by (4) the amount of money distributed to such Member by the Limited Liability Company, (5) the fair market value of property distributed to such Member by the Limited Liability Company (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Section 752 of the Code), (6) allocations to such Member of expenditures of the Limited Liability Company described in Section 705(a)(2)(B) of the Code, and (7) allocations of Limited Liability Company loss and deduction (or items thereof) including loss and deduction described in Treasury Reg. Section 1.704-l(b)(2)(iv)(g), but excluding items described in (6) above and loss or deduction described in subsections (b)(4)(i) or (b)(4)(iii) of said Regulation. Net profits

App.000328

such capital account the items described in Treasury Reg. Sections 1.704-l(b)(2)(ii)(d)(4), (5) and (6). This provision is intended to constitute a qualified income offset within the meaning of Treasury Reg. Section 1.704-l(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(4) Gross Income Allocation ~ In the event any Member has a deficit capital account at the end of any fiscal year which is in excess of the sum of the amounts such Member is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Reg. Sections 1.704-2(g)(l) and 1.704-2(i)(5), each such Member shall be allocated items of the Limited Liability Company's income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this provision shall be made only if and to the extent that such Member would have a deficit in such Member's capital account in excess of such sum after all other allocations provided for in this Article 8 have been tentatively made as if this provision and the provisions of clause (3) above were not in this Agreement.

(5) Nonrecourse Deductions — Nonrecourse deductions (within the meaning of Treasury Reg. Section 1.704-2(b)(l)) for any fiscal year shall be allocated among the Member in proportion to the Members' Percentage Interests.

(6) Partner Nonrecourse Deductions - Any partner nonrecourse deductions (within the meaning of Treasury Reg. Sections 1.704-2(b)(1) and 1.704-2(b)(2)) for any fiscal year shall be allocated to the Member who bears the economic risk of loss with respect to the partner nonrecourse debt (within the meaning of Treasury Reg. Section 1.704-2(b)(4)) to which such partner nonrecourse deductions are attributable in accordance with Treasury Reg. Section 1.704-2(i)(l).

(7) Other Mandatory Allocations - In the event Section 704(c) of the Internal Revenue Code or the Regulations thereunder require allocations in a manner different than that set forth above in this Article 8, the provisions of Section 704(c) and the Regulations thereunder shall control such allocations among the Members.

It is the intention of the Members that the allocations hereunder shall be deemed to have "substantial economic effect" within the meaning of Section 704 of the Internal Revenue Code and Treasury Reg. Section 1.704-1. Should the provisions of this Agreement be inconsistent with or in conflict with Section 704 of the Code or the Regulations thereunder, then Section 704 of the Code and the Regulations shall be deemed to override the contrary provisions hereof. If Section 704 or the Regulations at any time require that limited liability company operating agreements contain provisions which are not expressly set forth herein, such provisions shall be incorporated into this Agreement by reference and shall be deemed a part of this Agreement to the same extent as though they had been expressly set forth herein, and the Managing Member shall be authorized by an instrument in writing to amend the terms of this Agreement to add such provisions, and any such amendment shall be retroactive to whatever extent required to create allocations with a substantial economic effect.

### 8. Books. Records and Tax Returns

At all times during the continuance of the Limited Liability Company, the Managing Member shall keep or cause to be kept complete and accurate records and books of account in which shall be entered each transaction of the Limited Liability Company in accordance with generally accepted accounting principles.

The fiscal year of the Limited Liability Company for both accounting and income tax purposes shall be the calendar year. The Limited Liability Company shall report its operations, net income and net losses in accordance with the methods of accounting selected by the Managing Member.

4

The Managing Member may employ on behalf of the Limited Liability Company and at the expenses of the Limited Liability Company such firm of certified public accountants as the Managing Member in their sole discretion deems appropriate to serve as the Limited Liability Company's accountants.

The Managing Member shall furnish to each Member, within seventy-five days after the end of each fiscal year, an annual report of the Limited Liability Company which shall include a balance as of the end of such fiscal year; a profit and loss statement of the Limited Liability Company for such fiscal year: a statement of the balance in the capital account of such Member; and the amount of such Member's share of the Limited Liability Company's income, gain, losses, deductions and other relevant items for Federal income tax purposes.

The Managing Member shall prepare or cause to be prepared all Federal, State and local income tax and information returns for the Limited Liability Company, and shall cause such tax and information returns to be filed timely with the appropriate governmental authorities. Within seventy-five days after the end of each fiscal year, the Managing Member shall forward to each person who was a Member during the preceding fiscal year a true copy of the Limited Liability Company's information return filed with the Internal Revenue Service for the preceding fiscal year. The Managing Member shall not be liable to any Member if any taxing authority disallows or adjusts any deductions or credits in the Limited Liability Company's income tax or information returns.

All elections required or permitted to be made by the Limited Liability Company under the Internal Revenue Code, and the Managing Member shall make the designation of a tax matters partner pursuant to Section 6231(a) (7) of the Internal Revenue Code for all purposes permitted or required by the Code. The tax matters partner shall take such action as may be necessary to cause each other Member to become a notice member within the meaning of Section 6223 of the Code. The tax matters partner may not take any action contemplated by Sections 6222 through 6232 of the Code without the consent of the Managing Members.

All such records, books of account, tax and information returns, and reports and statements. together with executed copies of this Agreement, shall at all times be maintained at the principal place of business of the Limited Liability Company, and shall be open to the inspection and examination of the Members or their duly authorized representatives during regular business hours. Each Member, or a duly authorized representative of such Member, may make copies of the Limited Liability Company's books of account and records at the expense of such Member. Any Member, at the expense of such Member, may conduct an audit of the Limited Liability Company's books of account and records.

The Managing Member shall furnish to each Member, promptly upon request, a current list of the name and address of the Managing Member and other Members of the Limited Liability Company, and any other persons or entities having any financial interest in the Limited Liability Company.

The cost of preparing all of the aforesaid records, books, returns and other items shall be borne by the Limited Liability Company. Upon request of the Managing Member, the Members shall pay to the Limited Liability Company, in proportion to the Members' Percentage Interests, the cost of preparing same, not to exceed in the aggregate $2,000 for each fiscal year.

### 9. Bank Accounts

All funds of the Limited Liability Company shall be deposited in the Limited Liability Company's name in such bank account or the Managing Member shall designate accounts as. Withdrawals from any such bank accounts shall be made only in the regular course of business of the Limited Liability Company and shall be made upon such signature or signatures as the Managing Member from time to time may designate.

5