### 10. Management of the Limited Liability Company

The Members hereby designate IGOR LATSANOVSKI to serve as the Managing Member for the Limited Liability Company.

The business and affairs of the Limited Liability Company shall be conducted and managed by the Managing Member of the Limited Liability Company in accordance with this Agreement and the laws of California.

At any time there is more than one Managing Member, a majority in number of the Managing Members shall decide any difference arising as to any matter within the authority of Managing Member.

If at any time the Managing Member do not own. in the aggregate, at least 20 percent of the Member's Percentage Interests, all of the Members shall be Managing Member until such time as the Members duly elect Managing Members who do own at least 20 percent of the Member's Percentage Interests.

The Managing Member shall have responsibility for the day-to-day management of the business and affairs of the Limited Liability Company and shall devote such time and attention as the Managing Member deem necessary to the conduct and management of the business and affairs of the Limited Liability Company.

Each of the Managing Member hereby is given sole power and authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company. Unless authorized by the Managing Member, no other person shall have the power or authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company. No person, firm or corporation dealing with the Limited Liability Company shall be required to investigate the authority of the Managing Member or to secure the approval of or confirmation by the Members of any act of the Managing Members in connection with the business or affairs of the Limited Liability Company.

No Member, other than the Managing Member or their designees, shall have the authority, or shall take any action as a Member, to bind the Limited Liability Company.

Notwithstanding any other provision of this Agreement, the Managing Member shall not. without the prior written consent of the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests, sell, exchange, lease, assign or otherwise transfer all or substantially all of the assets of the Limited Liability Company; borrow money on behalf of the Limited Liability Company in the excess of $ 0; lend any Limited Liability Company funds or other assets to any person in an amount or with a value in the excess of $0 establish any reserves for working capital repairs and
replacements, improvements or any other purpose, in excess of an aggregate of $0 confess a
judgment against the Limited Liability Company: settle, compromise or release, discharge or pay any
claim, demand or debt in excess of $0 including claims for insurance; approve a merger or
consolidation of the Limited Liability Company with or into any other limited liability company, corporation, partnership or other entity: or change the nature or character of the business of the Limited Liability Company.

The Managing Member shall be reimbursed by the Limited Liability Company for all direct out-of-pocket expenses incurred by the Managing Member on behalf of the Limited Liability Company in connection with the performance of their duties hereunder, including without limitation amounts payable by the Managing Member for office, accounting, bookkeeping and other services, materials, facilities and professional and legal services rendered or furnished to the Limited Liability Company.

6

As compensation for the services of the Managing Member in arranging the transactions contemplated by the Limited Liability Company and the continuing management of the Limited Liability Company, the Limited Liability Company shall pay the Managing Member a limited liability company management fee of $0   per annum   payable monthly. The compensation for the services of the Managing Member to the Limited Liability Company may be modified from time to time by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests.

A Managing Member's duty of care in the discharge of the Managing Member's duties to the Limited Liability Company and the Members is limited to refraining from engaging in grossly negligent conduct, intentional misconduct, or a knowing violation of law. In discharging the duties of a Managing Member, the Managing Member shall be fully protected in relying in good faith upon the records of the Limited Liability Company and upon such information, opinions, reports or statements by other Managing Member, Members, agents or other persons as to matters the Managing Member reasonably believes are within such person's professional or expert competence, including without limitation information, opinions, reports or statements as to the value or amount of the assets, liabilities, profits or losses of the Limited Liability Company or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

To the extent of the Limited Liability Company's assets, and to the extent permitted by law, the Limited Liability Company shall indemnify and hold each Managing Member harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred by the Managing Member by reason of any act or omission of the Managing Member made in good faith on behalf of the Limited Liability Company.

Except as expressly provided elsewhere in this Agreement, any decisions which arc to be made by the Members, rather than the Managing Member, shall be made by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests.

### 11. Assignment of Interests

Except as otherwise provided in this Agreement, no Member or other person holding any interest in the Limited Liability Company may assign, pledge, hypothecate, transfer or otherwise dispose of all or any part of his interest in the Limited Liability Company, including without limitation the capital, profits or distributions of the Limited Liability Company without the prior written consent of the other Members in each instance.

The Members agree that no Member may voluntarily withdraw from the Limited Liability Company without the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests (other than the withdrawing Member).

A Member may assign all or any part of such Member's interest in the allocations and distributions of the Limited Liability Company to any of the following (collectively the "permitted assignees"): any person, corporation, partnership or other entity as to which the Limited Liability Company has given consent to the assignment of such interest in the allocations and distributions of the Limited Liability Company by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests. An assignment to a permitted assignee shall only entitle the permitted assignee to the allocations and distributions to which the assigned interest is entitled, unless such permitted assignee applies for admission to the Limited Liability Company and is admitted to the Limited Liability Company as a Member in accordance with this Agreement.

An assignment, pledge, hypothecation, transfer or other disposition of all or any part of the interest of a Member in the Limited Liability Company or other person holding any interest in the Limited Liability Company in violation of the provisions hereof shall be null and void for all purposes.

App.000332

No assignment, transfer or other disposition of all or any part of the interest of any Member permitted under this Agreement shall be binding upon the Limited Liability Company unless and until a duly executed and acknowledged counterpart of such assignment or instrument of transfer, in form and substance satisfactory to the Managing Member, has been delivered to the Limited Liability Company.

No assignment or other disposition of any interest of any Member may be made if such assignment or disposition, alone or when combined with other transactions, would result in the termination of the Limited Liability Company within the meaning of Section 708 of the Internal Revenue Code or under any other relevant section of the Code or any successor statute. No assignment or other disposition of any interest of any Member may be made without an opinion of counsel satisfactory to the Managing Member that such assignment or disposition is subject to an effective registration under, or exempt from the registration requirements of, the applicable State and Federal securities laws. No interest in the Limited Liability Company may be assigned or given to any person below the age of 21 years or to a person who has been adjudged to be insane or incompetent.

Anything herein contained to the contrary, the Managing Member and the Limited Liability Company shall be entitled to treat the record holder of the interest of a Member as the absolute owner thereof, and shall incur no liability by reason of distributions made in good faith to such record holder, unless and until there has been delivered to the Managing Member the assignment or other instrument of transfer and such other evidence as may be reasonably required by the Managing Member to establish to the satisfaction of the Managing Member that an interest has been assigned or transferred in accordance with this Agreement.

## 12. Admission of New Members

The Members may admit new Members (or transferees of any interests of existing Members) into the Limited Liability Company by the unanimous vote or consent of the Members.

As a condition to the admission of a new Member, such Member shall execute and acknowledge such instruments, in form and substance satisfactory to the Managing Member, as the Managing Member may deem necessary or desirable to effectuate such admission and to confirm the agreement of such Member to be bound by all of the terms, covenants and conditions of this Agreement, as the same may have been amended. Such new Member shall pay all reasonable expenses in connection with such admission, including without limitation reasonable attorneys' fees and the cost of the preparation, filing or publication of any amendment to this Agreement or the Articles of Organization, which the Managing Member may deem necessary or desirable in connection with such admission.

No new Member shall be entitled to any retroactive allocation of income, losses, or expense deductions of the Limited Liability Company. The Managing Member may make pro rata allocations of income, losses or expense deductions to a new Member for that portion of the tax year in which the Member was admitted in accordance with Section 706(d) or the Internal Revenue Code and regulations thereunder.

In no event shall a new Member be admitted to the Limited Liability Company if such admission would be in violation of applicable Federal or State securities laws or would adversely affect the treatment of the Limited Liability Company as a partnership for income tax purposes.

App.000333

### 13. Withdrawal Events Regarding Members and
### Election to Continue the Limited Liability Company

In the event of the death, retirement, withdrawal, expulsion, or dissolution of a Member, or an event of bankruptcy or insolvency, as hereinafter defined, with respect to a Member, or the occurrence of any other event which terminates the continued membership of a Member in the Limited Liability Company pursuant to the laws of California (each of the foregoing being hereinafter referred to as a "Withdrawal Event"), the Limited Liability Company shall terminate sixty days after notice to the Members of such Withdrawal Event unless the business of the Limited Liability Company is continued as hereinafter provided.

Notwithstanding a Withdrawal Event with respect to a Member, the Limited Liability Company shall not terminate, irrespective of applicable law, if within aforesaid sixty day period the remaining Members, by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests (other than the Member who caused the Withdrawal Event), shall elect to continue the business of the Limited Liability Company.

In the event of a Withdrawal Event with respect to any Member, any successor in interest to such Member (including without limitation any executor, administrator, heir, committee, guardian, or other representative or successor) shall not become entitled to any rights or interest of such Member in the Limited Liability Company, other than the allocations and distributions to which such Member is entitled, unless such successor in interest is admitted as a Member in accordance with this Agreement.

An "event of bankruptcy or insolvency" with respect to a Member shall occur if such Member: applies for or consents to the appointment of a receiver, trustee or liquidator of all or a substantial part of his assets; or makes a general assignment for the benefit of creditors; or is adjudicated a bankrupt or an insolvent; or files a voluntary petition in bankruptcy or a petition or an answer seeking an arrangement with creditors or to take advantage of any bankruptcy, insolvency, readjustment of debt or similar law or statute, or an answer admitting the material allegations of a petition filed against him in any bankruptcy, insolvency, readjustment of debt or similar proceedings; or takes any action for the purpose of effecting any of the foregoing; or an order, judgment or decree shall be entered, with or without the application, approval or consent of such Member, by any court of competent jurisdiction, approving a petition for or appointing a receiver or trustee of all or a substantial part of the assets of such Member, and such order, judgment or decree shall continue unstated and in effect for thirty days.

### 14. Dissolution and Liquidation

The Limited Liability Company shall terminate upon the occurrence of any of the following: the election by the Members to dissolve the Limited Liability Company made by the unanimous vote or consent of the Members; the occurrence of a Withdrawal Event with respect to a Member and the failure of the remaining Members to elect to continue the business of the Limited Liability Company as provided for in Article 14 above; or any other event which pursuant to this Agreement, as the same may hereafter be amended, shall cause a termination of the Limited Liability Company.

The liquidation of the Limited Liability Company shall be conducted and supervised by the Managing Member or if there be none then by a person designated for such purposes by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests (the "Liquidating Agent"). The Liquidating Agent hereby is authorized and empowered to execute any and all documents and to take any and all actions necessary or desirable to effectuate the dissolution and liquidation of the Limited Liability Company in accordance with this Agreement.

Promptly after the termination of the Limited Liability Company, the Liquidating Agent shall cause to be prepared and furnished to the Members a statement setting forth the assets and liabilities of the Limited Liability Company as of the date of termination. The Liquidating Agent, to the extent practicable, shall liquidate the assets of the Limited Liability Company as promptly as possible, but in an orderly and

App.000334

businesslike manner so as not to involve undue sacrifice and in accordance with the provisions of the California Limited Liability Company Act.

The proceeds of sale and all other assets of the Limited Liability Company shall be applied and distributed in the following order of priority: (a) to the payment of the expenses of liquidation and the debts and liabilities of the Limited Liability Company, other than debts and liabilities to Members; (b) to the payment of debts and liabilities to Members; (c) to the setting up of any reserves which the Liquidating Agent may deem necessary or desirable for any contingent or unforeseen liabilities or obligations of the Limited Liability Company, which reserves shall be paid over to an attorney-at-law admitted to practice in the State of California as escrowee, to be held for a period of two years for the purpose of payment of the aforesaid liabilities and obligations, at the expiration of which period the balance of such reserves shall be distributed as hereinafter provided; (d) to the Members in proportion to their respective capital accounts until each Member has received cash distributions equal to any positive balance in his capital account, in accordance with the rules and requirements of Treasury Reg. Section 1.704-l(b)(2)(ii)(b); and (e) to the Members in proportion .o the Members' Percentage Interests.

The liquidation shall be complete within the period required by Treasury Reg. Section 1.704-l(b)(2)(ii)(b).

If the Liquidating Agent shall determine that it is not practicable to liquidate all of the assets of the Limited Liability Company, the Liquidating Agent may retain assets having a fair market value equal to the amount by which the net proceeds of liquidated assets are insufficient to satisfy the debts and liabilities referred to above. If, in the absolute judgment of the Liquidating Agent, it is not feasible to distribute to each Member his proportionate share of each asset, the Liquidating Agent may allocate and distribute specific assets to one or more Member in such manner as the Liquidating Agent shall determine to be fair and equitable, taking into consideration the basis for tax purposes of each asset.

Upon compliance with the distribution plan, the Members shall cease to be such, and the Managing Member shall execute, acknowledge and cause to be filed such certificates and other instruments as may be necessary or appropriate to evidence the dissolution and termination of the Limited Liability Company.

### 15. Representations Of Members

Each of the Members represents, warrant? and agrees that the Member is acquiring the interest in the Limited Liability Company for the Member's own account as an investment and not with a view to the sale or distribution thereof; the Member, if an individual, is over the age of 21, or if the Member is an organization, such organization is duly organized, validly existing and in good standing under the laws of its State of organization and that it has full power and authority to execute and perform its obligations under this Agreement; and the Member shall not dispose of such interest or any part thereof in any manner which would constitute a violation of the Securities Act of 1933, the Rules and Regulations of the Securities and Exchange Commission, or any applicable laws, rules or regulations of any State or other governmental authorities, as the same may be amended.

### 16. Certificates Evidencing Membership

A Certificate of Membership issued by the Managing Member shall evidence every membership interest in the Limited Liability Company. Each Certificate of Membership shall set forth the name of the Member holding the membership interest and the Member's Percentage Interest held by the Member, and shall bear the following legend:

10

The membership interest represented by this certificate is subject to, and may not be transferred except in accordance with, the provisions of the Operating Agreement of <u>SUNSET HOLDING PARTNERS, LLC</u> dated as of <u>JANUARY 16, 2015</u>, as the same from time to time may be amended, a copy of which Operating Agreement is on file at the principal office of the Limited Liability Company.

The Members agree promptly to deliver to the Managing Member any Certificates of Membership previously issued for the purpose of adding the foregoing legend thereto.

### 17. Notices

All notices, demands, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder shall be in writing and shall be deemed to have been properly given if sent by FedEx or similar private express service or by registered or certified mail, return receipt requested, with postage prepaid, addressed as follows: (a) if to the Limited Liability Company, to the Limited Liability Company c/o the Managing Member at their address first above written or to such other address or addresses as may be designated by the Limited Liability Company or the Managing Member by notice to the Members pursuant to this Article 17; (b) if to the Managing Member, to the Managing Member at their address first above written or to such other address or addresses as may be designated by the Managing Member by notice to the Limited Liability Company and the Members pursuant to this Article 18; and (c) if to any Member, to the address of said Member first above written, or to such other address as may be designated by said Member by notice to the Limited Liability Company and the other Members pursuant to this Article 17. Each Member shall keep the Limited Liability Company and the other Members informed of such Member's current address.

### 18. Amendments

This Agreement may not be altered, amended, changed, supplemented, waived or modified in any respect or particular unless the same shall be in writing and agreed to by the affirmative vote or consent of Members holding two-thirds of the Members' Percentage Interests. No amendment may be made to Articles 5, 7, 12 and 14 hereof, insofar as said Articles apply to the financial interests of the Members, except by the vote or consent of all of the Members. No amendment of any provision of this Agreement relating to the voting requirements of the Members on any specific subject shall be made without the affirmative vote or consent of at least the number or percentage of Members required to vote on such subject.

### 19. Miscellaneous

This Agreement and the rights and liabilities of the parties hereunder shall be governed by and determined in accordance with the laws of the State of California. Every provision of this Agreement is intended to be severable. If any provision of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this Agreement, which shall remain in full force and effect.

The captions in this Agreement are for convenience only and are not to be considered in construing this Agreement. All pronouns shall be deemed to be the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require. References to a person or persons shall include partnerships, corporations, limited liability companies, unincorporated associations, trusts, estates and other types of entities. The Managing Member and the Members collectively are referred to herein as the Members. Any one of the Members is referred to herein as a Member. References to the Internal Revenue Code shall mean the Internal Revenue Code of 1986, as amended, and any successor or superseding Federal revenue statute.

App.000336

In the presence of:

<u>IGOR LATSANOVSKI</u>
Member

<u>IGOR LATSANOVSKI on belaf of</u>
<u>CALENERGY INC</u>
Member

12

App.000337

This Agreement, and, any amendments hereto may be executed in counterparts all of which taken together shall constitute one agreement.

This Agreement sets forth the entire agreement of the parties hereto with respect to the subject matter hereof. It is the intention of the Members that this Agreement shall be the sole source of agreement of the parties, and, except to the extent a provision of this Agreement provides for the incorporation of Federal income tax rules or is expressly prohibited or ineffective under the California Limited Liability Company Act, California Statutes Annotated, Chapter 2.5, *et seq.,* as the same may be amended from time to time, this Agreement shall govern even when inconsistent with, or different from, the provisions of any applicable law or rule. To the extent any provision of this Agreement is prohibited or otherwise ineffective under the California Limited Liability Company Act. California Statutes Annotated, Chapter 2.5, *et seq.,* such provision shall be considered to be ineffective to the smallest degree possible in order to make this Agreement effective under the California Limited Liability Company Act, California Statutes Annotated, Chapter 2.5, *et seq.* If the California Limited Liability Company Act, California Statutes Annotated, Chapter 2.5, *et seq.,* is subsequently amended or interpreted in. such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

Subject to the limitations on transferability contained herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors and assigns.

No provision of this Agreement is intended to be for the benefit of or enforceable by any third party.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the date first above written.

In the presence of:

<u>IGOR LATSANOVSKI</u>
Member


<u>IGOR LATSANOVSKI on behalf of
CALENERY INC</u>
Member

13

Verbal Agreement        May 5th 2015

Sunset holding partners LLC currently restructuring ownership previously Cal energy that is 99% & Igor owning 1%. As today May 5th 2015 Igor owns 60% of shares & Cesar M. Feniche owns 40% of shares Igor is in charge of securing financing for Sunset if any monies is acuved from sources Sunset is responsible Cesar is responsible to get all properties that have a good investment potential all due diligence with future value etc. & conduct all operations architects, vendors, contractors etc. Cesar M. Feniche will act of CEO & do so sign all items that do with real estate on Igor's behalf. Igor will control all money from all Bank accounts. 100% all profits from each

EXHIBIT 54

App.000339

project will be held as operating expenses all other 90% will be split 60% Igor 40% Cesar.

The 10% will be split end of year if monies are available is true money. If we have balance the 1st project of next year will cover costs.

I Cesar am responsible to create official agreement reflecting this verbal written agreement.

Cesar M. Perini
5/5/15
lets make it happen :)

— Igor Latsanovski
— (Caleenergy)
5/5/15
Good Luck us

## REAL ESTATE TRANSACTIONS BY
## SUNSET HOLDINGS PARTNERS, LLC DURING RECEIVERSHIP

As part of her investigation the Receiver learned that Defendant Calenergy, Inc. owns a 99% interest in Sunset Holdings Partners LLC ("Sunset Holdings"), and that Defendant Latsanovski is a signatory on the Sunset Holdings Account. As such, the Receiver made it known to Defendant Latsanovski and his attorneys that Sunset Holdings, as an asset of Defendant Calenergy, Inc. is subject to the Receivership Order.[1]

Prior to entry of the Receivership Order, Sunset Holdings entered into two contracts for the purchase of real estate that were scheduled to close escrow on June 30, 2015: (1) the purchase of a property located at 3777 Rosewood Avenue, Los Angeles, CA 90066 (the "Rosewood Property"); and (2) the purchase of a property located at 3783 Redwood Avenue, Los Angeles, CA 90066 (the "Redwood Property").

In addition, prior to entry of the Receivership Order, Sunset Holdings deposited $300,000 in Parkfield Escrow toward the purchase of the Rosewood Property for $1,007,000; and deposited $100,000 in LA Citiwide Escrow Marina toward the purchase of the Redwood Property for $1 million. Pursuant to the terms of the real estate contracts, if Sunset Holdings did not proceed with the

---

[1] Defendant Latsanovski claims an amendment to the Operating Agreement of Sunset Holdings transferred Calenergy's ownership interest in Sunset Holdings to a third party. Based on the provisions of the Sunset Holding LLC agreement, Calenergy's bi-laws, and basic contract principles, the amendment was invalid to transfer any of Calenergy's interest in Sunset Holdings to the third-party.


EXHIBIT 55

App.000341