closings scheduled on June 30, 2015, $400,000 in escrow would be forfeited to the sellers of the Redwood Property and the Rosewood Property.

In order to avoid the forfeiture of the monies in escrow, the attorneys for Defendant Latsanovski asked the Receiver to consent to lift the freeze on the Sunset Holdings account at Wells Fargo bank to allow the transfer of the funds required to close on the purchase of the two properties: $707,000 required to be sent to Parkfield Escrow to close on the purchase of the Rosewood Property; and $900,000 required to be sent to LA Citiwide Escrow Marina to be used to close on the purchase of the Redwood Property.

After consultation with the attorneys for Latsanovski and the Federal Trade Commission, the Receiver agreed to lift the freeze on the Sunset Holdings account to allow the specific disbursement of funds to the two title companies. Accordingly, Defendants Latsanovski and Calenergy, the Receiver, the Federal Trade Commission, and Sunset Holdings entered into a Stipulation that was filed with the Court on June 30, 2015 as Docket No. 33. A true and correct copy of the Stipulation is attached hereto as **Exhibit A.**

Soon after the Stipulation was filed with the Court the attorneys for Defendants Latsanovski and Calenergy requested the Receiver to agree to the release of additional monies related to the purchase of the Rosewood Property. Specifically, the Defendants indicated an additional $196,222.76 was needed to

pay for "additional disbursements" primarily consisting of $51,237 to be paid to an architectural firm and $135,000 to be paid to a construction firm. The Receiver determined these additional disbursements were not part of Sunset Holdings' contract with the seller of the Rosewood Property and therefore were not necessary in order to avoid a forfeiture of the escrow money. As a result, the Receiver denied the Defendants' request to lift the freeze on the Sunset Holdings account to allow the disbursement of additional monies.

In violation of the express terms of the Stipulation agreed to by the parties, and the Receiver's directions, Defendant Latsanovski had Wells Fargo disburse $900,000 to Parkfield Escrow, Inc. for the purchase of the Rosewood Property instead of $707,000 as agreed to by the parties. A true and correct copy of the wire transfer request executed by Defendant Latsanovski is attached hereto as **Exhibit B.** As a result of this incorrect wire transfer, Parkfield Escrow, Inc. received $193,000 more than was authorized by the Receiver; and LA Citiwide Escrow Marina received $193,000 less than was authorized by the Receiver.

Attorneys for Latsanovski claim his incorrect wire transfer request was the result of Latsanovski getting the two properties mixed up and making a simple mistake. Regardless of whether Latsanovski's instructions to Wells Fargo were a mistake, Latsanovski was aware that Parkfield Escrow received more monies than authorized from the Receiver. Rather than correct the mistake and have the

additional monies transferred to LA Citiwide Escrow Marina, Latsanovksi instructed Parkfield Escrow to close on the purchase of the Rosewood Property and disburse the monies to the architect and contractor. Such actions by Latsanovski were an intentional violation of the Stipulation between the parties, and violated the Receivership Order.

As a result of the wrongful conversion of the monies by Latsanovski in closing on the Rosewood Property, there was a $193,000 shortfall in funds necessary to close on the purchase of the Redwood Property at LA Citiwide Escrow Marina.

Attorneys for Latsanovski requested the Receiver to release additional funds from the Sunset Holdings account to make up the shortfall. The Receiver refused this request and made demand upon Latsanovski to immediately make up the shortfall of funds that was created by his wrongful actions. In addition, the Receiver informed attorneys for Latsanovski that the Receiver would have to file a show cause motion against Defendant Latsanovski if the shortfall was not cured. The Receiver delayed filing the show cause motion to give Latsanovski an opportunity to cure the shortfall. On July 17, 2014, Latsanovski secured funds from third parties to make up the shortfall and Sunset Holdings closed on the purchase of the Redwood Property[2].

---

[2] The Receiver prohibited Latsanovski from allowing the Redwood Property to be encumbered with a lien in exchange for the third party funds making up the shortfall.

Sunset Holdings now owns the Rosewood Property and the Redwood Property and the monies placed in escrow for the purchase of the properties prior to the receivership were not forfeited. In addition, the Receiver filed notices of *lis pendens* on each of the two properties to provide notice the properties are subject to the Receivership Order.

**SCHEPER KIM & HARRIS LLP**
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
ANNAH S. KIM (State Bar No. 190609)
akim@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone: (213) 613-4655
Facsimile: (213) 613-4656

**Attorneys for Defendants**
**Igor Latsanovski and Calenergy, Inc.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff,<br>v.<br>BUNZAI MEDIA GROUP INC., et al.,<br>Defendants. | CASE NO. CV 15-04527 GW (PLAx)<br>**STIPULATION TO RELEASE FUNDS FROM ACCOUNT OF SUNSET HOLDINGS PARTNERS LLC TO COMPLETE REAL ESTATE TRANSACTIONS** |

WHEREAS, on June 16, 2015, as part of the Temporary Restraining Order and asset freeze imposed by the Court in the above-captioned matter, a Wells Fargo bank account belonging to Sunset Holdings Partners LLC (account number ending in 9222) (the "Sunset Holdings Account") was frozen. Igor Latsanovski is a signatory on the Sunset Holdings Account. According to the Operating Agreement of Sunset Holdings Partners LLC, Calenergy, Inc. owns a 99% ownership in Sunset Holdings Partners, LLC.[1] The parties dispute whether a subsequent amendment to the Operating Agreement has effectively transferred Calenergy's shares to

[1] Management and control over Calenergy, Inc. has been transferred to the Temporary Receiver pursuant to the Temporary Restraining Order.



EXHIBIT A

Latsanovski and a third party.

WHEREAS, Sunset Holdings Partners LLC ("Sunset Holdings") has entered into the following two real estate transactions, which are scheduled to close escrow on June 30, 2015: (1) the purchase of a property located at 3777 Rosewood Avenue, Los Angeles, CA 90066. (the "Rosewood Property"); and (2) the purchase of a property located at 3783 Redwood Ave, Los Angeles, CA 90066 (the "Redwood Property"). Sunset Holdings intended to use funds in the Sunset Holdings Account to close these transactions.

WHEREAS Sunset Holdings deposited $300,000 in an escrow account under the name of "LA Citiwide Escrow Marina-MA-001032-EA" ("Redwood Escrow") for the Redwood Property and deposited $100,000 in an escrow account in the name of Parkfield Escrow, Inc. ("Rosewood Escrow") for the Rosewood Property;

WHEREAS Sunset Holdings must deposit $707,000 in the Redwood Escrow for the purchase of the Redwood Property and $900,000 in the Rosewood Escrow for the purchase of the Rosewood Property by June 30, 2015 or Sunset Holdings may forfeit the $400,000 in deposits already made for the Rosewood and Redwood Properties; and

WHEREAS, the parties wish to avoid this potential forfeiture of the escrow deposits.

THEREFORE, IT IS HEREBY STIPULATED by and among the Temporary Receiver, the FTC, defendants Latsanovski and Calenergy, Inc., by their respective attorneys of record, and by Sunset Holdings as follows:

1. The FTC and Temporary Receiver will direct Wells Fargo to lift the asset freeze with respect to the Sunset Holdings Account to allow the transfer of the following funds for the following purposes:

(a) $707,000 to the account of Parkfield Escrow, 13515 LA, to complete the purchase of the Rosewood property.

(b) $900,000 to the account of LA Citiwide Escrow Marina, MA-10032-EA

to complete the purchase of the Redwood property.

The FTC and Temporary Receiver make no warranty or representation that the freeze on the Sunset Holdings Account will be lifted in sufficient time to avoid a forfeiture of the escrow deposits.

2. The parties agree that if the transactions referenced above are completed, the Rosewood Property and the Redwood Property will be deeded in Sunset Holdings' name and subject to the asset freeze as set forth in Section IV of the June 16, 2015 Court-ordered asset freeze (Doc. No. 24), and will not be transferred, sold, encumbered, leased, or conveyed without the consent of the Temporary Receiver and the FTC, unless permitted by an order of the Court.

3. This stipulation relates only to the release of the specific funds for the specific purposes referenced in paragraph 1, above.

DATED: June 29, 2015

SCHEPER KIM & HARRIS LLP
MARC S. HARRIS
ANNAH S. KIM

By: /s/ Marc S. Harris
Marc S. Harris
Attorneys for Defendants Igor Latsanovski and Calenergy, Inc.

DATED: June 29, 2015

FEDERAL TRADE COMMISSION
REID TEPFER
RAYMOND McKOWN

By: /s/ REID TEPFER

Attorneys for Plaintiff Federal Trade Commission

DATED: June 29, 2015

SCHEEF & STONE LLP
CHARLENE KOONCE

By: /s/ Charlene Koonce
Charlene Koonce
Receiver

DATED: June 29, 2015

SUNSET HOLDINGS PARTNERS, LLC

By: ______________________
Igor Latsanovski
Member and Authorized Signatory

I hereby attest that all of the signatories electronically listed above concur in this filing's content and have authorized the filing in compliance with Local Rule 5-4.3.4.(a)(2)(i).

/s/ Marc S. Harris
Marc S. Harris