**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No. |
| Plaintiff, | |
| v. | **PRELIMINARY INJUNCTION ORDER WITH ASSET FREEZE, APPOINTMENT OF PERMANENT RECEIVER AND OTHER EQUITABLE RELIEF** |
| **BUNZAI MEDIA GROUP, INC.,** *et al.* | |
| **Defendants.** | |

Plaintiff, Federal Trade Commission (FTC), filed its Complaint for a Permanent Injunction and Other Equitable Relief, seeking a temporary, preliminary, and permanent injunction to stop Defendants from violating Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a), Section 5 of the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8404, and Section 917(c) of the Electronic Fund Transfer Act (EFTA), 15 U.S.C.

§ 1693o(c), while advertising, marketing, promoting, or offering for sale skincare products. On June 17, 2015, following an on-the-record hearing, the Court issued an *ex parte* temporary restraining order with an asset freeze, appointment of a temporary receiver, and an order to show cause why a preliminary injunction should not issue. Defendants were served with the summons, Complaint, *Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, and other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue,* Plaintiff Federal Trade Commission's Memorandum in Support of *Ex Parte* Application for a Temporary Restraining Order and Other Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue, and other related papers.

After considering the FTC's pleading and declarations, exhibits, and memoranda in support, this Court finds that:

## FINDINGS

1.      This Court has jurisdiction over the subject matter of this case and jurisdiction over the parties, and venue in this district is proper.

2.      The complaint states a claim upon which relief may be granted under Sections 5, 13, and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b, and under 15 U.S.C. §§ 8404 and 1693o(c).

3.      Section 13(b) of the FTC Act allows this Court to grant the FTC a preliminary injunction upon a showing that, weighing the equities and considering the FTC's likelihood of ultimate success, a preliminary injunction is in the public interest. 15 U.S.C. § 53(b). Section 19 of the FTC Act allows this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from the violation of any rule enforced by the FTC. 15 U.S.C. § 57.

4.      In deciding whether to grant preliminary relief, the Court must, therefore: (a) consider the likelihood that the FTC will ultimately succeed on the merits; and (b) balance the equities. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999). The FTC "need not show irreparable harm to obtain a preliminary injunction." *Id*. at 1233 (quoting *FTC v. Warner Commc'ns, Inc*., 742 F.2d 1156, 1159 (9th Cir. 1984)).

5.      There is good cause to believe that Defendants have engaged in, and are likely to engage in, acts or practices that violate Section 5(a) of the FTC Act, ROSCA, and EFTA and Regulation E, and that the Plaintiff is likely to succeed on the merits of this action.

6.       There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of Section 5(a) of the FTC Act, ROSCA, and EFTA, unless Defendants are restrained and enjoined by Order of this Court.

7 .     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief to consumers – including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies – will occur from the sale, transfer, or other disposition or concealment by Defendants of assets or records, and that therefore in accordance with Federal Rule of Civil Procedure 65(b), the interest of justice requires that this Order be granted.

8.     There is good cause to believe that this Preliminary Injunction is in the public interest, and no private interest of Defendants outweighs the public interest.

9.     Weighing the equities and considering the FTC's likelihood of ultimate success, this Preliminary Injunction with asset freeze, appointment of a Permanent Receiver, and other equitable relief is in the public interest.

10.     The United States, its officers, and its agencies are not required to give security for issuance of a restraining order. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

1.     **"Asset"** or **"Assets"** means any legal or equitable right, title, interest, or claim to any item of economic value, in whole or part, whether tangible or intangible, including but not limited to: accounts, accounts receivables, cash,

certificates of deposit, chattels, checks, commodities, contracts, credits, currency, fixtures, funds, equipment, income, intellectual property, inventory, instruments, investments, leaseholds, lines of credit, mail, notes, personal property, real property, revenues, securities, shares of stock, or trusts, whether located within or outside the United States.

2.   **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

a.   In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

b.   A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

c.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

d.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

e.      On a product label, the disclosure must be presented on the principal display panel.

f.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

g.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

h.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

i.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members.

3.      "**Continuity Plan**" means any plan, arrangement, or system in which a consumer is periodically charged for products or services *without* prior notification by the seller before each charge.

4.      "**Defendants**" means all of the Individual Defendants and Corporate Defendants, individually, collectively, or in any combination.

a.      "**Individual Defendants**" means Igor Latsanovski and Khristopher Bond a/k/a Ray Ibbot, individually, collectively, or in any combination.

b.      "**Corporate Defendants**" or "**Receivership Defendants**" means Bunzai Media Group, Inc., d/b/a AuraVie and Miracle Face Kit; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc., also doing business as AuraVie Distribution; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; Calenergy, Inc.; KAI Media, Inc.; Insight Medial, Inc.; and their successors and assigns, as well as any subsidiaries, fictitious business entities, or business names created or used by these entities or by the Individual Defendants that are related to, or receive funds from, the sale of skincare or other products online.

c.      "**Stipulating Defendants**" means Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi, and Roi Reuveni, individually, collectively, or in any combination.

5.      "**Document**" means the complete original and any non-identical copy (whether different from the original because of notations or otherwise) of any **electronically stored information** or filmed, graphic, imaged, printed, punched, texted, transcribed, typed, written, matter of every type and description, including but not limited to writings, drawings, graphs, charts, photographs, sound records, images, and other data or data compilations that are stored in any medium from which information can be obtained either directly or indirectly or, if necessary, translated into a reasonably usable form.

6.      "**Electronic Fund Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. Such term does not include:

a.      Any check guarantee or authorization service that does not directly result in a debit or credit to a consumer's account;

b.      Any transfer of funds, other than those processed by automated clearinghouse, made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and that is not designed primarily to transfer funds on behalf of a consumer;

c.      Any transaction the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the Securities and Exchange Commission;

d.      Any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a consumer and a financial institution for the purpose of covering an overdraft or maintaining an agreed upon minimum balance in the consumer's demand deposit account; or

e.      Any transfer of funds which is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution which is not pursuant to a prearranged plan and under which periodic or recurring transfers are not contemplated.

7.   "**Financial Institution**" means an insured bank; a commercial bank or trust company; a private banker; an agency or branch of a foreign bank; a credit union; a thrift institution; a broker or dealer registered with the Securities and

Exchange Commission; a broker or dealer in securities or commodities; an investment banker or investment company; a currency exchange; an issuer, redeemer, or cashier of travelers' checks, checks, money orders, or similar instruments; an operator of a credit card system; an insurance company; a dealer in precious metals, stones, or jewels; a pawnbroker; a loan or finance company; a licensed sender of money or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system; a telegraph company; a business engaged in vehicle sales, including automobile, airplane, and boat sales; persons involved in real estate closings and settlements; the United States Postal Service; a casino, gambling casino, or gaming establishment.

8.     "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services.

9.     "**Negative Option**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer or agreement.

10.     "**Person**" means a natural person, an organization or other legal entity, including an association, cooperative, corporation, limited liability company, partnership, sole proprietorship, or any other group or combination acting as an entity.

11.     "**Plaintiff**" or "**FTC**" means the Federal Trade Commission.

12.     "**Preauthorized Electronic Fund Transfer**" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

13.     "**Permanent Receiver**" means the receiver appointed in Section XIII of this Order and any deputy receivers that shall be named by the Permanent Receiver.

## ORDER

### I.     PROHIBITED BUSINESS ACTIVITIES

**IT IS HEREBY ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are preliminarily restrained and enjoined from:

A.     Failing to disclose or disclose clearly and conspicuously, or assisting others in failing to disclose clearly and conspicuously, all material terms and conditions of their offer, including:

1.     That Defendants will use consumers' credit card or financial account information to charge consumers the full costs of a product upon the expiration of a limited trial period;

2.     The dates that any trial period begins and ends;

3.     That Defendants will enroll consumers into a negative option continuity plan with additional charges;

4.     The cost of any continuity plan and the frequency and duration of recurring charges;

5.     The means consumers must use to cancel the negative option program and to avoid additional charges; and

6.     Requirements of their refund policies.

B.     Misrepresenting, or assisting others in misrepresenting, directly or indirectly, expressly or by implication, any material fact, including that:

1.     Consumers can obtain an advertised product for "free," "risk-free," or for only a nominal shipping and handling fee; and

2.     Defendants are accredited by and have a rating of "A-" with the Better Business Bureau; and

C.     Charging, causing to be charged, or assisting others in charging any consumer's credit card, or debiting, causing to be debited, or assisting others in

debiting any consumer's financial account, without the consumer's express informed consent for each charge or debit.

**II.      PROHIBITIONS AGAINST UNFAIR AND DECEPTIVE NEGATIVE OPTION MARKETING PRACTICES ON THE INTERNET**

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service are preliminarily restrained and enjoined from charging, causing to be charged, assisting others in charging , or attempting to charge any consumer in an Internet-based sale of a good or service sold through a negative option without:

A.      Clearly and conspicuously disclosing all material terms of the negative option features before obtaining the consumer's billing information;

B.      Obtaining a consumer's express informed consent to the negative option features before making any charge; and

C.      Providing a simple mechanism for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, or other financial account.

### III.    PROHIBITIONS AGAINST DEBITING CONSUMERS' BANK ACCOUNTS WITHOUT AUTHORIZATION

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are preliminarily restrained and enjoined from:

A.    Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

B.    Failing to provide to the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account.

### IV.    ASSET FREEZE

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from directly or indirectly:

A.      Assigning, concealing, converting, disbursing, dissipating, encumbering, liquidating, loaning, pledging, selling, spending, transferring, or withdrawing any asset that is:

1.      owned, controlled by, or held for the benefit of, any Defendant, directly or indirectly;

2.      in the actual or constructive possession of any Defendant;

3.      held as a retainer or deposit for the provision of goods or services to any Defendant; or

4.      owned, controlled by, held for the benefit of, or in the actual or constructive possession, of any entity directly or indirectly owned, managed, or controlled by any Defendant;

B.      Opening or causing to be opened any safe deposit box, commercial mail box, or storage facility belonging to, for the use or benefit of, under the control of, or subject to access by, any Defendant;

C.      Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Defendant;

D.      Obtaining or providing a personal or secured loan that encumbers an asset of any Defendant; and

E.      Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

PRELIMINARY INJUNCTION

The assets affected by this Section shall include all assets of Defendants as of the time this order is entered.  *Provided, however,* that assets obtained by Individual Defendants after the time this Order is entered that are not derived, directly or indirectly, from activities as described in the Commission's Complaint or activities of any Receivership Defendant, shall not be frozen.

## V.      DUTIES OF ASSET HOLDERS

**IT IS FURTHER ORDERED** that any financial institution or person that has, or that at any time since January 1, 2010, has had, custody or control over an asset belonging to, for the use or benefit of, under the control of or subject to access by any Defendant and that is provided with a copy of this Order, or otherwise has actual or constructive knowledge of this Order shall:

A.      Hold and retain any of Defendants' assets that are within its control and prohibit Defendants from assigning, concealing, converting, disbursing, dissipating, encumbering, liquidating, loaning, pledging, selling, spending, transferring, or withdrawing any asset except:

1.      as directed by further order of the Court;

2.      as directed in writing by the Permanent Receiver (regarding an asset belonging to, for the use or benefit of, under the control of, or subject to access by a Receivership Defendant); or

3.      by written stipulation of the Plaintiff;

B.      Deny Defendants access to any safe deposit box, commercial mail box, or storage facility belonging to, for the use or benefit of, under the control of, or subject to access by, any Defendant;

C.      Within five (5) business days after receiving a copy of this Order, provide counsel for Plaintiff and the Permanent Receiver a certified statement setting forth:

1.      the identification number of each account or asset belonging to, for the use or benefit of, under the control of, or subject to access by, any Defendant; and

2.      the balance of each account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is received, and, if the account or other asset has been closed or removed, or more than $1,000 withdrawn or transferred from it, the date of the closure or removal of funds, the total funds removed or transferred, and the name of the person to whom such account or other asset was remitted; and

D.      Within five (5) days of a request by Plaintiff or the Permanent Receiver, provide Plaintiff and the Permanent Receiver with copies of documents relating to each asset, including, but not limited to, account applications, statements, signature cards, checks, drafts, deposit tickets, transfers to and from

the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

## VI.   SERVICE ON FINANCIAL INSTITUTIONS OR PERSONS HOLDING ASSETS

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of the Plaintiff or the Permanent Receiver, by any law enforcement agency, or by process server, upon any person or financial institution that may have possession, custody, or control over any asset or document belonging to, for the use or benefit of, under the control of, or subject to access by, any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## VII.   FINANCIAL STATEMENTS

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants shall each:

A.   Within five (5) days after service of this Order, prepare and provide to Plaintiff and the Permanent Receiver complete and accurate financial statements, on the forms attached as **Attachments A** and **B** of this Order, disclosing all personal assets and all assets of corporations, partnerships, trusts or other entities that such Defendant owns or controls, jointly or individually;

B.      Within five (5) business days after service of this Order, prepare and provide to Plaintiff and the Permanent Receiver complete and accurate copies of federal and state income tax forms, including all schedules and attachments for the three most recent filing years; and

C .    Immediately upon service of this Order, provide access to documents held by persons and financial institutions located outside the United States by signing the Consent to Release of Financial Records, attached to this Order as **Attachment C**.

## VIII.      REPATRIATION OF ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that immediately upon service of this Order, each Individual and Corporate Defendant shall:

A.      Take such steps as are necessary to transfer to the United States all assets and documents that are located outside the United States and belong to, are for the use or benefit of, are under the control of, or are subject to access by, any such Defendant; and

B.      Hold and retain all repatriated assets and prevent and disposition, transfer, or dissipation of such assets except as required by this Order.

## IX.      NONINTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active

concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from taking any action that may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by Section VIII of this Order, including:

A.      Sending any statement, letter, fax, email or wire transmission, telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time as all assets have been fully repatriated according to Section VIII of this Order; or

B.      Notifying any trustee, protector, or other agent of any of the Defendants of the existence of this Order, or of the fact that repatriation is required under a Court Order, until such time as all assets have been fully repatriated according to Section VIII of this Order.

## X.      CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that the FTC may obtain credit reports concerning any Individual and Corporate Defendant pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any consumer reporting agency from which such reports are requested shall provide them to the FTC.

## XI.  PRESERVATION OF RECORDS AND REPORT NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.     Altering, concealing, destroying, erasing, mutilating, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents, including electronically stored materials, that relate in any way to the business practices or business or personal finances of Defendants; or to the business practices or finances of entities directly or indirectly under the control of Defendants; and

B.     Creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XII. PROHIBITION ON RELEASE OF CUSTOMER INFORMATION OR CUSTOMER LISTS

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.     selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, bank account number, e-mail address, or other identifying information of any person who paid money to the Defendants for products or services, or who were contacted or are on a list to be contacted by the Defendants; and

B.     Benefitting from or using the name, address, birth date, telephone number, email address, Social Security numbers, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with the activities alleged in the Complaint.

*Provided* however that the Individual and Corporate Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.

## XIII.     APPOINTMENT OF PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Charlene Koonce is appointed as Permanent Receiver for the Receivership Defendants, with the full power of an equity receiver. The Permanent Receiver shall be the agent of this Court when serving as Permanent Receiver, and shall comply with the Federal Rules of Civil Procedure and the Local Rules of this Court.

## XIV.     PERMANENT RECEIVER'S DUTIES

**IT IS FURTHER ORDERED** that the Permanent Receiver is authorized and directed to accomplish the following:

A.     Assume full control of the Receivership Defendants by removing, as the Permanent Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.     Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Permanent Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Permanent Receiver's good faith determination that the business can be lawfully operated at a profit using the

1   assets of the receivership estate;

2       C.      Take exclusive custody, control, and possession of all assets and

3   documents of, or in the possession, custody, or control of, the Receivership

4   Defendants, wherever situated. The Permanent Receiver shall have full power to

5   divert mail and to sue for, collect, receive, take in possession, hold, and manage

6   all assets and documents of the Receivership Defendants and other persons whose

7   interests are now under the direction, possession, custody, or control of, the

8   Receivership Defendants. The Permanent Receiver shall assume control over the

9   income and profits and all sums of money now or hereafter due or owing to the

10  Receivership Defendants. *Provided,* however, that the Permanent Receiver shall

11  not attempt to collect any amount from a consumer if the Permanent Receiver

12  believes the consumer was a victim of the unfair or deceptive acts or practices or

13  other violations of law alleged in the Complaint;

14      D.      Take all steps necessary to secure the business premises of the

15  Receivership Defendants. Such steps may include, but are not limited to, any of

16  the following, as the Permanent Receiver deems necessary or advisable:

17          1.      serving this Order;

18          2.      completing a written inventory of all Receivership assets;

19          3.      obtaining pertinent information from all employees and other

20  agents of the Receivership Defendants, including the name, home address,

Social Security number, job description, user names or passwords needed to access Receivership Defendants' documents, methods of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent;

4.      photographing and videotaping any or all portions of the location;

5.      securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location;

6.      opening and inventorying any safe deposit box, commercial mail box, or storage facility in the name of any Receivership Defendant, either individually or jointly, or subject to access by any Receivership Defendant; and

7.      requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Permanent Receiver with proof of identification, or to demonstrate to the satisfaction of the Permanent Receiver that such persons are not removing from the premises assets or documents of the Receivership Defendants. Law enforcement personnel, including police or sheriffs, may assist the Permanent Receiver in implementing these provisions in order to keep the peace and maintain

security. If requested by the Permanent Receiver, the United States Marshal will provide appropriate and necessary assistance to the Permanent Receiver to implement this Order;

E.      Conserve, hold, and manage all assets of the Receivership Defendants, and perform all acts necessary or advisable to preserve the value of those assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants, including obtaining an accounting of the assets and preventing the unauthorized transfer, withdrawal, or misapplication of assets;

F.      Enter into and cancel contracts, and purchase insurance as the Permanent Receiver deems advisable or necessary;

G.      Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

H.      Manage and administer the business of the Receivership Defendants by performing all incidental acts that the Permanent Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I.      Authorize the release of any copy or image of any website used or controlled by the Receivership Defendants to the FTC;

J.      Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Permanent Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

K.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Permanent Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Permanent Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

L.      Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Permanent Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Permanent Receiver deems necessary and advisable to carry out the Permanent Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers;

M.      Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Permanent

Receiver in the role of Permanent Receiver, or against the Receivership Defendants, as the Permanent Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants, or as the Permanent Receiver deems necessary and advisable to carry out the Permanent Receiver's mandate under this Order;

N.      Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Permanent Receiver and by agents of any process server retained by the Permanent Receiver;

O.      Maintain accurate records of all receipts and expenditures incurred as Permanent Receiver;

P.      Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Permanent Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such account. The Permanent Receiver shall serve copies of monthly account statements on all parties; and

Q.      Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## XV.   ACCESS TO BUSINESS OFFICES AND DOCUMENTS

**IT IS FURTHER ORDERED** that:

A.      Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly shall allow the Permanent Receiver, and their respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants access to:

1.      the business premises and storage facilities owned, controlled, or used by any Receivership Defendant, including, but not limited, to the offices and facilities at or in the vicinity of: (a) 6914 Canby Avenue, Suite 107, Reseda, California 91335; (b) 6925 Canby Avenue, Suite 105, Reseda, California 91335; and (c) 6950 Canby Avenue, Suite 103, Reseda, California 91335, and any offsite commercial mail boxes used by any Receivership Defendant;

2.      any premises where the Receivership Defendants conduct business, sales operations or customer service operations; and

3.      any premises where assets or documents related to the Receivership Defendants' businesses are stored or maintained;

B.      The Permanent Receiver, and their representatives, agents, and assistants, are authorized to employ the assistance of law enforcement as they deem necessary to effect service and to implement peacefully this Order. The Permanent Receiver may exclude Receivership Defendants and their employees from the business premises during the immediate access;

C.      The purpose of the immediate access shall be to inspect and copy the business and financial documents of the Receivership Defendants, including forensic imaging of electronically stored information. Such business documents include, but are not limited to, correspondence, contracts, sales records, and financial data;

D.      The Permanent Receiver shall have the right to remove any documents related to Defendants' business practices from the premises in order that they may be inspected, inventoried, and copied. The materials so removed shall be returned within five (5) business days of completing said inventory and copying;

E.      If any assets or documents relating to the Receivership Defendants' finances or business practices are located in the residence of any Defendant or are otherwise in the custody or control of any Defendant, then such Defendant shall produce them to the Permanent Receiver within forty-eight (48) hours of service of this Order;

F.     In order to prevent the destruction of electronically stored information, upon service of this Order upon Defendants, any computers used in Receivership Defendants' business shall be powered down (turned off) in the normal course for the operating systems used on such computers and shall not be powered up or used again until produced for copying and inspection, along with any codes needed for access; and

G.     The Permanent Receiver shall have the discretion to determine the time, manner, and reasonable conditions of access to the Receivership Defendants' premises.

## XVI.     PERMANENT RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Permanent Receiver has filed with the Clerk of this Court a bond in the sum of $20,000, with sureties approved by this Court, and shall well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XVII.     DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person with possession, custody or control of assets or documents relating to the Receivership Defendants shall upon notice of this Order, by

personal service or otherwise, immediately notify the Permanent Receiver of, and, upon receiving a request from the Permanent Receiver, immediately transfer or deliver to the Permanent Receiver possession, custody, and control of, the following:

A.      All assets of the Receivership Defendants;

B.      All documents of the Receivership Defendants, including books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

C.      All computers and data in whatever form used to conduct the business of the Receivership Defendants; and

D.      All usernames, keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including access to their business premises, means of communication, accounts, computer systems, or other property.

In the event that any person or entity fails to deliver or transfer any asset or document or otherwise fails to comply with any provision of this Section, the Permanent Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without

additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Permanent Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other item covered by this Section and to deliver it to the Permanent Receiver.

## XVIII.   PROVISION OF INFORMATION TO PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants shall provide to the Permanent Receiver, immediately upon request, without need of any subpoena or further order, the following:

A.      A list of all locations where documents of the Receivership Defendants are located, and the means to access such documents within five hours of the Permanent Receiver's request; and

B.      Within forty-eight (48) hours of service of this Order, the Individual and Corporate Defendants shall produce to the Permanent Receiver a list of all agents, employees, officers, and those persons in active concert and participation with them, who have been associated or done business with the Receivership Defendant(s).

## XIX.      COOPERATION WITH THE PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants

and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order shall fully cooperate with and assist the Permanent Receiver in taking and maintaining possession, custody, or control of the assets and documents of the Receivership Defendants. This cooperation and assistance shall include:

A.     Providing information to the Permanent Receiver that the Permanent Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Permanent Receiver under this Order;

B.     Advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Permanent Receiver; and

C.     Transferring funds at the Permanent Receiver's direction and producing documents related to the assets and sales of the Receivership Defendants. The entities obligated to cooperate with the Permanent Receiver under this provision include financial institutions and persons that have transacted business with the Receivership Defendants.

## XX.     NONINTERFERENCE WITH THE PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order,

and their corporations, subsidiaries, divisions, or affiliates, are hereby restrained and enjoined from directly or indirectly:

A.      Interfering with the Permanent Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this Receivership;

B.      Transacting any of the business of the Receivership Defendants;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Permanent Receiver; and

D.      Refusing to cooperate with the Permanent Receiver or the Permanent Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XXI.      PERMANENT RECEIVER'S REPORT

**IT IS FURTHER ORDERED** that the Permanent Receiver shall report to this Court: (1) the steps taken by the Permanent Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of Receivership Defendants; (3) the sum of all liabilities of Receivership Defendants; (4) the steps the Permanent Receiver intends to take in the future to: (a) prevent any diminution in the value of assets of Receivership Defendants; (b) pursue

receivership assets from third parties; and (c) adjust the liabilities of Receivership Defendants, if appropriate; (5) the Permanent Receiver's finding regarding the ability of the Receivership Defendants to operate legally and profitably; and (6) any other matters that the Permanent Receiver believes should be brought to the Court's attention. *Provided*, however, if any of the required information would hinder the Permanent Receiver's ability to pursue receivership assets, the portions of the Permanent Receiver's report containing the information may be filed under seal and not served on the parties.

## XXII.   STAY OF ACTIONS AGAINST DEFENDANTS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the Receivership ordered herein, Individual and Corporate Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any person seeking to establish or enforce any right, title, interest, or claim against or on behalf of any Defendant, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the assets or documents of the Defendants, including:

A.      Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency

1   proceeding;

2          B.      Commencing, prosecuting, continuing, entering, or enforcing any suit

3   or proceeding against the Defendants, except that such actions may be

4   commenced if necessary to toll any applicable statute of limitations;

5          C.       Accelerating the due date of any obligation or claimed obligation;

6   filing or enforcing any lien; taking or attempting to take possession, custody, or

7   control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest

8   in any asset, whether such acts are part of a judicial proceeding, are acts of self-

9   help, or otherwise;

10         D.      Filing or enforcing any lien on any asset of the Defendants, taking or

11  attempting to take possession, custody, or control of any asset of the Defendants;

12  or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of

13  the Defendants, whether such acts are part of a judicial proceeding, are acts of

14  self-help, or otherwise; or

15         E.      Initiating any other process or proceeding that would interfere with

16  the Permanent Receiver managing or taking custody, control, or possession of, the

17  assets or documents subject to this receivership.

18         *Provided* that, this Order does not stay: (1) the commencement or

19  continuation of a criminal action or proceeding; (2) the commencement or

20  continuation of an action or proceeding by a governmental unit to enforce such

governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XXIII.    COMPENSATION OF PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that the Permanent Receiver and all personnel hired by the Permanent Receiver, including counsel to the Permanent Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them solely, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Permanent Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Permanent Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXIV.    EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, the Permanent Receiver is authorized to conduct expedited discovery concerning Receivership Defendants' assets, the products and services offered by Receivership Defendants, and the nature and

location of the Receivership Defendants' documents and business records in accordance with the following provisions:

      A.     The Permanent Receiver may take the depositions of parties and non-parties. Forty-eight (48) hours' notice shall be sufficient notice for such depositions;

      B.     The Permanent Receiver may serve upon parties requests for production of documents or inspection that require production or inspection within five (5) calendar days of service, and may serve subpoenas upon non-parties that direct production or inspection within five (5) calendar days of service;

      C.     The Permanent Receiver may serve deposition notices and other discovery requests upon the parties to this action by facsimile or overnight courier; and

      D.     Any discovery taken pursuant to this Order is in addition to, and is not subject to, the presumptive limits on discovery set forth in the Federal Rules of Civil Procedure and Local Rules of this Court.

## XXV.    DISTRIBUTION OF ORDER BY DEFENDANTS

      **IT IS FURTHER ORDERED** that Individual and Corporate Defendants shall immediately provide a copy of this Order to each affiliate, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, servant, attorney, spouse, subsidiary, division, and

representative of any Individual and Corporate Defendant, and shall, within ten

(10) days from the date of entry of this Order, individually provide the FTC with a

sworn statement that each Individual and Corporate Defendant has complied with

this provision of the Order, which statement shall include the names and addresses

of each such person or entity who received a copy of this Order.

**XXVI.   RETENTION OF JURISDICTION**

 **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

matter for all purposes.

  **IT IS SO ORDERED.**

**Dated:** _____        _____
                **The Honorable George Wu,**
                **Judge, United States District Court**