DAVID P. BEITCHMAN (SBN 198953)
dbeitchman@bzlegal.com
ANDRE BONIADI (SBN 266412)
aboniadi@bzlegal.com
**BEITCHMAN & ZEKIAN, P.C.**
16130 VENTURA BLVD., SUITE 570
ENCINO, CALIFORNIA 91436
TELEPHONE: (818) 986-9100
FACSIMILE:   (818) 986-9119

*Attorneys for Defendants,*
MOTTI NOTTEA and DORON NOTTEA

ROBERT M. UNGAR (SBN 102007)
rmu@ungarlaw.com
14724 VENTURA BLVD., PH
SHERMAN OAKS, CA 91403
TEL. (310) 405-1884

*Attorneys for Defendants,*
ALON NOTTEA and ROI REUVENI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

                    Plaintiff,

          vs.

BUNZAI MEDIA GROU, INC., et al.,

                    Defendants.

Case No. 2:15-cv-04527-GW (PLAx)

**DEFENDANTS' JOINT *EX PARTE* APPLICATION TO STAY PROCEEDINGS OR, IN THE ALTERNATIVE, FOR AN ORDER SHORTENING TIME ON MOTION TO STAY PROCEEDINGS**

**[Filed Concurrently with Declaration of David P. Beitchman; (Proposed) Order]**

- 1 -

## **EX PARTE APPLICATION**

1
2        Defendants DORON NOTTEA, MOTTI NOTTEA, ALON NOTTEA, and ROI
3   REUVENI (collectively as "Defendants"), hereby jointly apply *ex parte* for an order
4   to stay proceedings pending a criminal investigation, or in the alternative, for an order
5   establishing a shortened briefing schedule for Defendants to bring a motion to stay
6   proceedings.
7        This Application is made on the grounds that Defendants are the "targets" of a
8   multi-agency criminal investigation stemming from the same facts and circumstances
9   as set forth in Plaintiff FEDERAL TRADE COMMISSION's ("FTC") Complaint
10  filed in this action.  It is further made on the grounds that the Federal Bureau of
11  Investigation, the United States Secret Service, and other law enforcement agencies
12  both domestic and abroad are involved in the investigation.  Lastly, pursuant to this
13  Court's Order of July 13, 2015 (*see* Docket Entry #70), an impending Order to Show
14  Cause hearing is currently scheduled for August 17, 2015, thereby further
15  necessitating the need for Defendants' instant *ex parte* application to stay proceedings.
16       Pursuant to Local Rule 7.19, notice of this *ex parte* application was provided to
17  Plaintiff via electronic mail. (Declaration of David P. Beitchman (hereinafter
18  "Beitchman Decl."), ¶2).  Plaintiff's counsel responded via email notifying defense
19  counsel that it intended to oppose Defendants' *ex parte* application. (Id.).
20       This application is based on the attached memorandum of points and authorities
21  and the Declaration of David P. Beitchman; the complaint and other documents filed
22  in this matter, the Court's prior orders and such other evidence and argument which
23  may be considered by the Court.
24
25  / / /
26  / / /
27  / / /
28

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

1

2    DATED:  August 10, 2015            **BEITCHMAN & ZEKIAN, P.C.**

3

4                                       By:    /s/ David P. Beitchman

5                                             David P. Beitchman,
                                              Andre Boniadi,
6                                             *Attorneys for Defendants,*
                                              MOTTI NOTTEA and
7                                             DORON NOTTEA

8

9

10   DATED:  August 10, 2015            **ROBERT M. UNGAR**

11

12                                      By:    /s/ Robert M. Ungar

13                                            Robert M. Ungar,
                                              *Attorneys for Defendants,*
14                                            ALON NOTTEA and ROI REUVENI

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

I.     FACTUAL BACKGROUND ..................................................................4

II.    ARGUMENT ..................................................................................... 10

       A.    Abundant Authority Justifies The Protective Order Which
             The Defendants Seek ................................................................ 10

       B.    The Balance Of Factors Weighs Overwhelmingly In Favor
             of Staying this Action And Continuing Discovery ..................... 12

             1.    The Potential Prejudice To Plaintiff/Receiver From
                   Continuing All Pending Discovery against
                   Defendants is Negligible ................................................ 13

             2.    The Prejudice To moving Defendants of Providing
                   any Responses to Requests by the Plaintiff/Receiver
                   Would be Sever and Irreparable ..................................... 14

                   a)    The Dangers Of Testifying ..................................... 15

                   b)    The Consequences Of Not Testifying .................... 16

             3.    Continuing This Case Would Not Unduly Burden
                   The Court ...................................................................... 17

             4.    Continuing This Case Would Not Prejudice Third
                   Parties Or Harm The Public Interest ............................... 18

III.   CONCLUSION ................................................................................. 18

- i -

1

# <u>TABLE OF AUTHORITIES</u>

2

## <u>FEDERAL CASES</u>

3

4

*Afro-Lecon, Inc. v. United States* (Fed. Cir. 1987)

5

    820 F.2d 1198 ................................................................................................. 11

6

*Baxter v. Palmigiano* (1976)

7

    425 U.S. 308 .................................................................................................. 17

8

*Bursey v. United States* (9th Cir. 1972)

9

    466 F.2d 1059 ................................................................................................ 15

10

*C3, Inc. v. United States* (1984)

11

    5 Cl.Ct. 659 ................................................................................................... 12

12

*Counselman v. Hitchcock* (1892)

13

    142 U.S. 54 .................................................................................................... 13

14

*FSLIC v. Molinaro* (9th Cir. 1989)

15

    889 F.2d 899 ............................................................................................ 12, 13

16

*Gordon v. FDIC* (D.C. Cir. 1970)

17

    427 F.2d 578 ................................................................................................. 18

18

*Gutierrez-Rodriguez v. Cartagena* (1st Cir. 1989)

19

    882 F.2d 553 ................................................................................................. 16

20

*Hoffman v. United States* (1951)

21

    341 U.S. 479 ............................................................................................ 11, 15

22

*In re Grand Jury Subpoena* (4th Cir. 1988)

23

    836 F.2d 1468 ............................................................................................... 11

24

*In re Grand Jury Subpoena Duces Tecum* (D. Md. 1987)

25

    659 F.Supp. 628 ........................................................................................... 12

26

*In re Master Key. Litig.* (9th Cir. 1974)

27

    507 F.2d 292 ................................................................................................. 15

28

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

*Kashi v. Gratsos* (2nd Cir. 1986)
   790 F.2d 1050 .......................................................................................... 11

*Keating v. Office of Thrift Supervision* (9th Cir. 1995)
   45 F.3d 322 ............................................................................................... 13

*London v. Patterson* (9th Cir. 1972)
   463 F.2d 95 ............................................................................................... 11

*McCarthy v. Arndstein* (1924)
   266 U.S. 34 ............................................................................................... 13

*SEC v. Dresser Indus., Inc.* (D.C. Cir. 1980)
   628 F.2d 1368 ............................................................................. 11, 17, 18

*SEC v. Graystone Nash, Inc.* (3rd Cir. 1994)
   25 F.3d 187 ............................................................................................... 16

*SEC v. Merrill Scott & Assocs., Ltd.* (D UT 2007)
   505 F.Supp.2d 1193 .................................................................................. 16

*Texaco, Inc. v. Borda* (3d Cir. 1967)
   383 F.2d 607 ............................................................................................. 11

*United States v. Kordel* (1970)
   397 U.S. 1 ............................................................................................ 11, 18

*Wehling v. CBS* (5th Cir. 1979)
   608 F.2d 1084 ........................................................................................... 11

**S**TATE **C**ASES

*Pacers, Inc. v. Superior Court* (1984)
   162 Cal.App.3d 686 .................................................................................. 12

**S**TATUTES

Fed. R. Civ. P. 26(c) ..................................................................................... 14

- iii -

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## FACTUAL BACKGROUND

The moving Defendants have been sued by the FTC in their individual capacity and as alleged officers and/or managers of Defendant BUNZAI MEDIA GROUP, INC. and PINNACLE LOGISTICS, INC. (*See* FTC's Complaint, Docket Entry #3, pg. 1-3).

FTC's lawsuit, filed on June 6, 2015, alleges that Defendants collectively offered "risk-free" trials of skincare products to consumers over the internet using deceptive offers with hidden costs, negative option features, and return policies.  FTC alleges that Defendants required consumers to accept the "risk-free" trials to provide their credit or debit card billing information, purportedly to pay nominal shipping and handling fees to receive the advertised products.  However, 10 days after receiving consumers' billing information, Defendants are alleged to have charged consumers the full costs of the products, imposing charges of up to $97.88, and thereafter allegedly refusing to provide refunds for returned products. (FTC's Complaint, Docket Entry #3, pg. 4-5).

The Court-appointed Receiver, and accordingly the FTC, allege that because of their deceptive marketing of the skin care products, chargeback rates for the Receivership Defendants were high. Defendants accordingly created a myriad of "retail merchant corporations" each of which owned one of more "merchant accounts" with different credit card processors.  Defendants allegedly disguised their control of these entities by either incorporating the entities with the names and signatures of many different individuals, several of whom knew nothing about the entity, or, opened the merchant accounts for the entities using forged signatures of individuals who had never heard of the entity or its merchant account.  It is further alleged that in using so

- 4 -

many diverse individuals to create the entities or own their accounts also created the illusion that the merchant accounts were not commonly controlled by Defendants. (*See* Receiver's Initial Report, Docket Entry #120, pgs. 1-4).

Additionally, it has been alleged that numerous additional entities created at or near the time many of the Receivership Defendants were dissolved appear to engage in IT services rather than skin care sales but own accounts obtained through "bank fraud." (Id.).

Based upon the foregoing allegations, and subsequent to the filing of this action (the "Civil Action"), the Defense has received and continues to receive credible, corroborated information that the moving Defendants have become "targets" of a multi-agency criminal investigation stemming from the same facts and circumstances as set forth in the Civil Action. (Beitchman Decl., ¶3).

As set forth in greater detail below, at the core of this investigation is the issue of the numerous bank accounts revealed in the Civil Action, referred to as merchant processing accounts, and the relationship between those accounts and the individual Defendants, as well as the allocation of funds deposited into said accounts. (Beitchman Decl., ¶4).  Moreover, certain of those accounts are held in the name of various entity defendants owned by others, but allegations have been made, and continue to be made by the FTC, as well as the Receiver in this action, that said accounts are actually those belonging to and controlled by the moving Defendants. (Id.).  As a result of the foregoing, the current multi-agency, investigation is focused on bank fraud, wire fraud and identity theft as part of a criminal enterprise. (Id.).

As specific examples of this ongoing investigation targeting the individual Defendants referenced herein, Defendants have learned of the following law enforcement contact that has been made:

/ / /

/ / /

- 5 -

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

- In or around the second week of July 2015, agents from the United States Secret Service approached, and conducted a lengthy interview of a Wells Fargo Bank Employee named Esper. The subject of that interview was the opening of multiple bank accounts by the Receivership Defendants, who opened said accounts, and who controlled said accounts. Said interview lasted more than 5 hours, and that during that interview the topic of moving Defendants was discussed, and certain Defendants were specifically named. These particular accounts that were questioned, and information related to those accounts were provided to the Receiver by Defendants in the early stages of the Civil Action, as a result of their cooperation with the Temporary Restraining Order (TRO) in force at the time.

- After the Wells Fargo interview, those same Secret Service agents contacted and attempted to interview an individual by the name of Eran Link. The subject of the questions directed to Eran Link was with regard to certain personal Bank of America bank accounts held in the name of moving Defendants. Said bank accounts were disclosed to the Receiver by Defendants during the early stages of this litigation, as a result of their cooperation with the TRO. The identity of Eran Link was disclosed to the Receiver, and to the FTC, via a file contained in a "Drop Box" link provided by Doron Nottea in connection with the requirements of the TRO.

- During the initial contact between the Secret Service Agents and Eran Link, the Secret Service Agents showed photographs of at least one of the moving Defendants taken by a security camera at a Bank of America retail location.

- On or around July 28, 2015 two female agents met and confronted the owner of an automobile customization and fabrication shop, located in Tarzana, California. The owner, Nono, was asked questions regarding certain business transactions between him and Defendants, and specifically Doron Nottea. During the more than three and a half hour interview, questions were asked regarding Nono's knowledge of the business enterprise and entities that form the basis of the Civil Action.

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

- Of most critical concern, during that interview, Nono was asked by the inquiring agent "what were you [Nono] doing at Doron's house yesterday?"  This question clearly confirms that at least one of the Defendants' daily movements are being tracked by at least one government agency.  Nono was unable to identify from which particular agency the inquiring agents were from.

- Two individuals, Gilad Marone and David Yousefian, residents of Israel, were contacted personally in Israel by law enforcement agents.  The subject of the interview was these particular individuals' involvement with bank accounts held in their names in the United State which were connected to the business enterprise that is the subject of the Civil Action.  Specifically, these individuals are named on bank accounts that the FTC and Receiver allege are controlled by Defendants.  The names of these individuals were disclosed to the Receiver and the FTC via the "Google Drive" referenced above, and via the production of bank information and records provided by Defendants in connection with their cooperation mandated by the TRO.

- Most recently, an individual named Tomer Amsalem was contacted last week jointly by a representative of American Express, and an agent from the Federal Bureau of Investigation.  As above, the subject of the inquiry was Mr. Amsalem's connection to certain merchant account(s) connected to the business enterprise that is the subject of the Civil Action.  Again, the names of this individual was disclosed to the Receiver and the FTC via the "Google Drive" referenced above, and via the production of bank information and records provided by Defendants in connection with their cooperation mandated by the TRO.

(Beitchman Decl., ¶5(a)-(g)).

Indeed, a review of the receiver's First Initial Report submitted to this Court on August 3, 2015 contains no less than eight (8) references to Defendants' commission of "bank fraud" in connection with the operation of the business enterprise. (*See* Docket Entry #120, Page ii at 23, Page 4 at 14, Page 36 at 23, Page 40 at 4, Page 70 at 4, Page 75 at 22, Page 77 at 14, Page 83 at 24). (Beitchman Decl., ¶6).

Moreover, attached to said Report as Exhibits 19 and 20, and Exhibits 51 and 52, are declarations from Stephan Bauer and Eran Link.   Mr. Baur is a signatory for

- 7 -

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

many of the entities connected with the business operation that is the subject of the

Civil Action, including but limited to Kai Media, Inc., and Mr. Link is the signatory to

certain merchant accounts associated with the Civil Action.  Both individuals affirm in

said declarations obtained by the Receiver that their signatures are forged, and that

none of their signatures provided in connection with any bank account are genuine.

Clearly, this now-opposing position is further supportive of Defendants' concerns

regarding the ongoing criminal investigation. (Beitchman Decl., ¶7).

Since the commencement of the Civil Action the Receiver, and accordingly the

FTC, have likely been aware of the impending criminal investigation, given the facts

pleaded in the Complaint.  This contention is confirmed by the fact that a mere 11

days after the FTC raided Defendants' office, Counsel from the Receiver's firm, J.

Mitch Little, emailed then-defense counsel, William Rothbard, regarding the taking of

Defendant Doron Nottea's deposition.  In said email, Mr. Little asks whether or not

Mr. Nottea will assert his 5th Amendment right in the deposition, as the answer would

dictate the course of the deposition. (Beitchman Decl., ¶8).

In totality, the aforementioned confirms the existence of an ongoing, multi-

agency criminal investigation of these moving Defendants, such that any further

discovery, or production of information as mandated by the Preliminary Injunction

would be violative of these individual Defendants' 5th Amendment right against self-

incrimination. (Beitchman Decl., ¶9).

The matter is before this court on an ex parte basis because as of the drafting of

this declaration, one day after attending the August 6, 2015 hearing on the FTC's

Motion for Preliminary Injunction as to Defendants CalEnergy, Inc. and Igor

Latsanovski, Defense counsel received an email from the Receiver regarding

supplemental briefing due Monday August 10, 2015 regarding the Receiver's Order to

Show Cause Motion.  Responsive briefing to the issue contained in the Show Cause

Motion would necessitate declarations from Defendants.  Said declarations in and of

- 8 -

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

themselves may result in a violation of responding Defendants' 5th Amendment

rights.  (Beitchman Decl., ¶10).

Additionally, via email the Receiver has raised additional matters that she

would like answered by Defendants, under the constant threat of the Show Cause

Order.  Recognizing the import of that Order, as a matter of practicality, judicial

economy and attorney resources, it appears more prudent to stay the matter as to these

moving Defendants, pending the criminal investigation and any forthcoming charges,

than to repeatedly appear at Show Cause Hearings to assert this same right.

(Beitchman Decl., ¶11).

Most recently, on Sunday August 9, 2015 at approximately 6:30 am, Defense

counsel received an email from the Receiver wherein she demands that Defense

counsel provide certain information before 10:00 am Monday August 10, 2015,

subject to the Court's Show Cause Hearing set for August 17, 2015.  As part of the

information requested, the Receiver seeks certain moving Defendants' admissions that

they owned and/or controlled certain receivership Defendants, and that they have

signed, or caused signatures, on bank accounts held in the names of others.

(Beitchman Decl., ¶12).

Due to the ongoing criminal investigation surrounding the Civil Action, these

moving Defendants must be advised by counsel to assert the Fifth Amendment as to

all questions posed to them in any discovery, informal request per the Preliminary

Injunction, or deposition in this case, including but not limited to the emails received

on August 9, 2015. (Beitchman Decl., ¶13).

By virtue of the same, said Defendants are unable to meaningfully participate in

these civil proceedings, as doing so would require Defendants to assert the Fifth

Amendment in light of their status as "targets" of an ongoing investigation.

Accordingly, because of the identity of issues between the Civil Action and the

ongoing multi-level criminal investigation against Defendants, the moving Defendants

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

asks this Court for a stay of these proceedings to allow resolution of the criminal component of the case so as to avoid the debilitating disadvantage in the Civil Action they will suffer by asserting the Fifth Amendment.  As discussed below, there will be no prejudice to Plaintiff or the public by such a stay, because Plaintiff currently has Preliminary Injunctions in place  against the moving Defendants which prevents them from engaging in any activity Plaintiff seeks to enjoin by way of its civil complaint.

## II.
## ARGUMENT

### A. Abundant Authority Justifies The Protective Order Which The Defendants Seek

A "target" of an investigation is "a person as to whom the prosecutor or the grand jury has substantial evidence linking him/her to the commission of a crime and who, in the judgment of a prosecutor, is a putative defendant."  United States Department of Justice Manual, Section 9-11.150 (1992 supp.).  In other words, a "target" is someone who is the subject of an investigation and therefore there is the clear possibility he/she might be charged with a crime.  Due to this "target" status as outlined above, the moving Defendants must be advised by counsel to assert their Fifth Amendment right against self-incrimination as to all questions posed to them by the Receiver or otherwise, as such directly involves their individual involvement as well as their alleged involvement as officers and/or managers of Defendant BUNZAI MEDIA GROUP, INC. and PINNACLE LOGISTICS, INC.

Courts have long been sensitive to the unfairness and threat to constitutional rights posed by allowing criminal investigations and civil actions concerning similar claims to proceed at the same time.  Although it is well settled, a defendant in a civil action may assert the Fifth Amendment in response to discovery and/or Order to Show Cause requests, that civil defendant nonetheless may be subjected to two distinct forms of fundamental unfairness if forced to testify in a civil matter while parallel

- 10 -

criminal investigation is pending:  (1) the impossibility of anticipating all of the types of information which provides prosecutors with some "link in the chain of evidence" needed for the criminal case (*Hoffman v. United States* (1951) 341 U.S. 479, 486), and (2) the debilitating disadvantage in the civil action the defendant will suffer by asserting the Fifth Amendment. (*See, e.g., London v. Patterson* (9th Cir. 1972) 463 F.2d 95, 97-98, cert. denied, 411 U.S. 906 (1973)).

Accordingly, federal courts consistently recognize that civil proceedings including discovery, should be stayed in appropriate circumstances pending the resolution of a parallel criminal proceeding. *See United States v. Kordel* (1970) 397 U.S. 1, 12, n.27; *Afro-Lecon, Inc. v. United States* (Fed. Cir. 1987) 820 F.2d 1198, 1204 (noting that "it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way"); *SEC v. Dresser Indus., Inc.* (D.C. Cir. 1980) 628 F.2d 1368, 1375 (in the case of parallel criminal proceedings, "a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem to require such action"), *cert. denied*, 449 U.S. 993 (1980). Indeed, the Ninth Circuit has held a postponement of civil proceedings until the conclusion of the related criminal investigation is the preferred alternative to the dilemma facing such defendants.  *See, London*, *supra*, 463 F.2d at 98.

Other circuits have concurred in this approach. *See In re Grand Jury Subpoena* (4th Cir. 1988) 836 F.2d 1468, 1476 (stating Fourth Circuit rule as a "preference for stays" of civil actions), *cert. denied*, 487 U.S. 1240 (1988); *Kashi v. Gratsos* (2nd Cir. 1986) 790 F.2d 1050, 1057 (district court exercised "sound discretion" in staying civil trial until U.S. Attorney declined to prosecute); *Wehling v. CBS* (5th Cir. 1979) 608 F.2d 1084, 1089 (recognizing that protection of parties' rights may require staying civil discovery despite resulting inconvenience); *Texaco, Inc. v. Borda* (3d Cir. 1967) 383 F.2d 607, 608 (approving stay of civil antitrust action that alleged same

- 11 -

conspiracy as pending criminal action); *In re Grand Jury Subpoena Duces Tecum* (D. Md. 1987) 659 F.Supp. 628, 634 (recognizing a "preference that a court stay civil proceedings when there is a risk of self-incrimination by a party").[1]

**B.  <u>The Balance Of Factors Weighs Overwhelmingly In Favor of Staying this Action And Continuing Discovery</u>**

In evaluating whether a stay of civil proceedings is warranted during the pendency of a criminal investigation, federal courts typically consider three primary factors:  (1) whether there are "substantially similar or related issues in both cases"; (2) whether parallel proceedings pose a "clear hardship on the defendant"; and (3) whether the "duration of the requested stay" presents unique hardships to the plaintiff, the efficiency of the court, or the interests of third parties and the public.  *See C3, Inc. v. United States* (1984) 5 Cl.Ct. 659, 660-62.

The Ninth Circuit has articulated these concerns in a five-pronged approach focusing on "(1) the interest of the plaintiffs in proceeding expeditiously with the litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal

---

[1] Likewise, in the leading California case on the subject, *Pacers, Inc. v. Superior Court* (1984) 162 Cal.App.3d 686, the Court of Appeal held a stay of civil discovery pending the completion of a parallel criminal investigation was "in accord with federal practice where it has been consistently held that when both civil and criminal proceedings arise out of the same or related transactions, an individual is <u>entitled</u> to a stay of discovery in the civil action until disposition of the criminal matter."  *Id.* at 690 (emphasis added).

litigation." *FSLIC v. Molinaro* (9th Cir. 1989) 889 F.2d 899, 903 (*quoting Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.* (E.D. Pa 1980) 87 F.R.D. 53, 56); *accord Keating v. OTS* (9th Cir. 1995) 45 F.3d 322, 325.

In the present case, each of these factors weighs strongly in favor of granting this request to stay this case.

### 1. The Potential Prejudice To Plaintiff/Receiver From Continuing All Pending Discovery against Defendants is Negligible

There is no evidence or suggestion of any danger of dissipation of assets or any danger any witness or defendant will become ill, incapacitated, or otherwise become unavailable.  This case thus is clearly distinguishable from the relatively few decisions that have declined to stay civil proceedings because of significant prejudice to plaintiffs.  *See e.g., FSLIC v. Molinaro* (9th Cir. 1989) 889 F.2d 899, 903 (upholding denial of stay because defendant was dissipating assets and potentially depriving the government of recovery).  Here, a receiver has already been appointed. Most importantly, Plaintiff currently has Preliminary Injunctions in place  against the moving Defendants which prevents them from engaging in any activity Plaintiff seeks to enjoin by way of its civil complaint

### 2. The Prejudice to moving Defendants, of Providing any Responses to Requests by the Plaintiff/Receiver Would be Severe And Irreparable

As noted above, the privilege against self-incrimination extends not only to criminal cases, but also to any trial, investigation, inquiry, or other proceeding in which a witness may be compelled to testify as to facts that could conceivably result in the filing and/or prosecution of criminal charges. *Counselman v. Hitchcock* (1892) 142 U.S. 547; *McCarthy v. Arndstein* (1924) 266 U.S. 34.

- 13 -

Thus, the moving Defendants face a dire choice:  either invoke their Fifth Amendment rights in response to Plaintiff/Receiver's requests and at trial in this action and suffer adverse inferences (and potentially massive civil liability) at trial, or testify now and possibly provide the government with incriminating evidence otherwise unavailable because of the Fifth Amendment.  Either way, Defendants will suffer grave injury should this matter proceed simultaneous to the ongoing Secret Service and FBI criminal investigation against Defendants.

Because of the on-going investigation into their individual and business affairs, moving Defendants will undoubtedly assert the Fifth Amendment and decline to provide any responses under oath.  Put simply, if this case goes forward now, there is a serious risk that the moving Defendants will be unable to present any meaningful defense at any stage of the proceedings.

Thus, the relief which moving Defendants seek is squarely within the contemplation of Rule 26 of the Federal Rules of Civil Procedure, which authorizes the Court to make orders "which justice requires" -- including orders that discovery be had only on "specified terms and conditions," such as at designated times -- to protect a party from "annoyance, embarrassment, oppression, or undue burden."  Fed. R. Civ. P. 26(c).

### a.  <u>The Dangers of Testifying</u>

Moving Defendants are clearly "targets" of a criminal investigation led by the FBI and Secret Service.  As a result, the crime they are being investigated for and the allegations that have been proffered against them will likely result in criminal charges involving the identical conduct being litigated in the above-entitled lawsuit by the FTC.

Under such circumstances, any production and/or statement under oath by the moving Defendants (individually or as alleged officers/managers of the Receivership Defendants) in defense of the allegations in the Complaint will undoubtedly involve

- 14 -

matters currently under investigation by the FBI and Secret Service for which said parties are a "target."  The risks to the moving Defendants in this case are thus real, and not speculative.  It is well established that "the right to assert one's privilege against self-incrimination does not depend upon the *likelihood* but upon the *possibility* of prosecution."  *In re Master Kev. Litig.* (9th Cir. 1974) 507 F.2d 292, 293.

      If the answers to requests by the Receiver, pursuant to this Court's Order to Show Cause, or at a later deposition could possibly provide a "link in the chain of evidence," the witness may refuse to answer on Fifth Amendment grounds. *See Bursey v. United States* (9th Cir. 1972) 466 F.2d 1059, 1072.  Thus, the moving Defendants should not be forced to decide whether such responses could "provide a link in the chain" in a subsequent prosecution. *Hoffman*, *supra*, 341 U.S. at 486.

      Equally concerning, virtually all of the allegations set forth in Plaintiff's Complaint and in papers submitted by the Receiver pertain to purported wrongdoing committed by the individual Defendants.  Indeed, a review of the receiver's First Initial Report submitted to this Court on August 3, 2015 contains no less than eight (8) references to Defendants' commission of "bank fraud" in connection with the operation of the business enterprise. (See Docket Entry #120, Page ii at 23, Page 4 at 14, Page 36 at 23, Page 40 at 4, Page 70 at 4, Page 75 at 22, Page 77 at 14, Page 83 at 24).  In fact, the Receiver bases much of the difficulties of her task on "outright bank fraud." (*See* Beitchman Decl., ¶6).

      Even counsel for the Court-appointed Receiver acknowledged the risk of divulging information and/or documentation protected by the Fifth Amendment right against self-incrimination.  This contention is confirmed by the fact that a mere 11 days after the FTC raided Defendants' office, Counsel from the Receiver's firm, J. Mitch Little, emailed then-defense counsel, William Rothbard, regarding the taking of Defendant Doron Nottea's deposition.  In said email, Mr. Little asks whether or not

1   Mr. Nottea will assert his 5th Amendment right in the deposition, as the answer would

2   dictate the course of the deposition. (Beitchman Decl., ¶8).

3       In totality, the aforementioned confirms the existence of an ongoing, multi-

4   agency criminal investigation of these moving Defendants, such that any further

5   discovery, or production of information as mandated by the Preliminary Injunction

6   would be violative of these individual Defendants' 5th Amendment right against self-

7   incrimination.

8               **b.   <u>The Consequences of Not Testifying</u>**

9       The moving Defendants have been advised to assert their Fifth Amendment

10  right at all stages of these proceedings, and will do so until the pending criminal

11  investigation is complete. (Beitchman Decl., ¶13).  Their testimony is, of course,

12  critical to their defense in the civil case in countering the allegations of the FTC,

13  which alleges the identical improper conduct being investigated by the FBI and Secret

14  Service.  Accordingly, if the stay of proceedings is denied, the moving Defendants

15  will not be able to put on a meaningful opposition in the above-entitled lawsuit, and

16  they will instead be subject to massive liability without being able to present a case in

17  their defense.

18      It has consistently been held that a witness who invokes the self-incrimination

19  privilege may not be permitted to waive the privilege and testify (or submit

20  declarations or discovery responses) on matters as to which the privilege was claimed,

21  if doing so would prejudice the opposing party. *SEC v. Graystone Nash, Inc.* (3rd Cir.

22  1994) 25 F.3d 187, 190; *Gutierrez-Rodriguez v. Cartagena* (1st Cir. 1989) 882 F.2d

23  553, 576; *SEC v. Merrill Scott & Assocs., Ltd.* (D UT 2007) 505 F.Supp.2d 1193,

24  1208–1209.  Thus, should the moving Defendants invoke their Fifth Amendment right

25  against self-incrimination, they may forever be barred from presenting any sort of

26  defense to the civil claims lodged by Plaintiff.  This is a huge risk that this Court

27

28

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

should take into consideration, and one which if not carefully balanced, will likely cause severe prejudice to Defendants.

In addition to the potential bar on future testimony, unlike criminal cases, adverse inferences may be drawn in a civil case from a person's invoking the privilege against self-incrimination. *Baxter v. Palmigiano* (1976) 425 U.S. 308, 318; *Keating v. Office of Thrift Supervision* (9th Cir. 1995) 45 F.3d 322, 326. Thus, it is imperative that a stay be imposed until such time as the criminal proceedings are complete, so as to avoid any prejudice that will certainly be cast against the moving Defendants should they be forced to claim the Fifth.

Indeed, federal courts have been solicitous of defendants in this position, and have held the most compelling case for staying civil actions is where pending criminal investigations on the same subject matter threaten to render the defendants defenseless in the face of massive civil liability. *E.g., SEC v. Dresser Indus., Inc.* (D.C. Cir. 1980) 628 F.2d 1368, 1375 (observing that "[t]he noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case").

### 3. Continuing This Case Would Not Unduly Burden the Court

Staying proceedings at this time will not unduly burden this Court; after all, this lawsuit is in the early stages of litigation with no trial date in sight. If necessary, this Court can order other discovery regarding different witnesses and third parties should proceed, so that time will not be lost in preparing for trial. Nonetheless, neither trial, nor Defendants' deposition, should move forward until completion of the parallel criminal proceedings.

- 17 -

**4. Continuing This Case Would Not Prejudice Third Parties or Harm the Public Interest**

Where the alleged wrong at issue in the civil action presents a risk of ongoing harm to the public -- for example, a defendant's continued distribution of misbranded drugs -- the public interest may counsel against a stay or continuance. *See United States v. Kordel* (1970) 397 U.S. 1, 11; *see also, SEC v. Dresser Indus., Inc.* (D.C. Cir. 1980) 628 F.2d 1368, 1377 (denying stay because delay would permit the continuing "dissemination of misleading information by companies to members of the investing public"), *cf. Gordon v. FDIC* (D.C. Cir. 1970) 427 F.2d 578, 580 (granting stay of discovery because "the [plaintiff's] need for civil relief, which involves merely the collection of money, is not as strong as in Kordel").

There is absolutely no showing by FTC in this case that the delay would permit the continuation of the conduct alleged in the Complaint, or that such conduct would harm any identifiable public interest. Preliminary Injunctions prohibit the moving Defendants from committing the wrongdoing alleged by FTC. Plaintiff's case is now simply a "collections" case against Defendants. Thus, as in *Gordon v. FDIC*, because there is no need for further immediate civil relief to protect any identifiable public interest or third party, this Court should grant the stay.

## III.

## CONCLUSION

Predicated on the foregoing, Defendants respectfully request that this Court grant their application and stay this case until the pending criminal proceedings against the moving Defendants have concluded.

/ / /

/ / /

/ / /

/ / /

- 18 -

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

1    DATED:  August 10, 2015        **BEITCHMAN & ZEKIAN, P.C.**

2

3                                          By:   /s/ David P. Beitchman

4                                                David P. Beitchman,
                                               Andre Boniadi,

5                                                *Attorneys for Defendants,*

6                                                MOTTI NOTTEA and
                                               DORON NOTTEA

7

8

9    DATED:  August 10, 2015        **ROBERT M. UNGAR**

10

11                                          By:   /s/ Robert M. Ungar

12                                                Robert M. Ungar,
                                               *Attorneys for Defendants,*

13                                                ALON NOTTEA and ROI REUVENI

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**