DAVID P. BEITCHMAN (SBN 198953)
dbeitchman@bzlegal.com
ANDRE BONIADI (SBN 266412)
aboniadi@bzlegal.com
**BEITCHMAN & ZEKIAN, P.C.**
16130 VENTURA BLVD., SUITE 570
ENCINO, CALIFORNIA 91436
TELEPHONE: (818) 986-9100
FACSIMILE:  (818) 986-9119

*Attorneys for Defendants,*
MOTTI NOTTEA and DORON NOTTEA

ROBERT M. UNGAR (SBN 102007)
rmu@ungarlaw.com
14724 VENTURA BLVD., PH
SHERMAN OAKS, CA 91403
TEL. (310) 405-1884

*Attorneys for Defendants,*
ALON NOTTEA and ROI REUVENI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| FEDERAL TRADE COMMISSION, | Case No. 2:15-cv-04527-GW (PLAx) |
|---|---|
| Plaintiff, | **DECLARATION OF DAVID P. BEITCHMAN IN SUPPORT OF DEFENDANTS' JOINT *EX PARTE* APPLICATION TO STAY PROCEEDINGS OR, IN THE ALTERNATIVE, FOR AN ORDER SHORTENING TIME ON MOTION TO STAY PROCEEDINGS** |
| vs. | |
| BUNZAI MEDIA GROUP, INC., *et al.*, | |
| Defendants. | |
| | [Filed Concurrently with Joint *Ex Parte* Application, (Proposed) Order] |

- 1 -

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

# DECLARATION OF DAVID P. BEITCHMAN

I, David P. Beitchman, hereby declare as follows:

1. I am an attorney duly licensed to practice before all courts of the State of California, and principal of Beitchman & Zekian, P.C., attorneys of record herein for Defendants MOTTI NOTTEA and DORON NOTTEA. I make this declaration in support of Defendants' MOTTI NOTTEA, DORON NOTTEA, ALON NOTTEA and ROI REUVENI (collectively as "Defendants") Joint *Ex Parte* Application to Stay Proceedings or, In the Alternative, For an Order Shortening Time on Motion to Stay Proceedings. I have personal knowledge of the facts herein alleged and if called upon to testify thereto, I could and would competently do so.

2. On August 10, 2015, our office provided Plaintiff FEDERAL TRADE COMMISION ("FTC") and all counsel who have appeared in the action, with notice of this *ex parte* application via email. Our office received a response via email from both Plaintiff's counsel and the Receiver with several conditions attached to our request for a stipulation to stay the case only as to the moving Defendants. Thus, the parties were unable to reach a stipulation. A true and correct copy of the email providing all counsel notice of the instant *ex parte* is attached hereto as **Exhibit A**.

3. Subsequent to the filing of the Complaint in this action on June 16, 2015, I have received and continue to receive credible, corroborated information that Defendants Motti Nottea, Doron Nottea, Alon Nottea and Roi Reuveni have become "targets" of a multi-agency criminal investigation stemming from the same facts and circumstances as set forth in the FTC's Complaint filed in this action (the "Civil Action").

4. As set forth in greater detail below, at the core of this investigation is the issue of the numerous bank accounts revealed in the Civil Action, referred to as merchant processing accounts, and the relationship between those accounts and Defendants, as well as the allocation of funds deposited into said accounts. Moreover, certain of those accounts are held in the name of various entity defendants owned by

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

others, but allegations have been made, and continue to be made by the FTC, as well as the Receiver in this action, that said accounts are actually those belonging to and controlled by the moving Defendants.  I am informed and believe that as a result of the foregoing, the current multi-agency, investigation is focused on bank fraud, wire fraud and identity theft as part of a criminal enterprise.

5. As specific examples of this ongoing investigation targeting the individual Defendants referenced herein, I have learned of the following law enforcement contact that has been made:

> a. In or around the second week of July 2015, agents from the United States Secret Service approached, and conducted a lengthy interview of a Wells Fargo Bank Employee named Esper.  The subject of that interview was the opening of multiple bank accounts by the Receivership Defendants, who opened said accounts, and who controlled said accounts.  I am informed and believe that said interview lasted more than 5 hours, and that during that interview the topic of Defendants was discussed, and certain Defendants were specifically named.  These particular accounts that were questioned, and information related to those accounts were provided to the Receiver by Defendants in the early stages of the Civil Action, as a result of their cooperation with the Temporary Restraining Order (TRO) in force at the time.
>
> b. I am further informed and believe that after the Wells Fargo interview, those same Secret Service agents contacted and attempted to interview an individual by the name of Eran Link.  The subject of the questions directed to Eran Link was with regard to certain personal Bank of America bank accounts held in the name of moving Defendants.  Said bank accounts were disclosed to the Receiver by Defendants during the early stages of this litigation, as a result of their cooperation with the TRO.  The identity of Eran Link was disclosed to the Receiver, and to the FTC, via a file contained in a "Drop Box" link provided by Doron Nottea in connection with the requirements of the TRO.
>
> c. I am further informed and believe that during the initial contact between the Secret Service Agents and Eran Link, the Secret Service Agents

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

showed photographs of at least one of the Defendants taken by a security camera at a Bank of America retail location.

d. I have received further information that on or around July 28, 2015 two female agents met and confronted the owner of an automobile customization and fabrication shop, located in Tarzana, California. The owner, Nono, was asked questions regarding certain business transactions between him and Defendants, and specifically Doron Nottea. During the more than three and a half hour interview, questions were asked regarding Nono's knowledge of the business enterprise and entities that form the basis of the Civil Action.

e. Of most critical concern, during that interview, Nono was asked by the inquiring agent "what were you [Nono] doing at Doron's house yesterday?" This question clearly confirms that at least one of the Defendants' daily movements are being tracked by at least one government agency. Nono was unable to identify from which particular agency the inquiring agents were from.

f. I have received further information that two individuals, Gilad Marone and David Yousefian, residents of Israel, were contacted personally in Israel by law enforcement agents. The subject of the interview was these particular individuals' involvement with bank accounts held in their names in the United State which were connected to the business enterprise that is the subject of the Civil Action. Specifically, these individuals are named on bank accounts that the FTC and Receiver allege are controlled by Defendants. The names of these individuals were disclosed to the Receiver and the FTC via the "Google Drive" referenced above, and via the production of bank information and records provided by Defendants in connection with their cooperation mandated by the TRO.

g. Most recently, I am informed that an individual named Tomer Amsalem was contacted last week jointly by a representative of American Express, and an agent from the Federal Bureau of Investigation. As above, the subject of the inquiry was Mr. Amsalem's connection to certain merchant account(s) connected to the business enterprise that is the subject of the Civil Action. Again, the names of this individual was disclosed to the

- 4 -

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

Receiver and the FTC via the "Google Drive" referenced above, and via the production of bank information and records provided by Defendants in connection with their cooperation mandated by the TRO.

6. A review of the receiver's First Initial Report submitted to this Court on August 3, 2015 contains no less than eight (8) references to Defendants' commission of "bank fraud" in connection with the operation of the business enterprise. (*See* Docket Entry #120, Page ii at 23, Page 4 at 14, Page 36 at 23, Page 40 at 4, Page 70 at 4, Page 75 at 22, Page 77 at 14, Page 83 at 24).

7. Moreover, attached to said Report as Exhibits 19 and 20, and Exhibits 51 and 52, are declarations from Stephan Bauer and Eran Link. Mr. Baur is a signatory for many of the entities connected with the business operation that is the subject of the Civil Action, including but limited to Kai Media, Inc., and Mr. Link is the signatory to certain merchant accounts associated with the Civil Action. Both individuals affirm in said declarations obtained by the Receiver that their signatures are forged, and that none of their signatures provided in connection with any bank account are genuine. Clearly, this now-opposing position is further supportive of Defendants' concerns regarding the ongoing criminal investigation.

8. Since the commencement of the Civil Action the Receiver, and accordingly the FTC, have likely been aware of the impending criminal investigation, given the facts pleaded in the Complaint. This contention is confirmed by the fact that a mere 11 days after the FTC raided Defendants' office, Counsel from the Receiver's firm, J. Mitch Little, emailed then-defense counsel, William Rothbard, regarding the taking of Defendant Doron Nottea's deposition. In said email, a true and correct copy of which is attached herewith as **Exhibit B**, Mr. Little asks whether or not Doron Nottea will assert his 5th Amendment right in the deposition, as the answer would dictate the course of the deposition.

9. In totality, the aforementioned confirms the existence of an ongoing, multi-agency criminal investigation of these moving Defendants, such that any further

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

discovery, or production of information as mandated by the Preliminary Injunction would be violative of these individual Defendants' 5th Amendment right against self-incrimination.

10. The matter is before this court on an *ex parte* basis because as of the drafting of this declaration, one day after attending the August 6, 2015 hearing on the FTC's Motion for Preliminary Injunction as to Defendants Calenergy, Inc. and Igor Latsanovski, I have received an email from the Receiver regarding supplemental briefing due Monday August 10, 2015 regarding the Receiver's Order to Show Cause Motion. Responsive briefing to the issue contained in the Show Cause Motion would necessitate declarations from Defendants. Said declarations in and of themselves may result in a violation of responding Defendants' 5th Amendment rights.

11. Additionally, via email the Receiver has raised additional matters that she would like answered by Defendants, under the constant threat of the Show Cause Order. Recognizing the import of that Order, as a matter of practicality, judicial economy and attorney resources, it appears more prudent to stay the matter as to these moving Defendants, pending the criminal investigation and any forthcoming charges, than to repeatedly appear at Show Cause Hearings to assert this same right.

12. Most recently, on Sunday August 9, 2015 at approximately 6:30 am, I received an email from the Receiver wherein she demands that I provide certain information before 10:00 am Monday August 10, 2015, subject to the Court's Show Cause Hearing set for August 17, 2015. As part of the information requested, the Receiver seeks certain moving Defendants' admissions that they owned and/or controlled certain receivership Defendants, and that they have signed, or caused signatures, on bank accounts held in the names of others. Robert Ungar, counsel for joint applicants Alon Nottea and Roi Reuveni, also received a similar email seeking the same information with respect to these Defendants. True and correct copies of both of Receiver's emails to myself and to Mr. Ungar are collectively attached herewith as **Exhibit C**.

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

13. Due to the ongoing criminal investigation surrounding the Civil Action, these moving Defendants must be advised by counsel to assert the Fifth Amendment as to all questions posed to them in any discovery, informal request per the Preliminary Injunction, or deposition in this case, including but not limited to the emails received on August 9, 2015.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  August 10, 2015                      /s/ David P. Beitchman
                                                               David P. Beitchman

**DEFENDANTS' JOINT *EX PARTE* APPLICATION FOR AN ORDER STAYING PROCEEDINGS**

# EXHIBIT "A"

## Andre Boniadi

| | |
|---|---|
| **From:** | David P. Beitchman |
| **Sent:** | Monday, August 10, 2015 4:01 PM |
| **To:** | kelly.crawford@solidcounsel.com; charlene.koonce@solidcounsel.com; Mweiss@agmblaw.com; esyverson@raineslaw.com; Robert Ungar; Tepfer, Reid A.; mharris@scheperkim.com; rmckown@ftc.gov |
| **Cc:** | Andre Boniadi |
| **Subject:** | RE: FTC v. Bunzai Media Group, Inc.  ** NOTICE OF EX PARTE APPLICATION ** |

Dear Counsel:

Pursuant to Local Rule 7-19, I write to give you notice that Defendants Doron Nottea, Motti Nottea, Alon Nottea and Roi Reuveni will be filing an ex parte application for an order staying proceedings against them, pending resolution/outcome of the concurrent, ongoing criminal investigation into facts pertinent in the civil case. We are aware of a multi-agency, multi-jurisdictional criminal investigation regarding the same facts and circumstances set forth in the FTC's Complaint, and are informed that the herein named individuals are targets of that investigation. The purpose of the ex parte application is to protect these individuals' rights in the Civil Complaint, as well as to preserve their Fifth Amendment Right against self-incrimination.

Please advise by 1:00 pm Pacific time tomorrow, August 11, 2015 as to whether you will oppose the application. If you do not oppose and this matter can be resolved by stipulation, please so advise. Otherwise, we will file the ex parte application and serve a copy of the same.

Thank you.


**David P. Beitchman, Esq.**

**BEITCHMAN | ZEKIAN**
A PROFESSIONAL LAW CORPORATION

16130 Ventura Blvd., Suite 570
Encino, California 91436
Tel. (818) 986-9100
Fax. (818) 986-9119

www.bzlegal.com

The information contained in this email message is intended
only for the personal and confidential use of recipients named
above. This message may be an attorney/client communication
and/or work product and as such is privileged and confidential.
If the reader of this message is not the intended recipient or an
agent responsible for delivering it to the intended recipient,
you are hereby notified that you have received this document in
error and that any review, dissemination, distribution, or copying
of this message is strictly prohibited. If you have received this
communication in error, please notify us immediately by e-mail,
and delete the original message.

# EXHIBIT "B"

**From:** Mitch Little [mailto:Mitch.Little@solidcounsel.com]
**Sent:** Monday, June 29, 2015 8:24 AM
**To:** William Rothbard
**Cc:** Charlene Koonce; Kelly Crawford
**Subject:** RE: New contempt issue regarding deletion of email account info

Mr. Rothbard,

We need to take your client Doron Nottea's deposition on Wednesday or Thursday. Please let me know your preference.

If you intend to have Mr. Nottea take the 5th, please let me know in advance, as that will change my preparation.

Sincerely,

J. Mitchell Little
Partner
2600 Network Blvd., Suite 400
Frisco, Texas 75034
214.472.2140 (Direct)
214.472.2100 (Phone)
214.472.2150 (Fax)
www.solidcounsel.com
Mitch.Little@solidcounsel.com

# EXHIBIT "C"

**David P. Beitchman**
___

**From:** Charlene Koonce <charlene.koonce@solidcounsel.com>
**Sent:** Sunday, August 09, 2015 6:36 AM
**To:** David P. Beitchman
**Subject:** Show Cause Hearing and Motion to Designate

Dave- If you can provide me with the information requested below by noon my time tomorrow (August 10, 2015), I will cancel the Show Cause hearing scheduled for the 17th. I need to file supplemental papers tomorrow regarding that hearing if I'm not going to cancel it and that is the reason for the noon deadline.

With respect to the entities listed below, I need to know
1) Was Doron in control of any entity other than Secured Commerce?
2) Does he deny that Secured Commerce was paid for creating AuraVie landing pages as provided in the Initial Report?
3) Please confirm the following:
    a. David Migdal controlled Forward Momentum;
    b. Roi controlled Trigen;
    c. Avi Argaman controlled Secured Merchants
    d. Alon controlled all others
   All Star Beauty Products, Inc.
   Apogee Network, LLC
   Daria Media, Inc.
   DMA Media Holdings, Inc.
   Focus Media Solutions, Inc.
   Forward Momentum, LLC
   Merchant Leverage Group, Inc.
   Secured Commerce, LLC
   Secured Merchants, LLC
   Shalita Holdings, Inc.
   Trigen, LLC
   USM Products, Inc.
4) Does Doron deny that each entity listed above participated in the sale, marketing, or other related conduct regarding the skin care products as described in the Initial Report. (Docket 120, see especially Exh. 1, 3 and pp. 60-78).

Thanks.



**CHARLENE KOONCE**

**PARTNER**

500 N. Akard, Suite 2700
Dallas, Texas 75201
**214.706.4215 (Direct)**
214.706.4200 (Main)
214.706.4242 (Facsimile)
charlene.koonce@solidcounsel.com
www.solidcounsel.com

1

**David P. Beitchman**

Subject:                                    FTC v BMG


From: Charlene Koonce <charlene.koonce@solidcounsel.com>
Subject: RE: FTC v BMG
Date: August 9, 2015 at 6:22:22 AM PDT
To: Robert Ungar <rmu@ungarlaw.com>
Cc: Kelly Crawford <kelly.crawford@solidcounsel.com>

Robert,

Please let me know by 10 a.m. PST on August 10, 2015,
1) If Alon denies he was in control of any of the following entities:
    ("Control" means Alon had a) authority to make decisions about how the entity was operated; or, b) was able to direct or effect transfers of each respective entity's assets; or c) signed, used signature stamps to sign, or directed others to sign or use signature stamps on documents related to each respective entities' creation, or any respective entities' bank account).
    All-Star Beauty Products, Inc.
    Apogee Network, LLC
    Daria Media, Inc.
    DMA Media Holdings, Inc.
    Focus Media Solutions, Inc.
    Merchant Leverage Group, Inc.
    Shalita Holdings, LLC
    USM Products, Inc.
2) If Alon denies any of the entities listed above were engaged in the conduct specifically described for each in the Initial Report, Docket 120.  See Exh. 1, 3 and pp. 60-78.
3) If Alon denies that service on him (through you) would provide actual notice to each entity.

Please state the factual basis for any question above that Alon denies.  If Alon does not understand any part of one of these questions and you as his attorney are not able to explain the questions above to him , please have Alon answer to the best of his knowledge based on whatever his understanding is.

Thanks,



## CHARLENE KOONCE
## PARTNER

500 N. Akard, Suite 2700
Dallas, Texas 75201
**214.706.4215 (Direct)**
214.706.4200 (Main)
214.706.4242 (Facsimile)
charlene.koonce@solidcounsel.com
www.solidcounsel.com