Michael J. Weiss (SBN 206473)
**ABRAMS GARFINKEL MARGOLIS BERGSON, LLP**
5900 Wilshire Blvd. Suite 2250
Los Angeles, CA 90036
310-300-2900
310-300-2901- Fax
Mweiss@agmblaw.com

Charlene C. Koonce (Texas SBN 11672850)
*Admitted Pro Hac Vice*
**SCHEEF & STONE, L.L.P.**
500 N. Akard, Suite 2700
Dallas, Texas 75201
214-706-4200
214-706-4242 - Fax
Charlene.koonce@solidcounsel.com
RECEIVER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BUNZAI MEDIA GROUP, INC., a California corporation, also doing business as AuraVie and Miracle Face Kit, et al.<br><br>Defendants. | Case No. 2:15-CV-4527-GW(PLAx)<br><br>**RECEIVER'S RESPONSE TO CERTAIN DEFENDANTS' MOTION TO STAY PROCEEDINGS, ETC. AND DECLARATION IN SUPPORT** |

Charlene Koonce, the Court-appointed Receiver (the "Receiver"), files this Response to Defendants Motti Nottea, Doron Nottea, Roi Reuveni and Alon Nottea's

(collectively, the "Nottea Defendants") Motion To Stay Proceedings, and in support, the Receiver respectfully shows the Court as follows:

## SUMMARY

The Nottea Defendants seek a stay of *all* proceedings, including proceedings against entities they do not represent and entities that do not have a Fifth Amendment privilege. Moreover, the implicit contention of Defendants' motion is that the Receiver in some way instituted the criminal *investigation* (not charges) which the diligent law enforcement agencies of the state of California or the federal government undertook on their own initiative. Defendants' implicit contention, while false, does not further the Nottea Defendants' right to a stay of these proceedings against the 27 or more entities they created and controlled in orchestrating consumer deception and various forms of fraud.

## FACTUAL SUMMARY

When Defendants conferred about this motion, they advised they would seek a stay as to the individual defendants only.[1] Instead, they seek to stay the entire case.

The Receiver's focus, throughout approximately the last 60 days,[2] has been performing her mandate, discovering which entities affiliated with Defendants were

---

[1] *See* email string attached as **Exhibit A.**

[2] As will be reflected in the Receiver's pay petition to be filed on August 14, 2015, the Receiver and her team worked on this matter virtually around the clock for at least the first two weeks of the appointment. The effort expended was nothing short of sacrificial, in terms of sleep, competing demands, and dedication. Defendants' efforts to camouflage their ownership and control of the Receivership Defendants, their use of an additional 13 entities that were not named as defendants and which were not identified by Defendants until the Receiver demanded information about those entities, as well as the fraud reported, rendered the appointment *extremely* difficult.

also "Receivership Defendants," which of those entities were actually controlled by the Nottea Defendants, and which of those entities' assets should thus fall within the scope of the TRO. Undoubtedly, the Receiver also discovered and reported various forms of fraud, but has no knowledge of any investigations or proceedings instituted against Defendants regarding any of that fraud. And, to date, the Receiver has not communicated with any law enforcement agency, or provided any information to a law enforcement agency regarding her investigation.[3]

As reported in the Initial Report, the Nottea Defendants used *at least* 27 entities to conduct their deceptive sales practices.[4] The Nottea Defendants, however, are affiliated with *at least 60 entities*,[5] many of which they contend had no role in the Enjoined Conduct. As reported at the recent hearing on August 6, 2015, the Receiver has already conferred with Defendants about and will file a motion seeking the Court's finding that many additional entities operated from the same location as the other Receivership Defendant entities fall within the court's definition of "Receivership Defendants," so as to clarify the estate's entitlement to their assets, as well as the Receiver's obligations with respect to these entities.[6]

---

[3] The Receiver will of course cooperate with any law enforcement agency, and welcomes inquiries from any such agencies. The Receiver presumes the law enforcement agencies which the Nottea Defendants report are investigating them, obtained a copy of the Receiver's Response to Doron Nottea's Motion to Vacate, [Docket No. 62] or were contacted by Eran Link, Stephan Bauer, or perhaps the banks involved.
[4] *See* Initial Report pp. 1-3; 60-71.
[5] *See* Initial Report, pp. 66-68; 73.
[6] *See* Initial Report pp. 71-80.

In furtherance of that Motion, the Receiver requested, multiple times, the Nottea Defendants' position regarding their actual control of the entities at issue, particularly with respect to providing notice to the non-party entities, whose purported officers live outside the country, deny control, or refuse to communicate with the Receiver. Counsel for Alon Nottea first chose intentional obtuseness as a shield to providing a response, then shifted to willful disregard, and finally, filed the instant motion.[7] At no point, however, did counsel raise their self-incrimination concerns as even a *potential* excuse for failing to provide the information requested by the Receiver.[8] Indeed, in response to several inquiries from the Receiver or her counsel regarding whether the Nottea Defendants intended to assert their Fifth Amendment privilege, they expressly reported no intention of doing so.

Likewise, Defendants have failed and refused to provide information which could not incriminate them, such as the identification of which entity owns the contents of the entities' office location,[9] and how the Defendants propose the Receiver handle the mail for the *many, many* entities now being delivered to the Receiver based

---

[7] *See,* email string attached as **Exhibit B**.
[8] If the Nottea Defendants choose not to admit control (to the extent they have not already done so), they could of course agree that notice to each or any of them constitutes notice to the non-party entities the Receiver contends are "Receivership Defendants." Likewise, they could confirm one of the named Receivership Defendants owns the contents of the office location so the Receiver can proceed to sell or otherwise dispose of it. Defendants, however, made no efforts whatsoever to side-step any potential self-incrimination issue, for instance by even facilitating communications between the purported officers of the non-party Receivership Defendants, and the Receiver. Defendants instead chose to ignore their obligations to cooperate and filed a motion seeking to stay the entire case.
[9] *See* email string attached as **Exhibit C**.

on her control over the post office box addresses used by the Nottea Defendants for operating the Receivership Defendants.

In short, the Nottea Defendants, rather than cooperating with the Receiver as required by the TRO and the subsequent Preliminary Injunctions, chose every opportunity to evade their obligations. Defendants' motion to stay presents more of the same, and should be denied, particularly with respect to Receivership Defendants and efforts to clarify whether non-parties fall within the scope of that term.[10]

## ARGUMENT

The Receiver's appointment extends only to the "Receivership Defendants."[11] The Receiver is thus adverse to the Nottea Defendants only to the extent they chose, and they chose frequently, to ignore the terms of the various Orders requiring cooperation with the Receiver. Accordingly, because the Nottea Defendants are not "Receivership Defendants," the Receiver takes no position with respect to the propriety (or impropriety) of the Nottea Defendants' reliance on a purported need to assert the Fifth Amendment in the context of an *investigation*[12] regarding their various

---

[10] *See FTC v. Johnson,* 567 Fed. Appx. 512, 514 (9th Cir. April 8, 2014)(District court is authorized to enforce injunction against non-parties, pursuant to motion seeking clarification of the scope of the injunction so as to include assets held by non-parties).

[11] "Receivership Defendants" means "Bunzai Media Group, Inc., … Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc…. AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc., their successors and assigns, as well as any subsidiaries, fictitious business entities, *or business names created or used by these entities or by the Individual Defendants that are related to, or receive funds from, the sale of skincare or other products online*." *Preliminary Injunction,* Docket No. 105, "Definitions" ¶ 4b (emphasis added).

[12] Notably, however, risk of self-incrimination necessary to justify assertion of Fifth Amendment requires "at the very least… initiation of legal proceedings." *Chavez v. Martinez*, 538 U.S. 760, 766, 123 S. Ct. 1994, 2000, 155 L. Ed. 2d 984 (2003).

forms of fraud. As the court's agent charged with various aspects of controlling and winding down the "Receivership Defendants," the Receiver strenuously opposes the Nottea Defendants' request to stay *the entire case.*

First, corporate entities have no Fifth Amendment privilege. *Braswell v. United States*, 487 U.S. 99, 102, 108 S. Ct. 2284, 2287, 101 L. Ed. 2d 98 (1988)("Similarly, petitioner asserts no self-incrimination claim on behalf of the corporations; it is well established that such artificial entities are not protected by the Fifth Amendment.") Second, Defendants do not represent *any* of the entities at issue, and the motion is thus not made on behalf of any entity; entities from which Defendants apparently intend to continue efforts to distance themselves.

Third, staying the receivership aspects of the case, in addition to being unnecessary, would be extremely inefficient and costly. For instance, would the Receiver continue in any obligation to have tax returns filed for any of the entities? Would she be authorized to sell the skin care inventory, or otherwise vacate the leased space occupied by the numerous Receivership Defendants to stop rent from accruing? And what of her obligation to take possession and control of Receivership Defendant assets? Would she be precluded from continuing negotiations with one merchant processor who continues to assert a perfected security interest in the reserve accounts premised on the processor's possession of the reserve account?

Staying proceedings against entities which are not represented, which do not oppose the FTC's requested relief, and for which the administration of the receivership must continue, does not serve any recognizable interests. And, to the extent the Receiver requires information from the Nottea Defendants to perform her mandate the Nottea Defendants should be required to provide such information unless the Court grants the requested stay, *and* unless the information requested presents a risk of self-incrimination for the individual defendant who provides the response. The Nottea Defendants, however, fail to demonstrate any such risk here.

WHEREFORE, PREMISES CONSIDERED, the Receiver respectfully requests that the Court deny the Nottea Defendants' Motion to Stay Proceedings, and requests such other and further relief to which she may show herself entitled.

I, Charlene C. Koonce, declare under penalty of perjury under the laws of the United States of America that I am over the age of 18 years, have never been convicted of a crime involving moral turpitude, and am competent to make this Declaration. I have personal knowledge of the facts stated above, each of which are true and correct. Moreover, each of the documents attached to this Motion were sent to or by me, and are true and correct copies of the original.

_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Respectfully Submitted,

*/s/Charlene Koonce*
Charlene C. Koonce
**Receiver**
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: 214-706-4200
Telecopier: 214-706-4242
Charlene.Koonce@solidcounsel.com
**SCHEEF & STONE, L.L.P.**

# CERTIFICATE OF SERVICE

The undersigned certifies that on August 12, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

| | |
|---|---|
| Tom Vidal<br>Michael Weiss<br>Nina Nahal Ameri<br>Abrams Garfinkel Margolis Bergson<br>5900 Wilshire Blvd Suite 2250<br>Los Angeles, CA 90036<br><br>*Local counsel for Receiver* | David P. Beitchman<br>Andre Boniadi<br>Beitchman\|Zekian, PC<br>16130 Ventura Boulevard, Suite 570<br>Encino, CA 91436<br><br>*Counsel for Doron Nottea and Motti Nottea* |
| Erik S Syverson<br>Scott M. Lesowitz<br>Steven T. Gebelin<br>Raines Feldman LLP<br>9720 Wilshire Boulevard Fifth Floor<br>Beverly Hills, CA 90212<br><br>*Counsel for Oz Mizrahi, as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.* | Marc S. Harris<br>Annah S Kim<br>Scheper Kim & Harris, LLP<br>601 W. Fifth Street, 12th Floor<br>Los Angeles, CA 90071<br><br>*Counsel for Igor Latsanovski and Calenergy, Inc.* |
| Robert M. Ungar<br>Crosswind Law<br>14724 Ventura Blvd Penthouse<br>Sherman Oaks, CA 91403<br><br>*Counsel for Alon Nottea, Roi Rueveni and Adageo, LLC* | Reid Tepfer<br>Luis Gallegos<br>Federal Trade Commission<br>1999 Bryan Street, Suite 2150<br>Dallas, TX  75201<br><br>*Counsel for the FTC* |

| | |
|---|---|
| Benjamin A Pettit<br>20 East Pueblo Street<br>Santa Barbara, CA 93105<br><br>*Counsel for Alon Nottea* | Raymond E McKown<br>Federal Trade Commission<br>10877 Wilshire Boulevard, Suite 700<br>Los Angeles, CA 90024<br><br>*Counsel for the FTC* |

                                      */s/  Charlene C. Koonce*
                                      CHARLENE C. KOONCE