JONATHAN E. NUECHTERLEIN
General Counsel

DAMA J. BROWN
Regional Director

REID TEPFER
rtepfer@ftc.gov
Texas Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov
Oklahoma Bar No. 19098
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (fax)

RAYMOND McKOWN
rmckown@ftc.gov
California Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4325 (voice)
(310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BUNZAI MEDIA GROUP, INC.,** *et al.*<br><br>**Defendants.** | **Case No.  CV 15-4527-GW(PLAx)**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *JOINT EX PARTE* APPLICATION TO STAY PROCEEDINGS OR, IN THE ALTERNATIVE, FOR AN ORDER SHORTENING TIME ON MOTION TO STAY PROCEEDINGS** |

1

**I.      Introduction.**

2

      Defendants Doron Nottea, Motti Nottea, Alon Nottea, and Roi Reuveni fail

3

to provide a valid justification or good cause for staying the proceeding.

4

Defendants' sole basis for their *Ex Parte* Application for Stay is their suspicion

5

that they may eventually face criminal prosecution for their role in the common

6

enterprise scheme. Defendants base this suspicion on their purported knowledge

7

of interviews conducted by federal criminal investigators. But in fact, no one has

8

been indicted related to this matter—the critical consideration under the law for

9

such a stay. Defendants have not even received a target letter from any criminal

10

authorities. Defendants' request for a stay is entirely premature, and their claim of

11

prejudice is purely speculative. Such speculation fails to satisfy Defendants'

12

burden to show good cause.[1]

13

      The FTC, meanwhile, would suffer actual prejudice from a stay. A stay

14

would delay relief for thousands of consumers and may stymie the FTC's ability

15

to prove its case and recover Defendants' ill-gotten gains, much of which may

16

remain offshore and unfrozen. With Defendants' *ex parte* application to stay,

17

Defendants refuse to meet the FTC's allegations head on, and instead seek to

18

delay indefinitely these proceedings for all Defendants and the eventual resolution

19

of this case on the merits. Defendants have attempted to delay this proceeding and

20

---

[1] *See* Fed. R. Civ. 26(c).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE*
APPLICATION TO STAY PROCEEDINGS

1  frustrate fact gathering at every turn, and Defendants' *ex parte* application for stay

2  represents the ultimate delay tactic. Accordingly, this Court should deny

3  Defendants' *Ex Parte* Application.

4  **II.      Facts and Procedural Background.**

5          Plaintiff Federal Trade Commission ("FTC" or "Commission") has initiated

6  this civil law enforcement action to put an end to an illegal negative-option

7  scheme that has deprived consumers nationwide of over $69 million. Defendants'

8  massive common enterprise scheme violates Section 5(a) of the Federal Trade

9  Commission Act, 15 U.S.C. § 45(a), Section 4 the Restore Online Shoppers'

10  Confidence Act, 15 U.S.C. § 8403, Section 907(a) the Electronic Funds Transfer

11  Act, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. §

12  205.10(b).

13          Defendants have filed an *Ex Parte* Application to Stay the Proceeding, Doc.

14  150, based on its presumption that the Federal Bureau of Investigation and the

15  Secret Service have initiated an investigation into their illegal business practices.

16  Defendants' claim of an "ongoing, multiagency criminal investigation" is dubious,

17  though, and their claim that the FTC has long been aware of a criminal

18  investigation is false.

19

20

## A. Defendants' Claims of an Ongoing, Multiagency Criminal Investigation Are Dubious at Best.

Defendants' lack credible support for their claim of an "ongoing, multiagency criminal investigation." Defendants' base their suspicion predominantly on learning of a bank employee's alleged interview with the Secret Service concerning Defendants' banking habits and business practices. But Defendants fail to explain why this bank employee would inform them of such an interview—a potentially illegal and criminal act. Defendants also point to one of the Defendant Doron Nottea's friends allegedly being interviewed regarding his whereabouts by "agents" of an unknown agency. It is unclear whether this questioning, if it occurred, is related to Defendant Doron Nottea's involvement in this scheme, rather than any of his other business activities.

Although Defendants claim the FBI and Secret Service are investigating them, they have not produced any evidence to support this claim. The Department of Justice's policy is to issue targets of investigations a target letter before indictment, unless they are a flight risk or another reason exists to not issue a target letter. Defendants request this Court suspend the proceeding for all Defendants, despite none of the Defendants having received such a letter. It remains unclear when—if ever—Defendants will face criminal charges. Defendants request is accordingly unfounded and premature.

**B. The FTC is Unaware of Any Criminal Investigation.**

The FTC agrees that Defendants' appear to be involved in varied illegal activities. Such activity may well merit attention from criminal authorities. But contrary to Defendants' suggestion, the FTC is unaware of any criminal investigation into Defendants' conduct. [2]

**III.   Legal Argument**

**A. Defendants' Have Improperly Used the *Ex Parte* Process.**

Defendants have failed to state a valid justification for filing this motion *ex parte. Ex parte* Applications "are rarely justified."[3] The facts here—speculation about an unconfirmed, nascent criminal investigation into unknown defendants—do not provide this rare justification. Defendants have abused the *ex parte* process, creating a crisis where none exists, and their Application should be denied accordingly.[4]

---

[2] The FTC generally makes its files available to other civil and criminal federal, state, local, or foreign law enforcement agencies where appropriate pursuant to the FTC Act and 16 C.F.R. §§ 4.11(c) & (j). In this case, however, the FTC has not been approached by any criminal agency requesting assistance or supporting evidence concerning an investigation into Defendants.

[3] *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 489 (C.D. Cal. 1995).

[4] *See id.* at 492 ("Many ex parte motions are denied, not because the request is unwarranted, but because the papers do not show that bypassing the regular noticed motion procedure is necessary.").

**B. Defendants' *Ex Parte* Application Should Be Denied on the Merits Because Parallel Civil and Criminal Proceedings Are Permissible and Commonplace.**

A stay is an "extraordinary relief" appropriate only in "extraordinary circumstances."[5] The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings.[6] And in fact, many of the cases

---

[5] *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987).

[6] *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) ("'In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence.'") (quoting *SEC v. Dresser Indus.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980)); *SEC v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 666-67 (5th Cir. 1981) ("generally unobjectionable because the federal government is entitled to . . . vindicate several interests simultaneously"); *see also FTC v. J.K. Publ'ns*, 99 F. Supp. 2d 1176, 1197-99 (C.D. Cal. 2000) (denying stay where criminal complaint was pending against defendant); *United States v. 566 Hendrickson Blvd.*, 986 F.2d 990, 997 (6th Cir. 1993) ("The very fact of a parallel criminal proceeding, however, does not alone undercut claimant's privilege against self-incrimination, even though the pendency of the criminal action forced him to choose between preserving his privilege against self-incrimination and losing the civil suit.") (modification and internal quotation marks omitted); *FSLIC v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989) ("[Defendant] concedes that he has no absolute constitutional right to a stay."); *Dresser Indus.*, 628 F.2d at 1374 ("In the absence of substantial prejudice to the rights of the parties involved, parallel proceedings are unobjectionable under our jurisprudence.") (quoted in *Keating*, 45 F.3d at 324).

1    relied on by Defendants support denying their request for a stay.[7]

2           "The decision whether to stay civil proceedings in the face of a parallel

3    criminal proceeding should be made 'in light of the particular circumstances and

4    competing interests involved in the case.'"[8] Although it is within the Court's

5    discretion to grant a stay, Defendants "must make out a clear case of hardship or

6    inequity in being required to go forward" when there is "even a fair possibility

7    that the stay . . . will work damage" to the FTC.[9] The factors the Court should

8    consider in ruling on Defendants' request for a stay include (1) "the extent to

9    which the defendant's fifth amendment rights are implicated"; (2) "the interest of

10   the plaintiffs in proceeding expeditiously with this litigation or any particular

---

11   [7] *See*, *e.g., United States v. Kordel,* 397 U.S. 1, 11 (1970) ("It would stultify
     enforcement of federal law to require a governmental agency such as the FDA
12   invariably to choose either to forgo recommendation of a criminal prosecution
     once it seeks civil relief, or to defer civil proceedings pending the ultimate
13   outcome of a criminal trial."); *Keating*, 45 F.3d at 326 ("Not only is it permissible
     to conduct a civil proceeding at the same time as a related criminal proceeding,
14   even if that necessitates invocation of the Fifth Amendment privilege, but it is
     even permissible for the trier of fact to draw adverse inferences from the
15   invocation of the Fifth Amendment in a civil proceeding." ); *Molinar*, 889 F.2d at
     903 (upholding the district court's denial of a stay where no indictment had been
16   issued); *Dresser Indus., Inc.* 628 F.2d at 1375 ("The Constitution, therefore, does
     not ordinarily require a stay of civil proceedings pending the outcome of criminal
17   proceedings."); *Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578 (D.C. Cir. 1970)
     (noting the district court did not abuse its discretion in denying a stay despite a
18   criminal indictment).

19   [8] *Keating*, 45 F.3d at 324.

20   [9] *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE*
APPLICATION TO STAY PROCEEDINGS

Page  **7**

aspect of it, and the potential prejudice to plaintiffs of a delay"; (3) "the burden which any particular aspect of the proceedings may impose on defendants"; (4) "the convenience of the court in the management of its cases, and the efficient use of judicial resources"; (5) "the interest of persons not parties to the civil litigation"; and (6) "the interest of the public in the pending civil and criminal litigation." [10]

### 1. Defendants' Overstate the Constitutional Implications of Denying the Stay.

Defendants overstate the Constitutional implications of not granting a stay. Under *Keating*, a case relied on by Defendants, even the risk of suffering an adverse inference from invoking the Fifth Amendment in a civil proceeding is not a sufficient "burden" to warrant a stay.[11] In fact, courts in this district have noted

---

[10] *Keating*, 45 F.3d at 324-25.

[11] *Keating*, 45 F.3d at 326; *SEC v. CMKM Diamonds*, No. 2:08-cv-00437-LRH-RJJ, 2011 WL 1343004, at *2 (D. Nev. Apr. 7, 2011); *see also ESG Capital Partners LP v. Stravos*, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014) ("the Ninth Circuit has already held that the potential for an adverse inference in a civil proceeding is not enough by itself to stay a civil action"); *FTC v. H.N. Singer, Inc.*, 1982-83 Trade Cases (CCH) ¶ 65,011, 1982 WL 1907, at *18 (N.D. Cal. 1982) (quoting *Luman v. Tanzler*, 411 F.2d 164, 167 (5th Cir. 1969)) ("When parallel criminal and civil/administrative proceedings are pending, the fact that a party has a 'free choice to admit, deny or refuse to answer . . . is full vindication of the fifth amendment privilege against self-incrimination.'"); *In re 650 Fifth Ave. & Related Props.*, No. 08-cv-10934, 2011 WL 3586169, at *2 (S.D.N.Y. Aug. 12, 2011) ("This Hobson's choice is not so acute that the Constitution prevents the courts from forcing litigants to make it.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO STAY PROCEEDINGS

Page  **8**

1    that "the contention that being forced to choose between the compulsion to testify

2    in a civil suit in order to avoid an adverse result on the merits undermines the right

3    to remain silent in a criminal matter, while having surface appeal, will not stand

4    analysis."[12]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    [12] *IBM v. Brown*, 857 F. Supp. 1384, 1389 (C.D. Cal. 1994)).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE*
APPLICATION TO STAY PROCEEDINGS

1

2    ### 2. *Courts Routinely Reject Motions to Stay Parallel Civil Proceedings Unless and Until an Indictment Has Issued.*

3       Courts usually do not stay civil cases pre-indictment.[13]  Indeed, whether a

4    defendant is under indictment is the most significant issue when determining

5

6

7    _____

8    [13] *See*, *e.g.*, *Molinaro*, 889 F.2d at 903 (internal modifications omitted) (quoting *Dresser Indus.*, 628 F.2d at 1376) ("[T]he case for staying civil proceedings is a 'far weaker one' when 'no indictment has been returned, and no Fifth Amendment

9    privilege is threatened.'"); *Dresser Indus.*, 628 F.2d at 1375-76 (emphasis added) ("Other than where there is specific evidence of agency bad faith or malicious

10   government tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a *party under indictment* for a

11   serious offense is required to defend a civil or administrative action involving the same matter."); *SEC v. Constantin*, No. 11-Civ-4642, 2012 WL 1195700, at *2

12   (S.D.N.Y. Apr. 9, 2012) (denying motion for stay and noting that "the difference between being a 'target' of an investigation and [being] indicted weighs

13   significantly against the granting of a stay"); *CFTC v. Watson*, No. 11-10949, 2011 WL 2174904, at *2 (E.D. Mich. June 3, 2011) (quoting *Chao v. Fleming*,

14   498 F. Supp. 2d 1034, 1038 (W.D. Mich. 2007)) (denying motion for stay and noting that "courts [generally] recognize that the case for a stay is strongest where

15   the defendant has already been indicted, whereas pre-indictment requests for a stay . . . are usually denied"); *FTC v. Pac. First Benefit, LLC*, 361 F. Supp. 2d

16   751, 756 (N.D. Ill. 2005) (denying request for stay and noting that "other district courts have also reasoned that an indictment should be issued before a stay is

17   granted"); *CFTC v. A.S. Templeton Grp., Inc.*, 297 F. Supp. 2d 531, 534 (E.D.N.Y. 2003) (denying motion for stay and noting that "Pre-indictment

18   requests for a stay of civil proceedings are generally denied"); *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01-CV-5530, 2002 WL 31111766 at *2

19   (E.D. Pa. Sept. 18, 2002) ("[P]re-indictment requests for a stay are typically denied" because "of the uncertainty surrounding when, if ever, indictments will be

20   issued, as well as the effect of the delay on the civil trial.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO STAY PROCEEDINGS

whether to stay civil proceedings,[14] and an unindicted defendant bears a heavier burden of proving that a stay is appropriate.[15]

As noted above, no Defendant has been indicted, and because defendants have not received a target letter, there is no indication that any indictment is imminent. In fact, Defendants have failed to identify which of them, if any, are the subject of an investigation. Instead of producing a target letter, Defendants restate unsworn rumors of an investigation into business practices they have denied by companies they claim not to own.[16] In the absence of an actual or imminent indictment—or even an investigation—these concerns are more hypothetical than real.

### 3. A Stay Would Unduly Prejudice the FTC.

The Commission's case relies heavily on the memories of consumer victims, who must recall specific details about charges that appeared on their

---

[14] *Dresser Indus.*, 628 F.2d at 1375-76 ("the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter"); *United States ex rel. Shank v. Lewis Enters., Inc.*, No. 04-cv-4105-JPG, 2006 WL 1064072, at *3 (S.D. Ill. Apr. 21, 2006); *Hollinger Int'l, Inc. v. Hollinger, Inc.*, 2005 U.S. Dist. LEXIS 14437, at *11 (N.D. Ill. July 15, 2005) ("In analyzing the status of the criminal case, the most significant issue is whether the investigation has ripened into an indictment").

[15] *Hollinger*, 2005 U.S. Dist. LEXIS 14437, at * 11.

[16] Notably, although defense counsel has provided a declaration, none of the individuals who were purportedly interviewed did.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE*
APPLICATION TO STAY PROCEEDINGS

credit card bill and the dates of those charges. Although the FTC submitted consumer declarations in support of its preliminary injunction, if this case proceeds to trial, witness testimony may be necessary. Assuming that an indictment issues, it could be years before any criminal case is resolved. Asking consumers to recall these charges and dates from years past becomes more problematic as time goes by. Moreover, consumers often move or change phone numbers and email addresses. It becomes more difficult to track down consumer victims (whether for purposes of discovery or for providing redress at the end of the Commission's case) with each day that passes. Accordingly, the delay requested by Defendants would greatly prejudice to the plaintiff, the victims, and the public.[17]

### 4.  Denying the Stay is in the Public Interest.

The public's interest is aligned with the Court's, the FTC's, and the injured consumers. The public's interest lies in "having parties resolve their disputes" and holding them "accountable for their actions"; a stay would compromise these interests.[18]

---

[17] *See SEC v. Incendy*, 936 F. Supp. 952, 956 (S.D. Fla. Aug. 2, 1996) ("[O]ver time, the likelihood of witnesses becoming unavailable, memories fading, and documents being lost increases dramatically.").

[18] *Slagowski v. Central Washington Asphalt*, 291 F.R.D. 563, 576 (D. Nev. July 2, 2013).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO STAY PROCEEDINGS

1

2

3

4

5

6

7

Because this is a law enforcement proceeding brought by the government, the public interest factor applies with greater force against a stay. The public has a strong interest in the enforcement of its consumer protection laws against wrongdoers,[19] recovery by deceived consumers,[20] and efficient operation of the judiciary and government agencies.[21] All of those interests would be harmed by a stay of the proceeding. It would be inequitable for the FTC to receive "slower justice than other plaintiffs" simply because Defendants' actions are "sufficiently

8

9

10

11

12

[19] *See FTC v. Parade of Toys, Inc.*, No. Civ. A. 97-2367-GTV, 1997 WL 688752, at *2 (D. Kan. Oct. 15, 1997) (denying motion to stay civil proceeding based on parallel criminal investigation) ("The enforcement of consumer protection laws and the prevention of fraud substantially invoke the public interest."); *cf. CMKM Diamonds*, 2011 WL 1343004, at *4 (public has an interest "in seeing that alleged securities frauds are resolved speedily"); *ESG Capital*, 22 F. Supp.3d at 1047 (the public has an interest in civil litigation that promotes confidence in the securities market).

13

14

15

16

[20] *FTC v. E.M.A. Nationwide*, 767 F.3d 611, 629 (6th Cir. 2014) ("The public interest is furthered where individuals' injuries are remedied in a timely manner."); *cf. FTC v. Capital Choice Consumer Credit, Inc.*, No. 02-21050 CIV, 2004 WL 5141452, at *8 (S.D. Fla. May 5, 2004) (public interest lies with the victims of defendants' deception, not with defendants); *FTC v. QT, Inc.*, 472 F. Supp. 2d 990, 998 (N.D. Ill. 2007) ("There is a strong public interest in providing redress to consumers for Defendants' wrongful conduct.").

17

18

19

20

[21] *SEC v. 3 Eagles Research & Dev. LLC*, No. 3:12-CV-01289-ST, 2014 WL 1269489, at *4 (D. Or. Mar. 26, 2014) ("[D]elaying proceedings may compromise public confidence in the agency's ability to take prompt enforcement action"); *United States v. Varnado*, No. 07-61257-CIV, 2011 WL 2600699, at *3 (S.D. Fla. June 29, 2011) ("[A] stay might even frustrate the public interest in expeditious and efficient litigation, as the government would have to wait longer than necessary to execute its judgment in a case that is already nearly four years old.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE*
APPLICATION TO STAY PROCEEDINGS

1  egregious to have attracted the attention of the criminal authorities."[22]

2  Accordingly, the public interests outweigh Defendants' desire to postpone

3  indefinitely this proceeding.[23]

4     **IV.**   **Conclusion**

5       Defendants have failed to state a valid basis for proceeding with its

6  application *ex parte* and, further, have failed to state a basis in law or fact for

7  staying the case. Accordingly, the FTC respectfully requests that this Court deny

8  Defendants' *ex parte* application.

9                                 Respectfully submitted,

10

11  Dated: 8/12/15                   /s/ REID TEPFER_____
                              REID TEPFER

12                                LUIS H. GALLEGOS
                              Attorneys for the Plaintiff

13                                Federal Trade Commission
                              1999 Bryan Street, Suite 2150

14                                Dallas, Texas 75201
                              (214) 979-9395 (Tepfer)

15                                (214) 979-9383 (Gallegos)
                              (214) 953-3079 (facsimile)

16                                rtepfer@ftc.gov
                              lgallegos@ftc.gov

17

18  [22] *See Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 575
(S.D.N.Y. 2001).

19

20  [23] *Parade of Toys*, 1997 WL 688752, at *2 ("The public interest in prosecuting the
civil action outweighs [the defendant's] interest in avoiding the dilemma of
invoking his Fifth Amendment privilege.").

                 PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE*
                 APPLICATION TO STAY PROCEEDINGS

# CERTIFICATE OF SERVICE

The undersigned certifies that on August 12, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd Suite 2250
Los Angeles, CA 90036
nameri@agmblaw.com
*Local counsel for Receiver*

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi, as an officer or  manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea, Roi Rueveni and Adageo, LLC*

David P. Beitchman
Beitchman & Zekian
16130 Ventura Blvd., Suite 570
Encino, CA 91436
dbeitchman@bzlegal.com
*Counsel for Doron Nottea and Motti Nottea*

Marc S. Harris
Scheper Kim & Harris, LLP
601 W. Fifth Street, 12th Floor
Los Angeles, CA 90071
mharris@scheperkim.com
*Counsel for Igor Latsanovski and CalEnergy, Inc*

Annah Kim
Scheper Kim & Harris, LLP
601 W. Fifth Street, 12th Floor
Los Angeles, CA 90071
akim@scheperkim.com
*Counsel for Igor Latsanovski and CalEnergy, Inc*

Charlene Cantrell Koonce
Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
charlene.koonce@solidcounsel.com
*Receiver*

1   Kelly M. Crawford                    Dallas, Texas 75201
    Scheef and Stone                     kelly.crawford@solidcounsel.com
2   500 N. Akard, Suite 2700             *Counsel to Receiver*

3
                                              /S/ REID TEPFER
4                                             REID TEPFER

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20