

**From:** Charlene Koonce
**Sent:** Sunday, August 09, 2015 8:22 AM
**To:** 'Robert Ungar'
**Cc:** Kelly Crawford
**Subject:** RE: FTC v BMG

Robert,

Please let me know by 10 a.m. PST on August 10, 2015,
1) If Alon denies he was in control of any of the following entities:
   ("Control" means Alon had a) authority to make decisions about how the entity was operated; or, b) was able to direct or effect transfers of each respective entity's assets; or c) signed, used signature stamps to sign, or directed others to sign or use signature stamps on documents related to each respective entities' creation, or any respective entities' bank account).
   All-Star Beauty Products, Inc.
   Apogee Network, LLC
   Daria Media, Inc.
   DMA Media Holdings, Inc.
   Focus Media Solutions, Inc.
   Merchant Leverage Group, Inc.
   Shalita Holdings, LLC
   USM Products, Inc.
2) If Alon denies any of the entities listed above were engaged in the conduct specifically described for each in the Initial Report, Docket 120. *See* Exh. 1, 3 and pp. 60-78.
3) If Alon denies that service on him (through you) would provide actual notice to each entity.

Please state the factual basis for any question above that Alon denies. If Alon does not understand any part of one of these questions and you as his attorney are not able to explain the questions above to him, please have Alon answer to the best of his knowledge based on whatever his understanding is.

Thanks,

---

**From:** Charlene Koonce
**Sent:** Sunday, August 09, 2015 8:36 AM
**To:** dbeitchman@bzlegal.com
**Subject:** Show Cause Hearing and Motion to Designate

Dave- If you can provide me with the information requested below by noon my time tomorrow (August 10, 2015), I will cancel the Show Cause hearing scheduled for the 17th. I need to file supplemental papers tomorrow regarding that hearing if I'm not going to cancel it and that is the reason for the noon deadline.

With respect to the entities listed below, I need to know
   1) Was Doron in control of any entity other than Secured Commerce?

2) Does he deny that Secured Commerce was paid for creating AuraVie landing pages as provided in the Initial Report?
3) Please confirm the following:
   a. David Migdal controlled Forward Momentum;
   b. Roi controlled Trigen;
   c. Avi Argaman controlled Secured Merchants
   d. Alon controlled all others
   All Star Beauty Products, Inc.
   Apogee Network, LLC
   Daria Media, Inc.
   DMA Media Holdings, Inc.
   Focus Media Solutions, Inc.
   Forward Momentum, LLC
   Merchant Leverage Group, Inc.
   Secured Commerce, LLC
   Secured Merchants, LLC
   Shalita Holdings, Inc.
   Trigen, LLC
   USM Products, Inc.
4) Does Doron deny that each entity listed above participated in the sale, marketing, or other related conduct regarding the skin care products as described in the Initial Report. (Docket 120, see especially Exh. 1, 3 and pp. 60-78).

Thanks.

---

**From:** Charlene Koonce
**Sent:** Tuesday, July 28, 2015 7:47 PM
**To:** 'Robert Ungar' (rmu@ungarlaw.com)
**Subject:** FTC v. Bunzai

"Eugene, had his own merchant business aside from Vastpay, and provided merchant services for Leor's sales, although it was not vastpay business." – what is the name of that business?

---

**From:** Charlene Koonce
**Sent:** Thursday, July 30, 2015 3:39 PM
**To:** 'Robert Ungar' (rmu@ungarlaw.com)
**Subject:** FW: FTC v BMG

Robert - I asked "Did Vastpay participate in the sales of ANY products sold by any of the individual defendants or any of the entities they are affiliated with? If so, please identify those products." You responded: "Vastpay did not provide services to any products sold." I need to clarify your answer. Did Vastpay have any role whatsoever with respect to the sale of skincare products made through negative option continuity programs or free trial sales? What was Alon's role with Vastpay?

You also stated: "Eugene, had his own merchant business aside from Vastpay, and provided merchant services for Leor's sales, although it was not vastpay business." Please identify the name of that business.

Thanks.

(Also, please resend whatever the latest version of your confidentiality stip is and I will review and get it back to you.)

---

**From:** Charlene Koonce
**Sent:** Tuesday, July 28, 2015 3:44 PM
**To:** dbeitchman@bzlegal.com; 'Robert Ungar' (rmu@ungarlaw.com); Marc S. Harris (mharris@scheperkim.com); Sagar Parikh (sp@beverlyhillslawcorp.com)
**Cc:** Will Hester; Tepfer, Reid A. (rtepfer@ftc.gov)
**Subject:** contents of 105 and 103 Canby

Counsel- based on the lack of opposition to entry of the Preliminary Injunction as to all entities other than CalEnergy, and the necessity of minimizing expenses for those entities as quickly as possible, I am planning on vacating Canby Suites 105 and 103 and terminating those leases as soon as possible.

I know Alon and Doron (and probably Alan Argaman) have personal items in 105 (like family photographs, etc.). Although their assets remain frozen, I will confer w/the FTC about whether any objection exists to me turning over that type of property to them, rather than having it stored.

Please send me a list of the personal items each of your respective clients would like to keep from those locations.

I also need to know if the copier in 105 is leased, and if so, who the lessor is.

Thanks,

---

**From:** Charlene Koonce
**Sent:** Sunday, July 26, 2015 9:46 PM
**To:** 'Robert Ungar' (rmu@ungarlaw.com)
**Cc:** Kelly Crawford
**Subject:** FW: FTC v. Bunzai

Robert - I summarize the "open" questions, as well as new requests for today.

- Was Dellure sold pursuant to any negative option enrollments? Which merchant entities and accounts were used for Dellure sales? Were those used only for Dellure sales or AuraVie, LeOr and other products as well?

- Did Vastpay participate in the sales of ANY products sold by any of the individual defendants or any of the entities they are affiliated with? If so, please identify those products?

- For the entities which were operated as " Online Help Desk and IT Solution Provider" (Optimized Media, Nestistics, etc.) I asked you to identify who their services were

provided to. The response was "I don't know if the services were provided to entities or individuals" or something like that – which is not responsive.

Did/do any of the " Online Help Desk and IT Solution Provider" entities receive funds from any other entity owned, *controlled* or affiliated with any other Receivership Defendant or Individual Defendant? If yes, identify which entities/individuals pay these Online Help Desk entities.

Did/do any of the "Online Help Desk and IT Solution Provider" entities transfer money directly **or indirectly** to any Receivership Defendant or any Individual Defendant? If yes, identify which entities/individuals receive those payments.

- Can Optimized, Intensive, Eccentric and Dynamic operate without any loans or income from SBM or any other Receivership Defendant?

- What is Alon's involvement with Vastpay?
- Why does Guayas send $ to Vastpay?
- Forward Momentum is David Migdal's personal consulting LLC. Why does it receive $ from SBM or any other receivership defendant? What services did Migdal purportedly provide, and to what entity? Can it continue operating legally and profitably if it receives no income from any Receivership Defendant and no loans from any source?

- the login below failed. Can you confirm it is correct? Also, we still need log-in info for Roi's B of A account. And, there is an AmEx cc attached to Trigen's WF account and we need access to that credit card data as well.

Cap1 log: 4303879 pw:roireuveni1-log in failed

| Roi Reuveni | Bank Account | Bank of America | | XXXX-60910 | NO ACCESS |
|---|---|---|---|---|---|

- Please provide a copy of any current lease for any car driven by or leased to your clients, and identify which entity which makes the lease payments.
  We are obtaining this information for you and shall provide ASAP

- If the skin care businesses are discontinued as represented, what does AMD do now? Why does it have payroll, and who is on the payroll?
- Confirm service of the TRO on all officers, agents, employees as requested in email sent on 7/13 at 7:27 p.m CST
- Who owns SJS IT Seven Solutions? Are any of the individual defendants, Alan Argaman, Paul Medina, or any of the other individuals whose names are affiliated with the Receivership Defendants connected in any way to that entity?

- For each person Alon contends consented to the use of their name and information either personally or through their authorized representative, on any merchant or bank account or otherwise, please specify who consented for anyone else, and why/how someone is an authorized representative for someone else and what written evidence you have of such consent, if any. For anyone who did not personally sign their own name to any merchant account app, bank record, corporate filing, tax document or other similar document, please identify the person who actually signed someone else' name. For instance, who signed Erin Link's name on the account opening documents at B of A for Optimized Media Services?
- Why does Secured Merchants transfer $$ to and receive $$ from Secured Commerce (d/b/a Express Mail House), if SM is engaged in on-line IT services?

- Who is actually in control of Merchant Leverage Group and why does it receive $$ from Secured Merchants?
- 
- Open issues re the Google-requested Stipulated Order (please address asap with James Stafford)



**CHARLENE KOONCE**

**PARTNER**

500 N. Akard, Suite 2700
Dallas, Texas 75201
**214.706.4215 (Direct)**
214.706.4200 (Main)
214.706.4242 (Facsimile)
charlene.koonce@solidcounsel.com
www.solidcounsel.com

# SCHEEF & STONE, L.L.P.
LEGAL COUNSEL BASED ON SOLID PRINCIPLES



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, L.L.P. reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, L.L.P. to regular mail, faxes, and/or electronic mail.