Michael J. Weiss (SBN 206473)
**ABRAMS GARFINKEL MARGOLIS BERGSON, LLP**
5900 Wilshire Blvd. Suite 2250
Los Angeles, CA 90036
310-300-2900
310-300-2901- Fax
Mweiss@agmblaw.com

Charlene C. Koonce (TX Bar No 11672850)
*Admitted Pro Hac Vice*
**SCHEEF & STONE, L.L.P.**
500 N. Akard, Suite 2700
Dallas, Texas 75201
214-706-4200
214-706-4242 - Fax
Charlene.koonce@solidcounsel.com
RECEIVER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BUNZAI MEDIA GROUP, INC., a California corporation, also doing business as AuraVie and Miracle Face Kit, et al.,<br><br>Defendants. | Case No. 2:15-CV-4527-GW(PLAx)<br><br>NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015; MEMORANDUM OF POINTS AND AUTHORITIES, AND SUPPORTING DECLARATION OF CHARLENE C. KOONCE<br><br>Hearing Date: September 14, 2015<br>Time: 10:30 am[1]<br>Courtroom: 10 |

---

[1] To allow travel to Los Angeles on September 14, 2015 rather than the night before, the Receiver requests a 10:30 a.m. or later setting.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015; MEMORANDUM OF POINTS AND AUTHORITIES, AND SUPPORTING DECLARATION OF CHARLENE C. KOONCE

1

**TABLE OF CONTENTS**

I.  SUMMARY ............................................................................................. 7

II. PAY PETITION .................................................................................... 12

    A.  RECEIVER'S FEES ...................................................................... 12

    B.  RECEIVER'S ATTORNEYS' FEES AND EXPENSES ....................... 13

        1.  Scheef & Stone, L.L.P. ......................................................... 13

        2.  Abrams Garfinkel Margolis Bergson, LLP ........................... 16

    C.  RECEIVER'S ACCOUNTANTS' FEES AND EXPENSES ................. 17

    D.  RECEIVER'S IT PROFESSIONALS' FEES AND EXPENSES ........... 19

    E.  LODESTAR AND JOHNSON FACTOR ANALYSIS ......................... 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

# TABLE OF AUTHORITIES

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ............................ 20, 21

*Chalmers v. City of L.A.*, 796 F.2d 1205 (9th Cir. 1986) ............................... 21

*Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132 (9th Cir. 2012) ......................... 21

*Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013) ..................................... 21

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act
  (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ..................................... 20

*Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011) ........................................ 20

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ....................... 21, 22, 23

*Perdue v. Kenny*, 559 U.S. 542, 130 S.Ct. 1662 (2010) ................................ 20

*Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895 (9th Cir. 1995) ................ 20

*SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220 (S.D.N.Y. 1973) ............. 22, 23

*SEC v. Schooler*, No. 3:12-CV-2164-GPC-JMA, 2015 WL 224634
  (S.D. Cal. Jan. 15, 2015) ..................................................... 22, 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# NOTICE OF MOTION

TO THE HONORABLE JUDGE GEORGE WU, UNITED STATES DISTRICT JUDGE, AND ALL PARTIES IN INTEREST:

PLEASE TAKE NOTICE that on September 14, 2015, commencing at 10:30 a.m. or as soon thereafter as the parties may be heard in Courtroom 10 of the above-entitled Court located at 312 North Spring Street, Los Angeles, California, 90012, Charlene Koonce, the Receiver in the above –entitled action, will and hereby does move the Court for an order approving the reasonableness and authorizing the payment from receivership assets of compensation and expenses for the Receiver and the Receiver's counsel, Scheef & Stone, LLP and Abrams Garfinkel Margolis Bergson, LLP, the Receiver's accountants, Brandlin & Associates, and the Receiver's IT experts, Elluma Discovery, for the period ending July 31, 2015.  During this first pay period, the fees and expenses were as follows:

a.      Receiver's discounted fees: $108,323; discounted to $86,658.96

b.      Scheef & Stone's discounted fees: $279,715; discounted to $223,772;

c.      Scheef & Stone's expenses: $39,024.48; discounted to $31,082.89;

d.      Abrams Garfinkel's discounted fees: $3,064.00; discounted to $2,451.64;

e.      Abrams Garfinkel's  expenses: $2,451.64;

f.       Brandlin & Associates' discounted fees: $252,962.00; discounted $202,369.80;

g.    Brandlin & Associates' discounted expenses: $2,050.29;

h.    Elluma Discovery's discounted services: $41,011.79; discounted to $32,880; and

i.    Elluma Discovery's expenses: $5,620.79.

PLEASE TAKE FURTHER NOTICE that this Motion is based upon this Notice of Motion and Motion; the accompanying memorandum of points and authorities and the declaration of Charlene C. Koonce; the pleadings, records and files of this case of which the Receiver requests the Court take judicial notice; the separate Notice of Hearing filed and served concurrently; and all other further pleadings, oral and documentary evidence and arguments of counsel as may be presented by the Receiver at or before the time of the hearing on the Motion.

PLEASE TAKE FURTHER NOTICE that a copy of this Notice of Motion and Motion, the accompanying memorandum of points and authorities and declaration of Charlene C. Koonce will be mailed by first class mail to all interested persons.

PLEASE TAKE FURTHER NOTICE that this Motion is made following the conference of counsel pursuant to Local Rule 7-3.  On August 7, 2015, the Receiver's counsel sent emails to counsel for each of the individual defendants and the FTC, listing the specific amounts the Receiver sought permission to pay.  (Those amounts have subsequently been reduced by 20%.)  Upon request, the Receiver also sent copies of all supporting invoices to counsel for Igor Latsanovski and CalEnergy, Inc., and the

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015; MEMORANDUM OF POINTS AND AUTHORITIES, AND SUPPORTING DECLARATION OF CHARLENE C. KOONCE

FTC.  Counsel for Latsanovski and CalEnergy Inc.  oppose the motion on the grounds that:  "(1) the Receiver's request appears to be excessive in light of the limited mandate of the TRO and the fact that the modest assets of the Receivership Defendants were not difficult to locate or ascertain; and (2) the Receiver appears to seek payment of these fees from assets that are not part of the Receivership Estate."  Counsel for the FTC indicated by email that it takes no position regarding the relief sought.

*/s/Charlene Koonce*
Charlene C. Koonce

**RECEIVER**

## MEMORANDUM OF POINTS AND AUTHORITIES

Charlene C. Koonce, the Receiver appointed pursuant to the *Ex Parte* Temporary Restraining Order with Asset Freeze, etc. (the "Receivership Order") and the various Preliminary Injunctions entered subsequently,[2] (the "Injunctions"), moves the Court for permission to pay, from the receivership assets under her possession or control,[3] the fees and expenses accrued through July 31, 2015 and in support thereof, respectfully shows the Court as follows:[4]

## I.    SUMMARY

The activities of the Receiver and her team of attorneys, accountants, and IT professionals giving rise to the invoices for which payment is sought are described in detail in the Receiver's *Initial Report*[5]. The complexity of the enterprise, number of entities and bank accounts involved, fraudulent efforts to conceal control and ownership, and outright bank fraud significantly expanded the scope of the mandate and thus the efforts necessary to perform it.

The Receivership Order defines "Receivership Defendants" to include not only the 15 named entities, but also "their successors and assigns, as well as any

---

[2] *See* Docket No. 105, 107 and 108.

[3] The assets in the Receiver's possession were seized from the Receivership Defendants and are identified on **Exhibit A**. As noted in Exhibit A, certain reserve accounts have not been transferred by the processor entities as of the date of this Motion, but the Receiver expects to receive those funds prior to a ruling.

[4] Paragraph 23 of the Receivership Order requires the Receiver to file her first request for payment of expenses and compensation not later than 60 days after the date of the Receivership Order.  The subsequent Preliminary Injunctions include the same provision.

[5] Docket Nos. 120 - 124.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

subsidiaries, fictitious business entities, or business names created or used by these entities or by the Individual Defendants that are related to, or receive funds from, the sale of skincare or other products online."  As noted in the *Initial Report*,[6] *at least* thirteen (13) *additional* entities fall within that definition, although the individual defendants or the Receivership Defendants are affiliated with or connected to at least sixty (60) entities in total, most of which required some level of analysis to eliminate as potential Receivership Defendants.

The Receiver learned that because of the deceptive means by which the Defendants sold skin care products, the product return rate or disputed credit card charges, ("charge backs,") was extraordinarily high.[7]  In an effort to "load balance" or spread-out the chargebacks among different entities and their accounts, Defendants created many entities solely to own the merchant accounts through which the consumer charges were processed. Defendants also engaged in affiliate marketing – selling their products and others' by means of the same "free trial" negative enrollment offers, and used several additional entities for the affiliate marketing. And, rather than

---

[6] Docket No. 120.  Because the Report provides a narrative description of the work for which payment is sought by this Motion, the Receiver incorporates the Report by reference, and requests the Court's review of the very lengthy Report in considering this motion.

[7] Defendants' chargeback rates averaged between 14 -35% Industry standard is 1%. *See,* Exhibit 2 to the *Initial Report*.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

paying themselves directly, two of the Individual Defendants used "personal consulting LLC entities" to receive their proceeds of the Enjoined Conduct.[8]

Most of these entities used multiple bank, merchant or credit card accounts.[9] Alon and Doron Nottea had control over *many* entity bank accounts on which they were not signatories or owners, and for entities of which they were neither officers nor employees. And credit cards issued to the Receivership Defendants and other individuals were used by persons to whom those cards were not issued.[10]  Obtaining and reviewing information necessary to understand the operations of each of the entities and the flow of funds generated from the sales of the skin care products was a massive undertaking.

Moreover, the Receiver's efforts were complicated and multiplied by interference, evasion, or dishonesty.  For instance:

- Although the Receiver requested Defendants to identify *all* entities with which they were affiliated, and from those, identify which were used in the skin care sales process, Defendants provided incomplete information about the entities, omitting many until specifically directed to address them individually.  Defendants also listed the officers and directors for those entities (as requested) but failed to disclose their own actual control over those entities, until repeatedly asked to provide that information;

---

[8] A chart depicting the flow of funds between and among all Receivership Defendants is included as Exhibit 1 to the *Initial Report*. More detailed flow charts are the first two exhibits to the Brandlin Report which is Exhibit 2 to the *Initial Report*.

[9] The accountants identified 70 merchant accounts, 48 bank accounts, 18 sets of Quickbooks and 82 credit cards just for the twenty-seven Receivership Defendants.  More than 100 credit cards were found in Doron Nottea's office. Additional bank accounts were identified that were controlled from Defendants' office location, but which were owned by entities that were not Receivership Defendants although in many instances funds from the skin care sales flowed to those additional entities.

[10] *See, Initial Report* at pp. 66-67.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

- Alon Nottea transferred funds out of a Receivership Defendants' bank account after receiving notice of the TRO, but before the bank would agree to freeze those funds.[11] The funds were voluntarily returned, but not before a Motion to Show Cause was prepared;

- Latsanovski instructed Wells Fargo to wire funds contrary to a stipulated agreement,[12] pursuant to which the Receiver had agreed to allow frozen funds to be used to facilitate closing a real estate transaction so as to avoid forfeiting escrowed funds;

- Initially, informing the Receiver that Defendants did not have access to, credentials for, or control over, the computers in the office location;

- Instructing the purported CEO of Focus Media Solutions to obtain counsel for that entity and claim it was not subject to Alon Nottea's control "as a favor" despite Nottea's actual control over Focus Media's bank account and the purported CEO's denial of any actual authority over the entity;

- Asserting attorney/client privileges for Receivership Defendants' entities, many of which are dissolved, and which the Individual Defendants are not representing;

- Deleting emails and documents from accounts that were subject to the Receiver's control pursuant to the Receivership Order, but for which the Defendants refused to turnover passwords and access credentials until a Show Cause hearing was scheduled;

- Providing inaccurate or incomplete access identification of or credentials for email, Quickbooks, or bank accounts, and then changing the passwords after providing the access credentials;

- Providing false or incomplete information about assets – for instance informing the Receiver that all entities' funds were only on deposit with WF

---

[11] The entity, Focus Media Solutions, was not a named Defendant but had actively engaged in affiliate marketing of skin care products through the negative option enrollments and was the successor to Media Urge, Inc., a named Defendant.

[12] *See,* Docket No. 33.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

and BA while at least $400k was on deposit with merchant processors that were not disclosed.

The Receiver was forced to make demand upon the Defendants, in some instances repeatedly, to obtain the requested information or cure the resulting violations of the Receivership Order. Frequently, requested information was not provided until an Affidavit of Noncompliance and Show Cause Motion was threatened or filed. In some instances, the Defendants would then comply.[13]

Defendants' multiple changes in counsel also resulted in starts, stops, and skips in obtaining the information needed to perform her mandate and increased the fees involved. For instance, Defendants Doron and Motti Nottea are on their *fourth* attorney. And the Receiver communicated with three different lawyers for Defendant Igor Latsanovski and CalEnergy, with the first two eventually declining the representation after initially asking for the Receiver's "forbearance" while they gathered responsive information. Each successive change of counsel forced repeated requests and demands for information, access, and cooperation.

And, the Nottea Defendants engaged in bank fraud. Signatures of individuals who were the purported owners or officers of Receivership Defendant entities were

---

[13] The email accounts present an excellent example. Reuveni refused to provide the access credentials to the third-party IT professional for his personal accounts until approximately *August 3, 2015,* despite having been ordered to do so within hours of entry of the Receivership Order. *See,* Receivership Order, ¶ 17. Reuveni also agreed to provide that information within one hour after agreement on a Stipulation, *See,* Docket No. 44 and 58; and was ordered to appear and show cause why he had not complied. *See,* Docket No. 56. The credentials Reuveni provided in *August* did not work. He then identified a new email account that had previously never been identified, and stated he had "transferred" his email to the new account – a feat the IT professional states is not possible.

forged on account opening documents.  Individuals who were listed as officers or directors for Receivership Defendant entities had no knowledge of the entity, its operations, or its assets.[14] Identifying who was actually in control of the Receivership Defendant entities, the entities' bank accounts, their respective operations, and sorting out truth from fiction was *extremely* time consuming.[15]

In short, the scope of the mandate for this case, which was initially significant based on inclusion of fifteen named entities, multiplied exponentially based on the inclusion of twenty-seven entities, more than 110 bank accounts, a marked lack of cooperation, false or evasive responses to information, and bank fraud.

## II.   PAY PETITION

As described above and in the Receiver's *Initial Report*, performing the Receivership Order's mandate required the expenditure of significant fees and expenses which Receiver seeks permission to pay.[16]

## A.   RECEIVER'S FEES

Based on the originally discounted rates, the Receiver's fees were $108,323.70 for fees incurred from the inception of the receivership on June 16, 2015[17] through July

---

[14] *See, Initial Report* pp. 22-23; 44; 66 and 71.

[15] And because the Defendants repeatedly provided false information, such as identifying one entity as having "nothing to do with skin care sales" although that entity had received more than $1MM from affiliate marketing for "free trial" sales of skin care products, *See,Initial Report* p. 39. The Receiver could not simply rely on the information provided by Defendants.

[16] The Order requires payment of reasonable fees and expenses: "[T]he Temporary Receiver and all personnel hired by the Temporary Receiver… are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them …" Receivership Order ¶ XXIII.

31, 2015.  The Receiver provided 373.53 hours of service at her $290.00 discounted hourly rate.[18]   The Receiver has agreed to a further 20% reduction in these fees to $86,658.96, and requests authority to pay that amount.  Detailed descriptions of the Receiver's services are set forth in the invoice attached as **Exhibit B**. The Receiver's activities as well as the Defendants' operations are summarized in the Receiver's *Initial Report.*  Approximately 15.60 hours billed by the Receiver were not charged.

## B.     RECEIVER'S ATTORNEYS' FEES AND EXPENSES

### 1.     Scheef & Stone, L.L.P.

Scheef & Stone, L.L.P. ("Scheef & Stone") serves as primary counsel for the Receiver.[19]   Based on the original 15% discount, Scheef & Stone's fees for services provided from April 29, 2015 through July 31, 2015 were $279,715.20.  The attorneys and paralegals of Scheef & Stone who provided services to the Receiver during this period, their billable rates, and the hours billed are summarized as follows:

| Attorney/ Paralegal | Hours Billed | Billable Rate | Discounted Billable Rate[20] | Reduced Total Requested | Less Further 20% Reduction |
|---|---|---|---|---|---|
| Kelly Crawford (litigation partner) | 137.80 | $420 | $375 | $51,675.00 | $41,340.80 |

---

[17] Although the Receiver incurred time in preparing for the receivership before she was appointed, she is not charging for that time.

[18] Ms. Koonce's standard billing rate is $340 per hour.

[19] The Receiver is an equity partner of Scheef & Stone.

[20] The total discount on an hourly basis is $590.00.

---

| | | | | | |
|---|---|---|---|---|---|
| David Dyer (litigation partner) | 124.30 | $450 | $375 | $46,612.50 | $37,290.00 |
| Mitch Little (litigation partner) | 157.05 | $415 | $375 | $58,893.75 | $47,115.00 |
| Sarah Benes (corporate associate) | 16.00 | $265 | $235 | $3,760.00 | $3,008.00 |
| Leslie Sanderson (litigation associate) | 112.50 | $250 | $225 | $25,312.50 | $20,249.60 |
| James Stafford (litigation associate) | 124.30 | $215 | $180 | $22,374.00 | $17,899.20 |
| Jacob Sparks (litigation associate) | 13.00 | $250 | $180 | $2,925.00 | $2,340.00 |
| Brandi McKay (litigation member) | 114.80 | $350 | $300 | $34,440.00 | $27,552.00 |
| Will Hester (paralegal) | 177.50 | $150 | $140 | $24,850.00 | $19,880 |
| Patrick Schurr (bankruptcy partner) | 8.90 | $375 | $340 | $3,026.00 | $2,420.8 |
| Bruce Stockard (real estate partner) | 1.50 | $375 | $340 | $510.00 | $408.00 |
| Brad Whitlock (corporate partner) | 2.25 | $485 | $375 | $843.75 | $675.00 |
| Audra Mayberry (litigation associate) | 6.20 | $235 | $215 | $1,333.00 | $1,066.40 |

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

| | | | | | |
|---|---|---|---|---|---|
| Kathy Stroman (paralegal) | 8.20 | $125 | $125 | $1,025.00 | $820.00 |
| Law Clerk | 2.10 | $160 | $150 | $315.00 | $252.00 |
| Kristine Bates, Dena Lambert, and June Piles (legal assistants) | 18.20 | $100 | $100 | $1,820.00 | $1,456.00 |
| **Total** | **1,024.60** | | | **$279,715.50** | **$223,772.40** |

Detailed descriptions of the services provided by each member of Scheef & Stone are set forth on the invoices attached as **Exhibit C**. The services provided by Scheef & Stone are also discussed in the Receiver's *Initial Report*. Approximately 60.44 hours billed by attorneys or paralegals at Scheef & Stone are not charged. Based on the additional 20% discount, the Receiver requests authority to pay Scheef & Stone $223,772.40.

In addition, Scheef & Stone incurred expenses in the amount of $31,148.28 for the period from April 29, 2015 through July 31, 2015 as detailed on the invoice attached as **Exhibit D**. Approximately $7,941.59 in expenses incurred by Scheef & Stone (for photocopies, Westlaw research and meals) was not charged. Significant third party expenses, which are billed on a pass-through basis, include the following:

- Filing fees for 28 U.S.C. § 754 notices necessary to perfect the court's jurisdiction over assets such as merchant accounts located outside of the Central District of California — $4,094[21]

---

[21] Local rules of the Western District of Tennessee required using local counsel to file the notice. The total invoice for services rendered was $910.00 but the invoice was discounted to $100.00.

- 15 -
NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

- Federal Express and copy fees for Section 754 notices — which must include a copy of the Complaint and the Receivership Order and must be filed within ten days of appointment — $5,582.22

- Court reporter and video fees for Latsanovski deposition — $3,503.46

- Computerized legal research expense incurred but written off — $2,646.58

Scheef & Stone is comprised largely of attorneys who began their careers at large firms, with equally large billing rates. The rates billed by Scheef & Stone, however, are approximately 15-20% lower than attorneys with comparable experience at comparably sized firms,[22] and are 30-50% lower than rates billed by the large firms where most of Scheef and Stone's attorneys previously worked. As reflected above, the hourly rates for Scheef & Stone attorneys and the Receiver are further discounted for this matter.  And, on top of the initial discounted rate at which the time was billed, the Receiver agreed to a further 20% reduction.  Moreover, as discussed below, these rates appear to be comparable to or lower than rates charged by attorneys in the Central District of California for receiver or receivership appointments.

### 2.    Abrams Garfinkel Margolis Bergson, LLP

The Receiver's local counsel in Los Angeles, California is Abrams Garfinkel Margolis Bergson, LLP ("Abrams Garfinkel").  Based on the originally discounted rate billed by Abrams Garfinkel, fees were $3,064.55 for total hours of 10.8 for services

provided from June 3, 2015 through July 31, 2015.  Abrams Garfinkel's fees were discounted by 15% for this appointment, and with all other professional services, have been further discounted by 20%.  The Receiver accordingly requests authority to pay Abrams Garfinkel $2,451.64 for fees.

Detailed descriptions of the services provided by Abrams Garfinkel are set forth in the invoices attached as **Exhibit E**. Specifically, Abrams Garfinkel assisted in interviewing Defendant Khristopher Bond, advising the Receiver regarding the filing and posting the bond, and facilitating the pro hac admissions of the Receiver' primary counsel.

In addition, Abrams Garfinkel incurred expenses in the amount of $1,771.25 for the same period. Those expenses included the fees for *pro hac vice* applications,[23] and courier/copier charges to provide chambers copies of various filings.

## C.   RECEIVER'S ACCOUNTANTS' FEES AND EXPENSES

Brandlin & Associates serves as the Receiver's accountant and provided forensic accounting services that were essential to the Receiver's duties under the Receivership Order.  Brandlin & Associates, L.L.P. discounted invoices totaled

---

[22] Approximately fifty (50) attorneys comprise Scheef & Stone, LLP.
[23] Four attorneys at Scheef & Stone filed *pro hac* applications because the Defendants' initial lack of cooperation and the scope of the operations resulted in service of deposition notices for each individual defendant and three additional non-party witnesses.  Those notices were served before the hearing date on the Preliminary Injunction was extended and it was thus not possible for one or even two attorneys to take all depositions in the approximately 10 day period in which the information was needed. Once the PI hearing was extended and Defendants began providing information (albeit often incomplete or evasive information) the depositions were cancelled, except for Defendant Latsanovski.  The four attorneys

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

$252,962.50 in fees for services provided from June 16, 2015 through July 31, 2015. After applying the additional 20% discount, the Receiver requests permission to pay Brandlin $202,370.00 for fees.   In addition, the Receiver request authority to pay Brandlin & Associates, L.L.P. $2,050.29[24] in expenses incurred from June 16, 2015 through July 31, 2015.

The accountants at Brandlin & Associates who provided services to the Receiver during this time period, their billable rates, and the hours billed are summarized as follows:

| Accounting Professional/ Admin Staff | Hours Billed | Billable Rate | Discounted Billable Rate[25] | Reduced Total Requested | Less Further 20% Reduction |
|---|---|---|---|---|---|
| Jeff Brandlin | 259.08 | $495 | $450 | $116,586 | $93,268.80 |
| David R. Bell | 103 | $435 | $410 | $42,230 | $33,784.00 |
| Richard Lieu | 109.25 | $295 | $275 | $30,043.75 | $24,035.00 |
| Zella Belenkaya | 51 | $125 | $125 | $6,375 | $5,100 |
| Jinyong Na | 268.50 | $215 | $215 | $57,727.50 | $46,182.00 |
| Total | 790.83 | | | $252,962.25 | $202,369.80 |

Detailed descriptions of the valuable services provided by Brandlin & Associates are set forth in the invoices attached as **Exhibit F**.   Additional descriptions and explanations of the accountants' work is included in the *Initial Report,* particularly at Exhibit 2 to the Report, which is Brandlin & Associates' report. Notably, the

who appeared *pro hac vice*, however, participated in the initial access and were instrumental throughout the Receiver's investigation.

[24] Brandlin charges a 7% administration fee to cover costs for copies, faxes, postage, etc.   That charge, $17,707.36, was waived.

accountants analyzed and evaluated information for more than seventy (70) merchant accounts, forty-eight (48) bank accounts, eighteen (18) sets of QuickBooks and five (5) years of tax returns for a least twenty-one (21) entities.

**D.    RECEIVER'S IT PROFESSIONALS' FEES AND EXPENSES**

Elluma Discovery was retained to provide electronic data and forensic IT services to the Receivership Estate. Elluma Discovery's initial invoices reflected $41,100 in fees and $5,620.79 in expenses for the period from June 11, 2015 through July 31, 2015.  After the additional 20% discount, the Receiver requests permission to pay Elluma $32,880 in fees together with all expenses.  Eric Robi of Elluma Discovery provided 137 hours of service at a discounted hourly rate of $300.  Detailed descriptions of the valuable services provided by Elluma Discovery are set forth in the invoice attached as **Exhibit G**, and include assistance in gaining access to Defendants' computers when Defendants refused to provide credentials, reviewing, sorting and indexing information retrieved from those computers, taking control of at least sixty-five (65) webpages or landing pages, reviewing information about a server claimed to be owned by "Chargeback Armor, Inc." and downloading, sorting and electronically searching email from the accounts the Receiver was able to access.  Elluma's services are also referred to in the Receiver's *Initial Report*.

---

[25] The total discount on an hourly basis is $90.00.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

The Receiver requests permission to pay the fees and expenses described above. As discussed below, the lodestar rate for all services is well below the prevailing market rates and all time and expenses were necessary.  The estate currently includes not less than $1.2MM in liquid assets,[26] and approximately $7MM in realty. Further, unlike many receiverships, the Individual Defendants' assets are not included in the estate, but include at least $456K in cash for Doron Nottea, and $1.5MM in equity in Latsanovski's residence. Those assets will also be available for consumer redress.

## E.   LODESTAR AND JOHNSON FACTOR ANALYSIS

The "lodestar" method of evaluating the reasonableness of fees, which has been expressly approved by the Supreme Court, requires a court to compare the prevalent market rates in the relevant community with the average rate charged in the matter in issue.  *Perdue v. Kenny*, 559 U.S. 542, 552 –53, 130 S.Ct. 1662, 1673 (2010); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). When determining the reasonableness of the attorney's proposed hourly rate, the district court looks to the hourly rates prevailing in the relevant legal community for similar work performed by attorneys of "comparable skill, experience, and reputation." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 461

---

[26] As reflected in the Receiver's *Initial Report*, the Receivership Defendants reported almost no income—their profits were instead transferred to or spent for the benefit of the Individual Defendants.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

(C.D. Cal. 2014). The "relevant legal community" is the forum in which the district court sits. *Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

The district court calculates the lodestar by determining the number of hours reasonably expended by an appropriate hourly rate in the community. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho,* 523 F. 3d at 978. District court judges may use their own expertise and judgment to independently assess the value of the attorney's services. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). The district court also looks for evidence of "billing judgment," or the attorney's decision to discount hours that are "excessive, redundant, or otherwise unnecessary" as a lawyer in private practice would do. *Costa*, 690 F.3d at 1135.

Although the lodestar is presumptively a reasonable fee award, the district court may adjust the lodestar to account for other factors which are not subsumed within it. *Camacho*, 523 F.3d at 978. In *Kerr v. Screen Extras Guild, Inc.*, the court outlined twelve factors intended to provide district courts with guidance in the number of hours reasonably expended on litigation and the reasonable hourly rate. 526 F.2d 67, 70 (9th Cir. 1975). Accordingly, once the district court calculates the initial lodestar figure, it may then consider the *Kerr* factors in determining whether to adjust the fee award. *Chalmers v. City of L.A.*, 796 F.2d 1205, 1212 (9th Cir. 1986). The *Kerr* factors are:

(1) The time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

Additional considerations are also relevant in the context of an equity receivership. First, the agreement or opposition of the appointing agency to the fee application is entitled to great weight. *See, SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973); *SEC v. Schooler*, No. 3:12-CV-2164-GPC-JMA, 2015 WL 224634, at *2, 6 (S.D. Cal. Jan. 15, 2015). Further, given the public service nature of equity receiverships and similar appointments, courts also consider the quality of the work performed, including the results obtained and the benefit to the receivership estate in determining what constitutes a "reasonable fee." *See, Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. at 1222; *SEC v. Schooler*, No. 3:12-CV-2164-GPC-JMA, 2015 WL 224634, at *2, 5 (S.D. Cal. Jan. 15, 2015). The complexity and difficulty associated with the appointment are also highly relevant factors in determining the reasonableness of professional fees. *Fifth Ave. Coach Lines, Inc.*, 364

F. Supp. at 1222 (Awarding interim fees and expenses to law firm for role in receivership and noting that it involved a wide variety of complex legal matters requiring the time, competence, and diverse resources of a law firm of high caliber); *Schooler*, 2015 WL 224634, at *2. Courts examine the fair value of the receiver's time, labor, and skill, measured by conservative business standards, required to carry out a court's orders when assessing the reasonableness of the rates charged for services to a receivership. *See, Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. at 1222 (Fees awarded in full because they were based on law firm's usual hourly rate and supported by meticulous records); *Schooler*, 2013 WL 5945051, at *2, 5 (S.D. Cal. Nov. 5, 2013) (Fees awarded because the rates charged by the receiver were comparable to rates charged in the geographic area). Finally the receivership estate's ability to bear the burden of fees is considered. *Schooler*, 2013 WL 5945051, at *2, 6.

As detailed above, a total of 1,408.93 hours for the Receiver and her counsel are included in this Motion, with a total discounted charge for Receiver and attorneys' fees (excluding expenses) of $313,881, and a lodestar of $222.07. When the accountants' and IT professional's rates and hours are incorporated into the lodestar calculations, the total number of hours billed is 2,336.76, the total fees (excluding expenses) are $548,050 and the lodestar is $234.53.

Based on the *Kerr* factor analysis below as well as the lodestar figures above, the Receiver believes the fees submitted are appropriate, just, and reasonable, and require no adjustment prior to approval.

1.     <u>The Time and Labor Required</u>.   The Receiver respectfully directs the Court's attention to the attached invoices for unpaid fees and expenses, which identify the total number of hours billed by the Receiver, her staff and the attorneys during the approximately six (6) weeks included in this request for payment of fees and expenses. During that time period, the Receiver billed approximately 373.53 hours, while approximately 1024.60 hours were billed by attorneys or paralegals assisting with the Receiver's duties. Additional hours were billed by the accountants and the contract employees.

2.     <u>The Novelty and Difficulty of the Questions</u>.   The scope, complexity and numerous artifices used to disguise and camouflage the entities engaged in the Enjoined Conduct, as explained in the Receiver's *Initial Report,* rendered this appointment *extremely* difficult. *At least* twenty seven (27) entities fall within the definition of "Receivership Defendant," although only fifteen (15) are named Defendants. Defendants used "straw" entities whose purported owners and officers had no knowledge of those entities' operations or the entities' bank accounts, and forged signatures on corporate formation documents to further their efforts at concealment. Defendants also forged signatures on documents used to open bank accounts, and used

credit cards issued to individuals who live overseas or entities, for their personal benefit. Further, Defendants' failure and refusal to cooperate and provide truthful, complete information as requested, exponentially increased the difficulty and complexity of the issues involved.[27]

3.    <u>The Skill Requisite to Perform the Service</u>.   The Receiver believes the services performed in this case required individuals possessing considerable skill and experience with receivership services, litigation, and accounting.

4.    <u>The Preclusion of Other Employment Due to Acceptance of the Case</u>. During the period covered by this Motion, no other work was declined because of this representation.  However, of the massive scope of the receivership demanded nearly all of the Receiver's time, which precluded the Receiver and in some instances her counsel, from working on other cases on which the rates were not discounted.  The Receiver's accountants likewise expended the majority of their time on this matter, rather than on work for which their rates were not discounted.

5.    <u>The Customary Fee</u>. The hourly rates sought for the Receiver, Scheef & Stone, L.L.P., and Brandlin & Associates are *substantially* lower than the rates charged by other practitioners of similar experience levels in the Central District of California. Indeed the per hour rates charged by the Receiver and all counsel, paralegals, whose fees are included are believed to be 20-30% lower than the average per hour charges

---

[27] *See,* for example the discussion at pp. 12-13, 33-34, and 37-41 of the *Initial Report.*

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

for attorneys and firms in the Los Angeles area with similar experience and reputation.[28] Further, the Receiver's standard hourly rate of $340.00 was discounted to $290.00 for this matter and the hourly rates charged by other attorneys or paralegals that assisted in this matter were also substantially discounted. Similarly, the Receiver's accountants' and IT professional's rates are discounted.  On top of those already discounted rates, an additional 20% discount was applied.

6.     Whether the Fee is Fixed or Contingent. The Receiver, her staff, counsel, accountants, and IT professional's hourly rates are fixed and the fees are based on the hours worked.  Payment of such fees, however, is subject to Court approval and further subject to available assets sufficient to pay the fees.

7.     Time Limitations Imposed by the Client or Other Circumstances.  Assets must be frozen *immediately* upon service of the Receivership Order.[29]  In this instance, as new entities, new accounts, EIN's and social security information were discovered, communications with banks continued on an expedited and emergency basis to ensure assets were and remained frozen.

---

[28] *See, for example, Securities and Exchange Commission v. Secure Investment Services, Inc., et al;* Case No. 2:07-cv-01724 in the United States District Court for the Eastern District of California, in which the receiver's fee was $350 per hour; and *Securities and Exchange Commission v. Nationwide Automated System Inc., et al;* Case No. 14-07249 in the United States District Court for the Central District of California in which receiver's fee is $350 per hour and receiver's blended attorney fee rate is $423 per hour; *see also SEC v. W Financial Group, LLC, et al.,* Cause No. 3:08-CV-0499-N in the United States District Court for the Northern District of Texas, Docket No. 65; Receiver's counsel's rate is $510 per hour.

[29] For instance, as discussed below, the Receiver's counsel was able to confirm a freeze on Doron Nottea's safe deposit box at BA, before he left the office location on June 18, 2015.  Despite having been informed by the Receiver that the contents of the safe deposit box were frozen and the Receiver's possession of the key, Nottea went straight to the bank

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015; MEMORANDUM OF POINTS AND AUTHORITIES, AND SUPPORTING DECLARATION OF CHARLENE C. KOONCE

The Receiver's *Initial Report* was due prior to the date on which the Preliminary Injunction was first set, June 30, 2015, which created extreme pressure to accomplish a massive investigation in less than two weeks.  The hearing date was extended to August 6, 2015, but because of the scope of the investigation and Defendants' repeated failures to provide requested information or cooperation, short deadlines continued.  For instance, Defendant Latsanovski also filed a motion for relief from the TRO, which required a response within 24 hours and Defendant Doron Nottea filed a Motion to Vacate a Show Cause Hearing which likewise required a response within 24 hours.

8.  <u>The Amount Involved and the Results Obtained</u>.  All fees and expenses incurred were necessary to perform the duties assigned to the Receiver by the Receivership Order.  As a direct result of the Receiver's efforts, approximately $1,206,280 in assets owned or held by Receivership Defendants was frozen.  Of this amount, approximately $406,000 was in merchant accounts, (more than 70 merchant accounts were discovered), none of which were disclosed by Defendants.  Approximately, $208,900 was in accounts held by Receivership Defendants who were not named as defendants, but over which defendants admitted their control and which Defendants admitted were used in the sale or marketing of skin care products.

---

and lied to the bank officer about having lost his key in an attempt to obtain possession of the $456,000 in cash stored in the box.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

The Receiver's efforts also prevented misappropriation or dissipation of more than $1 million. As explained below, the Receiver secured $456,000 in a safety deposit box, compelled the return of $360,000 wrongfully transferred from an account subject to the Receivership Order, and insured that $190,000 in misappropriated funds were acquired to close escrow on the purchase of certain real property.

(a)    When she entered the Receivership Defendants' office location, the Receiver's team located and took possession of a key to a Bank of America safety deposit box. Doron Nottea was specifically informed that he was prohibited from accessing the box, or removing anything from it. The Receiver learned that immediately after leaving the office location, Mr. Nottea went straight to Bank of America claiming he lost had lost his key and requested access. Bank of America, having received a copy of the Receivership Order, a letter from the Receiver's counsel, and a follow-up telephone call all within hours of the Receiver's initial access to the Defendants' business locations, prohibited Mr. Nottea from accessing the safety deposit box.    The Receiver's attorney and Mr. Nottea's attorney later jointly inventoried of the contents of the safe deposit box, which contains $456,000 in cash. The cash remains in the safe deposit box.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

(b)     Defendant Alon Nottea transferred $360,000 from an account owned by Focus Media Solutions, to USM Products, Inc.[30]  Mr. Nottea claims that he did not know the restrictions of the Receivership Order at the time of the transfer, but admitted USM Products was not entitled to the funds, thus suggesting the purpose of the transfer was to put the funds in an account the Receiver had not yet discovered.  Upon discovering the transfer, however, the Receiver made demand upon Mr. Nottea to return the funds, which was accomplished by transfers from USM to Focus Media Solutions and Kai Media's WF accounts.

(c)     To facilitate the closing on two real estate transactions in which $400,000 was in escrow and in danger of forfeiture, the Receiver stipulated to the transfer of certain funds from a frozen account owned by Sunset Holdings (an account on which Latsanovski was a signatory) to two title companies handling the closings.  Defendant Latsanovski had Wells Fargo switch the wire transfers so that one title company received $190,000 more than the purchase price of the property and the other title company received $190,000 less than the purchase price of the property.  Rather than correct this mistake, Latsanovski had the title company with the excess funds close on the real estate transaction and Defendant Latsanovski used the excess $190,000 to pay architects and contractors scheduled to improve the real property. Latsanovski's

---

[30] Mr. Nottea is not an officer or an employee of Focus Media Solutions and is not a signatory on its bank accounts.  Likewise, he is not identified as an officer for USM Products, although his alias name, Jay Michaels, is an officer for USM.

misuse of the $190,000 created a $190,000 shortfall, prohibiting closing on the second real estate transaction at a different title company.  Only after the Receiver threatened to file a Show Cause motion against Latsanovski did he or someone on his behalf obtain $190,000 in additional funds from a third party to complete the closing on the real estate transaction and avoid forfeiting the escrow money.

9.    <u>The Experience, Reputation and Ability of the Attorneys</u>.  Ms. Koonce has served as receiver, special master or distribution agent in eight (8) other matters, and has represented other receivers in more than fifteen (15) receivership matters.  She is also a member of NAFER, the National Association of Federal Equity Receivers. The Receiver's counsel, Scheef & Stone, L.L.P., includes other attorneys who specialize in serving as or representing equity receivers in federal enforcement cases and attorneys with varying practice areas and specialties. The reputations of the Receiver and Scheef & Stone, L.L.P., are recognized and respected in these fields. Ms. Koonce and attorneys with Scheef & Stone assisting her in this case have been appointed as receiver by federal courts in each of the four districts of Texas, the Southern District of Florida, and the Southern District of New York.

10.    <u>The Undesirability of the Case</u>. The Receiver's work in this case and representation of the Receiver incident to this case has not been undesirable.

11.    <u>The Nature and Length of the Professional Relationship with the Client</u>. The Receiver has been employed by or a partner at Scheef & Stone, L.L.P. for more

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

than seventeen (17) years, and has represented other members of Scheef & Stone, L.L.P. appointed to serve as equity receivers in enforcement cases.

12.   <u>Awards in Similar Cases</u>. Based on the rates charged, the scope and difficulty of the appointment, the number of defendants and the gross sales involved, and the total unencumbered frozen assets available to pay the fees and expenses described above, the fees requested in this case are less than or equal to those which have been awarded in similar cases.[31]

The Receiver believes the fees and expenses charged and submitted with this Motion are reasonable and necessary, and should be approved for immediate payment. A summary estimating the work necessary to fully accomplish the mandate, all of which the Receiver estimates can be accomplished for $125,000-$175,000 is attached as **Exhibit H**.[32]

WHEREFORE, the Receiver respectfully requests that the Court enter an order authorizing the Receiver to pay from receivership assets the following administrative expenses:

a.   The total amount of $86,658.96 to Scheef & Stone for the Receiver's fees incurred or paid during the period ending July 31 25, 2015; and

---

[31] For instance, in the first fee petition filed by the Receiver and his counsel in *Securities and Exchange Commission v. Medical Capital Holdings, Inc., et al*, Case No. SA CV09-0818 in the United States District Court for the Central District of Texas, the Court approved fees totaling $360,460 for the receiver, $793,606 for counsel to the receiver, and $61,000 for the receiver's IT professional.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

b.     The total amount of $254,855.29 to Scheef & Stone for attorneys' fees ($223,772.40) and expenses ($31,082.89) incurred or paid during the period ending July 31, 2015; and

c.     The total amount of $4,222.89 to Abrams Garfinkel Margolis Bergson LLP for attorneys' fees ($2,451.64) and expenses ($1,771.25) incurred or paid during the period ending July 31, 2015; and

d.     The total amount of $204,420.09 to Brandlin & Associates for accounting services rendered ($202,369.80) and expenses incurred ($2,050.29) or paid during the period ending July 31, 2015; and

e.     The total amount of $38,500.79 to Elluma Discovery for services rendered ($32,880.00) and expenses incurred ($5,620.79) during the period ending July 31, 2015.

Respectfully submitted,
**SCHEEF & STONE, L.L.P.**

*/s/Charlene Koonce*
Charlene C. Koonce
(TX SBN 11672850)
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: 214-706-4200
Telecopier: 214-706-4242
*Admitted Pro Hac Vice*
***Receiver***

---

[32] This amount is an estimate only.  The Receiver's ability to accomplish the mandate within this range of fees also depends on large part on whether the Individual Defendants continue in their refusal to cooperate with the Receiver and force Show Cause hearings.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

# DECLARATION

I, Charlene Koonce, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1.     I am over the age of 18 years, have never been convicted of a crime involving moral turpitude, and am competent to make this Declaration.  I have personal knowledge of the facts stated herein.

2.     I am an attorney licensed to practice law in the state of Texas and am a partner with the law firm of Scheef & Stone, LLP. I have been licensed to practice law in Texas since 1991.  I am admitted to practice before all state and federal courts in the state of Texas, and am admitted to practice before the Fifth and Eleventh Circuit Courts of Appeal. My practice emphasis is in complex business litigation, particularly in federal courts, and I have extensive experience in serving as or representing equity receivers in government enforcement cases.

3.     The invoices attached to this Motion are true and correct copies of the invoices generated by Scheef & Stone, Abrams Garfinkel, Brandlin & Associates, and Elluma Discovery for the services rendered as required by the Receivership Order and the Preliminary Injunctions, and accurately reflect the charges incurred in connection with my appointment as Receiver.

4.     The fees reflected in the attached invoices are lower than the fees charged by attorneys and accountants with comparable skills, reputations, and experience in the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Northern District of Texas and the Central District of California.   Similarly, the fees and expenses reflected in the invoices attached to the Motion are reasonable and customary rates and reflect services which were necessary to perform the Receiver's duties as outlined in the Receivership Order and the Preliminary Injunctions. Executed this 14th day of August 2015.

*/s/Charlene Koonce*
CHARLENE C. KOONCE

1

2

## **CERTIFICATE OF CONFERENCE**

3

4        The undersigned hereby certifies that this motion is filed following the

5   conference of counsel pursuant to L.R. 7.3, which took place on August 6, 2015, with

6   further and additional conferences following that date. The Receiver conferred with

7   counsel for the Federal Trade Commission and counsel for the Individual Defendants

8   and Receivership Defendants (to the extent any Receivership Defendant has appeared

9   and is defending) regarding this Motion and proposed order. The FTC recognizes the

10  value of the Receivership services provided, the necessity of the fees charged in light

11  of the Defendants' obstructionism and efforts to conceal their ownership and control

12  over the common enterprise, and the complexity of the issues involved.    Based on the

13  Receiver's agreement to a 20% reduction of the fees requested in the motion, the FTC

14  takes no position regarding the requested relief.  Counsel for the Defendants

15  Latsanovski and CalEnergy, Inc. oppose the motion.

16

17                                             */s/Charlene Koonce*
                                              Charlene C. Koonce

18

19

20

21

22

23

24

25

26

27

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

# CERTIFICATE OF SERVICE

The undersigned certifies that on August 14, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S.D.C., Central District of California, using the electronic case filing system of the court. The attorneys listed below were served pursuant to the ECF notice generated by the Court.

Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkel Margolis Bergson
5900 Wilshire Blvd Suite 2250
Los Angeles, CA 90036
Local counsel for Receiver

David P. Beitchman
Andre Boniadi
Beitchman|Zekian, PC
16130 Ventura Boulevard, Suite 570
Encino, CA 91436
Counsel for Doron Nottea and Motti Nottea

Erik S Syverson
Scott M. Lesowitz
Steven T. Gebelin
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
Counsel for Oz Mizrahi, as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.

Marc S. Harris
Annah S Kim
Scheper Kim & Harris, LLP
601 W. Fifth Street, 12th Floor
Los Angeles, CA 90071
Counsel for Igor Latsanovski and Calenergy, Inc.

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
Counsel for Alon Nottea, Roi Rueveni and Adageo, LLC

Reid Tepfer
Luis Gallegos
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, TX 75201
Counsel for the FTC

Raymond E McKown
Federal Trade Commission
10877 Wilshire Boulevard, Suite 700
Los Angeles, CA 90024
Counsel for the FTC

Benjamin A Pettit
20 East Pueblo Street
Santa Barbara, CA 93105
Counsel for Alon Nottea

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE

Notice to creditors identified in the Receiver's Schedule of Creditors [Docket No. 140] was also provided by First Class Mail.

*/s/  Charlene C. Koonce*
CHARLENE C. KOONCE

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT FROM
RECEIVERSHIP ASSETS OF RECEIVERSHIP FEES AND EXPENSES THROUGH JULY 31, 2015;
MEMORANDUM OF POINTS AND AUTHORITIES, AND
SUPPORTING DECLARATION OF CHARLENE C. KOONCE