**SCHEPER KIM & HARRIS LLP**
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
ANNAH S. KIM (State Bar No. 190609)
akim@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA  90071-2025
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

**Attorneys for Defendants**
**Igor Latsanovski and Calenergy, Inc.**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | CASE NO. CV 15-04527 GW (PLAx) |
| Plaintiff, | **JOINT STATUS REPORT BY PLAINTIFF AND DEFENDANTS IGOR LATSANOVSKI AND CALENERGY, INC. CONCERNING ASSET FREEZE** |
| v. | |
| BUNZAI MEDIA GROUP INC., et al., | |
| Defendants. | PROPOSED HEARING DATE: August 21, 2015 |
| | PROPOSED TIME:  8:30 am |
| | Court:   Hon. George Wu |

1    Pursuant to this Court's August 6, 2015 Order that Plaintiff and defendants

2  Calenergy, Inc. and Igor Latsanovski (collectively, "Defendants") meet and confer

3  regarding certain issues raised by the FTC's Request for Preliminary Injunction,

4  counsel for the parties exchanged proposals for the modification of the existing asset

5  freeze on August 10, 2015, conferred telephonically on August 11, 2015 regarding

6  the assets that would remain subject to the asset freeze and the scope of the

7  Temporary Receiver's role going forward, and the FTC supplemented its August 10,

8  2015 proposal on August 14, 2015.  The parties were unable to resolve the

9  outstanding issues and submit this Joint Report setting forth their respective

10  positions for resolution by the Court.  The parties propose a telephonic hearing on

11  August 21, 2015 at 8:30 am to discuss the areas of dispute.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT REPORT CONCERNING ASSET FREEZE

# FTC'S POSITION

On August 6, this Court entered a preliminary injunction against Defendants Igor Latsanovski and CalEnergy, Inc., finding that the FTC was likely to succeed on the merits against them and that a preliminary injunction was in the public interest. Further, the Court instructed the parties to meet and confer concerning the extent of the asset freeze for Defendant Latsanovski's companies. The Court expressed an interest in a solution that would both preserve Defendant Latsanovski's assets for future consumer redress but also allow his companies to operate if doing so would be legal and profitable. The FTC's proposals would achieve both goals.

## 1.    General Proposals for Defendant Latsanovski's Companies.

The FTC does not oppose the continuing operation of any of the non-defendant corporations owned by Latsanovski, including his payment processing company, Vastpay, or his comic book company, Comicsfix.[1]  Nor does the FTC oppose Defendant Latsanovski retaining profits from these ventures to pay for his living expenses. The FTC proposes that Defendant Latsanovski be allowed to continue operating these companies, subject to a sworn statement these companies are not violating the law. The FTC further proposes that the Court continue the freeze on the assets of Defendants' companies that were acquired before the TRO to preserve the possibility of consumer redress.[2]  This is consistent with the instructions provided by the Court at the August 6 hearing.[3]

## 2.    Specific Proposal for Sunset Holdings, Inc.

---

[1] Latsanovski disclosed owning 95 percent of Vastpay and 67 percent of Comicfix.

[2] *See* Att. A (providing a nonexhaustive list of frozen accounts).

[3] *See* Att. B at 23, 28 (transcript of August 6 hearing).

1    Defendants own a real estate company, Sunset Holdings, Inc.,[4] that was

2   funded in part by the illegal common enterprise.[5]  The company currently owns ten

3   properties. Eight of the ten properties are purportedly subject to unsecured loans

4   from CalEnergy, which were then transferred without consideration to another of

5   Latsanovski's companies, Guayas.[6]

6    These funds took a confused and circuitous path to Sunset Holdings.

7   Defendant Calenergy received the money from Guayas, a company Latsanovski

8   wholly owns, and a company called Bavaria. Calenergy then transferred these funds

9   to Sunset Holdings.[7]  According to his testimony, a company owned by Latsanovski

10   (Guayas) loaned money to another company owned by him (CalEnergy) so that that

11   company could provide the funds to a third company owned by Latsanovski

12   _____

13   [4] Sunset Holding's operating agreement states that Defendant CalEnergy owns 99
14   percent of the company, with Defendant Latsanovski owning the other one percent.
      CalEnergy is wholly owned by Defendant Latsanovski. Although Defendants
15   contest this ownership distribution, pointing to a handwritten "verbal agreement,"
      the Receiver concluded the transfer was ineffective for a litany of reasons. *See* Doc.
16   No. 120 at 50-52. In effect, Defendants claim that Latsanovski gifted Mr. Peniche
17   several million dollars' worth of real estate for no consideration. *See* 106-4, at 3
18   ¶¶7-8.

19
20   [5] The Receiver has stated that Defendant CalEnergy provided more than half of
      Sunset's roughly $8 million in funding. CalEnergy, in turn, received $1.9 million
21   from companies selling products as described in the Complaint. Doc. No. 92, at 22
22   ¶33.

23
24   [6] *See* Doc. No. 106-8. Although Guayas is wholly owned by Defendant Latsanovski,
      Oleg Trushyla signed on behalf of Guayas. *Id.* Trushlaya is the owner of Skincare
25   OU, the company that BunZai Media Group entered into an "Exclusive U.S.A
      Fulfillment & Call Center Agreement" with for the marketing of AuraVie. *See id.* at
26   5; *see also* Doc. No. 120, at 35 n.132.

27   [7] *See* Doc. No. 106-4, at 3-4 ¶¶ 9-11.

28

(Sunset).[8]

It appears unlikely that Sunset Holdings can resell these properties at a profit. Sunset Holdings purchased eight of the ten properties before the TRO, and the purported loans for the properties were well above the purchase price.[9]  Defendants contend that they can renovate and sell these properties at a profit. Given that these properties are already substantially underwater, it seems unlikely that sinking additional investment into the properties will bear profit. Accordingly, the FTC proposes selling the properties, with the proceeds to be held by the Receiver pending final disposition of the case, in the method described by the Court.[10]

In the alternative, the FTC proposes it be granted a lien equal to the loan amount for the properties, with any other lien being subordinate. Defendants may place secondary liens upon the property to finance their improvement and may retain any profits generated from the property sales that exceed the FTC's lien.

### 3.    Proposal for Defendants Latsanovski and CalEnergy.

The FTC proposes the Court continue the asset freeze for Defendants Latsanovski and CalEnergy as described in the TRO. The FTC further proposes that the Receiver dissolve CalEnergy, as recommended in the Receiver's report, with any expenses accrued from doing so to be paid from Defendant Latsanovski's after-acquired assets. The FTC proposes that Defendant Latsanovski be permitted to retain profits from the lawful operation of his companies to pay for his living expenses or, in the event that his companies are not profitable, be allowed to retain income from other lawful sources or jobs.

---

[8] *See id.* at 3-4 ¶ 9.

[9] *See* Doc. No. 124-2, at 4-5.

[10] *See* Att. B, at 29.

**POSITION OF IGOR LATSANOVSKI AND CALENERGY, INC.**

Defendants' position regarding the relief sought by the FTC in its pending Application for Preliminary Injunction is set forth at length in their opposition brief filed on July 24, 2015 (Dkt # 106) ("Defendants' Opposition"). Two central arguments of Defendants' Opposition are: (1) no asset freeze is appropriate because the FTC has failed to establish that Defendants have sought to dissipate assets, or are likely to do so; and (2) there is no legitimate basis to seize and freeze the assets of third party businesses that neither participated in the alleged improper conduct nor derived assets from such conduct. The Court has not yet addressed the first issue, but did voice concerns regarding the latter at the August 6 hearing. (See Ex. C (8/6/2015 Transcript)[11] at 16:24-17:10 ("the real question is the extent of any asset freeze and things of that sort… "if Calenergy has lawful or at least … sources of income and revenue that is being generated that is outside of the alleged improper conduct, I don't see why I'd be freezing those – those asset-type things") and 25:22-26:20 (requesting that parties agree or provide evidence regarding which third-party entities are "so divorced from the improper conduct that is the source of this case that I would say Hey, sorry, FTC, on that company at least up to this portion; I'm just giving it back to Mr. Latsanovski").)

In an effort to address the Court's concerns, and in the spirit of compromise, Defendants proposed a stipulated resolution whereby:[12]

(a) all currently frozen assets of Mr. Latsanovski (including his bank accounts and personal residence and the bank accounts for Rilend, Inc.) would remain frozen during the pendency of the case (subject to the release of a modest amount for

---

[11] Attached hereto as Exhibit C are true and correct copies of pages from the August 6, 2015 hearing

[12] The August 10, 2015 proposal that Defendants submitted to the FTC ("Defendants' Proposal") is attached hereto as Exhibit D.

1  monthly living expenses);

2      (b) the bank accounts of Calenergy would remain frozen; and

3      (c) any third-party business that was not involved in the alleged unlawful

4  conduct, and did not derive income from the alleged improper conduct, would not

5  be subject to the asset freeze or the control of the Temporary Receiver.

6      Defendants further proposed that these third-party businesses would be

7  permitted to resume all legitimate business activities, but that any distributions to

8  Mr. Latsanovski from these businesses would be deposited into frozen bank

9  accounts and subject to the asset freeze, to be used only for Court-authorized living

10  expenses and the payment of Mr. Latsanovski's mortgage.  (Ex. D, Sections II B and

11  III.)

12      While the FTC is apparently willing to accept the significant concessions that

13  Defendants have offered, it refuses to compromise.  It persists in its claims that the

14  assets of the innocent third-party businesses should remain subject to the control of

15  the FTC, the Temporary Receiver and this Court, that the third-party businesses

16  cannot repay its lenders with any revenue generated from these assets, and that Mr.

17  Latsanovski must rely entirely on "after acquired assets" to feed his family and pay

18  his bills.  For the reasons outlined briefly below, and more fully set forth in

19  Defendants' Opposition, the Court should reject the FTC's position.

20      **1. The Third-Party Entities**

21      The FTC does not appear to dispute Defendants' contention that the subject

22  third-party businesses (Sunset Holdings Partners LLC, ComicsFix LLC and Vastpay

23  LLC (the "Third-Party Entities")) are legitimate businesses that should be allowed

24  to continue their business operations without supervision.  Nor does the FTC assert

25  that any of the assets of these entities were derived from the subject skincare

26

27

28

businesses.[13]   Instead, the FTC contends that any assets acquired by these entities before the issuance of the TRO should be subject to the freeze or an asset lien by the FTC regardless of the source of the funds or lack of involvement in the alleged improper conduct.  The argument appears to be that these innocent Third-Party Entities should be subject to the asset freeze solely based on Mr. Latsanovski's affiliation with the companies and that the Third-Party Entities should not be allowed to pay back their investors, who had no involvement in the alleged improper conduct.

But, as set forth in Defendants' Opposition and Proposal, Mr. Latsanovski's affiliation with the Third-Party Entities and his potential liability in this action are insufficient to freeze these assets for at least three reasons.  First, an asset freeze over the Third-Party Entities is inequitable because their business operations are completely divorced from the alleged improper conduct in this case.  The Third-Party Entities are not defendants in this action and have no relationship to the improper conduct alleged in the complaint – they did not receive any proceeds from the skincare business and did not participate in any of the alleged improper conduct. Sunset Holdings is a real estate investment company that owns properties that were purchased with third party investor funds; ComicsFix is an online comics content provider with no connection to the skincare business; and Vastpay is a merchant account service provider which was financed by foreign investors and did not process any skincare product transactions.  (See Defendants' Opposition at 13-15; Suppl. Latsanovski Decl. (Dkt #106-4), ¶¶ 10, 11, 14-17; Ex. D, Section I.) Accordingly, these businesses (and their assets) should not be subject to the freeze.

Second, it is inequitable to impose an asset freeze or the lien proposed by the

_____

[13] The factual basis for these assertions is set forth in Defendants' Opposition and the declarations submitted in support of the Opposition.  The key facts are also summarized in Defendants' Proposal.

1  FTC.  Under the FTC's 8/14 Proposal, the FTC would either sell Sunset Holdings
2  Properties and keep the proceeds pending the resolution of the case or be granted a
3  lien in an amount equal to the current loans on the properties, but superior to the
4  interests of existing lenders.  (Ex. E (8/14/15 Proposal).)[14]   Under either scenario,
5  Sunset Holdings' assets would in effect be frozen, which would seriously interfere
6  with the company's ability to meet its financial obligations.  Moreover, the
7  legitimate interests of innocent third parties would be wiped out by the FTC's
8  unwarranted and illegal money grab.
9       The asset freeze imposes an unwarranted hardship on the Third-Party Entities
10 because it prevents them from operating their businesses, which puts them at risk
11 because they cannot pay their expenses such as employee salaries, rent, vendor
12 invoices, or interest on outstanding loans.  (See Defendants' Opposition at 13-15;
13 Suppl. Latsanovski Decl. (Dkt #106-4), ¶¶ 12-18.)
14      Further, there is no justification for denying innocent investors and lenders,
15 who are even further removed from the alleged improper conduct than the Third-
16 Party Entities, their respective interests in the assets of the Third-Party Entities.
17 These investors and lenders provided funds to legitimate companies to engage in
18 lawful business activities.  The FTC suggests that these innocent third parties should
19 forfeit their interests even though it can point to no wrongdoing by these third
20 parties and no involvement in the defunct skincare business that forms the basis for
21 all of the FTC's hegemonic conduct.
22      Third, there is no evidence that Mr. Latsanovski or the Third-Party Entities
23 will dissipate their assets.  See Johnson v. Couturier, 572 F. 2d 1067, 1085 (9th Cir.
24 2009) (asset freeze inappropriate without evidence of likely dissipation of assets).
25 
26 
27 [14] The FTC's August 10, 2015 Response to the Defendants' Proposal and the FTC's August 14, 2014 Supplemental Proposal are attached hereto as Exhibit E.
28

1  In fact, in 2015, after the skincare business ceased, Sunset Holdings borrowed more

2  than $4.6 million and poured it into real estate projects in Southern California.

3  Because the FTC cannot show the likelihood of the dissipation of funds, an asset

4  freeze is not appropriate.  (See Defendants' Opposition at 16-18.)

5       Because Mr. Latsanovski has demonstrated that the Third-Party Entities are

6  legitimate businesses, there is no evidence that the Third-Party Entities are engaging

7  in the improper conduct alleged in the complaint, and there is no evidence that Mr.

8  Latsanovski will dissipate funds from these business, the risk of putting the Third-

9  Party Entities out of business is unwarranted and their assets should not be frozen.

10  See FTC v. Merch. Servs. Direct., LLC, No. 13-CV-0279-TOR, 2013 WL 4094394,

11  at *4 (E.D. Wash. Aug. 13, 2013) (denying FTC motion for asset freeze where there

12  was no evidence of future violations, there was no evidence of dissipation, and

13  freeze would put businesses at risk).

14       Further, in an effort to address concerns regarding the dissipation of funds

15  available to pay any potential judgment against Mr. Latsanovski, Defendants'

16  Proposal expressly includes safeguards to prevent such dissipation by severely

17  limiting Mr. Latsanovski's access to his share of the profits from the Third Party

18  Entities.  (See Ex. D, Sections II B and III.)

19       Accordingly, subject to the limitations proposed by Defendants, the assets and

20  the bank accounts of Sunset Holdings, ComicsFix and Vastpay should be released

21  from the asset freeze and the control of the Temporary Receiver, and the businesses

22  should be permitted to resume their legitimate operations, which would include

23  renovating and selling property, paying employees and vendors, and satisfying their

24  financial obligations to third party lenders, shareholders and investors.  These

25  obligations have been documented to this Court in various filings.  (See, e.g.,

26  Latsanovski Decl., Ex. B (Dkt # 90-3); Suppl. Latsanovski Decl., (Dkt # 106-4) ¶¶

27  12-18 and Ex. O (Dkt # 106-8); and Receiver's Appendix to Report, Ex. 59 (Dkt #

28  124-2) at 357-359.)

### 2. Living Expenses

The other primary area of dispute relates to Mr. Latsanovski's access to frozen funds to pay his necessary living expenses.  Over the FTC's objections, this Court has already authorized the disbursement of $8,800 from Mr. Latsanovski's Wells Fargo account to cover his family's living expenses for the three-week period between July 15 and the hearing on August 6.  (See Dkt # 103.)  This modest amount does not come close to covering Mr. Latsanovski's actual living expenses – it does not include his monthly mortgage payment, his car payments, his attorney's fees or any discretionary spending.  Yet, Mr. Latsanovski has offered to limit his monthly allowance to this amount from this Wells Fargo Account.  This proposal is more than reasonable.

The FTC continues to assert that Mr. Latsanovski should not be permitted to use any frozen funds for his living expenses.  They propose that he rely exclusively on funds earned after the date of the TRO (even though his businesses have been locked down by the TRO), or that he borrow money to live on.  (Ex. E (8/10/15 FTC Proposal.)  But if Mr. Latsanovski's previously acquired assets remain frozen, how is Mr. Latsanovski to obtain a loan to pay for his family's living expenses?  And even if the Third-Party Entities were able to operate without use of their previously acquired assets, there is no guarantee that these entities will immediately generate enough profits to cover Mr. Latsanovski's living expenses.

Accordingly, the Court should allow Mr. Latsanovski to withdraw at least $8,800 per month from the frozen bank accounts for living expenses.  And, as proposed by the FTC, Mr. Latsanovski should have unfettered access to any funds legitimately acquired after the issuance of the TRO.

1 | DATED: August 14, 2015

2 |     Respectfully submitted,

3 |     SCHEPER KIM & HARRIS LLP
    MARC S. HARRIS
    ANNAH S. KIM

By:   /s/  Marc S. Harris
      Marc S Harris
      Attorneys for Defendants Igor Latsanovski
      and Calenergy, Inc.

DATED: August 14, 2015

    FEDERAL TRADE COMMISSION
    1999 Bryan Street, Suite 2150
    Dallas, Texas 75201
    (214) 979-9395 (Tepfer)
    (214) 979-9383 (Gallegos)
    (214) 953-3079 (facsimile)
    REID TEPFER
    LUIS H. GALLEGOS

By:   /s/  Reid Tepfer
      Reid Tepfer
      Attorneys for Plaintiff

      I hereby attest that all of the signatories electronically listed above concur in this filing's content and have authorized the filing in compliance with Local Rule 5-4.3.4.(a)(2)(i).

By:   /s/  Marc S. Harris

JOINT REPORT CONCERNING ASSET FREEZE

1

## CERTIFICATE OF SERVICE

2

The undersigned certifies that on August 14, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

3

4

5

6

Reid Tepfer
Luis H. Gallegos
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (facsimile)
Counsel for Plaintiff

7

8

9

10

Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd Suite 2250
Los Angeles, CA 90036
nameri@agmblaw.com
Local counsel for Receiver

11

12

13

14

15

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
Counsel for Oz Mizrahi

16

17

18

19

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
Counsel for Alon Nottea, Roi Rueveni

20

21

22

David P. Beitchman
Beitchman & Zekian
16130 Ventura Blvd., Suite 570
Encino, CA 91436
dbeitchman@bzlegal.com
Counsel for Doron Nottea and Motti Nottea

23

24

25

Charlene Cantrell Koonce
Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
charlene.koonce@solidcounsel.com
Receiver

Kelly M. Crawford
Scheef and Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
kelly.crawford@solidcounsel.com
Counsel to Receiver

26

27

28

12

1

2    DATED: August 20, 2015

3                                      By:   /s/  Marc S. Harris

4                                            Marc S. Harris
                                             Attorneys for Defendants Igor Latsanovski
5                                            and Calenergy, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28