Exhibit D

Reid,

  In anticipation of our court-ordered meet and confer, we thought it would be helpful to share our thoughts as to a possible compromise regarding the pending asset freeze. We have taken to heart the Court's comments that we should work to identify assets or businesses that are unrelated to the skincare business, while allowing for certain assets to remain subject to an asset freeze during the pendency of this litigation. Although the parties have diametrically opposed views regarding the propriety of an asset freeze under the circumstances of this case, we are willing to compromise to avoid further litigation on this issue.

I. **Assets Subject to Freeze**

  Using the Court's comments from the August 6th hearing as a guide, we propose a resolution whereby the following assets of Mr. Latsanovski would remain subject to the freeze during the pendency of the case (or until otherwise unfrozen by the Court):

  A. All funds within the following bank accounts (the "Frozen Bank Accounts") would remain frozen:

   1. Bank of America account ending in 7132, in the name of Igor Latsanovski

   2. Wells Fargo account ending in 3540, in the name of Igor Latsanovski and Tatiana Stamburg (the "Latsanovski Wells Fargo Account")

   3. Wells Fargo account ending in 2188 in the name of Anna and Igor Latsanovski

   4. Wells Fargo account ending in 2782 in the name of Mihail and Igor Latsanovski

   5. Wells Fargo money market savings account ending in 9287 in the name of Igor Latsanovski and Tatiana Stamburg

   6. Wells Fargo account ending in 1452, in the name of Rilend, Inc.

   7. Wells Fargo account ending in 8997, in the name of Calenergy, Inc.

   8. Bank of America account ending in 4908, in the name of Calenergy, Inc.

  B. Mr. Latsanovski may not sell, transfer or otherwise encumber his personal residence without Court approval.

  C. Mr. Latsanovski may not sell or transfer any personal property valued at more than $500 without Court approval.

  D. Except as noted below, the asset freeze would <u>not</u> apply to assets acquired by Mr. Latsanovski after the date of the Temporary Restraining Order.

In addition, Mr. Latsanovski will agree to the dissolution of Calenergy, Inc. pursuant to the Receiver's recommendation. *See* Receiver Report (Doc. No. 120) at 79. Mr. Latsanovski will also agree to pay Calenergy's income taxes for 2014 out of his personal accounts. *See id.* at 80.

II.  **Third-Party Entities**

There are three third-party business entities, partially owned by Mr. Latsanovski, that have been directly impacted by the TRO: Sunset Holdings Partners LLC, Vastpay LLC and ComicsFix LLC (collectively, the "Third-Party Entities"). None of the Third-Party Entities are associated with the skincare businesses that are the subject of your lawsuit, and none of the assets of the Third-Party Entities were derived from the skincare businesses. Consistent with the Court's comments at Thursday's hearing, we have attempted to fashion a proposal that will allow the Third-Party Entities to continue to operate, but limit Mr. Latsanovski's ability to access his share of the profits of those companies.

A.  Financial background

Before setting forth the proposal, we thought it would be helpful to recap the financial history of these legitimate companies to demonstrate that the assets of the companies were not derived in any way from the skincare businesses that are the subject of your lawsuit.

1.  Sunset Holdings

Sunset Holdings Partners LLC was initially formed in January 2015 to invest in real estate, primarily properties that can be purchased, renovated and re-sold at a profit.

Sunset Holdings currently owns the following 10 properties:

|    |                    | Loan Amount   | Purchase Price |
|----|--------------------|---------------|----------------|
| 1  | Stratford          | $ 600,000     | $ 470,000      |
| 2  | 35th St            | $ 300,000     | $ 265,000      |
| 3  | 22nd St            | $ 450,000     | $ 386,000      |
| 4  | Carson             | $ 1,100,000   | $ 900,000      |
| 5  | 113th St (Twnhms)  | $ 300,000     | $ 220,000      |
| 6  | 657 W Acacia       | $ 800,000     | $ 719,000      |
| 7  | 2445 Louella       | $ 1,218,000   | $ 1,225,000    |
| 8  | 3777 Rosewood      | $ 1,100,000   | $ 1,100,000    |
| 9  | 3783 Redwood       | $ 1,100,000   | $ 1,100,000    |
| 10 | Long Beach         | $ 1,000,000   | $ 675,000      |
|    |                    |               |                |

| | TOTAL | $ 7,968,000 | $ 7,060,000[1] |
|---|---|---|---|

None of the funds to purchase these properties or operate the Sunset Holdings real estate business came from the skincare businesses. In total, Sunset Holdings has received approximately $8 million since its inception. Receiver Decl. (Doc. No. 92), ¶ 33. Ninety-five percent of these funds came from the following three sources: (1) loans from Guayas through Calenergy ($4.601 million); (2) investments and loans received from outside investors in June 2015 ($2.085 million); and (3) a Wells Fargo line of credit ($1 million). None of these sources of funding are traceable to the skincare business.

Of the approximately $8 million received by Sunset Holdings, approximately $7.753 million has been spent on purchasing real estate properties and paying operating costs. The remaining funds (approximately $212,541) remain in the Sunset Holdings bank account at Wells Fargo, and have been frozen pursuant to the TRO.

2. ComicsFix

ComicsFix LLC is an online comics content provider, which was founded in September 2013 and began providing services in 2014. *See http://fanboycomics.net/index.php/interviews/comics/item/3090-fanboy-comics-interviews-felix-kiner-ceo-of-comicsfix* (11/18/13 interview of ComicsFix CEO discussing business plan) and *http://the-digital-reader.com/2014/09/07/anyone-tried-comicsfixs-digital-comics-subscription-service/* (noting that ComicsFix is in pre-launch phase and comments reflecting use). Like the other businesses, it is run by an independent CEO and has never directly received any funds from the Bunzai Group business, and has no connection to the internet skincare business.

ComicsFix's current assets are limited to the funds in its Bank of America Account and its intellectual property. ComicsFix has relationships with content providers, which in turn can generate income through monthly subscriptions. *See http://valiantuniverse.com/2015/01/07/valiant-brings-x-o-manowar-archer-armstrong-bloodshot-harbinger-and-more-to-the-comicsfix-digital-comics-platform/* and *http://majorspoilers.com/2014/11/12/dynamite-entertainment-signs-comicsfix/* and https://www.youtube.com/watch?v=GLC0KDKGNBk (3/8/2015 youtube review of ComicsFix).

3. Vastpay

Vastpay is a merchant service provider, operated by an independent CEO, and formed in 2013, but did not begin operations until 2014. The company is independent of the Bunzai Group and has not received any income from any defendants in this action. Vastpay received approximately $620,000 from foreign lenders (Guayas) and has not received any funds from the Bunzai Group of companies.

---

[1] The total loan amount exceeds the total purchase price because the loans were used both to purchase the real estate and to fund the costs of renovating the properties.

Vastpay's current assets consist of the funds in the Bank of America accounts (approximately $42,000) and Vastpay may generate income if it is able to pay its outstanding bills. To date, Vastpay has generated approximately $50,000 in profits – none of which are attributable to the processing of skincare product transactions.

    B.    <u>Proposal Regarding Third-Party Entities</u>

        1.    The Third-Party Entities shall be permitted to continue legitimate operations, and shall not be under the control or supervision of the Temporary Receiver.

        2.    The bank accounts of the Third-Party Entities shall be released from the asset freeze.

        3.    Each of the Third-Party Entities would be allowed to conduct its ordinary business activities, including using existing funds or revenues generated by the respective businesses to pay expenses of the businesses.

        4.    Each business will submit monthly financial reports to the FTC and the Court setting forth the income and expenditures for each of these entities.

        5.    Any profit distribution to Mr. Latsanovski would be wired directly to the Latsanovski Wells Fargo Account that is subject to the asset freeze. Those funds would be subject to the existing asset freeze (notwithstanding the "after acquired assets" limitation in Paragraph I (D), above), and could only be withdrawn from the Latsanovski Wells Fargo Account under the circumstances set forth in Paragraph III, below.

III.    **<u>Authorized Withdrawals from the Frozen Bank Accounts for Living Expenses and Calenergy's Income Taxes</u>**

    A.    Mr. Latsanovski will be permitted to withdraw up to $8,800 per month from the Frozen Bank Accounts for ordinary and necessary living expenses, including food, insurance, utilities and property taxes.

    B.    Any funds deposited into the Latsanovski Wells Fargo Account from accounts of the Third Party Entities after the date of this Order shall be considered "Additional Funds." Mr. Latasanovski will be permitted to draw from the Additional Funds monies to pay the mortgage on his personal residence and Calenergy's 2014 income taxes. These withdrawals will not count against Latsanovski's monthly allowance of $8,800, provided that the withdrawals do not exceed the amount of the Additional Funds.[2]

---

[2] For example, if Latsanovksi deposits $50,000 in Additional Funds to the Latsanovski Wells Fargo Account after the date of this Order, he may use that $50,000 to pay his mortgage and Calenergy's 2014 income taxes. Once the Additional Funds are exhausted, Latasnovski's

      C.      Mr. Latsanovski anticipates that he may seek additional disbursements to cover the cost of his legal defense or additional living expenses from the Frozen Bank Accounts.  Mr. Latsanovski agrees to meet and confer with the FTC regarding any additional disbursements and the parties would file a Joint Status Report if they are unable to agree to the terms and conditions for additional disbursements from the Frozen Bank Accounts.

---

withdrawals from the Latasnovski Wells Fargo Account will be limited to the $8,800 monthly allowance set forth above, unless and until he deposits additional funds into that account.