Michael J. Weiss (SBN 206473)
**ABRAMS GARFINKEL MARGOLIS BERGSON, LLP**
5900 Wilshire Blvd. Suite 2250
Los Angeles, CA 90036
310-300-2900
310-300-2901- Fax
Mweiss@agmblaw.com

Kelly M. Crawford (TX SBN 05030700)
*Admitted Pro Hac Vice*
**SCHEEF & STONE, L.L.P.**
500 N. Akard, Suite 2700
Dallas, Texas  75201
214-706-4200
214-706-4242 - Fax
Kelly.crawford@solidcounsel.com
Attorneys for Receiver

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>             Plaintiff,<br><br>      v.<br><br>BUNZAI MEDIA GROUP, INC., a California corporation, also doing business as AuraVie and Miracle Face Kit, et al.<br><br>             Defendants. | Case No. 2:15-CV-4527-GW(PLAx)<br><br>**RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS** |

I, Charlene Koonce, declare under penalty of perjury under the laws of the United States of America, that the following statements are true and correct:

1.     I am over the age of 18 years, have never been convicted of a crime involving moral turpitude, and am otherwise competent to make this Declaration.  I have personal knowledge of the facts stated herein.

2.     I am an attorney licensed to practice law in the state of Texas and am a partner with the law firm of Scheef & Stone, LLP.  I am the court-appointed Receiver in the lawsuit referenced above. I have been licensed to practice law in Texas since 1991.  I am admitted to practice before all state and federal courts in Texas, and am admitted to practice before the Fifth and Eleventh Circuit Courts of Appeal. My practice focuses on complex business litigation, and I have extensive experience in serving as or representing equity receivers in government enforcement cases.

3.     I have been appointed as a receiver or special master in government enforcement cases filed by the FTC and the SEC in seven cases, and served as a receiver in a state case involving allegations of fraud between and among the owners and operators of a strip mall.  I have served as lead counsel to other receivers in more than a dozen similar government enforcement cases.  My experience with receivership cases began in 1999 when I served as associate counsel for another receiver.  Over the course of approximately 15 years, I have acquired the requisite skill, expertise, experience and training to investigate and formulate opinions about the operations of receivership entities and the nature of the businesses in which those entities engage.

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

4.       I was appointed as Receiver in the case styled above on June 17, 2015, and was ordered to investigate various aspects of the entities named as Receivership Defendants and report to the Court regarding my investigation.  The activities of my appointment are detailed in my Initial Report, filed on August 3, 2015. To assist me in the investigation, I retained counsel and certified forensic accountants.  My accountant is Jeff Brandlin, and is a certified forensic accountant who qualifies as an expert in his field. The information provided below was obtained pursuant to my appointment, which is a public office, and includes my factual findings based on my legally authorized investigation.

5.       As the Receiver for numerous Receivership Defendants, I am also the custodian of records for those Receivership Defendants, and also qualify as the custodian of records for the business records and investigative summaries created for receivership estate.

6.       Beginning on June 18, 2015, together with a team of attorneys, forensic accountants and IT specialists, I began investigating the operations of certain defendant entities and their affiliates as mandated by the TRO.  During the course of my investigation I discovered numerous additional entities that were operated and controlled from 6925 Canby, Suite 105, Reseda, CA (the "Office"); the same location from which the named Receivership Defendants operated. These additional entities are All Star Beauty Products, Inc., DMA Media Holdings, Inc., Shalita Holdings, Inc.,

Focus Media Solutions, Inc.,[1] Merchant Leverage Group, Inc., USM Products, Inc., Secured Commerce, LLC, Secured Merchants, LLC, Trigen, LLC, and Forward Momentum, LLC (the "Entities") or other involvement in the Enjoined Conduct. These entities were reflected in the Defendants' business records, including the banking records. The business records demonstrated the Entities' income from the sale of AuraVie, LeOr, and Dellure, and the affiliate marketing of these or other skin care products pursuant to the negative enrollment option described in the FTC's Complaint ("Enjoined Conduct"). Defendants later provided passwords or credentials for most of the Entities' Quickbook or bank accounts, all of which were monitored from the Office, although many of the passwords were either later changed or incorrect when provided. Each of the Entities operated to the extent they had any function other than owning a bank or merchant account, from the Office.

7.     In the course of my investigation, I or my counsel also interviewed Stephan Bauer, Nancy Yalley, Paul Medina and Kristopher Bond. Each of these individuals reported that except for CalEnergy, Alon Nottea was in control of all entities used to operate, fund, or manage the operations of the skin care sales. Moreover, the diverse ownership of many of these Entities, generally by individuals who had no knowledge or involvement of their operations, is consistent with the same

---

[1] Focus Media Solutions also operates from 6850 Canby, Suite 103, Reseda, CA.

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

pattern evidenced by Defendants' control but lack of ownership over the Receivership Defendants named in the Complaint.

**A.   The Retail Merchant Entities: All Star Beauty Products, Inc., DMA Media Holdings, Inc. and Shalita Holdings, Inc.**

8.    More specifically, I discovered that All Star Beauty Products, Inc.,[2] DMA Media Holdings, Inc.[3] and Shalita Holdings, Inc.[4] were entities utilized by Defendants to own merchant accounts in which consumer funds were received for the sale of the skin cream products at issue. Alon Nottea admitted his control over all "retail merchant entities."[5]

9.    Defendants described these Entities as "retail merchant corporations for skin care products."[6] I have discovered no other function or operation for any of these entities other than in connection with the sale of the skin care products at issue, and thus conclude that all assets each received were proceeds of the skin care product sales. The merchant processor information for each also reflects use of descriptors for the skin care products sold by Defendants, and Defendants maintained the QuickBooks

---

[2] Defendants identified Sean Brennecke as the officer for All Star Beauty Products, Inc. All Star was dissolved in December 2014. A true and correct copy of information provided to me by the Defendants is attached as **Exhibit A**. During the course of my investigation, my counsel wrote to Mr. Brennecke requesting information about All Star Beauty Products, Inc. Although Mr. Brennecke promised to provide responsive documents, he did not provide any information, and neither he nor any attorney on his behalf has contacted me.

[3] Defendants identified Roi Reuveni as the only officer for DMA Media Holdings, Inc. Reuveni and Stephan Bauer were identified as the signatories on DMA's bank accounts. *See* **Exhibit A**. DMA Media Holdings was dissolved in December 2014.

[4] Defendants identified Eran Link as the CEO of Shalita Holdings, Inc. **Exhibit A**. Mr. Link denies serving in any capacity of Shalita, and although he admits signing one merchant application for Shalita Holdings, his forged signature is on many such applications. *See* true and correct copies of Declarations received from Mr. Link attached as **Exhibit C**.

[5] A true and correct copy of an email sent to me by Alon Nottea's counsel is attached as **Exhibit B**.

[6] *See*, **Exhibit A**.

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

records for All Star Beauty, DMA Media Holdings and Shalita Holdings from the Office, and had on-line access and control over their respective bank accounts and merchant.

10.    The income from each of these "retail merchant entities" was transferred to SBM Management, Inc., a Receivership Defendant, with those funds then transferred to other entities owned or controlled by Defendants, such as Media Urge, Inc. and Adageo, Inc.[7] "RSA devices" (an electronic device for accessing and transferring funds from a bank account) for SBM were located in the Office.[8] With the exception of payments generally in "payroll increments," through the fall of 2014, only $23,000 out of the total $2.3 MM received by SBM Management was transferred to Bauer.    The rest of the income from the retail merchant entities was transferred, indirectly (and sometimes through the personal use of company credit cards) to the Individual Defendants.  All Star Beauty Products, Inc., DMA Media Holdings, Inc. and Shalita Holdings, Inc. are thus related to the Defendants and were used in the process of selling skincare products online.  Based on his control over these Entities, notice to Alon Nottea is notice to All Star Beauty Products, Inc., DMA Holdings, Inc., and Shalita Holdings.

---

[7] True and correct copies of flow charts created by my accountants and depicting the flow of funds to and between the Entities are attached as **Exhibit D**. *See also,* discussion regarding same in the Receiver's Initial Report, Docket No. 120, pp. 62-70. Although Stephan Bauer is identified in various corporate filings as the CEO of SBM Management, he denies any control over the company and his name was forged on various documents related to SBM's operation. Mr. Bauer was interviewed at length by my counsel. He also provided the Declarations attached as **Exhibit E**, in connection with the various forgeries.

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

11.    To date, I have discovered not less than $203,809.91 on deposit in merchant or bank accounts for All Star Beauty Products, $8,711.65 for Shalita Holdings, and $16,613.33 for DMA Media Holdings, Inc. I have taken possession of those funds, or requested that they be transferred to me.

**B.    Focus Media Solutions, Inc.**

12.    Focus Media Solutions, Inc. is an active California Corporation, and banking records identify David Yosafian as the President.[9]  When interviewed, Paul Medina, who originally held himself out as the CEO of Focus,[10] stated the Notteas called Yosafian the President "on paper only."[11] Medina, other Focus Media employees, and Igor Latsanovski[12] reported Alon Nottea was in control of Focus Media. In a telephone interview, Medina also stated that Alon asked Medina to obtain counsel for Focus Media "as a favor."

13.    Defendants admitted possession of an RSA device for Focus Media[13] and had possession of a signature stamp for David Yosafian.[14] Despite not being a

---

[8] I observed these RSA devices in the Office, and true and correct copies of photos taken by my counsel are attached as **Exhibit F**.

[9] True and correct copies of bank account applications for Focus Media reflecting Yosafian as President, which I obtained from Defendants' files at the Office, are attached as **Exhibit G**.

[10] Mr. Media made these representations to me while I was interviewing him, and made them again through counsel when he demanded the return of Focus Media's office space, documents and computers.  Medina now claims he was an officer in name only and had no authority over Focus Media Solutions. Nonetheless, Mr. Medina as an officer of Focus Media Solutions was also provided with a copy of the Motion and this Declaration.

[11] Yosafian is also the only officer identified by Defendants for Defendant Kai Media, Inc., a retail merchant entity over which Alon admitted his control. *See,* **Exhibit B**. I called, emailed, and wrote to David Yosafian, and my counsel attempted, unsuccessfully, to serve a deposition notice on him.  Defendants subsequently reported that Yosafian lives in Israel, and has no day-to-day involvement in or knowledge of the skin care sales or operations. *See,* a true and correct copy of an email I received from Doron Nottea's counsel, attached as **Exhibit H**.

[12] True and Correct excerpts from Latsanovski's deposition are attached as **Exhibit I**.

[13] *See,* **Exhibit B**.

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

signatory on Focus Media Solutions' bank account,[15] Alon Nottea was able to transfer funds out of Focus Media Solutions' WF account to an account at USM Products, and then back again.[16] Defendants also provided the credentials for on-line access to Focus Media's accounts and QuickBooks accounts.[17] Stephan Bauer is listed as one of the signatories on Focus Media Solutions' WF bank accounts, but stated he had never heard of Focus Media and had no involvement whatsoever with the entity.[18]

14.     When interviewed, Medina also confirmed that Focus Media is the successor in interest to Media Urge, Inc., one of the named Defendants. Media Urge, Inc. is a dissolved California company which was actively engaged in marketing AuraVie, LeOr and Dellure.  Individuals who said they were employed by Focus Media used Media Urge emails.[19] The computers used by the Focus Media employee's, yielded considerable emails and graphic designs regarding Auravie, LeOr and Dellure webpages,[20] and Focus Media employees, including Medina reported the computers used by Focus Media were inherited from Media Urge.[21]

---

[14] I observed the signature stamp in Defendants' Office, and a true and correct copy of a photo of the stamp is attached as **Exhibit J**.

[15] *See,* **Exhibit B**.

[16] Alon returned the funds, and admitted USM Products was not entitled to receive the funds. *See,* **Exhibit B**.

[17] *See,* **Exhibit B**.

[18] *See,* **Exhibit E**.

[19] A true and correct copy of one such email extracted from one of the computers used by Focus Media Solutions' employees is attached as **Exhibit K.**

[20] *See* a true and correct copy of one such email extracted from one of the computers used by Focus Media Solutions' employees is attached as **Exhibit L.**

[21] I thus conclude that the contents of Suite 103 where Focus Media employees worked, are owned by Media Urge, Inc. or Focus Media

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

15.     Focus Media was also an affiliate marketer for other skin care products, sold by negative option enrollment programs.[22]  During the course of my investigation, I tasked an associate with purchasing one product, Stemlogica, marketed by Focus Media.  Although the webpage for the product offered a "risk free" "free trial", on the same day the product was received, the associate called and cancelled the enrollment, but nonetheless a $149.00 "enrollment" charge was made on my firm's credit card for another skin care product.  Focus Media, particularly as Media Urge's successor, is thus related to the Defendants and was used in the process of selling skincare products online.

16.     The flow of money from Focus Media's accounts, as well as all other facts described above demonstrate Alon Nottea was in control of Focus Media, and thus notice to Alon Nottea is notice to Focus Media Solutions, Inc.

17.     I do not have access to all bank records for Media Urge, Focus Media's predecessor in interest. Tax returns for Media Urge, however, demonstrate not less than $450,521 in gross income between January 1, 2012 and December 31, 2014.[23] To date, I have discovered not less than $390,000[24] on deposit in bank accounts for Focus

---

[22] *See*, true and correct copies of screen shots from "Mobooka.com" an affiliate marketer for whom Focus Media marketed skin care products pursuant to the negative option enrollments alleged in the Complaint, attached as **Exhibit M**. I observed this screen on one of the office computers in Suite 105, and it reflects "free trial" campaigns marketed by Focus Media..

[23] *See*, **Exhibit D** and Initial Report Exhibit 67 (Docket No. 124-8).

[24] At least $325,000 of those funds was transferred to Focus Media on June 18, 2015 by CalEnergy, Inc., a Receivership Defendant. *See,* Initial Report, Docket No. 122-8.

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

1 Media Holdings, and have taken possession of those funds, or requested that they be

2 transferred to me.

3 **C.     Merchant Leverage Group, Inc.**

4

5     18.    Merchant Leverage Group, Inc. is an active California Corporation.

6 Defendants did not identify its officers, but corporate records reflect Stephan Bauer as

7 the only officer.[25]  Defendants describe Merchant Leverage Group, Inc. as

8

9     "a merchant processor or payment service provider has a direct relationship
      with a sponsoring bank whereby that company can provide merchant processing
10     accounts for their customers.   Merchant Leverage Group is a sub-
      agent, independent   sales   organization   that   may   refer customers   to
11     different merchant processors for the purpose of getting a commission on the
12     referral."[26]

13     19.    Alon Nottea admitted his control over Merchant Leverage Group, Inc.[27]

14 and Defendants have not denied Merchant Leverage Group was used in the skin care

15 sales process enjoined by the Preliminary Injunctions (it was used at times to pay

16

17 Secured Merchants for services connected to the chargeback dispute). Merchant

18 Leverage Group is thus related to the Defendants and was used in the process of selling

19

20 skincare products online.  Based on his control over Merchant Leverage Group, notice

21 to Alon Nottea is notice to Merchant Leverage Group, Inc. To date, I have discovered

22

23

24

25     [25] True and correct copies of public records I obtained for Merchant Leverage Group are attached as **Exhibit N**.
Bauer denies involvement with Merchant Leverage Group.  A true and correct copy of an email I received from Mr.
26 Bauer regarding Merchant Leverage Group is attached as **Exhibit O**.
     [26] *See,* **Exhibit H**.
27     [27] A true and correct copy of an email I received from Alon's counsel is attached as **Exhibit P**.

not less than $7,844 on deposit in bank accounts for Merchant Leverage Group, and have taken possession of those funds, or requested that they be transferred to me.

**D.      USM Products, Inc.**

USM Products, Inc. is an active California entity.  Defendants identified David Yosafian as the officer for that entity,[28] but corporate records also show "Jay Michaels" as an officer.[29]  Alon admitted Jay Michaels is an alias name he uses,[30] and is the name in which all Auravie, LeOr and Dellure webpages are registered with the host for those sites.  Defendants described USM Products' business as: "importer/export of parts, packaging and product assembly, manufacturing, etc."[31]  I obtained copies of checks from one of the suppliers Defendants used to purchase the AuraVie products, which were paid at times, from the USM Products' account.[32]  Although I do not have access to any of USM's bank accounts or its QuickBooks accounts, utilizing records from other Receivership Defendants, my accountants have traced at least $170,000 to USM from other Receivership Defendants.  USM Products, Inc. is thus related to Defendants and was used in the process of selling skin care products online. And based on his control over USM, notice to Alon Nottea provides notice to USM Products.

---

[28] *See*, **Exhibit B**.
[29] True and correct copies of public records reflecting USM's officers are attached as **Exhibit Q**.
[30] A true and correct copy of an email I received from Alon's counsel is attached as **Exhibit R**.
[31] *See*, **Exhibit B**.

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

### E.   Secured Commerce, LLC

Doron Nottea is one of the two members/officers[33] for Secured Commerce, LLC, which is the lessee entity for Focus Media Solutions and Suite 105 where all other Receivership Defendants were controlled. Secured Merchants also billed Adageo, LLC (a single-member entity owned and controlled by Alon) for creating AuraVie web and landing pages.[34] Secured Commerce is thus related to the Defendants and was used in the process of selling skincare products online. As the lessee of 6295 105, Canby, Secured Commerce, LLC is also the entity with the greatest claim to the contents of that Office, and I thus believe it is the owner of the contents. Based on his role as an owner of Secured Commerce, LLC, notice to Doron Nottea provides notice to Secured Commerce, LLC.

### F.   Secured Merchants, LLC

Secured Merchants, LLC provided chargeback and voice logix services to the Bunzai Group in furtherance of the Enjoined Conduct[35] and in exchange, received not less than $320,665.89 from SBM Management.[36] Secured Merchants also operates from Suite 105 Canby.  Based on its role in assisting with the sale of skin care products through the Enjoined Conduct, as well as its close connection to the other Entities,

---

[32] A true and correct copy of one such check is attached as **Exhibit S**.
[33] Alan Argaman is the other member. *See,* **Exhibit A**.
[34] True and correct copies of records I obtained from Defendants' computers are attached as **Exhibit T**.
[35] *See,* copies of just a few of the invoices from Secured Merchant's to SBM Management, which were located in Defendants Office or computer and which are attached as **Exhibit U**.
[36] *See,* **Exhibit D**.

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

Secured Commerce is related to the Defendants and was used in the process of selling skincare products online.  Secured Merchants' only known officer is Alan Argaman, and Mr. Argaman will be provided notice of this motion.[37]

## G.    Trigen, LLC

Defendants identified Trigen, LLC as a "Personal Consulting LLC for," Roi Reuveni, and admitted Reuveni was paid by SBM Management through Trigen, LLC.[38] SBM Management in turn, was the repository for all income from the retail merchants and the entities engaged in affiliate marketing.[39] Based on Reuveni's role in selling skin care products on-line and his use of Trigen, LLC to receive income for his role, Trigen, LLC is related to the Defendants and was used in the process of selling skin care products online. Roi Reuveni is the only member of Trigen identified in its most recent corporate filing, and thus notice to Reuveni provides notice to Trigen, LLC.  To date, only $72.00 has been identified in a Trigen, LLC bank account, although at least $17,000 was traced from SBM Management to Trigen.[40]

## H.    Forward Momentum, LLC

David Migdal is the incorporator of Forward Momentum, LLC, a single member pass-through entity, which Defendants admit was Migdal's "personal consulting"

---

[37] Secured Merchants and Argaman are represented by counsel who has agreed to accept service of the Motion to Designate.
[38] *See* **Exhibit A**, and **Exhibit H**.
[39] *See*, **Exhibit D**.
[40] *See*, **Exhibit D**.

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN
ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

entity.[41]  Defendants also admit Migdal was instrumental in the day-to-day operations of the Receivership Defendants engaged in the Enjoined Conduct, and Migdal was paid for his services through Forward Momentum.[42]   Forward Momentum received indirect income from the proceeds of the Enjoined Conduct from SBM Management, of at least $73,830. Based on Migdal's admitted role in the Enjoined Conduct and Forward Momentum's receipt of funds from the sale of skin care products, Forward Momentum is related to the Defendants and was used in the process of selling skincare products online. Migdal is not a defendant, and I will have Migdal personally served with a copy of the Motion, Notice of Motion, Notice of Hearing, and the supporting Declaration.

Executed this 14th day of August, 2015

/s/Charlene Koonce
Charlene Koonce
**Receiver**

---

[41] *See*, **Exhibit A**.

[42] A true and correct copy of the email I received from Alon Nottea's counsel is attached as **Exhibit V**; *see also*, **Exhibit H**.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 14, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court.  The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkel Margolis Bergson
5900 Wilshire Blvd Suite 2250
Los Angeles, CA 90036

*Local counsel for Receiver*

David P. Beitchman
Andre Boniadi
Beitchman|Zekian, PC
16130 Ventura Boulevard, Suite 570
Encino, CA 91436

*Counsel for Doron Nottea and Motti Nottea*

Erik S Syverson
Scott M. Lesowitz
Steven T. Gebelin
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212

*Counsel for Oz Mizrahi, as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.*

Marc S. Harris
Annah S Kim
Scheper Kim & Harris, LLP
601 W. Fifth Street, 12th Floor
Los Angeles, CA 90071

*Counsel for Igor Latsanovski and Calenergy, Inc.*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403

*Counsel for Alon Nottea, Roi Rueveni and Adageo, LLC*

Reid Tepfer
Luis Gallegos
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, TX  75201

*Counsel for the FTC*

Raymond E McKown

Benjamin A Pettit

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS

1  Federal Trade Commission                    20 East Pueblo Street
2  10877 Wilshire Boulevard, Suite 700         Santa Barbara, CA 93105
   Los Angeles, CA 90024                        Counsel for Alon Nottea
3  Counsel for the FTC

4

5                                              /s/  Charlene C. Koonce
                                               CHARLENE C. KOONCE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

RECEIVER'S DECLARATION IN SUPPORT OF MOTION AND MOTION FOR ORDER FINDING CERTAIN
ASSETS SUBJECT TO THE TEMPORARY RESTRAINING ORDER, ETC., AND PRELIMINARY INJUNCTIONS