Case 2:15-cv-04527-GW-PLA   Document 165-3   Filed 08/14/15   Page 1 of 37   Page ID
#:3828
Case 2:15-cv-04527-GW-PLA   Document 121-7   Filed 08/03/15   Page 4 of 21   Page ID
#:2775

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br>Plaintiff,<br><br>v.<br><br>**BUNZAI MEDIA GROUP, INC.,**<br>et. al.,<br><br>Defendants. | **Case No. CV 15-4527-GW(PLAx)**<br><br>**DECLARATION OF STEPHAN L. BAUER PURSUANT TO 28 U.S.C. § 1746** |

1.     My name is Stephan L. Bauer.  I am over the age of 21 and competent to give this declaration.   I am the sole director and shareholder of SBM Management, Inc. ("SBM").

2.     Attached hereto as Exhibit "1" is a five page document titled "Authorization For Information" and appears to be a form from Wells Fargo Bank regarding a business account application by Focus Media Solutions, Inc.  The first time I ever learned of or saw Exhibit "1" was on or about June 23, 2015 when it was sent by email to me by counsel for the Temporary Receiver Charlene C. Koonce.  On page 5 of Exhibit "1" there appears to be a signature of "S Bauer." This signature is not my writing and is not my signature.  Moreover, I never authorized anyone to sign my name on Exhibit "1", and I never authorized anyone to use my name to open any accounts for Focus Media Solutions, Inc. at Wells Fargo Bank or anywhere else.  In fact, until on or about June 23, 2015, I had never heard of the name Focus Media Solutions, Inc.

1

DECLARATION OF STEPHAN L. BAUER PURSUANT TO 28 U.S.C. § 1746



**EXHIBIT**
**E**

Case 2:15-cv-04527-GW-PLA   Document 121-7   Filed 08/03/15   Page 5 of 21   Page ID #:2776

3.     Attached hereto as <u>Exhibit "2"</u> is a five page document titled "Authorization For Information" and appears to be a form from Wells Fargo Bank regarding a business account application by Dynamic Media, Inc.  The first time I ever learned of or saw <u>Exhibit "2"</u> was on or about June 23, 2015 when it was sent by email to me by counsel for the Temporary Receiver Charlene C. Koonce.  On page 5 of <u>Exhibit "2"</u> there appears to be a signature of "S Bauer." This signature is not my writing and is not my signature.  Moreover, I never authorized anyone to sign my name on <u>Exhibit "2"</u>, and I  never authorized anyone to use my name to open any accounts for Dynamic Media, Inc. at Wells Fargo Bank or anywhere else. In fact, until on or about June 23, 2015, I had never heard of the name Dynamic Media, Inc.

4.     Attached hereto as <u>Exhibit "3"</u> is a five page document titled "Authorization For Information" and appears to be a form from Wells Fargo Bank regarding a business account application by Intensive Media, Inc.  The first time I ever learned of or saw <u>Exhibit "3"</u> was on or about June 23, 2015 when it was sent by email to me by counsel for the Temporary Receiver Charlene C. Koonce.  On page 5 of <u>Exhibit "3"</u> there appears to be a signature of "S Bauer." This signature is not my writing and is not my signature.  Moreover, I never authorized anyone to sign my name on <u>Exhibit "3"</u>, and I  never authorized anyone to use my name to open any accounts for Intensive Media, Inc. at Wells Fargo Bank or anywhere else. In fact, until on or about June 23, 2015, I had never heard of the name Intensive Media, Inc.

5.     Attached hereto as <u>Exhibit "4"</u> is a five page document titled "Authorization For Information" and appears to be a form from Wells Fargo Bank regarding a business account application by Eccentric Innovations, Inc.  The first

2

DECLARATION OF STEPHAN L. BAUER PURSUANT TO 28 U.S.C. § 1746

06/25/2015  13:15    3102895953                                          PAGE  01/01

1   time I ever learned of or saw Exhibit "4" was on or about June 23, 2015 when it

2   was sent by email to me by counsel for the Temporary Receiver Charlene C.

3   Koonce. On page 5 of Exhibit "4" there appears to be my signature of "S Bauer."

4   This signature is not my writing and is not my signature. Moreover, I never

5   authorized anyone to sign my name on Exhibit "4", and I never authorized anyone

6   to use my name to open any accounts for Eccentric Innovations, Inc. at Wells

7   Fargo Bank or anywhere else. In fact, until on or about June 23, 2015, I had never

8   heard of the name Eccentric Innovations, Inc.

9          6.     Attached hereto as Exhibit "5" is a five page document titled

10  "Authorization for Information" and appears to be a form from Wells Fargo Bank

11  regarding a business account application by Optimized Media Services, Inc. The

12  first time I ever learned of or saw Exhibit "5" was on or about June 23, 2015 when

13  it was sent by email to me by counsel for the Temporary Receiver Charlene C.

14  Koonce. On page 5 of Exhibit "5" there appears to be my signature of "S Bauer."

15  This signature is not my writing and is not my signature. Moreover, I never

16  authorized anyone to sign my name on Exhibit "5", and I never authorized anyone

17  to use my name to open any accounts for Optimized Media Services, Inc. at Wells

18  Fargo Bank or anywhere else. In fact, until on or about June 23, 2015, I had never

19  heard of the name Optimized Media Services, Inc.

20         I declare, under penalty of perjury, that the foregoing statement is true and

21  correct.

22
23         Executed on June **2 5**, 2015, at **L A**, California.

24
25                                        _____
                                          STEPHAN L. BAUER
26
                                          3

DECLARATION OF STEPHAN L. BAUER PURSUANT TO 28 U.S.C. § 1746

App.000120

# Authorization For Information
In Connection With A Business Account Application


WELLS FARGO

| Banker Name: | | Officer/Portfolio Number: | Date: |
|---|---|---|---|
| ESPER ELHELOU | | A2424 | 03/14/2014 |

| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
|---|---|---|---|
| | 04569 | 0000944 | : |

## Business Account Applicant

Business Name:
FOCUS MEDIA SOLUTIONS INC.

## Owner/Key Individual 1 Information

| Customer Name: | | | Residence Address: | |
|---|---|---|---|---|
| YARON SHAMIAN | | | | |
| Position/Title: | Date of Birth: | Phone Number: | Address Line 2: | |
| President | /1966 | 818 | | |
| Taxpayer Identification Number (TIN): | TIN Type: | | Address Line 3: | |
| | SSN | | | |
| Primary ID Type: | Primary ID Description: | | City: | State: |
| DLIC | | | LOS ANGELES | CA |
| Primary ID St/Ctry/Prov.: | Primary ID Issue Date: | Primary ID Expiration Date: | ZIP/Postal Code: | Country: |
| CA | 12/02/2009 | 01/15/2015 | 90029-1579 | US |
| Secondary ID Type: | Secondary ID Description: | | Directional Address: (Document when no physical residence, business or alternate street address.) | |
| OTHR DC | BANK OF AMERICA VISA | | | |
| Secondary ID State/Country: | Secondary ID Issue Date: | Secondary ID Expiration Date: | | |
| | | 05/01/2015 | | |

## Signature Capture - Owners/Key Individuals

By signing this form, I authorize "Wells Fargo Bank" to obtain verifications and reports from agencies on my accounts and financial affairs from time to time, such as credit bureau reports and account status reports on me as an individual, in connection with the business account application identified above and any other account applications by this business. I understand that Wells Fargo requests this information to reduce fraudulent accounts, to prevent access to financial information and accounts by unauthorized persons, and for other legitimate business reasons. Should the information obtained from any such verification or report cause Wells Fargo to decide to deny the account application for the above-named business, I also authorize Wells Fargo to communicate, either explicitly or implicitly, to any co-applicant and to any co-owner, director, officer, or employee of the business that the denial was based in whole or in part on such information. I also authorize Wells Fargo to use such information and to share it with its affiliates in order to determine whether the business is qualified for other products and services offered by Wells Fargo and its affiliates.

| Owner/Key Individual 1 Name: | Position/Title: |
|---|---|
| YARON SHAMIAN | President |

Owner/Key Individual 1 Signature

| [signature] | ☒ Submit manually ☐ Signature not required | Date: 03/14/2014 |
|---|---|---|

EXHIBIT
1

# Business Account Application

**WELLS FARGO**

| Bank Name: | Store Name: |
|---|---|
| WELLS FARGO BANK, N.A. | CALABASAS |

| Banker Name: | Officer/Portfolio Number: | Date: |
|---|---|---|
| ESPER ELHELOU | | 03/14/2014 |

| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
|---|---|---|---|
| | 04569 | | |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## New Account Information

[X] New Deposit Account(s) Only         [ ] New Deposit Account(s) and Business Credit Card

Account 1 Product Name:
Gold Business Services Package

| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | 565 | $100.00 | CKS |

Account 2 Product Name:
Business Market Rate Savings

| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | 7    588 | $100.00 | CKS |

Account 3 Product Name:
Business Checking

| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | 580 | $100.00 | CKS |

| New Account Kit: | Bonus Eligible: |
|---|---|
| Printed | NO |

## Related Customer Information

| Customer 1 Name: | Account Relationship: |
|---|---|
| FOCUS MEDIA SOLUTIONS INC. | Sole Owner |

Enterprise Customer Number (ECN):
617

| Customer 2 Name: | Account Relationship: |
|---|---|
| YARON SHAMIAN | Signer |

Enterprise Customer Number (ECN):
518

| Customer 3 Name: | Account Relationship: |
|---|---|
| STEPHAN L BAUER | Signer |

Enterprise Customer Number (ECN):
111



2W02-000635900206-01

BBG2307 (2-14 SVP)

App.000122

Business Account Application

## Checking/Savings Statement Mailing Information

| Name(s) and Information Listed on Statement: | | Statement Mailing Address: | |
|---|---|---|---|
| FOCUS MEDIA SOLUTIONS INC. | | 18375 VENTURA BLVD # 660 | |
| | | Address Line 2: | |
| | | | |
| | | City: | State: |
| | | TARZANA | CA |
| | | ZIP/Postal Code: | Country: |
| | | 91356-4218 | US |

### Customer 1 Information

| Customer Name: | | | Street Address: | |
|---|---|---|---|---|
| FOCUS MEDIA SOLUTIONS INC. | | | 18375 VENTURA BLVD # 660 | |
| Account Relationship: | | | Address Line 2: | |
| Sole Owner | | | | |
| Taxpayer Identification Number (TIN): | TIN Type: | | Address Line 3: | |
| 930 | EIN | | | |
| Business Type: | | | City: | State: |
| Corporation Type C | | | TARZANA | CA |
| Business Sub-Type/Tax Classification: | | Non-Profit: | ZIP/Postal Code: | Country: |
| Corporation | | No | 91356-4218 | US |
| Date Originally Established: | Current Ownership Since: | Number of Employees: | Business Phone: | Fax: |
| 03/07/2014 | | 10 | 818/839-1855 | |
| Annual Gross Sales: | Year Sales Reported: | Fiscal Year End: | Cellular Phone: | Pager: |
| $1,000,000.00 | 03/07/2014 | | | |
| Primary Financial Institution: | Number of Locations: | | e-Mail Address: | |
| | 1 | | | |
| Primary State 1: | Primary State 2: | Primary State 3: | Website: | |
| | | | | |
| Primary Country 1: | Primary Country 2: | Primary Country 3: | Sales Market: | |
| | | | LOCAL | |
| Industry: | | | | |
| Management of Companies and Enterprises | | | | |
| Description of Business: | | | | |
| | | | | |
| Major Suppliers/Customers: | | | | |
| | | | | |

### Bank Use Only

| Name/Entity Verification: | | | Address Verification: | | BACC Reference Number: | |
|---|---|---|---|---|---|---|
| Articles of Incorporation | | | | | 1012 | |
| Document Filing Number/Description: | | Filing Country: | Filing State: | Filing Date: | Expiration Date: | |
| .931 | | US | CA | 03/07/2014 | | |
| Country of Registration: | State of Registration: | International Transactions: | | | Check Reporting: | |
| US | CA | | | | NO RECORD | |
| Customer 1 Name: | | | | Internet Gambling Business?: | | |
| FOCUS MEDIA SOLUTIONS INC. | | | | No | | |



2W02-000635900206-02

App.000123

Business Account Application

## Owner/Key Individual 1 Information

| | |
|---|---|
| Customer Name:<br>YARON SHAMIAN | Residence Address: |
| Position/Title:        Date of Birth:        Enterprise Customer Number (ECN):<br>President              1966 | Address Line 2: |
| Taxpayer Identification Number (TIN):        TIN Type:<br>·1180                 SSN | Address Line 3: |
| Primary ID Type:        Primary ID Description:<br>DLIC           F | City:                        State:<br>LOS ANGELES          CA |
| Primary ID St/Ctry/Prov:   Primary ID Issue Date:   Primary ID Expiration Date:<br>CA           12/02/2009      01/15/2015 | ZIP/Postal Code:              Country:<br>90029-1579            US |
| Secondary ID Type:      Secondary ID Description:<br>OTHR DC        BANK OF AMERICA VISA | Check Reporting:<br>NO RECORD |
| Secondary ID State/Country:  Secondary ID Issue Date:   Secondary ID Expiration Date:<br>                                     05/01/2015 | |
| Country of Citizenship:<br>US | |



2W02-000635900206-03

BBG2307 (2-14 SVP)

Page 3 of 5
Wells Fargo Confidential

App.000124

Case 2:15-cv-04527-GW-PLA  Document 165-3  Filed 08/14/15  Page 8 of 37  Page ID
#:3835
Case 2:15-cv-04527-GW-PLA  Document 121-7  Filed 08/03/15  Page 11 of 21  Page ID
#:2782

Business Account Application

## Certificate of Authority

Each person who signs the "Certified/Agreed To" section of this Application certifies that:

A. The Customer's use of any Bank deposit account, product or service will confirm the Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement that includes the Arbitration Agreement under which any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service will be decided in an arbitration proceeding before a neutral arbitrator as described in the Arbitration Agreement and not by a jury or court trial.

B. Each person who signs the "Certified/Agreed To" section of this Application or whose name, any applicable title and specimen signature appear in the "Authorized Signers - Signature Capture" section of this Application is authorized on such terms as the Bank may require to:

(1) Enter into, modify, terminate and otherwise in any manner act with respect to accounts at the Bank and agreements with the Bank or its affiliates for accounts and/or services offered by the Bank or its affiliates (other than letters of credit or loan agreements);

(2) Authorize (by signing or otherwise) the payment of items from the Customer's account(s) listed on this Business Account Application (including without limitation any item payable to (a) the individual order of the person who authorized the item or (b) the Bank or any other person for the benefit of the person who authorized the item and the endorsement of Deposited Items for deposit, cashing or collection (see the Bank's applicable account agreement for the definitions of "Item" and "Deposited Item");

(3) Give instructions to the Bank in writing (whether the instructions include the manual signature or a signature that purports to be the facsimile or other mechanical signature including a stamp of an Authorized Signer as the Customer's authorized signature without regard to when or by whom or by what means or in what ink color the signature may have been made or affixed), orally, by telephone or by any electronic means in regard to any item and the transaction of any business relating to the Customer's account(s), agreements or services, and the Customer shall indemnify and hold the Bank harmless for acting in accordance with such instructions; and

(4) Delegate the person's authority to another person(s) or revoke such delegation, in a separate signed writing delivered to the Bank.

C. If a code must be communicated to the Bank in order to authorize an item, and the code is communicated, the item will be binding on the Customer regardless of who communicated the code.

D. Each transaction described in this Certificate of Authority conducted by or on behalf of the Customer prior to delivery of this Certificate is in all respects ratified.

E. If the Customer is a tribal government or tribal government agency, the Customer waives sovereign immunity from suit with respect to the Customer's use of any Bank account, product or service referred to in this Certificate.

F. The information provided in this Application is correct and complete, each person who signs the "Certified/Agreed To" section of this Application and each person whose name appears in the "Authorized Signers-Signature Capture" section of this Application holds any position indicated, and the signature appearing opposite the person's name is authentic.

G. The Customer has approved this Certificate of Authority or granted each person who signs the "Certified/Agreed To" section of this Application the authority to do so on the Customer's behalf by:

(1) resolution, agreement or other legally sufficient action of the governing body of the Customer, if the Customer is not a trust or a sole proprietor;
(2) the signature of each of the Customer's trustees(s), if the Customer is a trust; or
(3) the signature of the Customer, if the Customer is a sole proprietor.

## Certified/Agreed To

Owner/Key Individual 1 Name | Position/Title:
YARON SHAMIAN | President

Owner/Key Individual 1 Signature

☒ Submit manually
☐ Signature not required

Date:
03/14/2014

2W02-000635900206-04

BBG2307 (2-14 SVP)

Page 4 of 5
Wells Fargo Confidential

App.000125

Business Account Application

## Request for Taxpayer Identification Number and Certification

(Substitute Form W-9)

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. UNLESS I HAVE CHECKED ONE OF THE BOXES BELOW, I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an Individual Retirement Arrangement (IRA), and payment other than interest and dividends).   ☐ I am subject to backup withholding          ☐ I am exempt from backup withholding

3. I am a U.S. citizen or other U.S. person.

4. I am exempt from Foreign Account Tax Compliance Act (FATCA) reporting.

Note:  The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| Tax Responsible Customer Name: | Taxpayer Identification Number (TIN): |
|---|---|
| FOCUS MEDIA SOLUTIONS INC. | 4       930 |

TIN Certification Signature:

| | ☒ Submit manually ☐ Signature not required | Date: |
|---|---|---|

## Authorized Signers – Signature Capture

| Authorized Signer 1 Name | Position/Title: |
|---|---|
| YARON SEAMIAN | President |

Authorized Signer 1 Signature

| | ☒ Submit manually ☐ Signature not required | Date: 03/14/2014 |
|---|---|---|

| Authorized Signer 2 Name | Position/Title: |
|---|---|
| STEPHAN L BAUER | OWNER |

Authorized Signer 2 Signature

| | ☒ Submit manually ☐ Signature not required | Date: 03/14/2014 |
|---|---|---|



2W02-000635900206-05

BBG2307 (2-14 SVP)

App.000126

# Authorization For Information
In Connection With A Business Account Application



**WELLS FARGO**

| Banker Name: | | | Officer/Portfolio Number: | Date: |
|---|---|---|---|---|
| ESPER ELHELOU | | | | 03/14/2014 |

| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
|---|---|---|---|
| | 04569 | | |

### Business Account Applicant

Business Name:
DYNAMIC MEDIA, INC.

### Owner/Key Individual 1 Information

| Customer Name: | | Residence Address: |
|---|---|---|
| TOMER AMSALEM | | 5 |

| Position/Title: | Date of Birth: | Phone Number: | Address Line 2: |
|---|---|---|---|
| PRESIDENT | /1978 | | |

| Taxpayer Identification Number (TIN): | TIN Type: | Address Line 3: |
|---|---|---|
| 6715 | SSN | |

| Primary ID Type: | Primary ID Description: | City: | State: |
|---|---|---|---|
| DLIC | D? | ENCINO | CA |

| Primary ID St/Ctry/Prov.: | Primary ID Issue Date: | Primary ID Expiration Date: | ZIP/Postal Code: | Country: |
|---|---|---|---|---|
| CA | | 01/03/2019 | 91436-2522 | US |

| Secondary ID Type: | Secondary ID Description: | Directional Address: |
|---|---|---|
| OTHR CC | AMERICAN EXPRESS | (Document when no physical residence, business or alternate street address.) |

| Secondary ID State/Country: | Secondary ID Issue Date: | Secondary ID Expiration Date: |
|---|---|---|
| | | 08/30/2014 |

### Signature Capture - Owners/Key Individuals

By signing this form, I authorize "Wells Fargo Bank" to obtain verifications and reports from agencies on my accounts and financial affairs from time to time, such as credit bureau reports and account status reports on me as an individual, in connection with the business account application identified above and any other account applications by this business. I understand that Wells Fargo requests this information to reduce fraudulent accounts, to prevent access to financial information and accounts by unauthorized persons, and for other legitimate business reasons. Should the information obtained from any such verification or report cause Wells Fargo to decide to deny the account application for the above-named business, I also authorize Wells Fargo to communicate, either explicitly or implicitly, to any co-applicant or co-owner, director, officer, or employee of the business that the denial was based in whole or in part on such information. I also authorize Wells Fargo to use such information and to share it with its affiliates in order to determine whether the business is qualified for other products and services offered by Wells Fargo and its affiliates.

| Owner/Key Individual 1 Name | Position/Title: |
|---|---|
| TOMER AMSALEM | PRESIDENT |

Owner/Key Individual 1 Signature

☒ Submit manually
☐ Signature not required

Date:
03/14/2014

BBG18141 (2-10 SVP)
© 2010 Wells Fargo Bank, N.A. All rights reserved.

2W02-000635918140-01

**EXHIBIT 2**

Page 1 of 1
Wells Fargo Confidential

App.000127

Case 2:15-cv-04527-GW-PLA   Document 121-7   Filed 08/03/15   Page 14 of 21   Page ID #:2785

# Business Account Application



**WELLS FARGO**

| Bank Name: | | Store Name: | |
|---|---|---|---|
| WELLS FARGO BANK, N.A. | | CALABASAS | |

| Banker Name: | | Officer/Portfolio Number: | Date: |
|---|---|---|---|
| ESPER ELHELOU | | | 03/14/2014 |

| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
|---|---|---|---|
| | 04569 | | |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## New Account Information

☐ New Deposit Account(s) Only     ☒ New Deposit Account(s) and Business Credit Card

**Account 1 Product Name:**
Gold Business Services Package

| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | `444 | $100.00 | CKS |

**Account 2 Product Name:**
Business Market Rate Savings

| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | 513 | $100.00 | CKS |

**Account 3 Product Name:**
Platinum Business Services Package

| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | `188 | $100.00 | CKS |

| New Account Kit: | Bonus Eligible: |
|---|---|
| Printed | NO |

## Related Customer Information

| Customer 1 Name: | Account Relationship: |
|---|---|
| DYNAMIC MEDIA, INC. | Sole Owner |

Enterprise Customer Number (ECN):

| Customer 2 Name: | Account Relationship: |
|---|---|
| TOMER AMSALEM | Signer |

Enterprise Customer Number (ECN):

| Customer 3 Name: | Account Relationship: |
|---|---|
| STEPHAN L BAUER | Signer |

Enterprise Customer Number (ECN):

**Manual Submission Instructions:**
Fax all pages of the signed form to
Business Direct at 1-888-371-1046
before submitting to Deposit
Operations

Scanner Enabled Stores should ONLY scan

BBG2307 (2-14 SVP)

2W02-000635926772-01

Page 1 of 5
Wells Fargo Confidential

App.000128

Business Account Application

## Checking/Savings Statement Mailing Information

| Name(s) and Information Listed on Statement: | Statement Mailing Address: |
|---|---|
| DYNAMIC MEDIA, INC. | 9465 WILSHIRE BLVD STE 300 |
|  | Address Line 2: |
|  |  |

| City: | State: |
|---|---|
| BEVERLY HILLS | CA |
| **ZIP/Postal Code:** | **Country:** |
| 90212-2612 | US |

## Customer 1 Information

| Customer Name: | Street Address: |
|---|---|
| DYNAMIC MEDIA, INC. | 9465 WILSHIRE BLVD STE 300 |

| Account Relationship: | Address Line 2: |
|---|---|
| Sole Owner |  |

| Taxpayer Identification Number (TIN): | TIN Type: | Address Line 3: |
|---|---|---|
| ,337 | EIN |  |

| Business Type: | City: | State: |
|---|---|---|
| Corporation Type C | BEVERLY HILLS | CA |

| Business Sub-Type/Tax Classification: | Non-Profit: | ZIP/Postal Code: | Country: |
|---|---|---|---|
| Corporation | No | 90212-2612 | US |

| Date Originally Established: | Current Ownership Since: | Number of Employees: | Business Phone: | Fax: |
|---|---|---|---|---|
| 01/02/2014 |  | 8 | 424/666-7343 |  |

| Annual Gross Sales: | Year Sales Reported: | Fiscal Year End: | Cellular Phone: | Pager: |
|---|---|---|---|---|
| $1,000,000.00 | 01/02/2014 |  |  |  |

| Primary Financial Institution: | Number of Locations: | e-Mail Address: |
|---|---|---|
|  | 1 |  |

| Primary State 1: | Primary State 2: | Primary State 3: | Website: |
|---|---|---|---|
|  |  |  |  |

| Primary Country 1: | Primary Country 2: | Primary Country 3: | Sales Market: |
|---|---|---|---|
|  |  |  | LOCAL |

| Industry: |
|---|
| Management of Companies and Enterprises |

| Description of Business: |
|---|
|  |

| Major Suppliers/Customers: |
|---|
|  |

## Bank Use Only

| Name/Entity Verification: | Address Verification: | BACC Reference Number: |
|---|---|---|
| Articles of Incorporation |  |  |

| Document Filing Number/Description: | Filing Country: | Filing State: | Filing Date: | Expiration Date: |
|---|---|---|---|---|
|  | US | CA | 01/02/2014 |  |

| Country of Registration: | State of Registration: | International Transactions: | Check Reporting: |
|---|---|---|---|
| US | CA |  | NO RECORD |

| Customer 1 Name: | Internet Gambling Business?: |
|---|---|
| DYNAMIC MEDIA, INC. | No |

**Manual Submission Instructions:**
Fax all pages of the signed form to
Business Direct at 1-888-371-1046
before submitting to Deposit
Operations
Scanner Enabled Stores should ONLY scan

BBG2307 (2-14 SVP)

2W02-000635926772-02

Page 2 of 5
Wells Fargo Confidential

App.000129

Case 2:15-cv-04527-GW-PLA  Document 165-3  Filed 08/14/15  Page 13 of 37  Page ID
#:3840
Case 2:15-cv-04527-GW-PLA  Document 121-7  Filed 08/03/15  Page 16 of 21  Page ID
#:2787

Business Account Application

## Owner/Key Individual 1 Information

| | | | |
|---|---|---|---|
| Customer Name:<br>TOMER AMSALEM | | | Residence Address:<br>16161 VENTURA BLVD STE 595 |
| Position/Title:<br>PRESIDENT | Date of Birth:<br>01/03/1978 | Enterprise Customer Number (ECN): | Address Line 2: |
| Taxpayer Identification Number (TIN):<br>\| -6715 | TIN Type:<br>SSN | | Address Line 3: |
| Primary ID Type:<br>DLIC | Primary ID Description:<br>\| | | City:<br>ENCINO |

| Primary ID St/Ctry/Prov:<br>CA | Primary ID Issue Date:<br>\| | Primary ID Expiration Date:<br>01/03/2019 | ZIP/Postal Code:<br>91436-2522 | Country:<br>US |
|---|---|---|---|---|

| City:<br>ENCINO | State:<br>CA |
|---|---|

| Secondary ID Type:<br>OTHR CC | Secondary ID Description:<br>AMERICAN EXPRESS | | Check Reporting:<br>NO RECORD |
|---|---|---|---|
| Secondary ID State/Country:<br>\| | Secondary ID Issue Date:<br>\| | Secondary ID Expiration Date:<br>08/30/2014 | |
| Country of Citizenship:<br>US | | | |

## Certificate of Authority

Each person who signs the "Certified/Agreed To" section of this Application certifies that:

A. **The Customer's use of any Bank deposit account, product or service will confirm the Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement that includes the Arbitration Agreement under which any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service will be decided in an arbitration proceeding before a neutral arbitrator as described in the Arbitration Agreement and not by a jury or court trial.**

B. Each person who signs the "Certified/Agreed To" section of this Application or whose name, any applicable title and specimen signature appear in the "Authorized Signers - Signature Capture" section of this Application is authorized on such terms as the Bank may require to:

   (1) Enter into, modify, terminate and otherwise in any manner act with respect to accounts at the Bank and agreements with the Bank or its affiliates for accounts and/or services offered by the Bank or its affiliates (other than letters of credit or loan agreements);

   (2) Authorize (by signing or otherwise) the payment of Items from the Customer's account(s) listed on this Business Account Application (including without limitation any Item payable to (a) the individual order of the person who authorized the Item or (b) the Bank or any other person for the benefit of the person who authorized the Item) and the endorsement of Deposited Items for deposit, cashing or collection (see the Bank's applicable account agreement for the definitions of "Item" and "Deposited Item");

   (3) Give instructions to the Bank in writing (whether the instructions include the manual signature or a signature that purports to be the facsimile or other mechanical signature including a stamp of an Authorized Signer as the Customer's authorized signature without regard to when or by whom or by what means or in what ink color the signature may have been made or affixed), orally, by telephone or by any electronic means in regard to any Item and the transaction of any business relating to the Customer's account(s), agreements or services, and the Customer shall indemnify and hold the Bank harmless for acting in accordance with such instructions; and

   (4) Delegate the person's authority to another person(s) or revoke such delegation, in a separate signed writing delivered to the Bank.

C. If a code must be communicated to the Bank in order to authorize an Item, and the code is communicated, the Item will be binding on the Customer regardless of who communicated the code.

D. **Each person who is either the Customer (sole proprietor) or an owner of the Customer has read and agreed to the Terms and Conditions for the Wells Fargo® Business Platinum Credit Card appearing below including the personal guaranty.**

E. Each transaction described in this Certificate of Authority conducted by or on behalf of the Customer prior to delivery of this Certificate is in all respects ratified.

F. If the Customer is a tribal government or tribal government agency, the Customer waives sovereign immunity from suit with respect to the Customer's use of any Bank account, product or service referred to in this Certificate.

G. The information provided in this Application is correct and complete, each person who signs the "Certified/Agreed To" section of this Application and each person whose name appears in the "Authorized Signers-Signature Capture" section of this Application holds any position indicated, and the signature appearing opposite the person's name is authentic.

**Manual Submission Instructions:**
Fax all pages of the signed form to
Business Direct at 1-888-371-1046
before submitting to Deposit
Operations
Scanner Enabled Stores should ONLY scan

BBG2307 (2-14 SVP)

2W02-000635926772-03

App.000130

Business Account Application

H. The Customer has approved this Certificate of Authority or granted each person who signs the "Certified/Agreed To" section of this Application the authority to do so on the Customer's behalf by:
   (1) resolution, agreement or other legally sufficient action of the governing body of the Customer, if the Customer is not a trust or a sole proprietor;
   (2) the signature of each of the Customer's trustee(s), if the Customer is a trust; or
   (3) the signature of the Customer, if the Customer is a sole proprietor.

## Certified/Agreed To

Owner/Key Individual 1 Name
TOMER AMSALEM

Position/Title:
PRESIDENT

Owner/Key Individual 1 Signature

☒ Submit manually
☐ Signature not required

Date:
03/14/2014

## Request for Taxpayer Identification Number and Certification

(Substitute Form W-9)
Under penalties of perjury, I certify that:
1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. UNLESS I HAVE CHECKED ONE OF THE BOXES BELOW, I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an Individual Retirement Arrangement (IRA), and payment other than interest and dividends).
   ☐ I am subject to backup withholding   ☐ I am exempt from backup withholding
3. I am a U.S. citizen or other U.S. person.
4. I am exempt from Foreign Account Tax Compliance Act (FATCA) reporting.

Note: The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Tax Responsible Customer Name:
DYNAMIC MEDIA, INC.

Taxpayer Identification Number (TIN):
i337

TIN Certification Signature:

☒ Submit manually
☐ Signature not required

Date:

## Authorized Signers - Signature Capture

Authorized Signer 1 Name
TOMER AMSALEM

Position/Title:
PRESIDENT

Authorized Signer 1 Signature

☒ Submit manually
☐ Signature not required

Date:
03/14/2014

**Manual Submission Instructions:**
Fax all pages of the signed form to
Business Direct at 1-888-371-1046
before submitting to Deposit
Operations
Scanner Enabled Stores should ONLY scan

BBG2307 (2-14 SVP)

2W02-000635926772-04

Page 4 of 5
Wells Fargo Confidential

App.000131

Business Account Application

Authorized Signer 2 Name
STEPHAN L BAUER

Position/Title:
OWNER

Authorized Signer 2 Signature

☒ Submit manually
☐ Signature not required

Date:
03/14/2014

## Terms and Conditions for the Wells Fargo® Business Platinum Credit Card

By signing in the "Certified/Agreed To" or "Authorized Signers - Signature Capture" sections of this Application ("Application"), if I am an owner of the business, I accept on behalf of the Customer named above ("Applicant") all terms and conditions, including the additional terms of acceptance appearing below, and the terms and conditions of the Customer Agreement that will be sent to the Applicant. By signing this form, I also accept in my individual capacity the terms of guaranty appearing below. I agree that a facsimile of my signature, in any capacity, may be used to evidence my acceptance of these agreements. Any new business credit card application for the same business will supersede the pre-approved business credit card offer. Non-profit entities are not eligible for pre-approved business credit card offers.

I certify that I am authorized to submit this Application on behalf of the Applicant and that all information and documents provided in connection with the Application, including federal and state income tax returns (if any), are true, correct, and complete. I further certify that this credit request is for my business only, and that all proceeds will be used solely for business or commercial purposes. I authorize Wells Fargo Bank, N.A. ("Bank") to obtain balance and payoff information on all accounts requiring payoff as a condition of approving this Application and to obtain consumer and business reports from and to report credit information to others, including the Internal Revenue Service and state taxing authorities, about me and my business. I agree to notify Bank promptly of any material change in such information. I acknowledge that (i) this Application is subject to final approval of the Applicant and its owners, and that (ii) additional information may be required in order for the Bank to make the final credit decision. I agree to pay Bank's costs and attorney's fees in enforcing the Customer Agreement. I further agree that use of any feature of the Business Platinum Credit Card account may be used as evidence of the foregoing authorizations, acceptances, and agreements. If the signer is married and resides in Arizona, the spouse's signature is required. I understand that the offer may be amended or cancelled.

I, along with each owner signing this Application, jointly and severally unconditionally guarantee in my individual capacity (even though I may place a title or other designation next to my signature), and promise to pay to Bank all indebtedness of the Applicant at any time arising under or relating to this Application and/or the Customer Agreement, as well as any extensions, increases, or renewals of that indebtedness. As guarantor, I waive (a) presentment, demand, protest, and notice of non-payment; (b) any defense arising by reason of any defense of the Applicant or other guarantor; and (c) the right to require Bank to proceed against Applicant or any other guarantor, to pursue any remedy in connection with the guaranteed indebtedness, or to notify guarantor of any additional indebtedness incurred by the Applicant, or of any changes in the Applicant's financial condition. I also authorize Bank, without notice or prior consent, to (x) extend, modify, compromise, accelerate, renew, increase, or otherwise change the terms of the guaranteed indebtedness, (y) proceed against one or more guarantors without proceeding against the Applicant or another guarantor; and (z) release or substitute any Applicant, co-Applicant or guarantor. I agree (i) I will pay Bank's costs and attorneys' fees in enforcing this guaranty; (ii) this guaranty is made in South Dakota and will be governed by South Dakota law; (iii) this guaranty shall benefit the Bank and its successors and assigns; and (iv) an electronic facsimile of my signature, in any capacity, may be used as evidence of my agreement to the terms of the guaranty.

Telephone Monitoring And Contacting You: From time to time Bank may monitor and record telephone calls regarding your Account to assure the quality of our service. You agree, in order for Bank to service the Account or to collect any amounts you may owe, that we may from time to time make calls and send text messages to you, using prerecorded/artificial voice messages and/or through the use of an automatic dialing device, at any telephone number associated with your account, including mobile telephone numbers that could result in charges to you. You also expressly consent to Bank sending email messages regarding your Account to your email address.

## Features and Pricing

(i)    **Annual Fee** $0.

(ii)   **Annual Percentage Rate** is variable based on Wells Fargo's Prime Rate plus a spread. APR may differ for Purchases and Cash transactions.

(iii)  **Grace Period for Repayment of the Balance for Purchase** No less than 21 days.

(iv)   **Minimum Payment** See the Customer Agreement for details.

(v)    **Annual Business Card Rewards Membership Fee (optional program)** $50 Your annual membership fee will be charged to your account in the first billing cycle.

## Business Platinum Credit Card Account Details

| Individual Cardholder Name (First, Last): | Individual Credit Line Limit | Business Owner: |
|---|---|---|
| TOMER AMSALEM | $15,000 | Yes |
| Total Credit Line Limit (Can be less than or equal to amount approved for business): | $15,000 | |

Features enrolled in:

| Wells Fargo Business Card Rewards® | Automatic Payment | Overdraft Protection |
|---|---|---|
| Rewards Points | No | No |

**Manual Submission Instructions:**
Fax all pages of the signed form to
Business Direct at 1-888-371-1046
before submitting to Deposit
Operations
Scanner Enabled Stores should ONLY scan

BBG2307 (2-14 SVP)

2W02-000635926772-05

App.000132

# Authorization For Information
In Connection With A Business Account Application



| Banker Name: | | Officer/Portfolio Number: | Date: |
|---|---|---|---|
| ESPER ELKELOU | | | 03/14/2014 |

| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
|---|---|---|---|
| | 04569 | | |

## Business Account Applicant

Business Name:
INTENSIVE MEDIA, INC.

## Owner/Key Individual 1 Information

| Customer Name: | | | Residence Address: | |
|---|---|---|---|---|
| ANNSOFIE ALGARP | | | | |
| Position/Title: | Date of Birth: | Phone Number: | Address Line 2: | |
| OWNER | 1973 | 888/715-1100 | | |
| Taxpayer Identification Number (TIN): | TIN Type: | | Address Line 3: | |
| 0687 | SSN | | | |
| Primary ID Type: | Primary ID Description: | | City: | State: |
| DLIC | | | CHATSWORTH | CA |
| Primary ID St/Ctry/Prov.: | Primary ID Issue Date: | Primary ID Expiration Date: | ZIP/Postal Code: | Country: |
| CA | | 06/18/2014 | 91311-3845 | US |
| Secondary ID Type: | Secondary ID Description: | | Directional Address: | |
| OTHR DC | WELLS FARGO VISA | | (Document when no physical residence, business or alternate street address.) | |
| Secondary ID State/Country: | Secondary ID Issue Date: | Secondary ID Expiration Date: | | |
| | | | | |

## Signature Capture - Owners/Key Individuals

By signing this form, I authorize "Wells Fargo Bank" to obtain verifications and reports from agencies on my accounts and financial affairs from time to time, such as credit bureau reports and account status reports on me as an individual, in connection with the business account application identified above and any other account applications by this business. I understand that Wells Fargo requests this information to reduce fraudulent accounts, to prevent access to financial information and accounts by unauthorized persons, and for other legitimate business reasons. Should the information obtained from any such verification or report cause Wells Fargo to decide to deny the account application for the above-named business, I also authorize Wells Fargo to communicate, either explicitly or implicitly, to any co-applicant and to any co-owner, director, officer, or employee of the business that the denial was based in whole or in part on such information. I also authorize Wells Fargo to use such information and to share it with its affiliates in order to determine whether the business is qualified for other products and services offered by Wells Fargo and its affiliates.

| Owner/Key Individual 1 Name | Position/Title: |
|---|---|
| ANNSOFIE ALGARP | OWNER |

Owner/Key Individual 1 Signature

☒ Submit manually
☐ Signature not required

Date:
03/14/2014

BBG18141 (2-10 SVP)
© 2010 Wells Fargo Bank, N.A. All rights reserved.

2W02-000635930868-01

EXHIBIT
3

Page 1 of 1
Wells Fargo Confidential

App.000133

# Business Account Application



| Bank Name: | | Store Name: | |
|---|---|---|---|
| WELLS FARGO BANK, N.A. | | CALABASAS | |

| Banker Name: | | Officer/Portfolio Number: | Date: |
|---|---|---|---|
| ESPER ELHELOU | | | 03/14/2014 |

| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
|---|---|---|---|
| | 04569 | | |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## New Account Information

☐ New Deposit Account(s) Only          ☒ New Deposit Account(s) and Business Credit Card

**Account 1 Product Name:**
Gold Business Services Package

| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | 686 | $100.00 | CKS |

**Account 2 Product Name:**
Business Market Rate Savings

| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | 547 | $100.00 | CKS |

**Account 3 Product Name:**
Business Checking

| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 114 | DDA | 424 | $100.00 | CKS |

| New Account Kit: | Bonus Eligible: |
|---|---|
| Printed | NO |

## Related Customer Information

| Customer 1 Name: | Account Relationship: |
|---|---|
| INTENSIVE MEDIA, INC. | Sole Owner |
| Enterprise Customer Number (ECN): | |
| | |

| Customer 2 Name: | Account Relationship: |
|---|---|
| ANNSOFIE ALGARP | Signer |
| Enterprise Customer Number (ECN): | |
| | |

| Customer 3 Name: | Account Relationship: |
|---|---|
| STEPHAN L BAUER | Signer |
| Enterprise Customer Number (ECN): | |
| | |

**Manual Submission Instructions:**
Fax all pages of the signed form to
Business Direct at 1-888-371-1046
before submitting to Deposit
Operations
Scanner Enabled Stores should ONLY scan

App.000134

Business Account Application

## Checking/Savings Statement Mailing Information

| Name(s) and Information Listed on Statement: | Statement Mailing Address: | |
|---|---|---|
| INTENSIVE MEDIA, INC. | 501 W BROADWAY STE 800 | |
| | Address Line 2: | |
| | City: | State: |
| | SAN DIEGO | CA |
| | ZIP/Postal Code: | Country: |
| | 92101-3546 | US |

### Customer 1 Information

| Customer Name: | Street Address: | |
|---|---|---|
| INTENSIVE MEDIA, INC. | 501 W BROADWAY STE 800 | |
| Account Relationship: | Address Line 2: | |
| Sole Owner | | |

| Taxpayer Identification Number (TIN): | TIN Type: | | Address Line 3: | |
|---|---|---|---|---|
| 795 | EIN | | | |

| Business Type: | | | City: | State: |
|---|---|---|---|---|
| Corporation Type C | | | SAN DIEGO | CA |

| Business Sub-Type/Tax Classification: | | Non-Profit: | ZIP/Postal Code: | Country: |
|---|---|---|---|---|
| Corporation | | No | 92101-3546 | US |

| Date Originally Established: | Current Ownership Since: | Number of Employees: | Business Phone: | Fax: |
|---|---|---|---|---|
| 01/02/2014 | | 7 | | |

| Annual Gross Sales: | Year Sales Reported: | Fiscal Year End: | Cellular Phone: | Pager: |
|---|---|---|---|---|
| $1,000,000.00 | 01/02/2014 | | | |

| Primary Financial Institution: | Number of Locations: | e-Mail Address: |
|---|---|---|
| | 1 | |

| Primary State 1: | Primary State 2: | Primary State 3: | Website: |
|---|---|---|---|
| | | | |

| Primary Country 1: | Primary Country 2: | Primary Country 3: | Sales Market: |
|---|---|---|---|
| | | | LOCAL |

| Industry: |
|---|
| Management of Companies and Enterprises |

| Description of Business: |
|---|
| |

| Major Suppliers/Customers: |
|---|
| |

### Bank Use Only

| Name/Entity Verification: | Address Verification: | | BACC Reference Number: |
|---|---|---|---|
| Articles of Incorporation | | | |

| Document Filing Number/Description: | Filing Country: | Filing State: | Filing Date: | Expiration Date: |
|---|---|---|---|---|
| | US | CA | 01/02/2014 | |

| Country of Registration: | State of Registration: | International Transactions: | Check Reporting: |
|---|---|---|---|
| US | CA | | NO RECORD |

| Customer 1 Name: | Internet Gambling Business?: |
|---|---|
| INTENSIVE MEDIA, INC. | No |

**Manual Submission Instructions:**
Fax all pages of the signed form to
Business Direct at 1-888-371-1046
before submitting to Deposit
Operations
Scanner Enabled Stores should ONLY scan

BBG2307 (2-14 SVP)

2W02-000635934876-02

App.000135

07/28/2015   13:10   3102895953                                        PAGE   01/19

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | **Case No. CV 15-4527-GW(PLAx)** |
| Plaintiff, | **FIRST SUPPLEMENTAL DECLARATION OF STEPHAN L. BAUER PURSUANT TO 28 U.S.C. § 1746** |
| v. | |
| **BUNZAI MEDIA GROUP, INC.,** et. al., | |
| Defendants. | |

1.    My name is Stephan L. Bauer.  I am over the age of 21 years and competent to give this declaration.  I am the sole director and shareholder of SBM Management, Inc. ("SBM").

2.    I have recently been informed that my name appears on corporate formation records and other documents regarding an entity called Trigen LLC.  I do not know anything about Trigen LLC and I did not authorize anyone to sign or use my name on any corporate records or public filings made in relation to Trigen LLC.

3. Attached hereto as Exhibit "1" are ten pages numbered M000001 – M000010 that appear to be an application and a Master Service Agreement between Mobooka, LLC and "SBM Mgmt."  The first time I ever learned of or saw Exhibit "1" was on or about July 1, 2015 when it was sent by email to me by counsel for the Temporary Receiver Charlene C. Koonce.  On pages M000001 and M000009 of Exhibit "1" there appear to be signatures of "Stephan Bauer."  There

1

FIRST SUPPLEMENTAL DECLARATION OF STEPHAN L. BAUER PURSUANT TO 28 U.S.C. § 1746

**EXHIBIT**
**20**

App.000151

Case 2:15-cv-04527-GW-PLA    Document 165-3    Filed 08/14/15    Page 20 of 37    Page ID
#:3847
Case 2:15-cv-04527-GW-PLA    Document 121-8    Filed 08/03/15    Page 2 of 10    Page ID
#:2794

1    are also initials of "SB" on pages M000002 – M000010 of Exhibit "1". These

2    signatures and initials are not my writing and not my signatures or initials. I never

3    authorized anyone to sign my name and initials on Exhibit "1", and I never

4    authorized anyone to use my name to open any accounts at Mobooka, LLC.

5
6          4.    Attached hereto as Exhibit "2" is copy of an IRS Form 8879-C for

7    SBM Management Inc., dated September 6, 2013, that appears to bear my

      signature. The signature on Exhibit "2" is not my writing and is not my signature.
8
      I never authorized anyone to sign my name on Exhibit "2."
9
10         5.    Attached hereto as Exhibit "3" is copy of California Form 8453-C for

11   SBM Management Inc., dated September 6, 2013, that appears to bear my

12   signature. The signature on Exhibit "3" is not my writing and is not my signature.

13   I never authorized anyone to sign my name on Exhibit "3."

14         6.    Attached hereto as Exhibit "4" is copy of an IRS Form 8879-C for

15   SBM Management Inc., dated March 17, 2014, that appears to bear my signature.

16   The signature on Exhibit "4" is not my writing and is not my signature. I never

17   authorized anyone to sign my name on Exhibit "4."

18
19         7.    Attached hereto as Exhibit "5" is copy of California Form 8453-C for

20   SBM Management Inc., dated March 17, 2014, that appears to bear my signature.

      The signature on Exhibit "5" is not my writing and is not my signature. I never
21
      authorized anyone to sign my name on Exhibit "5."
22
23         8.    Attached hereto as Exhibit "6" is copy of an IRS Form 8879-C for

24   SBM Management Inc., dated March 15, 2015, that appears to bear my signature.

25   The signature on Exhibit "6" is not my writing and is not my signature. I never

26   authorized anyone to sign my name on Exhibit "6."

                                         2

FIRST SUPPLEMENTAL DECLARATION OF STEPHAN L. BAUER PURSUANT TO 28 U.S.C. § 1746

Case 2:15-cv-04527-GW-PLA  Document 165-3  Filed 08/14/15  Page 21 of 37  Page ID
#:3848
Case 2:15-cv-04527-GW-PLA  Document 121-8  Filed 08/03/15  Page 3 of 10  Page ID
#:2795

1    9.    Attached hereto as Exhibit "7" is copy of California Form 8453-C for
2  SBM Management Inc., dated March 15, 2015, that appears to bear my signature.
3  The signature on Exhibit "7" is not my writing and is not my signature. I never
4  authorized anyone to sign my name on Exhibit "7."

5      I declare, under penalty of perjury, that the foregoing statements are true and
6  correct.

7      Executed on July 2 8 , 2015, at W. Hollywood, California.
8
9
10                    STEPHAN L. BAUER
11
12  State of California
13  County of Los Angeles
14
15      Subscribed and sworn to (or affirmed) before me on this _____ day of July, 2015,
16  by Stephan L. Bauer, proved to me on the basis of satisfactory evidence to be the person
   who appeared before me.
17
18                                    _____
19                                    Notary Public
20  (Seal)
21
22
23
24
25
26                            3
   _____
   FIRST SUPPLEMENTAL DECLARATION OF STEPHAN L. BAUER PURSUANT TO 28 U.S.C. § 1746

07/28/2015  13:10   3102895953                                                    PAGE  04/19



**Network Insertion Order**

## COMPANY & CONTACT INFORMATION

| Legal Name: | Mobvsta, LLC | Legal Name: | SHM Management |
|---|---|---|---|
| DBA: | Mobvsta, LLC | DBA: | SHM Management Inc |
| Billing Address: | 2410 Magnne Road Suite 2010 (Kroer 1) 94761 | Billing Address: | 655 N Central Ave Suite 1700 Glendale, CA 91203 |
| Billing Contact: | Kym Spagon | Billing Contact: | Stephan Bonet |
| Billing Contact Email: | ksm@mobvsta.com | Billing Contact Email: | accountings@shmagmt.com |
| Billing Contact IM: | Ksm/Mobvsta | Billing Contact IM: | |
| Billing Contact Phone #: | 217 962-4073 | Billing Contact Phone #: | 818-2001-1035 |
| Billing Contact Fax #: | | Billing Contact Fax #: | |
| Billing Contact Cell Phone #: | | Billing Contact Cell Phone #: | |

## CAMPAIGN DETAILS

| Campaign Name: | Aurak  Deluxe | | |
|---|---|---|---|
| Campaign Type: | ☒ CPA ☐ CPI ☐ CPS ☐ CPI ☐ CPD ☐ CPC | | |
| | ☐ Product W/ Transaction ID ☒ Brand | | |
| Conversion Protocol: | | | |
| Flight Dates: | Start Date  11-4-2014 | End Date  TBD | |
| Rate: | 45/M | | |
| Allocation (Units): | Cap  200/day | Allocation (Units)  N/A | |
| Payment Terms: | Weekly Net 10 | | |
| Final Billable Stats: | If final billable slots for previous week's traffic are not renewed by the 3rd day after the payment due date, all leads deemed to be payable will be returned for and no credits will be issued thereafter. Any late payments will accrue interest equal to one and a half (1.5%) percent per month. | | |
| Conversion Point: | ☒ credit card submit | | |
| Campaign Description | | | |
| Allowed Distribution: | ☒ Social ☒ Banner ☒ Email ☒ Search | | |
| Special Rules | | | |
| Advertiser Login Info: | URL   http://affiliate.mobucker.com index.php | PLATFORM | APIURL |
| | USERID   Mobvsta | PASSWORD   mob1mvsta9935 | APICODE |

## AUTHORIZATION AND APPROVAL

THIS IO IS EFFECTIVE AS OF DATE MOBVSTA, LLC EXECUTES THE SAME AND IS ENTERED INTO AS AN ADDENDUM INCORPORATED BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN THE MASTER SERVICE AGREEMENT ("AGREEMENT") BETWEEN THE PARTIES HERETO FOR THE CAMPAIGN IDENTIFIED IN THE IO. THE IO TERMS, TOGETHER WITH THE TERMS OF THE AGREEMENT, SHALL CONSTITUTE A SINGLE CONTRACT. EXCEPT AS OTHERWISE EXPRESSLY MODIFIED IN THIS IO BY SPECIFIC REFERENCES HEREIN, ALL OTHER TERMS AND CONDITIONS OF THE AGREEMENT SHALL REMAIN IN FULL FORCE AND THAT ONE INTERPRETATION, THEN SUCH TERM SHALL HAVE THE MEANING ASCRIBED BY THE COMPANY IN IT'S SOLE DISCRETION.

| Advertiser Signature / Title: | ⌐  CEO | Date:  11-4-13 |
|---|---|---|
| Mobvsta Signature / Title: | | Date: |

1



CONFIDENTIAL                                                                      M000001

App.000154

07/28/2015  13:10     3102895953                                              PAGE  05/19



c.  *Allowed Alterations.*  Advertiser agrees to allow Company to make changes or alterations to the Creative(s) for the sole purpose and intent of matching it to the medium of delivery.  Neither Company nor its affiliates shall make any changes to content of Advertisement. Company may, at its option, modify the flight date of a Campaign if the Creative(s) or linking URL's are not delivered on time or there are delays due to third party ad-serving, inventory fluctuation or other issues beyond its control.  Company shall notify Advertiser of any changes it intends to make to the Creative(s) in accordance with this Section 2(b).

d.  *License.*  Advertiser hereby grants to Company and its third party publishers a nonexclusive, limited, worldwide, royalty-free, revocable license to market, display, perform, copy, transmit, distribute, and promote the Campaign(s) in connection with its obligations hereunder

e.  *Hosted Campaigns.*  Advertiser understands that Company, in due diligence, cannot monitor all host sites for appropriate content and makes no representations with respect to user-generated content on any website where Campaigns are placed. If Advertiser reasonably determines that the placement of any Campaign by Company harms the goodwill or reputation of Advertiser or disparages or brings Advertiser into disrepute, then Company shall notify all publishers and affiliates to cease mailing and removal of the Campaign shall be completed within three (3) business days following Advertiser's notice thereof to Company; provided, however, that if Company reasonably believes that removal of a Campaign from a website will have a material impact on Company's ability to perform in accordance with the applicable Insertion Order, Company may have an extension of the flight dates or other accommodation so long as Company finds a suitable host site through its due diligence

3.  *Tracking.*

a.  *Tracking Pixel.*  Conversions, sales, leads, and/or clicks ("User Action") shall be tracked by Company.  Company's tracking count shall be used for all purposes under this Agreement.  Company shall have the right to place tracking pixel on Advertiser's website, as may be required to track and provide estimated live statistics for Company's affiliates.  The technical specifications of the tracking system and its delivery methods must be met to it's reasonable satisfaction of Company before any advertising or ad-serving will be provided by Company.  If Advertiser removes or manipulates the tracking code at any time during the Campaign, without express written permission from Company, Company may suspend performance and, if applicable, Advertiser agrees to pay Company for the days during which tracking code was absent or manipulated based on the average daily conversion measurements (using daily click counts and/or conversions for the seven (7) days prior to the tracking code being removed or manipulated).  Advertiser shall have reports online or submitted daily to Company via email in Excel format.

b.  *Advertiser Tracking (if applicable).*  Where Advertiser's tracking mechanism is used Advertiser shall provide a login where Company can retrieve daily and month's end summary reports reflecting the exact number of units delivered, Company, in its reasonable discretion and in consultation with Advertiser, will determine the form of said reports.

4.  *Email Marketing Campaigns.*

a.  *Campaign Content.*  To the extent that a Campaign provides for or otherwise permits marketing by e-mail, the Advertising Content provided by Advertiser shall also include, accurate and truthful offer descriptions (in text and html formats), terms and conditions (if applicable), the Advertiser's postal address and a functioning unsubscribe mechanism which, when activated by a user, will actually and permanently remove the user's email address from the Advertiser's database within 10 days of request receipt and, a non-misleading and accurate "Subject Line" and/or "From Line" and any other information necessary to comply with applicable laws and regulations including but not limited to the CAN-SPAM Act of 2004.

b.  *Suppression List.*  Advertiser agrees to maintain and deliver a suppression list containing the e-mail addresses of those individuals who have opted out or unsubscribed from receiving communications from the Advertiser (the "Suppression List").  Advertiser shall further provide an updated Suppression List to Company once every seven (7) days for the duration of the offer. Each party shall use best practices to prevent use or disclosure of the Suppression List for any purpose other than to honor the request of individuals to opt out or unsubscribe from receiving communications and shall treat such Suppression lists as confidential information as provided herein.

3                                    *SB* Initials

CONFIDENTIAL                                                              M000003

App.000155

07/28/2015  13:10    3102895953                                                    PAGE  06/19



**5. Exclusive Campaigns / Non Circumvention**

a.    Exclusive Campaigns  In the event that Advertiser has agreed to exclusive distribution rights to Company in the IO, Advertiser shall not, without the prior written consent of Company, engage in or be involved with advertising, marketing or distributing of any products subject to the exclusive campaign on the world wide web, for a period commencing on the date of the AGREEMENT or applicable IO which ever is later, and ending on the end date of the IO or AGREEMENT whichever is later. Advertiser acknowledges and agrees to the following: (i) the time restrictions in this Section 6 will be reasonable, (ii) the restrictions imposed by this Section 6 will not impair Advertiser's ability to promote and further its business model and (iii) monetary damages would be insufficient in the event of a breach of this covenant of exclusivity, and Company may seek injunctive relief to enforce this Agreement without proof of actual damages or the posting of a bond.

b.    Non-Circumvention  During the term of this Agreement and for a period of six (6) months after expiration or termination of the Term, Advertiser agrees and acknowledges that it will not, outside of any pre-established relationships with activity within the last 6 months, knowingly take any action to circumvent the relationship with Company by doing business with or directly soliciting other online marketing service providers that are currently working with Company to provide to it services similar to the services provided by Company. In the event applicable, Advertiser further agrees that during the Term and for a period of six (6) months after the expiration or termination of the Term, it will not, outside of any pre-established relationships with activity within the last 6 months, knowingly engage, contract with, work with, license with, enter into and/or execute any performance-based online advertising and/or marketing relationship with any advertising network, website, newsletter, search engine, email list, or any other type of Internet property (collectively, the "Publishers") within any advertising network operated by Company, which is comprised of Publishers (the "Network"). In the event a Publisher does contact Advertiser and Advertiser finds out at a later time that such Publisher is a Publisher within the Company's Network, then Company shall notify such Publisher immediately that it must work directly with Company and immediately halt any marketing campaign it is conducting with such Publisher. Both parties agree and acknowledge that if Advertiser violates its obligations under this Section, Company will suffer irreparable injury and shall be entitled to: (a) liquidated damages in the amount of fifty percent (50%) of the gross revenues resulting from sales conducted by Advertiser through the advertising and/or marketing efforts of such Publisher(s), (b) injunctive relief, and (c) any other remedies Company may have at law or in equity.

**6. Billing and Payment.**

a. Invoicing.  For each offer provided by a party hereunder, the parties will enter into an IO specifying the price and other offer specifics.  Any inconsistencies between the terms and conditions of the IO and this Agreement shall be resolved in favor of this Agreement.  Advertiser's payment obligations shall be determined in accordance with the pricing specified in each IO and the amount of User Actions as determined herein.  Upon approved credit, terms are net three (3) days from the end of the previous week (which may be sent by email and/or postal mail). All payments must be in U.S. funds unless specified differently on the IO.  Where payment is made by credit card, Advertiser expressly agrees not to charge back any amounts and will instead follow the dispute resolution procedures as specified herein.

b. Disputed Invoice.  In the event of a dispute between Advertiser and Company regarding amounts due, or upon failure of a third-party's tracking mechanism Advertiser agrees that Company's tracking count shall be applied. Advertiser agrees that in no event, and under no circumstance, will data provided by any Company representative constitute final billing numbers.  Only invoices sent directly to Advertiser are to be construed as representative of billable amounts.  In the event that Company does not receive a written notification of a disputed bill, with rationale and supporting documentation therefore specifically set forth therein, within three (3) days from the date of the invoice, such invoice will be deemed valid and payable and may not thereafter be disputed.  Advertiser acknowledges Company's reliance upon this provision in making payments to participants in its network.

c. Late Payments.  Any late payments will accrue interest equal to one and a half (1.5%) percent per month, or the maximum amount allowable under law, whichever is less, compounded monthly.  Advertiser will be charged twenty-five dollars ($25) for payments by

4                                                       S.D. Initials

CONFIDENTIAL                                                          M000004

App.000156

07/28/2015  13:10    3102895953                                                      PAGE  07/19



checks that are returned due to insufficient funds. Company shall be entitled to recover all reasonable costs of collection (including agency fees, attorneys' fees, expenses and costs) incurred in attempting to collect payment from Advertiser.

d. **Reporting Requirements.** Advertiser shall provide a weekly and a month's end summary report reflecting the exact number of Units delivered. The Company, in its reasonable discretion and by consultation with Advertiser, will determine the form of said reports. All delivery amounts and all agreements are subject to ten (10%) percent over-under delivery and Advertiser shall pay for any over-delivery within the above tolerance. Company has the final responsibility for the determination of Units delivered. Advertiser shall be obligated to retain books and records pertaining to the Units delivered and other data necessary to compute the charges hereunder for at least one (1) year after the conclusion of each Campaign. Company shall have the right to audit such books and records. If the audit reveals an underpayment, Advertiser shall promptly pay to Company such underpayment along with past due interest charges from the time originally due until paid. If the amount of the underpayment is more than five (5%) percent, Advertiser shall also be obligated to pay to Company its reasonable audit costs.

h. **Late or Unpaid Invoices.** In the event that Company must incur expenses related to collection of any outstanding balance and/or late fees, Advertiser shall immediately pay Company's reasonable expenses associated with said collection, including, without limitation, reasonable attorney's and collection agency's fees. Company, in its sole discretion, may terminate the Advertisement from the Company Network and/or terminate this Agreement immediately if Advertiser fails to pay any amount due hereunder.

i. **Offset or Chargeback.** No offset or chargeback may be taken for any non-viable or duplicate leads. Company shall determine in its sole discretion what constitutes a non-viable Lead. Without limiting the breadth of the foregoing, non-viable Leads shall include only Leads with incomplete contact information (no email address, no phone number, and no physical address); Leads from non-United States residents unless such Leads are expressly permitted in the IO; or Leads from consumers under the age of 18. It is the responsibility of the Advertiser to insure the accuracy of Lead request information in the IO. Company may, in its sole discretion, replace a non-viable Lead upon determination of a non-viable lead and Advertiser agrees this is the sole remedy for receipt of a non-viable Lead.

j. **Personal Guaranty.** The individual signing this agreement (the "Guarantor") guarantees and agrees to pay any and all indebtedness of any nature incurred by Advertiser to Company. This guaranty shall be a continuing, unconditional, and irrevocable guarantee to repay and indemnify such indebtedness of Advertiser. Guarantor agrees that all rights, remedies, and recourses afforded to Company by reason of this personal guarantee or otherwise are separate and cumulative and may be pursued separately, successively, or concurrently, as occasion therefore shall arise, and are nonexclusive and shall in no way limit or prejudice any other legal or equitable right, remedy, or recourse that Company may have. Guarantor hereby waives notice of default, non-payment, and notice thereof and consents to any modification or renewal of the agreement hereby guaranteed. This guarantee may be assigned by Company to any person or entity taking assignment of the underlying debt, without notice to Guarantor, and shall be fully enforceable by said assignee. As a condition precedent to the making of a credit extension to Advertiser, the undersigned officer, director or owner of Advertiser does hereby personally guaranty to Company the prompt punctual and full payment of all monies now or hereinafter due Company from Advertiser. This guaranty is unlimited as to the amount or duration and shall remain in full force and effect notwithstanding any extension, compromise, adjustment, forbearance, waiver, release or discharge of any other party or guarantor or release in whole or in part of any security granted for credit indebtedness or compromise or adjustment thereto, and the undersigned waives all notices thereto. Guarantor further agrees to pay all costs, interest, and reasonable attorney's fees incurred by Company in collecting any amounts hereby guaranteed. In the event that any of this guarantee shall be construed by a court of competent jurisdiction to be unlawful or unenforceable and if the offending provision can be reformed to effect the clear intention of the parties herein, then the offending provision shall be so reformed, and the remainder of the guarantee shall remain in full force and effect as written. If the provision cannot be reformed to affect the clear intention of the parties, then, this guarantee shall be deemed to be reformed to exist as now written but without the offending provision.

7. *Advertiser Warranties.*

a. Advertiser represents and warrants that: (i) it holds all necessary rights to permit the use of all Creative provided to Company under this Agreement; (ii) that the use, reproduction, distribution, transmission or display of any Creative and any materials to which users can link, or any products or services made available to users through the Creative will not (A) violate any law (including but not limited to the Federal Trade Commission Act, CAN-SPAM Act of 2003 and/or any applicable rules or regulations of the Federal Trade Commission, UK Data Protection Act of 1998 and Amendments thereto and if applicable all laws of the United Kingdom governing advertising practices on the Internet), give rise to criminal or civil liability or infringe any copyright, patent, trademark

6                                                             SB  Initials

CONFIDENTIAL                                                          M000005

07/28/2015 13:10 3102895953 PAGE 08/19



**MOBOOKA, LLC MASTER SERVICE AGREEMENT**

This Master Service Agreement ("Agreement") is entered into by and between Mobooka, LLC. on the one hand (hereinafter referred to as "Company") and the customer identified on the IO (hereinafter referred to as "Advertiser") for the mutual promises contained herein and other good and valuable consideration, receipt and adequacy of which are hereby acknowledged. This Agreement and the accompanying and subsequent Insertion Order ("IO") shall define the Company's and Advertiser's obligations with respect to Company's delivery or display of advertising campaigns and promotions on Advertiser's behalf ("Campaigns"). Each IO submitted by Advertiser shall incorporate this Agreement. In the event of a conflict between any terms of an IO and this Agreement, the IO shall take precedence only where the Agreement section is specifically referenced and the IO is signed by an authorized representative of the Company.

  1. *Term and Termination.*

a. Term. The term of this Agreement shall begin upon the submission of an executed IO by Advertiser to Company. Such IO shall be construed as an acceptance by Advertiser of all the rates, terms and conditions under which advertising is sold at that time.

b. Termination of Agreement. Either party may terminate this Agreement upon thirty (30) days prior written notice to the other party, for any reason or for no reason. This Agreement may be terminated at any time by a party, effective immediately upon written notice, if the other party: (i) files a voluntary petition in bankruptcy; (ii) makes an assignment for the benefit of creditors; (iii) breaches any of the material terms of this Agreement if such breach is not remedied within three (3) business days from the receipt of written notice of such breach; or (iv) reasonably believes that the other party is in violation of an applicable regulation, statute or law in the performance of this Agreement. Notwithstanding such termination, the Advertiser shall remain liable to each other for all payment obligations incurred pursuant to this Agreement.

c. Cancellation of Campaign. Company expressly reserves the right to: (i) refuse any advertising request, cancel any Campaign, or change any Campaign that does not completely conform to every material detail, instruction, method, and guideline set forth in the Insertion Order; (ii) refuse any Creative(s) that does not arrive forty-eight (48) hours prior to the start date; (iii) refuse or cancel the use of any Campaign that it deems, in its reasonable discretion, violates an applicable regulation or statute of the United States; or (iv) refuse at any time to publish or transmit any copy, photograph or illustration of any kind for any reason including those that it believes, in its reasonable discretion, are an invasion of privacy, are degrading, libelous, unlawful, profane, obscene, pornographic, tend to ridicule or embarrass, are in bad taste, or which in its reasonable discretion are an infringement on a trademark, trade name, or copyright belonging to others, or is otherwise inappropriate. All Campaigns are subject to capacity limitations which include software, hardware, bandwidth, inventory availability, payment terms, credit history, creative performance, and market pricing limitations. Any Campaign rejected by Company may be replaced by Advertiser; provided that any such replacement material must be in writing and accompanied by appropriate material identifying the Campaign that it is to replace.

  2. *Advertiser's Campaign.*

a. Advertising Content and Creative. Advertiser shall provide all creative and substantive content materials ("Advertising Content") required for marketing the Campaign, including but not limited to banners, language/text for promotional e-mail text, links, key words, and any other creative content as needed, including but not limited to the use of alternative text-based creative. Advertiser is solely responsible for the substantive content and creative of each advertisement it submits or approves in writing. Advertiser agrees that Company exercises absolutely no editorial control over content. Advertiser is solely responsible for the substantive content of each advertisement. Company reserves the right to reject, suspend, or cancel any Advertising Content which in the sole opinion of the Company may violates an applicable law or may subject it to civil sanctions or is otherwise inappropriate. By submitting or approving any email creative or content, Advertiser represents and warrants that (i) the submission meets all applicable regulations and laws in effect governing the submission in the time of such submission; (ii) accurately reflects advertiser's product or service being advertised; and (iii) does not violate any applicable law or regulation governing deceptive advertising or consumer protection laws.

b. Functionality. Advertiser agrees to confirm the correct function of all Creative(s) supplied to Company within twenty-four (24) hours of the Campaign start. If no confirmation is received within this time frame, Company shall presume that Creative(s) are functioning properly and Advertiser agrees to pay for all impressions, clicks or leads derived from the Creative(s) as measured by Company. All problems related to Creative(s) should be immediately brought to the attention of the Company account executive for Advertiser. Company is not liable for errors in position and/or placement of the Creative(s), or typographic errors of any kind.

2                                                    _SD_ Initials

CONFIDENTIAL                                          M000002

07/28/2015  13:10    3102895953                                                      PAGE  09/19



or service mark, trade secret rights or any other personal, moral, contract, property or privacy right of any third party, (II) contain or promote viruses, obscene, abusive, violent, bigoted, hate-oriented, cracking, hacking or warez content or conduct; or (C) encourage conduct that would constitute Unlawful Conduct or Offensive Conduct: (iii) it has a reasonable basis for all claims made within the Creative, possesses appropriate documentation to substantiate such claims and shall fulfill all commitments made in its Campaigns; (iv) the landing page for each Campaign (i.e., the Advertiser's website page where a consumer is directed when the consumer clicks on the Creative, fills in a registration form or takes a similar action) contains a prominent link to Advertiser's privacy policy, which policy provides, at a minimum, adequate notice, disclosure and choices to consumers regarding Advertiser's use, collection, disclosure and security of their personal information; (v) all consumer data collected pursuant to this Agreement shall only be used for legal purposes; (vi) no data collected pursuant to this Agreement shall be used for online preference marketing based on a consumer's medical condition absent their express consent obtained after clear and conspicuous notice of such potential use; (vii) no Campaign is targeted to children under the age of eighteen (18) and/or offers products or services that are illegal for minors to buy, possess or participate in; and (ix) it will not load any computer program onto an individual's computer, in connection with the Campaign, including without limitation programs commonly referred to as adware or spyware but excluding cookies, without Company's prior written approval and the individual's express consent after receiving clear and conspicuous notice about the nature of the application to be downloaded

b. Advertiser represents and warrants that, i) All Creative provided to Company was created without any contribution of any kind from Company, including without limitation editorial control or approval; ii) Any suggestions regarding content that Advertiser received from Company are made "as-is" and without any warranty, and iii) Advertiser has had all Creative reviewed by competent legal counsel and solely assumes all responsibility for the Creative.

c. Advertiser agrees to indemnify and hold Company, its third party publishers and list providers and their respective affiliates, employees, officers, agents, directors and representatives, harmless from all allegations, claims, actions, causes of action, lawsuits, damages, liabilities, obligations, costs and expenses (including without limitation reasonable attorneys' fees, court costs and witness fees) arising out of or related to any third party claim of a breach of warranty or breach of this Agreement. The indemnity obligations of this paragraph are contingent on giving prompt written notice of any such claim. Advertiser will have sole control over the litigation or settlement of such claim, provided that any settlement shall be subject to the Company's approval, which shall not be unreasonably withheld.

*8. Mutual Warranties.*

Each party represents and warrants that it has the full right, power, legal capacity, and authority to enter into, deliver and fully perform under this Agreement and that its performance hereunder will fully comply with all applicable laws, rules and regulations, including but not limited to the CAN-SPAM Act of 2003 as amended or interpreted from time to time. Any agency executing this Agreement on behalf of its client represents and warrants that it has the authority to bind its client to the terms stated herein and remains jointly and severally liable for all obligations under this Agreement.

*9. Limitations of Warranties and Liability.*

a. THE ADVERTISING SERVICE PROVIDED BY COMPANY, ITS USE AND THE RESULTS OF SUCH USE ARE PROVIDED ON AN "AS IS," "AS AVAILABLE" BASIS. TO THE FULLEST EXTENT PERMISSIBLE PURSUANT TO APPLICABLE LAW, COMPANY MAKES NO WARRANTIES (INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT), GUARANTEES, REPRESENTATIONS, PROMISES, STATEMENTS, ESTIMATES, CONDITIONS, OR OTHER INDUCEMENTS, EXPRESS, IMPLIED, ORAL, WRITTEN, OR OTHERWISE, EXCEPT AS EXPRESSLY SET FORTH HEREIN. COMPANY DOES NOT WARRANT OR GUARANTEE CONVERSION RATES, PAY-UP RATES, RESPONSE RATES OR ABILITY TO CONVERT THE RESPONSES INTO SALES. COMPANY DOES NOT WARRANT OR GUARANTEE THE PROFILE OR DEMOGRAPHICS OF A RESPONDENT. COMPANY DOES NOT GUARANTEE TO MATCH COLORS, TEXT, PHOTO IMAGE OR SCREEN DESIGN. ALL ORDERS ARE CONTINGENT UPON COMPANY'S ABILITY TO PROCURE NECESSARY ON-LINE ACCESS AND COMPANY IS NOT RESPONSIBLE FOR DELAYS CAUSED BY ACCIDENT, WAR, ACT OF GOD, EMBARGO, COMPUTER SYSTEM FAILURE, OR ANY OTHER CIRCUMSTANCE BEYOND ITS CONTROL. COMPANY WILL MAKE EVERY EFFORT TO MEET SCHEDULED DELIVERY AND ONLINE DATES, BUT MAKES NO GUARANTEE AND ACCEPTS NO LIABILITY FOR ITS FAILURE TO MEET SAID DATES.

                                        8                                          $\underline{SP}$ Initials

CONFIDENTIAL                                                                        M000006

07/28/2015  13:10    3102895953                                          PAGE  10/19



b. NEITHER PARTY SHALL BE LIABLE FOR ANY PUNITIVE DAMAGES OR INDIRECT OR CONSEQUENTIAL LOSS, DAMAGE, COSTS OR EXPENSE OF ANY KIND WHATSOEVER AND HOWSOEVER CAUSED, WHETHER ARISING UNDER CONTRACT, TORT, NEGLIGENCE, STATUTE OR OTHERWISE, INCLUDING (WITHOUT LIMITATION) LOSS OF PRODUCTION, LOSS OF OR CORRUPTION TO DATA, LOSS OF PROFITS OR OF CONTRACTS, LOSS OF OPERATION TIME AND LOSS OF GOODWILL OR ANTICIPATED SAVINGS, EVEN IF ADVISED OF THEIR POSSIBILITY EXCEPT IF SUCH LOSSES ARE THE RESULT OF FRAUD ON THE PARTY OF COMPANY. IN ANY EVENT, COMPANY'S TOTAL OBLIGATIONS AND/OR LIABILITY, IF ANY HEREUNDER, SHALL BE LIMITED TO THE AMOUNTS PAID TO IT FOR THE ADVERTISING CAMPAIGN IN QUESTION.

c. The Provisions of this Section 9 are an essential element of the benefit of the bargain reflected in this AGREEMENT

**10. Proprietary Matters.**

a. Each party may use Confidential Information received from the other party only in connection with and to further the purposes of this Agreement and may only provide such Confidential Information to its respective directors, employees and advisors who have a "need to know" such Confidential Information and who are obligated to honor the terms of this Agreement. The fact that Confidential Information does not carry a proprietary legend, or is transmitted orally, shall not act as a waiver to deprive such information from protection under this Agreement.

b. Section 10(a) shall not apply to information which belongs to the Receiving Party or is: (i) already known by the Receiving Party, (ii) publicly known or becomes publicly known through no unauthorized act of the Receiving Party, (iii) lawfully received from a third party without restriction on use or disclosure if, to the Receiving Party's knowledge, such third party had the legal right to disclose such information, or (iv) independently developed by the Receiving Party without use of the Disclosing Party's Confidential Information. In addition a party may disclose Confidential Information hereunder if pre-approved in writing by the other party for disclosure, or if disclosure is required by law, governmental agency or rule, or court order, so long as the party required to disclose the information provides the other party with timely prior notice of such requirement.

c. The parties agree that during the term(s) of this Agreement and for a period of one year thereafter, they will not directly or indirectly solicit the employment of any of the other party's employees, officers or directors, provided, that employment solicitations directed to the general public shall not be prohibited pursuant to this Section.

d. Upon completion or termination of this Agreement or the written request of the Disclosing Party at any time, the Receiving Party shall, within five (5) business days from such completion, termination or request, return all copies of Confidential Information to the Disclosing Party or certify, in writing that all copies of Confidential Information have been destroyed; except for material reasonably required to be maintained by counsel. A Receiving Party may return Confidential Information, or any part thereof, to the Disclosing Party at any time.

e. During the term of this Agreement and for twelve (12) months thereafter, Advertiser shall not directly or indirectly solicit any on-line publisher, Web Site, or email provider that is affiliated with Company. In the event that Advertiser does so directly contract with such affiliate or in any other way violates this Agreement then Advertiser shall pay Company an additional commission equal to what the Company would otherwise have earned had Advertiser not violated this section 10. Any agency executing this Agreement represents and warrants that it has the authority to bind its client to the terms stated herein and remains jointly and severally liable for all obligations under this Agreement.

f. The parties agree and understand that a material breach of this Section 10 will cause the non-breaching party to suffer irreparable harm and that monetary damages may be inadequate to compensate for such damage. Accordingly, the parties agree that in such event, the non-breaching party will, in addition to all other remedies, may be entitled to preliminary and permanent injunctive relief without the necessity of showing any actual damage or posting a bond. The foregoing remedy is a material, bargained for basis of this Agreement and has been taken into account in each party's decision to enter into this Agreement.

**11. Dispute Resolution.**

This Agreement shall be governed by the laws of the United States and the State of Florida without respect to choice of law rules. The Parties consent to have all disputes regarding this agreement resolved by binding arbitration before the American Arbitration

7

$\underline{SB}$ Initials

CONFIDENTIAL                                        M000007

App.000160

07/28/2015   13:10     3102895953                                      PAGE   11/19



Association, Commercial Division. The parties agree to conduct the arbitration in the county of Company's principle office and each party shall bear the costs of such arbitration. The parties specifically waive any international treaties or other international law which may govern the court at location of resolution of any dispute between them. This provision was a bargained for relinquishment of both parties rights to jurisdiction in their respective states or countries. The Parties waive the personal service of any process upon them and agree that service may be completed by overnight mail (using a commercially recognized service) or by U.S. mail with delivery receipt to the address stated in this Agreement. Company shall be entitled to recover all reasonable costs of collection (including attorney's fees, in-house counsel costs, expenses and costs) incurred in attempting to collect payment from Advertiser. The prevailing party in any Arbitration shall be entitled to an award of attorney fees and costs for such arbitration.

### 12. Notice.

All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed given at the time such communication (i) sent by registered or certified mail (return receipt requested), or recognized national overnight courier service, or delivered personally, to the following addresses (or at such other address for a party as shall be specified by like notice): If to Company, to the attention of both the President at 2910 Maguire Road, Suite 3010, Ocoee, FL 34761 with a courtesy copy (i) with a courtesy copy to IFRAH LAW, PLLC, at 1717 Pennsylvania Ave, N.W. Suite 650 Washington, DC 20006   If to Advertiser, to the person listed as the contact person and at the address listed on the initial IO.

### 13. Independent Contractors.

Each party is an independent contractor. Any intention to create a joint venture or partnership between the parties is expressly disclaimed. Except as set forth herein, neither party is authorized or empowered to obligate the other or to incur any costs on behalf of the other without the other party's prior written consent.

### 14. Entire Agreement, Modification, Assignment.

This Agreement and exhibits or addendum thereto constitutes a valid and binding agreement between the parties, and has been duly executed by an authorized representative of each party. This Agreement and any exhibits or addenda thereto is intended to be the parties' complete, integrated expression of the terms of their agreement and any prior agreements or understandings with respect to such subject matters are superseded hereby and fully merged herein, and may only be modified in writing by authorized representatives of the parties. The terms and conditions hereof shall prevail exclusively over any written instrument or Insertion Order submitted by Advertiser even if signed by Company unless this Agreement is expressly amended by an addendum attached herein that references this Agreement and the specific provisions to be modified. No interlineations to this Agreement shall be binding unless signed by both parties. In the event that a party is required to digitally sign or agree to additional terms when using the other's website, the parties acknowledge and agree that such digital agreement is inconsequential and in no way binding; that it is the result of a technical requirement, which cannot be altered, in order to view stats and access Advertising Content. Therefore, any terms which appear on the other's online advertising network or website are to be disregarded and deemed non-effective, and shall be superseded by this Agreement. Neither party may assign this Agreement without express written permission of the other party.

### 15. Survival & Severability.

Any obligations which expressly or by their nature are to continue after termination, cancellation, or expiration of this Agreement shall survive and remain in effect after such happening, including without limitation, Sections 6, 7, 9-11, 14,15 and 17. Each party acknowledges that the provisions of this Agreement were negotiated to reflect an informed, voluntary allocation between them of all the risks (both known and unknown) associated with the transactions contemplated hereunder. Further, all provisions are inserted conditionally on their being valid in law. In the event that any provision of this Agreement conflicts with the law under which the Agreement is to be construed or if any such provision is held invalid or unenforceable by a court with jurisdiction over the parties to the Agreement, (i) such provision will be restated to reflect as nearly as possible the original intentions of the parties in accordance with applicable law; and (ii) the remaining terms, provisions, covenants, and restrictions of the Agreement will remain in full force

8                                                                         ___ Initials





and effect.

*13. Remedies; Waiver.*

Except as otherwise specified, the rights and remedies granted to a party under this Agreement are cumulative and in addition to, not in lieu of, any other rights and remedies which the party may possess at law or in equity. Failure of either party to require strict performance by the other party of any provision shall not affect the first party's right to require strict performance thereafter. Waiver by either party of a breach of any provision shall not waive either the provision itself or any subsequent breach.

*14. Counterparts.*

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute one and the same instrument. For purposes hereof, a facsimile copy of this Agreement shall be deemed to be an original.

By executing this Agreement, the parties acknowledge that they have reviewed the terms and conditions incorporated herein and agree to be legally bound by the same. The parties hereby cause this Agreement to be executed by their duly authorized representatives and made effective as of the Effective Date.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date set forth above.

ADVERTISER:                                    MOBOOKA, LLC

By: Stephan Bauer                              By:

Printed Name:                                  Printed Name:

Title: CEO                                     Title:

Company: S.B.M Mgmt                            

Address:

                                   9                        SB Initials

CONFIDENTIAL                                                M000009

07/28/2015 13:10    3102895953                                        PAGE 13/19



Email:

Fax:

Guarantor:

9

$\underline{SB}$ Initials

CONFIDENTIAL

M000010

App.000163

07/28/2015  13:10   3102895953                                                    PAGE  14/19

| Form **8879-C** | **IRS e-file Signature Authorization for Form 1120** | OMB No. 1545-1864 |
|---|---|---|
| | For calendar year 2012, or tax year beginning _____ , 2012, ending _____ | **2012** |
| Department of the Treasury Internal Revenue Service | ► Do not send to the IRS. Keep for your records. ► Information about Form 8879-C and its instructions is at www.irs.gov/form1120. | |
| Name of corporation | | Employer identification number |
| SBM MANAGEMENT INC | | 1765 |

**Part I Tax Return Information (Whole dollars only)**

| | | | |
|---|---|---|---|
| 1 | Total income (Form 1120, line 11)............................................................ | 1 | 2,670,864. |
| 2 | Taxable income (Form 1120, line 30)......................................................... | 2 | 13,552. |
| 3 | Total tax (Form 1120, line 31)................................................................. | 3 | 2,033. |
| 4 | Amount owed (Form 1120, line 34)............................................................ | 4 | 2,070. |
| 5 | Overpayment (Form 1120, line 35)............................................................ | 5 | |

**Part II Declaration and Signature Authorization of Officer (Be sure to get a copy of the corporation's return)**

Under penalties of perjury, I declare that I am an officer of the above corporation and that I have examined a copy of the corporation's 2012 electronic income tax return and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the corporation's electronic income tax return. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the corporation's return to the IRS and to receive from the IRS (a) an acknowledgement of receipt or reason for rejection of the transmission,(b) the reason for any delay in processing the return or refund, and(c) the date of any refund. If applicable, I authorize the U.S. Treasury and its designated Financial Agent to initiate an electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of the corporation's federal taxes owed on this return, and the financial institution to debit the entry to this account. To revoke a payment, I must contact the U.S. Treasury Financial Agent at 1-888-353-4537 no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment. I have selected a personal identification number (PIN) as my signature for the corporation's electronic income tax return and, if applicable, the corporation's consent to electronic funds withdrawal.

Officer's PIN: check one box only

[X] I authorize __DAVIDIAN & ASSOCIATES, APAC__ to enter my PIN _____ as my signature
ERO firm name                                                   do not enter all zeros

on the corporation's 2012 electronically filed income tax return.

[ ] As an officer of the corporation, I will enter my PIN as my signature on the corporation's 2012 electronically filed income tax return.

Officer's signature ► _____    Date► _9-6-2013_   Title► CEO

**Part III Certification and Authentication**

ERO's EFIN/PIN. Enter your six-digit EFIN followed by your five-digit self-selected PIN ........................ ____1345
                                                                                            do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the 2012 electronically filed income tax return for the corporation indicated above. I confirm that I am submitting this return in accordance with the requirements of Pub 3112, IRS e-file Application and Participation, and Pub 4163, Modernized e-File (MeF) Information for Authorized IRS e-file Providers for Business Returns.

ERO's signature ► _Z. DAVID DAVIDIAN, CPA_                              Date►

**ERO Must Retain This Form— See Instructions**
**Do Not Submit This Form to the IRS Unless Requested To Do So**

BAA For Paperwork Reduction Act Notice, see instructions.                                    Form 8879-C (2012)

CPCA12011  11/24/12



07/28/2015  13:10    3102895953                                        PAGE  15/19

059

Date Accepted                                          DO NOT MAIL THIS FORM TO FTB

| TAXABLE YEAR | California e-file Return Authorization for Corporations | FORM |
|---|---|---|
| 2012 | | 8453-C |

| Corporation name | Corporation number |
|---|---|
| SBM MANAGEMENT INC | 765 |

**Part I   Tax Return Information** (whole dollars only)

| | | | |
|---|---|---|---|
| 1 | Total income (Form 100, line 9, Form 100S, line 8, Form 100W, line 9 or Form 100X, Line 6)............ 1 | | 15,140. |
| 2 | Taxable income (Form 100, line 23, Form 100S, line 21, Form 100W, line 23 or Form 100X, Line 10)..... 2 | | 15,140. |
| 3 | Total tax (Form 100, line 31, Form 100S, line 30, Form 100W, line 31, Form 100X, Line 15)............ 3 | | 1,338. |
| 4 | Tax due (Form 100, line 37, Form 100S, line 36, Form 100W, line 37 or Form 100X, Line 28)........... 4 | | 538. |
| 5 | Overpayment (Form 100, line 38, Form 100S, line 37, Form 100W, line 38 or Form 100X, Line 27)....... 5 | | |

**Part II   Settle Your Account Electronically for Taxable Year 2012**

6  ☐ Direct deposit of refund

7  ☐ Electronic funds withdrawal    7a  Amount                7b  Withdrawal date (MM/DD/YYYY)

**Part III   Schedule of Estimated Tax Payments for Taxable Year 2013** (These are NOT installment payments for the current amount the corporation owes.)

| | First Payment | Second Payment | Third Payment | Fourth Payment |
|---|---|---|---|---|
| 8  Amount | | | | |
| 9  Withdrawal Date | | | | |

**Part IV   Banking Information** (Have you verified the corporation's banking information?)

10  Routing number

11  Account number                                    12  Type of account:  ☐ Checking        ☐ Savings

**Part V   Declaration of Officer**

I authorize the corporate account be settled as designated in Part II. If I check Part II, Box 6, I declare that the account specified in Part IV for the direct deposit refund agrees with the authorization stated on my return. If I check Part II, Box 7, I authorize an electronic funds withdrawal for the amount listed on 7a and any estimated payment amounts listed on line 8 from the account specified in Part IV.

Under penalties of perjury, I declare that I am an officer of the above corporation and that the information I provided to my Electronic return originator (ERO), transmitter, or intermediate service provider and the amounts in Part I above agree with the amounts on the corresponding lines of the corporation's 2012 California income tax return. To the best of my knowledge and belief, the corporation's return is true, correct, and complete. If the corporation is filing a balance due return, I understand that if the Franchise Tax Board (FTB) does not receive full and timely payment of the corporation's tax liability, the corporation will remain liable for the tax liability and all applicable interest and penalties. I authorize the corporation return and accompanying schedules and statements be transmitted to the FTB by the ERO, transmitter, or intermediate service provider. If the processing of the corporation's return or refund is delayed, I authorize the FTB to disclose to the ERO, intermediate service provider, (the paid date) for the delay or the date when the refund was sent.

Sign
Here        Signature of Officer              9-6-2013             CEO
                                              Date                 Title

**Part VI   Declaration of Electronic Return Originator (ERO) and Paid Preparer.** See instructions.

I declare that I have reviewed the above corporation's return and that the entries on form 8453-C are complete and correct to the best of my knowledge. (If I am only an Intermediate Service Provider, I understand that I am not responsible for reviewing the corporation's return. I declare, however, that form 8453-C accurately reflects the data on the return.) I have obtained the corporate officer's signature on form FTB 8453-C before transmitting this return to the FTB; I have provided the corporate officer with a copy of all forms and information that I will file with the FTB, and I have followed all other requirements described in FTB Pub. 1345B, 2012 Business e-file Handbook for Authorized e-file Providers, and in FTB Pub. 1345, 2012 e-file Handbook for Authorized e-file Providers. I will keep form FTB 8453-C on file (four years from the due date of the return or four years from the date the corporation return is filed, whichever is later, and I will make a copy available to the FTB upon request. If I am also the paid preparer, under penalties of perjury, I declare that I have examined the above corporation's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I make this declaration based on all information of which I have knowledge.

| | | | | |
|---|---|---|---|---|
| ERO Must Sign | ERO's signature ▶ | Date | Check if also paid preparer ☒   Check if self-employed ☐ | ERO's PTIN |
| | Firm's name (or yours if self-employed) and address ▶ | DAVIDYAN & ASSOCIATES, APAC | FEIN | 009 |
| | | 200 N MARYLAND AVE STE 300 | | |
| | | GLENDALE, CA | ZIP Code 91206-4276 | |

Under penalties of perjury, I declare that I have examined the above corporation's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I make this declaration based on all information of which I have knowledge.

| | | | | |
|---|---|---|---|---|
| Paid Preparer Must Sign | Paid preparer's signature ▶ | Date | Check if self-employed ☐ | Paid PTIN |
| | Firm's name (or yours if self-employed) and address ▶ | | FEIN | |
| | | | ZIP Code | |

For Privacy Notice, get form FTB 1131.            CACA9101L 11/27/12                    FTB 8453-C  2012

EXHIBIT

App.000165

07/28/2015  13:10    3102895953                                              PAGE  16/19

Mar. 17. 2014  2:19PM                                          No. 7089   P. 1/10

| Form **8879-C** | | IRS e-*file* Signature Authorization for Form 1120 | | OMB No. 1545-1864 |
|---|---|---|---|---|
| | | For calendar year 2012, or tax year beginning _____, 2013, ending _____ | | **2013** |
| Department of the Treasury Internal Revenue Service | | ► Do not send to the IRS. Keep for your records. ► Information about Form 8879-C and its instructions is at *www.irs.gov/form8879c.* | | |

| Name of corporation | | Employer identification number |
|---|---|---|
| SBM MANAGEMENT INC | | 765 |

**Part I Tax Return Information (Whole dollars only)**

| | | |
|---|---|---|
| 1 Total income (Form 1120, line 11) | 1 | 2,342,508. |
| 2 Taxable income (Form 1120, line 30) | 2 | 8,148. |
| 3 Total tax (Form 1120, line 31) | 3 | 1,222. |
| 4 Amount owed (Form 1120, line 34) | 4 | 1,244. |
| 5 Overpayment (Form 1120, line 35) | 5 | |

**Part II Declaration and Signature Authorization of Officer (Be sure to get a copy of the corporation's return)**

Under penalties of perjury, I declare that I am an officer of the above corporation and that I have examined a copy of the corporation's 2013 electronic income tax return and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the corporation's electronic income tax return. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the corporation's return to the IRS and to receive from the IRS (a) an acknowledgement of receipt or reason for rejection of the transmission, (b) the reason for any delay in processing the return or refund, and (c) the date of any refund. If applicable, I authorize the U.S. Treasury and its designated Financial Agent to initiate an electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of the corporation's federal taxes owed on this return, and the financial institution to debit the entry to this account. To revoke a payment, I must contact the U.S. Treasury Financial Agent at 1-888-353-4537 no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment. I have selected a personal identification number (PIN) as my signature for the corporation's electronic income tax return and, if applicable, the corporation's consent to electronic funds withdrawal.

**Officer's PIN: check one box only**

☒ I authorize  DAVIDIAN & ASSOCIATES, APAC                     to enter my PIN [____] as my signature
                        ERO firm name                                          do not enter all zeros
on the corporation's 2013 electronically filed income tax return.

☐ As an officer of the corporation, I will enter my PIN as my signature on the corporation's 2013 electronically filed income tax return.

Officer's signature ► [signature]                      Date ► 3-17-14     Title ► CEO

**Part III Certification and Authentication**

ERO's EFIN/PIN. Enter your six-digit EFIN followed by your five-digit self-selected PIN. ......................................... :345
                                                                                                do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the 2013 electronically filed income tax return for the corporation indicated above. I confirm that I am submitting this return in accordance with the requirements of Pub 3112, IRS e-file Application and Participation, and Pub 4163, Modernized e-File (MeF) Information for Authorized IRS e-File Providers for Business Returns.

ERO's signature ►  Z. DAVID DAVIDIAN, CPA                      Date ►

**ERO Must Retain This Form — See Instructions**
**Do Not Submit This Form to the IRS Unless Requested To Do So**

BAA For Paperwork Reduction Act Notice, see instructions.                              Form 8879-C (2013)

CPCA1201L  11/28/13

EXHIBIT
4

07/28/2015  13:10    3102895953                                                      PAGE  17/19

mar 17, 2014  2:24PM                                                     No. 7984   P. 2/10

059

Date Accepted                                                 DO NOT MAIL THIS FORM TO FTB

| TAXABLE YEAR | | FORM |
|---|---|---|
| **2013** | **California e-file Return Authorization for Corporations** | **8453-C** |

Corporation name: SBM MANAGEMENT INC

Identifying number: 1768

**Part I    Tax Return Information** (whole dollars only)

| | | |
|---|---|---|
| 1 | Total income (Form 100, line 9, Form 100S, line 6, Form 100W, line 9 or Form 100X, Line 4) . . . . . . . . . . . . 1 | 9,403. |
| 2 | Taxable income (Form 100, line 22, Form 100S, line 21, Form 100W, line 23 or Form 100X, line 10) . . . . . . . . 2 | 9,403. |
| 3 | Total tax (Form 100, line 31, Form 100S, line 30, Form 100W, line 31, Form 100X, line 16) . . . . . . . . . . . . . . 3 | 831. |
| 4 | Tax due (Form 100, line 37, Form 100S, line 36, Form 100W, line 37 or Form 100X, line 20) . . . . . . . . . . . . . 4 | 33. |
| 5 | Overpayment (Form 100, line 38, Form 100S, line 37, Form 100W, line 38 or Form 100X, line 27) . . . . . . . . . 5 | |

**Part II   Settle Your Account Electronically for Taxable Year 2013**

| | | |
|---|---|---|
| 6 | ☐ Direct deposit of refund | |
| 7 | ☒ Electronic funds withdrawal    7a Amount    31.    7b Withdrawal date (mm/dd/yyyy)    3/17/2014 |

**Part III   Schedule of Estimated Tax Payments for Taxable Year 2014** (These are NOT installment payments for the current amount the corporation owes.)

| | First Payment | Second Payment | Third Payment | Fourth Payment |
|---|---|---|---|---|
| 8 Amount | | | | |
| 9 Withdrawal Date | | | | |

**Part IV   Banking Information** (Have you verified the corporation's banking information?)

| | | |
|---|---|---|
| 10 | Routing number    122000247 | |
| 11 | Account number    7709839091    12 Type of account  ☒ Checking    ☐ Savings |

**Part V    Declaration of Officer**

I authorize the corporate account be settled as designated in Part II. If I check Part II, Box 6, I declare that the account specified in Part IV for the direct deposit refund agrees with the authorization stated on my return. If I check Part II, Box 7, I authorize an electronic funds withdrawal for the amount listed on 7a and any estimated payment amounts listed on line 8 from the account specified in Part IV.

Under penalties of perjury, I declare that I am an officer of the above corporation and that the information I provided to my Electronic return originator (ERO), transmitter, or intermediate service provider and the amounts in Part I above agree with the amounts on the corresponding lines of the corporation's 2013 California income tax return. To the best of my knowledge and belief, the corporation's return is true, correct, and complete. If the corporation is filing a balance due return, I understand that if the Franchise Tax Board (FTB) does not receive full and timely payment of the corporation's tax liability, the corporation will remain liable for the tax liability and all applicable interest and penalties. I authorize the corporation return and accompanying schedules and statements be transmitted to the FTB by the ERO, transmitter, or intermediate service provider. If the processing of the corporation's return or refund is delayed, I authorize the FTB to disclose to the ERO, intermediate service provider, the reason(s) for the delay or the date when the refund was sent.

Sign Here  ▶  [signature]          3/17/14          CEO
                Signature of officer        Date        Title

**Part VI   Declaration of Electronic Return Originator (ERO) and Paid Preparer.** See instructions.

I declare that I have reviewed the above corporation's return and that the entries on form FTB 8453-C are complete and correct to the best of my knowledge. (If I am only an Intermediate Service Provider, I understand that I am not responsible for reviewing the corporation's return. I declare, however, that form FTB 8453-C accurately reflects the data on the return.) I have obtained the corporate officer's signature on form FTB 8453-C before transmitting this return to the FTB; I have provided the corporate officer with a copy of all forms and information that I will file with the FTB, and I have followed all other requirements described in FTB Pub. 1345, 2013 e-file Handbook for Authorized e-file Providers. I will keep form FTB 8453-C on file for four years from the due date of the return or four years from the date the corporation return is filed, whichever is later, and I will make a copy available to the FTB upon request, if I am also the paid preparer, under penalties of perjury, I declare that I have examined the above corporation's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I make this declaration based on all information of which I have knowledge.

| ERO Must Sign | ERO's signature ▶ | Date | Check if also paid preparer ☒ | Check if self-employed ☐ | ERO's PTIN |
|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed) and address | DAVIDIAN & ASSOCIATES, APAC | | FEIN | 009 |
| | | 200 N MARYLAND AVE STE 300 | | | |
| | | GLENDALE, CA | | ZIP Code | 91206-4276 |

Under penalties of perjury, I declare that I have examined the above corporation's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I make this declaration based on all information of which I have knowledge.

| Paid Preparer Must Sign | Paid preparer's signature ▶ | Date | Check if self-employed ☐ | Paid PTIN |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed) and address ▶ | | FEIN | |
| | | | ZIP Code | |

For Privacy Notice, get form FTB 1131 ENG/SP.        CACA0901L  11/2013                    FTB 8453-C   2013

EXHIBIT 2

App.000167

Form 8879-C — IRS e-file Signature Authorization for Form 1120

OMB No. 1545-0123 — 2014

Department of the Treasury, Internal Revenue Service

Name of corporation: SBM MANAGEMENT INC

Employer identification number: .165

Part I — Tax Return Information (Whole dollars only)

1. Total income (Form 1120, line 11) — 1 — 1,384,167.
2. Taxable income (Form 1120, line 30) — 2 — -2,969.
3. Total tax (Form 1120, line 31) — 3 —
4. Amount owed (Form 1120, line 34) — 4 —
5. Overpayment (Form 1120, line 35) — 5 —

Part II — Declaration and Signature Authorization of Officer (Be sure to get a copy of the corporation's return)

Officer's PIN: check one box only

[X] I authorize DAVIDIAN & ASSOCIATES, APAC to enter my PIN as my signature on the corporation's 2014 electronically filed income tax return.

[ ] As an officer of the corporation, I will enter my PIN as my signature on the corporation's 2014 electronically filed income tax return.

Officer's signature ▶ _____ Date ▶ MARCH 15, 15 Title ▶ CEO

Part III — Certification and Authentication

ERO's EFIN/PIN. Enter your six-digit EFIN followed by your five-digit self-selected PIN. — 345

ERO's signature ▶ Z. DAVID DAVIDIAN, CPA — Date ▶

ERO Must Retain This Form — See Instructions
Do Not Submit This Form To the IRS Unless Requested To Do So

BAA For Paperwork Reduction Act Notice, see instructions. — Form 8879-C (2014)



EXHIBIT 6

07/28/2015  13:10   3102895953 — PAGE 18/19

Case 2:15-cv-04527-GW-PLA   Document 165-3   Filed 08/14/15   Page 37 of 37   Page ID
Case 2:15-cv-04527-GW-PLA   Document 123964 Filed 08/03/15   Page 9 of 9   Page ID #:2811
#:3964

07/28/2015  13:18    3102895953

PAGE  19/19

Resque Facial Peel                                            Jar 50ml Red

650

Date Accepted                                              DO NOT MAIL THIS FORM TO FTB

| TAXABLE YEAR 2014 | California e-file Return Authorization for Corporations | FORM 8453-C |
|---|---|---|

Corporation name
SBM MANAGEMENT INC                                          1765

**Part I   Tax Return Information** (whole dollars only)

| | | |
|---|---|---|
| 1 Total income (Form 100, line 9, Form 100S, line 8, Form 100W, line 9 or Form 100X, Line 6)......... 1 | | -2,169 . |
| 2 Taxable income (Form 100, line 22, Form 100S, line 20, Form 100W, line 22 or Form 100X, Line 10)....... 2 | | -2,953 . |
| 3 Total tax (Form 100, line 31, Form 100S, line 30, Form 100W, line 31, Form 100X, line 19)............. 3 | | 800 . |
| 4 Tax due (Form 100, line 37, Form 100S, line 36, Form 100W, line 37 or Form 100X, Line 20)............ 4 | | |
| 5 Overpayment (Form 100, line 38, Form 100S, line 37, Form 100W, line 38 or Form 100X, Line 27)........ 5 | | |

**Part II   Settle Your Account Electronically for Taxable Year 2014**

6 ☐ Direct deposit of refund
7 ☐ Electronic funds withdrawal   7a  Amount                     7b  Withdrawal date (mm/dd/yyyy)

**Part III   Schedule of Estimated Tax Payments for Taxable Year 2015** (These are NOT installment payments for the current amount the corporation owes.)

| | First Payment | Second Payment | Third Payment | Fourth Payment |
|---|---|---|---|---|
| 8 Amount | | | | |
| 9 Withdrawal Date | | | | |

**Part IV   Banking Information** (Have you verified the corporation's banking information?)

10  Routing number
11  Account number                           12  Type of account:  ☐ Checking   ☐ Savings

**Part V   Declaration of Officer**

I authorize the corporate account to be settled as designated in Part II. If I check Part II, Box 6, I declare that the account specified in Part IV for the direct deposit refund agrees with the authorization stated on my return. If I check Part II, Box 7, I authorize an electronic funds withdrawal for the amount listed on line 7a and any estimated payment amounts listed on line 8 from the account specified in Part IV.

Under penalties of perjury, I declare that I am an officer of the above corporation and that the information I provided to my electronic return originator (ERO), transmitter, or intermediate service provider and the amounts in Part I above agree with the amounts on the corresponding lines of the corporation's 2014 California income tax return. To the best of my knowledge and belief, the corporation's return is true, correct, and complete. If the corporation is filing a balance due return, I understand that if the Franchise Tax Board (FTB) does not receive full and timely payment of the corporation's tax liability, the corporation will remain liable for the tax liability and all applicable interest and penalties. I authorize the corporation return and accompanying schedules and statements be transmitted to the FTB by the ERO, transmitter, or intermediate service provider. If the processing of the corporation's return or refund is delayed, I authorize the FTB to disclose to the ERO or intermediate service provider the reason(s) for the delay or the date when the refund was sent.

Sign      ►                                            1/20/15 ►    CEO
Here       Signature of officer                          Date          Title

**Part VI   Declaration of Electronic Return Originator (ERO) and Paid Preparer. See instructions.**

I declare that I have reviewed the above corporation's return and that the entries on form FTB 8453-C are complete and correct to the best of my knowledge. (If I am only an intermediate service provider, I understand that I am not responsible for reviewing the corporation's return. I declare, however, that form FTB 8453-C accurately reflects the data on the return.) I have obtained the corporate officer's signature on form FTB 8453-C before transmitting this return to the FTB; I have provided the corporate officer with a copy of all forms and information that I will file with the FTB, and I have followed all other requirements described in FTB Pub. 1346, 2014 e-file Handbook for Authorized e-file Providers. I will keep form FTB 8453-C on file for four years from the due date of the return or four years from the date the corporation return is filed, whichever is later, and I will make a copy available to the FTB upon request. If I am also the paid preparer, under penalties of perjury, I declare that I have examined the above corporation's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I make this declaration based on all information of which I have knowledge.

| ERO Must Sign | ERO's signature ► | Date | Check if also paid preparer ☒ | Check if self-employed ☐ | ERO's PTIN |
|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed) and address ► | DAVIDIAN & ASSOCIATES, APAC 200 N MARYLAND AVE STE 300 GLENDALE, CA | | FEIN | 9009 |
| | | | | ZIP Code | 91206-4276 |

Under penalties of perjury, I declare that I have examined the above corporation's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I make this declaration based on all information of which I have knowledge.

| Paid Preparer Must Sign | Paid preparer's signature ► | Date | Check if self-employed ☐ | Paid preparer's PTIN |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed) and address ► | | | FEIN |
| | | | | ZIP Code |

For Privacy Notice, get FTB 1131 ENG/SP.       CADA3601L 11/18/14                    FTB 8453-C  2014

EXHIBIT 2

2