






EXHIBIT G

**Bank of America**

BANK OF AMERICA, N.A. (THE "BANK")

**Business Signature Card with Substitute Form W-9**

**Account Number:** _____  **Bank Number:** 318

**Account Type:** ☒ DDA  ☐ SAV  ☐ CD

**Account Title:**

FOCUS MEDIA SOLUTIONS INC

---

**Legal Designation:**

☐ Individual/Sole Proprietor   ☐ Trust/Estate   ☐ Unincorporated Association   ☒ C Corporation   ☐ S Corporation

☐ Partnership (Enter the type of partnership: General, LP, LLP or LLLP) _____

☐ Limited Liability Company (Enter tax classification: C=C Corporation, S=S Corporation, P=Partnership or M=Single Member Sole Proprietor) ____

☐ Other (Defined in W-9 instructions) _____

**Social Security Number** _____ (or) **Employer Identification Number** _____

By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time. The account opening documents include the Deposit Agreement and Disclosures and the Business Schedule of Fees. Furthermore, **I/we acknowledge** the receipt of these documents. **By signing below, I/we acknowledge and agree** that the signature(s) will serve as verification for any transactions in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN) to which **I/we want** interest reported. The Deposit Agreement includes a provision for alternative dispute resolution.

**Substitute Form W-9.** Certification - Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a US citizen or other US person (Defined in the W-9 instructions) and (4) the FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instructions:** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. (Please refer to the IRS instructions for Form W-9).

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

**Exempt payee code (if any)** _____

**Exemption from FATCA reporting code (if any)** _____

☐ **Nonresident Alien Status (if applicable)** If the beneficial owner of this account is a foreign person, check here, and complete and sign the applicable Form(s) W-8.

| Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|
| 1 DAVID YOSAFIAN | PRESIDENT | [signature] | 8/22/14 |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

NCA
00-14-9297M 06-2014

© 2012 Bank of America, N.A. All Rights Reserved
Page 1 of 2

Account Number: _____

☐ Signature Card Addendum on File

**ATM/Deposit/Debit Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Debit Cards, I (as authorized by the resolutions and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

_____          _____President_____
Authorized Signer                                              Title

**Review Information**

**Customer 1:**

Name  DAVID YOSAFIAN

ID Type: US Driver License W/Photo    ID#: _____    ID Issuer: California    Iss. Date: 05/2012    Exp. Date: _____

ID Type: Other    ID#: _____    ID Issuer: SS CARD    Iss. Date: N/A    Exp. Date: N/A

**Customer 2:**

Name _____

ID Type: _____    ID#: _____    ID Issuer: _____    Iss. Date: _____    Exp. Date: _____

ID Type: _____    ID#: _____    ID Issuer: _____    Iss. Date: _____    Exp. Date: _____

**Customer 3:**

Name _____

ID Type: _____    ID#: _____    ID Issuer: _____    Iss. Date: _____    Exp. Date: _____

ID Type: _____    ID#: _____    ID Issuer: _____    Iss. Date: _____    Exp. Date: _____

**Customer 4:**

Name _____

ID Type: _____    ID#: _____    ID Issuer: _____    Iss. Date: _____    Exp. Date: _____

ID Type: _____    ID#: _____    ID Issuer: _____    Iss. Date: _____    Exp. Date: _____

**Customer 5:**

Name _____

ID Type: _____    ID#: _____    ID Issuer: _____    Iss. Date: _____    Exp. Date: _____

ID Type: _____    ID#: _____    ID Issuer: _____    Iss. Date: _____    Exp. Date: _____

**Bank Information**

| | |
|---|---|
| Date | 08/22/2014 |
| Banking Center Name | TARZANA |
| Associate's Name | Shaghayegh Esmaeili |
| Associate's Phone Number | 818-712-6015 |

NCA
00-14-9297M  06-2014



Page 2 of 2



**Bank of America**

BANK OF AMERICA, N.A. (THE "BANK")

**Certified Copy of Corporate Resolutions - Opening and Maintaining Deposit Accounts and Services**

Account Number: _____

Name of Corporation   FOCUS MEDIA SOLUTIONS INC

I, the undersigned, hereby certify to   BANK OF AMERICA, N.A. _____,

that I am the Secretary/Assistant Secretary and the designated keeper of the records and minutes of _____

FOCUS MEDIA SOLUTIONS INC _____, duly organized and existing under the laws of the

State of   _California_   (the "Corporation"); that the following is a true copy of resolutions duly adopted by the Board of Directors of said Corporation at a meeting duly held on the   _22_   day of   _August, 2014_  , at which a quorum was present and acted throughout or adopted by the unanimous written consent of the Board of Directors; and that such resolutions are in full force and effect and have not been amended or rescinded.

1. **Resolved,** that   BANK OF AMERICA, N.A.   (the "Bank") is hereby designated as a depository of the Corporation and that deposit accounts and/or time deposits (CDs) be opened and maintained in the name of this Corporation with Bank in accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts; that any one of the following officers or employees of the Corporation:

_David Yosafian_                               _President_
Name                                           Title

_____                         _____
Name                                           Title

_____                         _____
Name                                           Title

_____                         _____
Name                                           Title

is hereby authorized, on behalf of this Corporation and in its name, to execute and to sign any application, deposit agreement, signature card and any other documentation required by Bank to open said accounts; to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment of money; to endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this Corporation for deposit with Bank or for collection or discount by Bank; to accept drafts, acceptances, and other instruments payable at Bank; to place orders with Bank for the purchase and sale of foreign currencies on behalf of this Corporation; to execute and deliver an electronic fund transfers agreement and to make transfers or withdrawals by electronic transfer on behalf of the Corporation; to obtain an access device (including but not limited to a card, code, or other means of access to the Corporation's accounts) that may be used for the purpose of initiating electronic fund transfers [Corporation agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor Regulation E (12 C.F.R. Part 205) are applicable to any such access device]; to establish and maintain a night deposit relationship; to execute and deliver a wire transfer agreement and to request, or to appoint or delegate from time to time such persons who may request, wires of funds; to enter into any agreements with the Bank for the provision by Bank of various Treasury Management services to this Corporation as such officer or employee may determine, in his or her sole discretion, and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the Corporation's obligations thereunder, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate given in accordance with the terms of any such agreement shall have been received by Bank and that such termination shall not affect any action taken by the Bank prior to such termination; to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the rental agreement or lease; to take whatever other actions or enter in to whatever other agreements relating to the accounts or investment of funds in such accounts with Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Corporation upon such terms and conditions as such officer or employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any other actions pursuant to such agreements in connection with said accounts that the officer or employee deems necessary; and to waive presentment, demand, protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Corporation; and

2. **Further Resolved,** that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the order of any officer or employee signing the same or tendered by such officer or employee or a third party for exchange or cashing, or in payment of the individual obligation of such officer or employee, or for deposit to such officer's or employee's personal account and Bank shall not be required or be under any obligation to inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the application or disposition of such instrument or the proceeds thereof; and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for payment or transfer of funds whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized officer or employee; and

3. **Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for the payment of money drawn or purportedly drawn in this Corporation's name, including those payable to the individual order of any person whose name appears thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an officer or employee authorized in the foregoing resolutions and Bank shall be entitled to honor, to treat as authorized, and to charge this Corporation for such checks, drafts, or other orders regardless of by whom or by what means the actual or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed with the Bank by the Secretary or Assistant Secretary or other officer of this Corporation or if such facsimile signature resembles any facsimile signature previously affixed to any check, draft, or other order drawn in the Corporation's name, which check, draft, or other order was accepted and paid without timely objection by the Corporation, thereby ratifying the use of such facsimile signature; and the Corporation hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or expense suffered or incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature; and

NCA
00-14-9012M 11-2013



Account Number: _____

4. **Further Resolved,** that endorsements for deposit may be evidenced by the name of the Corporation being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection; and

5. **Further Resolved,** that the Secretary or Assistant Secretary of this Corporation shall certify to Bank names and signatures of persons authorized to act on behalf of this Corporation under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said officers and employees are made, immediately report, furnish and certify such changes to Bank and shall submit to Bank a new account signature card reflecting such change(s) in order to make such changes effective and Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any officer or employee so certified, or refusing to honor any signature not so certified; and

6. **Further Resolved,** the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as Bank is concerned until three (3) business days after Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank prior thereto; and

7. **Further Resolved,** that all transactions by any officer or employee of this Corporation on its behalf and in its name with Bank prior to the delivery to Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted; and

8. **Further Resolved,** that the Secretary or Assistant Secretary be and hereby is, authorized and directed to certify these resolutions to said Bank and that the provisions hereof are in conformity with the Charter or Articles of Incorporation and Bylaws of this Corporation and that the Secretary or Assistant Secretary be, and hereby is, authorized and directed to certify, from time to time hereafter, the names of the holders of the above authorized titles and their signatures on any signature card or other documentation required by said Bank.

In Witness Whereof, I have hereunto subscribed my name and affixed the seal of this Corporation, this _22_ day of _August 2014_.

_____
Secretary/Assistant Secretary

(Corporate Seal)
No Seal
Initial

| Bank Information | |
|---|---|
| Date | 08/22/2014 |
| Banking Center Name | TARZANA |
| Associate's Name | Shaghayegh Esmaeili |
| Associate's Phone Number | 818-712-6015 |

NCA
00-14-9012M  11-2013

**From:** Jim Spertus [mailto:jim@spertuslaw.com]
**Sent:** Saturday, July 11, 2015 4:10 PM
**To:** Charlene Koonce; Kelly Crawford
**Cc:** Ezra Landes; Mitch Little; Robert Ungar
**Subject:** RE: FTC v. Bunzai

Charlene:

Here are responses to the questions below, many of which came from Alon, not Doron. We asked Doron to request information from Alon to the extent necessary to provide answers because our goal is to get you information, but at the same time we want you to understand that Doron was the bookkeeper and was not involved in operational issues. I have copied Robert Unger, Alon's counsel, so he is in the loop.

Here are your questions and the answers:

1. What is the approximate amount of cash in Mr. Nottea's safe deposit box, describe the jewelry and its approximate purchase price, and will Doron agree to my inspecting and inventorying it?

    Doron no longer has access to the safe deposit box, and we believe that you have the safe deposit box key, but we have no objection to scheduling a date and time to meet with you or your representatives to inventory the box and secure its contents. I cannot schedule an inventory next week because I will be out of town, but we can compare schedules and arrange for an inventory the week after next at a date and time convenient for you. With regard to the jewelry, Doron does not remember what jewelry, if any, is in the box. However, any jewelry would be low-value items belonging to Doron's wife. The bigger issue is the currency, and there may be as much as $450,000 cash in the safe deposit box. Doron received $300,000 in cash from Mansour and Mahin Faramarzipour, who purchased Doron's house in March 2005. The remainder we believe came from inheritance checks received by Doron's wife, which she would cash and put in the box. We understand that these issues will have to be sorted out, that you will want backup, and we will work with you to get documentation as required.

2. For any email account previously used by Doron, but for which he no longer has the access information, please provide a directive to Google, Go-Daddy or whichever entity hosted the account, directing them to provide me with immediate access. If Doron knows an individual who has access information for any relevant email account, please identify that person for each such account.

    Please provide us with the email accounts for which you want directives made to the entities hosting the accounts, and who you would like us to contact to provide those directives and we will comply with your request to direct them to provide you with access. Also, if you provide us with the email accounts to which you are referring, we will identify any individuals with access information, to the extent Doron has that information.

3. What is the physical address for Annsofie Algarp and what is her current phone number? Same questions for Sean Brennecke, Gilad Miron, David Yosafian, Tomer Amsalem, Matt Meron, Amatsia Meron, and Dror Michaelo. What role did those individuals play on a day to day basis, if any, in the entities with which they are affiliated? Please explain why any is not an "agent, employee, officer, or a person in active concert and participation with Mr. Nottea, who have been associated with or done business with the Receivership Defendants."

    <u>Annsofie Algarp</u>: Doron does not have her contact information.
    <u>Role</u>: She was a merchant account guarantor for Alon's skincare business and likely has no knowledge of the day to day operations of the skincare business. Please obtain further information from Alon directly through Mr. Unger.

**EXHIBIT H**

App.000186

Sean Brennecke: Doron does not have his contact information.
Role: He was a merchant account guarantor for the skincare business and likely has no knowledge of the day to day operations of the skincare business. Please obtain further information from Alon directly through Mr. Unger.

Gilad Miron: He currently lives in Israel.
Role: He was a merchant account guarantor for the skincare business and likely has no knowledge of the day to day operations of the skincare business. Please obtain further information from Alon directly through Mr. Unger.

David Yosafian:
Israeli Address:                           Holon, Israel +972-
US Address:                               Sherman Oaks, CA 91423
Role: He was a merchant account guarantor for the skincare business and likely has no knowledge of the day to day operations of the skincare business. Please obtain further information from Alon directly through Mr. Unger.

Tomer Amsalem: Currently lives in Israel, but Doron does not have his address information.
Role: He was a merchant account guarantor for the skincare business and likely has no knowledge of the day to day operations of the skincare business. Please obtain further information from Alon directly through Mr. Unger.

Matt Meron/Amatsia Meron: These two names are for the same person (Matt was a nickname for Amatsia). Mr. Meron is deceased.
Role: He was a merchant account guarantor for the skincare business and likely has no knowledge of the day to day operations of the skincare business. Please obtain further information from Alon directly through Mr. Unger.

Dror Michaelo: Doron does not have his contact information.
Role: According to Alon, he was involved in the help desk business and the technology side. He likely has no knowledge of the day to day operations of the skincare business. Please obtain further information from Alon directly through Mr. Unger.

4. What were the proceeds of the many, many checks payable to Bank of America or Wells Fargo on the accounts of Zen Mobile Media, SBM Mgmt., etc., used for?

   Doron cannot answer this question without more detail from you, such as dates and specific checks.

5. What does Symbiotic Capital Group do? Who are the officers and directors? Where are its bank accounts and what assets does it have?

   Symbiotic Capital Group, LLC
   Incorporated: June 25, 2013
   Member: Motti Nottea
   Status: Active
   BofA: 3?         800
   Nothing happened with this LLC, and it does not do anything. It may have assets worth $1,000-$2,000. Motti Nottea is Doron and Alon's father, and he was not involved in any of Alon's business activities.

6. What is Merchant Leverage Group, Inc.

2

> A merchant processor or payment service provider has a direct relationship with a sponsoring bank whereby that company can provide merchant processing accounts for their customers. Merchant Leverage Group is a sub-agent, independent sales organization, that may refer customers to different merchant processors for the purpose of getting a commission on the referral.

7. What was Rachel Nottea's role regarding DMA Media Holdings.

> Rachel Nottea had no role whatsoever in DMA Media Holdings. Alon Nottea used her name to guarantee a merchant account, but that was done without Rachel Nottea's knowledge or consent.

8. In QB entries for many of the entities, we see funds coming from BKCD. What does that acronym stand for?

> Doron Nottea does not know what the acronym stands for. This acronym is used when merchant processors settle funds to a bank. It is simply merchant processing income.

9. What is the date of dissolution for All Star Beauty?

> December 2014.

10. Item No. 5. Mr. Nottea never used these websites/software/processor services, and has no access to them or knowledge of the user names and passwords. Who does have that information?

> Philip Camerino helped Paul Medina of Focus Media with day to day bookkeeping for Focus Media, and we believe that Paul Medina likely provided access to Philip Camerino so that Philip Camerino could login to those media buying platforms in order to pull invoices, make payments and update QuickBooks. Doron Nottea never used those websites, that software, or those processor services, and he has no access to them or knowledge of the user names and passwords. Doron also believes that Philip Camerino or Paul Medina would have received this login in information from Mr. Sagar, who was the original attorney who represented Focus Media.

11. Why do Adageo, Trigen, Chargeback Armor and SJS IT Seven Solutions receive $ from SBM Mgt. (The transfers is indirect).

> i. Adageo LLC, is Alon Nottea's personal consulting LLC, and Alon Nottea gets paid through that company.
> ii. Trigen LLC, is Roi Reuveni's personal consulting LLC, and Roi Reuveni gets paid through that company.
> iii. Chargeback Armor is a chargeback management service, but Doron is not sure if they were paid from SBM. He just does not know without access to the QuickBooks files in your possession.
> iv. SJS IT Seven Solutions was paid for IT Services, programming, coding, and other related technical services.

12. Why do Telestar Solutions, iPoint Vision, Media Urge, and Secured Merchants receive $ from SBM Mgt.?

> i. Telestar Solutions provided call center and customer service management to retail merchants corporations that were managed by SBM.
> ii. iPoint Vision was a consulting LLC for Tal Karasso, a fashion photographer/marketing consultant who provided services.

3

      iii. Media Urge provided marketing services on behalf of the retail merchant corporations.
      iv. Secured Merchants provided IT services and was paid for those services.

13. And, why does Media Urge transfer funds to Adageo?

> Alon Nottea was a consultant to Mediaurge, and Alon was paid for those services through Adageo, LLC, which was Alon Nottea's personal consulting LLC.

14. Why does Secured Merchants transfer $ to: Trigen; Adageo; SJS IT Seven Solutions; and Chargeback Armor?

> Trigen LLC, was Roi Reuveni's personal consulting LLC, and Roi Reuveni was paid for consulting services through that company for consulting work.
>
> Adageo LLC was Alon's consulting company, but Doron is not aware of any payments made to Adageo from Secured Merchants, although Alon Nottea may have done some consulting for Secured Merchants.
>
> SJS IT Seven Solutions may have been a vendor that provides IT Services to Secured Merchants, although Doron is not entirely sure.
>
> Chargeback Armor: Doron has no knowledge of payments to Chargeback Armor, and believes that Mike Costache of Chargeback Armor, Inc. would be best able to answer such questions.

15. Why does Forward Momentum transfer $ Secured Merchants

> Doron has no knowledge of Forward Momentum transferring or receiving any money from Secured Merchants.

16. Why does Dynamic Media transfer $ to Impulse Media Group?

> Impulse was the management company for Dynamic Media, and Impulse media paid for operational and other expenses on Dynamic Media's behalf. Neither company is related to Alon's skincare business.

Please do not hesitate to request follow-up information, but the likely best source for further detail would be Alon Nottea.

JAMES W. SPERTUS
SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Dr, Suite 705 | Los Angeles, CA 90025
t: (310) 826-4700 | f: (310) 826-4711 | jim@spertuslaw.com

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Thank you.

Case 2:15-cv-04527-GW-PLA   Document 165-4   Filed 08/14/15   Page 11 of 14   Page ID #:3875

7/2/2015
Igor Latsanovski                    Federal Trade Commission vs. Bunzai Media Group, Inc.

EXHIBIT I

| | | | |
|---|---|---|---|
| 11:59:04 | 1 | A | Uh-huh. |
| | 2 | Q | Do you know what Focus Media Solutions does? |
| 11:59:12 | 3 | A | I think so.  This is one company of Bunzai |
| | 4 | Group. | |
| 11:59:14 | 5 | Q | Okay.  You think -- you think that you know |
| | 6 | what it does? | |
| 11:59:16 | 7 | A | No.  I'm not sure. |
| | 8 | Q | Okay.  Well, then, tell the court why you |
| 11:59:23 | 9 | wrote it a check for $325,000 the day before we came | |
| | 10 | through the door. | |
| 11:59:27 | 11 | A | If we're talking about Focus? |
| | 12 | Q | Yes. |
| 11:59:30 | 13 | A | Sorry, I thought you meant him. |
| | 14 | | I -- Alon asked me give him, because he say, |
| 11:59:43 | 15 | "Igor, I am close" -- he said, "I close already sell | |
| | 16 | online cosmetic line and need do something," and my | |
| 11:59:54 | 17 | vision is his offer.  His vision, continue marketing | |
| | 18 | department, yeah? | |
| 11:59:59 | 19 | | Because he said, "I know how help sell to |
| | 20 | somebody products, service different ways," and he's | |
| 12:00:09 | 21 | "give" me -- ask me, "Igor, can you help me?  Because | |
| | 22 | without cash flow, I cannot make business.  I need for | |
| 12:00:17 | 23 | media, pay everything." | |
| | 24 | | Say, "Okay, how much do you need?" |
| 12:00:22 | 25 | | He said, "I need up to half-million dollars." |









## Re: text for investor presentation - ChargeBack Armor

| | |
|---|---|
| From: | Mike Costache <mike@leoleo.biz> |
| To: | rotem@mediaurge.com |
| Cc: | Alon Nottea <alon@mediaurge.com> |
| Date: | Wed, 25 Feb 2015 12:59:13 -0800 |

Hi Rotem,

Just spoke with Alon. Please:

1. use the current logo for CBA (see website) as the card you sent me has the old logo.
2. use just our logo image as a watermark like MedialUrge has (no need for anything on the back unless you want to use that same image there just so we can have something nice on the back as well)
3. make the design for me instead for Alon so please use Mike Costache and Chief Executive Officer
4. CBA's number is 800.976.7027; my cell is 310.753.9292; my email is mike@chargebackarmor.com
5. I don't see the need for Skype to be there so feel free to delete it.
6. No need for a gray background so I will let you come up with something you believe is appropriate for this branding based on our current logo.

Thanks,

Mike

---

**From:** "rotem@mediaurge.com" <rotem@mediaurge.com>
**Date:** Tue, 24 Feb 2015 12:59:10 -0800
**To:** M <Mike@leoleo.biz>
**Cc:** Alon Nottea <Alon@mediaurge.com>
**Subject:** Re: text for investor presentation - ChargeBack Armor

Hi Mike, hope all is well.

I didn't quite got you, pretty much got lost in "...CBA biz card design to be the same as the MediaUrge's biz card..."

I have these older cards i'm attaching, just let me know what is it that you need.

