**SCHEPER KIM & HARRIS LLP**
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
ANNAH S. KIM (State Bar No. 190609)
akim@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone: (213) 613-4655
Facsimile: (213) 613-4656

**Attorneys for Defendants**
**Igor Latsanovski and Calenergy, Inc.**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>BUNZAI MEDIA GROUP INC., et al.,<br><br>        Defendants. | CASE NO. CV 15-04527 GW (PLAx)<br><br>**RESPONSE OF DEFENDANTS IGOR LATSANOVSKI AND CALENERGY, INC. TO FTC'S SUPPLEMENTAL POSITION CONCERNING THE ASSET FREEZE [DOC. NO. 175]**<br><br>*[Filed concurrently with the Declaration of Annah S. Kim and Declaration of Cesar M. Peniche]*<br><br>Date:        August 24, 2015<br>Time:        8:30 a.m.<br>Courtroom:  10 |

On August 14, 2015, pursuant to the Court's order, the parties submitted a Joint Status Report regarding certain outstanding issues regarding the FTC's pending Request for Preliminary Injunction. On August 20, the FTC filed a supplemental pleading, purporting to address issues raised by Defendants Igor Latsanovski and Calenergy, Inc. ("Defendants") in their portion of the Joint Report. In fact, the FTC merely repeats an argument it meekly raised, and seemed to abandon, at the hearing on the Preliminary Injunction motion. Defendants submit this brief response to the FTC's supplemental filing.

First, the FTC's supplemental pleading falsely contends that Defendants exceeded the scope of the Court's order in its portion of the Joint Report. At the August 6 hearing, the Court expressed concern about the effect that the pending TRO might have on businesses that were not involved in the skincare business that is the subject of this lawsuit. The Court ordered the parties to meet and confer to attempt to resolve the issue of whether particular companies and assets were tainted by the alleged improper conduct, and how those companies and assets should be treated going forward. (Declaration of Annah S. Kim ("Kim Decl.,"), Ex. 1 (8/6/15 Transcript) at 26:7-13). The Court instructed the parties to submit a joint report with their respective positions on these issues if the parties were unable to agree on a stipulated resolution. (*Id.*, at 25:22-26:2). Defendants provided the Court with a copy of the proposal they made to the FTC to address these issues (which the FTC rejected), and an explanation as to why they contend that the assets of three companies (Sunset Holding Partners LLC ("Sunset"), ComicsFix LLC and Vastpay LLC) are not tainted by the alleged improper conduct. This was precisely the information the Court requested.

Substantively, the FTC's supplemental pleading fares no better. The FTC makes two arguments to justify the imposition of an asset freeze on the third party companies that had no involvement in the alleged misconduct that underlies this

lawsuit: (1) the Court has "broad authority to fashion an equitable remedy;" and (2) Sunset and CalEnergy "are merely alter egos of Latsanovski." On the first point, the FTC offers no substantive evidence upon which this Court should exercise its broad authority to impose an asset freeze and receiver on these third party entities. The FTC completely ignores the Court's extensive comments at the August 6 hearing expressing concern about extending the freeze and receiver to entities that neither participated in, nor received money from, the internet skincare business that is the subject of this lawsuit.

With respect to the "alter ego" claim, the FTC conceded at the August 6 hearing that its purported alter ego theory as to Calenergy was unsupported. At the hearing, FTC counsel claimed that "CalEnergy is essentially Latsanovski's alter ego." (Ex. 1 (8/6/15 Transcript) at 12:11-12). The Court asked counsel what law he was relying on for this claim of alter ego status. (*Id.*, at 12:15-16). Counsel responded: "***Well, perhaps not – not technically alter ego***." (*Id.*, at 12:17-18) (emphasis added). The Court asked whether the FTC is taking the position that CalEnergy is not a separate company, or that it was not properly incorporated. FTC counsel conceded that the company was properly incorporated, but asserted (without any evidence) that the company did not "observe corporate formalities." (*Id.*, at 12:25-13:6).

In its supplemental filing, the FTC repeats this baseless accusation, this time adding an assertion (nothing more) that Sunset is "merely an alter ego of Latsanovski." As an initial matter, the FTC's argument is unsupported by the law as California courts have rejected the application of the reverse alter ego theory for an outsider to reach the assets of a shareholder. *See FG Hemisphere Associates, LLC v. Unocal Corp.,* 560 F. App'x 672, 673 (9th Cir. 2014) (noting that California courts have rejected the creation of outsider reverse veil piercing theory of alter ego liability). Further, the FTC's pleading does not allege a single fact, or set forth any

legal analysis, to support its bald assertion of alter ego.  Nor does the FTC make any effort to address Defendants' showing that (a) Sunset has never been involved in the skincare business; and (b) none of the assets of this company were derived from the skincare business.  As such, the FTC's vague and unsubstantiated references to "alter ego" certainly do not justify the draconian relief the FTC seeks in this case.

In fact, as the attached Declaration of Cesar M. Peniche[1] shows, Sunset is a legitimate company and engaged in legitimate business, which is run and partially owned by Mr. Peniche.  *See* Declaration of Michael Peniche ("Peniche Decl." or "Peniche Declaration"), ¶¶ 2, 6-11, 18-20, 23-24).  This declaration makes clear that Mr. Peniche and Sunset had no involvement in the skincare business (Peniche Decl., ¶¶ 4-5), Sunset was not funded with money from the skincare business (*id.*, ¶¶ 12-13, Ex. B and C), Sunset will be crippled if the pending asset freeze is extended to its current assets, and Mr. Peniche will also suffer significant financial harm (*id.*, ¶¶ 4-5, 16, 25-26).

For example, if the asset freeze is not lifted, Sunset will not be able to complete the renovations of its properties, and will not be able to recoup its significant costs in developing these properties.  (Peniche Decl., ¶¶ 16, 21).  Further, the FTC's proposal to permit Sunset to operate subject to its lien would cripple Sunset's operations as it would not be able to obtain the additional financing necessary for its business operations.  (Peniche Decl., ¶ 26).  In addition, Mr. Peniche would suffer significant personal hardship if Sunset's assets remain frozen (and its contractors and lenders remain unpaid), because Mr. Peniche would be

---

[1] On August 20, 2015, Edward Alon, counsel for Cesar M. Peniche, the CEO and part-owner of Sunset, contacted counsel for Defendants regarding Mr. Peniche's position on the Joint Report submitted by the parties on August 14, 2015 (Doc. No. 164) and asked that Defendants' counsel submit Mr. Peniche's declaration to this Court.  *See* Kim Decl., Ex. 2.

unable to pursue any construction-related businesses in the future and may be held personally liable for Sunset's unpaid loans. (Peniche Decl., ¶¶ 6, 13-14, 16, 25). However, if Sunset is allowed to operate under Mr. Peniche's direction and complete the renovations interrupted by the asset freeze, Sunset would be able to recoup its costs, pay its outstanding bills, and make a profit. (Peniche Decl., ¶¶ 22, 26).

The Peniche Declaration also disproves the FTC's empty alter ego allegation. Mr. Peniche is a co-owner of Sunset and has actively managed its affairs since its inception. Accordingly, the FTC cannot establish that there is a such an unity of interest between Mr. Latsanovski and Sunset that would justify treating the assets of Sunset as Mr. Latsanovski's personal assets. *See In re Schwartzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2011) (alter ego liability is established where there is such a unity of interest and ownership that the separation between the individual and the business entity has ceased and adherence to fiction of separate existence of corporation would sanction fraud or promote injustice). Nor can the FTC establish any equitable grounds for disregarding Mr. Peniche's ownership or innocent creditors' interests in Sunset to justify an alter ego finding. *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510, 1524 (2008) (reversing trial court finding of alter ego liability where court failed to consider the protection of third party interests in the business entity's assets).

DATED: August 21, 2015　　　　SCHEPER KIM & HARRIS LLP
　　　　　　　　　　　　　　　ANNAH S. KIM


　　　　　　　　　　　　　　　By:  /s/  Annah S. Kim
　　　　　　　　　　　　　　　　　  Annah S. Kim
　　　　　　　　　　　　　　　　  Attorneys for Defendants Igor Latsanovski
　　　　　　　　　　　　　　　　  and Calenergy, Inc.

4
DEFENDANTS' RESPONSE TO FTC'S SUPPLEMENT TO JOINT REPORT