1  Michael J. Weiss (SBN 206473)
**ABRAMS GARFINKEL MARGOLIS BERGSON, LLP**
2  5900 Wilshire Blvd. Suite 2250
Los Angeles, CA 90036
3  310-300-2900
310-300-2901- Fax
4  Mweiss@agmblaw.com

5

6  Charlene C. Koonce (TX SBN 11672850)
*Admitted Pro Hac Vice*
7  **SCHEEF & STONE, L.L.P.**
500 N. Akard, Suite 2700
8  Dallas, Texas  75201
214-706-4200
9  214-706-4242 - Fax
charlene.koonce@solidcounsel.com
10  Receiver

11

12  **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
13

14  FEDERAL TRADE COMMISSION,

15        Plaintiff,

16      v.

17

18  BUNZAI MEDIA GROUP, INC., a
California corporation, also doing
19  business as AuraVie and Miracle Face
Kit, et al.
20

21        Defendants.

22

23

24

25

26

27

Case No. 2:15-CV-4527-GW(PLAx)

**OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INFORMATION, AND MOTIONS TO SHOW CAUSE**

Hearing Date:  September 17, 2015
Time: 10:30 am
Place:  Courtroom 10

1

# TABLE OF CONTENTS

2  SUMMARY ...................................................................................................... 1

3  ARGUMENT ....................................................................................................2

4

5  A.   Alon Nottea and Reuveni's Contempt and Discovery Abuses Are
      Uncontroverted and Unjustified ........................................................... 3

6

7  B.   Doron and Motti Nottea's Contempt is Likewise Uncontroverted and Unjustified
      ............................................................................................................. 8

8

9  C.   Compensatory Sanctions Are Warranted ............................................ 11

10      1.   Defendants' Contempt Warrants Monetary Sanctions ............................. 11

11

12      2.   Defendants' Discovery Abuses Likewise Mandate Sanctions ................. 12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

- i -
OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

4 *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) ..............10

5 *City of Rialto, v. U.S. Dept. of Defense,* 492 F.Supp.2d 1193 (C.D.Cal. 2007)..............3

6 *Combs v. Ryan's Coal Co., Inc.,* 785 F.2d 970 (11th Cir. 1986)..................................12

7

8 *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000) ..........................10

9 *FTC v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096 (C.D. Cal. 2001)......................11

10 *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376 (9th Cir. 1986).................11, 12

11

12 *Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994), *as amended* (July 25, 1994) .......
.................................................................................................................11, 13

13

14 *In re Count Liberty, LLC*, 370 B.R. 259 (Bankr. C.D. Cal. 2007) ...............................12

15 *In re Wallace,* 490 B.R. 898 (BAP 9th Cir. 2013)..........................................................11

16 *Lopes v. Viera,* 688 F.Supp.2d 1050 (E.D. Cal. 2010).....................................................3

17

18 *SEC v. Colello,* 139 F.3d 674 (9th Cir.1998) ................................................................10

19

**Rules**

20

21 Fed. R. Civ. P. 37(a)(5)...................................................................................................12

22

23

24

25

26

27

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

Charlene Koonce, the Court-appointed Receiver, files this Omnibus Reply[1] in support of her Motion to Compel Production of Documents[2] and the two Orders to Show Cause[3] and respectfully shows the Court as follows:

## SUMMARY

Alon, Doron and Motti Nottea, and Roi Reuveni (collectively, the "Nottea Defendants") used a non-existent privilege, for dissolved entities, entities they did not represent, and entities they claimed to not control, as an excuse for refusing to produce business records and access to email accounts.  Their conduct was the sole cause of the Receivers' Motion to Compel, and later the Motions for Show Cause hearings,[4] and as noted in the Receiver's Motion to Continue the hearings for these Motions,[5] Defendants' refusal to provide responses to additional requests for information necessitated a large part of the expense incurred in preparing the pending Motion for Finding that Certain Assets are Subject to the TRO, etc.[6]  Further, Alon Nottea and Reuveni's claim of "substantial justification"[7] like any claim of cooperation, is belied

---

[1] This Reply is filed in response to Defendants Alon Nottea and Roi Reuveni's Response to Order to Show Cause (Docket No. 186), and in response to Defendants Motti Nottea and Doron Nottea's Response to Order to Show Cause (Docket No. 189).
[2] Docket No. 36.
[3] Docket Nos. 56 and 57.
[4] Docket Nos. 47 and 48.
[5] Docket Nos. 149 and 156.
[6] Docket No. 165.
[7] Docket No. 186.

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

by the factual record demonstrating otherwise. Defendants' conduct caused the estate to incur *at least* $12,900 in fees,[8] which the Receiver seeks to recover.

## ARGUMENT

The Receiver's Motion to Compel Production of Documents and Information,[9] which sought relief from all individual defendants except Latsanovski, was filed on July 1, 2015. The Motion sought production of email accounts and credentials, which all Nottea Defendants refused to provide for their individual accounts, and the *dozens* of accounts they used in connection with the approximately thirty (30) entities involved in their skin care sales businesses.[10]  Defendants' purported excuse for their refusal to provide the email information and documents was the attorney-client privilege for communications in those email accounts, although the Nottea Defendants did not represent the entities whose email accounts were at issue, many of the entities were dissolved and thus had no privilege, and the Receiver held the privilege for all existing entities.

The Motion to Compel was followed by two separate Motions to Show Cause, necessitated by Defendants' violation of the Rule 502 Stipulation they insisted upon for protection of certain *individual use email accounts*, and Doron and Motti's failure to provide even more substantive information.

---

[8] As noted in the Motions to Show Cause, the Receiver will submit a Declaration more specifically identifying the fees incurred as result of Defendants' discovery abuses and contempt if the Court is inclined to grant the relief requested.

[9] Docket No. 36.

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

**A.** **Alon Nottea and Reuveni's Contempt and Discovery Abuses Are Uncontroverted and Unjustified**

No evidence suggests *any* of Nottea Defendants complied with the TRO's requirement of *immediately* providing all receivership entity documents and computer access data.[11] None of the subject information was provided until the Receiver filed the Motion to Compel. And, Alon Nottea and Reuveni's nonsensical contention that the Stipulation they insisted upon and then violated provides *any* justification for their contumacious and improper conduct is defeated by the terms and timing of the Stipulation.

Reuveni and Alon Nottea (but not Doron and Motti) requested execution of a Rule 502 Stipulation,[12] (the "Stipulation") by which they initially sought to protect the Receivership Defendant entities' email accounts and information, by requiring privilege protocols for the entities' email accounts.[13] The Receiver refused to allow *any* asserted protection for the entities' emails to delay production of those emails and accounts for the reasons stated in the Motion to Compel, and required immediate

---

[10] *See, Id.*

[11] Docket No. 12, ¶ XVII C & D.

[12] *See,* Docket No. 47, ¶ 13 for a discussion regarding *Defendants'* demand for the Stipulation and their initial attempts to include all entities in the reach of that Stipulation, which was executed only by Alon Nottea, Roi Reuveni, and Adageo, LLC (which had no privileged communications).

[13] Defendants have never submitted a single authority disproving the basis for the Receiver's entitlement to information at issue; dissolved entities have no attorney-client privilege; defendants cannot assert a privilege on behalf of entities they do not represent; and the receiver holds the privilege, if any exists, for any receivership defendant. *See, Lopes v. Viera,* 688 F.Supp.2d 1050, 1061 (E.D. Cal. 2010); *City of Rialto, v. U.S. Dept. of Defense,* 492 F.Supp.2d 1193 (C.D.Cal. 2007).

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

1
2
production of those email accounts, regardless of whether Defendants later chose to assert a non-existent privilege in any such email.[14]

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
The Stipulation to which the Receiver agreed, after the Motion to Compel was filed, was accordingly wholly unnecessary to production of the Receivership Defendant entity email accounts. Defendants could and should have identified the Receivership Defendants' email accounts and provided the credentials before insisting on any stipulation *to protect their personal use emails*. Indeed, the Stipulation had absolutely no bearing on any production or protection of the entity email accounts, other than including a *one hour* deadline following *agreement* on the Stipulation, for Alon Nottea and Reuveni to provide all email accounts and credentials used by any of the Receivership Defendant entities.[15] The Stipulation provided Alon and Reuveni with privilege protocols for their personal use email accounts, allowed them to provide a privilege log of entity emails, but gave them no right to withhold any entity email

18
19

20
21
22
23
24
25
26
27
---
[14] *See,* Docket No. 36, pp. 10-12.

[15] *See,* Docket No. 44. The one hour deadline is ¶ 2(b)("Identification of accounts and usernames and passwords to access those accounts shall be provided within one hour after all parties to this Stipulation agree to execute it"). The production requirement for all entity emails and excluding any right to withhold or screen for a nonexistent privilege in entity emails, prior to production to the Receiver is ¶ 2(f)("… Stipulating Defendants' counsel may review emails in business use accounts of Temporary Receivership Entities or such documents identified by the third party litigation support firm as Potentially Privileged, ***but all documents other than those in the Stipulating Defendants' personal email accounts, including the Receivership Defendants' documents, and all documents from the Receivership Defendants' email accounts, shall be delivered immediately to the Temporary Receiver, while Stipulating Defendants' counsel conducts any such review***. Stipulating Defendants' counsel or the third party litigation firm if so requested may provide a privilege log of any document of the Receivership Defendants, which they contend is subject to a privilege, and for which they seek notice as outlined below prior to the Temporary Receiver's disclosure to anyone other than the Court or her agents. The Receiver is under no limitation or obligation with respect to use or production of any such Potentially Privileged Documents owned by the Receivership Defendants until Stipulating Defendants provides a privilege log, if any")(emphasis added).

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

accounts or documents based on any such non-existent privilege for the entities.[16] The one hour production deadline and the hoped for savings to the estate in not having to fully litigate the Motion to Compel was the impetus for the Receiver's agreement to the Stipulation, not any purported agreement to the existence of a privilege for dissolved entities, or the Defendants' entitlement to assert a privilege for any of the entities. Thus, Defendants' insistence on the Stipulation provides absolutely no justification for their failure and refusal to provide the documents and email account information before the Stipulation was filed.

And, asserting that the Stipulation (filed on July 2, 2015) excused contemptuous conduct which followed agreement on the Stipulation only provides further evidence of Defendants' evasion and bad faith.[17] Despite having agreed to produce *all* (not a few, not some, not just the ones the Receiver could identify on that specific date) email accounts and credentials *within one hour* of agreement on the Stipulation, and on the morning of July 2, 2015 asking the Receiver to immediately withdraw the Motion to Compel Defendants later stated they were *unable* to produce *any* email accounts or credentials until around 2 a.m. CST on July 3, 2015.[18]

---

[16] *See,* Docket No. 44, ¶ 2(d) ("Responsive but potentially Privileged emails contained in *Stipulating Defendants personal use email accounts* shall be segregated for safekeeping by the third party litigation support firm and withheld from the Plaintiff and Temporary Receiver…")(emphasis added). Defendants never provided any privilege log for any documents.

[17] The argument also suggests that Defendants' attorneys, rather than just Defendants were engaged in the contumacious conduct.

[18] *See,* Docket No. 47 ¶¶ 13- 17.  This conduct, requesting withdrawal of a motion to compel at a time when counsel either knew he could not comply with the Stipulation or had no intention of doing so, further suggests the attorneys and not just their clients were complicit in the improper conduct at issue.

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

Even worse, when Alon Nottea and Reuveni did produce, piece-meal, some of the email accounts and credentials at issue, (after executing the Stipulation) they disingenuously designated many accounts as personal use in an effort to obtain the Stipulation's privilege protocols provided only for personal use accounts.[19] Defendants also designated accounts for persons other than themselves, for instance "Paul," "David," and "Amansour," which also included a Receivership Defendant domain (i.e., david@mediaurge.com) as their own personal use email accounts. And, after the Stipulation was filed, Defendants failed to identify numerous Receivership Defendant email accounts.[20] This is the conduct addressed by the Court's Show Cause Order-producing incomplete, inaccurate and disingenuously designated email accounts and credentials- after the Stipulation was filed.

And despite the Court's order directing Alon Nottea and Reuveni to appear and show cause why they should not be held in contempt or sanctioned for their blatant refusal to comply with the TRO, to date, *they still have not produced email credentials for at least 27 email accounts.*[21]  Indeed, on  approximately August 3, 2015 Reuveni identified a new (previously unidentified) personal email account, claiming he had "transferred" his old personal use email account (for which he had not provided

---

[19] Docket No. 47, ¶ 16, and Exhibit B.
[20] *See,* Docket No. 60, ¶ 7, and discussion below.
[21] *See,* supplemental list of email accounts provided by the third-party IT consultant, for whom Defendants have never provided access credentials attached as **Exhibit A**.

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

1
2
3
4
5

working credentials) to the new account six months previously.[22] As noted in Receiver's sworn pay petition, the Receiver's IT consultant reports "transferring" email accounts is not possible. Defendants provide no possible justification or excuse for any of this conduct.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

Finally, the emails which Defendants rely on to show their "substantial compliance" with the Receiver's "rolling requests" were all sent on or after July 24, 2015, more than two weeks *after* the Motion to Compel and after the Motion to Show Cause were filed. And, as noted in the Receiver's Initial Report, information provided by Defendants was incomplete, inaccurate and evasive.[23] Defendants also fail to provide *any* evidence that they ever responded to the Receiver's requests for information confirming that notice to Alon would be notice to most of the entities which are the subject of the Receiver's Motion for Order Finding Certain Assets Subject to the TRO and PI ("Motion to Designate").[24] Defendants do not provide such information because it does not exist: they provided no substantive response to that request, again necessitating much of the expense of the Motion for Order Finding Certain Assets Subject to the TRO, etc.

22
23
24

In sum, uncontroverted evidence demonstrates the Nottea Defendants' refusal to produce documents and email account information, in blatant and knowing violation of

25
26
27

---

[22] Docket No. 161, p. 11, note 13.
[23] *See,* Docket No. 120, pp.38-41.
[24] *See,* Docket No. 156, which was Exhibit A to Docket No. 149, and which requests Defendants' confirmation of Alon's control over numerous entities, and agreement that notice to Alon would be notice to those entities.

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

Rule 37 and the TRO.   Alon Nottea and Reuveni's contention that the Stipulation justifies their conduct is defeated by the time-line regarding the date the Stipulation was entered and their subsequent contempt, the terms of the Stipulation which provide no justification for withholding email information for any Receivership Defendant, and their continuing contempt regarding the email accounts. The evidence also suggests Defendants' counsel was responsible, at least in part, for the conduct and the resulting expenses to the estate. The evidence before the Court also demonstrates that Defendants provided the information required by the Motion to Compel after the Motion was filed. As discussed below, the discovery abuses and contempt accordingly merit sanctions in the amount of fees incurred by the estate in connection with that conduct.

**B.     Doron and Motti Nottea's Contempt is Likewise Uncontroverted and Unjustified**

The Motion to Show Cause against Doron and Motti Nottea, which listed the litany of TRO provisions those defendants refused to comply with, was filed on July 6, 2015.[25] As stated in the conference for the Motion to Show Cause, the Receiver had requested, over and over, from Doron and Motti through their ever-changing parade of counsel, the information at issue.[26] *None of the information requested and required by*

---

[25] Docket No. 48.
[26] *Id.*

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

*the TRO was provided until after the Motion to Show Cause was filed,*[27] although the terms and requirements of the TRO were discussed with Doron on June 18, 2015, when the Receiver entered the Canby locations. And, although the Receiver offered to pass the Show Cause hearing in response to an initial (but still incomplete) production by Doron and Motti, *after* the Court scheduled the Show Cause hearing, Doron and Motti instead filed a motion to vacate the setting[28] thereby necessitating a further response.[29] Doron and Motti Nottea failed to comply with the TRO, and their conduct caused the estate to incur substantial fees and expenses.

Further, Defendants' post-hoc "they're investigating our crimes" contention provides absolutely no excuse for failing to comply with the TRO before any such investigation, if one exists,[30] was even on the horizon. Motti and Doron failed to provide virtually any of the information the TRO compelled them to provide until the Motion for Show Cause was filed, and they certainly did not raise any privileged silence as an excuse for failing to comply at that time.

Defendants' choice to assert their Fifth Amendment privilege (which must be done by the Notteas individually, rather than by their attorneys, and on a question by

---

[27] *Id.*

[28] Docket No. 60.

[29] Docket No. 62.

[30] To date, unlike Defendant Latsanovski, the Receiver has never been contacted by any law enforcement officials regarding the Nottea Defendants, and thus has never provided any documents or information to *any* law enforcement agency purportedly investigating the Nottea Defendants' various crimes.

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

question basis),[31] also provides no insulation from monetary sanctions.[32] The contempt at issue occurred long before any privilege was contemplated, indeed at a time when Doron's counsel specifically stated he had no intention of asserting the Fifth Amendment.  Whatever any Individual Defendants' right are to assert the Fifth Amendment, those rights to do not justify or excuse their prior contempt, nor demonstrate any basis to protect them from monetary sanctions justified by that contempt.

No further evidence (or Constitutional silence) is necessary for the Court to determine Defendants' discovery abuses and contempt unnecessarily and unjustifiably caused the estate to incur fees and expenses. That evidence is already before the court *and is unchallenged*.

Doron and Motti's conduct violated Rule 37 and the TRO, was without excuse or substantial justification,[33] and as discussed below, merits sanctions in the amount of the expense incurred by the estate with respect to their conduct.

---

[31] *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000)("The only way the privilege can be asserted is on a question-by-question basis, and thus as to each question asked, the party has to decide whether or not to raise his Fifth Amendment.")

[32] Instead, Defendants' assertion of their right to silence may be used to create an adverse inference in support of any contention the Receiver can otherwise support.  *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *SEC v. Colello,* 139 F.3d 674, 677 (9th Cir.1998). For instance, Defendants' ability to pay monetary sanctions can be inferred from their failure to request relief from the asset freeze and their ability to pay their attorney, and established by their silence.

[33] Doron and Motti are hardly alone in their contumacious conduct regarding issues beyond the email accounts. As noted in the Receiver's Initial Report and is evident from the exhibits to the Report. *See,* Docket No. 120, pp. 37-38; 83-84, despite having been instructed to provide comprehensive information about all entities affiliated with or operated by the Individual Defendants, Alon and Roi also provided incomplete, evasive information, in many instances, identifying entities and individuals affiliated with the Receivership Defendants only when the Receiver asked "and what about…..?" This conduct, together with outright lies, such as Defendants' contention that none of the entities were continuing to sell skin cream and that all of the entities' assets were located at Bank of America and Wells Fargo, account for a huge

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

**C.   Compensatory Sanctions Are Warranted**

    **1.   Defendants' Contempt Warrants Monetary Sanctions**

Where the moving party demonstrates by clear and convincing evidence that the offending party "knowingly violated a definite and specific order," the court should hold the offending party in civil contempt. *In re Wallace,* 490 B.R. 898, 905 (BAP 9th Cir. 2013). Only where a violating party has taken "'all reasonable steps' to comply with the court order, can a violation, even technical or inadvertent, be excused. *Compare, Hyde & Drath v. Baker*, 24 F.3d 1162, 1168 (9th Cir. 1994), *as amended* (July 25, 1994)(Affirming contempt sanctions where defendants failed to submit any evidence demonstrating any inability to comply with the court's orders); *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986); *Wallace,* 490 B.R. at 905.

The Receiver's uncontroverted Affidavits of Non-Compliance and Motions to Show Cause demonstrate by clear and convincing evidence, Defendants' knowing violation of the TRO. Indeed, Defendants do not attempt to prove compliance, and fall far short of *all reasonable efforts in good faith. See, FTC v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1112 (C.D. Cal. 2001) (Awarding receivership estate sanctions for damages incurred by respondent's failure to comply with court order, and finding no reasonable efforts to comply despite respondent's contrary arguments); *In re Count*

---

portion of the fees incurred in the first 60 days of the receivership. Likewise, Igor Latsanovski was not truthful in his deposition, during which he testified he was a disinterested investor.

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

*Liberty, LLC*, 370 B.R. 259, 273 (Bankr. C.D. Cal. 2007)(Willful or intentional refusal to comply is not required to find contempt, and "good faith" is no defense); *see also, Combs v. Ryan's Coal Co., Inc.,* 785 F.2d 970, 984 (11th Cir. 1986)(Finding "*all reasonable efforts, made in good faith*" defense to contempt liability  is "construed strictly").

Compensatory sanctions for the actual losses resulting from the contempt are thus warranted.  *General Signal Corp.,* 787 F.2d at 1380.  As Defendants have noted multiple times in disingenuous ways, the estate is not flush, yet incurred extensive fees and costs as a direct result of Defendants' contumacious conduct. In comparison, despite an asset freeze on "all" of their assets, the Nottea Defendants have evidently encountered no difficulties in paying their attorneys or living expenses. Thus, no evidence suggests they are unable to pay, out of unfrozen assets (perhaps from their attorneys' retainer account), any sanctions the court might award.

### 2.    Defendants' Discovery Abuses Likewise Mandate Sanctions

Rule 37 requires a court to award fees as sanctions where the relief requested is provided after the Motion is filed or if the motion is granted, unless the court finds substantial justification for the challenged conduct. Fed. R. Civ. P. 37(a)(5). Defendants provided the information at issue here after the Motion to Compel was filed, and fail to offer any legitimate justification for doing so.

1
2
3
4
5
6
7
8
9

Alon Nottea and Reuveni proffer only the non-existent attorney-client privilege and the Stipulation they did not comply with and which resulted in the Motion to Show Cause for their failure to produce the documents and other information required by the TRO. They have presented no evidence, indeed not even any arguments meriting a finding of "substantial justification." Similarly, Doron and Motti offer only an untimely "we're not telling you anything now" excuse for their failure to comply with the TRO, which occurred weeks ago.

10
11
12
13
14
15
16
17
18
19
20
21
22
23

Defendants' conduct[34] caused the estate to incur attorney's fees of not less than $12,900.[35] Given Defendants and their counsel's "concerns" about preserving assets for consumer redress, requiring defendants (or their attorneys) to reimburse the estate for these fees is particularly appropriate. The Receiver accordingly seeks monetary sanctions, jointly and severally from all Nottea Defendants in an amount not less than $12,900. Since all of the Individual Defendants' personal assets are frozen but Defendants have access to assets to pay their living expenses and attorneys, they have access to assets to pay these fees. The Court should thus order Defendants to use whatever source they are currently using to pay their living expenses and attorney's fees to reimburse the estate for the fees incurred because of their contempt and

24
25
26
27

---

[34] Attorneys may be held jointly and severally liable for discovery abuses, even without a finding of bad faith. *See, Hyde & Drath,* 24 F.3d at 1162 (Upholding joint and several sanctions against attorneys despite no finding that the attorney advised the client to ignore discovery orders or acted in bad faith).

[35] This amount does not include travel time for the hearing, preparation for agreements or the time in court regarding the motions at issues, but that time will be added to any Declaration submitted if the Court is inclined to award sanctions.

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

1    discovery abuses, and should require such payment to be delivered to the Receiver

2    within fourteen days of entry of any order on the Receiver's motions.

3                                       Respectfully submitted,
4                                       */s/ Charlene Koonce*
                                        Charlene C. Koonce
5                                       **Receiver**
6                                       500 N. Akard Street, Suite 2700
                                        Dallas, Texas 75201
7                                       Telephone: 214-706-4200
                                        Telecopier: 214-706-4242
8                                       *Admitted Pro Hac Vice* (TX SBN 11672850)
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS

**CERTIFICATE OF SERVICE**

1

2        The undersigned certifies that on September 3, 2015, a true and correct copy of

3   the foregoing document was electronically filed with the clerk of the U.S. District

4   Court, Central District of California, using the electronic case filing system of the

5   court.  The attorneys listed below were served by pursuant to the ECF notice generated

    by the Court, or by email.

6

7   Tom Vidal / Michael Weiss /                David P. Beitchman /Andre Boniadi
    Nina Nahal Ameri                           Beitchman|Zekian, PC
8   Abrams Garfinkel Margolis Bergson         16130 Ventura Boulevard, Suite 570
    5900 Wilshire Blvd Suite 2250             Encino, CA 91436
9   Los Angeles, CA 90036                     *Counsel for Doron Nottea and Motti*
    *Local counsel for Receiver*              *Nottea*
10

11  Erik S Syverson / Scott M. Lesowitz /      Marc S. Harris / Annah S Kim
    Steven T. Gebelin                          Scheper Kim & Harris, LLP
12  Raines Feldman LLP                         601 W. Fifth Street, 12th Floor
    9720 Wilshire Boulevard Fifth Floor       Los Angeles, CA 90071
13  Beverly Hills, CA 90212                    *Counsel for Igor Latsanovski and*
14  *Counsel for Oz Mizrahi, as an officer or* *Calenergy, Inc.*
    *manager of BunZai Media Group, Inc.*
15  *and Pinnacle Logistics, Inc.*
16

17  Robert M. Ungar                            Reid Tepfer  / Luis Gallegos
    Crosswind Law                              Federal Trade Commission
18  14724 Ventura Blvd Penthouse              1999 Bryan Street, Suite 2150
    Sherman Oaks, CA 91403                     Dallas, TX  75201
19  *Counsel for Alon Nottea, Roi Rueveni*     *Counsel for the FTC*
20  *and Adageo, LLC*
    Raymond E McKown                           Benjamin A Pettit
21  Federal Trade Commission                   20 East Pueblo Street
22  10877 Wilshire Boulevard, Suite 700       Santa Barbara, CA 93105
    Los Angeles, CA 90024                      *Counsel for Alon Nottea*
23
24  *Counsel for the FTC*

25

26                             */s/  Charlene C. Koonce*
                               CHARLENE C. KOONCE
27  _____

- 15 -
OMNIBUS REPLY IN SUPPORT OF RECEIVER'S MOTION TO COMPEL, AND SHOW CAUSE ORDERS