1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | **Case No.  CV 15-4527-GW(PLAx)** |
| Plaintiff, | |
| v. | **STIPULATION TO ENTER PRELIMINARY INJUNCTION WITH ASSET FREEZE, APPOINTMENT OF PERMANENT RECEIVER AND OTHER EQUITABLE RELIEF AS TO DEFENDANTS IGOR LATSANOVSKI AND CALENERGY, INC.** |
| **BUNZAI MEDIA GROUP, INC.**, *et al.* | |
| **Defendants.** | |

11

12

13

14

15

16

17

18

19

20

Pursuant to Local Rule 7-1, plaintiff Federal Trade Commission, by and through its attorneys, and Defendant **Igor Latsanovski and CalEnergy, Inc.**, through their respective counsel of record, hereby enter into this stipulation and agree to the following:

(PROPOSED) PRELIMINARY INJUNCTION
Page | 1

1

2        Plaintiff, Federal Trade Commission (FTC), filed its Complaint for a

3  Permanent Injunction and Other Equitable Relief, seeking a temporary,

4  preliminary, and permanent injunction to stop Defendants from violating Section

5  5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a), Section

6  5 of the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8404,

7  and Section 917(c) of the Electronic Fund Transfer Act (EFTA), 15 U.S.C.

8  § 1693o(c), while advertising, marketing, promoting, or offering for sale skincare

9  products. On June 17, 2015, following an on-the-record hearing, the Court issued

10  an *ex parte* temporary restraining order with an asset freeze, appointment of a

11  temporary receiver, and an order to show cause why a preliminary injunction

12  should not issue. Defendants were served with the summons, Complaint, *Ex Parte*

13  Temporary Restraining Order with Asset Freeze, Appointment of Temporary

14  Receiver, and other Equitable Relief, and Order to Show Cause Why a

15  Preliminary Injunction Should Not Issue, Plaintiff Federal Trade Commission's

16  Memorandum in Support of *Ex Parte* Application for a Temporary Restraining

17  Order and Other Equitable Relief and Order to Show Cause Why a Preliminary

18  Injunction Should Not Issue, and other related papers.

19        After hearings on August 6 and August 24, 2015, and with due

20  consideration of the FTC's pleading and declarations, exhibits, and memoranda in

(PROPOSED) PRELIMINARY INJUNCTION
Page | 2

support, as well as all responsive pleadings and accompanying documents, this Court finds that:

## FINDINGS

1.     This Court has jurisdiction over the subject matter of this case and jurisdiction over the parties, and venue in this district is proper.

2.     The complaint states a claim upon which relief may be granted under Sections 5, 13, and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b, and under 15 U.S.C. §§ 8404 and 1693o(c).

3.     Section 13(b) of the FTC Act allows this Court to grant the FTC a preliminary injunction upon a showing that, weighing the equities and considering the FTC's likelihood of ultimate success, a preliminary injunction is in the public interest. 15 U.S.C. § 53(b). Section 19 of the FTC Act allows this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from the violation of any rule enforced by the FTC. 15 U.S.C. § 57.

4.     In deciding whether to grant preliminary relief, the Court must, therefore: (a) consider the likelihood that the FTC will ultimately succeed on the merits; and (b) balance the equities. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999). The FTC "need not show irreparable harm to obtain a preliminary injunction." *Id*. at 1233 (quoting *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984)).

(PROPOSED) PRELIMINARY INJUNCTION
Page | 3

5.      There is good cause to believe that Defendants have engaged in, and are likely to engage in, acts or practices that violate Section 5(a) of the FTC Act, ROSCA, and EFTA and Regulation E, and that the Plaintiff is likely to succeed on the merits of this action.

6.       There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of Section 5(a) of the FTC Act, ROSCA, and EFTA, unless Defendants are restrained and enjoined by Order of this Court.

7 .      There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief to consumers – including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies – will occur from the sale, transfer, or other disposition or concealment by Defendants of assets or records, and that therefore in accordance with Federal Rule of Civil Procedure 65(b), the interest of justice requires that this Order be granted.

8.      There is good cause to believe that this Preliminary Injunction is in the public interest, and no private interest of Defendants outweighs the public interest.

9.      Weighing the equities and considering the FTC's likelihood of ultimate success, this Preliminary Injunction with asset freeze, appointment of a Permanent Receiver, and other equitable relief is in the public interest.

10.      The United States, its officers, and its agencies are not required to give security for issuance of a restraining order. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

1.      **"Asset"** or **"Assets"** means any legal or equitable right, title, interest, or claim to any item of economic value, in whole or part, whether tangible or intangible, including but not limited to: accounts, accounts receivables, cash, certificates of deposit, chattels, checks, commodities, contracts, credits, currency, fixtures, funds, equipment, income, intellectual property, inventory, instruments, investments, leaseholds, lines of credit, mail, notes, personal property, real property, revenues, securities, shares of stock, or trusts, whether located within or outside the United States.

2.      **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

a.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the

communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

b.  A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

c.  An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

d.  In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

e.  On a product label, the disclosure must be presented on the principal display panel.

f.  The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

g.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

h.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

i.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members.

3.      "**Continuity Plan**" means any plan, arrangement, or system in which a consumer is periodically charged for products or services *without* prior notification by the seller before each charge.

4.      "**Defendants**" means all of the Individual Defendants and Corporate Defendants, individually, collectively, or in any combination.

a.      "**Individual Defendant**" means Igor Latsanovski.

b.      "**Corporate Defendant**" or "**Receivership Defendant**" means CalEnergy, Inc. and their successors and assigns, as well as any subsidiaries, fictitious business entities, or business names created or used by these entities or by the Individual Defendants that are related to, or receive funds from, the sale of skincare or other products online.

5.      "**Document**" means the complete original and any non-identical

copy (whether different from the original because of notations or otherwise) of any **electronically stored information** or filmed, graphic, imaged, printed, punched, texted, transcribed, typed, written, matter of every type and description, including but not limited to writings, drawings, graphs, charts, photographs, sound records, images, and other data or data compilations that are stored in any medium from which information can be obtained either directly or indirectly or, if necessary, translated into a reasonably usable form.

6. "**Electronic Fund Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. Such term does not include:

a.   Any check guarantee or authorization service that does not directly result in a debit or credit to a consumer's account;

b.   Any transfer of funds, other than those processed by automated clearinghouse, made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks

(PROPOSED) PRELIMINARY INJUNCTION
Page | 8

or other depository institutions and that is not designed primarily to transfer funds on behalf of a consumer;

       c.      Any transaction the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the Securities and Exchange Commission;

       d.      Any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a consumer and a financial institution for the purpose of covering an overdraft or maintaining an agreed upon minimum balance in the consumer's demand deposit account; or

       e.      Any transfer of funds which is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution which is not pursuant to a prearranged plan and under which periodic or recurring transfers are not contemplated.

       7.      "**Financial Institution**" means an insured bank; a commercial bank or trust company; a private banker; an agency or branch of a foreign bank; a credit union; a thrift institution; a broker or dealer registered with the Securities and Exchange Commission; a broker or dealer in securities or commodities; an investment banker or investment company; a currency exchange; an issuer, redeemer, or cashier of travelers' checks, checks, money orders, or similar

instruments; an operator of a credit card system; an insurance company; a dealer in precious metals, stones, or jewels; a pawnbroker; a loan or finance company; a licensed sender of money or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system; a telegraph company; a business engaged in vehicle sales, including automobile, airplane, and boat sales; persons involved in real estate closings and settlements; the United States Postal Service; a casino, gambling casino, or gaming establishment.

8.      "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services.

9.      "**Negative Option**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer or agreement.

10.      "**Person**" means a natural person, an organization or other legal entity, including an association, cooperative, corporation, limited liability

company, partnership, sole proprietorship, or any other group or combination acting as an entity.

11.      "**Plaintiff**" or "**FTC**" means the Federal Trade Commission.

12.      "**Preauthorized Electronic Fund Transfer**" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

13.      "**Permanent Receiver**" means the receiver appointed in Section XIII of this Order and any deputy receivers that shall be named by the Permanent Receiver.

## ORDER

## I.      PROHIBITED BUSINESS ACTIVITIES

**IT IS HEREBY ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are preliminarily restrained and enjoined from:

A.      Failing to disclose or disclose clearly and conspicuously, or assisting others in failing to disclose clearly and conspicuously, all material terms and conditions of their offer, including:

1.      That Defendants will use consumers' credit card or financial account information to charge consumers the full costs of a product upon

(PROPOSED) PRELIMINARY INJUNCTION
Page | 11

the expiration of a limited trial period;

      2.     The dates that any trial period begins and ends;

      3.     That Defendants will enroll consumers into a negative option continuity plan with additional charges;

      4.     The cost of any continuity plan and the frequency and duration of recurring charges;

      5.     The means consumers must use to cancel the negative option program and to avoid additional charges; and

      6.     Requirements of their refund policies.

B.     Misrepresenting, or assisting others in misrepresenting, directly or indirectly, expressly or by implication, any material fact, including that:

      1.     Consumers can obtain an advertised product for "free," "risk-free," or for only a nominal shipping and handling fee; and

      2.     Defendants are accredited by and have a rating of "A-" with the Better Business Bureau; and

C.     Charging, causing to be charged, or assisting others in charging any consumer's credit card, or debiting, causing to be debited, or assisting others in debiting any consumer's financial account, without the consumer's express informed consent for each charge or debit.

## II.    PROHIBITIONS AGAINST UNFAIR AND DECEPTIVE NEGATIVE OPTION MARKETING PRACTICES ON THE INTERNET

(PROPOSED) PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service are preliminarily restrained and enjoined from charging, causing to be charged, assisting others in charging , or attempting to charge any consumer in an Internet-based sale of a good or service sold through a negative option without:

A.     Clearly and conspicuously disclosing all material terms of the negative option features before obtaining the consumer's billing information;

B.     Obtaining a consumer's express informed consent to the negative option features before making any charge; and

C.     Providing a simple mechanism for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, or other financial account.

**III.     PROHIBITIONS AGAINST DEBITING CONSUMERS' BANK ACCOUNTS WITHOUT AUTHORIZATION**

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are preliminarily restrained and enjoined from:

(PROPOSED) PRELIMINARY INJUNCTION
Page | 13

A.      Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

B.      Failing to provide to the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account.

## IV.    ASSET FREEZE

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from directly or indirectly:

A.      Assigning, concealing, converting, disbursing, dissipating, encumbering, liquidating, loaning, pledging, selling, spending, transferring, or withdrawing any asset that is:

1.      owned, controlled by, or held for the benefit of, any Defendant, directly or indirectly;

2.      in the actual or constructive possession of any Defendant;

3.      held as a retainer or deposit for the provision of goods or

(PROPOSED) PRELIMINARY INJUNCTION
Page | 14

1    services to any Defendant; or

2          4.     owned, controlled by, held for the benefit of, or in the actual or

3    constructive possession, of any entity directly or indirectly owned,

4    managed, or controlled by any Defendant;

5          B.     Opening or causing to be opened any safe deposit box, commercial

6    mail box, or storage facility belonging to, for the use or benefit of, under the

7    control of, or subject to access by, any Defendant;

8          C.     Incurring charges or cash advances on any credit card, debit card, or

9    checking card issued in the name, singly or jointly, of any Defendant;

10         D.     Obtaining or providing a personal or secured loan that encumbers an

11   asset of any Defendant; and

12         E.     Cashing any checks or depositing any money orders or cash received

13   from consumers, clients, or customers of any Defendant.

14         F.     *Provided, however,* that the following properties may be sold by

15   Defendants at any price which exceeds the outstanding loan amounts on the

16   property or upon FTC approval or at the fair market value as determined by an

17   independent third party appraiser:

18         1.     1737 W 35th St., Los Angeles 90018 ("35th St")

19         2.     657 W Acacia Ave., El Segundo 90245 ("Acacia")

20         3.     21809-21811 Figueroa St., Carson, CA 90745 ("Figueroa")

(PROPOSED) PRELIMINARY INJUNCTION
Page | 15

1      4.     3214 W 113th St., Inglewood, CA 90304 ("113th St")

2      5.     5624 Stratford Rd., Los Angeles, CA 90042 ("Stratford")

3      6.     1032 W 22nd St., Los Angeles (USC), CA 90007 ("22nd St")

4      7.     2445 Louella Ave., Venice, CA 90029 ("Louella")

5      8.     3777 Rosewood Ave., Los Angeles, CA 90066 ("Rosewood")

6      9.     3783 Redwood Ave, Los Angeles, CA 90066 ("Redwood")

7      10.    430 W. San Antonio Dr., Long Beach, CA 90807 ("Long

8 Beach")

9      If Defendants wish to sell any of the above-listed properties for a sale

10 price below the outstanding loan amounts on the property, Defendants must

11 submit the proposed sale price to the FTC with an invoice for services to be

12 provided by a mutually agreed third party appraiser.  The FTC will then authorize

13 a release of funds to pay the agreed-upon appraiser from Sunset's funds.  Upon

14 receipt of the appraisal, the FTC shall have five business days to file a notice of

15 objection of sale with the Court.  If the FTC does not object within that time,

16 Defendants may sell the property at the proposed sale price.  If the FTC objects,

17 Defendants may request an *ex parte* order from the Court to permit the sale of the

18 property, which the FTC may oppose. If any property sells for under the

19 outstanding loan amount, the closing costs associated with the sale may be paid

20 from proceeds from the sale of the property. However, if the property is sold for

(PROPOSED) PRELIMINARY INJUNCTION
Page | 16

more than the loan amount, closing costs shall be paid from the sales proceeds exceeding the outstanding loan amount.

G.     All proceeds from the sale of the 35th St, Acacia, Figueroa, 113th St, Stratford, 22nd St, Louella, Rosewood, Redwood and Long Beach (collectively the "Properties") will remain frozen until further order of the Court or upon stipulation of the parties, except as follows:

1.     Upon the sale of 35th St, any proceeds over $300,000 shall not be subject to this freeze and shall be released to Sunset Holding Partners LLC ("Sunset").

2.     Upon the sale of Acacia, any proceeds over $800,000 shall not be subject to this freeze and shall be released to Sunset.

3.     Upon the sale of Figueroa, any proceeds over $1,100,000 shall not be subject to this freeze and shall be released to Sunset.

4.     Upon the sale of 113th St, any proceeds over $300,000 shall not be subject to this freeze and shall be released to Sunset.

5.     Upon the sale of Stratford, any proceeds over $600,000 shall not be subject to this freeze and shall be released to Sunset.

6.     Upon the sale of 22nd St, any proceeds over $450,000 shall not be subject to this freeze and shall be released to Sunset.

(PROPOSED) PRELIMINARY INJUNCTION
Page | 17

7.      Upon the sale of Louella, any proceeds over $1,218,000 shall not be subject to this freeze and shall be released to Sunset.

8.      Upon the sale of Rosewood, any proceeds over $1,100,000 shall not be subject to this freeze and shall be released to Sunset.

9.      Upon the sale of Redwood, any proceeds over $1,100,000 shall not be subject to this freeze and shall be released to Sunset.

10.     Upon the sale of Long Beach, any proceeds over $1,000,000 shall not be subject to this freeze and shall be released to Sunset.

H.      The proceeds subject to the asset freeze from the above-listed properties shall be placed in the Wells Fargo account in the name of Sunset Holding Partners LLC ending in 9222.

I.      Within five business days of the real estate closing of the Properties, Defendants must provide the FTC all closing documents.

J.      The assets affected by this Section shall include all assets of Defendants as of the time this order is entered. *Provided, however,* that assets obtained by Individual Defendants or Receivership Defendants after the time this Order is entered that are not derived, directly or indirectly, from activities as described in the Commission's Complaint shall not be frozen.  Notwithstanding the provisions in this Section, Defendants may seek, and the FTC may oppose, modifications of this asset freeze at any time, including but not limited to requests

(PROPOSED) PRELIMINARY INJUNCTION
Page | 18

1  for disbursements from the Sunset funds subject to this asset freeze and requests

2  for a monthly disbursement to pay ordinary living expenses, including his

3  mortgage payments, as well as reasonable attorneys' fees.  **All provisions in this**

4  **Section shall remain in effect until further Order of the Court or upon**

5  **agreement of the parties.**

6  **V.     DUTIES OF ASSET HOLDERS**

7         **IT IS FURTHER ORDERED** that any financial institution or person that

8  has, or that at any time since January 1, 2010, has had, custody or control over an

9  asset belonging to, for the use or benefit of, under the control of or subject to

10  access by any Defendant and that is provided with a copy of this Order, or

11  otherwise has actual or constructive knowledge of this Order shall:

12       A.     Hold and retain any of Defendants' assets that are within its control

13  and prohibit Defendants from assigning, concealing, converting, disbursing,

14  dissipating, encumbering, liquidating, loaning, pledging, selling, spending,

15  transferring, or withdrawing any asset except:

16            1.     as directed by further order of the Court;

17            2.     as directed in writing by the Permanent Receiver (regarding an

18  asset belonging to, for the use or benefit of, under the control of, or subject

19  to access by a Receivership Defendant); or

20            3.     by written stipulation of the Plaintiff;

(PROPOSED) PRELIMINARY INJUNCTION
Page | 19

B.      Deny Defendants access to any safe deposit box, commercial mail box, or storage facility belonging to, for the use or benefit of, under the control of, or subject to access by, any Defendant;

C.      Within five (5) business days after receiving a copy of this Order, provide counsel for Plaintiff and the Permanent Receiver a certified statement setting forth:

1.      the identification number of each account or asset belonging to, for the use or benefit of, under the control of, or subject to access by, any Defendant; and

2.      the balance of each account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is received, and, if the account or other asset has been closed or removed, or more than $1,000 withdrawn or transferred from it, the date of the closure or removal of funds, the total funds removed or transferred, and the name of the person to whom such account or other asset was remitted; and

D.      Within five (5) days of a request by Plaintiff or the Permanent Receiver, provide Plaintiff and the Permanent Receiver with copies of documents relating to each asset, including, but not limited to, account applications, statements, signature cards, checks, drafts, deposit tickets, transfers to and from

(PROPOSED) PRELIMINARY INJUNCTION
Page | 20

the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

## VI.     SERVICE ON FINANCIAL INSTITUTIONS OR PERSONS HOLDING ASSETS

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of the Plaintiff or the Permanent Receiver, by any law enforcement agency, or by process server, upon any person or financial institution that may have possession, custody, or control over any asset or document belonging to, for the use or benefit of, under the control of, or subject to access by, any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## VII.     FINANCIAL STATEMENTS

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants shall each:

A.     Within five (5) days after service of this Order, prepare and provide to Plaintiff and the Permanent Receiver complete and accurate financial statements, on the forms attached as **Attachments A** and **B** of this Order, disclosing all personal assets and all assets of corporations, partnerships, trusts or other entities that such Defendant owns or controls, jointly or individually;

B.      Within five (5) business days after service of this Order, prepare and provide to Plaintiff and the Permanent Receiver complete and accurate copies of federal and state income tax forms, including all schedules and attachments for the three most recent filing years; and

C .     Immediately upon service of this Order, provide access to documents held by persons and financial institutions located outside the United States by signing the Consent to Release of Financial Records, attached to this Order as **Attachment C**.

## VIII.  REPATRIATION OF ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that immediately upon service of this Order, each Individual and Corporate Defendant shall:

A.      Take such steps as are necessary to transfer to the United States all assets and documents that are located outside the United States and belong to, are for the use or benefit of, are under the control of, or are subject to access by, any such Defendant; and

B.      Hold and retain all repatriated assets and prevent and disposition, transfer, or dissipation of such assets except as required by this Order.

## IX.    NONINTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active

concert or participation with any of them who receive actual notice of this Order,

whether acting directly or indirectly, are preliminarily restrained and enjoined

from taking any action that may result in the encumbrance or dissipation of

foreign assets, or in the hindrance of the repatriation required by Section VIII of

this Order, including:

      A.     Sending any statement, letter, fax, email or wire transmission,

telephoning, or engaging in any other act, directly or indirectly, that results in a

determination by a foreign trustee or other entity that a "duress" event has

occurred under the terms of a foreign trust agreement until such time as all assets

have been fully repatriated according to Section VIII of this Order; or

      B.     Notifying any trustee, protector, or other agent of any of the

Defendants of the existence of this Order, or of the fact that repatriation is

required under a Court Order, until such time as all assets have been fully

repatriated according to Section VIII of this Order.

**X.     CONSUMER CREDIT REPORTS**

      **IT IS FURTHER ORDERED** that the FTC may obtain credit reports

concerning any Individual and Corporate Defendant pursuant to Section 604(a)(1)

of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written

request, any consumer reporting agency from which such reports are requested

shall provide them to the FTC.

(PROPOSED) PRELIMINARY INJUNCTION
Page | 23

1

## XI.   PRESERVATION OF RECORDS AND REPORT NEW BUSINESS ACTIVITY

2

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants

3
and their officers, agents, employees, and attorneys, and all other persons in active

4
concert or participation with any of them, who receive actual notice of this Order,

5
whether acting directly or indirectly, are hereby preliminarily restrained and

6
enjoined from:

7
    A.    Altering, concealing, destroying, erasing, mutilating, transferring, or

8
otherwise disposing of, in any manner, directly or indirectly, any documents,

9
including electronically stored materials, that relate in any way to the business

10
practices or business or personal finances of Defendants; or to the business

11
practices or finances of entities directly or indirectly under the control of

12
Defendants; and

13
    B.    Creating, operating, or exercising any control over any business

14
entity, whether newly formed or previously inactive, including any partnership,

15
limited partnership, joint venture, sole proprietorship, or corporation, without first

16
providing Plaintiff with a written statement disclosing: (1) the name of the

17
business entity; (2) the address and telephone number of the business entity; (3)

18
the names of the business entity's officers, directors, principals, managers, and

19
employees; and (4) a detailed description of the business entity's intended

20
activities.

## XII.   PROHIBITION ON RELEASE OF CUSTOMER INFORMATION OR CUSTOMER LISTS

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.      selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, bank account number, e-mail address, or other identifying information of any person who paid money to the Defendants for products or services, or who were contacted or are on a list to be contacted by the Defendants; and

B.      Benefitting from or using the name, address, birth date, telephone number, email address, Social Security numbers, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with the activities alleged in the Complaint.

*Provided* however that the Individual and Corporate Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.

## XIII.  APPOINTMENT OF PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Charlene Koonce is appointed as Permanent Receiver for the Receivership Defendants, with the full power of an equity receiver. The Permanent Receiver shall be the agent of this Court when serving as Permanent Receiver, and shall comply with the Federal Rules of Civil Procedure and the Local Rules of this Court.

## XIV.  PERMANENT RECEIVER'S DUTIES

**IT IS FURTHER ORDERED** that the Permanent Receiver is authorized and directed to accomplish the following:

A.      Assume full control of the Receivership Defendants by removing, as the Permanent Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.      Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Permanent Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Permanent Receiver's good faith determination that the business can be lawfully operated at a profit using the

(PROPOSED) PRELIMINARY INJUNCTION
Page | 26

1    assets of the receivership estate;

2         C.       Take exclusive custody, control, and possession of all assets and

3    documents of, or in the possession, custody, or control of, the Receivership

4    Defendants, wherever situated. The Permanent Receiver shall have full power to

5    divert mail and to sue for, collect, receive, take in possession, hold, and manage

6    all assets and documents of the Receivership Defendants and other persons whose

7    interests are now under the direction, possession, custody, or control of, the

8    Receivership Defendants. The Permanent Receiver shall assume control over the

9    income and profits and all sums of money now or hereafter due or owing to the

10   Receivership Defendants. *Provided,* however, that the Permanent Receiver shall

11   not attempt to collect any amount from a consumer if the Permanent Receiver

12   believes the consumer was a victim of the unfair or deceptive acts or practices or

13   other violations of law alleged in the Complaint;

14        D.       Take all steps necessary to secure the business premises of the

15   Receivership Defendants. Such steps may include, but are not limited to, any of

16   the following, as the Permanent Receiver deems necessary or advisable:

17             1.       serving this Order;

18             2.       completing a written inventory of all Receivership assets;

19             3.       obtaining pertinent information from all employees and other

20   agents of the Receivership Defendants, including the name, home address,

(PROPOSED) PRELIMINARY INJUNCTION
Page | 27

Social Security number, job description, user names or passwords needed to access Receivership Defendants' documents, methods of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent;

4.    photographing and videotaping any or all portions of the location;

5.    securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location;

6.    opening and inventorying any safe deposit box, commercial mail box, or storage facility in the name of any Receivership Defendant, either individually or jointly, or subject to access by any Receivership Defendant; and

7.    requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Permanent Receiver with proof of identification, or to demonstrate to the satisfaction of the Permanent Receiver that such persons are not removing from the premises assets or documents of the Receivership Defendants. Law enforcement personnel, including police or sheriffs, may assist the Permanent Receiver in implementing these provisions in order to keep the peace and maintain

1   security. If requested by the Permanent Receiver, the United States Marshal

2   will provide appropriate and necessary assistance to the Permanent

3   Receiver to implement this Order;

4        E.     Conserve, hold, and manage all assets of the Receivership

5   Defendants, and perform all acts necessary or advisable to preserve the value of

6   those assets in order to prevent any irreparable loss, damage, or injury to

7   consumers or creditors of the Receivership Defendants, including obtaining an

8   accounting of the assets and preventing the unauthorized transfer, withdrawal, or

9   misapplication of assets;

10        F.     Enter into and cancel contracts, and purchase insurance as the

11   Permanent Receiver deems advisable or necessary;

12        G.     Prevent the inequitable distribution of assets and determine, adjust,

13   and protect the interests of consumers and creditors who have transacted business

14   with the Receivership Defendants;

15        H.     Manage and administer the business of the Receivership Defendants

16   by performing all incidental acts that the Permanent Receiver deems to be

17   advisable or necessary, which includes retaining, hiring, or dismissing any

18   employees, independent contractors, or agents;

19        I.     Authorize the release of any copy or image of any website used or

20   controlled by the Receivership Defendants to the FTC;

(PROPOSED) PRELIMINARY INJUNCTION
Page | 29

1   J.     Choose, engage, and employ attorneys, accountants, appraisers, and

2   other independent contractors and technical specialists, as the Permanent Receiver

3   deems advisable or necessary in the performance of duties and responsibilities

4   under the authority granted by this Order;

5   K.     Make payments and disbursements from the receivership estate that

6   are necessary or advisable for carrying out the directions of, or exercising the

7   authority granted by, this Order. The Permanent Receiver shall apply to the Court

8   for prior approval of any payment of any debt or obligation incurred by the

9   Receivership Defendants prior to the date of entry of this Order, except payments

10  that the Permanent Receiver deems necessary or advisable to secure assets of the

11  Receivership Defendants, such as rental payments;

12  L.     Institute, compromise, adjust, appear in, intervene in, or become

13  party to such actions or proceedings in state, federal or foreign courts or

14  arbitration proceedings as the Permanent Receiver deems necessary and advisable

15  to preserve or recover the assets of the Receivership Defendants, or that the

16  Permanent Receiver deems necessary and advisable to carry out the Permanent

17  Receiver's mandate under this Order, including actions challenging fraudulent or

18  voidable transfers;

19  M.     Defend, compromise, adjust, or otherwise dispose of any or all

20  actions or proceedings instituted in the past or in the future against the Permanent

(PROPOSED) PRELIMINARY INJUNCTION
Page | 30

Receiver in the role of Permanent Receiver, or against the Receivership Defendants, as the Permanent Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants, or as the Permanent Receiver deems necessary and advisable to carry out the Permanent Receiver's mandate under this Order;

N.      Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Permanent Receiver and by agents of any process server retained by the Permanent Receiver;

O.      Maintain accurate records of all receipts and expenditures incurred as Permanent Receiver;

P.      Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Permanent Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such account. The Permanent Receiver shall serve copies of monthly account statements on all parties; and

Q.      Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

(PROPOSED) PRELIMINARY INJUNCTION
Page | 31

## XV.   PERMANENT RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Permanent Receiver has filed with the Clerk of this Court a bond in the sum of $20,000, with sureties approved by this Court, and shall well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XVI.  DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person with possession, custody or control of assets or documents relating to the Receivership Defendants shall upon notice of this Order, by personal service or otherwise, immediately notify the Permanent Receiver of, and, upon receiving a request from the Permanent Receiver, immediately transfer or deliver to the Permanent Receiver possession, custody, and control of, the following:

   A.     All assets of the Receivership Defendants;

   B.     All documents of the Receivership Defendants, including books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other

(PROPOSED) PRELIMINARY INJUNCTION
Page | 32

papers;

C.      All computers and data in whatever form used to conduct the

business of the Receivership Defendants; and

D.      All usernames, keys, codes, and passwords necessary to gain or to

secure access to any assets or documents of the Receivership Defendants,

including access to their business premises, means of communication, accounts,

computer systems, or other property.

In the event that any person or entity fails to deliver or transfer any asset or

document or otherwise fails to comply with any provision of this Section, the

Permanent Receiver may file *ex parte* an Affidavit of Non-Compliance regarding

the failure. Upon filing of the affidavit, the Court may authorize, without

additional process or demand, Writs of Possession or Sequestration or other

equitable writs requested by the Permanent Receiver. The writs shall authorize

and direct the United States Marshal or any sheriff or deputy sheriff of any

county, or any other federal or state law enforcement officer, to seize the asset,

document, or other item covered by this Section and to deliver it to the Permanent

Receiver.

## XVII.    PROVISION OF INFORMATION TO PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants

shall provide to the Permanent Receiver, immediately upon request, without need

(PROPOSED) PRELIMINARY INJUNCTION
Page | 33

of any subpoena or further order, the following:

A.     A list of all locations where documents of the Receivership Defendants are located, and the means to access such documents within five hours of the Permanent Receiver's request; and

B.     Within forty-eight (48) hours of service of this Order, the Individual and Corporate Defendants shall produce to the Permanent Receiver a list of all agents, employees, officers, and those persons in active concert and participation with them, who have been associated or done business with the Receivership Defendant(s).

## XVIII.   COOPERATION WITH THE PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order shall fully cooperate with and assist the Permanent Receiver in taking and maintaining possession, custody, or control of the assets and documents of the Receivership Defendants. This cooperation and assistance shall include:

A.     Providing information to the Permanent Receiver that the Permanent Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Permanent Receiver under this Order;

(PROPOSED) PRELIMINARY INJUNCTION
Page | 34

B.     Advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Permanent Receiver; and

C.     Transferring funds at the Permanent Receiver's direction and producing documents related to the assets and sales of the Receivership Defendants. The entities obligated to cooperate with the Permanent Receiver under this provision include financial institutions and persons that have transacted business with the Receivership Defendants.

## XIX. NONINTERFERENCE WITH THE PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, are hereby restrained and enjoined from directly or indirectly:

A.     Interfering with the Permanent Receiver managing, or taking custody, control, or possession of, the assets or documents subject to this Receivership;

B.     Transacting any of the business of the Receivership Defendants;

C.     Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the

(PROPOSED) PRELIMINARY INJUNCTION
Page | 35

Receivership Defendants, or the Permanent Receiver; and

D.      Refusing to cooperate with the Permanent Receiver or the Permanent Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XX.   PERMANENT RECEIVER'S REPORT

**IT IS FURTHER ORDERED** that the Permanent Receiver shall report to this Court: (1) the steps taken by the Permanent Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of Receivership Defendants; (3) the sum of all liabilities of Receivership Defendants; (4) the steps the Permanent Receiver intends to take in the future to: (a) prevent any diminution in the value of assets of Receivership Defendants; (b) pursue receivership assets from third parties; and (c) adjust the liabilities of Receivership Defendants, if appropriate; (5) the Permanent Receiver's finding regarding the ability of the Receivership Defendants to operate legally and profitably; and (6) any other matters that the Permanent Receiver believes should be brought to the Court's attention.  *Provided*, however, if any of the required information would hinder the Permanent Receiver's ability to pursue receivership assets, the portions of the Permanent Receiver's report containing the information may be filed under seal and not served on the parties.

## XXI.  STAY OF ACTIONS AGAINST DEFENDANTS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the Receivership ordered herein, Individual and Corporate Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any person seeking to establish or enforce any right, title, interest, or claim against or on behalf of any Defendant, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the assets or documents of the Defendants, including:

A.      Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency proceeding;

B.      Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding against the Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C.      Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-

1  help, or otherwise;

2      D.    Filing or enforcing any lien on any asset of the Defendants, taking or

3  attempting to take possession, custody, or control of any asset of the Defendants;

4  or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of

5  the Defendants, whether such acts are part of a judicial proceeding, are acts of

6  self-help, or otherwise; or

7      E.    Initiating any other process or proceeding that would interfere with

8  the Permanent Receiver managing or taking custody, control, or possession of, the

9  assets or documents subject to this receivership.

10      *Provided* that, this Order does not stay: (1) the commencement or

11  continuation of a criminal action or proceeding; (2) the commencement or

12  continuation of an action or proceeding by a governmental unit to enforce such

13  governmental unit's police or regulatory power; or (3) the enforcement of a

14  judgment, other than a money judgment, obtained in an action or proceeding by a

15  governmental unit to enforce such governmental unit's police or regulatory power.

16  **XXII. COMPENSATION OF PERMANENT RECEIVER**

17      **IT IS FURTHER ORDERED** that the Permanent Receiver and all

18  personnel hired by the Permanent Receiver, including counsel to the Permanent

19  Receiver and accountants, are entitled to reasonable compensation for the

20  performance of duties pursuant to this Order and for the cost of actual out-of-

(PROPOSED) PRELIMINARY INJUNCTION
Page | 38

pocket expenses incurred by them solely, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Defendants. The Permanent Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Permanent Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXIII.   DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Individual and Corporate Defendants shall immediately provide a copy of this Order to each affiliate, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, servant, attorney, spouse, subsidiary, division, and representative of any Individual and Corporate Defendant, and shall, within ten (10) days from the date of entry of this Order, individually provide the FTC with a sworn statement that each Individual and Corporate Defendant has complied with this provision of the Order, which statement shall include the names and addresses of each such person or entity who received a copy of this Order.

## XXIV.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

(PROPOSED) PRELIMINARY INJUNCTION
Page | 39

1

**DATED:**     September 4, 2015

2

3

By:  /s/ Reid Tepfer

4

Reid Tepfer
Attorney for Plaintiff Federal Trade
5
Commission

6

7

By:  /s/  Annah Kim

8
Annah Kim
Attorneys for Defendants Igor Latsanovski
9
and Calenergy, Inc.

10

I hereby attest that all of the signatories electronically listed above concur
11
in this filing's content and have authorized the filing in compliance with Local
Rule 5-4.3.4.(a)(2)(i).
12
*/s/ Reid Tepfer*
Reid Tepfer
13
Attorney for Plaintiff
Federal Trade Commission

14

15

16

17

18

19

20

(PROPOSED) PRELIMINARY INJUNCTION
Page | 40