**BEVERLY HILLS LAW CORP., PC**
Sagar Parikh, Esq. (SBN 282655)
433 N. Camden Drive, 6ᵗʰ Floor
Beverly Hills, CA 90210
Telephone:   (310) 887-1338
Facsimile:    (310) 982-2603
Email:        SP@BeverlyHillsLawCorp.com

Attorneys for Secured Merchants, LLC
and Chargeback Armor, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>              Plaintiff,<br><br>      vs.<br><br>BUNZAI MEDIA GROUP, INC., et al.,<br><br>            Defendants. | Case No. 2:15-cv-04527-GW (PLAx)<br><br>**CHARGEBACK ARMOR, INC.'S NOTICE OF MOTION AND MOTION FOR AN ORDER MODIFYING THE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH, MICHAEL COSTACHE, AND ALAN ARGAMAN**<br>**Hearing Date:  October 22, 2015**<br>**Time: 8:30 am**<br>**Location:  Courtroom 10 – Spring St.**<br>**Judge: Hon. George H. Wu** |

<u>**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**</u>

- 1 -

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

1    PLEASE TAKE NOTICE that on October 22, 2015 at 8:30 am in Courtroom

2    10 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles, CA

3    90012, CHARGEBACK ARMOR, INC. ("CBA") will and hereby does move the

4    Court for an Order modifying the Temporary Restraining Order and Preliminary

5    Injunctions in this matter and for the release of CBA's frozen funds in the amount of

6    $133,075.19 frozen on June 18, 2015.

7    This Motion is brought on the grounds that the Court has the power to modify

8    the TRO and Preliminary Injunctions and that the frozen funds should be released to

9    CBA because CBA is not a Receivership Defendant as defined by the Temporary

10   Restraining Order, the Preliminary Injunctions, the FTC or the Receiver, because

11   CBA did not receive any illicit funds related to the enjoined conduct, and because

12   CBA did not participate in any capacity in the enjoined conduct.

13   This Motion will be based on this Notice of Motion and Motion, the

14   Memorandum of Points and Authorities in support of the Motion, the Declarations of

15   Sagar Parikh, Michael Costache, CEO of CBA, Alan Argaman, CEO of Secured

16   Merchants, LLC, and the pleadings, records, and files in this action; and such other

17   materials as may be presented to the Court, or judicially noticed, at or before, or in

18   connection with the hearing on the Motion.

19

20   DATED:  September 22, 2015                    BEVERLY HILLS LAW CORP., PC

21

22                                        By:    /s/ Sagar Parikh

23                                               Sagar Parikh, Esq.
                                                 Attorneys for Secured Merchants, LLC
24                                               and Chargeback Armor, Inc.

25

26

27                                        - 2 -

28   CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
     THE TEMPORARY RESTRAINING
     ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
     MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
     MICHAEL COSTACHE, AND ALAN ARGAMAN

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Since the inception of this matter the FTC and Receiver have   frozen all the funds in CBA's Bank of America account number 3250 3040 0818 then with an account balance of  $133,075.19.  Despite jumping through all of the FTC and Receiver's hoops, providing full access to its entire business and financials within 24 hours of their request, and clearly showing beyond any doubt that it is a legitimate business wholly separate and unrelated to any of the Defendants, Receivership Defendants, and the enjoined conduct, CBA has still not had these funds released, now over 90 days later.

CBA now has no choice but to seek relief from the Court to stop the Receiver and FTC from continuing to freeze these funds without any legitimate reason, which has caused CBA, a start-up company, to become insolvent due to lack of operating funds. CBA has had no funds to pay its employees and consultants or continue its technological development or pay for its already-committed marketing plan.  The FTC's freeze of CBA's bank account has caused the company's revenues to go from $24,563 during the month of May to $0 for the month of September.

Continuing to hold onto CBA's funds is nothing more than an obvious effort by the Receiver to find more cash to pay her own fees.

CBA is not a Receivership Defendant.   Neither it, nor its CEO, Michael Costache, are named Defendants in this lawsuit.  CBA has never been a seller of skin care products. CBA has never marketed or advertised skin care products or any other type of products or services through online sales using "negative option" or "free trial offer" marketing.  It is a legitimate businesses completely unrelated to the alleged

- 3 -

business conducted by the Defendants.  In fact, CBA was not even incorporated until February 18, 2015, one full year after the Defendants' alleged conduct ceased.

CBA is a start-up company with an exciting business model that is was severely hampered and is now facing bankruptcy due to the FTC and Receiver's continual bad faith refusal and failure to release CBA's funds that have been frozen, despite having a litany of evidence in support of the release.

CBA's $133,075.19 has been frozen since June 18, 2015 and as the Court can sure recognize, no company can operate without funding, let alone having to deal with clients asking questions about its diminished operations and lack of personnel to answer their requests.

As this Motion will evidence, the Court should modify the TRO and Preliminary Injunctions and issue an Order to the Receiver and FTC to notify Bank of America, forthwith, that CBA's Bank of America number 3250 3040 0818 with all funds therein is to be immediately unfrozen and returned to CBA.

## II.
## FACTUAL BACKGROUND

### A. Chargeback Armor, Inc.

Chargeback Armor, Inc. is a California corporation formed on February 18, 2015, one full year after Defendants' skin care sales business had been shuttered.

CBA's sole shareholder, director, and officer is Michael Costache.  Declaration of Michael Costache ("Costache Dec.") at ¶ 1.  Neither CBA nor Mr. Costache are Defendants in this lawsuit. CBA has never been a seller of skin care products, and does not market skin care products through online sales using "negative option" or "free trial offer" marketing.  Costache Dec. at ¶ 4.

- 4 -

CBA is a business that provides services to merchants by fighting chargebacks on behalf of the merchant.  Costache Dec. at ¶ 2.  Its business model is perfectly legal and engaged in by billion-dollar companies such as Verifi, Chargeback911, Chargeback.com, Chargeback Gurus, and Chargeback 360.

The Receiver's Initial Report agrees, stating (Doc. #120, pg. 24 of 90):

"Chargeback Armor, Inc. also argued that none of its activities fell within the scope of the Enjoined Conduct, and argued its assets were derived solely from its unrelated business activities. The Receiver reviewed Chargeback Armor Inc.'s client contracts, and reached the same conclusion with respect to the nature of Chargeback Armor's business operations."

## 1. CBA Never Received Any Funds From Any of the Defendants or From the Enjoined Conduct

Despite the above-referenced admission, the Receiver and the FTC caused Bank of America to freeze CBA's account number 3250 3040 0818 then with an account balance of $133,075.19. Costache Dec. at ¶ 3.  These frozen funds were CBA's working capital.  This is the money CBA uses to pay its employees, fight chargebacks on behalf of its merchant clients, and pay other operational expenses.

Following repeated requests to release its bank account and funds, the Receiver and FTC have refused to release and unfreeze CBA's money, despite being given a plethora of evidence showing that no monies from any of the Defendants have entered CBA's bank account.

The reason given in the Receiver's report, and apparently adopted by the FTC, requires bootstrapping allegedly illicit skin care money paid by a Receivership Defendant (SBM Management Inc.) to SM --- to working capital contributed by SM to CBA (doc. #120, pgs. 24 and 25).

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

However, as Mr. Costache and Mr. Argaman, CEO of Secured Merchants, LLC have explained to the Receiver and FTC numerous times, the $250,000 that was put into CBA by SM was a capital infusion directly from the profits generated by SM from three clients of SM, and not SBM Management, Inc.   Attached to the Declaration of Alan Argaman (Argaman Dec.) are true and correct copies of the three contracts between SM and these three clients, which profits were then infused into CBA by SM to fund CBA for the first few months of its existence. Argaman Dec. at ¶ 2.

As CBA was a start-up business, it, like any start-up business, needed working capital to pay its bills and this was provided by SM.

Aside from voluntarily engaging in multiple lengthy conference calls with the Receiver and FTC to disclose any and all information necessary to unfreeze its money, CBA has also provided to the Receiver and FTC all emails between Costache and Roi Reuveni, emails between Costache and Doron Nottea, emails between Costache and Alan Argaman, and each and every single bank statement since its inception (see email from CBA's counsel dated 6/22, EXHIBIT A to the Declaration of Sagar Parikh), all 32 contracts that CBA has ever entered into (see email from CBA's counsel dated 6/22, EXHIBIT A to Parikh Dec.), a list of all subcontractors ever paid by CBA (also EXHIBIT A to Parikh Dec.), and a profit and loss statement (also EXHIBIT B to Parikh Dec.).

Notably, even after reviewing each of these documents, neither the FTC nor Receiver could point to any transaction showing the CBA had received one penny of illicit funds from any of the enjoined conduct in this matter or any funds from any Defendant in this matter.  No funds ever contained in CBA's bank account could be

traced to any of the Defendants or enjoined conduct, as no such funds were ever invested in, paid to, or received by CBA.

Mr. Costache then went so far as to list out for the Receiver and the FTC, under penalty of perjury, each and every single customer CBA has ever had and every referral agreement ever entered into between CBA and any other party. This was listed in a June 26, 2015 declaration provided by Mr. Costache to the FTC and Receiver. For the convenience of the Court, each of these entities is listed in Paragraph 5 of the Costache Declaration. Not a single entity or individual listed here is a Receivership Defendant. It is hard to imagine CBA being any more independent and wholly separate from the enjoined conduct here.

**2. Doron Nottea Was a Co-Signer on the CBA Bank Account For Convenience Reasons Only and Had His Debit Card Cancelled By CBA**

The only other reason given for the freezing of CBA's account is purportedly because Doron Nottea was a permitted signer on CBA's Bank of America account number 3250 3040 0818.

As has been explained to the Receiver and FTC numerous times (see email from CBA's counsel, EXHIBIT C to Parikh Dec.), the only reason Mr. Nottea was a permitted signer is simply for convenience reasons, as Mr. Costache travels often overseas, it made sense to have someone locally available as a permitted signer on the account to pay bills and write checks for CBA's expenses when Mr. Costache was gone. Costache Dec at ¶ 6. In fact, CBA was in the process of outsourcing its accounting and bookkeeping needs, evidencing that Mr. Nottea was only on the account as a permitted signer. Costache Dec. at ¶ 7.

In further efforts to appease the FTC and Receiver, on June 19, 2015, Mr. Costache personally went into Bank of America and cancelled Mr. Nottea's debit card.

Costache Dec. at ¶ 8.   The FTC and Receiver still refused to unfreeze CBA's bank account .

Going even further to appease the FTC and Receiver, on June 26, 2015, Mr. Costache prepared a document, signed by both himself and Mr. Doron Nottea, with copies of their driver's licenses, instructing to completely remove Mr. Nottea as a permitted signer from the CBA bank account.  The bank was unable to do this due to the account being frozen.  Costache Dec at ¶ 9.

Thus, CBA was now placed in a no-win, Catch-22 situation by the FTC and Receiver whereby on one hand, the FTC and Receiver would continue to assert that despite the litany of evidence provided by CBA, the FTC could not release the hold on the CBA bank account because Mr. Nottea was a co-signer; yet, on the other hand, because of the very fact that the FTC would not release the hold on the bank account, Bank of America could not remove Mr. Nottea as a co-signer.

This absurd situation continues to this day.  Costache Dec. at ¶ 10. CBA has offered the FTC and Receiver the simple solution of entering into a stipulation whereby the CBA bank account would be unfrozen, conditional upon the immediate removal of Mr. Nottea as a permitted signer.  The FTC and Receiver have refused this common-sense solution, preferring instead to continue to freeze the $133,075.19, likely in the hopes of eventually using these funds to pay the Receiver's exorbitant expenses and fees.

A very telling indicator of the FTC and Receiver's bad faith conduct here is that from July 2 to July 9, 2015, the FTC froze CBA's *brand new* bank account that CBA opened after the inception of this matter. Costache Dec. at ¶ 11.  Remarkably, the FTC and Receiver somehow felt that they had the authority to do this, and when

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

instructed to release the account, the FTC and Receiver dragged their feet for days (EXHIBIT D to the Motion).

Due to this improper conduct, CBA lost numerous vendors and staff, as no payments could be made to these parties.  Costache Dec. at ¶ 11.

### III.

### LEGAL ARGUMENT

#### A.    Any Person Affected By an Injunction Has the Power to Seek an Order Modifying or Dissolving the Injunction

Generally, any person bound or affected by the injunction can seek an order dissolving or modifying the injunction. This includes any party to the action even if the injunction is not directed against him or her, as well as a nonparty who is bound by the injunction: "(A)ny person bound and significantly constrained by an equitable decree may present evidence to show that the decree should be lifted even if the primary wrongdoer is someone else." *United States v. Board of School Commrs. of City of Indianapolis* (7th Cir. 1997) 128 F3d 507, 511.

Indeed, this Court denied the FTC's motion that sought to prevent the filing of this motion unless CBA first formally intervened in this lawsuit. [Doc. # 206] A nonparty adversely affected by an injunction has the right to move for relief without formally intervening in the lawsuit.

#### B. This Court Has the Power to Modify the Temporary Restraining Order and Preliminary Injunctions

"A district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A & M Records, Inc. v. Napster*, 284 F.3d 1091, 1098 (9th Cir.2002).  See also *United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 76 L.Ed. 999 (1932) ("A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."); *Mariscal-*

- 9 -

1   *Sandoval v. Ashcroft*, 370 F.3d 851, 859 (9th Cir.2004) ("The proposition that a court

2   has the authority to alter the effect of an injunction in light of changes in the law or the

3   circumstances is well established."); *Transgo, Inc. v. Ajac Transmission Parts Corp*.,

4   768 F.2d 1001, 1030 ("When dealing with its equitable powers, a court possesses the

5   intrinsic power to adapt the injunction to meet the needs of a `new day.'")

6       As shown above and in the Costache Dec. , the Court is now presented with

7   new facts and additional evidence that was not available to it when the Temporary

8   Restraining Order and Preliminary Injunctions in this matter were granted.  In light of

9   this new information, the Court should modify the TRO and Preliminary Injunctions

10  and order that the FTC release CBA's Bank of America account and the frozen funds

11  on deposit therein.

12  C.  **CBA is Not Dominated or Controlled By a Defendant**

13      CBA acknowledges that a Court may freeze the assets of a nonparty when that

14  nonparty is dominated and controlled by a Defendant against whom relief has been

15  obtained., e.g. *SEC v Hickey* (2003) 322 F.3d 1123 (sufficient evidence showing that

16  nonparty was defendant's alter ego and paid defendant's business and personal

17  expenses at defendant's direction).  In *Hickey*, John Hickey and Mamie Tang were

18  alleged to have engaged in a $15 million dollar scheme to defraud investors.  *Id*. At

19  1125.

20      After conducting discovery, the SEC moved for an order freezing the assets of

21  John Hickey Brokerage, Inc., which was a nonparty entity started by Hickey's mother

22  after the *Hickey* action commenced.  *Id.* at 1126.  The Court in *Hickey* found that the

23  freezing of the funds was proper because the SEC had provided sufficient evidence

24  showing that the Brokerage was the alter ego of Hickey, that Hickey was registered

25  with the California Department of Real Estate as the designated broker for the

26

27                                   - 10 -

28  CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
    THE TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
    MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
    MICHAEL COSTACHE, AND ALAN ARGAMAN

1   Brokerage, and that the Brokerage had agreed to pay Hickey's business and personal
2   expenses as deemed appropriate by Hickey. *Id.* at 1127-1127.

3   　　　Here, this situation is not at all analogous.  CBA is not dominated or controlled
4   in any way, shape, or form by any Defendant.  Mr. Costache is the only officer,
5   director, and shareholder of CBA.

## IV.

## CONCLUSION

8   　　　For the aforementioned reasons, CBA's Bank of America account number 3250
9   3040 0818should be unfrozen and all funds therein (including $133,075.19) should be
10  released as CBA is not a Receivership Defendant, is not controlled or dominated by
11  any Defendant, has never engaged in any of the enjoined conduct, is a legitimate
12  business providing a legitimate service, and CBA has never received any illicit funds
13  from the sale of skincare products or from any of the Defendants.

16  DATED:  September 22, 2015          **BEVERLY HILLS LAW CORP., PC**

18  　　　　　　　　　　　　　　　　　　By:   /s/ Sagar Parikh
19  　　　　　　　　　　　　　　　　　　Sagar Parikh, Esq.
　　　　　　　　　　　　　　　　　　*Attorneys for,*
20  　　　　　　　　　　　　　　　　　　Chargeback Armor, Inc. and Secured
　　　　　　　　　　　　　　　　　　Merchants, LLC

- 11 -

# DECLARATION OF SAGAR PARIKH

I, Sagar Parikh declare:

      I am the attorney of record for Secured Merchants, LLC and Chargeback Armor, Inc. in this matter in this matter.  I have personal knowledge of the following facts and, if called upon to testify, I could and would so competently and truthfully testify to these facts:

1. Attached hereto as EXHIBIT A is a true and correct copy of an email I wrote to the Receiver and the Receiver's counsel.  Attached to the email are true and correct copies of all of the bank statements for CBA as of the date of the email, a true and correct copy of a profit and loss statement from CBA, and a true and correct list of subcontractors paid by CBA as of the date of the email.

2. Attached hereto as EXHIBIT B is a true and correct copy of an email from myself to the Receiver and the Receiver's counsel dated June 22, 2015 that has attached to it true and correct copies of all 32 contracts ever entered into by CBA.

3. Attached hereto as EXHIBIT C is a true and correct copy of an email I wrote to the FTC explaining why Doron Nottea was a permitted signer on the CBA bank account.  This is just one of several emails written to the FTC and Receiver on this exact topic.

- 12 -

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

4.   Attached hereto as EXHIBIT D are true and correct copies between the

Receiver and I and between Michael Costache and the Receiver/FTC re CBA's

new bank account being frozen.

5.   On September 18, 2015, I sent an email to the FTC and Recevier in an attempt

to meet and confer regarding stipulating to the granting of the relief requested

herein.  I requested a response by 5 PM September 21, 2015 as to whether or

not the FTC and/or Receiver would oppose this Motion.  After lengthy

discussion on 9/21, the Receiver advised she would oppose.  After discussion

on 9/22, the FTC announced they would also oppose the Motion.

I declare under penalty of perjury under the laws of the State of California that
the foregoing is true and correct.

DATED: September 22, 2015     By:_____

Sagar Parikh

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

# FTC v. Bunzai Media - Chargeback Armor/Secured Merchant//IVR Logix/Vbonita

**Sagar Parikh** <sp@beverlyhillslawcorp.com>                    Mon, Jun 22, 2015 at 10:19 AM
To: Mitch Little <Mitch.Little@solidcounsel.com>
Cc: Charlene Koonce <charlene.koonce@solidcounsel.com>, David Dyer <David.Dyer@solidcounsel.com>, Kelly Crawford <kelly.crawford@solidcounsel.com>

Mitch and Charlene:

First, regarding Mike Costache and Chargeback Armor, the documents requested are attached.

Regarding Alan Aragman, what you are asking amounts to a gross violation of his rights to privacy.

I completely understand that my Clients are under a court order to cooperate with you in this investigation, however, you are seeking a password for a computer that Mr. Aragman uses as his personal computer, including having pictures of his children on there and other personal and private items. You have no right to be able to freely access this information. Any filing you do in court regarding this would have an enormously high burden, and I doubt you would be able to meet it. If there are specific things you are looking for, please give me an itemized list and my Client and I will work with you amicably in obtaining these items.

The following bank accounts need to be unfrozen:

All located in Bank of America

Chargeback Armor Inc. 325030400818
Secured Merchants LLC. 325015010922
IVR Logix, Inc.325048360018
Vbonita Inc. 325007304222

Mitch, what documents are you referring to that demonstrate transfers to any of the Defendants? Please provide those so I can review and discuss with my Client.

Finally, I have a mediation Friday afternoon, so am not available for a meeting.


Sagar Parikh, Esq.

BEVERLY HILLS LAW CORP., PC
433 N. CAMDEN DRIVE, 6TH FLOOR
BEVERLY HILLS, CA 90210
Tel |    (310) 887-1338
Fax|    (310) 982-2603
Email |  SP@BeverlyHillsLawCorp.com
Web |    www.BeverlyHillsLawCorp.com

CONFIDENTIALITY NOTICE: This message and any attachments are intended solely for the person or entity to which it is addressed and may contain confidential or privileged information, the disclosure of which is governed by applicable law. If the recipient of this message is not the addressee or employee or agent responsible for delivering the message to the addressee, such recipient is prohibited from reading or using this message in any way. If you have received this message in error, please call the sender of this message and destroy the related message immediately.

[Quoted text hidden]

---

## 6 attachments



**eStmt_2015-02-27.pdf**
359K

**Profit and Loss Chargeback Armor.pdf**
89K

**eStmt_2015-05-29.pdf**
411K

**eStmt_2015-03-31.pdf**
413K

**Subcontractor Payouts Chargeback Armor.pdf**
98K

**eStmt_2015-04-30.pdf**
454K

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

## FTC v. Bunzai Media - Chargeback Armor/Secured Merchant//IVR Logix/Vbonita

**Sagar Parikh** <sp@beverlyhillslawcorp.com>                    Mon, Jun 22, 2015 at 12:58 PM
To: Charlene Koonce <charlene.koonce@solidcounsel.com>
Cc: Mitch Little <Mitch.Little@solidcounsel.com>, David Dyer <David.Dyer@solidcounsel.com>, Kelly Crawford
<kelly.crawford@solidcounsel.com>, "Jacob W. Sparks" <Jacob.Sparks@solidcounsel.com>, "Gallegos, Luis"
<LGALLEGOS@ftc.gov>, "Tepfer, Reid A." <rtepfer@ftc.gov>

Re Chargeback Armor, please see attached. Corporate governing docs, all 32 contracts the company has ever
executed, and proof removing Doron as a signatory.

Doron was a signatory on the Chargeback Armor bank account and has since been removed, as reflected by the
closing of his card on June 19, 2015. He was a signatory as he was the bookkeeper for Chargeback Armor and as
as Mr. Costache travels a lot, it follows that Doron was needed as a signatory when Mr. Costache was not
available.

Regarding the contracts, please be advised that you are not authorized to contact any of these parties whom
Chargeback contracted with directly. Doing so will almost certainly disrupt the business relationship Chargeback
has with the person/entity and your firm will be held legally responsible should this occur.

If you wish to inquire further about any parties with whom Chargeback contracted, Mr. Costache (the CEO) is
happy to speak with you directly.

Sagar Parikh, Esq.

BEVERLY HILLS LAW CORP., PC

433 N. CAMDEN DRIVE, 6TH FLOOR
BEVERLY HILLS, CA 90210
Tel |    (310) 887-1338
Fax|    (310) 982-2603
Email |  SP@BeverlyHillsLawCorp.com
Web |    www.BeverlyHillsLawCorp.com

CONFIDENTIALITY NOTICE: This message and any attachments are intended solely for the person or entity to which it is
addressed and may contain confidential or privileged information, the disclosure of which is governed by applicable law. If the
recipient of this message is not the addressee or employee or agent responsible for delivering the message to the addressee,
such recipient is prohibited from reading or using this message in any way. If you have received this message in error, please
call the sender of this message and destroy the related message immediately.

[Quoted text hidden]

**36 attachments**

 **EIN_Chargeback Armor Inc_CP575.pdf**
15K

 **Statement of Information_Client.pdf**
28K

**Articles of Incorporation_Chargeback Armor Inc.pdf**

75K

**Service Agreement EHL (Michael Kovacs) - ChargeBack Armor (April 2, 2015).pdf**
405K

**Service Agreement Go Long Enterprises (Kenneth Rosen) - ChargeBack Armor (April 8, 2015).pdf**
405K

**Service Agreement JJS Entertainment (Steven Mayer) - ChargeBack Armor (April 27, 2015).pdf**
406K

**Service Agreement Ojas Enterprises (Samir Patel) - ChargeBack Armor (April 8, 2015).pdf**
404K

**Service Agreement Tech Live Connect Pte Ltd (Brian Cotter) - ChargeBack Armor (March 16, 2015).pdf**
403K

**Service Agreement Vitaeque (Jamie Nolte) - ChargeBack Armor (March 1, 2015).pdf**
405K

**Consulting Agreement Lori Bembanaste - Chargeback Armor (March 16, 2015).pdf**
293K

**Consulting Agreement Nick Cramer - Chargeback Armor (April 23, 2015).pdf**
294K

**Elavon Inc. Standard Mutual NDA - Chargeback Armor (April 16, 2015).pdf**
306K

**Ethoca Alerts Value Added Reseller Agreement - Chargeback Armor (May 4, 2015).pdf**
682K

**Kount Referral Partner Agreement - Chargeback Armor (May 28, 2015).pdf**
304K

**Principal Search Partners - Chargeback Armor (March 16, 2015).pdf**
351K

**Referral Agreeement CardFlex (Andrew Phillips) - Chargeback Armor (March 2, 2015).pdf**
344K

**Referral Agreement American Marketing & Development Services (Andy Siegal) - Chargeback Armor (April 27, 2015).pdf**
351K

**Referral Agreement Bridgepoint Pacific Group (MID Source Greg Augustine) - Chargeback Armor (March 16, 2015).pdf**
351K

**Referral Agreement Chargeback Help (Laurel Hertz) - Chargeback Armor (April 21, 2015).pdf**
348K

**Referral Agreement Dylan Gaines  - Chargeback Armor (March 10, 2015).pdf**
344K

**Referral Agreement High Risk Commerce LLC (Ethan Baron) - Chargeback Armor (March 9, 2015).pdf**
343K

**Referral Agreement HRMA Services (Michael M. Reilly) - Chargeback Armor (March 23, 2015).pdf**
344K

**Referral Agreement Julius W Andrassy - Chargeback Armor (May 21, 2015).pdf**
350K

**Referral Agreement Lance Burstyn - Chargeback Armor (May 21, 2015).pdf**

350K

Referral Agreement Mark Standfield - Chargeback Armor (May 6, 2015).pdf
350K

Referral Agreement Performance Card Service, Ltd (Matthew Wollersheim) - Chargeback Armor (April 8, 2015).pdf
349K

Referral Agreement Platinum Payment Systems (Ryan Effelsen) - Chargeback Armor (March 31, 2015).pdf
348K

Referral Agreement Sameh Ibrahim - Chargeback Armor (June 5, 2015).pdf
348K

Referral Agreement Systema Marketing LLC (Robert Podlesni) - Chargeback Armor (March 10, 2015).pdf
344K

Referral Agreement Three Sixty One Payments Group LLC  (Eric Hannelius) - Chargeback Armor (March 23, 2015).pdf
349K

Referral Agreement VastPay (Eugene Shampansky) - Chargeback Armor (May 26, 2015).pdf
350K

Service Agreement 25 7 Supplements LLC (Keith Kephart) - ChargeBack Armor (March 18, 2015).pdf
402K

Service Agreement Apex Ads Group (David Krischke) - ChargeBack Armor (February 16, 2015).pdf
406K

Service Agreement Blue Diamond Marketing (Rita Hoang) - ChargeBack Armor (April 8, 2015).pdf
407K

Service Agreement Creative Ventures Media (JJ Alan Huapaya) - ChargeBack Armor (March 1, 2015).pdf
405K

Proof that Doron Nottea Removed From Chargeback Account as co-signer.pdf
819K

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT C</u>**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

# Re Unfreezing Chargeback Armor's Accounts

**Sagar Parikh** <sp@beverlyhillslawcorp.com>                        Wed, Jul 1, 2015 at 10:43 AM
To: "Tepfer, Reid A." <rtepfer@ftc.gov>
Cc: "Gallegos, Luis" <LGALLEGOS@ftc.gov>

Yes, that is correct: Chargeback Armor has no contractual relationships with anyone else named in the lawsuit other than Trigen for 3 months as Roi Reuveni's specific expertise in chargeback management was useful for Mr. Costache as he was trying to figure out how to best position this brand and technology. He has no idea of any of these legal issues that Trigen or any of the other defendants were involved in.

Doron being a co-signer on Chargeback Armor's account was explained to Charlene and again: Mr. Costache travels a lot and since certain bills needed to be paid via check, he allowed Doron to be a co-signer for convenience purposes. He never paid or intended to pay for a few seconds of Doron's time to write such checks. Mr. Costache had a found an outsourcing bookkeeping company that he was planning to transition to for $500/month. He can show proof of communication with that company so you can see his intentions of having that accounting task done by a professional. As you may or may not know, with startups in the first 90-120 days there are a lot of decisions in regards to services, staffing, marketing, management, sales, ect.

My client has provided all his email communication with Roi and Doron and Alon and Alan to Charlene. I can provide to you as well, if you would like.

The only thing anyone can hold my client liable for is for choosing the wrong person to allow to sign pre-approved checks and for deciding to rent office space for the first 90 days of his startup in an office with others whom he had no knowledge of their possible wrongdoings which you are now investigating.

We can go on and on and explain forever all your concerns but in the meantime you are holding this business hostile and keeping families from getting paid. So please agree to a phone conversation with Mr. Costache and I and he will answer any and all of your questions just like he did with Charlene.

He is willing to sign a declaration you need just like he did with Charlene when she was nice enough to allow him to get his belongings and his company's fax server on Friday. But now he can't bill his clients for services rendered in the past two weeks.

So what time are you available today for a phone conversation? Feel free to record it or transcribe and my client will sign off on it. But please don't waste any more time as people's lives are at stack here. Find one illegal or even unethical thing that my client did and then you will have reason to hold his company hostage.

Sagar Parikh, Esq.

BEVERLY HILLS LAW CORP., PC
433 N. CAMDEN DRIVE, 6TH FLOOR
BEVERLY HILLS, CA 90210
Tel |   (310) 887-1338
Fax|   (310) 982-2603
Email | SP@BeverlyHillsLawCorp.com
Web |   www.BeverlyHillsLawCorp.com

CONFIDENTIALITY NOTICE: This message and any attachments are intended solely for the person or entity to which it is addressed and may contain confidential or privileged information, the disclosure of which is governed by applicable law. If the recipient of this message is not the addressee or employee or agent responsible for delivering the message to the addressee,

such recipient is prohibited from reading or using this message in any way. If you have received this message in error, please call the sender of this message and destroy the related message immediately.

─────────────────────────────

[Quoted text hidden]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT D**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN



Sagar Parikh <sp1085@gmail.com>

**Account still frozen**

Mike Costache <mike@chargebackarmor.com>
To: Mary Jarjour <mary.jarjour@bankofamerica.com>, Aaron Singer <aaron.j.singer@bankofamerica.com>
Cc: Charlene Koonce <charlene.koonce@solidcounsel.com>, Kelly Crawford <kelly.crawford@solidcounsel.com>, Luis Gallegos <LGALLEGOS@ftc.gov>, "Reid A. Tepfer" <rtepfer@ftc.gov
<sp@beverlyhillslawcorp.com>

Hi Mary and Aaron,

My new bank account is still frozen after 6 days since I opened it.

Can you or BofA's legal department explain what is going on? On Monday of this week, I provided you the official letter from FTC's lawyer, Reid Tepfer (cc'ed here) which explained that they
this new bank account since it has nothing to do with the civil lawsuit that they are pursuing, which also has nothing to do with Chargeback Armor, but time will prove them wrong.

Why does it take so long to unfreeze my new account? It should have never been frozen in the first place so I demand an explanation.

Thank you,

Mike Costache
Chief Executive Officer
ChargeBack Armor, Inc.
Office: 800.976.7027
Mobile: 310.753.9292
Skype: mikecostache
Email: mike@chargebackarmor.com
LinkedIn: linkedin.com/in/mikecostache
5023 North Parkway Calabasas
Los Angeles, CA 91302





## 07/06/2015

Legal Order, LTS
U061815000209

-$1

## 07/02/2015

Deposit

$1
$

🔒 Secure Area     Privacy & Security     Equal Housing

© 2015 Bank of America Corporation. All rights reserved. Bank of America, N.A. Member FDIC.

| Activity | Details | I Want To |
|---|---|---|



Sagar Parikh <sp1085@gmail.com>

---

## Secured Merchants Documents

**Charlene Koonce** <charlene.koonce@solidcounsel.com>                                          Wed, Jul 8, 2015 at 4:43 PM
To: Sagar Parikh <sp@beverlyhillslawcorp.com>, Mike Costache <mike@chargebackarmor.com>
Cc: "Tepfer, Reid A." <rtepfer@ftc.gov>, Kelly Crawford <kelly.crawford@solidcounsel.com>, "Gallegos, Luis" <LGALLEGOS@ftc.gov>

Sagar -  Please confirm that the "new" Chargeback account has been unfrozen.



### Charlene Koonce

### Partner

500 N. Akard, Suite 2700

Dallas, Texas 75201

**214.706.4215** (Direct)

214.706.4200 (Main)

214.706.4242 (Facsimile)

charlene.koonce@solidcounsel.com

www.solidcounsel.com



## SCHEEF & STONE, L.L.P.
LEGAL COUNSEL BASED ON SOLID PRINCIPLES

**Important:**  This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:**  Please be advised that Scheef & Stone, L.L.P. reserves the right to record telephone conversations involving its employees or attorneys.  If you do not wish to be recorded, please limit your communications with Scheef & Stone, L.L.P. to regular mail, faxes, and/or electronic mail.

**From:** sp1085@gmail.com [mailto:sp1085@gmail.com] **On Behalf Of** Sagar Parikh
**Sent:** Wednesday, July 08, 2015 6:41 PM
**To:** Mike Costache
**Cc:** Charlene Koonce; Tepfer, Reid A.; Kelly Crawford; Gallegos, Luis

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

## DECLARATION OF MICHAEL COSTACHE

I, Michael Costache declare:

I am the Chief Executive Officer and the sole director, officer, and shareholder of Chargeback Armor, Inc.  I have personal knowledge of the following facts and, if called upon to testify, I could and would so competently and truthfully testify to these facts:

1. I am the founder, and sole director, officer, and shareholder of Chargeback Armor, Inc. ("CBA"), a California corporation.  Please see attached hereto as EXHIBIT E true and correct copies of CBA's Statement of Information and Articles of Incorporation showing myself as the only officer and director of CBA.

2. CBA solicits business from merchants who have chargebacks based on sales, which include on-line sales.  CBA provides a service in which on behalf of a merchant CBA will investigate the basis for the chargeback and whether there is a basis to contest the chargeback.  If CBA determines there is a basis to contest the chargeback, CBA will contest the chargeback on behalf of the merchant with the credit card processor.  For this service, CBA charges its customers approximately $10 for every chargeback that is contested.

- 18 -

3.  Attached hereto as EXHIBIT F is a true and correct copy of a bank statement from June 2015 for CBA's bank account number 3250 3040 0818.  As can be seen from the bank statement, the hold was placed on June 18, 2015 and funds in the amount of $133,075.19 have been frozen since that date.

4.  CBA has not been engaged in and does not engage in the Prohibited Business Activities listed in the Temporary Restraining *Order*, including, but not limited to online sales of products that involve negative options or free trial marketing, the sale of skincare products, and other enjoined conduct, as defined in the Temporary Restraining *Order*.

5.  CBA has or had the following customers:

> EHL, Inc., a California corporation
> JJS Entertainment, an Alberta, Canada partnership
> Ojas Enterprises, LLC, a New York limited liability company
> Tech Live Connect Pte Ltd., a Singapore Private Limited Company
> Vitaeque S.A., a Societe Anonyme Company
> 257 Supplements, LLC, a California corporation
> Apex Ads Group, LLC, a limited liability company in Wisconsin
> Blue Diamond Marketing, LLC, a Wyoming limited liability company
> Creative Ventures Media, LLC, a limited liability company in New Jersey

- 19 -

Eccentric Innovations, Inc., a California corporation

The foregoing list includes all customers CBA now has or ever has had (the "Customers").  To my knowledge, none of the Customers have been or are currently engaged in any of the Prohibited Business activities listed in the Receivership Order.

CBA has or had Referral Agreements with the following:

Cardflex, Inc., a California corporation

American Marketing/Development Services, LLC, located in New Jersey

Bridgepoint Pacific Group, d/b/a MID Source, a California corporation

Chargeback Help, LLC, a California corporation

Dylan Gaines, an individual in Glendale, California

High Risk Commerce LLC, a Florida limited liability company

HRMA Services/Michael M. Reilly

JW Andrassu, an individual in Palm Beach, Florida

Global Star Ventures, LLC, a limited liability company in Miami, Florida

Mark Standfield, an individual

Performance Card Service, Ltd., an Illinois private limited company

Platinum Payment Systems, LLC, a Utah limited liability company

Sameh Ibrahim, an individual

Systema Marketing, LLC, a Nevada limited liability company

Three Sixty One Payments Group, LLC in Portland, Maine

Vastpay, LLC, a California limited liability company


CBA has sales consulting contracts with the following:

1.  Lori Bembanaste, an individual in Hollywood Beach, Florida

- 20 -

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

2.  Nick Cramer, an individual in Austin, Texas

CBA has referral contracts with the following firms to resell their products and services to CBA's client base:

    1.  Kount, Inc., a Delaware corporation

    2.  Ethoca Limited, an Ireland company

The foregoing list includes all referral partners CA now has or ever has had (the "Referral Sources").  To my knowledge, none of the Referral Sources have been or are currently engaged in any of the Prohibited Business activities listed in the Temporary Restraining *Order*.

6.  On the CBA Bank of America bank account number 3250 3040 0818, I made Doron Nottea a co-signer for convenience reasons as I travel a lot for business overseas and wanted Doron to be able to write checks to vendors, employees, and other expenses that CBA had to pay while I was out of town. Mr. Nottea is not, and never has been, an owner, director, officer, or shareholder of CBA.

7.  Cfoplans.com is the company that CBA was about to retain to handle the bookkeeping and accounting for CBA right before the FTC freeze. Doron Nottea never became the bookkeeper or accountant for CBA, and was only on the account as a permitted signer for the limited purpose of signing checks at the instruction of myself.  Attached hereto as

- 21 -

EXHIBIT G is a true and correct copy of emails with cfoplans.com regarding starting services for CBA.

8.  On June 19, 2015, I personally contacted Bank of America and had Mr. Nottea's debit card for the CBA cancelled.  Attached hereto as EXHIBIT H is a true and correct copy of a screenshot showing that Mr. Nottea's debit card is no longer active.

9.  On June 26, 2015, I authored a document stating that Mr. Nottea and I had agreed to have Mr. Nottea removed as a co-signer from the CBA bank account. Mr. Nottea and I both signed this document.  Attached as EXHIBIT I to this declaration is a true and correct copy of this document.  Please note that I erroneously put the year as "2014" and not "2015" on the document.  I was informed by Bank of America that Mr. Nottea could not be removed as a co-signer until the FTC released the freeze on the account.

10. As of the date of this Declaration, September 21, 2015, CBA's funds in the amount of $133,075.19 continue to be frozen in its Bank of America bank account number 3250 3040 0818.

- 22 -

11. After attempting to have the CBA bank account unfrozen to no avail, I opened up another bank account at Bank of America under my name only, with myself as the only authorized signer, and this account was still frozen by the FTC from July 2-July 9.  Please see EXHIBIT J for a true and correct copy of a bank statement from this new bank account.  Please see EXHIBIT K for a true and correct copy of a letter from the FTC to Bank of America instructing this new account be unfrozen.  Due to this hold on the new CBA bank account, CBA lost vendors and staff, as these parties could not be paid by CBA during this one week freeze.  This further impaired CBA's business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: September 21, 2015          By:    *Michael Costache*

                                                    Michael Costache

---

- 23 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT E</u>**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

3756956

| **ARTS-GS** | **Articles of Incorporation of a General Stock Corporation** |
|---|---|

To form a **general stock corporation** in California, you can fill out this form or prepare your own document, and submit for filing along with:

- A $100 filing fee.

- A separate, non-refundable $15 service fee also must be included, if you **drop off** the completed form or document.

*Important!* Corporations in California may have to pay a minimum $800 yearly tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.

Note: *Before submitting the completed form*, you should consult with a private attorney for advice about your specific business needs.

**FILED**
Secretary of State
State of California

FEB 1 8 2015

*ICC*      This Space For Office Use Only

**For questions about this form, go to** *www.sos.ca.gov/business/be/filing-tips.htm.*

**Corporate Name** (List the proposed corporate name. Go to www.sos.ca.gov/business/be/name-availability.htm for general corporate name requirements and restrictions.)

① The name of the corporation is ___CHARGEBACK ARMOR, INC___

**Corporate Purpose**

② The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

**Service of Process** (List a California resident or a California registered corporate agent that agrees to be your initial agent to accept service of process in case your corporation is sued. You may list any adult who lives in California. You may not list your own corporation as the agent. Do not list an address if the agent is a California registered corporate agent as the address for service of process is already on file.)

③ a. ___MICHAEL COSTACHE___
   Agent's Name

   b. ___200 N MARYLAND AVENUE, SUITE 300___  ___GLENDALE___  ___CA___ ___91206___
   Agent's Street Address (if agent is not a corporation) - Do not list a P.O. Box    City (no abbreviations)    State    Zip

**Corporate Addresses**

④ a. ___200 N MARYLAND AVENUE, SUITE 300___  ___GLENDALE___  ___CA___ ___91206___
   Initial Street Address of Corporation - Do not list a P.O. Box    City (no abbreviations)    State    Zip

   b. _____
   Initial Mailing Address of Corporation, if different from 4a    City (no abbreviations)    State    Zip

**Shares** (List the number of shares the corporation is authorized to issue. Note: Before shares of stock are sold or issued, the corporation must comply with the Corporate Securities Law of 1968 administered by the California Department of Business Oversight. For more information, go to www.dbo.ca.gov or call the California Department of Business Oversight at (866) 275-2677.)

⑤ This corporation is authorized to issue only one class of shares of stock.

The total number of shares which this corporation is authorized to issue is ___1000___.

This form must be signed by each incorporator. If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11"). All attachments are made part of these articles of incorporation.

▶ *Michael Costache*      MICHAEL COSTACHE
Incorporator - Sign here      Print your name here

| Make check/money order payable to: **Secretary of State** | **By Mail** | **Drop-Off** |
|---|---|---|
| Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee. | Secretary of State Business Entities, P.O. Box 944260 Sacramento, CA 94244-2600 | Secretary of State 1500 11th Street, 3rd Floor Sacramento, CA 95814 |

Corporations Code §§ 200-202 et seq., Revenue and Taxation Code § 23153
ARTS-GS (REV 03/2014)

2014 California Secretary of State
www.sos.ca.gov/business/be

# State of California
## Secretary of State

| S |

### Statement of Information
**(Domestic Stock and Agricultural Cooperative Corporations)**
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**1.   CORPORATE NAME**

CHARGEBACK ARMOR, INC.

**2.   CALIFORNIA CORPORATE NUMBER**

3756956

This Space for Filing Use Only

**No Change Statement**  (Not applicable if agent address of record is a P.O. Box address.  See instructions.)

3.  **If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

☐  If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 17.**

**Complete Addresses for the Following**  (Do not abbreviate the name of the city.  Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4.   STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | 200 N MARYLAND AVE SUITE 300 | GLENDALE | CA | 91206 |
| 5.   STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | 200 N MARYLAND AVE SUITE 300 | GLENDALE | **CA** | 91206 |
| 6.   MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | CITY | STATE | ZIP CODE |

**Names and Complete Addresses of the Following Officers**  (The corporation must list these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7.   CHIEF EXECUTIVE OFFICER/ MICHAEL COSTACHE | 200 N MARYLAND AVE SUITE 300 | GLENDALE | CA | 91206 |
| 8.   SECRETARY MICHAEL COSTACHE | 200 N MARYLAND AVE SUITE 300 | GLENDALE | CA | 91206 |
| 9.   CHIEF FINANCIAL OFFICER/ MICHAEL COSTACHE | 200 N MARYLAND AVE SUITE 300 | GLENDALE | CA | 91206 |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers**  (The corporation must have at least one director.  Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10.  NAME MICHAEL COSTACHE | 200 N MARYLAND AVE SUITE 300 | GLENDALE | CA | 91206 |
| 11.  NAME | ADDRESS | CITY | STATE | ZIP CODE |
| 12.  NAME | ADDRESS | CITY | STATE | ZIP CODE |

13.  NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**Agent for Service of Process**  If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable.  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14.  NAME OF AGENT FOR SERVICE OF PROCESS

MICHAEL COSTACHE

| 15.  STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL**  CITY | | STATE | ZIP CODE |
|---|---|---|---|
| 200 N MARYLAND AVE SUITE 300 | GLENDALE | **CA** | 91206 |

**Type of Business**

16.  DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

BUSINESS SERVICES

17.  BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 02/19/2015 | MICHAEL COSTACHE | CEO | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

SI-200 (REV 01/2013)                                                                 APPROVED BY SECRETARY OF STATE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16          **EXHIBIT F**
17
18
19
20
21
22
23
24
25
26
27                      - 25 -
28
CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN



P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

🕿  1.888.BUSINESS (1.888.287.4637)

🖰  bankofamerica.com

✉  Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

CHARGEBACK ARMOR, INC
5023 PARKWAY CALABASAS
CALABASAS, CA  91302-1421

# Your Business Fundamentals Checking

for June 1, 2015 to June 30, 2015                                   Account number: 3250 3040 0818

**CHARGEBACK ARMOR, INC**

## Account summary

| | | |
|---|---|---|
| Beginning balance on June 1, 2015 | $150,105.32 | # of deposits/credits: 8 |
| Deposits and other credits | 9,750.00 | # of withdrawals/debits: 24 |
| Withdrawals and other debits | -135,483.50 | # of items-previous cycle[1]: 6 |
| Checks | -24,400.00 | # of days in cycle: 30 |
| Service fees | -0.00 | Average ledger balance: $76,796.61 |
| **Ending balance on June 30, 2015** | **-$28.18** | [1]Includes checks paid,deposited items&other debits |

# Markets go up. Markets come down.

Learn five steps to help you manage your investments
in volatile markets at merrilledge.com/5steps


MERRILL EDGE
Bank of America
Corporation

Merrill Edge® is available through Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S), and consists of the Merrill Edge Advisory Center™ (investment guidance)
and self-directed online investing. MLPF&S is a registered broker-dealer, member SIPC and a wholly owned subsidiary of Bank of America Corporation. Merrill Lynch,
Merrill Edge, the Merrill Edge logo, and Merrill Edge Advisory Center are trademarks of Bank of America Corporation.

Investment products: | **Are Not FDIC Insured** | **Are Not Bank Guaranteed** | **May Lose Value** | ARJ4NS4Q  SSM-03-15-0041.A

 **Bank of America**

<span style="color:red">**Your checking account**</span>

**CHARGEBACK ARMOR, INC   |   Account # 3250 3040 0818   |   June 1, 2015 to June 30, 2015**

## Deposits and other credits

| Date | Description | Amount |
|---|---|---|
| 06/02/15 | BANK OF AMERICA  DES:DEPOSIT    ID:372392414887  INDN:CHARGEBACK ARMOR INC    CO ID:XXXXXXXXB CCD | 110.00 |
| 06/04/15 | ACH Solutions    DES:8008661881 ID:91475298  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | 2,608.00 |
| 06/05/15 | BANK OF AMERICA  DES:DEPOSIT    ID:372392414887  INDN:CHARGEBACK ARMOR INC    CO ID:XXXXXXXXB CCD | 640.00 |
| 06/09/15 | BANK OF AMERICA  DES:DEPOSIT    ID:372392414887  INDN:CHARGEBACK ARMOR INC    CO ID:XXXXXXXXB CCD | 90.00 |
| 06/10/15 | CHECKCARD  0608 IR EVENTS GROUP 650-6222200  CA 7443654516100699107 | 75.00 |
| 06/11/15 | ACH Solutions    DES:8008661881 ID:91479724  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | 3,723.00 |
| 06/16/15 | BANK OF AMERICA  DES:DEPOSIT    ID:372392414887  INDN:CHARGEBACK ARMOR INC    CO ID:XXXXXXXXB CCD | 300.00 |
| 06/18/15 | ACH Solutions    DES:8008661881 ID:91483894  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | 2,204.00 |
| **Total deposits and other credits** | | **$9,750.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|---|---|---|
| 06/02/15 | BANK OF AMERICA  DES:INTERCHNG ID:372392414887  INDN:CHARGEBACK ARMOR INC    CO ID:XXXXXXXXB CCD | -80.51 |
| 06/02/15 | BANK OF AMERICA  DES:FEE        ID:372392414887  INDN:CHARGEBACK ARMOR INC    CO ID:XXXXXXXXB CCD | -28.70 |
| 06/02/15 | BANK OF AMERICA  DES:DISCOUNT  ID:372392414887  INDN:CHARGEBACK ARMOR INC    CO ID:XXXXXXXXB CCD | -10.83 |
| 06/03/15 | ACH Solutions Fe DES:8008661881 ID:91474213  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | -8.00 |
| 06/08/15 | CHECKWORKS      DES:CHECKS      ID:1671006  INDN:CHARGEBACK ARMOR *INC  CO ID:0000918169 WEB | -89.48 |
| 06/12/15 | TRANSFER CHARGEBACK ARMOR, IN:Robert Stayner Confirmation# 3911094517 | -1,250.00 |

*continued on the next page*



# Make an impression.
(Without making a dent in your account.)

## 500 business cards $9.99

Visit vistaprint.com and enter **BOFA500** at checkout.

Expires 10.1.15. S & H charges and restrictions apply. See website for details.  |  Vistaprint is a part of Cimpress and its privacy, information security & information sharing practices may be different from those of Bank of America®. Bank assumes no responsibility for customer service, fulfillment or billing. By responding to this offer, you disclose to Vistaprint you are a Bank of America customer.  ARQRND75

**CHARGEBACK ARMOR, INC   |   Account # 3250 3040 0818   |   June 1, 2015 to June 30, 2015**

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|-------:|
| 06/18/15 | Legal Order, LTS U061815000209 | -133,075.19 |
| 06/24/15 | Legal Order, LTS U061815000209 | -28.18 |

Card account # XXXX XXXX XXXX 2957

| Date | Description | Amount |
|------|-------------|-------:|
| 06/02/15 | CHECKCARD  0601 5023 N PARKWAY CALABASA 818-8769638  CA 24755425153121533179615 CKCD 6513 XXXXXXXXXXXX2957 XXXX XXXX XXXX 2957 | -100.00 |
| 06/03/15 | CHECKCARD  0602 J2 *METROFAX 888-929-4141 CA 24692165153000716277669 RECURRING CKCD 5968 XXXXXXXXXXXX2957 XXXX XXXX XXXX 2957 | -39.75 |
| 06/05/15 | CHECKCARD  0604 GOOGLE *SVCSAPPS_CHARG CC@GOOGLE.COMCA 24692165155000811610705 CKCD 7311 XXXXXXXXXXXX2957 XXXX XXXX XXXX 2957 | -71.93 |
| 06/08/15 | CHECKCARD  0604 GRANVILLE GLENDALE GLENDALE      CA 24223695156705760901649 CKCD 5812 XXXXXXXXXXXX2957 XXXX XXXX XXXX 2957 | -38.00 |
| 06/08/15 | CHECKCARD  0604 THE AMERICAN AT BRAND GLENDALE      CA 24789305156290000428184 CKCD 7523 XXXXXXXXXXXX2957 XXXX XXXX XXXX 2957 | -6.00 |
| 06/09/15 | CHECKCARD  0608 MACY'S EAST #503 CANOGA PARK  CA 24445735160600303301730 CKCD 5311 XXXXXXXXXXXX2957 XXXX XXXX XXXX 2957 | -42.91 |
| 06/12/15 | CHECKCARD  0611 J2 *METROFAX 888-929-4141 CA 24692165162000013321268 RECURRING CKCD 5968 XXXXXXXXXXXX2957 XXXX XXXX XXXX 2957 | -47.70 |
| 06/12/15 | CHECKCARD  0611 SQ *TEL AVIV GRILL Los Angeles  CA 24692165162000111354021 CKCD 5812 XXXXXXXXXXXX2957 XXXX XXXX XXXX 2957 | -29.87 |
| 06/15/15 | CHECKCARD  0613 J2 *METROFAX 888-929-4141 CA 24692165164000998684613 RECURRING CKCD 5968 XXXXXXXXXXXX2957 XXXX XXXX XXXX 2957 | -412.87 |
| 06/15/15 | CHECKCARD  0614 J2 *METROFAX 888-929-4141 CA 24692165165000412822475 RECURRING CKCD 5968 XXXXXXXXXXXX2957 XXXX XXXX XXXX 2957 | -95.40 |
| 06/26/15 | CHECKCARD  0617 SQ *TEL AVIV GRILL | -28.18 |
| **Subtotal for card account # XXXX XXXX XXXX 2957** | | **-$912.61** |
| **Total withdrawals and other debits** | | **-$135,483.50** |

## Checks

| Date | Check # | Amount |
|------|---------|-------:|
| 06/01/15 | 5034 | -3,000.00 |
| 06/15/15 | 5035 | -5,000.00 |
| 06/03/15 | 5036 | -15,000.00 |

| Date | Check # | Amount |
|------|---------|-------:|
| 06/05/15 | 5037 | -400.00 |
| 06/08/15 | 5038 | -1,000.00 |

| | |
|------|-------:|
| **Total checks** | **-$24,400.00** |
| **Total # of checks** | **5** |

 **Bank of America**

# Your checking account

**CHARGEBACK ARMOR, INC   |   Account # 3250 3040 0818   |   June 1, 2015 to June 30, 2015**

## Service fees

Based upon the activity below, the monthly fee on your Business Fundamentals checking account was waived for the statement period ending 05/29/15:

At least one of the following occurred

- ✓ $250+ in net new purchases on a linked Business debit card
- ○ $250+ in net new purchases on a linked Business credit card
- ✓ $3,000+ minimum daily balance in primary checking account
- ✓ $5,000+ average monthly balance in primary checking account
- ✓ $15,000+ combined average monthly balance in linked business accounts

A check mark indicates that you have qualified for a monthly fee waiver on the account based on your usage of these products or services.  For information on how to open a new product or to link an existing service to your account please call 1-888-BUSINESS or visit bankofamerica.com/smallbusiness.

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 06/01 | 147,105.32 | 06/08 | 133,590.12 | 06/15 | 130,599.37 |
| 06/02 | 146,995.28 | 06/09 | 133,637.21 | 06/16 | 130,899.37 |
| 06/03 | 131,947.53 | 06/10 | 133,712.21 | 06/18 | 28.18 |
| 06/04 | 134,555.53 | 06/11 | 137,435.21 | 06/24 | 0.00 |
| 06/05 | 134,723.60 | 06/12 | 136,107.64 | 06/26 | -28.18 |

✓   To help you BALANCE YOUR CHECKING ACCOUNT, visit bankofamerica.com/statementbalance or the Statements and Documents tab in Online Banking for a printable version of the How to Balance Your Account Worksheet.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT G**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

# Fwd: Chargeback Armor Inc docs

2 messages

Begin forwarded message:

**From:** Gary Hewamadduma <gary@cfoplans.com>
**Date:** March 13, 2015 at 00:34:25 GMT+2
**To:** Mike Costache <mike@chargebackarmor.com>
**Subject: Re: Chargeback Armor Inc docs**

Hi Mike,

Just wanted to see how things are coming together? The agreement I sent is still pending to be signed. No rush, but wanted to let you know.

Best,

Gary.

On Sun, Mar 8, 2015 at 6:20 PM, Gary Hewamadduma <gary@cfoplans.com> wrote:
> Great, thanks! I sent you the full agreement and you can see important stuff in the annex as it relats to the service. Don' worry about the address, I just had to put something for the agreement. I put the start date as 03/15, but no rush. I will not charge anything if we don't roll the ball by then.
>
> Best,
>
> Gary.
>
> On Sat, Mar 7, 2015 at 4:31 PM, Mike Costache <mike@chargebackarmor.com> wrote:
>> Hi Gary,
>>
>> Attached are the incorporation documents.
>>
>> The address you see here is the office for Avi's CPA firm as we didn't know which address to put the corporation on at that time.
>>
>> The other address I sent you is our corporate suites address (we haven't decided if we'll rent offices there as well so for now Doron paid for a PO Box for us to have an official address).
>>
>> For your contract you can use that address that I gave you but as soon as we get a new stable office, I will need you to change the official address with the Secretary of State and we'll use they address for all official documents.
>>
>> Thanks,
>>
>> Mike

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT H**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT I**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

June 26, 2014

To: Bank of America

From: Michael Costache, CEO, Chargeback Armor.

Re: Removal of Doron Hottea as co-signer from my company's bank account.

Acc: 3250304 0 0818

Name: Michael Costache

Signature: _____

Name: Doron Hottea

Signature: _____





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT</u> J**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

*Bus Platinum Privileges*



P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

📞 1.888.BUSINESS (1.888.287.4637)

📄 bankofamerica.com

✉️ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

CHARGEBACK ARMOR, INC
TOPANGA
5023 PARKWAY CALABASAS
CALABASAS, CA  91302-1421

# Your Business Fundamentals Checking
# Bus Platinum Privileges

for July 2, 2015 to July 31, 2015

Account number: 3250 4908 8441

**CHARGEBACK ARMOR, INC      TOPANGA**

## Account summary

| | |
|---|---:|
| Beginning balance on July 2, 2015 | $0.00 |
| Deposits and other credits | 17,672.00 |
| Withdrawals and other debits | -8,178.87 |
| Checks | -2,000.00 |
| Service fees | -35.00 |
| **Ending balance on July 31, 2015** | **$7,458.13** |

# of deposits/credits: 8

# of withdrawals/debits: 14

# of items–previous cycle[1]: 0

# of days in cycle: 30

Average ledger balance: $4,096.23

[1]*Includes checks paid,deposited items&other debits*



# Make an impression.
## (Without making a dent in your account.)

**500 business cards** **$9⁹⁹**

Visit vistaprint.com and enter
**BOFA500** at checkout.

Expires 10.1.15. S & H charges and restrictions apply. See website for details.  |  Vistaprint is a part of Cimpress and its privacy, information security & information sharing practices may be different from those of Bank of America®. Bank assumes no responsibility for customer service, fulfillment or billing. By responding to this offer, you disclose to Vistaprint you are a Bank of America customer.  ARQRND75

PULL: E   CYCLE: 67   SPEC: 0   DELIVERY: P   TYPE:      IMAGE: A   BC: CA9

 **Bank of America**

<span style="color:red">**Your checking account**</span>

**CHARGEBACK ARMOR, INC   |   Account # 3250 4908 8441   |   July 2, 2015 to July 31, 2015**

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 07/02/15 | Deposit | 100.00 |
| 07/08/15 | Legal Order Reversal, LTS U061815000209 | 100.00 |
| 07/09/15 | ACH Solutions   DES:8008661881 ID:91497171  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | 5,426.00 |
| 07/10/15 | BKOFAMERICA MOBILE 07/10 3365716223 DEPOSIT            *MOBILE      CA | 360.00 |
| 07/15/15 | ACH Solutions   DES:8008661881 ID:91499842  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | 5,300.00 |
| 07/16/15 | ACH Solutions   DES:8008661881 ID:91500969  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | 2,780.00 |
| 07/24/15 | ACH Solutions   DES:8008661881 ID:91505614  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | 2,766.00 |
| 07/30/15 | ACH Solutions   DES:8008661881 ID:91508718  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | 840.00 |
| **Total deposits and other credits** | | **$17,672.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 07/06/15 | Legal Order, LTS U061815000209 | -100.00 |
| 07/08/15 | ACH Solutions Fe DES:8008661881 ID:91495551  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | -7.10 |
| 07/10/15 | ACH Solutions   DES:8008661881 ID:91497432  INDN:Chargeback Armor, Inc.  CO ID:95-4425010 CCD | -5,300.00 |
| 07/15/15 | WIRE TYPE:WIRE OUT DATE:150715 TIME:1430 ET TRN:2015071500299733 SERVICE REF:010721 BNF:ROBERT STAYNER ID:400214559718 BNF BK:SCHOOLSF IRST FEDERAL CR ID:322282001 PMT DET:150519634 CON SULTING FEE FOR JUNE 15 TO 30 OF | -1,250.00 |
| 07/20/15 | Online Banking transfer to CHK 0818 Confirmation# 1643634838 | -28.18 |
| 07/27/15 | TRANSFER CHARGEBACK ARMOR, IN:Robert Stayner Confirmation# 1400813907 | -1,250.00 |

*continued on the next page*



**Small Business Online Banking**

**TIP OF THE MONTH**

# Transferring funds is a snap

Now you can send **transfers** from business accounts to a Bank of America® personal account, including your own.

Later this year, you'll be able to send transfers from your business accounts to any other Bank of America business account *and* from your personal account to any Bank of America business account.

Click on the **Transfers** tab when logged in at **bankofamerica.com/smallbusiness**.

ARYRND4V | SSM-02-15-0019.B



**CHARGEBACK ARMOR, INC**   |   Account # 3250 4908 8441   |   July 2, 2015 to July 31, 2015

## Withdrawals and other debits - continued

| Date | Description | Amount |
|---|---|---|
| Card account # XXXX XXXX XXXX 8995 | | |
| 07/15/15 | CHECKCARD  0714 RECEPTIONHQ 8668833499   AZ 24492155195894059717981 CKCD 7394 XXXXXXXXXXXX8995 XXXX XXXX XXXX 8995 | -19.95 |
| 07/22/15 | CHECKCARD  0721 5023 N PARKWAY CALABASA 818-8769638  CA 24755425203122036315243 CKCD 6513 XXXXXXXXXXXX8995 XXXX XXXX XXXX 8995 | -110.00 |
| 07/23/15 | CHECKCARD  0722 INTUIT *QB ONLINE 800-286-6800 CA 24692165203000519285695 RECURRING CKCD 5734 XXXXXXXXXXXX8995 XXXX XXXX XXXX 8995 | -21.99 |
| 07/27/15 | CHECKCARD  0724 DNH*GODADDY.COM RON 480-5058855  AZ 24906415205017640383271 CKCD 4816 XXXXXXXXXXXX8995 XXXX XXXX XXXX 8995 | -16.65 |
| 07/29/15 | CHECKCARD  0728 GOOGLE *SVCSAPPS_CHARG CC@GOOGLE.COMCA 24692165209000458999623 CKCD 7311 XXXXXXXXXXXX8995 XXXX XXXX XXXX 8995 | -75.00 |
| **Subtotal for card account # XXXX XXXX XXXX 8995** | | **-$243.59** |
| **Total withdrawals and other debits** | | **-$8,178.87** |

## Checks

| Date | Check # | Amount |
|---|---|---|
| 07/20/15 | 991 | -2,000.00 |
| **Total checks** | | **-$2,000.00** |
| **Total # of checks** | | **1** |

## Service fees

| Date | Transaction description | Amount |
|---|---|---|
| 07/15/15 | Wire Transfer Fee | -25.00 |
| 07/28/15 | External transfer fee - Next Day - 07/27/2015 | -10.00 |
| **Total service fees** | | **-$35.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 07/02 | 100.00 | 07/15 | 4,583.95 | 07/24 | 7,969.78 |
| 07/06 | 0.00 | 07/16 | 7,363.95 | 07/27 | 6,703.13 |
| 07/08 | 92.90 | 07/20 | 5,335.77 | 07/28 | 6,693.13 |
| 07/09 | 5,518.90 | 07/22 | 5,225.77 | 07/29 | 6,618.13 |
| 07/10 | 578.90 | 07/23 | 5,203.78 | 07/30 | 7,458.13 |

To help you BALANCE YOUR CHECKING ACCOUNT, visit bankofamerica.com/statementbalance or the Statements and Documents tab in Online Banking for a printable version of the How to Balance Your Account Worksheet.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT K**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN



United States of America
**FEDERAL TRADE COMMISSION**
Southwest Region

Reid Tepfer
Attorney

1999 Bryan St., Ste. 2150
Dallas, Texas 75201

(214) 979-9395
rtepfer@ftc.gov

July 7, 2015

Bank of America, N.A.
5023 Parkway
Calabasas, California 91302

Re:  Bank of America Checking Account Number 3250 4908 8441

Dear Sir or Madam:

The Federal Trade Commission recently served Bank of America, N.A., with a temporary restraining order (TRO) issued by the Central District of California in *FTC v. BunZai Media Group, Inc., et al.*, No. CV 15-4527-GW(PLAx) (the BunZai Media Group matter). The TRO ordered that certain assets held by your bank be frozen. In addition to several properly frozen accounts, it appears that one account has been improperly frozen, as it is outside the scope of the TRO's asset freeze. *See* TRO Section V.

Accordingly, the FTC requests that Bank of America Checking Account Number 3250 4908 8441 in the name of Chargeback Armor, Inc.—and ***only*** this account—be unfrozen, provided that no Defendants named in the BunZai Media Group matter are currently signatories on this account. If you have any questions or concerns, please do not hesitate to contact me at the number above.

Thank you again for your all your assistance.

Respectfully,

/s/ *Reid Tepfer*

Reid Tepfer

Enclosure *FTC v. BunZai Media Group, Inc., et al.*, No. CV 15-4527-GW(PLAx) Temporary Restraining Order

# DECLARATION OF ALAN ARGAMAN

I, Alan Argaman, declare:

I am the sole member and managing member of Secured Merchants, LLC. I have personal knowledge of the following facts and, if called upon to testify, I could and would so competently and truthfully testify to these facts:

1. I am the founder, only current member, and only current manager of Secured Merchants, LLC ("SM").

2. SM is a technology services company that offers services including website development, software development, e-commerce software, and related technology services.  It is currently not and never has been a seller of skin care products, and does not market skin care products through online sales using "negative option" or "free trial offer" marketing.  Its business is completely unrelated to the activities the Defendants were allegedly engaged in.

3. The $250,000 that was invested as a capital infusion by SM into CBA was profit that SM derived from providing technological services for Wealth Group, Inc., Wealth Vision, Inc., and Big Ventures, Inc.  I entered into these contracts on behalf of SM and attached hereto as EXHIBIT L are true and correct copies

- 31 -

of these three contracts. No money from SBM Management was used to infuse capital into CBA by SM.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: September 21, 2015        By:  _Alan Argaman_____

                                         Alan Argaman

---

- 32 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT L**

CHARGEBACK ARMOR, INC.'S  NOTICE OF MOTION AND MOTION FOR ORDER MODIFYING
THE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTIONS AND THE RELEASE OF FROZEN FUNDS;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF SAGAR PARIKH,
MICHAEL COSTACHE, AND ALAN ARGAMAN

# PROFESSIONAL SERVICE AGREEMENT

This is a Professional Services Agreement (this "Agreement") dated as of January 15, 2015 between Secured Merchants, LLC, a California Limited Liability located at 5023 North Parkway Calabasas, Calabasas, CA 91302 ("Provider") and Big Ventures, Inc., a Nevada corporation located at 5348 Vegas Drive, #906, Las Vegas, NV 89108 ("Client"), whereby Provider shall provide IT professional services to Client in accordance with the terms and conditions set forth below.

**NOW, THEREFORE**, the parties agree as follows:

## 1.    Scope of Services

Provider shall develop technology platforms to Client. In particular, Provider develops platforms in the Customer Relationship Management (CRM), Initial Voice Response (IVR) and Credit Card Chargeback space. Provider shall be available to consult with the officers of Client and its administrative staff concerning matters pertaining to the Services to be rendered by the Provider.

## 2.    Compensation

Assuming satisfactory performance, Client will pay Provider $120,000 for such services.

## 3.    Term, Termination, and Cancellation

This Agreement shall remain in effect from the date of signature through December 15, 2015. Either party may terminate this Agreement by providing no less than thirty (30) days written notice. At the time of such notice of termination, Provider shall complete all work in progress as if such notice of termination had not been given. The services should continue during the thirty (30) day notice period unless Provider and Client agree to end the contract or any specific tasks sooner.

## 4.    Status

Provider agrees that he/she shall at all times during this assignment be considered an independent contractor of Client. Provider shall be free from Client's direction and control. Provider shall be exclusively responsible for the payment of any and all employment and other tax obligations arising out of payments from Client. Provider shall not present himself/herself as an agent, representative or employee of Client to anyone.

In addition, Provider acknowledges that he/she is entitled to no benefits available to Client employees, including but not limited to worker's compensation or unemployment compensation. Provider also acknowledges that he/she is not employed by Client in any other capacity and that he/she shall not hold any other position with Client during the term of this Agreement.



Provider represents and warrants that he/she possesses the requisite experience and expertise to perform this obligation hereunder in accordance with the highest professional standards. In the event that Provider becomes sick, disabled, incapacitated or is otherwise unable to perform his/her assigned duties, Client may, in its sole discretion, terminate this Agreement, suspend this Agreement, or take any other steps it deems appropriate.

## 6.    Confidential Information

During the term of this Agreement and for a period of one year thereafter, Provider shall keep Client information strictly confidential by using the same care and discretion that would be common in the industry.

## 7.    Intellectual Property

All materials developed by Provider for Client will belong exclusively to Client, and will be deemed to have been developed and created by Provider for Client as "work for hire". Provider will execute any and all documents necessary to assign and transfer to Client all intellectual property and other rights in materials and information created for Client pursuant to this Agreement.

## 8.    Conflict of Interest and Commitment

During the term of this Agreement Provider agrees that he/she shall avoid any conflict of interest, including but not limited to any situations in which financial or other personal considerations directly or significantly affect, or have the appearance of directly or significantly affecting her professional duties in carrying out her responsibilities under this Agreement.

## 9.    Indemnification

Provider agrees to comply with all applicable federal, state and local laws in connection with the performance of Provider's obligations under this Agreement. Provider agrees to release Client from any claims, other than breach of contract, arising under this contract. Each party agrees to defend, indemnify and hold harmless the other against any claim, costs, liability, expense, or loss sustained by reason arising from negligent performance of this Agreement.

## 10.    Entire Agreement

This Agreement and the documents incorporated by reference in this Agreement set forth the entire understanding between the parties hereto regarding the subject matter hereof and may not be amended except by an instrument in writing signed by both parties.

## 11.    No Waiver

Neither the failure nor delay by either party to exercise any right, remedy, power or privilege under the Agreement shall operate or be construed as a waiver thereof, not shall any single or partial exercise of any right, remedy, power or privilege, nor shall any waiver with respect to any occurrence be construed as a waiver with respect to any other occurrence. No waiver of any right, remedy, power or privilege under this Agreement will be effective unless in writing signed by the party to be charged thereby.

This Agreement may be signed in two or more counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized representatives as of the day and year first above written.

Secured Merchants, LLC                          Big Ventures, Inc.


_____                          _____  3/1/15
Alan Aggaman                                     Brian McMullen

# PROFESSIONAL SERVICE AGREEMENT

This is a Professional Services Agreement (this "Agreement") dated as of February 27, 2015 between Secured Merchants, LLC, a California Limited Liability located at 5023 North Parkway Calabasas, Calabasas, CA 91302 ("Provider") and Wealth Group, Inc. a Nevada corporation located at 5348 Vegas Drive, Las Vegas, NV 89106 ("Client"), whereby Provider shall provide IT professional services to Client in accordance with the terms and conditions set forth below.

**NOW, THEREFORE**, the parties agree as follows:

## 1.   Scope of Services

Provider shall develop technology platforms to Client.  In particular, Provider develops platforms in the Customer Relationship Management (CRM), Interactive Voice Response (IVR) and Credit Card Chargeback space. Provider shall be available to consult with the officers of Client and its administrative staff concerning matters pertaining to the Services to be rendered by the Provider.

## 2.   Compensation

Assuming satisfactory performance, Client will pay Provider $10,000 for such services.

## 3.   Term, Termination, and Cancellation

This Agreement shall remain in effect from the date of signature through December 15, 2015.  Either party may terminate this Agreement by providing no less than thirty (30) days written notice.  At the time of such notice of termination, Provider shall complete all work in progress as if such notice of termination had not been given.  The services should continue during the thirty (30) day notice period unless Provider and Client agree to end the contract or any specific tasks sooner.

## 4.   Status

Provider agrees that he/she shall at all times during this assignment be considered an independent contractor of Client.  Provider shall be free from Client's direction and control.  Provider shall be exclusively responsible for the payment of any and all employment and other tax obligations arising out of payments from Client. Provider shall not present himself/herself as an agent, representative or employee of Client to anyone.

In addition, Provider acknowledges that he/she is entitled to no benefits available to Client employees, including but not limited to worker's compensation or unemployment compensation.  Provider also acknowledges that he/she is not employed by Client in any other capacity and that he/she shall not hold any other position with Client during the term of this Agreement.

Provider represents and warrants that he/she possesses the requisite experience and expertise to perform this obligation hereunder in accordance with the highest professional standards. In the event that Provider becomes sick, disabled, incapacitated or is otherwise unable to perform his/her assigned duties, Client may, in its sole discretion, terminate this Agreement, suspend this Agreement, or take any other steps it deems appropriate.

## 6.    Confidential Information

During the term of this Agreement and for a period of one year thereafter, Provider shall keep Client information strictly confidential by using the same care and discretion that would be common in the industry.

## 7.    Intellectual Property

All materials developed by Provider for Client will belong exclusively to Client, and will be deemed to have been developed and created by Provider for Client as "work for hire". Provider will execute any and all documents necessary to assign and transfer to Client all intellectual property and other rights in materials and information created for Client pursuant to this Agreement.

## 8.    Conflict of Interest and Commitment

During the term of this Agreement Provider agrees that he/she shall avoid any conflict of interest, including but not limited to any situations in which financial or other personal considerations directly or significantly affect, or have the appearance of directly or significantly affecting her professional duties in carrying out her responsibilities under this Agreement.

## 9.    Indemnification

Provider agrees to comply with all applicable federal, state and local laws in connection with the performance of Provider's obligations under this Agreement. Provider agrees to release Client from any claims, other than breach of contract, arising under this contract. Each party agrees to defend, indemnify and hold harmless the other against any claim, costs, liability, expense, or loss sustained by reason arising from negligent performance of this Agreement.

## 10.    Entire Agreement

This Agreement and the documents incorporated by reference in this Agreement set forth the entire understanding between the parties hereto regarding the subject matter hereof and may not be amended except by an instrument in writing signed by both parties.

## 11.    No Waiver

2

Neither the failure nor delay by either party to exercise any right, remedy, power or privilege under the Agreement shall operate or be construed as a waiver thereof, not shall any single or partial exercise of any right, remedy, power or privilege, nor shall any waiver with respect to any occurrence be construed as a waiver with respect to any other occurrence. No waiver of any right, remedy, power or privilege under this Agreement will be effective unless in writing signed by the party to be charged thereby.

This Agreement may be signed in two or more counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized representatives as of the day and year first above written.


Secured Merchants, LLC                                Wealth Group, Inc.


_____                    _____  3/1/15
Alan Argaman                                          Brian McMullen


3

# PROFESSIONAL SERVICE AGREEMENT

This is a Professional Services Agreement (this "Agreement") dated as of February 5, 2015 between Secured Merchants, LLC, a California Limited Liability located at 5023 North Parkway Calabasas, Calabasas, CA 91302 ("Provider") and Wealth Vision, Inc., a Nevada corporation located at 8883 W. Flamingo Road, Suite 102, Las Vegas, NV 89147 ("Client"), whereby Provider shall provide IT professional services to Client in accordance with the terms and conditions set forth below.

**NOW, THEREFORE**, the parties agree as follows:

### 1.    Scope of Services

Provider shall develop technology platforms to Client.  In particular, Provider develops platforms in the  Customer Relationship Management (CRM), Initial Voice Response (IVR) and Credit Card Chargeback space. Provider shall be available to consult with the officers of Client and its administrative staff concerning matters pertaining to the Services to be rendered by the Provider.

### 2.    Compensation

Assuming satisfactory performance, Client will pay Provider $120,000 for such services.

### 3.    Term, Termination, and Cancellation

This Agreement shall remain in effect from the date of signature through December 15, 2015.  Either party may terminate this Agreement by providing no less than thirty (30) days written notice.  At the time of such notice of termination, Provider shall complete all work in progress as if such notice of termination had not been given.  The services should continue during the thirty (30) day notice period unless Provider and Client agree to end the contract or any specific tasks sooner.

### 4.    Status

Provider agrees that he/she shall at all times during this assignment be considered an independent contractor of Client.  Provider shall be free from Client's direction and control.  Provider shall be exclusively responsible for the payment of any and all employment and other tax obligations arising out of payments from Client. Provider shall not present himself/herself as an agent, representative or employee of Client to anyone.

In addition, Provider acknowledges that he/she is entitled to no benefits available to Client employees, including but not limited to worker's compensation or unemployment compensation.  Provider also acknowledges that he/she is not employed by Client in any other capacity and that he/she shall not hold any other position with Client during the term of this Agreement.

1



Provider represents and warrants that he/she possesses the requisite experience and expertise to perform this obligation hereunder in accordance with the highest professional standards.  In the event that Provider becomes sick, disabled, incapacitated or is otherwise unable to perform his/her assigned duties, Client may, in its sole discretion, terminate this Agreement, suspend this Agreement, or take any other steps it deems appropriate.

## 6.   Confidential Information

During the term of this Agreement and for a period of one year thereafter, Provider shall keep Client information strictly confidential by using the same care and discretion that would be common in the industry.

## 7.   Intellectual Property

All materials developed by Provider for Client will belong exclusively to Client, and will be deemed to have been developed and created by Provider for Client as "work for hire". Provider will execute any and all documents necessary to assign and transfer to Client all intellectual property and other rights in materials and information created for Client pursuant to this Agreement.

## 8.   Conflict of Interest and Commitment

During the term of this Agreement Provider agrees that he/she shall avoid any conflict of interest, including but not limited to any situations in which financial or other personal considerations directly or significantly affect, or have the appearance of directly or significantly affecting her professional duties in carrying out her responsibilities under this Agreement.

## 9.   Indemnification

Provider agrees to comply with all applicable federal, state and local laws in connection with the performance of Provider's obligations under this Agreement.  Provider agrees to release Client from any claims, other than breach of contract, arising under this contract.  Each party agrees to defend, indemnify and hold harmless the other against any claim, costs, liability, expense, or loss sustained by reason arising from negligent performance of this Agreement.

## 10.   Entire Agreement

This Agreement and the documents incorporated by reference in this Agreement set forth the entire understanding between the parties hereto regarding the subject matter hereof and may not be amended except by an instrument in writing signed by both parties.

## 11.   No Waiver

Neither the failure nor delay by either party to exercise any right, remedy, power or privilege under the Agreement shall operate or be construed as a waiver thereof, not shall any single or partial exercise of any right, remedy, power or privilege, nor shall any waiver with respect to any occurrence be construed as a waiver with respect to any other occurrence. No waiver of any right, remedy, power or privilege under this Agreement will be effective unless in writing signed by the party to be charged thereby.

This Agreement may be signed in two or more counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized representatives as of the day and year first above written.

Secured Merchants, LLC                        Wealth Vision, Inc.


_____                       _____  3/1/15
Alan Argaman                                  Brian McMullen

3