JONATHAN E. NUECHTERLEIN
General Counsel

DAMA J. BROWN
Regional Director

REID TEPFER
rtepfer@ftc.gov
Texas Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov
Oklahoma Bar No. 19098
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (fax)

RAYMOND McKOWN
rmckown@ftc.gov
California Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4325 (voice)
(310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | **Case No.  CV 15-4527-GW(PLAx)** |
| Plaintiff, | **PROPOSED DISCOVERY PLAN AND SCHEDULING ORDER** |
| v. | |
| **BUNZAI MEDIA GROUP, INC.,** *et al.* | |
| **Defendants.** | |

Under Rule 26(f) of the Federal Rules of Civil Procedure and L.R. 26-1 of the Local Rules of Practice for the United States District Court for the Central District of California the Plaintiff, Federal Trade Commission (FTC) and Defendants Alon Nottea, Doron Nottea, Motti Nottea, Roi Reuveni, Oz Mizrahi, Igor Latsanovski, and CalEnergy, Inc. submit this Joint Report.  The parties conducted the FRCP 26(f) conference on September 11, 2015. Participants on the call were Reid Tepfer, Luis Gallegos, Annah Kim, Erik Syverson, Andre Boniadi, and Robert Unger.  The deadline for filing this Joint Report is **September 28, 2015.**

## I.      Claims and Defenses

**Plaintiff's Claims:** Plaintiff alleges that Defendants operate a common enterprise through which they: (a) fail to disclose adequately material terms of their sales offer, including the offer's costs and negative option features; (b) falsely represent that consumers can obtain their products on a "trial" or "risk-free" trial basis for only a nominal shipping and handling fee; (c) fail to obtain a consumer's informed consent to the material terms, including the negative option feature, of the transaction before charging the consumer; (d) falsely represent their business is accredited by the Better Business Bureau with an "A-" rating; (e) fail to provide consumers a simple method of cancelling their negative option continuity plan, and (f) debit consumers' bank accounts on a recurring basis

without obtaining written authorization from the consumer or providing a written copy of the authorization to the consumer. Plaintiff alleges these actions violate Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a), Section 4 of Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8403, and Section 907(a) of the Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1693e(a). The FTC seeks injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief.

**Defendants' Defenses:**

1.    **Defendant Mizrahi's Position:**  Defendant Mizrahi did not conduct, was not aware of, had no reason to know of, and had no authority to control any of the advertising or consumer charging activities conducted by Corporate Defendants that the FTC challenges in this action.    Defendant Mizrahi's sole connection to this case and the practices complained of by the FTC was to serve as a nominal corporate officer for Corporate Defendant Pinnacle Logistics, Inc. in 2012 and 2013.  Mizrahi came to the Pinnacle premises less than a dozen times, and did not know of any of the wrongful sales practices allegedly conducted by the sales company Corporate Defendants for which Pinnacle appears to have served via shipping and warehousing functions.  Defendant Mizrahi collected less than $20,000 in salary from Pinnacle before his connection to the company was

2:15-cv-04527-GW-PLA   Document 221   Filed 09/28/15   Page 4 of 15   Page ID #:4593

ended, such that any disgorgement from him in excess of that amount would be punitive.  There is no threat or reason to believe that Defendant Mizrahi did or will conduct any of the practices complained of by the FTC in this action as violating the FTC Act, such that there is no basis for continuing negative or affirmative injunctive relief against Defendant Mizrahi.

2.      **Position of Mr. Latsanovski and Calenergy, Inc. ("Latsanovski Defendants"):**  Latsanovski Defendant did not conduct any of the functions that the FTC complains about here.  They did not do any customer acquisition or any advertising or marketing.  They did not do any billing.  They did not handle consumer care.  The websites which the FTC alleges displayed misleading materials were operated and controlled by entities entirely independent of Latsanovski Defendants.  Latsanovski Defendants did not see the web ad copy in advance and had no control over it.

The FTC also claims that Latsanovski Defendants are responsible for all monies paid by all consumers for all skincare products if the FTC can find evidence of any misleading web content or negative option marketing or identify any consumers who claim they were subscribed to Defendants' monthly skincare product services without their authorization.  However, the FTC cannot establish that all consumers who purchased the skincare products did not intend to purchase these goods and services as set forth above.  Second, even if all consumers were

tricked into purchasing the skincare products, the FTC still would not be entitled to recover all consumer money from Latsanovski Defendants because Latsanovski Defendants did not receive any money directly from consumers, Latsanovski Defendants invested in the skincare business, and Calenergy, Inc. only received a return on the five year investment of approximately $317,000. Any disgorgement amount beyond the monies actually received by Latsanovski Defendants would be punitive. *SEC v. Blatt*, 583 F. 2d 1325, 1335 (5th Cir. 1978) (Ill-gotten gains are limited only to the amount by which the defendant "profited from his wrong doing. Any further sum would constitute a penalty assessment"); *see also SEC v. Manor Nursing Centers, Inc.*, 458 F. 2d 1082, 1104-05 (2d Cir. 1972) (holding that defendant could be compelled only to disgorge profits and interest wrongfully obtained).

3. **Position of Alon Nottea and Roi Reuveni:** They did not engage in unfair or deceptive acts or practices in violation of the FTCA, the ROSCA, or the EFTA as alleged in the Complaint. Reuveni did not do any customer acquisition or any advertising or marketing, nor operate or control websites which the FTC alleges displayed misleading materials.

The FTC also claims that Alon Nottea and Roi Reuveni are responsible for all monies paid by all consumers for all skincare products if the FTC can find evidence of any misleading web content or negative option marketing or identify

1 | any consumers who claim they were subscribed to Defendants' monthly skincare

2 | product services without their authorization. However, the FTC cannot establish

3 | that all consumers who purchased the skincare products did not intend to purchase

4 | the goods and services on the offered terms and conditions.

5 |      The FTC would not be entitled to recover all consumer money from Alon

6 | Nottea and Roi Reuveni because Alon Nottea and Roi Reuveni did not receive any

7 | money directly from consumers. Any disgorgement amount beyond the monies

8 | actually received by Alon Nottea and Roi Reuveni would be punitive. *SEC v.*

9 | *Blatt*, 583 F. 2d 1325, 1335 (5th Cir. 1978) (Ill-gotten gains are limited only to the

10 | amount by which the defendant "profited from his wrong doing. Any further sum

11 | would constitute a penalty assessment"); *see also SEC v. Manor Nursing Centers,*

12 | *Inc.*, 458 F. 2d 1082, 1104-05 (2d Cir. 1972) (holding that defendant could be

13 | compelled only to disgorge profits and interest wrongfully obtained). The FTC's

14 | assertion that Alon Nottea and Roi Reuveni are "jointly and severally" liable for

15 | the acts or omissions of third party retailers is not a cognizable theory in these

16 | equitable proceedings.

17 |      4.    **Position of Doron Nottea and Motti Nottea:** On September 18,

18 | 2015, Robert L. Esensten filed a Request to Substitute Attorney for Defendants

19 | Doron Nottea and Motti Notea (hereinafter referred to as "Doron and Motti").

20 | (See Document numbers 209 and 210).

1    On September 21, 2015 this Court Granted the Request for Robert L.

2    Esensten to represent Doron and Motti.  (See Document number 216).

3    Doron has been sued by the Federal Trade Commission ("FTC") in his

4    individual capacity and an officer or manager of BunZai Media Group, Inc and

5    Pinnacle Logistics, Inc.

6    Motti has been sued in his individual capacity and as an officer or Manager

7    of BunZai Medial Group, Inc.

8    The FTC's lawsuit against seven individuals and fifteen entities is a classic

9    "shot gun" lawsuit grouping individuals and entities where the facts, law and

10   alleged liabilities are quite different.  The FTC alleges that both Doron, the son of

11   Motti, and Motti "At all times material to this Complaint, acting alone or in

12   concert with others, he has formulated, directed, controlled, had authority to

13   control, or participated in the acts or practices set forth in the Complaint".  These

14   exact allegations are made against Alon Nottea, also a son of Motti, Oz Mizrahi,

15   Igor Latanovski, Roi Reuveni and Khristoper Bond, Complaint paragraphs 24, 25,

16   26, 27, 28, 29 and 30. Paragraph 32 alleges that these Defendants participated in a

17   Common Enterprise.   In addition each Defendant, including the business entities,

18   are grouped together in all Counts. The extensive discovery that is required in this

19   case will certainly expose this meritless grouping and in fact will prove that the

20   allegations against Doron and Motti are also meritless.

PROPOSED DISCOVERY PLAN AND SCHEDULING ORDER

Doron and Motti, in an effort to maintain the status quo and reduce the expenditure of thousands of dollars for Plaintiffs and Defendants, has stipulated to a Preliminary Injunction (See Document number 101).  The Trustee now has in her possession, business records and assets of a separate business that even she concedes is separate from any alleged wrongdoing in this case.  This seizure has and will continue to prevent Doron and Motti from supporting their family and operating any separate businesses.  The inability to operate a separate business, since the initial seizure has ruined it.  Doron and Motti intend to file a motion seeking the return of their business and financial assets retained by the Trustee.

The discussions of Defendants Mizrahi, Latsanovski, Alon Nottea and Reuveni regarding disgorgement applies equally to Doron and Motti, thus the legal basis of this defense will not be repeated here.

**II.     Manual for Complex Litigation:** The parties do not believe the manual's procedures need to be utilized in this case.

**III.     Initial Disclosures:** The parties do not request any changes to the form or requirement for disclosures under Rule 26(a). The parties agree to make initial disclosures by **September 25, 2015.** These disclosures will supplement the information and documents exchanged to date.  Pursuant to the TRO, the Receiver took an asset deposition of Igor Latsanovski, which the FTC attended telephonically in part, without asking or directing questions or otherwise

participating.  In addition, Defendants have produced documents to the FTC and the Receiver, who in turn has produced documents to the FTC.

**IV.     Discovery Plan:** The parties request discovery on all matters within the scope of FRCP 26(b)(1).  The parties agree that discovery shall not be conducted in phases or otherwise limited in focus.  The parties anticipate taking discovery on all matters relevant to the conduct and practices alleged in the complaint, the injury caused by such practices, and any defenses asserted by Defendants.

**a.     Fact Discovery Duration:** The parties have determined that, due to the number of defendants, possible additional parties in an amended complaint, the large volume of electronically stored information, and the complexity of the action, there is good cause for extending the period for discovery beyond the length in a typical case. Accordingly, the parties agree that fact discovery will last nine months from the date of initial disclosures. The last day of fact discovery, therefore, will be **June 24, 2016**.

**b.     Expert Discovery Duration:** The disclosure of experts shall be made on **July 25, 2016**, one month after the fact discovery cut-off date. Contemporaneously with the disclosure, each expert shall provide a written report conforming to the requirements of FED. R. CIV. P. 26(a)(2)(B)(i)-(vi). The disclosure of rebuttal experts shall be made on **August 25, 2016**, one month after

1    the expert witness disclosure date. Contemporaneously with the disclosure, each

2    rebuttal expert shall provide a written report conforming to the requirements of

3    Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). The depositions of all disclosed expert

4    witnesses shall be concluded on or before **September 25, 2016**, one month after

5    the disclosure of rebuttal expert witnesses. The parties further request that these

6    depositions not count toward the parties' allotted fact discovery depositions.

7         Given the volume of electronically stored information, together with the

8    nature of the facts and circumstances in this case, the parties have agreed that

9    expert disclosures should take place after fact discovery has closed. Conducting

10   fact and expert discovery in two separate phases will permit the parties to (i)

11   identify expert witnesses more accurately, (ii) prepare reports that disclose and

12   explain expert opinions more completely by allowing experts to take into account

13   all of the facts developed during the case, (iii) reduce the likelihood that one or

14   more expert witnesses will be required to supplement their report to take

15   additional facts into consideration, and (iv) reduce the likelihood that extensions

16   of the discovery deadline will be necessary in order to accommodate expert

17   witness disclosures, reports, and depositions.

18        c.    **Requested Modification to Discovery Limitations:** Given

19   the number of defendants in this case, the parties request that they be allowed

20   more than the ten depositions provided for under the Federal Rules. The parties

1   request, therefore, that they be allowed up to 15 depositions each. No other

2   modifications are requested.

3          **d.**    **Non-dispositive Motions:** Doron and Motti request that the

4   deadline to file non-dispositive motions other than in limine motions be filed by

5   **July 25, 2016**.

6          **e.**    **Mid-Discovery Status Report and Conference:** Doron and

7   Motti request that the Court set a Mid-Discovery Status Conference on **March 31,**

8   **2016** and that a Joint Mid-Discovery Status Report be filed on **March 21, 2016**.

9   In the past, this Mid-Discovery Status Conference and Report allows the Parties to

10   concentrate on the status of the discovery.

11          **f.**    **Pre-Trial Conference:** Doron and Motti request that the Court

12   set a Pre-Trial Status Conference within two weeks of the trial date.

13       **V.**    **Electronic Production:** The parties agree that electronically stored

14   information (ESI) will be produced in its native format or the form or forms in

15   which it is ordinarily maintained, complete with metadata.  In the event that the

16   ESI is not usable in its native format or the form or forms in which it is ordinarily

17   maintained, the parties agree that it will be produced in a reasonably usable form

18   as agreed upon by the parties in advance of production. The parties further

19   anticipate entering a stipulation further describing the production of ESI.

20

**VI.    Privilege Issues:** The parties agree that, when a claim of privilege or work product protection is asserted for an item responsive to a discovery request, the party asserting the privilege or protection shall provide a privilege log in accordance with Fed. R. Civ. P. 26(b)(5)(A).  To minimize the parties' burden in preparing privilege logs, the parties agree that a privilege log will be prepared with respect to all items withheld on a claim of privilege or work product protection except the following:  (a) written communications concerning the litigation between a party and its counsel, written communications by and between counsel, and attorney work product or trial preparation materials that have been created; and (b) all internal writings of Plaintiff's employees and internal communications among Plaintiff's employees.  This approach is consistent with the Facciola-Redgrave Framework. *See* Hon. John M. Facciola & Jonathan M. Redgrave, 4 FED. CT. L. REV. 19 (2009). With respect to information that has been produced and is later claimed to be privileged, the parties will follow the procedures set forth in FED. R. CIV. P. 26(b)(5)(B).

**c.    Dispositive Motions:** The parties shall have until **October 28, 2016**, to file dispositive motions. The parties request that they be permitted to file dispositive motions that exceed the page limit set by the Local Rules.

**VII.   Additional Parties:** The FTC anticipates that it may amend its complaint to add additional defendants and relief defendants upon approval by the

Commission. The FTC requests that the parties shall have until **April 25, 2016**, to file any motions to amend the pleadings or add parties. This date is three months before the fact discovery cutoff date. Alon Nottea and Roi Reuveni request that the parties have until December 24, 2015, to file any motions to add parties. This date is three months before the fact discovery cutoff date. Doron and Motti request that Plaintiff have until December 24, 2015 to add parties as the new parties and Defendants will require at least three months to conduct discovery.

**VIII. ADR Method:** The FTC requests that the parties be allowed to proceed with ADR Procedure No. 2, as described in L.R. 16-15.4 by **November 28, 2016**. Defendant Mizrahi requests ADR Procedure No. 1 (judicial settlement conference). Defendant Mizrahi requests a much earlier date for the conference than November 2016, given the final discovery cutoff in September 2016 and the state of discovery, at least with respect to Oz. Defendants Alon Nottea and Roi Reuveni also request ADR Procedure No. 1. Latsanovski Defendants join defendant Mizrahi, Alon Nottea and Roi Reuveni's request for ADR Procedure No. 1 and join defendant Mizrahi's request for an earlier settlement conference date. Latsanovski Defendants join defendant Mizrahi, Alon Nottea and Roi Reuveni's request for ADR Procedure No. 1 and join defendant Mizrahi's request for an earlier settlement conference date.

**IX. Trial Estimate:** The parties estimate a five to seven day trial.

1

2                IT IS SO STIPULATED:

3

4    Dated: 9/28/15                */s/ Reid Tepfer*_____

REID A. TEPFER

5                                 LUIS H. GALLEGOS

Attorneys for the Plaintiff

6                                 Federal Trade Commission

1999 Bryan Street, Suite 2150

7                                 Dallas, Texas 75201

(214) 979-9395 (Tepfer)

8                                 (214) 979-9383 (Gallegos)

(214) 953-3079 (facsimile)

9                                 rtepfer@ftc.gov

lgallegos@ftc.gov

10

11   Dated: 9/28/15                */s/ Erik Syverson*

Erik Syverson

12                                 Attorney for Defendant

Oz Mizrahi

13   Dated: 9/28/15                */s/ Robert Unger*

14                                 Robert Unger

Attorney for Defendants

15                                 Alon Nottea and Roi Reuveni

16   Dated: 9/28/15                */s/ Annah Kim*

Annah Kim

17                                 Attorney for Defendants

Igor Latsanovski and CalEnergy, Inc.

18

Dated: 9/28/15                */s/ Robert Esensten*

19                                 Robert Esensten

Attorney for Defendants

20                                 Doron Nottea and Motti Nottea

1

I hereby attest that all of the signatories electronically listed above concur in this filing's content and have authorized the filing in compliance with Local Rule 5-4.3.4.(a)(2)(i).

2

3

Dated: 9/28/15

*/s/ Reid Tepfer*
Reid Tepfer
Attorney for Plaintiff
Federal Trade Commission

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

PROPOSED DISCOVERY PLAN AND SCHEDULING ORDER