JONATHAN E. NUECHTERLEIN
General Counsel

DAMA J. BROWN
Regional Director

REID TEPFER
rtepfer@ftc.gov
Texas Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov
Oklahoma Bar No. 19098
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (fax)

RAYMOND McKOWN
rmckown@ftc.gov
California Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4325 (voice)
(310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BUNZAI MEDIA GROUP, INC.,** *et al.*<br><br>**Defendants.** | **Case No.  CV 15-4527-GW(PLAx)**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing Date: November 9, 2015**<br>**Time: 8:30 a.m.**<br>**Location: Courtroom 10, Spring St.**<br>**Judge: Hon. George H. Wu** |

## MOTION FOR DEFAULT JUDGMENT

# TABLE OF CONTENTS

I.  Procedural History ................................................................. 2

II.  Defendants' Common Enterprise Operation ................................. 3

  A.  Defendants' Deceptive Operation ........................................ 3

  B.  Defaulting Defendants Operated as Part of the Common Enterprise ............ 4

    1.  Bunzai Media Group, Inc. ........................................... 6

    2.  Pinnacle Logistics, Inc.. ........................................... 7

    3.  SBM Management, Inc. ............................................. 7

    4.  Media Urge, Inc. ................................................. 8

    5.  Adageo, LLC. .................................................... 8

    6.  The Shell Corporations: Agoa Holdings, Inc.; Zen Mobile Media, Inc.; SaveHaven Ventures, Inc., Heritage Alliance Group, Inc.; Lifestyle Media, Inc.; DSA Holdings, Inc.; Kai Media, Inc.; and Insight Media, Inc. ................ 9

    7.  Khristopher Bond ................................................. 9

III.  Legal Argument ................................................................. 10

  A.  Legal Standard ....................................................... 10

  B.  The *Eitel* Factors Weigh in Favor of Entering A Default Judgment Against the Defaulting Defendants. ................................................ 11

    1.  The FTC Will Be Prejudiced If A Default Judgment Is Not Entered ........ 11

    2.  The FTC Sufficiently Alleged Meritorius Claims Against the Defaulting Defendants. .................................................... 12

    3.  The Sum of the Money Sought is Proportionate ..................... 14

    4.  Possibility of Dispute Concerning Material Facts .................... 15

    5.  Default is Not Due to Excusable Neglect .......................... 16

    6.  Strong Policy Favoring Decisions on the Merits ..................... 16

IV.  Default Judgment for the Requested Injunctive and Equitable Monetary Relief Against Defaulting Defendants is Warranted ............................ 17

V.  Conclusion ................................................................. 19

**Cases**

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ........16

*Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1987) .................................................16

*Draper v. Coombs,* 792 F.2d 915, 924-925 (9th Cir. 1986) ...................................10

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) ....................................10

*FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 205, 208-09 (S.D.N.Y. 2002)..........11

*FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989) .......................15

*FTC v. Gill*, 265 F.3d 944, 957-958 (9th Cir. 2001) .............................................18

*FTC v. H.N. Singer*, 668 F.2d 1107, 1111-13 (9th Cir. 1982) ..............................17

*FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1010 (N.D. Cal 2010) .................18

*FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000)....... 5, 6, 15

*FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp.2d 1006, 1014-15 (C.D. Cal. 2012) ...........................................................................................................18

*FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010)..............5

*FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994) ...............................17

*FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170–71 (9th Cir. 1997) ....15

*FTC v. Wolf*, 1997-1 Trade Cas. (CCH) ¶ 71,713, at 79,080 (S.D. Fla. 1997) . 5, 15

*Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ........................10

*High Country Broad Co., Inc.,* 3 F.3d at 1244, 1245 (9th Cir. 1993) ...................16

*Litton Indus. v. FTC*, 575 F.2d 364, 370 (9th Cir. 1982) .....................................19

*Pepsico, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002) ...................................................................................................... 12, 14, 16

*Rio Prop., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) .... 10, 14

*Televideo Sys., Inc., v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) 10, 14, 15

**Statutes**

Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b) ............................. 4, 13

Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403 ............................................................................................................ 4, 13

Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a) ...................................................................................................... 4, 12, 13

Section 907(a) of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a) ....................................................................................................... 4, 13

**MOTION FOR DEFAULT JUDGMENT**

PLEASE TAKE NOTICE that on November 9, 2015, at 8:30 a.m., before the Honorable Wu, United States District Judge, Plaintiff Federal Trade Commision (FTC) will move for Default Judgment against Defendants Bunzai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; Kai Media, Inc.; Insight Media, Inc.; and Kristopher Bond (collectively, the Defaulting Defendants), based on their failure to plead or defend this lawsuit.

This motion is made pursuant to Federal Rule of Civil Procedure 55(b)(2) and Rule 55-1 of the Local Rules of Practice for the Central District of California. The motion is based upon the well-pled allegations in the FTC's Complaint (Dkt. 3); the attached Declaration of FTC Investigator Brent McPeek, the Receiver's Report (Dkt. 120), the Memorandum of Points in Authorities filed in support of the FTC's request for *ex parte* TRO, and other facts appear in the Court's file. Under the attached [Proposed] Default Judgment and Order for Permanent Injunction and Other Equitable Relief, the FTC seeks permanent injunctive relief and equitable monetary relief against the Defaulting Defendants.

1

2                                **MEMORANDUM**

3  **I.    Procedural History**

4           On June 16, 2015, the FTC filed a Complaint for Injunctive and other

5  Equitable Relief against 22 defendants, alleging violations of Section 5(a) of the

6  Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), Section 5 of the

7  Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and

8  Section 917(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §

9  l693o(c), in connection with the sale of skincare products through a negative

10 option continuity plan. [Dkt. 3] The FTC also requested temporary and

11 preliminary relief, including the appointment of a receiver, an asset freeze, and

12 access to the defendants' premises.  On June 18, 2015, the Court entered the TRO

13 against all Defendants, including an asset freeze, immediate access to the

14 Defendants' business premises, and appointment of Charlene Koonce as

15 Temporary Receiver.  [Dkt. 14].

16          The FTC properly served the Complaint on the Defaulting Defendants.

17 [Dkt. 71, 72, 73, 74, 75, 76, 77, 79, 80, 82, 83, 85, 109, and 222].  None of the

18 Defaulting Defendants have appeared or answered the Complaint. The time to file

19 answers, as prescribed by Federal Rule of Civil Procedure 12(a)(1)(A), expired

20 without any of Defaulting Defendants asking the FTC or this Court for an

1   extension of time.

2        On August 13, 2015, the Clerk of Court entered Defaults against Adageo,

3   LLC; Agoa Holdings, Inc., Bunzai Media Group, Inc., DSA Holdings, Inc.,

4   Heritage Alliance Group, Inc.; Insight Media, Inc.; Kai Media, Inc.; Lifestyle

5   Media Brands, Inc; Media Urge, Inc., Safehaven Ventures, Inc.; SBM

6   Management, Inc.; and Zen Mobile Media, Inc. [Dkt. 157, 158, 159]. On October

7   7, 2015, the Clerk of Court entered Defaults against Khristopher Bond [Dkt. 229]

8   and Pinnacle Logistics, Inc. [Dkt. 230].

9   **II.    Defendants' Common Enterprise Operation**

10       **A.    Defendants' Deceptive Operation**

11        Defendants worked together in a common enterprise to scam consumers.

12   Defendants marketed skincare products over the Internet using deceptive offers

13   with hidden costs, negative option features, and return policies. Specifically,

14   Defendants falsely offered "risk free trials" or "gifts" of products to consumers

15   nationwide, using online banners, popup advertisements, and websites. In truth,

16   Defendants' offers were designed to trick consumers into purchasing Defendants'

17   products and enrolling in a continuity plan that charges consumers for additional

18   products each month.

19        Defendants required consumers who accepted their "risk free trial" or "gift"

20   to provide credit or debit card billing information, purportedly to pay nominal

**MOTION FOR DEFAULT JUDGMENT**
Page | 3

shipping and handling fees to receive the advertised products. However, after receiving consumers' billing information, Defendants charged consumers the full costs of the products—imposing charges of up to $97.88 onto consumers' credit or debit cards. Defendants also enrolled consumers into a negative option continuity plan, in which Defendants shipped additional products each month and charged consumers' credit or debit cards the full costs of the products, usually $97.88 per month. Finally, Defendants refused to provide consumers with refunds for product returns unless the products were returned unused and unopened within 30 days of the order's placement. These practices violate Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403, Section 907(a) of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), and caused millions of dollars of consumer injury.

**B.    Defaulting Defendants Operated as Part of the Common Enterprise**

Defaulting Defendants ran their scam through a tangled web of companies that operated as a common enterprise. To determine the existence of a common enterprise, a court may consider a variety of factors including: common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to

1  maintain separation of companies; unified advertising; pooled resources and staff;

2  and evidence which reveals that no real distinction existed between the corporate

3  Defendants.[1] It has been held by the Ninth Circuit that "entities constitute a

4  common enterprise when they exhibit either vertical or horizontal commonality –

5  qualities that may be demonstrated by a showing of strongly interdependent

6  economic interests or the pooling of assets and revenues."[2]

7       The Defaulting Defendants have operated as a common enterprise under the

8  leadership of Alon Nottea and the other individual defendants, including

9  Defaulting Defendant Khristopher Bond.[3] All 14 corporate Defendants, including

10  the 12 corporate Defaulting Defendants, were owned and operated by Alon Nottea

11  or one of his family members or associates and all participated in the scam of

12  luring consumers to provide billing information with false offers of "risk free

13  trials."[4]

14       As outlined in Plaintiff's well-pled Complaint [Dkt. 3] and its Memo of

15  Points and Authorities [Dkt. 5], many of the Defaulting Corporate Defendants

16    [1] *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000); *FTC v. Wolf*, 1997-1 Trade Cas. (CCH) ¶ 71,713, at 79,080 (S.D. Fla. 1997).

17

18  [2] *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010).

19  [3] *See* Dkt. 5, p. 42-43 (explaining connections between the 14 Corporate Defendants).

20  [4] *Id.*

**MOTION FOR DEFAULT JUDGMENT**
Page | 5

have no business premises, employees, or business function except to process charges for Defendants' "risk free trial."[5] Many, if not all, of the Defaulting Corporate Defendant operated out of a single address.[6] Further revealing the intertwined nature of these companies, BunZai and Pinnacle share phone numbers, mailing addresses, and dozens of employees.[7] The finances for almost all of the Corporate Defendants are derived from the sale of the same products. In addition, the finances of the Defaulting Corporate Defendants are handled by the same managers and employees.[8] Because the Defaulting Defendants described below operated as a common enterprise, they are all jointly and severally liable for the violations alleged in the Complaint.

### 1. Bunzai Media Group, Inc.

The FTC has stated a claim on which it may recover against Bunzai Media Group, Inc., as a participant in the common enterprise. [Dkt. 3]. BunZai Media Group, Inc. ('BunZai'), also doing business as AuraVie, Miracle FaceKit, and

---

[5] *Id.*, ¶5; *Cf. J.K. Publications, Inc.*, 99 F. Supp. 2d at 1202 (finding a common enterprise where "the corporate defendants utilized at least five different merchant accounts and four fictitious business names to process over $40 million in credit and debit card transactions").

[6] *Id.*

[7] *Id.*

[8] App. 782 ¶10.

Attitude Skincare, was a California corporation incorporated in January 2010. [Dkt. 5, p. 21]. BunZai, along with Defendant Pinnacle Logistics, Inc., is at the center of Defendants' scam. [Dkt. 5, p. 21] The company marketed skincare products using a variety of names through the shell corporations. [Dkt. 5, p. 21]. BunZai formally dissolved in June 2013. [Dkt. 5, p. 21]. BunZai was owned by Defendants Alon Nottea, Igor Latsanovski, and Khristopher Bond. [Dkt. 5, p. 21-22]. Defendant Motti Nottea was a Chief Executive Officer ("CEO"). [Dkt. 5, p. 22].

### 2.    Pinnacle Logistics, Inc.

The FTC has stated a claim on which it may recover against Pinnacle Logistics, Inc. ("Pinnacle"). [Dkt. 3]. Pinnacle was incorporated in June 2012 in California and took over Bunzai's marketing and sale of the various skin care products in 2013. [Dkt. 5, p. 21]. Pinnacle's principal place of business was at the same location as BunZai. [Dkt. 5, p. 21]. In addition to the business operation staying the same, the principals (with the exception of Khristopher Bond, who left the enterprise), location, employees, tactics, and product remained unchanged. [Dkt. 5, p. 21-22].

### 3.    SBM Management, Inc.

The FTC has stated a claim on which it may recover against SBM Management, Inc., as a participant in the common enterprise. [Dkt. 3]. SBM

Management, Inc., was incorporated in California. A corporate credit card registered to SBM Management, Inc., was used to pay for numerous AuraVie "risk free trial" websites,  and an SBM Management, Inc., email address was listed as the point of contact.[Dkt. 5, p. 25].

### 4. Media Urge, Inc.

The FTC has stated a claim on which it may recover against Media Urge, Inc., as a participant in the common enterprise. [Dkt. 3]. Media Urge, Inc., was a California corporation with its principal place of business at the same office campus as Pinnacle Logistics, Inc. [Dkt. 5, p. 22-23]. The corporation was formed in September 2012 and formally dissolved in July 2014. [Dkt. 5, p. 22]. The company secured third-party advertising, tracked sales, and designed marketing materials.  Media Urge, Inc., and Pinnacle are owned by the same parent company, Defendant CalEnergy, Inc. [Dkt. 5, p. 22]. Media Urge, Inc. designed advertising, managed affiliates, and purchased advertising space for the skincare products sold via negative option. [Dkt. 5, p. 22; Dkt. 120, p. 55, 63-65].

### 5. Adageo, LLC

The FTC has stated a claim on which it may recover against Adageo, LLC, as a participant in the common enterprise. [Dkt. 3]. Adageo is a consulting company owned, in part, by Individual Defendant Alon Nottea.  [Dkt. 5, p. 23]. Adageo, LLC has advertised, marketed, distributed, or sold the skincare products

at issue in this case to consumers throughout the United States.  Adageo, LLC was also hired by Individual Defendant Oz Mizrahi and Corporate Defendant Media Urge, Inc. to consult regarding affiliate marketing. [Dkt. 5, p. 23-24].

> **6.** **The Shell Corporations: Agoa Holdings, Inc.; Zen Mobile Media, Inc.; SaveHaven Ventures, Inc., Heritage Alliance Group, Inc.; Lifestyle Media,Inc.; DSA Holdings, Inc.; Kai Media, Inc.; and Insight Media, Inc.**

The FTC has stated a claim on which it may recover against Agoa Holdings, Inc.; Zen Mobile Media, Inc.; SaveHaven Ventures, Inc., Heritage Alliance Group, Inc.; AMD Financial Network, Inc.; Kai Media, Inc.; Lifestyle Media Brands, Inc., DSA Holdings, Inc., and Insight Media, Inc. (collectively the "shell corporations"). [Dkt. 3]. All of the shell corporations were incorporated in California. [Dkt. 5, p. 24].  All of the shell corporations were, in fact, operated from the same location by employees of Bunzai and Pinnacle. [Dkt. 5, p. 24-25]. Each shell corporation is associated with at least one merchant account that Defendants used to process payments for AuraVie and related products in an attempt to disguise their chargeback rates from the credit card network. [Dkt. 5, p. 24-25; Dkt. 120, p. 64; Dkt. 121-3, p. 4].

> **7.** **Khristopher Bond**

The FTC has stated a claim on which it may recover against Khristopher Bond. [Dkt. 3]. Khristopher Bond, also known as Raymond Ibbot, was an owner of BunZai along with Igor Latsanovski and Alon Nottea. [Dkt. 5, p. 31]. A former

1  employee stated that Bond trained him as an AuraVie customer service

2  representative and prepared him to respond to customer complaints. [Dkt. 5, p.

3  31]. He eventually left the common enterprise, leading to the dissolution of

4  BunZai. [Dkt. 5, p. 31]. His position as manager and role in supervising the

5  customer service department shows his participation in and actual knowledge of

6  the deceptive enterprise. [Dkt. 5, p. 31].

7  **II.     Legal Argument**

8       **A.     Legal Standard**

9       Rule 55(b)(2) enables this Court to issue a judgment against a party that has

10  defaulted. Upon entry of default by the Clerk under Rule 55(a), the Complaint's

11  factual allegations regarding liability are taken as true, while allegations regarding

12  the amount of damages must be proven. *Rio Prop., Inc. v. Rio Int'l Interlink*, 284

13  F.3d 1007, 1019 (9th Cir. 2002); *Televideo Sys., Inc., v. Heidenthal*, 826 F.2d 915,

14  917-18 (9th Cir. 1987); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.

15  1977).

16       Granting a default judgment is within the Court's sound discretion. *See*

17  *Draper v. Coombs,* 792 F.2d 915, 924-925 (9th Cir. 1986). In determining

18  whether to issue a default judgment, the trial court may consider a variety of

19  factors in exercising its discretion, including the seven factors articulated in *Eitel*

20  *v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). These

factors are: (1) the possibility of prejudice to plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits. In this case, the *Eitel* factors weigh in favor of entering default judgments against the Defaulting Defendants.

**B.     The *Eitel* Factors Weigh in Favor of Entering A Default Judgment Against the Defaulting Defendants**

**1.     The FTC Will Be Prejudiced If A Default Judgment Is Not Entered**

The FTC will be prejudiced if a default judgment is not entered against the Defaulting Defendants because it will be forced to commit time, resources and personnel to prosecute a lawsuit in which the Defaulting Defendants have refused to participate. *See, e.g.*, *FTC v. 1263523 Ontario, Inc*., 205 F. Supp. 205, 208-09 (S.D.N.Y. 2002) (finding the denial of motion for default judgment would be "unfairly prejudicial" to the FTC when the defendant failed to provide any explanation for its failure to defend). Here, the Defaulting Defendants did not answer the Complaint or participate in this lawsuit in any way. Their complete and unexplained refusal to participate leaves no other way for the FTC to litigate its claims against them.

### 2. The FTC Sufficiently Alleged Meritorius Claims Against the Defaulting Defendants

The second and third *Eitel* factors, measuring the merits of the FTC's substantive claim and the sufficiency of the complaint, also weigh in favor of default judgment. These factors "require that a plaintiff state a claim on which [it] may recover." *See Pepsico, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002). This Court has already held, in granting temporary and preliminary relief, that "[t]he [FTC's] Complaint states a claim upon which relief may be granted under Sections 5, 13, and 19 of the FTC Act, 15 U.S.C. §§ 5(a), 53(b), and 57b and under 15 U.S.C. §§ 8404 and 1693o(c)." [Dkt. 14].

The Complaint alleges that Defaulting Defendants, acting as a common enterprise, collectively marketed skincare products over the Internet using deceptive offers with hidden costs, negative option features, and return policies. Specifically, Defaulting Defendants:

    a.    Failed to disclose adequately material terms of their sales offer, including the offer's cost and negative option features, in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a);

    b.    Falsely represented that consumers could obtain their products on a "trial" or "risk-free" trial basis for only a nominal shipping and handling fee, in violation of Section 5 of the FTC Act, 15 U.S.C. §

**MOTION FOR DEFAULT JUDGMENT**
Page | 12

1    45(a);

2    c.    Falsely represented their business is accredited by the Better

3          Business Bureau with an "A-" rating, in violation of Section 5 of the

4          FTC Act, 15 U.S.C. § 45(a);

5    d.    Unfairly charged consumers' credit and/or debit cards without

6          authorization, in violation of Section 5 of the FTC Act, 15 U.S.C.

7          §§ 45(a) and 45(n);

8    e.    Failed to provide consumers a simple method of cancelling their

9          negative option continuity plan, in violation of Section 4 of ROSCA,

10         15 U.S.C. § 840; and

11   f.    Debited consumers' bank accounts on a recurring basis without

12         obtaining written authorization from the consumer or providing a

13         written copy of the authorization to the consumer, in violation of

14         Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section

15         205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

16   [Dkt. 3].

17        The Plaintiff's allegations were supported by three volumes of evidence,

18   including investigator and consumer declarations, website captures, and business

19   records. [Dkt. 6-9].  The Plaintiff's allegations were also supported by findings by

20   the court-appointed receiver [Dkt. 120, p. 60-80].

These well-pled allegations, which are taken as true by virtue of entry of default by the Clerk,[9] in conjunction with the evidence submitted by the FTC in support of its application for a Temporary Restraining Order and Preliminary Injunction, establish both the sufficiency and underlying merits of the FTC's Complaint as to each Defaulting Defendant.

### 3. The Sum of the Money Sought is Proportionate

The fourth *Eitel* factor, the sum of money at stake, favors immediate entry of a default judgment. The fourth factor balances "the amount of money at stake in relation to the seriousness of the defendant's conduct." *PepsiCo Inc.*, 238 F. Supp. 23 at 1175.

Here, the sum of money the FTC seeks against the Defaulting Defendants is proportionate to harm caused by Defendants' scam. The total amount of consumer harm in this case is $75,624,030. *See* attached Exhibit 23, Fifth Declaration of FTC Investigator Brent D. McPeek (calculating the sum of consumer harm using Defendants' tax returns and Quickbook records).

As is clear from the well-pled allegations in the Complaint, these figures are entirely appropriate in light of the gravity of the Defaulting Defendants' violations. Each penny received by Defendants was obtained through deception.

---

[9] *See TeleVideo Sys.*, 826 F.2d at 917-918, and *Rio Prop., Inc.*, 284 F.3d at 1019.

**MOTION FOR DEFAULT JUDGMENT**
Page | 14

Each of the 14 Defaulting Defendants listed above were a part of the common enterprise that bilked money from consumers. Participants in a common enterprise are held jointly and severally liable for the law violations.[10] The corporate Defaulting Defendants were either shell corporations used as a tool by the common enterprise to perpetuate their scam, or were original entities that formed the scam. Khristopher Bond is individually liable because controlled and directed many of the illegal activities at issue in this case.[11] Therefore, it is appropriate for all Defaulting Defendants to be held jointly and severally liable for the full amount of equitable monetary relief.

### 4.   Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor, the possibility of a dispute concerning material facts, also strongly favors the entry of judgment.  The Defaulting Defendants have not disputed any of the facts underlying the claims in this litigation, and have, in fact, chosen not to participate at all in this litigation.  All material allegations in the Complaint, except those relating to damages, are therefore taken as true. *See TeleVideo*, 826 F.2d at 917-18. The FTC submitted extensive evidence supporting the material facts in support of its Application for TRO.  In entering the TRO, the

---

[10] *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000); *FTC v. Wolf*, 1997-1 Trade Cas. (CCH) ¶ 71,713, at 79,080 (S.D. Fla. 1997).

[11] *See FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170–71 (9th Cir. 1997); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989).

**MOTION FOR DEFAULT JUDGMENT**
Page | 15

Court found that the FTC is likely to prevail on its claims that the Defendants engaged in conduct that violates the FTC Act. [Dkt. 14]. There is very little possibility here of a dispute concerning material facts.

### 5.    Default is Not Due to Excusable Neglect

The sixth factor, whether the default was due to excusable neglect, also favors entry of default judgment. The Defaulting Defendants were properly served with the Complaint and failed to answer or make any appearance at all. In these circumstances, a default judgment is appropriate. *See High Country Broad Co., Inc.,* 3 F.3d at 1244, 1245 (9th Cir. 1993) (it is "perfectly appropriate" for a district court to enter a default judgment when a corporation fails to retain counsel); *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1987) (finding a defendant's conduct culpable when it has received actual or constructive notice of filing of the action and has intentionally failed to answer); *see also Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (no abuse of discretion in denying motion to set aside a default when a party had notice of the filing and failed to answer the complaint).

### 6.    Strong Policy Favoring Decisions on the Merits

While the final *Eitel* factor favors deciding cases on the merits when possible, this factor is outweighed by other factors. A decision on the merits is impractical, if not impossible, when a defendant fails to participate in a legal

proceeding. *See Pepsico, Inc.*, 238 F.Supp.23 at 1177. Here, the Court should not be precluded from entering a default judgment when the Defaulting Defendants not only failed to answer the FTC's complaint, but also did not participate in any way in this lawsuit. Accordingly, Defaulting Defendants' total failure to participate in the lawsuit has rendered a decision on the merits impractical and/or impossible, making entries of default judgments against them appropriate.

## IV.   Default Judgment for the Requested Injunctive and Equitable Monetary Relief Against Defaulting Defendants is Warranted

The FTC filed this action under Section 13(b) of the FTC Act to secure permanent injunctive and monetary relief against Defaulting Defendants and others. Section 13(b) provides that "in proper cases, the Commission may seek, and after proper proof, the court may issue, a permanent injunction" against violations of laws enforced by the Federal Trade Commission. 15 U.S.C. § 53(b). The Ninth Circuit has held that a case alleging violations of a law enforced by the FTC constitutes a proper case for which injunctive relief may be sought. *FTC v. H.N. Singer*, 668 F.2d 1107, 1111-13 (9th Cir. 1982). Moreover, Section 13(b) preserves the Court's inherent authority not only to grant permanent injunctive relief but any ancillary equitable relief that is necessary to render complete justice. *See FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994) (*quoting H.N. Singer*, 668 F.2d at 1113). The Court's broad equitable authority includes the power to order monetary relief in the form of consumer redress, rescissions of

1   contracts, restitution, or disgorgement of unjust enrichment. *See Singer*, 668 F.2d

2   at 1113.

3       The FTC seeks injunctive relief to prohibit the Defaulting Defendants'

4   deceptive practices alleged in the Complaint and to "fence in" future conduct. The

5   FTC's attached proposed Order against each Defaulting Defendant bans them

6   from advertising, marketing, promoting, or offering any good or service with a

7   Negative Option Feature, as defined by the Order (Section I).[12] The proposed

8   Order also prohibits certain business activities, including (1) failing to disclose

9   material terms and conditions of any offer, with listed examples of required

10  disclosures; (2) misrepresenting any material fact, including those listed;  (3)

11  failing to obtain express informed consent prior to charging a consumer for a

12  transaction; and (4) failing to obtain written authorization for Preauthorized

13  Electronic Fund Transfers. These are appropriate injunctive terms in this type of

14  case. *See John Beck Amazing Profits*, 888 F. Supp. 2d at 1001 ("Courts have

15  routinely imposed some form of 'fencing in,' barring violators from participating

16  in certain lines of business or forms of marketing"); *Litton Indus. v. FTC*, 575

17  _____

18  [12]     Courts in the Ninth Circuit have approved categorical bans, similar to what
    the FTC seeks in this case, as proper injunctive relief. *See, e.g., FTC v. John Beck
    Amazing Profits, LLC*, 888 F. Supp.2d 1006, 1014-15 (C.D. Cal. 2012)

19  (defendants banned from informercial marketing and telemarketing); *FTC v. Gill*,
    265 F.3d 944, 957-958 (9th Cir. 2001) (upholding ban on participation in credit

20  repair business); *FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1010 (N.D. Cal
    2010) (ban on telemarketing).

F.2d 364, 370 (9th Cir. 1982) (fencing in provisions serve to close all roads to the prohibited goal, so that orders may not be bypassed with impunity).

For monetary relief, the proposed Order against Defaulting Defendants imposes an equitable monetary judgment of $75,624,030 against all Defaulting Defendants jointly and severally for their participation in the common enterprise [Section III]. Joint and several liability is appropriate in this case, where the Defaulting Defendants' actions collectively caused the consumer injury.

The proposed Order also requires third parties to turn over any assets of Defaulting Defendants [Section IV], and provides for the protection of Defaulting Defendants' customer information [Section V]. The proposed Order also require recordkeeping and periodic reporting provisions that are standard in FTC fraud cases to aid the FTC in monitoring defendants' compliance with court orders. [Sections VII-IX]. This permanent injunctive relief is warranted and appropriate given the egregiousness of the violations of the FTC Act, ROSCA, EFTA, and Regulation E, as stated in the FTC's Complaint. [Dkt. 3].

## IV.    Conclusion

For all of the above reasons, Plaintiff Federal Trade Commission requests that this Court enter the attached default proposed Order against Defendants Bunzai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven

Ventures, Inc.; Heritage Alliance Group, Inc.; SBM Management, Inc.; Media

Urge, Inc.; Adageo, LLC; Kai Media, Inc.; Insight Media, Inc.; and Kristopher

Bond.


Respectfully submitted,

Dated: October 9, 2015                    /s/ REID TEPFER
                                          REID A. TEPFER
                                          LUIS H. GALLEGOS
                                          Attorneys for the Plaintiff
                                          Federal Trade Commission
                                          1999 Bryan Street, Suite 2150
                                          Dallas, Texas 75201
                                          (214) 979-9395 (Tepfer)
                                          (214) 979-9383 (Gallegos)
                                          (214) 953-3079 (facsimile)
                                          rtepfer@ftc.gov
                                          lgallegos@ftc.gov


## CERTIFICATE OF SERVICE

The undersigned certifies that on October 9, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court.

Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd Suite 2250
Los Angeles, CA 90036

nameri@agmblaw.com
*Local counsel for Receiver*

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea and
Roi Rueveni*

Robert Esensten
Esensten Law
12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
resensten@esenstenlaw.com
*Counsel for Doron Nottea and
Motti Nottea*

Randi Geffner
Esensten Law
12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
resensten@esenstenlaw.com
*Counsel for Doron Nottea and
Motti Nottea*

Marc S. Harris
Scheper Kim & Harris, LLP
601 W. Fifth Street, 12th Floor
Los Angeles, CA 90071
mharris@scheperkim.com
*Counsel for Igor Latsanovski and*

**MOTION FOR DEFAULT JUDGMENT**
Page | 21

1    *CalEnergy, Inc.*

2    Annah Kim
     Scheper Kim & Harris, LLP
3    601 W. Fifth Street, 12th Floor
     Los Angeles, CA 90071
4    akim@scheperkim.com
     *Counsel for Igor Latsanovski and*
5    *CalEnergy, Inc.*

6    Charlene Cantrell Koonce
     Receiver
7    Scheef & Stone
     500 N. Akard, Suite 2700
8    Dallas, Texas 75201
     charlene.koonce@solidcounsel.com
9    *Receiver*

10   Kelly M. Crawford
     Scheef and Stone
11   500 N. Akard, Suite 2700
     Dallas, Texas 75201
12   kelly.crawford@solidcounsel.com
     *Counsel to Receiver*

13

14                                          /S/ REID TEPFER
                                            REID TEPFER
15

16

17

18

19

20

**MOTION FOR DEFAULT JUDGMENT**
Page | 22