JONATHAN E. NUECHTERLEIN
General Counsel

DAMA J. BROWN
Regional Director

REID TEPFER
rtepfer@ftc.gov
Texas Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov
Oklahoma Bar No. 19098
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (fax)

RAYMOND McKOWN
rmckown@ftc.gov
California Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4325 (voice)
(310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BUNZAI MEDIA GROUP, INC.,** *et al.*<br><br>**Defendants.** | **Case No.  CV 15-4527-GW(PLAx)**<br><br>**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

1    Plaintiff, the Federal Trade Commission (Commission or FTC), filed its

2  Complaint for Permanent Injunction and Other Equitable Relief (Complaint)

3  (Dkt #1) pursuant to Sections 13(b)  and 19 of the Federal Trade Commission Act

4  (FTC Act), 15 U.S.C. §§ 53(b) and 57b, Section 5 of the Restore Online

5  Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8404, and Section 917(c) of the

6  Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1693o(c).  The FTC now

7  having filed its Motion for Entry of Default Judgment and Order for Permanent

8  Injunction and Other Equitable Relief (Motion), and the Court having considered

9  the FTC's Motion, supporting exhibits, and the entire record in this matter, the

10  FTC's Motion is hereby granted, and

11  IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

12                                  **FINDINGS**

13  1.    This is an action by the Commission under Section 13(b) and 19 of the FTC

14  Act, 15 U.S.C. §§ 53(b) and 57b, Section 5 of ROSCA, 15 U.S.C. § 8404, and

15  Section 917(c) of EFTA, 15 U.S.C. § 1693o(c).  The Commission's Complaint

16  seeks permanent injunctive relief against Defendants in connection with online

17  sale of skincare products through a negative option continuity plan in violation of

18  Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. §

19  8403, and Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and seeks equitable

20  monetary relief in the form of consumer redress and/or disgorgement.  Pursuant to

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Commission has the authority to seek the relief contained herein.

2.     This Court has jurisdiction over the subject matter of this case and jurisdiction over the Defendants, and venue in this district is proper.

3.     The Commission's Complaint states a claim upon which relief may be granted under Sections 5, 13, and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b, and under 15 U.S.C. §§ 8404 and 1693o(c).

4.     The activities of Defendants are "in or affecting commerce" as "commerce" is defined pursuant to 15 U.S.C. § 53(b) and 28 U.S.C. §1391(b), (c), and (d).

5.     The Defaulting Defendants were properly served with the Summons and Complaint in this matter.  The Defaulting Defendants failed to file any responsive pleading as required by Fed.R.Civ.P. 12(a).  On August 13, 2015 and October 7, 2015, the Clerk of Court entered defaults against Bunzai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc; Agoa Holdings, Inc.;  Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; Kai Media, Inc.; Insight Media, Inc.; and Kristopher Bond (Dkts. 157, 158, 159, 229, and 230).

6.     The Court finds that Defaulting Defendants participated as members of a common enterprise and:

DEFAULT JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT

a.  Conducted the business practices at issue through an interrelated

network of companies with common ownership, officers, managers,

business functions, employees and office locations;

b.  The companies commingled funds, used the same deceptive sales

techniques, and had centralized record keeping; and

c.  The Ninth Circuit has held that "entities constitute a common

enterprise when they exhibit either vertical or horizontal

commonality – qualities that may be demonstrated by a showing of

strongly interdependent economic interests or the pooling of assets or

revenues."  *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143

(9th Cir. 2010).

7.    The factual allegations in the Commission's Complaint are taken as true

against Defaulting Defendants.  Those allegations and the evidence supporting

them establish that, as members of a common enterprise, Defaulting Defendants

violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15

U.S.C. § 8403, and Section 907(a) of EFTA, 15 U.S.C. § 1693e(a).

8.    The Court finds that, in connection with the online sale of skincare products

through a negative option continuity plan and as members of a common

enterprise, Defaulting Defendants have violated Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), by failing to disclose, or disclose adequately, material terms and

1  conditions of their offer, including:

2       a.  That Defendants would use consumer's credit and debit card

3            information to charge consumers the full cost of the trial products

4            upon expiration of a limited trial period;

5       b.  The dates on which the trial period began and ended;

6       c.  That Defendants would automatically enroll consumers in a negative

7            option continuity plan with additional charges;

8       d.  The cost of the continuity plan, and the frequency and duration of the

9            recurring charges;

10      e.  The means consumers must use to cancel the negative option

11           program to avoid additional charges; and

12      f.  Requirements of their refund policies.

13  9.    The Court finds that, in connection with the online sale of skincare products

14  through a negative option continuity plan and as members of a common

15  enterprise, Defaulting Defendants have violated Section 5(a) of the FTC Act, 15

16  U.S.C. § 45(a), by falsely representing, expressly or by implication, that

17  consumers could try their products "risk free."

18  10.   The Court now finds that, in connection with the online sale of skincare

19  products through a negative option continuity plan and as members of a common

20  enterprise, Defaulting Defendants have violated Section 5(a) of the FTC Act, 15

DEFAULT JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT

1   U.S.C. § 45(a), by falsely representing, expressly or by implication, that

2   Defendants are accredited by  and have a rating of "A-" with the Better Business

3   Bureau.

4   11.     The Court now finds that, in connection with the online sale of skincare

5   products through a negative option continuity plan and as members of a common

6   enterprise, Defaulting Defendants have violated Section 4 of ROSCA, 15 U.S.C. §

7   8403, by failing to:

8           a.  clearly and conspicuously disclose all material terms of the negative

9               option feature of the skincare products transaction before obtaining

10              the consumer's billing information;

11          b.  obtain the consumer's express informed consent to the negative

12              option feature before charging the consumer's credit card, debit card,

13              bank account, or other financial account for the transaction; and/or

14          c.  provide simple mechanisms for a consumer to stop recurring charges

15              for skincare products to the consumer's credit card, debit card, bank

16              account, or other financial account.

17  12.     The Court now finds that, in connection with the online sale of skincare

18  products through a negative option continuity plan and as members of a common

19  enterprise, Defaulting Defendants have violated Section 907(a) of EFTA, 15

20  U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b),

DEFAULT JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT

by:

    a.  Debiting consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts; and

    b.  debiting consumers' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by the consumer for preauthorized electronic fund transfers from the consumer's account

13.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), gives the FTC authority to seek, and the Court the authority to grant a permanent injunction.  In addition, pursuant to its equitable authority, this Court can award "any ancillary relief necessary to accomplish complete justice.  *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111-13 (9th Cir. 1982).  It is proper in this case to enter a permanent injunction to prevent a recurrence of Defaulting Defendants' violations of the FTC Act, ROSCA, and EFTA, and to enter equitable monetary relief against Defendants.

14.    The Common Enterprise's net sales (total sales minus refunds, returns, and chargebacks) amounted to at least $75,624,030 from the conduct alleged in the Commission's Complaint.  Members of a common enterprise are jointly and

1  severally liable for the injury that they cause through their collective practices.

2  *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000).

3  15.  The Commission is therefore entitled to equitable monetary relief against

4  Defaulting Defendants in the amount of $75,624,030 for which Defaulting

5  Defendants are jointly and severally liable.

6  16.  This Order is in addition to, and not in lieu of, any other civil or criminal

7  remedies that may be provided by law.

8  17.  Entry of this Order is in the public interest.

9  **DEFINITIONS**

10  For the purpose of this Order, the following definitions apply:

11  A.  "**Charge**" or "**Charging**" means causing billing information to be

12  submitted for payment, including against a consumer's credit card, debit card,

13  bank account, phone bill, or other account, or otherwise attempting to collect

14  money or other consideration.

15  B.  "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is

16  difficult to miss (i.e., easily noticeable) and easily understandable by ordinary

17  consumers, including in all of the following ways:

18  1.  In any communication that is solely visual or solely audible, the

19  disclosure must be made through the same means through which the

20  communication is presented.  In any communication made through both visual and

DEFAULT JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT

audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.     A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.     An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.     In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.     On a product label, the disclosure must be presented on the principal display panel.

6.     The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

7.     The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

DEFAULT JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT

8.     The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

9.     When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

C.     "**Continuity Plan**" means any plan, arrangement, or system in which a consumer is periodically charged for products or services *without* prior notification by the seller before each charge.

D.     "**Defendants**" means Defaulting Defendants and Alon Nottea, Motti Nottea, Doron Nottea, Igor Latsanovski, Oz Mizrahi, Roi Reuveni, and CalEnergy, Inc.

E.     "**Defaulting Defendants**" means the Defaulting Individual Defendant and all of the Defaulting Corporate Defendants, individually, collectively, or in any combination.

1.     "**Defaulting Corporate Defendants**" means Bunzai Media Group, Inc., d/b/a AuraVie and Miracle Face Kit; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc; Agoa Holdings, Inc.;  Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc., d/b/a as AuraVie Distribution; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; Kai Media, Inc.; Insight Media, Inc.; and their successors and assigns.

DEFAULT JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT

Page  9

2.     "**Defaulting Individual Defendant**" means Kristopher Bond, also known as Ray Ibbot.

F.     "**Electronic Fund Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. Such term does not include:

1.     Any check guarantee or authorization service that does not directly result in a debit or credit to a consumer's account;

2.     Any transfer of funds, other than those processed by automated clearinghouse, made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and that is not designed primarily to transfer funds on behalf of a consumer;

3.     Any transaction the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the Securities and Exchange Commission;

4.      Any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a consumer and a financial institution for the purpose of covering an overdraft or maintaining an agreed upon minimum balance in the consumer's demand deposit account; or

5.      Any transfer of funds that is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution which is not pursuant to a prearranged plan and under which periodic or recurring transfers are not contemplated.

G.      "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services.

H.      "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer or agreement.

I.      "**Preauthorized Electronic Fund Transfer**" as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(9), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

J.      "**Receiver**" means Charlene Koonce, who was appointed by the Court in this matter.

# ORDER

## I.    BAN ON NEGATIVE OPTION SALES

IT IS ORDERED that Defaulting Defendants are permanently restrained and enjoined from advertising, marketing, promoting, or offering for sale any good or service with a Negative Option Feature, whether directly or through an intermediary, including by consulting, planning, participating, facilitating or advising.

## II.    PROHIBITED BUSINESS ACTIVITY

IT IS FURTHER ORDERED that Defaulting Defendants, Defaulting Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from:

A.    Before a customer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose, in a clear and conspicuous manner all material terms and conditions of any offer, including:

    1.    The name of the seller or provider of the good or service and the name of the good or service as it will appear on the consumer's billing statements;

DEFAULT JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT

2.      The total cost or price of the good or service;

3.      The amount, timing, and manner of all fees, charges, or other amounts that a consumer will be charged or billed;

4.      The mechanism for consumers to stop a charge;

5.      The specific steps and means by which refund or cancellation requests must be submitted;

6.      If there is any policy of not making refunds or cancellations, including any requirement that a product will not be accepted for return or refund unless it is unopened and in re-sellable condition, a statement regarding this policy; or

7.      The duration of Defaulting Defendants' refund and cancellation policy, including the date that it begins to run;

B.      Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any fact material, including:

1.      The name of the seller or provider of the good or service;

2.      The total cost or price of the good or service;

3.      the amount, timing, and manner of all fees, charges, or other amounts that a consumer will be charged or billed;

4.      that a good or service is free, a bonus, a gift, or is available for a nominal fee or payment, without further risk or obligation;

DEFAULT JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT

5.    The accreditation or rating of any company;

6.    The purpose for which a consumer's payment information will be used;

7.    The terms or conditions of any refund or cancellation policy; or

8.    That a transaction has been authorized by a consumer;

C.    Failing to obtain a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for a transaction;

D.    Failing to obtaining written authorization signed or similarly authenticated from consumers for Preauthorized Electronic Fund Transfers from the consumer's account; or

E.    Failing to provide a copy of a written authorization signed or similarly authenticated by a consumer for Preauthorized Electronic Fund Transfers from the consumer's account.

### III.    MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of seventy-five million six hundred and twenty four thousand and thirty dollars ($75,624,030) is entered in favor of the Commission against Defaulting Defendants, jointly and severally as equitable monetary relief.

DEFAULT JUDGMENT AND ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT

B.    Defaulting Defendants are ordered to pay the Commission seventy-five million six hundred and twenty four thousand and thirty dollars ($75,624,030).

C.    Defaulting Defendants must submit to the Commission their taxpayer identification numbers (Social Security number or EIN), which may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

D.    All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defaulting Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defaulting Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

E.    Upon completion of the Receiver's duties in this matter, any remaining funds of the Defaulting Defendants shall be turned over to the Commission in

1  partial satisfaction of the judgment.  Upon completion of those

2  payments/transfers, the asset freeze is dissolved as to Defaulting Defendants.

3  **IV.   TURNOVER OF ASSETS HELD BY THIRD PARTIES**

4  **IT IS FURTHER ORDERED** that any financial institution, business

5  entity, or person that holds, controls, or maintains custody of any account or asset

6  of Defaulting Defendants, or any account or asset held on behalf of, or for the

7  benefit of, such Defaulting Defendant, shall turn over such account or asset to the

8  Commission, by wire transfer pursuant to directions provided by counsel for the

9  Commission, or as otherwise directed in writing by counsel for the Commission,

10  within seven days of receiving a request by the Commission by any means,

11  including, but not limited to, via facsimile.

12  **V.   CUSTOMER INFORMATION**

13  IT IS FURTHER ORDERED that Defaulting Defendants, their officers,

14  agents, employees, and attorneys, and all other persons in active concert or

15  participation with any of them, who receive actual notice of this Order, whether

16  acting directly or indirectly, are permanently restrained and enjoined from directly

17  or indirectly:

18  A.   Disclosing, using, or benefitting from customer information, including the

19  name, address, telephone number, email address, Social Security number, other

20  identifying information, or any data that enables access to a customer's account

1  (including a credit card, bank account, or other financial account), that any

2  Defendant obtained prior to entry of this Order with the sale of any product

3  through a negative option continuity plan; and

4  B.      Failing to turn over all customer information, in all forms in their

5  possession, custody, or control, to the Receiver within 30 days after entry of this

6  Order.

7           Provided, however, that customer information need not be disposed of, and

8  may be disclosed, to the extent requested by a government agency or required by

9  law, regulation, or court order.

10              **VI.    ORDER ACKNOWLEDGMENTS**

11          IT IS FURTHER ORDERED that Defaulting Defendants obtain

12  acknowledgments of receipt of this Order:

13  A.      Each Defaulting Defendant, within seven days of entry of this Order, must

14  submit to the Commission an acknowledgment of receipt of this Order sworn

15  under penalty of perjury.

16  B.      For 15 years after entry of this Order, Individual Defaulting Defendant for

17  any business that he, individually or collectively with any other Defendant, is the

18  majority owner or controls directly or indirectly, must deliver a copy of this Order

19  to:  (1) all principals, officers, directors, and LLC managers and members; (2) all

20  employees, agents, and representatives who participate in conduct related to the

subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within seven days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defaulting Defendant delivered a copy of this Order, that Defaulting Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## IX.    COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defaulting Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Defaulting Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Defaulting Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defaulting Defendant; (b) identify all of that Defaulting Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defaulting Defendants

must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defaulting Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Individual Defaulting Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which he performs services whether as an employee or otherwise and any entity in which the Individual Defaulting Defendant has any ownership interest; and (c) describe in detail Individual Defaulting Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 20 years after entry of this Order, each Defaulting Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defaulting Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any entity that Defaulting Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation,

merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.     Additionally, Individual Defaulting Defendant must report any change in:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Individual Defaulting Defendant performs services whether as an employee or otherwise and any entity in which Individual Defaulting Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Defaulting Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defaulting Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to

DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:

Associate Director for Enforcement, Bureau of Consumer Protection, Federal

Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The

subject line must begin:  *FTC v. BunZai Media Group, Inc*., et al. FTC File No.

X150047.

## X.   RECORDKEEPING

IT IS FURTHER ORDERED that Defaulting Defendants must create

certain records for 20 years after entry of the Order, and retain each such record

for 5 years.  Specifically, Individual Defaulting Defendant for any business that

he, individually or collectively with any other Defendants, is a majority owner or

controls directly or indirectly, must create and retain the following records:

A.   Accounting records showing the revenues from all goods or services sold;

B.   Personnel records showing, for each person providing services, whether as

an employee or otherwise, that person's:  name; addresses; telephone numbers;

job title or position; dates of service; and (if applicable) the reason for

termination;

C.   Records of all consumer complaints and refund requests, whether received

directly or indirectly, such as through a third party, and any response;

D.   All records necessary to demonstrate full compliance with each provision of

this Order, including all submissions to the Commission ; and

1    E.      A copy of each unique advertisement or other marketing material.

2                        **XI.    COMPLIANCE MONITORING**

3              IT IS FURTHER ORDERED that, for the purpose of monitoring Defaulting

4    Defendants' compliance with this Order, including any failure to transfer any

5    assets as required by this Order:

6    A.      Within 14 days of receipt of a written request from a representative of the

7    Commission, each Defaulting Defendant must: submit additional compliance

8    reports or other requested information, which must be sworn under penalty of

9    perjury; appear for depositions; and produce documents for inspection and

10   copying.  The Commission also authorized to obtain discovery, without further

11   leave of court, using any of the procedures prescribed by Federal Rules of Civil

12   Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

13   B.      For matters concerning this Order, the Commission is authorized to

14   communicate directly with each Defaulting Defendant.  Defaulting Defendant

15   must permit representatives of the Commission to interview any employee or

16   other person affiliated with any Defaulting Defendant who has agreed to such an

17   interview.  The person interviewed may have counsel present.

18   C.      The Commission may use all other lawful means, including posing, through

19   its representatives as consumers, suppliers, or other individuals or entities, to

20   Defaulting Defendants or any individual or entity affiliated with Defaulting

Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XII.    RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this ___ day of _____, 2015.**

_____
THE HONORABLE GEORGE WU
Judge, United States District Court