JONATHAN E. NUECHTERLEIN
General Counsel

DAMA J. BROWN
Regional Director

REID TEPFER
rtepfer@ftc.gov
Texas Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov
Oklahoma Bar No. 19098
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (fax)

RAYMOND McKOWN
rmckown@ftc.gov
California Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4325(voice)
(310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**BUNZAI MEDIA GROUP, INC.**, a California corporation, also doing business as AuraVie, Miracle Face Kit, and Attitude Cosmetics;<br><br>**PINNACLE LOGISTICS, INC.**, a California corporation; | Case No. 2:15-CV-04527-GW (PLAx)<br><br>**FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

1

2

**DSA HOLDINGS, INC.**, a California corporation;

3

**LIFESTYLE MEDIA BRANDS, INC.**, a California corporation;

4

**AGOA HOLDINGS, INC.**, a California corporation;

5

6

**ZEN MOBILE MEDIA, INC.**, a California corporation;

7

**SAFEHAVEN VENTURES, INC.**, a California corporation;

8

9

**HERITAGE ALLIANCE GROUP, INC.**, a California corporation, also doing business as AuraVie Distribution;

10

**AMD FINANCIAL NETWORK, INC.**, a California corporation;

11

**SBM MANAGEMENT, INC.**; a California corporation;

12

13

**MEDIA URGE, INC.**, a California corporation;

14

**ADAGEO, LLC**, a California limited liability company;

15

**CALENERGY, INC.**, a California corporation;

16

17

**KAI MEDIA, INC.**, a California corporation;

18

**INSIGHT MEDIA, INC.**, a California corporation;

19

**FOCUS MEDIA SOLUTIONS, INC.**, a California Corporation

20

**SECURED COMMERCE, LLC**, a California limited liability company;

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

**SECURED MERCHANTS, LLC**, a California limited liability company;

**USM PRODUCTS, INC.**, a California corporation;

**MERCHANT LEVERAGE GROUP, INC.**, a California corporation;

**DMA MEDIA HOLDINGS, INC.**, a California corporation;

**SHALITA HOLDINGS, INC.**, a California corporation;

**ALL STAR BEAUTY PRODUCTS, INC.**, a California corporation;

**ALON NOTTEA**, individually and as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.;

**MOTTI NOTTEA**, individually and as an officer or manager of BunZai Media Group, Inc.;

**DORON NOTTEA**, individually and as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.;

**IGOR LATSANOVSKI**, individually and as an officer or manager of BunZai Media Group, Inc, Pinnacle Logistics, Inc., and Zen Mobile Media, Inc.;

**OZ MIZRAHI**, individually and as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.;

**ROI REUVENI**, individually and as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.;

and

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

**KHRISTOPHER BOND**, also known as Ray Ibbot, individually and as an officer or manager of BunZai Media Group, Inc.;

**ALAN ARGAMAN**, individually and as an officer or manager of Secured Commerce, LLC and Secured Merchants, LLC

**PAUL MEDINA**, individually and as an officer or manager of Media Urge, Inc., Pinnacle Logistics, Inc., and Focus Media Solutions, Inc., and

**Defendants, and**

**Chargeback Armor, Inc.**, a California corporation;

**Relief Defendant.**

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section 917(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § l693o(c), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, and Section 907(a) of EFTA, 15 U.S.C.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

1 § 1693e(a), in connection with the sale of skincare products through a negative

2 option continuity plan.

3 **SUMMARY OF THE CASE**

4     2.     Defendants collectively market skincare products over the Internet

5 using deceptive offers with hidden costs, negative option features, and return

6 policies. Specifically, Defendants offer "risk-free" trials of skincare products to

7 consumers nationwide through online banners, pop-up advertisements, and

8 websites. Defendants require consumers who accept the "risk-free" trials to

9 provide their credit or debit card billing information, purportedly to pay nominal

10 shipping and handling fees to receive the advertised products. However, 10 days

11 after receiving consumers' billing information, Defendants charge consumers the

12 full costs of the products included in the "risk-free" trials, imposing charges of up

13 to $97.88 onto consumers' credit or debit cards. Defendants refuse to provide

14 refunds for product returns unless consumers meet onerous conditions that are not

15 adequately disclosed. Additionally, after charging consumers, Defendants enroll

16 consumers in a negative option continuity plan, in which Defendants ship

17 additional products each month and charge consumers' credit or debit cards the

18 full costs of the products, usually $97.88 per month. Defendants' scheme has

19 deceived consumers nationwide out of millions of dollars.

20

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

3.     As explained more fully below, Defendants operate a common enterprise through which they: (a) fail to disclose adequately material terms of their sales offer, including the offer's costs and negative option features; (b) falsely represent that consumers can obtain their products on a "trial" or "risk-free" trial basis for only a nominal shipping and handling fee; (c) fail to obtain a consumer's informed consent to the material terms, including the negative option feature, of the transaction before charging the consumer; (d) falsely represent their business is accredited by the Better Business Bureau with an "A-" rating; (e) fail to provide consumers a simple method of cancelling their negative option continuity plan, and (f) debit consumers' bank accounts on a recurring basis without obtaining written authorization from the consumer or providing a written copy of the authorization to the consumer.

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345 and 15 U.S.C. §§ 45(a), 53(b), and 57b.

5.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 15 U.S.C. § 53(b).

6.     Assignment to the Western Division is proper because Defendants' primary place of business is in Los Angeles County.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

**PLAINTIFF**

7.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. Additionally, the FTC enforces ROSCA, 15 U.S.C. §§ 8401-05, which prohibits certain methods of negative option marketing on the Internet, as well as EFTA, 15 U.S.C. § 1693 *et seq*., which regulates the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.

8.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, ROSCA, and EFTA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 8404, and 1693o(c).

**DEFENDANTS**

9.      Defendant **BunZai Media Group, Inc.**, also doing business as AuraVie, Miracle Face Kit, and Attitude Cosmetics, is or was a California corporation with its principal place of business at 7900 Gloria Avenue, Van Nuys, California 91406 ("the Van Nuys Office"). BunZai Media Group, Inc. also uses a mailbox with the address of 16161 Ventura Boulevard, #378, Encino, California

91436 ("Encino Mailbox A"). At times material to this Complaint, BunZai Media Group, Inc. has advertised, marketed, distributed, or sold skincare products, or provided customer service for such products, to consumers throughout the United States. BunZai Media Group, Inc. transacts or has transacted business in this district and throughout the United States.

10.    Defendant **Pinnacle Logistics, Inc.** is or was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. at the Van Nuys Office. Pinnacle Logistics, Inc. has or had a secondary address of 6925 Canby Avenue, Suite 105, Reseda, California 91335 ("the Reseda Office"). At times material to this Complaint, Pinnacle Logistics, Inc., has advertised, marketed, distributed, or sold the skincare products at issue in this case, or provided customer service for such products, to consumers throughout the United States. Pinnacle Logistics, Inc. transacts or has transacted business in this district and throughout the United States.

11.    Defendant **DSA Holdings, Inc.** is or was a California corporation with its principal place of business at the same location as Pinnacle Logistics, Inc., at the Van Nuys Office, and a secondary address of 8335 Winnetka Avenue, #118, Winnetka, California 91306. At times material to this Complaint, DSA Holdings, Inc., has advertised, marketed, distributed, or sold the skincare products at issue in

this case to consumers throughout the United States. DSA Holdings, Inc. transacts or has transacted business in this district and throughout the United States.

12.     Defendant **Lifestyle Media Brands, Inc.** is or was a California corporation with its principal place of business at the Van Nuys Office and a secondary address of 8335 Winnetka Avenue, #112, Winnetka, California 91306. At times material to this Complaint, Lifestyle Media Brands, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. Lifestyle Media Brands, Inc. transacts or has transacted business in this district and throughout the United States.

13.     Defendant **Agoa Holdings, Inc.** is or was a California corporation with its principal place of business at the Van Nuys Office. At times material to this Complaint, Agoa Holdings, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. Agoa Holdings, Inc. transacts or has transacted business in this district and throughout the United States.

14.     Defendant **Zen Mobile Media, Inc.** is or was a California corporation with its principal place of business at the Van Nuys Office and a secondary address of 4335 Van Nuys Boulevard #167, Sherman Oaks, California 91403. Zen Mobile Media, Inc. also uses a commercial mail receiving agent mailbox, 16830 Ventura Boulevard, #360, Encino, California 91436 ("Encino

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

Mailbox B"). At times material to this Complaint, Zen Mobile Media, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. Zen Mobile Media, Inc. transacts or has transacted business in this district and throughout the United States.

15.   Defendant **Safehaven Ventures, Inc.** is or was a California corporation with its principal place of business at the Van Nuys Office and a secondary address of 548 South Spring Street, #406, Los Angeles, California 90013. Safehaven Ventures, Inc. also uses Encino Mailbox B. At times material to this Complaint, Safehaven Ventures, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States.  Safehaven Ventures, Inc. transacts or has transacted business in this district and throughout the United States.

16.   Defendant **Heritage Alliance Group, Inc.** also doing business as AuraVie Distribution, is or was a California corporation with its principal place of business at the Van Nuys Office and a secondary address of 21113 Osborne Street, Canoga Park, California 91304. At times material to this Complaint, Heritage Alliance Group, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. Heritage Alliance Group, Inc. transacts or has transacted business in this district and throughout the United States.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

17.     Defendant **AMD Financial Network, Inc.** is or was a California corporation with its principal place of business at the Van Nuys Office and a secondary address of 9820 Owensmouth Avenue, #15, Chatsworth, California 91311. At times material to this Complaint, AMD Financial Network, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. AMD Financial Network, Inc. transacts or has transacted business in this district and throughout the United States.

18.     Defendant **SBM Management, Inc.** is or was a California corporation with its principal place of business at 655 North Central Avenue, Suite 1700, Glendale, California 91203, and its secondary address is or was the Reseda Office. SBM Management, Inc. also uses or used Encino Mailbox B. At times material to this Complaint, SBM Management, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. SBM Management, Inc. transacts or has transacted business in this district and throughout the United States.

19.     Defendant **Media Urge, Inc.** is or was a California corporation with its principal place of business at 18757 Burbank Boulevard, Suite 205, Tarzana, California 91436. At times material to this Complaint, Media Urge, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

to consumers throughout the United States. Media Urge, Inc. transacts or has transacted business in this district and throughout the United States.

20.     Defendant **Adageo, LLC** is or was a California limited liability company with Encino Mailbox A listed as its registered place of business. Adageo, LLC also uses Encino Mailbox B. At times material to this Complaint, Adageo, LLC has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. Adageo, LLC transacts or has transacted business in this district and throughout the United States.

21.     Defendant **CalEnergy, Inc.** is or was a California corporation with its principal place of business at 63420 Cordova Drive, Calabasas, CA 91302. At times material to this Complaint, CalEnergy, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. CalEnergy, Inc. transacts or has transacted business in this district and throughout the United States.

22.     Defendant **Kai Media, Inc.** is or was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. at the Van Nuys Office. Its secondary place of business is the Reseda Office. Kai Media, Inc. also uses Encino Mailbox B. At times material to this Complaint, Kai Media, Inc. has advertised, marketed, distributed, or sold the skincare products at

issue in this case to consumers throughout the United States. Kai Media, Inc. transacts or has transacted business in this district and throughout the United States.

23. Defendant **Insight Media, Inc.** is or was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. at the Van Nuys Office. Its secondary place of business is the Reseda Office. Insight Media, Inc. also uses Encino Mailbox B. At times material to this Complaint, Insight Media, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. Insight Media, Inc. transacts or has transacted business in this district and throughout the United States.

24. Defendant **Focus Media Solutions, Inc.** is or was a California corporation with its principal place of business at 6850 Canby, Suite #103, Reseda, California 91335, which is in the same complex as the Reseda Office. Its secondary place of business is the Reseda Office. At times material to this Complaint, Focus Media Solutions, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. Focus Media Solutions, Inc. transacts or has transacted business in this district and throughout the United States.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

25.     Defendant **Secured Commerce, LLC** is or was a California limited liability company with its principal place of business at the Reseda Office. Secured Commerce created the websites used for deceptively marketing and selling skincare products, including the landing pages that contained the bogus "risk free trial" offers. At times material to this Complaint, as part of the common enterprise, Secured Commerce LLC has participated in efforts to advertise, market, distribute, or sell the skincare products at issue in this case to consumers throughout the United States. Secured Commerce, LLC transacts or has transacted business in this district and throughout the United States.

26.     Defendant **Secured Merchants, LLC** is or was a California limited liability company with its principal place of business at the Reseda Office. Secured Merchants, LLC provided other members of the common enterprise the service of contesting the large number of credit card chargebacks requested by consumers. This service enabled many of the corporations and shell companies to maintain their payment processing accounts and to continue to defraud consumers. The company also managed the automated answering service for handling AuraVie customer calls. At times material to this Complaint, as part of the common enterprise, Secured Merchants, LLC has participated in efforts to advertise, market, distribute, or sell the skincare products at issue in this case to

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

consumers throughout the United States. Secured Merchants, LLC transacts or has transacted business in this district and throughout the United States.

27.     Defendant **USM Products, Inc.** is or was a California corporation with its principal place of business at the Reseda Office. USM Products, Inc. made bulk purchases of products and containers for the common enterprise.  At times material to this Complaint, as part of the common enterprise, USM Products, Inc. has participated in efforts to advertise, market, distribute, or sell the skincare products at issue in this case to consumers throughout the United States. USM Products, Inc. transacts or has transacted business in this district and throughout the United States.

28.     Defendant **Merchant Leverage Group, Inc.** is or was a California corporation with its principal place of business at the Reseda Office. It has a secondary address of  200 North Maryland Ave., #300, Glendale, CA 91502. Merchant Leverage Group, Inc. provided merchant processing services to the common enterprise. At times material to this Complaint, as part of the common enterprise, Merchant Leverage Group, Inc. has participated in efforts to advertise, market, distribute, or sell the skincare products at issue in this case to consumers throughout the United States. Merchant Leverage Group, Inc. transacts or has transacted business in this district and throughout the United States.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

29.     Defendant **DMA Media Holdings, Inc.** is or was a California corporation with its principal place of business at the Van Nuys Office. Its secondary place of business is or was the Reseda Office. DMA Media Holdings, Inc. processed payments for the negative-option skincare subscriptions. At times material to this Complaint, as part of the common enterprise, DMA Media Holdings, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. DMA Media Holdings, Inc. transacts or has transacted business in this district and throughout the United States.

30.     Defendant **Shalita Holdings, Inc.** is or was a California corporation with its principal place of business at the Van Nuys Office. Its secondary place of business is or was the Reseda Office. Shalita Holdings, Inc. processed payments for the negative-option skincare subscriptions. At times material to this Complaint, as part of the common enterprise, Shalita Holdings, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. Shalita Holdings, Inc. transacts or has transacted business in this district and throughout the United States.

31.     Defendant **All Star Beauty Products, Inc.** is or was a California corporation with its principal place of business at the Van Nuys Office. Its secondary place of business is or was the Reseda Office. All Star Beauty Products,

Inc. processed payments for the negative-option skincare subscriptions. At times material to this Complaint, as part of the common enterprise, All Star Beauty Products, Inc. has advertised, marketed, distributed, or sold the skincare products at issue in this case to consumers throughout the United States. All Star Beauty Products, Inc. transacts or has transacted business in this district and throughout the United States.

32.     Defendant **Alon Nottea** is or was a Chief Executive Officer ("CEO") of BunZai Media Group, Inc., a manager of Pinnacle Logistics, Inc., a consultant for Media Urge, Inc., and an owner of Adageo, LLC. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts or practices set forth in this Complaint. By and through the corporate defendants, he has harmed consumers nationwide with his unfair and deceptive business practices. Defendant Alon Nottea resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

33.     Defendant **Motti Nottea** was also a CEO of BunZai Media Group, Inc. and he held a merchant account in his name for BunZai Media Group, Inc.'s use. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

the acts or practices set forth in this Complaint. By and through the corporate defendants, he has harmed consumers nationwide with his unfair and deceptive business practices. Defendant Motti Nottea resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

34.     Defendant **Doron Nottea** is or has been a manager at BunZai Media Group, Inc. and Pinnacle Logistics, Inc. At times material to this Complaint, he has formulated, directed, controlled, had the authority to control, or participated in the acts or practices set forth in this Complaint. By and through the corporate defendants, he has harmed consumers nationwide with his unfair and deceptive business practices. Defendant Doron Nottea resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

35.     Defendant **Oz Mizrahi** is or has been a CEO of Defendant Pinnacle Logistics, Inc. and a CEO of Media Urge, Inc. At times material to this Complaint, he has formulated, directed, controlled, had the authority to control, or participated in the acts or practices set forth in this Complaint. Defendant Mizrahi was integrally involved in establishing Pinnacle Logistics, Inc., its business practices and operations, and in transitioning Defendant BunZai Media Group, Inc.'s business to Defendant Pinnacle Logistics, Inc. By and through the corporate

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

defendants, he has harmed consumers nationwide with his unfair and deceptive

business practices. Defendant Oz Mizrahi resides in this district and, in connection

with the matters alleged herein, transacts or has transacted business in this district

and throughout the United States.

36.   Defendant **Igor Latsanovski** is or was an owner of BunZai Media

Group, Inc. and CEO of Zen Mobile Media Group, Inc. At times material to this

Complaint, he has formulated, directed, controlled, had the authority to control, or

participated in the acts or practices set forth in this Complaint. By and through the

corporate defendants, he has harmed consumers nationwide with his unfair and

deceptive business practices. Defendant Igor Latsanovski resides in this district

and, in connection with the matters alleged herein, transacts or has transacted

business in this district and throughout the United States.

37.   Defendant **Roi Reuveni** is or has been a manager at BunZai Media

Group, Inc. and Pinnacle Logistics, Inc. He was a manager of the customer service

and chargebacks departments at Defendant Pinnacle Logistics, Inc. Further, he is

owner or CEO of Agoa Holdings, Inc. At times material to this Complaint, he has

formulated, directed, controlled, had the authority to control, or participated in the

acts or practices set forth in this Complaint. By and through the corporate

defendants, he has harmed consumers nationwide with his unfair and deceptive

business practices. Defendant Roi Reuveni resides in this district and, in

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

1  connection with the matters alleged herein, transacts or has transacted business in

2  this district and throughout the United States.

3      38.    Defendant **Khristopher Bond**, also known as Ray Ibbot, is or has

4  been an owner of BunZai Media Group, Inc. At times material to this Complaint,

5  he has formulated, directed, controlled, had the authority to control, or

6  participated in the acts or practices set forth in this Complaint. Defendant Bond

7  was integrally involved in the day-to-day operations of BunZai Media Group, Inc.

8  and, among other things, trained customer-service representatives on responding

9  to consumer complaints. By and through the corporate defendants, he has harmed

10  consumers nationwide with his unfair and deceptive business practices. Bond

11  resides in this district and, in connection with the matters alleged herein, transacts

12  or has transacted business in this district and throughout the United States.

13      39.    Defendant **Alan Argaman** is or was an owner and Managing

14  Director of Defendant Secured Commerce LLC, which designed, created, and

15  helped manage the websites or landing pages used for deceptively marketing and

16  selling skincare products. He is also an owner of Secured Merchants, LLC, which

17  assisted Defendants in contesting consumer chargebacks for unauthorized charges.

18  At times material to this Complaint, he has formulated, directed, controlled, had

19  the authority to control, or participated in the acts or practices set forth in this

20  Complaint. By and through the corporate defendants, he has harmed consumers

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

nationwide with his unfair and deceptive business practices. Defendant Alan Argaman resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

40.     Defendant **Paul Medina** is or was the Executive President or Vice President of Defendant Media Urge, Inc. He was also a manager of the call center at Defendant Pinnacle Logistics, Inc. and is or was a manager at Defendant Focus Media Solutions, Inc. At times material to this Complaint, he has formulated, directed, controlled, had the authority to control, or participated in the acts or practices set forth in this Complaint. By and through the corporate defendants, he has harmed consumers nationwide with his unfair and deceptive business practices. Defendant Paul Medina resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

41.     Relief Defendant **Chargeback Armor, Inc.** is a California corporation with its principal place of business at the Reseda Office. Chargeback Armor, Inc. is or has been controlled or managed by Defendants Alon Nottea, Doron Nottea, and Roi Reuveni. At times material to this Complaint, Chargeback Armor, Inc. has received funds and other property that can be traced directly to Defendants' unlawful acts or practices alleged below. Relief Defendant

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

Chargeback Armor, Inc. has no legitimate claim to these funds. At times material to this complaint, Chargeback Armor Inc. transacts or has transacted business in this district and throughout the United States.

**COMMON ENTERPRISE**

42.     Defendants BunZai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, Inc.; CalEnergy, Inc.; Kai Media, Inc.; Insight Media, Inc.; Focus Media Solutions, Inc.; Secured Commerce, LLC; Secured Merchants, LLC; USM Products, Inc.; Merchant Leverage Group, Inc.; DMA Media Holdings, Inc.; Shalita Holdings, Inc.; All Star Beauty Products, Inc. (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unlawful acts and practices alleged herein. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations. Further, the companies commingle funds, use the same sales techniques, and have a centralized recordkeeping system. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

43.     Defendants Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi, Igor Latsanovski, Roi Reuveni, Khristopher Bond, also known as Ray Ibbot, Alan Argaman, and Paul Medina (collectively, "Individual Defendants") have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

44.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

45.     Defendants have advertised, marketed, distributed, and sold skincare products online from multiple Internet websites, including auraviefreetrial.com, auravietrialkit.com, and mymiraclekit.com, since at least 2010. Defendants deceptively offer free trials of their products under a variety of brand names including "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit" (collectively, "AuraVie").

46.     Defendants' online offers fail to disclose adequately and materially misrepresent the terms of their trial offers.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

*Defendants' Risk-Free Trial Offers*

47.     Defendants contract with a network of third parties, known as "affiliate marketers," to direct consumers to Defendants' websites. The affiliate marketers use a variety of Internet advertising techniques, including banner and pop-up advertisements, sponsored search terms, and offers to drive consumer traffic to Defendants' websites. Defendants provide affiliate marketers with advertisements describing the offers for the affiliate marketers to use. Some affiliate marketers also create their own advertising.

48.     Defendants also purchase advertising space on third-party websites such as Amazon.com, Huffingtonpost.com, and Lowes.com, and offer consumers a "risk-free" trial or "trial order" of Defendants' skincare products. After consumers click on these advertisements and are directed to Defendants' websites, Defendants lure consumers into providing their credit or debit card information by representing that consumers need to pay only a nominal shipping and handling charge, typically $4.95 or less, to receive a "risk-free" trial or a "trial order" of their products.

49.     Defendants' websites prominently claim that their offer is merely a "trial":

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

1
2
3
4
5
6
7
8
9



(screen capture from http://auraviefreetrial.com, last visited August 28, 2014)

10
11
12
13
14
15
16
17
18
19
20

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

Defendants promote their offer as a "risk-free" trial and, on most sites, claim that customer satisfaction is "100% guaranteed":



(screen capture from http://mymiraclekit.com, last visited April 13, 2015)

50.    Defendants also use deceptive pop-up advertisements that discourage consumers from leaving Defendants' websites without accepting a trial offer. When consumers attempt to leave the websites, a text box appears that offers to ship the trial offer at an even lower shipping price. These pop-up advertisements contain false representations that AuraVie is accredited by the Better Business Bureau ("BBB") with an "A-" rating:

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF



(screen capture from http://auravietrialkit.com, last visited April 13, 2015)

In fact, AuraVie is not accredited by the BBB and has an F rating.

### *Defendants' Hidden Costs, Continuity Plan Features, and Return Policy*

51.     Defendants' marketing practices are materially deceptive and employ tactics including hidden costs, signing up consumers for negative option continuity plans without their consent, and undisclosed and onerous return policies. In their advertisements and sales offers, Defendants fail to disclose adequately that they will charge consumers' credit or debit accounts for the trial product, typically as much as $97.88, after a 10-day period.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

52.     Defendants also fail to disclose adequately that consumers who accept the trial offer will be enrolled into a continuity program. Under the continuity program, Defendants send consumers additional shipments of Defendants' skincare product each month and charge consumers' credit or debit cards the full cost of each product shipped until consumers affirmatively cancel their membership in the continuity program.

53.     Consumers are typically unaware that they have been enrolled in this continuity program until they discover the charges—usually $97.88 a month—on their credit or debit card statements. And often, by that time, it is too late for consumers to return the product for a refund.

54.     Further, although they promote their offer as "risk-free" with "100% satisfaction guaranteed," Defendants fail to disclose, or disclose adequately, material terms of their return policy. Defendants fail to disclose adequately that, if the consumer opens the product, the product must be returned and received by Defendants within 10 days of placing the order to avoid a $97.88 fee. Defendants also fail to disclose adequately that after 10 days, only unopened products may be returned for a refund and that no refunds will be provided for any product returned after 30 days.

55.     In fact, because consumers often do not receive their "risk-free" trial until after 10 days have elapsed (or nearly elapsed), many consumers cannot

return the product in time to avoid the $97.88 fee. Moreover, Defendants fail to disclose adequately to consumers that they often assess a "restocking" fee of up to $15 for returning the products. Accordingly, consumers who accept Defendants' trial offer are likely to incur unexpected charges.

56.     Defendants' websites do not contain a disclosure concerning the initial charges for the product, continuity program, or return policies until the "final step" of the Defendants' ordering page. Many consumers report never seeing such a disclosure, even when they specifically looked for such a disclosure. As the screen capture below illustrates, the disclosure is in significantly smaller print and is obscured by a variety of graphics and text:

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14



15 (screen capture from http://auraviefreetrial.com, last visited April 13, 2015; not to

16 scale)

17 In contrast, Defendants represent—in bold, red font at the top-center of the page—

18 that their trial shipment costs "$0.00."

19

20

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

57.     Even if the disclosure were prominently displayed, it fails to mention many material terms and conditions of Defendants' offer. Defendants' disclosure states:

> We take great pride in the quality of our products & are confident that you will achieve phenomenal results. By submitting your order, you agree to both the terms of this offer (click link below) & to pay $4.95 S&H for your 10 day trial. If you find this product is not for you, cancel within the 10 day trial period to avoid being billed. After your 10 day trial expires, you will be billed $97.88 for your trial product & enrolled in our monthly autoship program for the same discounted price. Cancel anytime by calling 866.216.9336. Returned shipments are at customer's expense. This trial is limited to 1 offer per household.

58.     Defendants' disclosure paragraph fails to disclose: (a) that the 10-day trial period begins on the day that the product is ordered; (b) that, to avoid charges, the consumer must also return the product to Defendants before the end of the trial period; (c) that consumers may not return the product for a refund after 10 days if it has been opened; (d) that consumers may not return the product for a refund after 30 days, even if it has not been opened; and (e) that a restocking fee, usually $15, may be charged when a product is returned.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

59.     Most of the material terms and conditions of Defendants' offer can only be found in a separate, multi-page terms and conditions webpage that is accessible by hyperlink. On many of Defendants' affiliate sites, this hyperlink can only be found by scrolling to the bottom of the website and clicking on a hyperlink labeled "T&C":



(screen capture from auravietrialkit.com, last visited April 13, 2015 )

60.     Defendants also send consumers who sign up for a trial offer a confirmation email that reinforces the false impression that they will receive a free shipment of Defendants' skincare product. These emails show no charges for the "risk-free" trial other than the nominal shipping and handling fees.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

61.     Further, Defendants' confirmation emails do not disclose that consumers will be charged the full cost of the product, usually $97.88, after 10 days unless the consumer cancels the order and returns the product during that time.  Defendants' confirmation emails do not disclose that the consumer has been enrolled into a continuity program that will result in future shipments of product and a monthly charge of $97.88 on their credit or debit cards. These emails also fail to state when the charge will be imposed or how consumers can avoid the charge. Nor do the emails disclose that unopened products may be returned for a refund only within 30 days of ordering.

### *Defendants' Cancellation and Refund Practices*

62.     After consumers learn that Defendants have charged their accounts and signed them up for a continuity plan, they often have significant difficulty receiving a refund and cancelling the continuity plan.

63.     Many consumers have difficulty contacting Defendants' customer service representatives, despite calling Defendants' toll-free number numerous times. Even when consumers speak with a representative, consumers often continue to receive shipments and unauthorized charges after cancelling the continuity plan. Still others report receiving multiple charges from Defendants without receiving products. As a result, consumers continue to incur unwanted and unauthorized charges.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

64.     When consumers call Defendants to complain about the unauthorized charges, Defendants often tell consumers that, while the continuity plan will be cancelled, their money will not be refunded. In some instances, Defendants inform consumers they will offer only a partial refund. Other times, Defendants condition a partial refund upon the consumer's promise or signed statement that they will not complain to any government authority or to the Better Business Bureau.

65.     Many of Defendants' charges for their continuity program result in chargeback requests by consumers. In response, Defendants provide false documents to payment processing companies and exaggerate the measures they take to communicate the terms of their offer to consumers.

66.     Further, Defendants often do not honor return policies, even when consumers satisfy them. For example, Defendants often tell consumers that they cannot obtain a refund on any product returned even when the product remains unopened and the 30-day period has not yet elapsed, contrary to Defendants' terms and conditions. Some consumers report being refused a refund by Defendants despite sending the product back within the permissible time period, with Defendants' customer service representative stating that Defendants never received the return shipment.

67.     In other instances, consumers receive refunds from Defendants only after they have complained to their credit card companies, state regulatory

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

authorities, or the Better Business Bureau. Even in those instances, however, Defendants have not always issued full refunds.

## VIOLATIONS OF THE FTC ACT

68.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

69.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## Count I.

## Failure to Disclose Adequately Material Terms of Offer

70.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skincare products, including but not limited to AuraVie products, Defendants have represented, directly or indirectly, expressly or by implication, that consumers who provide their credit or debit card billing information will be charged only a nominal shipping and handling fee to receive a trial shipment of Defendants' skincare products and, that their satisfaction is guaranteed.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

71.     In numerous instances in which Defendants have made the representation set forth in Paragraph 70 of this Complaint, Defendants have failed to disclose, or disclose adequately to consumers, material terms and conditions of their offer, including:

(a)     That Defendants will use consumers' credit or debit card information to charge consumers the full costs of the trial products, usually $97.88, upon the expiration of a limited trial period;

(b)     The dates on which the trial period begins and ends;

(c)     That Defendants will automatically enroll consumers in a negative option continuity plan with additional charges;

(d)     The cost of the continuity plan, and the frequency and duration of the recurring charges;

(e)     The means consumers must use to cancel the negative option program to avoid additional charges; and

(f)     Requirements of their refund policies.

72.     Defendants' failure to disclose, or to disclose adequately, the material information described in Paragraph 71, in light of the representation described in Paragraph 70, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

**Count II.**

**False "Risk-Free" Trial Claim**

73.    Through the means described in Paragraph 45-67, Defendants have represented, directly or indirectly, that consumers can try AuraVie "risk-free."

74.    The representation set forth in Paragraph 73 is false. Consumers could not try Defendants' products "risk-free," because Defendants charged consumers the full cost if the "risk-free" product was opened and not returned within 10 days of placing the order, often assessed a restocking fee of up to $15, and consumers had to bear the additional expense of returning the product to the Defendants. In addition, Defendants failed, in numerous instances, to refund consumers' charges assessed for the trial order, despite consumers having returned the product according to the offer's terms and conditions.

75.    Therefore, the making of the representation as set forth in Paragraph 73 of this Complaint constitutes a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count III.**

**False Better Business Bureau Accreditation and Rating Claims**

76.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of skincare products, Defendants have

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

represented, directly or indirectly, expressly or by implication, that Defendants are accredited by and have a rating of "A-" with the Better Business Bureau.

77.     In truth and in fact, Defendants are not accredited by and do not have a rating of "A-" with the Better Business Bureau. Defendants' rating with the Better Business Bureau is an "F."

78.     Therefore, Defendants' representation as set forth in Paragraph 76 of this Complaint is false or misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count IV.

## Unfairly Charging Consumers Without Authorization

79.     In numerous instances, Defendants have caused charges to be submitted for payment to the credit and debit cards of consumers without the express informed consent of consumers.

80.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

81.     Therefore, Defendants' practices as described in Paragraph 79 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

**VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT**

82.     In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-05, which became effective on December 29, 2010. Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business." Section 2 of ROSCA, 15 U.S.C. § 8401.

83.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(u), unless the seller: (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the charge; and (c) provides a simple mechanism to stop recurring charges. *See* 15 U.S.C. § 8403.

84.     The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(u).

85.     As described above, Defendants advertise and sell Defendants' skincare products to consumers through a negative option feature as defined by the TSR. *See* 16 C.F.R. § 310.2(u).

86.     Under Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

## Count V.

## Violation of ROSCA – Auto-Renewal Continuity Plan

87.     In numerous instances, in connection with the selling of skincare products on the Internet through a negative option feature, Defendants have failed to:

    (a)    clearly and conspicuously disclose all material terms of the negative option feature of the skincare products transaction before obtaining the consumer's billing information;

    (b)    obtain the consumer's express informed consent to the negative option feature before charging the consumer's credit card, debit card, bank account,

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

1    or other financial account for the transaction;

2    and/or

3    (c)    provide simple mechanisms for a consumer to

4    stop recurring charges for skincare products to the

5    consumer's credit card, debit card, bank account,

6    or other financial account.

7    88.    Defendants' practices as set forth in Paragraph 87 are a violation of

8    Section 4 of ROSCA, 15 U.S.C. § 8403, and are treated as if they are a violation

9    of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, 15

10   U.S.C. § 8404(a).

11   **Violations of the Electronic Fund Transfer Act and Regulation E**

12   89.    Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), provides that a

13   "preauthorized" electronic fund transfer from a consumer's account may be

14   "authorized by the consumer only in writing, and a copy of such authorization

15   shall be provided to the consumer when made."

16   90.    Section 903(10) of EFTA, 15 U.S.C. § 1693a(10), provides that

17   the term "preauthorized electronic fund transfer" means "an electronic fund

18   transfer authorized in advance to recur at substantially regular intervals."

19   91.    Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides

20

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

92.     Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." ¶ 10(b), cmt 5. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." ¶ 10(b), cmt 6.

## Count VI.

## Unauthorized Debiting from Consumers' Accounts

93.     In numerous instances, Defendants debit consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts, thereby violating Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

94.     Further, in numerous instances, Defendants debit consumers' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by the consumer for preauthorized electronic fund transfers from the consumer's account, thereby violating Section 907(a) of

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

95.     Under Section 917 of EFTA, 15 U.S.C. § 1693o(c), a violation of EFTA and Regulation E constitutes a violation of the FTC Act.

96.     Accordingly, by engaging in violations of EFTA and Regulation E as alleged in Paragraphs 93 and 94 of this Complaint, Defendants have engaged in violations of the FTC Act. 15 U.S.C. § 1693o(c).

## Count VII.

## Relief Defendant

97.     Relief Defendant, Chargeback Armor, Inc. has received, directly or indirectly, funds and other assets from Defendants that are traceable to funds obtained from Defendants' customers through the unlawful acts or practices described herein.

98.     Relief Defendant is not a bona fide purchaser with legal and equitable title to Defendants' customers' funds or other assets, and Relief Defendant will be unjustly enriched if it is not required to disgorge the funds or the value of the benefit it received as a result of Defendants' unlawful acts or practices.

99.     By reason of the foregoing, Relief Defendant holds funds and assets in constructive trust for the benefit of Defendants' customers.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

**CONSUMER INJURY**

100.   Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, ROSCA, and EFTA. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

**THIS COURT'S AUTHORITY TO GRANT RELIEF**

101.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

102.   Section 19 of the FTC Act, 15 U.S.C. § 57b, Section 5 of ROSCA, 15 U.S.C. § 8404, and Section 917(c) of EFTA, 15 U.S.C. § 16930(c), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA, and

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

EFTA, including the rescission or reformation of contracts and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b), 57b, Section 5 of ROSCA, 15 US.C. § 8404, Section 917(c) of EFTA, 15 U.S.C. § 1693o(c), and the Court's own equitable powers, requests that the Court:

    A.    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to temporary and preliminary injunctions, an order freezing assets, immediate access, and appointment of a receiver;

    B.    Enter a permanent injunction to prevent future violations of the FTC Act, ROSCA, and EFTA by Defendants;

    C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA, and EFTA, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

D.     Enter an order requiring Relief Defendant to disgorge all funds and assets, or the value of the benefit it received from the funds and assets, which are traceable to Defendants' unlawful acts or practices; and

E.     Award Plaintiff the cost of bringing this action, as well as such other additional relief the Court determines to be just and proper.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

1   Respectfully submitted,

2                                           JONATHAN E. NUECHTERLEIN
                                            General Counsel

3                                           DAMA J. BROWN
                                            Regional Director

4

5   Dated: October 9, 2015                  __/s/ Reid Tepfer_____
                                            REID TEPFER,
6                                           Texas Bar No. 24079444
                                            LUIS GALLEGOS
7                                           Oklahoma Bar No. 19098
                                            Federal Trade Commission
8                                           1999 Bryan Street, Suite 2150
                                            Dallas, Texas 75201
9                                           (214) 979-9395 (Tepfer)
                                            (214) 979-9383 (Gallegos)
10                                          (214) 953-3079 (fax)
                                            rtepfer@ftc.gov; lgallegos@ftc.gov
11
                                            RAYMOND MCKOWN
12                                          California Bar No. 150975
                                            10877 Wilshire Boulevard, Suite 700
13                                          Los Angeles, California 90024
                                            (310) 824-4325(voice)
14                                          (310) 824-4380 (fax)
                                            rmckown@ftc.gov
15

16

17

18

19

20

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 9, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd Suite 2250
Los Angeles, CA 90036
nameri@agmblaw.com
*Local counsel for Receiver*

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi*

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

1

2   Robert M. Ungar
    Crosswind Law
3   14724 Ventura Blvd Penthouse
    Sherman Oaks, CA 91403
4   rmu@crosswindlaw.com
    *Counsel for Alon Nottea and*
    *Roi Rueveni*

5

6   Robert Esensten
    Esensten Law
7   12100 Wilshire Blvd., Suite 1660
    Los Angeles, CA 90025
8   resensten@esenstenlaw.com
    *Counsel for Doron Nottea and*
    *Motti Nottea*

9

10  Marc S. Harris
    Scheper Kim & Harris, LLP
11  601 W. Fifth Street, 12th Floor
    Los Angeles, CA 90071
12  mharris@scheperkim.com
    *Counsel for Igor Latsanovski and*
    *CalEnergy, Inc.f*

13

14  Annah Kim
    Scheper Kim & Harris, LLP
15  601 W. Fifth Street, 12th Floor
    Los Angeles, CA 90071
16  akim@scheperkim.com
    *Counsel for Igor Latsanovski and*
    *CalEnergy, Inc.*

17

18

19

20

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

1  Charlene Cantrell Koonce
   Receiver
2  Scheef & Stone
   500 N. Akard, Suite 2700
3  Dallas, Texas 75201
   charlene.koonce@solidcounsel.com
4  *Receiver*

5  Kelly M. Crawford
   Scheef and Stone
6  500 N. Akard, Suite 2700
   Dallas, Texas 75201
7  kelly.crawford@solidcounsel.com
   *Counsel to Receiver*

8
   Sagar Parikh
9  Beverly Hills Law Corp. PC
   433 N. Camden Drive, 6th Floor
10 Beverly Hills, CA 90210
   SP@BeverlyHillsLawCorp.com
11 *Attorney for Secured Merchants LLC*
   *and Chargeback Armor, Inc.*

12
                                         /S/ REID TEPFER
13                                         REID TEPFER

14

15

16

17

18

19

20

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF