**EXHIBIT A**

**From:** charlene.koonce@solidcounsel.com
**Sent:** Tuesday, October 06, 2015 1:52 PM
**To:** rmu@ungarlaw.com
**Cc:** rtepfer@ftc.gov; kelly.crawford@solidcounsel.com
**Subject:** RE: FTC v BMG

Robert - my response to your inquiries regarding photos of your clients and their families is below, again in purple.


**From:** Charlene Koonce
**Sent:** Monday, October 05, 2015 6:05 PM
**To:** 'Robert Ungar'
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov); Kelly Crawford
**Subject:** RE: FTC v BMG

Our chains are becoming colorful. Additional responses in purple below.

**From:** Robert Ungar [mailto:rmu@ungarlaw.com]
**Sent:** Monday, October 05, 2015 1:59 PM
**To:** Kelly Crawford
**Cc:** Charlene Koonce
**Subject:** FTC v BMG

Good morning,

My comments:


(1) The FTC has identified hard drives from all seized computers as containing material evidence in this lawsuit. If copies of those hard drives have been made and are available to the defendants, then there is no need to make yet another copy from the original hard drives. We need to know who, what, where, when, and how much is the cost to obtain copies. My proposal would be that I make the original computers available and you all hire your own IT company, at whatever they charge, to make those copies for you. Or, you can hire Elluma, which generally charges about $400 per hard drive, including the time to copy it. [See comment below] I understood from the billing records that "Elluma Discovery" made copies of the seized computer hard drives and has those copies in its possession, as well as having provided and billed for copies to your office. I do not have copies of these drives – I have the originals. The FTC has copies. If you believe a billing record for Elluma evidences copies were made on my behalf, please identify the date of the billing reference and I will check to see what is causing the confusion. [Doc#161-10 pg. 3, 06/29/2015 "Copied data from 103 and 105 hard drives"; Doc#161-10 pg. 5, 06/24/2015 "Storage of case evidence and work product. Includes storage of backup"- A copy of seized computer hard drives can be provided from this copy] .Copies of data are not copies of hard drives. While I have no objection to providing you with access to all data stored on the computers, the estate should not bear the expense of sorting through my emails to track data that was extracted and sent to me when Defendants can have access to all data stored in the computer. I will provide access to the computers for you to extract whatever you want, or, if a sale is made to Doron, I understand that you are amenable to obtaining whatever information you want from

the computers at that time. What is the Receiver's position on defendant's having access to these documents and evidence?  As offered in July, I am certainly willing to make all of the computers available for you to copy the hard drives or download evidence. [Please provide copies from the copies that are in the Receiver's possession or under the Receiver's control (IT firm works for the Receiver) - Doc#161-10 pg. 3, 06/29/2015 "Copied data from 103 and 105 hard drives"; Doc#161-10 pg. 5, 06/24/2015 "Storage of case evidence and work product. Includes storage of backup"- A copy of seized computer hard drives can be provided from this copy]  This entry refers to storage of data (mostly emails, and most of which were attached to the Initial Report), not hard drives.

(2) We welcome the turnover of all stored personal property to Doron Nottea's business without further charge to the Receivership Estate. This has not been discussed and is not the proposal identified below. A sale of the computers is being discussed.  I believe a similar proposal was made by Doron Nottea's former counsel before the Receiver precipitously moved personal property of relatively insignificant value into storage. Your belief is incorrect. [I'll follow up with Mr. Beitchman concerning the Receiver's precipitous moves] It is unfortunate the Receiver rejected that former proposal which would have saved substantial fees and expenses. The move was necessitated to avoid incurring a rental expense, and further necessary because none of the defendants would specify which entity owned the property located in the Canby suites. [No-the Receiver disputed third party claims of ownership.] No contention regarding third-party ownership was made until the second day of the move – despite a request for identification of ownership made in early August.  And, although Doron's attorney and I are amicably negotiating a sale of the personalty to avoid the expense of this type of dispute, as I have informed Doron's counsel, the evidence I have seen does not support the claim of ownership.  If all of the seized computers (including their hard drives) are turned over to Doron Nottea's business through his counsel then we can work through Doron's counsel concerning the appropriate handling and disposition of data contained on the hard drives and the Receiver need not be involved in handling the data on the hard drives. Good.  I am negotiating a sale of the computers with Doron's counsel and hope we can reach an agreement on price. [Given the Receiver's stated value of $5000 for all personal property in Canby offices, what is there really to negotiate about? Will the Receiver be billing $5000 of fees to negotiate over a few hundred dollars of old electronics equipment?] I am performing my obligation to ensure that value of the property is maximized – and that includes minimizing the expense regarding what happens in the future.  With that in mind, this will be my last communication with you about the sale since none of Alon's entities are involved, to my knowledge, with the offer to purchase.

(3) We have no objection to waiving a hearing regarding turn over of all personal property including computers with hard drives to Doron Nottea's business through his counsel or, the sale of skin cream.  I will inform the court that we agree to having the sale of the skin care approved without a hearing.  There is, however, no proposal for a "turnover of all personal property" to Doron.  I am discussing a sale of the *computers* to Doron's counsel – not other personal property, although some personal property will likely be abandoned to Doron. [I recall Mr. Beitchman previously made that proposal and it was rejected by the Receiver before incurring substantial fees and expenses.] No, the move was already in process when Doron requested abandonment of all computer equipment.  What had not been moved when he identified certain items that could be abandoned, was left in Suite 109.  Again, however, Alon has never identified any property he

sought abandonment of, so you continued pressing regarding this issues is not productive for the estate or for your clients. If personal property, other than seized computers, is "sold" to someone else, what is the Receiver's position on deleting data from the hard drives before transfer, and where will the seized computers be stored pending a ruling on the Receiver's motion and at what cost to the estate? How much in fees for the hearing? If the computers are sold to someone who offers a higher net recovery than Doron, [Please define what this Receiver considers to be a "net recovery". Does it include Receiver's fees and expenses, storage fees, moving expenses, etc.?] Net means "net" in the normal sense and will include my best evaluation of the expenses that would be incurred in a sale. I will make the computers available prior to sale for you and any other defendant to copy hard drives or otherwise down load data, and then wipe the computers before the sale is finalized. I have revised the proposed order to include this requirement and will be submitting the revised proposed order today. I will also inform the court that you agree to waive the hearing regarding sale of the skin cream pursuant to the procedures proposed in the pending motion. I would like clarification from you regarding whether you agree to waive the hearing regarding sale of the computer equipment given my clarification above. [Please send me the proposed revised order for review and approval.] Sent previously.

(4) My clients object to the Receiver's proposed order of priorities: (a) priority of distributions upon dissolution of California business entities is expressly provided for under California law; (b) the Court does not have subject matter jurisdiction to determine the order of priorities for distributions upon dissolution of California business entities; (c) alternatively, (i) secured creditors have top priority; (ii) equitable claims against the receiver for turn over of specific receivership property have priority over all, excepting secured creditors; (iii) employee claims would have priority over a "constructive trust"; and (iv) judgment lien creditors would have priority over a "constructive trust". Thank you for providing your position. Pursuant to the "Cooperation Provision" of the Preliminary Injunction, (¶ XIX), *with respect to Receivership Defendants named by the FTC*, please identify 1) any secured creditors your clients are aware of 2) any equitable claims against the receiver for turnover of specific receivership property; 3) any employee claims; and, 4) any judgment lien creditors. [1/what is the Receiver's position re court authority to order dissolution of CA entities? What is the legal authority giving Receiver right to dissolve CA entities? What is the legal authority for distribution upon dissolution other than as provided under CA law? 2/Clarify the Receiver's position why claimants are limited to Receivership Defendants named by the FTC? 3/What about claims as to the Receivership Estate? What is the legal authority for departing from proper claims administration, e.g. 11 U.S.C. sec. 502? 4/my clients are not aware of any secured creditor claims; my clients have a claim (and have made their claim) for return of estate property, to wit images of themselves, their spouse and children and the cost to recover those images; my clients are not aware of employee claims other than those identified in the Receiver's Statement of Assets and Liabilities; my clients are not aware of judgment lien creditors other than those identified in the Receiver's Statement of Assets and Liabilities. My position on the issues you note above will be addressed in a forthcoming motion seeking authority to dissolve. Are you now representing any of the entities, and will Adageo be moving to set aside its default?

(5) Your office has yet to respond whether images of my clients and their spouses and children will be returned. Frankly, I had expected the Receiver's disclosure to the court of this matter given the resulting conflict of interest. You have yet to provide me with any legal authority (as

opposed to argument) supporting your entitlement to the requested materials. [ California law, e.g. Bus. & Prof. Code §§7520, et. seq.; Civ. Code§§1708, et. seq.; *Noble v. Sears, Roebuck & Co.*, (1973) 33 Cal. App. 3d 654. The claim is set forth in my earlier email. Let me know promptly whether this claim for return of Receivership Estate property is accepted or rejected. Of course, non-estate claims are reserved. The duty of disclosure of conflicts of interest by equity receiver's is axiomatic.]  I will respond to this issue in the next two days.

None of the code citations above provide any support for any claim of impropriety based on the circumstances here.  Similarly, as I'm sure you realize, the *Noble* citation is so factually different as to be meaningless in the context of a federal equity receivership.   No conflict of interest exists here.  Nonetheless, to further alleviate any concerns you may have regarding "images of your clients and their spouses and children" I've  confirmed with Mr. Hester (my paralegal who conducted the surveillance used prior to our initial access entry) that he took no photos of any of the individual defendants, or their family members.   The only photos we used to identify the individuals were public access pages of social media websites.

Robert M. Ungar
rmu@ungarlaw.com
310-405-1884re