## SPREADSHEET – ATTACHMENT B

|  | Rule 30(b)(6) Description of the Categories of Testimony | The FTC's Complaint |
|---|---|---|
| 1. | The factual basis, supporting witness(es) and evidence for each allegation against Daron Nottea contained in the Complaint. | |
| 2. | The factual basis, supporting witness(es) and evidence for each allegation against Motti Nottea contained in the Complaint. | |
| 3. | Any investigations performed by the FTC of the conduct of Doron Nottea leading up to the filing of the Complaint. | |
| 4. | Any investigations performed by the FTC of the conduct of Motti Nottea leading up to the filing of the Complaint. | |
| 5. | Any investigations performed on behalf of the FTC of the conduct of Doran Nottea leading up to the filing of the Complaint. | |
| 6. | Any investigations performed on behalf of the FTC of the conduct of Matti Nottea leading up to the filing of the Complaint. | |
| 7. | The calculation of the amount of consumer harm sought by the FTC in the Complaint against Doron Nottea. | |
| 8. | The calculation of the amount of consumer harm sought by the FTC in the Complaint against Motti Nottea. | |
| 9. | Any damage claims sought by Plaintiff in the Litigation. | |
| 10. | The factual basis, supporting witness(es) and evidence for each allegation against BunZai Media Group, Inc. contained in the Complaint. | |
| 11. | The factual basis, supporting witness(es) and evidence for each allegation against Pinnacle Logistics, Inc. contained in the Complaint. | |
| 12. | The factual basis, supporting witness(es) and evidence for each allegation against Secured Commerce, LLC contained in the Complaint. | |

SPREADSHEET – ATTACHMENT B

| | | |
|---|---|---|
| 13. | The factual basis, supporting witness(es) and evidence for each allegation against Secured Merchants, LLC contained in the Complaint. | |
| 14. | The factual basis, supporting witness(es) and evidence for each allegation against Chargeback Armor, Inc. contained in the Complaint. | |
| 15. | The factual basis, supporting witness(es) and evidence for each allegation against Alon Nottea contained in the Complaint. | |
| 16. | The factual basis, supporting witness(es) and evidence for each allegation against Igor Latsanvski contained in the Complaint. | |
| 17. | The factual basis, supporting witness(es) and evidence for each allegation against Oz Mizrahi contained in the Complaint. | |
| 18. | The factual basis, supporting witness(es) and evidence for each allegation against Roi Reuveni contained in the Complaint. | |
| 19. | The factual basis, supporting witness(es) and evidence for each allegation against Alan Agaman contained in the Complaint. | |
| 20. | The allegations contained within paragraph 2 of the Complaint. | Defendants collectively market skincare products over the Internet using deceptive offers with hidden costs, negative option features, and return policies. Specifically, Defendants offer "risk-free" trials of skincare products to consumers nationwide through online banners, pop-up advertisements, and websites. Defendants require consumers who accept the "risk-free" trials to provide their credit or debit card billing information, purportedly to pay nominal shipping and |

2

|  |  |  |
|---|---|---|
|  |  | handling fees to receive the advertised products. However, 10 days after receiving consumers' billing information, Defendants charge consumers the full costs of the products included in the "risk-free" trials, imposing charges of up to $97.88 onto consumers' credit or debit cards. Defendants refuse to provide refunds for product returns unless consumers meet onerous conditions that are not adequately disclosed. Additionally, after charging consumers, Defendants enroll consumers in a negative option continuity plan, in which Defendants ship additional products each month and charge consumers' credit or debit cards the full costs of the products, usually $97.88 per month. Defendants' scheme has deceived consumers nationwide out of millions of dollars. |
| 21. | The allegations contained within paragraph 3 of the Complaint. | As explained more fully below, Defendants operate a common enterprise through which they: (a) fail to disclose adequately material terms of their sales offer, including the offer's costs and negative option features; (b) falsely represent that consumers can obtain their products on a "trial" or "risk-free" trial basis for only a nominal shipping and handling fee; (c) fail to obtain a consumer's informed consent to the material terms, including the negative option feature, of the transaction before charging the consumer; (d) falsely represent their business is accredited by the Better Business Bureau with an "A-" rating; (e) fail to provide consumers a simple method of cancelling their negative option continuity plan, and (f) debit consumers' bank accounts on a recurring basis without obtaining written authorization from the consumer or providing a written |

SPREADSHEET – ATTACHMENT B

| | | copy of the authorization to the consumer. |
|---|---|---|
| 22. | The allegations contained within paragraph 42 of the Complaint. | Defendants BunZai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, Inc.; CalEnergy, Inc.; Kai Media, Inc.; Insight Media, Inc.; Focus Media Solutions, Inc.; Secured Commerce, LLC; Secured Merchants, LLC; USM Products, Inc.; Merchant Leverage Group, Inc.; DMA Media Holdings, Inc.; Shalita Holdings, Inc.; All Star Beauty Products, Inc. (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unlawful acts and practices alleged herein. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations. Further, the companies commingle funds, use the same sales techniques, and have a centralized recordkeeping system. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. |
| 23. | The allegations contained within paragraph 43 of the Complaint. | Defendants Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi, Igor Latsanovski, Roi Reuveni, Khristopher Bond, also known as Ray Ibbot, Alan Argaman, and Paul Medina (collectively, "Individual Defendants") have formulated, directed, controlled, had the authority to control, or |

4

SPREADSHEET – ATTACHMENT B

| | | |
|---|---|---|
| | | participated in the acts and practices of the Corporate Defendants that constitute the common enterprise. |
| 24. | The allegations contained within paragraph 45 of the Complaint. | Defendants have advertised, marketed, distributed, and sold skincare products online from multiple Internet websites, including auraviefreetrial.com, auravietrialkit.com, and mymiraclekit.com, since at least 2010. Defendants deceptively offer free trials of their products under a variety of brand names including "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit" (collectively, "AuraVie"). |
| 25. | The allegations contained within paragraph 46 of the Complaint. | Defendants' online offers fail to disclose adequately and materially misrepresent the terms of their trial offers. |
| 26. | The allegations contained within paragraph 47 of the Complaint. | Defendants contract with a network of third parties, known as "affiliate marketers," to direct consumers to Defendants' websites. The affiliate marketers use a variety of Internet advertising techniques, including banner and pop-up advertisements, sponsored search terms, and offers to drive consumer traffic to Defendants' websites. Defendants provide affiliate marketers with advertisements describing the offers for the affiliate marketers to use. Some affiliate marketers also create their own advertising. |
| 27. | The allegations contained within paragraph 48 of the Complaint. | also purchase advertising space on third-party websites such as Amazon.com, Huffingtonpost.com, and Lowes.com, and offer consumers a "risk-free" trial or "trial order" of Defendants' skincare products. After consumers click on these advertisements and are directed to Defendants' websites, Defendants lure consumers into providing their credit or debit card information by representing that consumers need to pay |

| | | |
|---|---|---|
| | | only a nominal shipping and handling charge, typically $4.95 or less, to receive a "risk-free" trial or a "trial order" of their products. |
| 28. | The allegations contained within paragraph 49 of the Complaint. | Defendants' websites prominently claim that their offer is merely a "trial":<br><br>(screen capture from http://auraviefreetrial.com, last visited August 28, 2014)<br>Defendants promote their offer as a "risk-free" trial and, on most sites, claim that customer satisfaction is "100% guaranteed":<br><br>(screen capture from http://mymiraclekit.com, last visited April 13, 2015) |
| 29. | The allegations contained within paragraph 50 of the Complaint. | Defendants also use deceptive pop-up advertisements that discourage consumers from leaving Defendants' websites without accepting a trial offer. When consumers attempt to leave the websites, a text box appears that offers to ship the trial offer at an even lower |

| | | |
|---|---|---|
| | | shipping price. These pop-up advertisements contain false representations that AuraVie is accredited by the Better Business Bureau ("BBB") with an "A-" rating:<br><br>(screen capture from http://auravietrialkit.com, last visited April 13, 2015)<br>In fact, AuraVie is not accredited by the BBB and has an F rating. |
| 30. | The allegations contained within paragraph 51 of the Complaint. | Defendants' marketing practices are materially deceptive and employ tactics including hidden costs, signing up consumers for negative option continuity plans without their consent, and undisclosed and onerous return policies. In their advertisements and sales offers, Defendants fail to disclose adequately that they will charge consumers' credit or debit accounts for the trial product, typically as much as $97.88, after a 10-day period. |
| 31. | The allegations contained within paragraph 52 of the Complaint. | Defendants also fail to disclose adequately that consumers who accept the trial offer will be enrolled into a continuity program. Under the continuity program, Defendants send consumers additional shipments of Defendants' skincare product each month |

7

| | | |
|---|---|---|
| | | and charge consumers' credit or debit cards the full cost of each product shipped until consumers affirmatively cancel their membership in the continuity program. |
| 32. | The allegations contained within paragraph 53 of the Complaint. | Consumers are typically unaware that they have been enrolled in this continuity program until they discover the charges—usually $97.88 a month—on their credit or debit card statements. And often, by that time, it is too late for consumers to return the product for a refund. |
| 33. | The allegations contained within paragraph 54 of the Complaint. | Further, although they promote their offer as "risk-free" with "100% satisfaction guaranteed," Defendants fail to disclose, or disclose adequately, material terms of their return policy. Defendants fail to disclose adequately that, if the consumer opens the product, the product must be returned and received by Defendants within 10 days of placing the order to avoid a $97.88 fee. Defendants also fail to disclose adequately that after 10 days, only unopened products may be returned for a refund and that no refunds will be provided for any product returned after 30 days. |
| 34. | The allegations contained within paragraph 55 of the Complaint. | In fact, because consumers often do not receive their "risk-free" trial until after 10 days have elapsed (or nearly elapsed), many consumers cannot return the product in time to avoid the $97.88 fee. Moreover, Defendants fail to disclose adequately to consumers that they often assess a "restocking" fee of up to $15 for returning the products. Accordingly, consumers who accept Defendants' trial offer are likely to incur unexpected charges. |
| 35. | The allegations contained within paragraph 56 of the Complaint. | Defendants' websites do not contain a disclosure concerning the initial charges for the product, continuity |

8

|  |  | program, or return policies until the "final step" of the Defendants' ordering page. Many consumers report never seeing such a disclosure, even when they specifically looked for such a disclosure. As the screen capture below illustrates, the disclosure is in significantly smaller print and is obscured by a variety of graphics and text:<br><br>(screen capture from http://auraviefreetrial.com, last visited April 13, 2015; not to scale)<br>In contrast, Defendants represent—in bold, red font at the top-center of the page—that their trial shipment costs "$0.00." |
|---|---|---|
| 36. | The allegations contained within paragraph 57 of the Complaint. | Even if the disclosure were prominently displayed, it fails to mention many material terms and conditions of Defendants' offer. Defendants' disclosure states: |

9

|  |  |  |
|---|---|---|
|  |  | We take great pride in the quality of our products & are confident that you will achieve phenomenal results. By submitting your order, you agree to both the terms of this offer (click link below) & to pay $4.95 S&H for your 10 day trial. If you find this product is not for you, cancel within the 10 day trial period to avoid being billed. After your 10 day trial expires, you will be billed $97.88 for your trial product & enrolled in our monthly autoship program for the same discounted price. Cancel anytime by calling 866.216.9336. Returned shipments are at customer's expense. This trial is limited to 1 offer per household. |
| 37. | The allegations contained within paragraph 58 of the Complaint. | Defendants' disclosure paragraph fails to disclose: (a) that the 10-day trial period begins on the day that the product is ordered; (b) that, to avoid charges, the consumer must also return the product to Defendants before the end of the trial period; (c) that consumers may not return the product for a refund after 10 days if it has been opened; (d) that consumers may not return the product for a refund after 30 days, even if it has not been opened; and (e) that a restocking fee, usually $15, may be charged when a product is returned. |
| 38. | The allegations contained within paragraph 59 of the Complaint. | Most of the material terms and conditions of Defendants' offer can only be found in a separate, multi-page terms and conditions webpage that is accessible by hyperlink. On many of Defendants' affiliate sites, this hyperlink can only be found by scrolling to the bottom of the website and clicking on a hyperlink labeled "T&C": |

10

| | | |
|---|---|---|
| | | (screen capture from auravietrialkit.com, last visited April 13, 2015 ) |
| 39. | The allegations contained within paragraph 60 of the Complaint. | Defendants also send consumers who sign up for a trial offer a confirmation email that reinforces the false impression that they will receive a free shipment of Defendants' skincare product. These emails show no charges for the "risk-free" trial other than the nominal shipping and handling fees. |
| 40. | The allegations contained within paragraph 61 of the Complaint. | Defendants also send consumers who sign up for a trial offer a confirmation email that reinforces the false impression that they will receive a free shipment of Defendants' skincare product. These emails show no charges for the "risk-free" trial other than the nominal shipping and handling fees. |
| 41. | The allegations contained within paragraph 62 of the Complaint. | After consumers learn that Defendants have charged their accounts and signed them up for a continuity plan, they often have significant difficulty receiving a refund and cancelling the continuity plan. |
| 42. | The allegations contained within paragraph 63 of the Complaint. | Many consumers have difficulty contacting Defendants' customer service representatives, despite calling Defendants' toll-free number numerous times. Even |

|   |   |   |
|---|---|---|
|   |   | when consumers speak with a representative, consumers often continue to receive shipments and unauthorized charges after cancelling the continuity plan. Still others report receiving multiple charges from Defendants without receiving products. As a result, consumers continue to incur unwanted and unauthorized charges. |
| 43. | The allegations contained within paragraph 64 of the Complaint. | When consumers call Defendants to complain about the unauthorized charges, Defendants often tell consumers that, while the continuity plan will be cancelled, their money will not be refunded. In some instances, Defendants inform consumers they will offer only a partial refund. Other times, Defendants condition a partial refund upon the consumer's promise or signed statement that they will not complain to any government authority or to the Better Business Bureau. |
| 44. | The allegations contained within paragraph 65 of the Complaint. | Many of Defendants' charges for their continuity program result in chargeback requests by consumers. In response, Defendants provide false documents to payment processing companies and exaggerate the measures they take to communicate the terms of their offer to consumers. |
| 45. | The allegations contained within paragraph 66 of the Complaint. | Further, Defendants often do not honor return policies, even when consumers satisfy them. For example, Defendants often tell consumers that they cannot obtain a refund on any product returned even when the product remains unopened and the 30-day period has not yet elapsed, contrary to Defendants' terms and conditions. Some consumers report being refused a refund by Defendants despite sending the product back within the permissible time period, with Defendants' customer service representative stating that Defendants never |

SPREADSHEET – ATTACHMENT B

| | | |
|---|---|---|
| | | received the return shipment. |
| 46. | The allegations contained within paragraph 67 of the Complaint. | In other instances, consumers receive refunds from Defendants only after they have complained to their credit card companies, state regulatory authorities, or the Better Business Bureau. Even in those instances, however, Defendants have not always issued full refunds. |
| 47. | The allegations contained within paragraph 70 of the Complaint. | In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skincare products, including but not limited to AuraVie products, Defendants have represented, directly or indirectly, expressly or by implication, that consumers who provide their credit or debit card billing information will be charged only a nominal shipping and handling fee to receive a trial shipment of Defendants' skincare products and, that their satisfaction is guaranteed. |
| 48. | The allegations contained within paragraph 71 of the Complaint. | In numerous instances in which Defendants have made the representation set forth in Paragraph 70 of this Complaint, Defendants have failed to disclose, or disclose adequately to consumers, material terms and conditions of their offer, including:<br>(a) That Defendants will use consumers' credit or debit card information to charge consumers the full costs of the trial products, usually $97.88, upon the expiration of a limited trial period;<br>(b) The dates on which the trial period begins and ends;<br>(c) That Defendants will automatically enroll consumers in a negative option continuity |

13

|   |   |   |
|---|---|---|
|   |   | plan with additional charges;<br>(d) The cost of the continuity plan, and the frequency and duration of the recurring charges;<br>(e) The means consumers must use to cancel the negative option program to avoid additional charges; and<br>Requirements of their refund policies. |
| 49. | The allegations contained within paragraph 74 of the Complaint. | The representation set forth in Paragraph 73 is false. Consumers could not try Defendants' products "risk-free," because Defendants charged consumers the full cost if the "risk-free" product was opened and not returned within 10 days of placing the order, often assessed a restocking fee of up to $15, and consumers had to bear the additional expense of returning the product to the Defendants. In addition, Defendants failed, in numerous instances, to refund consumers' charges assessed for the trial order, despite consumers having returned the product according to the offer's terms and conditions. |
| 50. | The allegations contained within paragraph 76 of the Complaint. | In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of skincare products, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants are accredited by and have a rating of "A-" with the Better Business Bureau. |
| 51. | The allegations contained within paragraph 79 of the Complaint. | In numerous instances, Defendants have caused charges to be submitted for payment to the credit and debit cards of consumers without the express informed consent of consumers. |

14

| | | |
|---|---|---|
| 52. | The allegations contained within paragraph 87 of the Complaint. | In numerous instances, in connection with the selling of skincare products on the Internet through a negative option feature, Defendants have failed to:<br>(a) clearly and conspicuously disclose all material terms of the negative option feature of the skincare products transaction before obtaining the consumer's billing information;<br>(b) obtain the consumer's express informed consent to the negative option feature before charging the consumer's credit card, debit card, bank account, or other financial account for the transaction; and/or<br>provide simple mechanisms for a consumer to stop recurring charges for skincare products to the consumer's credit card, debit card, bank account, or other financial account. |
| 53. | The allegations contained within paragraph 93 of the Complaint. | In numerous instances, Defendants debit consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts, thereby violating Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b). |
| 54. | The allegations contained within paragraph 94 of the Complaint. | Further, in numerous instances, Defendants debit consumers' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by the consumer for preauthorized electronic fund transfers from the consumer's account, thereby violating Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of |

SPREADSHEET – ATTACHMENT B

|  |  |  |
|---|---|---|
|  |  | Regulation E, 12 C.F.R. § 205.10(b). |
| 55. | The allegations contained within paragraph 97 of the Complaint. | Relief Defendant, Chargeback Armor, Inc. has received, directly or indirectly, funds and other assets from Defendants that are traceable to funds obtained from Defendants' customers through the unlawful acts or practices described herein. |
| 56. | The allegations contained within paragraph 98 of the Complaint. | Relief Defendant is not a bona fide purchaser with legal and equitable title to Defendants' customers' funds or other assets, and Relief Defendant will be unjustly enriched if it is not required to disgorge the funds or the value of the benefit it received as a result of Defendants' unlawful acts or practices. |
| 57. | The allegations contained within paragraph 99 of the Complaint. | By reason of the foregoing, Relief Defendant holds funds and assets in constructive trust for the benefit of Defendants' customers. |
| 58. | The allegations contained within paragraph 100 of the Complaint. | Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, ROSCA, and EFTA. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest. |
| 59. | The allegations contained within the Prayer for Relief, section "C" of the Complaint. | Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA, and EFTA, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; |