ROBERT L. ESENSTEN (SBN 65728)
resensten@esenstenlaw.com
RANDI R. GEFFNER (SBN 116574)
rgeffner@esenstenlaw.com
**ESENSTEN LAW**
12100 Wilshire Boulevard, Suite 1660
Los Angeles, California 90025
Telephone: (310) 273-3090
Facsimile:  (310) 207-5969

Attorneys for Defendants DORON NOTTEA and MOTTI NOTTEA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BUNZAI MEDIA GROUP, INC., *et al.*,<br><br>Defendants. | Case No.:  2:15-CV-04527-GW (PLAx)<br><br>*Assigned to the Honorable George Wu, Courtroom 10*<br><br>**NOTICE OF MOTION AND JOINT MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND RACHEL NOTTEA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF DORON NOTTEA; DECLARATION OF LORI BEKHOR; DECLARATION OF RACHEL NOTTEA**<br><br>**DATE:  May 12, 2016**<br>**TIME:  8:30 a.m.**<br>**DEPT:  Courtroom 10** |

NOTICE IS HEREBY GIVEN that on May 12, 2016 at 8:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 10 of the above-captioned Court located at 312 N. Spring Street, Los Angeles, California 90012, Defendant DORON NOTTEA ("D. Nottea") and third parties LORI BEKHOR ("Bekhor") and RACHEL NOTTEA ("R. Nottea") will jointly move for release of frozen funds belonging Bekhor and R. Nottea, who are not parties to this action, have no

1 involvement in this action, and which are not funds from or belonging to any of the

2 Defendants in this action, or proceeds of skin product sales or business operations of

3 any of the Defendants.  The funds at issue belong solely to Bekhor and R. Nottea.

4 Defendant D. Nottea does not have, and has never had, any ownership interest in the

5 frozen funds to which this Motion pertains. No current defendant in this lawsuit

6 dominates or controls Bekhor or R. Nottea.

7      This Motion is made following the meet and confer of counsel which took

8 place on April 15, 2016[1].

9      The Motion is based on the within Notice of Motion and Motion, the

10 Memorandum of Points and Authorities, the Declarations of Doron Nottea, Lori

11 Bekhor and Rachel Nottea, the Court records and files herein, and on such evidence

12 and argument as may be presented at the hearing on the Motion.

14 Dated:  April 18, 2016      **ESENSTEN LAW**
     ROBERT L. ESENSTEN

15      RANDI R. GEFFNER

16

17      By:  */s/ Robert L. Esensten*
     Robert L. Esensten

18      Attorneys for Defendants DORON NOTTEA
     and MOTTI NOTTEA

26 [1]  Counsel for moving parties e-mailed counsel for FTC on April 15, 2016, setting forth

27 the intention to file the within Motion and the basis for the relief requested.  Counsel for
the FTC has responded that the FTC will oppose the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **INTRODUCTION**

Plaintiff FEDERAL TRADE COMMISSION ("FTC") has frozen, and continues to freeze, funds seized with complete disregard for the source and ownership of funds frozen, and with no legitimate legal grounds for doing so. FTC has obtained a TRO (Docket No. 90) and Preliminary Injunction (Docket No. 108) freezing the assets not only of D. Nottea, who is a party to this action, but of his wife and mother, who are not parties to this action and are not the subject of the claims made by FTC.

The assets of R. Nottea and Bekhor to which this Motion pertains are owned solely by them. D. Nottea has no ownership interest in the frozen funds. The frozen funds are wholly unrelated to the claims made by the FTC in this action, and would not under any circumstances be subject to satisfaction of any judgment against any Defendant herein, should the FTC obtain any such judgment[2]. As such, release should be ordered of all funds belonging solely to Bekhor and R. Nottea.

The existing retention of funds is not warranted as it pertains to the assets of Nottea's wife and his mother. Through extensive discovery by the FTC, no facts have been discovered that would provide any basis for freezing the funds, that these funds would be subject to the satisfaction of any judgment or that any of the funds at issue belonged to D. Nottea.

II. **SUMMARY OF RELEVANT FACTS**

**Frozen Funds Belonging to Lori Bekhor**

The funds of Bekhor in the total amount of $158,000 that have been frozen are located in a safe deposit box that was frozen pursuant to the Preliminary

---

[2]   Defendant Motti Nottea, the husband of R. Nottea, has settled with the FTC. No claims remain against Motti Nottea; as such there can be no claims against his wife's funds to satisfy any judgment.

1 Injunction.  Said funds are solely the inheritance distributions from the estate of

2 Bekhor's grandfather, Jacob Bekhor.  (See Bekhor Decl., ¶2.)  The inheritance

3 distributions to Bekhor are her separate property.

4      In the time frame from 2000 to 2004, Bekhor received distributions in the

5 total amount of $157,939.08, as follows (See Bekhor Decl., ¶4.):

| | | |
|---|---|---|
| 12/21/2001 | $5,000.00 | **Exhibit "A"** |
| 12/20/2002 | $7,500.00 | **Exhibit "B"** |
| 1/23/2003 | $75,000.00 | **Exhibit "C"** |
| 5/12/2004 | $10,500.00 | **Exhibit "D"** |
| 11/24/2004 | $59,939.08 | **Exhibit "E"** |

11      The inherited funds distributed to Bekhor by the above-referenced checks

12 were cashed by her, and the funds were placed in a safe deposit box, the contents of

13 which have now been seized and now frozen by the FTC.  (See Bekhor Decl., ¶2.)

14 D. Nottea has never held any interest in the money that was left to Bekhor by her

15 grandfather.

16      The Form 706 Estate Tax Return for Jakob Bekhor also verifies that Bekhor

17 was distributed a portion of her grandfather's Estate.  (Bekhor Decl., **Exhibit "F"**.)

18      In or about October 2015, Vertex Holdings Group, Inc., a California

19 corporation, purchased various items of electronic equipment, office equipment and

20 other personal property from the Receiver, Charlene Koonce, pursuant to a Notice of

21 Sale and Asset Purchase Agreement (Docket No. 307-1) submitted by the Receiver.

22 Pursuant to that Asset Purchase Agreement (See Bekhor Decl., **Exhibit "G"**),

23 Bekhor provided the funds used for the purchase ($10,000) from the safe deposit

24 box, which funds were her separate property (Asset Purchase Agreement, ¶2.2).

25 **The fact that the separate funds of Lori Bekhor were used to purchase the**

26 **assets was confirmed in writing by the FTC by their "Approval of the Form**

27 **and Content" of the Asset Purchase Agreement.**  As the $10,000 was separate

28 property as confirmed by the FTC, the balance of the funds are separate property.

1   The funds for the sale came from the safe deposit box, the same inherited
2   funds at issue on this Motion.  In conjunction with that sale Bekhor submitted the
3   same documentary evidence submitted herewith.  The Order approving the sale was
4   unopposed (Docket No. 307) and the FTC signed off on the Asset Purchase
5   Agreement, approving same as to form and content.  The Receiver and the FTC
6   acknowledged that the cash contents of the safe deposit box are the separate
7   property of Bekhor to enable the sale of assets to go through.  (See Exhibit "G".)

8   **Frozen Funds Belonging to Rachel Nottea**

9   The FTC has frozen funds in the amount of $178,177.90 belonging solely to
10  R. Nottea, the mother of D. Nottea.  These frozen funds remain in a savings account
11  at HSBC Premier (Account No. XXXX3585-5[3]) and are the sole property of R.
12  Nottea; D. Nottea has no ownership interest therein.

13  **Source of Funds**

14  The source of the HSBC funds is as follows:  In or about May 2009, before
15  the businesses at issue in this action were even organized or opened, R. Nottea
16  opened a bank account of Santa Barbara Bank & Trust.  Account No. XXXX66600
17  was opened and held solely in the name of Rachel Nottea.  The initial deposit into
18  said account was made on May 14, 2009 in the amount of $182,400.  D. Nottea has
19  never had an ownership interest in the funds deposited into the Santa Barbara Bank
20  & Trust account, and made no deposits into said account during the time it was
21  open, from May 2009 through September 2010.  (See R. Nottea Decl., ¶3-4; See D.
22  Nottea Decl., ¶2-3.)

23  In or about October 2010, the Santa Barbara Bank & Trust account was
24  closed, with a withdrawal of funds in the amount of $160,797.30.  R. Nottea's funds
25  from that account were used to open an account at HSBC Premier, Savings Account

26  _____

27  [3]   Full account numbers have been redacted for privacy.

28

1   No. XXXX3585-5.  The initial deposit in the amount of $150,847.30 on October 4,

2   2010 came directly from the Santa Barbara Bank & Trust funds belonging to R.

3   Nottea.  (See R. Nottea Decl., ¶5.)

4          **The HSBC Savings Account**

5         D. Nottea is named on the bank statements for the HSBC accounts, yet he has

6   no ownership interest therein.  His name was included on the accounts to provide

7   him with a power of attorney over the accounts as R. Nottea and her husband Motti

8   lived and traveled overseas for a substantial portion of each year; naming D. Nottea

9   on said accounts enabled him to assist his mother with her accounts and pay bills as

10  needed while she was out of the country[4].  (See R. Nottea Decl., ¶6; See D. Nottea

11  Decl., ¶4.)

12        Throughout the time frame from opening the HSBC accounts in October 2010

13  until the freezing of assets occurred in or about June 2015, the source of deposits of

14  funds into the savings account, No. XXXX3585-5, was from R. Nottea.  (See R.

15  Nottea Decl., ¶7.)

16  **III.   LEGAL ARGUMENT**

17      **A.   The Preliminary Injunction by its Terms Does Not Include the**

18            **Funds of Bekhor and R. Nottea.**

19        By its terms, the Preliminary Injunction, as it pertains to the asset freeze at

20  issue, is intended to protect the ability of the Court to grant effective final relief to

21  consumers (Preliminary Injunction, Docket No. 108, Finding 7).  In order to

22  effectuate this goal, injunctive relief was imposed to freeze assets "owned,

23  controlled by or held for the benefit of any Defendant" (Preliminary Injunction,

24  Docket No. 108, Section IV.A.1.)

25

26  _____

27  [4]   Beginning in or about September 2009, D. Nottea also had a power of attorney for the
    Santa Barbara Bank & Trust account for the same reasons.

28

1    By these terms, freezing the funds of Bekhor and R. Nottea is wholly

2  inappropriate and unauthorized.  As set forth in detail hereinbelow, the funds frozen

3  are not "owned, controlled by or held for the benefit of" D. Nottea.  Further, the

4  freezing of funds that do not belong to D. Nottea does not in any way protect the

5  ability of the Court to grant effective final relief to consumers, as these assets cannot

6  be used to fund or satisfy any judgment or other relief against D. Nottea.

7    As it pertains to the funds of R. Nottea, said funds cannot be the source of any

8  recovery or subject to enforcement of any eventual judgment in this action, as her

9  husband, Motti Nottea, has settled with the FTC and is no longer a Defendant

10  herein.   There is no legal basis for holding her funds; there will be no judgment

11  against Motti Nottea and thus these funds will never be subject to enforcement of a

12  judgment.

13    **B.     The Frozen Assets of Bekhor are her Separate Property.**

14    It is a fundamental tenet of California law that property obtained by

15  inheritance is the separate property of the inheriting spouse.  *In re Summers* (9th Cir.

16  2003) 332 F. 2d 1240; *In re Marriage of Rossin* (2009) 172 Cal. App. 4th 725.

17    The funds contained in the safe deposit box that were frozen pursuant to the

18  TRO and Preliminary Injunction were devised to Bekhor by inheritance from her

19  grandfather.  As set forth in detail in her declaration and accompanying exhibits,

20  Bekhor obtained an inheritance in the total amount of $157,939.08 from her

21  grandfather, Jakob Bekhor, through distributions made in checks to her.  This is

22  confirmed by the Estate Tax Return.  Those checks were cashed, and the resulting

23  proceeds were placed by Bekhor into the safe deposit box.  The inherited funds are

24  indisputably separate property.

25    The Receiver and the FTC have previously acknowledged and agreed to the

26  separate character of the funds in the safe deposit box.  **In or about October 2015,**

27  **in order to effectuate the Asset Purchase Agreement, both the FTC and**

28  **Receiver acknowledged and agreed that the funds in the safe deposit box were**

1  the separate property of Bekhor, and enabled the sale of assets to go through

2  on that basis.  The Order to that effect was unopposed by the FTC and the

3  Receiver.  They cannot now claim that the same funds are not the sole and separate

4  property of Bekhor.

5      The bundles of money, which total $158,000, have Lori Bekhor's name

6  written on them so as to clearly identify Lori's money from that of the joint funds

7  held with her husband.  (See Bekhor Decl., ¶2 and D. Nottea Decl., ¶ 6).

8      Pursuant to *SEC v. Hickey* (9th Cir.2003) 322 F.3d 1123, 1125, the inherent

9  equitable power of a district court allows it to freeze the assets of a nonparty when

10  that nonparty is dominated and controlled by a defendant against whom relief has

11  been obtained in a securities fraud enforcement action.  In that the funds of Bekhor

12  in the safe deposit box are not owned, controlled by or held for the benefit of D.

13  Nottea, they are not properly subject to the TRO and Preliminary Injunction and

14  must be released.

15      **C.      Doron Nottea has No Ownership of the HSBC Bank Accounts.**

16      The freezing of HSBC savings account is inappropriate as the frozen funds do

17  not belong to D. Nottea.  As is clear from the Declarations of R. Nottea and D.

18  Nottea, and the supporting documentation, the funds in the HSBC savings account,

19  No. XXXX3585-5, belonged solely to R. Nottea.  She opened an account in her

20  name only, with her funds only, at Santa Barbara Bank & Trust.  As is clear from

21  the entire history of this account as established by the statements from Santa

22  Barbara Bank & Trust and HSBC, her funds from Santa Barbara Bank & Trust went

23  directly into the savings account at HSBC.  There is no evidence to the contrary.

24      The inclusion of D. Nottea's name on the statements from HSBC does not

25  prove that he had any ownership interest therein.  Any presumption that the

26  inclusion of D. Nottea's name on the accounts creates a joint tenancy therein may be

27  overcome by contrary evidence as to the intent in opening the accounts.  *In re*

28  *Kretschmer's Estate* (1965) 232 Cal. App. 2d 789.   The intent of R. Nottea in

opening these accounts, and in including the name of D. Nottea therein, is clear from the evidence presented in her declaration.  D. Nottea was included solely to enable him to assist with her account and paying of bills as she travels and lives abroad for substantial portions of the year.

As D. Nottea has no ownership interest in the HSBC account, there is no basis for freezing funds therein based on the TRO or Preliminary Injunction, which by their terms are applicable only to assets owned, controlled by or held for the benefit of D. Nottea.  Hence, the HSBC funds must be released to the owner thereof, R. Nottea.  She is not a party to this action, holds no funds for D. Nottea, is not dominated or controlled by any current defendant in this lawsuit, and as such there is no basis for the wrongful retention of her assets.

## IV.    CONCLUSION

Wherefore, it is respectfully requested that the TRO and Preliminary Injunction be modified to exclude the funds of R. Nottea and Bekhor as described herein, and that said funds be immediately unfrozen and returned to their rightful owners.

Dated:  April 18, 2016

**ESENSTEN LAW**
ROBERT L. ESENSTEN
RANDI R. GEFFNER

By:   */s/ Robert L. Esensten*
Robert L. Esensten
Attorneys for Defendants DORON NOTTEA
and MOTTI NOTTEA

### DECLARATION OF DORON NOTTEA

DORON NOTTEA declares:

1.     I am a Defendant in the above-entitled action.  I make this declaration in support of the motion for return of funds belonging solely to my wife, Lori Bekhor ("Bekhor"), and my mother, Rachel Nottea ("R. Nottea"), that have been wrongfully frozen.  All facts contained herein are within my personal knowledge, and if called upon to do so I could and would testify competently hereto.

2.     In or about May 2009, my mother opened a bank account at Santa Barbara Bank & Trust, Account No. XXXX66600, which was opened and held solely in her name.  The initial deposit into said account was made on May 14, 2009, in the amount of $182,400.00.  I have never had an ownership interest in the funds deposited into the Santa Barbara account, and made no deposits into said account during the time it was open, from May 2009 through the end of September 2010.  I did have a power of attorney on the Santa Barbara account because my mother lives and travels outside of the United States for substantial portions of the year, so she needed me to have the power of attorney in case transactions from that account were necessary in her absence and to pay bills as necessary.

3.     In or about October 2010, the Santa Barbara Bank & Trust account was closed, with a withdrawal of funds in the amount of $160,797.30.  My mother's funds from that account were used to open an account at HSBC Premier, Savings Account No. XXXX3585-5.  The initial deposit in the amount of $150,847.30 on October 4, 2010 came directly from the Santa Barbara Bank & Trust funds belonging to my mother.

4.     My name is listed on the HSBC savings account statement, yet I have no ownership interest therein.  My name was included on the account as with the Santa Barbara account, to provide me with a power of attorney over the accounts as my mother and father have lived and traveled overseas for a substantial portion of each year; naming me on the savings account enabled me to assist my parents as

1  needed when they are out of the country.

2      5.     I do not use and have never used the HSBC savings account as my

3  personal bank account.  My name is listed thereon solely for the purpose set forth

4  hereinabove.

5      6.     The money owned by my wife Lori in the Encino branch of the Bank of

6  America is clearly marked as each bundle of money has Lori's name written on it.

7  The bundling of the money and the identification that Lori owns these funds was

8  done many years ago.

9      I declare under penalty of perjury under the laws of the State of California

10 that the foregoing is true and correct.

11     Executed on this 18th day of April, 2016 at Los Angeles, California.

12

13                                              _____
                                                        Doron Nottea
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF LORI BEKHOR

LORI BEKHOR declares:

1.     I am an individual over the age of eighteen and am not a party to the above-captioned action.  My husband Doron Nottea is a defendant herein.  I make this declaration in support of the motion for return of funds belonging solely to me that have been wrongfully frozen. All facts stated herein are known to me of my personal knowledge, and if called upon to do so I could and would testify competently thereto.

2.     My money, in the total amount of $158,000, which has been frozen, was located in a safe deposit box at the Encino branch of the Bank of America that was seized by the Receiver.  Said funds were comprised solely of inheritance distributions from the estate of my grandfather, Jacob Bekhor.

3.     In the time frame from 2000 to 2004, I received inheritance distributions in the total amount of $157,939.08 from my grandfather's estate.  No portion of the funds belong to my husband, Doron Nottea ("D. Nottea"), nor is any portion of the funds community property, as set forth below.  **In fact the funds have my name written on each bundle of money.**

4.     True copies of the checks for the inheritance distributions I received from the estate of my grandfather are attached as follows:

| | | |
|---|---|---|
| 12/28/2001 | $5,000.00 | **Exhibit "A"** |
| 12/20/2002 | $7,500.00 | **Exhibit "B"** |
| 01/23/2003 | $75,000.00 | **Exhibit "C"** |
| 05/12/2004 | $10,500.00 | **Exhibit "D"** |
| 11/24/2004 | $59,939.08 | **Exhibit "E"** |

5.     These checks were cashed by me and the cash proceeds thereof were placed in a safe deposit box.  D. Nottea has never held any interest whatsoever in this money that was left to me by my grandfather.

6.     Attached hereto as **Exhibit "F"**, a portion of the Form 706 Estate Tax Return verifying that I was distributed a portion of the estate.

///

12

7.      In or about October 2015, Vertex Holdings Group, Inc., a California corporation, purchased various items of electronic equipment, office equipment and other personal property from the Receiver, Charlene Koonce, pursuant to a Notice of Sale and Asset Purchase Agreement (Docket No. 307-1) submitted by the Receiver. A true copy of the Asset Purchase Agreement, signed by me, is attached hereto as **Exhibit "G"** and incorporated herein by reference.  Pursuant to that Asset Purchase Agreement, I provided the funds used for the purchase ($10,000) from the safe deposit box, which funds were my separate property (Asset Purchase Agreement, ¶2.2).

8.      The funds for the sale came from the safe deposit box, the same inherited funds at issue on this Motion.  In conjunction with that sale, I provided the same documentary evidence submitted herewith.  The Order approving the sale was unopposed (Docket No. 307) and the FTC signed off on the Asset Purchase Agreement, approving same as to form and content.  The Receiver and the FTC acknowledged that the cash contents of the safe deposit box are my separate property to enable the sale of assets to go through.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of April 2016, at Los Angeles, California.

_____
LORI BEKHOR

## DECLARATION OF RACHEL NOTTEA

RACHEL NOTTEA declares:

1.    I am an individual over the age of eighteen years and am not a party to the above-entitled action.  Defendant Doron Nottea ("D. Nottea") is my son; my husband Motti Nottea was also a named defendant herein, however the case has been settled as to my husband.  I make this declaration in support of the motion for return of my funds that have been wrongfully frozen.  All facts contained herein are within my personal knowledge, and if called upon to do so I could and would testify competently hereto.

2.    The FTC has frozen funds in the amount of $178,177.90 belonging solely to me.  These frozen funds are in a savings account at HSBC Premier ("HSBC funds") and are the sole property of me; D. Nottea has no ownership interest therein.

3.    The source of the HSBC funds in my HSBC accounts is as follows:  In or about May 2009, I opened a bank account of Santa Barbara Bank & Trust, Account No. XXXX66600, which was opened and held solely in my name.  The initial deposit into said account was made on May 14, 2009, in the amount of $182,400.00.   A true and correct copy of the collective bank statements (redacted as to account number and other private information) from the Santa Barbara Bank & Trust account is attached hereto as **Exhibit "H"** and incorporated herein by reference.

4.    D. Nottea has never had an ownership interest in the funds deposited into the Santa Barbara Bank & Trust account, and made no deposits into said account during the time it was open, from May 2009 through the end of September 2010.

5.    In or about October 2010, the Santa Barbara Bank & Trust account was closed, with a withdrawal of funds in the amount of $160,797.30.  My funds from that account were used to open an account at HSBC Premier, Savings Account No.

1  XXXX3585-5.   The initial deposit in the amount of $150,847.30 on October 4,
2  2010 came directly from the Santa Barbara Bank & Trust funds belonging to me.

3       6.      D. Nottea's name is listed on the HSBC account statements, yet he has
4  no ownership interest therein.  His name was included on the account to provide D.
5  Nottea with a power of attorney over the account as my husband and I have lived
6  and traveled overseas for a substantial portion of each year; naming D. Nottea on
7  said account enabled him to assist me with my account and payment of bills as
8  needed when I am out of the country[5].  It was never my intent in including D.
9  Nottea's name on the account that he would have any ownership interest therein.

10       7.      Throughout the time frame from opening the HSBC in or about July
11  2015, the source of deposit of funds into the savings account, No. XXXX3585-5,
12  was from me.  A true and correct copy of the collective bank statements (redacted as
13  to account number and other private information) from the HSBC accounts from
14  October 2010 through February 2016 is attached hereto as **Exhibit "I"** and
15  incorporated herein by reference.

16       8.      The HSBC funds belong solely to me, and should not be subject to the
17  TRO and Preliminary Injunction.  I am not a party to this action.  My husband,
18  Motti Nottea, has settled with FTC and is no longer a party subject to the asset
19  freeze; there is no basis whatsoever for holding funds belonging solely to me.

20       I declare under penalty of perjury under the laws of the State of California
21  that the foregoing is true and correct.

22       Executed on this 18th day of April, 2016 at Los Angeles, California.

23

24  _____
                                 *Rachel Nottea*
25                              Rachel Nottea

26  _____
27  [5]   Beginning in or about September 2009, Doron Nottea also had a power of attorney for
the Santa Barbara Bank & Trust account for the same reasons.

28

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on April 18, 2016, I electronically filed the foregoing

4    document entitled **NOTICE OF MOTION AND JOINT MOTION FOR**

5    **RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND RACHEL**

6    **NOTTEA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

7    **THEREOF; DECLARATION OF DORON NOTTEA; DECLARATION OF**

8    **LORI BEKHOR; DECLARATION OF RACHEL NOTTEA** with the Clerk of the

9    Court by using the CM/ECF System.

10

11                                */s/ Robert L. Esensten*
                                   Robert L. Esensten
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28