## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "**Agreement**") is made and entered into as of this 17 day of December ____, 2015, by and between Charlene Koonce, not individually, but as court-approved Receiver of the assets of those entities named as Receiveship Defendants as further defined below, ("**Receiver**") and Vertex Holdings Group, Inc. ("**Buyer**"). Buyer and Receiver are collectively referred to herein as the "**Parties**" or individually as a "**Party**". Capitalized terms used herein shall have the respective meanings specified in Section 10 of this Agreement unless otherwise noted herein.

## RECITALS

A. Receiver was appointed pursuant to the following orders entered by the United States District Court for the Western District of California, (the "Court"): *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue entered on June 16, 2015 in *Federal Trade Commission v. Bunzai Media Group, Inc.; Pinnacle Logistics, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; CalEnergy, Inc.; Kai Media, Inc.; Insight Media, Inc.; Focus Media Solutions, Inc.; Secured Commerce, LLC; Secured Merchants, LLC; USM Products, Inc.; Merchant Leverage Group, Inc.; DMA Media Holdings, Inc.; Shalita Holdings, Inc.; All-Star Beauty Products, Inc.; Alon Nottea; Motti Nottea; Doron Nottea; Igor Latsanovski; Oz Mizrahi; Roi Reuveni; Khristopher Bond; Alan Argaman; Paul Medina, Chargeback Armor, Inc., Relief Defendant* (the "FTC Lawsuit").

B. Receiver wishes to sell Buyer the assets, as described in **Exhibit A** heretofore used in connection with the operation of the business of the Receivership Defendants, (the "**Business**"), at the price and on the other terms and conditions specified in detail below, and Buyer wishes to so purchase and acquire such assets from Receiver.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. Transfer of Assets.

   1.1 Purchase and Sale of Assets. On the Closing Date (as defined below), in consideration of the payment of the Purchase Price (as defined below) and the covenants, representations and obligations of Buyer hereunder, and subject to the conditions set forth below, Receiver shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase, accept, assume and receive from Receiver, all of Receiver's right, title and interest in and to those certain assets of the Receivership Defendants, as listed in **Exhibit A** (collectively, the "**Property**"). Without limiting the generality of the foregoing, the Property shall include the following:

1.1.1 <u>Personal Property</u>. All of those items of equipment, computer hard drives along with the information stored therein and tangible personal property owned by Receiver, or held by Receiver, including possession and ownership pursuant the Court's Order entered on September 18, 2015 regarding transfer of all property previously located in those certain business locations at 6925 Canby, Suite 105 Reseda, CA and 6850 Canby, Suite 103 Reseda, CA (collectively, the **"Personal Property"**). The Personal Property is listed in **Exhibit A**.

1.1.2 <u>Excluded Property</u>. This sale does not include any intangible personal property owned or held by Receiver and previously used in connection with the Business, the goodwill (if any) of the Business, the domain names utilized by any Receivership Defendant, accounts receivable, certain Intellectual Property claimed by Mimonis, Inc., customer lists or consumer information which may be stored in computers or other electronic equipment included within the sale (collectively, the **"Intangible Property"**).

2. Consideration.

    2.1 Purchase Price.

    2.1.1 The cash consideration to be paid by Buyer to Receiver for the Property (the **"Purchase Price"**) shall be $10,000.

    2.1.2 The Purchase Price shall be paid on the Closing Date, by delivery to Receiver of a cashier's check in the amount of $10,000, payable to Receiver purchased with the cash contained in the safe deposit box, which was previously frozen pursuant to orders issued in the FTC Litigation. The cash contained within the safe deposit box shall be viewed and counted by Counsel for the FTC, (if the FTC so elects) and Counsel for Doron Nottea at the location identified in section 2.2 below. The cash withdrawn from the safe deposit box shall not be removed from the bank location, but instead shall be used to immediately purchase a cashier's check in the amount of $10,000.

    2.2 <u>Source of Funds for Purchase Price</u>. Funds used to pay the Purchase Price shall be obtained solely from that certain safe deposit box at a Bank of America location (the **"Bank Location"**) at 16640 Ventura Blvd., Encino, CA 91436, in the name of Doron Nottea and accessable by Lori Bekhor. Such funds shall be withdrawn from the safe deposit box, by counsel for Buyer and counsel for the FTC if they elect to be present meeting at the Bank Location within five days following the expiration of the Notice Period, as further defined below. As provided in more detail in the Declaration attached as **Exhibit B**, Buyer and Lori Bekhor warrant that those certain funds in the safe deposit box marked with Bekhor's name, are her separate and sole property and were not derived from any of the conduct enjoined by those certain Preliminary Injunctions entered in the FTC Lawsuit. The funds withdrawn from the safe deposit shall be removed from the cash stored in the safe deposit box. By her signature below, Lori Bekhor expressly agrees that $10,000 of her funds in the safe deposit box may be used to pay the Purchase Price.

2.3 <u>Assumed Liabilities</u>. Effective as of the Closing Date, Buyer hereby assumes all then existing liabilities and obligations arising in connection with the use, possession, and operation of the Property (collectively, the "**Assumed Liabilities**").

3. <u>Closing Transactions</u>.

    3.1 <u>Closing Date</u>. The Closing shall be held no later than five (5) Business Days following expiration of the Notice Date provided in Section 9.3, or within five (5) Business Days following resolution of any objection to the Notice of Sale described below in Section 4, if such objection is resolved in favor of Buyer. (the "**Closing Date**"). The Closing Date may be extended by the parties, by agreement as necessary. Until this Agreement is either terminated or the Closing has occurred, the Parties shall use commercially reasonable efforts to work to satisfy all conditions to Closing and the transaction contemplated herein shall close as soon as such conditions are satisfied or waived.

    3.2 <u>Receiver's Deliveries to Buyer at Closing</u>. On the Closing Date, Receiver shall make the following deliveries to Buyer:

        3.2.1 A bill of sale, duly executed by Receiver in the form and on the terms of the bill of sale attached hereto as **Exhibit C**, pursuant to which Receiver transfers to Buyer all of Receiver's right, title and interest in and to the Personal Property, (the "**Bill of Sale**");

    3.3 <u>Buyer's Deliveries to Receiver at Closing</u>. On the Closing Date, Buyer shall make or cause the following document deliveries to Receiver:

        3.3.1 A counterpart of the Bill of Sale, duly executed by Buyer;

        3.3.2. The Purchase Price.

    3.4 <u>Sales, Use and Other Taxes</u>. Any sales, purchase, or other taxes which may be payable by reason of the sale of the Property under this Agreement or the transactions contemplated herein, shall be borne and timely paid by Buyer.

    3.5 <u>Possession</u>. Right to possession of the Property shall transfer to Buyer on the Closing Date. Receiver shall transfer and deliver to Buyer on the Closing Date all keys, access codes, passwords and all means of entry and access to the storage unit at which all Personal Property is currently located.

        3.5.1 <u>Removal</u>. Buyer agrees to remove all Property from the storage units at which it is currently stored within five business days from the Closing Date, unless the Receiver and Buyer agree in writing to an extension of that deadline Receiver will notify the management of the storage company where the Property is currently stored that rental for the storage unit shall terminate on the sixth business day

from the Closing Date so as to terminate any future rent. Buyer assumes all risk of forfeiture or leins related to a failure to remove the Property from storage within the time provided above.

4. <u>Conditions Precedent to Closing.</u>

    4.1 <u>Conditions to Receiver's Obligations</u>. Receiver's obligation to make the deliveries required of Receiver at the Closing Date and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction by Buyer or waiver by Receiver of each of the following conditions:

        4.1.1 Buyer shall have executed and delivered to Receiver the Bill of Sale, and the Declaration of Lori Bekhor.

        4.1.2 Buyer shall have delivered to Receiver at the Closing, the Purchase Price.

        4.1.3 As soon as possible after execution of this Agreement and satisfaction of the conditions listed above in Sections 4.1.1 and 4.1.2,, the Receiver will file a Notice of Sale, as provided by the Order Establishing Sales Procedures, entered in the FTC Litigation. If, within fourteen days after filing the Notice of Sale (the "**Notice Period**"), no creditor or party objects to the sale, and no buyer offers an amount exceeding the Purchase Price by at least 10%, Buyer and Receiver shall commence close the sale.

            4.1.3.1 If any creditor or party files an objection to the sale within the Notice Period, the Closing Date shall be within five (5) business days after such objection is overruled. If the objection is sustained, this Agreement is null and void, unless otherwise modified by the Court.

            4.1.3.2 If any person or party makes a competing offer exceeding the Purchase Price by at least 10%, within the Notice Period, this Agreement is null and void, unless Buyer makes a counter-offer exceeding the competing offer by at least 10%. If Buyer makes such counter-offer, the parties agree to modify the Purchase Price of this Agreement to reflect the new Purchase Price.

    4.2 <u>Conditions to Buyer's Obligations</u>. Buyer's obligation to make the deliveries required of Buyer at the Closing, and to otherwise close the transaction contemplated herein, shall be subject to the satisfaction by Receiver or waiver by Buyer of each of the following conditions:

        4.2.1 Receiver shall have executed and be prepared to deliver to Buyer the Bill of Sale.

4

4.2.2 No objections to the sale or competing offers shall be pending or unresolved as of the Closing Date.

5. <u>Receiver's Representations and Warranties</u>. Receiver hereby makes the following representations and warranties to Buyer:

5.1 <u>Standing and Power</u>. Receiver has all requisite power and authority to execute and deliver this Agreement and, upon expiriation of the Notice Period, or resolution of any objection or competing offer in favor of Buyer, Receiver will have the power and authority to perform this Agreement and to close the transaction contemplated by this Agreement.

5.2 <u>Authorization of Receiver</u>. Subject to expiration of the Notice Period without objection or competing offers, or resolution of any such objection and counter of any competing offer: (i) the execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Receiver do not and will not violate any Law of any Governmental Authority; and (ii) Receiver has authority to convey title to the Property.

5.3 The Receiver is unaware of any competing claims or leins on the Personal Property listed in **Exhibit A**.

6. <u>Buyer's Warranties and Representations</u>. In addition to the representations and warranties contained elsewhere in this Agreement, Buyer hereby makes the following representations and warranties to Receiver:

6.1 <u>Authorization of Buyer</u>. The execution, delivery and performance of this Agreement and all writings relating hereto by Buyer have been duly and validly authorized. The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Buyer do not and will not: (i) violate any Law of any Governmental Authority; or (ii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer is a party or by which Buyer or its assets or properties may be bound.

6.2 <u>Buyer's Agreement to Provide Access to Computer Data and Deleting Consumer Data.</u> Buyer acknowledges that the Property includes computers and electronically stored data which are evidence in the FTC Lawsuit, and which may further constitute evidence in future law enforcement or other legal proceedings. Buyer accordingly agrees to provide all means to access and copy the electronically stored data in all computers included in the Property upon receipt of a written request for such access to a) any defendant named in the the FTC Lawsuit; b) the FTC; c) any regulatory or law enforcement agency, pursuant to a proper and legal request or demand; and, d) the Receiver. Access provided to comply with this provision shall be made as reasonably soon as possible after a written request is made by the requesting party, but not later than seven (7) business days after such request is made.

6.2.1 In accordance with the obligation to provide all Defendants access to the computers and data, within seven (7) business days after the Closing Date, Buyer shall provide a written notice to each Defendant, with a copy to the Receiver and the FTC, notifying each that all data on the computers (excepting the "Porn Business Information" as defined below) will be destroyed within thirty (30) days, and that Defendants must request and obtain at their own cost, copies of any of the data stored on the computers before that date.

6.2.2 Not later than thirty-one (31 days) after the Closing Date, Buyer agrees to delete and totally and irrevocably wipe all data from the computers except the following Porn Business Information, which may be retained on the computers: (a) customer, vendor, employee, sales, product, marketing, financial information, or other similar information used by Buyer and its affiliated companies solely for operating legal pornography and adult product businesses ("Porn Business Information").

6.2.3 Buyer, by and through Doron Nottea shall provide a sworn Declaration testifying that he has complied with section 6.2.2, not later than thirty-five (35) days following the Closing Date.

6.3   No Use for Enjoined Conduct. Buyer agrees and warrants that prior to deletion as required above, no data stored on the computers included in the Property may or will be used for any purpose enjoined by any order entered in the FTC Lawsuit. Buyer further warrants that no data stored on the computers included in the Property will be sold or otherwise transferred to any third-party, except as expressly required by Section 6.2.1 above.

7.   "AS IS" Transaction. Except as set forth herein, Buyer hereby acknowledges and agrees that Receiver makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Property (including, without limitation, income to be derived or expenses to be incurred in connection with the Property, the physical condition of any personal property comprising a part of the Property or which is the subject of any Contract, the value of the Property (or any portion thereof), the transferability of the Property, the terms, amount, validity, collectability or enforceability of any assumed liabilities, the title of the Property (or any portion thereof), the merchantability or fitness of the Personal Property or any other portion of the Property for any particular purpose, or any portion thereof). **WITHOUT IN ANY WAY LIMITING THE FOREGOING, RECEIVER HEREBY DISCLAIMS ANY WARRANTY (EXPRESS OR IMPLIED) OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE PROPERTY.** Buyer further acknowledges that Buyer has conducted an independent inspection and investigation of the physical condition of all portions the Property and all such other matters relating to or affecting the Property as Buyer deemed necessary or appropriate and that in proceeding with its acquisition of the Property, Buyer is doing so based solely upon such independent inspection and investigation. Accordingly, Buyer will accept the Property at the Closing **"AS IS, "WHERE IS," and "WITH ALL FAULTS" and without recourse as to Receiver.**

8.   Automatic Termination. If, during the Notice Period, an objection is filed that is sustained or the Court otherwise enters an order rejecting the sale contemplated by this

Agreement, this Agreement shall automatically terminate, and Receiver and Buyer shall be relieved of any further liability or obligation hereunder. Receiver and Buyer shall use best efforts to have any objection filed during the Notice Period resolved in favor of closing this sale.

9. <u>Miscellaneous</u>.

    9.1    <u>Entire Agreement</u>. This instrument and the documents to be executed pursuant hereto, contain the entire agreement between the Parties relating to the sale of the Property.

    9.2    <u>Modification</u>. This Agreement may be modified, amended or supplemented only by a written instrument duly executed by both Parties.

    9.3    <u>Closing Date</u>. All actions to be taken on the Closing Date pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

    9.4    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

    9.5    <u>Captions</u>. All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

    9.6    <u>Further Assurances</u>. Each Party will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by the other Party for the purpose of giving effect to the transactions contemplated herein or the intentions of the Parties with respect thereto including to vest, perfect or confirm ownership of the Property in Buyer; provided that nothing herein shall be deemed to require any Party to execute or deliver any such further assurance, document or instrument to the extent that the same could in any material way increase the burdens, obligations or liabilities otherwise imposed upon such Party by this Agreement.

    9.7    <u>Waiver</u>. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

    9.8    <u>Survival</u>. The representations and warranties contained herein and in any certificate or other writing delivered pursuant hereto shall terminate upon and not survive the Closing and there shall be no liability thereafter in respect thereof. Each of the covenants of the Buyer and Receiver hereto contained in this Agreement shall terminate upon the Closing.

EXHIBIT "G" - Page 7

9.9 <u>Assignments</u>. This Agreement shall not be assigned by either Party.

9.10 <u>Binding Effect</u>. Subject to the provisions of Section 9.9 above, this Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties.

9.11 <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the Laws of the State of California, without regard to conflict of law principles that would cause the law of another jurisdiction to apply.

9.12 <u>Good Faith</u>. Both Parties hereto agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after Closing.

9.13 <u>Construction</u>. In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party.

9.14 <u>Counterparts</u>. This Agreement may be signed in counterparts. The Parties further agree that this Agreement may be executed by the exchange of electronically sent signature pages provided that by doing so the Parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

9.15 <u>Time is of the Essence</u>. Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

9.16 <u>Court Jurisdiction</u>. THE PARTIES AGREE THAT IF ANY DISPUTE ARISES OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE DOCUMENTS EXECUTED HEREUNDER OR IN CONNECTION HEREWITH, THE COURT SHALL HAVE EXCLUSIVE PERSONAL AND SUBJECT MATTER JURISDICTION AND SHALL BE THE EXCLUSIVE VENUE TO RESOLVE ANY AND ALL DISPUTES RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT. THE COURT SHALL HAVE SOLE JURISDICTION OVER SUCH MATTERS AND THE PARTIES AFFECTED THEREBY AND BUYER AND RECEIVER EACH HEREBY CONSENT AND SUBMIT TO SUCH SOLE JURISDICTION.

[*Signature Page Follows*]

**In Witness Whereof**, Buyer and Receiver have executed this Asset Purchase Agreement as of the day and year first above written.

**BUYER:**

Vertex Holdings Group, Inc.
By: _[signature]_
Its: OWNER

**LORI BEKHOR**
_[signature: Lori Bekhor]_
Lori Bekhor

**RECEIVER:**
Charlene C. Koonce
_[signature: Charlene Koonce]_
Charlene Koonce, Receiver

AGREED AS TO FORM AND CONTENT:

FEDERAL TRADE COMMISSION

By: _[signature]_

**All Schedules**

[ATTACHED]

**All Exhibits**

[ATTACHED]

Case 2:15-cv-04527-GW-PLA   Document 350-7   Filed 04/18/16   Page 11 of 11   Page ID
#:5704
Case 2:15-cv-04527-GW-PLA   Document 307-1   Filed 12/18/15   Page 11 of 30   Page ID
#:5436

## Exhibit A

Desks (x12)
Office Chairs (x12)
Leather Sofa
Leather Couch
Leather Chair
Coffee Tables (x2)
Glass Conference Table
Book Shelf
Metal Vertical File Cabinets (x4)
Wood Vertical File Cabinet
Credenzas (x2)
Dyson Floor Tower Fan
Pit Group Couch
Two Cushion Couch (not in good shape)
Entertainment cabinet
Miscellaneous decorative vases
Miscellaneous office supplies
iMac Thunderbolt Display (x5)
iMac with Retina 5K Display (x3)
MacBook Pro "15 inch (x4)
Dell XPS desktops (x2)
Security Servers (x2)
Night Owl Security System (x2)
Visio 55" Television
Sony Sound Bar
Sony Surveillance Cameras (x3)
Dell Monitor
Acer Monitors (x3)
Dyson Tower Fan
Lenovo Thinkcentre M83
Ricoh multifunction color copier