1   JONATHAN E. NUECHTERLEIN
    General Counsel
2
    DAMA J. BROWN
3   Regional Director

    REID TEPFER
4   rtepfer@ftc.gov
    Texas Bar No. 24079444
5   LUIS GALLEGOS
    lgallegos@ftc.gov
6   Oklahoma Bar No. 19098
    Federal Trade Commission
7   1999 Bryan Street, Suite 2150
    Dallas, Texas 75206
    (214) 979-9395 (Tepfer)
8   (214) 979-9383 (Gallegos)
    (214) 953-3079 (fax)
9
    RAYMOND McKOWN
10  rmckown@ftc.gov
    California Bar No. 150975
    10877 Wilshire Boulevard, Suite 700
11  Los Angeles, California 90024
    (310) 824-4325 (voice)
12  (310) 824-4380 (fax)

13  Attorneys for Plaintiff Federal Trade Commission

                    UNITED STATES DISTRICT COURT
14      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15

16

| FEDERAL TRADE COMMISSION, | Case No.  CV 15-4527-GW(PLAx) |
|---|---|
| Plaintiff, | PLAINTIFF FEDERAL TRADE COMMISSION'S SECOND SET OF DISCOVERY REQUESTS TO RELIEF DEFENDANT CHARGEBACK ARMOR, INC. |
| v. | |
| BUNZAI MEDIA GROUP, INC., et al. | |
| Defendants. | |

        PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS
Exhibit 917

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, Plaintiff Federal Trade Commission (FTC or Commission) requests that Relief Defendant Secured Merchants, Inc., respond to the following Requests for Admission and Requests for Production of Documents within 30 days of service.

## I.   INSTRUCTIONS

1.   These instructions and definitions should be construed to require Discovery Request responses based upon your actual or constructive knowledge, information available to you, as well as that of your attorneys, accountants, consultants, employees, independent contractors, representatives, agents, and others acting on your behalf.  These Requests must be responded to by the party to whom they are directed within thirty (30) days of the date of service, as service is defined by Rule 6 of the Federal Rules of Civil Procedure.

2.   If you object to a portion or an aspect of any Request, state the grounds of your objection with specificity and answer the remainder of the Request to the extent required by Rule 33(b)(3), 34(b)(2)(c), or 36(a)(4)-(5), whichever is applicable.

3.   If, in responding to these Requests, you encounter any ambiguities when construing a Request, question, instruction, or definition, your response shall set forth the matter deemed ambiguous and the construction used in answering the Request.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 2

4.      Should a document responsive to any portion of these Requests be withheld from production under a claim of privilege, a privilege log shall be submitted setting forth the information required under Federal Rule of Civil Procedure 26(b)(5)(A).  Any privilege log submitted shall include:

       a.      the date of the document;

       b.      the nature of the information, including the format of the document;

       c.      the identity of all authors and recipients of the document;

       d.      if you are not the custodian of the document, the identity of the present custodian of the document;

       e.      a summary of the contents of the document; and

       f.      the privilege asserted or any other ground for withholding, and describe with particularity the claimed basis for withholding.

5.      These Requests are continuing in nature pursuant to Federal Rule of Civil Procedure 26(e).  Therefore, you must file supplemental responses in a timely manner if you learn that your response is incomplete or incorrect.

6.      Unless otherwise noted or clear from the Request, the applicable time period for these Requests is from January 1, 2010, through the present.  If the response to any Request is different for different periods within the applicable time period, provide a complete response for each time period and designate the specific time period for which the response is applicable.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 3

7.      Legible copies of original documents may be submitted in lieu of originals only if they are true, correct, and complete copies of the original document; provided, however, that submission of a copy shall constitute a waiver of any claim as to the authenticity of the copy should it be necessary to introduce the copy into evidence in any court of law; and provided, further, that you shall retain the original documents and produce them to Plaintiff upon request.

8.      You shall submit each document in its entirety even if only a portion of the document relates to a Request.  This means that the document shall not be edited, cut, or expunged and shall include all appendices, tables, or other attachments and all other documents referred to in the document or its attachments.

9.      These Requests seek production of all documents described, including all drafts, of whatever date, and all non-identical copies.

10.      If any document responsive to a Request is not in your possession, custody, or control, identify each person who has possession, custody, or control of the original or any copy of the document; if the document requested to be produced was, but no longer is, in your possession, state the disposition of it and the reasons for the disposition; if the document requested to be produced has been destroyed, state the time the document was destroyed, the reason for its destruction, and the identity of the person who destroyed the document and the identity of any person who directed that the document be destroyed.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 4

11.     If any document responsive to a Request has already been produced to Plaintiff, identify the document, the type of document, where it was kept, and how it was produced.  If a portion of a document that has previously been produced is responsive to a Request, identify the document, the type of document, the location of the document, and specify where in the document the requested information is contained.

12.     Each response, document, or thing produced shall be clearly and precisely identified as to the numbered Request to which it is responsive.

13.     The Commission often makes its files available to other civil and criminal federal, state, local, or foreign law enforcement agencies. The FTC may make information supplied by you available to such agencies where appropriate pursuant to the FTC Act and 16 C.F.R. §§ 4.11(c) and (j). Information you provide may be shared with other federal, state, or foreign civil or criminal agencies.

II.   **DEFINITIONS**

For purposes of these Discovery Requests, the following definitions shall apply:

1.     "Agents," "representatives," and "employees" mean any person who is or was paid a salary or a commission, or provided anything of value, or was an independent contractor for, or received any monetary or other benefit in exchange for, goods or services provided.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
**Exhibit 917**

Exhibit 917

2.     "All" and "any" shall be interpreted inclusively and shall mean "any and all."

3.     "Consumer" refers to any person to whom Defendants offered to sell or sold skincare products.

4.     "Corporate Defendants" means BunZai Media Group, Inc., d/b/a AuraVie and Miracle Face Kit; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc., also doing business as AuraVie Distribution; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; Calenergy, Inc.; KAI Media, Inc.; Insight Medial, Inc.,; Focus Media Solutions, Inc.; Secured Commerce, LLC; Secured Merchants, LLC; USM Products, Inc.; Merchant Leverage Group, Inc.; DMA Media Holdings, Inc.; Shalita Holdings, Inc.; and All Star Beauty Products, Inc., and any and all  subsidiaries, successors, employees, agents, independent contractors, wholly owned affiliates, and all persons selling goods or services for or on behalf of any of the foregoing.

5.     "Defendants" means the "Individual Defendants" and the  "Corporate Defendants."

6.      "Distributor" or "retailer" refers to any person to whom   Defendants offered to sell or sold skincare products for resale purposes.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 6

7.      "Document" or "Documents" means any record, writing, drawing, graph, chart, photograph, sound recording, image, data or data compilation stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonable usable form and includes electronically stored information.

8.      "Documents sufficient to show" means a group of documents which, when viewed together, reveals the information sought.  The fact that no single document contains the information sought does not relieve you of the responsibility to gather and return the additional documents which, when viewed together, do contain the information requested.  The phrase encompasses those documents that are both necessary and sufficient to provide the information requested.  Where "documents sufficient to show" is specified, if summaries, compilations, lists or synopses are available that provide the information, these should be provided in lieu of the underlying documents.

9.      "Including" means "including, but not limited to."

10.      "Identify" means (a) as to a person – by providing the person's full name, present or last known address and telephone number, and the present or last known place of employment; and (b) as to a document – by providing a copy of the document, by providing the Bates or identification number of any copy of the document or thing previously produced, or, if a copy of the document cannot be produced, by describing:  (i) the type of document; (ii) its general subject matter;

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 7

(iii) its date; (iv) its author(s) and recipient(s); (v) the present location of each document or thing and each copy thereof; and (vi) the name, job title, employer, and address of the custodian of the document or thing.

12.    "Individual Defendants" means Alon Nottea, Motti Nottea, Doron Nottea, Igor Latsanovski, Oz Mizrahi, Roi Reuveni, and Khristopher Bond a/k/a Ray Ibbot, Alan Argaman, and Paul Medina and each of their successors and assigns, if any, by whatever names known.

13.    "Person" means an individual, organization, or other legal entity, including, but

not limited to, an association, cooperative, corporation, limited liability company, organization, partnership, proprietorship, or trust, or combination thereof.

14.    "Relating" (or "relate") means pertaining, describing, referring, evidencing, reflecting, discussing, showing, supporting, contradicting, refuting, constituting, embodying, containing, concerning, identifying, or in any way logically or factually connected with the matter discussed.

15.    "You" or "your" means the party upon whom these Discovery Requests are served.

16.    The words "or" and "and" shall be read in the conjunctive and not in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of a request.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 8

17.    The use of a verb in any tense shall be construed as the use of the verb in all other tenses and the singular form shall be deemed to include the plural, and vice-versa.

18.    The singular form of any noun shall be deemed to include the plural, and vice versa.

Notwithstanding the above definitions, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## III.    REQUESTS FOR ADMISSIONS

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff requests that you admit for purposes of this pending action the truth of the matters requested.  If you do not admit to a request, you must either specifically deny it or state in detail why you cannot admit or deny it, as required by Rule 36:

1.    Admit that the Federal District Court for the Central District of California has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(a), 45(*l*), 53(b), and 56(a).

*Response:*

1  2.     Admit that the complaint in this litigation alleges violations of the laws of

2  the United States.

3  *Response: I had no knowledge of what the defendants did until I read about their alleged activities on Friday, June 19, 2015, which was one day after the defendants were served by the FTC and at which point I learned that CBA's bank account was frozen for some reason. I only learned of the real reason why CBA's bank account was frozen on Sunday, June 21 when I received a message on my LinkedIn account from Charlene Koonce, the Receiver, who by they way, as I'm sure you've alrady figured out by now, is the only real financial beneficiary of this entire investigation since she is the only one to ever make money off this case. All my answers in this and future discoveries are based on knowledge I did or did not have prior to June 19, 2015 when I read the lawsuit which I had demanded to see since I was shocked that CBA's bank account was frozen and I wanted to find out why. I'm still shocked that just because one of the defendants, namely Doron Nottea, was a co-signer of CBA's account, the FTC has messed up with my life as badly as it has. I'll explain here once again, for the 10th time, the only reason why I allowed Doron Nottea to be a co-signer of CBA's bank account is because I travel a lot and I needed someone to write and ship checks to consultants and other little expenses. He wrote exactly 19 checks and they were all upon my written or verbal confirmation.*

4

5  3.     Admit that the complaint alleges violations of the Federal Trade

6  Commission Act.

7  *Response: The alleged violations have nothing to do with CBA as CBA was not involved in the sale of skincare products through negative option schemes. Also, CBA, as a legal entity, was only incorporated on Feb 18, 2015, which was almost a year after the alleged violators sold skincare products through Negative Option schemes.*

8

9  4.     Admit that the complaint alleges violations of the Restore Online Shoppers

10  Act.

8  *Response: The alleged violations have nothing to do with CBA as CBA was not involved in the sale of skincare products through negative option schemes. Also, CBA, as a legal entity, was only incorporated on Feb 18, 2015, which was almost a year after the alleged violators sold skincare products through Negative Option schemes.*

*11*
12

13    5.    Admit that the complaint alleges violations of the Electronic Funds Transfer

14    Act.

9     *Response: The alleged violations have noting to do with CBA as CBA was not involved in the sale of skincare products through negative options schemes. Also, CBA, as a legal entity, was only incorporated on Feb 18, 2015, which was almost a year after the alleged violators sold skincare products through Negative Option schemes.*

15

16

17    6.    Admit that venue is proper in the Central District of California under 28

18    U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d) and 1395(a) and 15 U.S.C. §

19    53(b).

20    *Response: Admit*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 10

7.    Admit that Doron Nottea has been an officer of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

8.    Admit that Doron Nottea was an owner of BunZai Media Group, Inc. since at least January 1, 2010.

*Response: I have no such knowledge.*

9.    Admit that, since at least January 2010, Doron Nottea has controlled or had the authority to control the business operations of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

10.    Admit that Doron Nottea was involved in the day-to-day operations of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

11.    Admit that Doron Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards by BunZai Media Group, Inc.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 11

12.     Admit that Doron Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards by BunZai Media Group, Inc.

*Response: I have no such knowledge.*

13.     Admit that Doron Nottea transacts or has transacted business in the Central District of California.

*Response: Accept*

14.     Admit that Doron Nottea resides in the Central District of California.

*Response: Accept*

15.     Admit that Doron Nottea resides at ████████ Tarzana, California.

*Response: Accept. I learned of his home address on June 19, 2015, one day after he got served by the FTC. I wanted to see him right away since CBA's bank account was frozen so he told me to come meet him at this address so I can read the lawsuit's thousands of pages. Congrats to you on compiling all this paperwork when you could have just inquired why AuraVie had 850 complaints at the FTC vs the 300,000 customers it had and realized that it's 0.28%. And maybe you should have asked yourself if you should go through all this and waste your brainpower and all of our time when Visa, MasterCard, Discover and AMEX have no problem with merchants who's chargeback rate is not more than 1% of total charges.*

16.     Admit that Alon Nottea has been an officer of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

17.     Admit that Alon Nottea was an owner of BunZai Media Group, Inc. since at least January 1, 2010.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

Page | 12

18.     Admit that Alon Nottea was involved in the day-to-day operations of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

19.     Admit that Alon Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards BunZai Media Group, Inc.

*Response: I have no such knowledge.*

20.     Admit that Alon Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards BunZai Media Group, Inc.

*Response: I have no such knowledge.*

21.     Admit that, since at least January 2010, Alon Nottea has controlled or had the authority to control the business operations of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

22.     Admit that Alon Nottea transacts or has transacted business in the Central District of California.

*Response: Accept*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 13

1    23.    Admit that Alon Nottea resides in the Central District of California.

2    *Response: Accept*

3

4    24.    Admit that Alon Nottea resides at ███████, Winnetka,

5    California.

6    *Response: Accept*

7

8    25.    Admit that Igor Latsanovski has been an officer of BunZai Media Group,

9    Inc.

10   *Response: I have no such knowledge.*

11

12   26.    Admit that Igor Latsanovski was an owner of BunZai Media Group, Inc.

13   since at least January 1, 2010.

14   *Response: I have no such knowledge.*

15

16   27.    Admit that, since at least January 2010, Igor Latsanovski has controlled or

17   had the authority to control the business operations of BunZai Media Group, Inc.

18   *Response: I have no such knowledge.*

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 14

28.     Admit that Igor Latsanovski had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards by BunZai Media Group, Inc.

*Response: I have no such knowledge.*

29.     Admit that Igor Latsanovski had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards BunZai Media Group, Inc.

*Response: I have no such knowledge.*

30.     Admit that Igor Latsanovski transacts or has transacted business in the Central District of California.

*Response: I have no such knowledge.*

31.     Admit that Igor Latsanovski resides in the Central District of California.

*Response: I have no such knowledge.*

32.     Admit that Igor Latsanovski resides at ███████████, Calabasas, California.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 15

33.   Admit that Motti Nottea has been an officer of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

34.   Admit that Motti Nottea was the CEO of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

35.   Admit that Motti Nottea was an owner of BunZai Media Group, Inc. since at least January 1, 2010.

*Response: I have no such knowledge.*

36.   Admit that, since at least January 2010, Motti Nottea has controlled or had the authority to control the business operations of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

37.   Admit that Motti Nottea transacts or has transacted business in the Central District of California.

*Response: I have no such knowledge.*

38.   Admit that Motti Nottea had a merchant account in his name for BunZai Media Group, Inc.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 16

39.     Admit that Motti Nottea resides in the Central District of California.

*Response: Accept*

40.     Admit that Motti Nottea resides at ███████████████ , Tarzana, California.

*Response: Motti used to live there, but now lives in Israel.*

41.     Admit that Roi Reuveni has been an officer of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

42.     Admit that Roi Reuveni has been a manager of the customer service department of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

43.     Admit that Roi Reuveni has been the manager of the chargebacks department of BunZai Media Group, Inc.

*Response: I know that Roi has a lot of experience about properly processing chargebacks but since he never presented me his resume and has no linkedin profile, I am not aware of any names of companies he did chargebacks for beside a skincare brand called AuraVie, but I don't now the legal entities that controlled AuraVie.*

44.     Admit that, acting alone or in concert with others, Roi Reuveni drafted the

deceptive template used to respond by BunZai Media Group, Inc. to respond to

financial institutions when consumers requested chargebacks.

*Response: I have no such knowledge. Roi's written English is not good enough to
draft such documents. If you read those response letters, you can easily tell that only
a lawyer or someone who has studied law could have written them.*

45.     Admit that, since at least January 2010, Roi Reuveni has controlled or had

the authority to control the business operations of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

46.     Admit that Roi Reuveni transacts or has transacted business in the Central

District of California.

*Response: Accept*

47.     Admit that Roi Reuveni resides in the Central District of California.

*Response: Accept*

48.     Admit that Roi Reuveni resides at ███████████████████████,

Woodland Hills, California.

*Response: Accept*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

49.    Admit that Kristopher Bond has been an officer of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

50.    Admit that Kristopher Bond was an owner of BunZai Media Group, Inc. since at least January 1, 2010.

*Response: I have no such knowledge.*

51.    Admit that Kristopher Bond was involved in the day-to-day operations of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

52.    Admit that Kristopher Bond had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards BunZai Media Group, Inc.

*Response: I have no such knowledge.*

53.    Admit that Kristopher Bond had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards BunZai Media Group, Inc.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 19

1    54.    Admit that BunZai Media Group, Inc., was incorporated in California on

2    January 1, 2010.

3    *Response: I have no such knowledge.*

4

5    55.    Admit that, since BunZai Media Group, Inc.'s formation, it has maintained

6    a substantial course of trade in or affecting commerce, as "commerce" is defined

7    in Section 4 of the FTC Act, 15 U.S.C. § 44.

8    *Response: I have no such knowledge.*

9

10   56.    Admit that BunZai Media Group, Inc. has offered for sale, sold, and

11   distributed skincare products to consumers throughout the United States.

12   *Response: I have no such knowledge.*

13

14   57.    Admit that BunZai Media Group is not exempt from the coverage of the

15   Federal Trade Commission Act by statute.

16   *Response: I have no such knowledge.*

17

18   58.    Admit that BunZai Media Group, Inc. is a for-profit corporation.

19   *Response: I have no such knowledge.*

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 20

1  59.   Admit that BunZai Media Group, Inc has offered for sale, sold, and

2  distributed skincare products using the name AuraVie.

3  *Response: I have no such knowledge. I've heard of AuraVie, but I never knew which legal company name it was owned by.*

4

5  60.   Admit that BunZai Media Group, Inc has offered for sale, sold, and

6  distributed skincare products using the name Dellure.

7  *Response: I have no such knowledge. I've heard of Dellure, but I never knew which legal company name it was owned by.*

8

9  61.   Admit that BunZai Media Group, Inc has offered for sale, sold, and

10  distributed skincare products using the name Miracle Face Kit.

11  *Response: I have no such knowledge.*

12

13  62.   Admit that BunZai Media Group, Inc has offered for sale, sold, and

14  distributed skincare products using the website AuraViefreetrial.com.

15  *Response: I have no such knowledge.*

16

17  63.   Admit that BunZai Media Group, Inc has offered for sale, sold, and

18  distributed skincare products using the website mymiraclekit.com.

19  *Response: I have no such knowledge.*

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1    64.    Admit that BunZai Media Group, Inc has offered for sale, sold, and

2    distributed skincare products using the website miraclefacekit.com.

3    *Response: I have no such knowledge.*

4

5    65.    Admit that BunZai Media Group, Inc has offered for sale, sold, and

6    distributed skincare products using the term "risk free trial."

7    *Response: I have no such knowledge.*

8

9    66.    Admit that BunZai Media Group, Inc has offered for sale, sold, and

10   distributed skincare products using the term "gifts."

11   *Response: I have no such knowledge.*

12

13   67.    Admit that consumers who bought BunZai Media Group, Inc.'s skin care

14   products had to return the product within 10 days to avoid being charged for the

15   product.

16   *Response: I never purchased skincare products so I wouldn't know the terms.*

17

18   68.    Admit that consumers who bought BunZai Media Group, Inc.'s skin care

19   products had to return the product within 10 days to avoid being subscribed into a

20   negative option continuity plan.

     *Response: I never purchased skincare products so I wouldn't know the terms.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 22

1  69.  Admit that consumers who bought BunZai Media Group, Inc.'s skin care

2  products had to return the product within 10 days to avoid being subscribed into a

3  negative option continuity plan that would charge the consumers a monthly fee.

4  *Response: I never purchased skincare products so I wouldn't know the terms.*

5

6  70.  Admit that consumers who bought BunZai Media Group, Inc.'s skin care

7  products had to return the product within 10 days to avoid being subscribed into a

8  negative option continuity plan that would charge the consumers a fee of about

9  $97.88.

10  *Response: I never purchased skincare products so I wouldn't know the terms.*

11

12  71.  Admit that consumers who bought BunZai Media Group, Inc.'s skin care

13  products had to pay a shipping and handling charge.

14  *Response: I never purchased skincare products so I wouldn't know the terms.*

15

16  72.  Admit that BunZai Media Group, Inc., processed consumer skincare

17  payments through a merchant account in the name of Agoa Holdings, Inc.

18  *Response: I never purchased skincare products so I wouldn't know through which merchant account a credit card would be processed through.*

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 23

1    73.    Admit that BunZai Media Group, Inc. processed consumer skincare

2    payments through a merchant account in the name of Zen Mobile Media, Inc.

3    *Response: I never purchased skincare products so I wouldn't know through which merchant account a credit card would be processed through.*

4

5    74.    Admit that BunZai Media Group, Inc. processed consumer skincare

6    payments through a merchant account in the name of SafeHaven Ventures, Inc.

7    *Response: I never purchased skincare products so I wouldn't know through which merchant account a credit card would be processed through.*

8

9    75.    Admit that BunZai Media Group, Inc. processed consumer skincare

10   payments through a merchant account in the name of Heritage Alliance Group,

11   Inc.

12   *Response: I never purchased skincare products so I wouldn't know through which merchant account a credit card would be processed through.*

13

14   76.    Admit that BunZai Media Group, Inc. processed consumer skincare

15   payments through a merchant account in the name of AMD Financial Network,

16   Inc.

17   *Response: I never purchased skincare products so I wouldn't know through which merchant account a credit card would be processed through.*

18

19   77.    Admit that BunZai Media Group, Inc. processed consumer skincare

20   payments through a merchant account in the name of Kai Media, Inc.

     *Response: I never purchased skincare products so I wouldn't know through which merchant account a credit card would be processed through.*

PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS

Page | 24

Exhibit 917

78.     Admit that BunZai Media Group, Inc. processed consumer skincare payments through a merchant account in the name Insight Media, Inc.

*Response: I never purchased skincare products so I wouldn't know through which merchant account a credit card would be processed through.*

79.     Admit that SBM Management, Inc.'s corporate credit card was used to pay BunZai Media Group, Inc.'s websites.

*Response: I have no such knowledge.*

80.     Admit that Media Urge, Inc. was used by BunZai Media Group, Inc. to secure third-party advertising tracked sales.

*Response: I don't know the exact working relationship these companies had with each other.*

81.     Admit that Media Urge, Inc. was used by BunZai Media Group, Inc. to deisgn marketing materials.

*Response: I don't know the exact working relationship these companies had with each other.*

82.     Admit that Doron Nottea has been an officer of Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*

PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS

Page | 25

**Exhibit 917**

1   83.     Admit that Doron Nottea was an owner of Pinnacle Logistics, Inc. since at

2   least January 1, 2010.

3   *Response: I have no such knowledge.*

4

5   84.     Admit that, since at least January 2010, Doron Nottea has controlled or had

6   the authority to control the business operations of Pinnacle Logistics, Inc.

7   *Response: I have no such knowledge.*

8

9   85.     Admit that Doron Nottea had knowledge that consumers had alleged that

10  unauthorized charges were being billed to consumers' debit cards by Pinnacle

11  Logistics, Inc.

12  *Response: I have no such knowledge.*

13

14  86.     Admit that Doron Nottea had knowledge that consumers had alleged that

15  unauthorized charges were being billed to consumers' credit cards by Pinnacle

16  Logistics, Inc.

17  *Response: I have no such knowledge.*

18

19  87.     Admit that Alon Nottea has been an officer of Pinnacle Logistics, Inc.

20  *Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 26

88.    Admit that Alon Nottea was an owner of Pinnacle Logistics, Inc. since at least January 1, 2010.

*Response: I have no such knowledge.*

89.    Admit that Alon Nottea was involved in the day-to-day operations of Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*

90.    Admit that Alon Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards by Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*

91.    Admit that Alon Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards by Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*

92.    Admit that Alon Nottea has controlled or had the authority to control the business operations of Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 27

93.     Admit that Oz Mizrahi has been an officer of Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*


94.     Admit that Oz Mizrahi was an owner of Pinnacle Logistics, Inc. since at
least January 1, 2010.

*Response: I have no such knowledge.*


95.     Admit that Oz Mizrahi was involved in the day-to-day operations of
Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*


96.     Admit that Oz Mizrahi had knowledge that consumers had alleged that
unauthorized charges were being billed to consumers' credit cards by Pinnacle
Logistics, Inc.

*Response: I have no such knowledge.*


97.     Admit that Oz Mizrahi had knowledge that consumers had alleged that
unauthorized charges were being billed to consumers' debit cards by Pinnacle
Logistics, Inc.

*Response: I have no such knowledge.*


**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 28

98.    Admit that Oz Mizrahi has controlled or had the authority to control the business operations of Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*

99.    Admit that Igor Latsanovski has been an officer of Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*

100.   Admit that Igor Latsanovski was an owner of Pinnacle Logistics, Inc. since at least January 1, 2010.

*Response: I have no such knowledge.*

101.   Admit that, since at least January 2010, Igor Latsanovski has controlled or had the authority to control the business operations of Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*

102.   Admit that Igor Latsanovski had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards by Pinnacle Logistics, Inc.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 29

1   103.  Admit that Igor Latsanovski had knowledge that consumers had alleged that

2   unauthorized charges were being billed to consumers' credit cards by Pinnacle

3   Logistics, Inc.

4   *Response: I have no such knowledge.*

5

6   104.  Admit that Motti Nottea has been an officer of Pinnacle Logistics, Inc.

7   *Response: I have no such knowledge.*

8

9   105.  Admit that, since at least January 2010, Motti Nottea has controlled or had

10   the authority to control the business operations of Pinnacle Logistics, Inc.

11   *Response: I have no such knowledge.*

12

13   106.  Admit that Roi Reuveni has been an officer of Pinnacle Logistics, Inc.

14   *Response: I have no such knowledge.*

15

16   107.  Admit that Roi Reuveni has been a manager of the customer service

17   department of Pinnacle Logistics, Inc.

18   *Response: I have no such knowledge.*

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 30

1  108.   Admit that Roi Reuveni has been the manager of the chargebacks

2  department of Pinnacle Logistics, Inc.

3  *Response: I know that Roi has a lot of experience about properly processing chargebacks but since he never presented me his resume and has no linkedin profile, I am not aware of any names of companies he did chargebacks for.*

4

5  109.   Admit that, acting alone or in concert with other, Roi Reuveni drafted the

6  template used to respond by Pinnacle Logistics, Inc. to respond to financial

7  institutions  when consumers requested chargebacks.

8  *Response: Roi's written English is not good enough to draft such a template so a lawyer must have drafted it.*

9

10  110.   Admit that, since at least January 2010, Roi Reuveni has controlled or had

11  the authority to control the business operations of Pinnacle Logistics, Inc.

12  *Response: I have no such knowledge.*

13

14  111.   Admit that Pinnacle Logistics, Inc., was incorporated in California on June

15  6, 2012.

16  *Response: I have no such knowledge.*

17

18  112.   Admit that, since Pinnacle Logistics, Inc.'s formation, it has maintained a

19  substantial course of trade in or affecting commerce, as "commerce" is defined in

20  Section 4 of the FTC Act, 15 U.S.C. § 44.

*Response: I have no such knowledge.*

1   113.   Admit that Pinnacle Logistics, Inc. has offered for sale, sold, and distributed

2   skincare products to consumers throughout the United States.

3   *Response: I have no such knowledge.*

4

5   114.   Admit that Pinnacle Logistics is not exempt from the coverage of the

6   Federal Trade Commission Act by statute.

7   *Response: I have no such knowledge.*

8

9   115.   Admit that Pinnacle Logistics, Inc. is a for-profit corporation.

10   *Response: I have no such knowledge.*

11

12   116.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

13   distributed skincare products using the name AuraVie.

14   *Response: I have no such knowledge.*

15

16   117.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

17   distributed skincare products using the name Dellure.

18   *Response: I have no such knowledge.*

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 32

118.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and distributed skincare products using the name Miracle Face Kit.

*Response: I have no such knowledge.*

119.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and distributed skincare products using the website AuraViefreetrial.com.

*Response: I have no such knowledge.*

120.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and distributed skincare products using the website mymiraclekit.com.

*Response: I have no such knowledge.*

121.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and distributed skincare products using the website miraclefacekit.com.

*Response: I have no such knowledge.*

122.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and distributed skincare products using the term "risk free trial."

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 33

1    123.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

2    distributed skincare products using the term "gifts."

3    *Response: I have no such knowledge.*

4

5    124.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

6    distributed skincare products using the term "risk free trials."

7    *Response: I have no such knowledge.*

8

9    125.   Admit that consumers who bought Pinnacle Logistics, Inc.'s skin care

10   products had to return the product within 10 days to avoid being charged for the

11   product.

12   *Response: I have no such knowledge.*

13

14   126.   Admit that consumers who bought Pinnacle Logistics, Inc.'s skin care

15   products had to return the product within 10 days to avoid being subscribed into a

16   negative option continuity plan.

17   *Response: I have no such knowledge.*

18

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 34

127.   Admit that consumers who bought Pinnacle Logistics, Inc.'s skin care products had to return the product within 10 days to avoid being subscribed into a negative option continuity plan that would charge the consumers a monthly fee.

*Response: I have no such knowledge.*

128.   Admit that consumers who bought Pinnacle Logistics, Inc.'s skin care products had to return the product within 10 days to avoid being subscribed into a negative option continuity plan that would charge the consumers a fee of about $97.88.

*Response: I have no such knowledge.*

129.   Admit that consumers who bought Pinnacle Logistics, Inc.'s skin care products had to pay a shipping and handling charge.

*Response: I have no such knowledge.*

130.   Admit that Pinnacle Logistics, Inc. processed consumer skincare payments through a merchant account in the name of Agoa Holdings, Inc.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 35

131.   Admit that Pinnacle Logistics, Inc. processed consumer skincare payments through a merchant account in the name of Zen Mobile Media, Inc.

*Response: I have no such knowledge.*

132.   Admit that Pinnacle Logistics, Inc. processed consumer skincare payments through a merchant account in the name of SafeHaven Ventures, Inc.

*Response: I have no such knowledge.*

133.   Admit that Pinnacle Logistics, Inc. processed consumer skincare payments through a merchant account in the name of Heritage Alliance Group, Inc.

*Response: I have no such knowledge.*

134.   Admit that Pinnacle Logistics, Inc. processed consumer skincare payments through a merchant account in the name of AMD Financial Network, Inc.

*Response: I have no such knowledge.*

135.   Admit that Pinnacle Logistics, Inc. processed consumer skincare payments through a merchant account in the name of Kai Media, Inc.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 36

1  136.   Admit that Pinnacle Logistics, Inc. processed consumer skincare payments

2  through a merchant account in the name Insight Media, Inc.

3  *Response: I have no such knowledge.*

4

5  137.   Admit that SBM Management, Inc.'s corporate credit card was used to pay

6  Pinnacle Logistics, Inc.'s websites.

7  *Response: I have no such knowledge.*

8

9  138.   Admit that Media Urge, Inc. was used by Pinnacle Logistics, Inc. to secure

10  third-party advertising tracked sales.

11  *Response: I have no such knowledge.*

12

13  139.   Admit that Media Urge, Inc. was used by Pinnacle Logistics, Inc. to deisgn

14  marketing materials.

15  *Response: I have no such knowledge.*

16

17  140.   Admit that Paul Medina is or was the Executive President or Vice President

18  of Media Urge, Inc..

19  *Response: I have no such knowledge.*

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 37

1  141.   Admit Paul Medina was the manager of the call center for Pinnacle

2  Logistics, Inc.

3  *Response: I have no such knowledge.*

4

5  142.   Admit that Paul Medina is or was the manager of Focus Media Solutions.

6  *Response: Accept*

7

8  143.   Admit that each Corporate Defendant is not exempt from the coverage of

9  the Federal Trade Commission Act by statute.

10  *Response: Not my place to make such judgments.*

11

12  144.   Admit that each Individual Defendants are not exempt from the coverage of

13  the Federal Trade Commission Act by statute.

14  *Response: Not my place to make such judgments.*

15

16  145.   Admit that misrepresentations or deceptive omissions of material fact

17  constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

18  *Response: Not my place to make such judgments.*

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 38

146.   Admit that Defendants' representations that Defendants' skincare products were free was false.

*Response: Not my place to make such judgments.*


147.   Admit that Defendants' representations about its free skincare products constituted a deceptive act or practice in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).

*Response: Not my place to make such judgments.*


148.   Admit that Sections 5(*l*) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(*l*) and 53(b), empower this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the FTC Act.

*Response: Not my place to make such judgments.*


149.   Admit that the Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

*Response: Not my place to make such judgments.*


**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 39

1    150.   Admit that Alon Nottea, Khristopher Bond, and Igor Latsanovski were

2    partners in BunZai Media Group, Inc.

3    *Response: I only know that they marketed a product called AuraVie, but don't know*
     *through which legal entity.*

4

5    151.   Admit that Doron Nottea's office contained pre-signed checks for

6    companies all Corporate Defendants.

7    *Response: I have no such knowledge.*

8

9    152.   Admit that BunZai Media Group, Inc., directly or indirectly, opened

10   merchant accounts in Latvia.

11   *Response: I have no such knowledge.*

12

13   153.   Admit that BunZai Media Group, Inc., directly or indirectly, opened

14   merchant accounts in Estonia.

15   *Response: I have no such knowledge.*

16

17   154.   Admit that Alon Nottea, directly or indirectly, opened merchant accounts in

18   Latvia.

19   *Response: I have no such knowledge.*

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 40

1   155.   Admit that Alon Nottea, directly or indirectly, opened merchant accounts in

2   Estonia.

3   *Response: I have no such knowledge.*

4

5   156.   Admit that Secured Merchants LLC processed, refuted, or responded to

6   AuraVie chargebacks.

7   *Response: Secured Merchants LLC billed SBM for processing of chargebacks, but this legal entity never actually processed, refuted or responded to AuraVie chargebacks. Secured Merchants had a working relationship with a company in India which processed chargebacks. Secured Merchants merely made a profit for such intermediation. Last I checked, intermediation of a service was not illegal.*

8

9   157.   Admit that Chargeback Armor, Inc. processed, refuted, or responded to

10   AuraVie chargebacks.

11   *Response: Never. Chargeback Armor, Inc was incorporated on Feb 18, 2015. As far I now know, Alon stopped marketing the AuraVie products around Feb of 2014.*

12

13   158.   Admit that Secured Merchants LLC processed, refuted, or responded to

14   Dellure chargebacks.

15   *Response: I have no such knowledge.*

16

17   159.   Admit that Chargeback Armor, Inc. processed, refuted, or responded to

18   Dellure chargebacks.

19   *Response: Never.*

20

Exhibit 917

1   160.   Admit that Secured Merchants LLC processed, refuted, or responded to

2   Miracle Face Kit chargebacks.

3   *Response: I have no such knowledge.*

4

5   161.   Admit that Chargeback Armor, Inc. processed, refuted, or responded to

6   Miracle Face Kit chargebacks.

7   *Response: Never.*

8

9   162.   Admit that Secured Merchants LLC processed, refuted, or responded to

10   Defendants' skincare product chargebacks.

11   *Response: Secured Merchants LLC billed SBM for processing of chargebacks, but
this legal entity never actually processed, refuted or responded to chargebacks.
Secured Merchants had a working relationship with a company in India which
processed chargebacks. Secured Merchants merely made a profit for such
intermediation. Last I checked, intermediation of a service was not illegal.*

12

13   163.   Admit that Chargeback Armor, Inc. processed, refuted, or responded to

14   Defendants' skincare product chargebacks.

15   *Response: Never.*

16

17   164.   Admit that BunZai Media Group, Inc. did not provide refunds to all

18   consumers who returned AuraVie products within 10 day period.

19   *Response: I have no such knowledge.*

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

165.   Admit that BunZai Media Group, Inc. failed to obtain a written authorization signed or similarly authenticated by the consumer for AuraVie sales.

*Response: I have no such knowledge.*

166.   Admit that BunZai Media Group, Inc. failed to provide a consumers a copy of the consumer's authorization of payment for AuraVie products.

*Response: I have no such knowledge.*

167.   Admit that BunZai Media Group, Inc. did not provide refunds to all consumers who returned Dellure products within 10 day period.

*Response: I have no such knowledge.*

168.   Admit that BunZai Media Group, Inc. failed to obtain a written authorization signed or similarly authenticated by the consumer for Dellure sales.

*Response: I have no such knowledge.*

169.   Admit that BunZai Media Group, Inc. did not provide refunds to all consumers who returned Miracle Face Kit products within 10 day period.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 43

1   170.   Admit that BunZai Media Group, Inc. failed to obtain a written

2   authorization signed or similarly authenticated by the consumer for Miracle Face

3   Kit sales.

4   *Response: I have no such knowledge.*

5

6   171.   Admit that BunZai Media Group, Inc. failed to provide a consumers a copy

7   of the consumer's authorization of payment for Miracle Face Kit products.

8   *Response: I have no such knowledge.*

9

10   172.   Admit that BunZai Media Group, Inc. did not provide refunds to all

11   consumers who returned Defendants' skincare products within 10 day period.

12   *Response: I have no such knowledge.*

13

14   173.   Admit that BunZai Media Group, Inc. failed to obtain a written

15   authorization signed or similarly authenticated by the consumer for Defendants'

16   skincare sales.

17   *Response: I have no such knowledge.*

18

19   174.   Admit that BunZai Media Group, Inc. failed to provide a consumers a copy

20   of the consumer's authorization of payment for Defendants' skincare products.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 44

1   175.   Admit that BunZai Media Group, Inc. failed to provide a consumers a copy

2   of the consumer's authorization of payment for Dellure products.

3   *Response: I have no such knowledge.*

4

5   176.   Admit that BunZai Media Group, Inc., processed credit card or debit card

6   payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold

7   by Defendants through a negative option.

8   *Response: I have no such knowledge.*

9

10  177.   Admit that Pinnacle Logistics, Inc., processed credit card or debit card

11  payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold

12  by Defendants through a negative option.

13  *Response: I have no such knowledge.*

14

15  178.   Admit that DSA Holdings, Inc., processed credit card or debit card

16  payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold

17  by Defendants through a negative option.

18  *Response: I have no such knowledge.*

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 45

1   179.   Admit that Lifetyle Media Brands, Inc., had no other business purpose than

2   to process credit card or debit card payments for AuraVie, Dellure, Miracle Face

3   Kit, or other skincare products sold by Defendants through a negative option.

4   *Response: I have no such knowledge.*

5

6   180.   Admit that Agoa Holdings, Inc., had no other business purpose than to

7   process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit,

8   or other skincare products sold by Defendants through a negative option.

9   *Response: I have no such knowledge.*

10

11   181.   Admit that Zen Mobile Media, Inc., had no other business purpose than to

12   process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit,

13   or other skincare products sold by Defendants through a negative option.

14   *Response: I have no such knowledge.*

15

16   182.   Admit that Safehaven Ventures, Inc., had no other business purpose than to

17   process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit,

18   or other skincare products sold by Defendants through a negative option.

19   *Response: I have no such knowledge.*

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 46

183.   Admit that Heritage Alliance Group, Inc., had no other business purpose than to process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response: I have no such knowledge.*

184.   Admit that AMD Financial Network, Inc., had no other business purpose than to process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, other skincare products sold by Defendants through a negative option.

*Response: I have no such knowledge.*

185.   Admit that SBM Management, Inc., processed credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response: I have no such knowledge.*

186.   Admit that Media Urge, Inc., processed credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 47

187.   Admit that Adageo, LLC, processed credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response: I have no such knowledge.*

188.   Admit that Calenergy, Inc., processed credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response: I have no such knowledge.*

189.   Admit that Kai Media, Inc., had no other business purpose than to process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response: I have no such knowledge.*

190.   Admit that Insight Media, Inc., had no other business purpose than to process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 48

1   191.   Admit that Focus Media Solutions, Inc., processed credit card or debit card

2   payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold

3   by Defendants through a negative option.

4   *Response: I have no such knowledge.*

5

6   192.   Admit that Secured Commerce, LLC, processed credit card or debit card

7   payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold

8   by Defendants through a negative option.

9   *Response: I have no such knowledge.*

10

11   193.   Admit that USM Products, Inc., processed credit card or debit card

12   payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold

13   by Defendants through a negative option.

14   *Response: I have no such knowledge.*

15

16   194.   Admit that USM Products, Inc., was used to make bulk purchases of

17   products and containers for AuraVie, Dellure, Miracle Face Kit, or other skincare

18   products sold by Defendants through a negative option.

19   *Response: I have no such knowledge.*

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 49

1    195.    Admit that Merchant Leverage Group, Inc., processed credit card or debit

2    card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products

3    sold by Defendants through a negative option.

4    *Response: I have no such knowledge.*

5

6    196.    Admit that DMA Medial Holdings, Inc., had no other business purpose than

7    to process credit card or debit card payments for AuraVie, Dellure, Miracle Face

8    Kit, or other skincare products sold by Defendants through a negative option.

9    *Response: I have no such knowledge.*

10

11   197.    Admit that Shalita Holdings, Inc., had no other business purpose than to

12   process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit,

13   or other skincare products sold by Defendants through a negative option.

14   *Response: I have no such knowledge.*

15

16   198.    Admit that All Star Beauty Products, Inc., had no other business purpose

17   than to process credit card or debit card payments for AuraVie, Dellure, Miracle

18   Face Kit, or other skincare products sold by Defendants through a negative option.

19   *Response: I have no such knowledge.*

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 50

1    199.    Admit that Secured Merchants, LLC established voice logix services for

2    BunZai Media Group, Inc.

3    *Response: I am not familiar with what "voice logix services" you are referring to.*

4

5    200.    Admit that Secured Merchants, LLC established voice logix services for

6    Pinnacle Logistics, Inc.

7    *Response: I am not familiar with what "voice logix services" you are referring to.*

8

9    201.    Admit that Secured Merchants, LLC established voice logix services for

10   Corporate Defendants.

11   *Response: I am not familiar with what "voice logix services" you are referring to.*

12

13   202.    Admit that Alon Nottea used the alias name "Jay Michaels."

14   *Response: I have no such knowledge.*

15

16   203.    Admit that Doron controlled deposit stamps for all Corporate Defendants.

17   *Response: I have no such knowledge.*

18

19   204.    Admit that Igor Latsanovski reviewed AuraVie's website.

20   *Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 51

1    205.    Admit that Igor Latsanovski reviewed all Corporate Defendants' website(s).

2    *Response: I have no such knowledge.*

3

4    206.    Admit that Roi Reuveni was a manager in Pinnacle's chargeback

5    department.

6    *Response: I know that Roi has a lot of experience about properly processing chargebacks but since he never presented me his resume and has no linkedin profile, I am not aware of any names of companies he did chargebacks for.*

7

8    207.    Admit that Roi Reuveni was a manager in Pinnacle's call center.

9    *Response: I know that Roi has a lot of experience about properly processing chargebacks but since he never presented me his resume and has no linkedin profile, I am not aware of any names of companies he did chargebacks for.*

10

11   208.    Admit that Alan Argaman was sole owner of corporate defendants Secured

12   Merchants, LLC.

13   *Response: Accept*

14

15   209.    Admit that at least 27 companies were used as payment processors for

16   AuraVie products.

17   *Response: I have no idea how many companies were used to process for AuraVie.*

18

19   210.    Admit that at least 27 companies were used as payment processors for

20   Dellure products.

     *Response: : I have no idea how many companies were used to process for Dellure.*

# PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS

Page | 52

Exhibit 917

211.   Admit that at least 27 companies were used as payment processors for Miracle Face Kit products.

*Response: : I have no idea how many companies were used to process for Miracle Face Kit products.*

212.   Admit that BunZai Media Group, Inc. purchased the right to use the name "AuraVie" from Skincare OU.

*Response: I have no such knowledge.*

213.   Admit that Doron Nottea has signed checks or financial documents using Stephen Bauer's name.

*Response: : I have no such knowledge.*

214.   Admit that Doron Nottea and Alan Argaman were owners of Secured Commerce, LLC.

*Response: : I have no such knowledge.*

215.   Admit that Focus Media Solutions, Inc. created advertisements for skincare products sold by negative option.

*Response: : I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 53

216.   Admit that Focus Media Solutions, Inc. created advertisements for BunZai Media Group, Inc.'s skincare products sold by negative option.

*Response: I have no such knowledge.*

217.   Admit that Focus Media Solutions, Inc. created advertisements for Pinnacle Logistics, Inc.'s skincare products sold by negative option.

*Response: I have no such knowledge.*

218.   Admit that Focus Media Solutions, Inc. created advertisements for Corporate Defendants' skincare products sold by negative option.

*Response: I have no such knowledge.*

219.   Admit that Alon Nottea was an owner of Focus Media Solutions, Inc.

*Response: I have no such knowledge.*

220.   Admit that, since its incorporation, Alon Nottea had the authority to control the business operations of Focus Media Solutions, Inc.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 54

1    221.   Admit that Doron Nottea did bookkeeping work for Focus Media Solutions,

2    Inc.

3    *Response: Accept.*

4

5    222.   Admit that Media Urge did marketing for BunZai Media Group, Inc.

6    *Response: I have no such knowledge.*

7

8    223.   Admit that Media Urge did marketing for Pinnacle Logistics, Inc.

9    *Response: I have no such knowledge.*

10

11   224.   Admit that Media Urge did marketing for Corporate Defendants.

12   *Response: I have no such knowledge.*

13

14   225.   Admit that Motti Nottea has reviewed AuraVie website(s).

15   *Response: I have no such knowledge.*

16

17   226.   Admit that Motti Nottea has reviewed Dellure website(s).

18   *Response: I have no such knowledge.*

19

20   227.   Admit that Motti Nottea has reviewed Miracle Face Kit website(s).

     *Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 55

228.   Admit that Motti Nottea signed payment processor documents on behalf of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

229.   Admit that Motti Nottea held himself out as a CEO of BunZai Media Group, Inc.

*Response: I have no such knowledge.*

230.   Admit that Motti Nottea was the CEO or owner of DSA Holdings, Inc.

*Response: I have no such knowledge.*

231.   Admit that Alon Nottea participated in managing Chargeback Armor, Inc.

*Response: Alon is a friend and he provided me advice when I seeked it. Alon made some introductions to potential referral partners or clients. Alon never owned shares in CBA nor was he an official manager.*

232.   Admit that Alon Nottea was an owner of Chargeback Armor, Inc.

*Response: Never. Look up the documentation we provided many times from the Secretary of State of California where only Michael Costache is listed as the sole owner.*

233.   Admit that, since its incorporation, Alon  Nottea, acting alone or in concert with others, had the authority to control the business operations of Chargeback Armor, Inc.

*Response: Never.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

Exhibit 917

1    234.   Admit that Alon Nottea solicited investors or investments for Chargeback

2    Armor, Inc.

3    *Response: Alon solicited investors in January for a concept called Chargeback Armor, not the actual legal entity which I formed on February 18, 2015. There is no law against calling a company after the same name that someone used to call a concept, is there?*

4

5    235.   Admit that Secured Merchants LLC transferred $250,000 in funds to

6    Chargeback Armor, Inc.

7    *Response: Accept. But for the 10th time, please look at the 3 contracts and the 3 respective checks we provided to see that this money came from 3 new clients of SM on March 1, 2015 and that SM's bank account had a balance of $200 at the end of February. So any of the $300,000 received from SBM had already been spent by SM. The money CBA received from SM as working capital has nothing to do with sale of skincare. Please stop this non-sense and stop making up sci-fi movie scenarios. Look at the black and white facts. It's your job.*

8

9    236.   Admit that Secured Merchants received more than $300,000 from SBM

10   Management, Inc. for providing chargeback services relating to the sale of

11   Defendants' skincare products.

12   *Response: SM received this sum of money from SBM for multiple IT services. If you look closely at the 52 invoices provided, you will see that only some of this money was for SM intermediating chargeback processing services. This was provided to you so many times, yet you keep asking for the same proof and the same explanations yet you choose not to process it correctly. How many more times are you planning to keep asking for the same thing? There is nothing for you to dig here. Would I be fighting you if I know that anything related to CBA was illegal? Why don't you ask yourselves why I chose to invest so much time to fight your overreaching powers? There is only one answer: because I did nothing wrong and over my dead body you will keep the $133,075.19 which you froze for no real reason other than the fact that you need to advance in your own careers and you need to show how much money you froze and kept for the FTC in order to protect the innocent consumers who never got a penny back since all the money went to the Receiver.*

13

14    237.   Admit that Roi Reuven is or was Chargeback Armor's COO.

15    *Response: Yes, Roi was given the COO title within CBA for three months but he has
      his consulting contract ended on May 31, 2015, which is two weeks before the FTC
      served the Defendants.*

16

17    238.   Admit that SBM Management, Inc. was controlled by Doron Nottea.

18    *Response: I have no such knowledge.*

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 57

239.   Admit that, since its incorporation, Doron Nottea had the authority to control the business operations of SBM Management, Inc.

*Response: I have no such knowledge.*

240.   Admit each individual defendants was paid at least 1% of sales processed through merchant accounts in which they were listed as CEO.

*Response: I have no such knowledge.*

241.   Admit that Doron Nottea received compensation for bookkeeping work performed for companies for any Corporate Defendant.

*Response: I have no such knowledge. CBA never paid Doron for following my advice to sign 19 checks and to show me how to connect Quickbooks to the BofA account. That is the extent of his bookkeeping services that he provided CBA.*

242.   Admit that Doron Nottea used corporate credit cards for companies for any Corporate Defendant for personal expenses.

*Response: I have no such knowledge.*

243.   Admit that some portion of the funds in Doron Nottea's safety deposit box came from the sale of negative option products.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1  244.  Admit that Roi Reuveni is or was President for DMA Media Holdings.

2  *Response: I have no such knowledge.*

3

4  245.  Admit that Roi Reuveni is or was an officer or director for Agoa Holdings.

5  *Response: I have no such knowledge.*

6

7  246.  Admit that Roi Reuveni was paid by CalEnergy, Inc.

8  *Response: I have no such knowledge.*

9

10  247.  Admit that Igor Latsanovski provided assistance in establishing overseas

11  accounts or merchant accounts for transferring funds received from consumers in

12  the sale of Defendants' skincare products by negative option.

13  *Response: I have no such knowledge.*

14

15  248.  Admit that BunZai Media Group, Inc. previously had its merchant accounts

16  frozen or cancelled by the bank or merchant processing entity due to high

17  chargeback rates.

18  *Response: I have no such knowledge.*

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 59

1  249.   Admit that any Corporate Defendant continued to process or make sales of

2  skincare products after their formal dissolution papers were filed with the

3  California Secretary of State.

4  *Response: I have no such knowledge.*

5

6  250.   Admit that Zen Mobile Media, Inc. made payments on the American

7  Express card in the name of Igor Latsanovski.

8  *Response: I have no such knowledge.*

9

10  251.   Admit that you sold AuraVie products by negative option.

11  *Response: Never.*

12

13  252.   Admit that you sold Dellure products by negative option.

14  *Response: Never.*

15

16

17  253.   Admit that you sold Miracle Face Kit products by negative option.

18  *Response: Never.*

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 60

1  254.   Admit that Alon Nottea sent and received emails using the email account

2  vigorect@gmail.com.

3  *Response: I have no such knowledge.*

4

5  255.   Admit that Alon Nottea sent and received emails using the email account

6  alon@chargeback armor.com.

7  *Response: Accept.*

8

9  256.   Admit that Alon Nottea sent and received emails using the email account

10  alon@securedmerchants.com.

11  *Response: Accept.*

12

13  257.   Admit that Doron Nottea sent and received emails using the email account

14  Doron@doron.us.

15  *Response: Accept.*

16

17  258.   Admit that Doron Nottea sent and received messages using the Skype

18  account named Accounting818.

19  *Response: Accept.*

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 61

1    259.   Admit that Roi Reuveni sent and received emails using the email account

2    roi@chargebackarmor.com.

3    *Response: Accept.*

4

5    260.   Admit that Roi Reuveni sent and received emails using the email account

6    roi@securedmerchants.com.

7    *Response: Accept.*

8

9    261.   Admit that Alan Argaman sent and received emails using the email account

10   avicoglobal@gmail.com.

11   *Response: Accept.*

12

13   262.   Admit that, in February 2015, Roi Reuveni signed the lease on behalf of

14   Chargeback Armor, Inc..

15   *Response: I allowed Roi to pick up the mail from CBA's mail box at the executive office space I was planning to rent an actual office in. In December of 2015, when I called this location to cancel the $100 they were charging CBA, I learned that Roi had signed whatever paperwork they provided him to bring to me. I never authorized him to sign any official documents on behalf of CBA, but I do recall asking him to bring me the paperwork from this executive office for me to sign off on. I learned in December that he signed it and that is when I realized that I had forgotten to follow up on this paperwork. A lease is for a physical space whereas what Roi signed (without my approval) was a piece of paper which said that he agrees to pay $100/month in order to have a mail box that collects mail. Perhaps you should investigage the owners of this executive office suit why they accept money from companies while they don't even ask the person signing their simple piece of paper to show proof from the owner of the company that he/she has the right to sign on behalf of the company paying for the mail box.*

16

17   263.   Admit that Doron Nottea received weekly reports concerning chargebacks

18   for companies' any Corporate Defendant's sales.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 62

264.   Admit that Igor Latsanovski assisted Alon Nottea in establishing foreign merchant accounts for the sale of skincare products by negative option.

*Response: I have no such knowledge.*

265.   Admit that Igor Latsanovski is sole owner of Guayas LTD.

*Response: I have no such knowledge.*

266.   Admit that funds derived from the sale of skincare products by negative option were used to purchase properties owned by Sunset Holding Partners LLC.

*Response: I have no such knowledge.*

267.   Admit that Igor Latsanovski received a monthly salary from BunZai Media Group, Inc.

*Response: I have no such knowledge.*

268.   Admit that Igor Latsanovski introduced Alon Nottea to potential investors for BunZai Media Group, Inc.

*Response: I have no such knowledge.*

269.   Admit that Igor Latsanovski is an investor in Skincare OU or Skincare OY.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 63

270.   Admit that Igor Latsanovski is part owner, officer, or director of Skincare OY.

*Response: I have no such knowledge.*

271.   Admit that funds derived from the sale of AuraVie products were transferred overseas bank accounts.

*Response: I have no such knowledge.*

272.   Admit that funds derived from the sale of Dellure products were transferred overseas bank accounts.

*Response: I have no such knowledge.*

273.   Admit that funds derived from the sale of Miracle Face Kit products were transferred overseas bank accounts.

*Response: I have no such knowledge.*

274.   Admit that funds derived from the sale of Defendants' skincare products were transferred overseas bank accounts.

*Response: I have no such knowledge.*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 64

## IV.   REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff requests that you produce and permit copying of the documents or other materials in your possession, custody, or control identified below:

1.     **Request**:  All documents related to each Corporate Defendants' relationship with Doron Nottea.

*Response: N/A*

2.     **Request**:  All documents related to each Corporate Defendants' relationship with Alon Nottea.

*Response: N/A*

3.     **Request**:  All documents related to each Corporate Defendants' relationship with Motti Nottea.

*Response: N/A*

4.     **Request**:  All documents related to each Corporate Defendants' relationship with Igor Latsanovski.

*Response: N/A*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 65

1  5.  **Request**:  All documents related to each Corporate Defendants' relationship

2  with Roi Reuveni.

3  *Response: Sagar has alrady provided this back in June to the receiver and in July to*
   *Reid.*

4

5  6.  **Request**:  All documents related to each Corporate Defendants' relationship

6  with Oz Mizrahi.

7  *Response: N/A*

8

9  7.  **Request**:  All documents related to each Corporate Defendants' relationship

10  with Kristopher Bond.

11  *Response: N/A*

12

13  8.  **Request**:  All documents related to each Corporate Defendants' relationship

14  with Paul Medina.

15  *Response: N/A*

16

17  9.  **Request**:  All documents related to each Corporate Defendants' relationship

18  with Alan Argaman.

19  *Response: N/A*

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 66

10.    **Request**:  All documents related to BunZai Media Group, Inc.'s

relationship with Secured Merchants, Inc..

*Response: Sagar has alrady provided this back in June to the receiver and in July to
Reid.*

11.    **Request**:  All communications of any nature between BunZai Media
Group, Inc., and Secured Merchants, Inc..

*Response: N/A*

12.    **Request**:  All scripts BunZai Media Group, Inc., provided employees for
use in talking with consumers.

*Response: N/A*

13.    **Request**:  All scripts Pinnacle Logistics, Inc., provided employees for use
in talking with consumers.

*Response: N/A*

14.    **Request**:  All documents related to Defendants' web pages offering skin
care products for sale, including documents identifying all persons responsible for
writing, editing, or approving the content of such web pages, all instructions
provided to or from such persons, documents showing the source of the

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1   information contained in the web pages, all documents concerning the content of

2   the web pages, documents showing the dates that the web pages were made

3   available to view on the Internet, and all documents related to revisions to the web

4   pages.

5   *Response: N/A*

6

7   15.   **Request**:  All documents related to complaints about Defendants' free trial

8   offer, regardless of the source of the documents.

9   *Response: N/A*

10

11   16.   **Request**:  All lists of persons to whom Defendants, sold skincare products.

12   *Response: N/A*

13

14   17.   **Request**:  All invoices or bills sent by Defendants to consumers,

15   distributors, and retailers who purchased skincare products.

16   *Response: N/A*

17

18   18.   **Request**:  All documents evidencing refunds made Defendants to

19   consumers, distributors, and retailers who purchased skincare products.

20   *Response: N/A*


**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 68

19.    **Request**:  Documents sufficient to show the number of skincare products purchased by consumers from Defendants.

*Response: N/A*

20.    **Request**:  Documents sufficient to show the number of A skincare products returned to Defendants by consumers, distributors, or retailers.

*Response: N/A*

21.    **Request**:  All Documents evidencing each consumers' agreement to purchase Defendants skin care products.

*Response: N/A*

22.    **Request**:  All Documents evidencing each consumers' agreement to purchase to subscribe into a negative option plan.

*Response: N/A*

23.    **Request:**  For each Request for Admission that you have denied, produce all documents that support that denial.

*Response: N/A*

24.    **Request**:  Document sufficient to show gross revenues from the sale of Defendants' skincare products, including but not limited to AuraVie, Dellure,

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 69

Miracle Face Kit, for the years 2012, 2013, 2014, and 2015.

*Response: N/A*

25.    **Request**:  All documents evidencing chargeback disputes made by consumers related to Defendants' skincare products.

*Response: N/A*

26.    **Request**:  All documents evidencing payments or compensation to each each Defendant by any Corporate Defendant.

*Response: N/A*

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 70

1

**VERIFICATION**

2

3   STATE OF CALIFORNIA

4   COUNTY OF LOS

5   ANGELES

6

7      I, the undersigned, am the sole shareholder, director, and officer of

8  Chargeback Armor, Inc.

9      I have read and am familiar with the contents of the foregoing discovery

10  responses.   The information supplied therein is based on my own personal

11  knowledge and/or has been supplied by my attorneys or other agents and is

12  therefore provided as required by law.  The information contained in the foregoing

13  document is true, except as to the matters which were provided by my attorneys or

14  other agents, and, as to those matters, I am informed and believe that they are true.

15      I declare under penalty of perjury under the laws of the State of California

16  that the foregoing is true and correct.

17

18

19  Dated:  April 4, 2016          *Mike Costache*

                                 Mike Costache

20

21

22

23

24

25

26

27

28

CHARGEBACK ARMOR, INC.'S RESPONSES TO FTC'S INTERROGATORIES
917-81    Exhibit 917

1   JONATHAN E. NUECHTERLEIN
    General Counsel

2

    DAMA J. BROWN
3   Regional Director

    REID TEPFER
4   rtepfer@ftc.gov
    Texas Bar No. 24079444
5   LUIS GALLEGOS
    lgallegos@ftc.gov
6   Oklahoma Bar No. 19098
    Federal Trade Commission
7   1999 Bryan Street, Suite 2150
    Dallas, Texas 75206
    (214) 979-9395 (Tepfer)
8   (214) 979-9383 (Gallegos)
    (214) 953-3079 (fax)

9

    RAYMOND McKOWN
10  rmckown@ftc.gov
    California Bar No. 150975
11  10877 Wilshire Boulevard, Suite 700
    Los Angeles, California 90024
    (310) 824-4325 (voice)
12  (310) 824-4380 (fax)

13  Attorneys for Plaintiff Federal Trade Commission

14             **UNITED STATES DISTRICT COURT**
     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

15

16  **FEDERAL TRADE COMMISSION,**    Case No.  CV 15-4527-GW(PLAx)

        **Plaintiff,**             **PLAINTIFF FEDERAL TRADE**
17                     **COMMISSION'S SECOND SET**
        **v.**               **OF DISCOVERY REQUESTS TO**
18                     <u>**DEFENDANT SECURED**</u>
    **BUNZAI MEDIA GROUP, INC.,**   <u>**MERCHANTS, INC.**</u>
    *et al.*
19          **Defendants.**

20

          **PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1    Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure,

2    Plaintiff Federal Trade Commission (FTC or Commission) requests that

3    Defendant Secured Merchants, Inc., respond to the following Requests for

4    Admission and Requests for Production of Documents within 30 days of service.

## I.    INSTRUCTIONS

6    1.    These instructions and definitions should be construed to require

7    Discovery Request responses based upon your actual or constructive knowledge,

8    information available to you, as well as that of your attorneys, accountants,

9    consultants, employees, independent contractors, representatives, agents, and

10    others acting on your behalf.  These Requests must be responded to by the party to

11    whom they are directed within thirty (30) days of the date of service, as service is

12    defined by Rule 6 of the Federal Rules of Civil Procedure.

13    2.    If you object to a portion or an aspect of any Request, state the

14    grounds of your objection with specificity and answer the remainder of the

15    Request to the extent required by Rule 33(b)(3), 34(b)(2)(c), or 36(a)(4)-(5),

16    whichever is applicable.

17    3.    If, in responding to these Requests, you encounter any ambiguities

18    when construing a Request, question, instruction, or definition, your response

19    shall set forth the matter deemed ambiguous and the construction used in

20    answering the Request.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

4. Should a document responsive to any portion of these Requests be withheld from production under a claim of privilege, a privilege log shall be submitted setting forth the information required under Federal Rule of Civil Procedure 26(b)(5)(A). Any privilege log submitted shall include:

    a. the date of the document;

    b. the nature of the information, including the format of the document;

    c. the identity of all authors and recipients of the document;

    d. if you are not the custodian of the document, the identity of the present custodian of the document;

    e. a summary of the contents of the document; and

    f. the privilege asserted or any other ground for withholding, and describe with particularity the claimed basis for withholding.

5. These Requests are continuing in nature pursuant to Federal Rule of Civil Procedure 26(e). Therefore, you must file supplemental responses in a timely manner if you learn that your response is incomplete or incorrect.

6. Unless otherwise noted or clear from the Request, the applicable time period for these Requests is from January 1, 2010, through the present. If the response to any Request is different for different periods within the applicable time period, provide a complete response for each time period and designate the specific time period for which the response is applicable.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 3

7.      Legible copies of original documents may be submitted in lieu of originals only if they are true, correct, and complete copies of the original document; provided, however, that submission of a copy shall constitute a waiver of any claim as to the authenticity of the copy should it be necessary to introduce the copy into evidence in any court of law; and provided, further, that you shall retain the original documents and produce them to Plaintiff upon request.

8.      You shall submit each document in its entirety even if only a portion of the document relates to a Request.  This means that the document shall not be edited, cut, or expunged and shall include all appendices, tables, or other attachments and all other documents referred to in the document or its attachments.

9.      These Requests seek production of all documents described, including all drafts, of whatever date, and all non-identical copies.

10.     If any document responsive to a Request is not in your possession, custody, or control, identify each person who has possession, custody, or control of the original or any copy of the document; if the document requested to be produced was, but no longer is, in your possession, state the disposition of it and the reasons for the disposition; if the document requested to be produced has been destroyed, state the time the document was destroyed, the reason for its destruction, and the identity of the person who destroyed the document and the identity of any person who directed that the document be destroyed.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1      11.    If any document responsive to a Request has already been produced

2   to Plaintiff, identify the document, the type of document, where it was kept, and

3   how it was produced.  If a portion of a document that has previously been

4   produced is responsive to a Request, identify the document, the type of document,

5   the location of the document, and specify where in the document the requested

6   information is contained.

7      12.    Each response, document, or thing produced shall be clearly and

8   precisely identified as to the numbered Request to which it is responsive.

9      13.    The Commission often makes its files available to other civil and

10  criminal federal, state, local, or foreign law enforcement agencies.  The FTC may

11  make information supplied by you available to such agencies where appropriate

12  pursuant to the FTC Act and 16 C.F.R. §§ 4.11(c) and (j).  Information you

13  provide may be shared with other federal, state, or foreign civil or criminal

14  agencies.

15  **II.    DEFINITIONS**

16      For purposes of these Discovery Requests, the following definitions shall

17  apply:

18      1.    "Agents," "representatives," and "employees" mean any person who

19  is or was paid a salary or a commission, or provided anything of value, or was an

20  independent contractor for, or received any monetary or other benefit in exchange

    for, goods or services provided.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 5

2.      "All" and "any" shall be interpreted inclusively and shall mean "any and all."

3.      "Consumer" refers to any person to whom Defendants offered to sell or sold skincare products.

4.      "Corporate Defendants" means BunZai Media Group, Inc., d/b/a AuraVie and Miracle Face Kit; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc., also doing business as AuraVie Distribution; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; Calenergy, Inc.; KAI Media, Inc.; Insight Medial, Inc.,; Focus Media Solutions, Inc.; Secured Commerce, LLC; Secured Merchants, LLC; USM Products, Inc.; Merchant Leverage Group, Inc.; DMA Media Holdings, Inc.; Shalita Holdings, Inc.; and All Star Beauty Products, Inc., and any and all  subsidiaries, successors, employees, agents, independent contractors, wholly owned affiliates, and all persons selling goods or services for or on behalf of any of the foregoing.

5.      "Defendants" means the "Individual Defendants" and the "Corporate Defendants."

6.      "Distributor" or "retailer" refers to any person to whom Defendants offered to sell or sold skincare products for resale purposes.

7.   "Document" or "Documents" means any record, writing, drawing, graph, chart, photograph, sound recording, image, data or data compilation stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonable usable form and includes electronically stored information.

8.   "Documents sufficient to show" means a group of documents which, when viewed together, reveals the information sought.  The fact that no single document contains the information sought does not relieve you of the responsibility to gather and return the additional documents which, when viewed together, do contain the information requested.  The phrase encompasses those documents that are both necessary and sufficient to provide the information requested.  Where "documents sufficient to show" is specified, if summaries, compilations, lists or synopses are available that provide the information, these should be provided in lieu of the underlying documents.

9.   "Including" means "including, but not limited to."

10.   "Identify" means (a) as to a person – by providing the person's full name, present or last known address and telephone number, and the present or last known place of employment; and (b) as to a document – by providing a copy of the document, by providing the Bates or identification number of any copy of the document or thing previously produced, or, if a copy of the document cannot be produced, by describing:  (i) the type of document; (ii) its general subject matter;

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

Page | 7

1   (iii) its date; (iv) its author(s) and recipient(s); (v) the present location of each

2   document or thing and each copy thereof; and (vi) the name, job title, employer,

3   and address of the custodian of the document or thing.

4         12.    "Individual Defendants" means Alon Nottea, Motti Nottea, Doron

5   Nottea, Igor Latsanovski, Oz Mizrahi, Roi Reuveni, and Khristopher Bond a/k/a

6   Ray Ibbot, Alan Argaman, and Paul Medina and each of their successors and

7   assigns, if any, by whatever names known.

8         13.    "Person" means an individual, organization, or other legal entity,

9   including, but

10   not limited to, an association, cooperative, corporation, limited liability company,

11   organization, partnership, proprietorship, or trust, or combination thereof.

12         14.    "Relating" (or "relate") means pertaining, describing, referring,

13   evidencing, reflecting, discussing, showing, supporting, contradicting, refuting,

14   constituting, embodying, containing, concerning, identifying, or in any way

15   logically or factually connected with the matter discussed.

16         15.    "You" or "your" means the party upon whom these Discovery

17   Requests are served.

18         16.    The words "or" and "and" shall be read in the conjunctive and not in

19   the disjunctive wherever they appear, and neither of these words shall be

20   interpreted to limit the scope of a request.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

17.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses and the singular form shall be deemed to include the plural, and vice-versa.

18.     The singular form of any noun shall be deemed to include the plural, and vice versa.

Notwithstanding the above definitions, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## III.    REQUESTS FOR ADMISSIONS

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff requests that you admit for purposes of this pending action the truth of the matters requested.  If you do not admit to a request, you must either specifically deny it or state in detail why you cannot admit or deny it, as required by Rule 36:

1.     Admit that the Federal District Court for the Central District of California has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(a), 45(*l*), 53(b), and 56(a).

*Response:*   Admit

2.      Admit that the complaint in this litigation alleges violations of the laws of the United States.

*Response:*  Admit

3.      Admit that the complaint alleges violations of the Federal Trade Commission Act.

*Response:*   Admit

4.      Admit that the complaint alleges violations of the Restore Online Shoppers Act.

*Response:*  Admit

5.      Admit that the complaint alleges violations of the Electronic Funds Transfer Act.

*Response:*   Admit

6.      Admit that venue is proper in the Central District of California under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d) and 1395(a) and 15 U.S.C. § 53(b).

        *Response:*   Admit

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1    7.     Admit that Doron Nottea has been an officer of BunZai Media Group, Inc.

2         *Response:*   Responding Party does not have sufficient information to admit or deny
                        and on that basis denies.

3

4    8.     Admit that Doron Nottea was an owner of BunZai Media Group, Inc. since

5    at least January 1, 2010.

6    *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                   basis denies.

7

8    9.     Admit that, since at least January 2010, Doron Nottea has controlled or had

9    the authority to control the business operations of BunZai Media Group, Inc.

10   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                   basis denies.

11

12   10.    Admit that Doron Nottea was involved in the day-to-day operations of

13   BunZai Media Group, Inc.

14   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                   basis denies.

15

16   11.    Admit that Doron Nottea had knowledge that consumers had alleged that

17   unauthorized charges were being billed to consumers' credit cards by BunZai

18   Media Group, Inc.

19   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                   basis denies.

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

Page | 11

12.    Admit that Doron Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards by BunZai Media Group, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

13.    Admit that Doron Nottea transacts or has transacted business in the Central District of California.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

14.    Admit that Doron Nottea resides in the Central District of California.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

15.    Admit that Doron Nottea resides at ███████████, Tarzana, California.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

16.    Admit that Alon Nottea has been an officer of BunZai Media Group, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

17.    Admit that Alon Nottea was an owner of BunZai Media Group, Inc. since at least January 1, 2010.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 12

18.   Admit that Alon Nottea was involved in the day-to-day operations of

BunZai Media Group, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that
basis denies.

19.   Admit that Alon Nottea had knowledge that consumers had alleged that

unauthorized charges were being billed to consumers' credit cards BunZai Media

Group, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that
basis denies.

20.   Admit that Alon Nottea had knowledge that consumers had alleged that

unauthorized charges were being billed to consumers' debit cards BunZai Media

Group, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that
basis denies.

21.   Admit that, since at least January 2010, Alon Nottea has controlled or had

the authority to control the business operations of BunZai Media Group, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that
basis denies.

22.   Admit that Alon Nottea transacts or has transacted business in the Central

District of California.

*Response:* Responding Party does not have sufficient information to admit or deny and on that
basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 13

23.     Admit that Alon Nottea resides in the Central District of California.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

24.     Admit that Alon Nottea resides at ████████████, Winnetka,

California.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

25.     Admit that Igor Latsanovski has been an officer of BunZai Media Group,

Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

26.     Admit that Igor Latsanovski was an owner of BunZai Media Group, Inc.

since at least January 1, 2010.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

27.     Admit that, since at least January 2010, Igor Latsanovski has controlled or

had the authority to control the business operations of BunZai Media Group, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

28.     Admit that Igor Latsanovski had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards by BunZai Media Group, Inc.

*Response:*     Responding Party does not have sufficient information to admit or deny and on that basis denies.

29.     Admit that Igor Latsanovski had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards BunZai Media Group, Inc.

*Response:*     Responding Party does not have sufficient information to admit or deny and on that basis denies.

30.     Admit that Igor Latsanovski transacts or has transacted business in the Central District of California.

*Response:*     Responding Party does not have sufficient information to admit or deny and on that basis denies.

31.     Admit that Igor Latsanovski resides in the Central District of California.

*Response:*     Responding Party does not have sufficient information to admit or deny and on that basis denies.

32.     Admit that Igor Latsanovski resides at ████████████, Calabasas, California.

*Response:*     Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 15

33.    Admit that Motti Nottea has been an officer of BunZai Media Group, Inc.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

34.    Admit that Motti Nottea was the CEO of BunZai Media Group, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

35.    Admit that Motti Nottea was an owner of BunZai Media Group, Inc. since at least January 1, 2010.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

36.    Admit that, since at least January 2010, Motti Nottea has controlled or had the authority to control the business operations of BunZai Media Group, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

37.    Admit that Motti Nottea transacts or has transacted business in the Central District of California.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

38.    Admit that Motti Nottea had a merchant account in his name for BunZai Media Group, Inc.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1    39.    Admit that Motti Nottea resides in the Central District of California.

2    *Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

3

4    40.    Admit that Motti Nottea resides at ███████████ Tarzana,

5 California.

6    *Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

7

8    41.    Admit that Roi Reuveni has been an officer of BunZai Media Group, Inc.

9    *Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

10

11    42.    Admit that Roi Reuveni has been a manager of the customer service

12 department of BunZai Media Group, Inc.

13    *Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

14

15    43.    Admit that Roi Reuveni has been the manager of the chargebacks

16 department of BunZai Media Group, Inc.

17    *Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

18

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 17

44.     Admit that, acting alone or in concert with others, Roi Reuveni drafted the deceptive template used to respond by BunZai Media Group, Inc. to respond to financial institutions when consumers requested chargebacks.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

45.     Admit that, since at least January 2010, Roi Reuveni has controlled or had the authority to control the business operations of BunZai Media Group, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

46.     Admit that Roi Reuveni transacts or has transacted business in the Central District of California.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

47.     Admit that Roi Reuveni resides in the Central District of California.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

48.     Admit that Roi Reuveni resides at █████████████████ Woodland Hills, California.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 18

49.     Admit that Kristopher Bond has been an officer of BunZai Media Group, Inc.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

50.     Admit that Kristopher Bond was an owner of BunZai Media Group, Inc. since at least January 1, 2010.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

51.     Admit that Kristopher Bond was involved in the day-to-day operations of BunZai Media Group, Inc.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

52.     Admit that Kristopher Bond had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards BunZai Media Group, Inc.

*Response:*  Responding Party does not have sufficient information to admit or deny and on tha basis denies.

53.     Admit that Kristopher Bond had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards BunZai Media Group, Inc.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 19

54.    Admit that BunZai Media Group, Inc., was incorporated in California on January 1, 2010.

*Response:*    Responding Party does not have sufficient information to admit or deny and on tha basis denies.

55.    Admit that, since BunZai Media Group, Inc.'s formation, it has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

56.    Admit that BunZai Media Group, Inc. has offered for sale, sold, and distributed skincare products to consumers throughout the United States.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

57.    Admit that BunZai Media Group is not exempt from the coverage of the Federal Trade Commission Act by statute.

*Response:*    Responding Party does not have sufficient information to admit or deny and on tha basis denies.

58.    Admit that BunZai Media Group, Inc. is a for-profit corporation.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

59.    Admit that BunZai Media Group, Inc has offered for sale, sold, and distributed skincare products using the name AuraVie.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

60.    Admit that BunZai Media Group, Inc has offered for sale, sold, and distributed skincare products using the name Dellure.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

61.    Admit that BunZai Media Group, Inc has offered for sale, sold, and distributed skincare products using the name Miracle Face Kit.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

62.    Admit that BunZai Media Group, Inc has offered for sale, sold, and distributed skincare products using the website AuraViefreetrial.com.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

63.    Admit that BunZai Media Group, Inc has offered for sale, sold, and distributed skincare products using the website mymiraclekit.com.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 21

1    64.    Admit that BunZai Media Group, Inc has offered for sale, sold, and

2    distributed skincare products using the website miraclefacekit.com.

3    *Response:*  Responding Party does not have sufficient information to admit or deny and on that
           basis denies.

4

5    65.    Admit that BunZai Media Group, Inc has offered for sale, sold, and

6    distributed skincare products using the term "risk free trial."

7    *Response:*  Responding Party does not have sufficient information to admit or deny and on that
           basis denies.

8

9    66.    Admit that BunZai Media Group, Inc has offered for sale, sold, and

10   distributed skincare products using the term "gifts."

11   *Response:*  Responding Party does not have sufficient information to admit or deny and on that
           basis denies.

12

13   67.    Admit that consumers who bought BunZai Media Group, Inc.'s skin care

14   products had to return the product within 10 days to avoid being charged for the

15   product.

16   *Response:*  Responding Party does not have sufficient information to admit or deny and on that
           basis denies.

17

18   68.    Admit that consumers who bought BunZai Media Group, Inc.'s skin care

19   products had to return the product within 10 days to avoid being subscribed into a

20   negative option continuity plan.

     *Response:*  Responding Party does not have sufficient information to admit or deny and on that
           basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 22

69.     Admit that consumers who bought BunZai Media Group, Inc.'s skin care products had to return the product within 10 days to avoid being subscribed into a negative option continuity plan that would charge the consumers a monthly fee.

*Response:*     Responding Party does not have sufficient information to admit or deny and on that basis denies.

70.     Admit that consumers who bought BunZai Media Group, Inc.'s skin care products had to return the product within 10 days to avoid being subscribed into a negative option continuity plan that would charge the consumers a fee of about $97.88.

*Response:*     Responding Party does not have sufficient information to admit or deny and on that basis denies.

71.     Admit that consumers who bought BunZai Media Group, Inc.'s skin care products had to pay a shipping and handling charge.

*Response:*     Responding Party does not have sufficient information to admit or deny and on tha basis denies.

72.     Admit that BunZai Media Group, Inc., processed consumer skincare payments through a merchant account in the name of Agoa Holdings, Inc.

*Response:*     Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 23

1   73.   Admit that BunZai Media Group, Inc. processed consumer skincare

2   payments through a merchant account in the name of Zen Mobile Media, Inc.

3   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

4

5   74.   Admit that BunZai Media Group, Inc. processed consumer skincare

6   payments through a merchant account in the name of SafeHaven Ventures, Inc.

7   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

8

9   75.   Admit that BunZai Media Group, Inc. processed consumer skincare

10   payments through a merchant account in the name of Heritage Alliance Group,

11   Inc.

12   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

13

14   76.   Admit that BunZai Media Group, Inc. processed consumer skincare

15   payments through a merchant account in the name of AMD Financial Network,

16   Inc.

17   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

18

19   77.   Admit that BunZai Media Group, Inc. processed consumer skincare

20   payments through a merchant account in the name of Kai Media, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

Page | 24

78.     Admit that BunZai Media Group, Inc. processed consumer skincare

payments through a merchant account in the name Insight Media, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

79.     Admit that SBM Management, Inc.'s corporate credit card was used to pay

BunZai Media Group, Inc.'s websites.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

80.     Admit that Media Urge, Inc. was used by BunZai Media Group, Inc. to

secure third-party advertising tracked sales.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

81.     Admit that Media Urge, Inc. was used by BunZai Media Group, Inc. to

deisgn marketing materials.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

82.     Admit that Doron Nottea has been an officer of Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

83.     Admit that Doron Nottea was an owner of Pinnacle Logistics, Inc. since at least January 1, 2010.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

84.     Admit that, since at least January 2010, Doron Nottea has controlled or had the authority to control the business operations of Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

85.     Admit that Doron Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards by Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

86.     Admit that Doron Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards by Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

87.     Admit that Alon Nottea has been an officer of Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 26

   Exhibit 918

88.     Admit that Alon Nottea was an owner of Pinnacle Logistics, Inc. since at least January 1, 2010.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

89.     Admit that Alon Nottea was involved in the day-to-day operations of Pinnacle Logistics, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

90.     Admit that Alon Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards by Pinnacle Logistics, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

91.     Admit that Alon Nottea had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards by Pinnacle Logistics, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

92.     Admit that Alon Nottea has controlled or had the authority to control the business operations of Pinnacle Logistics, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

93.     Admit that Oz Mizrahi has been an officer of Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

94.     Admit that Oz Mizrahi was an owner of Pinnacle Logistics, Inc. since at least January 1, 2010.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

95.     Admit that Oz Mizrahi was involved in the day-to-day operations of Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

96.     Admit that Oz Mizrahi had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards by Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

97.     Admit that Oz Mizrahi had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' debit cards by Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 28

1    98.    Admit that Oz Mizrahi has controlled or had the authority to control the

2    business operations of Pinnacle Logistics, Inc.

3    *Response:*   Responding Party does not have sufficient information to admit or deny and on that
              basis denies.

4

5    99.    Admit that Igor Latsanovski has been an officer of Pinnacle Logistics, Inc.

6    *Response:*   Responding Party does not have sufficient information to admit or deny and on that
              basis denies.

7

8    100.    Admit that Igor Latsanovski was an owner of Pinnacle Logistics, Inc. since

9    at least January 1, 2010.

10   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
              basis denies.

11

12   101.    Admit that, since at least January 2010, Igor Latsanovski has controlled or

13   had the authority to control the business operations of Pinnacle Logistics, Inc.

14   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
              basis denies.

15

16   102.    Admit that Igor Latsanovski had knowledge that consumers had alleged that

17   unauthorized charges were being billed to consumers' debit cards by Pinnacle

18   Logistics, Inc.

19   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
              basis denies.

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 29

103.   Admit that Igor Latsanovski had knowledge that consumers had alleged that unauthorized charges were being billed to consumers' credit cards by Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

104.   Admit that Motti Nottea has been an officer of Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

105.   Admit that, since at least January 2010, Motti Nottea has controlled or had the authority to control the business operations of Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

106.   Admit that Roi Reuveni has been an officer of Pinnacle Logistics, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

107.   Admit that Roi Reuveni has been a manager of the customer service department of  Pinnacle Logistics, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

108.    Admit that Roi Reuveni has been the manager of the chargebacks department of Pinnacle Logistics, Inc.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

109.    Admit that, acting alone or in concert with other, Roi Reuveni drafted the template used to respond by Pinnacle Logistics, Inc. to respond to financial institutions  when consumers requested chargebacks.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

110.    Admit that, since at least January 2010, Roi Reuveni has controlled or had the authority to control the business operations of Pinnacle Logistics, Inc.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

111.    Admit that Pinnacle Logistics, Inc., was incorporated in California on June 6, 2012.

*Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

112.    Admit that, since Pinnacle Logistics, Inc.'s formation, it has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

*Response:*    Responding Party does not have sufficient information to admit or deny and on tha basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

113.   Admit that Pinnacle Logistics, Inc. has offered for sale, sold, and distributed skincare products to consumers throughout the United States.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

114.   Admit that Pinnacle Logistics is not exempt from the coverage of the Federal Trade Commission Act by statute.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

115.   Admit that Pinnacle Logistics, Inc. is a for-profit corporation.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

116.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and distributed skincare products using the name AuraVie.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

117.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and distributed skincare products using the name Dellure.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1    118.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

2    distributed skincare products using the name Miracle Face Kit.

3    *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                    basis denies.

4

5    119.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

6    distributed skincare products using the website AuraViefreetrial.com.

7    *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                    basis denies.

8

9    120.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

10   distributed skincare products using the website mymiraclekit.com.

11   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                    basis denies.

12

13   121.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

14   distributed skincare products using the website miraclefacekit.com.

15   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                    basis denies.

16

17   122.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

18   distributed skincare products using the term "risk free trial."

19   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                    basis denies.

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1    123.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

2    distributed skincare products using the term "gifts."

3    *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                    basis denies.

4

5    124.   Admit that Pinnacle Logistics, Inc., has offered for sale, sold, and

6    distributed skincare products using the term "risk free trials."

7    *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                    basis denies.

8

9    125.   Admit that consumers who bought Pinnacle Logistics, Inc.'s skin care

10   products had to return the product within 10 days to avoid being charged for the

11   product.

12   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                    basis denies.

13

14   126.   Admit that consumers who bought Pinnacle Logistics, Inc.'s skin care

15   products had to return the product within 10 days to avoid being subscribed into a

16   negative option continuity plan.

17   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                    basis denies.

18

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

127.   Admit that consumers who bought Pinnacle Logistics, Inc.'s skin care

products had to return the product within 10 days to avoid being subscribed into a

negative option continuity plan that would charge the consumers a monthly fee.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

128.   Admit that consumers who bought Pinnacle Logistics, Inc.'s skin care

products had to return the product within 10 days to avoid being subscribed into a

negative option continuity plan that would charge the consumers a fee of about

$97.88.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

129.   Admit that consumers who bought Pinnacle Logistics, Inc.'s skin care

products had to pay a shipping and handling charge.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

130.   Admit that Pinnacle Logistics, Inc. processed consumer skincare payments

through a merchant account in the name of Agoa Holdings, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that
basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1    131.    Admit that Pinnacle Logistics, Inc. processed consumer skincare payments

2    through a merchant account in the name of Zen Mobile Media, Inc.

3    *Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

4

5    132.    Admit that Pinnacle Logistics, Inc. processed consumer skincare payments

6    through a merchant account in the name of SafeHaven Ventures, Inc.

7    *Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

8

9    133.    Admit that Pinnacle Logistics, Inc. processed consumer skincare payments

10    through a merchant account in the name of Heritage Alliance Group, Inc.

11    *Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

12

13    134.    Admit that Pinnacle Logistics, Inc. processed consumer skincare payments

14    through a merchant account in the name of AMD Financial Network, Inc.

15    *Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

16

17    135.    Admit that Pinnacle Logistics, Inc. processed consumer skincare payments

18    through a merchant account in the name of Kai Media, Inc.

19    *Response:*    Responding Party does not have sufficient information to admit or deny and on that basis denies.

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1    136.   Admit that Pinnacle Logistics, Inc. processed consumer skincare payments

2    through a merchant account in the name Insight Media, Inc.

3    *Response:*   Responding Party does not have sufficient information to admit or deny and on that
            basis denies.

4

5    137.   Admit that SBM Management, Inc.'s corporate credit card was used to pay

6    Pinnacle Logistics, Inc.'s websites.

7    *Response:*  Responding Party does not have sufficient information to admit or deny and on that
            basis denies.

8

9    138.   Admit that Media Urge, Inc. was used by Pinnacle Logistics, Inc. to secure

10    third-party advertising tracked sales.

11    *Response:*  Responding Party does not have sufficient information to admit or deny and on that
            basis denies.

12

13    139.   Admit that Media Urge, Inc. was used by Pinnacle Logistics, Inc. to deisgn

14    marketing materials.

15    *Response:*  Responding Party does not have sufficient information to admit or deny and on that
            basis denies.

16

17    140.   Admit that Paul Medina is or was the Executive President or Vice President

18    of Media Urge, Inc..

19    *Response:* Responding Party does not have sufficient information to admit or deny and on that
            basis denies.

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 37

                                   **Exhibit 918**

1  |  141.    Admit Paul Medina was the manager of the call center for Pinnacle

2  |  Logistics, Inc.

3  |  *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

4

5  |  142.    Admit that Paul Medina is or was the manager of Focus Media Solutions.

6  |  *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

7

8  |  143.    Admit that each Corporate Defendant is not exempt from the coverage of

9  |  the Federal Trade Commission Act by statute.

10 |  *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

11

12 |  144.    Admit that each Individual Defendants are not exempt from the coverage of

13 |  the Federal Trade Commission Act by statute.

14 |  *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

15

16 |  145.    Admit that misrepresentations or deceptive omissions of material fact

17 |  constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

18 |  *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 38

1   146.   Admit that Defendants' representations that Defendants' skincare products

2   were free was false.

3   *Response:*  Responding Party does not have sufficient information to admit or deny and on that
          basis denies.

4

5   147.   Admit that Defendants' representations about its free skincare products

6   constituted a deceptive act or practice in violation of Section 5 of the FTC Act, 15

7   U.S.C. § 45(a).

8   *Response:*  Responding Party does not have sufficient information to admit or deny and on that
          basis denies.

9

10   148.   Admit that Sections 5(*l*) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(*l*) and

11   53(b), empower this Court to grant injunctive and such other relief as the Court

12   may deem appropriate to halt and redress violations of the FTC Act.

13   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
          basis denies.

14

15   149.   Admit that the Court, in the exercise of its equitable jurisdiction, may award

16   ancillary relief, including rescission or reformation of contracts, restitution, the

17   refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and

18   remedy any violation of any provision of law enforced by the FTC.

19   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
          basis denies.

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 39

150.   Admit that Alon Nottea, Khristopher Bond, and Igor Latsanovski were partners in BunZai Media Group, Inc.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

151.   Admit that Doron Nottea's office contained pre-signed checks for companies all Corporate Defendants.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

152.   Admit that BunZai Media Group, Inc., directly or indirectly, opened merchant accounts in Latvia.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

153.   Admit that BunZai Media Group, Inc., directly or indirectly, opened merchant accounts in Estonia.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

154.   Admit that Alon Nottea, directly or indirectly, opened merchant accounts in Latvia.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

155.   Admit that Alon Nottea, directly or indirectly, opened merchant accounts in Estonia.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

156.   Admit that Secured Merchants LLC processed, refuted, or responded to AuraVie chargebacks.

*Response:*  Deny

157.   Admit that Chargeback Armor, Inc. processed, refuted, or responded to AuraVie chargebacks.

*Response:*  Deny

158.   Admit that Secured Merchants LLC processed, refuted, or responded to Dellure chargebacks.

*Response:*  Deny

159.   Admit that Chargeback Armor, Inc. processed, refuted, or responded to Dellure chargebacks.

*Response:*  Deny

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

160.   Admit that Secured Merchants LLC processed, refuted, or responded to Miracle Face Kit chargebacks.

*Response:*  Deny

161.   Admit that Chargeback Armor, Inc. processed, refuted, or responded to Miracle Face Kit chargebacks.

*Response:*  Deny

162.   Admit that Secured Merchants LLC processed, refuted, or responded to Defendants' skincare product chargebacks.

*Response:*  Deny

163.   Admit that Chargeback Armor, Inc. processed, refuted, or responded to Defendants' skincare product chargebacks.

*Response:*  Deny

164.   Admit that BunZai Media Group, Inc. did not provide refunds to all consumers who returned AuraVie products within 10 day period.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

165.   Admit that BunZai Media Group, Inc. failed to obtain a written authorization signed or similarly authenticated by the consumer for AuraVie sales.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

166.   Admit that BunZai Media Group, Inc. failed to provide a consumers a copy of the consumer's authorization of payment for AuraVie products.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

167.   Admit that BunZai Media Group, Inc. did not provide refunds to all consumers who returned Dellure products within 10 day period.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

168.   Admit that BunZai Media Group, Inc. failed to obtain a written authorization signed or similarly authenticated by the consumer for Dellure sales.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

169.   Admit that BunZai Media Group, Inc. did not provide refunds to all consumers who returned Miracle Face Kit products within 10 day period.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 43

1    170.    Admit that BunZai Media Group, Inc. failed to obtain a written

2    authorization signed or similarly authenticated by the consumer for Miracle Face

3    Kit sales.

4    *Response:*  Responding Party does not have sufficient information to admit or deny and on that
        basis denies.

5

6    171.    Admit that BunZai Media Group, Inc. failed to provide a consumers a copy

7    of the consumer's authorization of payment for Miracle Face Kit products.

8    *Response:*  Responding Party does not have sufficient information to admit or deny and on that
        basis denies.

9

10    172.    Admit that BunZai Media Group, Inc. did not provide refunds to all

11    consumers who returned Defendants' skincare products within 10 day period.

12    *Response:*  Responding Party does not have sufficient information to admit or deny and on that
        basis denies.

13

14    173.    Admit that BunZai Media Group, Inc. failed to obtain a written

15    authorization signed or similarly authenticated by the consumer for Defendants'

16    skincare sales.

17    *Response:*  Responding Party does not have sufficient information to admit or deny and on that
        basis denies.

18

19    174.    Admit that BunZai Media Group, Inc. failed to provide a consumers a copy

20    of the consumer's authorization of payment for Defendants' skincare products.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that
        basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 44

1  175.   Admit that BunZai Media Group, Inc. failed to provide a consumers a copy

2  of the consumer's authorization of payment for Dellure products.

3  *Response:*   Responding Party does not have sufficient information to admit or deny and on that
4  basis denies.

5  176.   Admit that BunZai Media Group, Inc., processed credit card or debit card

6  payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold

7  by Defendants through a negative option.

8  *Response:*   Responding Party does not have sufficient information to admit or deny and on that
9  basis denies.

10  177.   Admit that Pinnacle Logistics, Inc., processed credit card or debit card

11  payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold

12  by Defendants through a negative option.

13  *Response:*   Responding Party does not have sufficient information to admit or deny and on that
14  basis denies.

15  178.   Admit that DSA Holdings, Inc., processed credit card or debit card

16  payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold

17  by Defendants through a negative option.

18  *Response:*   Responding Party does not have sufficient information to admit or deny and on that
19  basis denies.

20

179.   Admit that Lifetyle Media Brands, Inc., had no other business purpose than to process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

180.   Admit that Agoa Holdings, Inc., had no other business purpose than to process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

181.   Admit that Zen Mobile Media, Inc., had no other business purpose than to process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:*Responding Party does not have sufficient information to admit or deny and on that basis denies.

182.   Admit that Safehaven Ventures, Inc., had no other business purpose than to process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

183.   Admit that Heritage Alliance Group, Inc., had no other business purpose than to process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

184.   Admit that AMD Financial Network, Inc., had no other business purpose than to process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, other skincare products sold by Defendants through a negative option.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

185.   Admit that SBM Management, Inc., processed credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

186.   Admit that Media Urge, Inc., processed credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

1   187.   Admit that Adageo, LLC, processed credit card or debit card payments for

2   AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants

3   through a negative option.

4   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
            basis denies.

5

6   188.   Admit that Calenergy, Inc., processed credit card or debit card payments for

7   AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants

8   through a negative option.

9   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
            basis denies.

10

11   189.   Admit that Kai Media, Inc., had no other business purpose than to process

12   credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or

13   other skincare products sold by Defendants through a negative option.

14   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
            basis denies.

15

16   190.   Admit that Insight Media, Inc., had no other business purpose than to

17   process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit,

18   or other skincare products sold by Defendants through a negative option.

19   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
            basis denies.

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 48

191.   Admit that Focus Media Solutions, Inc., processed credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

192.   Admit that Secured Commerce, LLC, processed credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

193.   Admit that USM Products, Inc., processed credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

194.   Admit that USM Products, Inc., was used to make bulk purchases of products and containers for AuraVie, Dellure, Miracle Face Kit, or other skincare products sold by Defendants through a negative option.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 49

1   195.   Admit that Merchant Leverage Group, Inc., processed credit card or debit

2   card payments for AuraVie, Dellure, Miracle Face Kit, or other skincare products

3   sold by Defendants through a negative option.

4   *Response:* Responding Party does not have sufficient information to admit or deny and on that
        basis denies.

5

6   196.   Admit that DMA Medial Holdings, Inc., had no other business purpose than

7   to process credit card or debit card payments for AuraVie, Dellure, Miracle Face

8   Kit, or other skincare products sold by Defendants through a negative option.

9   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
        basis denies.

10

11   197.   Admit that Shalita Holdings, Inc., had no other business purpose than to

12   process credit card or debit card payments for AuraVie, Dellure, Miracle Face Kit,

13   or other skincare products sold by Defendants through a negative option.

14   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
        basis denies.

15

16   198.   Admit that All Star Beauty Products, Inc., had no other business purpose

17   than to process credit card or debit card payments for AuraVie, Dellure, Miracle

18   Face Kit, or other skincare products sold by Defendants through a negative option.

19   *Response:*   Responding Party does not have sufficient information to admit or deny and on that
        basis denies.

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 50

199.   Admit that Secured Merchants, LLC established voice logix services for

BunZai Media Group, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny due to the vague and ambiguous phrase "voice logix" and on that basis denies.

200.   Admit that Secured Merchants, LLC established voice logix services for

Pinnacle Logistics, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny due to the vague and ambiguous phrase "voice logix" and on that basis denies.

201.   Admit that Secured Merchants, LLC established voice logix services for

Corporate Defendants.

*Response:* Responding Party does not have sufficient information to admit or deny due to the vague and ambiguous phrase "voice logix" and on that basis denies.

202.   Admit that Alon Nottea used the alias name "Jay Michaels."

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

203.   Admit that Doron controlled deposit stamps for all Corporate Defendants.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

204.   Admit that Igor Latsanovski reviewed AuraVie's website.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 51

1   205.   Admit that Igor Latsanovski reviewed all Corporate Defendants' website(s).

2   *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

3

4   206.   Admit that Roi Reuveni was a manager in Pinnacle's chargeback

5   department.

6   *Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

7

8   207.   Admit that Roi Reuveni was a manager in Pinnacle's call center.

9   *Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

10

11   208.   Admit that Alan Argaman was sole owner of corporate defendants Secured

12   Merchants, LLC.

13   *Response:*  Admit

14

15   209.   Admit that at least 27 companies were used as payment processors for

16   AuraVie products.

17   *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

18

19   210.   Admit that at least 27 companies were used as payment processors for

20   Dellure products.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

211.   Admit that at least 27 companies were used as payment processors for Miracle Face Kit products.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

212.   Admit that BunZai Media Group, Inc. purchased the right to use the name "AuraVie" from Skincare OU.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

213.   Admit that Doron Nottea has signed checks or financial documents using Stephen Bauer's name.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

214.   Admit that Doron Nottea and Alan Argaman were owners of Secured Commerce, LLC.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

215.   Admit that Focus Media Solutions, Inc. created advertisements for skincare products sold by negative option.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 53

1   216.    Admit that Focus Media Solutions, Inc. created advertisements for BunZai

2   Media Group, Inc.'s skincare products sold by negative option.

3   *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

4

5   217.    Admit that Focus Media Solutions, Inc. created advertisements for Pinnacle

6   Logistics, Inc.'s skincare products sold by negative option.

7   *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

8

9   218.    Admit that Focus Media Solutions, Inc. created advertisements for

10  Corporate Defendants' skincare products sold by negative option.

11  *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

12

13  219.    Admit that Alon Nottea was an owner of Focus Media Solutions, Inc.

14  *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

15

16  220.    Admit that, since its incorporation, Alon  Nottea had the authority to control

17  the business operations of Focus Media Solutions, Inc.

18  *Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 54

**Exhibit 918**

1   221.   Admit that Doron Nottea did bookkeeping work for Focus Media Solutions,

2   Inc.

3   *Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

4

5   222.   Admit that Media Urge did marketing for BunZai Media Group, Inc.

6   *Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

7

8   223.   Admit that Media Urge did marketing for Pinnacle Logistics, Inc.

9   *Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

10

11   224.   Admit that Media Urge did marketing for Corporate Defendants.

12   *Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

13

14   225.   Admit that Motti Nottea has reviewed AuraVie website(s).

15   *Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

16

17   226.   Admit that Motti Nottea has reviewed Dellure website(s).

18   *Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

19

20   227.   Admit that Motti Nottea has reviewed Miracle Face Kit website(s).

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 55

228.   Admit that Motti Nottea signed payment processor documents on behalf of BunZai Media Group, Inc.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

229.   Admit that Motti Nottea held himself out as a CEO of BunZai Media Group, Inc.

*Response:*  Responding Party does not have sufficient information to admit or deny and on that basis denies.

230.   Admit that Motti Nottea was the CEO or owner of DSA Holdings, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

231.   Admit that Alon Nottea participated in managing Chargeback Armor, Inc.

*Response:*   Deny

232.   Admit that Alon Nottea was an owner of Chargeback Armor, Inc.

*Response:*   Deny

233.   Admit that, since its incorporation, Alon  Nottea, acting alone or in concert with others, had the authority to control the business operations of Chargeback Armor, Inc.

*Response:*  Deny

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 56

1    234.   Admit that Alon Nottea solicited investors or investments for Chargeback

2    Armor, Inc.

3    *Response:*  Deny

4

5    235.   Admit that Secured Merchants LLC transferred $250,000 in funds to

6    Chargeback Armor, Inc.

7    *Response:*  Admit

8

9    236.   Admit that Secured Merchants received more than $300,000 from SBM

10   Management, Inc. for providing chargeback services relating to the sale of

11   Defendants' skincare products.

12   *Response:*  Admit

13

14   237.   Admit that Roi Reuveni is or was Chargeback Armor's COO.

15   *Response:*  Responding Party does not have sufficient information to admit or deny and on that
16           basis denies.

17   238.   Admit that SBM Management, Inc. was controlled by Doron Nottea.

18   *Response:*  Responding Party does not have sufficient information to admit or deny and on that
             basis denies.
19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

**Exhibit 918**

239.   Admit that, since its incorporation, Doron Nottea had the authority to control the business operations of SBM Management, Inc.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

240.   Admit each individual defendants was paid at least 1% of sales processed through merchant accounts in which they were listed as CEO.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

241.   Admit that Doron Nottea received compensation for bookkeeping work performed for companies for any Corporate Defendant.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

242.   Admit that Doron Nottea used corporate credit cards for companies for any Corporate Defendant for personal expenses.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

243.   Admit that some portion of the funds in Doron Nottea's safety deposit box came from the sale of negative option products.

*Response:* Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 58

1    244.   Admit that Roi Reuveni is or was President for DMA Media Holdings.

2    *Response:*   Responding Party does not have sufficient information to admit or deny and on that

3          basis denies.

4    245.   Admit that Roi Reuveni is or was an officer or director for Agoa Holdings.

5    *Response:*   Responding Party does not have sufficient information to admit or deny and on that

6          basis denies.

7    246.   Admit that Roi Reuveni was paid by CalEnergy, Inc.

8    *Response:*   Responding Party does not have sufficient information to admit or deny and on that

9          basis denies.

10   247.   Admit that Igor Latsanovski provided assistance in establishing overseas

11   accounts or merchant accounts for transferring funds received from consumers in

12   the sale of Defendants' skincare products by negative option.

13   *Response:*   Responding Party does not have sufficient information to admit or deny and on that

14         basis denies.

15   248.   Admit that BunZai Media Group, Inc. previously had its merchant accounts

16   frozen or cancelled by the bank or merchant processing entity due to high

17   chargeback rates.

18   *Response:*   Responding Party does not have sufficient information to admit or deny and on that

      basis denies.

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 59

                    Exhibit 918

1    249.   Admit that any Corporate Defendant continued to process or make sales of

2    skincare products after their formal dissolution papers were filed with the

3    California Secretary of State.

4    *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                  basis denies.

5

6    250.   Admit that Zen Mobile Media, Inc. made payments on the American

7    Express card in the name of Igor Latsanovski.

8    *Response:*   Responding Party does not have sufficient information to admit or deny and on that
                  basis denies.

9

10   251.   Admit that you sold AuraVie products by negative option.

11   *Response:*   Deny

12

13   252.   Admit that you sold Dellure products by negative option.

14   *Response:*   Deny

15

16

17   253.   Admit that you sold Miracle Face Kit products by negative option.

18   *Response:*   Deny

19

20

254.   Admit that Alon Nottea sent and received emails using the email account vigorect@gmail.com.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

255.   Admit that Alon Nottea sent and received emails using the email account alon@chargeback armor.com.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

256.   Admit that Alon Nottea sent and received emails using the email account alon@securedmerchants.com.

*Response:* Admit

257.   Admit that Doron Nottea sent and received emails using the email account Doron@doron.us.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

258.   Admit that Doron Nottea sent and received messages using the Skype account named Accounting818.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

259.   Admit that Roi Reuveni sent and received emails using the email account roi@chargebackarmor.com.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

260.   Admit that Roi Reuveni sent and received emails using the email account roi@securedmerchants.com.

*Response:*   Admit

261.   Admit that Alan Argaman sent and received emails using the email account avicoglobal@gmail.com.

*Response:*   Admit

262.   Admit that, in February 2015, Roi Reuveni signed the lease on behalf of Chargeback Armor, Inc..

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

263.   Admit that Doron Nottea received weekly reports concerning chargebacks for companies' any Corporate Defendant's sales.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

264.   Admit that Igor Latsanovski assisted Alon Nottea in establishing foreign merchant accounts for the sale of skincare products by negative option.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

265.   Admit that Igor Latsanovski is sole owner of Guayas LTD.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

266.   Admit that funds derived from the sale of skincare products by negative option were used to purchase properties owned by Sunset Holding Partners LLC.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

267.   Admit that Igor Latsanovski received a monthly salary from BunZai Media Group, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on tha basis denies.

268.   Admit that Igor Latsanovski introduced Alon Nottea to potential investors for BunZai Media Group, Inc.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

269.   Admit that Igor Latsanovski is an investor in Skincare OU or Skincare OY.

*Response:*   Responding Party does not have sufficient information to admit or deny and on that basis denies.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 63

1    270.    Admit that Igor Latsanovski is part owner, officer, or director of Skincare

2    OY.

3    *Response:*    Responding Party does not have sufficient information to admit or deny and on that
         basis denies.

4

5    271.    Admit that funds derived from the sale of AuraVie products were

6    transferred overseas bank accounts.

7    *Response:* Responding Party does not have sufficient information to admit or deny and on that
         basis denies.

8

9    272.    Admit that funds derived from the sale of Dellure products were transferred

10   overseas bank accounts.

11   *Response:*    Responding Party does not have sufficient information to admit or deny and on that
         basis denies.

12

13   273.    Admit that funds derived from the sale of Miracle Face Kit products were

14   transferred overseas bank accounts.

15   *Response:* Responding Party does not have sufficient information to admit or deny and on that
         basis denies.

16

17   274.    Admit that funds derived from the sale of Defendants' skincare products

18   were transferred overseas bank accounts.

19   *Response:*    Responding Party does not have sufficient information to admit or deny and on that
         basis denies.

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 64

# IV.    REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff requests that you produce and permit copying of the documents or other materials in your possession, custody, or control identified below:

1.    **Request**:  All documents related to each Corporate Defendants' relationship with Doron Nottea.

*Response:*  All responsive documents have been produced.

2.    **Request**:  All documents related to each Corporate Defendants' relationship with Alon Nottea.

*Response:*  All responsive documents have been produced.

3.    **Request**:  All documents related to each Corporate Defendants' relationship with Motti Nottea.

*Response:*  All responsive documents have been produced.

4.    **Request**:  All documents related to each Corporate Defendants' relationship with Igor Latsanovski.

*Response:* All responsive documents have been produced.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 65

1   5.      **Request**:  All documents related to each Corporate Defendants' relationship

2   with Roi Reuveni.

3   *Response:*  All responsive documents have been produced.

4

5   6.      **Request**:  All documents related to each Corporate Defendants' relationship

6   with Oz Mizrahi.

7   *Response:*  All responsive documents have been produced.

8

9   7.      **Request**:  All documents related to each Corporate Defendants' relationship

10  with Kristopher Bond.

11  *Response:*  All responsive documents have been produced.

12

13  8.      **Request**:  All documents related to each Corporate Defendants' relationship

14  with Paul Medina.

15  *Response:*  All responsive documents have been produced.

16

17  9.      **Request**:  All documents related to each Corporate Defendants' relationship

18  with Alan Argaman.

19  *Response:*  All responsive documents have been produced.

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

10.     **Request**:  All documents related to BunZai Media Group, Inc.'s

relationship with Secured Merchants, Inc..

*Response:*   All responsive documents have been produced.


11.     **Request**:  All communications of any nature between BunZai Media

Group, Inc., and Secured Merchants, Inc..

*Response:*  All responsive documents have been produced.


12.     **Request**:  All scripts BunZai Media Group, Inc., provided employees for

use in talking with consumers.

*Response:*   No responsive documents exist in the custody, control, or possession of SM or
          Argaman.


13.     **Request**:  All scripts Pinnacle Logistics, Inc., provided employees for use

in talking with consumers.

*Response:*   No responsive documents exist in the custody, control, or possession of SM or
          Argaman.


14.     **Request**:  All documents related to Defendants' web pages offering skin

care products for sale, including documents identifying all persons responsible for

writing, editing, or approving the content of such web pages, all instructions

provided to or from such persons, documents showing the source of the

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 67

1  information contained in the web pages, all documents concerning the content of

2  the web pages, documents showing the dates that the web pages were made

3  available to view on the Internet, and all documents related to revisions to the web

4  pages.

5  *Response:*  No responsive documents exist in the custody, control, or possession of SM or
            Argaman.

6

7  15.    **Request**:  All documents related to complaints about Defendants' free trial

8  offer, regardless of the source of the documents.

9  *Response:*  No responsive documents exist in the custody, control, or possession of SM or
            Argaman.

10

11  16.    **Request**:  All lists of persons to whom Defendants, sold skincare products.

12  *Response:*  No responsive documents exist in the custody, control, or possession of SM or
            Argaman.

13

14  17.    **Request**:  All invoices or bills sent by Defendants to consumers,

15  distributors, and retailers who purchased skincare products.

16  *Response:*  No responsive documents exist in the custody, control, or possession of SM or
            Argaman.

17

18  18.    **Request**:  All documents evidencing refunds made Defendants to

19  consumers, distributors, and retailers who purchased skincare products.

20  *Response:*  No responsive documents exist in the custody, control, or possession of SM or
            Argaman.

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

19.    **Request**:  Documents sufficient to show the number of skincare products purchased by consumers from Defendants.

*Response:*  No responsive documents exist in the custody, control, or possession of SM or Argaman.

20.    **Request**:  Documents sufficient to show the number of A skincare products returned to Defendants by consumers, distributors, or retailers.

*Response:*  No responsive documents exist in the custody, control, or possession of SM or Argaman.

21.    **Request**:  All Documents evidencing each consumers' agreement to purchase Defendants skin care products.

*Response:*  No responsive documents exist in the custody, control, or possession of SM or Argaman.

22.    **Request**:  All Documents evidencing each consumers' agreement to purchase to subscribe into a negative option plan.

*Response:*  No responsive documents exist in the custody, control, or possession of SM or Argaman.

23.    **Request:**  For each Request for Admission that you have denied, produce all documents that support that denial.

*Response:*  All responsive documents have been produced.

24.    **Request**:  Document sufficient to show gross revenues from the sale of Defendants' skincare products, including but not limited to AuraVie, Dellure,

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 69

1   Miracle Face Kit, for the years 2012, 2013, 2014, and 2015.

2   *Response:*   No responsive documents exist in the custody, control, or possession of SM or
                  Argaman.

3

4   25.      **Request**:  All documents evidencing chargeback disputes made by

5   consumers related to Defendants' skincare products.

6   *Response:*  No responsive documents exist in the custody, control, or possession of SM or
                 Argaman.

7

8   26.      **Request**:  All documents evidencing payments or compensation to each

9   each Defendant by any Corporate Defendant.

10  *Response:*   No responsive documents exist in the custody, control, or possession of SM or
                  Argaman.

11

12

13

14

15

16

17

18

19

20

**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**
Page | 70

## VERIFICATION

1

2

3  STATE OF CALIFORNIA

   COUNTY OF LOS
4
   ANGELES
5

6      I, the undersigned, am a member of Secured Merchants, LLC.

7      I have read and am familiar with the contents of the foregoing discovery

8  responses.    The information supplied therein is based on my own personal

9  knowledge and/or has been supplied by my attorneys or other agents and is

10 therefore provided as required by law.  The information contained in the foregoing

11 document is true, except as to the matters which were provided by my attorneys or

12 other agents, and, as to those matters, I am informed and believe that they are true.

13     I declare under penalty of perjury under the laws of the State of California

14 that the foregoing is true and correct.

15

16

17 Dated:  April 4, 2016                    _Alan Argaman_____

18                                             Alan Argaman

19

20

21

22

23

24

25

26

27

28

SECURED MERCHANT, LLC'S RESPONSES TO FTC'S INTERROGATORIES – SET THREE

## DECLARATION OF SHERRI LANHAM
## PURSUANT TO 28 U.S.C. § 1746

Pursuant to 28 U.S.C. § 1746, Sherri Lanham declares that:

1.    I am over 21 years of age and competent to give this declaration. I have personal knowledge of all the facts stated in this declaration, and, if called, I would testify to the same.

2.    I am a U.S. Postal Inspector with the United States Postal Inspection Service. I have worked as a Postal Inspector for 16 years. My business address is 5102 W. Laurel Street, Suite 100, Tampa, FL 33607.

3.    I reviewed internal post office records regarding PO Box 10465, Van Nuys, California 91410 (the PO Box), which provided me the information in Paragraph 4. The records I reviewed are created at the time the PO Box application is made by soliciting information from the applicant. The records were kept in the regular course of business.

4.    The PO Box is registered to Pinnacle Logistics Incorporated, 7900 Gloria Avenue, Van Nuys, CA 91405. That box is physically located at the Van Nuys Post Office, 15701 Sherman Way, Van Nuys, California 91406. The registrant for the PO Box is Oz Mizrahi, and he is listed as the "administrator" of Pinnacle Logistics, Inc. The Post Office's internal records indicate that Mr. Mizrahi provided both a driver license and passport when applying for the PO

DECLARATION OF SHERRI LANHAM PURSUANT TO 28 U.S.C. § 1746

1   Box. Additional names listed as having access to the PO Box are Andrew

2   Alvarado and Geiner Samayoa. In addition to listing Pinnacle Logistics,

3   Incorporated, the PO Box lists the company names Auravie and Auravie Skincare.

4   The Box was rented on October 10, 2012, and remains active.

5       5.   I understand that this declaration may be used by the Federal Trade

6   Commission in a law-enforcement proceeding.

7       I declare under penalty of perjury under the laws of the United States that

8   the foregoing is true and correct.

9

10      Executed on _June 6_, 2015, in Tampa, Florida.

11

12      _____

13                 Sherri L. Lanham

14

15

16

17

18

19

20

DECLARATION OF SHERRI LANHAM
PURSUANT TO 28 U.S.C. § 1746

Page | 2