1  JEFFREY S. BENICE, ESQ., State Bar No. 81583
   LAW OFFICES OF JEFFREY S. BENICE
2  *A Professional Law Corporation*
   3080 Bristol Street
3  Sixth Floor, Suite 630
   Costa Mesa, California  92626
4  Telephone No.: (714) 641-3600
   Facsimile No.: (714) 641-3601
5  Website: www.JeffreyBenice.com
   E-Mail: JSB@JeffreyBenice.com
6

7  Attorneys for Defendants,
   Igor Latsanovski and Calenergy, Inc.
8

9

10                 UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

| | |
|---|---|
| 13  FEDERAL TRADE COMMISSION, | **CASE NO. CV 15-04527 GW (PLAx)** |
| 14  Plaintiff, | **DECLARATION OF IGOR LATSANOVSKI IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT** |
| 15  v. | |
| 16  BUNZAI MEDIA GROUP INC., et al., | |
| 17  Defendants. | |
| 18 | **Date:        May 16, 2016** |
| 19 | **Time:        8:30 A.M.** |
| 20 | **Courtroom:   10** |
| 21 | **[Assigned for All Purposes to the Honorable George H. Wu, Courtroom 10]** |
| 22 | |
| 23 | **First Amended Complaint Filed: October 9, 2015** |
| 24 | |
| 25 | |

26

27

28

DECLARATION OF IGOR LATSANOVSKI IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

## DECLARATION OF IGOR LATSANOVSKI

I, Igor Latsanovski, declare and state, as follows:

### A.   *Introduction.*

1.      I am a defendant herein.  I have personal knowledge of the facts set forth herein. I am the president and sole shareholder of Defendant Calenergy, Inc. ("*Calenergy*").  If called as a witness, I would and could testify thereto as follows.  I make this declaration in support of my and Defendant Calenergy, Inc.'s Motion for Summary Judgment, or in the Alternative Partial Summary Judgment.

### B.   *Summary Of CalEnergy Loans To Bunzai Media Group, Inc. and Affiliates.*

2.      Attached hereto as Exhibit "A" and incorporated herein by reference is a true and correct copy of the Summary prepared by David Davidian on or about July, 2015. [1]  The Summary reflects all loans made by CalEnergy to Defendant Bunzai Media Group, Inc. ("*Bunzai*") and Bunzai's successor SBM Management ("*SBM*") during the period 2010 through 2015.  To my knowledge, Bunzai ceased operations in September 2013. Prior to Bunzai's cessation of business, CalEnergy's loans were to my knowledge, made solely to Bunzai. After Bunzai ceased business operations in 2013, the loans were made to Bunzai affiliate as noted above, SBM.

3.      The total funds advanced as loans during the period 2010 to 2015 were up to $500,000.  Bunzai and Bunzai's affiliated companies repaid me the total sum of $500,000 in principal; and $317,522.13 in interest during that time period as reflected on the Summary.  The FTC's contention I loaned $1.9 million is incorrect.  That is the approximate aggregate of all principal loan advances; repayments; and further re-advances of the original $500,000 loan made in various installments.

### C.   *Latsanovski's Use of Interpreter.*

4.      In 2010 I met Mr. Gleb Gregory Lipskiy through my family.  He immigrated from Ukraine to the United States in 1994 at six (6) years of age. He was born in 1988 in Ukraine.  He

---

[1] Exh. "A" to Mr. Latsanovski's July 15, 2015 Declaration.

DEFENDANTS LATSANOVSKI AND CALENERGY' EXPERT DISCLOSURES

1  graduated from high school in America in 2008.  He speaks fluent Russian and English.

2      5.      I had just immigrated to the United States from Spain in 2010 and spoke little

3  English; I had lived in Spain for approximately fifteen (15) years before coming to the United

4  States. Because I could not read English, or speak English well, I asked Mr. Lipskiy to assist me,

5  when I was involved in negotiations concerning investments in the United States that I was

6  contemplating.  He agreed to do so.

7      6.      In or about 2010 and 2011 Mr. Lipskiy assisted in my negotiations with persons

8  named Alon Nottea and Khristopher Bond in Los Angeles.  He assisted me in reading documents

9  and negotiating terms.  Mr. Nottea and Mr. Bond did not speak Russian and I did not speak

10  English well.  I began to partially speak English in 2011-2012 but continued to use a translator for

11  reading.

12  **D.**    ***June 10, 2015 Loan from Lawrence Rubin to Felix Katz and Sunset Holding Partners,***

13  ***LLC.***

14      7.      On or about June, 2015, Lawrence Rubin was offered an investment opportunity in

15  a California liability company called *"Sunset Holding Partners, LLC"* (*"Sunset"*).  I am a sixty

16  percent (60%) owner of an LLC interest in Sunset.   At my direction Sunset was involved in

17  investing in real estate investment opportunities in Southern California.  Generally, Sunset would

18  purchase the real estate assets; Sunset would then improve or develop the real estate assets; and

19  thereafter sell the real estate assets.  The sale proceeds would be first distributed to repay all debts,

20  operating costs and expenses.   Any net proceeds would thereafter be distributed to the LLC

21  Members.

22      8.      Mr. Rubin agreed to advance the sum of $1,000,000 to Sunset on or about June 10,

23  2015.  I approved the transaction. The funds were used for the purchase and renovation of property

24  located at 430 W. Antonio Drive, Long Beach, California  90807 (*"the Property"*).   Attached

25  hereto as Exhibit "B" and incorporated herein by reference is a true copy of the *"Promissory Note*

26  *Secured by Deed of Trust"* dated June 10, 2015 (*"the Note"*) and accompanying Deed of Trust.

27  Pursuant to the Note's terms, the full principal of $1,000,000 and all unpaid interest is due for

28

2

DECLARATION OF IGOR LATSANOVSKI IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

1  payment on June 10, 2016. The payment due on that date, pursuant to paragraph 2.2 of the Note

2  entitled *"Balloon Payment"* is $1,007,500.00.

3  **E.       *Effect of Federal Trade Commission Preliminary Injunction On Note's***

4         ***Repayment.***

5         9.      I understand that the Property's current fair market value is approximately

6  $700,000. Because Sunset's development plan for the Property has been stopped as a result of the

7  Federal Trade Commission injunction, the loan is grossly undersecured and will likely be

8  defaulted on in four (4) months when it is due. I accordingly request that the Federal Trade

9  Commission injunction be modified to enable the Property to be sold or to permit redevelopment

10 of the Property to enable Mr. Rubin to receive full repayment of the $1,007,500 in loan funds.

11 **F.       *Latsanovski Had No Control Over Defendant Bunzai.***

12        10.     I did not play any role in the operation of the internet skincare business Defendant

13 Bunzai. I never spoke to any customers; was not involved in the day to day operations of the

14 internet skincare business; had no involvement in the marketing or advertising of the skincare

15 products; never received or reviewed any reports regarding customer complaints; and had no

16 knowledge of the web based advertising used by Defendant Bunzai. Defendants Alon and Bond

17 actually operated and controlled Defendant Bunzai and made all operational decisions. Neither

18 Calenergy nor I received any money from consumers directly.

19 **G.       *Latsanovski's Relationship with Third Party Investors.***

20        11.     My role in unrelated third parties Sunset Holdings Partners LLC, ComicFix LLC,

21 and Vastpay LLC was primarily to locate third party investors who would be willing to provide

22 investment funds to these businesses. None of these businesses received funds from Defendant

23 Bunzai. As a result of the asset freeze, these legitimate businesses have had their bank accounts

24 frozen even though  (a) these businesses are completely unrelated to the alleged internet skincare

25 business; (b) were funded by other sources of income; and/or (c) were not run by Defendants

26 Calenergy.

27 ///

28
_____
3
DECLARATION OF IGOR LATSANOVSKI IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

*H.*      *Defendants Latsanovski's and Calenergy's History.*

12.      I am a 52 year old immigrant. I was born in Kazakhstan (USSR) in 1964 and lived with his family there until approximately 1990. I graduated from college in approximately 1983. In 1992, I moved to Canada. In 1996, when I was 33 years old, I moved with my wife to Spain. I lived in Barcelona, Spain from 1996 to 2010. While in Spain, I became involved in various real estate development projects. In 2010, I moved from Spain to the United States. [my wife and family (2 children), moved to the United States in 2011.] When I first arrived in the United States in 2010 he could speak a little English, but could not read nor write English.

13.      I represented a group of foreign investors in 2010 as their agent in the United States. My business plan involved placing the foreign investors investment funds in to suitable investments in the United States. I also made investments on my own behalf. In 2009, I created Defendant Calenergy and became its CEO. I used Defendant Calenergy to fund investments with investor funds.

14.      Sometime in 2010, I was approached by Defendant Alon Nottea, to invest in an internet skincare project with Defendant Bunzai Media Group, Inc. ("*Bunzai*"). Defendant Nottea was Defendant Bunzai's president and CEO. From conversations with Defendant Nottea, I understood that Defendant Bunzai needed funds to hire additional employees and resources. I preliminarily agreed to invest funds in Bunzai:

15.      Defendant Nottea also introduced me to Defendant Khristopher Bond, who I was advised by Defendant Alon Nottea handled the day to day operations for the internet skincare business and also handled all aspects of the business, including marketing, advertising, product fulfillment and customer service.

16.      My sole involvement in Defendant Bunzai, and all entities related to it ("*Bunzai Group*"), was to provide loans through my company Defendant Calenergy. As Defendant Calenergy's CEO, I had no involvement in the operation of the Bunzai Group and had no authority to make any decisions regarding the operations of the Bunzai Group.

///

4

DECLARATION OF IGOR LATSANOVSKI IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

17.     I did not perform any functions in advertising, payment processing, billing, product fulfillment, customer service, returns, or anything else regarding the Bunzai Group's operational decisions.   Moreover, I had no interactions with customers, did not received any customer complaints, nor any reports of customer complaints.

18.     At no point did I believe that any customers were being deceived or defrauded. By all indications, Defendant Nottea was running a legitimate company operating in a legitimate industry.

### I.     *Defendant Latsanovski's Loan Transactions with Defendant Bunzai.*

19.     In 2010 when I was introduced to defendants Nottea and Bunzai, an initial proposal was made to me, in which I would invest *"$350k in exchange for 55% ownership of Bunzai Media Group, Ownership Shares ... will be as follows:  55% Igor, 22.5% Alon[Nottea], 22.5 Khristopher [Bond]"*.   The proposal was memorialized in a document entitled *"Bunzai Media Group - Partnership Agreement,"* dated October 12, 2010. A true copy of the October 12, 2010 Agreement is attached hereto as "Exhibit C".

A condition to the October 12, 2010 Agreement's validity was that:

> *"upon signing this agreement, Igor shall invest $75k to run a*
>
> *continuity test for 30 days.  During this test, Bunzai will purchase*
>
> *at least 1,000 orders . . . within the first 15 days, and a conversion*
>
> *from free trial to transitional stage . . . of at least 75% of those*
>
> *orders.  If this goal is met and both parties agree to continue with*
>
> *the partnership, then Igor will immediately invest the remaining*
>
> *$275k to complete the financial agreements of this deal."* [Exh.
>
> "C" hereto; *October 12, 2010 Agreement* at 1.]

20.     I advanced the $75,000 on October 12, 2010. However, the condition to the validity of the October 12, 2010 Agreement did not occur. The continuity test was not satisfactorily completed and the *"parties [did not] agree to continue with the partnership . . ."*

///

DECLARATION OF IGOR LATSANOVSKI IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

21.     Defendants Nottea and Bond, defendant Bunzai's officers, then proposed a *"Bunzai Media Group Loan Agreement"* dated December 16, 2010. A true copy of the Agreement is attached hereto as Exhibit "D" and incorporated herein by referenced.  The December 16, 2010 Loan Agreement offered two alternatives to me concerning a loan of $175,000 I was to make to defendant Bunzai; *"This Agreement . . . with respect . . . to the loan of $175k to existing company."* First, defendant Bunzai agreed to repay the $175,000 in three (3) payments on April 5, May 5, and June 5, 2010 respectfully of $50,000, $50,000 and $100,000.  *"Alternatively, "Igor's 175k will become an investment that will represent a percentage of ownership in the company that will be determined the first week of January, 2011."*

22.     No subsequent agreement was  negotiated in January, 2011.  Rather, in March, 2011 Defendants Nottea and Bond offered me a new partnership proposal.  This new agreement dated March 23, 211, required me to immediately *"invest $500,000 into the company for administration, manufacturing and marketing expenses. . . Investments shall be returned as follows:*

> *Igor $300k*
>
> *Alon and Khristopher (to go to French Partners) $200k*
>
> *Igor $200k*
>
> *Alon and Khristopher $300k"*

[A true copy of the March 23, 2011 Agreement is attached hereto as Exhibit "E" and incorporated herein by reference.]

23.     Pursuant to the March 23, 2011 Partnership Agreement's terms, I and defendants Nottea, and Bond would each own *"1/3 of 100% of the company."*  Further:

> *"5. It is understood by all parties that this will be Alon Nottea and*
>
> *Khristopher Bond's primary business and they shall devote to the*
>
> *conduct of the business so much of their respective time as may*
>
> *be reasonably necessary for the efficient operation of the business."*

24.     I decided not to invest $500,000 in one lump sum into Defendant Bunzai in March, 2011. I was uncomfortable with the terms of repayment of the investment and decided that I would

DECLARATION OF IGOR LATSANOVSKI IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

1  remain a lender as set forth in December 16, 2010 Loan Agreement. Defendants Nottea and Bond

2  agreed that my status would be as a lender only.

3  **J.      *The FTC Asset Freeze.***

4        25.      The FTC has frozen the equity of my personal residence located at 3420 Cordova

5  Drive, Calabasas, CA 91302.  The house is valued at $3.1 million.  There is approximately $1.3

6  million of equity in the house.

7        26.      Further, third party investor funds of Lawrence Rubin and Mariya Aleksandrovna

8  totaling respectively $1,000,000 and $1,100,000 were also invested into Sunset and are also

9  improperly subject to the asset freeze.  And, $5.8 million of funds invested into Sunset by Ilia

10  Klykov were also improperly frozen.

11        27.      ComicsFix, Vastpay and Sunset were all funded by outside investors, not proceeds

12  from the internet skincare business. For example, the accounts of Sunset have been frozen even

13  though Sunset was formed in January 2015; Sunset is a real estate investment company, and the

14  vast majority of the funds frozen in June 2015 came from outside real estate investors, including

15  Mariya Aleksandrovna, and Ilia Klykov.

16

17        I declare under penalty of perjury under the laws of the United States of America that the

18  foregoing is true and correct.

19        Executed this 18th day of April, 2016, at Costa Mesa, CA.

20

21                              IGOR LATSANOVSKI

22

23

24

25

26

27

28
                                         7

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 18, 2016, a true and correct copy of the foregoing document described as DECLARATION OF IGOR LATSANOVSKI IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT were served electronically via e-mail.  The attorneys listed below were served by pursuant to the ECF notice generated by the Court.

***Local Counsel For Receiver***
Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd., Suite 2250
Los Angeles, CA  90036
nameri@agmblaw.com

***Counsel For Chargeback Armor, Inc.***
Sagar Parikh
Beverly Hills Law Corp.
433 N. Camden Drive, 6th Floor
Beverly Hills, CA  90210
SP@BeverlyHillsLawCorp.com

***Federal Trade Commission***
Reid Tepfer
Luis Gallegos
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
rtpefer@ftc.gov
lgallegos@ftc.gov

***Counsel For Doron and Motti Nottea***
Randi R. Geffner
Esensten Law
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA  90025
Telephone:  (310) 273-3090
RGEFFNER@ESENSTEINLAW.COM

***Counsel For Alon Nottea and Roi Rueveni***
Robert M. Ungar
Crosswind Law
14724 Ventura Blvd., Penthouse
Sherman Oaks, CA  91403
rmu@crosswindlaw.com

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed the 18th day of April, 2016, in Costa Mesa, California 92626.

_____
Javaise Escoto, Declarant

8

DECLARATION OF IGOR LATSANOVSKI IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT