1  Jeffrey S. Benice, Esq., State Bar No. 81583
   LAW OFFICES OF JEFFREY S. BENICE
2  *A Professional Law Corporation*
   3080 Bristol Street
3  Sixth Floor, Suite 630
   Costa Mesa, California  92626
4  Telephone No.: (714) 641-3600
   Facsimile No.: (714) 641-3601
5  Website: www.JeffreyBenice.com
   E-Mail: JSB@JeffreyBenice.com
6

7  Attorneys for Defendants,
   Igor Latsanovski and Calenergy, Inc.
8

9

10              **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12

13  **FEDERAL TRADE COMMISSION,**          **CASE NO. CV 15-04527 GW (PLAx)**

14              **Plaintiff,**              **DECLARATION OF ILIA KLYKOV
                                            RE: NOVEMBER 6, 2009**
15          **v.**                         **FIDUCIARY MANAGEMENT
                                            AGREEMENT; AND JANUARY 12,**
16  **BUNZAI MEDIA GROUP INC., et al.,**   **2015 AGREEMENT BETWEEN
                                            GUAYAS, LTD. AND CALENERGY,**
17              **Defendants.**            **LLC**

18                                         ─────────────────────────────

19                                         **Date:         May 16, 2016**
                                           **Time:         8:30 a.m.**
20                                         **Courtroom:    10**

21

22                                         **[Assigned for All Purposes to the
                                           Honorable George H. Wu, Courtroom
23                                         10]**

24                                         **First Amended Complaint Filed:
                                           October 9, 2015**
25

26

27

28

───────────────────────────────────────────────
DECLARATION OF ILIA KLYKOV
RE: NOVEMBER 6, 2009 MANAGEMENT AGREEMENT

1      I, Ilia Klykov, declare and state:

2      1.      I am a resident of the City of Moscow, Russian Federation.  I have personal

3  knowledge of the facts set forth herein.  If called as a witness, I would and could testify

4  under oath as set forth herein:

5  **A.    _November 6, 2009 Fiduciary Management Agreement._**

6      2.      I am a real estate lawyer in accordance with the laws of the Russian

7  Federation.  I have 15 years of experience.  The focus of my practice is real estate

8  investment and development.  At the present time I am engaged mostly in investing funds

9  in real estate in Russia, Europe and America.

10     3.      I have known Igor Latsanovski for approximately 15 years.  Over the years, I

11  have from time to time invested funds with Mr. Latsanovski's assistance for real estate

12  investment and development.

13     4.      In or about November 6, 2009, I entered into an agreement with Mr.

14  Latsanovski entitled "_Fiduciary Management Agreement_" ("_the Fiduciary Agreement_").  A

15  true copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein by

16  reference.  The Agreement is in full force and effect.  Pursuant to the Agreement's terms,

17  Mr. Latsanovski agreed to become my fiduciary agent concerning the operation of an

18  Estonian legal entity "_OU Guayas_".  The Fiduciary Agreement further provides:

19         "_Whereas_

20         • _The client [Klykov] intends to acquire 100 per cent share_

21           _Capital of Estonian legal entity OU Guayas_

22           _Legal entity code 11084313 (hereinafter_

23           _Estonian company)._

24         • _Due to personal reasons the client is not_

25           _disposed to become the official Member (owner)_

26           _of Estonian company, however he is disposed to_

27           _be the effective beneficial owner of Estonian_

28           _company and make decisions related to the_

1

*control of the company:*

*. . .*

- *The client is entrusting the fiduciary [Latsanovski] to acquire Shares in an Estonian Company:*

    *. . .*

    1. *The client is engaging the fiduciary to become the mandate shareholder in the company incorporated under the name of **OU Guayas** within three business days after signing this agreement and the fiduciary will have one hundred per cent (100%) membership (ownership) in his company.*

    2. *The client is also engaging the fiduciary to be its legal representative.*

    3. ***The parties specifically agree that the membership (ownership) in the company is the sole and exclusive property of the client and any benefits derived thereon is to the sole benefits of the client. . . .***" **[Emphasis added.]**

**B.    *January 12, 2015 Agreement Between Guayas, Ltd. And Calenergy, LLC.***

5.    Thereafter, on or about January 12, 2015, I authorized Guayas to enter into an Agreement with Calenergy, Inc. ("*Calenergy*") "*with the objective to invest the funds of Guayas into real estate objects within the territory of the United States of America...*" A true copy of the Agreement is attached hereto as Exhibit "B" and incorporated herein by reference. The Agreement provides in relevant part:

"**1.     Obligations of Calenergy**

For the purposes of this Agreement Calenergy shall bear obligations towards Guayas to perform the following:

1.1     Establish a Company, whose field of business is to find, purchase, develop, sell, renovate and reconstruct the real estate objects suitable for investment;

1.2     Ensure that the Company being established is under the supervision of Igor Latsanovski with participation of not less than 51 percent;

1.3     Where a real estate object suitable for investment is found, transfer to the Company monetary funds received from Guayas in an amount sufficient to purchase, renovate and reconstruct the object;

**1.4     Transfer to Guayas all claims of Calenergy to the Company connected with the performance of this Agreement;**

1.5     Secure the purchased real estate by mortgaging it in favor of Guayas;

1.6     Abovementioned activities shall be performed within 1 (one) year.

**2.     Terms of provision and investment of funds**

**2.1     Guayas hereby agrees to provide funds to Calenergy, and Calenergy agrees to accept those funds and use them to meet the Agreement's objectives described in art.1 on the terms and conditions as set forth or referred to in this Agreement.**

2.2     The maximum amount of funds Guayas plans to invest into real estate is $US 10,000,000.00 (ten million $US).

2.3     The funds shall be provided in several tranches where Calenergy needs those funds and those funds are available to Guayas.

2.4     The funds shall be provided with the objective to invest into real estate objects within the territory of the United States of America. [Emphasis added.]

2.5     The funds shall be allocated into real estate at annual interest of 11%.

2.6    *The funds shall he allocated under the condition that those funds are payable to Guayas in whole or in parts by the 20th of January 2018 at the latest.*

2.7    *Every time a real estate object is sold, the Company shall return to Guayas a part of its principal debt in amount of funds spent by the Company on the purchase, renovation and reconstruction of the real estate object and annual interest of the respective debt at 11%.*

2.8    *The outstanding principal amount of the fund provided under this Agreement, interest thereon and any charge or other payment connected thereto shall be paid in $US or in EUR on the due date to such account(s) as Guayas shall have specified. .."* [Emphasis added.]

C.    **Guayas' Transfer of Funds To Calenergy.**

6.    Attached hereto as Exhibit "C" and incorporated herein by reference is a true copy of the Wells Fargo bank account statement for Account No. 1433608997 for Calenergy. The statement reflects each wire transfer that I instructed be made from January 2015 to April 2015 from Guayas to Calenergy pursuant to the terms of the Agreements described above. The total sums transferred were $3,480,000.

7.    Additionally, I caused the sum of $2,388,000 to be wired from a second company called *"Bavaria Inter LP"*. Bavaria is an investor in Guayas. I raised Bavaria's funds in order to invest them into real estate. Due to the fact that the granting of loan had been delayed, I instructed to make those wires in April, 2015 directly to Calenergy. The total funds invested by Guayas were accordingly $5,868,000. And, none of the loaned funds came from any source other than the investment funds identified herein. None of the funds came from or were the property of Mr. Latsanovski.

8.    From January, 2015, to May 2015, the $5,868,000 was wired at different times at my direction from Calenergy's and/or Igor Latsanovski's Wells Fargo accounts to the accounts of Sunset Holding Partners, LLC, to be used to acquire real estate for

investment purposes for Guayas. Attached hereto as Exhibit "D" and incorporated herein by reference is a true copy of Wells Fargo bank statements reflecting the transfers.  Mr. Latsanovski was my agent fiduciary pursuant to the Fiduciary Agreement at all times concerning the investment of the $5,868,000. At no time did Mr. Latsanovski have any right to or interest in the $5,868,000. The $5,868,000 was invested in the following properties:

|   |   |   |
|---|---|---|
| 1. | 5624 Stratford Rd., Los Angeles | $   600,000 |
| 2. | 1737 W. 35th St., Los Angeles | $   300,000 |
| 3. | 1032 W. 22nd St., Los Angeles (USC) | $   450,000 |
| 4. | 21809-21811 Figueroa (CARSON) | $1,100,000 |
| 5. | 314 W. 113th St., Inglewood (Townhomes) | $   300,000 |
| 6. | 657 W. Acacia Ave., El Segundo | $   800,000 |
| 7. | 2445 Louella Ave., Venice | $1,218,000 |
| 8. | 3777 Rosewood Ave., Los Angeles | $1,100,000 |
|   | Total Sum | $5,868,000 |

Attached hereto as Exhibit "E" and incorporated herein by reference is a true copy of an "*Amendment Agreement to Original Contract Agreement*," between Guayas, Ltd and Sunset Holding Partners, LLC dated June 10, 2015.

**D.** *No Knowledge of Igor Latsanovski's Involvement With Alon Nottea*
   *And The Aura Vie Skin Products.*

9.    I first learned of the Federal Trade Commission injunction in June, 2015. I was advised of its issuance by Mr. Latsanovski. Until I learned of the Federal Trade Commission injunction from Mr. Latsanovski, I had absolutely no knowledge concerning Mr. Latsanovski's business relationship with Alon Nottea and Mr. Nottea's related companies, including Aura Vie. Nor did I have any knowledge of any violations of law as asserted by the Federal Trade Commission by Mr. Latsanovski or Mr. Nottea.

DECLARATION OF ILIA KLYKOV
RE: NOVEMBER 6, 2009 FIDUCIARY MANAGEMENT AGREEMENT

1    I declare under penalty of perjury under the laws of the United States of America

2    that the foregoing is true and correct.

3    Executed this __1__ day of April, 2016, at Moscow, Russian Federation.

4

5

6

7    ILIA KLYKOV

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ILIA KLYKOV
RE: NOVEMBER 6, 2009 FIDUCIARY MANAGEMENT AGREEMENT

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on April 18, 2016, a true and correct copy of the foregoing document described as DECLARATION OF ILIA KLYKOV RE: NOVEMBER 6, 2009 FIDUCIARY MANAGEMENT AGREEMENT; AND JANUARY 12, 2015 AGREEMENT BETWEEN GUAYAS, LTD. AND CALENERGY, LLCwere served electronically via e-mail.   The attorneys listed below were served by pursuant to the ECF notice generated by the Court.

**_Local Counsel For Receiver_**
Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd., Suite 2250
Los Angeles, CA  90036
nameri@agmblaw.com

**_Counsel For Oz Mizrahi_**
Erik S. Syverson
Raines Feldman LLP
9720 Wilshire Boulevard, Fifth Floor
Beverly Hills, CA  90212
esyverson@raineslaw.com

**_Counsel For Chargeback Armor, Inc._**
Sagar Parikh
Beverly Hills Law Corp.
433 N. Camden Drive, 6th Floor
Beverly Hills, CA  90210
SP@BeverlyHillsLawCorp.com

**_Federal Trade Commission_**
Reid Tepfer
Luis Gallegos
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
rtpefer@ftc.gov
lgallegos@ftc.gov

7

1   ***Counsel For Alon Nottea and Roi Rueveni***
Robert M. Ungar
2   Crosswind Law
3   14724 Ventura Blvd., Penthouse
Sherman Oaks, CA  91403
4   rmu@crosswindlaw.com

5   ***Counsel For Doron and Motti Nottea***
6   Randi R. Geffner
Esensten Law
7   12100 Wilshire Blvd.
Suite 1660
8   Los Angeles, CA  90025
9   Telephone:  (310) 273-3090
RGEFFNER@ESENSTEINLAW.COM
10

11

12          I declare under penalty of perjury under the laws of the State of California and the United
13   States of America that the foregoing is true and correct.
14          Executed the 18th day of April, 2016, in Costa Mesa, California 92626.
15

16

17                                             Javaise Escoto, Declarant
18

19

20

21

22

23

24

25

26

27

28
                                    2