ROBERT M. UNGAR (State Bar No. 102007)
rmu@ungarlaw.com
14724 Ventura Blvd., PH
Sherman Oaks, CA 91403
Telephone: (310) 405-1884

BEN PETTIT (State Bar No. 135941)
ben@benpettit.com
20 E. Pueblo Street
Santa Barbara, CA 93105
Telephone (805) 896-5113

**Attorneys for Defendants:** Alon Nottea and Roi Reuveni

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BUNZAI MEDIA GROUP, INC., et al.,<br><br>Defendants. | CASE NO. 2:15-CV-4527-GW (PLAx)<br><br>[*Assigned to the Honorable George H. Wu, Courtroom 10*]<br><br>**DEFENDANTS ROI REUVENI AND ALON NOTTEA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE PLANTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC # 353, 364]**<br><br>**[Filed Concurrently with Statement of Genuine Disputes; Declarations of Roi Reuveni and Alon Nottea; and Request for Evidentiary Ruling on Specified Objections]**<br><br>**DATE:** May 23, 2016<br>**TIME:** 8:30 A.M.<br>**CTRM:** 10 |

A. NOTTEA AND REUVENI'S OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

I. INTRODUCTION ………………………………………………………………4

II. ARGUMENT……………………………………………………………..,…..4

   A. THE MSJ IS FATALLY DEFECTIVE ……………………………….……4

      1. The Statement of Uncontroverted Facts Violates Local Rules …………………………………………………..4

   B. TRIABLE ISSUES EXIST CONCERNING PERSONAL LIABILITY OF THE INDIVIDUAL DEFENDANTS …………..…....4

      1. Summary Judgment Should Not Be Granted If The Evidence and Facts Are In Dispute and Witness Credibility Is At Issue ……………………………………..…4

      2. Personal Liability For Corporate Violations of the FTC Act…….....5

      3. The Alleged Unlawful Acts and Practices …………………………6

      4. Triable Issues Exist Concerning Roi Reuveni's Personal Liability...6

         (a) Triable Issue Over Whether Reuveni Participated Directly In The Alleged Unlawful Acts.................................6

         (b) Triable Issue Over Whether Reuveni Had The Authority To Control The Alleged Unlawful Acts………,,…8

         (c) Triable Issue Over Whether Reuveni Had Knowledge of The Alleged Unlawful Acts……………,…..10

   C. PLAINTIFF HAS FAILED TO SATISFY ITS BURDEN OF ESTABLISHING CERTAIN CLAIMS ……………,……10

      1. Claim Of Personal Liability on Count III…………………………10

      2. Claim Of Personal Liability on Counts I, II, and III Prior To January 1, 2012……………………………..11

      3. Claim For Restitution and Injunctive Relief………………………12

III. OBJECTIONS TO PROPOSED ORDER GRANTING MSJ………..13

IV. CONCLUSION……………………………………………………………14

# TABLE OF AUTHORITIES

*CFTC v. Co Petro Marketing Group, Inc.*
    502 F.Supp. 806, 818 (C.D.Cal.1980)……………………………………….13

*Chevron USA, Inc. v. Cayetano*
    224 F.3d 1030, 1038 fn. 6 (9th Cir.2000)………………………………5

*FTC v. Amy Travel Serv., Inc.*
    875 F.2d 564, 573 (7th Cir.1989)……………………………………….9

*FTC v. Commerce Planet, Inc.*
    815 F.3d 593 at 600 (9th Cir. 2016)……………………………………..6, 9, 11

*FTC v. Gill*
    265 F.3d 944, 950 (9th Cir. 2001)……………………………………….11

*McSherry v. City of Long Beach*
    584 F.3d 1129, 1135 (9th Cir. 2009)…………………………………… 5

*S. Cal. Gas Co. v. City of Santa Analysis*
    336 F.3d 885, 888 (9th Cir. 2003)……………………………………….10

*SEC v. M & A West, Inc.*
    538 F.3d 1043, 1054-1055 (9th Cir. 2008)………………………………...5

*SEC v. Murphy*
    626 F.2d 633, 655 (9th Cir.1980)……………………………………….13

*Soremekun v. Thrifty Payless, Inc.*
    509 F.3d 978, 984 (9th Cir. 2007)…………………………………… 5

*TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.*
    913 F.2d 676, 684-685 (9th Cir. 1990)………………………………….5

*United States v. W.T. Grant Co.*
    345 U.S. 629, 633, (1953)……………………………………………….12

Defendants Alon Nottea ("Alon") and Roi Reuveni ("Reuveni") oppose the FTC's Motion for Summary Judgment [Doc. #353, 364]:

## I. INTRODUCTION

The FTC's motion should be denied for four principal reasons: (1) The Statement of Uncontroverted Facts does not conform to Local Rule 56-1; (2) genuine fact disputes exist concerning the nature and extent of the individual defendants direct participation and/or control over the alleged unlawful acts, and their knowledge of those alleged unlawful activities; (3) Plaintiff has failed to satisfy its burden as to certain claims; and (4) genuine fact disputes exist concerning the amount of any restitution, whether a permanent injunction is justified, and the scope of any such injunctive relief.

## II. ARGUMENT

### A. THE MSJ IS FATALLY DEFECTIVE

#### 1. The Statement of Uncontroverted Facts Violates Local Rules

LR 56-1 requires that a Statement of Uncontroverted Facts and Conclusions of Law "set forth the material facts as to which the moving party contends there is no genuine dispute". The FTC "cut and pasted" the First Amended Complaint and called it a Statement of Uncontroverted Facts. Paragraphs of the First Amended Complaint contain multiple conclusions mixed with multiple factual allegations making it virtually impossible for responding Defendants to sort out material facts and satisfy the requirements of LR 56-2 in any orderly fashion.

### B. TRIABLE ISSUES EXIST CONCERNING PERSONAL LIABILITY OF THE INDIVIDUAL DEFENDANTS

#### 1. Summary Judgment Should Not Be Granted If The Evidence and Facts Are In Dispute and Witness Credibility Is At Issue

A case can be decided by summary judgment when the court, and not a jury, will be the trier of fact; unless, the evidence is in dispute, material facts are in

dispute and the record is not complete, or witness credibility concerning a material fact is at issue. *TransWorld Airlines, Inc. v. American Coupon Exchange, Inc*. 913 F.2d 676, 684-685 (9th Cir. 1990); *Chevron USA, Inc. v. Cayetano,* 224 F.3d 1030, 1038 fn. 6 (9th Cir.2000). The trial court should not engage in fact-finding at the summary judgment stage when, as in this case, the factual record is undeveloped and where the credibility of witness statements and testimony may determine the outcome on a material fact. *Chevron*, *supra* at 1038, fn. 6. In this regard, the Court should not weigh conflicting evidence or make credibility determinations, and summary judgment should be denied where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility. *SEC v. M & A West, Inc.* 538 F.3d 1043, 1054-1055 (9th Cir. 2008); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court must view the evidence presented on the motion in the light most favorable to the opposing party with all reasonable inferences being drawn in the opposing party's favor where the facts are in controversy. At the summary judgment stage, the non-movant's version of any disputed issue of fact must be presumed correct. *McSherry v. City of Long Beach* 584 F.3d 1129, 1135 (9th Cir. 2009).

        2.        <u>Personal Liability For Corporate Violations of the FTC Act</u>

The FTC alleges in its First Amended Complaint ("FAC") [Doc#235] that by and through the corporate defendants, the individual defendants have harmed consumers nationwide with their unfair and deceptive business practices. [See, Doc#235/17:12-13; Doc#235/19:18-20] The Ninth Circuit has adopted a two-pronged test for determining when an individual may be held personally liable for corporate violations of the FTC Act. That test requires the FTC to prove that the individual: (1) participated directly in, or had the authority to control, the unlawful acts or practices at issue; and (2) had actual knowledge of the misrepresentations involved, was recklessly indifferent to the truth or falsity of the misrepresentations,

or was aware of a high probability of fraud and intentionally avoided learning the truth. *FTC v. Commerce Planet, Inc.,* 815 F.3d 593 at 600 (9th Cir. 2016).

### 3. The Alleged Unlawful Acts and Practices

In Counts 1 through 6 of the FAC [Doc#235], the FTC alleges the following specific unlawful acts and practices:

Count 1: failure to disclose, or disclose adequately to consumers:

(a) use of consumers' credit or debit card information to charge consumers the full costs of the trial products upon the expiration of a limited trial period;

(b) the dates on which the trial period begins and ends;

(c) consumers will be automatically enrolled in a negative option continuity plan with additional charges;

(d) the cost of the continuity plan, and the frequency and duration of the recurring charges;

(e) the means consumers must use to cancel the negative option program to avoid additional charges; and

(f) requirements of the refund policies.

Count 2: misrepresenting that consumers can try AuraVie "risk-free."

Count 3: misrepresenting that AuraVie was accredited by and has a rating of "A-" with the Better Business Bureau.

Count 4: submitting charges for payment to consumer credit and debit cards without the express informed consent of consumers.

Count 5: In addition to the above, failing to provide simple mechanisms for consumers to stop recurring charges for skincare products.

Count 6: failing to obtain a written authorization from consumers for preauthorized electronic fund transfers from their accounts.

### 4. Triable Issues Exist Concerning Roi Reuveni's Personal Liability

#### (a) Triable Issue Over Whether Reuveni Participated Directly In The Alleged Unlawful Acts

Reuveni was hired in 2011 as an employee of Bunzai Media Group, Inc. ("BMG"), his cousin Alon Nottea's ("Alon") company. Reuveni was hired as an information technology ("IT") manager to configure an internal phone system and manage IT equipment and software. Reuveni was not involved in the marketing of BMG products and had no management authority concerning the marketing of the BMG products, including the AuraVie products ("AuraVie"). Reuveni had no management authority over the processing or charging of customer credit cards, debit cards or bank accounts in connection with the AuraVie products, and had no authority to manage BMG employees. [Reuveni Declaration ("Reuveni Dec.") ¶2, 1:27-2:9]

Subsequently, in late 2012 to mid 2014, Reuveni was moved to Pinnacle Logistics, Inc. ("PLI") as general manager where he managed PLI's call center, fulfillment services, and customer services. AuraVie was one of PLI's clients. PLI's call center was staffed with customer service representatives who handled general inquiries, subscription management, product inquiries, refund requests, and return inquiries. PLI also provided product fulfillment and logistics services. PLI never sold, marketed or advertised products, including the AuraVie products. PLI never managed merchant accounts for sellers of AuraVie products. PLI did not use the bank accounts or fictitious business names of other companies. Neither Reuveni nor PLI participated in nor had any management authority concerning the marketing of AuraVie or any other products, nor did they manage the processing or charging of customer credit cards, debit cards or bank accounts in connection with the sale of AuraVie or any other products. [Reuveni Dec. ¶3, 2:10-21]

Reuveni's consulting services were subsequently loaned out to work with Secured Merchants, LLC ("SM") in the further development of SM's IVR Logix System software. Reuveni did not participate in and had no management authority concerning the marketing of AuraVie, or manage the processing or charging of AuraVie customer credit cards, debit cards or bank accounts. In March 2015,

Reuveni's services were loaned out to a start-up company, Chargeback Armor, Inc. ("CBA"), which develops software and operates an automated merchant chargeback management and rebuttal system. Reuveni's services were limited to business development. Neither Reuveni nor CBA were involved with or have management authority concerning the marketing of the AuraVie products or any other products, nor manage the processing or charging of customer credit cards, debit cards or bank accounts in connection with the sale of AuraVie products or any other products. Reuveni did not perform services of any kind in connection with the AuraVie products while he was working at CBA. [Reuveni Dec. ¶¶ 9, 10, 4:3-23]

The alleged unlawful acts in Counts 1 to 6, above, all arise in connection with the advertising and marketing of AuraVie products, and charging of customer credit cards, debit cards or bank accounts.[1] Reuveni's Declaration specifically refutes any participation by him (direct or indirect) in the marketing or advertising of AuraVie products, or the processing or charging of customer credit cards, debit cards or bank accounts in connection with the sale of AuraVie products. Reuveni's lack of direct participation in the alleged unlawful activities is a material fact when determining his personal liability. Viewing Reuveni's Declaration in the light most favorable to him, with all reasonable inferences being drawn in his favor, there exists a genuine dispute of fact over whether Reuveni participated directly in the alleged wrongful activities. To resolve the dispute, the Court will undoubtedly need to weigh the issue of Reuveni's credibility.

  (b)  <u>Triable Issue Over Whether Reuveni Had The Authority To Control The Alleged Unlawful Acts</u>

Roi Reuveni did not have the authority to control the alleged unlawful acts or practices at issue in this case. *Commerce Planet*, *supra* at 600.  Reuveni lacked

---

[1] The FAC specifically alleges the activities were in connection with website design, website marketing, Internet advertising, Internet affiliate marketing, website non-disclosures, or website misrepresentations. [FAC ¶¶ 45-61; Doc#235/23-33]

management authority to direct, supervise, or control participants in the alleged unlawful AuraVie product marketing and advertising, or charging AuraVie customers or processing credit cards, debit cards, or bank accounts. [Reuveni Dec. ¶2, 2:3-9; ¶3, 2:15-21; ¶5, 2:25-3:9; ¶8, 3:26-4:2; ¶9, 4:6-9; ¶10, 4:16-20; ¶13, 5:1-5] Although Reuveni on paper was an officer of two online retail merchant entities that sold the AuraVie products, Agoa Holdings and DMA Media Holdings, Reuveni had no real management authority or control over the sales activities of these entities that were in fact managed and controlled by Reuveni's employer, BMG, through its principals, Alon and Kristopher Bond. Under the circumstances of holding on to his job, Reuveni was not in a position to direct, supervise, oversee or exercise control over these online retail merchant entities. [Reuveni Dec. ¶5, 2:25-3:9] Reuveni was not actively involved in business affairs and making of corporate policy, and did not exercise the duties of a corporate officer. *FTC v. Amy Travel Serv., Inc.,* 875 F.2d 564, 573 (7th Cir.1989) Those duties were performed by Reuveni's employer.

Reuveni's management of PLI services necessary to AuraVie product fulfillment and customer service does not amount to authority to control the acts or omissions alleged in the FAC. Reuveni's management of PLI, even if PLI is considered to be part of a "common enterprise", lacks the necessary nexus between authority to control and, overseeing and directing the alleged unlawful acts or practices. See, *Commerce Planet*, *supra* at 598 [*Throughout that period Gugliuzza oversaw and directed the marketing of OnlineSupplier, which included reviewing and approving the manner in which the negative option was disclosed to consumers.*] Regardless of whether PLI is or is not part of a "common enterprise", neither PLI nor Reuveni were involved with or managed, or had authority to manage, AuraVie product marketing or advertising, or charging AuraVie customers or processing credit cards, debit cards, or bank accounts. [Reuveni Dec. ¶3, 2:15-21]

Similarly, Reuveni's sole ownership of Trigen, LLC (his personal service company) or later consulting services for SM or CBA have little to no connection to any authority to oversee or direct the specifically alleged unlawful acts or practices. The same is true of Reuveni's other activities and any of the communications he received in doing his job. These activities, emails, reports, logs, paperwork, notes or memos (accounted in Plaintiff's Statement of Uncontroverted Facts [Doc#353-2/52-56]) do not amount to directing, overseeing, or having the authority to control AuraVie product marketing or advertising, or charging AuraVie customers or processing credit cards, debit cards, or bank accounts.

(c) <u>Triable Issue Over Whether Reuveni Had Knowledge of The Alleged Unlawful Acts</u>

As more particularly set forth in Reuveni's declaration, he was unaware that it could be unlawful to advertise and market a "risk free trial" on the Internet or, that AuraVie marketing and advertising disclosures were inadequate or unlawful. As PLI's general manager, Reuveni knew that some customers who had not read Auravie's terms and conditions wanted a refund because they were not aware of the cancellation requirements. But, Reuveni was not aware these activities violated the law. In most cases, these complaining customers were issued a refund. [Reuveni Dec. ¶14, 5:8-14]

C. <u>PLAINTIFF HAS FAILED TO SATISFY ITS BURDEN OF ESTABLISHING CERTAIN CLAIMS</u>

On its motion for summary judgment, Plaintiff has the burden of establishing beyond controversy every essential element of its claim. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). Plaintiff has failed to satisfy its burden with regard to the following claims:

1. <u>Claim Of Personal Liability on Count III</u>:

*Knowledge* is an essential element for personal liability under Count III of the FAC --- misrepresentation of AuraVie's BBB rating. *Commerce Planet, supra*

at 600. Individual defendants had to actually know either that the AuraVie BBB rating was not accredited "A-" or, that its BBB rating was unaccredited "F" and falsely represented a better rating. The only admissible evidence in this record is that AuraVie's BBB rating was accredited "A-" from 2011. [Alon Nottea Declaration, ¶13, 6:20-21] There is no admissible evidence that individual defendants had ever been notified of any rating other than accredited "A-".

Plaintiff offers the declaration of Steven McFarland [Ex. 907, Doc#353-27/10-27] that does not disclose the title or relationship of the declarant with the BBB, nor the identity of the custodian of records. Mr. McFarland's statements are offered for the truth of what is contained in hearsay documents and reports; yet, an adequate foundation has not been laid for a business records exception. [FRE 803(6)(A)-(E), inclusive] Without a hearsay exception, Mr. McFarland's declaration should not be considered. In the absence of admissible evidence to prove the knowledge element, Plaintiff has failed to meet its burden and the motion for summary judgment on personal liability under Count III should be denied.

    2.    <u>Claim Of Personal Liability on Counts I, II, and III Prior To January 1, 2012</u>

(a) An essential underlying element to the claim of personal liability under Counts I, II, and III is that a corporate defendant engaged in deception during the time period alleged in the FAC, here since 2010 [Doc#235-23:14] *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001)[2] The MSJ offers no substantial evidence of deception upon which to find personal liability prior to January 1, 2012. [For example, UF#45 cites Exhibit 597 that was not served with the MSJ; Doc#353-2/76:6-9; No consumer declarations concerning time periods prior to 1-1-2012] As such, Plaintiff

---

[2] The FTC's failure to prove through admissible evidence that the Corporate Defendants violated the FTC Act has been addressed by other Defendants and need not be repeated here.

has failed to meet its burden and the motion for summary judgment on personal liability under Counts I, II, and III, prior to January 1, 2012 should be denied.

(b) Ruveni did not go to work for BMG before February 2011. As to Roi Reuveni, the MSJ offers no substantial evidence that Reuveni was a participant in, had control over, or had knowledge of any deception or unfairness prior to February 2011. As such, Plaintiff has failed to meet its burden and the motion for summary judgment on personal liability against Roi Reuveni under all Counts, prior to February 2011 should be denied.

### 3. Claim For Restitution and Injunctive Relief

Plaintiff's Statement of Uncontroverted Facts [Doc#353-2] does not state any uncontroverted facts nor cite to any evidence supporting the amount of restitution or justification for injunctive relief. Plaintiff's Memorandum of Points and Authorities [Doc#353-1] requests restitution of $75,624,030 and cites Ex. 944. [Doc#353-1/54:11.] Ex. 944 was not served with the MSJ. In the absence of admissible evidence, Plaintiff has failed to meet its burden and the motion for summary judgment on the claim for restitution and injunctive relief should be denied.

But even if Plaintiff had satisfied its burden, triable facts exist concerning the amount of restitution and the scope of any permanent injunction:

(a) <u>Restitution</u>. Plaintiff's assertion of the amount paid by consumers for AuraVie products is grossly overstated. Plaintiff is double and triple counting amounts paid by consumers by including revenue of defendant entities (approximately $9.8M) who consumers never paid for AuraVie products, and failing to credit 25% of the total sales that was previously returned to consumers. [Statement of Genuine Disputes, #100, 16:21-17:8]

(b) <u>Injunctive Relief</u>. A permanent injunction is justified if there exists "some cognizable danger of recurrent violation," *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, (1953), or "some reasonable likelihood of future violations," *CFTC*

*v. Co Petro Marketing Group, Inc.,* 502 F.Supp. 806, 818 (C.D.Cal.1980), *aff'd,* 680 F.2d 573 (9th Cir.1982). The Court examines the totality of the circumstances involved and a variety of factors in determining the likelihood of future misconduct. *Co Petro Marketing Group, supra* at 818; *SEC v. Murphy,* 626 F.2d 633, 655 (9th Cir.1980). Nonexhaustive factors include the degree of scienter involved, whether the violative act was isolated or recurrent, whether the defendant's current occupation positions him to commit future violations, the degree of harm consumers suffered from the unlawful conduct, and the defendant's recognition of his own culpability and sincerity of his assurances, if any, against future violations. *Murphy, supra* at 655.

Consideration of these factors necessarily requires a hearing to determine whether a permanent injunction is justified, and if so, the scope of that injunction. It would be inappropriate to issue a permanent injunction on this record.

### III.  OBJECTIONS TO PROPOSED ORDER GRANTING MSJ

Alon and Reuveni raise the following objections to the proposed order granting MSJ [Doc#381-1]:

1. a finding that Reuveni exerted control over a common enterprise [Doc#381-1/7:1-2] [not supported by the evidence];

2. a finding that "Corporate Defendants" who were not sellers of AuraVie and did not have a merchant account were part of a "common enterprise" [Doc#381-1/6:18-19] [not supported by the evidence];

3. a finding that a "risk free trial" was materially misleading to consumers [Doc#381-1/14:17] [not supported by the evidence];

4. a finding that a "risk free trial" was unfair to consumers [Doc#381-1/16:19-20] [not supported by the evidence];

5. a finding that disclosure of the terms and conditions of the "risk free trial' were deficient [Doc#381-1/18:8-9] [not supported by the evidence];

6. a finding that the AuraVie webstes failed to provide a simple mechanism to stop recurring charges [Doc#381-1/23:16-17] [not supported by the evidence];

7. a finding that the AuraVie webstes failed to provide a simple mechanism to stop recurring charges [Doc#381-1/23:16-17] [not supported by the evidence];

8. a finding that Roi Reuveni participated in, controlled, or had the authority to control the unlawful acts and practices at issue in this case [Doc#381-1/28:8-10] [not supported by the evidence];

9. a finding that Roi Reuveni acted with knowledge of law violations [Doc#381-1/35:11] [not supported by the evidence];

10. a finding that the amount of ill-gotten gains or consumer injury is $73,624,030 [Doc#381-1/44:15-16] [not supported by the evidence];

11. the scope of injunctive relief is unjustified, including a lifetime ban on employment with a company who is using, has used, or may use negative option marketing for one or more goods or services, 20 years of ordered recordkeeping, 20 years of compliance reporting, use of individual restitution to finance the administration of the Federal Trade Commission or United States government (a fine or penalty to a government agency) [Doc#381-1/51:4-66:12] [overbroad, unnecessary, and not supported by the evidence].

## IV. CONCLUSION

For the reasons discussed herein, Defendants Alon Nottea and Roi Reuveni respectfully request that the Court deny Plaintiff's Motion for Summary Judgment.

DATED: May 2, 2016

                                             */s/ Robert M. Ungar*
                                             ROBERT M. UNGAR
                                             Attorney for Defendants
                                             Alon Nottea and Roi Reuveni

# CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2016, I electronically filed the foregoing documents entitled:

**DEFENDANTS ROI REUVENI AND ALON NOTTEA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE PLANTIFF'S MOTION FOR SUMMARY JUDGMENT;**

**STATEMENT OF GENUINE DISPUTES OF FACT BY DEFENDANTS ROI REUVENI AND ALON NOTTEA IN OPPOSITION TO THE PLANTIFF'S MOTION FOR SUMMARY JUDGMENT;**

**DECLARATION OF DEFENDANT ROI REUVENI IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**

**DECLARATION OF DEFENDANT ALON NOTTEA IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**

**REQUEST FOR EVIDENTIARY RULING ON SPECIFIED OBJECTIONS BY DEFENDANTS ROI REUVENI AND ALON NOTTEA TO EVIDENCE IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

with the Clerk of the Court by using the CM/ECF System.

   */s/ Robert M. Ungar*
   Robert M. Ungar