ROBERT M. UNGAR (State Bar No. 102007)
rmu@ungarlaw.com
14724 Ventura Blvd., PH
Sherman Oaks, CA 91403
Telephone: (310) 405-1884

BEN PETTIT (State Bar No. 135941)
ben@benpettit.com
20 E. Pueblo Street
Santa Barbara, CA 93105
Telephone (805) 896-5113

**Attorneys for Defendants:** Alon Nottea and Roi Reuveni

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BUNZAI MEDIA GROUP, INC., et al.,<br><br>Defendants. | CASE NO. 2:15-CV-4527-GW (PLAx)<br><br>[*Assigned to the Honorable George H. Wu, Courtroom 10*]<br><br>**STATEMENT OF GENUINE DISPUTES OF FACT BY DEFENDANTS ROI REUVENI AND ALON NOTTEA IN OPPOSITION TO THE PLANTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC ## 353, 353-2, 364]**<br><br>**DATE:** May 23, 2016<br>**TIME:** 8:30 A.M.<br>**CTRM:** 10 |

Defendants Alon Nottea ("Alon") and Roi Reuveni ("Reuveni") submit this Statement of Genuine Disputes pursuant to L.R. 56-2 in opposition to the motion for summary judgment filed by Plaintiff [Doc. #353, 364]. Fact numbers and letters below correspond to the fact numbers and letters and supporting evidence presented in the Statement of Uncontroverted Facts [Doc#353-2] filed by moving party:

1

| UNCONTROVERTED FACT | RESPONSE |
|---|---|
| 1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b; Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404; and Section 917(c), of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § l693o(c) to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' law violations. | 1. This is a conclusion. It is virtually impossible to respond to this and all other conclusions in the Statement of Uncontroverted Facts because this is not a material fact and is not in compliance with L.R. 56-1. This Statement of Genuine Disputes will respond to material facts contained in the moving party's Statement of Uncontroverted Facts in which there is a genuine dispute. |
| 2. Defendants collectively marketed skincare products over the Internet using deceptive offers with hidden costs, negative option features, and return policies. Specifically, Defendants offered "risk-free" trials of skincare products to consumers nationwide through pop-up advertisements and websites. Defendants required consumers who accepted the "risk-free" trials to provide their credit or debit card billing information, purportedly to pay | 2. This is a series of conclusions. To the extent there are also material facts, it is virtually impossible to respond to because there is more than one material fact and is not in compliance with L.R. 56-1. |

| | |
|---|---|
| nominal shipping and handling fees to receive the advertised products. However, 10 days after receiving consumers' billing information, Defendants charged consumers the full costs of the products included in the "risk-free" trials, imposing charges of up to $97.88 onto consumers' credit or debit cards. Defendants refused to provide refunds for product returns unless consumers met onerous conditions that were not adequately disclosed. Additionally, after charging consumers, Defendants enrolled consumers in a negative option continuity plan, in which Defendants shipped additional products each month and charged consumers' credit or debit cards the full costs of the products, usually $97.88 per month. Defendants' scheme deceived consumers nationwide out of millions of dollars. | |
| 9.c. BunZai was owned by Defendants Alon Nottea, Igor Latsanovski, and Khristopher Bond. Exs. 18-2; 302-2. | 9.c. Disputed. Bunzai was owned by Defendants Alon Nottea and Kristopher Bond. Declaration of Alon Nottea ("Alon Dec."), ¶5, 3:11-16. |
| 10. Defendant Pinnacle Logistics, Inc., | 10. This is a series of material facts and |

| | |
|---|---|
| ("Pinnacle") is or was a California corporation with its principal place of business at the same location as BunZai at the Van Nuys Office. Exs. 904-5; 550, at 17:21-24, 550, at 216:12-17. Pinnacle had a secondary address of 6925 Canby Avenue, Suite 105, Reseda, California 91335 ("the Reseda Office"). Dkts. 244 ¶ 10; 245 ¶ 10. At times material to the Complaint, Pinnacle, advertised, marketed, distributed, or sold the skincare products at issue in this case, or provided customer service for such products, to consumers throughout the United States. Dkts. 244 ¶ 1-; 245 ¶ 10. Pinnacle transacted business in this district and throughout the United States. Dkts. 244 ¶ 10; 245 ¶ 10; 250 ¶ 10; 253 ¶ 10; 254 ¶ 10. | conclusions that is virtually impossible to respond to because there is more than one material fact and is not in compliance with L.R. 56-1. To the extent it can be responded to, Disputed. Pinnacle did not advertise, market, or sell the skincare products. Declaration of Roi Reuveni ("Reuveni Dec."), ¶3, 2:15-17. |
| 10.a. Pinnacle took over the order fulfillment, customer service, and chargeback functions and managed merchant accounts for Defendants' skincare business after BunZai dissolved. | 10.a. Disputed. Pinnacle did not manage merchant accounts for Defendants' skincare business. Reuveni Dec., ¶3, 2:16-17. |

4
STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | See Exs. 194; 195; 222 | |
| | 20. Defendant Adageo, LLC is or was a California limited liability company with Encino Mailbox A listed as its registered place of business. Ex. 904-46, -47. At times material to the Complaint, Adageo, LLC, existed to advertise, market, distribute, or sell the skincare products at issue in this case to consumers throughout the United States. See Ex. 54-15, see also Ex. 550, at 156:21-157:15. Adageo, LLC transacted business in this district. Dkts. 244 ¶ 20; 245 ¶ 20; 250 ¶ 20; 251 ¶ 20. | 20. Disputed. Adageo, LLC did not advertise, market, distribute or sell the skincare products at issue in this case. Alon Dec., ¶16, 7:1-6. |
| | 20.a. Adageo, LLC purchased AuraVie products from a distributor and had them shipped to Pinnacle. Ex. 54 p. 11. | 20.a. Disputed. Adageo, LLC did not purchase AuraVie products from a distributor and have them shipped to Pinnacle. Alon Dec., ¶16, 7:5-6. |
| | 32.t. Alon was aware that consumers were misled by his companies' deceptive advertising. | 32.t. Disputed. Alon learned that some AuraVie customers who had not read the terms and conditions were unaware when placing their order that they would be charged for their AuraVie products if they did not cancel during the trial period. Alon was not aware that |

| | | |
|---|---|---|
| 1 2 | | advertising was deceptive. Alon Dec., ¶17, 7:7-11. |
| 3 4 5 6 7 8 9 10 11 | 34. Defendant Doron Nottea is or has been a manager at BunZai and Pinnacle. Defendant Doron Nottea resides in this district and, in connection with the matters alleged herein, transacted business in this district and throughout the United States. Dkt. 244 ¶ 34. | 34. Disputed. Doron Nottea was not a manager at Bunzai or Pinnacle. Alon Dec., ¶8, 4:14-17; ¶11, 5:1-6:3. |
| 12 13 14 15 16 17 18 19 20 | 34.d. Doron Nottea owned Corporate Defendants that participated in the common enterprise. i. Andrew Stanley, a former employee of both BunZai and Pinnacle, testified that Doron Nottea held himself out as the owner of both BunZai and Pinnacle. Ex. 554, at 65:20-66:7; 86:17-87-7; see also Exs. 35; 43; 544. | 34.d. Disputed. Other than a company called Secured Commerce LLC, Doron Nottea was not an owner of any entity defendant in this lawsuit. Alon Dec., ¶8, 4:14-17; ¶11, 5:1-6:3. |
| 21 22 23 24 | 34.e. Doron Nottea managed employees of the common enterprise. | 34.e. Disputed. Doron Nottea did not manage employees of Bunzai or Pinnacle. Alon Dec., ¶8, 4:14-17; ¶11, 5:1-6:3. |
| 25 26 27 28 | 36.a. Doron Nottea and Motti Nottea stated that Igor Latsanovski was an owner of BunZai, and CEO of Zen | 36.a. Disputed. Igor Latsanovski was not an owner of BunZai. Alon Dec., ¶5, 3:11-14; ¶8, 4:14-17. |

| | | |
|---|---|---|
| 1 2 | Mobile Media Group, Inc.<br><br>Dkts. 244 ¶ 36; 245 ¶ 36. | |
| 3 4 5 6 7 | 37.b. Chargeback Armor, Inc. stated that Roi Reuveni was the COO of Chargeback Armor, Inc.<br><br>Ex. 917-66 ¶ 237. | 37.b. Disputed. Roi Reuveni assumed the title of COO for less than three months in 2015 but did not have any management authority in Chargeback Armor, Inc. Reuveni Dec., ¶10, 4:16-17 |
| 8 9 10 11 12 13 14 15 16 17 18 | 37.g. Reuveni supervised BunZai and Pinnacle chargeback department. employees.<br><br>See e.g. Exs. 129; 131; 132. | 37.g. Disputed. Bunzai hired Reuveni as its information technology manager. Ex. 263, Doc#353-15/28; 263-1; Ex. 93, Doc.#353-13/35; 93-1;<br>Reuveni did not supervise a BunZai chargeback department. Reuveni Dec., ¶2, 1:27-2:9; Ex. 554, Stanley Deposition, Doc#353-19/229; 554-17:4-8; Ex. 553, Doc#353-19/200; 553-18:12-18; Ex. 946, Doc#353-32/37; 946-23:6-14 |
| 19 20 21 22 | 37.g.ii. Reuveni assisted in reviewing or drafting AuraVie's template collection letter.<br><br>Exs. 312. | 37.g.ii. Reuveni did not draft AuraVie's template collection letter. Reuveni Dec., ¶5, 3:10-11. |
| 23 24 25 26 27 28 | 37.g.vi. Reuveni reviewed the companies' deceptive free trial websites. Exs. 202 (Reuveni's email address in upper left hand corner of screenshot); 203 (Reuveni's email address in upper | 37.g.vi. Disputed. Reuveni was not involved in the marketing of AuraVie products. Reuveni Dec., ¶¶2, 3, 1:27-2:21; ¶5, 3:6-9; ¶¶8, 9, 3:25-4:10; ¶13, 5:1-7; Alon Dec., ¶7, 4:9-12; ¶15, 6:25- |

| | | |
|---|---|---|
| 1<br>2 | left hand corner of screenshot); 594. | 28. |
| 3<br>4<br>5<br>6 | 37.g.viii. Reuveni assisted in managing LimeLight, the customer management software used by the common enterprise. Ex. 248. | 37.g.viii. Disputed. Reuveni did not manage the LimeLight software. Reuveni Dec., ¶7, 3:23-24. |
| 7<br>8<br>9<br>10<br>11<br>12<br>13<br>14 | 42.g. Counsel for BunZai, designed the common enterprise structure. See Exs. 119; 278; see also Ex. 123 (waiver of privilege). | 42.g. Disputed. Attorney-client privileged confidential memorandums re Intellectual Property ("IP") licensing based upon consultations between counsel and his client, Alon Nottea. Privileged documents copied by Plaintiff from seized computer hard drives. See, Alon Dec., ¶6, 3:20-25. |
| 15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27 | 43. Defendants Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi, Igor Latsanovski, Roi Reuveni, Khristopher Bond, also known as Ray Ibbot, Alan Argaman, and Paul Medina collectively, "Individual Defendants") formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise. | 43. Disputed. Excepting Pinnacle Logistics, Inc., Roi Reuveni did not own, manage, have the authority to control, or participate in the acts or practices of the defendants. Roi Reuveni was not involved in the marketing of AuraVie products and had no management authority concerning the marketing of the AuraVie products. Roi Reuveni was not involved with or have management authority over the processing or charging of customer credit cards, debit cards or bank |
| 28 | | |

8
STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | | accounts in connection with the sale of AuraVie products. Reuveni Dec., ¶13, 5:1-5; Alon Dec. ¶7, 4:9-12; ¶8, 4:14-17. |
| | 43.a. Media Urge, Inc. and Focus Media Solutions, Inc. were controlled by the Individual Defendants. See Ex. 941 at 8:18-9:10; Ex. 941 at 9:19-9:25; Id. at 10:3-10:5; see also Dkt. #120, at 6 n.3, 17. | 43.a. Disputed. Roi Reuveni did not control Media Urge, Inc. or Focus Media Solutions, Inc. Reuveni Dec., ¶13, 5:1-5. |
| | 45. Defendants advertised, marketed, distributed, and sold skincare products online from multiple Internet websites, including auravie.com, auraviefreetrial.com, auravietrialkit.com, and mymiraclekit.com, since at least 2010. Exs. 909; 597-13,-16,-19, -22; see also Dkt. 120, at 1. Defendants offered free trials of their products under a variety of brand names including "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit" (collectively, "AuraVie"). Exs. 909-23, -24, -25, -144, -155; 335 (Dellure); 232-33 (Miracle Face Kit). | 45. Disputed. Roi Reuveni did not advertise, market, distribute, or sell "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit" skincare products online from multiple Internet websites, including auravie.com, auraviefreetrial.com, auravietrialkit.com, and mymiraclekit.com, since at least 2010. Reuveni Dec., ¶¶2, 3, 1:27-2:21; ¶5, 3:6-9; ¶¶8, 9, 3:25-4:10; ¶13, 5:1-7. |
| | 46. Defendants' website failed to disclose adequately and materially misrepresented the terms of their trial | 46. Disputed. "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit" websites disclosed and did not |

| | | |
|---|---|---|
| 1 | offers. | misrepresent trial offers and also offered products on a straight sale. Alon Dec. ¶14, 6:22-24; ¶18, 7:12-14; ¶19, 7:16-17; Ex. 909, Doc#353-29/1-22; Ex. 909, Doc#353-29/27-30 |
| 2 | Ex. 909-113, -115, -116, -126, -128, -140. | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | BBB advised that for internet usage, hyperlinking to a disclosure/explanation page might be acceptable, depending upon context. Ex. 597, Doc#353:20/38 |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | 50. When a user attempted to leave Defendants' websites, a text box appeared that offered to ship the trial offer at a lower shipping price. These pop-up advertisements contained false representations that AuraVie was accredited by the Better Business Bureau ("BBB") with an "A-" rating. Ex. 909-116. In fact, AuraVie was not accredited by the BBB and it had an F rating. Ex. 907 ¶ 5. | 50. Disputed. AuraVie was accredited by the Better Business Bureau ("BBB") with an "A-" rating. Alon Dec. ¶13, 6:20-21. |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | 51. Defendants' marketing practices employed tactics including hidden costs, signing up consumers for negative option continuity plans without their consent, and undisclosed and onerous | 51. Disputed. "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit" websites disclosed all costs, charges, return policies, and obtained customer consent to the continuity offer. |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

10
STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| return policies. See, e.g., Exs. 2 ¶¶ 3-6; 5 ¶¶2-5; 6 ¶¶ 3-6; 7 ¶¶ 2-6; 8 ¶¶ 3-5; 9 ¶¶ 2-5; 11 ¶ 5; 13 ¶ 7; 14 ¶¶ 4-6; 909-117, -118, -130, -131, -145, -146. In their advertisements and sales offers, Defendants failed to disclose adequately that they would charge consumers' credit or debit accounts for the trial product, typically as much as $97.88, after a 10-day period. Id. | Alon Dec. ¶14, 6:22-24; ¶18, 7:12-14; ¶19, 7:16-17; Ex. 909, Doc#353-29/27-30; Doc#353-2/84; Doc.#235/30 ["by clicking "get my order" I agree that I am over 18 years of age and to the terms and conditions"]; Doc.#7-4/16 [order page checkbox in FTC moving papers]. Roi Reuveni did not advertise, market, distribute, or sell "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit" skincare products. Reuveni Dec., ¶¶2, 3, 1:27-2:21; ¶5, 3:6-9; ¶¶8, 9, 3:25-4:10; ¶13, 5:1-7. |
| 52. Defendants also failed to disclose adequately that consumers who accepted the trial offer would be enrolled into a continuity program. Exs. 2 ¶ 6; 3 ¶ 14; 5 ¶ 4; 7 ¶ 6; see also 4 ¶ 6; 9 ¶ 5; 13 ¶ 7; 909-113, -115, -116, -126, -140, - 155. Under the continuity program, Defendants sent consumers additional shipments of Defendants' skincare product each month and charged consumers' credit or debit cards the full cost of each product shipped until consumers affirmatively canceled their | 52. Disputed. "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit" websites disclosed the continuity program terms and conditions. Alon Dec. ¶18, 7:12-14; Ex. 909, Doc#353-29/27-30. Roi Reuveni did not advertise, market, distribute, or sell "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit" skincare products. Reuveni Dec., ¶¶2, 3, 1:27-2:21; ¶5, 3:6-9; ¶¶8, 9, 3:25-4:10; ¶13, 5:1-7; Alon Dec. ¶15, 6:25-28. |

11

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | membership in the continuity program. Exs. 2 ¶ 6; 14; 5 ¶ 4; 7 ¶ 6; 909-117,-118, -130, -131, -145, -146; see also 3 ¶¶ 8; 4 ¶ 6; 9 ¶ 5; 13 ¶ 7. | |
| 5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20 | 55. Consumers have testified that, because they did not receive their "risk-free" trial until after 10 days have elapsed (or nearly elapsed), they could not return the product in time to avoid the $97.88 fee. Ex. 14 ¶ 4, 6; see also 10 ¶¶ 3-4. Consumers also testified that Defendants failed to disclose adequately that they often assessed a "restocking" fee of up to $15 for returning products. Ex. 4 ¶ 7; see also Exs. 2 ¶ 6; 901-49: 8; 909-118, -131, -146. Accordingly, consumers who accepted Defendants' trial offers were likely to incur unexpected charges. | 55. Disputed. Customer has 30 days to return the product. Doc#353-29/27-30 |
| 21<br>22<br>23<br>24<br>25<br>26<br>27 | 56. Defendants' websites did not contain a disclosure concerning the initial charges for the product, continuity program, or return policies until the "final step" of their ordering page. Ex. 909-125. Consumers have testified that they never saw such a disclosure, even | 56. Disputed. Prices, charges and terms were disclosed before the "final step" for straight sales. Ex. 909, Doc#353-29/1-22. In some instances, shipping and handling charges were disclosed before the order page ("final step"). Alon Dec. ¶14, 6:22-24; See, Doc.#235/30 |
| 28 | | |

| | | |
|---|---|---|
| 1 2 | when they specifically looked for one. Exs. 4 ¶ 8; 8 ¶ 3. | [shipping & handling charge in red]. |
| 3 4 5 | 56.b. For some websites, no disclosure was provided even in the final step. Ex. 902-1. | 56.b. Disputed. Order page contained terms and conditions. Doc#353-2/84. |
| 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 | 58. Defendants' disclosure paragraph, as set forth above, failed to disclose: (a) that the 10-day trial period by which consumers must cancel began on the day that the product was ordered; (b) that, to avoid charges, the consumer must also return the product to Defendants by a certain time; (c) that consumers could not return the product for a refund after 10 days if it has been opened; (d) that consumers could not return the product for a refund after 30 days, even if it was not opened; and (e) that a restocking fee, usually $15, may be charged when a product was returned. Id. | 58. Disputed. Consumers were not billed a re-stocking fee in any amount if cancelled during the trial period. Consumer could return the opened (or unopened) product within 30 days if cancelled during the trial period. Doc#353-29/27-30 |
| 21 22 23 24 25 26 27 | 60. Defendants sent consumers who signed up for a trial offer a confirmation email that reinforced the impression that they would receive a free shipment of Defendants' skincare product. Exs. 8 ¶ 4; 8-5,-6; 14 ¶ 3; 15 ¶ 3; 15-5; see also 12 ¶¶ 2, 7; 14 ¶¶ 3, 8; 902-2. | 60. Disputed. The email confirmed that the order was being processed. Alon Dec. ¶20, 7:19-20. |

28

13

| | |
|---|---|
| These emails showed no charges for the "risk-free" trial other than the nominal shipping and handling fees. Id. | |
| 62. Consumers testified that, after they learned that Defendants charged their credit card or debit card accounts and signed them up for a continuity plan, they often had significant difficulty receiving a refund and cancelling the continuity plan. See Exs. 3 ¶¶ 5, 9; 4 ¶¶ 4-6; 6 ¶ 6; 8 ¶ 5; 11 ¶ 5; 14 ¶ 5-7. | 62. Disputed. An interactive automated voice response service was available to consumers 24 hours a day seven days a week by toll free telephone number for cancellation, consumers could email, or consumers could speak to a customer service representative. Alon Dec. ¶2, 2:3-11.  Reuveni Dec. ¶7, 3:13-21. |
| 63. Many consumers reported difficulty contacting Defendants' customer service representatives, despite calling Defendants' toll-free number numerous times. Id. Even when consumers spoke with a representative, some consumers continued to receive shipments and unauthorized charges after cancelling the continuity plan. Ex. 8 ¶ 6. Still others reported receiving multiple charges fromDefendants without receiving products. Ex. 10 ¶¶ 3-4. As a result, consumers continued to incur unwanted and unauthorized charges. Id. | 63. Disputed. An interactive automated voice response service was available to consumers 24 hours a day seven days a week by toll free telephone number for cancellation. It was not a practice to ship product after cancellation. It was not a practice to charge customers without shipping an ordered product. Alon Dec. ¶2, 2:3-11; ¶20, 7:18-20. |
| 65. Defendants' continuity program | 65. Disputed. Chargebacks were |

| | |
|---|---|
| resulted in many complaints and chargeback requests by consumers. See Exs 907; 554 at 26:2-7, 27:7-18, 28:2-5, 28:17-23, 90:20-23.<br><br>A former employee testified that Defendants provided false documents to payment processing companies and exaggerated the measures they took to communicate the terms of their offer to consumers.<br><br>Ex. 554, at 97:22-98:4, see Ex. 554, at 71:3-72:5, 72:8-72:22, 96:10-96:18, 96:23-97:4, 98:16-98:19; see 27:13-27:18. | approximately 2%. Ex 554, Stanley Deposition, Doc# 353-19/239; 554-27:23.<br><br>False documents were not provided to payment processing companies. Alon Dec. ¶21, 7:21. |
| 65.b. Andrew Stanley also testified that Defendants submitted falsified documents to oppose consumer chargeback requests.<br><br>Ex. 554, at 71:3-72:22, 96:10-18, 96:20-97:4, 98:16-19; see also 97:22-98:4, 60:13-22.<br><br>These falsified documents were altered or doctored to make it appear that Defendants' websites required consumers to click a box on the ordering screen indicating that they had read the terms and conditions of the sales offer in | 65.b. Disputed. Sometimes particular pages on the "AuraVie," "Dellure," "LéOR Skincare," and "Miracle Face Kit" websites, including the ordering screen, required the consumer to click a box that they had read the terms and conditions of the sales offer. See, for instance, Doc.#7-4/16 [order page checkbox in FTC moving papers] but, clicking the "get my order button" confirmed the consumer had read the terms and conditions. See, Doc.#235/30 [FTC FAC], "by clicking "get my order" |

15
STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | order to complete a purchase. Ex. 909-13 to -28. No such box existed on AuraVie's websites. See Ex. 554 at 71:12-72:5. Disclosures were made larger and more prominent in materials provided to dispute chargeback requests than appeared on the actual websites. See Exs. 600-21; 909-119,-147,-166; 15-16. | I agree that I am over 18 years of age and to the terms and conditions". |
| 13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 66. Consumers testified that Defendants often did not honor return policies, even when consumers satisfied them. See Ex. 11 ¶ 5; 901-26:19. For example, Defendants told consumers that they could obtain a refund on any product returned even when the product remained unopened and the 30-day period had not yet elapsed, contrary to Defendants' terms and conditions. Id. Some consumers reported being refused a refund by Defendants despite sending the product back within the permissible time period, with Defendants' customer | 66. Disputed. These were the terms and conditions. Doc#353-29/27-30 |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| service representative stating that Defendants could not confirm receipt of return shipment or that the shipment was not returned properly. Exs. 7 ¶ 6; 13 ¶ 7. | |
| 100. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, ROSCA, and EFTA. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest. | 100. Disputed. Plaintiff's assertion of the amount paid by consumers for AuraVie products is grossly overstated. The amount of consumer injury cannot be greater than the amount paid by consumers. Plaintiff is double and triple counting amounts paid by consumers by including revenue of defendant entities (approximately $9.8M) who consumers never paid for AuraVie products, and does not credit 25% of the total sales that was previously returned to consumers. See, Doc#120/68 fn.139. See Doc.#232-1/4; Doc#121-2/3 [defendant entity merchant accounts] Alon Dec. ¶3, 2:26-27. |

DATED: May 2, 2016

                                   */s/ Robert M. Ungar*
                                   ROBERT M. UNGAR
                                   Attorney for Defendants
                                   Alon Nottea and Roi Reuveni