**BEVERLY HILLS LAW CORP., PC**
Sagar Parikh, Esq. (SBN 282655)
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
Telephone:   (310) 887-1338
Facsimile:   (310) 982-2603
Email:       SP@BeverlyHillsLawCorp.com

Attorneys for Alan Argaman, Secured Merchants, LLC
and Chargeback Armor, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:15-cv-04527-GW (PLAx) |
| Plaintiff, | **ALAN ARGAMAN, SECURED** |
| vs. | **MERCHANTS, LLC, AND** |
| | **CHARGEBACK ARMOR, INC.'S** |
| BUNZAI MEDIA GROUP, INC., et al., | **OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT;** |
| Defendants. | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| SECURED MERCHANTS, LLC, CHARGEBACK ARMOR, INC. AND ALAN ARGAMAN, | **Hearing Date:  May 23, 2016** **Time: 8:30 am** **Location:  Courtroom 10 – Spring St.** **Judge: Hon. George H. Wu** |
| Cross-Claimants v. ALON NOTTEA, an individual, Cross-Defendant | |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

ALAN ARGAMAN ("Argaman"), SECURED MERCHANTS, LLC ("SM"),

and CHARGEBACK ARMOR, INC. ("CBA") (collectively "Defendants) hereby

1

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S

OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF

POINTS AND AUTHORITIES

1 │ oppose the Motion for Summary Judgment brought against them by Plaintiff
2 │ FEDERAL TRADE COMMISSION.

3 │      Plaintiff is not entitled to summary judgment or partial summary judgment
4 │ because the material facts demonstrate that: (1) SM was not a part of the Common
5 │ Enterprise alleged in the First Amended Complaint; (2) Argaman did not participate in
6 │ or have the ability to control the alleged illegal conduct; (3) Relief Defendant CBA
7 │ did not receive any ill-gotten gain from the conduct alleged in the First Amended
8 │ Complaint.

9 │      This Opposition is based upon the attached Memorandum of Points and
10 │ Authorities; the Declarations of Alan Argaman and Mike Costache; the Compendium
11 │ of Exhibits; the Statement of Genuine Disputes of Material Facts; all the pleadings,
12 │ papers, and records on file in this matter; and upon such argument that may be
13 │ presented at the hearing on this Motion.

14 │
15 │ DATED:  May 2, 2016                    BEVERLY HILLS LAW CORP., PC
16 │
17 │                                       By: ___/s/ Sagar Parikh___
    │                                           Sagar Parikh, Esq.
18 │                                           Attorneys for Alan Argaman, Secured
    │                                           Merchants, LLC and Chargeback Armor,
19 │                                           Inc.

2

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................6

II. FACTUAL BACKGROUND ......................................................7

III. LEGAL ARGUMENT ...........................................................9

A. THE FTC IS NOT ENTITLED TO THE MONETARY

DAMAGES IT SEEKS..........................................................  10

B.  THE FTC IS NOT ENTITLED TO SUMMARY JUDGMENT

AGAINST DEFENDANTS BECAUSE THEY DID NOT ACT IN A

COMMON ENTERPRISE WITH THE AURAVIE DEFENDANTS ........ 12

1. Lack of Common Officers or Employees................................. 13

2. No Evidence of Common Control. ........................................ 14

3. The Evidence Regarding the Sharing of Office Space Does not

Support the Imposition of Common Enterprise Liability............................ 15

4. There Is No Evidence of Comingling Funds. ........................................... 16

5. SM Did Not Share Advertising and Marketing With the AuraVie

Defendants ..................................................................................... 17

6. SM Did Not Share Business Functions With The AuraVie

Defendants ..................................................................................... 17

C. There Is No Basis For Holding Argaman Liable ..................................... 18

D. The Claim Against Relief Defendant Chargeback Armor Also Should

Be Dismissed.. ........................................................... 23

IV. CONCLUSION ..................................................................... 24

3

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S

OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF

POINTS AND AUTHORITIES

1

**TABLE OF AUTHORITIES**

2 **CASES**

3

4 *Delaware Watch Co. v. FTC,* 332 F. 2d 745, 746 (2d Cir.
1964).............................................................................................12

5

6 *FTC v. Am. Standard Credit Sys Inc.*, 874 F. Supp, 1080, 1089
(C.D. Cal. 1994) ...........................................................................22

7

8 *FTC v. Amy Travel. Serv., Inc.,* 875 ............................................22
F.2d 564, 574 (7th Cir. 1989)

9

10 *FTC v. CHBA,* Case No. 1:10-cv-3551, Order at 9,
(E.D.N.Y May 23, 2012)...............................................................12

11

12 *FTC v. Freecom C'ommo'n, Inc.*, 401 F.3d 1192, 1205
(10th Cir. 2005) ...........................................................................21

13

14 *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1210
(D. Nev. 2011) .............................................................................16

15

16 *FTC v. Kuykendall,* 371 F. 3d 745, 758-59 (10th Cir. 2004)........16

17

18 *FTC v. National Urological Grp. Inc.*, 645 F. Supp. 2d 1167,
1183 n. 7 (N.D. Ga. 2008) ...........................................................15

19

20 *FTC v. Neovi*, 598 F. Supp.2d 1104, 1116 (S.D. Cal. 2008) ........16

21

22 *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43
(9th Cir. 2010) .............................................................................16

23

24 *FTC v. Publishing Clearing House, Inc.*, 104 F.3d
1168, 1171 (9th Cir. 1997) ...........................................................18

25

26 *FTC v. Stefanchik*, 559 F.3d 924, 931.........................................22
(9th Cir. 2009)

27                                    4

28   ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
       OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
                            POINTS AND AUTHORITIES

*FTC. v. Swish Mag.*, No. C 09-03814 RS, 2010
WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) ................................................. 11

*FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1277 ................................. 11
(M.D. Fla. 2012)

*Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 68, 127 S. Ct. 2201,
167 L. Ed. 2d 1045 (2007) ........................................................................ 19

**STATUTES**

Fed. R. Civ. P. 56(a). ...................................................................................... 8

5

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S

OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF

POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The FTC is not entitled to summary judgment or partial summary judgment. Instead, Argaman, SM, and CBA are entitled to summary judgment because there is no genuine issue of material fact that: (1) SM was not a part of the Common Enterprise alleged in the First Amended Complaint; (2) Argaman did not participate in or have the ability to control the alleged illegal conduct; (3) Relief Defendant CBA did not receive any ill-gotten gain from the conduct alleged in the First Amended Complaint.

In its Motion for Summary Judgment, the FTC asks this Court to accept as undisputed facts conclusions and assumptions unsupported by admissible evidence. Much of the documentary evidence on which the FTC relies are drafts documents of no legal significance.  Few if any of the documents on which the FTC relies in its case against Argaman, SM and CBA were the subject of deposition questioning.  Thus, the FTC rather than pointing to deposition testimony that supports the bold conclusions that it makes about the import of these document, relies simply on its own rhetoric. This is insufficient to support its own motion or to defeat the defendants' motion.

Argaman owns SM, which is a technology company. (Argaman Decl. at ¶ 2, Argaman Depo., 141:15-25, 142:1-3).  SM provided technical services on a fee for service basis to a number of companies including some of the other defendants in this case.  SM invested some of the proceeds from its work for other clients in relief defendant CBA.  Based on these arms-length and legal business relationships, the FTC seeks to hold Argaman and SM jointly and severally liable for the allegedly $75 million deceptive advertising and unauthorized billing scheme that the AuraVie

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES

Defendants (defined for the purposes of this Motion as all Defendants other than SM, Argaman, CBA, and Secured Commerce, LLC) perpetrated and to hold CBA liable as a relief defendant.  Indeed, this is why Argaman, CBA, and SM have filed a Cross-Claim against Alon Nottea, the purported mastermind of the AuraVie scheme.  The FTC does this while conceding that SM only made approximately $340,000 in total for its services provided to the AuraVie entities (specifically SBM management). (Exh. 833).  The FTC seeks to impose this draconian result  by asserting that SM was a part of a "common enterprise" with the AuraVie defendants.  Neither the law nor the facts support this conclusion.  Despite having the benefit of pre-complaint discovery, the ability to conduct a "raid" on the premises of the defendants in this case, the full weight of the government behind it, and almost a year of discovery, the FTC cannot produce sufficient admissible evidence to create a genuine issue of material fact regarding SM or Argaman' involvement in the common enterprise.  The FTC's Motion for Summary Judgment rests not on undisputed material facts, but on a gross distortion of Defendants' actions based on documents taken out of context and unsupported conclusions while ignoring the overwhelming evidence demonstrating the Defendants lack of culpability.  Because the claim against CBA is  derivative from the claim against SM, those claims also fail as a matter of law. As a result, the Court should deny the FTC's Motion for Summary Judgment.

## II.

## FACTUAL BACKGROUND

Argaman is the sole member/manager and owner of SM.   (Argaman Decl. at ¶ 1).  The FTC has tried to argue otherwise, but has failed to provide any admissible evidence of this and Argaman's testimony and the documentation shows otherwise.

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

Thus, SM is not controlled by, owned, or operated by any of the other defendants, and was not used by these other defendants in furtherance of the alleged "AuraVie" consumer fraud. (Argaman Decl. at ¶ 1, 3).

Argaman, by and through his company SM, simply acted as an arms' length technology vendor developing and installing a portal system through which chargebacks made by consumers could be viewed and processed. Argaman developed technology; he had no interaction with customers. (Argaman Decl. at ¶ 5-6, Argaman Depo., 109:8-25). As further discussed below, Argaman, by and through SM, also provided technology for Interactive Voice Response systems and helped design a straight sale website. (Argaman Decl. at ¶ 5, 6, 9). SM and Argaman never processed chargebacks as the FTC's Motion claims, but rather only provided the technology to view the chargebacks; chargebacks were not approved or denied by SM or Argaman. SM did not have a "variety of responsibilities" for the common enterprise, but was simply provided technological services in particular areas, as it does with many other clients. (Argaman Decl. at ¶ 2, 5, 6).

The FTC's efforts to inflate and distort Argaman's role to include the shipping of AuraVie products and designing of the AuraVie risk free trial website lack supporting admissible evidence.

Relief Defendant CBA was formed on February 18, 2015 (Exh. 811), long after the AuraVie Defendants' skin care sales business had been shuttered. The First Amended Complaint does not allege that CBA engaged in any wrongdoing. Rather, the only allegation against CBA is that SM made a capital investment of $250,000 of its own funds into CBA in exchange for equity. The First Amended Complaint alleges that this money is ill-gotten gain from the alleged deception; however, ample

8

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES

documentation, including bank records, invoices, and contracts show  that the funds that SM invested in CBA were not from any work that SM did for the other Defendants but rather for work not connected to the AuraVie Defendants.   (Exh. 834, 835, 836, 837, 838, Argaman Decl. at ¶ 19, Costache Decl. at ¶ 4-5).

The FTC in its Motion has misconstrued and speculated with regards to numerous documents it claims "support" its Motion for Summary Judgment against Defendants.  However, as further shown below, these documents are either drafts of agreements and unsigned and thus were never executed, or are only discussions and negotiations, not finalized documents.  The FTC has laid no evidentiary foundation for the admission of these documents beyond a late filed declaration from an investigator indicating that the documents were found at the premises of the AuraVie Defendants, which is insufficient to render them admissible evidence.  The FTC's unsupported speculation about the import or meaning of these documents not only fails to support the FTC's Motion for Summary Judgment, but also is insufficient to defeat the Defendants' Motion for Summary Judgment.

The shortcoming of the FTC's summary judgment motion is especially breathtaking given its request that this Court find the Defendants responsible for $75 million in restitution, despite SM receiving approximately $340,000 as a vendor of SBM Management and CBA receiving $250,000 from SM.    The facts produced by the FTC provide no basis for the imposition of this draconian liability.

**III.**

**<u>LEGAL ARGUMENT</u>**

9

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S

OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF

POINTS AND AUTHORITIES

## A. THE FTC IS NOT ENTITLED TO THE MONETARY DAMAGES IT SEEKS.

Here, SM's only connection with the AuraVie merchants was in providing IT services to those merchants primarily for viewing and handling chargebacks and for developing their IVR system.  Secured Merchants' role was to provide the technology for handling chargebacks and an IVR system; Secured Merchants was not involved in actually handling chargebacks or dictating the content of the IVR.  (Argaman Decl. at ¶ 5-6).

Simply put, it provided the technology, and the AuraVie Defendants used it however they wished; SM did not instruct them on how to use the technology, did not instruct them on how the technology could be used for illegal practices, nor did SM/Argaman have any actual or constructive knowledge of its technology being used for any wrongdoing as they were not privy to the meetings and communications between the AuraVie Defendants.  SM sent invoices that were paid for the services rendered, no different than a landlord renting a premises to the AuraVie Defendants, or USPS being used for shipping of the AuraVie products and being paid for this.  (Argaman Decl. at ¶ 5-6, 12-16).

Secured Commerce, a company that was started by Argaman and Doron Nottea, sent one invoice for website development to the AuraVie Defendants.  As has been explained repeatedly, and testified to under oath, that website was a "straight sale" website where consumers simply could purchase the AuraVie products outright in one transaction, not a negative option/continuity/risk-free trial website, and the services were invoiced for a total of $13,500, which hardly provides a basis for holding Secured Commerce responsible for all of AuraVie's negative option sales.  (Argaman Decl. at ¶ 9, Argaman Depo., 49:8-25).

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1    Argaman never had any customer contact, never processed chargebacks, never

2    designed any website that contained continuity or negative options or free trials, and

3    thus never engaged in any deceptive marketing, advertising, or selling of products.

4    (Argaman Decl. at ¶ 12-16).

5    There is no evidence showing that Argaman actually knew of or was recklessly

6    indifferent to purported misrepresentations or unfairness concerning the negative

7    option, continuity, risk-free trials, and/or any of the other forms of deceptive

8    advertising and marketing alleged.  (Argaman Decl. at ¶ 7, 12-16).

9    Argaman provided technology services, not customer service, and there is no

10   credible, probative, admissible evidence to the contrary.  (Argaman Decl. at ¶ 12-16).

11   The case law is clear this Argaman's limited involvement is insufficient for imposing

12   individual liability.  Notably, Argaman was not even paid any monies from SM or the

13   AuraVie Defendants at any time, let alone from the sale of AuraVie products.

14   (Argaman Decl. at ¶ 22).

15   Compare *FTC v. Freecom C'ommo'n, Inc.*, 401 F.3d 1192, 1205 (10th Cir.

16   2005) (finding individual defendant liable where evidence of frequent meeting

17   attendance, final control over all senior hiring and marketing campaigns, and status as

18   controlling shareholder of a closely held corporation supported inference of authority

19   to control corporate defendant) with *FTC. v. Swish Mag.*, No. C 09-03814 RS, 2010

20   WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) (rejecting FTC's argument that individual

21   defendant's "status as CEO, standing alone, plausibly demonstrates his control over

22   the company and warrants the inference of involvement in the deception" in granting

23   CEO's motion to dismiss) and *FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1277

24   (M.D. Fla. 2012) (although individual defendant had authority over day-to-day affairs

25   of corporate defendant, it was not until another employee was terminated and she

26

27                                              11

28   ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S

     OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF

     POINTS AND AUTHORITIES

1   obtained authority over the sales division one could infer she had the authority to

2   control the sales people and their use of a deceptive sales script.)

3        Thus, SM or Argaman made no representations to any consumers of AuraVie

4   whatsoever, let alone make any misrepresentations that consumers relied on to their

5   detriment.  Argaman and SM simply cannot be held liable for any restitution under

6   these facts.

7        CBA is not alleged to have done any wrongdoing in the First Amended

8   Complaint and did not even exist until February 18, 2015.  Thus, CBA simply could

9   not have made any representations of any kind to any AuraVie consumers and thus

10  cannot be liable for any restitution.

11  **B.  THE FTC IS NOT ENTITLED TO SUMMARY JUDGMENT**

12  **AGAINST DEFENDANTS BECAUSE  THEY DID NOT ACT IN A**

13  **COMMON ENTERPRISE WITH THE AURAVIE DEFENDANTS.**

14       Courts allow the FTC to use the common enterprise doctrine to expand the

15  agency's reach beyond those who themselves deceptively market a product where the

16  "same individuals were transacting an integrated business through a maze of

17  interrelated companies."  *Delaware Watch Co. v. FTC, 332 F. 2d 745, 746* (2d Cir.

18  1964).  Applying *Delaware Watch*, courts rely on several factors to assess the

19  existence of a common enterprise: whether companies (1) maintain officers and

20  employees in common; (2) operate under common control; (3) share offices; (4)

21  commingle funds; and (5) share advertising and marketing.  See *FTC v. CHBA, Case*

22  *No. 1:10-cv-3551, Order at 9*, (E.D.N.Y May 23, 2012).  No one factor is

23  determinative, rather, the entirety of the factual circumstances dictates whether a

24  common enterprise exists and whether a company should be found to be a part of it.

25  *Delaware Watch*, 332 F.2d 1143.

26

27                              12

28  ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S

OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF

POINTS AND AUTHORITIES

1   Here, neither any individual factor nor the overall circumstances support

2   finding SM to be a part of the common enterprise involving the AuraVie Defendants.

3   **1.  Lack of Common Officers or Employees.**

4   Most of the work done by SM is done by technical personnel in India.

5   (Argaman Decl. at ¶ 2).  Argaman, the sole managing member and owner of SM at all

6   times since SM was formed, was not an employee or officer of any of the AuraVie

7   Defendants.  (Argaman Decl. at ¶ 1, 3, 4).

8   Doron Nottea is the only link between SM and the AuraVie Defendants, and

9   that link is inadequate to impose joint and several liability upon SM as Mr. Nottea

10  never undertook any actions in furthering SM's business.  Mr. Nottea was not an

11  officer or employee of SM.  (Argaman Decl. at ¶ 4, Argaman Depo., 131:4-24).

12  Doron Nottea has for many years operated an "adult" products business

13  independent of the AuraVie Defendants.  Doron Nottea has done some bookkeeping,

14  including bill payment, for AuraVie Defendants.  There is no evidence that he is an

15  officer or employee of the AuraVie Defendants or had the ability to control those

16  entities.

17  Moreover, Argaman and Doron Nottea have known each other for years.

18  Several years ago Argaman proposed to Doron Nottea that the two of them share

19  office space for their two separate business ventures and possibly explore doing

20  business together.  To this end, Secured Commerce, another Defendant, was formed.

21  However, Secured Commerce did very limited business and was eventually shuttered.

22  (Argaman Decl. at ¶ 8-9, Argaman Depo., 139:1-21).

23  Due to this friendship and Doron Nottea's experience with bookkeeping,

24  Argaman made Doron Nottea an authorized signatory on the bank account for SM.  ,

25  Doron Nottea was simply on the SM bank account for convenience purposes, as

26

27  13

28  ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S

OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF

POINTS AND AUTHORITIES

Argaman travels internationally often and wanted the convenience of having his friend and business associate write checks on behalf of SM under the direction of Argaman. (Argaman Decl. at ¶ 4).  However, Doron Nottea, actually never wrote any checks on behalf of SM, and was never intended to be, nor was in practice, a part of the actual operations of SM.  (Argaman Decl. at ¶ 4).

### 2. **No Evidence of Common Control.**

There is no evidence that there was common control between SM and the AuraVie Defendants.  Argaman ran a technology company that provided technological services to a variety of companies including the AuraVie Defendants. There is no evidence that Argaman controlled the AuraVie Defendants or that Alon Nottea, Motti Nottea, Doron Nottea, Igor Latsanovski, Oz Mizrahi, or Roi Reuveni controlled Secured Merchants.  (Argaman Decl. at ¶ 1, 3). There is also no evidence that Argaman knew, intended that, or actually provided any services through SM to further the AuraVie Defendants' allegedly deceptive and unfair business practices. (Argaman Decl. at ¶ 5, 6, 10, 11, 12, 13, 14, 15, 16, 17).

Indeed, both the Court and the Receiver previously recognized that Secured Merchants is an independent business that generated the majority of its income from customers other than the AuraVie Defendants. (Doc. 120, p. 77:21-22). These facts are fundamentally inconsistent with common control or a common enterprise.

Next, despite what the FTC claims, SM was not one of the "Bunzai Companies." (Argaman Decl. at ¶ 3, 7, 10-17).

SM's only connection with the AuraVie merchants was in providing IT services to those merchants primarily for viewing and handling chargebacks and for developing their IVR system.  Secured Merchants' role was to provide the technology for handling chargebacks and an IVR system; Secured Merchants was not involved in

14

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1    actually handling chargebacks or dictating the content of the IVR.  (Argaman Decl. at
2    ¶ 5-6).
3          This type of third-party vendor relationship is not common control and not the
4    basis for imposing common enterprise liability.  See *FTC v. Kuykendall*, 371 F. 3d
5    745, 758-59 (10th Cir. 2004) (finding no common enterprise based on commonly
6    owned company providing and being paid for services such as equipment leasing,
7    billing, and collecting); *FTC v. National Urological Grp. Inc.*, 645 F. Supp. 2d 1167,
8    1183 n. 7 (N.D. Ga. 2008) (finding common enterprise where companies were not
9    "compensated for services" performed on the "on the other companies behalf.").
10         Here, unlike the situation in *Kuykendall*, SM is not commonly owned with the
11   AuraVie Defendants as Argaman is the sole owner, so the imposition of common
12   enterprise liability is even more unwarranted.
13         The FTC in its Motion also alleges that SM engaged in skincare sales, but the
14   only support provided for this is a purported executive summary that has not been
15   authenticated, that there is no foundation for, and is a document that the sole principal
16   of SM, Argaman, has never seen before and on which his name does not appear.
17   (Argaman Decl. at ¶ 30).
18         The FTC also misconstrues emails that reference SM as stating chargeback
19   statistics, while the email on its face deals with unpaid bills of customers, and has
20   nothing to do with customers as SM never processed, approved, or denied
21   chargebacks.  (Argaman Decl. at ¶ 5, 6).
22           **3.   The Evidence Regarding the Sharing of Office Space Does not
23                Support the Imposition of Common Enterprise Liability.**
24         SM/Argaman shared office space with Doron Nottea and his adult business in
25   Suite 105 of the Canby building.  Doron Nottea also used Suite 109 in that building
26   for his adult business.  Because he also performed some bookkeeping for the AuraVie

27                                              15
28   ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
     OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
     POINTS AND AUTHORITIES

1   entities, Doron Nottea kept books and records for those entities in Suite 105.  There is
2   no evidence that Suite 105 was in any way the operational "nerve center" for the
3   AuraVie entities or Alon Nottea who ran those entities operated out of Suite 105.

4       The evidence shows that the AuraVie entities operated out of the 7900 Gloria,
5   Van Nuys CA address and briefly from a space at the Canby building in Suite 103.
6   Neither Secured Merchants nor Argaman had anything to do with those spaces.  The
7   AuraVie entities leased, paid for, and occupied those spaces without the involvement
8   of Argaman or SM.  (Argaman Decl. at ¶ 10-11).

9       SM never had any incidental contact or any other contact with the 7900 Gloria
10  space as it never occupied it.

### 4. <u>There Is No Evidence of Comingling Funds</u>.

12      Typically, one of the strongest indicators that defendants operate as a common
13  enterprise is the comingling of funds.  There is no evidence of that here.  The AuraVie
14  entities paid Secured Commerce and Secured Merchants for services rendered, but
15  that does not constitute the requisite comingling of funds.  See *Kuykendahl* supra 371
16  F. 3d at 758-59.  Courts analyzing whether funds have been comingled so as to
17  constitute a common enterprise focus on whether the companies pooled funds, shared
18  expenses, and had unhindered movement of funds between them.   See *FTC v. Neovi*,
19  598 F. Supp.2d 1104, 1116 (S.D. Cal. 2008); *FTC v. Network Servs. Depot, Inc.*, 617
20  F.3d 1127, 1142-43 (9th Cir. 2010) (finding a common enterprise where companies
21  pooled revenues and assets for their collective use); *FTC v. Grant Connect, LLC*, 827
22  F. Supp. 2d 1199, 1210 (D. Nev. 2011) (same, where companies transferred funds
23  among themselves through various undocumented loans and accounts receivable).
24  The FTC has not provided any evidence of that type of conduct here, and the absence
25  of this type of evidence is fatal to the allegation that SM participated in any common
26  enterprise.

27                                          16

28  ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES

### 5. **SM Did Not Share Advertising and Marketing With the AuraVie Defendants.**

There is no evidence SM engaged in any shared advertising or marketing with the AuraVie entities and indeed, SM did not. (Argaman Decl. at ¶ 2, 5, 6, 12).

At its core, this is a case about deceptive marketing and advertising and not a shred of evidence has been produced by the FTC showing that SM had anything to do with the advertising or marketing in question.

This alone makes it clear that there is simply no basis for the imposition of any liability upon SM or Argaman.

### 6. **SM  Did Not Share Business Functions With The AuraVie Defendants.**

In the First Amended Complaint, the FTC makes conclusory allegations that all of the corporate defendants shared business functions and that this supports finding a common enterprise. This vague and overbroad allegation does not rescue the failed effort to pin common enterprise liability on SM. Secured Merchants had limited business relations with the AuraVie entities, for which they sent invoices and were paid. (Argaman Decl. at ¶ 5-6). This does not create a common enterprise.

Similarly, the fact that Secured Merchants shared office space with Doron Nottea and that Mr. Nottea provided some bookkeeping services for both the AuraVie Defendants and Secured Merchants (again, the "bookkeeping services" were limited to being an authorized signer on a bank account and having the ability to write checks, but not even actually writing checks) (Argaman Decl. at ¶ 4) does not transform routine arms' length business relationships into a common enterprise.

SM invoiced the AuraVie Defendants, particularly SBM Management, for approximately $340,000 for technical services. (Exh. 833). These invoices detail these services and it is abundantly evidence upon looking at these invoices that the

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES

1    invoices are completely unrelated to the alleged sale of skincare using deceptive

2    marketing and advertising.

3        There is no evidence that SM shared in any profits generated by the AuraVie

4    entities.  SM was a vendor paid for technological services. Nevertheless, the FTC

5    seeks to hold SM and (and though this entity Argaman) jointly and severally liable for

6    the full amount of alleged consumer injury, an amount the FTC has stated to be in

7    excess of $75 million.

8        The FTC brings this case under Section 13(b) of the FTC Act, 15 USC §53(b),

9    which allows this Court to award a permanent injunction and other equitable relief.

10   Imposing joint and several liability upon SM under these facts (or lack thereof) is

11   anything but equitable.  Thus, the FTC's MSJ must be denied.

12   ## C. THERE IS NO BASIS FOR HOLDING ARGAMAN LIABLE

13       The FTC seeks to hold Argaman liable based on his role at SM.  As explained

14   above, the FTC lacks sufficient evidence to hold SM liable as part of an alleged

15   common enterprise.  With the lack of evidence against SM, there is no basis for

16   finding Argaman liable.

17       There is also no basis for finding Argaman liable for any alleged actions he

18   took apart from his work through SM.   The Ninth Circuit has established a two-prong

19   test for determining when an individual may be personally liable for corporate

20   violations of the FTC Act; the FTC must prove that the individual: 1) participated

21   directly in or had authority to control the unlawful acts or practices; and 2) had actual

22   knowledge of the misrepresentation involved, was recklessly indifferent to the truth or

23   falsity of the representation, or was aware of a high probability of fraud and

24   intentionally avoided learning the truth.  *FTC v. Network Serv. Depot, Inc.*, 617

25   F.3d 1127, 1138 (9th Cir. 2010); *FTC v. Publishing Clearing House, Inc*., 104 F.3d

26   1168, 1171 (9th Cir. 1997).

27                                          18

28   ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
     OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
     POINTS AND AUTHORITIES

1    There is no evidence that Argaman participated in or had the authority to

2    control the alleged illegal conduct or that he possessed the requisite knowledge.

3    The Ninth Circuit has explained that "the common law has generally

4    understood [recklessness] in the sphere of civil liability as conduct violating an

5    objective standard: action entailing 'an unjustifiably high risk of harm that is either

6    known or so obvious that it should be known'" *Network Serv. Depot, Inc.*, 617 F.3d at

7    1141 n. 12 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68, 127 S. Ct. 2201,

8    167 L. Ed. 2d 1045 (2007).)

9    Where the material facts are substantially undisputed, knowledge can be a

10   question of law properly decided by summary judgment. See *Network Serv. Depot,*

11   *Inc.*, 617 F.3d at 1139.

12   There is no evidence showing that Argaman actually knew of or was recklessly

13   indifferent to purported misrepresentations or unfairness concerning the negative

14   option, continuity, risk-free trials, and/or any of the other forms of deceptive

15   advertising and marketing alleged.  (Argaman Decl. at ¶ 7, 12-16).

16   As Argaman stated in his deposition, he only ever worked on an AuraVie site

17   that was a straight sale site, i.e. had no continuity, risk free trial offers, negative

18   options, etc.  See Argaman Depo., 49:8-18).  The FTC chose not to ask Argaman

19   about Exh. 839 at his deposition, and cannot now speculate about what this document

20   means to defeat summary judgment.

21   Additionally, with regards to Limelight, all Argaman did was integrate the

22   technology he created to view and process chargebacks with Limelight, which is

23   nothing more than a customer relations management system.  He was not an owner or

24   operator of Limelight, but Limelight was simply an existing company he used to

25   provide technological services.  (Argaman Decl. at ¶ 27).  The FTC focuses on the

26   fact that Limelight can be used for negative options, continuity, and risk-free trials.

27                                          19

28   ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
     OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
     POINTS AND AUTHORITIES

1  However, this is not tantamount for Argaman (or even the AuraVie Defendants) using

2  Limelight for these purposes. There is simply no evidence of this. This statement is

3  akin to saying that the USPS could be used to transport illegal items and because one

4  uses the USPS, one is liable for the illegal conduct some do using USPS.

5       Next, the FTC maintains that Argaman supposedly introduced Doron Nottea to

6  a product called LeElle and then furthermore consulted on the design and ownership

7  of this product, a product that the Defendants purportedly sold. This had nothing to do

8  with AuraVie. This product was simply an idea - never created, marketed or sold.

9  (Argaman Decl. at ¶ 24). Moreover, the document used to support this, 360-362 do

10 not even reference the AuraVie corporate Defendants as this product was completely

11 separate and unrelated to AuraVie, notwithstanding the fact that it was never sold or

12 marketed to begin with.

13      Argaman also never created any toll-free phone numbers for "shell companies"

14 as the FTC would claim. (Argaman Decl. at ¶ 25). The document used to support this

15 argument, Exhibit 529, has no reference to shell companies.

16      With regards to the services Argaman did provide through his company SM, as

17 explained above, the technology services that SM provided to the AuraVie Defendants

18 was developing and installing a portal through which chargebacks could be viewed

19 and processed and an IVR system. There is no evidence that SM or Argaman

20 responded to chargebacks on behalf of the AuraVie entities or was responsible for

21 how customer service calls were disposed of. (Argaman Decl. at ¶ 5, 6, 13, 16).

22      Argaman also never received any chargeback statistics, as Argaman never

23 processed chargebacks. (Argaman Decl. at ¶ 5-6).

24      Furthermore, Argaman never designed, advertised, or marketed the AuraVie

25 product or the AuraVie website, other than the straight-sale website that contains no

26 negative options, risk-free trials, or continuity. (Argaman Decl. at ¶ 9). Any Exhibits

27                                          20

28 ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES

the FTC uses to support these bogus claims, such as 185, 494, or 497, deal with quotes for blog creation services and are completely misrepresented by the FTC.

Argaman is also alleged to have received emails detailing load balancing and high risk accounts and have assisted in call center operations .  However, the documents the FTC cites to support these allegations, Exhibit 337, 386, and 449 do not stand for this and either do not contain any reference to these "magic words", load balancing and high risk accounts, or in the case of 386, deal with something other than call centers.  (Argaman Decl. at ¶ 13, 25).

Argaman provided technology services, not customer service, and there is no credible, probative, admissible evidence to the contrary.  (Argaman Decl. at ¶ 12-16).  The case law is clear this Argaman's limited involvement is insufficient for imposing individual liability.  Notably, Argaman was not even paid any monies from SM or the AuraVie Defendants at any time, let alone from the sale of AuraVie products.  (Argaman Decl. at ¶ 22).

Compare *FTC v. Freecom C'ommo'n, Inc.*, 401 F.3d 1192, 1205 (10th Cir. 2005) (finding individual defendant liable where evidence of frequent meeting attendance, final control over all senior hiring and marketing campaigns, and status as controlling shareholder of a closely held corporation supported inference of authority to control corporate defendant) with *FTC. v. Swish Mag.*, No. C 09-03814 RS, 2010 WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) (rejecting FTC's argument that individual defendant's "status as CEO, standing alone, plausibly demonstrates his control over the company and warrants the inference of involvement in the deception" in granting CEO's motion to dismiss) and *FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1277 (M.D. Fla. 2012) (although individual defendant had authority over day-to-day affairs of corporate defendant, it was not until another employee was terminated and she

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1    obtained authority over the sales division one could infer she had the authority to

2    control the sales people and their use of a deceptive sales script.)

3         None of the evidence in the case supports the assertion that Argaman

4    participated directly in or had the ability to control the alleged illegal conduct, and his

5    limited technology consulting work is an insufficient basis upon which to impose

6    individual liability.

7         This failure renders this case different from those in which individual liability is

8    imposed and requires his dismissal.  See e.g. *FTC v. Stefanchik*, 559 F.3d 924, 931

9    (9th Cir. 2009) (individual defendant, who was owner, sole shareholder, director and

10   manager of company, held liable where he controlled the marketing activity and

11   representations about the product, was informed after his counsel reviewed the scripts

12   that he would need to be able to substantiate his claims (and could not), and was

13   informed by others that the sales representatives were misleading consumers); *FTC v.*

14   *Publ. Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1996) (finding that

15   defendant controlled the deceptive acts in question, where "substantial facts before the

16   Circuit . . . detailed the defendant's relationship not only to the corporation but also to

17   its telemarketing scheme.") (emphasis added); *FTC v. Amy Travel. Serv., Inc.*, 875

18   F.2d 564, 574 (7th Cir. 1989) (finding "clear" evidence of defendants' authority and

19   involvement where they "were the principal shareholders and officers of the closely

20   held corporations," "created the businesses, opened new ones, wrote telemarketing

21   scripts, and hired personnel" and "controlled the financial affairs of the companies and

22   reviewed the sales reports and other information"); *FTC v. Am. Standard Credit Sys*

23   *Inc.*, 874 F. Supp., 1080, 1089 (C.D. Cal. 1994) (finding FTC entitled to injunctive

24   relief against CEO and company president who participated in the day-to-day

25   operations of the company, formulated, reviewed, approved implemented, and

26

27                                         22

28   ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S

     OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF

     POINTS AND AUTHORITIES

disseminated their company's marketing policies and procedures, and "monitored the marketing activities'.' of its third-party marketers).

### D. The Claim Against Relief Defendant Chargeback Armor Also Should Be Dismissed.

The First Amended Complaint alleges that CBA received ill-gotten funds from the alleged wrongdoing to which it is not entitled.  The only funds that the FTC has identified are the $250,000 that SM invested in CBA.  (Doc. 231, p. 2: 8-10).

The FTC maintains that SM invested money in CBA and that these funds constitute ill-gotten gain to which CBA has no legitimate claim making CBA a relief defendant.  This allegation also is fatally flawed and contradicted by the evidence.

First, because SM was not a part of any alleged common enterprise, there is no basis for keeping it in the case.  Without SM in the case, there is no basis for continuing to assert that CBA received any alleged ill-gotten gain.

Second, Secured Merchants and CBA have supplied bank records, invoices, copies of contracts, and sworn testimony demonstrating that the $250,000 that SM invested in CBA came from work SM performed for clients other than the AuraVie Defendants.  (Exh. 834-838).  Thus, there is no evidence that CBA received any ill-gotten gain from the conduct alleged in the First Amended Complaint.

This was a simple business transaction that the FTC cannot arbitrarily claim was illegal: SM provides technological services and three of its clients were the Wealth Group, Inc., Wealth Vision, Inc., and Big Ventures, Inc., three companies not part of this lawsuit, unrelated to the Defendants, and unrelated to the sale of AuraVie. (Exh. 834-836, Argaman Decl. at ¶ 18, Costache Decl. at ¶ 6).

SM then took this $250,000 and chose to make a capital investment into CBA in exchange for future equity in CBA, once the valuation of CBA was more established.  This was attested to in Argaman's deposition and the contract for this

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1   transaction was provided, as well as the bank statements showing the transfer.
2   (Argaman Decl. at ¶ 18, 19, 20, Argaman Depo., 95: 14-25, 96:1-25, Costache Decl.
3   at ¶ 5-6).

4         Third, while the FTC would like to claim differently, Argaman had no role with
5   CBA and this cannot be used to hold CBA liable either (even assuming the FTC can
6   overcome the insurmountable task of somehow showing Argaman is liable for
7   anything).  (Argaman Decl. at ¶ 21, Costache Decl. at ¶ 1-2, 8). No other Defendant
8   had any formal role with CBA as a shareholder or director either.  (Costache Decl. at ¶
9   2, 7, 8, 9, 11).

10         Some of the other Defendants being authorized to receive mail on behalf of
11   CBA does not automatically make them a part of CBA.  (Costache Decl. at ¶ 9).  The
12   FTC misconstrues this by claiming, using Exhibit 365-13, that other individuals were
13   sent mail for CBA, which is false.   The FTC also uses Exhibit 184 to claim that Alon
14   Nottea reported to Argaman concerning CBA customers, when on its face, the
15   document relates to Nottea obtaining investments for an unrelated call center technical
16   support business and has no reference to CBA nor does it show that Nottea was
17   somehow "reporting" to Argaman.  This type of incorrect interpretation and plain
18   reading of documents cannot support a Summary Judgment Motion.

19         The FTC also implies that CBA somehow is a successor to SM and that this
20   somehow allows CBA to be held to be a relief defendant.  The FTC offers no legal
21   support for this radical theory.

22         For all these reasons, the claim against CBA should be dismissed.

23   **IV.**

24   **CONCLUSION**

25         For the aforementioned reasons, the Motion for Summary Judgment filed by the
26   FTC should be denied as to all of the claims the FTC alleges against these Defendants

24

27
28   ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S

OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF

POINTS AND AUTHORITIES

and Argaman, CBA, and SM's Motion for Summary Judgment should be granted, as there is simply no evidence (after a year of litigation and two months before trial) that these Defendants can be held liable for any wrongdoing and at the very least, there are a litany of disputes as to material facts and legal issues.

DATED:  May 2, 2016                         **BEVERLY HILLS LAW CORP., PC**

By:   /s/ Sagar Parikh
      Sagar Parikh, Esq.
      *Attorneys for* Alan Argaman, Chargeback
      Armor, Inc. and Secured Merchants,
      LLC

25

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S

OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF

POINTS AND AUTHORITIES

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2016, I electronically filed the foregoing documents entitled:

**DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**

**STATEMENT OF GENUINE DISPUTES OF FACT IN OPPOSITION TO THE PLANTIFF'S MOTION FOR SUMMARY JUDGMENT;**

**DECLARATION OF DEFENDANT ALAN ARGAMAN IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**
**DECLARATION OF MIKE COSTACHE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**

with the Clerk of the Court by using the CM/ECF System.

*/s/ Sagar Parikh*
Sagar Parikh, Esq.