**BEVERLY HILLS LAW CORP., PC**
Sagar Parikh, Esq. (SBN 282655)
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
Telephone:   (310) 887-1338
Facsimile:   (310) 982-2603
Email:       SP@BeverlyHillsLawCorp.com

Attorneys for Alan Argaman, Secured Merchants, LLC
and Chargeback Armor, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br>vs.<br><br>BUNZAI MEDIA GROUP, INC., et al.,<br>Defendants.<br>_____<br><br>SECURED MERCHANTS, LLC,<br>CHARGEBACK ARMOR, INC.<br>AND ALAN ARGAMAN,<br><br>Cross-Claimants<br>v.<br>ALON NOTTEA, an individual,<br><br>Cross-Defendant | Case No. 2:15-cv-04527-GW (PLAx)<br><br>**DECLARATION OF ALAN ARGAMAN IN SUPPORT OF OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Date:  May 23, 2016**<br>**Time: 8:30 am**<br>**Location:  Courtroom 10 – Spring St.**<br>**Judge: Hon. George H. Wu** |

I, Alan Argaman, declare:

I have personal knowledge of the following facts and, if called upon to testify, I could and would so competently and truthfully testify to these facts:

- 1 -

1. I am the founder, only current member, and only current manager of Secured Merchants, LLC ("SM"). I have always been the only member and only manager of SM.

2. SM is a technology services company that offers services including website development, software development, e-commerce software, and related technology services. The majority of the work that I have SM do is done by independent contractors that I hire in India. SM is currently not and never has been a seller of skin care products, and does not market skin care products through online sales using "negative option" or "free trial offer" marketing. Its business is completely unrelated to the activities the "AuraVie" Defendants were allegedly engaged in.

3. At no time were any of the other Defendants in this case employees of SM.

4. Doron Nottea has been my friend for 25 years and a business associate of 20 years. He was placed as an authorized signatory on SM's bank account because he had acted as a bookkeeper for numerous companies and I wanted him as a signatory for convenience purposes to write checks on SM's behalf in the event I was travelling and unable to access SM checks. Doron Nottea never wrote any checks on behalf of SM. At no time was Doron Nottea ever paid

DECLARATION OF ALAN ARGAMAN IN SUPPORT OF OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT

monies by SM.  At no time was Doron Nottea ever given any responsibilities for the business operations of SM.

5. SM was a vendor to the AuraVie Defendants in this case and provided the following services: IT services to AuraVie merchants primarily for viewing and handling chargebacks and for developing their Interactive Voice Response (IVR) system.  SM never operated the IVR system and did not use it to interact with AuraVie consumers.

6. SM provided 3rd part technical services and invoiced for tis work.  The actual technology for handling chargebacks and an IVR system; SM itself never handled chargebacks or dictated the content of the IVR.

7. I was never employed by, a partner in, an owner of, a shareholder of, or an affiliate of any of the other AuraVie Defendant companies in this case.   I never had any management or involvement with the AuraVie Defendants and neither I, nor SM charged or processed any AuraVie customer credit cards, debit cards, or operated or controlled any AuraVie bank accounts.  I, nor SM ever sold any skincare for AuraVie.

- 3 -

8. I started a company with Doron Nottea called Secured Commerce, LLC. Secured Commerce was supposed to be an e-commerce company, but the business never took off.

9. The only work Secured Commerce ever did was design the AuraVie straight sale website. This was a website that was not a part of the AuraVie scheme alleged in the lawsuit by the FTC as this website did not utilize negative options, continuity, or risk free trials. It was simply a website where a consumer could purchase skincare products and pay for them. There were no other added features. This is the only website I designed as well. The work is for a site that operates with buttons such as "Add to Cart" and ecommerce industry "checkout" as a straight sale site

10. SM never operated out of the office located at 7900 Gloria Avenue in Van Nuys.

11. SM never operated out of Suite 103 at the Canby office.

12. I, either individually, or through SM, never was privy to the actual content the AuraVie Defendants used to market and advertise the AuraVie skincare products. I was never present at any meetings the AuraVie Defendants had to discuss the marketing or advertising or selling of these products, nor was I ever

- 4 -

a part of any such communications involving the actual operations of AuraVie. I was a technology vendor and involved in communications and meetings solely related to that topic.

13. I, either individually, or through SM, had no knowledge of the script that AuraVie call center used when talking to customers calling in.  I never operated any call center or assisted in operating any call center either.

14. I, either individually, or through SM, had no knowledge of the terms that were disclosed to AuraVie customers regarding the sale of the products.

15. I, either individually, or through SM, never designed, created, or managed any AuraVie website that sold products using a negative option method, continuity, or offered risk free trials.

16. I, either individually, or through SM, never interacted with any customers who purchased AuraVie products.

17. I, either individually, or through SM, never processed (approved or denied) any chargebacks on behalf of the AuraVie Defendants.

18. The $250,000 that was invested as a capital infusion by SM into CBA was profit that SM derived from providing technological services for Wealth Group, Inc., Wealth Vision, Inc., and Big Ventures, Inc.  I entered into these contracts

- 5 -

on behalf of SM and Exhibits 834, 835, and 836 show true and correct copies of these three contracts.

19. No money from SBM Management or any other Defendant was used to infuse capital into CBA by SM.

20. Attached as Exhibit 837 is a true and correct copy of the Capital Infusion Agreement with CBA I signed on behalf of SM.

21. I am not a founder of CBA, was never a shareholder of CBA, nor was I ever a board member, employee, or officer of CBA.

22. I have never been paid any monies from SM or any of the AuraVie Defendants.

23. I corresponded with Victor Azal the in house website designer for the AuraVie Defendants and simply provided him with technological advice that related to an internet protocol procedure.  Victor and the other in-house designers designed all of the trial offers Neither I nor SM ever designed any free trial offers .

24. LeElle was a product that was going to be sold by a separate e-commerce business that was for high-end department stores.  It had nothing to do with AuraVie and I had no input or knowledge regarding what products the AuraVie

- 6 -

Defendants sold. This concept product LeElle was never created, marketed or sold.

25. I, either individually, or through SM, have never created or helped create any toll-free phone numbers for any "shell corporations."  I also never assisted with anything related to load balancing or high risk accounts.

26. I had nothing to do with Doron Nottea creating the email address "securedmerchantsllc@gmail.com" and did not instruct him, advise him, or allow him to create this email address.

27. I developed the "chargeback armor" software technology to use with my clients, not specifically for the AuraVie Defendants.  However, Bunzai Media Group decided to hire SM to integrate this software technology with Limelight, which is a customer relations management system.  I never managed any Limelight campaigns for the AuraVie Defendants.   I do not own or operate Limelight and have no affiliation with the company.

28. I met with Igor to discuss potentially doing business together involving technical start-up ideas that he wanted to potentially invest in, but nothing ever materialized.

29. SM was formed on June 25, 2013 as a California limited liability company.

- 7 -

30. I have never before this lawsuit seen the document listed as the FTC's Exhibit Number 257.  This is not any sort of "Executive Summary" I created or sent out.

31. Creative Venture and Vitaque were companies I was discussing business with on behalf of SM and this business was completely unrelated to AuraVie

I declare under penalty of perjury that the foregoing is true and correct.

DATED: May 2, 2016                    By:   *Alan Argaman*
                                            _____
                                            Alan Argaman

---

DECLARATION OF ALAN ARGAMAN IN SUPPORT OF OPPOSITION TO FTC'S MOTION FOR SUMMARY JUDGMENT