**BEVERLY HILLS LAW CORP., PC**
Sagar Parikh, Esq. (SBN 282655)
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
Telephone:  (310) 887-1338
Facsimile:   (310) 982-2603
Email:       SP@BeverlyHillsLawCorp.com

Attorneys for Alan Argaman, Secured Merchants, LLC
and Chargeback Armor, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:15-cv-04527-GW (PLAx) |
| Plaintiff, | **ALAN ARGAMAN, SECURED** |
| vs. | **MERCHANTS, LLC, AND** |
| | **CHARGEBACK ARMOR, INC.'S** |
| BUNZAI MEDIA GROUP, INC., et al., | **STATEMENT OF GENUINE** |
| | **DISPUTES OF MATERIAL FACTS** |
| Defendants. | **IN SUPPORT OF OPPOSITION TO** |
| | **FEDERAL TRADE** |
| | **COMMISSION'S MOTION FOR** |
| SECURED MERCHANTS, LLC, | **SUMMARY JUDGMENT** |
| CHARGEBACK ARMOR, INC. | |
| AND ALAN ARGAMAN, | **Hearing Date:  May 23, 2016** |
| | **Time: 8:30 am** |
| Cross-Claimants | **Location:  Courtroom 10 – Spring St.** |
| v. | **Judge: Hon. George H. Wu** |
| ALON NOTTEA, an individual, | |
| Cross-Defendant | |

Pursuant to Local Rule 56-2, Defendants ALAN ARGAMAN ("Argaman"), SECURED MERCHANTS, LLC ("SM"), and CHARGEBACK ARMOR, INC. ("CBA") (collectively "Argaman Defendants") hereby submit this Statement of Genuine Disputes of Material Facts in Response to the FTC's Statement of

- 1 -

Uncontroverted Facts.  This response only covers those portions of the FTC's 56.1 Statement that pertain to the Argaman Defendants.

| FTC'S Allegedly Uncontroverted Fact | Defendants' Response |
|---|---|
| 2. Defendants collectively marketed skincare products over the Internet using deceptive offers with hidden costs, negative option features, and return policies. Specifically, Defendants offered "risk-free" trials of skincare products to consumers nationwide through pop-up advertisements and websites. Defendants required consumers who accepted the "risk-free" trials to provide their credit or debit card billing information, purportedly to pay nominal shipping and handling fees to receive the advertised products. However, 10 days after receiving consumers' billing information, Defendants charged consumers the full costs of the products included in the "risk-free" trials, imposing charges of up to $97.88 onto consumers' credit or debit cards. Defendants refused to provide refunds for product returns unless consumers met onerous conditions that were not adequately disclosed. Additionally, after charging consumers, Defendants enrolled consumers in a negative option continuity plan, in which Defendants shipped additional products each month and charged consumers' credit or debit cards the full costs of the products, usually $97.88 per month. Defendants' scheme deceived consumers nationwide out of millions of dollars. | 2. Disputed.  The Argaman Defendants did not market or sell any skincare products, nor bill any customers, as they were vendors providing unrelated services.  Argaman Decl. at ¶ 10-16 |
| 3. As explained more fully below, Defendants operated a common | 3. Disputed.  The Argaman Defendants |

- 2 -

| | |
|---|---|
| enterprise through which they: (a) failed to disclose adequately material terms of their sales offer, including the offer's costs and negative option features; (b) falsely represented that consumers could obtain products on a "trial" or "risk-free" trial basis for only a nominal shipping and handling fee; (c) failed to obtain consumers' informed consent to the material terms, including the negative option feature, of the transaction before charging the consumer; (d) falsely represented was their business accredited by the Better Business Bureau with an "A-" rating; (e) failed to provide consumers a simple method of cancelling their negative option continuity plan, and (f) debited consumers' bank accounts on a recurring basis without obtaining written authorization from consumers or providing a written copy of the authorization to the consumer. | were not part of the common enterprise, and did not engage in any selling of skincare through any means.  Declaration of Alan Argaman at ¶10-16. |
| 4. This Court has subject matter jurisdiction pursuant to 28 U.S.C.§§ 1331, 1337(a), and 1345 and 15 U.S.C. §§ 45(a), 53(b), and 57b. Dkts. 299 ¶ 4; 300 ¶ 4; 301 ¶ 4. *See also* Exs. 910-2 ¶ 1; 911-2 ¶ 1; 914-2 ¶ 1; 915-2 ¶ 1; 916-2 ¶ 1; 918-9 ¶ 1. | 4. Undisputed |
| 5. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 15 U.S.C. § 53(b). Dkts. 299 ¶ 5; 300 ¶ 5; 301 ¶ 5. *See also* Exs. 910-2 ¶ 6; 911-2 ¶ 6; 912-4 ¶ 6; 913-4 ¶ 6; 914-3 ¶ 6; 915-3 ¶ 6; 916-10 ¶ 6; 917-12 ¶ 6; 918-10 ¶ 6. | 5. Undisputed |
| 6. Assignment to the Western Division is proper because Defendants' primary place of business was in Van Nuys, California. | 6. Undisputed |

- 3 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Ex. 904. | |
| 26. Defendant **Secured Merchants, LLC** is or was a California limited liability company with its principal place of business at the Reseda Office. Dkts. 299 ¶ 26; 301 ¶ 26. Secured Merchants, LLC, provided other members of the common enterprise the service of contesting chargebacks. See Ex. 917-45 ¶ 56. Secured Merchants, LLC transacted business in this district. Dkts. 244 ¶ 26; 245 ¶ 26. | 26. Disputed.  SM did not provide members of the common enterprise with the service of contesting chargebacks. SM provided the technology to process chargeback documents per bank regulations. SM only provided the technology that could be used to view chargebacks.  SM did not review, approve, or deny chargebacks.  Argaman Decl. at ¶ 6 |
| 26a. Relief Defendant Chargeback Armor, Inc., stated that Secured Merchants, LLC, billed SBM Management, Inc., for processing chargebacks request. Exs. 917 ¶¶ 156, 162. | 26a. Disputed.  The evidence cited by the FTC is incorrect in that Exhibit 917 does not even have 156 paragraphs.  Assuming the FTC is referring to Exhibit 918, these are Responses to Request for Admissions by CBA and both 156 and 162 were denied.  Also see Argaman Decl. at ¶ 2, 5, 6 |
| 26b. Secured Merchants, LLC, oversaw a variety of other responsibilities for the common enterprise. | 26b. Disputed.  The FTC provides no support for this erroneous conclusion.  SM was a technology vendor and did not have any other relationship or responsibilities with regards  to the common enterprise.  Argaman Decl. at ¶ 2, 5, 6, 17 |
| 26b(i). Secured Merchants managed the "voice logix" system, Defendants' | 26b(i). Disputed.  SM only provided the |

- 4 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| automated customer service line. Ex. 257-2. | technology for the voice logix system, it did not use it, manage it, or interact with customers in any way, shape or form. The Exhibit referenced does not show or reflect that Argaman or anybody else from SM drafted the document. Additionally, it appears to only be a partial document and the FTC has provided no foundation or evidentiary basis for the document.  Argaman Decl. at ¶5, 6, 17, 30. |
| 26b(ii). Defendant Argaman, and Secured Merchants LLC, provided $250,000 to Chargeback Armor, Inc. and was the entity that owned chargebackarmor.com. Exs. 916 ¶ 235; 917 ¶ 235; 280-1. | 26b(ii). Undisputed as to SM providing $250,000 to Chargeback Armor. Disputed as to SM owning Chargeback Armor. |
| 26c. Secured Merchant, LLC's executive summary stated that the company's founders owned a skincare product business: Over the past two years, the founders of Secure Merchants saw first-hand every type of failure trap that could have killed their skin care product company, which today has monthly sales of $2.5 million or 25,000 orders. Thus the problems that our three initial services solve for any DRM [Direct Response Marketing] company are the core infrastructure needed to deal with (1) the inevitable credit card chargebacks, (2) keeping customers happy or allowing them an easy opt-out, and (3) providing the most sophisticated | 26c. Disputed.  SM has never sold skincare and is a technology services company.  The founder is Argaman solely.  Additionally, the document does not contain the words "Executive Summary" nor does the document state that it was created by Argaman or anybody from SM.  The FTC has not offered any foundation for the document, and it appears to have been created by Alon Nottea reflecting his interest in becoming involved in SM.  That |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| customer record management system. Ex. 256. | involvement never came to be, and the arrangement between SM and Alon Nottea remained an arms –length fee for service relationship. Argaman Decl. at ¶ 1. |
| 26d. A Secured Merchants, LLC, employee sent an email titled "ChargeBack Armor Jan + Feb figures" to Alon, Alan Argaman, Doron Nottea, and Roi Reuveni. Ex. 151. This email included chargeback statistics for AuraVie. *Id.* | 26d. Disputed.  SM never processed chargebacks.  Additionally, the document is mischaracterized as it does not contain any statistics for chargebacks, but refers to monies owed by customers.  CBA was formed the day after this document was purportedly created, February 18, 2015. Argaman Decl. at ¶ 6, 17; Costache Decl. at ¶ 4. |
| 26e. A document titled "Secured Merchants" described the "ChargeBack Armor" services as helping "win back lost revenue by reversing chargebacks in your favor" and "handl[ing] the entire chargeback dispute process on your behalf." Ex. 257 | 26e. Disputed SM provided the technology to process documents per bank regulations. The operation and approval process is done by the client and the banks.  The Exhibit referenced does not show or reflect that Argaman or anybody else from SM drafted the document and the FTC has not laid any foundation for this document. |

- 6 -

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | Additionally, it appears to only be a partial draft of a document. The document may reflect additional efforts by Alon Nottea to become involved in SM, which efforts never were consummated.   SM does not approve or deny or process chargebacks. Argaman Decl. at. ¶ 6, 17, 30. |
| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22 | 39. Defendant Alan Argaman was an owner of Defendant Secured Commerce LLC, Dkts. 299 ¶ 39, which designed, created, and helped manage the websites or landing pages used for deceptively marketing and selling skincare products. Ex. 46. He is also an owner of Secured Merchants, LLC, Dkts. 299 ¶ 39; 244 ¶ 39; 245 ¶ 39; see also Ex. 917 ¶ 208. Defendant Alan Argaman resides in this district. Dkt. 299 ¶ 39. | 39. Disputed .  Argaman only worked on an AuraVie straight sale website that did not use any deceptive marketing and did not utilize negative options, continuity, or risk free trials.  This Exhibit is an invoice for the straight-sale website and the invoice does not reference any deceptive landing pages or landing pages that contained negative options, continuity, or risk-free trials. The work is for a site that operates with buttons such as "Add to Cart" and ecommerce industry "checkout" as a straight sale site<br>See Argaman Decl. at ¶ 9 |
| 23<br>24<br>25<br>26<br>27 | 39a. Doron Nottea and Motti Nottea stated that Alan Argaman managed Secured Commerce, LLC. Dkts. 244 ¶ 39; 245 ¶ 39. | 39a. Disputed.  Argaman was a member of Secured Commerce briefly, and invoiced once for a straight sale AuraVie website that did not use any deceptive marketing and did not utilize negative |

28

- 7 -

| | |
|---|---|
| | options, continuity, or risk free trials. The business was barely active as Secured Commerce was in the process of being dissolved.  Argaman Decl. at . ¶ 9 |
| 39b. Doron Nottea also stated that he and Alan Argaman were the owners of Secured Commerce, LLC. Ex. 912 ¶ 214. | 39b. Undisputed |
| 39c. Alan Argaman sent and received emails using the email account avicoglobal@gmail.com. Ex. 916 ¶ 261. | 39c. Undisputed |
| 39d. Alan Argaman provided a variety of critical services to the common enterprise, many through his company, Secured Merchants LLC. | 39d. Disputed.  Argaman did not provide any critical services as neither he nor SM engaged in marketing, selling, advertising, or billing related to AuraVie. Only technological services were provided.  Argaman Decl. at.  ¶12-17 |
| 39d(i). Argaman provided integration services for their customer service management software, Limelight (*See* Dkt. 121-6, at 9-21; Dkt. 121-7, at 1-3), which Defendant Argaman testified is a software typically used for continuity sales. Ex. 555, 51:3-19. *See also* Ex. 946, at 19:23-20:17. | 39d(i). Disputed. Consistent with its role as a third party service provider, Argaman, by and through SM, assisted with connecting AuraVie's technology with technology the AuraVie Defendants had purchased or leased from Limelight.  Neither SM nor Argaman ever managed the AuraVie accounts with Limelight. Additionally, the FTC  mischaracterizes Argaman's testimony, as he stated that in regards to Lime Light "I haven't used it myself, so I don't really know" He later added that as |

- 8 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | a whole it can be used for negative options business. Argaman doesn't control the usage of the Lime Light software as he doesn't own it nor is he an affiliate or a partner of it. Exhibit 946 referenced by the FTC was not provided by the FTC in its MSJ filing.  Argaman Decl. at ¶ 27 |
| 39d(ii). Argaman assisted Alon Nottea in operating a call center for AuraVie customer complaints. Exs. 47; 149; 432; 440; 441; 516. | 39d(ii). Disputed.  Argaman did not operate a call center and never had customer contact.  Consitent with its role as a third party service provider, Argaman, through SM, briefly provided the technology for Interactive Voice Recognition Services (IVR), which were not operated  by SM or Argaman but simply provided for use.  The Exhibits are also misconstrued, and the FTC once again fails to provide any foundation for these exhibits or testimony putting them in the proper context.  Exhibit  47 deals with the porting of numbers, not a call center; Exhibit 149 deals with technical projects, not call centers; and Exhibit , 432 deals with switching phone providers, a technical service, not running call centers for AuraVie; Exhibit  440 deals |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 1 | with auditing outstanding bills; Exhibit |
| 2 | 441 deals with auditing outstanding bills; |
| 3 | and Exhibit 516 deals with something |
| 4 | called Phone Power, which appears to be |
| 5 | a phone provider unaffiliated with |
| 6 | Argaman. Argaman Decl. at ¶ 6, 7, 13, |
| 7 | 16. |
| 8 | 39d(iii). Argaman provided technical expertise to create an automated response system to allow large numbers of consumers to cancel their AuraVie continuity plans. *See* Dkt. 121-6, at 9-21; Dkt. 121-7, at 1-3. |
| 9 | 39d(iii). Disputed. Argaman did not create this system, it was provided by SM, consistent with its role as a third party service provider, as an open source solution available to anyone. Additionally, the system was not used by SM or Argaman, but the technology for the system was simply provided to the AuraVie entities as well as other companies unaffiliated with this lawsuit. Argaman Decl. at . ¶ 5, 6, 17 |
| 19 | 39d(iv). Secured Merchants boasted that its contribution to the common enterprise "offer[s] a vehicle to resolve consumer disputes before they become chargebacks." Ex. 257-2. |
| 20 | 39d(iv). Disputed. SM did not process chargebacks, but only provided the technology to view the chargebacks. It did not approve or deny them. The Exhibit referenced does not show or reflect that Argaman or anybody else from SM drafted the document. Argaman nor SM never had direct consumer contact nor assisted Alon Nottea with any |
| 28 | |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | call center. Additionally, it appears to only be a partial document.  Argaman Decl. at. ¶ 5, 6, 17, 30. |
| 39d(v). Defendant Argaman integrated the AuraVie free trial campaigns into Lime Light, a third party customer relationship management (CRM) software Defendants used for selling their products by negative option continuity plans. *See* Exs. 187; 306; 476; 493; 528; 547. | 39d(v). Disputed  The FTC attempts to turn SM's third party service provider arrangement itno something more.   Argaman never managed or used the limelight CRM system as LimeLight doesn't belong to him.  The Exhibits are also misconstrued: Exhibit 187 appears to show campaigns of Limelight, a company that Argaman does not own or operate, Exhibit 306 is an email to support@limelightcrm.com, again having nothing to do with Argaman; Exhibit 476 is again unrelated to Argaman or SM and appears to be emails between Bunzai Media and Limelight; Exhibit  493 has something to do with Alert Bot, completely unrelated to this suit;  Exhibit  528 was not provided by the FTC with its MSJ, and 547 is again an email with Limelight, not Argaman. Argaman Decl. at ¶ 27 |
| 39d(vi). Email and screenshots show Defendant Argaman designing, creating, or managing a website offering risk free trial offers of skincare products. Ex. 531. | 39d(vi). Disputed.  Argaman did not personally create any website.  Through Secured Commerce, Argaman created an |

- 11 -

| | | AuraVie straight sale site that did not offer risk free trials, continuity, or negative options.  The Exhibit referenced is related to how shipping charges are [calculated/reflected] on the order pages, as shown on the email itself.  It does not reference Argaman or SM designing any deceptive negatve option offer.  Once again, the FTC offers no foundation or testimony regarding this document , instead erroneously speculating  as to its meaning.   Argaman Decl. at ¶9. |
| 39d(vii). Defendant Argaman admitted to creating AuraVie.com. *See* Ex. 555, 49:5-18. | 39d(vii). Disputed, as the website Argaman created, through Secured Commerce, was a straight sale website and had no negative options, continuity, or risk-free trials.  Argaman Decl. at ¶ 9. |
| 39d(viii). Defendant Alon Nottea's company was invoiced by Secured Commerce LLC, a company owned by Defendant Argaman for "Design, Creation, & Optimization of Auravie landing page Campaign Setup and integration to Lime Light CRM and Click Connector." *See* Ex. 46. | 39d(viii). Disputed, as this Exhibit is for an invoice related to the straight sale AuraVie.com landing page..  Argaman Decl. at ¶ 27. |
| 39d(ix). Defendant Argaman sold Attitudeline/INFINI skincare products, a product that Defendants marketed or sold, or assisted others in marketing or selling, by negative option continuity plans (or assisted others in marketing or selling in | 39d(ix). Disputed.  Argaman never sold any skincare for AuraVie nor marketed anything for AuraVie.  Additionally, the email referenced does not mention |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| the same manner). Ex. 368. | AuraVie or any of the AuraVie corporate Defendants.  The Exhibit also does not support the position that Argaman helped Defendants sell this product using deceptive methods.  Argaman Decl. at ¶ 7, 12.  The FTC fails to provide any foundation or context to support its speculation regarding the import of this Exhibit. |
| 39d(x). Defendant Argaman participated in planning and managing the AuraVie Angels promotional campaign. Exs. 185; 494; 497. | 39d(x). Disputed.  Argaman never marketed or advertised for AuraVie nor managed anything related to AuraVie. Exhibit 185 is a quote to build a blog, which is part of the straight-sale domain AuraVie.com.  Exhibit 494 also relates to the quote for the blog and does not reference any promotional campaign,. Exhibit 497 deals with the quote for the straight sale website as as well. As the exhibits themselves show, this quote was never approved and is thus irrelevant. Argaman Decl. at ¶ 12-16.  Once again the FTC fails to provide any foundation or context for the speculation that it offers as an undisputed fact. |
| 39d(xi). Defendant Argaman established toll-free telephone numbers for various shell corporations and set up call | 39d(xi). Disputed.   Consistent with its role as a third party service provider, |

- 13 -

| | |
|---|---|
| forwarding for those numbers. *See*, *e.g.*, Ex. 529. | Argaman through SM assisted companies with obtaining telephone numbers. Exhibit 529 reflects that type of conduct. Argaman Decl. at ¶25. |
| 39dxii. Defendant Argaman used Secured Commerce to lease the main office suite where Defendants operated. Dkt. 120, at 12. | 39dxii. Disputed.  The AuraVie Main offices were 7900 Gloria, which SM did not use. The address referenced is where Doron Nottea had an office but no shipping/marketing or anything else was done there related to AuraVie.  Argaman Decl. at ¶ 10, 11. |
| 39. Defendant Argaman played a role in the decision making and marketing of new products relating to the common enterprise that went beyond providing assistance with technology issues and shipping. | 39e. Disputed.  Argaman never marketed, sold, advertised AuraVie products. Argaman Decl. at ¶12. |
| 39e(i). Defendant Argaman sent Doron Nottea a presentation concerning a product called LeElle. Defendant Argaman was later consulted concerning the company's packaging design. Exs. 360; 361. | 39e(i). Disputed.  The email containing the presentation was originally sent by Ygal Edy, not Argaman. Additionally, LeElle was for a separate high-end department store business that never got off of the ground.  This concept product was never created, marketed or sold. Argaman Decl. at ¶ 24.  The documents cited have nothing to do with the conduct alleged in the complaint, and once again the FTC offers no evidence to support its erroneous assumptions regarding the |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | document upon which it attempt to rely. . |
| 39e(ii). Defendant Argaman also provided input concerning who would own the new product Defendants were marketing. Ex. 362. | 39e(ii). Disputed. Argaman never partook in anything related to what Defendants were marketing. Argaman Decl. at ¶ 12. The Exhibit attached deals with LeElle, which was a product that did not relate to AuraVie, was for a different business, and was never sold or marketed regardless. Argaman Decl. at ¶ 24. |
| 39f. Defendant Argaman played a key role in refuting consumer chargebacks for the Corporate Defendants, through his company, Secured Merchants LLC. | 39f. Disputed. SM did not process chargebacks, but only provided the technology to view the chargebacks. SM played no role in deciding what chargebacks to dispute nor in the basis for refuting them. Argaman Decl. at. ¶ 6, 17 |
| 39f(i) . Defendant Argaman admitted that his company contested consumer chargebacks for the Corporate Defendants that sold AuraVie and that Secured Merchants had previously provided a chargeback refutation service termed "chargeback armor. Ex. 555, at 75:1-5, 86:10-25, 88:15-24 | 39f(i). Disputed. SM did not process chargebacks, but only provided the technology to view the chargebacks. It did not approve or deny them. Argaman Decl. at. ¶ 6, 17 |
| 39f(ii). Defendant Argaman possessed a "Standard Service Agreement" form for clients' use of Chargebackarmor.com. Further, emails suggest that Secured Merchants processed chargebacks for AuraVie under the name Chargeback Armor. Exs. 280; 348; 412; 413. | 39f(ii). Disputed. Disputed. SM did not process chargebacks, but only provided the technology to view the chargebacks. It did not approve or deny them. Argaman Decl. at. ¶ 6, 17. Additionally, CBA was not formed until February 2015. |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | Costache Decl. at ¶ 4. Exhibit 280 deals with legal terms for a software service, and does not have anything to do with processing chargebacks for AuraVie. Exhibit 348 deals with software fees having to be paid, and again does not reference processing of chargebacks. Exhibits 412 and 413 deal with a company called Creative Venture and Vitaque, neither of which are mentioned anywhere in the First Amended Complaint nor named as Defendants in this case as they are unrelated completely. Argaman Decl. at ¶ 31. |
| 39f(iii). The Chargeback Armor Service Agreement states: "The Software is made available to you and the Service is owned, operated, and provided to you by SM through the CHARGEBACKARMOR.COM Site." Ex. 280. | 39f(iii). Undisputed. |
| 39f(iv). According to Chargeback Armor, Inc.'s Executive Summary, "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." *See* Ex. 281-2. | 39f(iv). Disputed.  This is a draft document that was never used.  Additionally, the document refers to a previous version of the chargeback software and has nothing to do with CBA, as CBA was not incorporated until February 2015.  Costache Decl. at ¶ 4. |
| 39fv. A document titled "Secured Merchants – Company Describes" | 39fv. This was a draft document created |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| described the "ChargeBack Armor" services as helping "win back lost revenue by reversing chargebacks in your favor" and "handl[ing] the entire chargeback dispute process on your behalf." Ex. 257. | before CBA was incorporated and does not describe what CBA or SM actually did with chargebacks, as they only created the ability to view them, not process them/approve or deny them. The document also does not reference Argaman nor Costache, the principal of CBA, and thus does not even specify who created it. Argaman Decl. at ¶ 6, 17. |
| 39g. Defendant Argaman operated Relief Defendant Chargeback Armor, Inc., a company Defendant Alon Nottea admitted was used to refute consumer chargebacks, jointly with other Individual Defendants. | 39g. Disputed. Mike Costache has always been the sole incorporator, board member, shareholder, director, and owner of CBA. Argaman did not operate CBA. Costache Decl. at ¶ 2; Argaman Decl. at ¶ 21. |
| 39g(i). Defendant Argaman, through his company Secured Merchants LLC, provided $250,000 in startup capital to Chargeback Armor, Inc. Exs. 916 ¶ 235; 917 ¶ 235; Dkt. #231-1, at 53. | 39g(i).Undisputed. |
| 39g(ii).Chargeback Armor's Executive Summary states that Defendant Argaman was the company's "Chief Technology Officer." Ex. 281. | 39g(ii).Disputed. This was a draft document that never became operational and Argaman was never Chief Technology Officer for CBA. Costache Decl. at ¶ 2; Argaman Decl. at. ¶ 21. |
| 39g(iii).Nova 8 Media billed Defendant Argaman of Secured Merchants for "design services" for "Chargeback Armor." *See, e.g.,* Ex. 414. | 39g(iii).Undisputed. |

- 17 -

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | 39g(iv).A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea,and Avi Argaman. Dkt. # 231-1, at 36. | 39g(iv). Disputed.  The document referenced is not an "agreement" as it is not signed and is thus a draft. Additionally, Mike Costache has always been the sole incorporator, board member, shareholder, director, and owner of CBA. Costache Decl. at ¶ 2 |
| 8<br>9<br>10<br>11<br>12<br>13<br>14<br>15 | 39g(v). A Chargeback Armor, Inc. lease agreement dated February 27, 2015 lists Mike Costache, Doron Nottea, and Defendant Argaman as individuals to whom mail may be sent to Chargeback Armor, Inc. Ex. 365-13. | 39g(v). Disputed.  This does not demonstrate that Doron Nottea and Alan Argaman exercised control over CBA: and this clerical agreement was done for convenience purposes only as Doron Nottea was not a part of CBA and neither was Argaman.  Costache Decl. at ¶ 2, 3, 9; Argaman Decl. at ¶ 21. |
| 16<br>17<br>18<br>19<br>20<br>21<br>22 | 39g(vi). Defendant Argaman incorporated Chargeback Armor, Inc. in concert with other Individual Defendants. Ex. 404. | 39g(vi). Disputed.  Mike Costache was the sole incorporator of CBA, as shown on Secretary of State filings.  Costache Decl. at ¶2.  The Exhibit is mischaracterized as on its face, the email is Argaman asking a CPA to open CBA on behalf of Costache. |
| 23<br>24<br>25<br>26<br>27 | 39g(vii).Defendant Argaman received statistics detailing chargeback numbers for various Chargeback Armor clients, including AuraVie. Ex. 151 | 39g(vii). Disputed.  This was a draft document done before CBA was incorporated.  Additionally, Argaman was not a part of CBA.  Argaman Decl. at ¶ 21; Costache Decl. at ¶ 2.  Exh. 151 deals |

28

- 18 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | with closing down the books of the chargeback software as CBA was formed the day after.  It does not reference any statistics. |
| 39g(ix). Defendant Argaman participated in discussions concerning high-level corporate decisions for Chargeback Armor ranging from updates regarding the launch of the company to opening the company's corporate bank account. Exs. 184; 369. | 39g(ix). Argaman had no role with CBA and Mike Costache has always been the sole incorporator, board member, shareholder, director, and owner of CBA. Argaman did not operate CBA.  Costache Decl. at ¶ 2; Argaman Decl. at ¶ 21.  Exh. 184 deals with Alon Nottea apparently pitching investors a call center technical support business and does not reference any sort of decision making for CBA. Exhibit 369 was not provided by the FTC as part of its MSJ. |
| 39g(x). Alon Nottea reported to Defendant Argaman concerning new Chargeback Armor customers. Ex. 184. | 39g(x). Disputed.  The Exhibit cited is mischaracterized as the Exhibit does not contain any reference to Chargeback Armor on its face and deals with Alon Nottea apparently pitching investors a call center technical support business and does not reference any sort of decision making for CBA.. |
| 39g(xi). Mike Costache, a Secured Merchants employee and purported Chargeback Armor CEO, sent an email to a | 39g(xi). Disputed.  Mike Costache was never an employee of SM.  Costache Decl. at ¶ 10.  SM provided the software |

- 19 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Secured Merchants client that included referring to Secured Merchants as "the technology company that developed the Chargeback Armor product" and then noting that Secured Merchants is "transitioning all clients to be billed" by Chargeback Armor. Dkt. # 231-1, at 8. | as a service chargeback for clients to manage and nothing more.  Argaman Decl. at ¶ 5-6. |
| 39h. Argaman had notice that Defendants marketed their products through negative option plans. | 39h. Disputed.  Argaman was never privy to this information, directly or indirectly, as he simply provided technological services through SM.  Argaman Decl. at ¶ 12. |
| 39h(ii). Defendant Argaman assisted Defendants with managing their various trial campaigns on Lime Light software—software he acknowledged was often used for selling products by continuity plan. *See* Exs. 59; 92. | 39h(ii). Disputed.  Argaman never managed any campaigns for AuraVie within Limelight or out of limelight. Limelight is a software AuraVie Defendants used and managed directly or within the limelight support portal. Argaman Decl. at ¶ 27 |
| 39h(iii). Secured Merchants Executive Summary listed, under "Target Markets," numerous companies that sell or sold their products by negative option continuity plans or trial offer. *See* Ex. 256. | 39h(iii). Disputed.  The Exhibit cited is mischaracterized as the Exhibit is not referenced anywhere as an Executive Summary, nor is there any reference to negative option continuity plans or trial offers anywhere on the document. Argaman nor SM ever had direct customer contact with AuraVie customers and never assisted Alon Nottea or any of |

- 20 -

| | |
|---|---|
| | the other AuraVie Defendants in selling, advertising, or marketing any skincare products. |
| 39(i). Defendant Argaman was aware, or should have been aware, that Defendants took significant measures to disguise their common enterprise. | 39(i). Disputed.  Argaman was never privy to this information, directly or indirectly, as he simply provided technological services through SM. Argaman Decl. at ¶ 12. |
| 39i(i). Defendant Argaman was sent emails discussing the "load balanc[ing] between multiple merchant accounts and corporations." Ex. 337. | 39i(i). Disputed.  The Exhibit cited is mischaracterized as the Exhibit does not reference "load balancing" and appears to be bookkeeping related.  It has nothing to do with multiple merchant accounts and corporations.  The FTC once again offers nothing to support its speculation regarding the import of this document.  Additionally, Argaman was not privy to what merchant accounts the AuraVie Defendants used as he was only a vendor providing technological services.  Indeed, Argaman never responded to this email, as shown by the FTC's own Exhibit.  The FTC fails to recognize that Argaman cannot control who emails him and what he is emailed about.  Argaman Decl. at ¶ 12-16. |
| 39i(ii). Paul Medina informed Defendants | 39i(ii). Disputed. The Exhibit cited is |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 11 12 13 14 | Doron Nottea, Alon Nottea, and Alan Argaman about high risk accounts. Ex. 337. | mischaracterized as the Exhibit does not reference "high risk accounts" and appears to be bookkeeping related.  It has nothing to do with multiple merchant accounts and corporations.  Additionally, Argaman was not privy to what accounts the AuraVie Defendants used as he was only a vendor providing technological services.  Indeed, Argaman never responded to this email, as shown by the FTC's own Exhibit.  The FTC fails to recognize that Argaman cannot control who emails him and what he is emailed about.  Argaman Decl. at ¶ 12-16. |
| 15 16 17 18 | 39i(iii). Defendant Argaman assisted in establishing dozens of phone numbers for Defendants' shell corporations. | 39i(iii). Disputed. No evidence is cited in support. Argaman never "established" phone numbers for any shell corporation. Argaman Decl. at ¶ at 25. |
| 19 20 21 22 23 | 39j. Defendant Argaman was aware, or should have been aware, that Defendants engaged in "load balancing"—the means by which Defendants deceived payment processors concerning their actual chargeback ratio—between their various merchant accounts. | 39j. Disputed.  Argaman was never privy to this information, directly or indirectly, as he simply provided technological services through SM.  Argaman Decl. at ¶ 12-16. |
| 24 25 26 27 | 39j(i). Load balancing was discussed in emails Argaman received. *See, e.g.,* Ex. 449. | 39j(i). Disputed.  The email referenced is between Medina and Limelight. It has nothing to do with actual operations of AuraVie, which Argaman was not privy |
| 28 | | |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | to or involved in.  It also references Limelight launching a new feature, which has nothing to do with Argaman. Argaman Decl. at ¶ 12-16, 27. Argaman is being asked to help with technology problems consistent with SM's role as a third party technology provider. |
| 39k. Defendant Argaman appears to have assisted in coordinating the assistance of and payment to a third party call center in India, which handled some customer service calls for Defendants. Ex. 386. | 39k. Disputed.  The Exhibit cited is mischaracterized as the Exhibit does not reference call centers, nor does it reference AuraVie or any of the AuraVie Corporate Defendants.  Additionally, the subject is "Telestar" and has nothing to do with Argaman assisting in a call center. Argaman Decl. at ¶ 12-16, 25. |
| 39l. Defendant Argaman was included on an email detailing the high chargeback rates for merchant accounts associated with the common enterprise. Ex. 337. | 39l. Disputed.  The Exhibit cited is mischaracterized as the Exhibit does not reference "high risk accounts" and appears to be bookkeeping related.  It has nothing to do with multiple merchant accounts and corporations. Argaman nor SM ever were involved in the common enterprise nor privy to what the AuraVie Defendants were doing.  Indeed, Argaman never responded to this email, as shown by the FTC's own Exhibit.  The FTC fails to recognize that Argaman cannot control |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | who emails him and what he is emailed about. Argaman Decl. at ¶ 12-16.  SEE ABOVE REGARDING THIS DOCUMENT |
| 41. Relief Defendant **Chargeback Armor, Inc.** is a California corporation , Dkt. 300 ¶ 41, with its principal place of business at the Reseda Office. Dkt. 120, at 18. At times material to the Complaint, Chargeback Armor, Inc. received funds from Secured Merchants, LLC, which received funds from SBM Management, Inc. Ex. 917 ¶¶ 235-236. At times material to the Complaint, Chargeback Armor Inc. transacted business in this district. Dkts. 244 ¶ 41; 245 ¶ 41. | 41. Undisputed. |
| 41a. Secured Merchants, LLC transferred $250,000 in funds to Chargeback Armor, Inc. Exs. 916 ¶ 235; 917 ¶ 235; Dkt. # 231-1, at 53. | 41a. Undisputed. |
| 41b. Secured Merchants, LLC received more than $300,000 in funds for providing chargeback services relating to the sale of Defendants' skincare products. Ex. 918 ¶ 236. | 41b. Disputed.  SM did not receive more than $300,00 for providing chargeback services.  SM received approximately $97,000 for chargeback services.  Exh. 833. |
| 41c. Alan Argaman and Chargeback Armor, Inc. stated that Roi Reuveni was the COO of Chargeback Armor, Inc. Ex. 917 ¶ 237. | 41c. Disputed.  Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA.  Reuveni was hired as a temporary consultant to provide specific services. Costache Decl. at ¶ 2. |
| 41d. Relief Defendant Chargeback | 41d. Disputed.  CBA was not even |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Armor, Inc. refuted consumer chargebacks for the unauthorized AuraVie charges. | incorporated until February 2015, after AuraVie was no longer operating. Costache Decl. at ¶ 4. |
| 41d(i). Chargeback Armor boasted to potential investors that 33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Dkt. 231-1, at 4. | 41d(i). Disputed.  This is a draft document that contains a disclaimer at the bottom stating "This is not an offer for securities and should not be construed as such, this is for informational purposes only. We reserve all rights to modify, change or unilaterally amend any of the above." Additionally, the document refers to a previous version of the chargeback software and has nothing to do with CBA, as it was not incorporated until February 2015.  Costache Decl. at ¶ 4. |
| 41d(ii). Defendant Alon Nottea stated that Chargeback Armor, Inc. processed chargebacks for the common enterprise. Ex. 550, 172:3-5; *see also* Ex. 946, at 24:9-23. | 41d(ii). Disputed.  This is a draft document that contains a disclaimer at the bottom stating "This is not an offer for securities and should not be construed as such, this is for informational purposes only. We reserve all rights to modify, change or unilaterally amend any of the above." Additionally, the document refers to a previous version of the chargeback software and has nothing to do with CBA, |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | as it was not incorporated until February 2015.  Costache Decl. at ¶ 4. |
| 41e. Although not formally incorporated until March 2015, the company operated informally before incorporation. *See* Ex. 280. | 41e. Disputed.  The Exhibit referenced is a Secured Merchants document and nowhere does it reference CBA. |
| 41f. Chargeback Armor appears to have provided nearly identical chargeback services as Secured Merchants. Dkt. 231-1, at 8; Exs. 280; 412; 413. | 41f. Disputed.  Neither CBA nor SM provided any chargeback services.  SM was a technology provider that allowed the viewing of chargebacks.  Argaman Decl. at ¶ 5, 6.  The Exhibits are also mischaracterized, as Exhibit 280 does not support that SM and CBA are identical, Exhibit 412 relates to an unrelated entitled called Creative Venture, and Exhibit 413 relates to Vitaque.  Argaman Decl. at ¶ 31. |
| 41g. This company specialized in providing chargeback refutation services to the "Direct Response Marketing" industry, of which Defendants were but one of many. Ex. 256. | 41g. The Exhibit references is mischaracterized as the document contains no reference to CBA and appears to be a draft of a "Secure Merchants" executive summary.  Additionally, it contains no reference to Argaman and does not even appear authentic on its face, as Argaman did not author this document. Additionally, SM did not provide chargeback refutation services, but only provided the technology for viewing |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | | chargebacks.  Argaman Decl. at ¶ 5, 6, |
| 2 | | 30. |
| 3 | 41h. Chargeback Armor's Executive Summary states that their "target market" was "High-rick [sic] online marketers." Ex. 281. | 41h. Undisputed. |
| 4 | | |
| 5 | | |
| 6 | 41i(i). Mike Costache, the purported CEO of Chargeback Armor, stated that they would investigate the validity of consumer chargebacks before attempting to contest them. Dkt. # 121-6, at 3. | 41i(i). Disputed.  Mischaracterizes the document, as ¶ 3 does not state this. |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | 41i(ii). Costache stated that Chargeback Armor's policy was to "reply[] only to chargebacks that can be won with proper evidence from the client's Customer relationship Management (CRM), gateway provider(s) and shipping provider(s)." *Id.* | 41i(ii). Disputed.  Mischaracterizes the document as Costache simply says that Reuveni advised about this topic, but Costache never says that this actually was or became CBA's policy. |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | 41j. Chargeback Armor authorized Secured Merchants to receive its mail. Exh. 365. | 41j. Disputed.  The Exhibit doesn't relate to SM receiving CBA's mail |
| 16 | | |
| 17 | 42. Defendants BunZai; Pinnacle; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, Inc.; CalEnergy, Inc.; Kai Media, Inc.; Insight Media, Inc.; Focus Media Solutions, Inc.; Secured Commerce, LLC; Secured Merchants, LLC; USM Products, Inc.; Merchant Leverage Group, Inc.; DMA Media Holdings, Inc.; Shalita Holdings, Inc.; All Star Beauty Products, | 42. Disputed.  SM was not part of the common enterprise.  Argaman Decl. |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Inc. (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unlawful acts and practices alleged herein. *See, e.g.* Dkts. 121-1 p. 3, 10-11; 121-3 pp. 4-5; Ex. 384. | |
| 42e. Because these Corporate Defendants operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged. *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000); *FTC v. Wolf*, 1997-1 Trade Cas. (CCH) ¶ 71,713, at 79,080 (S.D. Fla. 1997) . | 42e. Disputed.  SM was not part of the common enterprise and thus cannot be held jointly and severally liable. Argaman Decl. |
| 42fv. Secured Merchants LLC operated out of the same office suite as the other Corporate Defendants. Dkt. 120, at 24. | 42fv. Disputed.  SM did not operate out of the suites the AuraVie Defendants operated from.  Argaman Decl. at ¶ 10, 11. |
| 43. Defendants Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi, Igor Latsanovski, Roi Reuveni, Khristopher Bond, also known as Ray Ibbot, Alan Argaman, and Paul Medina (collectively, "Individual Defendants") formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise. | 43. Disputed.  Argaman, by and through SM, was a technology vendor and had nothing to do with the common enterprise.  Argaman Decl. at ¶5, 6. |
| 43b. Secured Merchants was owned and operated by the Individual Defendants | 43b. Disputed.  Argaman has at all times been the sole owner of SM.  Argaman Decl. at ¶ 1. |
| 43b(i). Secured Merchants "Executive Summary," created in June 2013 states that the company's management consisted of Defendants Alon Nottea, | 43b(i). Disputed.  Argaman has at all times been the sole owner of SM. Argaman Decl. at ¶ 1, 29.  Additionally, |

- 28 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | "Avi" Argaman, and Paul Medina. Ex. 256-2. | this draft document does not contain the words "Executive Summary" nor does it purport to have been authored by Argaman, the sole member of SM. Moreover, SM was not even created until the end of June 2013.  Argaman Decl. at ¶ 29 |
| 8<br>9<br>10<br>11<br>12<br>13<br>14 | 43b(ii). A Secured Merchants LLC's operating agreement draft names Defendant Argaman and Defendant Alon Nottea as the company's two managers. Ex. 255-22. | 43b(ii). Disputed.  This is a draft and an unsigned document.  Argaman has at all times been the sole owner of SM.  Additionally, Exhibit 255-22 is dated June 1, 2013 and SM was not even formed until June 25, 2013. Argaman Decl. at ¶ 1, 29. |
| 15<br>16<br>17<br>18<br>19<br>20 | 43b(iii). Nonprivileged attorney invoices reference meetings concerning Secured Merchants with Alon Nottea and "Igor." Ex. 388-3; 388-4. | 43b(iii). Disputed.  Argaman never did business with Igor as the meetings never materialized into business relationships.  Argaman Decl. at ¶ 28.  Exhibits 388-3 and 388-4 were not provided by the FTC as part of its MSJ. |
| 21<br>22<br>23<br>24<br>25<br>26<br>27 | 43b(iv). Secured Merchants LLC was identified as one of the "Bunzai Companies" on a list that Defendant Doron Nottea sent to CPA David Davidian. Ex. 394. | 43b(iv). Disputed.  The Exhibit is mischaracterized as SM is not referred to as a "Bunzai" company in the email.  Argaman never was involved with Bunzai.  Additionally, the email on its face shows that Argaman only owned SM and no other companies and thus actually |
| 28 | | |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | | supports this Opposition. Argaman Decl. at ¶ 12-16. |
| 2 | | |
| 3 | 43b(v). Doron Nottea created the email address securedmerchantsllc@gmail.com. Ex. 357. | 43b(v). Disputed.  Argaman has at all times been the sole owner of SM and cannot control what Doron Nottea does.  Argaman Decl. at ¶ 1.  The Exhibit does not show that Doron Nottea created this email address as his name is nowhere on the document. |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | 43b(vi). Defendant Argaman denied the existence of any other founder for Secured Merchants. Ex. 555, at 28:16-28:23; Ex. 555, at 29:7-29:8. | 43b(vi). Undisputed. |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | 43c. Chargeback Armor, Inc. was owned and operated by Defendants | 43c. Disputed.  Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA.  Costache Decl. at ¶ 1, 2, 7. |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | 43c(i). Chargeback Armor's Executive Summary lists Defendant Alon Nottea as President, Defendant Alan Argaman as Chief Technology Officer, and Defendant Roi Reuveni as Customer Service Manager. *See* Ex.281-3. | 43c(i). Disputed.  Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA.  Costache Decl. at ¶ 1, 2, 7.  The Exhibit is also mischaracterized as it does not contain the words "Executive Summary" nor does it reference CBA (Chargeback Armor, Inc.) |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | 43c(ii). Defendant Paul Medina also testified that he believed Alon Nottea owned the company. Ex. 946, at 25:2- | 43c(ii). Disputed.  Mike Costache has always been the sole incorporator, |
| 27 | | |
| 28 | | |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | 25:6. | director, board member, and shareholder of CBA.  Costache Decl. at ¶ 1, 2. 7.  Medina's speculation proves nothing. |
| 4 | 43c(iii). Alon Nottea reported to Defendant Argaman concerning new Chargeback Armor customers. Ex. 184. | 43c(iii). Disputed.  Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA.  Costache Decl. at ¶ 1, 2, 7.  The Exhibit is also mischaracterized as it deals with investors for a call center technical support business and nothing to do with CBA customers. |
| 12 | 43c(iv). Defendant Alon Nottea solicited investors for Chargeback Armor, Ex. 910 ¶ 234; 917 ¶ 234, and the purported Chargeback Armor CEO referred to him as his "business partner." Dkt. 120, at 23. | 43c(iv). Disputed.  Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA and Alon Nottea was never a part of CBA.  The reference as a "business partner" was in reference to a draft document used to show investors.  Alon Nottea never became an owner in CBA.  Costache Decl. at ¶ 1, 2, 7. |
| 21 | 43c(v). Purported CEO Mike Costache consulted with the Individual Defendants concerning hiring and contracting decisions. Dkt. #231-1, at 23, 26. | 43c(v). Disputed.  While using various parties for advice and to solicit investments for CBA, Mike Costache has always been the sole incorporator, director, board member, decision maker, and shareholder of CBA.  Costache Decl. at ¶ 1, 2, 7. |

- 31 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 43c(vi). Mike Costache, a Secured Merchants employee and purported Chargeback Armor CEO, sent an email to a Secured Merchants client that included referring to Secured Merchants as "the technology company that developed the Chargeback Armor product" and then noting that Secured Merchants is "transitioning all clients to be billed" by Chargeback Armor. Dkt. #231-1, at 8. | 43c(vi). Disputed.  Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA.  Costache Decl. at ¶1, 2, 7. Costache was never an employee of SM. Argaman Decl. at ¶ 10. SM provided a technology that allowed the viewing of chargebacks.  Argaman Decl. at ¶ 5, 6. |
| 43c(vii). Nova 8 Media billed Defendant Argaman of Secured Merchants for "design services" for "Chargeback Armor." Ex. 414. | 43c(vii). Undisputed. |
| 43c(viii). A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. #231-1, at 36. | 43c(viii). Disputed.  This is not an agreement, as it is unsigned.  Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA.  Costache Decl. at ¶ 1, 2, 7. |
| 43c(ix). A Chargeback Armor, Inc. lease agreement dated February 27, 2015 lists Mike Costache, Doron Nottea, and Defendant Argaman as individuals to whom mail may be sent to Chargeback Armor, Inc. Ex. 365-13. | 43c(ix). Disputed.  This was done for convenience purposes and Costache remained the only person involved in the operations of CBA.  Costache Decl. at ¶ 1, 2, 3.  Additionally, the Exhibit is misconstrued as it deals with being able to pick up mail for CBA, not being able to be sent CBA mail. |
| 43c(x). Defendant Doron Nottea was a signatory on Chargeback Armor's bank | 43c(x). Undisputed. |

- 32 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| account and is listed as secretary of the company on its bank of America account. *See* Dkt. #214, at 31; Dkt. #231-1, at 46. | |
| 43c(xi). Mike Costache requested that Defendant Roi Reuveni set up an inbox anticipating email and telephone communications in light of Alon Nottea's new business cards with a toll free number. Dkt. 231-1, at 9. | 43c(xi). Disputed.  The business cards had nothing to do with Nottea's new business or any sort of anticipation, as Costache has always been the sole person involved in CBA's governing operations. Costache Decl. at ¶ 1, 2, 7. |
| 97. Relief Defendant, Chargeback Armor, Inc. received, directly or indirectly, funds and other assets from Defendants that were traceable to funds obtained from Defendants' customers through the unlawful acts or practices described herein. | 97. Disputed.  CBA received $250,000 from SM as a capital infusion that was not from any monies SM received from SBM or any other Defendant.  Costache Decl. at ¶ 5, 6. Argaman Decl. at ¶18-20. |
| 98. Relief Defendant was not a bona fide purchaser with legal and equitable title to Defendants' customers' funds or other assets, and Relief Defendant will be unjustly enriched if it is not required to disgorge the funds or the value of the benefit it received as a result of Defendants' unlawful acts or practices. | 98. CBA is not in possession of nor did CBA ever receive any funds belonging to Defendant's customers.  CBA would thus not be unjustly enriched.  Costache Decl. at ¶ 5, 6; Argaman Decl. at ¶ 18, 19, 20. |
| 99. By reason of the foregoing, Relief Defendant holds funds and assets in constructive trust for the benefit of Defendants' customers. | 99. CBA is not in possession of nor did CBA ever receive any funds belonging to Defendant's customers.  CBA would thus not be unjustly enriched.  Costache Decl. at ¶ 5, 6. Argaman Decl. at ¶ 18-20. |
| | |
| | |

- 33 -

DATED:  May 2, 2016                **BEVERLY HILLS LAW CORP., PC**


                                   By:   /s/ Sagar Parikh
                                        Sagar Parikh, Esq.
                                        *Attorneys for* Alan Argaman, Chargeback
                                        Armor, Inc. and Secured Merchants,
                                        LLC

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO
FEDERAL TRADE COMMISSION'S MOTION FOR SUMMARY JUDGMENT