DAVID C. SHONKA
Acting General Counsel

DAMA J. BROWN
Regional Director

REID TEPFER
rtepfer@ftc.gov
Texas Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov
Oklahoma Bar No. 19098
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (fax)

RAYMOND McKOWN
rmckown@ftc.gov
California Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4325 (voice)
(310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** <br><br> **Plaintiff,** <br><br> v. <br><br> **BUNZAI MEDIA GROUP, INC.,** *et al.* <br><br> **Defendants.** | **Case No. CV 15-4527-GW(PLAx)** <br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO JOINT MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND RACHEL NOTTEA** |

PLAINTIFF'S RESPONSE TO JOINT MOTION

The FTC respectfully submits this opposition to Defendant Doron Nottea's Joint Motion for Release of Funds.[1] Defendant Doron Nottea requests the release of funds from two separate sources but fails to establish that these funds do not belong to Defendant Doron Nottea and are not properly subject to the stipulated asset freeze.

### I. Procedural and Factual Background

On June 16, 2015, this Court entered a Temporary Restraining Order against Defendants, including Defendant Doron Nottea, finding that the FTC was likely to succeed on the merits against them and that a TRO with asset freeze was in the public interest.[2] The asset freeze froze the assets "owned, controlled by, or held for the benefit of, any Defendant, directly or indirectly."[3] As part of the Court-ordered asset freeze, HSBC Bank USA, N.A., froze assets in a joint account in the name of Doron Nottea and Rachel Nottea and Bank of America froze a safety deposit box in Doron Nottea's name containing $456,000 in cash.[4] Immediately after Defendant Doron Nottea was served with this lawsuit and notified of the asset freeze, Nottea went to Bank of America and attempted to access his safety deposit box in violation of this Court's asset freeze.[5]

---

[1] Dkt. #350.
[2] Dkt. #1-2.
[3] *Id.*
[4] Attachment A ¶ 7.
[5] Attachment A ¶ 5.

On July 24, the Court entered a preliminary injunction against Defendants Doron Nottea and Motti Nottea according to the parties' stipulation.[6] The preliminary injunction that Defendants Doron and Motti Nottea stipulated to contained the same asset freeze provisions as the TRO the Court entered.[7]

On December 3, 2015, the Court held a hearing, attended only by the FTC and the Receiver, concerning the Receiver's Motion for Authorization to Pay Previously Approved Fees, and Waiving Hearing Regarding Same.[8]  At this hearing, the Court also addressed the sale of computers held by the Receiver to Defendant Doron Nottea.[9]  The Receiver informed the Court of the proposed use of assets Doron Nottea claimed were from his wife's inheritance.[10]  The Receiver also informed the Court of the Plaintiff's concerns with respect to Doron Nottea's claim.[11]  Plaintiff expressed its concerns relating to the origin of the $10,000 proposed to be used for the purchase.[12]  To allow the sale to close, the Court directed the Receiver proceed with the sale and use $10,000 from Doron Nottea's safety deposit box.[13] At this hearing, the Court made no determination as to the

---

[6] Dkt. #108.
[7] *See* Dkts. #1-2 and #108.
[8] Dkt. #252.
[9] Attachment A ¶ 11.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

PLAINTIFF'S RESPONSE TO JOINT MOTION

Page   2

1  ownership of these assets.[14] Rather, in the interest of judicial economy, the Court

2  allowed a small portion of the cash in Doron's safety deposit box to be used for

3  the purpose of the sale.[15]

4  On April 18, 2016, Defendant Doron Nottea, along with Rachel Nottea and

5  Lori Bekhor, filed a Joint Motion for Release of Frozen Funds of Lori Bekhor and

6  Rachel Nottea.[16] Doron has cited no change of circumstances warranting

7  reconsideration of the Court's prior orders, and his motion should be denied.[17]

**II. The Contents of Both Doron's Safety Deposit Box and the Joint Bank Account are owned by Defendant Doron Nottea and Properly Subject to the Stipulated Asset Freeze.**

**A. Doron Nottea's Safety Deposit Box**

Defendant Doron Nottea has failed to provide any credible evidence tying the money in the safety deposit box to an inheritance. While Defendant Doron Nottea submitted evidence of inheritance checks Doron's wife, Lori Bekhor, received between 2000 and 2004, he failed to provide *any* evidence aside from a

---

[14] Dkt. #294; Attachment A ¶ 11.
[15] *See* Attachment A ¶ 11.
[16] Dkt. #350. Lori Bekhor and Rachel Nottea are nonparties to this action; however, both profited from Defendants' AuraVie scheme as figureheads or "CEOs" of shell corporations. *See* Section II (C) *infra*.
[17] Rachel Nottea and Lori Bekhor have not filed to seek leave to intervene under Fed. R. Civ. P. 24 and therefore their motions must be denied.

self-serving declaration that $158,000 of the $456,000 cash found in his personal safety deposit box—as much as 15 years later—came from those payments.[18]

Defendant Doron Nottea submitted a single document as evidence that the money in the safety deposit box was Lori Bekhor's inheritance: a self-serving declaration from Ms. Bekhor herself.[19]  In her declaration, Ms. Bekhor claims that $158,000 located in the safety deposit box came from an inheritance she received from her grandfather's estate.[20]  In total, Ms. Bekhor presented evidence of inheritance distributions totaling $157,939.08 between 2001 and 2004.[21]  Ms. Bekhor states that she "cashed the checks" and "the cash proceeds thereof were placed in a safety deposit box."[22]  But other than her self-serving statement, Ms. Bekhor fails to provide any evidence that the money found in a safety deposit box 11 to 14 years later is the same money she inherited.  Nor did Ms. Bekhor provide any kind of explanation for why she would have made the unusual decision to cash the checks and place the money in a safety deposit box for more than a decade.

---

[18] The safety deposit box is solely in Doron Nottea's name.  Attachment A ¶ 6. Lori Bekhor does not have access to the safety deposit box.  *See* Attachment A (Exhibit A) (showing that Doron Nottea is needed to open or give up the box).
[19] Dkt. #350, at 12.
[20] Dkt. #350, at 12 ¶ 3.
[21] Dkt. #350, at 12 ¶¶ 3 and 4.
[22] Dkt. #350, at 12 ¶ 5.  Additionally, her own declaration fails to identify Doron Nottea's safety deposit box as being the box she deposited the inheritance money. Dkt. #350, at 12¶ 5.

It is likely that money located in the safety deposit box did not come from the inheritance. While Doron Nottea's safety deposit box did contain a bundle of cash with a note that read "Lori 125," an envelope with "Lori 1/14" written on it, and another envelope with "Lori 1/1/14" written on it, neither the bundle of cash or the envelopes indicate that the money came from an inheritance.[23] In fact, the two envelopes have what appear to be dates referencing January 2014, which contradicts Ms. Bekhor's statement that she cashed the proceeds and placed them in a safety deposit box—unless she would have the Court believe that she waited over 10 years to cash the checks (in which case she should present bank records showing that the checks were recently cashed). Additionally, the safety deposit box account was not established by Doron Nottea until 2003[25]—three years after Ms. Bekhor began receiving the inheritance payments.[26] Ms. Bekhor would have the Court believe that she held onto several inheritance payments for *years* before placing them in Doron Nottea's safety deposit box.

Other more credible explanations exist for where these bundle of cash came from. Although, some of the bundle of cash and the envelopes had "Lori" written on them, this by itself does not indicate that they belong to Lori. Another possible explanation could be that these were payments being made from Lori to Doron.

---

[23] Attachment A ¶ 7; Attachment A (Exhibit B). Plaintiff is unaware of the amount of money in bundle of cash or the two envelopes. *Id.*
[25] Attachment A (Exhibit A).
[26] Dkt. #350, at 12 ¶ 4.

Moreover, this may have been money Lori received for being listed as a CEO of Lifestyle Media Brands., Inc., and DMA Media Holdings, Inc., two shell companies that participated in the illegal practices at issue in this case.[27]

### B. Doron and Rachel Nottea's Joint Bank Account

#### 1. Doron Nottea and Rachel Nottea are Co-Owners of the Joint Bank Account

Funds held in the Joint Account are properly frozen as Doron Nottea is legally an owner of this account and all funds contained within it.

#### 2. Separate Property Converted to Joint Property

Although Doron contends he has "no ownership interest" in HSBC savings account (Joint Bank Account), he is in fact a joint owner of the account.[28] Moreover, while Doron Nottea traces a portion of the money to an account held by Rachel Nottea,[29] those assets lost their separate character in 2010 when she deposited the money into a joint bank account belonging to her and Doron Nottea.

---

[27] *See* Attachment B (previously filed with Dkt. #353 as Exhibit 384 located at Dkt. #353-18); Attachment C (showing Lori for Lifestyle Media Brands and 1%); *see also* Dkt. #380-1, at 119:12-23 (Alon Nottea admitting that Lifestyle Media Brands, Inc. was an online retailer of AuraVie); Dkt. #380-1, at 156:23-157:1 (Doron admitting DMA Media Holdings, Inc., did business of AuraVie.), Dkt. #380-1, at 200:4-14 (Roi Reuveni admitting DMA Media Holdings was a retail merchant corporation processing orders for AuraVie.).

[28] Attachment D (showing account ending 35855 being held in the name of Doron Nottea and Rachel Nottea); Attachment E (Doron Nottea's Master Deposit Agreement for Personal Accounts stating that "[i]f more than one person is named in the title for any account, such account will be considered a joint account.")

[29] Dkt. #350, at 10¶ 4.

PLAINTIFF'S RESPONSE TO JOINT MOTION

Page 6

1  Although Ms. Nottea claims that Doron Nottea's name was only included on the
2  Joint Bank Account so that Doron would have a power of attorney, Ms. Nottea did
3  not setup the account as an account solely in her name with Doron having a power
4  of attorney.[30]

5  Doron Nottea's claim that he has no ownership interest in these funds is
6  contradicted by the law. California law makes clear that "[a]ll funds in an account,
7  unless otherwise agreed in writing by the financial institution and the parties to the
8  account, remain subject to liens, security interests, rights of setoff, and charges,
9  notwithstanding the determination or allocation of net contributions with respect
10 to the parties."[31]  As such, all monies in the Joint Bank Account are properly
11 subject to the stipulated asset freeze.

12 In the event that, contrary to California law, the Court finds that money
13 initially deposited by Ms. Nottea remains her separate property, the Court should
14 reduce Ms. Nottea's balance by $67,500, which represents the total amount
15 withdrawn from the account since its inception.[32]

---

[30] Dkt. #350, at 15 ¶ 6.
[31] Cal. Prob. Code § 5401.
[32] Since the time the HSBC account opened in October 2010, there have been withdrawals of $5,000 (August 2011), $60,000 (March 2012), and $2,500 (December 2014). Dkts. #305-9, at 32; #350-10 at 32, 46. During this time period, there have been deposits of $25,000 (March 2012), $65,000 (February 2014), and $2,486.28 (November 2014). Dkts. #350-9 at 52; #350-10 at 32. However, there is no indication as to the source of these funds.

PLAINTIFF'S RESPONSE TO JOINT MOTION

Page  7

### C. Both Rachel Nottea and Lori Bekhor Profited from Defendants' Illegal Practices.

Notably both Rachel Nottea and Lori Bekhor received ill-gotten proceeds from the common enterprise gratuitously and thus do not come before this Court with clean hands. Defendants' business records identified Rachel and Lori as CEO's of certain shell companies involved in the common enterprise.[33] As CEO's, Rachel Nottea and Lori Bekhor were to receive 1% of the amounts processed through merchant accounts in their names.[34] Accordingly, both Rachel Nottea and Lori Bekhor received 1% of the consumer charges processed by the companies they unlawfully permitted their name to be used to create. Their knowing participation in the deceptive AuraVie common enterprise provides further justification for continuing the asset freeze until a full and complete trial on the merits of this case is held in June 2016.

---

[33] Attachment B; Attachment C (showing Rachel with DMA and 1% and Lori for Lifestyle and 1%); *see also* Dkt. #380-1, at 119:12-23 (Alon Nottea admitting that Lifestyle Media Brands, Inc. was an online retailer of AuraVie) ; Dkt. #380-1, at 156:23-157:1 (Doron admitting DMA Media Holdings, Inc., did business of AuraVie.), Dkt. #380-1, at 200:4-14 (Roi Reuveni admitting DMA Media Holdings was a retail merchant corporation processing orders for AuraVie).

[34] *See* Dkt. #353-30, at 75 ¶ 240 (Alon Nottea admitting that each individual defendant was paid at least 1% of sales processed through merchant accounts in which they were listed as CEO); Dkt. #353-30, at 139 ¶ 240 (Doron Nottea admitting that each individual defendant was paid at least 1% of sales processed through merchant accounts in which they were listed as CEO); Dkt. #380-1, at 252:8-20.

### III. Conclusion

For the reasons stated above, the FTC respectfully requests that the Court deny the Joint Motion for Release of Assets.

Respectfully submitted,

Dated: 05/2/2016

/s/ REID TEPFER_____
REID TEPFER
LUIS H. GALLEGOS
Attorneys for the Plaintiff
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (facsimile)
rtepfer@ftc.gov
lgallegos@ftc.gov

# CERTIFICATE OF SERVICE

The undersigned certifies that on May 2, 2016, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd Suite 2250
Los Angeles, CA 90036
nameri@agmblaw.com
*Local counsel for Receiver*

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea and Roi Rueveni*

Robert Esensten
Esensten Law
12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
resensten@esenstenlaw.com
*Counsel for Doron Nottea and Motti Nottea*

Jeffrey Benice
Law Offices of Jeffrey S. Benice
A Professional Law Corporation
3080 Bristol Street
Sixth Floor, Suite 630
Costa Mesa, CA 92626
Telephone: (714) 641-3600 Ext. 214
*Counsel for Igor Latsanovski and CalEnergy, Inc*

PLAINTIFF'S RESPONSE TO JOINT MOTION

| | |
|---|---|
| Sagar Parikh<br>Beverly Hills Law Corp. PC<br>433 N. Camden Drive, 6th Floor<br>Beverly Hills, CA 90210<br>SP@BeverlyHillsLawCorp.com<br>*Attorney for Paul Medina, Secured Merchants, LLC, and Chargeback Armor, Inc.* | Charlene Cantrell Koonce<br>Receiver<br>Scheef & Stone<br>500 N. Akard, Suite 2700<br>Dallas, Texas 75201<br>charlene.koonce@solidcounsel.com<br>*Receiver*<br><br>Kelly M. Crawford<br>Scheef and Stone<br>500 N. Akard, Suite 2700<br>Dallas, Texas 75201<br>kelly.crawford@solidcounsel.com<br>*Counsel to Receiver* |

        /S/ REID TEPFER
        REID TEPFER