DAVID C. SHONKA
Acting General Counsel

DAMA J. BROWN
Regional Director

REID TEPFER
rtepfer@ftc.gov
Texas Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov
Oklahoma Bar No. 19098
EMILY ROBINSON
erobinson@ftc.gov
Texas Bar No. 24046737
ZACHARY A. KELLER
zkeller@ftc.gov
Texas Bar No. 24087838 (pro hac vice pending)
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9386 (Robinson); (214) 979-9382 (Keller)
(214) 953-3079 (fax)

RAYMOND McKOWN
rmckown@ftc.gov
California Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4343(voice)
(310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

1

## PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BUNZAI MEDIA GROUP, INC.,** *et al.*<br><br>**Defendants.** | Case No. CV 15-4527-GW(PLAx)<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS IGOR LATSANOVSKI AND CALENERGY, INC.'S STATEMENT OF UNCONTROVERTED FACTS** |

## COUNT 1-5

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. Defendants Latsanovski and Calenergy were solely lenders in Bunzai Media Group, Inc.<br><br>[Decl. of Benice, ¶3; January 28, 2016 Depo of Latsanovski, R.T. 76:lns. 1-14; *"The most important term was that from day one from when I gave my first check, it's a loan and it's payable back with interest on my investment ... "*]<br><br>[Decl. of Benice, ¶4; Exh. "C" thereto, *February 18, 2016 Depo of Alon Nottea,* R.T. 84: 15-25; 85: 1-25; 86: 1-24.] | Disputed.<br><br>1. Plaintiff disputes the entirety of this contention:<br><br>Latsanovski: Defendant Latsanovski was a co-owner of BunZai Media Group, Inc. Dkts. 244¶ 36; 245¶ 36; Ex. 18-2; 946, at 29:10-12. Defendant Medina, an employee of BunZai, also believed Latsanovski owned BunZai. Ex. 946, at 29:10-12. Furthermore, Latsanovski is the CEO of CalEnergy, Inc. and, through CalEnergy, managed Defendants Pinnacle Logistics, Inc. and Media Urge, Inc. Exs. 561-3; 588-1,-9; 908-3. Latsanovski also incorporated Zen Mobile Media, Inc., one of the shell companies used by Defendants to |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| [Decl. of Latsanovski, ¶¶1-3; Exh. "A" thereto, July, 2015 Loan Summary; ¶¶19-24.]<br><br>[Request for Judicial Notice No. 1; July 13, 2015 Declaration of Igor Latsanovski in Support of Ex Parte Request for Partial Relief from Temporary Restraining Order filed July 15, 2015, ¶¶4-14.] | process consumer payments for Defendants' risk-free trials. Ex. 904-23; Dkts. 120, at 68; 121-1, at 3.<br><br>*Latsanovski's Involvement in Operations*: Latsanovski also participated in operational planning discussions. These discussions included employee staffing decisions and managing the business's needs in areas such as "plants and Callcenters."Ex. 21 Latsanovski reserved managing higher-level "intellectual labor" for Alon Nottea and Latsanovski himself. Ex. 21 In this email, Defendant Latsanovski himself noted: "Directors, the people who can not just perform, but also to make decisions and in addition whom we trust and know their capabilities. . . .Who we have: You, Paul, Roy, Andre and David and me a little, that's all!" And indeed, in a letter he stated that he would meet with the company's presidents and employees, including "manager Roi Reuveni to review activities of the managed call center Pinnacle (including AuraVie, Dellure and Attitude . . .)." Ex. 21<br><br>Latsanovski also had significant involvement in day-to-day financial operations. Former employee Yalley stated that Latsanovski would sit down next to her and review profit and loss statements for the enterprise. Ex. 556, at 34:2-4, 34:20-35:7 Defendant Medina, who worked for Media Urge from 2010 to 2014 and |

3

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

was located at the 7900 Gloria address, testified that Latsanovski was present a few days each month. Ex. 946, at 29:3-12. Latsanovski sent a revised profit and loss spreadsheet containing sales and chargeback information for the common enterprise. Ex. 503. He participated in discussions concerning international merchant accounts and meetings with payment processors, and he was involved in discussions relating to AuraVie's excessive chargeback rates and load balancing. Exs. 319; 562; 565. He assisted Defendants in transferring funds overseas for safekeeping, including possibly to a Cyprus trust. *See* Exs. 55; 450; 470. In a letter to the United States Citizenship and Immigration Services describing his job responsibilities at CalEnergy, Latsanovski represented that he was involved in "reviewing the activities and providing guidance to managed companies," which included Defendants Pinnacle Logistics, Inc. and Media Urge, Inc. Ex. 571-2.

*Latsanovski's Involvement in Marketing*: Latsanovski was apprised of low-level contractual disputes relating to the advertising. *See* Ex. 48. He was the person Defendant Alon Nottea contacted regarding international marketing for issues as minor as what the customer service telephone numbers were to higher level issues such as how much they

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

|  | should charge for their product. Ex. 559. |
|  | *Latsanovski's Receiving Reports*: Former employee Yalley stated that Latsanovski would sit down next to her and review profit and loss statements for the enterprise. Ex. 556, at 34:2-4, 34:20-35:7.  Defendant Medina testified that he would have discussions concerning sales and affiliates with Latsanovski. Ex. 946, at 30:4-13. |
|  | *Latsanovski's Knowledge of the Web-Based Advertising*: Latsanovski received emails containing links to Defendants' deceptive risk-free trial websites. Ex. 28. |
|  | CalEnergy: CalEnergy invested in and financed the BunZai enterprise. Ex. 571-2, -3. CalEnergy also served as one of the two primary entities that collected revenues from the web of merchant accounts that Defendants used to deceive payment processors. Dkt. 121-1, at 3. Upon receiving those funds, CalEnergy would then pass these revenues on to Defendant Focus Media Solutions, Inc. (a company that created advertisements for skincare products sold by negative option) or to Defendant Latsanovski himself. Dkts. 121-1, at 3; 120, at 46; Ex. 910-30 ¶ 215. |
|  | *CalEnergy's Role in Operations*: CalEnergy owned Defendants Media |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| | Urge, Inc. and Pinnacle Logistics, Inc. CalEnergy's internal organizational chart—which Latsanovski reviewed—confirms that Latsanovski supervised and managed Media Urge and Pinnacle in his capacity as head of CalEnergy. Exs. 561-3; 588-1, -9. |
| 2. During the period 2010 to 2015 Defendants Latsanovski and Calenergy made loans totaling $500,000 to Defendant Bunzai and its affiliates.<br><br>[Decl. of Benice, ¶2; Exh. "A" thereto, *January 28, 2016 Depo of Latsanovski,* R.T. 35: 2-25; 36: 1-24; 37: 1-24; 38: 1-24; 114: 1-24; 116: 1-11.]<br><br>[Decl. of Benice, ¶4; Exh. "C" February 18, *2016 Depo of Alon Nottea,* R.T. 85: 1ns. 3-5; *"Did Bunzai ... pay back Igor ...? A. I believe it did.]*<br><br>[Decl. of Latsanovski, ¶¶1-4; Exh. "A" thereto, July, 2015 Loan Summary; ¶¶ 15-16.]<br><br>[Request for Judicial Notice No. 1; July 13, 2015 Declaration of Igor Latsanovski in Support of Ex Parte Request for Partial Relief from Temporary Restraining Order filed July 15, 2015, ¶¶4-14.] | Disputed.<br><br>1. Plaintiff disputes the entirety of this contention:<br><br>CalEnergy transferred no less than $950,000 to Bunzai and its affiliates. Dkts. 120, at 40-41, 69; 121-1, at 3. Defendant Latsanovski structured these transfers as a revolving credit line of up to $500,000, under which he would regularly give Bunzai and later the other AuraVie entities.  Dkt. 120, at 41; Ex. 552, at 27:5-13. Defendant Latsanovksi in fact borrowed more than he invested (a net borrower) in the scheme until approximately October 2013.  Dkt. 120, at 41. |
| 3. Defendant Latsanovski and Calenergy received the $500,000 in | Disputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

full repayment and $317,746 in interest return on the $500,000.

[Decl. of Benice, ¶2; Exh. "A" thereto, *January 28, 2016 Depo of Latsanovski,* R.T. 35: 2-25; 36: 1-24; 37: 1-24; 38: 1-24; 114: 1-24; 116: 1-11.]

[Decl. of Benice, ¶4; Exh. "C" February 18, *2016 Depo of Alon Nottea,* R.T. 85: 1ns. 3-5; *"Did Bunzai ... pay back Igor ...? A. I believe it did.]*

[Decl. of Latsanovski, ¶¶1-4; Exh. "A" thereto, July, 2015 Loan Summary; ¶¶ 15-16.]

[Request for Judicial Notice No. 1; July 13, 2015 Declaration of Igor Latsanovski in Support of Ex Parte Request for Partial Relief from Temporary Restraining Order filed July 15, 2015, ¶¶4-14.]

1. Plaintiff disputes the entirety of this contention:

Because this Fact contends items substantially the same as Fact #2, Plaintiff FTC reasserts:

CalEnergy transferred no less than $950,000 to Bunzai and its affiliates. Dkts. 120, at 40-41, 69; 121-1, at 3. Defendant Latsanovski structured these transfers as a revolving credit line of up to $500,000, under which he would regularly give Bunzai and later the other AuraVie entities. Dkt. 120, at 41; Ex. 552, at 27:5-13. Defendant Latsanovksi in fact borrowed more than he invested (a net borrower) in the scheme until approximately October 2013. Dkt. 120, at 41.

Moreover, the $317,000 net gain was not an interest payment but instead money transferred as part of the common enterprise's advertising operations. After CalEnergy received the $317,746, Defendant Latsanovski transferred a similar amount, $325,000, to Defendant Focus Media Solutions, Inc., the company responsible for the scheme's advertising campaigns. Dkt. 120, at 41, 46. After Defendant Latsanovski's initial seed money, the funds in question were not loans, but the ill-gotten gains derived from Defendants' online scheme.

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| | As noted by the Receiver in her Report, the "constant inflow of money from CalEnergy was repaid first by Bunzai and later by SBM Management, as well as the numerous retail merchant companies." Dkt. 120, at 41. This stream of transfers was not an arms-length revolving credit facility but instead one hand washing the other—shuffling funds from one entity to another in furtherance of the scheme. |
| 4. Defendants Latsanovski and Calenergy had no involvement in the day to day operations of Defendant Bunzai.<br><br>[Decl. of Benice, ¶2; Exh. "A" *January 28, 2016 Depo of Latsanovski,* R.T. 30: 6-23.]<br><br>[Decl. of Benice, ¶4; Exh. "C" *February 18, 2016 Depo of Alon Nottea,* R.T. 110: 1-25; 111: 1-25; 112: 1-25; 161: 10-19.]<br><br>[Decl. of Latsanovski, ¶¶10; 12-18.]<br><br>[Request for Judicial Notice No. 1; July 13, 2015 Declaration of Igor Latsanovski in Support of Ex Parte Request for Partial Relief from Temporary Restraining Order filed July 15, 2015, ¶¶4-14.] | Disputed.<br><br>1. Plaintiff disputes the entirety of this contention:<br><br>Defendant Latsanovski's Participation in the Bunzai Enterprise: Defendant Latsanovski was a co-owner of BunZai Media Group. Dkts. 244¶ 36; 245¶ 36; Ex. 18-2; 946, at 29:10-12. A former employee of BunZai testified that Igor Latsanovski received and reviewed monthly accounting reports for BunZai. Ex. 556, at 34:2-4, 34:20-35:7. Latsanovski previously swore under oath that BunZai was his employer. *See* Ex. 949.  A BunZai Form W-2 listed Defendant Latsanovski as an employee. Ex. 402-8.<br><br>Regarding the larger BunZai common enterprise, Latsanovski had significant involvement in day-to-day |

8

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

|  | financial operations. Defendant Medina, who worked for Media Urge from 2010 to 2014 and was located at the 7900 Gloria address, testified that Latsanovski was present a few days each month. Ex. 946, at 29:3-12. Latsanovski sent a revised profit and loss spreadsheet containing sales and chargeback information for the common enterprise. Ex. 503 He also participated in discussions concerning international merchant accounts and meetings with payment processors, and he was involved in discussions relating to AuraVie's excessive chargeback rates and load balancing. Exs. 319; 329; 562; 565. He assisted Defendants in transferring funds overseas for safekeeping, including possibly to a Cyprus trust. See Exs. 55; 450; 470. In a letter to the United States Citizenship and Immigration Services describing his job responsibilities at CalEnergy, Latsanovski represented that he was involved in "reviewing the activities and providing guidance to managed companies," which included Defendants Pinnacle Logistics and Media Urge. Ex. 571-2.<br><br>Latsanovski's participation extended to advertising. He was asked to proofread advertising to be used by Defendants overseas and assisted in coordinating the marketing campaign. *See* Ex. 564. Latsanovski was apprised of low-level contractual disputes relating to the advertising. |
|---|---|

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| | *See* Ex. 48. Latsanovski assisted Defendants in transferring funds overseas for safekeeping, including possibly to a Cyprus trust. See Exs. 55; 450; 470.<br><br>Defendant CalEnergy's Participation in the Bunzai Enterprise: CalEnergy played a similary significant role in the Bunzai common enterprise. CalEnergy's internal organizational chart—which Latsanovski reviewed—confirms that Latsanovski as the CEO of CalEnergy supervised and managed Defendants Media Urge, Inc. and Pinnacle Logistics, Inc. Exs. 561-3; 588-1, -9.<br><br>CalEnergy served as one of the two primary entities that collected revenues from the web of merchant accounts that Defendants used to deceive payment processors. Dkt. 121-1, at 3. Upon receiving those funds, CalEnergy would then pass these revenues on to Defendant Focus Media Solutions, Inc. (a company that created advertisements for skincare products sold by negative option) or to Defendant Latsanovski himself. Dkts. 121-1, at 3; 120, at 46; Ex. 910-30 ¶ 215. |
| 5. Defendants Latsanovski and Calenergy had no knowledge or involvement in Defendant Bunzai's alleged wrongful activity and did not recklessly disregard such conduct. | Disputed.<br><br>1. Plaintiff disputes the entirety of this contention: |

10

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| [Decl. of Benice, ¶2; Exh. "A" January 28, 2016 Depo of Latsanovski, R.T. 269: 4-18. *"Alon can do it ... He is running it.* (Bunzai)].<br><br>[Decl. of Latsanovski, ¶¶10: 12-18.]<br><br>[Request for Judicial Notice No. 1; July 13, 2015 Declaration of Igor Latsanovski in Support of Ex Parte Request for Partial Relief from Temporary Restraining Order filed July 15, 2015, ¶¶4-14.] | Defendant Latsanovski's participation in the scheme was  comprehensive, including both operational and financial oversight that demonstrate his knowledge of the common enterprise's business mechanics.<br><br>Operations: An email shows Defendant Latsanovski making business decisions concerning operational aspects of companies within the common enterprise. Ex. 21. He played roles that ran the gamut of BunZai's operations and structure, including employee staffing decisions and how to manage the business's needs for areas such as "plants and Callcenters." Ex. 21. In an email, he also noted that higher-level "intellectual labor" should be left to Defendant Alon Nottea and Latsanovski himself. Ex. 21. In this email, Defendant Latsanovski further noted: "Directors, the people who can not just perform, but also to make decisions and in addition whom we trust and know their capabilities. . . .Who we have: You, Paul, Roy, Andre and David and me a little, that's all!" Ex. 21.<br><br>Financial Oversight: Furthermore, his knowledge of the scheme's financial management, including risks for the enterprise, was comprehensive. Former employee Yalley stated that Latsanovski would sit down next to her and review profit and loss statements for the enterprise. Ex. 556, |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

|  | at 34:2-4, 34:20-35:7. Defendant Paul Medina testified that he overheard Defendant Latsanovski discussing chargebacks with Defendant Alon Nottea. Ex. 946, at 31:16-32:3. He also received an email concerning excess chargeback programs and the enterprise's excessive chargeback rates, as well as emails discussing high-risk merchant accounts. Exs. 562; 319.  Moreover, Latsanovski received an email discussing load balancing to maintain merchant accounts for the enterprise and emails containing links to Defendants' deceptive risk-free trial websites. Exs. 28; 565.  Latsanovski requested information concerning the common enterprise's chargeback rates and merchant reserve and followed up these questions by asking the employee "what kind of help do you need from me[?]"  Ex. 549.<br><br>Latsanovski also incorporated Zen Mobile Media, Inc., one of the shell companies used by Defendants to process consumer payments for Defendants' risk-free trials. Ex. 904-23; Dkts. 120, at 68; 121-1, at 3. Latsanovski also managed Defendants Media Urge, Inc. and Pinnacle Logistics, Inc. through, CalEnergy, the parent company of Defendants Media Urge and Pinnacle. Exs. 561-3; 588-1, -9. |
|---|---|
| 6. Defendants Latsanovski and Calenergy, did not play any role in the | Disputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| operation of the internet skincare business.  Latsanovski never spoke to any customers; was not involved in the day to day operations of the internet skincare business; had no involvement in the marketing or advertising of the skincare products; never received or reviewed any reports regarding customer complaints; and had no knowledge of the web based advertising used by defendant Bunzai.  Defendants Alon and Bond actually operated and controlled Defendant Bunzai and made all operational decisions.  Neither Calenergy nor Latsanovski received any money from consumers directly.  Importantly, Calenergy did not receive any money from defendant Bunzai in this case until after Calenergy provided loans to Bunzai.<br><br>[Decl. of Benice, ¶2;Exh. "A" January 28, 2016 Depo of Latsanovski, R.T. 269: 4-18. *["Alon can do it... He is running it.* (Bunzai)].<br><br>[Decl. of Latsanovski, ¶¶10: 12-18.]<br><br>[Request for Judicial Notice No. 1; July 13, 2015 Declaration of Igor Latsanovski in Support of Ex Parte Request for Relief from Temporary Restraining Order filed July 15, 2015, ¶¶4-14.] | Plaintiff does not dispute:<br><br>(a) That Latsanovski did not speak to any customers;<br><br>(b) That neither Calenergy nor Latsanovski received any money from consumers directly, but qualifies this response by noting that Defendants Latsanovski and CalEnergy received money from consumers indirectly through the web of merchant accounts Defendants used to process their unauthorized charges to consumers' credit accounts. Dkt. 121-1, at 3.<br><br>(c) That CalEnergy did not receive any money from defendant Bunzai in this case until after Calenergy provided loans to Bunzai, but qualifies this response by noting that it received substantial funds after its initial investment, all such funds resulting from the abusive practices at issue in this case.<br><br>2.  Plaintiff does dispute:<br><br>(a) That Latsanovski played a role in the operation of the Skincare Business: Because this contention requires a response substantially the same as that provided in Fact #1, Plaintiff |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

|  | reasserts:<br><br>Latsanovski's Role in Operations: An email shows Defendant Latsanovski making business decisions concerning operational aspects of companies within the common enterprise. Ex. 21. He played roles that ran the gamut of BunZai's operations and structure, including employee staffing decisions and how to manage the business's needs for areas such as "plants and Callcenters." Ex. 21 In an email, he also noted that higher-level "intellectual labor" should be left to Defendant Alon Nottea and Latsanovski himself. Ex. 21. In this email, Defendant Latsanovski further noted: "Directors, the people who can not just perform, but also to make decisions and in addition whom we trust and know their capabilities. . . .Who we have: You, Paul, Roy, Andre and David and me a little, that's all!" In a letter he stated that he would meet with the company's presidents and employees, including "manager Roi Reuveni to review activities of the managed call center Pinnacle (including AuraVie, Dellure and Attitude . . .)." Ex. 21.<br><br>Latsanovski also had significant involvement in day-to-day financial operations. Former employee Yalley stated that Latsanovski would sit down next to her and review profit and loss statements for the enterprise. |
|---|---|

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

|  | Ex. 556, at 34:2-4, 34:20-35:7. Defendant Medina, who worked for Media Urge from 2010 to 2014 and was located at the 7900 Gloria address, testified that Latsanovski was present a few days each month. Ex. 946, at 29:3-12.  Latsanovski sent a revised profit and loss spreadsheet containing sales and chargeback information for the common enterprise. Ex. 503. He participated in discussions concerning international merchant accounts and meetings with payment processors, and he was involved in discussions relating to AuraVie's excessive chargeback rates and load balancing. Exs. 319; 562; 565. He assisted Defendants in transferring funds overseas for safekeeping, including possibly to a Cyprus trust. *See* Exs. 55; 450; 470. In a letter to the United States Citizenship and Immigration Services describing his job responsibilities at CalEnergy, Latsanovski represented that he was involved in "reviewing the activities and providing guidance to managed companies," which included Defendants Pinnacle Logistics and Media Urge. Ex. 571-2.<br><br>Moreover, Latsanovski also incorporated Zen Mobile Media, Inc., one of the shell companies used by Defendants to process consumer payments for Defendants' risk-free trials. Ex. 904-23; Dkts. 120, at 68; 121-1, at 3. |
|---|---|

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

<u>Latsanovski's Involvement in Marketing</u>: Latsanovski was apprised of low-level contractual disputes relating to the advertising. *See* Ex. 48. He was the person Defendant Alon Nottea contacted regarding international marketing for issues as minor as what the customer service telephone numbers would be to higher-level issues such as how much they should charge for their product. Ex. 559.

<u>Latsanovski's Knowledge of Financial Reports</u>: Former employee Yalley stated that Latsanovski would sit down next to her and review profit and loss statements for the enterprise. Ex. 556, at 34:2-4, 34:20-35:7. Defendant Medina testified that he would have discussions concerning sales and affiliates with him. Ex. 946, at 30:4-13. Medina also testified that he overhead Defendant Latsanovski discussing chargebacks with Defendant Alon Nottea. Ex. 946, at 31:16-32:3.

<u>Latsanovski's Knowledge of the Web-Based Advertising</u>: Latsanovski received emails containing links to Defendants' deceptive risk-free trial websites. Ex. 28.

<u>CalEnergy's Role in Operations</u>: CalEnergy owned Defendants Media Urge, Inc. and Pinnacle Logistics, Inc. CalEnergy's internal organizational chart—which

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | Latsanovski reviewed—confirms that Latsanovski supervised and managed Media Urge and Pinnacle in his capacity as head of CalEnergy. Exs. 561-3; 588-1, -9. |
|---|---|

## FURTHER DISPUTED GENINUE ISSUES AND PROPOSED CONCLUSIONS OF LAW

| FURTHER DISPUTED GENINUE ISSUES OF FACT ||
|---|---|
| 1. Third party Sunset Holdings, LLC received no funds from Defendant Bunzai; any affiliate of Defendant Bunzai; And no consumers doing business with Defendant Bunzai.<br><br>[Decl. of Latsanovski, ¶¶7-8; 11; 27.]<br><br>[Decl. of Klykov, ¶¶1-9; Exhs. "A"- "E" thereto.]<br><br>[Decl. of Aleksandrovna, ¶¶1-7; Exhs. "A" and "B" thereto.]<br><br>[Request for Judicial Notice No. 1; July 13, 2015 Declaration of Igor Latsanovski in Support of Ex Parte Request for Partial Relief from Temporary Restraining Order filed July 15, 2015, ¶¶24-27.] | 1. Disputed<br><br>  1. Plaintiff does not dispute:<br><br>(a) <u>That Sunset Holdings, LLC received no funds from Defendant Bunzai</u> but qualifies this response by noting that Sunset Holdings received funds indirectly from Bunzai through Sunset's parent entity CalEnergy, Inc. Dkts. 120, at 50; 121-1, at 3.<br><br>(b) <u>That Sunset Holdings, LLC received no funds from consumers doing business with Defendant Bunzai</u> but qualifies this response by noting that Sunset Holdings received funds indirectly from consumers doing business with Bunzai through Sunset's parent entity CalEnergy, Inc., which itself indirectly received consumer funds as part of the AuraVie scheme. Dkts. 120, at 50; 121-1, at 3. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

2. Plaintiff does dispute:

(a) That Sunset Holdings, LLC received no funds from any affiliate of Defendant BunZai:

*Defendant CalEnergy as Affiliate*: Plaintiff responds to this contention by first establishing that Defendant CalEnergy was an "affiliate" of Defendant BunZai: Defendant CalEnergy was affiliated with Defendant BunZai through its admitted financial relationship with Defendant Bunzai Media Group, Inc. and was a member of the BunZai common enterprise through its management of both Pinnacle Logistics, Inc. and Media Urge, Inc., as well as through its financing of the scheme. Exs. 552, at 27:5-13; 561-3; 588-1,-9; 908-3; *see* Dkts. 120, at 40-41, 69; 121-1, at 3.

*Defendant Latsanovski as Affiliate*: Defendant Latsanovski was similarly affiliated with both Defendant Bunzai and the BunZai scheme. Latsanovski was a co-owner of BunZai Media Group. Dkts. 244¶ 36; 245¶ 36; Ex. 18-2; 946, at 29:10-12.  Defendant Paul Medina also believed Latsanovski owned BunZai. Ex. 946, at 29:10-12.  Latsanovski previously swore under oath that BunZai was his employer.  *See* Ex. 949.  Furthermore, Latsanovski is the CEO of CalEnergy, Inc. and, through

18
**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | CalEnergy, managed Pinnacle Logistics, Inc. and Media Urge, Inc. Exs. 561-3; 588-1,-9. |
|---|---|
| | *Sunset Holdings was Funded by BunZai Affiliates*: Because CalEnergy, an affiliate of BunZai, owned substantially all of the membership interests, its affiliate status establishes that Sunset Holdings received funds from a BunZai Affiliate: |
| | Sunset Holdings, LLC is 99% owned by Defendant CalEnergy and 1% by Defendant Latsanovski. Dkt. 106-7, at 3. Latsanovski is a signatory on Sunset Holdings' accounts. Dkt. 120, at 50. Both CalEnergy and Latsanovski received money from BunZai and funded Sunset Holdings. Dkt. 120, at 41, 50-51. Regardless of the third party contractual claims Defendant CalEnergy associates with its real estate investments, CalEnergy both owns and controls the assets its subsidiary holds. |
| | Furthermore, Defendant Latsanovski transferred money to Sunset Holdings via Guayas International, Inc., a company he wholly owns. Dkt. 120, at 60-61. |
| 2. All funds invested into third party Sunset Holdings, LLC came from third party investors with no affiliation or relationship with Defendant Bunzai. | 2. Disputed<br><br>  1. Plaintiff disputes the entirety of this contention: |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| [Decl. of Latsanovski, ¶¶7-8; 11; 27.]<br><br>[Decl. of Kyrkov, ¶¶1-9; Exhs. "A"-"E" thereto.]<br><br>[Decl. of Aleksandrovna, ¶¶1-7; Exhs. "A" and "B" thereto.]<br><br>[Request for Judicial Notice No. l; July 13, 2015 Declaration of Igor Latsanovski in Support of Ex Parte Request for Partial Relief from Temporary Restraining Order filed July 15, 2015, ¶¶24-27.] | <u>The Funding of Sunset Holdings, LLC:</u><br><br>Insofar as this claim is related to Defendants' Further Fact #1 regarding the contribution of BunZai affiliates, Plaintiff reiterates part of its response to Further Fact #1: Sunset Holdings, LLC is 99% owned by Defendant CalEnergy and 1% by Defendant Latsanovski. Dkt. 106-7, at 3. Latsanovski is a signatory on Sunset Holdings' accounts. Dkt. 120 at 50. Both CalEnergy and Latsanovski received money from BunZai and funded Sunset Holdings. Dkt. 120, at 37, 41, 50-51. Regardless of the third party contractual claims Defendant CalEnergy associates with its real estate investments, CalEnergy both owns and controls the assets its subsidiary holds.<br><br>CalEnergy, itself not only a critical component of the AuraVie common enterprise but also the receiver of substantial funds from the AuraVie scheme, invested capital in Sunset Holdings and owns substantially all its membership interests. Dkts. 106-7, at 3; 120, at 41, 50.  Latsanovski transferred money to Sunset via Guayas International, Inc., a company he wholly owns. Dkt. 120, at 41, 60-61.   Both Latsanovski and CalEnergy are affiliated with Bunzai.  Dkts. 253 ¶¶ 2-3; 254¶¶ 2-3; 121-1, at 3; Exs. 18-2; 302-2; 556, at 34:2-4, 34:20-35:7; 946, at 29:10-29:12; 949. Any |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

|  | claim by a third party relating to the membership interests or underlying assets of Sunset can only be a claim existing in contract against CalEnergy or Defendant Latsanovski. Such claims may speak to whether CalEnergy has business relationships outside of the AuraVie scheme but does not otherwise affect the ownership interest CalEnergy has in Sunset and its underlying assets.

In addition, the declarations supporting this contention fail to show that third party investors controlled or owned the funds invested in Sunset Holdings, LLC. The Aleksandrovna and Latsanovski Declarations describe contractual loan obligations that conferred control and ownership to Defendant Latsanovski with an obligation to repay. This simple contract does not challenge Latsanovski's control or ownership of the funds in question. Similarly, the Krykov declaration provides, at most, that funds were transferred to Defendant Latsanovski for him to both hold legal title to and to control the deployment of. Such facts fail to challenge that Sunset Holdings is an asset owned and controlled by Defendants CalEnergy and Latsanovski. |
| --- | --- |
| DEFENDANTS' PROPOSED CONCLUSIONS OF LAW ||
| 1. No evidence exists that Defendant Latsanovski (1) participate[d] directly in, or had the authority to control, the | 1. Disputed.

    1.  Plaintiff disputes the |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| unlawful acts or practices alleged in the first amended complaint; and (2) had actual knowledge of the misrepresentations involved, was recklessly indifferent to the truth or falsity of the misrepresentations, or was aware of a high probability of fraud and intentionally avoided learning the truth. *See, FTC v. Network Services Depot, Inc.,* 617 *F.3d* 1127, 1138-1139 (9th Cir. 2010) | entirety of Defendants' conclusion of law:<br><br>*See* Section II.B. of Plaintiff's Opposition to Defendants Igor Latsanovski and CalEnergy, Inc.'s Motion for Summary Judgment. |
| 2. No evidence exists that Defendant Calenergy (1) participated directly in, or had the authority to control, the unlawful acts or practices alleged in the first amended complaint; and (2) had actual knowledge of the misrepresentation involved, was recklessly indifferent to the truth or falsity of the misrepresentations, or was aware of a high probability of fraud and intentionally avoided learning the truth. *See, FTC v. Network Services Depot, Inc.,* 617 *F.3d* 1127, 1138-1139 (9th Cir. 2010) | 2. Disputed<br><br>   1. Plaintiff disputes the entirety of Defendants' conclusion of law:<br><br>*See* Section II.A. of Plaintiff's Opposition to Defendants Igor Latsanovski and CalEnergy, Inc.'s Motion for Summary Judgment. |
| 3. As a matter of law neither Defendants Latsanovski nor Calenergy are jointly and severally liable with the other defendants for the consumer damages or any other damages claimed by Plaintiff FTC. *See, FTC v.Stefanchik,* 559 *F.3d* 924, 931 (9th Cir. 2009). | 3. Disputed.<br><br>   1. Plaintiff disputes the entirety of Defendants' conclusion of law:<br><br>*See* Section II of Plaintiff's Opposition to Defendants Igor Latsanovski and CalEnergy, Inc.'s Motion for Summary Judgment. |
| 4. As a matter of law Defendants Latsanovski and Calenergy are only liable, if at all for equitable | 4. Disputed.<br><br>   1. Plaintiff disputes the |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| disgorgement of the sums they received from defendant Bunzai (and affiliates) during the period 2010 to 2015; $317,000. *See, FTC v. Burnlounge,* 584 Fed. Appx. 315 (9th Cir. 2014) | entirety of Defendants' conclusion of law:<br><br>*See* Section II and III.A. of Plaintiff's Opposition to Defendants Igor Latsanovski and CalEnergy, Inc.'s Motion for Summary Judgment. |
| 5. The September 9, 2010 preliminary injunction and asset freeze, as to Defendants Latsanovski and Calenergy, shall accordingly be dissolved. | 5. Disputed<br><br>  1. Plaintiff disputes the entirety of Defendants' conclusion of law:<br><br>  *See* Section III of Plaintiff's Opposition to Defendants Igor Latsanovski and CalEnergy, Inc.'s Motion for Summary Judgment. |

Dated: 5/2/16

/s/ REID TEPFER
REID A. TEPFER
LUIS H. GALLEGOS
EMILY ROBINSON
ZACHARY A. KELLER
Attorneys for the Plaintiff
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (facsimile)
rtepfer@ftc.gov
lgallegos@ftc.gov
zkeller@ftc.gov
erobinson@ftc.gov

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 2, 2016, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.


Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd Suite 2250
Los Angeles, CA 90036
nameri@agmblaw.com
*Local counsel for Receiver*

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi, as an officer or manager of BunZai Media Group, Inc. and Pinnacle Logistics, Inc.*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea, Roi Rueveni and Adageo, LLC*

Robert Esensten
Esensten Law
12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
resensten@esenstenlaw.com

24

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

Counsel for Doron Nottea and Motti Nottea

Jeffrey Benice
Law Offices of Jeffrey S. Benice
A Professional Law Corporation
3080 Bristol Street
Sixth Floor, Suite 630
Costa Mesa, CA 92626
Telephone: (714) 641-3600 Ext. 214
*Counsel for Igor Latsanovski and*
*CalEnergy, Inc.*

Sagar Parikh
Beverly Hills Law Corp. PC
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
SP@BeverlyHillsLawCorp.com
*Attorney for Paul Medina, Secured Merchants, LLC,*
*and Chargeback Armor, Inc.*

Charlene Cantrell Koonce
Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
charlene.koonce@solidcounsel.com
*Receiver*

Kelly M. Crawford
Scheef and Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
kelly.crawford@solidcounsel.com
*Counsel to Receiver*

/S/ REID TEPFER
REID TEPFER

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO
DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**