Printed 06/26/13 @ 11:48:20 AM



**Exhibit 176**

**Bank of America**

BANK OF AMERICA, N.A. (THE "BANK")

Act # ▓▓▓▓▓▓0977

**Certified Copy of Limited Liability Company Resolutions**
**Opening and Maintaining Deposit Accounts and Services**

Name of Limited Liability Company   SECURED MERCHANTS LLC

I, the undersigned, hereby certify to   BANK OF AMERICA, N.A.

, that I am the a/the   *Member*   and the designated keeper
Title
of the records and minutes of   SECURED MERCHANTS LLC

a ☒ limited liability Company ☐ professional limited liability company duly organized and existing under the laws of the State of *CA* ,
(the "Company"); that I have full authority to manage, represent, sign for and bind the Company; that the following is a true copy of resolutions duly adopted
by a majority of the members/managers of said Company at a meeting duly held on the   *25*   day of *October* , *2013*, at
which a quorum was present and acted throughout or adopted by the written consent of a majority of the members/managers; and that such resolutions are in full
force and effect and have not been amended or rescinded.

1. **Resolved,** that   BANK OF AMERICA, N.A.   (the "Bank")
is hereby designated as a depository of the Company and that deposit accounts and/or time deposits (CDs) to be opened and maintained in the name of this Company
with the Bank in accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts; that any
one of the following members, managers, or employees of this Company:

| | |
|---|---|
| *Doron Nottea* | *Member* |
| Name | Title/Status |
| *Alan Argaman* | *Member* |
| Name | Title/Status |
| | |
| Name | Title/Status |
| | |
| Name | Title/Status |

is hereby authorized, on behalf of this Company and its name, to execute and sign any application, deposit agreement, signature card and any other documentation
required by Bank to open said accounts; to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment of money; to
endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this company for deposit with Bank or for collection or discount by
Bank; to accept, drafts, acceptances, and other instruments payable at Bank; to place orders with Bank for the purchase and sale of foreign currencies on behalf of
this Company; to execute and deliver an electronic fund transfers agreement and to make transfers or withdrawals by electronic transfer on behalf of the Company;
to obtain an access device (including but not limited to a card, code, or other means of access to the Company's accounts) that may be used for the purpose of
initiating electronic fund transfers [Company agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor Regulation E (12
C.F.R. Part 205) are applicable to any such access device]; to establish and maintain a night deposit relationship; to execute and deliver a wire transfer agreement
and to request, or to appoint and delegate from time to time such person who may request, wires of funds; to enter into any agreements with the Bank for the
provision by Bank of various Treasury Management services to this Company as such member, manager or employee may determine, in his or her sole discretion,
and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the Company's
obligations thereunder, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate given in
accordance with the terms of any such agreement shall have been received by Bank and that such termination shall not affect any action taken by the Bank prior to
such termination; to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the rental
agreement or lease; to take whatever other actions or enter into whatever other agreements relating to the accounts or investment of funds in such accounts with
Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Company upon such terms and conditions as such member, manager
or employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any
other actions pursuant to such agreements in connection with said accounts; and to waive presentment,
demand, protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Company; and

2. **Further Resolved,** that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments
signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the
order of any member, manager or employee signing the same or tendered by such member, manager or employee or a third party for exchange or cashing, or in payment
of the individual obligation of such member, manager or employee, or for deposit to such member's, manager's or employee's personal account and Bank shall not be
required or be under any obligation to inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the
application or disposition of such instrument or the proceeds thereof; and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for
payment or transfer of funds whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized member, manager
or employee; and

3. **Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for
the payment of money drawn or purportedly drawn in this Company's name, including those payable to the individual order of any person whose name appears
thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an member, manager or employee authorized in the foregoing resolutions and
the Bank shall be entitled to honor, to treat as authorized, and to charge this Company for such checks, drafts, or other orders regardless of by whom or by what
means the actual or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed
with the Bank by a member/manager of this Company or if such facsimile signature resembles any facsimile signature previously affixed to any check, draft, or
other order drawn in the Company's name, which check, draft, or other order was accepted and paid without timely objection by the Company, thereby ratifying the
use of such facsimile signature; and the Company hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or expense suffered or
incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature; and

00-14-9258M  06-1999                                                                                                                    Page 1 of 2

NCA



Act # [Redacted] 0977

**4. Further Resolved,** that endorsements for deposit may be evidenced by the name of the Company being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and the Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection; and

**5. Further Resolved,** that a duly authorized member/manager of this Company shall certify to the Bank names and signatures of persons authorized to act on behalf of this Company under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said members, managers and employees are made, immediately report, furnish and certify such changes to the Bank and shall submit to the Bank a new account signature card reflecting such change(s) in order to make such changes effective and the Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any member, manager or employee so certified, or refusing to honor any signature not so certified; and

**6. Further Resolved,** that the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as the Bank is concerned until three (3) business days after the Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank prior thereto; and

**7. Further Resolved,** that all transactions by any member, manager or employee of this Company on its behalf and in its name with the Bank prior to the delivery to the Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted; and

**8. Further Resolved,** that any member/manager be and hereby is, authorized and directed to certify these resolutions to the Bank and that the provisions hereof are in conformity with the Articles of Organization and Operating Agreement of this Company.

**In Witness Whereof,** and intending to bind the Company, I have hereunto subscribed my name as a member/manager of this Company, this 25 day of _October 2013_ .

X _____
Member/Manager

| Bank Information | |
| --- | --- |
| Date | 10/25/2013 |
| Banking Center Name | TARZANA |
| Associate's Name | Shaghayegh Esmaeili |
| Associate's Phone Number | 818-712-6015 |

Page 2 of 2

# Bank of America

BANK OF AMERICA, N.A. (THE "BANK")

**Business Signature Card
with Substitute Form W-9**

Account Number ██████ 0977                                    **Bank Number:** 318

Account Type:  ☒ DDA   ☐ SAV   ☐ CD

Account Title:

SECURED MERCHANTS LLC

___

**Legal Designation:**

☐ Individual/Sole Proprietor   ☐ Trust/Estate   ☐ Unincorporated Association   ☐ C Corporation   ☐ S Corporation

☐ Partnership   (Enter the type of partnership: General, LP, LLP or LLLP) _____

☒ Limited Liability Company (Enter tax classification: C=C Corporation, S=S Corporation, P=Partnership or M=Single Member Sole Proprietor)  C

☐ Other (Defined in W-9 instructions)

Social Security Number _____   (or)   Employer Identification Number  46-3059095

By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time. The account opening documents include the Deposit Agreement and Disclosures and the Business Schedule of Fees. Furthermore, I/we acknowledge the receipt of these documents. **By signing below, I/we acknowledge and agree** that the signature(s) will serve as verification for any transactions in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN) to which I/we want interest reported.  The Deposit Agreement includes a provision for alternative dispute resolution.

**Substitute Form W-9.** Certification - Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a US citizen or other US person (Defined in the W-9 instructions).

**Certification Instructions:**  You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. (Please refer to the IRS instructions for Form W-9).

☐ Exempt Payee (check if applicable)

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

☐ Nonresident Alien Status (if applicable) If the beneficial owner of this account is a foreign person, check here, and complete and sign the applicable Form(s) W-8.

| Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|
| 1 DORON NOTTEA | MEMBER | X | 10/25/13 |
| 2 ALAN ARGAMAN | MEMBER | X | 10/25/13 |
| 3 | | | |
| 4 | | | |
| 5 | | | |

© 2012 Bank of America, N.A.  All Rights Reserved

NCA
00-14-9297M  02-2013



Page 1 of 2

**176-4**                                                        **Exhibit 176**

**Account Number:** 3250 1501 0977

☐ **Signature Card Addendum on File**

**ATM/Deposit/Debit Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Debit Cards, I (as authorized by the resolutions and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

Authorized Signer _____     Title _____

**Review Information**

**Customer 1:**

Name  DORON NOTTEA

ID Type: US Driver License W/Photo     ID#: Redacted     ID Issuer: California     Iss. Date: 06/2013     Exp. Date: 07/2018

ID Type: Other     ID#: Redacted     ID Issuer: SS CARD     Iss. Date: N/A     Exp. Date: N/A

**Customer 2:**

Name  ALAN ARGAMAN

ID Type: US Driver License W/Photo     ID#: Redacted     ID Issuer: California     Iss. Date: 06/2012     Exp. Date: 04/2017

ID Type: Other     ID#: Redacted     ID Issuer: SS CARD     Iss. Date: N/A     Exp. Date: N/A

**Customer 3:**

Name _____

ID Type: _____     ID#: _____     ID Issuer: _____     Iss. Date: _____     Exp. Date: _____

ID Type: _____     ID#: _____     ID Issuer: _____     Iss. Date: _____     Exp. Date: _____

**Customer 4:**

Name _____

ID Type: _____     ID#: _____     ID Issuer: _____     Iss. Date: _____     Exp. Date: _____

ID Type: _____     ID#: _____     ID Issuer: _____     Iss. Date: _____     Exp. Date: _____

**Customer 5:**

Name _____

ID Type: _____     ID#: _____     ID Issuer: _____     Iss. Date: _____     Exp. Date: _____

ID Type: _____     ID#: _____     ID Issuer: _____     Iss. Date: _____     Exp. Date: _____

**Bank Information**

**Date**     10/25/2013

**Banking Center Name**     TARZANA

**Associate's Name**     Shaghayegh Esmaeili

**Associate's Phone Number**     818-712-6015

NCA
00-14-9297M  02-2013

176-5     **Exhibit 176**

Page 2 of 2

Act # [Redacted] 0922



BANK OF AMERICA, N.A. (THE "BANK")

**Certified Copy of Limited Liability Company Resolutions**
**Opening and Maintaining Deposit Accounts and Services**

Name of Limited Liability Company   SECURED MERCHANTS LLC

I, the undersigned, hereby certify to   BANK OF AMERICA, N.A.

, that I am the a/the   _Member_   and the designated keeper
Title

of the records and minutes of   SECURED MERCHANTS LLC   ,

a ☒ limited liability Company ☐ professional limited liability company duly organized and existing under the laws of the State of   _CA_

(the "Company"); that I have full authority to manage, represent, sign for and bind the Company, that the following is a true copy of resolutions duly adopted

by a majority of the members/managers of said Company at a meeting duly held on the   _25_   day of   _October_   _2013_ , at

which a quorum was present and acted throughout or adopted by the written consent of a majority of the members/managers; and that such resolutions are in full

force and effect and have not been amended or rescinded.

**1. Resolved,** that   BANK OF AMERICA, N.A.   (the "Bank")
is hereby designated as a depository of the Company and that deposit accounts and/or time deposits (CDs) to be opened and maintained in the name of this Company
with the Bank in accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts; that any
one of the following members, managers, or employees of this Company:

| | |
|---|---|
| _Doron Nottea_ | _member_ |
| Name | Title/Status |
| _Alan Argaman_ | _member_ |
| Name | Title/Status |
| | |
| Name | Title/Status |
| | |
| Name | Title/Status |

is hereby authorized, on behalf of this Company and its name, to execute and sign any application, deposit agreement, signature card and any other documentation
required by Bank to open said accounts; to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment of money; to
endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this company for deposit with Bank or for collection or discount by
Bank; to accept, drafts, acceptances, and other instruments payable at Bank; to place orders with Bank for the purchase and sale of foreign currencies on behalf of
this Company; to execute and deliver an electronic fund transfers agreement and to make transfers or withdrawals by electronic transfer on behalf of the Company;
to obtain an access device (including but not limited to a card, code, or other means of access to the Company's accounts) that may be used for the purpose of
initiating electronic fund transfers [Company agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor Regulation E (12
C.F.R. Part 205) apply to such accounts]; to establish and maintain a night deposit relationship; to execute and deliver a wire transfer agreement
and to request, or to appoint and delegate from time to time such persons who may request, wires of funds; to enter into any agreements with the Bank for the
provision by Bank of various Treasury Management services to this Company as such member, manager or employee may determine, in his or her sole discretion,
and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the Company's
obligations there under, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate given in
accordance with the terms of any such agreement shall have been received by Bank and that such termination shall not affect any action taken by the Bank prior to
such termination; to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the rental
agreement or lease; to take whatever other actions or enter into whatever other agreements relating to the accounts or investment of funds in such accounts with
Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Company upon such terms and conditions as such member, manager
or employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any
other actions pursuant to such agreements in connection with said accounts that the member, manager or employee deems necessary; and to waive presentment,
demand, protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Company; and

**2. Further Resolved,** that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments
signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the
order of any member, manager or employee signing the same or tendered by such member, manager or employee or a third party for exchange or cashing, or in payment
of the individual obligation of such member, manager or employee, or for deposit to such member's, manager's or employee's personal account and Bank shall not be
required or be under any obligation to inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the
application or disposition of such instrument or the proceeds thereof; and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for
payment or transfer of funds whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized member, manager
or employee; and

**3. Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for
the payment of money drawn or purportedly drawn in this Company's name, including those payable to the individual order of any person whose name appears
thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an member, manager or employee authorized in the foregoing resolutions and
the Bank shall be entitled to honor, to treat as authorized, and to charge this Company for such checks, drafts, or other orders regardless of by whom or by what
means the actual or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed
with the Bank by a member/manager of this Company or if such facsimile signature resembles any facsimile signature; and, further, that the Bank shall have in good faith, draft, or
other order drawn in the Company's name, which check, draft, or other order was accepted and paid without timely objection by the Company, thereby ratifying the
use of such facsimile signature; and the Company hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or expense suffered or
incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature; and

00-14-9258M  06-1999                                                                                                          Page 1 of 2

NCA



ACt# 0922

**4. Further Resolved,** that endorsements for deposit may be evidenced by the name of the Company being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and the Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection; and

**5. Further Resolved,** that a duly authorized member/manager of this Company shall certify to the Bank names and signatures of persons authorized to act on behalf of this Company under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said members, managers and employees are made, immediately report, furnish and certify such changes to the Bank and shall submit to the Bank a new account signature card reflecting such change(s) in order to make such changes effective and the Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any member, manager or employee so certified, or refusing to honor any signature not so certified; and

**6. Further Resolved,** that the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as the Bank is concerned until three (3) business days after the Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank prior thereto; and

**7. Further Resolved,** that all transactions by any member, manager or employee of this Company on its behalf and in its name with the Bank prior to the delivery to the Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted; and

**8. Further Resolved,** that any member/manager be and hereby is, authorized and directed to certify these resolutions to the Bank and that the provisions hereof are in conformity with the Articles of Organization and Operating Agreement of this Company.

**In Witness Whereof,** and intending to bind the Company, I have hereunto subscribed my name as a member/manager of this Company, this

_25_ day of _October, 2013_.

X _[signature]_

Member/Manager

| Bank Information | |
|---|---|
| Date | 10/25/2013 |
| Banking Center Name | TARZANA |
| Associate's Name | Shaghayegh Esmaeili |
| Associate's Phone Number | 818-712-6015 |

Page 2 of 2



# Bank of America

BANK OF AMERICA, N.A. (THE "BANK")

**Business Signature Card with Substitute Form W-9**

Account Number: ████ 0922

Bank Number: 318

Account Type: ☒ DDA   ☐ SAV   ☐ CD

Account Title:

SECURED MERCHANTS LLC

**Legal Designation:**

☐ Individual/Sole Proprietor   ☐ Trust/Estate   ☐ Unincorporated Association   ☐ C Corporation   ☐ S Corporation

☐ Partnership   (Enter the type of partnership: General, LP, LLP or LLLP)

☒ Limited Liability Company (Enter tax classification: C=C Corporation, S=S Corporation, P=Partnership or M=Single Member Sole Proprietor)   C

☐ Other (Defined in W-9 instructions)

Social Security Number _____   (or)   Employer Identification Number ████095

By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time. The account opening documents include the Deposit Agreement and Disclosures and the Business Schedule of Fees. Furthermore, I/we acknowledge the receipt of these documents. By signing below, I/we acknowledge and agree that the signature(s) will serve as verification for any transactions in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN) to which I/we want interest reported. The Deposit Agreement includes a provision for alternative dispute resolution.

Substitute Form W-9. Certification - Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a US citizen or other US person (Defined in the W-9 instructions).

Certification Instructions:   You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. (Please refer to the IRS instructions for Form W-9).

☐ Exempt Payee (check if applicable)

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

☐ Nonresident Alien Status (if applicable) If the beneficial owner of this account is a foreign person, check here, and complete and sign the applicable Form(s) W-8.

| Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|
| 1 DORON NOTTEA | MEMBER | X | 10/25/13 |
| 2 ALAN ARGAMAN | MEMBER | X | 10/25/13 |
| 3 | | | |
| 4 | | | |
| 5 | | | |

© 2012 Bank of America, N.A. All Rights Reserved

NCA
00-14-9297M  02-2013



**176-8**

Page 1 of 2

**Exhibit 176**

**Account Number:** ████ Redacted ████ 0922

☐ **Signature Card Addendum on File**

**ATM/Deposit/Debit Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Debit Cards, I (as authorized by the resolutions and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

| Authorized Signer | Title |
|---|---|

**Review Information**

**Customer 1:**

Name  DORON NOTTEA

ID Type: US Driver License W/Photo    ID#: ████Redacted    ID Issuer: California    Iss. Date: 06/2013    Exp. Date: 07/2018

ID Type: Other    ID#: ████Redacted    ID Issuer: SS CARD    Iss. Date: N/A    Exp. Date: N/A

**Customer 2:**

Name  ALAN ARGAMAN

ID Type: US Driver License W/Photo    ID#: ████Redacted    ID Issuer: California    Iss. Date: 06/2012    Exp. Date: 04/2017

ID Type: Other    ID#: ████Redacted    ID Issuer: SS CARD    Iss. Date: N/A    Exp. Date: N/A

**Customer 3:**

Name

ID Type:    ID#:    ID Issuer:    Iss. Date:    Exp. Date:

ID Type:    ID#:    ID Issuer:    Iss. Date:    Exp. Date:

**Customer 4:**

Name

ID Type:    ID#:    ID Issuer:    Iss. Date:    Exp. Date:

ID Type:    ID#:    ID Issuer:    Iss. Date:    Exp. Date:

**Customer 5:**

Name

ID Type:    ID#:    ID Issuer:    Iss. Date:    Exp. Date:

ID Type:    ID#:    ID Issuer:    Iss. Date:    Exp. Date:

**Bank Information**

| | |
|---|---|
| Date | 10/25/2013 |
| Banking Center Name | TARZANA |
| Associate's Name | Shaghayegh Esmaeili |
| Associate's Phone Number | 818-712-6015 |

NCA
00-14-9297M  02-2013

**176-9**

Page 2 of 2

**Exhibit 176**

**From:**        Davidian and Associates CPA s <Lucy@lacpa.com>
**Sent:**        Wednesday, July 31, 2013 5:26 PM
**To:**          Global Media
**Cc:**          David Davidian CPA
**Subject:**     Re: Secured Merchants LLC
**Attachments:** stub.pdf


Please see attached pay stub. Total liability due is $745.61, and will come off from your account on 8/6/2013.

Sincerely,
Lucy Balyan
Davidian & Associates
Certified Public Accountants
(888) 452-5577
(818) 242-7800
(888) 202-7757 Fax
www.LACPA.com

This e-mail and any files attached may contain confidential information that is legally privileged. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please destroy the original transmission and its attachments without reading or saving in any manner.

To ensure compliance with requirements imposed by the IRS, we are required to inform you that any U.S. tax advice contained in this communication, and its attachments, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party for any matters addressed herein.
P Please consider the environment before printing this e-mail

_____

From: Global Media <globalmediausa@gmail.com>
To: Lucy@lacpa.com
Sent: Wednesday, July 31, 2013 3:09 PM
Subject: Secured Merchants LLC


Please pay 2500.00 Period 7/10-7-31

next paycheck will be 3166.00 Gross 38K per Year for now

SECURED MERCHANTS LLC
23679 CALABASAS ROAD # 531
CALABASAS, CA 91302

ROBERT W STAYNER

COSTA MESA, CA

---

**Employee Pay Stub**  Check number:  Pay Period: 07/10/2013 - 07/31/2013  Pay Date: 07/31/2013

| Employee | | | | | SSN | Status (Fed/State) | Allowances/Extra |
|---|---|---|---|---|---|---|---|
| ROBERT W STAYNER | | | COSTA MESA, CA | | ***-**-4400 | Single/Single | Fed-2/0/CA-2/0 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Salary | | | 2,500.00 | 2,500.00 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| Federal Withholding | | | -213.00 | -213.00 |
| Social Security Employee | | | -155.00 | -155.00 |
| Medicare Employee | | | -36.25 | -36.25 |
| CA - Withholding | | | -37.61 | -37.61 |
| CA - Disability Employee | | | -25.00 | -25.00 |
| | | | -466.86 | -466.86 |
| **Net Pay** | | | **2,033.14** | **2,033.14** |

---

**To:**  Prashant Khanna[prashant@opkeservices.com]
**Cc:**  Alon | MediaUrge[alon@mediaurge.com]; Karan Dhillion[karan.dhillon@opkeservices.com]
**From:**  David M
**Sent:**  Mon 1/26/2015 1:29:32 AM
**Importance:**  Normal
**Subject:**  Re: SafetyNet Invoice & Accounting
**MAIL_RECEIVED:**  Mon 1/26/2015 1:29:35 AM

Hi Prashant,
We will get back to you shortly about more info on new calls generated.
I got a number but need to confirm it.

With regards to the invoice, note that due to the rather high chargebacks that we are receiving we need to hold back a little more money before depleting the account.
I can also tell you that your accounting is taking into account some funding that has yet to be processed.

In any case. I sent you $15k and please note that it is coming from the following Wire Receipt Info.
Please have your accountant cross-reference.

**Reference No. IVIF01269900189**
**From Account ending in: XXXX6684**

Thank you,

David

On Thu, Jan 22, 2015 at 10:08 AM, Prashant Khanna <prashant@opkeservices.com> wrote:

   Alon

   Please let us know, when you have more info on new calls to be generated.

   Also, please confirm status on the last invoice sent for processing for us to plan it at our side also.

   Prashant

   > On 20-Jan-2015, at 11:40 pm, Prashant Khanna <Prashant@opkeservices.com> wrote:
   >
   > Alon / David
   >
   > Please find attached upto date accounting on Safety net
   >
   >     1. Total Charged and captured on the account is 1,28,024 $
   >     2. Settled amount after deducting Discount Fees, Monthly Fees, Refunds , CHBK , CHBK hold of 2K per month is 1,11,342 USD
   >     3. We have received 65000 USD against invoices as on date
   >     4. Attached invoice of 30000 USD to be processed.
   >
   > Also find attached detailed reporting on the same. Let us know if you have questions
   >
   > prashant
   >
   >>
   > <OPK Infotech-Optimized- January-14_1.xlsx><Updated_SafetyNet Reco_.xlsx>

**To:**      cpa@lacpa.com[cpa@lacpa.com]
**From:**    Secured Merchants
**Sent:**    Mon 10/14/2013 6:42:28 PM
**Importance:**        Normal
**Subject:**  New Employee
**MAIL_RECEIVED:**    Mon 10/14/2013 6:42:31 PM
SM Tyler.pdf

Hello,

We need to do payroll for a new guy.

William Tyler Reitenbach

48K a year so 4K per mo gross semi monthly 16th and 1st

This time Lets make him a stub but I would like to set him with automatic ACH

for the next time.

Please send me stub.

This is his bank info.
Routing:   ███████
Account:  ███████

**EXHIBIT 366**

**To:** Paul Medina[paul@mediaurge.com]
**Cc:** Alon N[alon@mediaurge.com]; Roi R[roi@pinlogistics.com]; Tyler Reitenbach[treitenbach@pinlogistics.com]
**From:** Avico Global
**Sent:** Thur 10/24/2013 5:14:07 PM
**Importance:** Normal
**Subject:** Re: Shipping weight changed to 13 Ounces for Auravie only
**MAIL_RECEIVED:** Thur 10/24/2013 5:39:58 PM

OK
Thanks for info .. I will make sure it works and get back to you ...

AA

On Thu, Oct 24, 2013 at 2:12 PM, Paul Medina <paul@mediaurge.com> wrote:

> Avi,
> I have made the changes to all product ids to 13 ounces, please verify on your end this is done and shipping labels are at the new lower costs.
>
> Also let me know what is an avg cost for these 13 ounces so we can have an idea for cost projections on shipping.
>
> Thanks,
>
> --
> Paul B. Medina
> Executive Vice President
>
> Mobile: [redacted] | Office: 855-717-5656
> Direct: 818-200-1035 ext 7004 | Fax: 818-647-0182
> Skype: [redacted] Email: Paul@MediaUrge.com
> Website: http://www.MediaUrge.com/



> Further, this message is intended only for the designated recipient. It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you have received this message in error, please immediately notify the sender by reply e-mail and delete this message. Thank you.

 EXHIBIT 370

| | |
|---|---|
| **From:** | Robert Ungar <rmu@ungarlaw.com> |
| **Sent:** | Friday, July 26, 2013 7:25 PM |
| **To:** | Art Baram |
| **Cc:** | Alon | MediaUrge; David M; Igorlats Igor |
| **Subject:** | Secured Merchants - Collateral Assignment Agreement |
| **Attachments:** | Collateral Assignment Agreement-rev072613rmu.docx; ATT18329.htm |

Attached is the revised Collateral Assignment Agreement for your review and approval.

Robert M Ungar
rmu@ungarlaw.com
14724 Ventura Boulevard
Penthouse
Sherman Oaks, CA 91403
(310) 405-1884
(760) 484-4286

WARNING: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521. It contains information which may be privileged, confidential and exempt from disclosure under applicable law. Dissemination or copying of this e-mail and/or any attachments by anyone other than the addressee or the addressee's agent is strictly prohibited. If this electronic transmission is received in error, please notify Robert M. Ungar  immediately. Thank you.

1

**EXHIBIT 557**

# COLLATERAL ASSIGNMENT

THIS COLLATERAL ASSIGNMENT (this "Assignment"), dated as of _____, 2013, made by _____, a California limited liability company ("Assignor"), in favor of _____, a California limited liability company ("Assignee").

## RECITALS

A.     Assignor and Assignee are members of Secure Merchants, LLC, a California limited liability company (the "Company");

B.     Assignor and Assignee are, and will remain, members, shareholders, partners and co-owners of certain other entities and companies now owned and hereafter acquired (the "Co-Owned Companies");

C.     It is a condition precedent to the Assignee's making any loans or otherwise extending credit to the Company under the Company Operating Agreement of even date herewith that the Assignor execute and deliver to the Assignee (i) a letter agreement of even date herewith (the "Letter Agreement") wherein Assignor has agreed to a non-recourse Payment Obligation to Assignee (the "Payment Obligation") in connection with a loan made by Assignee to the Company, and (ii) a collateral assignment of all of Assignor's interests in all Co-Owned Companies substantially in the form hereof;

NOW, THEREFORE, for and in consideration of the foregoing and for other good and valuable consideration the receipt of which is hereby acknowledged, the parties agree as follows:

1. DEFINITIONS.

Capitalized terms used in this Agreement shall have the meanings specified above or elsewhere in this Agreement

2. ASSIGNMENT

2.1.  Grant of Security Interest.  The Assignor hereby pledges, grants a security interest in, mortgages, and collaterally assigns and transfers to the Assignee, as security for the payment and performance in full when due of the Payment Obligation, all the right, title and interest of the Assignor in and to the Assignor's interests in all Co-Owned Companies, wherever located and whether now owned or hereafter acquired or arising, including, without limitation, (a) all payments or distributions, whether in cash, property or otherwise, at any time owing or payable to the Assignor on account of its interest as a shareholder and/or partner in all Co-Owned Companies or in the nature of a management

Collateral Assignment Agreement                                                                                   *Page 1*

or other fee paid or payable by any and all Co-Owned Companies to the Assignor, (b) all of the Assignor's rights and interests under each partnership and/or shareholder agreement of all Co-Owned Companies, including all voting and management rights and all rights to grant or withhold consents or approvals, (c) all rights of access and inspection to and use of all books and records, including computer software and computer software programs, of all Co-Owned Companies, (d) all other rights, interests, property or claims to which the Assignor may be entitled in its capacity as a partner and/or shareholder of all Co-Owned Companies, and (e) all proceeds and products of any of the foregoing (all of the foregoing rights, title and interest described in the foregoing clauses (a) through (e) being herein referred to collectively as the "Assigned Interests").

2.2.  Waiver of Certain Co-Owned Companies Agreement Provisions.

The Assignor irrevocably waives any and all provisions of any and all Co-Owned Companies agreements that (a) prohibit, restrict, condition or otherwise affect the grant hereunder of any lien, security interest or encumbrance on any of the Assigned Interests or any enforcement action which may be taken in respect of any such lien, security interest or encumbrance, or (b) otherwise conflict with the terms of this Assignment.

2.3.  Authorization to File Financing Statement.

The Assignor hereby authorizes the Assignee to file in any Uniform Commercial Code filing office a financing statement naming the Assignor as the debtor and indicating the Assigned Interests as the collateral. The financing statement may indicate some or all of the collateral on the financing statement, whether specifically or generally.

3.  REPRESENTATIONS, WARRANTIES AND COVENANTS OF ASSIGNOR.

3.1.  Representations and Warranties.

The Assignor hereby represents and warrants to Assignee as follows:

(a)   The Assignor is a duly constituted partner or shareholder, as applicable, of all Co-Owned Companies.

(b)    The Assignor has full right, power and authority to make this Assignment (including the provisions enabling the Assignee or its nominee, upon the occurrence of an Event of Default, to exercise the voting or other rights provided for herein), under each Co-Owned Companies' agreement and under applicable law, without the consent, approval or authorization of, or notice to, any other person, including any regulatory authority or any person having any interest in the Co-Owned Companies; and provided that, Assignor shall obtain required consents, if any, of future Co-Owned Companies. .

(c)    The execution, delivery, and performance of this Assignment and the transactions contemplated hereby (i) have been duly authorized by all necessary LLC proceedings of

Collateral Assignment Agreement                                                        *Page 2*

the Assignor, (ii) do not conflict with or result in any breach or contravention of any applicable law, regulation, judicial order or decree to which Assignor is subject, (iii) do not conflict with or violate any provision of the limited liability company document or agreement of the Assignor, and (iv) do not violate, conflict with, constitute a default or event of default under, or result in any rights to accelerate or modify any obligations under any agreement, instrument, lease, mortgage or indenture to which Assignor is party or subject, or to which any of its assets are subject.

(d)   This Assignment has been duly executed and delivered by the Assignor and is the legal, valid, and binding obligation of the Assignor enforceable against it in accordance with the terms hereof.

(e)   The Assignor is the sole, direct, legal and beneficial owner of all Assigned Interests and has good and marketable title thereto, free and clear of any lien, security interest, mortgage or other encumbrance, other than the liens and security interest granted to the Assignee hereunder; and the liens and security interests hereunder constitute valid and perfected first priority liens and security interests.

3.2.   Covenants. The Assignor covenants to the Assignee as follows:

(a)   Until the Payment Obligation has been discharged, and subject to the terms of any Co-Owned Company agreement or other governing documents, tThe Assignor will not permit or agree to any amendment or modification of any Co-Owned Companies agreement  or other governing document, or waive any rights or benefits thereunder without the prior written consent of the Assignee.

(b)   Until the Payment Obligation has been discharged, and subject to the terms of any Co-Owned Company agreement or other governing documents, wWithout the prior written consent of the Assignee, the Assignor will not sell, dispose of or assign, beneficially or of record, or grant, create, permit or suffer any lien or encumbrance on, any of the Assigned Interests, or withdraw from any Co-Owned Companies.

(c)   The Assignor will comply with all laws, regulations, judicial orders or decrees applicable to the Assigned Interests or any portion thereof, and perform and observe its duties with respect to the Assigned Interests.

(d)   The Assignor will advise the Assignee promptly, in reasonable detail, of (i) any lien, charge, claim or other encumbrance made or asserted against any of the Assigned Interests; (ii) any material change in the composition of the Assigned Interests; (iii) the occurrence of any other event or condition which to its knowledge would have a material effect on the validity, perfection or priority of the liens and security interests granted hereunder; and (iv) any bankruptcy or litigation case or proceeding relating to any of the Assigned Interests.

Collateral Assignment Agreement                                                    *Page 3*

(e)   Until the Payment Obligation has been discharged, and subject to the terms of any Co-Owned Company agreement or other governing documents, t~~T~~he Assignor will not change its (i~~i~~) type or jurisdiction of organization, (ii) organizational identification number without giving prior written notice to the Assignee and taking such actions as may be necessary or appropriate in the reasonable opinion of the Assignee duly to perfect and continue the perfection of the Assignee's first priority lien and security interest in the Assigned Interests pursuant to the applicable laws and (iii) name in any matter that might make any financing statement filed hereunder misleading or invalid unless the Assignor shall have notified the Assignee thereof and taken all such actions as may be necessary or appropriate in the reasonable opinion of the Assignee to make any financing statement filed in favor of the Assignee not misleading or invalid.

(f)   The Assignor shall do or cause to be done all things necessary to preserve, renew and keep in full force and effect its legal existence and, subject to the terms of any Co-Owned Company agreement or other governing documents, that of the Co-Owned Companies, the power and authority of each of the Assignor and Co-Owned Companies to own its property and carry on its business, the qualification of each of the Assignor and Co-Owned Companies to do business in its jurisdiction of organization, and the qualification of each of the Assignor and Co-Owned Companies to do business in each other jurisdiction where such qualification is necessary except where the failure so to qualify would not have a material adverse effect on the rights and interests of the Assignee hereunder.

4.  RIGHTS OF ASSIGNEE.

4.1.  Assignee Appointed Attorney-in-Fact.  The Assignor hereby irrevocably constitutes and appoints the Assignee, its successors and assigns, its true and lawful attorney-in-fact, with full power and authority and with full power of substitution, at the expense of the Assignor, either in the Assignee's own name or in the name of the Assignor, at any time and from time to time, in each case as the Assignee in its sole discretion may determine (a) to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or desirable to accomplish the purposes of this Agreement and (b) upon the occurrence and during the continuance of an Event of Default:

(i) to take any action and execute any instruments that such attorney-in-fact may deem necessary or advisable to accomplish the purposes hereof;

(ii) to ask, demand, collect, receive, receipt for, sue for, compound, and give acquittance for any and all sums or properties that may be or become due, payable, or distributable in respect of the Assigned Interests or that constitute a part thereof, with full power to settle, adjust, or compromise any claim thereunder or therefor as fully as the Assignor could do;

Collateral Assignment Agreement

*Page 4*

(iii) to endorse or sign the name of the Assignor on all instruments given in payment or in part payment thereof and all documents of satisfaction, discharge, or receipt required or requested in connection therewith; and

(iv) to file or take any action or institute any case or proceeding that the Assignee may deem necessary or appropriate to collect or otherwise realize upon any or all of the Assigned Interests, or effect a transfer thereof, or that may be necessary or appropriate to protect and preserve the right, title, and interest of the Assignee in and to the Assigned Interests and the security intended to be afforded hereby.

4.2.   No Assignment of Duties. This Assignment constitutes an assignment of the Assigned Interests and the other Assigned Interests only and not an assignment of any duties or obligations of the Assignor with respect thereto, and by its acceptance hereof and whether or not the Assignee shall have exercised any of its rights or remedies hereunder, the Assignee does not undertake to perform or discharge, and shall not be responsible or liable for the performance or discharge of, any such duties or responsibilities, including, without limitation, for capital calls. The Assignor agrees that, notwithstanding the exercise by the Assignee of any of its rights hereunder, the Assignor shall remain liable for the full and prompt performance of all of the Assignor's obligations and liabilities under all Co-Owned Companies agreements.  Without limiting the generality of the foregoing, the Assignee shall have no fiduciary duty to the Assignor, whether by virtue of the security interests and liens hereunder, or any enforcement action in respect of such security interests and liens.

5.  EVENT OF DEFAULT.

Any default under the Payment Obligation shall constitute an "Event of Default."

6.  REMEDIES.

6.1.   Remedies. During the continuance of an Event of Default, the Assignee shall have, in addition to the rights, powers and authorizations to collect the sums assigned hereunder, all rights and remedies of a secured party under the Uniform Commercial Code and under other applicable law with respect to the Assigned Interests, including, without limitation, the following rights and remedies:
(a)     if the Assignee so elects and gives written notice of such election to the Assignor, the Assignee may, in its sole discretion, (i) exercise any management or voting rights relating to the Assigned Interests (whether or not the same shall have been transferred into its name or the name of its nominee or nominees) for any lawful purpose, (ii) give all consents, waivers, approvals, and ratifications in respect of such Assigned Interests, and (iii) otherwise act with respect thereto as though it were the outright owner thereof (the Assignor hereby irrevocably constituting and appointing the Assignee the proxy and attorney-in-fact of the Assignor, with full power and authority of substitution, to do so);

Collateral Assignment Agreement

*Page 5*

(b)      the Assignee may, in its sole discretion, demand, sue for, collect, compromise, or settle any rights or claims in respect of any Assigned Interests, as attorney-in-fact pursuant to this Assignment or otherwise;

(c)      the Assignee may, in its sole discretion, sell, resell, assign, deliver, or otherwise dispose of any or all of the Assigned Interests, for cash or credit or both and upon such terms, in such manner, at such place or places, at such time or times, and to such persons or entities as the Assignee thinks expedient, all without demand for performance by the Assignor or any notice or advertisement whatsoever except as expressly provided herein or as may otherwise be required by applicable law; and

(d)      the Assignee may, in its sole discretion, cause all or any part of the Assigned Interests held by it to be transferred into its name or the name of its nominee or nominees.

6.2.  Remedies Not Exclusive. No single or partial exercise by the Assignee of any right, power or remedy hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or remedy. Each right, power and remedy herein specifically granted to the Assignee or otherwise available to it shall be cumulative, and shall be in addition to every other right, power, and remedy herein specifically given or now or hereafter existing at law, in equity, or otherwise. Each such right, power and remedy, whether specifically granted herein or otherwise existing, may be exercised at any time and from time to time and as often and in such order as may be deemed expedient by the Assignee in its sole discretion.

6.3.  Further Assurances.  The Assignor further agrees to do or cause to be done all such other acts and things as may be reasonably necessary to make any sales of any portion or all of the Assigned Interests valid and binding and in compliance with any and all applicable laws (including, without limitation, the Securities Act, the Securities Exchange Act of 1934, as amended, the rules and regulations of the Securities and Exchange Commission applicable thereto and all applicable state securities or "blue sky" laws), regulations, orders, writs, injunctions, decrees or awards of any and all courts, arbitrators or governmental instrumentalities, domestic or foreign, having jurisdiction over any such sale or sales, all at the Assignor's expense. The Assignor further agrees that a breach of any of the covenants contained in this remedies section will cause irreparable injury to the Assignee, that Assignee has no adequate remedy at law in respect of such breach and, as a consequence, agrees that each and every covenant contained in this section shall be specifically enforceable against the Assignor by the Assignee and the Assignor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants.

6.4.  Title. The Assignor further acknowledges its obligation for payment of any deficiency remaining beyond the amount of the sale or other disposition price of the Assigned Interests, or any of them, less any payment or expenses incurred by the Assignee in connection with such sale or other disposition, and the Assignor will promptly pay the amount of any such deficiency to the Assignee.

Collateral Assignment Agreement

*Page 6*

7.  ASSIGNMENT NOT AFFECTED BY OTHER ACTS.

The Assignor acknowledges and agrees that the security interests and collateral assignments herein provided for shall remain in full force and effect and shall not be impaired by any acceptance by the Assignee of any other collateral security for or guaranty of the Payment Obligation, or by any failure or neglect or omission on the part of the Assignee to realize upon, collect or protect the Payment Obligation or any Assigned Interests. The security interests and collateral assignments herein provided for shall not in any manner be affected or impaired by any renewal, extension, modification, amendment, waiver, or restatement of the Payment Obligation or of any collateral security therefor, or of any guaranty thereof, the Assignor hereby waiving any and all suretyship defenses to the extent otherwise applicable. In order to sell or otherwise dispose of or otherwise realize upon the security interests and assignments herein granted and provided for, and exercise the rights granted the Assignee hereunder and under applicable law, there shall be no obligation on the part of the Assignee at any time to first resort for payment to any guarantors of the Payment Obligation or any part thereof or to resort to any other collateral security, property, liens or other rights or remedies whatsoever, and the Assignee shall have the right to enforce the security interests and collateral assignments herein provided for irrespective of whether or not other proceedings are pending for realization upon or from any of the foregoing.

8.   CONDITIONAL ASSIGNMENT AS SECURITY.

Notwithstanding anything to the contrary set forth in this Agreement, provided that no Event of Default exists, Assignor shall continue to have and hold all rights and benefits under the Assigned Interests as a shareholder and/or member in all Co-Owned Companies, including but not limited to the right to receive distributions, dividends, and profits, and the right to vote the Assigned Interests.

98.  MISCELLANEOUS.

98.1.  Additional Instruments and Assurances. The Assignor hereby agrees, at its own expense, to execute and deliver, from time to time, any and all further, or other, instruments, and to perform such acts, as the Assignee may reasonably request to effect the purposes of this Assignment and to secure to the Assignee the benefits of all rights and remedies conferred upon the Assignee by the terms of this Assignment.

98.2.  Release. If the Payment Obligation shall have been discharged, ~~paid in full~~, this Assignment and lien shall terminate and the Assignee shall, upon demand and at the sole expense of the Assignor, release this Assignment and the lien hereof by proper instrument or instruments, at the request and expense of the Assignor.

Collateral Assignment Agreement

*Page 7*

98.3.  Assignee's Exoneration. Under no circumstances shall the Assignee be deemed to assume any responsibility for or obligation or duty with respect to any part or all of the Assigned Interests of any nature or kind or any matter or proceeding arising out of or relating thereto, other than (a) to exercise reasonable care in the physical custody of the Assigned Interests and (b) if an Event of Default shall have occurred and be continuing, to act in a commercially reasonable manner in exercising its rights and remedies with respect to the Assigned Interests. Subject to the foregoing, the Assignee shall not be required to take any action of any kind to collect, preserve or protect its or the Assignor's rights in the Assigned Interests.

98.4.   No Waiver. Any term of this Assignment may be amended or modified with, but only with, the written consent of the Assignor and the Assignee. Any term of this Assignment may be waived by a writing executed by the party to be charged with such waiver. No act, failure, or delay by the Assignee shall constitute a waiver of its rights and remedies hereunder or otherwise. No single or partial waiver by the Assignee of any default, right, or remedy that it may have shall operate as a waiver of any other default, right, or remedy or of the same default, right, or remedy on a future occasion.

98.5.   Waiver By Assignor. The Assignor hereby waives presentment, notice of dishonor, and protest of all instruments included in or evidencing the Payment Obligation or the Assigned Interests, and any and all other notices and demands whatsoever (except as expressly provided herein or in the Company Operating Credit Agreement or for notices required in connection with judicial proceedings).

98.6.   Notice. All notices, requests, and other communications hereunder shall be made and effective in the manner and at the address set forth in §21 of thein the Company Operating  Credit Agreement or at such other address as may be set forth or in a notice from the notifying party to the other parties hereto.

98.7.   Overdue Amounts. Until paid, all amounts due and payable by the Assignor hereunder shall be a debt secured by the Assigned Interests and shall bear, whether before or after judgment, interest at the rate of interest for overdue principal set forth in the Company Operating Agreement.

98.8.   Governing Law; Consent to Jurisdiction.  This Assignment shall be governed by, and construed in accordance with, the substantive law of the State of California without regard to the application of choice of law principles. Assignor and Assignee hereby select the Los Angeles Superior Court at Los Angeles, California as the exclusive forum for the adjudication of any dispute arising from the subject matter or terms of this Assignment, and hereby consent to the personal jurisdiction of the state courts of the State of California.

98.9   Attorneys' Fees.  In the event any arbitration, litigation or other legal proceeding becomes necessary to enforce any of Assignee's rights arising out of or relating to this Agreement, Assignee shall be entitled to recover its reasonable attorneys' fees and all other costs and expenses from the Assignor.

Collateral Assignment Agreement

*Page 8*

98.10.   Severability and Enforceability. All provisions hereof are severable and the invalidity or unenforceability of any of such provisions shall in no manner affect or impair the validity and enforceability of the remaining provisions hereof.

98.11.   Successors and Assigns. This Assignment shall be binding upon the Assignor and upon the legal representatives, successors and assigns of the Assignor and shall inure to the benefit of the Assignee and its successors and assigns.

98.12.   Counterparts. This Assignment may be executed in any number of counterparts, each constituting an original, but all together one and the same instrument.

98.13.   Entire Agreement. This Assignment and any other document executed in connection herewith or therewith express the entire understanding of the parties with respect to the transactions contemplated hereby. Neither this Assignment nor any terms hereof may be changed, waived or terminated except by a writing signed by each party hereto.


      IN WITNESS WHEREOF, the undersigned have duly executed and delivered this Assignment as of the day and year first above written.

**ASSIGNOR:**

_____
a California Limited Liability Company

By:    _____
        _____


**ASSIGNEE:**

_____
a California Limited Liability Company

By:    _____
        _____


Collateral Assignment Agreement

*Page 9*

Cc:      Tyler R.[Tyler@chargebackarmor.com]; David M[david@mediaurge.com]; Alon | MediaUrge[alon@mediaurge.com]; Paul Medina[paul@mediaurge.com]; Eugene S[eugene@vastpay.com]; Igor[igorlats@gmail.com]
To:      Tyler R.[Tyler@chargebackarmor.com]
From:   David Nichols
Sent:   Fri 9/26/2014 4:54:43 PM
Importance:   Normal
Subject:   Re: chargebacks statistics September Leor Systems
MAIL_RECEIVED:   Fri 9/26/2014 4:54:47 PM

We set all of these up separately so you can proceed that way with the cb's

Thanks,

David Nichols
david@vastpay.com
Skype: ▮▮▮▮▮▮▮▮▮▮

On Sep 26, 2014, at 12:35 PM, "Tyler R." <Tyler@chargebackarmor.com> wrote:

> David,
> Thanks, I would like to know if each of the 3 MID's in the gateway are all under the same RMC (Avian) or if they are all under different corps.  Kristina was saying that ALL MID's under the same corp will have their visa and mc cbs totaled and the count cannot reach 200 visa or 100 mc across all MID's under and RMC.  Please let me know so we can figure out how to best proceed.
>
> Cheers,
>
>
> # Tyler Reitenbach
> Senior Account Executive
> Chargeback Armor, LLC
> Skype: ▮▮▮▮▮▮▮▮▮▮
> Support: 800.976.7027
>
> Email: Tyler@chargebackarmor.com



> Privacy Notice: this message is intended only for the designated recipient. It contains confidential information and is subject to attorney-client privilege and other confidentiality protections. If you have received this message in error, please notify the sender and delete this message. Thank you.

On Fri, Sep 26, 2014 at 12:33 PM, David N <david@vastpay.com> wrote:

> Tyler,
>
> Let me know if you need any info or support from our end.
>
> Thank you,
>
> David Nichols
> Vastpay, LLC
> Office: +1 (800) 841-9885

EXHIBIT 563

Direct: +1 (818) 616-8654
Fax: +1 (818) 748-9168
skype: ███████████
mail: david@vastpay.com


<image001.png>


Confidentiality Notice: this message is intended only for the designated recipient. It may contain confidential or proprietary information and is subject to the attorney-client privilege and other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you have received this message in error, please immediately notify the sender by reply e-mail and delete this message. Thank you.

On Fri, Sep 26, 2014 at 12:31 PM, Tyler R. <Tyler@chargebackarmor.com> wrote:

Yeah I know I just got off the phone with Kristina.  I put all live traffic (40 orders per day) into that MID.  We only need 40-50 or so to drop under 10% so we will be just fine.  I'll probably let it run for a few days like that and keep in touch with Kristina to keep an eye on it so we can get it down in the ball park of the other MIDs which is around 2-4%.

Cheers,


**Tyler Reitenbach**
Senior Account Executive
Chargeback Armor, LLC
Skype: ████████████
Support: 800.976.7027

Email: Tyler@chargebackarmor.com


Privacy Notice: this message is intended only for the designated recipient. It contains confidential information and is subject to attorney-client privilege and other confidentiality protections. If you have received this message in error, please notify the sender and delete this message. Thank you.

On Fri, Sep 26, 2014 at 12:28 PM, David M <david@mediaurge.com> wrote:

It was Count Tyler.

This is the MID we need to pump sales into ASAP

| Leor Systems | 3940038orderleor | VISA | 22 | 185 |

On Fri, Sep 26, 2014 at 10:59 AM, Alon | MediaUrge <alon@mediaurge.com> wrote:

TEAM: VERY IMPORTANT

I spoke to Kristina from Pago Gateway regarding our chargeback thresholds and percentage [document attached here below]...
She says that the bank being audited and will be slowly closing all the merchants that are getting more than the 10% chargeback threshold

**EXHIBIT 563**

It looks like there are merchant accounts in there that show we are at  20% chargeback ratio, and even the ones we're using are way too high.... we need to get some transactions in there to lower the percentage.

Please review and let me know what's up... ASAP

Best Regards,

Alon Nottea
Rainmaker | MediaUrge
skype: ████
email: alon@mediaurge.com

Confidentiality Notice: this message is intended only for the designated recipient. It may contain confidential or proprietary information and is subject to the attorney-client privilege and other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you have received this message in error, please immediately notify the sender by reply e-mail and delete this message. Thank you.

---------- Forwarded message ----------
From: **Kristina Perez** <kristina@pagotechnology.com>
Date: Fri, Sep 26, 2014 at 10:39 AM
Subject: chargebacks statistics September Leor Systems
To: alon@mediaurge.com
Cc: Karina Brunenieks <karina@pagotechnology.com>

Hi Alon,

Please find below September first two weeks chargeback statistics. Karina will include you in to the weekly mailing list so you can have reporting available to you weekly.

| NAME | BANK MID | DESCRIPTOR | CARD TYPE | CB COUNT | SALE COUNT | CB COUNT RATIO | CB AMOUNT | SALE AMOUNT |
|---|---|---|---|---|---|---|---|---|
| Leor Systems | 3939428 | leorkit | MC | 7 | 200 | 3.5 | 629.51 | 6000 |
| Leor Systems | 3939428 | leorkit | VISA | 18 | 1162 | 1.55 | 1414.85 | 10455 |
| Leor Systems | 3940038 | orderleor | MC | 18 | 291 | 6.19 | 1542.3 | 1436 |
| Leor Systems | 3940038 | orderleor | VISA | 22 | 185 | 11.89 | 1561.76 | 1600 |
| Leor Systems | 3940608 | leorsys | MC | 11 | 352 | 3.13 | 989.23 | 4094 |
| Leor Systems | 3940608 | leorsys | VISA | 29 | 1103 | 2.63 | 2137.2 | 4781 |

563 - 3                                   **EXHIBIT 563**

5

MC          36
VISA        69

Regards,

Kristina Perez

www.pagotechnology.com

## <BF7BBAB2-3DC1-49FC-9E87-485CB88D2485[15].png><683A3900-4EE8-437A-BEB0-8A30788A71F7[15].png><B41D4EDC-5287-4E72-8C61-66DD2AA80E2B[15].png>

Though nobody can go back and make a new beginning... Anyone can start over and make a new ending. **Chico Xavier** 1969

**IMPORTANT WARNING:** This electronic transmission is intended for use of the person or entity to which it is addressed.  If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution of this information is strictly prohibited.  Please notify the sender immediately to arrange for the return or destruction of these misdirected documents.  This message may contain confidential material.

**EXHIBIT 563**