ROBERT L. ESENSTEN (SBN 65728)
resensten@esenstenlaw.com
RANDI R. GEFFNER (SBN 116574)
rgeffner@esenstenlaw.com
**ESENSTEN LAW**
12100 Wilshire Boulevard, Suite 1660
Los Angeles, California 90025
Telephone:   (310) 273-3090
Facsimile:    (310) 207-5969

Attorneys for Defendants DORON NOTTEA
and MOTTI NOTTEA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.:  2:15-CV-04527-GW (PLAx) |
| Plaintiff, | *Assigned to the Honorable George Wu, Courtroom 10* |
| v. | |
| BUNZAI MEDIA GROUP, INC., *et al.*, | **DEFENDANT DORON NOTTEA'S RESPONSE TO FEDERAL TRADE COMMISSION'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |
| | **DATE:**    **May 23, 2016** |
| | **TIME:**    **8:30 a.m.** |
| | **CTRM.:**   **10** |

        Pursuant to Local Rule 56-1, Defendant Doron Nottea respectfully submits

the following Response to the Federal Trade Commission's Statement of

Uncontroverted Facts and Conclusions of Law in Support of its Motion for

Summary Judgment:

///

///

///

///

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraphs 1 – 33 | Irrelevant to Defendant Doron Nottea |
| Paragraph 34<br><br>Defendant **Doron Nottea** is or has been a manager at BunZai and Pinnacle Defendant Doron Nottea resides in this district and, in connection with the matters alleged herein, transacted business in this district and throughout the United States. Dkt. 244 ¶ 34 | Admit that Doron Nottea ("Doron") resides in this District and has transacted his adult content business in this district. The balance of this paragraph is denied. Declaration of Doron Nottea ("Doron Decl.") ¶¶11-12. |
| Paragraph 34(a)<br><br>Doron Nottea possessed a book of credit cards and signed blank checks for Zen Mobile Media, Inc. Dkt. 120, at 32, 40. | Admit that credit cards and checks were maintained by Doron as his responsibilities as a bookkeeper to facilitate the payment of certain expenses, consistent with his functions as a bookkeeper.  Doron Decl., ¶29; Declaration of Alon Nottea ("Alon Decl"), ¶11; Decl., of Danny Howard ("Howard Decl."), ¶8. |
| Paragraph 34(b)<br><br>Alon Nottea, Roi Reuveni, and Motti Nottea, Igor Latsanovski, CalEnergy Inc., and Chargeback Armor, Inc. stated that Doron Nottea sent and received emails using the email account dornon@doron.us. Exs. 910 ¶ 257; 911¶ 257; 913 ¶ 257; 914 ¶ 257; 915¶ 257; 917 ¶ 257 | Admit that Doron owns and uses the email address of doron@doron.us.  Deny that hearsay evidence can be used by the FTC to prove any alleged fact. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 34(b)(i)<br><br>Doron Nottea sent and received emails from the email address globalmediausa@gmail.com. Exs. 942; 943; 52. | Admit.<br><br>Doron does not recall ever seeing Ex. 52 prior to this litigation.  Doron Decl., ¶44. |
| Paragraph 34(b)(ii)<br><br>Doron Nottea sent and received email from the email address xposedinc@gmail.com. Ex. 551, at 109:15-109:22 | Admit. |
| Paragraph 34(c)<br><br>Chargeback Armor, Inc. admitted that Doron Nottea sent and received messages using the Skype account name Accounting818. Ex. 917 ¶ 258 | Objection: hearsay, lack of foundation. |
| Paragraph 34(d)<br><br>Doron Nottea owned Corporate Defendants that participated in the common enterprise. | Objection: the terms "common enterprise" and "participated" which are vague and ambiguous, lack of foundation, assumes facts not in evidence.<br><br>Deny that Doron had any ownership interest in any entity defendant other than Secured Commerce, LLC.  Doron Decl., ¶¶16, 28; Declaration of Alon Nottea ("Alon Decl"), ¶11. |
| Paragraph 34(d)(i)<br><br>Andrew Stanley, a former employee of both BunZai and Pinnacle, testified that Doron Nottea held himself out as the owner of both BunZai and Pinnacle Ex. 554, at 65:20-66:7; | Objection: hearsay, lack of foundation, irrelevant lack of personal knowledge and speculation<br><br>Assumes facts not in evidence as Exs. 35 and 43 do not pertain to Doron holding himself out as owner of BunZai or |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| 86:17-87-7; *see also* Exs. 35; 43; 544 | Pinnacle.<br><br>Deny that Doron held himself out as the owner of BunZai or Pinnacle.  Doron Decl., ¶¶11-12. |
| Paragraph 34(d)(ii)<br><br>An individual emails Doron Nottea "want[ing] to sell cosmetics on [Nottea's] distribution channel." Ex. 35 | Objection: hearsay, irrelevant, lack of foundation.<br><br>Deny that Doron wanted to or in fact did, sell cosmetics over the internet. Doron Decl., ¶43. |
| Paragraph 34(d)(iii)<br><br>Stephan Bauer appeared to inform Nottea that he can use SBM Management, Inc. for Nottea's marketing "hard core online trial and offers biz." Ex. 43 | Objection: speculation; irrelevant.<br>The selling of any "hard core" items refers to the adult content business of Doron only. Doron Decl., ¶40. |
| Paragraph 34(d)(iv)<br><br>Alon Nottea emails Doron Nottea profit spreadsheet of BunZai and states they need to go through it together. Ex. 518 | Objection: compound.<br><br>Admit that possessing or preparing spreadsheets were a function of Doron's bookkeeping services.  Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(d)(v)<br><br>Doron Nottea provided and received payroll reports for Bunzai. Ex. 544 | Admit that providing and receiving payroll reports were a function of Doron's bookkeeping services.  Doron Decl., ¶32; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(d)(vi)<br><br>Doron Nottea was apprised of incorporation documents relating to both BunZai and Pinnacle. *See* Exs. | Admit that receiving corporate documents was a function of Doron's bookkeeping services.  Doron Decl., ¶34; Alon Decl., ¶11; Howard Decl., ¶8. |

4

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| 299; 343 | Doron does not recall ever seeing Ex. 343 prior to this litigation.  Doron Decl., ¶44. |
| **Paragraph 34(d)(vii)**<br><br>Doron Nottea was apprised of incorporation documents for other Corporate Defendants as well. Exs. 41; 374; 505 | Objection: vague and ambiguous as to the terms "apprised", "other Corporate Defendants" and "as well".<br><br>Exs. 374 and 501 were not attached to the documents submitted by the FTC.<br><br>Ex. 41 does not identify any entity relevant to this matter. |
| **Paragraph 34(d)(viii)**<br><br>In initial structuring decisions relating to the common enterprise, Doron Nottea was directly involved with Alon Nottea and Kristopher Bond in determining the enterprise's needs. Ex. 483 | Objection: compound, speculation and vague and ambiguous as to the terms "structuring" "enterprise".<br>The email does not identify an entity that is related to this matter.<br><br>Deny that Doron was involved in determining any needs of the alleged enterprise.  Doron Decl., ¶7; Alon Decl., ¶¶8, 15; Declaration of Roi Reuveni ("Reuveni Decl.") ¶4. |
| **Paragraph 34(d)(ix)**<br><br>David Davidian emailed Alon Nottea, Doron Nottea, and Kristopher Bond regarding further consultations in structuring the enterprise. Ex. 483 | Objection: vague and ambiguous as to the term "enterprise".<br><br>Deny that Doron was involved in structuring the enterprise or that the exhibit supports the conclusion as stated by the FTC.  Doron Decl., ¶7. |
| **Paragraph 34(d)(x)**<br><br>Doron Nottea co-owned Secured Commerce LLC with Alan Argaman. *See* Dkt. #120, at 8 | Admit. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 34(e)<br><br>Doron Nottea managed employees of the common enterprise | Deny.  Doron did not manage any employees other than the employees of his adult business.  Doron did work with other employees who also did bookkeeping functions.  Doron Decl., ¶13; Alon Decl., ¶¶8, 11 and 15; Declaration of Randi R. Geffner ("Geffner Decl.") ¶2. |
| Paragraph 34(e)(i)<br><br>Leor Arazy, human resources manager for Pinnacle and BunZai, included Doron Nottea on an email sending out a salary report by department for Pinnacle. Ex. 38 | Admit that Doron received salary reports as a function of his bookkeeping services. Doron Decl., ¶32; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(e)(ii)<br><br>Leor Arazy sent Doron Nottea the company's paycheck advance policy and requests that he let her know if he wants any changes. Ex. 84 | Admit that Doron received loan polices as a function of his bookkeeping services. Doron Decl., ¶32; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(e)(iii)<br><br>Doron Nottea received payroll information for Corporate Defendants. Exs. 345; 346; 353 | Admit that Doron received payroll information as a function of his bookkeeping services. Doron Decl., ¶¶27, 32; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(e)(iv)<br><br>Doron Nottea sent "new employee" information for shell corporations to CPA David Davidian. Ex. 433 | Objection: vague and ambiguous, and argumentative, as to the term "shell corporations".<br><br>Ex. 433 was not sent to Doron, as stated by the FTC.<br><br>Possessing employee information was a function of Doron's services as a |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| | bookkeeper.  Doron Decl., ¶¶27, 33; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Paragraph 34(e)(v)**<br><br>Defendant Paul Medina testified in his deposition that he reported to Doron's employees or assistants for anything financially related for the various Corporate Defendants. Ex. 946, at 28:6-28:13; Ex. 946, at 27:8-27:21 | Objection: hearsay, lack of foundation, vague.<br><br>Deny that Doron had any employees, yet Doron did work with others who also performed bookkeeping functions. Admit that Doron possessed financial information as a function of his bookkeeping services. Doron Decl., ¶ 13; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Paragraph 34(e)(vi)**<br><br>Paul Medina emailed Doron Nottea a list of current merchant accounts selling AuraVie. *See* Ex. 384 | Admit that Doron possessed information relating to merchant accounts as a function of his bookkeeping services. Doron Decl., ¶¶27, 35; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Paragraph 34(e)(vii)**<br><br>Former employees Nastassia Yalley and Philip Camerino were Doron's "assistants." Ex. 946, at 27:8-27:21 | Objection: hearsay and lack of foundation.<br><br>Non-Defendants Nastassia Yalley and Philip Camerino performed bookkeeping services prior to and during the time that Doron performed bookkeeping functions., Doron Decl., ¶14; Alon Decl., ¶11. |
| **Paragraph 34(e)(viii)**<br><br>Defendant Medina also provided Defendant Doron Nottea with commission calculations to payment the straw "owners" of the various Corporate Defendants, who were paid. Exs. 946, at 44:10-20; 166 | Objection, vague and ambiguous as to the term "straw owners", argumentative. Deny that payments were made.<br><br>Admit that Doron possessed payment information from merchant accounts as a function of his bookkeeping services. Doron Decl., ¶¶27, 35; Alon Decl., ¶11; Howard Decl., ¶8. |

7

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 34(e)(ix)<br><br>Nastassia emailed Defendants Doron Nottea and Paul Medina a list of merchant accounts associated with BunZai. Ex. 546 | Admit that Doron possessed information regarding merchant accounts as a function of his bookkeeping services. Doron Decl., ¶¶27, 35; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(f)<br><br>Defendant Alon Nottea also kept Doron apprised of day-to-day higher level issues concerning the enterprise. | Objection: vague and ambiguous as to the terms "day-to-day higher level issues", lack of foundation.<br>Deny.  Alon Decl., ¶11. |
| Paragraph 34(f)(i)<br><br>Meetings and discussions relating to negotiating Canadian shipping rates sent to Doron's email, xposedinc@gmail.com. Ex. 174 | Admit that Doron used the email xposedinc@gmail.com for his adult content business.  Doron Decl., ¶37.<br><br>Deny that Doron attended meetings or had discussions regarding Canadian shipping rates.  Doron Decl., ¶6. |
| Paragraph 34(f)(ii)<br><br>Discussions relating to resolving IRS audits and workers' compensation audits. Exs. 350; 376 | Objection, vague and ambiguous. Receiving information regarding any payables was a function of Doron's bookkeeping services.  Doron Decl., ¶27; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(f)(iii)<br><br>Operationally, Alon Nottea placed Doron Nottea in charge of many aspects of managing the Indian call centers associated with the scheme, telling his Indian counterpart that "Doron will manage the corporation and DBA Setup as well as accounting, disbursement of funds back to India." Ex. 579 | Objection: argumentative, lack of foundation.<br><br>Deny.  Ex. 579 does not support what the FTC claims it does.<br><br>Deny that Doron knew of, managed or performed any services with an Indian call center or prepared a DBA.  Doron Decl., ¶39; Alon Decl., ¶¶8, 15. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| **Paragraph 34(f)(iv)**<br><br>Doron forwarded contractual agreements such as the confidentiality agreements required to start negotiations for third party services. Ex. 271 | Objection: Ex. 271 does not support what the FTC claims it does, vague and ambiguous.<br>Deny. |
| **Paragraph 34(f)(v)**<br><br>Doron even managed basic documentation such as insurance documents relating to minor advertising engagements with third parties. Ex. 308 | Objection: Ex. 308 does not support what the FTC claims it does, argumentative, vague and ambiguous as to the terms "such as" and "third parties".<br><br>Possessing insurance information was a function of Doron's bookkeeping functions. Doron Decl., ¶¶27, 35; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Paragraph 34(f)(vi)**<br><br>Doron received an email about renewing P.O. Box relating to Dellure. Ex. 333 | Objection Ex. 333 does not support what the FTC claims it does.<br><br>Paying bills was a function of Doron's bookkeeping functions. Doron Decl., ¶21; Alon Decl., ¶11; Howard Decl., ¶8. Doron does not recall ever seeing Ex. 333 prior to this litigation.  Doron Decl., ¶44. |
| **Paragraph 34(g)**<br><br>Despite attempting to keep Alon Nottea and his own name off financial management records, evidence makes clear Doron Nottea managed or controlled numerous accounts associated with the common enterprise, including either making payments or providing permission to make payments on behalf of several of the entities. Exs. 466; 485; *see* | Objection: argumentative., lack of foundation, speculation, vague and ambiguous and compound.<br><br>The documents do not support what the FTC claims that they do.<br><br>Deny.  Doron Decl., ¶ 30; Alon Decl., ¶¶8, 15. |

9

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| *also, e.g.*, Exs. 292, 294, 296. 479 (setting up wire transfers), 488 | |
| Paragraph 34(g)(i)<br><br>Doron adamantly instructed that "All invoices only to accounting@pinlogistics.com never to me!" Ex. 466 | Objection: argumentative.<br>Admit that invoices should be addressed to the responsible party, not the bookkeeper.  Doron Decl., ¶30. |
| Paragraph 34(g)(ii)<br><br>Doron instructed an individual "please DON'T write Alon's Name on it" regarding a check from shell company Agoa Holdings. Ex. 485 | Objection: the document speaks for itself, lack of foundation and vague and ambiguous as to the term "shell company", argumentative.<br>Payments on invoices shall be paid to the party who is entitled to the money only. Doron Decl., ¶ 30. |
| Paragraph 34(g)(iii)<br><br>Doron was responsible for arranging wire transfers relating to the common enterprise. Ex. 497 | Objection: argumentative and lack of foundation as to the term "common enterprise".<br><br>Ex. 497 does not relate to wire transfers nor does it address what the FTC claims it does.<br><br>Doron does not recall ever seeing Ex. 497 prior to this litigation.  Doron Decl., ¶44. |
| Paragraph 34(g)(iv)<br><br>Numerous "books" each holding dozens of credit cards were found in Doron's possession, located in his office, as well as deposit stamps for more than 18 entities. Dkt. #120, at 13, 70-71, 74 | Objection: Dkt. #120, the Receiver's report is hearsay and may not be used to support any alleged facts.<br><br>Admit that credit cards, deposit stamps and blank checks were in Doron's possession as they were used to pay bills when necessary as a function of his bookkeeping services. Doron Decl., ¶29; Alon Decl., ¶11; Howard Decl., ¶8. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 34(g)(v)<br><br>Books of deposit slips or checks for at least 35 entities were also located in Doron's office. Dkt. #120, at 13 | Objection: Dkt. #120, the Receiver's report is hearsay and may not be used to support any alleged facts.<br><br>Admit that credit cards, deposit stamps and blank checks were in Doron's possession as they were used to pay bills when necessary as a function of his bookkeeping services. Doron Decl., ¶29; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(g)(vi)<br><br>He also kept RSA devices used to make electronic funds transfers for at least eight bank accounts. Dkt. #120, at 13 | Objection: Dkt. #120, the Receiver's report is hearsay and may not be used to support any alleged facts.<br><br>Admit that credit cards, deposit stamps and blank checks were in Doron's possession as they were used to pay bills when necessary as a function of his bookkeeping services.  Doron Decl., ¶29; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(g)(vii)<br><br>Doron Nottea maintained personal information including copies of other Individual Defendants' driver licenses and signature block for using new bank accounts, as well as access to and used blank pre-signed checks for numerous Corporate Defendants. Ex. 536; *see also*, *e.g,* Exs. 49; 437 | Admit that certain pre-signed blank checks were in Doron's possession as the checks were used to pay certain bills as a function of his bookkeeping services. Doron Decl., ¶29; Alon Decl., ¶11; Howard Decl., ¶8.<br><br>The balance of the statement is denied as the exhibits referred to by the FTC do not support the allegations. |
| Paragraph 34(g)(viii)<br><br>Doron Nottea possessed blank, pre-signed checks for CalEnergy, Inc. in his office. Dkt. 120, at 13; *see also* Ex. 49 | Objection: Dkt. #120, the Receiver's report is hearsay and may not be used to support any alleged facts.<br>Admit. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| **Paragraph 34(g)(ix)** Former employee Andrew Stanley, whose work for several years consisted of responding to chargebacks for the common enterprise, stated that Doron Nottea controlled and oversaw many merchant accounts associated with BunZai, including reviewing complEx. issues such as reserve rates relating to such merchant accounts. Exs. 173; 349; 430; *see* Ex. 554, at 86:17-87:7 | Objection: hearsay, lack of foundation, speculation, compound and argumentative. Exhibit 173 and 349 do not refer to, nor were they sent to, Doron, In addition, the citations to the exhibits do not support the allegation. |
| **Paragraph 34(g)(x)** Doron opened, managed, and controlled the merchant accounts and other financial accounts used by the common enterprise, and was even apprised of negotiations with potential payment processors by his brother, Alon. Exs. 64; 78; 88; 167; 383; 467 | Objection: hearsay, argumentative, speculation, lack of foundation. The exhibits are not what the FTC claims they are. Information relating to financial matters was a function of Doron's services as the bookkeeper.  Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. Deny that Doron negotiated nor was involved with potential payment processors with his brother.  Alon Decl., ¶11. |
| **Paragraph 34(g)(xi)** Doron requested that Yalley send him a list of "all our merchant accounts"; Yalley replied with a spreadsheet of all the merchant accounts used by the AuraVie companies. Ex. 78 | Objection: hearsay.  Information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 34(g)(xii)<br><br>Yalley provided Doron, Alon, and Paul with accounting spreadsheets for the AuraVie businesses. Ex. 167 | Information relating to financial matters was a function of Doron's services as the bookkeeper.  Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(g)(xiii)<br><br>Defendant Latsanovski requested that Nottea make a payment to an Israeli bank account from SBM Management's bank account. Ex. 64 | Financial matters were a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(g)(xiv)<br><br>Yalley sent Doron login information concerning accessing payments made to AuraVie.com. Ex. 88 | Information relating to financial matters was a function of Doron's services as the bookkeeper.  Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(h)<br><br>Doron handled accounting or bookkeeping for the common enterprise | Objection: argumentative, lack of foundation, assumes facts not in evidence that there was a common enterprise, vague and overbroad.<br><br>Admit that Doron performed bookkeeping services for some, but not all, of the Corporate Defendants. |
| Paragraph 34(h)(i)<br><br>Doron oversaw the finances of the common enterprise, calculating the companies' profits and losses and managing the enterprise's various entities and merchant accounts. *See* Exs. 21; 46; 47; 51; 52; 58; 59; 335; 337; 338; 339; 340; 391; 392; 393; 399; 405; 406; 407; 408; 409; 946, at 36:8-36:11 | Objection: compound, assumes facts not in evidence that Doron managed the enterprises various entities, vague and ambiguous as to the term "oversaw the finances", vague as to what entities to which reference is made.<br><br>Assumes facts not in evidence as the exhibits do not state what the FTC says they state. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8.<br><br>Doron does not recall ever seeing Exs. 46, 52, 58, or 406 prior to this litigation. Doron Decl., ¶44. |
| Paragraph 34(h)(ii)<br><br>Defendant Latsanovski openly discussed Doron's "department" in the company he runs with Alon Nottea. Ex. 21 | Objection:  vague as to the term "openly", irrelevant, assumes facts not in evidence as Ex. 21 does not state what the FTC claims it states as the email is addressed to Alon and not Doron as it states "Hi Alon" and is signed "Your partner Igor". Doron was never a partner of Igor. Doron Decl., ¶15; Alon Decl., ¶¶8, 15. |
| Paragraph 34(h)(iii)<br><br>Yalley referenced Doron instructing her which toll-free numbers to leave open. Ex. 47 | Objection: irrelevant, assumes facts not in evidence as Ex. 47 does not state what the FTC claims it states. |
| Paragraph 34(h)(iv)<br><br>Alon forwarded Doron an email concerning skincare merchant accounts with EVO and UMS. Ex. 52 | Objection: irrelevant, assumes facts not in evidence as Ex. 52 does not state what the FTC claims it states.<br><br>Doron does not recall ever seeing Ex. 52 prior to this litigation.  Doron Decl., ¶44. |
| Paragraph 34(h)(v)<br><br>An invoice from Secured Commerce to Adageo for the AuraVie landing page shows Doron was involved in the common enterprise's landing page's creation. Ex. 46 | Objection, lack of foundation, speculation, assumes facts not in evidence.<br><br>Deny that Doron was involved in the preparation of an AuraVie landing page. Doron Decl., ¶¶7, 23 and 25. |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 34(h)(vi)<br><br>Doron sent Alon what appears to be an affiliate's "advertorial" concerning AuraVie. Ex. 51 | Objection: vague, speculation, irrelevant, assumes facts not in evidence as Ex. 51 does not state what the FTC claims it states.  The email is page 2 of multiple pages that were not attached. |
| Paragraph 34(h)(vii)<br><br>(intentionally left blank) | |
| Paragraph 34(h)(viii)<br><br>Paul Medina requested approval from Doron and Defendant Alan Argaman to switch one of the Limelight accounts over to Secured Merchants LLC, a company purportedly owned solely by Alan Argaman. Limelight is the CRM software used for managing the continuity sales aspect of the enterprise. Ex. 59 | Objection:  argumentative, compound, speculation, irrelevant, assumes facts not in evidence as the email does not state what the FTC claims it states.<br><br>Deny as any conduct or information relating to merchant accounts were part of Doron's functions as a bookkeeper. Doron Decl., ¶26. |
| Paragraph 34(h)(ix)<br><br>Medina testified he believed Doron Nottea was in charge of accounting for the AuraVie companies. Ex. 946, at 36:8-36:11 | Objection: hearsay, lack of foundation, irrelevant as to what Medina believed. |
| Paragraph 34(h)(x)<br><br>Davidian emailed Doron Nottea the IRS Form W2 for several AuraVie companies. Ex. 338 | Information relating to financial matters was a function of Doron's services as the bookkeeper.  Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(h)(xi)<br><br>Alon Nottea testified that he asked Doron Nottea to assist him with | Objection: vague and ambiguous as to the meaning of "common enterprise", hearsay, assumes facts not in evidence as the exhibits and testimony do not state |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| accounting for the common enterprise and to supervise Nastassia's accounting work for the Corporate Defendants. Ex. 550, at 136:20-138-20, 139:24-140:12 | what the FTC claims it states, compound. Deny that there was a "common enterprise". Information relating to financial matters was a function of Doron's services as the bookkeeper.  Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(h)(xii) Defendant Medina also provided Doron Nottea with information concerning the 1% "commission" payouts—the payments made to the figureheads of the various shell companies for permitting their names to be used to open the accounts—among other financial information for the enterprise. *See also* Exs. 32; 45; 166; Ex. 946, at 44:10-45:15 | Objection:  Vague and ambiguous as to the terms "shell companies" and "figureheads", overbroad, argumentative, assumes facts not in evidence as the exhibits and testimony do not state what the FTC claims it states, compound. Deny that there was an "enterprise" and "various shell companies". Information relating to financial matters was a function of Doron's services as the bookkeeper.  Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(h)(xiii) Paul Medina provided Doron Nottea with commission calculations. Ex. 166 | Information relating to financial matters was a function of Doron's services as the bookkeeper.  Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(h)(xiv) Paul Medina sent Alon and Doron Nottea a spreadsheet called "US Rebill Die Down.xlsx," which appears to concern the revised expenses for the AuraVie common enterprise as they wound down operations in the United States. Ex. 45 | Objection:  argumentative, speculation, irrelevant, assumes facts not in evidence as Ex. 45 does not state what the FTC claims it states. Improper lay opinion and calls for expert testimony regarding interpretation of the 17-page spreadsheet. Admit that information relating to |

16

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
|  | financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Paragraph 34(h)(xv)**<br><br>Former employee Nastassia Yalley provided monthly "breakdowns" of accounting and expenses for the Corporate Defendants to Doron. *See, e.g.,* Ex. 82; 167; 542; 543; 556, at 33:23-34:1 | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Paragraph 34(h)(xvi)**<br><br>Doron admitted to active involvement in the bookkeeping of nearly all Corporate Defendants. This list includes: Pinnacle, Ex. 551, at 17:3-17:5; DSA Holdings, Inc., Ex. 551, at 17:9-17:11; DMA Media Holdings, Inc., Ex. 551, at 60:14-60:18; SBM Management, Inc., Ex. 551, at 53:9-53:14; Kai Media, Inc., Ex. 551, at 56:21-56:23; Lifestyle Media Brands, Inc., Ex. 551, at 44:13-44:15; Agoa Holdings, Inc., Ex. 551, at 49:3-49:7; Zen Mobile Media, Inc., Ex. 551, at 50:17-50:19; Heritage Alliance Group, Inc., Ex. 551, at 52:12-52:14; Safehaven Ventures, Inc., Ex. 551, at 51:16-51:20; Insight Media, Inc., Ex. 551, at 58:7-58:11; Secured Merchants, LLC, Ex. 551, at 58:23-59:9; Shalita Holdings, Inc., Ex. 551, at 61:2-61:4; Allstar Beauty Products, Inc., Ex. 551, at 61:13-61:17; USM Products, Inc., Ex. 551, at 68:20- | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶ 31; Alon Decl., ¶11; Howard Decl., ¶8. |

17

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| 68:25 | |
| **Paragraph 34(h)(xvii)**<br><br>Chargeback Armor, Inc. admitted that Doron Nottea performed bookkeeping work for Focus Media Solutions, Inc. Ex. 917 ¶ 221 | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Paragraph 34(h)(xviii)**<br><br>Doron Nottea was one of the individuals authorized to receive mail for Chargeback Armor, Inc. Ex. 365-13 | Objection:  irrelevant, hearsay. |
| **Paragraph 34(i)**<br><br>Doron Nottea managed the Common Enterprise employees and controlled its business | Objection:  vague and ambiguous as to the terms "managed", "common enterprise" and "controlled". Deny.  Doron Decl., ¶¶11, 12, 14; Alon Decl., ¶¶8, 11, 15; Reuveni Decl., ¶4. |
| **Paragraph 34(i)(i)**<br><br>Doron Nottea met with an individual to discuss his management plan for the AuraVie business, which included ways to reduce his companies' chargeback levels. Exs. 29; 385 | Objection:  speculation, assumes facts not in evidence as Exs. 29 and 385 do not state what the FTC claims they state. Doron never met with individuals to discuss a management plan for the AuraVie business.  Doron Decl., ¶13. |
| **Paragraph 34(i)(ii)**<br><br>Emails show that Doron corresponded with a certified public accountant about incorporating various Corporate Defendants and overseeing the initial financials of these corporations. *See* Exs. 553, 299, 302, 343, 364 | Objection:  argumentative as to the term "emails show".<br><br>Possessing corporate documents is a function of bookkeeping services. Admit that information relating to financial matters was a function of Doron's services as the bookkeeper.  Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

18

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Doron does not recall ever seeing Ex. 343 prior to this litigation.  Doron Decl., ¶44. |
| **Paragraph 34(i)(iii)**<br><br>Doron Nottea and the CPA David Davidian discussed corporate filings, including DSA Holdings, Inc. Ex. 41 | Objection:  assumes facts not in evidence as Ex. 41 does not state what the FTC says it states.<br><br>Possessing corporate documents is a function of bookkeeping services. Admit that information relating to financial matters was a function of Doron's services as the bookkeeper.  Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Paragraph 34(i)(iv)**<br><br>Doron was provided invoices for "new corporations" including SBM Management, Inc. and CalEnergy, Inc. Ex. 397 | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Paragraph 34(i)(v)**<br><br>Doron also coordinated the stand-in owners of various shell corporations involved in the enterprise, providing personal information of each individual so that their identities could be used in the incorporation process. Ex. 484 | Objection: argumentative, vague, assumes facts not in evidence as the email does not state what the FTC claims it states, speculation.<br><br>Deny that "stand-in owners" or "shell corporations" exist and that an enterprise exists. |
| **Paragraph 34(i)(vi)**<br><br>Alon Nottea forwarded Doron, as well as Paul Medina and Igor Latsanovski, an email in which Alon informed UMS Bank they intended to wind up their sale of AuraVie products in part due to FTC and | Objection:  speculation, assumes facts not in evidence as Ex. 60 does not state what the FTC claims it states, irrelevant. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| credit card regulations. Ex. 60 | |
| **Paragraph 34(i)(vii)**<br><br>Alon Nottea forwarded Doron an email concerning skin care merchant accounts approved by a payment processing entity. Ex. 329 | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8.<br><br>Doron does not recall ever seeing Ex. 329 prior to this litigation.  Doron Decl., ¶44. |
| **Paragraph 34(i)(viii)**<br><br>David Midgal emailed Doron asking "what you want me to do" concerning "a new PO Box (address) for Dellure"—one of the common enterprise's products. Ex. 331-1 | Objection:  argumentative, speculation, assumes facts not in evidence as Ex. 331 does not state what the FTC claims it states, vague and ambiguous with regard to the term "common enterprise".  Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8.<br><br>Deny that Dellure was one of the common enterprise's products.  Doron does not recall ever seeing Ex. 331 prior to this litigation.  Doron Decl., ¶44. |
| **Paragraph 34(j)**<br><br>Doron Nottea sent a text message from his phone (XXX) XXX-9999 to his email address, xposed@gmail.com, in which he states:<br><br>Our volume is down to about 350 (100 from lifescript + 250 from un-compliant survey traffic per day...) And even that is a miracle since we | Deny.  The text message was not sent to, received or seen by Doron.  Doron Decl., ¶41.<br><br>Doron does not recall ever seeing Ex. 330 prior to this litigation.  Doron Decl., ¶44. |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| can no longer use advertorials for now... As the lady (pam bondi) in the Florida Atty. Gen. is reviewing every single continuity skincare and diet advertisers in the industry... We are waiting for some more industry news to be released in order to make an executive decision on whether or not to run blogs again... Nevertheless, dawn's and Nancy's attorney is pushing hard ... threatening to file against all corporations and people involved, this creates a very big exposure and risk to our entire entities... Especially now that Nastassia is gone, they will have access to much more personal, private and sensitive information. This is very concerning, and very risky... If you are not willing to let your attorney speak to their attorney, I will half to engage in a non-formal potential settlement meeting in order to avoid the exposure... This also creates additional exposure for pinnacle logistics as Dawn and Nancy are probably still in touch with some current and former employees... Thereby moving the exposure to pinnacle employees as well ... We don't want the word out that every single employee Can go after us because we are in the business of settling false demands ... Additionally, Joyce Gaines from UMS contacted me with respect to the level of reserves they are holding, they have had a few merchants funds frozen by the FTC previously... And | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| she is concerned due to the high-risk nature of our business model, she would like to hold additional reserves which means more of a lack of income to the company...<br><br>Ex. 330. *See also* Ex. 941 (Doron Nottea provides sworn statement concerning his phone number (XXX) XXX-9999); Ex. 551, at 109:15-109:22 (Doron Nottea confirms his email address, xposedinc@gmail.com) | |
| Paragraphs 35 – 38 | Irrelevant to Defendant Doron Nottea |
| Paragraph 39<br><br>Defendant Alan Argaman was an owner of Defendant Secured Commerce LLC, Dkts. 299 ¶ 39, which designed, created, and helped manage the websites or landing pages used for deceptively marketing and selling skincare products. Ex. 46.  He is also an owner of Secured Merchants, LLC, Dkts. 299 ¶ 39; 244 ¶ 39; 245 ¶ 39; *see also* Ex. 917 ¶ 208. Defendant Alan Argaman resides in this district. Dkt. 299 ¶ 39 | Irrelevant to Defendant Doron Nottea |
| Paragraph 39(a)<br><br>Doron Nottea and Motti Nottea stated that Alan Argaman managed Secured Commerce, LLC. Dkts. 244 ¶ 39; 245 ¶ 39 | Objection: Dkts. #244 and 245 are hearsay and may not be used to support any alleged facts.<br><br>Admit that Alan Argaman managed Secured Commerce LLC. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 39(b)<br><br>Doron Nottea also stated that he and Alan Argaman were the owners of Secured Commerce, LLC. Ex. 912 ¶ 214 | Admit. |
| Paragraph 39(c)<br><br>Alan Argaman sent and received emails using the email account avicoglobal@gmail.com. Ex. 916 ¶ 261 | Irrelevant to Doron Nottea. |
| Paragraph 39(d)<br><br>Alan Argaman provided a variety of critical services to the common enterprise, many through his company, Secured Merchants LLC | Irrelevant to Doron Nottea. |
| Paragraph 39(d)(i)<br><br>Argaman provided integration services for their customer service management software, Limelight (*See* Dkt. 121-6, at 9-21; Dkt. 121-7, at 1-3), which Defendant Argaman testified is a software typically used for continuity sales.  Ex. 555, 51:3-19.  *See also* Ex. 946, at 19:23-20:17 | Irrelevant to Doron Nottea. |
| Paragraph 39(d)(ii)<br><br>Argaman assisted Alon Nottea in operating a call center for AuraVie customer complaints. Exs. 47; 149; 432; 440; 441; 516 | Irrelevant to Doron Nottea. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 39(d)(iii)<br><br>Argaman provided technical expertise to create an automated response system to allow large numbers of consumers to cancel their AuraVie continuity plans. *See* Dkt. 121-6, at 9-21; Dkt. 121-7, at 1-3 | Irrelevant to Doron Nottea. |
| Paragraph 39(d)(iv)<br><br>Secured Merchants boasted that its contribution to the common enterprise "offer[s] a vehicle to resolve consumer disputes before they become chargebacks." Ex. 257-2 | Irrelevant to Doron Nottea. |
| Paragraph 39(d)(v)<br><br>Defendant Argaman integrated the AuraVie free trial campaigns into Lime Light, a third party customer relationship management (CRM) software Defendants used for selling their products by negative option continuity plans. *See* Exs. 187; 306; 476; 493; 528; 547 | Irrelevant to Doron Nottea. |
| Paragraph 39(d)(vi)<br><br>Email and screenshots show Defendant Argaman designing, creating, or managing a website offering risk free trial offers of skincare products. Ex. 531 | Irrelevant to Doron Nottea. |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 39(d)(vii)<br><br>Defendant Argaman admitted to creating AuraVie.com. *See* Ex. 555, 49:5-18 | Irrelevant to Doron Nottea. |
| Paragraph 39(d)(viii)<br><br>Defendant Alon Nottea's company was invoiced by Secured Commerce LLC, a company owned by Defendant Argaman for "Design, Creation, & Optimization of Auravie landing page Campaign Setup and integration to Lime Light CRM and Click Connector." *See* Ex. 46 | Irrelevant to Doron Nottea. |
| Paragraph 39(d)(ix)<br><br>Defendant Argaman sold Attitudeline/INFINI skincare products, a product that Defendants marketed or sold, or assisted others in marketing or selling, by negative option continuity plans (or assisted others in marketing or selling in the same manner). Ex. 368 | Irrelevant to Doron Nottea. |
| Paragraph 39(d)(x)<br><br>Defendant Argaman participated in planning and managing the AuraVie Angels promotional campaign. Exs. 185; 494; 497 | Irrelevant to Doron Nottea. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 39(d)(xi)<br><br>Defendant Argaman established toll-free telephone numbers for various shell corporations and set up call forwarding for those numbers. *See, e.g.,* Ex. 529 | Irrelevant to Doron Nottea. |
| Paragraph 39(d)(xii)<br><br>Defendant Argaman used Secured Commerce to lease the main office suite where Defendants operated. Dkt. 120, at 12 | Irrelevant to Doron Nottea. |
| Paragraph 39(e)<br><br>Defendant Argaman played a role in the decision making and marketing of new products relating to the common enterprise that went beyond providing assistance with technology issues and shipping | Irrelevant to Doron Nottea. |
| Paragraph 39(e)(i)<br><br>Defendant Argaman sent Doron Nottea a presentation concerning a product called LeElle.  Defendant Argaman was later consulted concerning the company's packaging design. Exs. 360; 361 | Irrelevant to Doron Nottea. |
| Paragraph 39(e)(ii)<br><br>Defendant Argaman also provided input concerning who would own the new product Defendants were marketing. Ex. 362 | Irrelevant to Doron Nottea. |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 39(f)<br><br>Defendant Argaman played a key role in refuting consumer chargebacks for the Corporate Defendants, through his company, Secured Merchants LLC | Irrelevant to Doron Nottea. |
| Paragraph 39(f)(i)<br><br>Defendant Argaman admitted that his company contested consumer chargebacks for the Corporate Defendants that sold AuraVie and that Secured Merchants had previously provided a chargeback refutation service termed "chargeback armor." Ex. 555, at 75:1-5, 86:10-25, 88:15-24 | Irrelevant to Doron Nottea. |
| Paragraph 39(f)(ii)<br><br>Defendant Argaman possessed a "Standard Service Agreement" form for clients' use of Chargebackarmor.com. Further, emails suggest that Secured Merchants processed chargebacks for AuraVie under the name Chargeback Armor. Exs. 280; 348; 412; 413 | Irrelevant to Doron Nottea. |
| Paragraph 39(f)(iii)<br><br>The Chargeback Armor Service Agreement states: "The Software is made available to you and the Service is owned, operated, and provided to you by SM through the CHARGEBACKARMOR.COM | Irrelevant to Doron Nottea. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Site." Ex. 280 | |
| **Paragraph 39(f)(iv)**<br><br>According to Chargeback Armor, Inc.'s Executive Summary, "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." *See* Ex. 281-2 | Irrelevant to Doron Nottea. |
| **Paragraph 39(f)(v)**<br><br>A document titled "Secured Merchants – Company Describes" described the "ChargeBack Armor" services as helping "win back lost revenue by reversing chargebacks in your favor" and "handl[ing] the entire chargeback dispute process on your behalf." Ex. 257 | Irrelevant to Doron Nottea. |
| **Paragraph 39(g)**<br><br>Defendant Argaman operated Relief Defendant Chargeback Armor, Inc., a company Defendant Alon Nottea admitted was used to refute consumer chargebacks, jointly with other Individual Defendants | Objection: vague and ambiguous as to the meaning of "other Individual Defendants" as it is not specified as to which Individual Defendants this makes reference. |
| **Paragraph 39(g)(i)**<br><br>Defendant Argaman, through his company Secured Merchants LLC, provided $250,000 in startup capital to Chargeback Armor, Inc. Exs. 916 ¶ 235; 917 ¶ 235; Dkt. #231-1, at 53 | Irrelevant to Doron Nottea. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 39(g)(ii)<br><br>Chargeback Armor's Executive Summary states that Defendant Argaman was the company's "Chief Technology Officer." Ex. 281 | Irrelevant to Doron Nottea. |
| Paragraph 39(g)(iii)<br><br>Nova 8 Media billed Defendant Argaman of Secured Merchants for "design services" for "Chargeback Armor." *See*, *e.g.*, Ex. 414 | Irrelevant to Doron Nottea. |
| Paragraph 39(g)(iv)<br><br>A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. # 231-1, at 36 | Irrelevant to Doron Nottea. |
| Paragraph 39(g)(v)<br><br>A Chargeback Armor, Inc. lease agreement dated February 27, 2015 lists Mike Costache, Doron Nottea, and Defendant Argaman as individuals to whom mail may be sent to Chargeback Armor, Inc. Ex. 365-13 | Irrelevant to Doron Nottea. |
| Paragraph 39(g)(vi)<br><br>Defendant Argaman incorporated Chargeback Armor, Inc. in concert with other Individual Defendants. Ex. 404 | Objection:  vague and ambiguous as to the term "other Individual Defendants" as it is not specified as to which Individual Defendants this refers. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| **Paragraph 39(g)(vii)**<br><br>Defendant Argaman received statistics detailing chargeback numbers for various Chargeback Armor clients, including AuraVie. Ex. 151 | Irrelevant to Doron Nottea. |
| **Paragraph 39(g)(viii)**<br><br>(Intentionally left blank.) | |
| **Paragraph 39(g)(ix)**<br><br>Defendant Argaman participated in discussions concerning high-level corporate decisions for Chargeback Armor ranging from updates regarding the launch of the company to opening the company's corporate bank account. Exs. 184; 369 | Irrelevant to Doron Nottea. |
| **Paragraph 39(g)(x)**<br><br>Alon Nottea reported to Defendant Argaman concerning new Chargeback Armor customers. Ex. 184 | Irrelevant to Doron Nottea. |
| **Paragraph 39(g)(xi)**<br><br>Mike Costache, a Secured Merchants employee and purported Chargeback Armor CEO, sent an email to a Secured Merchants client that included referring to Secured Merchants as "the technology company that developed the Chargeback Armor product" and then | Irrelevant to Doron Nottea. |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| noting that Secured Merchants is "transitioning all clients to be billed" by Chargeback Armor. Dkt. # 231-1, at 8 | |
| Paragraph 39(h)<br><br>Argaman had notice that Defendants marketed their products through negative option plans | Irrelevant to Doron Nottea. |
| Paragraph 39(h)(i)<br><br>(Intentionally left blank.) | |
| Paragraph 39(h)(ii)<br><br>Defendant Argaman assisted Defendants with managing their various trial campaigns on Lime Light software—software he acknowledged was often used for selling products by continuity plan. *See* Exs. 59; 92 | Irrelevant to Doron Nottea. |
| Paragraph 39(h)(iii)<br><br>Secured Merchants Executive Summary listed, under "Target Markets," numerous companies that sell or sold their products by negative option continuity plans or trial offer. *See* Ex. 256 | Irrelevant to Doron Nottea. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 39(i)<br><br>Defendant Argaman was aware, or should have been aware, that Defendants took significant measures to disguise their common enterprise | Irrelevant to Doron Nottea. |
| Paragraph 39(i)(i)<br><br>Defendant Argaman was sent emails discussing the "load balanc[ing]" between multiple merchant accounts and corporations." Ex. 337 | Irrelevant to Doron Nottea. |
| Paragraph 39(i)(ii)<br><br>Paul Medina informed Defendants Doron Nottea, Alon Nottea, and Alan Argaman about high risk accounts. Ex. 337 | Objection, vague as to the term "high risk accounts", vague as to the context. Possession of information about accounts was a function of Doron's services as the bookkeeper.  Doron Decl., ¶¶27, 35; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 39(I)(iii)<br><br>Defendant Argaman assisted in establishing dozens of phone numbers for Defendants' shell corporations | Irrelevant to Doron Nottea. |
| Paragraph 39(j)<br><br>Defendant Argaman was aware, or should have been aware, that Defendants engaged in "load balancing"—the means by which Defendants deceived payment processors concerning their actual chargeback ratio—between their various merchant accounts | Irrelevant to Doron Nottea. |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 39(j)(i)<br><br>Load balancing was discussed in emails Argaman received. *See*, *e.g.*, Ex. 449 | Irrelevant to Doron Nottea. |
| Paragraph 39(k)<br><br>Defendant Argaman appears to have assisted in coordinating the assistance of and payment to a third party call center in India, which handled some customer service calls for Defendants. Ex. 386 | Irrelevant to Doron Nottea. |
| Paragraph 39(l)<br><br>Defendant Argaman was included on an email detailing the high chargeback rates for merchant accounts associated with the common enterprise. Ex. 337 | Irrelevant to Doron Nottea. |
| Paragraphs 40 – 42 | Irrelevant to Doron Nottea |
| Paragraph 43<br><br>Defendants Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi, Igor Latsanovski, Roi Reuveni, Khristopher Bond, also known as Ray Ibbot, Alan Argaman, and Paul Medina (collectively, "Individual Defendants") formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise | Deny.  Doron Decl., ¶¶7-42; Alon Decl., ¶¶8, 11. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 43(a)<br><br>Media Urge, Inc. and Focus Media Solutions, Inc. were controlled by the Individual Defendants. See Ex. 941 at 8:18-9:10; Ex. 941 at 9:19-9:25; Id. at 10:3-10:5; see also Dkt. #120, at 6 n.3, 17 | Deny.  Doron Decl., ¶¶10-12; Alon Decl., ¶¶8, 15. |
| Paragraph 43(b)<br><br>Secured Merchants was owned and operated by the Individual Defendants | Deny.  Doron Decl., ¶¶10-12; Alon Decl., ¶¶8, 15. |
| Paragraph 43(b)(i)<br><br>Secured Merchants "Executive Summary," created in June 2013 states that the company's management consisted of Defendants Alon Nottea, "Avi" Argaman, and Paul Medina. Ex. 256-2 | Irrelevant to Doron Nottea. |
| Paragraph 43(b)(ii)<br><br>A Secured Merchants LLC's operating agreement draft names Defendant Argaman and Defendant Alon Nottea as the company's two managers. Ex. 255-22 | Irrelevant to Doron Nottea. |
| Paragraph 43(b)(iii)<br><br>Nonprivileged attorney invoices reference meetings concerning Secured Merchants with Alon Nottea and "Igor." Ex. 388-3; 388-4 | Irrelevant to Doron Nottea. |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 43(b)(iv)<br><br>Secured Merchants LLC was identified as one of the "Bunzai Companies" on a list that Defendant Doron Nottea sent to CPA David Davidian. Ex. 394 | Admit |
| Paragraph 43(b)(v)<br><br>Doron Nottea created the email address securedmerchantsllc@gmail.com. Ex. 357 | Admit. |
| Paragraph 43(b)(vi)<br><br>Defendant Argaman denied the existence of any other founder for Secured Merchants. Ex. 555, at 28:16-28:23; Ex. 555, at 29:7-29:8 | Irrelevant to Doron Nottea. |
| Paragraph 43(c)<br><br>Chargeback Armor, Inc. was owned and operated by Defendants | Objection: vague and ambiguous as to the term "Defendants" as there is no indication as to which Defendant this refers. |
| Paragraph 43(c)(i)<br><br>Chargeback Armor's Executive Summary lists Defendant Alon Nottea as President, Defendant Alan Argaman as Chief Technology Officer, and Defendant Roi Reuveni as Customer Service Manager. *See* Ex. 281-3 | Irrelevant to Doron Nottea. |

35

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraph 43(c)(ii)<br><br>Defendant Paul Medina also testified that he believed Alon Nottea owned the company. Ex. 946, at 25:2-25:6 | Irrelevant to Doron Nottea. |
| Paragraph 43(c)(iii)<br><br>Alon Nottea reported to Defendant Argaman concerning new Chargeback Armor customers. Ex. 184 | Irrelevant to Doron Nottea. |
| Paragraph 43(c)(iv)<br><br>Defendant Alon Nottea solicited investors for Chargeback Armor, Ex. 910 ¶ 234; 917 ¶ 234, and the purported Chargeback Armor CEO referred to him as his "business partner." Dkt. 120, at 23 | Irrelevant to Doron Nottea. |
| Paragraph 43(c)(v)<br><br>Purported CEO Mike Costache consulted with the Individual Defendants concerning hiring and contracting decisions. Dkt. #231-1, at 23, 26 | Objection:  vague and ambiguous as to the term "Individual Defendants" as there is no indication as to which Individual Defendants this refers. |
| Paragraph 43(c)(vi)<br><br>Mike Costache, a Secured Merchants employee and purported Chargeback Armor CEO, sent an email to a Secured Merchants client that included referring to Secured Merchants as "the technology company that developed the | Irrelevant to Doron Nottea. |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Chargeback Armor product" and then noting that Secured Merchants is "transitioning all clients to be billed" by Chargeback Armor. Dkt. #231-1, at 8 | |
| Paragraph 43(c)(vii)<br><br>Nova 8 Media billed Defendant Argaman of Secured Merchants for "design services" for "Chargeback Armor." Ex. 414 | Irrelevant to Doron Nottea. |
| Paragraph 43(c)(viii)<br><br>A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. #231-1, at 36 | Irrelevant to Doron Nottea. |
| Paragraph 43(c)(ix)<br><br>A Chargeback Armor, Inc. lease agreement dated February 27, 2015 lists Mike Costache, Doron Nottea, and Defendant Argaman as individuals to whom mail may be sent to Chargeback Armor, Inc. Ex. 365-13 | Admit. |
| Paragraph 43(c)(x)<br><br>Defendant Doron Nottea was a signatory on Chargeback Armor's bank account and is listed as secretary of the company on its Bank of America account. *See* Dkt. #214, at | Objection, Dkts. #214 and 231 are hearsay and may not be used to support any alleged facts. |

37

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| 31; Dkt. #231-1, at 46 | |
| **Paragraph 43(c)(xi)**<br><br>Mike Costache requested that Defendant Roi Reuveni set up an inbox anticipating email and telephone communications in light of Alon Nottea's new business cards with a toll free number. Dkt. 231-1, at 9 | Irrelevant to Doron Nottea. |
| **Paragraph 43(d)**<br><br>Defendants' CPA sent Doron Nottea a spreadsheet of the "BunZai companies." Included on this list were nearly every Corporate Defendant. Ex. 302 | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraphs 44 – 158 | Irrelevant to Doron Nottea |

Defendant Doron Nottea submits the following material facts and supporting evidence:

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
|---|---|
| Doron Nottea ("Doron") has never sold or marketed AuraVie products either directly or indirectly. The preparation of web pages, marketing plans, corporate formation and structures for the selling of AuraVie products were made by the owners of Bunzai Marketing ("Bunzai"). Doron was not involved in any such | Doron Decl., ¶7; Alon Decl., ¶¶8, 15; Reuveni Decl., ¶4. |

38

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
|---|---|
| decisions as he did not have the responsibilities, rights or desire to make any of these decisions. | |
| The selling of AuraVie products, pricing programs, returns, refunds and contact with customers were conducted by the owners and employees of Bunzai.  Doron was not involved in any such decisions as he did not have the responsibilities, rights or desire to make any of these decisions | Doron Decl., ¶8; Alon Decl., ¶¶8, 15; Reuveni Decl., ¶4. |
| Bunzai prepared its web sites and landing pages for AuraVie in or about mid-2010.  There were a few pages previously prepared for a previous offer, Miracle Face Kit—Dead Sea Mud Mask and Serum, which was the first product launched in December 2009. | Doron Decl., ¶23 |
| Bunzai began selling AuraVie products in or about July 2010; the Miracle Face Kit—Dead Sea Mud Mask and Serum was first sold in December 2009. | Doron Decl., ¶24 |
| Doron first began to perform bookkeeping services in April 2013 more than three (3) years after Bunzai Media Group, Inc. was formed (January 1, 2010). | Doron Decl., ¶22 |
| From the dates it is very clear that Doron did not have any involvement in the preparation of, content, decisions related or had any abilities | Doron Decl., ¶25 |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
|---|---|
| to change or even object to the content of any web page, landing page, pricing program, free trial program, returns, charge backs or refunds as any such activity began and was in operation for years before Doron performed any services.  In addition, he had no knowledge of any such activities. | |
| Doron did not meet with any individuals to discuss management plans for the AuraVie business. | Doron Decl., ¶13 |
| Doron had only limited involvement with some, but not all, of the Corporate Defendants in this case, as a bookkeeper.  He had no involvement at all with some of the Corporate Defendants. | Doron Decl., ¶9 |
| Doron has never been a shareholder, member or partner of Chargeback Armor, Inc., Secured Merchants, LLC, Bunzai Media Group, Inc., Pinnacle Logistics, Inc., DSA Holdings, Inc., Lifestyle Media Brands, Inc., Agoa Holdings, Inc., Zen Mobile Media, Inc., Safehaven Ventures, Inc., Heritage Alliance Group, Inc., AMD Financial Network, Inc., SBM Management, Inc., Media Urge, Inc., Adageo, LLC, Calenergy, Inc., Kai Media, Inc., Insight Media, Inc., Focus Media Solutions, Inc., USM Products, Inc., Merchant Leverage Group, Inc., DMA Media Holdings, Inc., Shalita Holdings, Inc., or All Star Beauty | Doron Decl., ¶¶10-12 |

40

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
|---|---|
| Products, Inc. (collectively "the Corporate Defendants"). | |
| Doron has never been an officer or director of any of the Corporate Defendants. | Doron Decl., ¶11 |
| Doron has never performed any management duties for any of the Corporate Defendants. | Doron Decl., ¶12; Reuveni Decl., ¶4. |
| Doron has not managed any employees of any of the Corporate Defendants yet did work with other employees who also perfumed bookkeeping services. | Doron Decl., ¶14 |
| Doron has never been a partner with Alon Nottea, Motti Nottea, Igor Latsanovski, Oz Mizrahi, Roi Reuveni, Kristopher Bond or Paul Medina, with regard to any matter alleged as the basis for the claims of the FTC in this action. | Doron Decl., ¶15 |
| Doron has never held himself as an owner of any of the Corporate Defendants, with the exception of his shared ownership of Secured Commerce, LLC. | Doron Decl., ¶16 |
| Doron is a 50% shareholder of Secured Commerce, LLC. Secured Commerce, LLC, was engaged in the business of re-selling discounted postage and shipping. | Doron Decl., ¶6 |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
| --- | --- |
| Doron has never discussed the ownership of Corporate Defendants with former employee Andrew Stanley. | Doron Decl., ¶16 |
| Doron did not have any knowledge of the content of any of the web pages used to sell AuraVie products nor did he know what information should or should not be contained on web pages that advertise the selling of products. | Doron Decl., ¶17 |
| Doron did not have any input in any pricing decisions for the products, or know of any return programs, refund policies or practices that address any customer complaints.  These activities were performed by the owners of the companies and not Doron as he performed bookkeeping services, not management services. Doron also did not know if the practices about which the FTC complains about are proper or not. | Doron Decl., ¶18 |
| Doron is not aware of what practices are proper or not in the charging of customers on a monthly basis.  Doron did not have any involvement in any decision of how and when customers would be charged. | Doron Decl., ¶19 |
| Doron did not have any involvement in any decision of when and under what circumstances a customer could or could not return an item purchased or receive a refund. | Doron Decl., ¶20 |

42

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
|---|---|
| Doron did not own any merchant accounts nor did he have any involvement in the opening up of merchant accounts.  The need for the various merchant accounts and the decisions to open them were made by the owners of Bunzai. | Doron Decl., ¶26 |
| Doron is a bookkeeper by profession which requires that he be provided with all types of financial information related to clients, including but not limited to income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters. | Doron Decl., ¶27; Alon Decl., ¶11; Howard Decl., ¶8. |
| As part of his typical functions and responsibilities as a bookkeeper, Doron often maintains checks and credit cards for clients to facilitate the payment of certain expenses when they are out of town or just do not have time to sign checks.  Doron also maintains deposit stamps to enable deposit of funds into clients' accounts, as well as devices to make electronic funds transfers.  These banking materials are necessary to enable Doron to perform his job for his clients. | Doron Decl., ¶29; Alon Decl., ¶11; Howard Decl., ¶8. |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
|---|---|
| Doron possessed credit cards, blank checks and related banking materials for a client, Defendant Zen Mobile Media, Inc., as well as for many other clients, to facilitate the payment of certain of expenses and deposits of funds.  This is typical of his functions as a bookkeeper. | Doron Decl., ¶29 |
| Even though Doron has the ability to make payments on behalf of clients pursuant to his duties as a bookkeeper, he does not make decisions as to what payments are made or give permission to anyone to make payments.   Doron is not responsible for the invoices to clients nor should his name be included on any invoices. | Doron Decl., ¶30 |
| As part of his functions as a bookkeeper, Doron also reviews, prepare and analyze spreadsheets related to profits, losses, expenses or other financial matters.  Any and all references made by the FTC to Doron reviewing, analyzing or preparing spreadsheets related to profits, losses, expenses or other financial matters concerning any entity was a part of his usual functions as a bookkeeper for those entities. | Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| As part of his typical functions and responsibilities as a bookkeeper, Doron often perform functions related to employee payroll, including providing, preparing, receiving and reviewing payroll reports for business | Doron Decl., ¶32; Alon Decl., ¶11; Howard Decl., ¶8. |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
|---|---|
| entities.  Doron is also aware of and reviews paycheck advance/loan policies related to employee payroll as a typical part of his bookkeeping duties.  Any and all references made by the FTC to his providing, preparing, receiving and reviewing payroll reports for Bunzai or any other entity was a part of his usual functions as a bookkeeper.  In addition, any and all reference made by the FTC with regard to his receipt of an entity's paycheck advance policy was part of his usual functions as a bookkeeper. | |
| As part of his typical functions and responsibilities as a bookkeeper, Doron is kept apprised of employee information for new and continuing employees relating to his clients.  Any and all references made by the FTC to Doron being provided with, apprised of, reviewing or otherwise receiving employee information for any business entity was a part of his usual functions as a bookkeeper. | Doron Decl., ¶33; Alon Decl., ¶11; Howard Decl., ¶8. |
| As part of his typical functions and responsibilities as a bookkeeper, Doron often receives and reviews documents relating to incorporation of business entities.  Any and all references made by the FTC to Doron being provided with, apprised of, reviewing or otherwise receiving corporate formation documents for Bunzai, Pinnacle or any other entity was a part of his usual functions as a | Doron Decl., ¶34; Alon Decl., ¶11; Howard Decl., ¶8. |

45

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
|---|---|
| bookkeeper. | |
| As part of his typical functions and responsibilities as a bookkeeper, Doron often receives and reviews information relating to merchant accounts.  Any and all references made by the FTC to Doron being provided with, apprised of, reviewing or otherwise receiving such information for AuraVie or any other entity was a part of his usual functions as a bookkeeper. | Doron Decl., ¶35; Alon Decl., ¶11; Howard Decl., ¶8. |
| As part of his typical functions and responsibilities as a bookkeeper, Doron is often provided with insurance information for clients and may be involved in the process of obtaining favorable insurance quotes and terms.  Any and all references made by the FTC to Doron being provided with, apprised of, reviewing or otherwise receiving insurance information related to any entity was a part of his usual functions as a bookkeeper. | Doron Decl., ¶36; Alon Decl., ¶11; Howard Decl., ¶8. |
| The focus of Doron's work at all times has been on running his adult content companies full time, as buyer, seller and controller, which he has done for more than twenty years. | Doron Decl., ¶38 |
| Doron used the email address xposedinc@gmail.com for his adult content business. | Doron Decl., ¶37 |

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
|---|---|
| Doron has never sold cosmetics nor had any desire to do so.  Doron has not had, and does not have, a distribution channel to sell anything other than his adult content. | |
| In Exhibit 43 to the MSJ, Stephan Bauer of SBM Management, Inc. appears to have been attempting to communicate information to Doron concerning marketing hard core online trial and offers business. Although Doron cannot speculate as to what Mr. Bauer intended, any reference to selling "hard core" items refers only to Doron's adult content businesses. | Doron Decl., ¶40 |
| Doron has reviewed the purported text message to which the FTC refers in Paragraph 34(j) of its Statement of Uncontroverted Facts.   The text message was not sent to or received by Doron.  Doron had never seen this message prior to this litigation. Reading the wording makes it clear that the description and interpretation that the FTC makes of the document is wrong. | Doron Decl., ¶¶41, 44. |
| The FTC makes reference to several emails upon which Doron is listed as a "cc" recipient.  Doron cannot control or influence who sends emails to him, however the emails referenced by the FTC show that he did not respond to emails concerning functions that are not part of his bookkeeping responsibilities (such as | Doron Decl., ¶42 |

47

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
|---|---|
| marketing of products, solicitation by vendors to provide services, and the like).  Doron has reviewed various documents that the FTC refers to in its motion that the FTC claims pertain to Doron. If Doron did not respond to an email it clearly did not have anything to do with him nor did he involve himself in matters that were not part of his responsibilities. | |
| Doron has reviewed all of the exhibits upon which the FTC relies with regard to its claims against him, as set forth in its Statement of Uncontroverted Facts at Paragraphs 34, 39 and 43.  Doron does not recall ever having seen the following exhibit numbers prior to this litigation:  52, 57, 58, 151, 329, 330, 331, 333, 343, 406, 414, 449 and 531. | Doron Decl., ¶44 |

Dated:  May 2, 2016

**ESENSTEN LAW**
   ROBERT L. ESENSTEN
   RANDI R. GEFFNER


By:  */s/ Robert L. Esensten*
   Robert L. Esensten
Attorneys for Defendants DORON NOTTEA
and MOTTI NOTTEA

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2016, I electronically filed the foregoing document entitled **DEFENDANT DORON NOTTEA'S RESPONSE TO FEDERAL TRADE COMMISSION'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF IT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court by using the CM/ECF System.

*/s/ Robert L. Esensten*
Robert L. Esensten

DORON NOTTEA'S RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF FTC'S MOTION FOR SUMMARY JUDGMENT