1

**BEVERLY HILLS LAW CORP., PC**
Sagar Parikh, Esq. (SBN 282655)
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
Telephone:   (310) 887-1338
Facsimile:   (310) 982-2603
Email:       SP@BeverlyHillsLawCorp.com

2

3

4

5

TERREE A. BOWERS (SBN 89334)
terree.bowers@arentfox.com
JEFFREY R. MAKIN (SBN 252426)
jeffrey.makin@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone:  213.629.7400
Facsimile:  213.629.7401

6

7

8

9

10

11

Attorneys for Alan Argaman, Secured Merchants, LLC
and Chargeback Armor, Inc.

12

**UNITED STATES DISTRICT COURT**

13

**CENTRAL DISTRICT OF CALIFORNIA**

14

15

| FEDERAL TRADE COMMISSION, | **Case No. 2:15-cv-04527-GW (PLAx)** |
|---|---|
| Plaintiff, | **ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S REPLY  MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT;** |
| vs. | |
| BUNZAI MEDIA GROUP, INC., et al., | |
| Defendants. | |
| SECURED MERCHANTS, LLC, CHARGEBACK ARMOR, INC. AND ALAN ARGAMAN, | **Hearing Date:  May 23, 2016 Time: 8:30 am Location:  Courtroom 10 – Spring St. Judge: Hon. George H. Wu** |
| Cross-Claimants | |
| v. | |
| ALON NOTTEA, an individual, | |
| Cross-Defendant | |

16

17

18

19

20

21

22

23

24

25

26

27

28

**ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1         ALAN ARGAMAN ("Argaman"), SECURED MERCHANTS, LLC ("SM"),

2    AND CHARGEBACK ARMOR, INC. ("CBA") (collectively, "Defendants") hereby

3    submit their Reply Memorandum of Points and Authorities In Further Support of their

4    Motion for Summary Judgment.

5         In their Motion for Summary Judgment, the Defendants provided sworn

6    testimony and documents evidencing that: (1) SM was not a part of any alleged

7    common enterprise; (2) Argaman did not participate in the alleged illegal conduct; and

8    (3) CBA is not a proper relief defendant.  In Opposition to the Defendants' Motion,

9    the FTC relies on documents lacking any foundation and offers the FTC's own

10   speculation on what documents might mean as grounds for denying the Defendants'

11   Motion.  The FTC's effort fails to carry its burden, and the Defendants' Motion for

12   Summary Judgment should be granted.  It should be noted that in their Opposition, as

13   further discussed below, the FTC raises misleading issues and makes misstatements of

14   fact, necessitating the submission of an additional Declaration from Alan Argaman

15   and a Declaration from Mike Costache in support of this Reply.

16

17   DATED:  May 13, 2016          BEVERLY HILLS LAW CORP., PC

18

19                         By:  __/s/ Sagar Parikh___

                            Sagar Parikh, Esq.

20                             Attorneys for Alan Argaman, Secured

                          Merchants, LLC and Chargeback Armor,

21                             Inc.

22

23

24

25

26

27

28   **ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................... 6

II. LEGAL ARGUMENT ............................................................ 7

A. SM Was Not a Part of Any Common Enterprise With the
AuraVie Defendants .............................................................. 8

1. Lack of Common Officers or Employees ............................... 9

2. No Commingling of Funds. ............................................... 11

3. SM Did Not, Directly or Indirectly, Market AuraVie ............... 12

4. There Is No Evidence of Shared Office Space and There is a
Distinction of Entities ........................................................ 12

5. SM Did Not Have Any Involvement in AuraVie's Capital Structure and
Finances ........................................................................ 13

B. CBA Was Not Part of the Common Enterprise.. ....................... 13

C. There Is No Basis For Holding Argaman Liable ...................... 14

III. CONCLUSION ............................................................... 16

**ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO
PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

3

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.,* 477
U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ............................ 8

*Delaware Watch Co. v. FTC,* 332 F. 2d 745, 746 (2d Cir.
1964*)*.................................................................................................. 8

*FTC v. CHBA,* Case No. 1:10-cv-3551, Order at 9,
(E.D.N.Y May 23, 2012) ...................................................... 8

*FTC v. Freecom C'ommo'n, Inc.*, 401 F.3d 1192, 1205
(10th Cir. 2005) ........................................................ 16

*FTC v. Kuykendall,* 371 F. 3d 745, 758-59 (10th Cir. 2004)........................ 11

*FTC v. National Urological Grp. Inc.*, 645 F. Supp. 2d 1167,
1183 n. 7 (N.D. Ga. 2008) ....................................... 11

*FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43
(9th Cir. 2010) ........................................................ 15

*FTC. v. Swish Mag.*, No. C 09-03814 RS, 2010
WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) ............................... 16

*FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1277................................. 16
(M.D. Fla. 2012)

*Maceachern v. City of Manhattan Beach,* 623 F. Supp. 2d 1092, 1097
(C.D. Cal. 2009) ........................................................ 7

*S.A. Empresa de Viacao Aerea Rio
Grandense v. Walter Kidde & Co.,* 690 F.2d 1235, 1238 (9th Cir. 1982) ..... 7

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68, 127 S. Ct. 2201,
167 L. Ed. 2d 1045 (2007) ....................................... 16

**ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

*SEC v. Murphy,* 626. F.2d 633, 640 (9th Cir. 1980) ......................................7


**STATUTES**

Fed. R. Civ. P. 56(a). .........................................................................8

**ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO
PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The undisputed facts show that SM and Argaman through SM were third-party IT service providers to the AuraVie Defendants --nothing more.  In the face of sworn testimony and documents evidencing this limited role, the FTC responds not with deposition testimony contradicting Argaman's assertions, not with admissible documents evidencing SM/Argaman's involvement in the common enterprise, but with documents that confirm Argaman's limited involvement or with documents for which the FTC offers no testimony or evidentiary foundation but rather about which the FTC speculates to try and inflate SM and Argaman's role into something more than the evidence shows that it is.

Tellingly, the FTC did not submit any declarations or deposition testimony, and there are none, showing that SM/Argaman's role was any different than as Argaman has described.  Indeed, Alon Nottea, the acknowledged leader of the alleged common enterprise, has testified that SM/Argaman's role was limited:

"Neither Alan Argaman, the sole owner of SM, nor SM were involved with nor had management control over AuraVie marketing or charging or processing of AuraVie customer credit cards, debit cards or bank accounts. Neither Argaman nor SM were owners, managers, employees, or officers of BMG, SBM, or any retail merchant company that sold AuraVie. SM offered a software they called "chargeback armor" that we utilized to help us better manage our chargebacks.  Argaman/SM never managed accounts AuraVie had with limelight.  SM and Argaman never designed any websites or landing pages for AuraVie.  AuraVie had its own internal designers.  SM was paid on a fee for services basis." (See Deposition of Alon Nottea)  There is no

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO
PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

6

genuine dispute of material fact regarding the limited role played by SM and Argaman.  Similarly, there is no genuine dispute of material fact that the funds that SM invested in CBA did not come from the conduct challenged by the FTC.   The MSJ should be granted and the case dismissed with prejudice as to Argaman, SM, and CBA.  And all frozen monies belonging to them should be unfrozen and released to them.

## II.

## LEGAL ARGUMENT

The Supreme Court has held that to defeat summary judgment: "[t]he mere existence of a scintilla of evidence. . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 214, quoted and followed in *Maceachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1097 (C.D. Cal. 2009).  As this Court has held, the opponent cannot rest on its pleadings: "There must be specific, admissible evidence identifying the basis for the dispute." *Maceachern*, 623 F. Supp. 2d at 1097 (citing *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982)); *see also SEC v. Murphy*, 626. F.2d 633, 640 (9th Cir. 1980).  Thus, any opposition to the Defendant's Motion must set forth admissible evidence that is significantly probative, and not merely colorable, of any fact that is claimed to be disputed. *Murphy*, 626 F.2d at 640.

Instead of disputing the Uncontroverted Facts with specific, admissible, and significantly probative evidence, the FTC resorts to speculating about the meaning of documents that they failed to inquire about during Argaman's deposition and making numerous irrelevant arguments that serve only as red herrings with no relation to the conduct challenged in the complaint.

**ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants have established that there are no triable issues as to the following: (1) Defendants were not a part of the common enterprise and thus can't be held jointly and severally liable as a common enterprise; (2) Argaman did not participate in, did not have the authority to control, and had no knowledge of the deceptive activities, meaning he cannot be subjected to liability for injunctive and monetary relief; and (3) CBA is not a proper relief defendant.

Because none of these facts are adequately disputed by the FTC's Opposition, as more fully discussed below, Defendants are entitled to summary judgment as a matter of law and the First Amended Complaint must be dismissed with prejudice.

## A. **SM Was Not a Part of Any Common Enterprise With the AuraVie Defendants.**

As stated in the Motion, Courts allow the FTC to use the common enterprise doctrine to expand the agency's reach beyond those who themselves deceptively market a product where the "same individuals were transacting an integrated business through a maze of interrelated companies." *Delaware Watch Co. v. FTC, 332 F. 2d 745, 746* (2d Cir. 1964). Applying *Delaware Watch*, courts rely on several factors to assess the existence of a common enterprise: whether companies (1) maintain officers and employees in common; (2) operate under common control; (3) share offices; (4) commingle funds; and (5) share advertising and marketing. See *FTC v. CHBA, Case No. 1:10-cv-3551, Order at 9*, (E.D.N.Y May 23, 2012). No one factor is determinative, rather, the entirety of the factual circumstances dictates whether a common enterprise exists and whether a company should be found to be a part of it. *Delaware Watch*, 332 F.2d 1143.

Here, neither any individual factor nor the overall circumstances support finding that Argaman, SM, or CB were part of any common enterprise involving the AuraVie Defendants.

**ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

8

### 1. <u>Lack of Common Control and Interrelated Companies</u>

Most of the work done by SM is done by technical personnel in India. (Argaman Decl. at ¶ 2).  Argaman, the sole managing member and owner of SM at all times since SM was formed, was not an employee or officer of any of the AuraVie Defendants.  (Argaman Decl. at ¶ 1, 3, 4).

The FTC  ignores that SM had numerous other clients besides SBM and indeed this is why this Court granted SM's Motion to Release and Unfreeze Funds last fall. The FTC also ignores that numerous other vendors provided services to the AuraVie Defendants in addition to SM.

Additionally, Doron Nottea's relationship with SM is inadequate to impose joint and several liability upon SM as Mr. Nottea was not in control of SM's bank account.  Being an authorized signer on a bank account does not mean that one is in control of that bank account.  Indeed, the FTC has no evidence showing that Nottea deposited or withdrew or transferred any funds from any SM bank account. Additionally, Nottea was not an officer or employee of SM.  (Argaman Decl. at ¶ 4, Argaman Depo., 131:4-24).

As far as Nottea being listed as a "member" on a bank account document, this was something that was filled in by a bank employee and not something that Argaman wrote in.  (Argaman Decl. at ¶ 24).

Additionally, the email cited as purportedly referring to SM as a "Bunzai" company does not say that and is another example of the FTC mischaracterizing the evidence.  See Exhibit 394

With regards to Reuveni, Reuveni was an outside consultant for SM, as testified to in Reuveni's  declaration in support of his Opposition to the FTC's MSJ and in his deposition.  See Reuveni Declaration and Exhibit 553, p. 54:7-11.  Reuveni was never an employee of SM, but only a temporary independent contractor, by and through his company Trigen, LLC.  (Argaman Decl. at ¶ 25).

**ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

9

1    In its Opposition, the FTC cites numerous Exhibits which purportedly show that

2    SM was controlled by, owned by, managed by, and/or operated by other Defendants,

3    besides Argaman.  However, each and every one of these Exhibits cited is

4    mischaracterized and none of them show what the FTC purports to argue.

5    The "operating agreement" that the FTC cites, containing the name of Alon

6    Nottea, is an unsigned draft, as can be seen on the face of the document itself, and

7    indeed, SM was not even formed until June 25, 2013, (Argaman Decl. at ¶ 26).

8    Argaman has always been the sole owner and operator of SM.  (Argaman Decl. at ¶

9    1).

10    With regards to Argaman's relationship with Igor Lastanovksy, Argaman met

11    with Igor to potentially discuss doing business (unrelated to AuraVie) involving

12    technical start-up ideas that Igor wanted to potentially invest in, but nothing

13    materialized. (Argaman Decl. at ¶ 27).

14    Next, Reitenbach  and Stayner are not Defendants in this matter.  Exhibit 391-2

15    shows Stayner working for SBM not SM.  SM hired Reitenbach when he was out of a

16    job and no longer working for Pinnacle Logistics. Exhibit 370 is taken out of context

17    and has nothing to do with the claim being made.  Stayner received a total of $5,666

18    from SM for temporary services over two months for services unrelated to AuraVie.

19    (Argaman Decl. at ¶ 37).  The above is not sufficient to hold that SM is in interrelated

20    company along with the other AuraVie Corporate Defendants nor do these arms-

21    length relationships with bank account signers and independent contractors show any

22    common control.

23    Notably, the FTC does not argue, and indeed cannot show, that SM, Argaman,

24    or CBA controlled any of the AuraVie Corporate Defendants.

25    SM's only connection with the AuraVie merchants was in providing IT services

26    to those merchants primarily for viewing and handling chargebacks and for

27    developing their IVR system.  Secured Merchants' role was to provide the technology

28    **ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1    for handling chargebacks and an IVR system; Secured Merchants was not involved in

2    actually handling chargebacks or dictating the content of the IVR.  (Argaman Decl. at

3    ¶ 5-6).

4         This type of third-party vendor relationship is not common control and not the

5    basis for imposing common enterprise liability.  See *FTC v. Kuykendall*, 371 F. 3d

6    745, 758-59 (10th Cir. 2004) (finding no common enterprise based on commonly

7    owned company providing and being paid for services such as equipment leasing,

8    billing, and collecting); *FTC v. National Urological Grp. Inc.*, 645 F. Supp. 2d 1167,

9    1183 n. 7 (N.D. Ga. 2008) (finding common enterprise where companies were not

10   "compensated for services" performed on the "on the other companies behalf.").

11        Here, unlike the situation in *Kuykendall*, where there was a commonly owned

12   company that was providing vendor-like services and no common enterprise liability

13   was found,SM is not commonly owned with the AuraVie Defendants as Argaman is

14   the sole owner, so the imposition of common enterprise liability is even more

15   unwarranted.  Indeed, the Receiver, in her Initial Report, admitted that SM is a

16   legitimate company.  Doc. 120.

17        **2.  No Commingling of Funds**

18        The FTC seeks to transform SM being paid $340,000 for services rendered into

19   commingling of funds.  Not surprisingly, the FTC offers no legal or factual support

20   for its alchemy.

21        With regard to the $250,000 that was invested in CBA, these were monies that

22   were not from SBM Management, Inc. and thus cannot be considered as "tainted" or

23   part of the AuraVie scheme.  (Argaman Decl. at ¶ 18-20).

24        The FTC also mischaracterizes the Defendant's position by stating that

25   "sending an invoice to SBM legitimized the mere shifting of money between (to

26   borrow Doron's phrase) the "BunZai compan[ies]" as arms-length."

27

28   **ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1    The Defendants have never claimed as such.  What is claimed is that SM
2    provided legitimate, technological, arms-length services to SBM in exchange for
3    payment, which payments were made pursuant to invoices. (Argaman Decl. at ¶ 28).
4    There is no shifting of money that the FTC claims to have occurred.  Notably, there is
5    no evidence provided of this shifting of money between SM and SBM.

### 3.  SM Did Not, Directly or Indirectly, Market AuraVie

6
7        The FTC in its Opposition argues that Argaman created landing pages for
8    AuraVie, showing that he helped marketed AuraVie.  The FTC also argues that
9    Argaman and SM participated in other marketing campaigns for AuraVie.  This is not
10   true.
11       Argaman, either individually, or through SM/Secured Commerce, did not create
12   any landing page for AuraVie, other than a straight-sale landing page. (Argaman
13   Depo., 49:8-18; Argaman Decl. at ¶ 9).    Any emails relating to websites, such as
14   Exhibit 531, deal with technological services related to Limelight and have nothing to
15   do with the actual content of the website, designing the website, or creating the
16   website.  (Argaman Decl. at ¶ 36).
17       AuraVie Angels was not a marketing campaign that SM/Argaman worked on.
18   (Argaman Decl. at ¶ 29).

### 4.  There Is No Evidence of Shared Office Space and There is a Distinction of Entities

19
20       The FTC in its Opposition argues that SM operated out of the same offices as
21
22   the AuraVie Defendants.
23       However, the evidence shows that the AuraVie entities operated out of the 7900
24   Gloria, Van Nuys CA address and briefly from a space at the Canby building in Suite
25   103. Neither Secured Merchants nor Argaman had anything to do with those spaces.
26   The AuraVie entities leased, paid for, and occupied those spaces without the
27   involvement of Argaman or SM.  (Argaman Decl. at ¶ 10-11).
28
     **ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO
     PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY
     JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

When the AuraVie entities vacated that space some remaining inventory was moved into the space used by Doron Nottea's adult business pending disposition.

These incidental contacts fail to establish that SM was a part of a common enterprise.

Additionally, SM was not a predecessor to CBA as CBA is a wholly separate company formed in February 2015.  (Costache Decl. at ¶ 4).  Costache was never an employee of SM.  (Costache Decl. at ¶ 10).

Next, the chargeback armor technology was not developed for AuraVie specifically.  (Argaman Decl. at ¶ 30).

**5.  SM Did Not Have Any Involvement in AuraVie's Capital Structure and Finances**

The FTC in its Opposition next argues that SM was involved in AuraVie's finances, capital structure, and operations.  These are unsupported allegations.

SM did not provide any chargeback resolution services, as it simply created the technology, but did not approve or deny or process chargebacks.  Nor did SM actually provide IVR services, having only provided the technology for it.  (Argaman Decl. at ¶ 5-6).

With regards to Limelight, SM integrated the chargeback armor software technology into Limelight, which is a third-party company is unrelated to SM. (Argaman Decl. at ¶ 30).

With regards to the purported SM "executive summary", this appears to be an incomplete draft document that does not show that it was authored by Argaman, nor does it contain any date.  Indeed, this is not something that Argaman ever created used.  (Argaman Decl. at ¶ 31).

**B.  CBA Was Not Part of the Common Enterprise**

After only naming CBA as a Relief Defendant in its First Amended Complaint, the FTC remarkably and improperly does a change of direction and now claims that

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

13

1  CBA is part of the common enterprise.  Besides being procedurally improper as this
2  was not initially alleged to begin with and thus cannot now be raised for the first time
3  an Opposition to a MSJ, there is no evidence showing CBA is part of the common
4  enterprise.

5       CBA was not even formed until February 2015, which is after the AuraVie
6  scheme stopped operating.  It has never done any chargebacks for AuraVie.
7  (Costache Decl. at  ¶ 4).

8       Next, Costache was the only founder, director, officer, and shareholder of CBA
9  at all times.  (Costache Decl. at ¶ 1-2).

10       Argaman, Reuveni, the Notteas, or any other Defendant did not ever have any
11  role with CBA other than as an independent contractor consultant in Reuveni's case.
12  (Costache Decl. at ¶ 1, 2, 3, 8, 9, 11, 12).  SM making a $250,000 business investment
13  into CBA does not automatically make Argaman a part of CBA, as the FTC would
14  wish. The FTC again relies on a draft "executive summary" documents that were
15  never sent out or used in practice.  (Costache Decl. at ¶ 13).

16       Bizarrely, the FTC relies on Paul Medina's testimony as support.  The FTC
17  itself cannot even establish that Medina had any role with CBA nor would have any
18  personal knowledge of the operations of CBA.

19      **C. There Is No Basis For Holding Argaman Liable.**

20       The FTC has never shown and indeed cannot show that Argaman received a
21  single penny from any of the AuraVie Defendants.  (Argaman Decl. at ¶ 22).

22       As Argaman stated in his deposition, he only ever worked on an AuraVie site
23  that was a straight sale site, i.e. had no continuity, risk free trial offers, negative
24  options, etc.  See Argaman Depo., 49:8-18)  The FTC chose not to ask Argaman
25  about Exh. 839 at his deposition, and cannot now speculate about what this document
26  means to defeat summary judgment.  This straight sale website that did not contain

27
28     **ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO
PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1  any prohibited advertising or marketing cannot be considered "critical to the scheme's
2  success."

3      The FTC shows a screenshot of a Miracle face kit and uses this as evidence that
4  Argaman designed this website.  However, Argaman did not create the website and
5  Exhibit 531 shows as an attachment "SHIPPING ID 10.jpg; SHIPPING ID 9.jpg".
6  These shipping IDs are part of Limelight and do not refer to design as neither
7  Argaman nor SM designed this page. (Argaman Decl. at ¶ 36). (Argaman Decl. at ¶
8  9).

9      Moreover, Argaman never decided what products AuraVie would sell, never set
10  up any shell corporation's phone numbers, did not have anything to do with shipping,
11  marketing, or advertising, did not create AuraVie websites, and did not manage any
12  promotional campaigns for AuraVie.  (Argaman Decl. at ¶ 2, 7, 12-16, 23, 29, 32, 33,
13  34).

14      With regards to knowledge, Argaman did not have actual or constructive
15  knowledge of any of the allege wrongdoing that AuraVie was involved in, such as
16  "load balancing" or "high risk accounts" as Argaman was simply not privy to this.
17  (Argaman Decl. at ¶ 12-16, 33).  Argaman cannot be held liable because he was
18  copied on select emails out of the thousands that the FTC reviewed.  Indeed, none of
19  these emails used by the FTC contain any responses by Argaman with regards to any
20  of these alleged wrongdoings.

21      The Exhibits the FTC points to as showing purported chargeback statistics does
22  not contain any reference to chargeback statistics and moreover, Argaman had no role
23  with CBA.  (Argaman Decl. at ¶ 21).

24       The Ninth Circuit has explained that "the common law has generally
25  understood [recklessness] in the sphere of civil liability as conduct violating an
26  objective standard: action entailing 'an unjustifiably high risk of harm that is either
27  known or so obvious that it should be known'" *Network Serv. Depot, Inc.*, 617 F.3d at

28  **ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO
PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1141 n. 12 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68, 127 S. Ct. 2201,
167 L. Ed. 2d 1045 (2007).)

Where the material facts are substantially undisputed, knowledge can be a
question of law properly decided by summary judgment. See *Network Serv. Depot,
Inc.*, 617 F.3d at 1139.

There is no evidence showing that Argaman actually knew of or was recklessly
indifferent to purported misrepresentations or unfairness concerning the negative
option, continuity, risk-free trials, and/or any of the other forms of deceptive
advertising and marketing alleged.  (Argaman Decl. at ¶ 7, 12-16).

This case is unlike *FTC v. Freecom C'ommo'n, Inc.*, 401 F.3d 1192, 1205 (10th
Cir. 2005) (finding individual defendant liable where evidence of frequent meeting
attendance, final control over all senior hiring and marketing campaigns, and status as
controlling shareholder of a closely held corporation supported inference of authority
to control corporate defendant) and more like *FTC. v. Swish Mag.*, No. C 09-03814
RS, 2010 WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) (rejecting FTC's argument that
individual defendant's "status as CEO, standing alone, plausibly demonstrates his
control over the company and warrants the inference of involvement in the deception"
in granting CEO's motion to dismiss) and *FTC v. Wash. Data Res.*, 856 F. Supp. 2d
1247, 1277 (M.D. Fla. 2012) (although individual defendant had authority over day-
to-day affairs of corporate defendant, it was not until another employee was
terminated and she obtained authority over the sales division one could infer she had
the authority to control the sales people and their use of a deceptive sales script.)

### III.

### CONCLUSION

For the aforementioned reasons, Argaman, CBA, and SM should be granted
summary judgment against the FTC on all of the claims the FTC alleges against these
Defendants as there is simply no evidence (after a year of litigation and two months

**ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO
PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

before trial) that these Defendants can be held liable for any wrongdoing, even if this matter proceeded to a trial.  These defendants must be dismissed from the case, be awarded their costs, and any monies of theirs that are frozen by the FTC and the FTC's Receiver must be unfrozen and released to them.

DATED:  May 13, 2016                    **BEVERLY HILLS LAW CORP., PC**


                                        By:   /s/ Sagar Parikh
                                              Sagar Parikh, Esq.
                                              *Attorneys for* Alan Argaman, Chargeback
                                              Armor, Inc. and Secured Merchants,
                                              LLC

**ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

17

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 13, 2016, a true and correct copy of the foregoing document was electronically emailed to the attorneys listed below.

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea and
Roi Rueveni*

Randi R. Geffner
Esensten Law
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA 90025
(310) 273-3090
RGEFFNER@ESENSTEINLAW.COM
*Counsel for Doron Nottea and Motti Nottea*

Jeffrey S. Benice
Law Offices of Jeffrey S. Benice
3080 Bristol Street
Sixth Floor, Suite 630
Costa Mesa, California 92626
E-Mail: JSB@JeffreyBenice.com
*Counsel for Igor Latsanovski and
CalEnergy, Inc.*

Benjamin A Pettit
20 East Pueblo Street
Santa Barbara, CA 93105
*Counsel for Alon Nottea*

REID TEPFER
rtepfer@ftc.gov
Texas Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov
Oklahoma Bar No. 19098
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75206
*Counsel for FTC*

Sagar Parikh, Esq.