**BEVERLY HILLS LAW CORP., PC**
Sagar Parikh, Esq. (SBN 282655)
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
Telephone:   (310) 887-1338
Facsimile:    (310) 982-2603
Email:         SP@BeverlyHillsLawCorp.com

TERREE A. BOWERS (SBN 89334)
terree.bowers@arentfox.com
JEFFREY R. MAKIN (SBN 252426)
jeffrey.makin@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400

Attorneys for Alan Argaman, Secured Merchants, LLC
and Chargeback Armor, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:15-cv-04527-GW (PLAx) |
| Plaintiff, | |
| vs. | **ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| BUNZAI MEDIA GROUP, INC., et al., | |
| Defendants. | |
| SECURED MERCHANTS, LLC, CHARGEBACK ARMOR, INC. AND ALAN ARGAMAN, | **Hearing Date:  May 23, 2016 Time: 8:30 am Location:  Courtroom 10 – Spring St. Judge: Hon. George H. Wu** |
| Cross-Claimants | |
| v. | |
| ALON NOTTEA, an individual, | |
| Cross-Defendant | |

- 1 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

Defendants ALAN ARGAMAN ("Argaman"), SECURED MERCHANTS, LLC ("SM"), and CHARGEBACK ARMOR, INC. ("CBA") (collectively "Defendants") hereby submit this Response to the FTC's Statement of Genuine Disputes of Material Facts

| Defendants' Uncontroverted Fact | FTC's Response |
|---|---|
| 1. SM is a technology company that has only had one member, manager, and owner at all times it has existed. (Argaman Decl. at ¶ 1). | 1. Disputed.<br>1. Plaintiff does not dispute that SM is a technology company.<br>2. Plaintiff disputes:<br>That SM had one member: Along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC, listing his title as "Managing Member." Ex. 412-5. Moreover, Doron Nottea was listed as a member of Secured Merchants in bank documents. Ex. 176-2.<br>That SM had one manager: SM's Operating Agreement for the company lists Defendants Alon Nottea alongside Argaman as the Managers. Ex. 255-22. SM's Executive Summary lists Defendants Paul Medina and Alon Nottea alongside Defendant Argaman as managers. Ex. 256-2.<br>That SM had one owner: Ownership for limited liability companies is represented as membership interests. Therefore, Plaintiff reasserts: along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC, listing his title as "Managing Member." |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants' Response: SM has always had one owner and one managing member, Argaman.  (Argaman Decl. at ¶ 1). SM has always been a single member LLC and always filed its taxes as a single member LLC.  The operating agreement that the FTC refers to is an unsigned document that carries a date prior to when Argaman formed his single member LLC and in addition was never executed.

Reuveni was a consultant for SM, through his company Trigen, LLC, as Reuveni stated in his is deposition (Exhibit 553, p. 54:7-11)  and as stated by Argaman (Argaman Decl. at ¶ 25). Furthermore, EX 412-5 shows Roi did not hand write his title as managing member onto SM company template intended for Argaman's usage.  In addition, the document is for work unrelated to AuraVie  and was signed by Reuveni while he was not employed by AuraVie.  The FTC failed to ask Reuveni or Argaman about this Exhibit during either of their depositions, and now speculates as to what this Exhibit shows.  There is also no foundation laid for this document.

The "executive summary" referred to by the FTC is a draft document of unknown origin, date or author and not something that was created by Argaman.  (Argaman Decl. at ¶ 31).

| | |
|---|---|
| 2. Argaman has been the sole member, manager, and owner of SM since SM was formed. (Argaman Decl. at ¶ 1). | 2. Disputed.<br>Plaintiff disputes:<br>That SM had one member: Along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC, listing his title as "Managing Member." Ex. 412-5. Moreover, Doron Nottea was listed as a member of Secured Merchants in bank documents. Ex. 176-2.<br>That SM had one manager: SM's Operating Agreement for the company lists Defendants Alon Nottea alongside Argaman as the Managers. Ex. 255-22. SM's Executive Summary lists Defendants Paul Medina and Alon Nottea alongside Defendant Argaman as managers. Ex. 256-2.<br>That SM had one owner: Ownership |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | | for limited liability companies is represented as membership interests. Therefore, Plaintiff reasserts: along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC, listing his title as "Managing Member." |
| 6 | **Defendants' Response:** SM has always had one owner and one managing member, Argaman. (Argaman Decl. at ¶ 1). The operating agreement that the FTC refers to is an unsigned document that carries a date prior to when Argaman formed his single member LLC and in addition was never executed, as shown on the face of the document. Reuveni was a consultant for SM, through his company Trigen, LLC. (Argaman Decl. at ¶ 25). The "executive summary" referred to by the FTC is a document of unknown origin by an unknown author and not something that was created by Argaman. (Argaman Decl. at ¶ 31). With regards to the bank documents that Doron was on listed as a member, as shown on the documents themselves, this was not something Argaman filled out. (Argaman Decl. at ¶ 24). Additionally, Doron Nottea never signed on behalf of or used the bank account for any purpose. (Argaman Decl. at a ¶ 4). | |
| 15 | 3. The only business that SM did with the AuraVie Defendants in this case is providing technological services to SBM Management, which services were memorialized in detailed invoices and were arms-length business transactions. (Argaman Decl. at ¶ 5-6, Argaman Depo., 109:8-25, Exhibit 833 ) | 3. Disputed. 1. Plaintiff does not dispute that SM provided services concerning the sale of AuraVie to SBM Management, Inc. and that those services were memorialized in invoices. 2. Plaintiff does dispute: That SM's services for SBM were the "only business that SM did with the AuraVie Defendants": The services SM provided SBM Management, Inc. served the entire common enterprise, not just SBM Management. (Dkt. #120, at 24.) For example, SM contested chargebacks for the sale of AuraVie products (Ex. 555, at 75:1-5; 348-3), which were |

- 4 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | sold by various Corporate Defendants and not SBM (Dkt. #120, at 24). SM also had an ownership interest in Chargeback Armor (Dkt. #231-1, at 50 and 53; *see also* exs. 256-1; 257-2; 280-1; 414), the company which Defendant Alon Nottea admitted was used to refute chargebacks for the common enterprise. Ex. 550, at 171:3-171:6. |

**Defendants Response:** SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks. It only provided the technology for the chargebacks. (Argaman Decl. at ¶ 5-6). SM was not an owner of CBA. (Costache Decl. at ¶ 1, 8, 9, 12, 13). CBA never processed chargebacks for AuraVie as it was not even formed until February 2015. (Costache Decl. ¶ 4). Exhibits 256-1, 257-2, 280-1 do not support the FTC allegations as they are unknown drafts with no date or author as they were not written by Argaman. (Argaman Decl. at ¶ 31). Exh. 414 is an invoice to Argaman from his vendor for services unrelated to the allegations in this case. The FTC tries to use Exhibit 550 to show an admission by Alon Nottea, but this same document has Alon Nottea admitting to using other 3rd party chargeback service providers, naming "Sabina" as one of them. If anything, this document actually supports Defendants' position.

| | |
|---|---|
| 4. This service provided by SM to the AuraVie Defendants consisted of developing and installing a portal system through which chargebacks made by consumers could be viewed and processed and providing the technology for the Interactive Voice Response (IVR) system. (Argaman Decl. at ¶ 5, 6, 13, 16). | 4. Disputed<br>Plaintiff disputes that the services Secured Merchants provided to the other AuraVie Defendants were limited to these two services. Services that Secured Merchants provided to other members of the common enterprise included: (1) chargeback resolution through their "ChargeBack Armor" service (Ex. 555, at 75:1-5; 256; 257; Dkt. #121-7, at 2); (2) automated customer service systems through their "voice logix" system (Dkt. #121-7, at 2) and other assistance with Defendants' call center (Ex. 47); and (3) assisting |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants in managing consumer relations for their negative option continuity plans through LimeLight, a third party customer relationship management. (*See*, *e.g.,* Dkt. #121-6, at 12; ex. 946, at 20:3-20:16.) Plaintiff further disputes that Secured Merchants "Chargeback Armor" service consisted of merely "installing a portal system." Secured Merchants company description states that, as part of their "ChargeBack Armor" service, Secured Merchants "handle[s] the entire chargeback dispute process on your behalf." Ex. 257. Moreover, Secured Merchants provided "realtime" information concerning the

"results" of their chargeback refutation.

**Defendants' Response:** SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks. It only provided the technology for the chargebacks to be processed. Nor did SM provide any IVR services, dictate the content of the IVR, or dictate what the IVR said to customers. (Argaman Decl. at ¶ 5-6). The executive summary referenced by the FTC in Exhibit 257 was a draft document of unknown origin by an unknown author and not something that SM or Argaman created. (Argaman Decl. at ¶ 31).

| | |
|---|---|
| 5. SM did not process (accept or deny) chargebacks nor did it dictate the content of the IVR system. (Argaman Decl. at ¶ 5, 6, 17). | 5. Disputed.<br>1. Plaintiff does not dispute that SM did not dictate the content of the IVR system.<br>2. Plaintiff disputes:<br>That SM did not process chargebacks: The meaning of this contention is unclear. Plaintiff does not dispute that payment processors and banks are ultimately responsible for accepting or denying consumer chargeback demands.<br>However, SM "processed" Auravie's |

- 6 -

| | |
|---|---|
| | chargebacks, including through its ChargeBack Armor service, if by "processed" Defendants mean that SM provided the services that accounted for and sought to mitigate chargeback demands resulting from the scheme's deceptive practices. Secured Merchants described ChargeBack Armor as "Credit card chargeback processing, management & dispute services." Ex. 256. Indeed, Secured Merchants company description states that, as part of their "ChargeBack Armor" service, Secured Merchants "handle[s] the entire chargeback dispute process on your behalf." Ex. 257. |

**Defendants' Response:** SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks.  It only provided the technology for the processing of chargebacks.  SM provided technology to be used for an IVR system, but SM did not  dictate the content of the IVR, or dictate what the IVR said to customers. (Argaman Decl. at ¶ 5-6).  The executive summary/company description referenced by the FTC in Exhibit 257 was a draft document of unknown origin and not something that SM or Argaman created.  (Argaman Decl. at ¶ 31).

| | |
|---|---|
| 6. The only AuraVie website that Argaman created or designed was the straight-sale AuraVie website that did not use negative options, continuity, or risk free trials. (Argaman Depo., 49:8-18) | 6. Disputed. <br> 1. Plaintiff disputes the entirety of this contention: <br> Defendant Argaman was an owner and the manager of Defendant Secured Commerce LLC (Dkt. #299 ¶ 39), which designed the landing page used for deceptively marketing and selling AuraVie's skincare products according to an invoice. Ex. 46. Moreover, emails show Defendant Argaman working on and discussing with Defendant Alon Nottea a Miracle |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Face Kit website. Ex. 531. | |

**Defendants' Response:** Argaman only created a straight sale website, through Secured Commerce, for AuraVie, which site did not contain any deceptive marketing or advertising. Ex 531 shows as an attachment "SHIPPING ID 10.jpg; SHIPPING ID 9.jpg". These shipping IDs are part of Limelight and do not refer to design as neither Argaman nor SM designed this page. (Argaman Decl. at ¶ 36). (Argaman Decl. at ¶ 9). These emails do not show that SM or Argaman designed the negative option pages at issue. The email relates to shipping IDs for Limelight (Argaman Decl. at ¶ 36).The FTC chose not to ask Argaman in his deposition in regards to this and now attempts to misconstrue it against him.

| | |
|---|---|
| 7. SM never employed any of the other Defendants in this case at any time, nor was ever owned, operated or controlled by any other Defendants in this case. (Argaman Decl. at ¶ 1, 3). | 7. Disputed.<br>1. Plaintiff disputes the entirety of this contention:<br>Ownership: Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC, listing his title as "Managing Member." Ex. 412-5. Moreover, Doron Nottea was listed as a member of Secured Merchants in bank documents. Ex. 176-2.<br>Control: SM employed, and was operated, owned or controlled by, many Defendants. Secured Merchants' "Executive Summary," created in June 2013, states that the company's management consisted of Defendants Alon Nottea, "Avi" Argaman, and Paul Medina. Ex. 256-2. Secured Merchants LLC's operating agreement draft names Defendant Argaman and Defendant Alon Nottea as the company's two managers. Ex. 255-5. Moreover, Defendant Roi Reuveni testified that he was employed by Secured Merchants LLC. Ex. 553, at 16:9-16:11.<br>Employees and Operations: Although |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

|  |  |
|---|---|
|  | SM was purportedly owned solely by Alan Argaman, Paul Medina requested approval from Doron and Defendant Alan Argaman to switch one of the Limelight accounts over to SM. Ex. 59. Moreover, Nottea coordinated the common enterprise's certified public accountant's paying of SM employees, telling Nottea that such payments would "come off from your [i.e., SM's] account," relating to payment of a SM employee. Ex. 289. |

**Defendants' Response:** Reuveni was a consultant for SM, not an employee.  (Argaman Decl. at ¶ 25).  The FTC claim that ROI Reuveni was employed is false and Ex. 553 is mischaracterized as Roi Reuveni states that he had no titles with SM and that he consulted with SM through Trigen (Exhibit 553, p. 54:7-11).  Reuveni's Declaration in Support of his Opposition to the FTC's MSJ and Reuveni's deposition transcript also reflect this.  The executive summary/company description referenced by the FTC in Exhibit 257 was a draft document of unknown origin and not something that SM or Argaman created.  (Argaman Decl. at ¶ 31).  Exhibit 59 does not have anything to do with the ownership of SM as the FTC does not explain how asking about moving a Limelight account that didn't belong to SM and that was never moved to SM relates to ownership of SM. Exhibit 289 is an email to "global media", undefined email address and this cryptic email has no mention of Doron Nottea or Secured Merchants' bank account.

| 8. Doron Nottea was put as an authorized signer on the SM bank account for convenience purposes, but never actually wrote any checks on behalf of SM. (Argaman Decl. at ¶ 4). | 8. Disputed.<br>1. Plaintiff does not dispute that Doron Nottea never wrote any actual checks on behalf of SM but qualifies this response by noting Nottea's role in having the common enterprise's certified public accountant provide a "pay stub" for payroll that will "come off from your [i.e., SM's] account," relating to |
|---|---|

| | |
|---|---|
| | payment of a SM employee. |
| | 2. Plaintiff disputes: |
| | That Doron Nottea was only placed on the SM bank account for convenience purposes: Doron Nottea was not listed on the SM bank account for convenience. He was listed on the company's bank account because he, along with Alan Argaman, (1) controlled SM (Ex. 59); (2) provided bookkeeping services to SM (Ex. 551, at 58:23-59:9); and (3) provided instructions and authorization to the common enterprise's certified public accountant relating to paying employees. Exs. 287; 289. Moreover, Doron Nottea was listed as a member of Secured Merchants in bank documents. Ex. 176-2. |

**Defendants' Response:** Doron Nottea was not listed as a member of SM on bank account documents by Argaman, but by a bank employee who added him as a signer. (Argaman Decl. at ¶ 24).  Exhibit 287 relates to W2s for SM being sent to "Global Media."  It is unclear how this makes Doron Nottea a member of SM.  Exhibit 289 is also to somebody entitled "Global Media" and relates to an employee of SM, and does not have anything to do with the ownership of SM.

| | |
|---|---|
| 9. Argaman never engaged in any advertising or marketing, directly, or indirectly, for the sale of AuraVie skincare products. (Argaman Decl. at ¶ 5-7). | 9. Disputed. |
| | 1. Plaintiff disputes the entirety of this contention: |
| | Defendant Argaman was an owner of Defendant Secured Commerce, LLC, (Dkt. #299 ¶ 39), which designed the landing page used for deceptively marketing and selling AuraVie's skincare products according to an invoice. Ex. 46. Moreover, emails show Defendant Argaman working on and discussing with Defendant Alon Nottea a Miracle Face Kit website. |

- 10 -

| | Ex. 531. Moreover, emails show Defendant Argaman being consulted, along with Defendants Alon and Doron Nottea, concerning advertising for a skincare product. Ex. 360; *see also* ex. 361. Acting either on behalf of one of his corporate entities or in his individual capacity, Defendant Argaman designed and managed the AuraVie Angels advertising campaign. Exs. 185; 187; 494; 497. |
|---|---|
| **Defendants' Response:** Argaman only created a straight sale website, through Secured Commerce, for AuraVie, which site did not contain any deceptive marketing or advertising. (Argaman Decl. at ¶ 9). In regards to Exhibits 360, 361 The email containing the presentation was originally sent by Ygal Edy, not Argaman. Additionally, LeElle is for a separate high scale department store business that needed an ecommerce presence; however, the product was never created, sold or marketed as it never got off the ground. LaElle has nothing to do with the conduct challenged in the complaint. (Argaman Decl. at ¶ 32). The AuraVie Angels, assuming it was an advertising campaign, which is not shown on the face of Exhibits 185, 187, 494, or 497, was not something Argaman assisted in marketing or advertising. (Argaman Decl. at ¶ 29). The Exhibits discuss Argaman providing technological services, such as creating a blog that was never created. It is not disputed that Argaman, by and through SM, conducted such arms-length vendor business with the AuraVie Defendants. | |
| 10. Argaman never had any control, ownership, or operational role in any of the AuraVie Defendants. (Argaman Decl. at ¶ 5-7, 10-17). | 10. Disputed. 1. Plaintiff disputes the entirety of this contention: Ownership: Defendant Argaman was an owner of Defendants Secured Commerce, LLC (Dkt. #299 ¶ 39), Secured Merchants (Dkts. 244 ¶ 39; 245 ¶ 39), and Chargeback Armor, Inc. Ex. 281-3. Secured Commerce designed the landing page used for deceptively marketing and selling AuraVie's skincare products |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

according to an invoice. Ex. 46. SM provided a variety of services described in genuine dispute response #4. Chargeback Armor was a service used by Defendants to respond to consumer chargebacks. Ex. 550, at 171:3-171:6.

Control: Argaman was an operator, board member, and the Chief Technology Officer of Relief Defendant CBA. Exs. 231-1 at 36, 281. He operated Secured Commerce, LLC (Dkt. #299 ¶ 39), serving a role that included designing and creating the AuraVie landing page. Ex. 46. He also operated SM alongside Defendant Doron Nottea and the other individual Defendants discussed in Facts No. 1 and 2, *supra*.

Other Operational Roles: Argaman provided a variety of services to Defendants. *See*, *e.g.*, Ex. 149. He provided technical expertise to the other Corporate Defendants, including establishing a relationship with or otherwise managing a third party and in-house call centers for AuraVie consumer complaints (Exs. 149; 386; 432; 441; 516), software for continuity sales ((*See*, *e.g.*, Dkt. #121-6, at 12; ex. 946, at 20:3-20:16), and websites. Exs. 46; 440; 441; 531; *see also* Ex. 555, at 49:5-49:18. He also participated in product selection and packaging for the Corporate Defendants (Exs. 360, 362; *see also* 361), and assisted in establishing dozens of phone numbers for

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | Defendants' shell corporations. Ex. 432. Finally, he managed or was involved in managing shipping logistics relating to Pinnacle Logistics, Inc., although it is unclear whether he was acting as an employee of Pinnacle or in his individual capacity. Exs. 367; 370. |
|---|---|

Defendants' Response: Argaman only created a straight sale website, through Secured Commerce, for AuraVie, which site did not contain any deceptive marketing or advertising.  (Argaman Decl. at ¶ 9).  Additionally, Argaman never had any ownership of CBA.  (Argaman Decl. at ¶ 21; Costache Decl. at ¶7, 8).  Argaman never created any numbers for shell corporations, and Exhibit 432 does not even refer to this as the word shell is not contained anywhere in that Exhibit.  Argaman, consistent with his role as a technology provider, by and through SM, assisted companies with obtaining phone numbers. (Argaman Decl. ¶ 33).  Exhibit 367 appears to be an email that may need technical assistance or was accidentally sent to Argaman, as Argaman simply forwards it to Doron Nottea without replying to it or commenting on it. Again, Argaman cannot control who emails him or what he is emailed about.  Exhibit 370 relates to changing IDs for products, a technological service that SM and Argaman provided as arms-length vendors .

| 11. Argaman did not have knowledge of, nor was he recklessly indifferent the AuraVie Defendants made to consumers. (Argaman Decl. at ¶ 10-16). | 1. Plaintiff disputes the entirety of this contention: Defendant Argaman had knowledge of, or was recklessly indifferent to, the Auravie Defendants' misrepresentations to consumers. He was an owner of Defendant Secured Commerce LLC (Dkt. 299 ¶ 39), which designed the primary landing page template for AuraVie's deceptive business practices. Ex. 46. He provided integration services for the common enterprise's customer service management software, Limelight (*See* Dkt. #121-6, at 9-21; Dkt. #121-7, at 1-3; Ex. 555, at 51:3-19; *see also* Ex. 946, at 19:23-20:17), |
|---|---|

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

which was used for continuity sales. The scope of the roles he played in the scheme was comprehensive: Argaman at least (1) participated in AuraVie's "AuraVie Angels" campaign (Exs. 185; 187; 494; 497); (2) was involved with shipping logistics of the products (Exs. 174; 367; 370); (3) pitched similar products to other Defendants as potential business opportunities (Ex. 361; *see also* Ex. 362); managed chargebacks and refunds (Exs. 256; 257-2; Ex. 555, at 75:1-5; 348-3; Dkt. #121-7, at 1-3); and (4) designed the "free trial" landing page for the scheme. Exs. 46; 531. Such a broad swath of responsibilities undermines any attempt by Defendant Argaman to feign ignorance of the business he was engaged in. Furthermore, he helped the common enterprise process large numbers of continuity plan cancellations and "resolve consumer disputes before they [became] chargebacks." Ex. 257-2. *See also* ex. 256; Ex. 555, at 75:1-5; 348-3.

Defendants' Response: Argaman only created a straight sale website, through Secured Commerce, for AuraVie, which site did not contain any deceptive marketing or advertising. (Argaman Decl. at ¶ 9). Exhibit 367 appears to be an email that may need technical assistance or was accidentally sent to Argaman, as Argaman simply forwards it to Doron Nottea without replying to it or commenting on it. Again, Argaman cannot control who emails him or what he is emailed about. Exhibit 370 relates to changing IDs for products, a technological service that SM and Argaman

provided as arms-length vendors. The AuraVie Angels, assuming it was an advertising campaign, which is not shown on the face of Exhibits 185, 187, 494, or 497, was not something Argaman assisted in marketing or advertising.  (Argaman Decl. at ¶ 29). The Exhibits discuss Argaman providing technological services, such as creating a blog.  It is not disputed that Argaman, by and through SM, conducted such arms-length vendor business with the AuraVie Defendants.  SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks.  It only provided the technology for the chargebacks.  Nor did SM provide any IVR services, dictate the content of the IVR, or dictate what the IVR said to customers.  (Argaman Decl. at ¶ 5-6).  With regards to Limelight, SM and Argaman simply connected the chargeback armor technology to Limelight.  Limelight  is not a company that Argaman has any affiliation with.  (Argaman Decl. at ¶ 30).

| | |
|---|---|
| 12. Argaman never designed, selected, or created any of the products AuraVie sold to consumers. (Argaman Decl. at ¶ 15). | 12. Disputed.<br>1. Plaintiff does not dispute that Argaman did not design or create any AuraVie products.<br>2. Plaintiff does dispute:<br>That Argaman did not aid in selecting products:<br>*Attitudeline/INFINI*: Defendant Argaman sold Attitudeline/INFINI skincare products, a product that Defendants marketed or sold, or assisted others in marketing or selling, by negative option continuity plans (or assisted others in marketing or selling in the same manner). Ex. 368.<br>*LeElle*: Defendant Argaman sent Doron Nottea a presentation concerning a product called LeElle. Ex. 361. Defendant Argaman was later consulted concerning the company's packaging design. Ex. 361. Defendant Argaman also provided input concerning who would own the new product Defendants were marketing. Ex. 362. |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants' Response: LeElle was a product that was unrelated to AuraVie and moreover, was never sold or marketed regardless.  (Argaman Decl. at ¶ 32).  Attitudeline/INFINI were not products that Argaman/SM ever sold or marketed and belonged to a different company altogether. (Argaman Decl. at ¶ 34).  Moreover, Exhibit 368 does not even show that these skin products had anything to do with AuraVie.

| | |
|---|---|
| 13. Argaman never dealt directly or indirectly with any AuraVie consumers. (Argaman Decl. at ¶ 13, 14, 16).<br><br>386 | 13. Disputed.<br>1. Plaintiff disputes the entirety of this contention:<br>Defendant Argaman helped create an automated response system to allow large numbers of consumers to cancel their AuraVie continuity plans. He also helped establish a relationship with or manage a call center in India. Exs. 149; 386; Ex. 121-7, at 1. *See also* 441.<br>Furthermore, he was an owner of Defendant Secured Commerce LLC (Dkt. 299 ¶ 39), which designed the primary landing page template for AuraVie's deceptive business practices. Ex. 46.<br>Finally, he was responsible for planning and executing the AuraVie Angels campaign. *See* Exs. 185; 494; 497. |

Defendants' Response: Argaman only created a straight sale website, through Secured Commerce, for AuraVie, which site did not contain any deceptive marketing or advertising.  (Argaman Decl. at ¶ 9).  SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks.  It only provided the technology for the chargebacks.  Nor did SM provide any IVR services, dictate the content of the IVR, or dictate what the IVR said to customers.  (Argaman Decl. at ¶ 5-6).  The AuraVie Angels, assuming it was an advertising campaign, which is not shown on the face of Exhibits 185, 494, or 497, was not something Argaman assisted in marketing or advertising.  (Argaman Decl. at ¶ 29).  The Exhibits discuss Argaman providing technological services, such as creating a blog.  It is not disputed that Argaman, by and through SM, conducted such arms-length vendor business with the AuraVie

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

Defendants.

The Exhibits are also misconstrued, and the FTC once again fails to provide any foundation for these exhibits or testimony putting them in the proper context.  Exhibit 149 deals with technical projects, not call centers; and Exhibit 441 deals with auditing outstanding bills; Exhibit  386 does not reference call centers, nor does it reference AuraVie or any of the AuraVie Corporate Defendants.  Additionally, the subject is "Telestar" and has nothing to do with Argaman assisting in a call center.  See Argaman Decl. at . ¶ 6, 7, 13, 16.

| 15. Argaman was never paid by SM or any of the AuraVie Defendants. (Argaman Decl. at ¶ 22). | 15. Disputed.<br>*1.* Plaintiff does not dispute that Argaman was never paid by SM or by any of the AuraVie Defendants but qualifies this response by noting that where, as here, one is the owner of an entity, any revenues generated by the entity and not paid out as either employee salary or as a capital withdrawal remain on the company's books as retained earnings. These retained earnings function to increase the enterprise value. The enterprise value is a gain to the owners of the enterprise. So, even if not actually paid as an employee or as a capital withdrawal, Defendant Argaman nevertheless accrued economic value from the scheme's deceptive business practices. Ex. 46. SM admits to receiving more than $300,000 from Defendant SBM Management for chargeback services relating to the sale of skincare products. Ex. 918-57, ¶236. |
|---|---|

Defendants' Response:  This is a creation of a novel legal theory by the FTC, relating to purported increase in "enterprise value" of SM.  There is no legal support for this assertion nor does the FTC's dispute contain any evidence that Argaman was paid by

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| SM or any of the AuraVie Defendants.  Even assuming SM received the $300,000, the FTC provides no evidence showing any of this money went to Argaman.  (Argaman Decl. at ¶ 22). | |
| 16. SM never employed any of the Defendants in this case. | 16. Disputed. |
| | 1. Plaintiff disputes the entirety of this contention: |
| | SM employed several of the Individual Defendants as well as employees of other Corporate Defendants: |
| | *Roi Reuveni*: testified he worked for both Chargeback Armor and Secured Merchants. Ex. 553-5, at 16:1-16:23. Moreover, he held himself out as a managing member of Secured Merchants. Ex. 412-5. |
| | *Alon Nottea and Paul Medina*: Secured Merchants' "Executive Summary," created in June 2013, states that the company's management consisted of Defendants Alon Nottea, "Avi" Argaman, and Paul Medina. Ex. 256-2. Secured Merchants LLC's operating agreement draft names Defendant Argaman and Defendant Alon Nottea as the company's two managers. Ex. 255-22. |
| | *Doron Nottea*: Paul Medina requested approval from Doron and Defendant Alan Argaman to switch one of the Limelight accounts over to SM. Ex. 59. Nottea provided bookkeeping services (Ex. 557-11, at 58:21-25), controlled SM's bank account, created the email address securedmerchantsllc@gmail.com (Ex. 357; *see also* Ex. 942), and provided authorization for the common |

- 18 -

| | |
|---|---|
| | enterprise's accountant to make payroll disbursements. Ex. 289-1. *Robert Stayner and Tyler Reitenbach*: Regarding the Corporate Defendants, both Stayner (Ex. 287-2) and Reitenbach (Ex. 287-2) were employees of SM while employees of other Corporate Defendants. Stayner was also an employee of SBM Management (Ex. 391-2), while Reitenbach was an employee of CBA and Pinnacle Logistics, Inc. Exs. 563, 370. |

**Defendants' Response:** SM has always had one owner and one managing member, Argaman. (Argaman Decl. at ¶ 1).

The FTC claim that ROI Reuveni was employed is false and Ex. 553 is mischaracterized as Roi Reuveni states that he held no titles at SM and that his company Trigen provided IT consulting to SM (Exhibit 553, p. 54:7-11). Reuveni's Declaration in Support of his Opposition to the FTC's MSJ and Reuveni's deposition transcript also reflect this. Also see Argaman Decl. at ¶ 25.

With regards to Exhibit 412-5, to begin with, it is a company template agreement between SM and a company called Creative Ventures, Inc., which is completely unrelated to AuraVie, skincare, or this matter. Additionally, the FTC failed to ask Reuveni or Argaman about this Exhibit during either of their depositions, and now speculates as to what this Exhibit shows. There is also no foundation laid for this document.

The "executive summary" referred to by the FTC is a document of unknown origin or author and not something that was created by Argaman. (Argaman Decl. at ¶ 31). Argaman has at all times been the sole owner of SM. Argaman Decl. at ¶ 1, 29. Additionally, this draft document does not contain the words "Executive Summary" nor does it purport to have been authored by Argaman, the sole member of SM. Moreover, SM was not even created until the end of June 2013. Argaman Decl. at ¶ 29

The operating agreement is a draft and an unsigned document. Argaman has at all times been the sole owner of SM. Additionally, Exhibit 255-22 is dated June 1, 2013

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

and SM was not even formed until June 25, 2013. Argaman

Doron Nottea did not control SM's bank account.  (Argaman Decl. at ¶ 4, 24). Argaman has at all times been the sole owner of SM and cannot control what Doron Nottea does .  (Argaman Decl. at ¶ 35).  Argaman Decl. at ¶ 1.  Ex. 357does not show that Doron Nottea created this email address as his name is nowhere on the document and Ex. 942 is even more puzzling as it has nothing to do with bookkeeping services to SM.

To begin with, Reitenbach  and Stayner are not Defendants in this matter.  Exhibit 391-2 shows Stayner working for SBM not SM.  SM hired Reitenbach when he was out of a job no longer working for Pinnacle Logistics. Exhibit 370 is taken out of context and has nothing to do with the claim being made.  Stayner received a total of $5,666 from SM for temporary services over two months for services unrelated to AuraVie.  (Argaman Decl. at ¶ 37)

| | |
|---|---|
| 17. SM or Argaman or CBA never approved or denied chargebacks for the AuraVie Defendants. (Argaman Decl. at ¶ 6, 17, Costache Decl. at ¶ 4). | 17. Disputed.<br>1. Plaintiff disputes the entirety of this contention:<br>Plaintiff reasserts its response to Fact #5: The meaning of this contention is unclear. Plaintiff does not dispute that payment processors and banks are ultimately responsible for accepting or denying chargeback demands. However, SM disputed consumer chargeback requests, including through its ChargeBack Armor service. Ex. 281-1.<br>SM's role in founding and developing CBA is also relevant here. Defendant Argaman and SM provided $250,000 to CBA (Ex. 916-57, ¶235; Ex. 917-65, at ¶235), owned and operated CBA's website (Ex. 280), and oversaw CBA's chargeback statistics. Dkt. #231-1, at 7. In turn, a document titled "Secured Merchants" described the "ChargeBack Armor" services as |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

helping "win back lost revenue by reversing chargebacks in your favor" and "handl[ing] the entire chargeback dispute process on your behalf." Ex. 257-1. Mike Costache, then a SM employee and soon-to-be purported CBA CEO, sent an email to a SM client that included referring to SM as "the technology company that developed the CBA product" and then noted that SM is "transitioning all clients to be billed" by CBA. Dkt. #231-1, at 8.

Relief Defendant CBA refuted consumer chargebacks for the unauthorized AuraVie charges. Ex. 946-9, at 24:9-24:23. CBA boasted to potential investors that "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Ex. 281-2. Defendant Alon Nottea corroborated that Chargeback Armor, Inc. processed chargebacks for the common enterprise. Ex. 550-26, at 172:3-6.

**Defendants' Response:** SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks. It only provided the technology for the chargebacks. Nor did SM provide any IVR services, dictate the content of the IVR, or dictate what the IVR said to customers. (Argaman Decl. at ¶ 5-6). Exs. 281-1 is a draft document that was never used or sent out. Exhibit 257.1 referenced does not show or reflect that Argaman or anybody else from SM drafted the document and the FTC has not laid any foundation for this document. Additionally, it appears to only be a partial draft of a document that was never used or sent out.

Costache was never an employee of SM. (Costache Decl. at ¶ 10). CBA was not even active until February 2015 and thus could not have contested AuraVie chargebacks. (Costache Decl. at ¶ 4). The $250,000 provided from SM to CBA was an arms-length

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

business investment and full tracing was shown for this transaction.  (Argaman Decl. at ¶ 18-20; Costache Decl. at ¶ 5-6).  Exhibit 280 referenced is a Secured Merchants document and nowhere does it reference CBA.

Exhibit 281-2 is a draft document that was never used.  Additionally, the document refers to a previous version of the chargeback software and has nothing to do with CBA, as CBA was not incorporated until February 2015.

The FTC tries to use Exhibit 550 to show an admission by Alon Nottea, but this same document has Alon Nottea admitting to using other 3rd party chargeback service providers, naming "Sabina" as one of them. If anything, this document actually supports Defendants' position.

| | |
|---|---|
| 18. CBA was not formed until February 2015, by Mike Costache. (Costache Decl. at ¶ 4, Exh. 811). | 18. Disputed. 1. Plaintiff disputes the entirety of this contention: Although not formally incorporated until March 2015, the company operated informally before incorporation. For example, CBA boasted in its Executive Summary to potential investors that "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Ex. 281-2. Moreover, an email from Costache to a client stated that SM was transitioning to billing under Chargeback Armor. Dkt. #231-1, at 8. |

Defendants' Response:  It is unclear how a company could operate "informally" before it is even in existence. (Costache Decl. at ¶4).  Moreover, the executive summary is a draft document that was never used or sent out. (Costache Decl. at ¶13). Exhibit 281-2 is a draft document that was never used.  Additionally, the document refers to a previous version of the chargeback software and has nothing to do with CBA, as CBA was not incorporated until February 2015.

| | |
|---|---|
| 19. Costache has at all times been the sole incorporator, shareholder, | 1. Plaintiff does not dispute that Costache incorporated |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | director, and board member of CBA. (Costache Decl. at ¶ 1). | CBA. |
| 2 | | 2. Plaintiff does dispute: |
| 3 | | That Costache was the sole shareholder of CBA: Defendant Alon |
| 4 | | Nottea solicited investors for Chargeback Armor (ex. 910-33, ¶234; |
| 5 | | Ex. 917-65, ¶234), and the purported Chargeback Armor CEO referred to |
| 6 | | him as his "business partner." Dkt. |
| 7 | | 120, at 19. Roi Reuveni was COO of the company. Ex. 917, at ¶237. SM |
| 8 | | was offered equity ownership interest in CB armor in exchange for its |
| 9 | | $250,000 investment. Dkt. #231-1, at |
| 10 | | 53; *see also* Dkt. #231-1, at 50. Alon |
| 11 | | Nottea's email signature was from Chargeback Armor. Dkt. #231-1, at |
| 12 | | 27. Moreover, purported CEO Mike |
| 13 | | Costache also consulted with the Individual Defendants concerning |
| 14 | | hiring and contracting decisions. Dkt. |
| 15 | | #231-1, at 11-13, 23, and 26. |
| 16 | | Additionally, in a March 23, 2015 email, Costache represented that Alon |
| 17 | | Nottea was a board member of the |
| 18 | | company and Roi Reuveni was COO. |
| 19 | | Dkt. #231-1, at 52. |
| 20 | | That Costache was the sole director of CBA: A Chargeback Armor, Inc. |
| 21 | | services agreement dated March 2, |
| 22 | | 2015 describes the company's board of directors as consisting of Mike |
| 23 | | Costache, Alon Nottea, and Avi Argaman. Chargeback Armor's |
| 24 | | Executive Summary lists Defendant |
| 25 | | Alon Nottea as President, Defendant |
| 26 | | Alan Argaman as Chief Technology |
| 27 | | Officer, and Defendant Roi Reuveni |
| 28 | | |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

as Customer Service Manager. Doron Nottea was a signatory on Chargeback Armor's bank account and is listed as secretary of the company on its Bank of America account.

That Costache was the sole board member of CBA: Insofar as "sole director" and "sole board member" are equivalent, Plaintiff reasserts: A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. #231-1, at 36. Chargeback Armor's Executive Summary lists Defendant Alon Nottea as President, Defendant Alan Argaman as Chief Technology Officer, and Defendant Roi Reuveni as Customer Service Manager. Ex. 281-3. Doron Nottea was a signatory on Chargeback Armor's bank account and is listed as secretary of the company on its Bank of America account. Dkt. #231-1, at 46, 48. In a March 24, 2015 email, Costache represented that Defendant Alon Nottea was a board member. Dkt. #231-1, at 53.

Defendants' Response: It is unclear how soliciting investors, even assuming that Alon Nottea did that, makes one an owner, shareholder, board member, or director of a company. The same argument applies when discussing Costache purportedly taking advice from certain individuals. Reuveni was a consultant and the FTC has even been provided the contract for this consultancy. (Costache Decl. at ¶ 11). The executive summary is a draft document that was never used or sent out. (Costache Decl. at ¶13). Nottea was not an employee of CBA, but only on the bank account for convenience purposes. (Costache Decl. at ¶ 2, 3, 8, 9, 12).

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 20. Argaman was never employed by or had any ownership interest in CBA. (Argaman Decl. at ¶ 21, Costache Decl. at ¶ 7). | 20. Disputed.<br>1. Plaintiff disputes the entirety of this contention:<br>Chargeback Armor's Executive Summary lists Argaman as Chief Technology Officer. Ex. 281-3. He was also listed as a member of the company's board of directors. Dkt. #231-1, at 36. Indeed, Argaman and his Secured Merchants company owned and operated CBA. Dkt. 231-1, at 53. *See* Ex. 280. He incorporated it in concert with other Individual Defendants. Ex. 404. SM provided CBA $250,000 in startup capital. Ex. 916-57, ¶235; Ex. 917-65, at ¶235. He participated in discussions concerning high-level corporate decisions for Chargeback Armor ranging from updates regarding the launch of the company to opening the company's corporate bank account. Exs. 184, 369. He received reports concerning new Chargeback Armor customers. Ex. 184. Finally, he was billed by Nova 8 Media for design services for CBA. Ex. 414. |
| **Defendants' Response:** The executive summary is a draft document that was never used or sent out.  (Costache Decl. at ¶13).  Argaman was never an owner of CBA and did not operate CBA.  (Argaman Decl. at ¶ 21; Costache Decl. at ¶ 2, 3, 8, 9, 12).  It is not disputed that Argaman and SM provided vendor-type technological services as arms-length business transactions, thus it is unclear what relevant the Nova 8 Media bill has. | |
| 21. The $250,000 that SM invested in CBA was an arms-length business transaction and these funds came from entities other than the AuraVie Defendants. (Argaman Decl. at ¶ 18, 19, | 21. Plaintiff disputes the entirety of this contention:<br>That the $250,000 Investment in CBA was Arms-Length: Defendant Secured Merchants LLC provided $250,000 to |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 20, Costache Decl. at ¶ 5, Exh. 834-838). | CBA (Ex. 916-57, ¶235; Ex. 917-65, at ¶235; Dkt. #231-1, at 53), which was itself operated by several of SM's managers, officers and employees. SM received more than $300,000 in funds for providing chargeback services relating to the sale of Defendants' skincare products. Ex. 918-57, ¶236. That the funds came from entities other than the AuraVie Defendants: Defendants failed to establish that the funds transferred from Chargeback Armor's sole bank account were not funds received from the common enterprise. The only evidence provided to support this merely establishes that SM had clients in addition to the Defendants. *See* Dkt. 354, at 23 (citing Exs. 834-838). |

**Defendants' Response:** The $250,000 provided from SM to CBA was an arms-length business investment and full tracing was shown for this transaction. (Argaman Decl. at ¶ 18-20; Costache Decl. at ¶ 5-6). CBA never processed chargebacks for AuraVie as it was not even formed until February 2015. (Costache Decl. ¶ 4).

| | |
|---|---|
| 22. CBA never received any ill-gotten gain from the AuraVie Defendants. (Costache Decl. at ¶ 4, Exh. 838). | 22. Plaintiff disputes the entirety of this contention: CBA received ill-gotten gains as part of the common enterprise. Specifically, CBA was paid to process chargebacks and perform other services for the AuraVie Defendants. CBA also received $250,000 from Secured Merchants, LLC (Ex. 917-65, ¶235; Dkt. #231-1, at 53), which received more than $300,000 in funds for providing chargeback and other services relating to the sale of Defendants' skincare products. Exs. |

- 26 -

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | 918-57, ¶236; 918-57, ¶236; 550-26, at 172:3-172:6. Moreover, CBA served the common enterprise by refuting consumer chargebacks relating to the unauthorized AuraVie charges. CBA boasted to potential investors that "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Dkt. #231-1, at 5. Defendant Alon Nottea corroborated that Chargeback Armor, Inc. processed chargebacks for the common enterprise. Ex. 550-26 p. 172:3-172:6. |
| Defendants' Response: The $250,000 provided from SM to CBA was an arms-length business investment and full tracing was shown for this transaction.  (Argaman Decl. at ¶ 18-20; Costache Decl. at ¶ 5-6).  CBA never processed chargebacks for AuraVie as it was not even formed until February 2015.  (Costache Decl. ¶ 4). | |
| 6. To establish common enterprise liability, it must be shown that individuals transact business through a "maze of interrelated companies." *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2013) (quoting *Delaware Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964). | 6.  Defendants are substituting a necessary showing for a factor courts consider in determining whether there is a common enterprise: "Factors in determining common enterprise include: (1) common control; (2) sharing office space and offices; (3) whether business is transacted through a 'maze of interrelated companies'; and (4) commingling of funds." *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2012). |
| Defendants' Response: The factors the FTC lists are not met regardless, as show in the Reply to the FTC's Opposition.  There was no sharing of office space, interrelated companies, or commingling. | |
| 7. The FTC has not shown any | 7. Disputed. |

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| material issue of fact in this case. | *See* Plaintiff's Motion for Summary Judgment, Dkts. 353; 353-1. |
|---|---|
| Defendants' Response: The Opposition to the MSJ addresses these issues. | |

DATED:  May 13, 2016                    **BEVERLY HILLS LAW CORP., PC**


By:   /s/ Sagar Parikh
         Sagar Parikh, Esq.
         *Attorneys for* Alan Argaman, Chargeback Armor, Inc. and Secured Merchants, LLC

ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S
RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT