ROBERT L. ESENSTEN (SBN 65728)
    resensten@esenstenlaw.com
RANDI R. GEFFNER (SBN 116574)
    rgeffner@esenstenlaw.com
**ESENSTEN LAW**
12100 Wilshire Boulevard, Suite 1660
Los Angeles, California 90025
Telephone: (310) 273-3090
Facsimile:  (310) 207-5969

Attorneys for Defendants DORON NOTTEA and MOTTI NOTTEA

TERREE A. BOWERS (SBN 89334)
    terree.bowers@arentfox.com
JEFFREY R. MAKIN (SBN 252426)
    jeffrey.makin@arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: (213) 629-7400
Facsimile:  (213) 629-7401

Attorneys for Defendant DORON NOTTEA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.:  2:15-CV-04527-GW (PLAx) |
| Plaintiff, | *Assigned to the Honorable George Wu, Courtroom 10* |
| v. | **REPLY RE JOINT MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND RACHEL NOTTEA; SUPPLEMENTAL DECLARATION OF LORI BEKHOR; DECLARATION OF ROBERT L. ESENSTEN** |
| BUNZAI MEDIA GROUP, INC., *et al.*, | |
| Defendants. | |
| | **DATE:   May 23, 2016** |
| | **TIME:   8:30 a.m.** |
| | **DEPT:  Courtroom 10** |

1

1      Defendant DORON NOTTEA ("D. Nottea"), as well as Moving Parties LORI

2  BEKHOR ("Bekhor") and RACHEL NOTTEA ("R. Nottea"), jointly submit the

3  following Reply to the Opposition filed by Plaintiff FEDERAL TRADE

4  COMMISSION ("FTC") to their Motion for Release of Frozen Funds ("Motion"):

5  ## I.  INTRODUCTION

6      In its continual efforts to financially ruin the entire Nottea family[1], the FTC

7  refuses to release seized funds of the rightful owners by opposing this Motion.  The

8  FTC has presented no legal or factual basis for its opposition.  Apparently the goal is

9  to have the funds held, yet the FTC has failed to explain why separate funds of non-

10 parties could or would be available to satisfy any judgment that the FTC may or

11 may not obtain against Doron, or any other Defendant.

12     As set forth in the moving papers, the frozen funds improperly include cash

13 belonging to Bekhor as her separate property, which was held in a safe deposit box,

14 and funds belonging solely to R. Nottea which are held in an account at HSBC.  The

15 FTC has not provided a single shred of admissible evidentiary fact rebutting the

16 facts established by Moving Parties, nor has it provided any controlling legal

17 authority in support of its opposition.

18     In lieu of providing facts or law to oppose the Motion, the FTC relies instead

19 on pure speculation, mischaracterization and misrepresentations.   The smoke and

20 mirrors approach is insufficient to rebut the entitlement of Bekhor and R. Nottea to

21 release of their wrongfully frozen assets.

22     For the reasons set forth in the Motion, and for the further reasons as set forth

23 in more detail hereinbelow, the Motion must be granted and the frozen funds

24 immediately released to the rightful owners thereof.

25

26 _____

27 [1]  Attached hereto **Exhibit "5"** is a list of all assets related to Doron Nottea that have been seized by the FTC to date.

28

1    II.    **THE SEPARATE PROPERTY OF BEKHOR IN THE SAFE DEPOSIT**

2           **BOX HAS BEEN WRONGFULLY FROZEN.**

3          The Motion indisputably establishes that Bekhor received the frozen funds via

4    inheritance from her grandfather.  There is no dispute that funds received by

5    inheritance are the separate property of the inheriting spouse, nor does the FTC

6    dispute that.  Absent any genuine grounds contained within the opposition, the FTC

7    instead engages in rampant speculation about the funds at issue; this speculation is

8    unsupported by any evidence whatsoever and must be rejected by this Court.

9          A.    **The Bekhor Declaration is Credible Evidence.**

10          In lieu of providing any credible evidence of its own, the FTC attempts to

11   dismiss as "self-serving" the Bekhor Declaration, which contains specific facts as to

12   the dates of receipt of the inheritance checks from her grandfather, a copy of the

13   relevant page of the 706 form, an email from the administer of the estate, as well as

14   copies of each check, and sworn testimony that the checks were cashed and the

15   proceeds thereof placed in the safe deposit box.  This attempt to discredit the Bekhor

16   declaration is unfounded.

17          All evidence offered by a party is self-serving, in the sense that it is

18   supportive of the offering party's position; such evidence cannot be discounted on

19   the grounds that it is self-serving.  *Olive v. Fox* (2012) 211 Cal. App. 4th 1036, 1050.

20          "As we have previously noted, declarations oftentimes will be "self-
          serving"—'[a]nd properly so, because otherwise there would be no point in [a
21        party] submitting [them].'" *United States v. Shumway,* 199 F.3d 1093, 1104
          (9th Cir.1999)." *S.E.C. v. Phan* (2007) 500 F. 3d 895, 911.
22

23          B.    **The FTC Offers Only Speculation in Opposition to the Motion.**

24          The FTC offers only speculation to address the facts contained in the Bekhor

25   Declaration establishing the source of her cash contained in the safe deposit box.

26   The FTC variously speculates that it was an "unusual decision" to place cash in a

27   safe deposit box, that it is likely that the money did not come from an inheritance,

28   that the name "Lori" written on the bundles of cash does not indicate that the cash

1   belonged to her, that the cash was actually for some unspecified "payment" from

2   Bekhor to Doron Nottea, or that the cash may have been money Bekhor received for

3   being listed as a CEO of two companies (Opposition, pages 5-6).  What is missing

4   from this recitation of pure speculation is a single supporting fact.

5       Even after almost a year attempting to find any evidence that the funds are not

6   the separate property of Bekhor or were obtained from any source other than the

7   inheritance, the FTC has espoused its fantastical theories about the source of the

8   cash at issue, theories that are not supported by a single piece of evidence.  These

9   theories must be disregarded as there is no basis in fact or law, and as such the

10   speculation does not discredit or disprove the facts as established in the Motion.

11   The FTC has produced terabytes of documents that it obtained from the Defendants

12   in June 2015.  If there was any evidence that the Bekhor money was anything other

13   than what has been proven in the Moving Papers, the FTC would have produced it.

14       To address the speculation of the FTC as set forth in its Opposition, Bekhor

15   submits a supplemental declaration establishing that, "unusual" or not, it was her

16   decision to cash the checks and put the money into a safe deposit box.  Certainly,

17   Bekhor is not the first person nor will she be the last who have done something

18   unusual with their money.  Bekhor Decl., ¶¶2-3.  Bekhor has not received any

19   money from the sale of AuraVie products.  Bekhor Decl., ¶5.  Again, the FTC has

20   had almost a year to disprove this fact.  It has not done so because the evidence

21   simply does not exist.

22       The most telling evidence is the fact that the funds are identified as Lori's.

23   What would the FTC argue if the bundles of funds were not marked with her name?

24   The conduct of Bekhor and Doron long before the FTC froze the funds certainly

25   establishes that they have separated the funds thus the FTC cannot now legitimately

26   question this fact.    Bekhor Decl., ¶¶2-4.

27   ///

28   ///

## C.    The FTC and the Receiver Have Acknowledged the Separate Character of the Bekhor Funds.

The true facts, as established by the Motion, are that the funds at issue were the separate property of Bekhor, a fact that was acknowledged by both the FTC and the Receiver long before the Motion was filed.  As set forth in detail in the Motion, various items of equipment and personal property were purchased from the Receiver using the separate property funds of Bekhor pursuant to a Notice of Sale and Asset Purchase Agreement (Docket No. 307-1) submitted by the Receiver.  Not only was the fact that the separate funds of Bekhor were used to purchase the assets confirmed in writing by the FTC by its "Approval of the Form and Content" of the Asset Purchase Agreement, the terms thereof, which the FTC accepted, specifically state that Bekhor warrants that the funds used were her sole and separate property (¶2.2).  Further, the terms provide that the executed declaration of Bekhor (which attested to the separate source for the funds) was a condition precedent to the closing of the sale (¶ 4.1.1).  The Asset Purchase Agreement is clearly based on the separate property nature of the funds used for the purchase.

The FTC attempts to evade its own acknowledgment of the separate character of the Bekhor funds by disingenuously arguing now, long after the closing of the asset sale, that the facts establishing the separate property character of the funds were not a necessary prerequisite to the sale.  This new version of the facts is wholly contradicted by the evidence.

In support of its Opposition the FTC has submitted a declaration of the Receiver, Charlene Koonce.  In pertinent part, the Koonce Declaration acknowledges that the Bekhor declaration as required by ¶ 4.1.1 of the Asset Purchase Agreement establishing the separate property source of funds was provided to the Receiver (Koonce Decl., ¶9).  The Receiver then details the Court hearing at which she was given direction by the Court to proceed with the sale, concluding with the statement that she does not recall "the Court ruling on the origin

1   of the funds, but instead focusing on the overall cost to sell the computers and data

2   to a different buyer or continuing to maintain the computers and assets in storage."

3   (Koonce Decl., ¶11.)  Although the FTC may think that this statement resolves the

4   issue, it could not be more wrong.

5       **The true fact is that the sale was ordered based on the Court's finding as**

6   **to the source of funds**----a fact that was communicated to all counsel by the

7   Receiver just hours after the hearing occurred.  In her email of December 3, 2015 at

8   11:57 a.m., the Receiver states, in pertinent part, as follows:

9       "Following the court's consideration of the two pending motions this

10      morning, I provided a brief status update and informed the court about the

11      failed sale of the Canby contents and my intent to move forward with a sale of

12      the furniture but continue storing the computers.  ***The judge asked for more***

13      ***information regarding the source of funds you had proposed for the sale***

14      ***and then instructed me to move forward with the sale based on the***

15      ***Declaration and other evidence already provided related to the source of***

16      ***funds***." [Emphasis added.]  (Esensten Decl., ¶3, Ex. 2.)

17      In short, the Receiver's statement in her current declaration is completely

18   opposite of the report she provided counsel immediately after the hearing---a report

19   that confirms that the Receiver and FTC, and the Court, acknowledged that the

20   Bekhor funds in the safe deposit box are her separate property, and moved forward

21   with a sale that benefitted the FTC and the Receiver based on that fact.   The belated

22   change in the Receiver and FTC's position is belied by the truthful statement of the

23   Receiver in her email[2].

24   _____

25   [2]   Additional emails from the Receiver concerning the sale of assets further establish that
     the FTC and Receiver acknowledged the separate character of the Bekhor funds, as
26   follows:

27   November 2 at 10:59am (Expressed concerns, but signed off on the deal).
     December 3 at 11:57am (Court instructed sale to go forward based on declaration re
28   (footnote continued)

REPLY TO OPPOSITION TO MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND
RACHEL NOTTEA

1       The Receiver and FTC cannot acknowledge the separate character of the

2   funds when it was to their benefit, and deny the separate character thereof when it is

3   not.  The Asset Purchase Agreement and the words of the Receiver on the date of

4   the hearing ordering the sale of assets establish that the separate property character

5   of the Bekhor funds in the safe deposit box has already been determined.  That

6   determination should be conclusive herein as well.

7   **III.    THE FUNDS OF R. NOTTEA IN THE HSBC ACCOUNTS HAVE**

8          **BEEN WRONGFULLY FROZEN.**

9       The frozen funds of R. Nottea remain in a savings account at HSBC Premier

10  (Account No. XXXX3585-5[3]) and are the sole property of R. Nottea; D. Nottea has

11  no ownership interest therein.  As set forth in the Motion, the source of the HSBC

12  funds is from an account held by R. Nottea at Santa Barbara Bank & Trust, which

13  account was later closed and used to fund the account at issue at HSBC. The FTC

14  has not disputed this fact.  D. Nottea has never had an ownership interest in the

15  funds deposited into the Santa Barbara Bank & Trust account, and has no ownership

16  interest in the HSBC funds either.  His name was included on the accounts to

17  provide him with a power of attorney over the accounts as R. Nottea and her

18  husband Motti lived and traveled overseas for a substantial portion of each year;

19  naming D. Nottea on said accounts enabled him to assist his mother with her

20  accounts and pay bills as needed while she was out of the country.  The FTC has not

21  disputed these facts.

22  _____

23  service).
    December 4 at 12:00pm (indicates the funds belong to Lori without regard to dates on cash

24  and "I would want the funds removed to be from those funds in the safe deposit box that
    have a sticky on them indicating they belong to Lori, but without regard to dates on the

25  cash").
    December 4 at 12:52pm ("…we use Lori's funds…").

26  (Esensten Decl., ¶¶2-5, Exs. 1-4.)

27  [3]    Full account numbers have been redacted for privacy.

28

REPLY TO OPPOSITION TO MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND
RACHEL NOTTEA

1    The inclusion of D. Nottea's name on the statements from HSBC does not

2    prove that he had any ownership interest therein.  Any presumption that the

3    inclusion of D. Nottea's name on the accounts creates a joint tenancy therein may be

4    overcome by contrary evidence as to the intent in opening the accounts.  *In re*

5    *Kretschmer's Estate* (1965) 232 Cal. App. 2d 789.   The intent of R. Nottea in

6    opening these accounts, and in including the name of D. Nottea therein, is clear

7    from the evidence presented in the Motion.  The FTC attempts to refute this by

8    citing to *Probate Code* §5401 which addresses the imposition of liens, setoffs and

9    other charges against funds held in a joint account.

10    However, *Probate Code* §5301(a) provides that a joint account belongs to

11    parties in proportion to the net contribution of each thereto.  As set forth in the

12    Motion, and unrefuted by any evidence put forth by the FTC, D. Nottea did not

13    contribute any funds to the HSBC jointly-titled account at issue.

14    Further, a similar factual situation was addressed in *Paterson v. Comastri*

15    (1952) 39 Cal. 2d 66.  In *Paterson,* a joint account was opened with one sister's

16    money, all withdrawals were made by her, all passbooks were held by her, and all

17    deposits subsequent to the initial deposit (with the exception of one deposit) were

18    made by her.  In short, despite bank documents indicating that the account was joint,

19    the control over the account, and over deposits and withdrawals, lay solely with one

20    party.  The trial court found that it was never intended, understood or believed by

21    the parties that the inclusion of the non-controlling/non-contributing sister's name

22    on the account would create a joint interest, and that any presumption of joint

23    ownership was overcome by the evidence of intent.   The Court of Appeal affirmed

24    as the evidence was competent to show that the intent was not to create joint

25    accounts nor to create an ownership interest therein in the non-contributing sister.

26    As in *Paterson*, in this case the evidence is clear that D. Nottea and R. Nottea

27    never intended for the HSBC account to impart joint ownership.  The funds therein

28    belong to R. Nottea, the deposits and withdrawals were made solely by her, and D.

1  Nottea was included on the account in name only as a convenience to his mother.

2  The FTC has provided no evidence to the contrary.

3       As D. Nottea has no ownership interest in the HSBC account, there is no basis

4  for freezing funds therein based on the TRO or Preliminary Injunction, which by

5  their terms are applicable only to assets owned, controlled by or held for the benefit

6  of D. Nottea.  Hence, the HSBC funds must be released to the owner thereof, R.

7  Nottea.

8  **IV.**  **WHETHER BEKHOR AND R. NOTTEA, WHO ARE NOT**

9         **DEFENDANTS IN THIS CASE, ALLEGEDLY PROFITED FROM**

10        **ACTIVITIES OF THE ENTITY DEFENDANTS, IS WHOLLY**

11        **IRRELEVANT AND MUST BE DISREGARDED.**

12      Grasping at straws, the FTC makes a final argument that Bekhor and R.

13 Nottea, **who are not parties to this action and are not liable for any eventual**

14 **damage award,** are not entitled to have their wrongfully seized funds returned

15 because (the FTC contends) they were to receive 1% of the amounts processed

16 through merchant accounts in the names of certain companies allegedly involved in

17 the actions alleged in this case[4].

18      Not surprisingly, the FTC cites no legal authority for the proposition that

19 funds of non-parties can be frozen during pending litigation.  The blatant due

20 process issues abound.  Without naming them as parties, providing them with an

21 opportunity to defend against claims against them, or affording any due process

22 rights to them, the FTC contends that their "knowing participation in the deceptive

23 AuraVie common enterprise provides further justification for continuing the asset

24 freeze until a full and complete trail of the merits of this case is held in June 2016."

25 _____

26 [4]   The evidence upon which the FTC relies is inadmissible.  The FTC provides no
foundation or authentication for the hearsay submitted.  Movants separately submit

27 evidentiary objections thereto.

28

REPLY TO OPPOSITION TO MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND
RACHEL NOTTEA

1   (Opposition, page 8.)  This argument offends every notion of due process and must

2   be wholly disregarded.

3       The FTC has had almost a year to prove that Bekhor or R Nottea were

4   involved in the selling of the AuraVie products or benefited therefrom.  They have

5   not. Neither Bekhor or R. Nottea received the 1% fee that the FTC speculates that

6   that they may have done so.  If any funds were paid to Bekhor or R. Nottea the FTC

7   would certainly have provided that evidence to the Court.  (See Declarations of

8   Bekhor and R. Nottea.)

9   **V.    CONCLUSION**

10      It is time for the FTC to cease its quest to financially ruin the entire Nottea

11  family.  The release of these improperly seized funds will be the first step.

12  Wherefore, it is respectfully requested that the funds of R. Nottea and Bekhor be

13  immediately unfrozen and returned to their rightful owners.

14

15  Dated: May 13, 2016                    **ESENSTEN LAW**
                                           ROBERT L. ESENSTEN
16                                         RANDI R. GEFFNER

17
                                    By:  */s/ Robert L. Esensten*
18                                         Robert L. Esensten
                                    Attorneys for Defendants DORON NOTTEA
19                                  and MOTTI NOTTEA

20

21

22

23

24

25

26

27

28

REPLY TO OPPOSITION TO MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND RACHEL NOTTEA

## SUPPLEMENTAL DECLARATION OF LORI BEKHOR

LORI BEKHOR declares:

1.     I am an individual over the age of eighteen and am not a party to the above-captioned action.  All facts stated herein are known to me of my personal knowledge, and if called upon to do so I could and would testify competently thereto.

2.     It was my decision to cash the checks I received from my grandfather's estate and put the money into a safe deposit box.  The money was mine to do with it as I wished and I, in fact, did.   Prior to 2003, the money was in a safe deposit box at another bank which to the best of my recollection was Cal Fed in Encino.  When that bank closed years ago, my inherited money was moved to the Bank of America safe deposit box.  Again, it was my decision to keep the money in the safe deposit box as I simply chose to do so.

3.     My name was written on the bundles of the money as my husband and I kept these funds separate from the balance of the cash in the safe deposit box.  My name has been on these bundles of cash for years now as these funds have always remained my separate property.  The notation of "125" was written by me in 2014 to indicate that $125,000 of my money was in that bundle.  I had an additional $30,000 in that safe deposit box as well.

4.     The FTC speculates that some of the money with my name affixed thereto was a payment from me to Doron.   This is absolutely false.   These funds have always been my separate property.

///
///
///
///
///
///

11

5.     The FTC speculates that I may have received money from the sale of AuraVie products or received a 1% commission from a merchant account.   This is absolutely untrue as I have never received any funds from the sale of AuraVie products or commissions from any merchant account(s).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13 day of May 2016, at Los Angeles, California.


_____
LORI BEKHOR

REPLY TO OPPOSITION TO MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND RACHEL NOTTEA

## DECLARATION OF ROBERT L. ESENSTEN

ROBERT L. ESENSTEN declares:

1.      I am an attorney admitted to practice in the State of California and am the Senior Partner at Esensten Law, attorneys of record for Defendant Doron Nottea. I make this declaration in support of the Reply to the Opposition re Motion for Release of Frozen Funds of Lori Bekhor and Rachel Nottea. All facts contained herein are within my personal knowledge, and if called upon to do so I could and would testify competently hereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the November 2, 2015 (10:59am) e-mail from the Receiver, Charlene Koonce.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of the December 3, 2015 (11:57am) e-mail from the Receiver, Charlene Koonce.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of the December 4, 2015 (12:00pm) e-mail from the Receiver, Charlene Koonce.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of the December 4, 2015 (12:52pm) e-mail from the Receiver, Charlene Koonce.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _13_ day of May 2016 at Los Angeles, California.

_____
Robert L. Esensten

REPLY TO OPPOSITION TO MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND RACHEL NOTTEA

# EXHIBIT 1

**Robert Esensten**

| | |
|---|---|
| **From:** | Charlene Koonce <charlene.koonce@solidcounsel.com> |
| **Sent:** | Monday, November 02, 2015 10:59 AM |
| **To:** | Robert L. Esensten; Gallegos, Luis; Tepfer, Reid A. (rtepfer@ftc.gov) |
| **Subject:** | Sales Agreement |
| **Attachments:** | IMG_0853.JPG; IMG_0854.JPG; IMG_0855.JPG; EDOCS-#108917-v1-Sale_Agreement_-_Canby_Furnishings.DOCX |

Bob, Reid and Luis - A draft of the Sales Agreement is attached for everyone's review, which includes some substantial changes requested by the FTC.   Bob, I think the ball is in your court now for you to let me know if you're agreeable to these terms.   If giving all Ds access within 30 days and then agreeing to wipe all data except the Porn Business Information (you can modify that definition as necessary) is a deal breaker, I need to know it now so I spend no more time chasing this agreement.   Reid and Luis – if the language doesn't conform to your requests, please modify as appropriate.

Also, the dates of the transfers to Lori from her father's estate as set out in her Declaration and the conflicting dates (11/14) on the envelopes in the safe deposit box (see photos), give rise to concerns about the source of the funds in the safe deposit box Lori contends are hers.   The FTC requests that we have someone look at the cash and check to confirm at the dates of the bills that are marked as Lori's are 2004 or earlier.  Bob, I did not budget for that expense in negotiating this sale, and my guess is that it will take my local counsel at least 2 hours in travel time to get out there and inspect the cash.   Given that cost/concern, can we 1) find a different source for payment; or, 2) add $500 to the purchase price?

Please let me know where we stand with this.

Regards,



# CHARLENE KOONCE
## PARTNER

500 N. Akard, Suite 2700
Dallas, Texas 75201
**214.706.4215 (Direct)**
214.706.4200 (Main)
214.706.4242 (Facsimile)
charlene.koonce@solidcounsel.com
www.solidcounsel.com

# SCHEEF & STONE, L.L.P.
*LEGAL COUNSEL BASED ON SOLID PRINCIPLES*



**Important:**  This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If

1

# EXHIBIT 2

**Robert Esensten**

| | |
|---|---|
| **From:** | Charlene Koonce <charlene.koonce@solidcounsel.com> |
| **Sent:** | Thursday, December 03, 2015 11:57 AM |
| **To:** | Robert L. Esensten |
| **Cc:** | Tepfer, Reid A. (rtepfer@ftc.gov); Gallegos, Luis |
| **Subject:** | FTC v. Bunzai |
| **Attachments:** | EDOCS-#110080-v1-Sales_Agreement_for_Canby_property_-_Red_line.DOCX |

Bob- Following the court's consideration of the two pending motions this morning, I provided a brief status update and informed the court about the failed sale of the Canby contents and my intent to move forward with a sale of the furniture but continue storing the computers.  The judge asked for more information regarding the source of funds you had proposed for the sale and then instructed me to move forward with the sale based on the Declaration and other evidence already provided related to the source of funds.

Given that instruction, is your client still willing to move forward with the sale?  If so, do either you or the FTC have further changes to the proposed sale agreement?

I am uncertain whether the FTC would still like to count or view the funds in the safe deposit box as provided by paragraph 2.1.2. If so, I think it would be easiest to have the $10k removed from the box following the counting, and I would agree that the withdrawal could occur with just the presence of an FTC rep and Bob.  In other words, my local counsel would not need to attend if withdrawal will occur at the same time the money is counted.   The purchase price needs to be paid with a cashier's check and the check needs to be purchased at BA immediately (within minutes) of when the cash is removed from the box.

Please let me know if you have any questions or further revisions to the proposed sale agreement.



## CHARLENE KOONCE
## PARTNER

500 N. Akard, Suite 2700
Dallas, Texas 75201
**214.706.4215  (Direct)**
214.706.4200 (Main)
214.706.4242 (Facsimile)
charlene.koonce@solidcounsel.com
www.solidcounsel.com

# SCHEEF & STONE, L.L.P.
*LEGAL COUNSEL BASED ON SOLID PRINCIPLES*



# EXHIBIT 3

**Robert Esensten**

| | |
|---|---|
| **From:** | Charlene Koonce <charlene.koonce@solidcounsel.com> |
| **Sent:** | Friday, December 04, 2015 1:07 PM |
| **To:** | Robert L. Esensten |
| **Cc:** | Tepfer, Reid A. (rtepfer@ftc.gov); Gallegos, Luis |
| **Subject:** | RE: FTC v. Bunzai |

Sure. I didn't mean to imply that we were deciding that, only that it is certainly not clear to what extent Lori has a claim to funds that are not marked with her name.

**From:** Robert L. Esensten [mailto:resensten@esenstenlaw.com]
**Sent:** Friday, December 04, 2015 3:06 PM
**To:** Charlene Koonce
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov); Gallegos, Luis; Robert L. Esensten
**Subject:** RE: FTC v. Bunzai

Charlene,

I am not prepared to agree that the balance of the funds belong to Doron but suggest that we leave that issue for later.

Bob

**From:** Charlene Koonce [mailto:charlene.koonce@solidcounsel.com]
**Sent:** Friday, December 04, 2015 12:52 PM
**To:** Robert L. Esensten <resensten@esenstenlaw.com>
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov) <rtepfer@ftc.gov>; Gallegos, Luis <LGALLEGOS@ftc.gov>
**Subject:** RE: FTC v. Bunzai

Bob- The requirement that the funds be from what has "stickies" was mine. One of my counsel was present when the funds were counted and I believe I circulated photos of the funds marked with those stickies. My intention with that requirement was only that we use Lori's funds to the extent possible, since there is no dispute that the remainder of the funds belong to Doron. I'll send you the photos shortly.

We will attempt to confirm that the bank will issue the cashier's check when I provide notice of who will be present for removal of those funds and when that will happen.

**From:** Robert L. Esensten [mailto:resensten@esenstenlaw.com]
**Sent:** Friday, December 04, 2015 2:48 PM
**To:** Charlene Koonce
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov); Gallegos, Luis; Robert L. Esensten; Robert L. Esensten
**Subject:** RE: FTC v. Bunzai

Charlene,

I have never represented that the cash will have any stickie's or any other writing on them to state who owns the funds as I have not seen the funds. This requirement is too limiting and seems to open up the likelihood of a dispute.

1

The provision that we obtain a cashier's check from the bank is fine with me. The bank will want to know who is purchasing the cashier's check. Will they issue the check by simply handling them $10,000 is unknown. Again I want to eliminate as many potential problems now so we don't run into an issue when we remove the $10,000.

Bob

**From:** Charlene Koonce [mailto:charlene.koonce@solidcounsel.com]
**Sent:** Friday, December 04, 2015 12:00 PM
**To:** Robert L. Esensten <resensten@esenstenlaw.com>
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov) <rtepfer@ftc.gov>; Gallegos, Luis <LGALLEGOS@ftc.gov>
**Subject:** RE: FTC v. Bunzai

Reid and Luis – Please let me know your position on Bob's statements below, the draft agreement, and my questions at the beginning of the chain.

I think the agreement has always been that the funds removed from the safe deposit box would be funds that were labeled as having been Doron's wife's funds (which was also represented to the Judge), so I would want the funds removed to be from those funds in the safe deposit box that have a sticky on them indicating they belong to Lori, but without regard to dates on the cash. Because the estate's bank is Amegy (which has no branches in LA) I will need you to get a cashier's check with the cash so you can mail the check (rather than cash) to me.

Thanks.

**From:** Robert L. Esensten [mailto:resensten@esenstenlaw.com]
**Sent:** Thursday, December 03, 2015 6:44 PM
**To:** Charlene Koonce
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov); Gallegos, Luis; Robert L. Esensten
**Subject:** RE: FTC v. Bunzai

Charlene,

My client remains ready to proceed with the purchase. Based upon my understanding of Judge Wu's order today, which is only from reading your email, I want to remove $10,000 from the safe and not examine the dates of the funds. The removal of the $10,000 will be cash totally $10,000 regardless of its date.

Please confirm that the FTC is agreeable to this process and the terms of the agreement. We have spent a considerable amount of time, and our clients' money, only to have the FTC prevent the sale from going forward. I just don't want to spend any more time on this or spend hours looking at every bill in the safe to close a simple sale of asset transaction.

Let me know.

Bob

**From:** Charlene Koonce [mailto:charlene.koonce@solidcounsel.com]
**Sent:** Thursday, December 03, 2015 11:57 AM
**To:** Robert L. Esensten <resensten@esenstenlaw.com>
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov) <rtepfer@ftc.gov>; Gallegos, Luis <LGALLEGOS@ftc.gov>
**Subject:** FTC v. Bunzai

Bob- Following the court's consideration of the two pending motions this morning, I provided a brief status update and informed the court about the failed sale of the Canby contents and my intent to move forward with a sale of the furniture but continue storing the computers.  The judge asked for more information regarding the source of funds you had proposed for the sale and then instructed me to move forward with the sale based on the Declaration and other evidence already provided related to the source of funds.

Given that instruction, is your client still willing to move forward with the sale?  If so, do either you or the FTC have further changes to the proposed sale agreement?

I am uncertain whether the FTC would still like to count or view the funds in the safe deposit box as provided by paragraph 2.1.2. If so, I think it would be easiest to have the $10k removed from the box following the counting, and I would agree that the withdrawal could occur with just the presence of an FTC rep and Bob.  In other words, my local counsel would not need to attend if withdrawal will occur at the same time the money is counted.   The purchase price needs to be paid with a cashier's check and the check needs to be purchased at BA immediately (within minutes) of when the cash is removed from the box.

Please let me know if you have any questions or further revisions to the proposed sale agreement.



## CHARLENE KOONCE
## PARTNER

500 N. Akard, Suite 2700
Dallas, Texas 75201
**214.706.4215  (Direct)**
214.706.4200 (Main)
214.706.4242 (Facsimile)
charlene.koonce@solidcounsel.com
www.solidcounsel.com

# SCHEEF & STONE, L.L.P.
*LEGAL COUNSEL BASED ON SOLID PRINCIPLES*



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, L.L.P. reserves the right to record telephone conversations involving its employees or attorneys.  If you do not wish to be recorded, please limit your communications with Scheef & Stone, L.L.P. to regular mail, faxes, and/or electronic mail.

# EXHIBIT 4

**Robert Esensten**

| | |
|---|---|
| **From:** | Charlene Koonce <charlene.koonce@solidcounsel.com> |
| **Sent:** | Tuesday, December 08, 2015 7:28 AM |
| **To:** | Robert L. Esensten |
| **Cc:** | Tepfer, Reid A. (rtepfer@ftc.gov); Gallegos, Luis |
| **Subject:** | RE: FTC v. Bunzai |

Bob- The FTC confirms they have no changes to the agreement, but I am waiting to hear if they want to have a representative present when the funds are removed. Can you please review the agreement and send it back to me after accepting changes that are acceptable? I have some fires to put out today and will most likely not be able to get to you with final details until tomorrow, but I too would like this to be completed and will work to make that happen asap. Once we finalize the agreement, the next step is for me to file the Notice of Sale (with a copy of the agreement attached). If you've obtained the agreement of all of the other defendants as originally requested, I do not anticipate any objections.

Thanks.

**From:** Robert L. Esensten [mailto:resensten@esenstenlaw.com]
**Sent:** Monday, December 07, 2015 8:33 PM
**To:** Charlene Koonce
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov); Gallegos, Luis; Robert L. Esensten
**Subject:** RE: FTC v. Bunzai

   *Do we have a deal or not?*

**From:** Robert L. Esensten
**Sent:** Friday, December 04, 2015 1:29 PM
**To:** Charlene Koonce <charlene.koonce@solidcounsel.com>
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov) <rtepfer@ftc.gov>; Gallegos, Luis <LGALLEGOS@ftc.gov>; Robert L. Esensten <resensten@esenstenlaw.com>
**Subject:** RE: FTC v. Bunzai

   *Thanks for that clarification.*

**From:** Charlene Koonce [mailto:charlene.koonce@solidcounsel.com]
**Sent:** Friday, December 04, 2015 1:07 PM
**To:** Robert L. Esensten <resensten@esenstenlaw.com>
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov) <rtepfer@ftc.gov>; Gallegos, Luis <LGALLEGOS@ftc.gov>
**Subject:** RE: FTC v. Bunzai

Sure. I didn't mean to imply that we were deciding that, only that it is certainly not clear to what extent Lori has a claim to funds that are not marked with her name.

**From:** Robert L. Esensten [mailto:resensten@esenstenlaw.com]
**Sent:** Friday, December 04, 2015 3:06 PM
**To:** Charlene Koonce

**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov); Gallegos, Luis; Robert L. Esensten
**Subject:** RE: FTC v. Bunzai

Charlene,

I am not prepared to agree that the balance of the funds belong to Doron but suggest that we leave that issue for later.

Bob

**From:** Charlene Koonce [mailto:charlene.koonce@solidcounsel.com]
**Sent:** Friday, December 04, 2015 12:52 PM
**To:** Robert L. Esensten <resensten@esenstenlaw.com>
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov) <rtepfer@ftc.gov>; Gallegos, Luis <LGALLEGOS@ftc.gov>
**Subject:** RE: FTC v. Bunzai

Bob- The requirement that the funds be from what has "stickies" was mine.   One of my counsel was present when the funds were counted and I believe I circulated photos of the funds marked with those stickies.  My intention with that requirement was only that we use Lori's funds to the extent possible, since there is no dispute that the remainder of the funds belong to Doron.  I'll send you the photos shortly.

We will attempt to confirm that the bank will issue the cashier's check when I provide notice of who will be present for removal of those funds and when that will happen.

**From:** Robert L. Esensten [mailto:resensten@esenstenlaw.com]
**Sent:** Friday, December 04, 2015 2:48 PM
**To:** Charlene Koonce
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov); Gallegos, Luis; Robert L. Esensten; Robert L. Esensten
**Subject:** RE: FTC v. Bunzai

Charlene,

I have never represented that the cash will have any stickie's or any other writing on them to state who owns the funds as I have not seen the funds.  This requirement is too limiting and seems to open up the likelihood of a dispute.

The provision that we obtain a cashier's check from the bank is fine with me.  The bank will want to know who is purchasing the cashier's check.  Will they issue the check by simply handling them $10,000 is unknown.  Again I want to eliminate as many potential problems now so we don't run into an issue when we remove the $10,000.

Bob

**From:** Charlene Koonce [mailto:charlene.koonce@solidcounsel.com]
**Sent:** Friday, December 04, 2015 12:00 PM
**To:** Robert L. Esensten <resensten@esenstenlaw.com>
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov) <rtepfer@ftc.gov>; Gallegos, Luis <LGALLEGOS@ftc.gov>
**Subject:** RE: FTC v. Bunzai

Reid and Luis – Please let me know your position on Bob's statements below, the draft agreement, and my questions at the beginning of the chain.

2

I think the agreement has always been that the funds removed from the safe deposit box would be funds that were labeled as having been Doron's wife's funds (which was also represented to the Judge), so I would want the funds removed to be from those funds in the safe deposit box that have a sticky on them indicating they belong to Lori, but without regard to dates on the cash.   Because the estate's bank is Amegy (which has no branches in LA) I will need you to get a cashier's check with the cash so you can mail the check (rather than cash) to me.

Thanks.

**From:** Robert L. Esensten [mailto:resensten@esenstenlaw.com]
**Sent:** Thursday, December 03, 2015 6:44 PM
**To:** Charlene Koonce
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov); Gallegos, Luis; Robert L. Esensten
**Subject:** RE: FTC v. Bunzai

   *Charlene,*

   *My client remains ready to proceed with the purchase.  Based upon my understanding of Judge Wu's order today, which is only from reading your email, I want to remove $10,000 from the safe and not examine the dates of the funds.  The removal of the $10,000 will be cash totally $10,000 regardless of its date.*

   *Please confirm that the FTC is agreeable to this process and the terms of the agreement.  We have spent a considerable amount of time, and our clients' money, only to have the FTC prevent the sale from going forward.  I just don't want to spend any more time on this or spend hours looking at every bill in the safe to close a simple sale of asset transaction.*

   *Let me know.*

   *Bob*

**From:** Charlene Koonce [mailto:charlene.koonce@solidcounsel.com]
**Sent:** Thursday, December 03, 2015 11:57 AM
**To:** Robert L. Esensten <resenstenlaw.com>
**Cc:** Tepfer, Reid A. (rtepfer@ftc.gov) <rtepfer@ftc.gov>; Gallegos, Luis <LGALLEGOS@ftc.gov>
**Subject:** FTC v. Bunzai

Bob- Following the court's consideration of the two pending motions this morning, I provided a brief status update and informed the court about the failed sale of the Canby contents and my intent to move forward with a sale of the furniture but continue storing the computers.  The judge asked for more information regarding the source of funds you had proposed for the sale and then instructed me to move forward with the sale based on the Declaration and other evidence already provided related to the source of funds.

Given that instruction, is your client still willing to move forward with the sale?  If so, do either you or the FTC have further changes to the proposed sale agreement?

I am uncertain whether the FTC would still like to count or view the funds in the safe deposit box as provided by paragraph 2.1.2. If so, I think it would be easiest to have the $10k removed from the box following the counting, and I would agree that the withdrawal could occur with just the presence of an FTC rep and Bob.  In other words, my local counsel would not need to attend if withdrawal will occur at the same time the money is counted.   The purchase price needs to be paid with a cashier's check and the check needs to be purchased at BA immediately (within minutes) of when the cash is removed from the box.

Please let me know if you have any questions or further revisions to the proposed sale agreement.



**CHARLENE KOONCE**

**PARTNER**

500 N. Akard, Suite 2700
Dallas, Texas 75201
**214.706.4215  (Direct)**
214.706.4200 (Main)
214.706.4242 (Facsimile)
charlene.koonce@solidcounsel.com
www.solidcounsel.com

# SCHEEF & STONE, L.L.P.

*LEGAL COUNSEL BASED ON SOLID PRINCIPLES*



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, L.L.P. reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, L.L.P. to regular mail, faxes, and/or electronic mail.

# EXHIBIT 5

| Name On Account | Financial Institution | Account No. | Current Balace | |
|---|---|---|---|---|
| Doron Nottea Personal Checking | Bank Of America, Tarzana | ⬛69000 | $ 42,000.00 | |
| Doron Nottea Personal Checking | Bank Of America, Tarzana | ⬛44411 | $ 21,000.00 | |
| Doron Nottea Personal Checking | Wells Fargo | ⬛47222 | $ 2,681.95 | |
| Doron Nottea Personal Checking | Wells Fargo | ⬛46646 | $ 25,537.00 | |
| Doron Nottea Personal Checking | Wells Fargo | ⬛38551 | $ 8,533.35 | |
| Doron Nottea Personal Checking | Wells Fargo | ⬛21544 | $ 2,206.44 | |
| Doron Nottea Personal Checking | CITIBANK | ⬛45767 | $ 713.98 | |
| Doron Nottea Personal Checking | Chase Bank | ⬛61365 | $ 4,200.06 | |
| Doron Nottea Personal Checking | Chase Bank | ⬛64893 | $ 1,709.44 | |
| Doron Nottea Personal Checking | CITIBANK, Encino, CA | ⬛63456 | $ 4,755.39 | |
| Doron Nottea Personal Checking | Chase Bank | ⬛61365 | $ 4,200.00 | |
| Doron Nottea Personal Checking | Chase Bank | ⬛64893 | $ 1,700.00 | $119,237.61 |
| | | | | |
| Doron Nottea Joint with Rachel Nottea | HSBC Bank, Encino CA | ⬛54099 | $ 28,000.00 | |
| Doron Nottea Joint with Rachel Nottea | HSBC Bank, Encino CA | ⬛35855 | $ 178,000.00 | $206,000.00 |
| | | | | |
| Doron Nottea Sole Prop  (dba LD Holdings) | Wells Fargo | ⬛18700 | $ 64,500.00 | |
| Doron Nottea Sole Prop  (dba Access Distribution) | Wells Fargo | ⬛18155 | $ 20,000.00 | |
| Doron Nottea Sole Prop LD HOLDINGS | Bank Of America | ⬛0 3555 | $ 14,095.00 | |
| Doron Nottea Sole Prop dba DVD Connection | Bank Of America | ⬛1 6855 | $ 3,469.00 | |
| Doron Nottea Sole Prop Global Media Products | Bank Of America | ⬛1 7333 | $ 6,119.00 | |
| Doron Nottea Sole Prop Magnum Distribution | Bank Of America | ⬛0 3322 | $ 3,464.00 | $111,647.00 |
| | | | | |
| **CORP ADULT BANKS** | | | | |
| NFT Holdings Inc. dba XPOSED MEDIA | Bank Of America | ⬛7 8811 | $ 10,675.44 | |
| NFT Holdings Inc. dba  ADULT 1 STOP | Bank Of America | ⬛7 8755 | $ 4,793.93 | |
| NFT Holdings Inc. dba CRITICAL X | Bank Of America | ⬛2 8622 | $ 8,519.36 | |
| NFT Holdings Inc. dba Extra Entertainment | Bank Of America | ⬛2 8484 | $ 2,870.96 | |
| NFT Holdings Inc. dba Global Media Products | Bank Of America | ⬛3 4880 | $ 3,294.32 | |
| NFT Holdings Inc. | Bank Of America | ⬛0 9222 | $ 200.00 | |
| NFT Holdings Inc. | Wells Fargo | ⬛74433 | $ 7,675.83 | |
| **Vertex Holdings Group Inc.** | Bank Of America | ⬛1 8855 | $ 3,474.25 | |
| Vertex Holdings Group Inc. | Bank Of America | ⬛2 2333 | $ 11,584.02 | |
| Vertex Holdings Group Inc. | Wells Fargo | ⬛4444 | $ 1,500.00 | |
| Vertex Holdings Group Inc. | Wells Fargo | ⬛27777 | $ 1,572.00 | $56,160.11 |
| | | | | |
| | | | $ 493,044.72 | $493,044.72 |
| | | | | |
| | B/A Safe Deposit Box | CASH | $ 458,000.00 | |
| | | | -$ 10,000.00 | |
| | | | | |
| | | | $ 941,044.72 | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2016, I electronically filed the foregoing document entitled **REPLY TO OPPOSITION TO JOINT MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND RACHEL NOTTEA; SUPPLEMENTAL DECLARTION OF LORI BEKHOR AND RACHEL NOTTEA** with the Clerk of the Court by using the CM/ECF System.


/s/ Robert L. Esensten
Robert L. Esensten

REPLY TO OPPOSITION TO MOTION FOR RELEASE OF FROZEN FUNDS OF LORI BEKHOR AND RACHEL NOTTEA