DAVID C. SHONKA
Acting General Counsel

DAMA J. BROWN
Dbrown1@ftc.gov
Regional Director

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
EMILY ROBINSON
erobinson@ftc.gov; Tex. Bar No. 24046737
ZACHARY A. KELLER
zkeller@ftc.gov
Texas Bar No. 24087838 (pro hac vice pending)
Federal Trade Commission
1999 Bryan Street, Ste 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9386 (Robinson); (214) 979-9382 (Keller)
(214) 953-3079 (fax)
RAYMOND McKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Ste 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**BUNZAI MEDIA GROUP, INC.**, *et al.*<br><br>**Defendants.** | **Case No. CV 15-4527-GW(PLAx)**<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS IGOR LATSANOVSKI AND CALENERGY, INC.'S MOTION IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


# TABLE OF CONTENTS

I. Introduction .................................................................................................. 3
II. Legal Argument ............................................................................................ 4
   A. CalEnergy's Role Merits Injunctive and Monetary Relief ........................ 4
      1. CalEnergy's Control of Other AuraVie Entities ............................ 4
      2. CalEnergy's Role as Financial Intermediary ................................. 5
   B. Individual Defendant Latsanovski Meets the Legal Threshold for Injunctive Relief and Joint and Several Monetary Liability. ......................................... 6
      1. Latsanovski was an Owned or Controlled Several Entities Central to the Scheme, Including Bunzai Media Group ............................. 7
      2. A Mass of Evidence Establishes Latsanovski's Central Participatory Role in the Common Enterprise .................................. 8
      3. The Evidence Confirms Defendant Latsanovski's Knowledge of the Common Enterprise's Deception. ............................................. 9
III. Defendant Latsanovski and CalEnergy's Specific Responses to Uncontroverted Fact No. 36. ............................................................................ 9
IV. Conclusion .................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**
*FTC v. Amy Travel Serv. Inc.*, 875 F.2d 564 (7th Cir. 1989) ................................... 9
*FTC v. Commerce Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016) ................................. 4
*FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199 (D. Nev. 2011) ....................... 4
*FTC v. JK Publications, Inc.*, 99 F. Supp. 2d 1176 (C.D. Ca. 2000) ....................... 4
*FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127 (9th Cir. 2010) ......................... 9
*FTC v. Publ'g Clearing House*, 104 F.3d 1168 (9th Cir. 1997) ......................... 7, 9
*FTC v. Sharp*, 782 F. Supp. 1445, 1450 (D. Nev. 1991) .......................................... 9

I. **Introduction.**

Defendants' contentions in their Opposition to Plaintiff's Motion for Summary Judgment, Dkt. 397, mirror their Motion for Summary Judgment, Dkt. 360, so in many respects this Reply will reflect Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Dkt. 394 ("Plaintiff's Opposition"). In addition, Defendants used the final third of their Opposition Brief, Dkt. 397 at 16-22, improperly providing "Specific Responses to the FTC's Uncontroverted Fact No. 36" that not only should not have been included in their Opposition Brief but that they also failed to include in their four-volume Statement of Genuine Disputes. *See* Dkts. 399, 400, 402, 403. Instead of burdening the Court with responses to the same arguments discussed in previous filings, Plaintiff will address Defendants' legal and factual arguments by cross-referencing Plaintiff's Opposition when possible. Plaintiff will then address Defendants' "Specific Responses" by first showing that they should be disregarded by the Court and then by addressing them point-by-point in the attached **Appendix A**.

The evidence in this case establishes that Igor Latsanovski and his company CalEnergy, Inc. ("CalEnergy" and, together with Latsanovski, "Defendants") were significant co-conspirators in the AuraVie scheme that was used to deceive consumers, regulators, and payment processors While each member of the common enterprise had their own individual roles, they are all liable under the law

for the full amount of consumer redress, *see FTC v. Commerce Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016), and both Defendants should accordingly be subject to the full injunctive and monetary liability the law provides.

## II. Legal Argument.

### A. *CalEnergy's Role Merits Injunctive and Monetary Relief*

Contrary to Defendants' arguments, CalEnergy was an integral member of the common enterprise that (1) exercised control of other entities involved in the scheme; and (2) acted as one of the scheme's two financial intermediaries, serving as the go-between that connected AuraVie's web of shell merchant retail entities to its primary operational entities. As set forth in the case law discussion in Plaintiff's Opposition, Dkt. 394 at 5-7, when Corporate Defendants act as a common enterprise, each may be held jointly and severally liable for the unlawful acts and practices of the other. *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1216 (D. Nev. 2011) ; *FTC v. JK Publications, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Ca. 2000) .

### 1. CalEnergy's Control of Other AuraVie Entities.

As demonstrated in Plaintiff's Opposition, Dkt. 394 at 7-8, CalEnergy's supervisory role in the AuraVie scheme shown by CalEnergy's control of at least two entities central to the common enterprise, Defendants Pinnacle Logistics, Inc. and Media Urge, Inc., which were managed and operated by CalEnergy

employees. Ex. 561-3; *see also* Ex. 571. Both of these entities were central to the scheme's operations: Pinnacle Logistics was the entity responsible for order fulfillment, UF #10(a);[1] Ex. 67, while Media Urge, Inc. managed the scheme's marketing. UF #19.[2]

### 2. CalEnergy's Role as Financial Intermediary

Contrary to Defendants' claims that CalEnergy was "solely an investor[]," who made a loan to Bunzai and had no further participation in the scheme, Dkt. 397 at 6, CalEnergy was a fully-integrated financial intermediary that moved the funds AuraVie stole from consumers from the AuraVie's web of merchant account shell entities to other AuraVie entities, as well as to Latsanovski himself. *See* Dkt. 121-3 at 3. Upon receiving funds from the merchant accounts, CalEnergy passed them on to Latsanovski and Focus Media Solutions, Inc. to pay for

---

[1] For the purposes of this Reply Brief, citation references to "UF #[x]" refer to the Plaintiff's Statement of Uncontroverted Facts & Conclusions of Law In Support of Its Motion for Summary Judgment, Dkt. 353-2.

[2] This same email contained a Management Services Agreement between CalEnergy and Pinnacle Logistics, Inc., in which CalEnergy agreed to provide "management and consulting services" to Pinnacle Logistics. UF #36(e); *see* Exhibit 561.

These documents confirm the information CalEnergy provided on its own website: as a screen shot of the company's website confirms, CalEnergy listed Media Urge and Pinnacle Logistics as two of its management companies. CalEnergy's website further noted that Pinnacle Logistics was serving AuraVie as a client by "providing storage and warehousing services." Ex. 908-4.

advertising. *See id*.[3] These financial transfers were critical to the scheme's daily function. By Defendant Latsanovski's own testimony, CalEnergy's financing was essential to allowing the AuraVie companies to maintain operations. *See* Dkt. 106-2 at 30.

Indeed, the funds Defendants characterize as CalEnergy's "lending" were in fact only initially a true capital investment by Defendant Latsanovski, quickly becoming revolving money transfers consisting of AuraVie's ill-gotten gains. *See* Dkt. 121-1 at 3; *see also* Dkt. 120 at 41. Similarly, the "interest" payment of $317,748 that Defendants attempt to use as proof of CalEnergy's arms-length relations with AuraVie was quickly translated into a $325,000 capital infusion by Latsanovski into AuraVie's advertising entity, Defendant Focus Media Solutions.[4]

### B. Individual Defendant Latsanovski Meets the Legal Threshold for Injunctive Relief and Joint and Several Monetary Liability.

---

[3] Defendants again raise the issue of the asset freeze and Sunset Holdings, LLC. This issue was fully briefed for the third time in Plaintiff's Opposition to Defendants' Motion for Summary Judgment. Dkt. 394 at 21-28.

[4] Regarding the amount CalEnergy contributed to the scheme, Defendants acknowledge that "1.9 million [] is the aggregate of all principal loan advances" yet contend that Plaintiff "grossly overstate[s]" the amount by using the $1.9 million figure because the sham revolving "loans" were "re-advances of the original $500,000." Dkt. 397 at 6.

Defendants' argument fails to reflect that the $1.9 million figure is the actual amount that CalEnergy circulated in furtherance of the scheme. That CalEnergy maintained a $500,000 threshold throughout its participation in the common enterprise does not bear on the amount it actually contributed in its furtherance.

Like his company CalEnergy, Defendant Latsanovski's role in the scheme merits full injunctive and monetary liability. As set forth in the case law discussion in Plaintiff's Opposition, Dkt. 394 at 9-11, Individuals are subject to injunctive relief for a company's deceptive acts or practices when they either: (1) "participated directly in the acts or practices;" or (2) "had authority to control them." *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997). Here, Defendant Latsanovski meets the threshold of both ownership and participation, and the weight of the evidence demonstrates that he meets the knowledge required for joint and several monetary liability.

### 1. *Latsanovski Owned or Controlled Several Entities Central to the Scheme, Including Bunzai Media Group*

Defendant Latsanovski owned and controlled several entities along with CalEnergy that were involved in the scheme, starting with BunZai Media Group, Inc. Defendants again contest Latsanovski's ownership, but Plaintiff's Opposition provided a full refutation of these arguments. See Dkt. 394 at 12-15. All told, Defendant Latsanovski's ownership and controlling interests in BunZai (the central entity), CalEnergy (management and financial intermediation), Pinnacle Logistics (order fulfillment), Media Urge (advertising), and Zen Mobile Media (holding a merchant account) ran the gamut of the operations needed to execute the AuraVie scheme. In stark contrast to Defendants' contention that Latsanovski

"did not play a role in operations," Dkt. 397 at 7, in fact he was a key player most facets of the scheme.

### 2. A Mass of Evidence Establishes Latsanovski's Central Participatory Role in the Common Enterprise.

Defendants again contend that "no evidence exists that [Latsanovski and CalEnergy] 'participated directly in' or controlled the alleged unlawful acts" relating to AuraVie. Dkt. 397 at 15. The facts of the case discussed in Plaintiff's Opposition, however, have already fully demonstrated the broad and extensive roles Latsanovski played in AuraVie. As laid out in Plaintiff's Opposition, Dkt. 394 at 15-18, Latsanovski's participation primarily related to three critical areas for the scheme: (1) structuring and managing the enterprise; (2) overseeing the financial performance, advertising, and business operations of the enterprise; and (3) providing expertise relating to managing high-risk credit card processing accounts. His role even included supervision of day-to-day analysis, an example of which is an email from an employee at Media Urge, where Latsanovski received data on, among other things, "[h]ow many new sales today" and "how many & how many returns $ to customer," to which the employee responded with single-day figures. Ex. 549. Indeed, as he wrote in the August 2014 email to Alon Nottea: "Directors, the people who can not just perform, but also to make decisions and in addition whom we trust and know their capabilities. . . .Who we

have: You, Paul, Roy, Andre and David and me a little, that's all!" UF #36(q).

### 3. The Evidence Confirms Defendant Latsanovski's Knowledge of the Common Enterprise's Deception.

Defendants again contend that no evidence exists that would demonstrate Latsanovski had knowledge of the AuraVie scheme's deceptive practices, citing no evidence themselves and contesting no facts Plaintiff previously raised. As Plaintiff's Opposition already showed, however, there is substantial evidence that Latsanovski had the requisite knowledge to establish his liability for AuraVie's wrongs. Dkt. 394 at 18-20. Given such a level of access to information alongside his broad responsibilities, Latsanovski meets either *Amy Travel*'s "degree of participation" standard[5] or, at a bare minimum, the *Network Servs. Depot* "high probability of deceptive conduct together with an intentional avoidance of the truth" standard,[6] either of which establish knowledge of his role in the AuraVie scheme.

### III. Defendant Latsanovski and CalEnergy's Specific Responses to

---

[5] "[T]he degree of participation in business affairs is probative of knowledge." *FTC v. Amy Travel Serv. Inc.*, 875 F.2d 564, 574 (7th Cir. 1989); *see also FTC v. Sharp*, 782 F. Supp. 1445, 1450 (D. Nev. 1991).

[6] "The FTC may establish knowledge by showing that the individual defendant had actual knowledge of material misrepresentations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth." *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1138-1139 (9th Cir. 2010) (quoting *FTC v. Publ'g Clearing House*, 104 F.3d 1168, 1170 (9th Cir. 1997)).

**Uncontroverted Fact No. 36.**

Defendants devote the final third of their Opposition Brief to provide "specific responses to No. 36" of Plaintiff's Uncontroverted Facts. Dkt. 397 at 16; *see* Dkt. 353-2. Defendants also failed to integrate these "specific responses" into their Statement of Genuine Disputes. *See* Dkt. 402 at 15-21. This Court's "Standing Order Re Summary Judgment Motions," Dkt. 363, designates the "Statement of Genuine Disputes" as the forum for raising disputes of the Uncontroverted Facts provided by the moving party. This accords with Local Rule 56-2, that the "Statement of Genuine Disputes" should "set[] forth all material facts as to which it is contended there exists a genuine dispute necessary to be litigated." L.R. 56-2.

Under Local Rule 53-3, the Court "may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3. This Local Rule corresponds to the Federal Rules of Civil Procedure Rule 56(e)(2), which provides that a party failing to properly address another party's facts allows the Court to "consider the fact undisputed for purposes of the motion." Therefore, because Defendants failed to submit these Disputes in their Statement of Genuine

Disputes, *see* Dkts. 399, 400, 402, 403, this Court should disregard these disputes and assume that their corresponding Uncontroverted Facts are deemed admitted.

Notwithstanding Plaintiff's position that the Court should disregard Defendants' disputes provided in their Opposition Brief, Plaintiff hereby submits responses to these disputes as part of this Reply Brief attached as **Appendix A**.

## IV. Conclusion

For the forgoing reasons, the FTC respectfully requests that the Court grant summary judgment against Defendants on all counts and enter a Final Order for Final Judgment and Order for Injunctive and Other Relief.

Respectfully submitted,

Dated: 5/13/16

/s/ ZACHARY A. KELLER_____
ZACHARY A. KELLER
REID A. TEPFER
LUIS H. GALLEGOS
Attorneys for the Plaintiff
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (facsimile)
rtepfer@ftc.gov
lgallegos@ftc.gov

# CERTIFICATE OF SERVICE

The undersigned certifies that on May 13, 2016, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea and Roi Rueveni*

Robert Esensten
Esensten Law
12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
resensten@esenstenlaw.com
*Counsel for Doron Nottea and Motti Nottea*

Jeffrey Benice
Law Offices of Jeffrey S. Benice
A Professional Law Corporation
3080 Bristol Street
Sixth Floor, Suite 630
Costa Mesa, CA 92626
Telephone: (714) 641-3600 Ext. 214
*Counsel for Igor Latsanovski and CalEnergy, Inc*

Sagar Parikh
Beverly Hills Law Corp. PC
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
SP@BeverlyHillsLawCorp.com
*Attorney for Paul Medina, Secured Merchants, LLC, and Chargeback Armor, Inc.*

Charlene Cantrell Koonce
Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
charlene.koonce@solidcounsel.com
*Receiver*

Kelly M. Crawford
Scheef and Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
kelly.crawford@solidcounsel.com
*Counsel to Receiver*

/S/ ZACHARY A. KELLER
ZACHARY A. KELLER