DAVID C. SHONKA
Acting General Counsel

DAMA J. BROWN
Dbrown1@ftc.gov
Regional Director

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
EMILY ROBINSON
erobinson@ftc.gov; Tex. Bar No. 24046737
ZACHARY A. KELLER
zkeller@ftc.gov
Texas Bar No. 24087838 (pro hac vice pending)
Federal Trade Commission
1999 Bryan Street, Ste 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9386 (Robinson); (214) 979-9382 (Keller)
(214) 953-3079 (fax)
RAYMOND McKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Ste 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No. CV 15-4527-GW(PLAx) |
| **Plaintiff,** | **RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES** |
| **v.** | |
| **BUNZAI MEDIA GROUP, INC.,** *et al.* | |
| **Defendants.** | |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED
MERCHANTS, AND CHARGEBACK ARMOR'S STATEMENT OF
GENUINE DISPUTES

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 2. Defendants collectively marketed skincare products over the Internet using deceptive offers with hidden costs, negative option features, and return policies. Specifically, Defendants offered "risk-free" trials of skincare products to consumers nationwide through pop-up advertisements and websites. Defendants required consumers who accepted the "risk-free" trials to provide their credit or debit card billing information, purportedly to pay nominal shipping and handling fees to receive the advertised products. However, 10 days after receiving consumers' billing information, Defendants charged consumers the full costs of the products included in the "riskfree" trials, imposing charges of up to $97.88 onto consumers' credit or debit cards. Defendants refused to provide refunds for product returns unless consumers met onerous conditions that were not adequately disclosed. Additionally, after charging consumers, Defendants enrolled consumers in a negative option continuity plan, in which Defendants shipped additional products each month and charged consumers' credit or debit cards the full costs of the products, usually $97.88 per month. Defendants' scheme deceived consumers nationwide out of millions of dollars. | 2. Disputed. The Argaman Defendants did not market or sell any skincare products, nor bill any customers, as they were vendors providing unrelated services. Argaman Decl. at ¶ 10-16 |
| 2. Moving Party's Response | |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED
MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT
OF GENUINE DISPUTES

1.  Plaintiff does not dispute that the Argaman Defendants did not bill any AuraVie consumers directly.

2.  Plaintiff contests Defendants' Dispute:

That the Argaman Defendants did not market or sell any skincare products:

    a.  Argaman was an owner of Defendant Secured Commerce, LLC, Dkt. 299 ¶ 39, which designed the landing page used for deceptively marketing and selling AuraVie's skincare products. Ex. 46.

    b.  Defendants' own Opposition Brief acknowledges that Argaman "helped design a straight sale website." Dkt. 392 at 8.

    c.  Argaman created and designed a Miracle Face Kit website with all the "Satisfaction Guaranteed" and "Sub-Total $0.0000" traits of the very "risk free" deception that Argaman denies having created. Ex. 531.

    d.  Argaman sent Doron Nottea a presentation concerning a skincare product, LeElle, that they could potentially acquire the rights to sell and advised him on LeElle's packaging design. Ex. 360; *see also* Ex. 361.

    e.  Acting either on behalf of one of his corporate entities or in his individual capacity, Defendant Argaman designed and managed the AuraVie Angels advertising campaign. Exs. 185; 187; 494; 497.

    f.  Attitudeline/*INFINI*: Defendant Argaman sold Attitudeline/INFINI skincare products, a product that Defendants marketed or sold, or assisted others in marketing or selling, by negative option continuity plans (or assisted others in marketing or selling in the same manner). Ex. 368.

    g.  Argaman provided integration services for Limelight, the common enterprise's customer service management software, and technical expertise to create an automated response system to allow large numbers of consumers to cancel their continuity plans. Dkt. 121-6 at 9-21; Dkt. 121-7 at 1-3.

    h.  Argaman assisted Alon Nottea in operating a call center for consumer complaints. Exs. 47; 149; 432; 440; 441; 516.

    i.  Argaman created AuraVie.com. *See* Ex. 555 at 49:5-18.

    j.  Argaman coordinated shipping logistics for Pinnacle Logistics, Inc.—the AuraVie company responsible for order fulfillment—to provide (unwanted and never requested) AuraVie product to consumers. Exs. 174; 370.

| 3. As explained more fully below, | k.  Disputed. The Argaman |
|---|---|

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| Defendants operated a common enterprise through which they: (a) failed to disclose adequately material terms of their sales offer, including the offer's costs and negative option features; (b) falsely represented that consumers could obtain products on a "trial" or "risk-free" trial basis for only a nominal shipping and handling fee; (c) failed to obtain consumers' informed consent to the material terms, including the negative option feature, of the transaction before charging the consumer; (d) falsely represented their business was accredited by the Better Business Bureau with an "A-" rating; (e) failed to provide consumers a simple method of cancelling their negative option continuity plan, and (f) debited consumers' bank accounts on a recurring basis without obtaining written authorization from consumers or providing a written copy of the authorization to the consumer. | Defendants were not part of the common enterprise, and did not engage in any selling of skincare through any means. Declaration of Alan Argaman at ¶10-16. |

3. Moving Party's Response

   1.  Plaintiff contests the entirety of this Dispute:

<u>That SM was not a part of the Common Enterprise:</u>

  a.  *Shared Managers/Members/Officers*:
      i.   Defendant Roi Reuveni held himself out on at least two occasions as a Managing Member of SM. Exs. 412-5; 413-5.
     ii.   SM's Operating Agreement lists Defendant Alon Nottea alongside Argaman as SM's Managers. Ex. 255-22.
    iii.   Defendant Doron Nottea listed his status as "Member" in SM's bank account documents. Ex. 176-2.

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

iv.  SM's executive summary/prospectus touts its "founders" who "saw first-hand every type of failure trap that could have killed *their* skin care product company." Ex. 256-1 (emphasis added).

v.  SM's executive summary also lists Defendant Paul Medina alongside Argaman and Alon Nottea as "Management." Ex. 256-1.

b.  *Shared Employees*:

i.  Robert Stayner and Tyler Reitenbach were both employees of SM while employees of other Corporate Defendants—Stayner an employee of SBM Management, Inc. and Reitenbach an employee of Pinnacle Logistics, Inc. and later CBA. Exs. 289; 366; 370; 391; 563.

ii.  In addition, Mike Costache, CEO of CBA, confirmed his status as an SM employee in his own discussion of CBA: In his emailed pitch on behalf of CBA, Costache writes "[w]ith Secured Merchants we billed monthly, but with Chargeback Armor, Inc. we bill each Monday for chargebacks we processed for the past week." Dkt. 231-1 at 8.

c.  *Shared Offices*: Doron Nottea testified that SM shared an office with the rest of the common enterprise, Ex. 553 at 59:2-59:9, which is corroborated in Defendants' Opposition brief. *See* Dkt. 392 at 15-16.

d.  *Consolidated Financial Management*:

i.  Defendants provided $250,000 start-up capital to CBA. Exs. 916 ¶ 235; 917 ¶ 235; Dkts. 231-1 at 53;392 at 23.

ii.  SBM Management transferred at least $300,000 to SM. Ex. 918 ¶ 236; *see also* Dkt. 120 at 25. Defendants contend that SM's sending an invoice to SBM legitimized the mere shifting of money between "BunZai compan[ies]," *see* Ex. 394, as arms-length.. Dkt. 392 at 17-18. Such logic fails to reflect, however, that these financial relationships were undeniably tied to the common enterprise and that these money transfers comprised a basic financing mechanic sustaining the scheme. *See* Dkt. 121-1 at 3. This purported arms-length relationship between SM and AuraVie is further undermined by the similar amount provided to Defendant CBA—the company that took over AuraVie's chargeback refutation—as start-up capital.

iii.  Because of the complex corporate network that AuraVie built, their scheme's architecture necessitated transfers between entities to sustain the operations of each as they performed their distinct roles. *See* Dkt. 121-1 at 3. Such shuttling funds between entities builds the very type of relationships that common enterprise liability was created to address.

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

5

iv. Doron Nottea openly admitted to bookkeeping for SM—the same services he provided for the vast majority of other AuraVie entities. Ex. 551 at 58:23-59:9, and David Davidian's CPA firm provided SM accounting services along with all other AuraVie entities. *See, e.g.,* Ex. 287; 289; 299; 302.

v. An unprivileged attorney email sent to Defendants Alon Nottea and Latsanovski contained a Collateral Assignment Agreement for SM under which the terms "Assignor" and "Assignee" are both "members of Secure Merchants, LLC" and the agreement contemplates cross-collateralizing SM alongside the parties' other co-owned companies. Ex. 557-2.

e. *Shared Marketing*:

   i. *SM*:

      a)   SM, like all other AuraVie Defendants not responsible for that discreet area of the enterprise, relied upon Media Urge, Inc. and Focus Media Solutions, Inc. to provide consumers the deceptive advertising that led to the entities' revenue streams. *See* UF #19, 24.

      b)   Moreover, Defendant Argaman used the LLC he co-owned with Doron  to design the deceptive AuraVie landing page that was so critical to executing the AuraVie scam. Ex. 46.

   ii. *Argaman*:

      a)   Defendant Argaman used the LLC he co-owned with Doron  to design the deceptive AuraVie landing page that was so critical to executing the AuraVie scam. Ex. 46; 531..

      b)   In his individual capacity, Argaman was also the chief architect of the AuraVie Angels marketing campaigns. Exs. 185; 494; 497.

      c)   Defendants contend that the evidence relating to AuraVie Angels, Exhibits 185, 494, and 497, are "bogus" claims and that the underlying evidence is mere "quotes for blog creation services." Dkt. 392 at 21.

      d)   In fact, Exhibits 185 and 497 reveal Argaman planning the AuraVie Angels promotion, including designing blogs along with (1) redesigning AuraVie's homepage to "contain links to" the blogs Argaman created; (2) designing a "Main Wordpress Portal" that feature a "Shop" link for AuraVie; and

---

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

(3) coordinating the various "Wordpress Angel" blogs. Ex. 185-1. He then provides a stepwise program for how he would proceed in creating the campaign.

 f. *Distinction between Entities*:

  i. SM's role in forming CBA complements the shared financial resources, personnel, and management between SM and the other AuraVie defendants.

  ii. SM facilitated the creation of CBA as a successor to SM's chargeback business.

  iii. Before CBA was a going concern, SM labeled its chargeback refutation service as "chargeback armor." Ex. 174. In its "Standard Service Agreement," SM provided for clients' use of its services through chargebackarmor.com. Exs. 350; 376; 579. But most compellingly,

  iv. Mike Costache, an SM employee and purported CBA CEO, sent an email to a SM client that included referring to SM as "the technology company that developed the CBA product" and noted that SM is "transitioning all clients to be billed" by CBA. Dkt. 231-1 at 8.

  v. Moreover, Argaman himself directed the incorporation of CBA, noting that "[t]he CEO and only representative for now will be Michael Costache . . . We intend to issue shares to Alon and I and possibly one or more investors." Ex. 404-3.

SM's Responsibilities within the Common Enterprise:

Services that Secured Merchants provided the common enterprise included:

 a. Chargeback resolution through their "ChargeBack Armor" service. Ex. 555 at 75:1-5; 256; 257; Dkt. #121-7 at 2.

 b. Plaintiff fdisputes that SM's "Chargeback Armor" service consisted of merely "installing a portal system. SM's company description states that, as part of their "ChargeBack Armor" service, SM "handle[s] the entire chargeback dispute process on your behalf." Ex. 257. SM provided "realtime" information concerning the "results" of their chargeback refutation. *Id.*

 c. Automated customer service systems through their "voice logix" system, Dkt. 121-7 at 2, and other assistance with Defendants' call center; Ex. 47; and

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

7

d.  Assisting Defendants in managing consumer relations for their negative option continuity plans through LimeLight, a third party customer relationship management Argaman used to directly facilitate AuraVie's load balancing scheme.

    i.  *See* Ex. 248 (Argaman writes to Defendant Medina: "help me out... lime light has a place in the subscription where you can switch processors/[merchant account identifiers]" and then follows up with Defendant Reuveni because he "need[ed] this asap as team is idle and waiting on this.");

    ii.  *See also* Ex. 547-2 (Medina providing instructions directly to Argaman regarding load balancing.). The evidence belies Defendants' contention that there is "no evidence" of Argaman or the other AuraVie defendants using Limelight for "negative options, continuity, and risk-free trials." Dkt. 392 at 20. A screenshot shows Limelight overseeing such accounts as "Myauravie.com RISK FREE TRIAL" and "Mymiraclekit.com RISK FREE TRIAL" while Argaman's email was open in another tab. Ex. 187. Other screenshots show the many "RISK FREE" accounts Limelight maintained for AuraVie. Ex. 247. (See, e.g., Dkt. #121-6 at 12; ex. 946 at 20:3-20:16.)

That the Argaman Defendants did not market or sell any skincare products: See Response to Dispute 2.

| | |
|---|---|
| 4. This Court has subject matter jurisdiction pursuant to 28 U.S.C.§§ 1331, 1337(a), and 1345 and 15 U.S.C. §§ 45(a), 53(b), and 57b. Dkts. 299 ¶ 4; 300 ¶ 4; 301 ¶ 4. *See also* Exs. 910-2 ¶ 1; 911-2 ¶ 1; 914-2 ¶ 1; 915-2 ¶ 1; 916-2 ¶ 1; 918-9 ¶ 1. | 4. Undisputed |
| 5. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 15 U.S.C. § 53(b). Dkts. 299 ¶ 5; 300 ¶ 5; 301 ¶ 5. *See also* Exs. 910-2 ¶ 6; 911-2 ¶6; 912-4 ¶ 6; 913-4 ¶ 6; 914-3 ¶ 6; 915-3 ¶ 6; 916-10 ¶ 6; 917-12 ¶ 6; 918- | 5. Undisputed |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| 10 ¶ 6. | |
|---|---|
| 6. Assignment to the Western Division is proper because Defendants' primary place of business was in Van Nuys, California. Ex. 904. | 6. Undisputed |
| 26. Defendant **Secured Merchants, LLC** is or was a California limited liability company with its principal place of business at the Reseda Office. Dkts. 299 ¶ 26; 301 ¶ 26. Secured Merchants, LLC, provided other members of the common enterprise the service of contesting chargebacks. See Ex. 917-45 ¶ 56. Secured Merchants, LLC transacted business in this district. Dkts. 244 ¶ 26; 245 ¶ 26. | 26. Disputed. SM did not provide members of the common enterprise with the service of contesting chargebacks. SM provided the technology to process chargeback documents per bank regulations. SM only provided the technology that could be used to view chargebacks. SM did not review, approve, or deny chargebacks. Argaman Decl. at ¶ 6 |

26. Moving Party's Response

    1.  Plaintiff does not contest that payment processors and banks are ultimately responsible for accepting or denying consumer chargeback demands.

    2.  Plaintiff contests the following of Defendants' Disputes:

That SM did not provide members of the common enterprise the service of contesting chargebacks:

    a.  SM provided the services that accounted for and sought to mitigate chargeback demands resulting from the scheme's deceptive practices. Secured Merchants described ChargeBack Armor as "Credit card chargeback processing, management & dispute services." Ex. 256.

    b.  SM's company description states that, as part of their "ChargeBack Armor" service, Secured Merchants "handle[s] the entire chargeback dispute process on your behalf." Ex. 257.

    c.  When providing SM's chargeback statistics to, among others, Argaman, Doron Nottea, Roi Reuveni, and Alon Nottea, SM employee Tyler Reitenbach wrote: "below are the numbers of chargebacks *we processed* for each active client." Ex. 151 (emphasis added). Thus, SM by its own terms deemed its services as "processing" chargebacks.

    d.  CBA stated, "Secured Merchants LLC billed SBM for processing of

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| chargebacks . . . ." Ex. 917-46 | |
|---|---|
| 26a. Relief Defendant Chargeback Armor, Inc., stated that Secured Merchants, LLC, billed SBM Management, Inc., for processing chargebacks request. Exs. 917 ¶¶ 156,162. | 26a. Disputed. The evidence cited by the FTC is incorrect in that Exhibit 917 does not even have 156 paragraphs. Assuming the FTC is referring to Exhibit 918, these are Responses to Request for Admissions by CBA and both 156 and 162 were denied. Also see Argaman Decl. at ¶ 2, 5, 6 |

**26a. Moving Party's Response**

   1. Plaintiff contests the entirety of this Dispute.

That Exhibit 917 is misrepresented:
   a. Paragraphs 156 and 162 of Exhibit 917 appear at Ex. 917-46 and 917-48, respectively.
   b. As indicated in Plaintiff's Uncontroverted Fact 26(a), CBA stated, "Secured Merchants LLC billed SBM for processing of chargebacks . . . ." Ex. 917-46.
   c. Defendant Argaman's statement in the cited Declaration that SM used independent contractors is not relevant. SM's use of internal and external employees and contractors do not affect the services SM provided the common enterprise.

| 26b. Secured Merchants, LLC, oversaw a variety of other responsibilities for the common enterprise. | 26b. Disputed. The FTC provides no support for this erroneous conclusion. SM was a technology vendor and did not have any other relationship or responsibilities with regards to the common enterprise. Argaman Decl. at ¶ 2, 5, 6, 17 |

**26b. Moving Party's Response**

   1. Plaintiff contests the entirety of Defendants' Dispute.

SM's Relationship with the Common Enterprise: See Response to Dispute 3.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| 26b(i). Secured Merchants managed the "voice logix" system, Defendants' automated customer service line. Ex. 257-2. | 26b(i). Disputed. SM only provided the technology for the voice logix system, it did not use it, manage it, or interact with customers in any way, shape or form. The Exhibit referenced does not show or reflect that Argaman or anybody else from SM drafted the document. Additionally, it appears to only be a partial document and the FTC has provided no foundation or evidentiary basis for the document. Argaman Decl. at ¶5, 6, 17, 30. |

26b(i). Moving Party's Response

    1.  Plaintiff contests the entirety of Defendants' Dispute.

That SM does not manage the voice logix system: SM's description of IVR Logix includes that SM reports among other things "how efficient[ly] the IVR system is responding to your customers' needs" and "[c]ustomized reporting from customer service rep to manager to QA." Ex. 257-2, -3. SM is the party responsible for maintaining this system for AuraVie; therefore, they are managing the software for them.

That Exhibit 257 does not show that Argaman or anyone from SM drafted it and lacks foundation:

    a.  As to the document's foundation: this is an evidentiary objection, and as such, it is not appropriate in Defendants' Statement of Genuine Disputes. Per the Court's Standing Order Re Summary Judgment Motions, the parties are required to make evidentiary objections through a "separate document . . . entitled 'Request for Evidentiary Ruling on Specified Objections."

    b.  As to whether anyone at SM drafted the document: Plaintiff recovered this document from the Defendants' computers from which they operated Secured Merchants.  Defendants cannot plausibly claim that an SM document tailored to appeal to investors and recovered from one of Secured Merchants' computers was not authored by Secured Merchants' personnel.

| | |
|---|---|
| 26b(ii). Defendant Argaman, and | 26b(ii). Undisputed as to SM providing |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| Secured Merchants LLC, provided $250,000 to Chargeback Armor, Inc. and was the entity that owned chargebackarmor.com. Exs. 916 ¶ 235; 917 ¶ 235; 280-1. | $250,000 to Chargeback Armor. Disputed as to SM owning Chargeback Armor. |
| 26b(ii). Moving Party's Response<br><br>    2.  Plaintiff contests the entirety of Defendants' Dispute.<br><br>SM's Ownership of www.chargebackarmor.com:<br>    a.  As seen in all SM Services Agreements, SM's services were "provided to you by SM through the WWW.CHARGEBACKARMOR.COM Site." Ex. 280-1.<br>    b.  This fact gels perfectly with SM's use of the name "ChargeBack Armor" for the services it provided, as demonstrated in both its contracts and its promotional materials. Ex. 256-1. | |
| 26c. Secured Merchant, LLC's executive summary stated that the company's founders owned a skincare product business: "Over the past two years, the founders of Secure Merchants saw first-hand every type of failure trap that could have killed their skin care product company, which today has monthly sales of $2.5 million or 25,000 orders. Thus the problems that our three initial services solve for any DRM [Direct Response Marketing] company are the core infrastructure needed to deal with (1) the inevitable credit card chargebacks, (2) keeping customers happy or allowing them an easy opt-out, and (3) providing the most sophisticated customer record management system." Ex. 256. | 26c. Disputed. SM has never sold skincare and is a technology services company. The founder is Argaman solely. Additionally, the document does not contain the words "Executive Summary" nor does the document state that it was created by Argaman or anybody from SM. The FTC has not offered any foundation for the document, and it appears to have been created by Alon Nottea reflecting his interest in becoming involved in SM. That involvement never came to be, and the arrangement between SM and Alon Nottea remained an arms-length fee for service relationship. Argaman Decl. at ¶ 1. |
| 26c. Moving Party's Response | |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

1. Plaintiff does not dispute that SM it is a technology services company or that SM does not sell skincare products.

2. Plaintiff does contest the following Disputes:

<u>That Alan Argaman is the sole founder of Secured Merchants:</u>
   a. Defendant Roi Reuveni held himself out on at least two occasions as a Managing Member of SM. Exs. 412-5; 413-5.
   b. SM's Operating Agreement lists Defendant Alon Nottea alongside Argaman as the Managers. Ex. 255-22.
   c. Defendant Doron Nottea listed his status as "Member" in bank account documents. Ex. 176-2.
   d. SM's executive summary/prospectus, which touts its "founder**s**" who "saw first-hand every type of failure trap that could have killed *their* skin care product company." Ex. 256-1 (emphasis added)..

<u>That the document does not contain the words "Executive Summary"or state that it was created by Argaman or anybody from SM:</u> See Response to Dispute 26b(i).

<u>That the document was created by Alon Nottea:</u> See Response to Dispute 26b(i).

<u>That Alon Nottea was not "involved in" SM beyond arms-length transactions with the company:</u>
   a. SM's Operating Agreement for the company lists Defendant Alon Nottea alongside Argaman as a Manager. Ex. 255-22.
   b. An unprivileged attorney email sent to Defendants Alon Nottea and Igor Latsanovski, containing a Collateral Assignment Agreement for SM, under which terms "Assignor" and "Assignee" are both "members of Secure Merchants, LLC" and contemplate cross-collateralizing the membership interests in the parties' co-owned properties. Ex. 557-2.
   c. Alon Nottea received emails for SM's chargeback statistics for all of its clients, including AuraVie and SM's third party clients. Ex. 151.
   d. Documents created by SM personnel list Alon Nottea as a manager of SM. Exs. 256; 257.
   e. Moreover, relating to SM's $250,000 investment in CBA, Argaman directed the incorporation of CBA while noting that "We intend to issue shares to Alon and I and possibly one or more investors," Ex. 404-3, which suggests Alon Nottea's interest stemming from SM's investment.

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| 26d. A Secured Merchants, LLC, employee sent an email titled "ChargeBack Armor Jan + Feb figures" to Alon, Alan Argaman, Doron Nottea, and Roi Reuveni. Ex. 151. This email included chargeback statistics for AuraVie. *Id*. | 26d. Disputed. SM never processed chargebacks. Additionally, the document is mischaracterized as it does not contain any statistics for chargebacks, but refers to monies owed by customers. CBA was formed the day after this document was purportedly created, February 18, 2015. Argaman Decl. at ¶ 6, 17; Costache Decl. at ¶ 4. |
|---|---|

26d. Moving Party's Response

1. Plaintiff does not dispute that CBA was formally incorporated the day after this document was purportedly created, February 18, 2015.
   a. Plaintiff qualifies this response, however, by noting that CBA's date of incorporation is not relevant to the Fact's veracity because SM used the name "ChargeBack Armor" to describe its chargeback service before it spun that service off into CBA.
   b. In addition, Defendants here rely on legal formalities, sidestepping the fact that CBA had long operated before formally incorporating in February 2015. For example, CBA boasted in its Executive Summary to potential investors that "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Ex. 281-2.

2. Plaintiff does not contest Defendants' Dispute that payment processors and banks are ultimately responsible for accepting or denying consumer chargeback demands.

3. Plaintiff contests the remainder of Defendants' Disputes:

That SM did not "process" chargebacks:
   a. SM described ChargeBack Armor as "Credit card chargeback processing, management & dispute services." Ex. 256. Indeed, SM's company description states that, as part of their "ChargeBack Armor" service, Secured Merchants "handle[s] the entire chargeback dispute process on your behalf." Ex. 257.
   b. When providing SM's chargeback statistics to, among others, Argaman,

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

14

Doron Nottea, Roi Reuveni, and Alon Nottea, SM employee Tyler Reitenbach wrote: "below are the numbers of chargebacks *we processed* for each active client." Ex. 151 (emphasis added).

c. Thus, SM by its own terms deemed its services to be "processing" chargebacks.

That Exhibit 151 does not contain any statistics for chargebacks, but refers to monies owed by customers:

a. By its sender's own terms, the document reflects "the numbers of chargebacks [SM] processed for each active client from Jan 1st, 2015 till [February 17, 2015]."

b. Moreover, the email refers to monies owed by customers—but explicitly does so as a function of the number of chargebacks processed for those customers. Ex. 151.

| | |
|---|---|
| 26e. A document titled "Secured Merchants" described the "ChargeBack Armor" services as helping "win back lost revenue by reversing chargebacks in your favor" and "handl[ing] the entire chargeback dispute process on your behalf." Ex. 257 | 26e. Disputed SM provided the technology to process documents per bank regulations. The operation and approval process is done by the client and the banks. The Exhibit referenced does not show or reflect that Argaman or anybody else from SM drafted the document and the FTC has not laid any foundation for this document. Additionally, it appears to only be a partial draft of a document. The document may reflect additional efforts by Alon Nottea to become involved in SM, which efforts never were consummated. SM does not approve or deny or process chargebacks. Argaman Decl. at. ¶ 6, 17, 30. |

26e. Moving Party's Response

1. Plaintiff does not dispute that SM does not approve or deny chargebacks.

2. Plaintiff does dispute:

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

That the referenced document was not created by SM and may reflect additional efforts by Alon Nottea to become involved in SM: See Response to Dispute 26b(i).

That Alon Nottea was not involved in Secured Merchants: See Response to Dispute 3.

That SM did not "process" chargebacks: See Response to Dispute 26d.

| | |
|---|---|
| 39. Defendant Alan Argaman was an owner of Defendant Secured Commerce LLC, Dkts. 299 ¶ 39, which designed, created, and helped manage the websites or landing pages used for deceptively marketing and selling skincare products. Ex. 46. He is also an owner of Secured Merchants, LLC, Dkts. 299 ¶ 39; 244 ¶ 39; 245 ¶ 39; see also Ex. 917 ¶ 208. Defendant Alan Argaman resides in this district. Dkt. 299 ¶ 39. | 39. Disputed. Argaman only worked on an AuraVie straight sale website that did not use any deceptive marketing and did not utilize negative options, continuity, or risk free trials. This Exhibit is an invoice for the straight-sale website and the invoice does not reference any deceptive landing pages or landing pages that contained negative options, continuity, or risk-free trials. The work is for a site that operates with buttons such as "Add to Cart" and ecommerce industry "checkout" as a straight sale site See Argaman Decl. at ¶ 9 |

39. Moving Party's Response

   1.  Plaintiff contests the entirety of Defendants' Dispute:

That Argaman only worked on an AuraVie straight sale website that did not use deceptive marketing: See Response to Dispute 2.

That Exhibit 46 is not an invoice for AuraVie's deceptive websites: That AuraVie apparently did not see fit to include "negative option continuity" and "deceptive landing page" in its invoice descriptors does not challenge the fact that Argaman is seen to have provided Alon Nottea webpage creation and design services for AuraVie's "satisfaction guaranteed" "risk free" landing pages. *See* Ex. 531; *see also* Response to Dispute 3.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| That SM did not "process" chargebacks: See Response to Dispute 26d. | |

| | |
|---|---|
| 39a. Doron Nottea and Motti Nottea stated that Alan Argaman managed Secured Commerce, LLC. Dkts. 244 ¶ 39;245 ¶ 39. | 39a. Disputed. Argaman was a member of Secured Commerce briefly, and invoiced once for a straight sale AuraVie website that did not use any deceptive marketing and did not utilize negative options, continuity, or risk free trials. The business was barely active as Secured Commerce was in the process of being dissolved. Argaman Decl. at . ¶ 9 |

| |
|---|
| 39a. Moving Party's Response<br><br>1. Plaintiff contests the entirety of Defendants' Dispute:<br><br>That Argaman only worked on an AuraVie straight sale website that did not use deceptive marketing: See Response to Dispute 2.<br><br>Defendants do not appear to contest that Argaman managed the business. |

| | |
|---|---|
| 39b. Doron Nottea also stated that he and Alan Argaman were the owners of Secured Commerce, LLC. Ex. 912 ¶ 214. | 39b. Undisputed |
| 39c. Alan Argaman sent and received emails using the email account avicoglobal@gmail.com. Ex. 916 ¶ 261. | 39c. Undisputed |
| 39d. Alan Argaman provided a variety of critical services to the common enterprise, many through his company, Secured Merchants LLC. | 39d. Disputed. Argaman did not provide any critical services as neither he nor SM engaged in marketing, selling, advertising, or billing related to AuraVie. Only technological services were provided. Argaman Decl. at. ¶12-17 |

| |
|---|
| 39d. Moving Party's Response<br><br>1. Plaintiff does not dispute that SM did not market, sell, or advertise the |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED
MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT
OF GENUINE DISPUTES

17

AuraVie products.

2. Plaintiff does contest the following Disputes:

That Argaman did not provide critical services and was not engaged in marketing, selling, advertising, and billing related to AuraVie: See Responses to Disputes 2 and 3.

That SM did not provide critical services or engage in billing related to AuraVie:
  a. CBA stated that SM billed SBM Management, Inc., for processing chargeback requests. Exs. 917 ¶¶ 156, 162.
  b. SM boasted that its contribution to the common enterprise "offer[s] a vehicle to resolve consumer disputes before they become chargebacks." Ex. 257-2.

That Argaman and SM only provided technological services: see Plaintiff's response to Dispute 3.

| | |
|---|---|
| 39d(i). Argaman provided integration services for their customer service management software, Limelight (*See* Dkt. 121-6 at 9-21; Dkt. 121-7 at 1-3), which Defendant Argaman testified is a software typically used for continuity sales. Ex. 555, 51:3-19. *See also* Ex. 946 at 19:23-20:17. | 39d(i). Disputed. Consistent with its role as a third party service provider, Argaman, by and through SM, assisted with connecting AuraVie's technology with technology the AuraVie Defendants had purchased or leased from Limelight. Neither SM nor Argaman ever managed the AuraVie accounts with Limelight. Additionally, the FTC mischaracterizes Argaman's testimony, as he stated that in regards to Lime Light "I haven't used it myself, so I don't really know" He later added that as a whole it can be used for negative options business. Argaman doesn't control the usage of the Lime Light software as he doesn't own it nor is he an affiliate or a partner of it. Exhibit 946 referenced by the FTC was not provided by the FTC in its MSJ filing. |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| Argaman Decl. at ¶ 27 |
|---|

39d(i). Moving Party's Response

1. Plaintiff does not dispute that Defendant Argaman does not control the usage of LimeLight as he is not an owner, affiliate, or partner of the company.

2. Plaintiff contests the following Disputes:

That, consistent with its role as a third party service provider, Argaman, by and through SM, assisted with connecting AuraVie's technology with technology the AuraVie Defendants had purchased or leased from Limelight:

 a. Argaman was consistently involved in managing Limelight. *See* Dkts. 121-6 at 9-21; Dkt. 121-7 at 1-3; Ex. 555 at 51:3-19.
 b. Argaman provided integration services for Limelight, the common enterprise's customer service management software, and technical expertise to create an automated response system to allow large numbers of consumers to cancel their continuity plans. Dkt. 121-6 at 9-21; Dkt. 121-7 at 1-3.
 c. He assisted Defendants in managing consumer relations for their negative option continuity plans through LimeLight. *See, e.g.*, Dkt. 121-6 at 12; Ex. 946 at 20:3-20:16.
 d. Paul Medina requested approval from Defendants Argaman and Doron Nottea to switch a Limelight account over to Secured Merchants. Ex. 59.
 e. Elsewhere, Exhibit 187 is a screenshot that shows Limelight overseeing such accounts as "Myauravie.com RISK FREE TRIAL" and "Mymiraclekit.com RISK FREE TRIAL" while Argaman's email was open in another tab, belying Defendants contention that Argaman did not use or manage Limelight.
 f. Alan Argaman emailed other Defendants about API Tracking going live on Limelight—and offered his help should they have any questions. Ex. 248.

That neither SM nor Argaman ever managed the AuraVie accounts with Limelight:

 a. Argaman was consistently involved in managing Limelight. *See* Dkts. 121-6 at 9-21; Dkt. 121-7 at 1-3; Ex. 555 at 51:3-19.
 b. Paul Medina requested approval from Argaman and Doron Nottea to switch a Limelight account over to Secured Merchants. Ex. 59.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

c.  Argaman actively engaged in load balancing on AuraVie's behalf to deceive payment processors. Ex. 248 (Argaman writes to Defendant Medina: "help me out... lime light has a place in the subscription where you can switch processors/[merchant account identifiers]" and then follows up with Defendant Reuveni because he "need[ed] this asap as team is idle and waiting on this."); *see also* Ex. 547-2 (Medina providing instructions directly to Argaman regarding load balancing.).

d.  Alan Argaman emailed other Defendants about API Tracking going live on Limelight—and offered his help should they have any questions.

e.  Elsewhere, Exhibit 187 is a screenshot that shows Limelight overseeing such accounts as "Myauravie.com RISK FREE TRIAL" and "Mymiraclekit.com RISK FREE TRIAL" while Argaman's email was open in another tab, belying Defendants contention that Argaman did not use or manage Limelight.

f.  Alan Argaman emailed other Defendants about API Tracking—a program allowing the scheme to more efficiently track which merchant accounts their potential chargebacks and refunds were being routed to—going live on Limelight and offered his help should they have any questions. Ex. 248.

That the FTC mischaracterized Alan Argaman's testimony regarding LimeLight:

a.  Concerning the substance of Argaman's testimony, Exhibit 187 is a screenshot that shows Limelight overseeing such accounts as "Myauravie.com RISK FREE TRIAL" and "Mymiraclekit.com RISK FREE TRIAL" while Argaman's email was open in another tab, undermining Defendants' contention that Argaman did not use or manage Limelight.

b.  Argaman testified LimeLight is a software typically used for continuity sales. Argaman specifically stated that he knew what LimeLight did, and that it was used for continuity sales: "I just told you before that I do know. As a whole, Lime Light is a CRM where negative option companies go to, to perform their business . . . and continuity." Ex. 555 at 7:15-19.

That the FTC did not provide Ex. 946 with its Motion for Summary Judgment: The FTC filed this Exhibit with its Motion for Summary Judgment. *See* Dkt. 353-32.

| 39d(ii). Argaman assisted Alon Nottea in operating a call center for AuraVie | 39d(ii). Disputed. Argaman did not operate a call center and never had |
| --- | --- |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

20

| | |
|---|---|
| customer complaints. Exs. 47; 149; 432; 440; 441; 516. | customer contact. Consitent with its role as a third party service provider, Argaman, through SM, briefly provided the technology for Interactive Voice Recognition Services (IVR), which were not operated by SM or Argaman but simply provided for use. The Exhibits are also misconstrued, and the FTC once again fails to provide any foundation for these exhibits or testimony putting them in the proper context. Exhibit 47 deals with the porting of numbers, not a call center; Exhibit 149 deals with technical projects, not call centers; and Exhibit , 432 deals with switching phone providers, a technical service, not running call centers for AuraVie; Exhibit 440 deals with auditing outstanding bills; Exhibit 441 deals with auditing outstanding bills; and Exhibit 516 deals with something called Phone Power, which appears to be a phone provider unaffiliated with Argaman. Argaman Decl. at ¶ 6, 7, 13, 16. |

**39d(ii). Moving Party's Response**

1. Plaintiff does not dispute Defendants' contentions that Defendant Argaman did not have consumer contact.

2. Plaintiff contests Defendants' Disputes:

That Argaman did not operate a call center: As asserted, Argaman assisted Alon Nottea in operating a call center for AuraVie customer complaints. Exs. 47; 149; 432; 440; 441; 516.
   a. He developed the call center from its initial stages. Ex. 149.
   b. He arranged for porting and forwarding phone numbers. Ex. 47; 432.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

   c. He oversaw which telephone numbers the call center used. Exs. 440; 441; 516.

   d. He helped determine whether to use customer representatives at the call center. Ex. 440.

   e. He facilitated the use of customer representatives in India. Ex. 386.

<u>That the FTC misconstrues the Exhibits in question:</u>

   a. **Exhibit 47—**Defendants argue this Exhibit deals with the porting of numbers unrelated to the operation of a call center. But this Exhibit also concerns the operation of 10 (866) or (888) phone numbers the common enterprise operated as well as the forwarding of toll-free 1-800 numbers used to operate a call center.

   b. **Exhibit 149—**Defendants argue this Exhibit concerns "technical projects, not call centers," a selective reading in light of the fact that Alan Argaman wrote, "Call Center . . . In the initial stages – will update ETA later" in this Exhibit.

   c. **Exhibit 432—**Defendants argue this Exhibit concerns "switching phone providers, a technical service, not running call centers for AuraVie." However, this Exhibit concerns the operation of 10 (866) or (888) phone numbers the common enterprise operated as well as the forwarding of toll-free 1-800 numbers used to operate a call center.

   d. **Exhibits 440 and 441—**Defendants argue these Exhibit concerns bill auditing, but the Exhibits contain discussion of the Defendants' use of US and UK phone numbers, as well as whether the Defendants should employ call center representatives. Perhaps the discussion occurs in light of Defendants' bill auditing, but it is nonetheless a discussion by Alan Argaman of the Defendants' call center operations.

   e. **Exhibit 516—**Defendants argue this Exhibit concerns a phone provider unaffiliated with Defendant Argaman. In fact, this is the list of (866) and (888) phone numbers Defendants operated as well as the company to which each number forwarded. Argaman is one of just two recipients of the list.

| | |
|---|---|
| 39d(iii). Argaman provided technical expertise to create an automated response system to allow large numbers of consumers to cancel their AuraVie continuity plans. *See* Dkt. 121-6 at 9-21; Dkt. 121-7 at 1-3. | 39d(iii). Disputed. Argaman did not create this system, it was provided by SM, consistent with its role as a third party service provider, as an open source solution available to anyone. Additionally, the system was not used |

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | by SM or Argaman, but the technology for the system was simply provided to the AuraVie entities as well as other companies unaffiliated with this lawsuit. Argaman Decl. at . ¶ 5, 6, 17 |
|---|---|

39d(iii). Moving Party's Response

1.  Plaintiff does not dispute that Alan Argaman and SM did not "use" the automated response system in that they instead provided it for their customers to use.

2.  Plaintiff contests Defendants' Disputes:

That Defendant Argaman did not create the automated response system, but simply provided the system as an "open source solution available to anyone."

a.  Defendants are minimizing the active role Defendant Argaman played in setting up the automated response system.
b.  Argaman continually billed SBM Mangement relating to the automated response system. Dkts. 121-6 at 9-21; 121-7 at 1-3.
c.  Secured Merchants managed the "voice logix" system, Defendants' automated customer service line. Ex. 257-2.
d.  In fact, Secured Merchants boasted that it offered the voice logic system as "a vehicle to resolve customer disputes before they become chargebacks," and stated it was "[a]n automated response service to assist you with resolving customer needs 24/7." *Id.*
e.  Secured Merchants did not just offer the system as open source, but claimed the system as its own and promoted their ability to report on the system's productivity.
  a.  Secured Merchants referred to the voice logix system as "*our* system." *Id.*
  b.  Secured Merchants promoted that they "[would] let you know how efficient the IVR system is response to your customers' needs." *Id.*

| 39d(iv). Secured Merchants boasted that its contribution to the common enterprise "offer[s] a vehicle to resolve consumer disputes before they become chargebacks." Ex. 257-2. | 39d(iv). Disputed. SM did not process chargebacks, but only provided the technology to view the chargebacks. It did not approve or deny them. The Exhibit referenced does not show or reflect that Argaman or anybody else from SM drafted the document. |
|---|---|

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | Argaman nor SM never had direct consumer contact nor assisted Alon Nottea with any call center. Additionally, it appears to only be a partial document. Argaman Decl. at. ¶ 5, 6, 17, 30. |
|---|---|

**39d(iv). Moving Party's Response**

(a) <u>Plaintiff does not dispute</u>:

    a.  That payment processors and banks are ultimately responsible for accepting or denying consumer chargeback demands.

    b.  That SM did not have direct consumer contact.

(b) <u>Plaintiff contests Defendants' Disputes</u>:

<u>That SM did not provide members of the common enterprise the service of contesting chargebacks</u>: See Responses to Disputes 3 and 26.

<u>That the Exhibit referenced does not show or reflect that Argaman or anybody else from SM drafted the document</u>: See Response to Dispute 26b(i).

<u>That SM and Defendant Argaman did not assist Alon Nottea with any call center</u>: See Response to Dispute 39(d)(ii).

| 39d(v). Defendant Argaman integrated the AuraVie free trial campaigns into Lime Light, a third party customer relationship management (CRM) software Defendants used for selling their products by negative option continuity plans. *See* Exs. 187; 306; 476; 493; 528; 547. | 39d(v). Disputed<br>The FTC attempts to turn SM's third party service provider arrangement into something more. Argaman never managed or used the limelight CRM system as LimeLight doesn't belong to him. The Exhibits are also misconstrued: Exhibit 187 appears to show campaigns of Limelight, a company that Argaman does not own or operate, Exhibit 306 is an email to <u>support@limelightcrm.com</u>, again having nothing to do with Argaman; Exhibit 476 is again unrelated to |
|---|---|

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | Argaman or SM and appears to be emails between Bunzai Media and Limelight; Exhibit 493 has something to do with Alert Bot, completely unrelated to this suit; Exhibit 528 was not provided by the FTC with its MSJ, and 547 is again an email with Limelight, not Argaman. Argaman Decl. at ¶ 27 |
|---|---|

**39d(v). Moving Party's Response**

1. Plaintiff contests the entirety of Defendants' Disputes:

<u>That Argaman never managed or used Limelight</u>: See Response to 39d(i).

<u>That Exhibits 187, 306, and 493 are misconstrued</u>:
   a. Exhibit 187 is a screenshot that shows Limelight overseeing such accounts as "Myauravie.com RISK FREE TRIAL" and "Mymiraclekit.com RISK FREE TRIAL" while Argaman's email was open in another tab, belying Defendants contention that Argaman did not use or manage Limelight. Next, although Defendants contend."
   b. Exhibit 306 is an email . . . having nothing to do with Argaman," Argaman is CC'd on the entire chain, which concerns Limelight gateways. Next, Exhibit 476 is an e-mail supporting Plaintiff's contention that Defendants used Limelight to sell their products by negative option continuity plans.
   c. Exhibit 493, which Defendants claim has nothing to do with this suit, finds the Defendants setting up Alert Bot, a system for immediate notification of problems with Limelight's domain. As Paul Medina states in the e-mail, Alert Bot was set up "[d]ue to last weeks [sic] confirmation from Limelight (CRM) that they were down for an hour with no API calls reaching to their server . . . ." Importantly, the Alert Bot representative on this addresses his email specifically to Defendant Argaman.
   d. Exhibit 528 finds Alan Argaman emailing other Defendants about API Tracking going live on Limelight—and offering his help should they have any questions. Finally, Argaman is cc'd on the entire chain—concerning Limelight—in Exhibit 547.

| 39d(vi). Email and screenshots show | 39d(vi). Disputed. Argaman did not |
|---|---|

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | |
|---|---|
| Defendant Argaman designing, creating, or managing a website offering risk free trial offers of skincare products. Ex. 531. | personally create any website. Through Secured Commerce, Argaman created an AuraVie straight sale site that did not offer risk free trials, continuity, or negative options. The Exhibit referenced is related to how shipping charges are [calculated/reflected] on the order pages, as shown on the email itself. It does not reference Argaman or SM designing any deceptive negatve option offer. Once again, the FTC offers no foundation or testimony regarding this document, instead erroneously speculating as to its meaning. Argaman Decl. at ¶9. |

39d(vi). Moving Party's Response

1.  Plaintiff does not contest Defendants' Dispute that this Exhibit "is related to how shipping charges are [calculated/reflected] on the order pages" but notes that their response does not contest Plaintiff's Fact that "screenshots show Defendant Argaman designing, creating, or managing a website offering risk free trial offers of skincare products."

2.  Plaintiff contests Defendants' Disputes:

That Defendant Argaman did not personally create any website:

    a.  Argaman was an owner of Defendant Secured Commerce, LLC, (Dkt. 299 ¶ 39), which designed the landing page used for deceptively marketing and selling AuraVie's skincare products. Ex. 46. Indeed, Defendants' own Opposition brief acknowledges that Argaman "helped design a straight sale website." Dkt. 392 at 8.

That Argaman created an AuraVie straight sale site that did not offer risk free trials, continuity, or negative options:

    a.  In an email sent to Defendant Alon Nottea with the subject heading "screen shot for order page," Argaman attaches screenshots of website order pages and requests that Nottea "look at the screen shots …[and] call me when u can." Ex. 531.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

26

   b.  These screenshots directly contradict Defendant Argaman's self-serving testimony. These screenshots provide a landing site for Miracle Face Kit's "Serum Risk Free Trial," with all of the "Satisfaction Guaranteed" and "Sub-Total $0.0000" traits of the "risk free" deception that Argaman denies having created.

That Exhibit 531 does not reference Argaman or SM designing any deceptive negative option offer:

   a.  There are several indications that Argaman designed this site.
      i.  He sent the email attaching the screenshot.
      ii.  The document URL is http://localhost/mystore/order.php, indicating it was a local document rather than a screengrab from an internet site.
   b.  The Exhibit concerns a screenshot for an AuraVie website order page.
   c.  The screenshot reflects a sample order of the "Miracle Face Kit Moisture Serium Risk Free Trial," along with the "Satisfaction Guaranteed" and "Sub-Total $0.0000" traits of the very "risk free" deception that Argaman denies having created.

| | |
|---|---|
| 39d(vii). Defendant Argaman admitted to creating AuraVie.com. *See* Ex. 555, 49:5-18. | 39d(vii). Disputed, as the website Argaman created, through Secured Commerce, was a straight sale website and had no negative options, continuity, or risk-free trials. Argaman Decl. at ¶ 9. |

39d(vii). Moving Party's Response

   1.  Plaintiff contests the entirety of this Dispute:

That the website Argaman created through Secured Commerce was a straight sale website and had no negative options, continuity, or risk-free trials: See Response to Dispute 39d(vi).

| | |
|---|---|
| 39d(viii). Defendant Alon Nottea's company was invoiced by Secured Commerce LLC, a company owned by Defendant Argaman for "Design, Creation, & Optimization of Auravie | 39d(viii). Disputed, as this Exhibit is for an invoice related to the straight sale AuraVie.com landing page.. Argaman Decl. at ¶ 27. |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| landing page Campaign Setup and integration to Lime Light CRM and Click Connector." *See* Ex. 46. | |

39d(viii). Moving Party's Response

    1. It is not clear what Defendants are disputing, as their response does not address Plaintiff's assertion that "Defendant Alon Nottea's company was invoiced by Secured Commerce LLC, a company owned by Defendant Argaman for "Design, Creation, & Optimization of Auravie landing page Campaign Setup and integration to Lime Light CRM and Click Connector."

| | |
|---|---|
| 39d(ix). Defendant Argaman sold Attitudeline/INFINI skincare products, a product that Defendants marketed or sold, or assisted others in marketing or selling, by negative option continuity plans (or assisted others in marketing or selling in the same manner). Ex. 368. | 39d(ix). Disputed. Argaman never sold any skincare for AuraVie nor marketed anything for AuraVie. Additionally, the email referenced does not mention AuraVie or any of the AuraVie corporate Defendants. The Exhibit also does not support the position that Argaman helped Defendants sell this product using deceptive methods. Argaman Decl. at ¶ 7, 12. The FTC fails to provide any foundation or context to support its speculation regarding the import of this Exhibit. |

39d(ix). Moving Party's Response

    1. Plaintiff does not dispute that Exhibit 368 does not refer to AuraVie.

    2. Plaintiff contests Defendants' Disputes:

That Argaman did not sell skincare for AuraVie and did not market anything for AuraVie: See Response to Dispute 2.

That Exhibit 368 does not mention any of the AuraVie corporate Defendants:
    a.  The Exhibit includes email communications between Alan Argaman, the owner of Secured Merchants, and Doron Nottea at his Secured Commerce email address.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

28

<u>That the Exhibit also does not support the position that Argaman helped Defendants sell this product using deceptive methods:</u>

(a) Plaintiff did not cite Exhibit 368 for the position that Defendants used deceptive methods to sell the Attitudeline/INFINI product. Plaintiff's asserted position is actually that Argaman helped sell this product, "a product that Defendants marketed or sold, or assisted others in marketing or selling, by negative option continuity plans (or assisted others in marketing or selling in the same manner)."

(b) The cited Exhibit involves an email from Alan Argaman to Doron Nottea, forwarding purchase orders for the Infinite Skincare line.

(c) The cited Exhibit also contains another party sending Alan Argaman the purchase orders and instructing him to start the process and mentioning her customers waiting for the product.

| | |
|---|---|
| 39d(x). Defendant Argaman participated in planning and managing the AuraVie Angels promotional campaign. Exs. 185; 494; 497. | 39d(x). Disputed. Argaman never marketed or advertised for AuraVie nor managed anything related to AuraVie. Exhibit 185 is a quote to build a blog, which is part of the straight-sale domain AuraVie.com. Exhibit 494 also relates to the quote for the blog and does not reference any promotional campaign, Exhibit 497 deals with the quote for the straight sale website as well. As the exhibits themselves show, this quote was never approved and is thus irrelevant. Argaman Decl. at ¶ 12-16. Once again the FTC fails to provide any foundation or context for the speculation that it offers as an undisputed fact. |

39d(x). Moving Party's Response

1. Plaintiff contests the entirety of Defendants' Disputes:

<u>As contended, the cited Exhibits demonstrate that Defendant Argaman participating in planning and managing the AuraVie Angels promotional campaign:</u>

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

a. Exhibits 185 and 497 reveal Argaman planning the AuraVie Angels promotion, which includes designing blogs along with (1) redesigning AuraVie's homepage to "contain links to" the blogs Argaman created; (2) designing a "Main Wordpress Portal" that would include a "Shop" link for AuraVie; and (3) coordinating the various "Wordpress Angel" blogs. Ex. 185-1. He then provided a step-by-step program for how he would design the campaign.

b. Exhibit 494 finds a third party contractor involved in the design of the AuraVie Angels blogs asking Argaman and Alon Nottea regarding his "work on Angels" to "review what I've done so far and to review the content" when he is able to "swing by Bunzai," to which Argaman says he will provide the contractor with updates after consulting Nottea.

| 39d(xi). Defendant Argaman established toll-free telephone numbers for various shell corporations and set up call forwarding for those numbers. *See, e.g.,* Ex. 529. | 39d(xi). Disputed. Consistent with its role as a third party service provider, Argaman through SM assisted companies with obtaining telephone numbers. Exhibit 529 reflects that type of conduct. Argaman Decl. at ¶25. |
|---|---|

39d(xi). Moving Party's Response

1. Plaintiff contests the entirety of Defendants' Disputes:

That Defendant Argaman was a "third party service provider":

a. See Response to Dispute 3.

b. Defendant Argaman was an owner of Defendant Secured Commerce, LLC, (Dkt. #299 ¶ 39), which designed the landing page used for deceptively marketing and selling AuraVie's skincare products according to an invoice. Ex. 46.

c. Defendant Argaman also owned Secured Merchants. Services that Secured Merchants provided the common enterprise included: (1) chargeback resolution through their "ChargeBack Armor" service (Ex. 555 at 75:1-5; 256; 257; Dkt. 121-7 at 2); (2) automated customer service systems through their "voice logix" system (Dkt. 121-7 at 2) and other assistance with Defendants' call center (Ex. 47); and (3) assisting Defendants in managing consumer relations for their negative option continuity plans through LimeLight, a third party customer relationship management. (See, e.g., Dkt. #121-6 at 12; ex. 946 at 20:3-20:16.);

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

d. Argaman's company SM provided seed funding to Relief Defendant CBA, which the common enterprise used to process thousands of chargebacks. Ex. 281-2. Although Mike Costache formally incorporated CBA, the incorporation documents were prepared by AuraVie's CPA firm according to Argaman's instructions, with it understood that "[w]e intend to issue shares to Alon and I [i.e., Argaman himself]." Ex. 404-3.

e. Emails show Defendant Argaman working on and discussing with Defendant Alon Nottea a "risk free," "Satisfaction Guaranteed" Miracle Face Kit website. Ex. 531.

f. Emails also show Defendant Argaman being consulted, along with Defendants Alon and Doron Nottea, concerning advertising for LeElle, a product Argaman pitched to Doron Nottea as a potential new addition to the AuraVie product brands. Ex. 360; *see also* Ex. 361.

g. Acting either on behalf of one of his corporate entities or in his individual capacity, Defendant Argaman designed and managed the AuraVie Angels advertising campaign. Exs. 185; 187; 494; 497.

h. Attitudeline/INFINI: Defendant Argaman sold Attitudeline/INFINI skincare products, a product that Defendants marketed or sold, or assisted others in marketing or selling, by negative option continuity plans (or assisted others in marketing or selling in the same manner). Ex. 368.

i. Argaman established toll-free telephone numbers for various shell corporations and set up call forwarding for those numbers to aid the deception AuraVie used against credit card processors. *See, e.g.,* Ex. 529.

    i. Defendants contend that Exhibit 529 does not support the claim that Argaman created toll-free numbers for "shell companies." Dkt. 392 at 20.

    ii. In fact, the email chain finds an employee of Bunzai needing phone numbers for AuraVie's shell merchant account companies asking Argaman for "5 completely random 800 numbers . . . completely off and different because we will be using them for different corporations." Ex. 529-2.

    iii. Defendant Alon Nottea then replies to the email by asking Argaman: "when you can I need those 5 numbers for more merchant accounts – toda[y]." Ex. 529-1. In his response, Argaman provides the numbers "already pointing to the server" and asks "[i]f you need more numbers let me know." *Id.*

j. Argaman coordinated shipping logistics for Pinnacle Logistics, Inc.—the AuraVie company responsible for order fulfillment. Exs. 174; 370.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

That Defendant Argaman did not set up toll-free telephone numbers for various shell corporations:

    a. Defendants contend that Exhibit 529 does not support the claim that Argaman created toll-free numbers for "shell companies." Dkt. 392 at 20.

    b. In fact, the email chain finds an employee of Bunzai needing phone numbers for AuraVie's shell merchant account companies asking Argaman for "5 completely random 800 numbers . . . completely off and different because we will be using them for different corporations." Ex. 529-2.

    c. Defendant Alon Nottea then replies to the email by asking Argaman: "when you can I need those 5 numbers for more merchant accounts – toda[y]." Ex. 529-1.

    d. In his response, Argaman provides the numbers "already pointing to the server" and asks "[i]f you need more numbers let me know." *Id.*

| | |
|---|---|
| 39d(xii). Defendant Argaman used Secured Commerce to lease the main office suite where Defendants operated. Dkt. 120 at 12. | 39d(xii). Disputed. The AuraVie Main offices were 7900 Gloria, which SM did not use. The address referenced is where Doron Nottea had an office but no shipping/marketing or anything else was done there related to AuraVie. Argaman Decl. at ¶ 10, 11. |

39d(xii). Moving Party's Response

    1. Plaintiff contests the entirety of Defendants' Disputes:

Defendants' main office suite was the Canby location: Defendants had three office suites at Canby.

    a. Two were leased by Secured Commerce, which Argaman co-owns with Defendant Doron Nottea. Dkt. 120, 12.

    b. The third suite was occupied by Focus Media Solutions.

    c. When the receiver initially entered the Canby location, both Argaman and Doron Nottea were in Suite 105.

    d. The premises contained books holding dozes of credit cards, deposit stamps for more than 18 entities, deposit slips or checks for at least 35 entities, devices used for electronic fund transfers, and blank signed checks for at least eight entities—among them, CalEnergy, Defendant Latsanovski's

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

personal account, SBM Management, and Focus Media Solutions. *Id.*
    e.  Suite 109 contained AuraVie, LeOR, and Dellure skincare products. *Id.*
    f.  Paul Medina was present at Suite 103. That office contained computers with photos and designs of skincare products.
    g.  This evidence supports the **receiver's conclusion that the Canby suites were the operation's nerve center**. *Id.*

| | |
|---|---|
| 39. Defendant Argaman played a role in the decision making and marketing of new products relating to the common enterprise that went beyond providing assistance with technology issues and shipping. | 39e. Disputed. Argaman never marketed, sold, advertised AuraVie products. Argaman Decl. at ¶12. |

39e. Moving Party's Response

    1.  Plaintiff contests the entirety of Defendants' Dispute:

<u>That the Argaman Defendants did not market or sell any skincare products</u>: See Response to Dispute 2.

| | |
|---|---|
| 39e(i). Defendant Argaman sent Doron Nottea a presentation concerning a product called LeElle. Defendant Argaman was later consulted concerning the company's packaging design. Exs. 360; 361. | 39e(i). Disputed. The email containing the presentation was originally sent by Ygal Edy, not Argaman. Additionally, LeElle was for a separate high-end department store business that never got off of the ground. This concept product was never created, marketed or sold. Argaman Decl. at ¶ 24. The documents cited have nothing to do with the conduct alleged in the complaint, and once again the FTC offers no evidence to support its erroneous assumptions regarding the document upon which it attempt to rely. |

39e(i). Moving Party's Response

    1.  Plaintiff does not dispute that:
        a.  The email containing the presentation was originally sent by Ygal Edy, but Plaintiff notes that this does not address the fact that

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | |
|---|---|
| Argaman sent the presentation to Doron Nottea. | |
| b. LeElle was a concept product that was never created, marketed, or sold. Plaintiff qualifies this response, however, by noting (1) that Defendants offer no support for this claim beyond Argaman's self-serving Declaration; and (2) that the significance of the email does not relate to whether the product was brought to market but instead the email is significant because it reflects the depth and scope of Argaman's participation in the AuraVie scheme in attempting to bring new products to his co-conspirators. | |
| 39e(ii). Defendant Argaman also provided input concerning who would own the new product Defendants were marketing. Ex. 362. | 39e(ii). Disputed. Argaman never partook in anything related to what Defendants were marketing. Argaman Decl. at ¶ 12. The Exhibit attached deals with LeElle, which was a product that did not relate to AuraVie, was for a different business, and was never sold or marketed regardless. Argaman Decl. at ¶ 24. |

39e(ii). Moving Party's Response

1. Plaintiff does not contest Defendants' Dispute that:
   a. <u>LeElle was a concept product that was never created, marketed, or sold</u>

2. Plaintiff contests Defendants' Disputes:

<u>That Argaman never "partook in anything related to what Defendants were marketing"</u>: See Responses to Disputes 2 and 3.

<u>That LeElle does not relate to AuraVie</u>:
   a. Defendants' response ignores the fact that Argaman's pitch for LeElle represented not only his level of involvement in the skincare business but also the addition of another skincare product in AuraVie's stable of products.
   b. AuraVie has existed and been marketed by the AuraVie defendants in various iterations including Dellure and LeOr, *see* Dkt. 120 at 15,and LeElle was simply another potential brand in the AuraVie stable.

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>
34

| | |
|---|---|
| 39f. Defendant Argaman played a key role in refuting consumer chargebacks for the Corporate Defendants, through his company, Secured Merchants LLC. | 39f. Disputed. SM did not process chargebacks, but only provided the technology to view the chargebacks. SM played no role in deciding what chargebacks to dispute nor in the basis for refuting them. Argaman Decl. at. ¶ 6, 17 |

39f. Moving Party's Response:

1.  Plaintiff contests the entirety of Defendants' Dispute:

<u>That SM did not process chargebacks, but only provided the technology to view them</u>: See Responses to Disputes 26 and 26d.

<u>That SM played no role in deciding what chargebacks to dispute nor "in the basis for refuting them"</u>:

(a) SM's company description states that, as part of their "ChargeBack Armor" service, Secured Merchants "handle[s] the entire chargeback dispute process on your behalf." Ex. 257.

(b) Furthermore, Mike Costache, who worked for Secured Merchants and owned CBA, stated that  "Roi Reuveni provided me advice about the various ways chargebacks are received, processed and sent out to the processor and how *C[B]A can help the payment industry by replying only to chargebacks that can be won with proper evidence from the client's Customer Relationship Management (CRM), gateway provider(s) and shipping provider(s).*" This indicates the crux of CBA's value was deciding which chargebacks to reply to—and replying to them.

     i. Note that CBA was the successor company to SM in processing chargebacks—and that SM moved its clients to CBA. As Mike Costache stated, "[a] few months ago we established a new company, called Chargeback Armor, Inc. and we're transitioning all clients to be billed by this entity." Dkt. 231-1 at 8. (Emphasis added.)

| | |
|---|---|
| 39f(i) . Defendant Argaman admitted that his company contested consumer chargebacks for the Corporate Defendants that sold AuraVie and that | 39f(i). Disputed. SM did not process chargebacks, but only provided the technology to view the chargebacks. It did not approve or deny them. Argaman |

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | |
|---|---|
| Secured Merchants had previously provided a chargeback refutation service termed "chargeback armor. Ex. 555 at 75:1-5, 86:10-25, 88:15-24 | Decl. at. ¶ 6, 17 |

39f(i). Moving Party's Response

1. Plaintiff does not contest Defendants' Dispute that payment processors and banks are ultimately responsible for accepting or denying consumer chargeback demands.

2. <u>Plaintiff contests Defendants' Dispute that SM did not process chargebacks, but only provided the technology to view them:</u> See Responses to Disputes 26 and 26d.

| | |
|---|---|
| 39f(ii). Defendant Argaman possessed a "Standard Service Agreement" form for clients' use of Chargebackarmor.com. Further, emails suggest that Secured Merchants processed chargebacks for AuraVie under the name Chargeback Armor. Exs. 280; 348; 412; 413. | 39f(ii). Disputed. Disputed. SM did not process chargebacks, but only provided the technology to view the chargebacks. It did not approve or deny them. Argaman Decl. at. ¶ 6, 17. Additionally, CBA was not formed until February 2015. Costache Decl. at ¶ 4. Exhibit 280 deals with legal terms for a software service, and does not have anything to do with processing chargebacks for AuraVie. Exhibit 348 deals with software fees having to be paid, and again does not reference processing of chargebacks. Exhibits 412 and 413 deal with a company called Creative Venture and Vitaque, neither of which are mentioned anywhere in the First Amended Complaint nor named as Defendants in this case as they are unrelated completely. Argaman Decl. at ¶ 31. |

39f(ii) Moving Party's Response

1. Plaintiff does not dispute that payment processors and banks are ultimately

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

responsible for accepting or denying consumer chargeback demands.

2. Plaintiff contests Defendants' Dispute:

That SM did not process chargebacks, but only provided the technology to view
them: See Responses to Disputes 26 and 26d.

That SM did not operate under "ChargeBack Armor" because CBA did not
incorporate until Feb. 2015:
    (a)  Defendants rely on CBA's date of incorporation, which does not contradict
         the fact that SM used the "ChargeBack Armor" name operated long before
         incorporating CBA.
    (b) Specifically, CBA processed thousands of AuraVie chargebacks in 2014
         and early 2015.
    (c)  CBA boasted in its Executive Summary to potential investors that "33,000
         chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an
         anti-aging skincare company." Ex. 281-2.
    (d)  And Tyler Reitenbach sent an email in Feb. 2015 summarizing CBA's
         year-to-date chargeback statistics. Ex. 151.

That Exhibit 280 deals with legal terms for a software service, and does not have
anything to do with processing chargebacks for AuraVie
    (a) This is a contract between SM and a third party that shows SM operating
         "through the CHARGEBACKARMOR.COM site"—i.e., that shows SM
         used Chargebackarmor.com.

That Exhibit 348 deals with software fees having to be paid, and again does not
reference processing of chargebacks.
    (a) In fact, in this document, Secured Merchants invoices SBM Management
         for chargeback resolution services through CBA.

That Exhibits 412 and 413 deal with a company called Creative Venture and
Vitaque, neither of which are mentioned anywhere in the First Amended
Complaint nor named as Defendants in this case as they are unrelated completely.
    (a) This assertion is irrelevant. Exhibits 412 and 413 are contracts between SM
         and third parties that show SM used Chargebackarmor.com as well as the
         CBA moniker.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED
MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT
OF GENUINE DISPUTES

| | |
|---|---|
| 39f(iii). The Chargeback Armor Service Agreement states: "The Software is made available to you and the Service is owned, operated, and provided to you by SM through the CHARGEBACKARMOR.COM Site." Ex. 280. | 39g(iii).Undisputed. |
| 39f(iv). According to Chargeback Armor, Inc.'s Executive Summary, "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an antiaging skincare company." *See* Ex. 281-2. | 39f(iv). Disputed. This is a draft document that was never used. Additionally, the document refers to a previous version of the chargeback software and has nothing to do with CBA, as CBA was not incorporated until February 2015. Costache Decl. at ¶ 4. |

39f(iv). Moving Party's Response.

   1. <u>Plaintiff contests the entirety of Defendants' Dispute:</u>

<u>That Exhibit 281 is mischaracterized:</u>
    a. Contrary to Defendants' assertion, Exhibit 281 not only references ChargeBack Armor, but is printed on ChargeBack Armor's letterhead. Indeed, the document starts with a section titled "OUR SERVICE" that is immediately followed by a reference to and description of ChargeBack Armor.
    b. The document contains a section titled "Management" that lists ChargeBack Armor's executives including Mike Costache as "Chief Executive Officer."
    c. As with SM's executive summary/prospectus, the document's legend regarding its "not [being] an offer for securities and should not be construed as such" indicates that it is a summary of the company's business structure for the "Investment Opportunity" for "$500,000 for staffing and marketing" that the summary/prospectus is attempting to solicit.

<u>That the document has nothing to do with CBA because CBA was not incorporated until Feb. 2015:</u> See Responses to Disputes 26(d) and 39(f)(ii).

| | |
|---|---|
| 39fv. A document titled "Secured | 39fv. This was a draft document created |

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | |
|---|---|
| Merchants – Company Describes" described the "ChargeBack Armor" services as helping "win back lost revenue by reversing chargebacks in your favor" and "handl[ing] the entire chargeback dispute process on your behalf." Ex. 257. | before CBA was incorporated and does not describe what CBA or SM actually did with chargebacks, as they only created the ability to view them, not process them/approve or deny them. The document also does not reference Argaman nor Costache, the principal of CBA, and thus does not even specify who created it. Argaman Decl. at ¶ 6, 17. |

**39f(v). Moving Party's Response.**

1. Plaintiff does not contest that payment processors and banks are ultimately responsible for accepting or denying consumer chargeback demands.

2. Plaintiff contests Defendants' Disputes:

<u>That this document was created before CBA was incorporated:</u> As shown, Defendants operated CBA long before incorporating it; *see* Responses to 26d and 39f(ii).

<u>That CBA "only created the ability to view them, not process them/approve or deny them":</u> see Responses to Disputes 2, 26d, and 39f(ii).

<u>That the document does not reference Argaman or Costache, and thus does not specify who created it:</u> see Plaintiff's Response to 26b(i). Mike Costache created the document.

| | |
|---|---|
| 39g. Defendant Argaman operated Relief Defendant Chargeback Armor, Inc., a company Defendant Alon Nottea admitted was used to refute consumer chargebacks, jointly with other Individual Defendants. | 39g. Disputed. Mike Costache has always been the sole incorporator, board member, shareholder, director, and owner of CBA. Argaman did not operate CBA. Costache Decl. at ¶ 2; Argaman Decl. at ¶ 21. |

**39g. Moving Party's Response.**

1. Plaintiff contests the entirety of Defendants' Dispute:

<u>That Costache was the sole shareholder of CBA:</u>

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

(a) Defendant Alon Nottea solicited investors for Chargeback Armor (ex. 910-33, ¶234; Ex. 917-65, ¶234), and the purported Chargeback Armor CEO referred to him as his "business partner." Dkt. 120 at 19.

(b) Argaman himself directed the incorporation of CBA, noting that "[t] the CEO and only representative for now will be Michael Costache . . . We intend to issue shares to Alon and I and possibly one or more investors." Ex. 404-3.

(c) Alon Nottea's email signature was from Chargeback Armor. Dkt. 231-1 at 27. Moreover, purported CEO Mike Costache also consulted with the Argaman and Alon Nottea concerning hiring and contracting decisions. Dkt. #231-1 at 11-13, 23, and 26.

(d) In a March 23, 2015 email, Costache represented that Alon Nottea was a board member of the company and Roi Reuveni was COO. Dkt. 231-1 at 52.

That Costache was the sole director of CBA:

    a. A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. 231-1 at 36.

    b. Roi Reuveni was COO of the company. Ex. 917 at ¶237.

    c. Chargeback Armor's Executive Summary lists Defendant Alon Nottea as President, Defendant Alan Argaman as Chief Technology Officer, and Defendant Roi Reuveni as Customer Service Manager. Dkt. 231-1 at 6.

    d. Doron Nottea was a signatory on Chargeback Armor's bank account and is listed as secretary of the company on its Bank of America account. Dkt. 231-1 at 46, 48.

    e. In a March 24, 2015 email, Costache represented that Defendant Alon Nottea was a board member. Dkt. 231-1 at 53.

That Costache was the sole board member of CBA: Insofar as "sole director" and "sole board member" are equivalent, Plaintiff reasserts:

    a. A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. 231-1 at 36.

    b. Roi Reuveni was COO of the company. Ex. 917 at ¶237.

    c. Chargeback Armor's Executive Summary lists Defendant Alon Nottea as President, Defendant Alan Argaman as Chief Technology Officer, and Defendant Roi Reuveni as Customer Service Manager. Ex. 281-3.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

40

d. Doron Nottea was a signatory on Chargeback Armor's bank account and is listed as secretary of the company on its Bank of America account. Dkt. 231-1 at 46, 48.

e. In a March 24, 2015 email, Costache represented that Defendant Alon Nottea was a board member. Dkt. 231-1 at 53.

<u>That Argaman did not operate CBA:</u> See Response to Dispute 3.

| | |
|---|---|
| 39g(i). Defendant Argaman, through his company Secured Merchants LLC, provided $250,000 in startup capital to Chargeback Armor, Inc. Exs. 916 ¶ 235; 917 ¶ 235; Dkt. #231-1 at 53. | 39g(i).Undisputed. |
| 39g(ii).Chargeback Armor's Executive Summary states that Defendant Argaman was the company's "Chief Technology Officer." Ex. 281. | 39g(ii).Disputed. This was a draft document that never became operational and Argaman was never Chief Technology Officer for CBA. Costache Decl. at ¶ 2; Argaman Decl. at. ¶ 21. |

39g(ii). Moving Party's Response.

   1.  Plaintiff contests the entirety of Defendants' Dispute:

<u>That Exhibit 281 is mischaracterized</u>: See Response to Dispute 39(f)(iv).

<u>That Argaman was never CTO of CBA</u>: See Response to 39(g).

| | |
|---|---|
| 39g(iii).Nova 8 Media billed Defendant Argaman of Secured Merchants for "design services" for "Chargeback Armor." *See*, *e.g.,* Ex. 414. | 39g(iii).Undisputed. |
| 39g(iv).A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea,and Avi Argaman. Dkt. # 231-1 at 36. | 39g(iv). Disputed. The document referenced is not an "agreement" as it is not signed and is thus a draft. Additionally, Mike Costache has always been the sole incorporator, board member, shareholder, director, and owner of CBA. Costache Decl. at ¶ |

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | 2 |

39g(iv). Moving Party's Response.

   1.  Plaintiff contests the entirety of Defendants' Dispute:

<u>That Costache was the sole shareholder of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole director of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole board member of CBA</u>: See Response to Dispute 39g.

<u>That the cited document is not a services agreement</u>: Plaintiff did not claim the cited document was the executed version of a services agreement, but referred to the document as a services agreement because it is so titled. Dkt. 231-1 at 36. Its lack of execution has no bearing on the description it contains of the company's board.

| 39g(v). A Chargeback Armor, Inc. lease agreement dated February 27, 2015 lists Mike Costache, Doron Nottea, and Defendant Argaman as individuals to whom mail may be sent to Chargeback Armor, Inc. Ex. 365-13. | 39g(v). Disputed. This does not demonstrate that Doron Nottea and Alan Argaman exercised control over CBA: and this clerical agreement was done for convenience purposes only as Doron Nottea was not a part of CBA and neither was Argaman. Costache Decl. at ¶ 2, 3, 9; Argaman Decl. at ¶ 21. |

39g(v). Moving Party's Response.

   1.  Plaintiff contests the entirety of Defendants' Disputes but notes that Plaintiff's Uncontroverted Fact does not address those receiving mail for CBA as "exercise[ing] control" over CBA; instead, we allege that they participated in CBA's business activities. Nevertheless, Plaintiff contests:

<u>That this document is a clerical agreement</u>: The cited document is a lease agreement that establishes that Doron Nottea, Mike Costache, and Defendant Argaman received mail on behalf of ChargeBack Armor, reflecting their involvement with the company.

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

<u>That Doron Nottea and Alan Argaman never exercised control over CBA:</u>

    a. David Davidian, the CPA for the AuraVie scheme, incorporated CBA according to Argaman's direct specifications. Ex. 404.

    b. Argaman's instructions contemplated Alon Nottea and himself as primary CBA shareholders. *Id.*

    c. Argaman additionally noted that "*we* are looking for office space." *Id.*

    d. Upon completing the incorporation, Davidian sent the formal documentation to Argaman and Doron Nottea. *Id.*

    e. Doron Nottea opened and managed CBA's bank account. Ex. 369.

    f. Doron Nottea and Argaman were regularly included in updates relating to CBA's performance for AuraVie and other clients. *See* Exs. 151; 290.

    g. After Defendant Reuveni acted as an authorized signatory in executing CBA's office lease, he provided the executed copy to Doron Nottea. Ex. 365.

<u>That Doron Nottea and Alan Argaman were not a part of CBA:</u> See Responses to 39g and 43c(v).

<u>That the clerical agreement was done for "convenience purposes" only:</u>

    a. Defendants offer no evidence that the agreement was done for convenience purposes.

    b. Defendants do not attempt to show what convenience this arrangement added, nor how the convenience argument disproves these individuals' involvement with CBA.

    c. This assertion fails because the document is a lease agreement that provides that three individuals who were, respectively, CBA's CEO, Chief Technology Officer, and signatory on its bank account would receive mail on behalf of CBA.

| | |
|---|---|
| 39g(vi). Defendant Argaman incorporated Chargeback Armor, Inc. in concert with other Individual Defendants. Ex. 404. | 39g(vi). Disputed. Mike Costache was the sole incorporator of CBA, as shown on Secretary of State filings. Costache Decl. at ¶2. The Exhibit is mischaracterized as on its face, the email is Argaman asking a CPA to open |

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | CBA on behalf of Costache. |
|---|---|

39g(vi). Moving Party's Response.

1. <u>Plaintiff does not contest that Mike Costache was the sole incorporator of CBA.</u>

2. Plaintiff contests Defendants' Disputes:

<u>That Exhibit 404 is mischaracterized because it reflects Costache asking a CPA to open CBA on Costache's behalf:</u>

    a. Incorporation was done in concert and at Argaman's behest.

    b. Argaman's instructions contemplate his being a controlling shareholder,"issu[ing] shares to Alon [Nottea] and I [i.e., Argaman himself] and possibly one or more investors." Ex. 404.

    c. Defendants ignore that the Exhibit reflects Alan Argaman instructing David Davidian to "Please open . . . a new CA C-Corp named: ChargeBack Armor, Inc," and, again, to"proceed with the expedited formation of the company." *Id.*

    d. Argaman also repeatedly uses "we" in describing CBA's future conduct, including his statement that "[w]e intend to open an office." *Id.*

    e. This at a minimum, amounts to incorporation in concert with Costache. Argaman is the individual steering and overseeing incorporation.

| | |
|---|---|
| 39g(vii).Defendant Argaman received statistics detailing chargeback numbers for various Chargeback Armor clients, including AuraVie. Ex. 151 | 39g(vii). Disputed. This was a draft document done before CBA was incorporated. Additionally, Argaman was not a part of CBA. Argaman Decl. at ¶ 21; Costache Decl. at ¶ 2. Exh. 151 deals with closing down the books of the chargeback software as CBA was formed the day after. It does not reference any statistics. |

39g(vii). Moving Party's Response.

    1. Plaintiff contests the entirety of Defendants' Dispute:

<u>That Ex. 151 was a draft document done before CBA was incorporated:</u>

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

a. Regarding CBA's extensive operations prior to incorporating, see Plaintiff's Response to Disputes 26d and 39f(ii).

b. The cited document is not a draft document, but an email transmitting the number of chargebacks CBA processed "for each active client" from Jan. 1, 2015 to Feb. 17, 2015.

<u>That Argaman was not a part of CBA</u>: see Plaintiff's Response to Dispute 3.

<u>That Ex. 151 deals with closing down books and does not reference statistics</u>:

a. Exhibit 151 deals with the chargeback statistics for CBA's "*active clients*."

b. It tracks the number of chargebacks processed for each client, as well as the associated payments.

c. It contains no reference to closing down books.

| | |
|---|---|
| 39g(ix). Defendant Argaman participated in discussions concerning high-level corporate decisions for Chargeback Armor ranging from updates regarding the launch of the company to opening the company's corporate bank account. Exs. 184; 369. | 39g(ix). Argaman had no role with CBA and Mike Costache has always been the sole incorporator, board member, shareholder, director, and owner of CBA. Argaman did not operate CBA. Costache Decl. at ¶ 2; Argaman Decl. at ¶ 21. Exh. 184 deals with Alon Nottea apparently pitching investors a call center technical support business and does not reference any sort of decision making for CBA. Exhibit 369 was not provided by the FTC as part of its MSJ. |

39g(ix). Moving Party's Response.

    1.  Plaintiff contests the entirety of Defendants' Dispute:

<u>That Costache was the sole shareholder of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole director of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole board member of CBA</u>: See Response to Dispute 39g.

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

That Exhibit184 is Mischaracterized: The email, from Alon Nottea to Argaman reads: "Also very excited about Tyler [Reitenbach]'s sales call and the boarding of the first customer for chargeback armor. as you mentioned, we need to have a meeting in order to discuss a few points with respect to the launch of these companies… How we are billing the customers, through which entity are we signing the agreements and so on." Ex. 184.

That Exhibit 369 was not provided by the FTC as part of its MSJ: Exhibit 369 was in fact filed as part of Plaintiff's MSJ and may be found at Dkt. 369-1 at 11-16.

| | |
|---|---|
| 39g(x). Alon Nottea reported to Defendant Argaman concerning new Chargeback Armor customers. Ex. 184. | 39g(x). Disputed. The Exhibit cited is mischaracterized as the Exhibit does not contain any reference to Chargeback Armor on its face and deals with Alon Nottea apparently pitching investors a call center technical support business and does not reference any sort of decision making for CBA. |

39g(x). Moving Party's Response.

    1.  Plaintiff contests the entirety of Defendants' Dispute:

That Exhibit 184 is Mischaracterized: See Response to Dispute 39g(ix).

| | |
|---|---|
| 39g(xi). Mike Costache, a Secured Merchants employee and purported Chargeback Armor CEO, sent an email to a Secured Merchants client that included referring to Secured Merchants as "the technology company that developed the Chargeback Armor product" and then noting that Secured Merchants is "transitioning all clients to be billed" by Chargeback Armor. Dkt. # 231-1 at 8. | 39g(xi). Disputed. Mike Costache was never an employee of SM. Costache Decl. at ¶ 10. SM provided the software as a service chargeback for clients to manage and nothing more. Argaman Decl. at ¶ 5-6. |

39g(xi). Moving Party's Response.

    1.  Plaintiff contests the entirety of Defendants' Dispute:

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

<u>That Mike Costache was never an employee of SM:</u> Costache's status as an SM employee is reflected in his own discussion of CBA: In his emailed pitch on behalf of CBA, Costache writes that "[w]ith Secured Merchants we billed monthly, but with Chargeback Armor, Inc. we bill each Monday for chargebacks we processed for the past week." Dkt. 231-1 at 8.

<u>That SM only provided software for AuraVie:</u> See Responses to Disputes 2 and 3.

| | |
|---|---|
| 39h. Argaman had notice that Defendants marketed their products through negative option plans. | 39h. Disputed. Argaman was never privy to this information, directly or indirectly, as he simply provided technological services through SM. Argaman Decl. at ¶ 12. |

39h. Moving Party's Response.

  1.  Plaintiff contests the entirety of Defendants' Dispute:

<u>That Argaman was not privy to information relating to the common enterprise's deception</u>: See Responses to Disputes 2 and 3.

<u>That Argaman simply provided technological services through SM</u>: See Responses to Disputes 2 and 3.

| | |
|---|---|
| 39h(ii). Defendant Argaman assisted Defendants with managing their various trial campaigns on Lime Light software— software he acknowledged was often used for selling products by continuity plan. *See* Exs. 59; 92. | 39h(ii). Disputed. Argaman never managed any campaigns for AuraVie within Limelight or out of limelight. Limelight is a software AuraVie Defendants used and managed directly or within the limelight support portal**.** Argaman Decl. at ¶ 27 |

39h(ii). Moving Party's Response.

  1.  Plaintiff contests the entirety of Defendants' Dispute:

<u>That Argaman did not manage any campaigns on Lime Light</u>: See Response to Dispute 2.

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | |
|---|---|
| 39h(iii). Secured Merchants Executive Summary listed, under "Target Markets," numerous companies that sell or sold their products by negative option continuity plans or trial offer. *See* Ex. 256. | 39h(iii). Disputed. The Exhibit cited is mischaracterized as the Exhibit is not referenced anywhere as an Executive Summary, nor is there any reference to negative option continuity plans or trial offers anywhere on the document. Argaman nor SM ever had direct customer contact with AuraVie customers and never assisted Alon Nottea or any of the other AuraVie Defendants in selling, advertising, or marketing any skincare products. |

39h(iii). Moving Party's Response.

    1.  Plaintiff contests the entirety of Defendants' Disputes:

That Exhibit 256 is mischaracterized: see Plaintiff's response to Dispute 26(c).

That SM and Argaman never had direct customer contact and never assisted Alon Nottea or other AuraVie defendants in selling or marketing their products: See Responses to Disputes 2 and 3.

| | |
|---|---|
| 39(i). Defendant Argaman was aware, or should have been aware, that Defendants took significant measures to disguise their common enterprise. | 39(i). Disputed. Argaman was never privy to this information, directly or indirectly, as he simply provided technological services through SM. Argaman Decl. at ¶ 12. |

39i. Moving Party's Response.

    1.  Plaintiff contests the entirety of Defendants' Dispute:

That Argaman was not privy to information relating to the common enterprise's deception: See Responses to Disputes 2 and 3.

That Argaman simply provided technological services through SM: See Responses to Disputes 2 and 3.

| | |
|---|---|
| 39i(i). Defendant Argaman was sent | 39i(i). Disputed. The Exhibit cited is |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| emails discussing the "load balanc[ing] between multiple merchant accounts and corporations." Ex. 337. | mischaracterized as the Exhibit does not reference "load balancing" and appears to be bookkeeping related. It has nothing to do with multiple merchant accounts and corporations. The FTC once again offers nothing to support its speculation regarding the import of this document. Additionally, Argaman was not privy to what merchant accounts the AuraVie Defendants used as he was only a vendor providing technological services. Indeed, Argaman never responded to this email, as shown by the FTC's own Exhibit. The FTC fails to recognize that Argaman cannot control who emails him and what he is emailed about. Argaman Decl. at ¶ 12-16. |

39i(i). Moving Party's Response.

    2.  Plaintiff contests the entirety of Defendants' Dispute:

That Exhibit 337 is mischaracterized because it does not reference load balancing and appears bookkeeping-related: The Exhibit contemplates the common enterprise's processing fees, with an eye on whether chargeback-related fees rates were too high.

    (a) The Exhibit focuses on the accounts' chargeback rates and fees, not bookkeeping.
    (b) The Exhibit contains columns tracking fees related to chargebacks, ultimately calculating the ratio of fees to deposits.
    (c) The Exhibit classifies the accounts according to this ratio, with rates ranging from "Good" to "Extremely High."
    (d) Paul Medina stated that the Exhibit concerned processing fees and expressed concern with a 25% spike in fees.

That Argaman was not privy to what merchant accounts the AuraVie Defendants used: See Response to Dispute 3.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

That Argaman was only a vendor providing technological services: See Response to Dispute 3.

| | |
|---|---|
| 39i(ii). Paul Medina informed Defendants Doron Nottea, Alon Nottea, and Alan Argaman about high risk accounts. Ex. 337. | 39i(ii). Disputed. The Exhibit cited is mischaracterized as the Exhibit does not reference "high risk accounts" and appears to be bookkeeping related. It has nothing to do with multiple merchant accounts and corporations. Additionally, Argaman was not privy to what accounts the AuraVie Defendants used as he was only a vendor providing technological services. Indeed, Argaman never responded to this email, as shown by the FTC's own Exhibit. The FTC fails to recognize that Argaman cannot control who emails him and what he is emailed about. Argaman Decl. at ¶ 12-16. |

39i(ii). Moving Party's Response.

1. Plaintiff contests the entirety of Defendants' Dispute:

That Exhibit 337 is Mischaracterized:
   a. In Exhibit 337, Paul Medina provided Argaman, along with Alon and Doron Nottea and Roi Reuveni, with an overview of a merchant account's monthly performance in terms of the percentage of deposits that are consumed by chargeback and refund fees.
   b. In the review, three months for the account are listed above 22% of deposits being consumed by fees, with the three most recent months at a minimum of 39.97% in red lettering, bolded, and labeled "Extremely High." Ex. 337-2.
   c. In the email, Medina notes that the "last 4 months has been coming in at 40% avg which is 25% higher" than the ceiling for chargebacks before they are subject to penalties.

| | |
|---|---|
| 39i(iii). Defendant Argaman assisted in | 39i(iii). Disputed. No evidence is cited |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| establishing dozens of phone numbers for Defendants' shell corporations. | in support. Argaman never "established" phone numbers for any shell corporation. Argaman Decl. at ¶ at 25. |
|---|---|

39i(iii). Moving Party's Response.

    1.  Plaintiff contests the entirety of Defendants' Dispute:

<u>That Argaman established phone numbers for shell corporations</u>: See Response to Dispute 39d(xi).

| 39j. Defendant Argaman was aware, or should have been aware, that Defendants engaged in "load balancing"—the means by which Defendants deceived payment processors concerning their actual chargeback ratio—between their various merchant accounts. | 39j. Disputed. Argaman was never privy to this information, directly or indirectly, as he simply provided technological services through SM. Argaman Decl. at ¶ 12-16. |
|---|---|

39j. Moving Party's Response

    1.  Plaintiff contests the entirety of Defendants' Dispute:

<u>Defendant Argaman was privy to Defendants' load balancing and in fact engaged in load balancing as part of AuraVie's scheme</u>:

    a.  Argaman was directly involved in e-mails discussing load balancing. For example, Argaman received an email from Paul Medina stating that "[o]ur CA customers are currently being load balanced between multiple merchant accounts and corporations" and "Limelight is launching a new feature which load balances gateways and not just merchant accounts." Ex. 449.

    b.  Moreover, Medina requested Argaman's help in providing the correct gateway in the Common Enterprise's load-balancing scheme. *Id.*

    c.  Argaman was actively involved in load balancing for AuraVie. Ex. 248 (Argaman writes to Defendant Medina: "help me out... lime light has a place in the subscription where you can switch processors/[merchant account identifiers]" and then follows up with Defendant Reuveni because he "need[ed] this asap as team is idle and waiting on this."); *see also* Ex. 547-2 (Medina providing instructions directly to Argaman regarding load

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | |
|---|---|
| balancing.). | |
| 39j(i). Load balancing was discussed in emails Argaman received. *See*, *e.g.,* Ex. 449. | 39j(i). Disputed. The email referenced is between Medina and Limelight. It has nothing to do with actual operations of AuraVie, which Argaman was not privy to or involved in. It also references Limelight launching a new feature, which has nothing to do with Argaman. Argaman Decl. at ¶ 12-16, 27. Argaman is being asked to help with technology problems consistent with SM's role as a third party technology provider. |

39j(i). Moving Party's Response:

1. Plaintiff contests the entirety of this Dispute:

Regarding Exhibit 449, that the email referenced is between Paul Medina and Limelight: The referenced email is from Paul Medina to Alon Nottea, Khristopher Bond, Nastassia Yalley, and Alan Argaman (at his avicoglobal@gmail.com address; *see* Ex. 916 ¶ 261).

Regarding Exhibit 449, that the email has nothing to do with the actual operations of AuraVie: The email finds Paul Medina writing Argaman, along with Defendants Khristopher Bond and Alon Nottea, that "[o]ur CA customers are currently being load balanced between multiple merchant accounts and corporations."

Regarding Exhibit 449, that Argaman was not privy to or involved in these operations: The email concerns AuraVie's operations, and not only includes Argaman but specifically involves him in the operations: Medina writes to Argaman, "Avi, lets find a solution when customer selects 'CA'" to provide the correct gateway for their load balancing scheme.

Regarding Exhibit 449, that Argaman had nothing to do with the launch of Limelight's new feature:
  a. Argaman was consistently involved in managing Limelight. *See* Dkts. 121-

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

6 at 9-21; Dkt. 121-7 at 1-3; Ex. 555 at 51:3-19. Here, Argaman's involvement in the feature's launch is clear. Medina writes, "Limelight is launching a new feature which load balances gateways and not just merchant accounts." Medina then directly consults Argaman: "Avi, lets find a solution when customer selects 'CA'" to provide the correct gateway for their load balancing scheme.

    b.  In another series of emails, Argaman wrote to Defendant Medina, "help me out... lime light has a place in the subscription where you can switch processors/[merchant account identifiers]" and then follows up with Defendant Reuveni because he "need[ed] this asap as team is idle and waiting on this." Ex. 248.

| | |
|---|---|
| 39k. Defendant Argaman appears to have assisted in coordinating the assistance of and payment to a third party call center in India, which handled some customer service calls for Defendants. Ex. 386. | 39k. Disputed. The Exhibit cited is mischaracterized as the Exhibit does not reference call centers, nor does it reference AuraVie or any of the AuraVie Corporate Defendants. Additionally, the subject is "Telestar" and has nothing to do with Argaman assisting in a call center. Argaman Decl. at ¶ 12-16, 25. |

39k. Moving Party's Response:

    1.  Plaintiff contests the entirety of this Dispute:

That Exhibit 386 does not reference call centers, AuraVie, or any of the AuraVie Corporate Defendants: Exhibit 386 is an email from Alan Argaman to Defendant Doron Nottea—the bookkeeper for the majority of the entities associated with the common enterprise—that provides wire information for "TeleStar," which, as shown below, is a call center servicer.

That "Telestar" and has nothing to do with Argaman assisting in a call center: As demonstrated in Exhibit 999, Telestar is in the business of providing call center services.

| | |
|---|---|
| 39l. Defendant Argaman was included on an email detailing the high chargeback rates for merchant accounts | 39l. Disputed. The Exhibit cited is mischaracterized as the Exhibit does not reference "high risk accounts" and |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| associated with the common enterprise. Ex. 337. | appears to be bookkeeping related. It has nothing to do with multiple merchant accounts and corporations. Argaman nor SM ever were involved in the common enterprise nor privy to what the AuraVie Defendants were doing. Indeed, Argaman never responded to this email, as shown by the FTC's own Exhibit. The FTC fails to recognize that Argaman cannot control who emails him and what is emailed about. Argaman Decl. at ¶ 12-16. SEE ABOVE REGARDING THIS DOCUMENT |
| 39l. Moving Party's Response:<br><br>   1.  Plaintiff contests the entirety of Defendants' Dispute:<br><br><u>That Exhibit 337 is mischaracterized</u>: See Response to Dispute 39i(i).<br><br><u>That Argaman and SM were not involved in the common enterprise or privy to what the Defendants were doing</u>: See Responses to Disputes 2 and 3. | |
| 41. Relief Defendant **Chargeback Armor, Inc.** is a California corporation , Dkt. 300 ¶ 41, with its principal place of business at the Reseda Office. Dkt. 120 at 18. At times material to the Complaint, Chargeback Armor, Inc. received funds from Secured Merchants, LLC, which received funds from SBM Management, Inc. Ex. 917 ¶¶ 235-236. At times material to the Complaint, Chargeback Armor Inc. transacted business in this district. Dkts. 244 ¶ 41; 245 ¶ 41. | 41. Undisputed. |
| 41a. Secured Merchants, LLC transferred $250,000 in funds to | 41a. Undisputed. |

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | |
|---|---|
| Chargeback Armor, Inc. Exs. 916 ¶ 235; 917 ¶ 235; Dkt. # 231-1 at 53. | |
| 41b. Secured Merchants, LLC received more than $300,000 in funds for providing chargeback services relating to the sale of Defendants' skincare products. Ex. 918 ¶ 236. | 41b. Disputed. SM did not receive more than $300,00 for providing chargeback services. SM received approximately $97,000 for chargeback services. Exh. 833. |

41b. Moving Party's Response

   1. Plaintiff contests the entirety of Defendants' Dispute:

<u>Defendants previously admitted SM received more than $300,000 for providing chargeback services</u>: In Plaintiff's Request for Admission 236 to Secured Merchants, Plaintiff requested SM admit "Secured Merchants received more than $300,000 from SBM Management, Inc. for providing chargeback services relating to the sale of Defendants' skincare products." In its response, Secured Merchants admitted to Request 236. Ex. 918 ¶ 236.

| | |
|---|---|
| 41c. Alan Argaman and Chargeback Armor, Inc. stated that Roi Reuveni was the COO of Chargeback Armor, Inc. Ex. 917 ¶ 237. | 41c. Disputed. Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA. Reuveni was hired as a temporary consultant to provide specific services. Costache Decl. at ¶ 2. |

41c. Moving Party's Response.

   1. Plaintiff contests the entirety of Defendants' Disputes:

<u>That Costache was the sole shareholder of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole director of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole board member of CBA</u>: See Response to Dispute 39g.

<u>That Reuveni was only a consultant for CBA</u>:
   a. Reuveni was designated as COO and upon Costache's request provided a draft of his responsibilities. Dkt. 231-1 at 26, 27.
   b. Reuveni was listed in CBA's Executive Summary as Customer Service Manager. Dkt. 231-1 at 6.

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | |
|---|---|
| c. Reuveni signed on behalf of CBA as an authorized signatory for their Mail Service Agreement. Dkt. 231-1 at 16-19. | |

| | |
|---|---|
| 41d. Relief Defendant Chargeback Armor, Inc. refuted consumer chargebacks for the unauthorized AuraVie charges. | 41d. Disputed. CBA was not even incorporated until February 2015, after AuraVie was no longer operating. Costache Decl. at ¶ 4. |

**41d. Moving Party's Response**

1. Plaintiff does not dispute that CBA was incorporated in February 2015 but qualifies this response by noting that it operated as a going concern prior to its formal incorporation. See Response to Dispute 26d.

2. Plaintiff contests Defendants' Disputes that:

That Chargeback Armor refuted customer chargebacks:
   a. Defendants rely on CBA's date of incorporation, which does not contradict the fact that CBA operated long before incorporating.
   b. CBA processed thousands of AuraVie chargebacks in 2014 and early 2015. CBA boasted in its Executive Summary to potential investors that "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Ex. 281-2.
   c. Tyler Reitenbach, an employee of CBA, sent an email in Feb. 2015 summarizing CBA's year-to-date chargeback statistics. Ex. 151.

| | |
|---|---|
| 41d(i). Chargeback Armor boasted to potential investors that 33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an antiaging skincare company." Dkt. 231-1 at 4. | 41d(i). Disputed. This is a draft document that contains a disclaimer at the bottom stating "This is not an offer for securities and should not be construed as such, this is for informational purposes only. We reserve all rights to modify, change or unilaterally amend any of the above." Additionally, the document refers to a previous version of the chargeback software and has nothing to do with CBA, as it was not incorporated until February 2015. Costache Decl. at ¶ 4. |

**41d(i). Moving Party's Response.**

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED
MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT
OF GENUINE DISPUTES

1.  Plaintiff contests the entirety of Defendants' Dispute.

<u>That the Executive Summary/Prospetus document is a draft and contains a disclaimer</u>: Defendants offer no evidence that this document is a draft. Furthermore, even if Defendants could establish that this document is a draft, that fact would do nothing to address whether CBA operated in 2014.

Moreover, the securities law disclaimer contained in the document is probative of the fact that the document was intended for circulation. The disclaimer is in the document not because the document is a draft but instead that the document is intended for potential investors and must comply with the securities laws.

<u>That the Executive Summary/Prospetus document refers to a previous version of the chargeback software and has nothing to do with CBA:</u> In fact, the document exclusively pertains to CBA:
   a.  It is printed on CBA's letterhead;
   b.  It makes repeated reference to CBA, the company;
   c.  It includes the @chargeback.com email address; and
   d.  It lists Mike Costache as the company CEO (note the fact that Defendants argue Mike Costache was not even a Secured Merchants employee).

| 41d(ii). Defendant Alon Nottea stated that Chargeback Armor, Inc. processed chargebacks for the common enterprise. Ex. 550 at 172:3-5; *see also* Ex. 946 at 24:9-23. | 41d(ii). Disputed. This is a draft document that contains a disclaimer at the bottom stating "This is not an offer for securities and should not be construed as such, this is for informational purposes only. We reserve all rights to modify, change or unilaterally amend any of the above." Additionally, the document refers to a previous version of the chargeback software and has nothing to do with CBA, as it was not incorporated until February 2015. Costache Decl. at ¶ 4. |

41d(ii). Moving Party's Response.

1.  Defendants' response does not address Plaintiff's Fact 41d(ii) or the cited Exhibit. Defendants' response addresses Plaintiff's Fact 41d(i), and appears

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | |
|---|---|
| there, as well. | |
| 41e. Although not formally incorporated until March 2015, the company operated informally before incorporation. *See* Ex. 280. | 41e. Disputed. The Exhibit referenced is a Secured Merchants document and nowhere does it reference CBA. |

41e. Moving Party's Response

1. Plaintiff contests the entirety of this Dispute:

That Exhibit 280 contains a document not relating to CBA:
  a. The Exhibit referenced makes repeated mention of ChargeBack Armor as "chargebackarmor.com" and "CRM," and evidences that SM operated through ChargeBack Armor before CBA incorporated.
  b. Moreover, CBA boasted in its Executive Summary to potential investors that "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Ex. 281-2. And Tyler Reitenbach sent an email in Feb. 2015 summarizing CBA's year-to-date chargeback statistics. Ex. 151.

| | |
|---|---|
| 41f. Chargeback Armor appears to have provided nearly identical chargeback services as Secured Merchants. Dkt. 231-1 at 8; Exs. 280; 412; 413. | 41f. Disputed. Neither CBA nor SM provided any chargeback services. SM was a technology provider that allowed the viewing of chargebacks. Argaman Decl. at ¶ 5, 6. The Exhibits are also mischaracterized, as Exhibit 280 does not support that SM and CBA are identical, Exhibit 412 relates to an unrelated entitled called Creative Venture, and Exhibit 413 relates to Vitaque. Argaman Decl. at ¶ 31. |

41f. Moving Party's Response

1. Plaintiff contests the entirety of this Dispute:

CBA and SM provided chargeback services: See Responses to Disputes 2, 3, and 41d.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

Exhibits 280, 412, and 413 reflect that CBA and SM provided nearly identical services:

    (a) The cited Exhibits are contracts between SM and third parties, both of which establish that SM was providing chargeback services "through the CHARGEBACKARMOR.COM site"—*i.e.*, performing the same chargeback work through CBA as it did through SM. Exs. 412; 413.

    (b) Plaintiff's focus here is on the nature of the services CBA and SM performed;, Defendants' emphasis on the parties for whom such services were performed is misplaced.

| | |
|---|---|
| 41g. This company specialized in providing chargeback refutation services to the "Direct Response Marketing" industry, of which Defendants were but one of many. Ex. 256. | 41g. The Exhibit references is mischaracterized as the document contains no reference to CBA and appears to be a draft of a "Secure Merchants" executive summary. Additionally, it contains no reference to Argaman and does not even appear authentic on its face, as Argaman did not author this document. Additionally, SM did not provide chargeback refutation services, but only provided the technology for viewing chargebacks. Argaman Decl. at ¶ 5, 6, 30. |

41g. Moving Party's Response

    1.  Plaintiff contests the entirety of this Dispute:

That the document does not reference ChargeBack Armor: The document twice references ChargeBack Armor—once in the Business Model section, Ex. 256-1, and once in the Pricing Model section. Ex. 256-2.

That SM did not provide chargeback refutation services, but only provided the technology for viewing chargebacks: SM repeatedly claimed that it "processed" and "handled" chargebacks.

    a.  SM operated CBA and boasted that as part of its "ChargeBack Armor" service, Secured Merchants "handle[s] the entire chargeback dispute process on your behalf." Ex. 257; 280; 348; 412; 413.

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

b. CBA boasted in its Executive Summary to potential investors that "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Ex. 281-2.

c. Tyler Reitenbach sent an email in Feb. 2015 summarizing the number of chargebacks CBA *processed* in the calendar year. Ex. 151.

| | |
|---|---|
| 41h. Chargeback Armor's Executive Summary states that their "target market" was "High-rick [sic] online marketers." Ex. 281. | 41h. Undisputed. |
| 41i(i). Mike Costache, the purported CEO of Chargeback Armor, stated that they would investigate the validity of consumer chargebacks before attempting to contest them. Dkt. # 121-6 at 3. | 41i(i). Disputed. Mischaracterizes the document, as ¶ 3 does not state this. |

41i(i). Moving Party's Response

1. Plaintiff contests the entirety of this Dispute:

<u>That the document in question does not state CBA would investigate the validity of chargebacks</u>: In the citation "Dkt. #121-6 at 3," "3" means Page 3. The referenced statement is found in ¶4: "C[B]A provides a service in which on behalf of a merchant C[B]A will investigate the basis for the chargeback and whether there is a basis to contest the chargeback." Dkt. 121-6 at 3.

| | |
|---|---|
| 41i(ii). Costache stated that Chargeback Armor's policy was to "reply[] only to chargebacks that can be won with proper evidence from the client's Customer relationship Management (CRM), gateway provider(s) and shipping provider(s)." *Id.* | 41i(ii). Disputed. Mischaracterizes the document as Costache simply says that Reuveni advised about this topic, but Costache never says that this actually was or became CBA's policy. |

41i(ii). Moving Party's Response

1. Plaintiff contests the entirety of this dispute:

<u>That Costache testified Reuveni advised about this topic, but never said that this</u>

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

actually was or became CBA's policy:

    a. Costache testified that Reuvenie advised CBA on *how* to reply only to chargebacks that can be won: "Reuveni provided me advice about . . . how C[B]A can help the payment industry by replying only to chargebacks that can be won with proper evidence from the client's Customer Relationship Management (CRM), gateway provider(s) and shipping provider(s)." Dkt. 121-6 at 3.

    b. This is not general advice about a topic; it is advice on how ChargeBack Armor was to carry out its plan for contesting chargebacks.

| | |
|---|---|
| 41j. Chargeback Armor authorized Secured Merchants to receive its mail. Exh. 365. | 41j. Disputed. The Exhibit doesn't relate to SM receiving CBA's mail |

41j. Moving Party's Response

    1. Plaintiff contests the entirety of Defendants' Dispute:

That the Exhibit doesn't relate to SM receiving CBA's mail: On page six of the Mail Service Agreement contained in the Exhibit, Ex. 365-13, "Secured Merchants" is the second name listed under "Please list up to three (3) name(s) of company or individual for which mail will be accepted." Argaman is listed in the third blank, alongside Doron Nottea and Michael Costache. *Id.*

| | |
|---|---|
| 42. Defendants BunZai; Pinnacle; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, Inc.; CalEnergy, Inc.; Kai Media, Inc.; Insight Media, Inc.; Focus Media Solutions, Inc.; Secured Commerce, LLC; Secured Merchants, LLC; USM Products, Inc.; Merchant Leverage Group, Inc.; DMA Media Holdings, Inc.; Shalita Holdings, Inc.; | 42. Disputed. SM was not part of the common enterprise. Argaman Decl. |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| All Star Beauty Products, Inc. (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unlawful acts and practices alleged herein. *See, e.g.* Dkts. 121-1 p. 3, 10-11; 121-3 pp. 4-5; Ex. 384. | |
| 42. Moving Party's Response<br><br>   1. Plaintiff contests the entirety of Defendants' Dispute:<br><br>SM was part of the common enterprise: See Response to Dispute 3. | |
| 42e. Because these Corporate Defendants operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged. *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000); *FTC v. Wolf*, 1997-1 Trade Cas. (CCH) ¶ 71,713 at 79,080 (S.D. Fla. 1997) . | 42e. Disputed. SM was not part of the common enterprise and thus cannot be held jointly and severally liable. Argaman Decl. |
| 42e. Moving Party's Response<br><br>   1. Plaintiff contests the entirety of Defendants' Dispute:<br><br>That SM was part of the Common Enterprise: See Response to Dispute 3. | |
| 42fv. Secured Merchants LLC operated out of the same office suite as the other Corporate Defendants. Dkt. 120 at 24. | 42fv. Disputed. SM did not operate out of the suites the AuraVie Defendants operated from. Argaman Decl. at ¶ 10, 11. |
| 42fv. Moving Party's Response<br><br>   1. Plaintiff contests the entirety of Defendants' Disputes:<br><br>That SM did not operate out of the suites the AuraVie Defendants operated from: SM operated from the Canby suites where the other Corporate Defendants. | |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED
MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT
OF GENUINE DISPUTES

Defendants had three office suites at Canby. Two were leased by Secured Commerce, of which Doron Nottea and Alan Argaman are managers. The third was occupied by Focus Media Solutions. When the receiver initially entered the Canby location, both Argaman and Doron Nottea were in Suite 105. This is the suite out of which Secured Merchants operated. Dkt. 120 at -12, -24.

| | |
|---|---|
| 43. Defendants Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi, Igor Latsanovski, Roi Reuveni, Khristopher Bond, also known as Ray Ibbot, Alan Argaman, and Paul Medina (collectively, "Individual Defendants") formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise. | 43. Disputed. Argaman, by and through SM, was a technology vendor and had nothing to do with the common enterprise. Argaman Decl. at ¶5, 6. |

43. Moving Party's Response

   1.  Plaintiff contests the entirety of Defendants' Disputes:

That Argaman, through SM, was a technology vendor and had nothing to do with the common enterprise: See Response to Dispute 3.

| | |
|---|---|
| 43b. Secured Merchants was owned and operated by the Individual Defendants | 43b. Disputed. Argaman has at all times been the sole owner of SM. Argaman Decl. at ¶ 1. |

43b. Moving Party's  Response

   1.  Plaintiff contests the entirety of Defendants' Dispute:

That Alan Argaman has at all times been the sole owner of SM: See Response to Dispute 3.

| | |
|---|---|
| 43b(i). Secured Merchants "Executive Summary," created in June 2013 states that the company's management consisted of Defendants Alon Nottea, | 43b(i). Disputed. Argaman has at all times been the sole owner of SM. Argaman Decl. at ¶ 1, 29. Additionally, this draft document does not contain the |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| "Avi" Argaman, and Paul Medina. Ex. 256-2. | words "Executive Summary" nor does it purport to have been authored by Argaman, the sole member of SM. Moreover, SM was not even created until the end of June 2013. Argaman Decl. at ¶ 29 |

43b(i). Moving Party's Response

1.  Plaintiff contests the entirety of Defendants' Disputes:

That document does not contain the words "Executive Summary": see Plaintiff's response to dispute 26c.

That Alan Argaman was the sole member of SM: See Response to Dispute 3.
   (a) Defendant Roi Reuveni held himself out on at least two occasions as a Managing Member of SM. Exs. 412-5; 413-5.
   (b) SM's Operating Agreement lists Defendant Alon Nottea and Argaman as SM's Managers. Ex. 255-22.
   (c) Defendant Doron Nottea listed his status as "Member" in bank account documents. Ex. 176-2.
   (d) SM's executive summary/prospectus, which touts its "founder**s**" who "saw first-hand every type of failure trap that could have killed *their* skin care product company." Ex. 256-1 (emphasis added).
   (e) SM's executive summary also lists Defendant Paul Medina alongside Argaman and Alon Nottea as "Management." Ex. 256-1.

That SM was not "created" until the end of June 2013: Plaintiff does not dispute that SM may have officially filed formation documents at the end of June 2013, but the company existed and created documents in preparation for its formation before the end of June. For example, the company had a draft operating agreement as early as June 1, 2013. Ex. 255-22.

| | |
|---|---|
| 43b(ii). A Secured Merchants LLC's operating agreement draft names Defendant Argaman and Defendant Alon Nottea as the company's two managers. Ex. 255-22. | 43b(ii). Disputed. This is a draft and an unsigned document. Argaman has at all times been the sole owner of SM. Additionally, Exhibit 255-22 is dated June 1, 2013 and SM was not even formed until June 25, 2013. Argaman |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

|  | Decl. at ¶ 1, 29. |
|---|---|

43b(ii). Moving Party's Response

1. Plaintiff does not dispute that Exhibit 255-22 is an unsigned draft of Secured Merchant LLC's operating agreement, or that Secured Merchants was not formed until June 25, 2013.

2. Plaintiff contests Defendants' dispute:

That Alan Argaman has at all times been the sole owner of SM: See Response to Dispute 43(b)(i).

| 43b(iii). Nonprivileged attorney invoices reference meetings concerning Secured Merchants with Alon Nottea and "Igor." Ex. 388-3; 388-4. | 43b(iii). Disputed. Argaman never did business with Igor as the meetings never materialized into business relationships. Argaman Decl. at ¶ 28. Exhibits 388-3 and 388-4 were not provided by the FTC as part of its MSJ. |
|---|---|

43b(iii). Moving Party's Response

1. Plaintiff contests the entirety of Defendants' Dispute:

That Argaman never did business with Defendant Latsanovski:
   a. Defendants assume this issue concerns a prospective business relationship.
   b. The issue, instead, is that Secured Merchants was an integral part of the common enterprise. This is why the referenced exhibits reflect meetings concerning Secured Merchants with Alon Nottea and "Igor."
   c. For example, an unprivileged attorney email sent to Defendants Alon Nottea and Igor Latsanovski contains a Collateral Assignment Agreement for SM, under which terms "Assignor" and "Assignee" are both "members of Secure Merchants, LLC" that contemplates intertwined secured collateral assignments of membership interests in the parties' co-owned properties. Ex. 557-2.
   d. This, not a prospective arrangement, is the relevant business relationship between SM and Igor Latsanovski. Just as SM featured the same employees and officers as the other AuraVie corporate defendants in this case, those AuraVie principals had a vision of SM that integrated it within the scheme as a "BunZai company."

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

65

| | |
|---|---|
| That "Exhibits 388-3 and 388-4 were not provided by the FTC as part of its MSJ": Exhibit 388 was in fact filed as part of Plaintiff's MSJ and may be found at Dkt. 369-1 at 17-22. | |
| 43b(iv). Secured Merchants LLC was identified as one of the "Bunzai Companies" on a list that Defendant Doron Nottea sent to CPA David Davidian. Ex. 394. | 43b(iv). Disputed. The Exhibit is mischaracterized as SM is not referred to as a "Bunzai" company in the email. Argaman never was involved with Bunazi. Additionally, the email on its face shows that Argaman only owned SM and no other companies and thus actually supports this Opposition. Argaman Decl. at ¶ 12-16. |

43b(iv). Moving Party's Response

    1.  Plaintiff contests the entirety of this Dispute:

Secured Merchants is referred to as one of the "Bunzai Companies": Exhibit 394 is an email titled, "Bunzai Companies." It has one attachment, a table with the same title. Row 21 of that table identifies Secured Merchants as one of the Bunzai Companies.

Argaman was involved with the Bunzai Companies listed in the Exhibit: See Responses to Disputes 2 and 3.

| | |
|---|---|
| 43b(v). Doron Nottea created the email address securedmerchantsllc@gmail.com. Ex. 357. | 43b(v). Disputed. Argaman has at all times been the sole owner of SM and cannot control what Doron Nottea does. Argaman Decl. at ¶ 1. The Exhibit does not show that Doron Nottea created this email address as his name is nowhere on the document. |

43b(v). Moving Party's Response

    1.  Plaintiff contests the entirety of Defendants' Dispute:

That Defendant Argaman has at all times been the sole owner of SM: See Response to Dispute 43(b)(i).

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

<u>That the Exhibit does not show that Doron Nottea created securedmerchantsllc@gmail.com</u>:

    a.  The referenced Exhibit is an email from Google to globalmediausa@gmail.com confirming that "[y]our Gmail address, securedmerchantsllc@gmail.com, has been created."

    b.  "Globalmediausa@gmail.com" is Doron Nottea's email account; thus, this Exhibit establishes that Doron Nottea createdsecuredmerchantsllc@gmail.com. Exs. 52; 942; 943.

| | |
|---|---|
| 43b(vi). Defendant Argaman denied the existence of any other founder for Secured Merchants. Ex. 555 at 28:16-28:23; Ex. 555 at 29:7-29:8. | 43b(vi). Undisputed. |
| 43c. Chargeback Armor, Inc. was owned and operated by Defendants | 43c. Disputed. Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA. Costache Decl. at ¶ 1, 2, 7. |

43c. Moving Party's Response

    1.  Plaintiff does not dispute that Costache incorporated CBA.

    2.  Plaintiff contests Defendants' Dispute:

<u>That Costache was the sole shareholder of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole director of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole board member of CBA</u>: See Response to Dispute 39g.

| | |
|---|---|
| 43c(i). Chargeback Armor's Executive Summary lists Defendant Alon Nottea as President, Defendant Alan Argaman as Chief Technology Officer, and Defendant Roi Reuveni as Customer Service Manager. *See* Ex.281-3. | 43c(i). Disputed. Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA. Costache Decl. at ¶ 1, 2, 7. The Exhibit is also mischaracterized as it does not contain the words "Executive Summary" nor does it reference CBA (Chargeback |

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

| | |
|---|---|
| | Armor, Inc.) |

**43c(i). Moving Party's Response:**

   1. Plaintiff does not dispute that Costache incorporated CBA.

   2. Plaintiff contests Defendants' Disputes:

That Costache was the sole shareholder of CBA: See Response to Dispute 39g.

That Costache was the sole director of CBA: See Response to Dispute 39g.

That Costache was the sole board member of CBA: See Response to Dispute 39g.

That Exhibit 281 is mischaracterized: See Response to Dispute 39(f)(iv).

| | |
|---|---|
| 43c(ii). Defendant Paul Medina also testified that he believed Alon Nottea owned the company. Ex. 946 at 25:2-25:6. | 43c(ii). Disputed. Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA. Costache Decl. at ¶ 1, 2. 7. Medina's speculation proves nothing. |

**43c(ii). Moving Party's Response**

   1. Plaintiff does not dispute that Costache incorporated CBA.

   2. Plaintiff contests Defendants' Dispute:

That Costache was the sole shareholder of CBA: : See Response to Dispute 39g.

That Costache was the sole director of CBA: : See Response to Dispute 39g.

That Costache was the sole board member of CBA: : See Response to Dispute 39g.

That Paul Medina's speculation "means nothing":
   a. Defendant Medina was the Executive President or Vice President of Defendant Media Urge, Inc. Ex. 946, 9:9-22. He was also and employee of BunZai, and the CEO of Focus Media Solutions, Inc. See Ex. 946, at 7:18-

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

68

8:9.

b. Medina was involved in the chargeback aspects of AuraVie, as demonstrated by his providing Argaman, as well as Alon and Doron Nottea, information relating to their high-risk merchant accounts. Ex. 337.

c. Medina testified that Alon Nottea owned ChargeBack Armor.

| | |
|---|---|
| 43c(iii). Alon Nottea reported to Defendant Argaman concerning new Chargeback Armor customers. Ex. 184. | 43c(iii). Disputed. Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA. Costache Decl. at ¶ 1, 2, 7. The Exhibit is also mischaracterized as it deals with investors for a call center technical support business and nothing to do with CBA customers. |

43c(iii). Moving Party's Response

1. Plaintiff does not dispute that Costache incorporated CBA.

2. Plaintiff does contest Defendants' Disputes:

That Costache was the sole shareholder of CBA: : See Response to Dispute 39g.

That Costache was the sole director of CBA: : See Response to Dispute 39g.

That Costache was the sole board member of CBA: : See Response to Dispute 39g.

That Exhibit 184 deals with investors for a call center technical support business has nothing to do with CBA customers: See Response to Dispute 39g(ix).

| | |
|---|---|
| 43c(iv). Defendant Alon Nottea solicited investors for Chargeback Armor, Ex. 910 ¶ 234; 917 ¶ 234, and the purported Chargeback Armor CEO referred to him as his "business partner." Dkt. 120 at 23. | 43c(iv). Disputed. Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA and Alon Nottea was never a part of CBA. The reference as a "business partner" was in reference to a draft document used to show |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

69

| | investors. Alon Nottea never became an owner in CBA. Costache Decl. at ¶ 1, 2, 7. |
|---|---|

**43c(iv). Moving Party's Response**

1. Plaintiff does not dispute that Mike Costache was the sole incorporator of CBA.

2. Plaintiff contests Defendants' Disputes:

<u>That Costache was the sole shareholder of CBA</u>: : See Response to Dispute 39g.

<u>That Costache was the sole director of CBA</u>: : See Response to Dispute 39g.

<u>That Costache was the sole board member of CBA</u>: : See Response to Dispute 39g.

<u>That Alon Nottea was never part of CBA</u>: Alon Nottea was significantly involved with CBA.
   a. He was on the company's Board of Directors. Dkt. 231-1 at 36.
   b. He was listed as the company's President. Dkt. 231-1 at 6.
   c. He admitted to soliciting investment for CBA. Ex. 910-33, ¶234.
   d. His involvement even extended to hiring decisions regardling mid-level employees. Regarding a CBA employee's job role, Costache wrote to Roi Reuveni, Alan Argaman, and Alon Nottea: "I will consult with you after I finish with him and then *we'll make a decision* as to what role he will play going forward." Dkt. 231-1 at 12. (Emphasis added.)

| 43c(v). Purported CEO Mike Costache consulted with the Individual Defendants concerning hiring and contracting decisions. Dkt. #231-1 at 23, 26. | 43c(v). Disputed. While using various parties for advice and to solicit investments for CBA, Mike Costache has always been the sole incorporator, director, board member, decision maker, and shareholder of CBA. Costache Decl. at ¶ 1, 2, 7. |
|---|---|

**43c(v). Moving Party's Response**

1. Defendants do not appear to dispute Plaintiff's claim that CEO Mike

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

Costache consulted with the Individual Defendants concerning hiring and contracting decisions, stating that Costache "[used] various parties for advice and to solicit investments for CBA."

2. Plaintiff does not dispute that Mike Costache was the sole incorporator of CBA.

3. Plaintiff contests Defendants' Disputes:

<u>That Costache was the sole shareholder of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole director of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole board member of CBA</u>: See Response to Dispute 39g.

<u>That Costache was the sole decision maker at CBA</u>:
   a. Purported CEO Mike Costache consulted with the Individual Defendants on hiring and contracting decisions. Dkt. 231-1 at 11-13, 23, and 26.
   b. Costache's own words establish that he was not the sole decision maker at CBA; regarding a CBA employee's job role, Costache wrote to Roi Reuveni, Alan Argaman, and Alon Nottea: "I will consult with you after I finish with him and then *we'll make a decision* as to what role he will play going forward." Dkt. 231-1 at 12. (Emphasis added.)
   c. Defendant Alon Nottea solicited investors for Chargeback Armor Ex. 204-54; 910-33 at ¶234; 917-65, ¶234), and Mike Costache, CBA's purported CEO referred to him as his "business partner." Dkt. 120 at 19. Costache consulted Alon Nottea regarding CBA-related matters as minor as "what you thought of the business card design" and took orders from Nottea to, for example, "create a small budget of what it would cost to represent CBA in Vegas." Ex. 204-57.
   d. Roi Reuveni was COO of the company. Dkt. 231-1 at 26-27; Ex. 917 at ¶237.
   e. Alon Nottea's email signature was from Chargeback Armor. Dkt. 231-1 at 27.
   f. In a March 23, 2015 email, Costache represented that Alon Nottea was a board member of the company and Roi Reuveni was COO. Dkt. 231-1 at 52.
   g. A Services Agreement from earlier that month lists Alon Nottea and Mike

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

Costache as board members, along with Argaman. Dkt. 231-1 at 36.

h. Argaman also assisted with items as minor as finding a proper mailing address for CBA. Ex. 204-58.

i. A CBA Executive Summary lists Argaman as the company's "Chief Technology Officer," Alon Nottea as President, Roi Reuveni as Customer Service Manager, and Tyler Reitenbach, an employee of SM and Pinnacle Logistics, as Sales Account Manager. Dkt. 231-1 at 6.

j. Doron Nottea was a signatory on Chargeback Armor's bank account and signed as secretary of the company on its Bank of America account. Dkt. 231-1 at 46.

| | |
|---|---|
| 43c(vi). Mike Costache, a Secured Merchants employee and purported Chargeback Armor CEO, sent an email to a Secured Merchants client that included referring to Secured Merchants as "the technology company that developed the Chargeback Armor product" and then noting that Secured Merchants is "transitioning all clients to be billed" by Chargeback Armor. Dkt. #231-1 at 8. | 43c(vi). Disputed. Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA. Costache Decl. at ¶1, 2, 7. Costache was never an employee of SM. Argaman Decl. at ¶ 10. SM provided a technology that allowed the viewing of chargebacks. Argaman Decl. at ¶ 5, 6. |

43c(vi). Moving Party's Response

1. Plaintiff does not dispute that Mike Costache was the sole incorporator of CBA or that SM provided a technology that (among other things) allowed the viewing of chargebacks.

2. Plaintiff contests Defendants' Disputes:

That Costache was the sole shareholder of CBA:See Response to Dispute 39g.

That Costache was the sole director of CBA:See Response to Dispute 39g.

That Costache was the sole board member of CBA: See Response to Dispute 39g.

That Mike Costache was not a Secured Merchants employee: Mike Costache's employment with SM is most saliently seen when he was preparing SM to launch

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

CBA and transition its clients to CBA: Costache emailed a customer concerning their contract with SM, notifying the customer that "[a] few months ago *we* established a new company, called Chargeback Armor, Inc. and we're transitioning all clients to be billed by this entity." Dkt. 231-1 at 8. (Emphasis added.)

| | |
|---|---|
| 43c(vii). Nova 8 Media billed Defendant Argaman of Secured Merchants for "design services" for "Chargeback Armor." Ex. 414. | 43c(vii). Undisputed. |
| 43c(viii). A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. #231-1 at 36. | 43c(viii). Disputed. This is not an agreement, as it is unsigned. Mike Costache has always been the sole incorporator, director, board member, and shareholder of CBA. Costache Decl. at ¶ 1, 2, 7. |

43c(viii). Moving Party's Response

1. Plaintiff does not dispute that Mike Costache is the sole incorporator of CBA.

2. Plaintiff contests Defendants' Disputes:

That the cited document is not a services agreement: See Response to Dispute 39g(iv).

That Costache was the sole shareholder of CBA: : See Response to Dispute 39g.

That Costache was the sole director of CBA: : See Response to Dispute 39g.

That Costache was the sole board member of CBA: : See Response to Dispute 39g.

| | |
|---|---|
| 43c(ix). A Chargeback Armor, Inc. lease agreement dated February 27, 2015 lists Mike Costache, Doron | 43c(ix). Disputed. This was done for convenience purposes and Costache remained the only person involved in |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| Nottea, and Defendant Argaman as individuals to whom mail may be sent to Chargeback Armor, Inc. Ex. 365-13. | the operations of CBA. Costache Decl. at ¶ 1, 2, 3. Additionally, the Exhibit is misconstrued as it deals with being able to pick up mail for CBA, not being able to be sent CBA mail. |

43c(ix). Moving Party's Response

1. Plaintiff contests the entirety of Defendants' Dispute:

That Mike Costache was the only person involved in the operations of CBA: See Response to Dispute 43c(v).

That additional individuals were involved for convenience purposes: Defendants do not offer any explanation of the added convenience claimed, nor do they offer evidence supporting this claim. Ultimately, it fails because other individuals were substantially involved in CBA's operations.

That the Exhibit deals with picking up mail for CBA:
(a) Ex. 365-13 concerns "[companies] or individuals for which mail will be accepted" in a mail handling agreement.
(b) The meaning is clear: CBA was to list the individuals or companies for whom the lessor-mail handler was to accept mail.
(c) Supporting this is the fact that the agreement includes a $25 monthly charge for each additional name listed—*i.e.*, for each additional individual receiving mail at CBA's address.

| | |
|---|---|
| 43c(x). Defendant Doron Nottea was a signatory on Chargeback Armor's bank account and signed as secretary of the company on its Bank of America account. *See* Dkt. #214 at 31; Dkt. #231-1 at 46. | 43c(x). Undisputed. |
| 43c(xi). Mike Costache requested that Defendant Roi Reuveni set up an inbox anticipating email and telephone communications in light of Alon Nottea's new business cards with a toll free number. Dkt. 231-1 at 9. | 43c(xi). Disputed. The business cards had nothing to do with Nottea's new business or any sort of anticipation, as Costache has always been the sole person involved in CBA's governing operations. Costache Decl. at ¶ 1, 2, 7. |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

43c(xi). Moving Party's Response

(a) Plaintiff contests the entirety of this Dispute.

That the business cards had nothing to do with "Nottea's new business or any sort of anticipation": The disputed statement is that "Mike Costache requested that Defendant Roi Reuveni set up an inbox anticipating email and telephone communications in light of Alon Nottea's new business cards with a toll free number." This means Mike Costache requested that Roi Reuveni set up an email account and phone communications for Alon Nottea because Nottea's new business cards would lead people to contact him.

That Costache has always been the sole person involved in CBA's governing operations: Other individuals were substantially involved in CBA's governing operations.

(b) A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. 231-1 at 36.

(c) Chargeback Armor's Executive Summary lists Defendant Alon Nottea as President, Defendant Alan Argaman as Chief Technology Officer, and Defendant Roi Reuveni as Customer Service Manager. Dkt 231-1 at 6.

(d) Doron Nottea was a signatory on Chargeback Armor's bank account and is listed as secretary of the company on its Bank of America account. Dkt. 231-1 at 46, 48.

(e) In an email regarding a CBA employee's job role, Costache wrote to Roi Reuveni, Alan Argaman, and Alon Nottea: "I will consult with you after I finish with him and then *we'll make a decision* as to what role he will play going forward." Dkt. 231-1 at 12. (Emphasis added.)

| 97. Relief Defendant, Chargeback Armor, Inc. received, directly or indirectly, funds and other assets from Defendants that were traceable to funds obtained from Defendants' customers through the unlawful acts or practices described herein. | 97. Disputed. CBA received $250,000 from SM as a capital infusion that was not from any monies SM received from SBM or any other Defendant. Costache Decl. at ¶ 5, 6. Argaman Decl. at ¶18-20. |
|---|---|

97. Moving Party's Response

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

1. Plaintiff contests the entirety of Defendants' Dispute.

That the capital infusion was not from any monies SM received from SBM or any other Defendant:

   a. Defendants do not provide evidence regarding their alleged use of the other funds, nor do they address the fact that SM itself was the source of the funds to CBA—and that the source of the funds is irrelevant when SM derived 40% of its revenue from the scheme and thus sustained itself through AuraVie's ill-gotten gains. Dkt. 120 at 82.

   b. Defendants cite Exs. 834-838, which are (1) three Services Contracts between SM and third parties (providing that SM had clients outside of AuraVie); (2) a Capital Infusion Agreement between SM and CBA (providing the funds); and (3) bank statements relating to a transfer to CBA. Even if tracing of funds were relevant, this evidence misses the critical component of Defendants' argument: proof that the funds SM provided CBA derived from those non-AuraVie contracts.

| | |
|---|---|
| 98. Relief Defendant was not a bona fide purchaser with legal and equitable title to Defendants' customers' funds or other assets, and Relief Defendant will be unjustly enriched if it is not required to disgorge the funds or the value of the benefit it received as a result of Defendants' unlawful acts or practices. | 98. CBA is not in possession of nor did CBA ever receive any funds belonging to Defendant's customers. CBA would thus not be unjustly enriched. Costache Decl. at ¶ 5, 6; Argaman Decl. at ¶ 18, 19, 20. |

98. Moving Party's Response

1. Plaintiff contests the entirety of this Dispute:

That CBA did not receive funds belonging to Defendants' customers:

   a. CBA received $250,000 in startup capital from Secured Merchants. Exs. 916 ¶ 235; 917 ¶ 235; Dkt. 231-1 at 53. Secured Merchants, meanwhile, received more than $300,000 in funds for providing chargeback services relating to the sale of Defendants' skincare products. Ex. 918 ¶ 236.

   b. CBA boasted of the "33,000 chargebacks [that] were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Ex. 281-2.

| | |
|---|---|
| 99. By reason of the foregoing, Relief Defendant holds funds and assets in constructive trust for the benefit of | 99. CBA is not in possession of nor did CBA ever receive any funds belonging to Defendant's customers. CBA would |

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

| Defendants' customers. | thus not be unjustly enriched. Costache Decl. at ¶ 5, 6. Argaman Decl. at ¶ 18-20. |
|---|---|

99. Moving Party's Response

  1.  Plaintiff contests the entirety of this Dispute.

<u>That CBA did not receive funds belonging to Defendants' customers:</u> See Response to Dispute 98.

<br>

Respectfully Submitted,

Dated: 5/13/16

/s/ *Reid Tepfer*___
REID A. TEPFER
LUIS H. GALLEGOS
EMILY ROBINSON
ZACHARY KELLER
Attorneys for the Plaintiff
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (facsimile)
rtepfer@ftc.gov
lgallegos@ftc.gov

<u>PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES</u>

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 13, 2016, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea and*
*Roi Rueveni*

Robert Esensten
Esensten Law
12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
resensten@esenstenlaw.com
*Counsel for Doron Nottea and Motti*
*Nottea*

Jeffrey Benice
Law Offices of Jeffrey S. Benice
A Professional Law Corporation
3080 Bristol Street
Sixth Floor, Suite 630
Costa Mesa, CA 92626
Telephone: (714) 641-3600 Ext. 214

*Counsel for Igor Latsanovski and*
*CalEnergy, Inc.*

Sagar Parikh
Beverly Hills Law Corp. PC
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
SP@BeverlyHillsLawCorp.com
*Attorney for Paul Medina, Secured*
*Merchants, LLC,*
*and Chargeback Armor, Inc.*

Charlene Cantrell Koonce
Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
charlene.koonce@solidcounsel.com
*Receiver*

Kelly M. Crawford
Scheef and Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
kelly.crawford@solidcounsel.com
*Counsel to Receiver*

PLAINTIFF'S RESPONSE TO DEFENDANTS ALAN ARGAMAN, SECURED MERCHANTS, LLC, AND CHARGEBACK ARMOR, INC.'S STATEMENT OF GENUINE DISPUTES

/S/ REID TEPFER
REID TEPFER