DAVID C. SHONKA
Acting General Counsel

DAMA J. BROWN
Dbrown1@ftc.gov
Regional Director

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
EMILY ROBINSON
erobinson@ftc.gov; Tex. Bar No. 24046737
ZACHARY A. KELLER
zkeller@ftc.gov
Texas Bar No. 24087838 (pro hac vice pending)
Federal Trade Commission
1999 Bryan Street, Ste 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9386 (Robinson); (214) 979-9382 (Keller)
(214) 953-3079 (fax)
RAYMOND McKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Ste 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BUNZAI MEDIA GROUP, INC.,** *et al.*<br><br>**Defendants.** | **Case No. CV 15-4527-GW(PLAx)**<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S REPLY TO DEFENDANTS ROI REUVENI AND ALON NOTTEA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

## TABLE OF CONTENTS

I.    INTRODUCTION ..............................................................................4

II.   Defendant Alon Nottea has raised no genuine disputes of material fact to preclude summary judgment. .............................................................4

   a.   The overall net impression of Defendants' "risk free trial" websites makes clear the websites were deceptive. ...............................................6

   b.   Documentary evidence establishes that Defendants marketed "risk free trials" of skincare products before January 2012. ...............................9

III.  The FTC's Statement of Uncontroverted Facts complies with the Local Rules. ...................................................................................10

IV.   Defendants' objections to the FTC's proposed final order are unfounded...11

   a.   The FTC's proposed order provides for appropriate injunctive relief tailored to Defendants' illegal conduct. ..........................................11

   b.   Defendants' own records support restitution of $75,624,030. ..................12

V.    Conclusion. ...............................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030 (9th Cir. 2000)............................6

*FTC v. MacGregor*, 360 App'x. 891 (9th Cir. 2009) ................................................7

*FTC v. Bronson Partners, LLC*, 654 F.3d 359 (2d. Cir 2011) ..............................15

*FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35 (D.C. Cir. 1985) .........8

*FTC v. Colgate Palmolive Co.*, 380 U.S. 374 (1965)............................................13

*FTC v. Commerce Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016). ..................... 14, 15

*FTC v. Cyberspace.com LLC*, No. C00-1806L, 2002 WL 32060289 (W.D. Wash.
   July 10, 2002) ....................................................................................................8

*FTC v. Cyberspace.com*, 453 F.3d 1196 (9th Cir. 2006) ........................................7

*FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1 (1st Cir. 2010)............................8

*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) ........................................................16

*FTC v. Gill*, 71 F. Supp. 2d 1030 (C.D. Cal. 1999)..............................................8

*FTC v. National Lead Co.*, 352 U.S. 419 (1957)..................................................13

*FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168 (1997)..................................7

*FTC v. Publrs. Bus. Servs., Inc.*, 821 F. Supp. 2d 1205 (D. Nev. 2010)..................7

*FTC v. Ruberoid Co.*, 343 U.S. 470 (1952)..........................................................13

*Jacob Siegel Co. v. FTC*, 327 U.S. 608 (1946) .....................................................13

*Porter & Deitsch v. FTC*, 605 F.2d 294 (7th Cir. 1979) ........................................8

*Removatron Int'l Corp. v. FTC*, 884 F.2d 1489 (1st Cir. 1989)..............................8

*Starsky v. Williams*, 512 F.2d 109 (9th Cir. 1975) ................................................6

*Telebrands Corp. v. FTC*, 457 F.3d 354 (4th Cir. 2006)......................................13

*TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676 (9th
   Cir. 1990).............................................................................................................6

*U.S. v. $133,420.00 in U.S. Currency*, 672 F.3d 629 (9th Cir. 2012) ....................7

PLAINTIFF'S REPLY TO DEFENDANTS ROI REUVENI AND ALON
NOTTEA'S OPPOSITION TO PLAINTIFF'S MSJ

## I. INTRODUCTION

Alon Nottea[1] was the central figure in an illegal common enterprise scheme that deprived consumers of $75,624,030.[2] Overwhelming evidence establishes Alon as the mastermind of the AuraVie scam. And Alon appears to concede as much. His opposition brief to the FTC's Motion for Summary Judgment fails to address whether: (1) Defendants' scheme violated the FTC Act, ROSCA, and EFTA; (2) Corporate Defendants acted as a common enterprise in carrying out the AuraVie scheme; or (3) Alon Nottea's ownership, control, participation, and knowledge render him individually liable.[3] Rather than addressing the FTC's core contentions, Alon raises various peripheral issues in a half-hearted attempt to lessen his liability. However, none of these issues have merit, nor should they preclude summary judgment against him.

## II. Defendant Alon Nottea has raised no genuine disputes of material fact to preclude summary judgment.

Summary judgment is appropriate based on the documentary evidence before the Court. Ninth Circuit courts have held that "where the ultimate fact in dispute is destined for decision by the court rather than by a jury, there is no

---

[1] Plaintiff has reached a tentative settlement agreement with Roi Reuveni and has filed a stay with the Court to permit the Commission to consider the settlement. Accordingly, Plaintiff's Reply does not address arguments pertaining only to Defendant Reuveni's individual liability.

[2] Ex. 394.

[3] *See generally* Dkt. #391.

reason why the court and the parties should go through the motions of a trial if the court will eventually end up deciding on the same record." [4]

While Alon Nottea concedes that a court may grant summary judgment in such a scenario, he argues that summary judgment is not appropriate here because "the factual record is undeveloped" and "witness statements and testimony may determine the outcome on a material fact."[5] But the record in this case is prodigious; hundreds, if not thousands, of documents establish Alon's ownership, control, and knowledge concerning his companies' illegal business practices.

Further, no credibility determinations are needed to grant summary judgment. Alon has conceded the primary issues in this case; the rest may be decided on the documentary record. Moreover, Defendants have proffered little evidence aside from their own self-serving declarations.[6] These declarations are

---

[4] *TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676, 684 (9th Cir. 1990); *see also Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030 n.6 (9th Cir. 2000) (citing *Starsky v. Williams*, 512 F.2d 109, 111 (9th Cir. 1975)) ("Because this case will be tried to the court, rather than a jury, the question arises whether it was improper for the district court to engage in fact-finding, since it will eventually be called upon to perform that very task. This court has held that if the parties agree that all of the underlying material facts are reflected in the written record, a judge may decide factual issues and essentially convert cross-motions for summary judgment into submission of the case for trial on the written record.").

[5] Dkt. #391, at 4-5.

[6] *See* Dkt. #391-2; Dkt. #391-3.

PLAINTIFF'S REPLY TO DEFENDANTS ROI REUVENI AND ALON
NOTTEA'S OPPOSITION TO PLAINTIFF'S MSJ

insufficient to stave off summary judgment: courts have held that Defendants cannot manufacture a fact dispute simply by submitting self-serving declarations.[7]

### a. The overall net impression of Defendants' "risk free trial" websites makes clear the websites were deceptive.

The Court may determine that Defendants' websites were deceptive simply by considering the "overall net impression" of the website without additional extrinsic evidence.[8]  Defendants' websites prominently touted that their products were "free" or a "trial" in large, colorful font.[9] The "net impression" of Defendants' websites were doubtlessly misleading to reasonable consumers; these websites suggested the product was "free" or "risk free" when in fact Defendants intended to charge consumers $97.88 per month for recurring shipments of their product.

---

[7] *See FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *see also FTC v. MacGregor*, 360 App'x. 891, 893 (9th Cir. 2009); *U.S. v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638-639 (9th Cir. 2012).

[8] "To determine whether a representation, omission, or practice is likely to mislead, the Court considers the overall net impression the representation creates." *FTC v. Publrs. Bus. Servs., Inc.*, 821 F. Supp. 2d 1205, 1223 (D. Nev. 2010) (*citing FTC v. Cyberspace.Com*, 453 F.3d 1196, 1200 (9th Cir. 2006)).

[9] UF #49; *see also* ex. 909, at 113-15.

PLAINTIFF'S REPLY TO DEFENDANTS ROI REUVENI AND ALON NOTTEA'S OPPOSITION TO PLAINTIFF'S MSJ

6

Contrary to Alon Nottea's claims,[10] Defendants' obscured or hidden disclosures did not cure their deceptive claims. To be effective, a disclosure must be sufficiently clear and prominent so that the "overall net impression" of the sales offer is truthful.[11]  Defendants' disclosures, which were either hidden in fine print or placed on another page altogether, failed to cure their deceptive advertisements.[12]

In fact, Alon Nottea and his co-Defendants were well aware that their advertising deceived consumers. Defendants constantly received consumer

---

[10] While Alon Nottea's opposition brief does not address this issue, his statement of genuine disputes contests that the disclosures were insufficient. *See* Dkt. #391-1, at 10-11.

[11] See *FTC v. Cyberspace.com LLC*, No. C00-1806L, 2002 WL 32060289, at 2-4 (W.D. Wash. July 10, 2002) (holding that a fine print disclosure was inadequate to escape liability), *aff'd* 453 F.3d 1196, 1200 (9th Cir. 2006) (collection case where deception was found because fine print disclosures were inadequate); *see also FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 12 (1st Cir. 2010) ("Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and leave an accurate impression") (*quoting Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989)); *FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 43 (D.C. Cir. 1985) (holding that an advertisement's description of cigarette tar content was deceptive despite a fine print disclosure at the bottom of the ad); *Porter & Deitsch v. FTC*, 605 F.2d 294, 301 (7th Cir. 1979) (upholding FTC and finding that disclosures "buried in small print" were inadequate to qualify weight loss claims in advertising); *FTC v. Gill*, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999) (disclaimers made in contract for credit repair services were insufficient to counteract advertising claims about the service).

[12] UF #56-UF #59.

PLAINTIFF'S REPLY TO DEFENDANTS ROI REUVENI AND ALON NOTTEA'S OPPOSITION TO PLAINTIFF'S MSJ

complaints and chargebacks.[13] Alon was informed of online complaints on "ripoffreport.com."[14] Defendants' attorney advised them their advertising was deceptive.[15] So did the Better Business Bureau.[16] Alon Nottea himself acknowledged the illegality of his scheme.[17] But instead of correcting his false and deceptive advertising, Alon Nottea doubled down on his scheme. For example, in a recorded meeting, Alon Nottea brainstormed ways to create evidence to help him in the future against the FTC.[18]

---

[13] UF #64-UF #65; Dkt. #121-1, at 8.

[14] UF #32(t)(vii).

[15] UF #61(a) (BunZai's attorney provided Alon Nottea a point-by-point breakdown of the myriad ways his "risk-free trial" website violated the law).

[16] UF #32(t)(iv).

[17] *See,* e.g., UF #32(u)(v) ("We must try 500 orders with the terms and conditions on the invoice for customers. It's completely illegal to not have that there, at least.").

[18] In this meeting, Alon Nottea discussed a plan to record calls to dissatisfied customers in which his employees would pretend to be a third party company and ask why the customers requested chargebacks. He believed that evidence of such calls would placate the FTC. UF #32(u)(i) ("I want to have a hundred call folder so that later on in two years when I have an FTC, here, here, here, I'm proactive. It's like—it's like a folder. Here you go. Here's everything. Your file recordings. Look at everything. Look at what we're doing to be proactive for our consumer.").

**b.  Documentary evidence establishes that Defendants marketed "risk free trials" of skincare products before January 2012.**

Alon Nottea claims that no evidence supports liability before January 2012.[19] However, ample evidence makes clear that Defendants' deceptive scheme has been substantially the same from the beginning in 2010:

- A document titled "BunZai Offers – February 11, 2011," produced by a former employee, shows that Defendants were marketing "risk free trials" for various skincare products.[20]

- The BunZai partnership agreement, executed in October 2010, discusses Defendants' "continuity test" and goals for Defendants' "conversion from Free Trial to Transitional stage."[21]

- Alon Nottea emailed a business contact in April 2011 discussing AuraVie online continuity offers sold by BunZai.[22]

- Doron Nottea received a list of "all our merchants account active" in December 2011.

- Alon Nottea received a notice, in a document titled "Myauravie Visa Fine Assess.pdf," that their merchant account had "violat[ed] the High Risk Chargeback Monitoring Program" of Visa.[23]

- Pinnacle Logistics's standard operating procedure for the "charge-back department," dated September 23, 2011, shows that Defendants' chargeback dispute procedure has remained substantially the same.[24]

- Alon Nottea emailed links to AuraVie continuity websites in March 2010.[25]

---

[19] Dkt. 391, at 11 ("[T]he MSJ offers no substantial evidence of deception upon which to find personal liability prior to January 1, 2012.").

[20] Ex. 216.

[21] Ex. 18.

[22] Ex. 48.

[23] Ex. 102.

[24] Ex. 128.

PLAINTIFF'S REPLY TO DEFENDANTS ROI REUVENI AND ALON NOTTEA'S OPPOSITION TO PLAINTIFF'S MSJ

- Defendant Alan Argaman emailed Alon Nottea screen shots of an Miracle Face Kit free trial website in May 2011.[26]
- Defendants' business plan from 2010 discusses Defendants' various negative option continuity campaigns.[27]

In fact, even the declarations Defendants filed to support their opposition show that Defendants' illegal conduct predated 2012. In his declaration in opposition to summary judgment, Roi Reuveni states that Alon Nottea requested that he become an officer of "an online retail merchant of BMG [i.e., BunZai Media Group] products" named Agoa Holdings in 2011.[28]

## III.   The FTC's Statement of Uncontroverted Facts complies with the Local Rules.

Alon Nottea contends that the FTC's Statement of Uncontroverted Facts violates the local rules.[29] According to Alon, the FTC failed to "'set forth the material facts as to which the moving party contends there is no genuine

---

[25] Ex. 474.

[26] Ex. 531.

[27] Ex. 26, at 21-23. In 2010, Defendants appeared to have experimented with an "introductory offer" of $9.95 with an $80 charge on day 15. *Id.* However, Defendants' deception was much the same, and Defendants' own business plan makes clear that consumer complaints, refunds, and chargebacks were an issue for Defendants even then. *See generally id.*

[28] Dkt. #391-2.

[29] Dkt. #391, at 4.

PLAINTIFF'S REPLY TO DEFENDANTS ROI REUVENI AND ALON NOTTEA'S OPPOSITION TO PLAINTIFF'S MSJ

dispute.'"[30] From this, Alon concludes that the FTC's MSJ is "fatally defective."[31] To support this, Alon cites no authority. Moreover, Alon fails to identify why it is "virtually impossible" to respond to the FTC's uncontroverted facts.

Alon's contention is baseless. As Alon notes, the memo of uncontroverted facts[32] was structured based on the amended complaint.[33] Doing so is not contradictory to the local rules.The FTC used this format to ensure that the uncontroverted facts followed the amended complaint in a logical manner.

## IV.   Defendants' objections to the FTC's proposed final order are unfounded.

Alon Nottea has raised a variety of objections to the FTC's proposed final order, claiming that the findings are "not supported by the evidence" without further comment. But Alon points to no evidence supporting these conclusions. Alon Nottea also contests the scope of the order's injunctive provisions and the amount of monetary relief. However, as discussed below, the order provisions in the FTC's proposed final order are supported by the evidence and within the Court's equitable authority.

### a.   The FTC's proposed order provides for appropriate injunctive relief tailored to Defendants' illegal conduct.

---

[30] Dkt. #391, at 4 (citing L.R. 56-2.)

[31] Dkt. #391, at 4.

[32] Dkt. #361.

[33] Dkt. #235.

PLAINTIFF'S REPLY TO DEFENDANTS ROI REUVENI AND ALON NOTTEA'S OPPOSITION TO PLAINTIFF'S MSJ

11

The injunctive relief proposed by the FTC is tailored to the facts in this case and intended to prevent future illegal conduct by Defendants. Moreover, such "fencing-in" relief is permissible, as equitable relief "'is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past.'"[34]  The Court's order may "contain[ ] provisions… that are broader than the conduct that is declared unlawful."[35]  In other words, the Court may enter an order that "close[s] all roads to the prohibited goal."[36]

Alon Nottea recognizes that this Court may enter a permanent injunction; however, he contends that a hearing is necessary "to determine whether a permanent injunction is justified, and if so, the scope of that injunction."[37]  Defendants fail to explain why the May 23 hearing is inadequate to address his concerns.

**b.  Defendants' own records support restitution of $75,624,030.**

---

[34] *FTC v. Colgate Palmolive Co.*, 380 U.S. 374, 395 (1965) (quoting *FTC v. Ruberoid Co.*, 343 U.S. 470, 473 (1952)); *see also id.* ("Having been caught violating the [FTC] Act, respondents 'must expect some fencing in.'") (quoting *FTC v. National Lead Co.*, 352 U.S. 419, 431 (1957)).

[35] *Telebrands Corp. v. FTC*, 457 F.3d 354, 357 n.5 (4th Cir. 2006).

[36] *Ruberoid Co.*, 343 U.S. at 473 (1952); *see also Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612-13 (1946) (allowing for fencing-in provisions except "where the remedy selected has no reasonable relation to the unlawful practices found to exist").

[37] Dkt. #391, at 13.

PLAINTIFF'S REPLY TO DEFENDANTS ROI REUVENI AND ALON NOTTEA'S OPPOSITION TO PLAINTIFF'S MSJ

The FTC has requested that the Court award equitable monetary relief in the amount of $75,624,030.[38] This figure is based on Defendants' own tax returns and Quickbook files.[39] The Ninth Circuit has held that "[b]ecause joint and several liability is permissible, restitution awards need not be limited to the funds each defendant personally received from the wrongful conduct . . . . Defendants held jointly and severally liable for payment of restitution are liable for the unjust gains the defendants *collectively* received, even if that amount exceeds (as it usually will) what any one defendant pocketed from the unlawful scheme."[40]

Defendants claim that the FTC is "double and triple counting amounts paid by consumers" and overstates Defendants' revenue by "approximately $9.8M." But Defendants provide no evidence or explanation for where this figure came from. Moreover, Defendants' reference to the Receiver's report does not support this contention. The referenced footnote states that SBM's income should not be counted to avoid double counting.[41] But SBM was not included in the FTC's gross

---

[38] Dkt. #381-1, at 44.

[39] *See* Dkt. #232; *see also* Ex. 944. While Defendants claim the FTC failed to provide any evidence supporting this figure (Dkt. #391, at 12), Defendants' Statement of Genuine Disputes cites precisely where this evidence was previously filed in the record. Dkt. #391-1, at 17 (citing Dkt. #232-1).

[40] *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 600 (9th Cir. 2016).

[41] Dkt. #120, at 68 n.139.

revenue calculations.[42] Moreover, while the Receiver's report acknowledges that some of Focus Media Solution's income may not have come from deceptive continuity sales, Defendants have proffered no evidence to substantiate how much, if any, of Focus Media's revenue was not derived by Defendants' scam.[43] Defendants further claim the FTC's calculation "fail[s] to credit 25% of the total sales that was previously returned to consumers."[44] Defendants fail to provide any explanation or evidence for their 25 percent figure. Moreover, the FTC's calculation is based primarily on Defendants' own tax returns.[45] Accordingly, Defendants' argument is meritless unless they were reporting revenue to the IRS that had actually been returned to consumers.

Importantly, the FTC need only reasonably approximate the amount of consumer injury, which the FTC has done using Defendants' tax returns and business records. After the FTC has satisfied this obligation, the burden shifts to Defendants to show that the figures are inaccurate.[46] Defendants have failed to

---

[42] Dkt. #232-1, at 4.

[43] *Id.*

[44] Dkt. #391, at 12.

[45] *See* Dkt. #232-1.

[46] *See Commerce Planet*, 815 F.3d at 593 (*quoting FTC v. Bronson Partners, LLC*, 654 F.3d 359, 368 (2d. Cir 2011)) ("If the FTC makes the required threshold showing, the burden then shifts to the defendant to show that the FTC's figures overstate the amount of the defendant's unjust gains. Any risk of uncertainty at

PLAINTIFF'S REPLY TO DEFENDANTS ROI REUVENI AND ALON
NOTTEA'S OPPOSITION TO PLAINTIFF'S MSJ

1   show why the FTC's calculation is inaccurate. "Fuzzy figures due to a defendant's

2   uncertain bookkeeping cannot carry a defendants' burden to show inaccuracy."[47]

3   **V.      Conclusion.**

4           For the foregoing reasons, the FTC respectfully requests that the Court

5   grant summary judgment against Defendant Alon Nottea.

6                                                  Respectfully submitted,

7

8   Dated: 5/13/16                                 /s/ Reid Tepfer_____
                                                   REID A. TEPFER
9                                                  LUIS H. GALLEGOS
                                                   EMILY ROBINSON
10                                                 ZACHARY KELLER
                                                   Attorneys for the Plaintiff
11                                                 Federal Trade Commission
                                                   1999 Bryan Street, Suite 2150
12                                                 Dallas, Texas 75201
                                                   (214) 979-9395 (Tepfer)
13                                                 (214) 979-9383 (Gallegos)
                                                   (214) 953-3079 (facsimile)
14                                                 rtepfer@ftc.gov
                                                   lgallegos@ftc.gov
15

16

17

18

19   ───────────────────────────────────

20   this second step "fall[s] on the wrongdoer whose illegal conduct created the uncertainty.'"); *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997).

     [47] *Id.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 13, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea and*
*Roi Rueveni*

Robert Esensten
Esensten Law
12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
resensten@esenstenlaw.com
*Counsel for Doron Nottea and Motti*
*Nottea*

Jeffrey Benice
Law Offices of Jeffrey S. Benice
A Professional Law Corporation
3080 Bristol Street
Sixth Floor, Suite 630

Costa Mesa, CA 92626
Telephone: (714) 641-3600 Ext. 214
*Counsel for Igor Latsanovski and*
*CalEnergy, Inc*

Sagar Parikh
Beverly Hills Law Corp. PC
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
SP@BeverlyHillsLawCorp.com
*Attorney for Paul Medina, Secured*
*Merchants, LLC,*
*and Chargeback Armor, Inc.*

Charlene Cantrell Koonce
Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
charlene.koonce@solidcounsel.com
*Receiver*

Kelly M. Crawford
Scheef and Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
kelly.crawford@solidcounsel.com
*Counsel to Receiver*

/S/ REID TEPFER
REID TEPFER

PLAINTIFF'S REPLY TO DEFENDANTS ROI REUVENI AND ALON
NOTTEA'S OPPOSITION TO PLAINTIFF'S MSJ

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20