DAVID C. SHONKA
Acting General Counsel

DAMA J. BROWN
Dbrown1@ftc.gov
Regional Director

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
EMILY ROBINSON
erobinson@ftc.gov; Tex. Bar No. 24046737
ZACHARY A. KELLER
zkeller@ftc.gov
Texas Bar No. 24087838 (pro hac vice pending)
Federal Trade Commission
1999 Bryan Street, Ste 2150
 Dallas, Texas 75206
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9386 (Robinson); (214) 979-9382 (Keller)
(214) 953-3079 (fax)
RAYMOND McKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Ste 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BUNZAI MEDIA GROUP, INC.,** *et al.*<br><br>**Defendants.** | **Case No. CV 15-4527-GW(PLAx)**<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S REPLY TO DEFENDANT DORON NOTTEA'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

Page

I.   Introduction…………………………………………………………………1

II.  The Conduct Admitted by Doron Nottea and Indisputably Established by the Documentary Evidence Satisfies the Standard for Individual Liability……………………………………………………………………...2

    A.   Doron Nottea Exercised Control over the Common Enterprise………..5

        1.   Doron Nottea had Formal Ownership of and Officer Positions at Corporate Defendants………………….......................5

        2.   Doron Nottea's informal ownership and control of Corporate Defendants…………………………………………………………7

    B.   Doron Nottea participated directly in the common enterprise………....9

        1.   Doron Nottea's admitted financial duties are sufficient to establish liability……………………………………………………...9

        2.   Indisputable documentary evidence shows Doron Nottea's participation was not limited to "typical bookkeeping conduct….11

III.  Doron Nottea indisputably knew of the common enterprise's illegal Activities…………………………………………………………………...15

IV.  Conclusion……………………………………………………….....……17

# TABLE OF AUTHORITIES

## CASES

*Chevron USA, Inc.  v. Cayetano,*
   224 F.3d 1030 (9th Cir. 2000)----------------------------------------------- 5

*FTC v. Am. Standard Credit Sys., Inc.,*
   874 F. Supp. 1080 (C.D. Cal. 1994)--------------------------------------- 7

*FTC v. Amy Travel Serv. Inc.,*
   875 F.2d 564 (7th Cir. 1989) --------------------------------------------4, 15

*FTC v. Ivy Capital, Inc.,* No. 2:11-CV-283,
   2013 WL 1224613 (D. Nev. Mar. 26, 2013) ---------------------------------- 3

*FTC v. J.K. Publ'ns, Inc.,*
   99 F. Supp. 2d 1176 (C.D. Cal. 2000)------------------------------------ passim

*FTC v. LoanPointe, LLC,* No. 2:10-CV-225DAK,
   2011 WL 4348304 (D. Utah Sept. 16, 2011) ---------------------------------- 3

*FTC v. Network Servs. Depot, Inc.,*
   617 F.3d 1127 (9th Cir. 2010) ---------------------------------------------- 4

*FTC v. Publ'g Clearing House, Inc.,*
   104 F.3d 1168 (9th Cir. 1997)-------------------------------------------- 3, 4

*FTC v. Sharp,*
   782 F. Supp. 1445 (D. Nev. 1991) ----------------------------------------4, 15

*FTC v. Transnet Wireless Corp.,*
   506 F. Supp. 2d 1247 (S.D. Fla. 2007) ------------------------------------- 3

FTC v. Wilcox,
   926 F. Supp. 1091 (S.D. Fl. 1995) ---------------------------------------- 9

*FTC v. Windward Mktg.,* No. Civ. A. 1:96-CV-615F,
   1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) ------------------------------- 4

*Standard Educators, Inc. v. FTC,*
   475 F.2d 401 (D.C. Cir. 1973)-------------------------------------------- 4

*Starsky v. Williams,*
   512 F.2d 109 (9th Cir. 1975) --------------------------------------------- 5

*TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.,*
   913 F.2d 676 (9th Cir. 1990) --------------------------------------------- 5

## RULES

Fed. R. Civ. P. 26(a)(2)(B) --------------------------------------------- 15, 16

## I.      Introduction.

Defendant Doron Nottea was a principal member of the AuraVie common enterprise, involved from the scheme's inception until the Court-ordered immediate access of his business premises. Despite his efforts to minimize his fingerprints on the scam, Doron Nottea is inextricably linked to nearly every Corporate Defendant in this case. The record shows Doron Nottea's ownership of and officer positions at multiple Corporate Defendants. Emails evince his daily involvement in the common enterprise. And while Doron Nottea claims to have been unaware of the common enterprise's illegal activities, the Court need not credit self-serving testimony so plainly contradicted by the record.[1] Doron Nottea's own words make clear his knowledge of his company's illegal business practices. In fact, the vast majority of evidence in this case came directly from his office suite and his computer.[2]

Faced with undeniable evidence of his involvement, Doron Nottea points to a purported division of labor between him, his brother, and his fellow participants in the scam, euphemistically referring to his daily participation as mere "bookkeeping." But the evidence makes clear that Doron Nottea's ownership,

---

[1] *See* 398-2 (Decl. of Doron Nottea).

[2] *See* Dkt. #120, at 12-14; exs. 951, 952, 953, Decl. of FTC Investigator Brent McPeek in Support of the FTC's Motion for Summary Judgment.

control, and participation were not so limited. Moreover, the law makes clear that the participation admitted by Doron Nottea, which was "crucial to the success of [the Corporate Defendants'] billing scheme," is sufficient in itself to grant summary judgment against him.[3]

## II.   The conduct admitted by Doron Nottea and indisputably established by the documentary evidence satisfies the standard for individual liability.

In his opposition to the FTC's motion for summary judgment, Doron Nottea does not contest the underlying allegations in this case—namely, that AuraVie was deceptively marketed in violation of the FTC Act, the Restore Online Shoppers' Confidence Act, and the Electronic Funds Transfer Act.[4] Nor does Doron Nottea appear to contest that the Corporate Defendants acted as a common enterprise in executing this illegal billing scheme or that the consumer injury from this scheme was $75,624,030.[5] Instead, Doron Nottea contests only whether adequate evidence exists against him.

Individuals are subject to injunctive relief for a company's deceptive acts or practices when they either: (1) "participated directly in the acts or practices;" or

---

[3] *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1206 (C.D. Cal. 2000).

[4] *See generally* Dkt. #398.

[5] *See generally id.*; *see also* Dkt. #365-5.

1  (2) "had authority to control them."[6] Where an officer participates in "acts crucial

2  to the success" of an enterprise, the officer has directly participated for the

3  purposes of individual liability.[7] For example, in *J.K. Publications*, the court held

4  liable a corporate officer who had obtained merchant accounts and purchased a

5  database of consumers for the corporate defendant.[8]

6      Individuals are also liable for injunctive relief if they had "authority to

7  control" the corporation, which can be inferred from "'active involvement in

8  business affairs and the making of corporate policy.'"[9]  An individual's "status as

9  a corporate officer and authority to sign documents on behalf of the corporate

10  defendant can be sufficient to demonstrate the requisite control."[10]  Indeed, a

11  "corporate officer is presumed to be in control of a small, closely held

12  corporation, and assuming the duties of a corporate officer is probative of an

13  individual's participation or authority."[11]

---

14  [6] *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997).

15  [7] *J.K. Publ'ns, Inc.*, 99 F. Supp. 2d at 1206.

16  [8] *Id.*

    [9] *J.K. Publ'ns, Inc.*, 99 F. Supp. at 1203 (quoting *FTC v. Am. Standard Credit*

17  *Sys., Inc.*, 874 F. Supp. 1080, 1089 (C.D. Cal. 1994)).

    [10] *Id.* at 1204.

18  [11] *FTC v. Ivy Capital, Inc.*, No. 2:11-CV-283, 2013 WL 1224613, *14 (D. Nev.

19  Mar. 26, 2013) (quoting *FTC v. LoanPointe, LLC*, No. 2:10-CV-225DAK, 2011
    WL 4348304, *10 (D. Utah Sept. 16, 2011)); *see also FTC v. Transnet Wireless*

20  *Corp.*, 506 F. Supp. 2d 1247, 1270 (S.D. Fla. 2007) ("An individual's status as a
    corporate officer gives rise to the presumption of ability to control a small,

REPLY TO DEFENDANT DORON NOTTEA'S OPPOSITION TO
THE FTC'S MOTION FOR SUMMARY JUDGMENT

To obtain equitable monetary relief against an individual, the FTC must show, in addition to one of the two factors above, that the individual had some knowledge of the company's deceptive acts or practices.[12] This knowledge requirement is satisfied if the individual defendant: (1) had actual knowledge of the misrepresentations; (2) was recklessly indifferent to the truth or falsity of the misrepresentations; or (3) had an awareness of a high probability of deceptive conduct together with an intentional avoidance of the truth.[13] The "degree of participation in business affairs is probative of knowledge."[14]

The uncontroverted evidence satisfies the requirements for both injunctive and monetary relief against Doron Nottea. As discussed below and made clear in the record in this case, Doron Nottea owned, exercised control over, and assumed the role of an officer in several Corporate Defendants. Moreover, the evidence

---

closely-held corporation."); *Standard Educators, Inc. v. FTC*, 475 F.2d 401, 403 (D.C. Cir. 1973) ("A heavy burden of exculpation rests on the chief executive and primary shareholder of a closely held corporation whose stock-in-trade is overreaching and deception."); *FTC v. Windward Mktg.*, No. Civ. A. 1:96-CV-615F, 1997 WL 33642380, *13 (N.D. Ga. Sept. 30, 1997) ("An individual's status as a corporate officer gives rise to a presumption of ability to control a small, closely-held corporation.").

[12] *J.K. Publ'ns, Inc.,* 99 F. Supp. at 1204.

[13] *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1138-39 (9th Cir. 2010); *Publ'g Clearing House*, 104 F.3d at 1171; *FTC v. Amy Travel Serv. Inc.*, 875 F.2d 564, 574 (7th Cir. 1989).

[14] *Amy Travel Serv.*, 875 F.2d at 574; *FTC v. Sharp*, 782 F. Supp. 1445, 1450 (D. Nev. 1991).

1    leaves no doubt that Doron Nottea was aware of the illegality of the scheme he

2    was involved in.

3           Doron's liability is clear both from what he concedes and what is

4    unquestionably established by the documentary record in this case. Ninth Circuit

5    courts have held that "where the ultimate fact in dispute is destined for decision by

6    the court rather than by a jury, there is no reason why the court and the parties

7    should go through the motions of a trial if the court will eventually end up

8    deciding on the same record." [15]

9    **A. Doron Nottea exercised control over the common enterprise.**

10          ***1.  Doron Nottea had formal ownership of and officer positions at
            Corporate Defendants.***

11          Doron Nottea owned or was a corporate officer at several key Corporate

12   Defendants in the common enterprise. He was an owner of Secured Commerce

13

14

15   _____

16   [15] *TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676,
     684 (9th Cir. 1990); *see also Chevron USA, Inc.  v. Cayetano*, 224 F.3d 1030 n.6

17   (9th Cir. 2000) (citing *Starsky v. Williams*, 512 F.2d 109, 111 (9th Cir. 1975))
     ("Because this case will be tried to the court, rather than a jury, the question arises

18   whether it was improper for the district court to engage in fact-finding, since it
     will eventually be called upon to perform that very task. This court has held that if

19   the parties agree that all of the underlying material facts are reflected in the
     written record, a judge may decide factual issues and essentially convert cross-

20   motions for summary judgment into submission of the case for trial on the written
     record.").

LLC,[16] a company that participated in the advertising and marketing of AuraVie products.[17] Doron Nottea also held himself out as a member of Secured Merchants LLC,[18] the Corporate Defendant that provided chargeback refutation services, implemented the automated answering service for customer complaints, and managed the common enterprise's customer relations software, LimeLight.[19]

Further, Doron Nottea had officer positions with at least two other Corporate Defendants. Doron Nottea held himself out in bank documents as secretary of Chargeback Armor, Inc.,[20] another company Defendants used to refute consumer chargebacks for AuraVie.[21] And BunZai Media Group's business plan identified Doron Nottea as "CFO/Controller" of BunZai.[22] BunZai, of course, was the initial and primary company in Defendants' scam until its dissolution.

---

[16] UF #39(b). All citations to uncontroverted facts (UF) are in reference to Plaintiff's Statement of Uncontroverted Facts & Conclusions of Law in Support of its Motion for Summary Judgment. Dkt. # 353-2.

[17] Specifically, Secured Commerce invoiced Alon Nottea's company, Adageo LLC, for "Design, Creation, & Optimization of Auravie Landing Page [and] Campaign Setup and Integration to Lime Light CRM and Click Connector." UF #34(h)(v); UF #39(d)(viii).

[18] Ex. 176-2.

[19] UF #26(b)-(c); UF #39(d).

[20] UF #43(c)(x).

[21] UF #39(f)(ii); Ex. 550, at 172:3-172:6.

[22] Ex. 26, at 23.

### 2. *Doron Nottea's informal ownership and control of Corporate Defendants.*

Despite Doron Nottea's attempts to obscure his and his brother's ownership and control of the common enterprise,[23] including by paying friends and family to serve as figureheads for their shell corporations,[24] Doron Nottea's ownership and control is clear from his "active involvement in business affairs"[25] and his role in "the making of corporate policy."[26] Doron Nottea and his fellow participants paid others to sign their names to documents in an attempt to shield themselves from legal liability, but he both owned and controlled many of the Corporate Defendants in the common enterprise. Proof of his participation and control over the common enterprise is documented in hundreds of emails Doron Nottea sent to codefendants and business associates, including:

– Doron Nottea, his brother, and Khristopher Bond attended a meeting with the common enterprise's accountant in which they discussed "the business structuring of your business."[27]
– Doron Nottea and Defendant Paul Medina met with an individual, Gary Bhasin, to discuss his "management consulting proposal for AuraVie."[28] In a follow up email to Doron and Alon Nottea, Mr.

---

[23] *See, e.g.,* UF #34(g)(i) and (ii).

[24] UF #34(d)(viii).

[25] *J.K. Publ'ns, Inc.*, 99 F. Supp. at 1203 (quoting *FTC v. Am. Standard Credit Sys., Inc.*, 874 F. Supp. 1080, 1089 (C.D. Cal. 1994)).

[26] *Id.*

[27] *See* Ex. 483; *see also* exs. 53, 302; 394.

[28] UF #34(i)(i).

REPLY TO DEFENDANT DORON NOTTEA'S OPPOSITION TO THE FTC'S MOTION FOR SUMMARY JUDGMENT

7

Bhasin stated "I am pretty confident that [I] can bring in the valuable information that you both need to run the business more efficiently."[29] As part of his proposal, Mr. Bhasin offered to provide Alon and Doron Nottea "chargeback analysis" and "marketing reports."[30] In a second email addressed to Doron, Gary Bhasin referenced "meeting you last week" and stated that "[i]t's unfortunate that you are closing down the operations of Auravie" and assumed the operation was shutting down because of the enterprise's high chargebacks.[31]

– Stephan Bauer emailed Doron concerning a new opportunity concerning "hard core online trial and offers biz" and stated that "we just need to transition to the new whatever biz as the old wind[s] down,"[32] in apparent reference to Defendants' winding down of the sale of AuraVie.[33]

– Leor Arazy, the HR director for both BunZai and Pinnacle, sent Doron Nottea the Pinnacle Logistics's paycheck advance policy and requested that he let her know if he wanted any changes.[34]

– Doron Nottea received an email informing him of individuals who "want to sell cosmetics on your distribution channel."[35]

– Defendant Latsanovski emailed Doron and Alon Nottea regarding the future of their business and referred to Doron Nottea as having a "department" at Pinnacle Logistics.[36]

– In discussions with representatives from the Indian call center utilized by the common enterprise, Alon Nottea stated that "Doron will manage the corporation and DBA Setup as well as accounting, disbursement of funds back to India."[37]

---

[29] Ex. 29.

[30] *Id.*

[31] Ex. 385-1 and -2.

[32] UF #34(d)(iii).

[33] *See*, *e.g.,* ex. 385; UF #34(h)(xiv).

[34] UF #34(e)(ii).

[35] Ex. 35.

[36] UF #34(h)(ii).

[37] UF #34(f)(ii).

– David Midgal emailed Doron Nottea asking "what you want me to do" concerning "a new PO Box (address) for Dellure[.]"[38]

## B. Doron Nottea participated directly in the common enterprise.

### 1. Doron Nottea's admitted financial duties are sufficient to establish liability.

Doron Nottea's admitted financial responsibilities are sufficient to give rise to liability, as those duties were "crucial to the success of [the corporate defendants'] billing scheme." [39] In *FTC v. J.K. Publ'ns, Inc.*, the court found a defendant liable at summary judgment based solely on her signing documents on behalf of the corporate defendant.[40]  The court reasoned that the defendant had "actively participated in certain acts crucial to the success of [the corporate defendants'] billing scheme."[41]

Doron Nottea admits that he was deeply involved in managing certain financial aspects of the common enterprise.[42] Overwhelming evidence confirms

---

[38] Ex. 331; *see also* ex. 333.

[39] *J.K. Publ'ns, Inc.*, 99 F. Supp. 2d. at 1206.

[40] *Id.* Moreover, in *FTC v. Wilcox*, the court found that a defendant had directly participated by reviewing sales and marketing reports related to products sold by or marketing materials, among other things. 926 F. Supp. 1091, 1104 (S.D. Fl. 1995).

[41] *J.K. Publ'ns, Inc.*, 99 F. Supp. 2d. at 1206. In fact, the court concluded this conduct rendered the defendant liable despite the fact the "record d[id] not show that she was involved in the daily operations of [the corporate defendants]." *Id.* at 1183.

[42] Dkt. #398, at 10-11.

that Doron Nottea oversaw everything related to the finances of the AuraVie enterprise. He monitored sales, expenses, and revenue,[43] incorporated shell companies,[44] assessed the profitability of the AuraVie business model,[45] paid the straw owners of the shell corporations their 1% "commission,"[46] managed and was apprised of the common enterprise's merchant accounts,[47] established or managed corporate bank accounts,[48] was apprised of shipping costs for AuraVie[49] and the results of various audits,[50] managed the enterprise's mail drop boxes,[51] handled payroll and insurance,[52] and paid invoices.[53] Moreover, Doron Nottea

---

[43] UF #34(h)(i), (x), (xiv)-(xvi); UF #34(e)(v) and (ix).

[44] UF #34(i)(ii)-(iv). In fact, Doron Nottea edited the incorporating document for DSA Holdings, Inc. (ex. 268)—a company in which he claims, in a self-serving declaration, to have had no involvement, no ownership interest, and no duties or responsibilities. Dkt. 398-2, at 3.

[45] Exs. 26 and 29.

[46] UF #34(h)(xii) and (xiii); ex. 172.

[47] UF #34(e)(vi); UF #34(h)(i) and (iv); exs. 78; 173; 324 (Alon requests that Doron "[p]lease read sam's requests carefully and support Paul to get this money into our hands…"); 329; 383; 384; 518; and 546.

[48] UF #34(g)(iv)-(viii); UF #36(j)(i); ex. 369.

[49] Ex. 367; UF #34(f)(i).

[50] UF #34(f)(ii).

[51] UF #34(f)(vi); UF #34(i)(viii).

[52] UF #34(e)(i) and (iii); *see also* Dkt. #398-2, at 6-7.

[53] Dkt. #398-2, at 6.

possessed blank, pre-signed checks for Corporate Defendants in his office[54]—

essential for managing an enterprise dependent on numerous straw owners.

Doron Nottea's duties—managing the financial components of the

enterprise—were crucial to the success of the AuraVie billing scheme. Given

Defendants' high chargeback rate for their unauthorized charges, Defendants were

at constant risk of losing merchant account access.[55] To maintain steady access

and avoid bank scrutiny, Defendants opened numerous merchant accounts under

shell corporations, using fake owners and false addresses.[56] The result was a

sprawling and convoluted corporate structure spanning dozens of shell companies,

merchant accounts, and bank accounts.[57] From his Canby office, Doron managed

it all.

### 2. Indisputable documentary evidence shows Doron Nottea's participation was not limited to "typical bookkeeping conduct."

Doron Nottea's crucial role in managing the finances of the AuraVie

---

[54] Dkt. #120, at 13; *see also* 437 (Stephan Bauer asks Doron Nottea, "Do I need to sign any docs or checks etc.").

[55] *See* Dkt. 121-1, at 8 ("Analysis of the entities' chargeback rates indicates the rates for [Receivership Defendants'] ranged between 14% and 35% for the various Defendant entities. The chargeback ratio appears significantly higher than the industry acceptable chargeback rates of 1%.").

[56] *See*, *e.g.,* Dkt. #120, at 5.

[57] *Id.* at 6-7.

enterprise is sufficient participation for liability.[58] But his participation was not limited to managing AuraVie's finances. While Doron Nottea attempts to downplay himself as a mere bookkeeper, his role was not limited to the ministerial tasks he acknowledges. Emails document Doron Nottea participating in, and being apprised of, activities far afield of "typical bookkeeping conduct"[59]:

- A text message from Doron Nottea suggests he played a role in advertising decisions.[60]
- Igor Latsanovski, an owner of BunZai Media Group,[61] emailed Doron and Alon Nottea discussing the future of Pinnacle and their enterprise.[62]
- Defendant Alan Argaman updated the "Team," including Doron, concerning various "projects" and programs utilized by the common enterprise, including "ChargeBackArmor.com" and a call center.[63]
- Doron was updated concerning the AuraVie chargebacks processed by Chargeback Armor.[64]
- Defendant Paul Medina, purported vice president of Media Urge, requested permission from Doron Nottea and Defendant Alan Argaman to move a Lime Light CRM account expense to Defendant Secured Merchants.[65]
- Doron was consulted regarding his opinion on the packaging for LeElle skincare products and was provided a PowerPoint

---

[58] 99 F. Supp. 2d. at 1206.

[59] Dkt. #398, at 11.

[60] UF #34(j) ("We are waiting for some more industry news to be released in order to make an executive decision on whether or not to run blogs again...").

[61] UF #36(a)-(c).

[62] UF #34(h)(ii).

[63] Ex. 149.

[64] Ex. 151.

[65] UF #34(h)(viii).

presentation regarding the product.[66] Doron was then updated concerning the decision of who would own the LeElle skincare line.[67]

 – Doron Nottea established several of the companies' websites.[68]
 – Alon emailed Doron Nottea a confidentiality agreement between BunZai and a third party pharmaceutical company.[69]
 – Doron Nottea was included in email discussions concerning shipping of AuraVie products.[70]
 – Doron Nottea instructed employee Nastassia Yalley which toll free numbers to use for the AuraVie call center.[71]
 – Doron Nottea emailed Alon concerning an AuraVie advertorial website.[72]
 – Doron was involved in conversations with representatives from the common enterprise's third party Indian call center.[73]
 – Defendant Argaman emailed Doron Nottea concerning the various domains used to market their "risk-free trial."[74]

These activities—as well as his ownership of and officer positions at several of the Corporate Defendants[75]—make clear that Doron Nottea was not merely tasked with keeping track of the companies' transactions or paying invoices.

---

[66] UF #39(e)(i).

[67] UF #39(e)(ii).

[68] Ex. 288.

[69] UF #34(f)(iv).

[70] UF #34(f)(i).

[71] UF #34(h)(iii).

[72] UF #34(h)(vi).

[73] Ex. 294.

[74] Ex. 440.

[75] *Supra*, Sections II.A.1 and II.A.2.

To support his claim that he was merely a disinterested bookkeeper, Doron Nottea submitted a declaration from an expert witness, Daniel Howard, concerning Doron Nottea's purported bookkeeping duties.[76] But this expert witness was never disclosed in any initial disclosure nor was he disclosed by the deadline for disclosing expert witnesses.[77] Further, this expert witness failed to provide a written report as required by Rule 26(a)(2)(B). By failing to disclose this expert witness, Doron Nottea has denied the FTC the opportunity to examine the witness concerning his qualifications or the basis for his conclusions.

In an attempt to sidestep Doron Nottea's failure to properly disclose this expert witness or provide a written report, Mr. Howard testifies that he is a "non-retained expert that was hired to assist in evaluating the services of Doron."[78] This claim, whatever it means, does not remedy the problem. The Federal Rules require a witness to provide a written report if that witness was "retained or *specially employed to provide expert testimony in the case*."[79] That describes Mr. Howard's role here precisely. Accordingly, because Mr. Howard was hired to provide expert

---

[76] Dkt. #398-4 (Decl. of Daniel M. Howard, CPA).

[77] The first mention of any expert witness by Doron was in his *ex parte* application for a continuance (Dkt. #367), several weeks after the deadline for such a disclosure. *See* Dkt. #344 (ordering that expert witnesses shall be designated by April 1).

[78] Dkt. #398-4, at 2.

[79] Fed. R. Civ. P. 26(a)(2)(B).

testimony in this case but was never disclosed and failed to provide an expert

report, his testimony should not be considered by the Court.

### III.    Doron Nottea indisputably knew of the common enterprise's illegal activities.

Doron Nottea owned and controlled many of the Corporate Defendants; he

participated in its illegal business practices daily. Despite this, Doron Nottea

claims, in a self-serving affidavit,[80] that he was unaware of the common

enterprise's conduct. The Court need not credit such self-serving testimony.[81]

Courts have held that the "degree of participation in business affairs is probative

of knowledge."[82]  Here, Doron was integrally involved: he owned Corporate

Defendants in the common enterprise, he controlled them, and they operated from

his business premises.[83] Doron Nottea's office was a treasure trove of

incriminating evidence at the Court-ordered immediate access, and the FTC has

assembled this case primarily with evidence taken from Doron Nottea's own

---

[80] Dkt. #398-2.

[81] *See FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (1997)  ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *see also FTC v. MacGregor*, 360 Fed.Appx. 891 (9th Cir. 2009); *U.S. v. $133,420.00 in U.S. Currency*, 672 F.3d 629 (9th 2012).

[82] *Amy Travel Serv.*, 875 F.2d at 574; *FTC v. Sharp*, 782 F. Supp. 1445, 1450 (D. Nev. 1991).

[83] *See supra*, Sections II.A.1 and  II.A.2; Dkt. #120, at 12-14.

office and computer.[84]

Further still, Doron Nottea's own words show his knowledge of the common enterprise's illegal conduct. In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of the companies involved.[85] In this message, Doron Nottea notes that their affiliates were using illegal advertising.[86] He references "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales.[87] Moreover, he states that he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entities."[88]

---

[84] *See* Dkt. #120, at 12-14; exs. 951, 952, 953, Decl. of FTC Investigator Brent McPeek in Support of the FTC's Motion for Summary Judgment.

[85] UF #34(j). Because Doron cannot explain a text message that so completely undermines his position, he instead notes that it is unusual that he sent a text message from his phone to his own email. But that is unquestionably what he did: Doron swore the phone number is his, and the evidence shows that to be his email address.  UF #34(j) and 34(b)(ii). The FTC did not bother to speculate why he did this simply because the answer to that question does not matter. He may have been saving a text message; he may have been sending a draft message to be sent later from his email. Whatever the reason, he was doubtless aware of every aspect of the common enterprise and its illegal practices.

[86] UF #34(j).

[87] *Id.*

[88] *Id.*

**IV.    Conclusion.**

Summary judgment is appropriate against Doron Nottea. Faced with insurmountable evidence, Doron Nottea has admitted sufficient participation to grant injunctive relief. And his own words make clear his knowledge of his company's illegal business practices, rendering monetary equitable relief appropriate. Accordingly, the FTC respectfully requests that the Court grant the FTC's Motion for Summary Judgment against Doron Nottea.

Respectfully submitted,


Dated: 5/13/16                          /s/ *Reid Tepfer*
                                        REID A. TEPFER
                                        LUIS H. GALLEGOS
                                        Attorneys for the Plaintiff
                                        Federal Trade Commission
                                        1999 Bryan Street, Suite 2150
                                        Dallas, Texas 75201
                                        (214) 979-9395 (Tepfer)
                                        (214) 979-9383 (Gallegos)
                                        (214) 953-3079 (facsimile)
                                        rtepfer@ftc.gov
                                        lgallegos@ftc.gov

1

## CERTIFICATE OF SERVICE

2

The undersigned certifies that on May 13, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

3

4

5
Erik S Syverson
Raines Feldman LLP

6
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212

7
esyverson@raineslaw.com
*Counsel for Oz Mizrahi*

8

Robert M. Ungar

9
Crosswind Law
14724 Ventura Blvd Penthouse

10
Sherman Oaks, CA 91403
rmu@crosswindlaw.com

11
*Counsel for Alon Nottea and
Roi Rueveni*

12

Robert Esensten

13
Esensten Law
12100 Wilshire Blvd., Suite 1660

14
Los Angeles, CA 90025
resensten@esenstenlaw.com

15
*Counsel for Doron Nottea and Motti
Nottea*

16

Jeffrey Benice

17
Law Offices of Jeffrey S. Benice
A Professional Law Corporation

18
3080 Bristol Street
Sixth Floor, Suite 630

19

20

Costa Mesa, CA 92626
Telephone: (714) 641-3600 Ext. 214
*Counsel for Igor Latsanovski and
CalEnergy, Inc*

Sagar Parikh
Beverly Hills Law Corp. PC
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
SP@BeverlyHillsLawCorp.com
*Attorney for Paul Medina, Secured
Merchants, LLC,
and Chargeback Armor, Inc.*

Charlene Cantrell Koonce
Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
charlene.koonce@solidcounsel.com
*Receiver*

Kelly M. Crawford
Scheef and Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
kelly.crawford@solidcounsel.com
*Counsel to Receiver*

/S/ REID TEPFER
REID TEPFER

REPLY TO DEFENDANT DORON NOTTEA'S OPPOSITION TO
THE FTC'S MOTION FOR SUMMARY JUDGMENT