DAVID C. SHONKA
Acting General Counsel

DAMA J. BROWN
Dbrown1@ftc.gov
Regional Director

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
EMILY ROBINSON
erobinson@ftc.gov; Tex. Bar No. 24046737
ZACHARY A. KELLER
zkeller@ftc.gov
Texas Bar No. 24087838 (pro hac vice pending)
Federal Trade Commission
1999 Bryan Street, Ste 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9386 (Robinson); (214) 979-9382 (Keller)
(214) 953-3079 (fax)
RAYMOND McKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Ste 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **BUNZAI MEDIA GROUP, INC.,** *et al.* <br><br> **Defendants.** | **Case No. CV 15-4527-GW(PLAx)** <br><br> PLAINTIFF'S RESPONSE TO DEFENDANT DORON NOTTEA'S STATEMENT OF GENUINE DISPUTES |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Doron Nottea's Response to Cited Fact and Supporting Evidence |
|---|---|
| Paragraphs 1 – 33 | Irrelevant to Defendant Doron Nottea |

**Moving Party's Response:**

As Defendant has not addressed the substance of these uncontroverted facts, they are deemed undisputed.

| Paragraph 34<br><br>Defendant Doron Nottea is or has been a manager at BunZai and Pinnacle. Defendant Doron Nottea resides in this district and, in connection with the matters alleged herein, transacted business in this district and throughout the United States. Dkt. 244 ¶ 34. | Admit that Doron Nottea ("Doron") resides in this District and has transacted his adult content business in this district. The balance of this paragraph is denied. Declaration of Doron Nottea ("Doron Decl.") ¶¶11-12. |

**Moving Party's Response:**

Defendant Doron Nottea did not dispute that he resides in this district and transacted business in this district.

Plaintiff disputes the contention that Doron Nottea did not manage BunZai and Pinnacle employees.  Other than Doron Nottea's self-serving conclusory declaration, Defendants failed to provide any evidence to rebut Plaintiff's evidence showing Doron Nottea's management of these companies.  Defendants did not rebut evidence showing Leor Arazy, Pinnacle and BunZai's human resources manager, included Doron Nottea on an email sending out a salary report by department for Pinnacle. Ex. 38. Defendants did not rebut evidence showing Leor Arazy sending Doron Nottea Pinnacle's loan policy and requesting that he let her know if he wanted any changes. Ex. 84. Defendants did not rebut evidence showing Doron Nottea receiving payroll information for some of the Corporate Defendants. Exs. 345; 346; 353. Defendants did not rebut evidence of Defendant Paul Medina testifying that he reported to Doron's employees or assistants for anything financially related for the various Corporate Defendants. Ex. 946 at 28:6-28:13; Ex. 946 at 27:8-27:21. Defendants did not rebut evidence showing Paul Medina emailing Doron Nottea a list of current merchant accounts selling AuraVie. *See* Ex. 384 Defendants did not rebut evidence of Defendant Medina testifying that he provided Defendant Doron Nottea with commission calculations to pay the straw "owners" of the various Corporate Defendants, who were paid. Exs. 946 at 44:10-20; *see* Ex. 166.

Doron admitted to maintaining financial information related to his "clients." Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he

maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters.  Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36. He admitted that he often maintained blank checks, credit cards, deposit stamps, and other banking materials for his clients. Dkt. 398-2 at 7 ¶29.  He also admitted that as a "bookkeeper" he reviewed and prepared spreadsheets related to profits, losses, expenses or other financial matters.  Dkt. 398-2 at 7 ¶31.

| Paragraph 34(a) | Admit that credit cards and |
|---|---|
| Doron Nottea possessed a book of credit cards and signed blank checks for Zen Mobile Media, Inc. Dkt. 120, at 32, 40. | checks were maintained by Doron as his responsibilities as a bookkeeper to facilitate the payment of certain expenses, consistent with his functions as a bookkeeper. Doron Decl., ¶29; Declaration of Alon Nottea ("Alon Decl"), ¶11; Decl., of Danny Howard ("Howard Decl."), ¶8. |

**Moving Party's Response:**
Defendant has not disputed that he possessed a book of credit cards and signed checks for Zen Mobile Media, Inc.

| Paragraph 34(b) | Admit that Doron owns and uses |
|---|---|
| Alon Nottea, Roi Reuveni, and Motti Nottea, Igor Latsanovski, CalEnergy, Inc., and Chargeback Armor, Inc. stated that Doron Nottea sent and received emails using the email account dornon@doron.us. Exs. 910 ¶ 257; 911¶ 257; 913 ¶ 257; 914 ¶ 257; 915¶ 257; 917 ¶ 257. | the email address of doron@doron.us. Deny that hearsay evidence can be used by the FTC to prove any alleged fact. |

**Moving Party's Response:**
Defendant has not disputed that he owns and uses the email address doron@doron.us.

| Paragraph 34(b)(i) | Admit. |
|---|---|
| Doron Nottea sent and received emails from the email address globalmediausa@gmail.com. Exs. 942; 943; 52. | Doron does not recall ever seeing Ex. 52 prior to this litigation. Doron Decl., ¶44. |

**Moving Party's Response:**

| | |
|---|---|
| Defendant has not disputed that he used the email address globalmediausa@gmail.com. | |
| Paragraph 34(b)(ii)<br><br>Doron Nottea sent and received email from the email address xposedinc@gmail.com. Ex. 551 at 109:15-109:22 | Admit. |
| **Moving Party's Response:**<br><br>Defendant has admitted that he sent and received email from the email address xposedinc@gmail.com. | |
| Paragraph 34(c)<br><br>Chargeback Armor, Inc. admitted that Doron Nottea sent and received messages using the Skype account name Accounting818. Ex. 917 ¶ 258 | Objection: hearsay, lack of foundation. |
| **Moving Party's Response:**<br><br>Defendant has not disputed the content of this statement.  Plaintiff's response to Defendant's evidentiary objections are found in Plaintiff FTC's Response to Defendant Roi Reuveni, Alon Nottea, and Doron Nottea's Request for Evidentiary Rulings on Plaintiff's Evidence in Support of Motion for Summary Judgment (hereinafter, "Plaintiff's Evidentiary Response"). | |
| Paragraph 34(d)<br><br>Doron Nottea owned Corporate Defendants that participated in the common enterprise. | Objection: the terms "common enterprise" and "participated" which are vague and ambiguous, lack of foundation, assumes facts not in evidence.<br><br>Deny that Doron had any ownership interest in any entity defendant other than Secured Commerce, LLC. Doron Decl., ¶¶16, 28; Declaration of Alon Nottea ("Alon Decl"), ¶11. |
| **Moving Party's Response:**<br><br>Defendant Doron Nottea admitted that he was an owner of Secured Commerce, LLC. Defendant Doron Nottea disputed that he owned any other entity defendant in this lawsuit besides Secured Commerce, LLC.<br><br>Plaintiff disputes the contention that Doron Nottea did not own any other entity defendant in this lawsuit besides Secured Commerce, LLC.  Other than Doron and Alon Nottea's self-serving conclusory declarations, Defendant failed to | |

provide any evidence to rebut Plaintiff's evidence. A former employee of both BunZai and Pinnacle, testified that Doron Nottea held himself out as the owner of both BunZai and Pinnacle. Ex. 554 at 65:20-66:7; 86:17-87:7. An individual emailed Doron Nottea "want[ing] to sell cosmetics on [Nottea's] distribution channel." Ex. 35. Alon Nottea emailed Doron Nottea a profit spreadsheet of BunZai and stated they needed to go through it together. Ex. 518. Doron Nottea provided and received payroll reports for Bunzai. Ex. 544. Doron Nottea was apprised of incorporation documents relating to both BunZai and Pinnacle. *See* Exs. 299; 343. Doron Nottea was apprised of incorporation documents for other Corporate Defendants as well. Exs. 41; 374; 505. In initial structuring decisions relating to the common enterprise, Doron Nottea was directly involved with Alon Nottea and Kristopher Bond in determining the enterprise's needs. Ex. 483. David Davidian emailed Alon Nottea, Doron Nottea, and Kristopher Bond regarding further consultations in structuring the enterprise. Ex. 483.

Defendant admitted that he maintained financial information related to his "clients." Dkt. 398-2 at 7 ¶ 27. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9. The financial information that he maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters. Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36. He admitted that he often maintained blank checks, credit cards, deposit stamps, and other banking materials for his clients. Dkt. 398-2 at 7 ¶29. He also admitted that he reviewed and prepared spreadsheets related to profits, losses, expenses or other financial matters. Dkt. 398-2 at 7 ¶31.

| | |
|---|---|
| Paragraph 34(d)(i)<br><br>Andrew Stanley, a former employee of both BunZai and Pinnacle, testified that Doron Nottea held himself out as the owner of both BunZai and Pinnacle. Ex. 554 at 65:20-66:7; 86:17-87-7; *see also* Exs. 35; 43; 544 | Objection: hearsay, lack of foundation, irrelevant lack of personal knowledge and speculation.<br><br>Assumes facts not in evidence as Exs. 35 and 43 do not pertain to Doron holding himself out as owner of BunZai or Pinnacle.<br><br>Deny that Doron held himself out as the owner of BunZai or Pinnacle. Doron Decl., ¶¶11-12. |

**Moving Party's Response:**
Defendant did not dispute that a former employee testified that Doron held himself out as an owner of BunZai and Pinnacle. Ex. 554 at 65:20-66:7; 86:17-

87:7.  Exhibit 35 is an email addressed to Doron in which the sender states "they want to sell cosmetics on your distribution channel." Other than a self-serving conclusory declaration, Defendant failed to provide any evidence to substantiate his statement.

Defendant admitted that he maintained financial information related to his "clients." Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters.  Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36. He admitted that he often maintained blank checks, credit cards, deposit stamps, and other banking materials for his clients. Dkt. 398-2 at 7 ¶29.  He also admitted that he reviewed and prepared spreadsheets related to profits, losses, expenses or other financial matters.  Dkt. 398-2 at 7 ¶31.

| Paragraph 34(d)(ii)<br><br>An individual emails Doron Nottea "want[ing] to sell cosmetics on [Nottea's] distribution channel." Ex. 35 | Objection: hearsay, irrelevant, lack of foundation.<br><br>Deny that Doron wanted to or in fact did, sell cosmetics over the internet. Doron Decl., ¶43. |
|---|---|
| **Moving Party's Response:**<br>Defendant did not dispute that an individual emailed him "want[ing] to sell cosmeting on [Nottea's] distribution channel."  Other than his self-serving conclusory declaration, Defendant fails to provide any evidence to substantiate his statement. | |
| Paragraph 34(d)(iii)<br><br>Stephan Bauer appeared to inform Nottea that he can use SBM Management, Inc. for Nottea's marketing "hard core online trial and offers biz." Ex. 43 | Objection: speculation; irrelevant. The selling of any "hard core" items refers to the adult content business of Doron only. Doron Decl., ¶40. |
| **Moving Party's Response:**<br>As the email indicates, Doron was involved in "hard core online trial and offers biz."  Ex. 43. | |
| Paragraph 34(d)(iv)<br><br>Alon Nottea emails Doron Nottea profit spreadsheet of BunZai and states they need to go through it together. Ex. | Objection: compound.<br><br>Admit that possessing or preparing spreadsheets were a function of Doron's bookkeeping services. |

PLAINTIFF'S RESPONSE TO DEFENDANT DORON NOTTEA'S STATEMENT OF GENUINE DISPUTES

| 518 | Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
|---|---|

**Moving Party's Response:**

Defendant Doron Nottea does not dispute that Alon Nottea emailed him a profit spreadsheet of BunZai and states that they need to go through it together. Ex. 518.  Defendant admits that as part of his bookkeeping services he possessed and prepared spreadsheets for his clients. Dkt. 398-2 at 31.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| Paragraph 34(d)(v)<br>Doron Nottea provided and received payroll reports for Bunzai. Ex. 544 | Admit that providing and receiving payroll reports were a function of Doron's bookkeeping services. Doron Decl., ¶32; Alon Decl., ¶11; Howard Decl., ¶8. |
|---|---|

**Moving Party's Response:**

Defendant does not dispute that he provided and received payroll reports for BunZai. Ex. 544.   Defendant admits that part of his "bookkeeping" services included providing and receiving payroll reports for his clients. Dkt. 398-2 at 32.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| Paragraph 34(d)(vi)<br>Doron Nottea was apprised of incorporation documents relating to both BunZai and Pinnacle. *See* Exs. 299; 343 | Admit that receiving corporate documents was a function of Doron's bookkeeping services. Doron Decl., ¶34; Alon Decl., ¶11; Howard Decl., ¶8.<br><br>Doron does not recall ever seeing Ex. 343 prior to this litigation. Doron Decl., ¶44. |
|---|---|

**Moving Party's Response:**

Defendant does not dispute that he was apprised of incorporation documents relating to both BunZai and Pinnacle. *See* Exs. 299; 343.  Defendant admits that as part of his bookkeeping services included receiving corporate documents for his clients. Dkt. 398-2 at 32.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| Paragraph 34(d)(vii)<br>Doron Nottea was apprised of incorporation documents for other Corporate Defendants as well. Exs. 41; 374; 505 | Objection: vague and ambiguous as to the terms "apprised", "other Corporate Defendants" and "as well".<br><br>Exs. 374 and 501 were not attached to the documents submitted by the FTC. |
|---|---|

| | Ex. 41 does not identify any entity relevant to this matter. |
|---|---|

**Moving Party's Response:**

Ex 374 was filed with Dkt. 353-18 at 2. Plaintiff does not cite to Ex. 501 in its Uncontroverted Facts. Plaintiff cites to Ex. 505 which can be found at Dkt. 353-19 at 62. Ex. 41 references a "DSA." Ex. 41-2 DSA Holdings, Inc. is one of the Corporate Defendants in this matter. Dkt. 235 at 8 ¶11. Defendant Doron Nottea admitted in his declaration that his "bookkeeping" services included receiving corporate documents for his clients. Dkt. 398-2 at 32. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| Paragraph 34(d)(viii)<br><br>In initial structuring decisions relating to the common enterprise, Doron Nottea was directly involved with Alon Nottea and Kristopher Bond in determining the enterprise's needs. Ex. 483 | Objection: compound, speculation and vague and ambiguous as to the terms "structuring" "enterprise".<br><br>The email does not identify an entity that is related to this matter.<br><br>Deny that Doron was involved in determining any needs of the alleged enterprise. Doron Decl., ¶7; Alon Decl., ¶¶8, 15; Declaration of Roi Reuveni ("Reuveni Decl.") ¶4. |
|---|---|

**Moving Party's Response:**

Other than self-serving conclusory declarations, Defendant fails to provide any evidence to support his contention. As the evidence shows, Doron was present during a meeting with David Davidian, the CPA for many of the Corporate Defendant. Ex. 483. In addition to being sent to Doron@doron.us, the email was sent to Alon@bunzaimedia.com and Kristopher@bunzaimedia.com. Ex. 483. Mr. Davidian recommends that they seek professional help for tax planning and "business structuring." *Id.*

| Paragraph 34(d)(ix)<br>David Davidian emailed Alon Nottea, Doron Nottea, and Kristopher Bond regarding further consultations in structuring the enterprise. Ex. 483 | Objection: vague and ambiguous as to the term "enterprise."<br><br>Deny that Doron was involved in structuring the enterprise or that the exhibit supports the conclusion as stated by the FTC. Doron Decl., ¶7. |
|---|---|

**Moving Party's Response:**

Other than self-serving conclusory declaration, Defendant fails to provide any evidence to support his contention. As the evidence shows, Doron was

present during a meeting with David Davidian, the CPA for many of the Corporate Defendant. Ex. 483. In addition to being sent to Doron@doron.us, the email was sent to Alon@bunzaimedia.com and Kristopher@bunzaimedia.com. Ex. 483.   Mr. Davidian recommends that Alon, Doron, and Kristopher seek professional help for tax planning and "business structuring." *Id.*

| Paragraph 34(e)  Doron Nottea managed employees of the common enterprise. | Deny. Doron did not manage any employees other than the employees of his adult business. Doron did work with other employees who also did bookkeeping functions. Doron Decl., ¶13; Alon Decl., ¶¶8, 11 and 15; Declaration of Randi R. Geffner ("Geffner Decl.") ¶2. |
|---|---|

**Moving Party's Response:**

Defendant Doron Nottea admits that he worked with other employees who also did bookkeeping functions.  Defendant Doron Nottea disputes that he managed employees of the common enterprise.

Plaintiff disputes the contention that Doron Nottea did not manage BunZai and Pinnacle employees.  Other than Doron and Alon Nottea's self-serving conclusory declarations, Defendant failed to provide any evidence to rebut Plaintiff's evidence showing Doron Nottea's management of these companies. Defendants did not rebut evidence showing Leor Arazy, Pinnacle and BunZai's human resources manager, included Doron Nottea on an email sending out a salary report by department for Pinnacle. Ex. 38. Defendants did not rebut evidence showing Leor Arazy sending Doron Nottea Pinnacle's loan policy and requesting that he let her know if he wants any changes. Ex. 84. Defendants did not rebut evidence showing Doron Nottea receiving payroll information for some of the Corporate Defendants. Exs. 345; 346; 353. Defendants did not rebut evidence of Defendant Paul Medina testifiying that he reported to Doron's employees or assistants for anything financially related for the various Corporate Defendants. Ex. 946 at 28:6-28:13; Ex. 946 at 27:8-27:21. Defendants did not rebut evidence showing Paul Medina emailing Doron Nottea a list of current merchant accounts selling AuraVie. *See* Ex. 384. Defendants did not rebut evidence of Defendant Medina testifying that he provided Defendant Doron Nottea with commission calculations to pay the straw "owners" of the various Corporate Defendants. Exs. 946 at 44:10-20; *see* Ex. 166.

At his deposition, Defendant Doron Nottea only identified setting up payroll and paying vendors as parts of his bookkeeping duties.  Ex. 551 at 47:15-49:2.  After being confronted with evidence against him, he changed his story to

include maintaining financial information related to his "clients."  Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters.  Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36. He admitted that he often maintained blank checks, credit cards, deposit stamps, and other banking materials for his clients. Dkt. 398-2 at 7 ¶29.  He also admitted that as a "bookkeeper" he reviewed and prepared spreadsheets related to profits, losses, expenses or other financial matters.  Dkt. 398-2 at 7 ¶31.

| Paragraph 34(e)(i) Leor Arazy, human resources manager for Pinnacle and BunZai, included Doron Nottea on an email sending out a salary report by department for Pinnacle. Ex. 38 | Admit that Doron received salary reports as a function of his bookkeeping services. Doron Decl., ¶32; Alon Decl., ¶11; Howard Decl., ¶8. |
|---|---|

**Moving Party's Response:**
    Defendant does not dispute that Leor Arazy, human resources manager for Pinnacle and BunZai, included Doron Nottea on an email sending out a salary report by department for Pinnacle. Ex. 38 At his deposition, Defendant Doron Nottea only identified setting up payroll and paying vendors as parts of his bookkeeping duties.  Ex. 551 at 47:15-49:2. After being confronted with the evidence, he now admits that part of his "bookkeeping" services included receiving salary reports for his clients. Dkt. 398-2 at 8 ¶32. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| Paragraph 34(e)(ii) Leor Arazy sent Doron Nottea the company's paycheck advance policy and requests that he let her know if he wants any changes. Ex. 84 | Admit that Doron received loan polices as a function of his bookkeeping services. Doron Decl., ¶32; Alon Decl., ¶11; Howard Decl., ¶8. |
|---|---|

**Moving Party's Response:**
    Defendant does not dispute that Leor Arazy sent him the company's paycheck advance policy and requested that he let her know if he wanted any changes. Ex. 84. Defendant admits that he received loan polices for his clients. Dkt. 398-2 at 8 ¶32. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| | |
|---|---|
| Paragraph 34(e)(iii)<br><br>Doron Nottea received payroll information for Corporate Defendants. Exs. 345; 346; 353 | Admit that Doron received payroll information as a function of his bookkeeping services. Doron Decl., ¶¶27, 32; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Moving Party's Response:**<br><br>Defendant does not dispute that Leor Arazy sent him the company's paycheck advance policy and requests that he let her know if he wants any changes. Ex. 84. Defendant admits that he received payroll information for his clients. Dkt. 398-2 at 8 ¶32.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9. | |
| Paragraph 34(e)(iv)<br><br>Doron Nottea sent "new employee" information for shell corporations to CPA David Davidian. Ex. 433 | Objection: vague and ambiguous, and argumentative, as to the term "shell corporations".<br><br>Ex. 433 was not sent to Doron, as stated by the FTC.<br><br>Possessing employee information was a function of Doron's services as a bookkeeper. Doron Decl., ¶¶27, 33; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Moving Party's Response:**<br><br>The FTC's uncontroverted fact stated that Doron Nottea "sent" information to the CPA.  Dkt. 353-2 at 32.  At his deposition, Defendant Doron Nottea only identified setting up payroll and paying vendors as parts of his bookkeeping duties.  Ex. 551 at 47:15-49:2.  After being confronted with the evidence, he now admits that his "bookkeeping" services included possessing employee information for his clients. Dkt. 398-2 at 7-8 ¶¶ 27, 33.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9. | |
| Paragraph 34(e)(v)<br><br>Defendant Paul Medina testified in his deposition that he reported to Doron's employees or assistants for anything financially related for the various Corporate Defendants. Ex. 946 at 28:6-28:13; Ex. 946 at 27:8-27:21 | Objection: hearsay, lack of foundation, vague.<br><br>Deny that Doron had any employees, yet Doron did work with others who also performed bookkeeping functions. Admit that Doron possessed financial information as a function of his bookkeeping services. Doron Decl., ¶ 13; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Moving Party's Response:** | |

Defendant did not dispute that Defendant Paul Medina testified in his deposition that he reported to Doron's employees or assistants for anything financially related for the various Corporate Defendants. Ex. 946 at 28:6-28:13; Ex. 946 at 27:8-27:21.  Defendant admits that his bookkeeping services included possessing financial information for his clients. Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| | |
|---|---|
| Paragraph 34(e)(vi)<br><br>Paul Medina emailed Doron Nottea a list of current merchant accounts selling AuraVie. *See* Ex. 384 | Admit that Doron possessed information relating to merchant accounts as a function of his bookkeeping services. Doron Decl., ¶¶27, 35; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant did not dispute that Paul Medina emailed Doron Nottea a list of current merchant accounts selling AuraVie. *See* Ex. 384.  Defendant admits possessing information relating to merchant accounts for his clients. Dkt. 398-2 at 7-8 ¶¶ 27. 35.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| | |
|---|---|
| Paragraph 34(e)(vii)<br><br>Former employees Nastassia Yalley and Philip Camerino were Doron's "assistants." Ex. 946 at 27:8-27:21 | Objection: hearsay and lack of foundation.<br><br>Non-Defendants Nastassia Yalley and Philip Camerino performed bookkeeping services prior to and during the time that Doron performed bookkeeping functions., Doron Decl., ¶14; Alon Decl., ¶11. |

**Moving Party's Response:**

Defendant did not dispute or remained silent that Paul Medina testified that Nastassai Yalley and Phillip Camerino were Doron's assistants.  Doron Nottea admitted that Nastassia Yalley and Philip Camerino performed bookkeeping services prior to and during the time that Doron performed bookkeeping functions. Dkt. 398-5, at 7; see Dkt. 398-5, at 7 (Doron did work with others who also performed bookkeeping functions).

| | |
|---|---|
| Paragraph 34(e)(viii)<br><br>Defendant Medina also provided Defendant Doron Nottea with commission calculations to payment the straw "owners" of the various Corporate | Objection, vague and ambiguous as to the term "straw owners", argumentative. Deny that payments were made.<br><br>Admit that Doron possessed |

| | |
|---|---|
| Defendants, who were paid. Exs. 946 at 44:10-20; 166 | payment information from merchant accounts as a function of his bookkeeping services. Doron Decl., ¶¶27, 35; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant does not deny that Defendant Medina provided him with commission calculations to pay the straw "owners" of the various Corporate Defendants. Exs. 946 at 44:10-20; 166. Defendant admits to possessing payment information from merchant accounts of his clients. Dkt. 398-2 at 7-8 ¶¶ 27, 35. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| | |
|---|---|
| Paragraph 34(e)(ix) | Admit that Doron possessed information regarding merchant accounts as a function of his bookkeeping services. Doron Decl., ¶¶27, 35; Alon Decl., ¶11; Howard Decl., ¶8. |
| Nastassia emailed Defendants Doron Nottea and Paul Medina a list of merchant accounts associated with BunZai. Ex. 546 | |

**Moving Party's Response:**

Defendant does not deny that Nastassia emailed Doron Nottea and Paul Medina a list of merchant accounts associated with BunZai. Ex. 546.  At his deposition, Defendant Doron Nottea only identified setting up payroll and paying vendors as parts of his bookkeeping duties.  Ex. 551 at 47:15-49:2. Defendant admits to possessing information regarding merchant accounts of his clients. Dkt. 398-2 at 7-8 ¶¶ 27. 35.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| | |
|---|---|
| Paragraph 34(f) | Objection: vague and ambiguous as to the terms "day-to-day higher level issues", lack of foundation. |
| Defendant Alon Nottea also kept Doron apprised of day-to-day higher level issues concerning the enterprise. | Deny. Alon Decl., ¶11. |

**Moving Party's Response:**

Defendant did not deny or remained silent that Defendant Alon Nottea  kept Doron apprised of day-to-day higher level issues concerning the enterprise. Defendant admits to maintaining financial information related to his "clients." Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking

information, merchant account information, corporate structure information, and related matters. Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36. He admitted that he often maintained blank checks, credit cards, deposit stamps, and other banking materials for his clients. Dkt. 398-2 at 7 ¶29. He also admitted that as a "bookkeeper" he reviewed and prepared spreadsheets related to profits, losses, expenses or other financial matters. Dkt. 398-2 at 7 ¶31.

| | |
|---|---|
| Paragraph 34(f)(i)<br>    Meetings and discussions relating to negotiating Canadian shipping rates sent to Doron's email, xposedinc@gmail.com. Ex. 174 | Admit that Doron used the email xposedinc@gmail.com for his adult content business. Doron Decl., ¶37.<br>    Deny that Doron attended meetings or had discussions regarding Canadian shipping rates. Doron Decl., ¶6. |

**Moving Party's Response:**
    Defendant Doron Nottea admits that he used the email xposedinc@gmail.com. He claims he only used the email for his adult content business. He also denies that he attended meetings or had discussions regarding shipping rates. Other than his self-serving conclusory declaration, Defendant does not provide any evidence to substantiate his claim. As the email shows, Defendant Paul Medina sent an email to xposedinc@gmail.com relating to USPS rated to Canada. Ex. 174.

| | |
|---|---|
| Paragraph 34(f)(ii)<br>    Discussions relating to resolving IRS audits and workers' compensation audits. Exs. 350; 376 | Objection, vague and ambiguous. Receiving information regarding any payables was a function of Doron's bookkeeping services. Doron Decl., ¶27; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**
    Defendant does not deny he had discussions relating to resolving IRS audits and workers' compensation audits. Exs. 350; 376. Defendant admits to receiving information regarding any payables of his clients. Dkt. 398-2 at 7 ¶ 27. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| | |
|---|---|
| Paragraph 34(f)(iii)<br>    Operationally, Alon Nottea placed Doron Nottea in charge of many aspects of managing the Indian call centers associated with the scheme, telling his Indian counterpart that | Objection: argumentative, lack of foundation.<br>    Deny. Ex. 579 does not support what the FTC claims it does.<br>    Deny that Doron knew of, managed or performed any services |

| "Doron will manage the corporation and DBA Setup as well as accounting, disbursement of funds back to India." Ex. 579 | with an Indian call center or prepared a DBA. Doron Decl., ¶39; Alon Decl., ¶¶8, 15. |
|---|---|

**Moving Party's Response:**

Evidence shows that Prashant sent an email to Alon which states that an employee of OPK would "be in constant touch with you and Doron to have this set up and maintain from here on." Ex. 579-3.  In an email from Alon to an employee of OPK, he states "Doron will manage the corporation and DBA Setup as well as accounting, disbursement of funds back to India, based on your invoices." Ex 579-1.  The website for OPKe Services shows that their services include order taking, customer service, and answering service. Ex. 1000.

| Paragraph 34(f)(iv)<br><br>    Doron forwarded contractual agreements such as the confidentiality agreements required to start negotiations for third party services. Ex. 271 | Objection: Ex. 271 does not support what the FTC claims it does, vague and ambiguous.<br><br>    Deny. |
|---|---|

**Moving Party's Response:**

Ex. 271 is an email from Doron to Alon with a confidentiality agreement attached.  Ex. 271.  The confidentiality agreement is between Bonzai Media and Pharmatronix Medical Industries, Inc. Ex. 271-2.  The agreement contemplates a possible business transaction between the parties. Ex. 271-2.

| Paragraph 34(f)(v)<br><br>    Doron even managed basic documentation such as insurance documents relating to minor advertising engagements with third parties. Ex. 308 | Objection: Ex. 308 does not support what the FTC claims it does, argumentative, vague and ambiguous as to the terms "such as" and "third parties".<br><br>    Possessing insurance information was a function of Doron's bookkeeping functions. Doron Decl., ¶¶27, 35; Alon Decl., ¶11; Howard Decl., ¶8. |
|---|---|

**Moving Party's Response:**

Defendant does not deny Doron managed basic documentation such as insurance documents relating to minor advertising engagements with third parties. Ex. 308.  Defendant admits that his "bookkeeping" services included possessing insurance information of his clients. Dkt. 398-2 at 7-8 ¶¶ 27, 35.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3 ¶9.

| Paragraph 34(f)(vi) | Objection Ex. 333 does not |
|---|---|
| Doron received an email about renewing P.O. Box relating to Dellure. Ex. 333 | support what the FTC claims it does. |
| | Paying bills was a function of Doron's bookkeeping functions. Doron Decl., ¶21; Alon Decl., ¶11; Howard Decl., ¶8. Doron does not recall ever seeing Ex. 333 prior to this litigation. Doron Decl., ¶44. |

**Moving Party's Response:**

Ex. 333 does support the FTC's claim.  Ex. 333 is an email from david@mediaurge.com to globalmediausa@gmail.com and accounting818@gmail.com.  Ex. 333-1.  In the email it states "[a]round the middle of April 2014, we need to renew the Dellure PO Box." Ex. 333-1.

| Paragraph 34(g) | Objection: argumentative., lack |
|---|---|
| Despite attempting to keep Alon Nottea and his own name off financial management records, evidence makes clear Doron Nottea managed or controlled numerous accounts associated with the common enterprise, including either making payments or providing permission to make payments on behalf of several of the entities. Exs. 466; 485; *see also, e.g.*, Exs. 292, 294, 296. 479 (setting up wire transfers), 488. | of foundation, speculation, vague and ambiguous and compound. |
| | The documents do not support what the FTC claims that they do. |
| | Deny. Doron Decl., ¶ 30; Alon Decl., ¶¶8, 15. |

**Moving Party's Response:**

Plaintiff disputes Defendant's contention that the documents do not support the claims. Ex. 466 is an email from Doron advising that all invoices be sent to accounting@pinlogistics.com and never to him personally. Ex. 485 is an email from Doron in which he states "I sent you 2k today the check will come from Agoa Holdings please DON'T write Alon's Name on it."  In his self-serving conclusory declaration, Doron admitted that as a "bookkeeper" he maintained information about merchant accounts.  Dkt. 398-2 at 7 ¶27.  He admitted that he possessed credit cards, blank checks, and related banking materials for many clients to facilitate the payment of certain expenses.  Dkt. 398-2 at 7 ¶29. He also admitted that he received and reviewed merchant account information.  Dkt. 398-2 at 8¶35.

| Paragraph 34(g)(i) | Objection: argumentative. |
|---|---|

| | |
|---|---|
| Doron adamantly instructed that "All invoices only to accounting@pinlogistics.com never to me!" Ex. 466 | Admit that invoices should be addressed to the responsible party, not the bookkeeper. Doron Decl., ¶30. |

**Moving Party's Response:**
Defendant does not dispute the substance of the statement.

| | |
|---|---|
| Paragraph 34(g)(ii)<br><br>Doron instructed an individual "please DON'T write Alon's Name on it" regarding a check from shell company Agoa Holdings. Ex. 485 | Objection: the document speaks for itself, lack of foundation and vague and ambiguous as to the term "shell company", argumentative. Payments on invoices shall be paid to the party who is entitled to the money only. Doron Decl., ¶ 30. |

**Moving Party's Response:**
Defendant did not dispute the substance of the statement.

| | |
|---|---|
| Paragraph 34(g)(iii)<br><br>Doron was responsible for arranging wire transfers relating to the common enterprise. Ex. 497 | Objection: argumentative and lack of foundation as to the term "common enterprise".<br><br>Ex. 497 does not relate to wire transfers nor does it address what the FTC claims it does.<br><br>Doron does not recall ever seeing Ex. 497 prior to this litigation. Doron Decl., ¶44. |

**Moving Party's Response:**
Ex. 497 should be Ex. 479, which shows Doron's involvement in arranging wire transfers.

| | |
|---|---|
| Paragraph 34(g)(iv)<br><br>Numerous "books" each holding dozens of credit cards were found in Doron's possession, located in his office, as well as deposit stamps for more than 18 entities. Dkt. #120 at 13, 70-71, 74 | Objection: Dkt. #120, the Receiver's report is hearsay and may not be used to support any alleged facts.<br><br>Admit that credit cards, deposit stamps and blank checks were in Doron's possession as they were used to pay bills when necessary as a function of his bookkeeping services. Doron Decl., ¶29; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**
Defendant does not dispute that numerous "books" each holding dozens of

credit cards were found in Doron's possession, located in his office, as well as deposit stamps for more than 18 entities. Dkt. 120 at 13, 70-71, 74.  Defendant admits that credit cards, deposit stamps and blank checks were in Doron's possession as as part of his bookkeeping services for his clients. Dkt. 398-2 at 7 ¶29.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| | |
|---|---|
| Paragraph 34(g)(v)<br><br>Books of deposit slips or checks for at least 35 entities were also located in Doron's office. Dkt. #120, at 13 | Objection: Dkt. #120, the Receiver's report is hearsay and may not be used to support any alleged facts.<br><br>Admit that credit cards, deposit stamps and blank checks were in Doron's possession as they were used to pay bills when necessary as a function of his bookkeeping services. Doron Decl., ¶29; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant does not dispute that books of deposit slips or checks for at least 35 entities were also located in Doron's office. Dkt. #120, at 13.  Defendant admits that credit cards, deposit stamps and blank checks were in Doron's possession as part of his bookkeeping services for his clients. Dkt. 398-2 at 7 ¶29.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| | |
|---|---|
| Paragraph 34(g)(vi)<br><br>He also kept RSA devices used to make electronic funds transfers for at least eight bank accounts. Dkt. #120 at 13 | Objection: Dkt. #120, the Receiver's report is hearsay and may not be used to support any alleged facts.<br><br>Admit that credit cards, deposit stamps and blank checks were in Doron's possession as they were used to pay bills when necessary as a function of his bookkeeping services. Doron Decl., ¶29; Alon Decl., ¶11; Howard Decl., ¶8. |
| Paragraph 34(g)(vii)<br><br>Doron Nottea maintained personal information including copies of other Individual Defendants' driver licenses and signature block for using new bank accounts, as well as access to | Admit that certain pre-signed blank checks were in Doron's possession as the checks were used to pay certain bills as a function of his bookkeeping services.<br><br>Doron Decl., ¶29; Alon Decl., |

| | |
|---|---|
| and used blank pre-signed checks for numerous Corporate Defendants.<br>　　　Ex. 536; *see also*, *e.g,* Exs. 49; 437 | ¶11;Howard Decl., ¶8.<br>　　　The balance of the statement is denied as the exhibits referred to by the FTC do not support the allegations. |
| **Moving Party's Response:**<br>　　　Ex. 536 includes a copy of Stephan Bauer's driver license.  Ex. 536-1. Doron sent this information to David Davidian in connection with SBM Management, Inc., Ex. 536-1. Ex. 49 are CalEnergy, Inc., presigned checks. | |
| Paragraph 34(g)(viii)<br>　　　Doron Nottea possessed blank, presigned checks for CalEnergy, Inc. in his office. Dkt. 120, at 13; *see also* Ex. 49 | Objection: Dkt. #120, the Receiver's report is hearsay and may not be used to support any alleged facts.<br>　　　Admit. |
| **Moving Party's Response:**<br>　　　Defendant admits the substance of the statement. | |
| Paragraph 34(g)(ix)<br>　　　Former employee Andrew Stanley, whose work for several years consisted of responding to chargebacks for the common enterprise, stated that Doron Nottea controlled and oversaw many merchant accounts associated with BunZai, including reviewing complex issues such as reserve rates relating to such merchant accounts. Exs. 173; 349; 430; *see* Ex. 554 at 86:17-87:7 | Objection: hearsay, lack of foundation, speculation, compound and argumentative.<br>　　　Exhibit 173 and 349 do not refer to, nor were they sent to, Doron,<br>　　　In addition, the citations to the exhibits do not support the allegation. |
| **Moving Party's Response:**<br>　　　Andrew Stanley testified that the merchant accounts were owned by Doron and Alon.  Ex. 554 at 85:10-86:5.  In addition, he was included on several emails involving merchant accounts.  Exs. 78; 173; 324; 329; 349; 383; 384; 430; 518; 546.  Both Exhibits 173 and 349 were undeniably sent to Doron.  Exhibit 173 was sent to doron@doron.us, and Exhibit 349 was sent to "Global Media." | |
| Paragraph 34(g)(x)<br>　　　Doron opened, managed, and controlled the merchant accounts and other financial accounts used by the common enterprise, and was even apprised of negotiations with potential | Objection: hearsay, argumentative, speculation, lack of foundation. The exhibits are not what the FTC claims they are.<br>　　　Information relating to financial matters was a function of Doron's |

| | |
|---|---|
| payment processors by his brother, Alon. Exs. 64; 78; 88; 167; 383; 467 | services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8.<br><br>Deny that Doron negotiated nor was involved with potential payment processors with his brother. Alon Decl., ¶11. |

**Moving Party's Response:**

Plaintifff disputes Defendant's contention that the documents do not support Plaintiff's statement.  Exhibit 64 is an email from Igor to Doron directing him to "make payment please from SBM."  Exhibit 78 contains a statement from Doron stating, "I need a list please of all our merchant accounts active."  Exhibit 88 is an email titled "Paypal payments from auravie.com."  Exhibit 167 is an email with an accounting worksheet attachment.  Exhibit 467 is an email from Doron to Wells Farod requesting "Open Acct under Igor he already has WF Relationship." Doron admitted to possessing merchant account information related to his clients. Dkt. 398-2 at 7 ¶ 27. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| | |
|---|---|
| Paragraph 34(g)(xi)<br>Doron requested that Yalley send him a list of "all our merchant accounts"; Yalley replied with a spreadsheet of all the merchant accounts used by the AuraVie companies. Ex. 78 | Objection: hearsay. Information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant does not dispute that he requested that Yalley send him a list of "all our merchant accounts."  Defendant also does not dispute that Yalley sent him a spreadsheet of all the merchant accounts used by the AuraVie companies. Ex. 78.

| | |
|---|---|
| Paragraph 34(g)(xii)<br>Yalley provided Doron, Alon, and Paul with accounting spreadsheets for the AuraVie businesses. Ex. 167 | Information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant does not dispute that he requested that Yalley provided him, Alon, and Paul with accounting spreadsheets for the AuraVie businesses. Ex. 167.

| | |
|---|---|
| Paragraph 34(g)(xiii)<br>Defendant Latsanovski requested | Financial matters were a function of Doron's services as the bookkeeper. |

| | |
|---|---|
| that Nottea make a payment to an Israeli bank account from SBM Management's bank account. Ex. 64 | Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant does not dispute that Defendant Latsanovski requested that Nottea make a payment to an Israeli bank account from SBM Management's bank account. Ex. 64.

| | |
|---|---|
| Paragraph 34(g)(xiv) <br><br> Yalley sent Doron login information concerning accessing payments made to AuraVie.com. Ex. 88 | Information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant does not dispute that Yalley sent Doron login information concerning accessing payments made to AuraVie.com. Ex. 88.

| | |
|---|---|
| Paragraph 34(h) <br><br> Doron handled accounting or bookkeeping for the common enterprise | Objection: argumentative, lack of foundation, assumes facts not in evidence that there was a common enterprise, vague and overbroad. <br><br> Admit that Doron performed bookkeeping services for some, but not all, of the Corporate Defendants. |

**Moving Party's Response:**

Defendant admits that Doron performed bookkeeping services for some of the Corporate Defendants. Defendant admits to maintaining financial information related to his "clients." Dkt. 398-2 at 7 ¶ 27. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9. The financial information that he maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters. Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36. He admitted that he often maintained blank checks, credit cards, deposit stamps, and other banking materials for his clients. Dkt. 398-2 at 7 ¶29. He also admitted that as a "bookkeeper" he reviewed and prepared spreadsheets related to profits, losses, expenses or other financial matters. Dkt. 398-2 at 7 ¶31.

| | |
|---|---|
| Paragraph 34(h)(i) <br><br> Doron oversaw the finances of the common enterprise, calculating the | Objection: compound, assumes facts not in evidence that Doron managed the enterprises various |

| companies' profits and losses and managing the enterprise's various entities and merchant accounts. *See* Exs. 21; 46; 47; 51; 52; 58; 59; 335; 337; 338; 339; 340; 391; 392; 393; 399; 405; 406; 407; 408; 409; 946 at 36:8-36:11 | entities, vague and ambiguous as to the term "oversaw the finances", vague as to what entities to which reference is made.      Assumes facts not in evidence as the exhibits do not state what the FTC says they state.      Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8.      Doron does not recall ever seeing Exs. 46, 52, 58, or 406 prior to this litigation. Doron Decl., ¶44. |
|---|---|

**Moving Party's Response:**

Plaintiff disputes Defendant's contention that evidence does not support its statement.  Defendant does not dispute that Yalley sent Doron login information concerning accessing payments made to AuraVie.com. Ex. 88.

| Paragraph 34(h)(ii)      Defendant Latsanovski openly discussed Doron's "department" in the company he runs with Alon Nottea. Ex. 21 | Objection: vague as to the term "openly", irrelevant, assumes facts not in evidence as Ex. 21 does not state what the FTC claims it states as the email is addressed to Alon and not Doron as it states "Hi Alon" and is signed "Your partner Igor". Doron was never a partner of Igor. Doron Decl., ¶15; Alon Decl., ¶¶8, 15. |
|---|---|

**Moving Party's Response:**

Igor sent the email to Alon and Doron. Ex. 21. In the email, Igor stated "Doron has his Department." Ex. 21.

| Paragraph 34(h)(iii)      Yalley referenced Doron instructing her which toll-free numbers to leave open. Ex. 47 | Objection: irrelevant, assumes facts not in evidence as Ex. 47 does not state what the FTC claims it states. |
|---|---|

**Moving Party's Response:**

Plaintiff disputes Defendant's contention that the document does not state what the FTC claims.  In the email, Yalley wrote, "I spoke with Doron about this, and we're going to keep 10 numbers open." Ex. 47.

| Paragraph 34(h)(iv) | Objection: irrelevant, assumes |
|---|---|
| Alon forwarded Doron an email concerning skincare merchant accounts with EVO and UMS. Ex. 52 | facts not in evidence as Ex. 52 does not state what the FTC claims it states.   Doron does not recall ever seeing Ex. 52 prior to this litigation. Doron Decl., ¶44. |

**Moving Party's Response:**

Plaintiff disputes Defendant's contention that the document does not state what the FTC claims.   Alon Nottea forwarded an email he received from UMS Banking to Paul Medina.  Ex. 52. He copied "Xposed Inc." Ex. 52.  The email contained an attachment "Skin Care Merchants Approved by EVO.xlsx." Ex. 52.

| Paragraph 34(h)(v) | Objection, lack of foundation, |
|---|---|
| An invoice from Secured Commerce to Adageo for the AuraVie landing page shows Doron was involved in the common enterprise's landing page's creation. Ex. 46 | speculation, assumes facts not in evidence.   Deny that Doron was involved in the preparation of an AuraVie landing page. Doron Decl., ¶¶7, 23 and 25. |

**Moving Party's Response:**

Defendant failed to dispute or remained silent as to an invoice from Secured Commerce to Adageo for the AuraVie landing page shows Doron was involved in the common enterprise's landing page's creation. Ex. 46.  Defendant admits he is a 50% shareholder of Secured Commerce, LLC.  Dkt. 398-2 at 2 ¶6. Other than a self-serving conclusory declaration, Defendant failed to provide any evidence to substantiate his claim.

| Paragraph 34(h)(vi) | Objection: vague, speculation, |
|---|---|
| Doron sent Alon what appears to be an affiliate's "advertorial" concerning AuraVie. Ex. 51 | irrelevant, assumes facts not in evidence as Ex. 51 does not state what the FTC claims it states. The email is page 2 of multiple pages that were not attached. |

**Moving Party's Response:**

Plaintiff disputes Defendant's contention that the document does not state what the FTC claims.  Exhibit 51 is an email from Doron to Alon with a link to http://www.totalbeautyanswers.com/auravie.html.  Ex. 51  The website referenced is clearly an advertorial.  Ex. 1001.

| Paragraph 34(h)(vii) | |
|---|---|
| (intentionally left blank) | |

| Paragraph 34(h)(viii) | Objection: argumentative, |
|---|---|
| Paul Medina requested approval | compound, speculation, irrelevant, |

| | |
|---|---|
| from Doron and Defendant Alan Argaman to switch one of the Limelight accounts over to Secured Merchants LLC, a company purportedly owned solely by Alan Argaman. Limelight is the CRM software used for managing the continuity sales aspect of the enterprise. Ex. 59 | assumes facts not in evidence as the email does not state what the FTC claims it states.<br><br>    Deny as any conduct or information relating to merchant accounts were part of Doron's functions as a bookkeeper. Doron Decl., ¶26. |

**Moving Party's Response:**

Defendants fail to dispute or remain silent that Paul Medina requested approval from Doron and Defendant Alan Argaman to switch one of the Limelight accounts over to Secured Merchants LLC, a company purportedly owned solely by Alan Argaman. Limelight is the CRM software used for managing the continuity sales aspect of the enterprise. Ex. 59.

| | |
|---|---|
| Paragraph 34(h)(ix)<br>    Medina testified he believed Doron Nottea was in charge of accounting for the AuraVie companies. Ex. 946 at 36:8-36:11 | Objection: hearsay, lack of foundation, irrelevant as to what Medina believed. |

**Moving Party's Response:**

Defendant did not dispute that Medina testified he believed Doron Nottea was in charge of accounting for the AuraVie companies. Ex. 946 at 36:8-36:11.

| | |
|---|---|
| Paragraph 34(h)(x)<br>    Davidian emailed Doron Nottea the IRS Form W2 for several AuraVie companies. Ex. 338 | Information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant does not dispute or remains silent that Davidian emailed Doron Nottea the IRS Form W2 for several AuraVie companies. Ex. 338.

| | |
|---|---|
| Paragraph 34(h)(xi)<br>    Alon Nottea testified that he asked Doron Nottea to assist him with accounting for the common enterprise and to supervise Nastassia's accounting work for the Corporate Defendants. Ex. 550, at 136:20-138-20, 139:24-140:12 | Objection: vague and ambiguous as to the meaning of "common enterprise", hearsay, assumes facts not in evidence as the exhibits and testimony do not state what the FTC claims it states, compound. Deny that there was a "common enterprise".<br><br>    Information relating to financial matters was a function of Doron's |

| | services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
|---|---|

**Moving Party's Response:**

Plaintiff disputes Defendant's contention that the document does not support the statement.  In his deposition, Alon Nottea testified "Just kind of take a look for me, make sure Nastassia is doing okay. Just, you know, a second pair of eyes on Nastassia's accounting work."

| Paragraph 34(h)(xii) | Objection: Vague and ambiguous |
|---|---|
| Defendant Medina also provided Doron Nottea with information concerning the 1% "commission" payouts—the payments made to the figureheads of the various shell companies for permitting their names to be used to open the accounts—among other financial information for the enterprise. *See also* Exs. 32; 45; 166; Ex. 946 at 44:10-45:15 | as to the terms "shell companies" and "figureheads", overbroad, argumentative, assumes facts not in evidence as the exhibits and testimony do not state what the FTC claims it states, compound. Deny that there was an "enterprise" and "various shell companies".  Information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Plaintiff disputes Defendant's contention that the evidence does not state what the FTC claims.  In his deposition, Defendant Medina stated "I pulled a processing report from Lime Light, and Doron Nottea told me to place a formula saying at the end of the processing add 1 percent to there, but I didn't ask why." Ex. 946 at 44:15-18. He also stated that he would periodically provide Doron with the reports. Ex. 946 at 44:10-45:15.  Defendant admits that he possessed financial information of his clients. Dkt. 398-2 at 7 ¶ 27.  This financial information included commission and other payout information.  *Id.* His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| Paragraph 34(h)(xiii) | Information relating to financial |
|---|---|
| Paul Medina provided Doron Nottea with commission calculations. Ex. 166 | matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant Doron Nottea does not dispute the statement that Paul Medina

provided Doron Nottea with commission calculations. Ex. 166.  Defendant admits that he possessed financial information of his clients. Dkt. 398-2 at 7 ¶ 27.  This financial information included commission and other payout information.  *Id.* His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.

| | |
|---|---|
| Paragraph 34(h)(xiv)<br><br>Paul Medina sent Alon and Doron Nottea a spreadsheet called "US Rebill Die Down.xlsx," which appears to concern the revised expenses for the AuraVie common enterprise as they wound down operations in the United States. Ex. 45 | Objection: argumentative, speculation, irrelevant, assumes facts not in evidence as Ex. 45 does not state what the FTC claims it states.<br><br>Improper lay opinion and calls for expert testimony regarding interpretation of the 17-page spreadsheet.<br><br>Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**
Exhibit 45 is an email from Paul Medina to Doron and Alon.  In the email, Paul Medina sent Alon and Doron Nottea a spreadsheet called "US Rebill Die Down.xlsx."

| | |
|---|---|
| Paragraph 34(h)(xv)<br>Former employee Nastassia Yalley provided monthly "breakdowns" of accounting and expenses for the Corporate Defendants to Doron. *See, e.g.,* Ex. 82; 167; 542; 543; 556, at 33:23-34:1 | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**
Defendant does not dispute that Nastassia Yalley provided monthly "breakdowns" of accounting and expenses for the Corporate Defendants to Doron. *See, e.g.,* Ex. 82; 167; 542; 543; 556, at 33:23-34:1.

| | |
|---|---|
| Paragraph 34(h)(xvi)<br>Doron admitted to active involvement in the bookkeeping of nearly all Corporate Defendants. This list includes: Pinnacle, Ex. 551 at 17:3-17:5; DSA Holdings, Inc., Ex. 551 at | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶ 31; Alon Decl., ¶11; Howard Decl., ¶8. |

| | |
|---|---|
| 17:9-17:11; DMA Media Holdings, Inc., Ex. 551 at 60:14-60:18; SBM Management, Inc., Ex. 551 at 53:9-53:14; Kai Media, Inc., Ex. 551 at 56:21-56:23; Lifestyle Media Brands, Inc., Ex. 551 at 44:13-44:15; Agoa Holdings, Inc., Ex. 551 at 49:3-49:7; Zen Mobile Media, Inc., Ex. 551 at 50:17-50:19; Heritage Alliance Group, Inc., Ex. 551 at 52:12-52:14; Safehaven Ventures, Inc., Ex. 551 at 51:16-51:20; Insight Media, Inc., Ex. 551 at 58:7-58:11; Secured Merchants, LLC, Ex. 551 at 58:23-59:9; Shalita Holdings, Inc., Ex. 551 at 61:2-61:4; Allstar Beauty Products, Inc., Ex. 551 at 61:13-61:17; USM Products, Inc., Ex. 551 at 68:20-68:25 | |
| **Moving Party's Response:** | |
| Defendant does not dispute Plaintiff's contention about his active involvement in the bookkeeping of nearly all Corporate Defendants. Defendant admitted his clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9. Evidence shows Doron's involvement with companies he did not state he performed bookkeeping services. Exs. 49; 397; 551 at 17:9-10; 551 at 68:20-25; 917 ¶ 221. | |
| Paragraph 34(h)(xvii)<br>Chargeback Armor, Inc. admitted that Doron Nottea performed bookkeeping work for Focus Media Solutions, Inc. Ex. 917 ¶ 221 | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Moving Party's Response:** | |
| Defendant does not dispute that Chargeback Armor, Inc. admitted that Doron Nottea performed bookkeeping work for Focus Media Solutions, Inc. Ex. 917 ¶ 221. | |
| Paragraph 34(h)(xviii)<br>Doron Nottea was one of the individuals authorized to receive mail for Chargeback Armor, Inc. Ex. 365-13 | Objection: irrelevant, hearsay. |
| **Moving Party's Response:** | |

PLAINTIFF'S RESPONSE TO DEFENDANT DORON NOTTEA'S
STATEMENT OF GENUINE DISPUTES

27

| | |
|---|---|
| Defendant does not dispute that he was one of the individuals authorized to receive mail for Chargeback Armor, Inc. Ex. 365-13. | |
| Paragraph 34(i)<br><br>Doron Nottea managed the Common Enterprise employees and controlled its business | Objection: vague and ambiguous as to the terms "managed", "common enterprise" and "controlled".<br><br>Deny. Doron Decl., ¶¶11, 12, 14; Alon Decl., ¶¶8, 11, 15; Reuveni Decl., ¶4. |

**Moving Party's Response:**

Plaintiff disputes the contention that Doron Nottea did not manage employees of the Common Enterprise.  Other than Doron, Alon, and Roi's self-serving conclusory declarations, Defendants failed to provide any evidence to rebut Plaintiff's evidence showing Doron Nottea's management of these companies.  Defendants did not rebut evidence showing Leor Arazy, Pinnacle and BunZai's human resources manager, included Doron Nottea on an email sending out a salary report by department for Pinnacle. Ex. 38. Defendants did not rebut evidence showing Leor Arazy sending Doron Nottea Pinnacle's loan policy and requesting that he let her know if he wants any changes. Ex. 84. Defendants did not rebut evidence showing Doron Nottea receiving payroll information for some of the Corporate Defendants. Exs. 345; 346; 353. Defendants did not rebut evidence of Defendant Paul Medina testifying that he reported to Doron's employees or assistants for anything financially related for the various Corporate Defendants. Ex. 946 at 28:6-28:13; Ex. 946 at 27:8-27:21. Defendants did not rebut evidence showing Paul Medina emailing Doron Nottea a list of current merchant accounts selling AuraVie. *See* Ex. 384 Defendants did not rebut evidence of Defendant Medina testifying that he provided Defendant Doron Nottea with commission calculations to pay the straw "owners" of the various Corporate Defendants, who were paid. Exs. 946 at 44:10-20; *see* Ex. 166.

| | |
|---|---|
| Paragraph 34(i)(i)<br><br>Doron Nottea met with an individual to discuss his management plan for the AuraVie business, which included ways to reduce his companies' chargeback levels. Exs. 29; 385 | Objection: speculation, assumes facts not in evidence as Exs. 29 and 385 do not state what the FTC claims they state. Doron never met with individuals to discuss a management plan for the AuraVie business. Doron Decl., ¶13. |

**Moving Party's Response:**

Ex. 29 is an email from Gary Bhasin to Alon and Doron.  In the email, he states "As per my initial conversation with Doron and Paul Medina, I understand that there is some serious need of accurate projections accounting and profitability model for your business." Ex. 29.  He then described the end goals of his work to

include chargeback analysis.  Ex. 29. In an email dated, August 26, 2014, Mr. Bhasin states "Hi Doron, It was a pleasure meeting with you last week." Ex. 385. He then stated "If chargebacks hit 5-10% more, business is in Red. I assume that's what happened. Because of cash coming in frequently, business saw money sitting in bank which seems profit but after you amount the chargebacks, the business is actual loss." Ex. 385.

| | |
|---|---|
| Paragraph 34(i)(ii)<br><br>Emails show that Doron corresponded with a certified public accountant about incorporating various Corporate Defendants and overseeing the initial financials of these corporations. *See* Exs. 553, 299, 302, 343, 364 | Objection: argumentative as to the term "emails show".<br><br>Possessing corporate documents is a function of bookkeeping services. Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. Doron does not recall ever seeing Ex. 343 prior to this litigation. Doron Decl., ¶44. |

**Moving Party's Response:**
Defendant does not dispute that emails show that he corresponded with a certified public accountant about incorporating various Corporate Defendants and overseeing the initial financials of these corporations. *See* Exs. 553, 299, 302, 343, 364.

| | |
|---|---|
| Paragraph 34(i)(iii)<br><br>Doron Nottea and the CPA David Davidian discussed corporate filings, including DSA Holdings, Inc. Ex. 41 | Objection: assumes facts not in evidence as Ex. 41 does not state what the FTC says it states.<br><br>Possessing corporate documents is a function of bookkeeping services. Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**
Ex. 41 references a "DSA." Ex. 41-2.  DSA Holdings, Inc. is one of the Corporate Defendants in this matter.  Dkt. 235, at 8 ¶11.

| | |
|---|---|
| Paragraph 34(i)(iv)<br><br>Doron was provided invoices for "new corporations" including SBM Management, Inc. and CalEnergy, Inc. | Objection: argumentative, vague, assumes facts not in evidence as the email does not state what the FTC claims it states, speculation. |

| | |
|---|---|
| Ex. 397 | Deny that "stand-in owners" or "shell corporations" exist and that an enterprise exists. |

**Moving Party's Response:**

Defendant fails to dispute or remains silent that Doron was provided invoices for "new corporations" including SBM Management, Inc. and CalEnergy, Inc. Ex. 397.

| | |
|---|---|
| Paragraph 34(i)(vi)<br>    Alon Nottea forwarded Doron, as well as Paul Medina and Igor Latsanovski, an email in which Alon informed UMS Bank they intended to wind up their sale of AuraVie products in part due to FTC and credit card regulations. Ex. 60 | Objection: speculation, assumes facts not in evidence as Ex. 60 does not state what the FTC claims it states, irrelevant. |

**Moving Party's Response:**

In the email from Alon to UMS, he states "Due to new compliance regulations that are coming out soon (FTC, VISA, MC), and due to the aggressive marketing nature of these external affiliates/marketers which we have to monitor and police daily. We have decided to stop new Auravie, Dellure, and Miracle face kit, new customer acquisitions." Ex. 60-2. He forwarded this email to Doron, Paul Medina, and Igor Latsanovski. Ex. 60-1.

| | |
|---|---|
| Paragraph 34(i)(vii)<br>    Alon Nottea forwarded Doron an email concerning skin care merchant accounts approved by a payment processing entity. Ex. 329 | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8.<br>    Doron does not recall ever seeing Ex. 329 prior to this litigation. Doron Decl., ¶44. |

**Moving Party's Response:**

Defendant does not dispute that Alon Nottea forwarded him an email concerning skin care merchant accounts approved by a payment processing entity. Ex. 329.

| | |
|---|---|
| Paragraph 34(i)(viii)<br>    David Midgal emailed Doron asking "what you want me to do" concerning "a new PO Box (address) for Dellure"—one of the common | Objection: argumentative, speculation, assumes facts not in evidence as Ex. 331 does not state what the FTC claims it states, vague and ambiguous with regard to the term |

| | |
|---|---|
| enterprise's products. Ex. 331-1 | "common enterprise". Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8.<br><br>Deny that Dellure was one of the common enterprise's products. Doron does not recall ever seeing Ex. 331 prior to this litigation. Doron Decl., ¶44. |

**Moving Party's Response:**

Defendant does not dispute that David Midgal emailed asking "what you want me to do" concerning "a new PO Box (address) for Dellure." Ex. 331-1.

| | |
|---|---|
| Paragraph 34(j)<br><br>Doron Nottea sent a text message from his phone (XXX) XXX-9999 to his email address, xposed@gmail.com, in which he states: Our volume is down to about 350 (100 from lifescript + 250 from uncompliant survey traffic per day...) And even that is a miracle since we can no longer use advertorials for now ... As the lady (pam bondi) in the Florida Atty. Gen. is reviewing every single continuity skincare and diet advertisers in the industry... We are waiting for some more industry news to be released in order to make an executive decision on whether or not to run blogs again... Nevertheless, dawn's and Nancy's attorney is pushing hard ... threatening to file against all corporations and people involved, this creates a very big exposure and risk to our entire entities... Especially now that Nastassia is gone, they will have access to much more personal, private and sensitive information. This is very concerning, and very risky... If you are | Deny. The text message was not sent to, received or seen by Doron. Doron Decl.,¶41.<br><br>Doron does not recall ever seeing Ex. 330 prior to this litigation. Doron Decl., ¶44. |

| | |
|---|---|
| not willing to let your attorney speak to their attorney, I will half to engage in a non-formal potential settlement meeting in order to avoid the exposure... This also creates additional exposure for pinnacle logistics as Dawn and Nancy are probably still in touch with some current and former employees... Thereby moving the exposure to pinnacle employees as well ... We don't want the word out that every single employee Can go after us because we are in the business of settling false demands ...Additionally, Joyce Gaines from UMS contacted me with respect to the level of reserves they are holding, they have had a few merchants funds frozen by the FTC previously... And she is concerned due to the high-risk nature of our business model, she would like to hold additional reserves which means more of a lack of income to the company...<br><br>Ex. 330. *See also* Ex. 941 (Doron Nottea provides sworn statement concerning his phone number (XXX) XXX-9999); Ex. 551 at 109:15-109:22 (Doron Nottea confirms his email address, xposedinc@gmail.com) | |
| **Moving Party's Response:**<br><br>Doron admits that he used the email address xposedinc@gmail.com.  Dkt. 398-2 at 9 ¶ 37.  Doron provided a sworn statement in which he identified (XXX) XXX-9999) as being his telephone number. Ex. 941-2.  The email is from 8182629999@mms.att.net to exposedinc@gmail.com.  Ex. 330. | |
| Paragraphs 35 – 38 | Irrelevant to Defendant Doron Nottea |
| **Moving Party's Response:**<br><br>Defendant has not disputed these uncontroverted facts. | |
| Paragraph 39 | Irrelevant to Defendant Doron |

| | |
|---|---|
| Defendant Alan Argaman was an owner of Defendant Secured Commerce LLC, Dkts. 299 ¶ 39, which designed, created, and helped manage the websites or landing pages used for deceptively marketing and selling skincare products. Ex. 46. He is also an owner of Secured Merchants, LLC, Dkts. 299 ¶ 39; 244 ¶ 39; 245 ¶ 39; *see also* Ex. 917 ¶ 208. Defendant Alan Argaman resides in this district. Dkt. 299 ¶ 39. | Nottea |
| **Moving Party's Response:**    Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(a)    Doron Nottea and Motti Nottea stated that Alan Argaman managed Secured Commerce, LLC. Dkts. 244 ¶ 39; 245 ¶ 39 | Objection: Dkts. #244 and 245 are hearsay and may not be used to support any alleged facts.    Admit that Alan Argaman managed Secured Commerce LLC. |
| **Moving Party's Response:**    Defendant has admitted that Alan Argaman managed Secured Commerce, LLC. | |
| Paragraph 39(b)    Doron Nottea also stated that he and Alan Argaman were the owners of Secured Commerce, LLC. Ex. 912 ¶ 214 | Admit. |
| **Moving Party's Response:**    Defendant has admitted that Doron and Alan Argaman were the owners of Secured Commerce, LLC. | |
| Paragraph 39(c)    Alan Argaman sent and received emails using the email account avicoglobal@gmail.com. Ex. 916 ¶ 261 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:**    Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)    Alan Argaman provided a variety of critical services to the common | Irrelevant to Doron Nottea. |

| | |
|---|---|
| enterprise, many through his company, Secured Merchants LLC | |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(i) Argaman provided integration services for their customer service management software, Limelight (*See* Dkt. 121-6, at 9-21; Dkt. 121-7, at 1-3), which Defendant Argaman testified is a software typically used for continuity sales. Ex. 555, 51:3-19. *See also* Ex. 946 at 19:23-20:17 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(ii) Argaman assisted Alon Nottea in operating a call center for AuraVie customer complaints. Exs. 47; 149; 432; 440; 441; 516 Paragraph 39(d)(iii) Argaman provided technical expertise to create an automated response system to allow large numbers of consumers to cancel their AuraVie continuity plans. *See* Dkt. 121-6, at 9-21; Dkt. 121-7, at 1-3 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(iv) Secured Merchants boasted that its contribution to the common enterprise "offer[s] a vehicle to resolve consumer disputes before they become chargebacks." Ex. 257-2 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(v) Defendant Argaman integrated the AuraVie free trial campaigns into | Irrelevant to Doron Nottea. |

| | |
|---|---|
| Lime Light, a third party customer relationship management (CRM) software Defendants used for selling their products by negative option continuity plans. *See* Exs. 187; 306; 476; 493; 528; 547 | |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(vi) Email and screenshots show Defendant Argaman designing, creating, or managing a website offering risk free trial offers of skincare products. Ex. 531 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(vii) Defendant Argaman admitted to creating AuraVie.com. *See* Ex. 555, 49:5-18 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(viii) Defendant Alon Nottea's company was invoiced by Secured Commerce LLC, a company owned by Defendant Argaman for "Design, Creation, & Optimization of Auravie landing page Campaign Setup and integration to Lime Light CRM and Click Connector." *See* Ex. 46 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(ix) Defendant Argaman sold Attitudeline/INFINI skincare products, a product that Defendants marketed or sold, or assisted others in marketing or selling, by negative option continuity | Irrelevant to Doron Nottea. |

| | |
|---|---|
| plans (or assisted others in marketing or selling in the same manner). Ex. 368 | |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(x) Defendant Argaman participated in planning and managing the AuraVie Angels promotional campaign. Exs. 185; 494; 497 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(xi) Defendant Argaman established tollfree telephone numbers for various shell corporations and set up call forwarding for those numbers. *See*, *e.g.*, Ex. 529 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(d)(xii) Defendant Argaman used Secured Commerce to lease the main office suite where Defendants operated. Dkt. 120, at 12 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(e) Defendant Argaman played a role in the decision making and marketing of new products relating to the common enterprise that went beyond providing assistance with technology issues and shipping. | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(e)(i) Defendant Argaman sent Doron Nottea a presentation concerning a product called LeElle. Defendant | Irrelevant to Doron Nottea. |

| | |
|---|---|
| Argaman was later consulted concerning the company's packaging design. Exs. 360; 361 | |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(e)(ii) Defendant Argaman also provided input concerning who would own the new product Defendants were marketing. Ex. 362 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(f) Defendant Argaman played a key role in refuting consumer chargebacks for the Corporate Defendants, through his company, Secured Merchants LLC | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(f)(i) Defendant Argaman admitted that his company contested consumer chargebacks for the Corporate Defendants that sold AuraVie and that Secured Merchants had previously provided a chargeback refutation service termed "chargeback armor." Ex. 555, at 75:1-5, 86:10-25, 88:15-24 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(f)(ii) Defendant Argaman possessed a "Standard Service Agreement" form for clients' use of Chargebackarmor.com. Further, emails suggest that Secured Merchants processed chargebacks for AuraVie under the name Chargeback Armor. Exs. 280; 348; 412; 413. | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** | |

| | |
|---|---|
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(f)(iii)<br><br>The Chargeback Armor Service Agreement states: "The Software is made available to you and the Service is owned, operated, and provided to you by SM through the CHARGEBACKARMOR.COM Site." Ex. 280 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(f)(iv)<br><br>According to Chargeback Armor, Inc.'s Executive Summary, "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." *See* Ex. 281-2 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(f)(v)<br><br>A document titled "Secured Merchants – Company Describes" described the "ChargeBack Armor" services as helping "win back lost revenue by reversing chargebacks in your favor" and "handl[ing] the entire chargeback dispute process on your behalf." Ex. 257 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(g)<br><br>Defendant Argaman operated Relief Defendant Chargeback Armor, Inc., a company Defendant Alon Nottea admitted was used to refute consumer chargebacks, jointly with other Individual Defendants | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** | |

| | | |
|---|---|---|
| Defendant has not disputed this uncontroverted fact. | | |
| Paragraph 39(g)(i) | | Irrelevant to Doron Nottea. |
| Defendant Argaman, through his company Secured Merchants LLC, provided $250,000 in startup capital to Chargeback Armor, Inc. Exs. 916 ¶ 235; 917 ¶ 235; Dkt. #231-1, at 53. | | |
| **Moving Party's Response:** | | |
| Defendant has not disputed this uncontroverted fact. | | |
| Paragraph 39(g)(ii) | | Irrelevant to Doron Nottea. |
| Chargeback Armor's Executive Summary states that Defendant Argaman was the company's "Chief Technology Officer." Ex. 281 | | |
| **Moving Party's Response:** | | |
| Defendant has not disputed this uncontroverted fact. | | |
| Paragraph 39(g)(iii) | | Irrelevant to Doron Nottea. |
| Nova 8 Media billed Defendant Argaman of Secured Merchants for "design services" for "Chargeback Armor." *See*, *e.g.,* Ex. 414 | | |
| **Moving Party's Response:** | | |
| Defendant has not disputed this uncontroverted fact. | | |
| Paragraph 39(g)(iv) | | Irrelevant to Doron Nottea. |
| A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. # 231-1, at 36 | | |
| **Moving Party's Response:** | | |
| Defendant has not disputed this uncontroverted fact. | | |
| Paragraph 39(g)(v) | | Irrelevant to Doron Nottea. |
| A Chargeback Armor, Inc. lease agreement dated February 27, 2015 lists Mike Costache, Doron Nottea, and Defendant Argaman as individuals to whom mail may be sent to Chargeback Armor, Inc. Ex. 365-13 | | |

| | |
|---|---|
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(g)(vi) | Irrelevant to Doron Nottea. |
| Defendant Argaman incorporated Chargeback Armor, Inc. in concert with other Individual Defendants. Ex. 404 | |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(g)(vii) | Irrelevant to Doron Nottea. |
| Defendant Argaman received statistics detailing chargeback numbers for various Chargeback Armor clients, including AuraVie. Ex. 151 | |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(g)(viii) | |
| (Intentionally left blank.) | |
| Paragraph 39(g)(ix) | Irrelevant to Doron Nottea. |
| Defendant Argaman participated in discussions concerning high-level corporate decisions for Chargeback Armor ranging from updates regarding the launch of the company to opening the company's corporate bank account. Exs. 184; 369 | |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(g)(x) | Irrelevant to Doron Nottea. |
| Alon Nottea reported to Defendant Argaman concerning new Chargeback Armor customers. Ex. 184 | |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(g)(xi) | Irrelevant to Doron Nottea. |
| Mike Costache, a Secured Merchants employee and purported Chargeback Armor CEO, sent an email to a Secured Merchants client that included referring to Secured Merchants | |

| | |
|---|---|
| as "the technology company that developed the Chargeback Armor product" and then noting that Secured Merchants is "transitioning all clients to be billed" by Chargeback Armor. Dkt. # 231-1, at 8 | |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(h)  Argaman had notice that Defendants marketed their products through negative option plans | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(h)(i)  (Intentionally left blank.) | |
| Paragraph 39(h)(ii)  Defendant Argaman assisted Defendants with managing their various trial campaigns on Lime Light software—software he acknowledged was often used for selling products by continuity plan. *See* Exs. 59; 92 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(h)(iii)  Secured Merchants Executive Summary listed, under "Target Markets," numerous companies that sell or sold their products by negative option continuity plans or trial offer. *See* Ex. 256 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(i)  Defendant Argaman was aware, or should have been aware, that Defendants took significant measures to disguise their common enterprise | Irrelevant to Doron Nottea. |

| | |
|---|---|
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(i)(i) | Irrelevant to Doron Nottea. |
| Defendant Argaman was sent emails discussing the "load balanc[ing] between multiple merchant accounts and corporations." Ex. 337 | |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(i)(ii) | Irrelevant to Doron Nottea. |
| Paul Medina informed Defendants Doron Nottea, Alon Nottea, and Alan Argaman about high risk accounts. Ex. 337 | |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(I)(iii) | Irrelevant to Doron Nottea. |
| Defendant Argaman assisted in establishing dozens of phone numbers for Defendants' shell corporations | |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(j) | Irrelevant to Doron Nottea. |
| Defendant Argaman was aware, or should have been aware, that Defendants engaged in "load balancing"—the means by which Defendants deceived payment processors concerning their actual chargeback ratio—between their various merchant accounts. | |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(j)(i) | Irrelevant to Doron Nottea. |
| Load balancing was discussed in emails Argaman received. *See*, *e.g.,* Ex. 449 | |
| **Moving Party's Response:** | |
| Defendant has not disputed this uncontroverted fact. | |

PLAINTIFF'S RESPONSE TO DEFENDANT DORON NOTTEA'S
STATEMENT OF GENUINE DISPUTES

| | |
|---|---|
| Paragraph 39(k)<br><br>Defendant Argaman appears to have assisted in coordinating the assistance of and payment to a third party call center in India, which handled some customer service calls for Defendants. Ex. 386 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:**<br>Defendant has not disputed this uncontroverted fact. | |
| Paragraph 39(l)<br><br>Defendant Argaman was included on an email detailing the high chargeback rates for merchant accounts associated with the common enterprise. Ex. 337 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:**<br>Defendant has not disputed this uncontroverted fact. | |
| Paragraphs 40 – 42 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:**<br>Defendant has not disputed these uncontroverted facts. | |
| Paragraph 43<br><br>Defendants Alon Nottea, Motti Nottea, Doron Nottea, Oz Mizrahi, Igor Latsanovski, Roi Reuveni, Khristopher Bond, also known as Ray Ibbot, Alan Argaman, and Paul Medina (collectively, "Individual Defendants") formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise | Deny. Doron Decl., ¶¶7-42; Alon Decl., ¶¶8, 11. |
| **Moving Party's Response:**<br>Other than Doron and Alon's self-serving conclusory declarations, defendants failed to provide any evidence to substantiate their claims. | |
| Paragraph 43(a)<br><br>Media Urge, Inc. and Focus Media Solutions, Inc. were controlled by the Individual Defendants. See Ex. | Deny. Doron Decl., ¶¶10-12; Alon Decl., ¶¶8, 15. |

| | |
|---|---|
| 941 at 8:18-9:10; Ex. 941 at 9:19-9:25; Id. at 10:3-10:5; see also Dkt. #120, at 6 n.3, 17 | |
| **Moving Party's Response:**<br>    Other than Doron and Alon's self-serving conclusory declarations, defendants failed to provide any evidence to substantiate their claims. Media Urge, Inc. and Focus Media Solutions, Inc. were controlled by the Individual Defendants. *See* Ex. 946 at 9:3-9:25; Id. at 10:3-10:8; *see also* Dkt. #120, at 6 n.3, 17 | |
| Paragraph 43(b)<br>    Secured Merchants was owned and operated by the Individual Defendants | Deny. Doron Decl., ¶¶10-12; Alon Decl., ¶¶8, 15. |
| **Moving Party's Response:**<br>    Other than Doron and Alon's self-serving conclusory declarations, defendants failed to provide any evidence to substantiate their claims.  Secured Merchants "Executive Summary," created in June 2013 states that the company's management consisted of Defendants Alon Nottea, "Avi" Argaman, and Paul Medina. Ex. 256-2. A Secured Merchants LLC's operating agreement draft names Defendant Argaman and Defendant Alon Nottea as the company's two managers. Ex. 255-22. Nonprivileged attorney invoices reference meetings concerning Secured Merchants with Alon Nottea and "Igor." Ex. 388-3; 388-4. Secured Merchants LLC was identified as one of the "Bunzai Companies" on a list that Defendant Doron Nottea sent to CPA David Davidian. Ex. 394. | |
| Paragraph 43(b)(i)<br>    Secured Merchants "Executive Summary," created in June 2013 states that the company's management consisted of Defendants Alon Nottea, "Avi" Argaman, and Paul Medina.  Ex. 256-2 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:**<br>    As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(b)(ii)<br>    A Secured Merchants LLC's operating agreement draft names Defendant Argaman and Defendant Alon Nottea as the company's two | Irrelevant to Doron Nottea. |

| | |
|---|---|
| managers. Ex. 255-22 | |
| **Moving Party's Response:**<br>    As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(b)(iii)<br>    Nonprivileged attorney invoices reference meetings concerning Secured Merchants with Alon Nottea and "Igor." Ex. 388-3; 388-4 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:**<br>    As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(b)(iv)<br>    Secured Merchants LLC was identified as one of the "Bunzai Companies" on a list that Defendant Doron Nottea sent to CPA David Davidian. Ex. 394 | Admit |
| **Moving Party's Response:**<br>    As Defendant has admitted the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(b)(v)<br>    Doron Nottea created the email address securedmerchantsllc@gmail.com. Ex. 357 | Admit |
| **Moving Party's Response:**<br>    As Defendant has admitted the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(b)(vi)<br>    Defendant Argaman denied the existence of any other founder for Secured Merchants. Ex. 555, at 28:16-28:23; Ex. 555, at 29:7-29:8 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:**<br>    As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(c)<br>    Chargeback Armor, Inc. was | Objection: vague and ambiguous as to the term "Defendants" as there is |

| | |
|---|---|
| owned and operated by Defendants | no indication as to which Defendant this refers. |
| **Moving Party's Response:** | |
| As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(c)(i)<br>Chargeback Armor's Executive Summary lists Defendant Alon Nottea as President, Defendant Alan Argaman as Chief Technology Officer, and Defendant Roi Reuveni as Customer Service Manager. *See* Ex. 281-3 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** | |
| As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(c)(ii)<br>Defendant Paul Medina also testified that he believed Alon Nottea owned the company. Ex. 946 at 25:2-25:6 | Irrelevant to Doron Nottea. |
| Paragraph 43(c)(iii)<br>Alon Nottea reported to Defendant Argaman concerning new Chargeback Armor customers. Ex. 184 | Irrelevant to Doron Nottea. |
| Paragraph 43(c)(iv)<br>Defendant Alon Nottea solicited investors for Chargeback Armor, Ex. 910 ¶ 234; 917 ¶ 234, and the purported Chargeback Armor CEO referred to him as his "business partner."Dkt. 120, at 23 | Irrelevant to Doron Nottea. |
| **Moving Party's Response:** | |
| As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(c)(v)<br>Purported CEO Mike Costache consulted with the Individual Defendants concerning hiring and contracting decisions. Dkt. #231-1, at 23, 26 | Objection: vague and ambiguous as to the term "Individual Defendants" as there is no indication as to which Individual Defendants this refers. |

| | |
|---|---|
| **Moving Party's Response:** | |
| As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(c)(vi) | Irrelevant to Doron Nottea. |
| Mike Costache, a Secured Merchants employee and purported Chargeback Armor CEO, sent an email to a Secured Merchants client that included referring to Secured Merchants as "the technology company that developed the Chargeback Armor product" and then noting that Secured Merchants is "transitioning all clients to be billed" by Chargeback Armor. Dkt. #231-1, at 8 | |
| **Moving Party's Response:** | |
| As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(c)(vii) | Irrelevant to Doron Nottea. |
| Nova 8 Media billed Defendant Argaman of Secured Merchants for "design services" for "Chargeback Armor." Ex. 414 | |
| **Moving Party's Response:** | |
| As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(c)(viii) | Irrelevant to Doron Nottea. |
| A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. #231-1, at 36 | |
| **Moving Party's Response:** | |
| As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response. | |
| Paragraph 43(c)(ix) | Admit |
| A Chargeback Armor, Inc. lease agreement dated February 27, 2015 lists | |

| | |
|---|---|
| Mike Costache, Doron Nottea, and Defendant Argaman as individuals to whom mail may be sent to Chargeback Armor, Inc. Ex. 365-13 | |

**Moving Party's Response:**
    As Defendant has admitted the substance of this uncontroverted fact, Plaintiff has no response.

| | |
|---|---|
| Paragraph 43(c)(x)<br>    Defendant Doron Nottea was a signatory on Chargeback Armor's bank account and is listed as secretary of the company on its Bank of America account. *See* Dkt. #214, at 31; Dkt. #231-1, at 46 | Objection, Dkts. #214 and 231 are hearsay and may not be used to support any alleged facts. |

**Moving Party's Response:**
    As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response.

| | |
|---|---|
| Paragraph 43(c)(xi)<br>    Mike Costache requested that Defendant Roi Reuveni set up an inbox anticipating email and telephone communications in light of Alon Nottea's new business cards with a toll free number. Dkt. 231-1, at 9 | Irrelevant to Doron Nottea. |

**Moving Party's Response:**
    As Defendant has not addressed the substance of this uncontroverted fact, Plaintiff has no response.

| | |
|---|---|
| Paragraph 43(d)<br>    Defendants' CPA sent Doron Nottea a spreadsheet of the "BunZai companies." Included on this list were nearly every Corporate Defendant. Ex. 302 | Admit that information relating to financial matters was a function of Doron's services as the bookkeeper. Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**
    Defendant did not dispute or remained silent that the Defendants' CPA sent Doron Nottea a spreadsheet of the "BunZai companies." Included on this list were nearly every Corporate Defendant. Ex. 302.

| | |
|---|---|
| Paragraphs 44 – 158 | Irrelevant to Doron Nottea |

**Moving Party's Response:**

As Defendant has not addressed the substance of these uncontroverted facts, Plaintiff has no response.

| Doron Nottea's Uncontroverted Facts | Supporting Evidence |
| --- | --- |
| Doron Nottea ("Doron") has never sold or marketed AuraVie products either directly or indirectly. The preparation of web pages, marketing plans, corporate formation and structures for the selling of AuraVie products were made by the owners of Bunzai Marketing ("Bunzai"). Doron was not involved in any such decisions as he did not have the responsibilities, rights or desire to make any of these decisions. | Doron Decl., ¶7; Alon Decl., ¶¶8, 15; Reuveni Decl., ¶4. |

**Moving Party's Response:**

Other than three self-serving conclusory declarations, Defendant has not provided any evidence to substantiate his claim.   As part of the common enterprise, Doron Nottea was involved in selling and marketing of AuraVie. Doron Nottea owned or was a corporate officer for several key Corporate Defendants in the common enterprise.  He was an owner of Secured Commerce, LLC, a company that participated in the advertising and marketing of AuraVie products.  Exs. 46; 912 ¶ 214.  Doron Nottea held himself out as a member of Secured Merchants LLC, the Corporate Defendant that provided chargeback refutation services, implemented the automated answering service for customer complaints, and managed the common enterprise's customer relations software, LimeLight. *See* Dks. 121-6, at 9-21; 121-7, at 1-3; Exs. 176-2; 257-2; 256; 47; 149; 432; 440; 441; 516

Further, Doron Nottea had officer positions at least two other Corporate Defendants. Doron Nottea held himself out in bank documents as secretary of Chargeback Armor, Inc., another company Defendants used to refute consumer chargebacks for AuraVie. Dkt. 214, at 31; 231-1, at 46; Exs. 280 348; 412; 413. And BunZai Media Group's business plan identified Doron Nottea as "CFO/Controller" of BunZai.  BunZai, of course, was the initial and primary company in Defendants' scam until its dissolution. Ex. 26, at Bates #576.

In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of

the companies involved. Ex. 330. *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this message, Doron notes that their affiliates were using illegal advertising. *Id.* He references "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entitities." *Id.*

| | |
|---|---|
| The selling of AuraVie products, pricing programs, returns, refunds and contact with customers were conducted by the owners and employees of Bunzai. Doron was not involved in any such decisions as he did not have the responsibilities, rights or desire to make any of these decisions | Doron Decl., ¶8; Alon Decl., ¶¶8, 15; Reuveni Decl., ¶4. |

**Moving Party's Response:**

Other than three self-serving conclusory declarations, Defendant has not provided any evidence to substantiate his claim. As part of the common enterprise, Doron Nottea was involved in selling of AuraVie products, pricing programs, returns, refunds and contact with customers. BunZai Media Group's business plan identified Doron Nottea as "CFO/Controller" of BunZai. Ex. 26, at Bates #576. In BunZai's business plan, next to Doron's picture and name, it states "For every customer that successfully passes through the Day 15 transitional billing state, the company will make a gross profit of $40 per order, if they were to cancel after this stage. (Day 1: $9.95 + $7.95 S&H = $17.90 + Day 15: $80= $97.90 - $18 COG/S&H - $40 CPA = $39.90)." *Id.* BunZai, of course, was the initial and primary company in Defendants' scam until its dissolution.

Doron Nottea owned or was a corporate officer for several key Corporate Defendants in the common enterprise. He was an owner of Secured Commerce, LLC, a company that participated in the advertising and marketing of AuraVie products. Exs. 46; 912 ¶ 214. Doron Nottea also held himself out as a member of Secured Merchants LLC. Ex. 176-2. Secured Merchants was the Corporate Defendant that provided chargeback refutation services, implemented the automated answering service for customer complaints, and managed the common enterprise's customer relations software, LimeLight. *See* Dks. 121-6, at 9-21; 121-7, at 1-3; Exs. 257-2; 256; 47; 149; 432; 440; 441; 516.

In a text message, Doron Nottea discusses in depth the common enterprise

and its compliance issues, and evinces his participation, control, and ownership of the companies involved. Ex. 330. *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this message, Doron notes that their affiliates were using illegal advertising. *Id.* He references "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entitities." *Id.*

Doron admitted to maintaining financial information related to his "clients." Dkt. 398-2 at 7 ¶ 27. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9. The financial information that he maintained included income and expense information, banking information, merchant account information, corporate structure information, and related matters. Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36. He also admitted that he reviewed and prepared spreadsheets related to profits, losses, expenses or other financial matters. Dkt. 398-2 at 7 ¶31.

| | |
|---|---|
| Bunzai prepared its web sites and landing pages for AuraVie in or about mid-2010. There were a few pages previously prepared for a previous offer, Miracle Face Kit—Dead Sea Mud Mask and Serum, which was the first product launched in December 2009. | Doron Decl., ¶23 |

**Moving Party's Response:**

Defendants advertised, marketed, distributed, and sold skincare products online from multiple Internet websites, including auravie.com, auraviefreetrial.com, auravietrialkit.com, and mymiraclekit.com, since at least 2010. Exs. 909; 597-13,-16,-19, -22; *see also* Dkt. 120, at 1.

| | |
|---|---|
| Bunzai began selling AuraVie products in or about July 2010; the Miracle Face Kit—Dead Sea Mud Mask and Serum was first sold in December 2009. | Doron Decl., ¶24 |

**Moving Party's Response:**

Defendants advertised, marketed, distributed, and sold skincare products online from multiple Internet websites, including auravie.com, auraviefreetrial.com, auravietrialkit.com, and mymiraclekit.com, since at least 2010. Exs. 909; 597-13,-16,-19, -22; *see also* Dkt. 120, at 1.

| | |
|---|---|
| Doron first began to perform bookkeeping services in April 2013 more than three (3) years after Bunzai Media Group, Inc. was formed (January 1, 2010). | Doron Decl., ¶22 |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim. BunZai Media Group's May 2010 business plan identified Doron Nottea as "CFO/Controller" of BunZai. Ex. 26, at Bates #554 & 576. In November 2012, Leor Arazy, Pinnacle and BunZai's human resources manager, included Doron Nottea on an email sending out a salary report by department for Pinnacle. Ex. 38. In September 2012, Leor Arazy sent Doron Nottea Pinnacle's loan policy and requesting that he let her know if he wants any changes. Ex. 84.

| | |
|---|---|
| From the dates it is very clear that Doron did not have any involvement in the preparation of, content, decisions related or had any abilities to change or even object to the content of any web page, landing page, pricing program, free trial program, returns, charge backs or refunds as any such activity began and was in operation for years before Doron performed any services. In addition, he had no knowledge of any such activities. | Doron Decl., ¶25 |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim. BunZai Media Group's May 2010 business plan identified Doron Nottea as "CFO/Controller" of BunZai. Ex. 26, at Bates #554 & 576. Defendants advertised, marketed, distributed, and sold skincare products online from multiple Internet websites, including auravie.com, auraviefreetrial.com, auravietrialkit.com, and mymiraclekit.com, since at least 2010. Exs. 909; 597-13,-16,-19, -22; *see also* Dkt. 120, at 1.

Doron Nottea owned or was a corporate officer for several key Corporate Defendants in the common enterprise. He was an owner of Secured Commerce, LLC, a company that participated in the advertising and marketing of AuraVie products. Exs. 46; 912 ¶ 214. Doron Nottea also held himself out as a member of Secured Merchants LLC. 176-2 Secured Merchants was the Corporate Defendant

that provided chargeback refutation services, implemented the automated answering service for customer complaints, and managed the common enterprise's customer relations software, LimeLight. *See* Dks. 121-6, at 9-21; 121-7, at 1-3; Exs. 257-2; 256; 47; 149; 432; 440; 441; 516.  Further, Doron Nottea had officer positions at least two other Corporate Defendants. Doron Nottea held himself out in bank documents as secretary of Chargeback Armor, Inc., another company Defendants used to refute consumer chargebacks for AuraVie. Dkt. 214, at 31; 231-1, at 46; Exs. 280 348; 412; 413.

As an owner and manager of several companies involved in the common enterprise, Doron would have been involved in the preparation of, content, decisions related any web page, landing page, pricing program, free trial program, returns, charge backs or refunds.

In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of the companies involved. Ex. 330.  *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this message, Doron notes that their affiliates were using illegal advertising.  *Id.*  He references "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entitities." *Id.*

| | |
|---|---|
| Doron did not meet with any individuals to discuss management plans for the AuraVie business. | Doron Decl., ¶13 |
| **Moving Party's Response:** | |
| Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim.  Doron Nottea met with an individual to discuss his management plan for the AuraVie business, which included ways to reduce his companies' chargeback levels. Exs. 29; 385. | |
| Doron had only limited involvement with some, but not all, of the Corporate Defendants in this case, as a bookkeeper. He had no involvement at all with some of the Corporate Defendants. | Doron Decl., ¶9 |
| **Moving Party's Response:** | |
| Other than three self-serving conclusory declarations, Defendant has not provided any evidence to substantiate his claim.  Doron Nottea owned or was a | |

PLAINTIFF'S RESPONSE TO DEFENDANT DORON NOTTEA'S
STATEMENT OF GENUINE DISPUTES

corporate officer for several key Corporate Defendants in the common enterprise. He was an owner of Secured Commerce, LLC, a company that participated in the advertising and marketing of AuraVie products.  Exs. 46; 912 ¶ 214.  Doron Nottea also held himself out as a member of Secured Merchants LLC. Ex. 176-2. Secured Merchants, LLC, was the Corporate Defendant that provided chargeback refutation services, implemented the automated answering service for customer complaints, and managed the common enterprise's customer relations software, LimeLight. *See* Dks. 121-6, at 9-21; 121-7, at 1-3; Exs. 257-2; 256; 47; 149; 432; 440; 441; 516

Further, Doron Nottea had officer positions at least two other Corporate Defendants. Doron Nottea held himself out in bank documents as secretary of Chargeback Armor, Inc., another company Defendants used to refute consumer chargebacks for AuraVie. Dkt. 214, at 31; 231-1, at 46; Exs. 280 348; 412; 413. And BunZai Media Group's business plan identified Doron Nottea as "CFO/Controller" of BunZai.  BunZai, of course, was the initial and primary company in Defendants' scam until its dissolution. Ex. 26, at Bates #576.

In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of the companies involved.  Ex. 330.  *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this message, Doron notes that their affiliates were using illegal advertising.  *Id.*  He references "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entities." *Id.*

Doron admitted to maintaining financial information related to his "clients." Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters.  Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36.

| | |
|---|---|
| Doron has never been a shareholder, member or partner of Chargeback Armor, Inc., Secured Merchants, LLC, Bunzai Media Group, Inc., Pinnacle Logistics, Inc., DSA | Doron Decl., ¶¶10-12 |

| | |
|---|---|
| Holdings, Inc., Lifestyle Media Brands, Inc., Agoa Holdings, Inc., Zen Mobile Media, Inc., Safehaven Ventures, Inc., Heritage Alliance Group, Inc., AMD Financial Network, Inc., SBM Management, Inc., Media Urge, Inc., Adageo, LLC, Calenergy, Inc., Kai Media, Inc., Insight Media, Inc., Focus Media Solutions, Inc., USM Products, Inc., Merchant Leverage Group, Inc., DMA Media Holdings, Inc., Shalita Holdings, Inc., or All Star Beauty Products, Inc. (collectively "the Corporate Defendants"). | |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim. Doron Nottea held himself out as a member of Secured Merchants LLC. Ex. 176-2. Doron was an owner or 50% member of Secured Commerce, LLC. Exs. 912 ¶ 214; Dkt.398-2 at 2¶ 6. Moreover, Doron Nottea held himself out in bank documents as secretary of Chargeback Armor, Inc.,. Dkt. 231-1, at 46. In addition, BunZai Media Group's business plan identified Doron Nottea as "CFO/Controller" of BunZai. Ex. 26, at Bates #576. Because Defendants did not observe many corporate formalities, the true ownership of the Corporate Defendants will not be formally memorialized.

His evinces his participation, control, and ownership of the companies involved through a text message. Ex. 330. *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this message, Doron notes that their affiliates were using illegal advertising. *Id.* He references "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entitities." *Id.*

| | |
|---|---|
| Doron has never been an officer or director of any of the Corporate Defendants. | Doron Decl., ¶11 |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not

provided any evidence to substantiate his claim.  Doron Nottea held himself out in bank documents as secretary of Chargeback Armor, Inc.,. Dkt. 231-1, at 46. BunZai Media Group's business plan identified Doron Nottea as "CFO/Controller" of BunZai. Ex. 26, at Bates #576.  Moreover, Doron was an owner of Secured Commerce, LLC.  Exs. 912 ¶ 214.  Doron Nottea also held himself out as a member of Secured Merchants LLC. Ex. 176-2.  Because Defendants did not observe many corporate formalities, the true structure of the Corporate Defendants will not be formally memorialized.

In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of the companies involved. Ex. 330. *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this message, Doron notes that their affiliates were using illegal advertising. *Id.* He references "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entitities." *Id.*

| | |
|---|---|
| Doron has never performed any management duties for any of the Corporate Defendants. | Doron Decl., ¶12; Reuveni Decl., ¶4. |

**Moving Party's Response:**

Other than Doron and Roi Reuveni's self-serving conclusory declarations, Defendant has not provided any evidence to substantiate his claim. Evidence shows Doron Nottea's management of these companies.  Leor Arazy, Pinnacle and BunZai's human resources manager, included Doron Nottea on an email sending out a salary report by department for Pinnacle. Ex. 38.  Leor Arazy sent Doron Nottea Pinnacle's loan policy and requesting that he let her know if he wants any changes. Ex. 84. Doron Nottea received payroll information for some of the Corporate Defendants. Exs. 345; 346; 353. Defendant Paul Medina testified that he reported to Doron's employees or assistants for anything financially related for the various Corporate Defendants. Ex. 946 at 28:6-28:13; Ex. 946 at 27:8-27:21. Paul Medina emailed Doron Nottea a list of current merchant accounts selling AuraVie. *See* Ex. 384. Defendant Medina testified that he provided Defendant Doron Nottea with commission calculations to payment the straw "owners" of the various Corporate Defendants, who were paid. Exs. 946 at 44:10-20; see Ex. 166.

Doron admitted to maintaining financial information related to his "clients."

| | |
|---|---|
| Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters.  Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36. | |
| Doron has not managed any employees of any of the Corporate Defendants yet did work with other employees who also perfumed bookkeeping services. | Doron Decl., ¶14 |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim. Evidence shows Doron Nottea's management of these companies.  Leor Arazy, Pinnacle and BunZai's human resources manager, included Doron Nottea on an email sending out a salary report by department for Pinnacle. Ex. 38.  Leor Arazy sent Doron Nottea Pinnacle's loan policy and requesting that he let her know if he wants any changes. Ex. 84. Doron Nottea received payroll information for some of the Corporate Defendants. Exs. 345; 346; 353. Defendant Paul Medina testified that he reported to Doron's employees or assistants for anything financially related for the various Corporate Defendants. Ex. 946 at 28:6-28:13; Ex. 946 at 27:8-27:21. Paul Medina emailed Doron Nottea a list of current merchant accounts selling AuraVie. *See* Ex. 384. Defendant Medina testified that he provided Defendant Doron Nottea with commission calculations to payment the straw "owners" of the various Corporate Defendants, who were paid. Exs. 946 at 44:10-20; see Ex. 166.

Doron admitted to maintaining financial information related to his "clients." Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters. Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36.

| | |
|---|---|
| Doron has never been a partner with Alon Nottea, Motti Nottea, Igor Latsanovski, Oz Mizrahi, Roi Reuveni, Kristopher Bond or Paul Medina, with | Doron Decl., ¶15 |

| | |
|---|---|
| regard to any matter alleged as the basis for the claims of the FTC in this action. | |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim.  He was an owner of Secured Commerce, LLC, a company that participated in the advertising and marketing of AuraVie products.  Exs. 46; 912 ¶ 214.  Doron Nottea also held himself out as a member of Secured Merchants LLC, the Corporate Defendant that provided chargeback refutation services, implemented the automated answering service for customer complaints, and managed the common enterprise's customer relations software, LimeLight. *See* Dks. 121-6, at 9-21; 121-7, at 1-3; Exs. 176-2; 257-2; 256; 47; 149; 432; 440; 441; 516. Moreover, Doron Nottea had officer positions at least two other Corporate Defendants. Doron Nottea held himself out in bank documents as secretary of Chargeback Armor, Inc., another company Defendants used to refute consumer chargebacks for AuraVie. Dkt. 214, at 31; 231-1, at 46; Exs. 280 348; 412; 413.  And BunZai Media Group's business plan identified Doron Nottea as "CFO/Controller" of BunZai.  BunZai, of course, was the initial and primary  company in Defendants' scam until its dissolution. Ex. 26, at Bates #576. Because Defendants did not observe many corporate formalities, the true ownership of the Corporate Defendants will not be formally memorialized.

In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of the companies involved.  Ex. 330.  *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this messag, Doron notes that their affiliates were using illegal advertising.  *Id.*  He referenes "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entitities." *Id.*

| | |
|---|---|
| Doron has never held himself as an owner of any of the Corporate Defendants, with the exception of his shared ownership of Secured Commerce, LLC. | Doron Decl., ¶16 |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim.  Doron Nottea also held himself

out as a member of Secured Merchants, LLC. Ex. 176-2.  A former employee of both BunZai and Pinnacle, testified that Doron Nottea held himself out as the owner of both BunZai and Pinnacle Ex. 554 at 65:20-66-7; 86:17-87:7. Because Defendants did not observe many corporate formalities, the true structure of the Corporate Defendants will not be formally memorialized.

In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of the companies involved.  Ex. 330.  *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this message, Doron notes that their affiliates were using illegal advertising.  *Id.*  He references "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entitities." *Id.*

| | |
|---|---|
| Doron is a 50% shareholder of Secured Commerce, LLC. Secured Commerce, LLC, was engaged in the business of re-selling discounted postage and shipping. | Doron Decl., ¶6 |

**Moving Party's Response:**

Plaintiff admits that Doron Nottea was a 50% shareholder of Secured Commerce, LLC.  Secured Commerce created the websites used for deceptively marketing and selling skincare products, *See* Ex. 54-2, including the landing pages that contained the bogus "risk free trial" offers. *See* Ex. 54-2; 909-113, -114, -115, -116, -117, -118, -119, -120, -121, -122, -123, -124, -125.

| | |
|---|---|
| Doron has never discussed the ownership of Corporate Defendants with former employee Andrew Stanley. | Doron Decl., ¶16 |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim.  Mr. Stanley testified that Doron Nottea held himself out as the owner of both BunZai and Pinnacle Ex. 554 at 65:20-66-7; 86:17-87:7.

| | |
|---|---|
| Doron did not have any knowledge of the content of any of the web pages used to sell AuraVie products nor did he know what information should or should not be | Doron Decl., ¶17 |

| contained on web pages that advertise the selling of products. | |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim. Doron Nottea owned or was a corporate officer for several key Corporate Defendants in the common enterprise. He was an owner of Secured Commerce, LLC, a company that participated in the advertising and marketing of AuraVie products.  Exs. 46; 912 ¶ 214.

In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of the companies involved. Ex. 330.  *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this messag, Doron notes that their affiliates were using illegal advertising.  *Id.*  He referenes "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entitities." *Id.*

| Doron did not have any input in any pricing decisions for the products, or know of any return programs, refund policies or practices that address any customer complaints. These activities were performed by the owners of the companies and not Doron as he performed bookkeeping services, not management services. Doron also did not know if the practices about which the FTC complains about are proper or not. | Doron Decl., ¶18 |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim.  He was an owner of Secured Commerce, LLC, a company that participated in the advertising and marketing of AuraVie products.  Exs. 46; 912 ¶ 214.  Doron Nottea also held himself out as a member of Secured Merchants LLC, the Corporate Defendant that provided chargeback refutation services, implemented the automated answering service for customer complaints, and managed the common enterprise's customer relations

software, LimeLight. *See* Dks. 121-6, at 9-21; 121-7, at 1-3; Exs. 176-2; 257-2; 256; 47; 149; 432; 440; 441; 516. Further, Doron Nottea had officer positions at least two other Corporate Defendants. Doron Nottea held himself out in bank documents as secretary of Chargeback Armor, Inc., another company Defendants used to refute consumer chargebacks for AuraVie. Dkt. 214, at 31; 231-1, at 46; Exs. 280 348; 412; 413.  And BunZai Media Group's business plan identified Doron Nottea as "CFO/Controller" of BunZai.  BunZai, of course, was the initial and primary  company in Defendants' scam until its dissolution. Ex. 26, at Bates #576.

In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of the companies involved.  Ex. 330.  *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this messag, Doron notes that their affiliates were using illegal advertising.  *Id.*  He referenes "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entitities." *Id.*

| | |
|---|---|
| Doron is not aware of what practices are proper or not in the charging of customers on a monthly basis. Doron did not have any involvement in any decision of how and when customers would be charged. | Doron Decl., ¶19 |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim.  He was an owner of Secured Commerce, LLC, a company that participated in the advertising and marketing of AuraVie products.  Exs. 46; 912 ¶ 214.  Doron Nottea also held himself out as a member of Secured Merchants LLC, the Corporate Defendant that provided chargeback refutation services, implemented the automated answering service for customer complaints, and managed the common enterprise's customer relations software, LimeLight. *See* Dks. 121-6, at 9-21; 121-7, at 1-3; Exs. 176-2; 257-2; 256; 47; 149; 432; 440; 441; 516. Further, Doron Nottea had officer positions at least two other Corporate Defendants. Doron Nottea held himself out in bank documents as secretary of Chargeback Armor, Inc., another company Defendants used to refute consumer chargebacks for AuraVie. Dkt. 214, at 31; 231-1, at 46; Exs. 280 348; 412; 413.  And BunZai Media Group's business plan identified

Doron Nottea as "CFO/Controller" of BunZai.  BunZai, of course, was the initial and primary  company in Defendants' scam until its dissolution. Ex. 26, at Bates #576.

In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of the companies involved.  Ex. 330.  *See also* Ex. 941 (Doron provides sworn statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms his email address, xposedinc@gmail.com). In this messag, Doron notes that their affiliates were using illegal advertising.  *Id.*  He referenes "the high-risk nature of our business model" and discusses how regulatory scrutiny for "continuity skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he is planning to negotiate with an attorney on behalf of the common enterprise to avoid the litigation "risk to our entire entitities." *Id.*

| | |
|---|---|
| Doron did not have any involvement in any decision of when and under what circumstances a customer could or could not return an item purchased or receive a refund. | Doron Decl., ¶20 |

**Moving Party's Response:**

Other than three self-serving conclusory declarations, Defendant has not provided any evidence to substantiate his claim.   Doron Nottea owned or was a corporate officer for several key Corporate Defendants in the common enterprise. He was an owner of Secured Commerce, LLC, a company that participated in the advertising and marketing of AuraVie products.  Exs. 46; 912 ¶ 214.  Doron Nottea also held himself out as a member of Secured Merchants LLC. Ex. 176-2. Secured Merchants was the Corporate Defendant that provided chargeback refutation services, implemented the automated answering service for customer complaints, and managed the common enterprise's customer relations software, LimeLight. *See* Dks. 121-6, at 9-21; 121-7, at 1-3; Exs. 257-2; 256; 47; 149; 432; 440; 441; 516. Further, Doron Nottea had officer positions at least two other Corporate Defendants. Doron Nottea held himself out in bank documents as secretary of Chargeback Armor, Inc., another company Defendants used to refute consumer chargebacks for AuraVie. Dkt. 214, at 31; 231-1, at 46; Exs. 280 348; 412; 413.  BunZai Media Group's business plan identified Doron Nottea as "CFO/Controller" of BunZai. Ex. 26, at Bates #576.

In a text message, Doron Nottea discusses in depth the common enterprise and its compliance issues, and evinces his participation, control, and ownership of the companies involved.  Ex. 330. *See also* Ex. 941 (Doron provides sworn

statement concerning his phone number); Ex. 551 at 109:15-22 (Doron confirms
his email address, xposedinc@gmail.com). In this message, Doron notes that their
affiliates were using illegal advertising. *Id.* He references "the high-risk nature of
our business model" and discusses how regulatory scrutiny for "continuity
skincare and diet advertisers" is hampering their sales. *Id.* Moreover, he states he
is planning to negotiate with an attorney on behalf of the common enterprise to
avoid the litigation "risk to our entire entitities." *Id.*

 Doron admitted to maintaining financial information related to his "clients."
Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the
common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he
maintained included income and expense information, banking information,
merchant account information.  Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36.
He also admitted that he reviewed and prepared spreadsheets related to profits,
losses, expenses or other financial matters.  Dkt. 398-2 at 7 ¶31.

| | |
|---|---|
| Doron did not own any merchant accounts nor did he have any involvement in the opening up of merchant accounts. The need for the various merchant accounts and the decisions to open them were made by the owners of Bunzai. | Doron Decl., ¶26 |

**Moving Party's Response:**
 Other than three self-serving conclusory declarations, Defendant has not
provided any evidence to substantiate his claim.   As Defendants often had
friends, family, and acquaintances to serve as stand-in "owners" and "officers" for
Defendants shell corporation and to open new merchant accounts in their names
for processing consumer charges, the true ownership of the merchant accounts
will not be formally memorialized. . Exs. 262; 268; 318; 474.  Doron opened,
managed, and controlled the merchant accounts and other financial accounts used
by the common enterprise, and was even apprised of negotiations with potential
payment processors by his brother, Alon. Exs. 64; 78; 88; 167; 383; 467. As part
of the common enterprise, Doron Nottea was involved in the opening of merchant
accounts.

| | |
|---|---|
| Doron is a bookkeeper by profession which requires that he be provided with all types of financial information related to clients, including but not limited to income and expense | Doron Decl., ¶27; Alon Decl., ¶11; Howard Decl., ¶8. |

| information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters. | |
|---|---|
| **Moving Party's Response:**<br><br>    Defendant has not provided any evidence to substantiate his claim.  Doron has not shown that he does bookkeeping for any company beyond many of the Corporate Defendants.  Doron admitted to maintaining financial information related to his "clients."  Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters.  Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36. He also admitted that he reviewed and prepared spreadsheets related to profits, losses, expenses or other financial matters.  Dkt. 398-2 at 7 ¶31. | |
|     As part of his typical functions and responsibilities as a bookkeeper, Doron often maintains checks and credit cards for clients to facilitate the payment of certain expenses when they are out of town or just do not have time to sign checks. Doron also maintains deposit stamps to enable deposit of funds into clients' accounts, as well as devices to make electronic funds transfers. These banking materials are necessary to enable Doron to perform his job for his clients. | Doron Decl., ¶29; Alon Decl., ¶11; Howard Decl., ¶8. |
| **Moving Party's Response:**<br><br>    Other than three self-serving conclusory declarations, Defendant has not provided any evidence to substantiate his claim.  Doron has not shown that he does bookkeeping for any company beyond the Corporate Defendants.  He admitted that he often maintained blank checks, credit cards, deposit stamps, and | |

| | |
|---|---|
| other banking materials for his clients. Dkt. 398-2 at 7 ¶29. | |
| Doron possessed credit cards, blank checks and related banking materials for a client, Defendant Zen Mobile Media, Inc., as well as for many other clients, to facilitate the payment of certain of expenses and deposits of funds. This is typical of his functions as a bookkeeper. | Doron Decl., ¶29 |

**Moving Party's Response:**

Other than three self-serving conclusory declarations, Defendant has not provided any evidence to substantiate his claim. Doron has not shown that he does any bookkeeping for any company beyond the many of the Corporate Defendants. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9. He admitted that he often maintained blank checks, credit cards, deposit stamps, and other banking materials for his clients. Dkt. 398-2 at 7 ¶29. Doron Nottea maintained personal information including copies of other Individual Defendants' driver licenses and signature block for using new bank accounts, as well as access to and used blank pre-signed checks for numerous Corporate Defendants. Ex. 536; *see also*, *e.g,* Exs. 49; 437. Doron Nottea possessed blank, pre-signed checks for CalEnergy, Inc. in his office. Dkt. 120, at 13; *see also* Ex. 49.

| | |
|---|---|
| Even though Doron has the ability to make payments on behalf of clients pursuant to his duties as a bookkeeper, he does not make decisions as to what payments are made or give permission to anyone to make payments. Doron is not responsible for the invoices to clients nor should his name be included on any invoices. | Doron Decl., ¶30 |

**Moving Party's Response:**

Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim. Doron has not shown that he does bookkeeping for any company beyond many of the Corporate Defendants. Doron admitted to maintaining financial information related to his "clients." Dkt. 398-2 at 7 ¶ 27. His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9. The financial information that he maintained included payout information. Dkt. 398-2 at 7 ¶ 27.

| | |
|---|---|
| As part of his functions as a bookkeeper, Doron also reviews, prepare and analyze spreadsheets related to profits, losses, expenses or other financial matters. Any and all references made by the FTC to Doron reviewing, analyzing or preparing spreadsheets related to profits, losses, expenses or other financial matters concerning any entity was a part of his usual functions as a bookkeeper for those entities. | Doron Decl., ¶31; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant has not provided any evidence to substantiate his claim. Doron has not shown that he does any bookkeeping for any company beyond the many of the Corporate Defendants.  Doron admitted to maintaining financial information related to his "clients."  Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  He also admitted that he reviewed and prepared spreadsheets related to profits, losses, expenses or other financial matters.  Dkt. 398-2 at 7 ¶31.  Doron oversaw the finances of the common enterprise, calculating the companies' profits and losses and managing the enterprise's various entities and merchant accounts. *See* Exs. 21; 46; 47; 51; 52; 58; 59; 335; 337; 338; 339; 340; 391; 392; 393; 399; 405; 406; 407; 408; 409; 946, at 36:8-36:11.

| | |
|---|---|
| As part of his typical functions and responsibilities as a bookkeeper, Doron often perform functions related to employee payroll, including providing, preparing, receiving and reviewing payroll reports for business entities. Doron is also aware of and reviews paycheck advance/loan policies related to employee payroll as a typical part of his bookkeeping duties. Any and all references made by the FTC to his providing, preparing, receiving and reviewing payroll reports for Bunzai or any other entity was a part of his usual functions as a bookkeeper. In addition, | Doron Decl., ¶32; Alon Decl., ¶11; Howard Decl., ¶8. |

| | |
|---|---|
| any and all reference made by the FTC with regard to his receipt of an entity's paycheck advance policy was part of his usual functions as a bookkeeper. | |

**Moving Party's Response:**

Defendant has not provided any evidence to substantiate his claim.  Doron has not shown that he does any bookkeeping for any company beyond the many of the Corporate Defendants.  Doron admitted to maintaining financial information related to his "clients."  Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included income and expense information, commission and other payout information, financial arrangements with other persons or entities, employee information, payroll information, insurance information, banking information, merchant account information, corporate structure information, and related matters.  Dkt. 398-2 at 7 ¶¶ 27, 29, 31, 32, 33, 34, 35, 36.

Leor Arazy, Pinnacle and BunZai's human resources manager, included Doron Nottea on an email sending out a salary report by department for Pinnacle. Ex. 38. Leor Arazy sent Doron Nottea Pinnacle's loan policy and requesting that he let her know if he wanted any changes. Ex. 84. Doron Nottea received payroll information for some of the Corporate Defendants. Exs. 345; 346; 353.

| | |
|---|---|
| As part of his typical functions and responsibilities as a bookkeeper, Doron is kept apprised of employee information for new and continuing employees relating to his clients. Any and all references made by the FTC to Doron being provided with, apprised of, reviewing or otherwise receiving employee information for any business entity was a part of his usual functions as a bookkeeper. | Doron Decl., ¶33; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant has not provided any evidence to substantiate his claim.  Doron has not shown that he does bookkeeping for any company beyond many of the Corporate Defendants.  Doron admitted to maintaining financial information related to his "clients."  Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included employee information, payroll

information.  Dkt. 398-2 at 7 ¶¶ 27, 33.

| | |
|---|---|
| As part of his typical functions and responsibilities as a bookkeeper, Doron often receives and reviews documents relating to incorporation of business entities. Any and all references made by the FTC to Doron being provided with, apprised of, reviewing or otherwise receiving corporate formation documents for Bunzai, Pinnacle or any other entity was a part of his usual functions as a bookkeeper. | Doron Decl., ¶34; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant has not provided any evidence to substantiate his claim. Doron has not shown that he does any bookkeeping for any company beyond the many of the Corporate Defendants.  Doron admitted to maintaining financial information related to his "clients."  Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  He admits that he often received and reviewed documents relating to incorporation of business entities.  Dkt. 398-2 at 8 ¶ 34.

| | |
|---|---|
| As part of his typical functions and responsibilities as a bookkeeper, Doron often receives and reviews information relating to merchant accounts. Any and all references made by the FTC to Doron being provided with, apprised of, reviewing or otherwise receiving such information for AuraVie or any other entity was a part of his usual functions as a bookkeeper. | Doron Decl., ¶35; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**

Defendant has not provided any evidence to substantiate his claim.  Doron has not shown that he does any bookkeeping for any company beyond the many of the Corporate Defendants.  Doron admitted to maintaining financial information related to his "clients."  Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included merchant account information.  Dkt. 398-2 at 7 ¶¶ 27, 35. He also admitted that he reviewed and prepared spreadsheets

related to profits, losses, expenses or other financial matters.  Dkt. 398-2 at 7 ¶31.

| | |
|---|---|
| As part of his typical functions and responsibilities as a bookkeeper, Doron is often provided with insurance information for clients and may be involved in the process of obtaining favorable insurance quotes and terms. Any and all references made by the FTC to Doron being provided with, apprised of, reviewing or otherwise receiving insurance information related to any entity was a part of his usual functions as a bookkeeper. | Doron Decl., ¶36; Alon Decl., ¶11; Howard Decl., ¶8. |

**Moving Party's Response:**
    Defendant has not provided any evidence to substantiate his claim. Doron has not shown that he does any bookkeeping for any company beyond the many of the Corporate Defendants.  Doron admitted to maintaining financial information related to his "clients."  Dkt. 398-2 at 7 ¶ 27.  His clients included nearly all of the entities involved in the common enterprise. Dkt. 398-2 at 3¶9.  The financial information that he maintained included insurance information.  Dkt. 398-2 at 7 ¶¶ 27, 36.

| | |
|---|---|
| The focus of Doron's work at all times has been on running his adult content companies full time, as buyer, seller and controller, which he has done for more than twenty years. | Doron Decl., ¶38 |

**Moving Party's Response:**
    Other than three self-serving conclusory declarations, Defendant has not provided any evidence to substantiate his claim.

| | |
|---|---|
| Doron used the email address xposedinc@gmail.com for his adult content business. | Doron Decl., ¶37 |

**Moving Party's Response:**
    Other than three self-serving conclusory declarations, Defendant has not provided any evidence to substantiate his claim.

| | |
|---|---|
| Doron has never sold cosmetics | |

| | |
|---|---|
| nor had any desire to do so. Doron has not had, and does not have, a distribution channel to sell anything other than his adult content. | |
| **Moving Party's Response:**<br>    Defendant has not provided any evidence to substantiate his claim.  An individual emailed Doron Nottea "want[ing] to sell cosmetics on [Nottea's] distribution channel." Ex. 35. | |
|     In Exhibit 43 to the MSJ, Stephan Bauer of SBM Management, Inc. appears to have been attempting to communicate information to Doron concerning marketing hard core online trial and offers business. Although Doron cannot speculate as to what Mr. Bauer intended, any reference to selling "hard core" items refers only to Doron's adult content businesses. | Doron Decl., ¶40 |
| **Moving Party's Response:**<br>    Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim.  The document speaks for itself. In any event, as the email indicates, Doron was involved in "hard core online trial and offers biz."  Ex. 43. | |
|     Doron has reviewed the purported text message to which the FTC refers in Paragraph 34(j) of its Statement of Uncontroverted Facts. The text message was not sent to or received by Doron. Doron had never seen this message prior to this litigation. Reading the wording makes it clear that the description and interpretation that the FTC makes of the document is wrong. | Doron Decl., ¶¶41, 44. |
| **Moving Party's Response:**<br>    Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim.  Doron swore the phone number is his and the evidence shows that to be his email address. | |

| | |
|---|---|
| The FTC makes reference to several emails upon which Doron is listed as a "cc" recipient. Doron cannot control or influence who sends emails to him, however the emails referenced by the FTC show that he did not respond to emails concerning functions that are not part of his bookkeeping responsibilities (such as marketing of products, solicitation by vendors to provide services, and the like). Doron has reviewed various documents that the FTC refers to in its motion that the FTC claims pertain to Doron. If Doron did not respond to an email it clearly did not have anything to do with him nor did he involve himself in matters that were not part of his responsibilities. | Doron Decl., ¶42 |

**Moving Party's Response:**
Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim.  Doron being identified in the emails show his involvement in the common enterprise.

| | |
|---|---|
| Doron has reviewed all of the exhibits upon which the FTC relies with regard to its claims against him, as set forth in its Statement of Uncontroverted Facts at Paragraphs 34, 39 and 43. Doron does not recall ever having seen the following exhibit numbers prior to this litigation: 52, 57, 58, 151, 329, 330, 331, 333, 343, 406, 414, 449 and 531. | Doron Decl., ¶44 |

**Moving Party's Response:**
Other than his self-serving conclusory declaration, Defendant has not provided any evidence to substantiate his claim.  The documents speak for themselves.

Respectfully submitted,

PLAINTIFF'S RESPONSE TO DEFENDANT DORON NOTTEA'S
STATEMENT OF GENUINE DISPUTES

1
2
3    Dated: 5/13/16                              /s/ *Reid Tepfer*
4                                                REID A. TEPFER
5                                                LUIS H. GALLEGOS
6                                                Attorneys for the Plaintiff
7                                                Federal Trade Commission
8                                                1999 Bryan Street, Suite 2150
9                                                Dallas, Texas 75201
10                                               (214) 979-9395 (Tepfer)
11                                               (214) 979-9383 (Gallegos)
12                                               (214) 953-3079 (facsimile)
13                                               rtepfer@ftc.gov
14                                               lgallegos@ftc.gov
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 13, 2015, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea and*
*Roi Rueveni*

Robert Esensten
Esensten Law
12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
resensten@esenstenlaw.com
*Counsel for Doron Nottea and Motti*
*Nottea*

Jeffrey Benice
Law Offices of Jeffrey S. Benice
A Professional Law Corporation
3080 Bristol Street
Sixth Floor, Suite 630

Costa Mesa, CA 92626
Telephone: (714) 641-3600 Ext. 214
*Counsel for Igor Latsanovski and*
*CalEnergy, Inc*

Sagar Parikh
Beverly Hills Law Corp. PC
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
SP@BeverlyHillsLawCorp.com
*Attorney for Paul Medina, Secured*
*Merchants, LLC,*
*and Chargeback Armor, Inc.*

Charlene Cantrell Koonce
Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
charlene.koonce@solidcounsel.com
*Receiver*

Kelly M. Crawford
Scheef and Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
kelly.crawford@solidcounsel.com
*Counsel to Receiver*

/S/ REID TEPFER
REID TEPFER