Jeffrey S. Benice, Esq., State Bar No. 81583
LAW OFFICES OF JEFFREY S. BENICE
*A Professional Law Corporation*
3080 Bristol Street
Sixth Floor, Suite 630
Costa Mesa, California 92626
Telephone No.: (714) 641-3600
Facsimile No.: (714) 641-3601
Website: www.JeffreyBenice.com
E-Mail: JSB@JeffreyBenice.com

Attorneys for Defendants,
Igor Latsanovski and Calenergy, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | **CASE NO. CV 15-04527 GW (PLAx)** |
| Plaintiff, | **DEFENDANTS IGOR LATSANOVSKI AND CALENERGY, INC.'S MEMORANDUM OF FACTS AND CONTENTIONS OF LAW** |
| v. | |
| BUNZAI MEDIA GROUP INC., et al., | **Trial Date:** June 21, 2016 |
| | **Time:** 8:30 A.M. |
| Defendants. | **Courtroom:** 10 |
| | [Assigned for All Purposes to the Honorable George H. Wu] |
| | [First Amended Complaint Filed: October 9, 2015] |

**DEFENDANTS LATSANOVSKI AND CALENERGY'S MEMORANDUM OF FACTS AND CONTENTIONS OF LAW**

1    Pursuant to Local Rule 16-4, Defendants Igor Latsanovski and Calenergy, Inc. hereby

2  submit this memorandum.

3                                    1.

4                        **CONTENTIONS OF FACT**

5  *A.*    ***Count One: Deceptive Omissions.***

6        1.    Defendants Latsanovski and Calenergy were solely investors who loaned $500,000

7  in principal to defendant Bunzai.

8        2.    Defendants actually received $317,000 in investment return on the $500,000

9  investment and were repaid the $500,000.

10       3.    Defendants had no involvement in the day to day operations of defendant Bunzai

11       4.    Defendants had no knowledge of or involvement in Defendant Bunzai's alleged

12  wrongful activity and did not recklessly disregard such conduct

13       5.    Defendant Latsanovski, Calenergy's CEO, did not play any role in the operation of

14  the internet skincare business.  Latsanovski never spoke to any customers; was not involved in the

15  day to day operations of the internet skincare business; had no involvement in the marketing or

16  advertising of the skincare products; never received or reviewed any reports regarding customer

17  complaints; and had no knowledge of the web based advertising used by defendant Bunzai.

18  Defendants Alon and Bond actually operated and controlled Defendant Bunzai and made all

19  operational decisions.  Neither Calenergy nor Defendant Latsanovski received any money from

20  consumers directly.

21       6.    The amount of Defendant Latsanovski's assets impacted by the TRO and asset

22  freeze far exceeds the amount he made from his loan to Bunzai. In total, over $3.1 million of

23  Latsanovski's assets have been impacted by the asset freeze.  Latsanovski's $3.1 million home is

24  subject to the freeze and his personal bank accounts (which contained approximately $50,000)

25  have been frozen.

26       7.    Defendant Latsanovski's role in unrelated third parties Sunset Holdings Partners

27  LLC, ComicFix LLC, and Vastpay LLC was solely to locate third party investors who would be

28  willing to provide funds to these businesses. None of these businesses received funds from

                                    1
─────────────────────────────────────────────
DEFENDANTS LATSANOVSKI AND CALENERGY'S MOTION FOR SUMMARY JUDGMENT

Defendant Bunzai.  As a result of the asset freeze, these legitimate businesses have had their bank accounts frozen even though  (a) these businesses are completely unrelated to the alleged internet skincare business, (b) were funded by unrelated sources of income; and/or (c) were not run by Defendants Calenergy or Latsanovski.

8.    Unrelated third party, Sunset Holding Partner, LLC ("Sunset") is a real estate investment company that was formed in January 2015, well after the business entities involved in the skincare business were dissolved.  But its Well Fargo account ($212,000) and real estate assets valued in excess of $5 million were frozen in September 2015, even though all of the funds frozen came from outside real estate investors.

**B.    _Count Two:  Deceptive Representation Re False "Risk Free" Trial Claim_.**

1.    Defendants Latsanovski and Calenergy were solely investors who loaned $500,000 in principal to defendant Bunzai.

2.    Defendants actually received $317,000 in investment return on the $500,000 investment and were repaid the $500,000.

3.    Defendants had no involvement in the day to day operations of defendant Bunzai

4.    Defendants had no knowledge of or involvement in Defendant Bunzai's alleged wrongful activity and did not recklessly disregard such conduct

5.    Defendant Latsanovski, Calenergy's CEO, did not play any role in the operation of the internet skincare business.  Latsanovski never spoke to any customers; was not involved in the day to day operations of the internet skincare business; had no involvement in the marketing or advertising of the skincare products; never received or reviewed any reports regarding customer complaints; and had no knowledge of the web based advertising used by defendant Bunzai. Defendants Alon and Bond actually operated and controlled Defendant Bunzai and made all operational decisions.  Neither Calenergy nor Defendant Latsanovski received any money from consumers directly.

6.    The amount of Defendant Latsanovski's assets impacted by the TRO and asset freeze far exceeds the amount he made from his loan to Bunzai. In total, over $3.1 million of Latsanovski's assets have been impacted by the asset freeze.  Latsanovski's $3.1 million home is

2

1  subject to the freeze and his personal bank accounts (which contained approximately $50,000)

2  have been frozen.

3         7.     Defendant Latsanovski's role in unrelated third parties Sunset Holdings Partners

4  LLC, ComicFix LLC, and Vastpay LLC was solely to locate third party investors who would be

5  willing to provide funds to these businesses. None of these businesses received funds from

6  Defendant Bunzai.  As a result of the asset freeze, these legitimate businesses have had their bank

7  accounts frozen even though  (a) these businesses are completely unrelated to the alleged internet

8  skincare business, (b) were funded by unrelated sources of income; and/or (c) were not run by

9  Defendants Calenergy or Latsanovski.

10         8.     Unrelated third party, Sunset Holding Partner, LLC ("Sunset") is a real estate

11  investment company that was formed in January 2015, well after the business entities involved in

12  the skincare business were dissolved.  But its Well Fargo account ($212,000) and real estate assets

13  valued in excess of $5 million were frozen in September 2015, even though all of the funds frozen

14  came from outside real estate investors.

15  **C.**     ***Count Three: Deceptive Representation Re False Better Business Bureau Accreditation***

16       ***And Rating Claims.***

17         1.     Defendants Latsanovski and Calenergy were solely investors who loaned $500,000

18  in principal to defendant Bunzai.

19         2.     Defendants actually received $317,000 in investment return on the $500,000

20  investment and were repaid the $500,000.

21         3.     Defendants had no involvement in the day to day operations of defendant Bunzai

22         4.     Defendants had no knowledge of or involvement in Defendant Bunzai's alleged

23  wrongful activity and did not recklessly disregard such conduct

24         5.     Defendant Latsanovski, Calenergy's CEO, did not play any role in the operation of

25  the internet skincare business.  Latsanovski never spoke to any customers; was not involved in the

26  day to day operations of the internet skincare business; had no involvement in the marketing or

27  advertising of the skincare products; never received or reviewed any reports regarding customer

28  complaints; and had no knowledge of the web based advertising used by defendant Bunzai.

3

Defendants Alon and Bond actually operated and controlled Defendant Bunzai and made all operational decisions.  Neither Calenergy nor Defendant Latsanovski received any money from consumers directly.

6.      The amount of Defendant Latsanovski's assets impacted by the TRO and asset freeze far exceeds the amount he made from his loan to Bunzai. In total, over $3.1 million of Latsanovski's assets have been impacted by the asset freeze.  Latsanovski's $3.1 million home is subject to the freeze and his personal bank accounts (which contained approximately $50,000) have been frozen.

7.      Defendant Latsanovski's role in unrelated third parties Sunset Holdings Partners LLC, ComicFix LLC, and Vastpay LLC was solely to locate third party investors who would be willing to provide funds to these businesses. None of these businesses received funds from Defendant Bunzai.  As a result of the asset freeze, these legitimate businesses have had their bank accounts frozen even though  (a) these businesses are completely unrelated to the alleged internet skincare business, (b) were funded by unrelated sources of income; and/or (c) were not run by Defendants Calenergy or Latsanovski.

8.      Unrelated third party, Sunset Holding Partner, LLC ("Sunset") is a real estate investment company that was formed in January 2015, well after the business entities involved in the skincare business were dissolved.  But its Well Fargo account ($212,000) and real estate assets valued in excess of $5 million were frozen in September 2015, even though all of the funds frozen came from outside real estate investors.

**D.      *Count Four: Unfairness.***

1.      Defendants Latsanovski and Calenergy were solely investors who loaned $500,000 in principal to defendant Bunzai.

2.      Defendants actually received $317,000 in investment return on the $500,000 investment and were repaid the $500,000.

3.      Defendants had no involvement in the day to day operations of defendant Bunzai

4.      Defendants had no knowledge of or involvement in Defendant Bunzai's alleged wrongful activity and did not recklessly disregard such conduct

5.      Defendant Latsanovski, Calenergy's CEO, did not play any role in the operation of the internet skincare business.  Latsanovski never spoke to any customers; was not involved in the day to day operations of the internet skincare business; had no involvement in the marketing or advertising of the skincare products; never received or reviewed any reports regarding customer complaints; and had no knowledge of the web based advertising used by defendant Bunzai. Defendants Alon and Bond actually operated and controlled Defendant Bunzai and made all operational decisions.  Neither Calenergy nor Defendant Latsanovski received any money from consumers directly.

6.      The amount of Defendant Latsanovski's assets impacted by the TRO and asset freeze far exceeds the amount he made from his loan to Bunzai. In total, over $3.1 million of Latsanovski's assets have been impacted by the asset freeze.  Latsanovski's $3.1 million home is subject to the freeze and his personal bank accounts (which contained approximately $50,000) have been frozen.

7.      Defendant Latsanovski's role in unrelated third parties Sunset Holdings Partners LLC, ComicFix LLC, and Vastpay LLC was solely to locate third party investors who would be willing to provide funds to these businesses. None of these businesses received funds from Defendant Bunzai.  As a result of the asset freeze, these legitimate businesses have had their bank accounts frozen even though  (a) these businesses are completely unrelated to the alleged internet skincare business, (b) were funded by unrelated sources of income; and/or (c) were not run by Defendants Calenergy or Latsanovski.

8.      Unrelated third party, Sunset Holding Partner, LLC ("Sunset") is a real estate investment company that was formed in January 2015, well after the business entities involved in the skincare business were dissolved.  But its Well Fargo account ($212,000) and real estate assets valued in excess of $5 million were frozen in September 2015, even though all of the funds frozen came from outside real estate investors.

**E.     _Count Five: ROSCA._**

1.      Defendants Latsanovski and Calenergy were solely investors who loaned $500,000 in principal to defendant Bunzai.

**DEFENDANTS LATSANOVSKI AND CALENERGY'S MOTION FOR SUMMARY JUDGMENT**

2.      Defendants actually received $317,000 in investment return on the $500,000 investment and were repaid the $500,000.

3.      Defendants had no involvement in the day to day operations of defendant Bunzai

4.      Defendants had no knowledge of or involvement in Defendant Bunzai's alleged wrongful activity and did not recklessly disregard such conduct

5.      Defendant Latsanovski, Calenergy's CEO, did not play any role in the operation of the internet skincare business.  Latsanovski never spoke to any customers; was not involved in the day to day operations of the internet skincare business; had no involvement in the marketing or advertising of the skincare products; never received or reviewed any reports regarding customer complaints; and had no knowledge of the web based advertising used by defendant Bunzai. Defendants Alon and Bond actually operated and controlled Defendant Bunzai and made all operational decisions.  Neither Calenergy nor Defendant Latsanovski received any money from consumers directly.

6.      The amount of Defendant Latsanovski's assets impacted by the TRO and asset freeze far exceeds the amount he made from his loan to Bunzai. In total, over $3.1 million of Latsanovski's assets have been impacted by the asset freeze.  Latsanovski's $3.1 million home is subject to the freeze and his personal bank accounts (which contained approximately $50,000) have been frozen.

7.      Defendant Latsanovski's role in unrelated third parties Sunset Holdings Partners LLC, ComicFix LLC, and Vastpay LLC was solely to locate third party investors who would be willing to provide funds to these businesses. None of these businesses received funds from Defendant Bunzai.  As a result of the asset freeze, these legitimate businesses have had their bank accounts frozen even though  (a) these businesses are completely unrelated to the alleged internet skincare business, (b) were funded by unrelated sources of income; and/or (c) were not run by Defendants Calenergy or Latsanovski.

8.      Unrelated third party, Sunset Holding Partner, LLC ("Sunset") is a real estate investment company that was formed in January 2015, well after the business entities involved in the skincare business were dissolved.  But its Well Fargo account ($212,000) and real estate assets

DEFENDANTS LATSANOVSKI AND CALENERGY'S MOTION FOR SUMMARY JUDGMENT

1  valued in excess of $5 million were frozen in September 2015, even though all of the funds frozen

2  came from outside real estate investors.

3  **F.**    **_Count Six: EFTA Count._**

4      1.    Defendants Latsanovski and Calenergy were solely investors who loaned $500,000

5  in principal to defendant Bunzai.

6      2.    Defendants actually received $317,000 in investment return on the $500,000

7  investment and were repaid the $500,000.

8      3.    Defendants had no involvement in the day to day operations of defendant Bunzai

9      4.    Defendants had no knowledge of or involvement in Defendant Bunzai's alleged

10  wrongful activity and did not recklessly disregard such conduct

11      5.    Defendant Latsanovski, Calenergy's CEO, did not play any role in the operation of

12  the internet skincare business.  Latsanovski never spoke to any customers; was not involved in the

13  day to day operations of the internet skincare business; had no involvement in the marketing or

14  advertising of the skincare products; never received or reviewed any reports regarding customer

15  complaints; and had no knowledge of the web based advertising used by defendant Bunzai.

16  Defendants Alon and Bond actually operated and controlled Defendant Bunzai and made all

17  operational decisions.  Neither Calenergy nor Defendant Latsanovski received any money from

18  consumers directly.

19      6.    The amount of Defendant Latsanovski's assets impacted by the TRO and asset

20  freeze far exceeds the amount he made from his loan to Bunzai. In total, over $3.1 million of

21  Latsanovski's assets have been impacted by the asset freeze.  Latsanovski's $3.1 million home is

22  subject to the freeze and his personal bank accounts (which contained approximately $50,000)

23  have been frozen.

24      7.    Defendant Latsanovski's role in unrelated third parties Sunset Holdings Partners

25  LLC, ComicFix LLC, and Vastpay LLC was solely to locate third party investors who would be

26  willing to provide funds to these businesses. None of these businesses received funds from

27  Defendant Bunzai.  As a result of the asset freeze, these legitimate businesses have had their bank

28  accounts frozen even though  (a) these businesses are completely unrelated to the alleged internet

7

**DEFENDANTS LATSANOVSKI AND CALENERGY'S MOTION FOR SUMMARY JUDGMENT**

1   skincare business, (b) were funded by unrelated sources of income; and/or (c) were not run by

2   Defendants Calenergy or Latsanovski.

3        8.    Unrelated third party, Sunset Holding Partner, LLC ("Sunset") is a real estate

4   investment company that was formed in January 2015, well after the business entities involved in

5   the skincare business were dissolved.  But its Well Fargo account ($212,000) and real estate assets

6   valued in excess of $5 million were frozen in September 2015, even though all of the funds frozen

7   came from outside real estate investors.

8   **G.**    ***Common Enterprise Liability.***

9        1.    No evidence exists that Defendants acted in concert with defendant Bunzai to

10   violate the FTC Act, Defendants are liable if at all to only disgorgement of the sums they directly

11   received from defendant Bunzai during the period 2010-2015.  That sum is $317, See, *FTC v.*

12   *Commerce Planet, Inc*., 2016 U.S. App. LEXIS 3992, 2016-1 Trade Reg. Rep. (CCH) P79,526

13   (9th Cir. Cal. Mar. 3, 2016).

14        2.    No evidence exists the Defendants "*participated directly in*" or controlled the

15   alleged unlawful acts and had actual knowledge of the misrepresentations or were recklessly

16   indifferent to them. The evidence is undisputed that Defendants loaned Defendant Bunzai

17   $500,000 during the period 2010 to 2015; that the full principal amount of $500,000 was repaid by

18   Defendant Bunzai; and $317,000 in interest on the investment return on the $500,000 loan was

19   repaid.

20        3.    To the extent Defendants are liable at all it is solely for disgorgement of the

21   $317,000 they received for Defendant Bunzai – nothing more.  Defendants accordingly seek partial

22   summary judgment on this issue. *See, e.g., FTC v. Burnlounge, Inc*., 584 Fed. Appx. 315, 317 (9th

23   Cir. 2014) (Affirming district court's order that a defendant who raised capital necessary to create

24   the defendant corporation; owned stock in the corporation; and held a position in the organization;

25   "*likely ... had actual knowledge or was at least recklessly indifferent to the truth of the*

26   *misrepresentations made to consumers*" disgorge "*all monies and other items of enrichment which*

27   *he obtained from Burnlounge's operations*.")  This Court has "*broad authority to fashion*

28   *appropriate remedies for violations of the Act. [and] it includes the 'authority to grant any*

**DEFENDANTS LATSANOVSKI AND CALENERGY'S MOTION FOR SUMMARY JUDGMENT**

1  *ancillary relief necessary to accomplish complete justice.*'" <u>FTC v. Pantron Comp.</u>, 33 *F.3d* 1088,

2  1102 (9th Cir. 1994).  Such ancillary relief may include restitution or disgorgement. *Id*. at w.4.

3    4. Because of Defendants sole involvement in Defendant Bunzai's operations was as a

4  lender of only $500,000, they should be subject solely to disgorgement of the $317,000 they

5  received as a return on their $500,000 investment.

6  ***H. Individual  Liability.***

7    1. The Ninth Circuit has established a two-pronged test for determining when an

8  individual may be held personally liable for corporate violation of the FTC Act.  *The test requires*

9  *the FTC to prove that the individual: (1) participated directly in, or had the authority to control,*

10  *the unlawful acts or practices at issue;* ***and*** *(2) had actual knowledge of the misrepresentations*

11  *involved, was recklessly indifferent to the truth or falsity of the misrepresentations, or was aware*

12  *of a high probability of fraud and intentionally avoided learning the truth. See,* <u>FTC v. Network</u>

13  <u>Services Depot, Inc.</u>, 617 *F.3d* 1127, 1138-39 (9th Cir. 2010).

14    Defendants Latsanovski and Calenergy did not engage in conduct satisfying the two-

15  pronged test.  Thus, as a matter of law they have no liability arising from the FTC's claims

16  asserted in the FAC.

17  ***I. Bunzai Website Did not Violate the FTC Act (or Any Other Law).***

18    The Bunzai website used to generate internet sales was compliant with the FTC Act and all

19  other applicable law.  All terms of sale of AuraVie products were fully disclosed to the consumer.

20  The instructions to purchase products were clear; as was the risk free trial period.  No misleading

21  terms were included on the website.

22             **2.**

23        <u>**CONTENTIONS OF LAW**</u>

24    1. No evidence exists that Defendant Latsanovski (1) participate directly in, or had the

25  authority to control, the unlawful acts or practices alleged in the first amended complaint; and (2)

26  had actual knowledge of the misrepresentations involved, was recklessly indifferent to the truth or

27  falsity of the misrepresentations, or was aware of a high probability of fraud and intentionally

28  avoided learning the truth. *See,* <u>FTC v. Network Services Depot, Inc.</u>, 617 *F.3d* 1127, 1138-1139

1 | (9th Cir. 2010).

2        2. As a matter of law neither Defendants Latsanovski nor Calenergy are jointly and

3 severally liable with the other defendants for the consumer damages or any other damages claimed

4 by Plaintiff FTC.  See, <u>FTC v. Stefanchik</u>, 559 F.3d 924, 931 (9th Cir. 2009).

5        3.  As a matter of law Defendants Latsanovski and Calenergy are only liable, if at all for

6 equitable disgorgement of the sums they received from defendant Bunzai (and affiliates) during the

7 period 2010 to 2015; $317,000.  *See, FTC v. Burnlounge*, 584 Fed. Appx. 315 (9th Cir. 2014).

10 DATED: May 23, 2016                    Respectfully submitted,

_____

LAW OFFICES OF JEFFREY S. BENICE
Jeffrey S. Benice
Attorney for Defendants,
Igor Latsanovski and Calenergy, Inc.

**DEFENDANTS LATSANOVSKI AND CALENERGY'S MOTION FOR SUMMARY JUDGMENT**

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 23, 2016, a true and correct copy of the foregoing document described as DEFENDANTS IGOR LATSANOVSKI AND  CALENERGY, INC.'S MEMORANDUM OF FACTS AND CONTENTIONS OF LAW was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court.   The attorneys listed below were served by pursuant to the ECF notice generated by the Court.

**_Local Counsel For Receiver_**
Tom Vidal
Michael Weiss
Nina Nahal Ameri
Abrams Garfinkle Margolis Bergson
5900 Wilshire Blvd., Suite 2250
Los Angeles, CA  90036
nameri@agmblaw.com

**_Counsel For Alon Nottea and Roi Rueveni_**
Robert M. Ungar
Crosswind Law
14724 Ventura Blvd., Penthouse
Sherman Oaks, CA  91403
rmu@crosswindlaw.com

**_Federal Trade Commission_**
Reid Tepfer
Luis Gallegos
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
rtpefer@ftc.gov
lgallegos@ftc.gov

**_Counsel For Doron Nottea and Motti Nottea_**
Randi R. Geffner
Esensten Law
12100 Wilshire Blvd.
Suite 1660
Los Angeles, CA  90025
Telephone:  (310) 273-3090
RGEFFNER@ESENSTEINLAW.COM

**_Counsel For Chargeback Armor, Inc._**
Sagar Parikh
Beverly Hills Law Corp.
433 N. Camden Drive, 6th Floor
Beverly Hills, CA  90210
SP@BeverlyHillsLawCorp.com

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this May 23 of April, in Costa Mesa, California  92626.

_____
Javaise Escoto, Declarant

**DEFENDANTS LATSANOVSKI AND CALENERGY'S MOTION FOR SUMMARY JUDGMENT**