1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

9

10

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | **Case No.  CV 15-4527-GW(PLAx)** |
| **Plaintiff,** | **[PROPOSED] FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AS TO DEFENDANT ALON NOTTEA** |
| **v.** | |
| **BUNZAI MEDIA GROUP, INC.,** *et al.* | |
| **Defendants.** | |

11

12

13

14

15

Plaintiff, Federal Trade Commission ("FTC" or "Commission"), filed its

16

First Amended Complaint for Permanent Injunction and Other Equitable Relief

17

("Complaint") in this action on October 9, 2015, seeking a permanent injunction

18

and other equitable relief against 32 Defendants and one Relief Defendant. (Dkt.

19

235). Plaintiff's Complaint alleges that Defendants, acting as a common

20

enterprise, violated Section 5 of the Federal Trade Commission Act ("FTC Act"),

15 U.S.C. § 45; Section 4 of the Restore Online Shoppers' Confidence Act

1   ("ROSCA"), 15 U.S.C. § 8404; and Section 917(c) of the Electronic Funds

2   Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c).

3       On April 18, 2016, Plaintiff filed its Notice of Motion and Motion for

4   Summary Judgment Against Defendants Alon Nottea, Doron Nottea, Igor

5   Latsanovski, Alan Argaman, Secured Merchants, LLC, Calenergy, Inc., and Relief

6   Defendant Chargeback Armor, Inc. (Dkt. 353).[1] Plaintiff's motion was supported

7   by voluminous exhibits, including declarations, deposition transcripts, and

8   business records and communications of the Corporate Defendants. (Dkts. 353-1

9   through 353-32). Simultaneously, Defendants Igor Latsanovski and CalEnergy,

10  LLC and Defendants Alan Argaman, Secured Merchants, LLC, and Relief

11  Defendant Chargeback Armor, Inc. also moved for summary judgment and

12  provided exhibits, including declarations, deposition transcripts, and business

13  records. (Dkts. 352, 356-61; and Dkts. 354-55 ).

14      The Court, having granted partial summary judgment in favor of Plaintiff,

15  and having found that Plaintiff is entitled to the relief sought against Defendant

16  Alon Nottea for his deceptive acts and practices in connection with the Internet

17  marketing and sale of skincare products, makes findings and enters this Final

18  Judgment and Order for Permanent Injunction and Other Equitable Relief as to

19  Defendant Alon Nottea ("Order") as follows:

20  _____

[1] Due to a scrivener's error, Plaintiff's motion for summary judgment contained the incorrect title and, on April 19, 2016, Plaintiff filed a Notice of Errata. (Dkt. 364).

**[PROPOSED] FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AS TO DEFENDANT ALON NOTTEA**                                    **PAGE 2**

**THEREFORE, IT IS ORDERED as follows:**

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

A.    "**Acquirer**" means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system (*e.g.* Visa, MasterCard, American Express, and Discover) to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

B.    "**Charge**" or "**Charging**" means causing billing information to be submitted for payment, including against a consumer's credit card, debit card, bank account, phone bill, or other account, or otherwise attempting to collect money or other consideration.

C.    "**Clear and conspicuous**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.    In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be

presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      On a product label, the disclosure must be presented on the principal display panel.

6.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

7.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

8.     The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

9.     When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.     "**Credit Card Laundering**" means:

1.     Presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and any Defendant;

2.     Employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or

3.     Obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

E.    "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

F.    "**Continuity Plan**" means any plan, arrangement, or system in which a consumer is periodically charged for products or services *without* prior notification by the seller before each charge.

G.    "**Defendant**" means Alon Nottea.

H.    "**Electronic Fund Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.  Such term does not include:

1.    Any check guarantee or authorization service that does not directly result in a debit or credit to a consumer's account;

2.    Any transfer of funds, other than those processed by automated clearinghouse, made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and that is not designed primarily to transfer funds on behalf of a consumer;

3.      Any transaction the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the Securities and Exchange Commission;

4.      Any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a consumer and a financial institution for the purpose of covering an overdraft or maintaining an agreed upon minimum balance in the consumer's demand deposit account; or

5.      Any transfer of funds which is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution which is not pursuant to a prearranged plan and under which periodic or recurring transfers are not contemplated.

I.     "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services.

J.     "**Merchant**" means a person who is authorized under a written contract with an Acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services.

K.     "**Merchant Account**" means an account with an Acquirer that authorizes and allows a Merchant to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

L.   "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer or agreement.

M.   "**Preauthorized Electronic Fund Transfer**" as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(10), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

N.   "**Receiver**" means Charlene Koonce, the person appointed by the Court in this matter pursuant to the Temporary Restraining Order and the Preliminary Injunction.

## ORDER

## I.   BAN ON NEGATIVE OPTION SALES

**IT IS ORDERED** that Defendant is permanently restrained and enjoined from advertising, marketing, promoting, or offering for sale any good or service with a Negative Option Feature, whether directly or through an intermediary, including by consulting, planning, participating, facilitating, or advising.

## II.   PROHIBITED BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or

participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from:

A.      Before a customer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose, in a clear and conspicuous manner all material terms and conditions of any offer, including:

      1.      The amount, timing, and manner of all fees, charges, or other amounts that a consumer will be charged or billed, including but not limited to the date of the charge and whether it will be a credit card charge or checking account debit;

      2.      The dates that any limited time sales offer begins and ends;

      3.      The identity of the seller, including the seller's name, physical address, and customer service telephone number;

      4.      The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer; and

      5.      Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer.

B.      Before a customer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose, in a clear and conspicuous

1   manner all material terms and conditions of any refund or cancellation policies,

2   including:

3       1.    The specific steps and means by which such requests must be

4           submitted;

5       2.    The customer service telephone number that a customer must call to

6           cancel or return goods or services;

7       3.    The email address, web address, or street address to which such

8           requests must be directed;

9       4.    Any mechanism that customers must use to return any goods or

10           services, including any requirement for specific tracking methods or

11           delivery confirmation for a package;

12       5.    If there is any policy of not making refunds or cancellations,

13           including any requirement that a product will not be accepted for

14           return or refund unless it is unopened and in re-sellable condition, a

15           statement regarding this policy; and

16       6.    The date by which a customer is required to request a refund;

17   C.    Misrepresenting, or assisting others in misrepresenting, expressly or by

18   implication, any fact material, including:

19       1.    That a good or service is free, a bonus, a gift, a trial, without cost;

20

2.    That a good or service is available for a minimal processing, service, or administrative fee or without further obligation;

3.    That a purchase is "risk free" or offered with a satisfaction guarantee or money-back guarantee;

4.    That the seller is accredited or rated favorably by the Better Business Bureau;

5.    A seller's affiliation with, or endorsement or sponsorship by, any person or entity;

6.    The amount that a consumer's credit or debit card will be charged and the timing of the charge(s);

7.    That a transaction has been authorized by a consumer;

8.    The dates that any limited time sales offer begins and ends;

9.    The requirements or terms of the seller's refund or cancellation policies;

10.    The identity of the seller, including the seller's name, physical address, and customer service telephone number;

11.    The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;

12.    Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer; and

13.     Any material aspect of the performance, efficacy, nature, or central characteristics of a good or service.

D.     Providing false information to any bank or other billing entity, directly or indirectly, to contest a consumer's request for a refund, cancellation, chargeback, or reversal of payment;

E.     Failing to obtain a consumer's express informed consent by causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services without the consumer's express verifiable authorization, which shall include: (a) the customer's signature, including an electronic or digital form of signature that is recognized as a valid signature under federal law; or (b) express oral authorization that is audio-recorded and made available to the customer and the customer's bank or other billing entity and that evidences clearly both the customer's authorization of payment and the customer's receipt of the following information: (i) The number of debits, charges, or payments (if more than one); (ii) the date(s) the debit(s), charge(s), or payment(s) will be submitted for payment; (iii) the amounts of the debit(s), charge(s), or payment(s); (iv) the customer's name; (v) the customer's billing information identified with sufficient specificity such that the customer understands what account will be used to collect payment; (vi) identification of

the seller's name, physical address, and telephone number; (vii) the date of the customer's oral authorization.;

F.      Failing to obtaining written authorization signed or similarly authenticated from consumers for Preauthorized Electronic Fund Transfers from the consumer's account; or

G.      Failing to provide a copy of a written authorization signed or similarly authenticated by a consumer for Preauthorized Electronic Fund Transfers from the consumer's account.

## III.    PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from Credit Card Laundering.

## IV.    MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that a Judgment in favor of the Commission against Defendant Alon Nottea, as equitable monetary relief, shall be determined, and a separate order entered, if any, after trial of the issue of the amount of consumer injury.

1

2

## V.   CUSTOMER INFORMATION

3

**IT IS FURTHER ORDERED** that Defendant, his officers, agents,

4

employees, and attorneys, and all other persons in active concert or participation

5

with any of them, who receive actual notice of this Order, whether acting directly

6

or indirectly, are permanently restrained and enjoined from directly or indirectly:

7

A.      Failing to provide sufficient consumer information to enable the

8

Commission to efficiently administer consumer redress. If a representative of the

9

Commission requests in writing any information related to redress, Defendant

10

must provide it, in the form prescribed by the Commission, within 14 days.

11

B.       Disclosing, using, or benefitting from consumer information, including the

12

name, address, telephone number, email address, Social Security number, other

13

identifying information, or any data that enables access to a consumer's account

14

(including a credit card, bank account, or other financial account), that any

15

Defendant obtained prior to entry of this Order in connection with the sale of any

16

product through a negative option continuity plan; and

17

C.      Failing to destroy such consumer information in all forms in their

18

possession, custody, or control within 30 days after receipt of written direction to

19

do so from a representative of the Commission.

20

Provided, however, that consumer information need not be disposed of, and

may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VI.   ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant obtain acknowledgments of receipt of this Order:

A.     Within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 20 years after entry of this Order, Defendant, for any business that he, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which each Defendant delivered a copy of this Order, such Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VII.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant make timely submissions to the Commission:

A.     One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1.     Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with such Defendant; (b) identify all of such Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant which Defendant must describe if he knows or should know due to his own involvement; (d) describe in detail whether and how each Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant

performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.     For 20 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.     Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any entity that such Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.     Additionally, Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Defendant must submit to the Commission notice of the filing of any

bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  *FTC v. BunZai Media Group, Inc*., *et al*. FTC File No. X150047.

## VIII.   RECORDKEEPING

   **IT IS FURTHER ORDERED** that Defendant must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant for any business that such Defendant, individually or

collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     Accounting records showing the revenues from all goods or services sold;

B.     Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.     All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.     A copy of each unique advertisement or other marketing material, including Internet and social media advertising or webpages.

## IX.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring each Defendant's compliance with this Order, including any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of the Commission, Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for

depositions; and produce documents for inspection and copying.  The

Commission is also authorized to obtain discovery, without further leave of court,

using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30

(including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to

communicate directly with Defendant. Defendant must permit representatives of

the Commission to interview any employee or other person affiliated with any

such Defendant who has agreed to such an interview.  The person interviewed

may have counsel present.

C.      The Commission may use all other lawful means, including posing, through

its representatives as consumers, suppliers, or other individuals or entities, to any

Defendant or any individual or entity affiliated with any such Defendant, without

the necessity of identification or prior notice.  Nothing in this Order limits the

Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of

the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## X.     CONSUMER REPORTING AGENCIES

Upon written request from a representative of the Commission, any

consumer reporting agency must furnish consumer reports concerning Defendant,

pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C.

§1681b(a)(1).

## XI.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED this \_\_\_ day of _____, 2016.**

_____
**UNITED STATES DISTRICT JUDGE**