DAVID C. SHONKA
Acting General Counsel

DAMA J. BROWN
Dbrown1@ftc.gov
Regional Director

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
EMILY ROBINSON
erobinson@ftc.gov; Tex. Bar No. 24046737
ZACHARY A. KELLER
zkeller@ftc.gov
Texas Bar No. 24087838 (pro hac vice pending)
Federal Trade Commission
1999 Bryan Street, Ste 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9386 (Robinson); (214) 979-9382 (Keller)
(214) 953-3079 (fax)
RAYMOND McKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Ste 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)
 Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No.  CV 15-4527-GW(PLAx) |
| **Plaintiff,** | **[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |
| **v.** | |
| **BUNZAI MEDIA GROUP, INC.,** | |

1  *et al.*

   **Defendants.**

2

3        Plaintiff, Federal Trade Commission ("FTC" or "Commission"), filed its

4  Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") on

5  June 16, 2015. (Dkt. 3). Plaintiff filed its First Amended Complaint for Permanent

6  Injunction and Other Equitable Relief ("Amended Complaint") on October 9,

7  2015, seeking a permanent injunction and other equitable relief against 32

8  Defendants and one Relief Defendant. (Dkt. 235). Plaintiff's Complaint and

9  Amended Complaint are identical except for the parties named. Plaintiff's

10  Complaint and Amended Complaint allege that Defendants, acting as a common

11  enterprise, violated Section 5 of the Federal Trade Commission Act ("FTC Act"),

12  15 U.S.C. § 45; Section 4 of the Restore Online Shoppers' Confidence Act

13  ("ROSCA"), 15 U.S.C. § 8404; and Section 917(c) of the Electronic Funds

14  Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c). The FTC now having filed its

15  Motion for Entry of Default Judgment and Order for Permanent Injunction and

16  Other Equitable Relief (Motion), and the Court having considered the FTC's

17  Motion, supporting exhibits, and the entire record in this matter, the FTC's

18  Motion is hereby granted, and

19  THEREFORE, IT IS ORDERED as follows:

20

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

# FINDINGS

1.      This is an action by the Commission under Section 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 5 of ROSCA, 15 U.S.C. § 8404, and Section 917(c) of EFTA, 15 U.S.C. § 1693o(c).  The Commission's Complaint and Amended Complaint seek permanent injunctive relief against Defendants in connection with online sale of skincare products through a negative option continuity plan in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, and Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and equitable monetary relief in the form of consumer redress and/or disgorgement.  Pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Commission has the authority to seek the relief contained herein.

2.      This Court has jurisdiction over the subject matter of this case and jurisdiction over the Defendants, and venue in this district is proper.

3.      The Commission's Complaint and Amended Complaint stated a claim upon which relief may be granted under Sections 5, 13, and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53, and 57b, and under ROSCA, 15 U.S.C. §8404, and EFTA, 15 U.S.C. §1693o(c).

4.      The activities of Defendants are "in or affecting commerce" as "commerce" is defined pursuant to Section 4 of the FTC Act, 15 U.S.C. § 44.

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

5.       The Defaulting Defendants were properly served with the Summons and Complaint or Amended Complaint in this matter.  The Defaulting Defendants failed to file any responsive pleading as required by Fed.R.Civ.P. 12(a).  On August 13, 2015, October 7, 2015, and May 5, 2016, the Clerk of Court entered defaults against Bunzai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; Kai Media, Inc.; Insight Media, Inc.; Secured Commerce, LLC, Shalita Holdings, Inc.; USM Products Inc.; All Star Beauty Products, Inc.; AMD Financial Network, Inc.; DMA Media Holdings, Inc.; Focus Media Solutions, Inc.; Merchant Leverage Group, Inc.; and Kristopher Bond (Dkts. 157, 158, 159, 229, 230, 417, and 418).

6.       The Ninth Circuit has held that "entities constitute a common enterprise when they exhibit either vertical or horizontal commonality – qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets or revenues." *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010). The Court finds that Defaulting Defendants participated as members of a common enterprise and:

          a.   conducted the business practices at issue through an interrelated

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

network of companies with common ownership, officers, managers, business functions, employees and office locations;

    b.  the companies commingled funds, used the same deceptive sales techniques, and had centralized record keeping; and

7.    The factual allegations in the Commission's Complaint and Amended Complaint are taken as true against Defaulting Defendants.  Those allegations and the evidence supporting them establish that, as members of a common enterprise, Defaulting Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, and Section 907(a) of EFTA, 15 U.S.C. § 1693e(a).

8.    The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as members of a common enterprise, Defaulting Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by failing to disclose, or disclose adequately, material terms and conditions of their offer, including:

    a.  that Defendants would use consumer's credit and debit card information to charge consumers the full cost of the trial products upon expiration of a limited trial period;

    b.  the dates on which the trial period began and ended;

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

     c.  that Defendants would automatically enroll consumers in a negative option continuity plan with additional charges;

     d.  the cost of the continuity plan, and the frequency and duration of the recurring charges;

     e.  the means consumers must use to cancel the negative option program to avoid additional charges; and

     f.  requirements of their refund policies.

9.     The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as members of a common enterprise, Defaulting Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by falsely representing, expressly or by implication, that consumers could try their products "risk free."

10.    The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as members of a common enterprise, Defaulting Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by falsely representing, expressly or by implication, that Defendants are accredited by  and have a rating of "A-" with the Better Business Bureau.

11.    The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as members of a common

1 enterprise, Defaulting Defendants violated Section 4 of ROSCA, 15 U.S.C. §

2 8403, by failing to:

3     a. clearly and conspicuously disclose all material terms of the negative

4        option feature of the skincare products transaction before obtaining

5        the consumer's billing information;

6     b. obtain the consumer's express informed consent to the negative

7        option feature before charging the consumer's credit card, debit card,

8        bank account, or other financial account for the transaction; and/or

9     c. provide simple mechanisms for a consumer to stop recurring charges

10        for skincare products to the consumer's credit card, debit card, bank

11        account, or other financial account.

12 12.    The Court finds that, in connection with the online sale of skincare products

13 through a negative option continuity plan and as members of a common

14 enterprise, Defaulting Defendants violated Section 907(a) of EFTA, 15 U.S.C. §

15 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), by:

16     a. debiting consumers' bank accounts on a recurring basis without

17        obtaining a written authorization signed or similarly authenticated

18        from consumers for preauthorized electronic fund transfers from their

19        accounts; and

20

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1           b.  debiting consumers' bank accounts on a recurring basis without

2              providing a copy of a written authorization signed or similarly

3              authenticated by the consumer for preauthorized electronic fund

4              transfers from the consumer's account

5 13.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), gives the FTC authority to

6 seek, and the Court the authority to grant, a permanent injunction.  In addition,

7 pursuant to its equitable authority, this Court can award "any ancillary relief

8 necessary to accomplish complete justice."  *FTC v. H.N. Singer, Inc.*, 668 F.2d

9 1107, 1111-13 (9th Cir. 1982).  It is proper in this case to enter a permanent

10 injunction to prevent a recurrence of Defaulting Defendants' violations of the FTC

11 Act, ROSCA, and EFTA, and to enter equitable monetary relief against

12 Defendants.

13 14.     The common enterprise's net sales (total sales minus refunds, returns, and

14 chargebacks) amounted to at least $75,624,030 from the conduct alleged in the

15 Commission's Amended Complaint.  Members of a common enterprise are jointly

16 and severally liable for the injury that they cause through their collective

17 practices.  *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000).

18 15.     The Commission is therefore entitled to equitable monetary relief against

19 Defaulting Defendants in the amount of $75,624,030, for which Defaulting

20

[PROPOSED] **DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF**

Defendants are jointly and severally liable.

16.     This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     "**Acquirer**" means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization  that operates or licenses a credit card system (*e.g.* Visa, MasterCard, American Express, and Discover) to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

B.     "**Charge**" or "**Charging**" means causing billing information to be submitted for payment, including against a consumer's credit card, debit card, bank account, phone bill, or other account, or otherwise attempting to collect money or other consideration.

C.     "**Clear and conspicuous**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.     A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.     An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.     In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.     On a product label, the disclosure must be presented on the principal display panel.

6.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

7.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

8.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

9.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.      "**Credit Card Laundering**" means:

1.      Presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and any Defendant;

2.      Employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a

transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or

      3.      Obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

E.      "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

F.      "**Continuity Plan**" means any plan, arrangement, or system in which a consumer is periodically charged for products or services *without* prior notification by the seller before each charge.

G.      "**Defendants**" means Defaulting Defendants and Alon Nottea, Motti Nottea, Doron Nottea, Igor Latsanovski, Oz Mizrahi, Roi Reuveni, Paul Medina, Alan Argaman, and CalEnergy, Inc.

H.      "**Defaulting Defendants**" means the Defaulting Individual Defendant and all of the Defaulting Corporate Defendants, individually, collectively, or in any combination.

      1.      "**Defaulting Corporate Defendants**" means Bunzai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.;

[**PROPOSED**] **DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; Kai Media, Inc.; Insight Media, Inc., Secured Commerce, LLC, Shalita Holdings, Inc.; USM Products, Inc.; All Star Beauty Products, Inc.; AMD Financial Network, Inc.; DMA Media Holdings, Inc.; Focus Media Solutions, Inc.; and Merchant Leverage Group, Inc.; and their successors and assigns.

  2. "**Defaulting Individual Defendant**" means Kristopher Bond, also known as Ray Ibbot.

I. "**Electronic Fund Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.  Such term does not include:

  1. Any check guarantee or authorization service that does not directly result in a debit or credit to a consumer's account;

  2. Any transfer of funds, other than those processed by automated clearinghouse, made by a financial institution on behalf of a consumer by means

of a service that transfers funds held at either Federal Reserve banks or other depository institutions and that is not designed primarily to transfer funds on behalf of a consumer;

3.      Any transaction the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the Securities and Exchange Commission;

4.      Any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a consumer and a financial institution for the purpose of covering an overdraft or maintaining an agreed upon minimum balance in the consumer's demand deposit account; or

5.      Any transfer of funds which is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution which is not pursuant to a prearranged plan and under which periodic or recurring transfers are not contemplated.

J.      "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services.

K.      "**Merchant**" means a person who is authorized under a written contract with an Acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services.

[**PROPOSED**] **DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

L.    "**Merchant Account**" means an account with an Acquirer that authorizes and allows a Merchant to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

M.    "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer or agreement.

N.    "**Preauthorized Electronic Fund Transfer**" as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(10), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

O.    "**Receiver**" means Charlene Koonce, the person appointed by the Court in this matter pursuant to the Temporary Restraining Order and the Preliminary Injunction.

## ORDER

### I.    BAN ON NEGATIVE OPTION SALES

**IT IS ORDERED** that Defaulting Defendants are permanently restrained and enjoined from advertising, marketing, promoting, or offering for sale any

good or service with a Negative Option Feature, whether directly or through an intermediary, including by consulting, planning, participating, facilitating, or advising.

## II.   PROHIBITED BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defaulting Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from:

A.     Before a customer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose, in a clear and conspicuous manner all material terms and conditions of any offer, including:

      1.     The amount, timing, and manner of all fees, charges, or other amounts that a consumer will be charged or billed, including but not limited to the date of the charge and whether it will be a credit card charge or checking account debit;

      2.     The dates that any limited time sales offer begins and ends;

      3.     The identity of the seller, including the seller's name, physical address, and customer service telephone number;

4.      The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer; and

5.      Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer.

B.      Before a customer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose, in a clear and conspicuous manner all material terms and conditions of any refund or cancellation policies, including:

1.      The specific steps and means by which such requests must be submitted;

2.      The customer service telephone number that a customer must call to cancel or return goods or services;

3.      The email address, web address, or street address to which such requests must be directed;

4.      Any mechanism that customers must use to return any goods or services, including any requirement for specific tracking methods or delivery confirmation for a package;

5.      If there is any policy of not making refunds or cancellations, including any requirement that a product will not be accepted for

return or refund unless it is unopened and in re-sellable condition, a

statement regarding this policy; and

6.      The date by which a customer is required to request a refund;

C.      Misrepresenting, or assisting others in misrepresenting, expressly or by

implication, any fact material, including:

1.      That a good or service is free, a bonus, a gift, a trial, without cost;

2.      That a good or service is available for a minimal processing, service,
        or administrative fee or without further obligation;

3.      That a purchase is "risk free" or offered with a satisfaction guarantee
        or money-back guarantee;

4.      That the seller is accredited or rated favorably by the Better Business
        Bureau;

5.      A seller's affiliation with, or endorsement or sponsorship by, any
        person or entity;

6.      The amount that a consumer's credit or debit card will be charged
        and the timing of the charge(s);

7.      That a transaction has been authorized by a consumer;

8.      The dates that any limited time sales offer begins and ends;

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

PAGE 18

9.     The requirements or terms of the seller's refund or cancellation policies;

10.    The identity of the seller, including the seller's name, physical address, and customer service telephone number;

11.    The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;

12.    Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer; and

13.    Any material aspect of the performance, efficacy, nature, or central characteristics of a good or service.

D.     Providing false information to any bank or other billing entity, directly or indirectly, to contest a consumer's request for a refund, cancellation, chargeback, or reversal of payment;

E.     Failing to obtain a consumer's express informed consent by causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services without the consumer's express verifiable authorization, which shall include: (a) the customer's signature, including an electronic or digital form of signature that is recognized as a valid signature under federal law; or (b) express oral authorization that is audio-recorded and made

available to the customer and the customer's bank or other billing entity and that evidences clearly both the customer's authorization of payment and the customer's receipt of the following information: (i) The number of debits, charges, or payments (if more than one); (ii) the date(s) the debit(s), charge(s), or payment(s) will be submitted for payment; (iii) the amounts of the debit(s), charge(s), or payment(s); (iv) the customer's name; (v) the customer's billing information identified with sufficient specificity such that the customer understands what account will be used to collect payment; (vi) identification of the seller's name, physical address, and telephone number; (vii) the date of the customer's oral authorization.;

F.      Failing to obtain written authorization signed or similarly authenticated from consumers for Preauthorized Electronic Fund Transfers from the consumer's account; or

G.      Failing to provide a copy of a written authorization signed or similarly authenticated by a consumer for Preauthorized Electronic Fund Transfers from the consumer's account.

## III.    PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

**IT IS FURTHER ORDERED** that Defaulting Defendants, Defaulting Defendants' officers, agents, employees, and attorneys, and all other persons in

active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from Credit Card Laundering.

## IV.   MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.   Judgment in the amount of **SEVENTY FIVE MILLION SIX HUNDRED AND TWENTY FOUR THOUSAND AND THIRTY Dollars ($75,624,030)** is entered in favor of the Commission against Defaulting Corporate Defendants, jointly and severally, as equitable monetary relief.

B.   Judgment in the amount of **FOURTY FIVE MILLION NINETY FIVE THOUSAND ONE HUNDRED AND TWENTY THREE Dollars ($45,095,123)** is entered in favor of the Commission against Defaulting Individual Defendant, jointly and severally, as equitable monetary relief.

C.   Defaulting Corporate Defendants are ordered to pay to the Commission the amount of **SEVENTY FIVE MILLION SIX HUNDRED AND TWENTY FOUR THOUSAND AND THIRTY Dollars ($75,624,030)**, within 7 days of entry of this Order.

D.   Defaulting Individual Defendant is ordered to pay to the Commission the

amount of **FOURTY FIVE MILLION NINETY FIVE THOUSAND ONE HUNDRED AND TWENTY THREE Dollars ($45,095,123)** within 7 days of entry of this Order.

## V.   ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.      Within 7 days of entry of this Order, Defaulting Defendants must submit their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers) to the Commission, for use in collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

B.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defaulting Defendants' practices alleged in the Amended Complaint. Any money not used for such equitable relief

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

is to be deposited to the U.S. Treasury as disgorgement. Defaulting Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VI.    CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defaulting Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly:

A.      Failing to provide sufficient consumer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defaulting Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.       Disclosing, using, or benefitting from consumer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), that any Defaulting Defendant obtained prior to entry of this Order in connection with the

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

sale of any product through a negative option continuity plan; and

C.      Failing to destroy such consumer information in all forms in their possession, custody, or control within 10 days after entry of this Order.

Provided, however, that consumer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## V.      TURNOVER OF ASSETS HELD BY THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial institution, business entity, or person that holds, controls, or maintains custody of any account or asset of Defaulting Defendants, or any account or asset held on behalf of, or for the benefit of, such Defaulting Defendant, shall turn over such account or asset to the Commission, by wire transfer pursuant to directions provided by counsel for the Commission, or as otherwise directed in writing by counsel for the Commission, within seven days of receiving a request by the Commission by any means, including, but not limited to, via facsimile.

## VII.      ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defaulting Defendants and obtain acknowledgments of receipt of this Order:

A.      Each Defaulting Defendant, within 7 days of entry of this Order, must

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 20 years after entry of this Order, each Defaulting Defendant, for any business that he, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which each Defaulting Defendant delivered a copy of this Order, such Defaulting Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VIII.    COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defaulting Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Defaulting Defendant must submit a compliance report, sworn under penalty of perjury:

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

PAGE 25

1.      Each Defaulting Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with such Defaulting Defendant; (b) identify all of such Defaulting Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

(c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant which Defaulting Defendants must describe if he knows or should know due to his own involvement; (d) describe in detail whether and how each Defaulting Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, each Defaulting Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defaulting Defendant performs services whether as an employee or otherwise and any entity in which such Defaulting Defendant has any ownership interest; and (c) describe in detail such Defaulting Defendant's

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 20 years after entry of this Order, each Defaulting Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

        1.      Each Defaulting Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any entity that such Defaulting Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

        2.      Additionally, each Defaulting Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defaulting Defendant performs services whether as an employee or otherwise and any entity in which such Defaulting Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Defaulting Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by

or against such Defaulting Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  *FTC v. BunZai Media Group, Inc*., et al. FTC File No. X150047.

## IX.    RECORDKEEPING

**IT IS FURTHER ORDERED** that each Defaulting Defendant must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, each Defaulting Defendant for any business that such Defaulting Defendant, individually or collectively with any other Defendants, is a

majority owner or controls directly or indirectly, must create and retain the following records:

A.    Accounting records showing the revenues from all goods or services sold;

B.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.    A copy of each unique advertisement or other marketing material, including Internet and social media advertising or webpages.

## X.    COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring each Defaulting Defendant's compliance with this Order, including any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission, each Defaulting Defendant must:  submit additional compliance

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Defaulting Defendants. Defaulting Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any such Defaulting Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to any Defaulting Defendant or any individual or entity affiliated with any such Defaulting Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XI.   CONSUMER REPORTING AGENCIES

Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning any

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

Defaulting Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XII.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this ___ day of _____, 2016.**

_____
**UNITED STATES DISTRICT JUDGE**