DAVID C. SHONKA
Acting General Counsel

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
ZACHARY A. KELLER
zkeller@ftc.gov; Tex. Bar No. 24087838
DAMA J. BROWN
Dbrown1@ftc.gov; Mi. Bar No. P54775

Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9382 (Keller); (214) 979-9374 (Brown)
(214) 953-3079 (fax)

RAYMOND MCKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Ste 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**BUNZAI MEDIA GROUP, INC.**, *et al.*,<br><br>**Defendants.** | Case No. CV 15-4527-GW(PLAx)<br><br>**SECOND JOINT STATUS REPORT CONCERNING SETTLEMENT** |

**FTC's Position[1]**

Relief Defendant Chargeback Armor, Inc. ("CBA"), asks the Court to allow it to withdraw from a global settlement that its two lawyers said it had agreed to. Because CBA holds and now refuses to surrender assets belonging to Defendants Secured Merchants, LLC ("SM") and Alan Argaman,[2] CBA's withdrawal, if successful, will also prevent settlement with those two parties. CBA's lawyers accepted the settlement in writing on June 18 and affirmed the company's intent to settle on the court record on June 20. CBA has made no credible showing of fraud, duress, or mistake that warrants setting aside the negotiated resolution. Accordingly, the proposed settlement should proceed in the manner intended by the parties.

---

[1] Because the merits of the FTC's substantive claim against CBA are irrelevant to determine whether it entered a settlement, they are not fully discussed in the FTC's section.

[2] The FTC also claims an equitable interest in the assets. However, the undisputed evidence, in the form of sworn declarations from both CBA and SM, proves that SM paid CBA $250,000 under a now-expired cash infusion agreement dated March 2015. *See* Dkts. 392-2 at 3; 392-1 at 5. According to their agreement, CBA was to repay the $250,000 to SM or issue SM an undetermined share of equity in CBA after four months. *See* Dkt. 231-1 at 53-54 ("Working Capital Infusion Agreement"). Also according to both parties, that transaction was disrupted by the FTC's action, and CBA never repaid the loan or issued equity to SM. The proposed settlement required CBA to surrender the remainder of that loan from SM, approximately $133,000, to satisfy the FTC's claims against CBA, SM, and Argaman.

The FTC has conferred with counsel for CBA, SM, and Argman,[3] but has been unable to reach a resolution. CBA's explanations of why its two lawyers—one in New York and one in Los Angeles—both told the FTC and the Court that CBA agreed to the proposed settlement are inconsistent, incredible, and unsupported by evidence. The FTC is not privy to relevant communications between CBA and its counsel, which are needed to resolve this matter. Nonetheless, all of the known facts and circumstances surrounding the settlement lead to the conclusion that CBA agreed to its terms. As an offer of proof on the issue, and to demonstrate why an evidentiary hearing is needed, the FTC submits the following timeline:

- On June 17, the FTC forwarded a 38-page proposed settlement agreement to CBA's two attorneys, Sagar Parikh and Leonard Gordon. The agreement included all relevant terms and provisions, including a singular provision against CBA that required it to pay to the FTC the frozen funds at issue;

- On June 18, Mr. Gordon emailed the FTC that he had "convinced Mike [Costache, CEO of CBA] to surrender $100k of the money frozen. If he can keep the balance, I think we have a deal." The FTC declined this counterproposal, requesting the full amount in the account;

- Later on June 18, Mr. Gordon emailed: "Mr Costache has agreed to waive the claim to the money held by the Receiver";

- On June 20, at a status conference, Mr. Parikh told the Court his clients had reached a settlement in principle with the FTC;

---

[3] On July 12, 2016, Alan Argaman and Secured Merchants retained new counsel, and the FTC has conferred with new counsel as well.

- On June 21, the designated trial date, none of the parties appeared in Court for trial, believing the matter to have been resolved by settlement;

- On June 22, Mr. Parikh responded to a second draft of the proposed order that had been circulated by the FTC. The order included changes requested by counsel for Defendant Alon Nottea but did not alter the provision against CBA, which still required only that CBA surrender the frozen account. Mr. Parikh did not object to the order or state that his client had never agreed to the settlement. Instead, he merely asked that the signature line for CBA be changed. The FTC promptly complied with this request;

- On June 30, Mr. Parikh emailed the FTC stating that "[m]y Client, Relief Defendant Chargeback Armor, Inc., has just informed me that it will not be signing the Order presented to it by the FTC";

- On July 5, Mr. Gordon emailed the FTC stating "[a]s I informed you, Mr. Argaman learned of Chargeback Armor's change in position at the same time you did";

- On July 7, Mr. Parikh explained to the Court that the settlement fell through once CBA learned of all of the details of the proposed settlement. Mr Parikh falsely contended that these details had not been disclosed prior to the June 20 status conference and that no written agreement had been circulated by that time;

- On July 9, an officer of CBA emailed the FTC directly, taking umbrage that the FTC had referred to him as a "purported officer" of CBA and asserting that he was the individual that spoke on behalf of CBA. To make his point that he controlled the company, he stated, "Did your esteemed former colleague at the FTC, Mr. Leonard Gordon, just make up a conversation between him and some imaginary person before he confirmed to you that 'CBA' has agreed to let the FTC keep its frozen funds? Did Len speak with a 'legal entity'?"

- On July 11, Mr. Gordon emailed FTC counsel and stated:

> "Mr. Argaman and Mr. Parikh informed me that CBA would agree to the CBA frozen funds held by the Receiver being included in the settlement. I then so informed the FTC. Shortly thereafter, Mr. Costache emailed me telling that CBA had in fact not so agreed. I then spoke with Mr. Argaman and Mr. Parikh. Mr. Argaman assured me that CBA would agree to the settlement. I told them that if that was not the case Mr. Parikh had to so inform the Court and the FTC at the conference to be held on June 20. My understanding is that Mr. Parikh spoke with Mr. Costache before the June 20 hearing";

- On July 11, Mr. Parikh explained to the FTC that, when he stated he had reached a settlement in principle, what he had actually meant was that he was interested in discussing settlement with the FTC. He further claimed, for the first time, that Chargeback Armor's CEO never authorized his attorneys to settle on the grounds presented in the FTC's settlement proposal;

- The FTC attempted, through multiple communications with counsel, to determine whether Defendant Argaman contends that a settlement agreement has been reached. Although both Messrs. Gordon and Parikh state that Mr. Argaman was heavily involved in the settlement discussions with CBA, they have refused to disclose his position with regard to CBA's acceptance of the settlement. Instead, counsel have urged the FTC to ignore SM's entitlement to $250,000 from CBA and proceed with the settlement with SM and Argaman as if they have no available assets. The FTC has rejected this proposal.

Based upon the above communications, it appears that CBA accepted the settlement agreement and that its lawyers are now grappling for an explanation to justify its reneging on the agreement. However, should the matter proceed to an evidentiary hearing, the FTC respectfully requests 30 days' discovery to seek communications between counsel and defendants relating to CBA's settlement agreement and depositions of necessary witnesses.

**SECOND JOINT STATUS REPORT CONCERNING SETTLEMENT**  Page | 5

## Chargeback Armor, Inc.'s Position

The position of Mike Costache, the sole founder, officer, director, shareholder, and board member of CBA is that CBA never agreed to a final settlement on the terms the FTC is seeking to enforce.  CBA agreed to only settle (meaning not go to trial), however, there was no agreement to the actual final terms of the settlement as Costache never gave any authorization to settle on any such terms. Such details still needed to be worked out and still need to be worked out. Additionally, Mr. Costache would like the Court to note the following specific details:

1. CBA's settlement counsel, Leonard Gordon, Partner at Venable LLP and former director of the North East Office of the FTC, never had authorization from Michael Costache to inform the FTC in writing on June 18 that he was giving up the frozen funds. Mr. Gordon has since admitted to the FTC that he never spoke with Mr. Costache on June 18 to possibly have received any different of an answer other than what he knew for 6 months, which is that Mr. Costache does not agree to give up on the frozen funds. The reason is simple: the funds were not ill-gotten and all evidence has been submitted to the Receiver and to the FTC over 20 times for the past 13 months.

2. Dama Brown and Jim Elliott have refused to have a direct talk with Mr. Costache for 13 months. After numerous attempts by Mr. Parikh, they finally

agreed, but while on the phone, they asked Mr. Costache nothing, they ignored every question Mr. Costache asked and they refused to acknowledge his presence on the call or even the fact that he is the only shareholder, officer, and manager of CBA. However, they did accept on June 18 Mr. Gordon's unauthorized email which erroneously said:

"Mr. Costache has agreed to waive the claim to the money held by the Receiver. I believe we have a deal. I can review a draft agreement on Monday when I'm in your office."

### Secured Merchants LLC and Alan Argaman's Position

The FTC has continued to maintain the baseless position that Argaman and SM are somehow "working together" with CBA to derail the purported global settlement.

However, the FTC has provided no evidence of this, as such evidence does not exist.

Argaman and SM were ready (and remain ready) to settle the case on the terms that had already been agreed upon previously with the FTC.

However, due to CBA now not being a part of the global settlement, the FTC refuses to honor its settlement with SM and Argaman, despite moving forward with settling the other, larger players in this case.

Argaman and SM have done everything they can to close out this settlement, including giving up any right to the $250,000 (even assuming they have any rights) that was invested into CBA. Argaman and SM cannot convince CBA to accept the settlement and should not be punished for CBA not agreeing to the settlement presented by the FTC. Thus, if the FTC will not complete its settlement with Argaman and SM that was already agreed upon, then Argaman and SM request that they be given their own evidentiary hearing (to be heard concurrently with the CBA evidentiary hearing) as to whether or not there was a binding and enforceable settlement between the FTC and Argaman/SM.

Respectfully submitted,

DAVID C. SHONKA
Acting General Counsel

DAMA J. BROWN
Regional Director

Dated: July 14, 2016

_Reid Tepfer_____
REID TEPFER
rtepfer@ftc.gov
Texas Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov
Oklahoma Bar No. 19098
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer)

|   |   |
|---|---|
| 1 | (214) 979-9383 (Gallegos) |
|   | (214) 953-3079 (fax) |
| 2 |   |
| 3 | ___/s/ Sagar Parikh |
|   | Sagar Parikh |
| 4 | Attorney for Chargeback Armor, Inc. |
| 5 | _____/s/ Shai Oved |
|   | Shai Oved |
| 6 | Attorney for Alan Argaman and |
|   | Secured Merchants, LLC |

### CERTIFICATE OF SERVICE

The undersigned certifies that on July 14, 2016, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
Counsel for Oz Mizrahi

Shai Oved
The Law Offices of Shai Oved
7445 Topanga Cyn. Blvd., Suite 220
Canoga Park, California  91303
Attorney for Alan Argaman and Secured Merchants, LLC

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
Counsel for Alon Nottea and
Roi Reuveni

Robert Esensten
Esensten Law
12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
Counsel for Doron Nottea and
Motti Nottea

Charlene Cantrell Koonce
Receiver
Kelly M. Crawford
Counsel to Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201

Sagar Parikh
Beverly Hills Law Corp. PC
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
Attorney for Chargeback Armor, Inc.

Jeffrey Benice
Law Offices of Jeffrey S. Benice
A Professional Law Corporation
3080 Bristol Street
Sixth Floor, Suite 630
Costa Mesa, CA 92626
Telephone: (714) 641-3600 Ext. 214

         /S/ REID TEPFER
         REID TEPFER