UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4527-GW (PLAx) | Date | August 8, 2016 |
|---|---|---|---|
| Title | *Federal Trade Commission v. Bunzai Media Group, Inc. et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Charles A. Rojas | Katie Thibodeaux |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Reid Tepfer (Telephonic) | Sagar Parikh |

**Proceedings:** **PLAINTIFF'S SECOND MOTION FOR DEFAULT JUDGMENT [454]**

**ORDER TO SHOW CAUSE RE SETTLEMENT**

The Court and counsel confer.  Counsel make their appearances.

Court hears oral argument. The Tentative circulated and attached hereto is NOT the Court's final ruling.

For reasons stated on the record, the Court sets the following dates:

Briefing on the matter due: August 17, 2016
Hearing on the Motion for Default Judgment: August 22, 2016 at 8:30 a.m.

The parties shall file a Joint Repot regarding settlement on August 17, 2016.

|  | : | 08 |
|---|---|---|
| Initials of Preparer | CR | |

*Federal Trade Commission v. Bunzai Media Grp. Inc., et al.*, Case No. CV-15-04527 GW (PLAx); Tentative Ruling re Second Motion for Default Judgment

On July 7, 2016, the Court held a hearing on the "Second Motion for Default Judgment" filed by plaintiff Federal Trade Commission ("FTC") in this case. At that hearing, the Court declined to issue a default judgment for several reasons expressed in a Tentative Ruling issued that day. See Docket No. 483. The FTC has now supplemented its default-related papers and, in so doing, has indicated in part that it is *not* now seeking default judgment against Adageo, LLC ("Adageo") or Khristopher Bond. See Docket No. 503-1, at 2 n.1. Indeed, the proceedings in this case are now stayed as against Adageo and another defendant that was the subject of the default application – Zen Mobile Media, Inc. ("Zen"). See Docket No. 512. Those three defendants are therefore not part of the Court's current consideration of this motion. Thus, it is the Court's understanding that at this time the FTC seeks a default judgment only against the following defendants: Bunzai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Kai Media, Inc.; Insight Media, Inc.; Focus Media Solutions, Inc.; Secured Commerce, LLC; USM Products, Inc.; Merchant Leverage Group, Inc.; DMA Media Holdings, Inc.; Shalita Holdings, Inc.; and All Star Beauty Products, Inc.

Timing of Default/Service Issues

In its earlier ruling, the Court first observed that the FTC had default entered against 14 defendants – including Adageo, Zen and Bond – *before* it had filed the First Amended Complaint for Permanent Injunction and Other Equitable Relief ("FAC") (which, due to that filing, opened up those defaults) and had not even sufficiently demonstrated service of the FAC on those fourteen defendants. See Docket No. 483, at pgs. 2-3 of 5. The parties have now presented a stipulation indicating, in part, that the other 11 defendants that were the subject of that issue/analysis were in fact served with the FAC, and the FTC has again obtained entry of default as to those defendants. See Docket Nos. 486, 504-506. That issue has therefore been resolved.

1

Support for the Claims Pled

The Court next observed, in connection with the July 7 hearing, that the FTC had only cited generally to the entire FAC, entire Complaint, and/or to papers filed during the course of the case – instead of to specific paragraphs of the FAC – in attempting to demonstrate the sufficiency of its case for default purposes. *See* Docket No. 483, at pgs. 3-4 of 5. The Court instructed the FTC that it was required to specify where in the FAC itself it had pled the elements of its various claims, and as to each defendant. *See id.* at pg. 4 of 5. In an apparent attempt to cure that problem, the FTC indicates that it had "lodged a revised proposed Default Judgment that cites to the Amended Complaint and deletes all references to other documents except concerning the calculation of equitable monetary relief." Docket No. 503-1, at 3:11-13; *see also* Docket No. 503-2. It has not attempted to lodge or file a revised memorandum of points and authorities clearing up the citations provided in its original memorandum, *see* Docket No. 454, nor does it appear to have clarified for the Court where it has pled the elements of its various claims as to each defendant individually (as opposed to collectively).[1]

Thus, at least in connection with its default judgment papers, the FTC does not appear to have attempted to lay out the elements for any of the claims it asserts against these defaulting defendants. *See* Docket No. 454, at 2:5-9 (noting the existence of claims for violations of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. §45(a), Section 4 of the Restore Online Shoppers' Confidence Act, 15 U.S.C. § 8403, and Section 907(a) of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a)); *id.* at 14:15-19 (asserting that the Court has already held that the FTC's Complaint stated a claim upon which relief may be granted under Sections 5, 13, and 19 of the FTC Act, 15 U.S.C. §§5(a), 53(b), and 57b, and under 15 U.S.C. §§ 8404 and 1693o(c)). The proposed judgment/order does not attempt to set out the elements of any of the FAC's claims and cites only to paragraphs of the FAC which refer to the defaulting defendants as a group and then generically allege that the defendants as a group either did, or did not, do certain things that the FAC and FTC allege violate the various statutes in question. *See* Docket No. 503-2, at 11:1-15:5. It is true that, by defaulting, the defendants have admitted well-

---

[1] The original default judgment memorandum did attempt to deal with the defaulting defendants individually, but, again, in doing so it relied on documents other than the admitted allegations from the FAC. *See* Docket No. 454, at 7:12-12:6.

2

pled allegations against them. Whether or not the Court considers these admissions to be sufficient (or the underlying allegations to be well-pled) to impose default judgment-based liability on each of the defaulting defendants would be informed by the Court's familiarity with this case and its history.

Rule 54(c)'s Impact

Next, the Court commented that it could not award the monetary amount the FTC sought by way of default judgment because the FAC made no mention of the $75,624,030 the FTC sought from the corporate defendants, *see, e.g.*, Docket No. 454, at 22:4-7, meaning that Federal Rule of Civil Procedure 54(c) would appear to bar an award of that amount by way of default. *See* Docket No. 483, at pg. 4 of 5. In response to that point, the parties have provided a stipulation that 18 of the 19 defendants that are now the focus of this proceeding received (through co-defendant Alon Nottea) "notice that the FTC sought equitable monetary relief of up to $73MM," without saying when that notice was received. *See* Docket No. 486, at 2:1-3:4.[2] It would appear that the FTC gave some or all of the defaulting defendants "notice of [its] calculation of damages" on July 6, 2016, which is *after* seven of the defendants' (not including Secured Commerce LLC, discussed further below) defaults were entered – indeed, it was even after the FTC had filed its application for default judgment. *See* Tepfer Decl. (Docket No. 503-3) ¶¶ 8(c), 14; *see also* Docket Nos. 454, 482-1, 486. The Court would ask the FTC how such notice is in compliance with Rule 54(c) as to those seven defendants.

As to the nineteenth defendant – Secured Commerce LLC ("Secured") – the FTC presents an argument for why that defendant received notice of the fact that the FTC was seeking up to "$73MM," based upon documents reflecting that amount that were provided to Alan Argaman and Doron Nottea, owners of Secured, in October 2015 and April 2016. *See* Docket No. 486, at 3:6-12. Secured's default was entered on May 5, 2016, meaning that it apparently had received notice of its potential monetary exposure prior to its default being taken. *See* Docket No. 418.

In the end, assuming such notice was sufficient as to some or all of the defaulting

---

[2] The FTC also asserts – *without a pinpoint citation to either the Complaint or First Amended Complaint* – that "the [FTC's] Complaint and First Amended Complaint actually sought the same kind *and amount* of relief." Docket No. 503-1, at 3:16-18 (emphasis added). Absent a specific citation demonstrating otherwise, this is not consistent with the Court's review of those documents.

3

defendants, because the FTC reports only having given notice that it would seek up to "$73MM," it would appear (under Fed. R. Civ. P. 54(c)) that its recovery here would be limited to that amount, instead of the $75,624,030 stated in its motion, *see* Docket No. 454, at 22:4-7, absent further explanation for why the increased amount is appropriate. In fact, the proposed judgment/order seeks only $72,692,812. *See* Docket No. 503-2, at 17:19-18:7.

### Injunctive Relief

The Court then commented that the FTC had made no effort to tie its showing to the standard test for injunctive relief (or otherwise demonstrate why it need not). *See* Docket No. 483, at pg. 4 of 5. To this, the FTC now responds that the standard for permanent injunctive relief under the FTC Act is as set forth in such cases as *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111 (9th Cir. 1982), *FTC v. Medlab, Inc.*, 615 F.Supp.2d 1068, 1082 (N.D. Cal. 2009), *Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 392 (9th Cir. 1982), and *FTC v. Ivy Capital*, No. 2:11-CV-283 JCM (GWF, 2013 WL 1224613, *16 (D. Nev. Mar. 26, 2013), *aff'd in part, vacated in part*, 616 Fed. Appx. 360 (9th Cir. Oct. 5, 2015). The FTC also claims that the FTC need not show irreparable harm, which it asserts – relying on *FTC v. University Health, Inc.*, 938 F.2d 1206, 1217 (11th Cir. 1991) – is presumed. The Court has some doubt about these assertions, for the following reasons, but in the end concludes that – in the absence of controlling authority to the contrary – a different standard applies to the injunctive relief request here than to run-of-the-mill requests for such relief in private litigation. The Court first examines the authority the FTC has identified to support their position.

*H.N. Singer* merely recognized the FTC's power to seek, and a district court's authority, to grant permanent injunctions "in proper cases." 668 F.2d at 1111.[3] In *Medlab*, a court in the Northern District of California quoted the Southern District of New York for the proposition that "'[p]ermanent injunctive relief is appropriate when there is some cognizable danger of recurring violation.'" 615 F.Supp.2d at 1082 (quoting *FTC v. Medical Billers Network, Inc.*, 543 F.Supp.2d 283, 323 (S.D.N.Y. 2008)). *Sears, Roebuck* did not involve the review of a district court's injunctive relief order; it involved

---

[3] In addition to permanent injunctions, the Ninth Circuit commented that district courts would have "authority to grant whatever preliminary injunctions are justified by *the usual equitable standards*." *FTC v. H.N. Singer*, 668 F.2d 1107, 1111 (9th Cir. 1982) (emphasis added).

4

review of a "multi-product order" issued by the FTC itself. *See* 676 F.2d at 386. It was in that context – specifically in determining whether there was a reasonable relation between the remedy selected and unlawful practices in a multi-product order case – that the Ninth Circuit stated that "'[t]he ultimate question is the likelihood of the petitioner committing the sort of unfair practices (the order) prohibit(s)'" and observed that "[w]here a fair assessment of an advertiser's conduct shows a ready willingness to flout the law, sufficient cause for concern regarding further, additional violations exists." *Id.* at 391-92. The Ninth Circuit then stated that "[t]wo factors or elements frequently influence our decision – the deliberateness and seriousness of the present violation, and the violator's past record with respect to unfair advertising practices." *Id.* at 392. The *Ivy Capital* decision cited *H.N. Singer* for the proposition that 15 U.S.C. § 53(b) "authorizes a court to issue a permanent injunction whenever a defendant violates any of the laws enforced by the FTC and is likely to continue to violate such laws," and cited *Sears, Roebuck* for the proposition that "[t]o determine whether a defendant is likely to engage in similar violations in the future, courts look to two general facts: (1) the deliberateness and seriousness of the present violation; and (2) the defendant's past record with respect to deceptive and unfair marketing practices." 2013 WL 1224613, at *16 (citing *H.N. Singer*, 668 F.2d at 1112-13 and *Sears, Roebuck*, 676 F.2d at 392). Thus, *Ivy Capital* relied upon *H.N. Singer* for a point it did not make, and upon *Sears, Roebuck* for an injunctive relief test that was not at issue in *Sears, Roebuck*. Finally, in *University Health*, the Eleventh Circuit offered that "[t]o obtain a *preliminary* injunction…the FTC need not satisfy the traditional equity standard courts impose on private litigants – the FTC need not prove irreparable harm." 938 F.2d at 1218 (emphasis added). That decision made no mention about that harm – even in the context of a preliminary injunction request – being "presumed," however.

The typical standard for injunctive relief is as follows:

> Under "well-established principles of equity," a plaintiff seeking permanent injunctive relief must satisfy a four-factor test by showing: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

5

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015) (omitting internal quotation marks) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013). Where injunctive relief is provided for by statute – as here – courts have, in the past, frequently employed tests presuming irreparable harm.

But in recent years, presumptions of irreparable injury in the context of violations of federal statutes that provide for injunctive relief have been repeatedly shot down. *See Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090-92 (9th Cir. 2015); *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1248-51 (9th Cir. 2013); *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 997-1000 (9th Cir. 2011); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (rejecting standard allowing for "possibility" of irreparable injury, requiring instead that irreparable injury is "likely"); *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006); *cf. Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010). *But see Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1044 (9th Cir. 2012) ("[A]t least one decision post-*eBay* but pre-*Flexible Lifeline* reiterated the premise that '[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief.'") (quoting *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175-76) (9th Cir. 2010)). The question is whether that bodes ill for a rule that lessens the normal standard for injunctive relief, including by way of presuming irreparable harm, in the context of enforcement actions under the FTC Act. None of these cases dealt with the FTC Act, nor did they deal with enforcement actions brought by government agencies/actors.[4] *See Meyer*, 707 F.3d at 1044 ("Our Circuit has not yet determined whether irreparable harm must be shown in order to obtain injunctive relief in all types of cases....").

From this vein of case law, if there is to be any alteration from the customary standard for injunctive relief, it must stem from a Congressional indication in that regard

---

[4] While it is true that none of the above-cited cases deal with the federal legislation at issue here, all of the federal appellate decisions the FTC relies upon in its most-recent submission pre-date the relatively-recent Supreme Court-directed adjustment in the law, discussed herein, bearing upon the issuance of injunctive relief.

resident in the statute providing for injunctive relief itself. *See Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090 (9th Cir. 2015) (instructing that courts "must look to the underlying statute to determine whether the traditional test for injunctive relief applies, or whether courts must apply a different test"); *Idaho v. Coeur d'Alene Tribe*, 49 F.Supp.3d 751, 763 (D. Idaho 2014); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 3776172, *7 (N.D. Cal. July 15, 2013) ("[P]resumptions and categorical rules regarding irreparable harm are strongly disfavored and…a preliminary injunction should generally only issue upon a finding of a likelihood of irreparable harm. To the extent that presumptions are permissible, they may only be employed upon a showing that Congress clearly intended for a presumption to apply.") (omitting internal citations). Here, the statute in question is 15 U.S.C. § 53(b), which reads, in full, as follows:

> (b) Temporary restraining orders; preliminary injunctions
> Whenever the Commission has reason to believe--
> (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
> (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public—
> the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a <u>temporary restraining order or a preliminary injunction</u> may be granted without bond: *Provided, however*, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further*, That <u>in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction</u>. Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to

>  whether venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

15 U.S.C. § 53(b) (italics in original; emphasis added).

There is little question that older Ninth Circuit decisions departed from the typical test for injunctions under Section 53(b), at least in connection with assessing applications for preliminary injunctions. *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1989) (presuming harm to the public interest in performing preliminary injunction analysis under FTC Act, 15 U.S.C. § 53(b)); *id.* at 347 ("'Because irreparable injury must be presumed in a statutory enforcement action, the district court need only to find some chance of probable success on the merits.'") (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 176 (9th Cir. 1987)). Relying on other pre-*eBay/Winter* Ninth Circuit cases,[5] district courts have continued to apply a test (in the preliminary injunction context) that does away with any need to show irreparable harm and requires only that the FTC demonstrate (1) that it is likely to succeed on the merits and (2) that the equities weigh in favor of an injunction. *See F.T.C. v. Inc21.com Corp.*, 688 F.Supp.2d 927, 935-36 (N.D. Cal. 2010); *F.T.C. v. AMG Servs., Inc.*, No. 2:12-cv-00536-GMN-VCF, 2016 WL 1275612, *2 (D. Nev. Mar. 31, 2016); *F.T.C. v. Vemma Nutrition Co.*, No. CV-15-01578-PHX-JJT, 2015 WL 11118111, *1 (D. Ariz. Sept. 18, 2015); *F.T.C. v. Health Formulas, LLC*, No. 2:14-cv-01649-RFB-GWF, 2015 WL 2130504, *5 (D. Nev. May 6, 2015). Some courts have applied this standard after specifically contemplating at least the general *Winter* standard. *See Inc21.com Corp.*, 688 F.Supp.2d at 936 n.17; *United States v. Zaken Corp.*, No. CV 12-09631 DDP (MANx), 2013 WL 3983400, *1-2 (C.D. Cal. July 31, 2013); *F.T.C. v. Willms*, No. C11-828 MJP, 2011 WL 4103542, *3 (W.D. Wash. Sept. 13, 2011); *F.T.C. v. John Beck Amazing Profits, LLC*, No. 2:09-cv-4719-FMC-FFMx, 2009 WL 7844076, *3 (C.D. Cal. 2009); *see also F.T.C. v. Lab. Corp. of Am.*, No. SACV 10-1873 AG (MLGx), 2011 WL 1235310, *1 (C.D. Cal. Feb. 25, 2011); *cf. S.E.C. v. Schooler*, 902 F.Supp.2d 1341, 1344-45 & n.2 (S.D. Cal. 2012). Another district court has employed the typical *Winter*

---

[5] *See F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999); *F.T.C. v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984) ("Section 13(b) places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard; the Commission need not show irreparable harm to obtain a preliminary injunction.").

standard when the FTC has been unable to show the defendant in question was violating or about to violate any law enforced by the FAC. *See F.T.C. v. Loewen*, No. C12-1207MJP, 2012 WL 4045207, *2 (W.D. Wash. Sept. 13, 2012).

Again, however, these cases dealt with the questions of *preliminary* injunctions under § 53(b). As to that type of relief, § 53(b) specifically provides that a court need only "weigh[] the equities[,]... consider[] the Commission's likelihood of ultimate success" and determine that "such action would be in the public interest." In other words, there is a statutory basis for departing from the traditional *Winter* standard. With respect to *permanent* injunctions, however, § 53(b) only states that the FTC may seek them "in proper cases" and a court may issue one "after proper proof." Left unsaid is what that means.

The Ninth Circuit's ruminations on the permanent injunction remedy resident in §53(b) have been relatively few-and-far-between. However, in recently assessing a district court's ability to award restitution under § 53(b), the Ninth Circuit first quoted that portion of § 53(b) that authorized issuance of permanent injunctions, thereafter noting that the Circuit had interpreted the provision to allow for ancillary relief such as restitution. *See F.T.C. v. Commerce Planet, Inc.*, 815 F.3d 593, 598 (9th Cir. 2016). The *Commerce Planet* decision then entered into an examination of the Supreme Court's decision in *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), which provided the foundation for the decision allowing for restitution. The *Porter* decision dealt with the Emergency Price Control Act of 1942, not the FTC Act. But *Commerce Planet* observed that, in *Porter*, the Supreme Court "held that by authorizing the issuance of injunctive relief, the statute invoked the court's equity jurisdiction." *Commerce Planet*, 815 F.3d at 598. This gave the courts broad powers, which was "especially true in cases involving the public interest...such as actions brought by the government to enforce a regulatory statute. In those cases the court's 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'" *Id.* at 599 (quoting *Porter*, 328 U.S. at 398).

Reading *Commerce Planet* generously, it appears to keep alive the pre-*eBay*/*Winter* case law staking out a course of analysis different from the *Winter* standard in cases such as this one – "actions brought by the government to enforce a regulatory

statute." This, combined with the observation in *Meyer* that the Ninth Circuit had not yet decided "whether irreparable harm must be shown in order to obtain injunctive relief in all types of cases," 707 F.3d at 1044, appears to be sufficient for the Court to hold the FTC to something less than the full *Winter* standard. Although, as expressed above, the Court has reason to question the provenance of *Ivy Capital*'s rule, it is the only permanent injunction standard the FTC has presented in connection with this default proceeding.

Thus, assuming that the Court determines the defaulting defendants have violated any of the laws enforced by the FTC, the Court should ask whether they are "likely to continue to violate such laws," looking to "two general facts: (1) the deliberateness and seriousness of the present violation; and (2) the defendant's past record with respect to deceptive and unfair marketing practices." *Ivy Capital*, 2013 WL 1224613, at *16; *see also F.T.C. v. Medicor LLC*, No. CV011896CBMEX, 2001 WL 765628, *2 ("[S]hould the court determine that there has, in fact, been a violation of section 5, the court would have the option of granting permanent injunctive relief. Injunctive relief is proper when there exists some cognizable danger of recurrent violation. To determine whether the violations are likely to recur, the court must examine the deliberateness and seriousness of the violation and also the violator's history of unfair advertising practices. The Defendants' good faith could be considered in evaluating the deliberateness of the violation.") (omitting internal citations); *cf. F.T.C. v. John Beck Amazing Profits LLC*, 888 F.Supp.2d 1006, 1012 (C.D. Cal. 2012) ("The framing of the scope of the injunction depends upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity or relation to those unlawful acts…, found to have been committed…in the past."). The FTC's only attempt to demonstrate that this standard has been met is a flat assertion that "[t]he alleged violations in the Amended Complaint, taken as true for purposes of the motion for default, satisfy this standard." Docket No. 503-1, at 5:1-2.

Asset-Turnover

The Court also questioned its power to include in any order a provision that requires third parties not before the Court to turn over any assets of any of the defendants in question. It asked the FTC for a citation to authority allowing that relief. *See* Docket No. 483, at pg. 4 of 5. The FTC responded with citation to 15 U.S.C. § 53(b) and the

*H.N. Singer* decision (along with broader authority found in cases such as *Porter*, 328 U.S. at 398 and *Grupo Mexicano de Desarollo, SA v. AllianceBond Fund, Inc.*, 527 U.S. 308, 326 (1999)), allowing for a permanent injunction against violations of any provisions of law enforced by the FTC and "any ancillary relief necessary to accomplish complete justice," and by noting that it was this grant of authority that prompted asset freeze provisions against third parties earlier in this case. *See* Docket Nos. 10, 104, 108, 147.

An asset freeze is, of course, a different animal than an asset-turnover order issued to third parties. However, *H.N. Singer* states that "the authority to freeze assets by a preliminary injunction must rest upon the authority to give a form of final relief to which the asset freeze is an appropriate provisional remedy." 668 F.2d at 1112. In addition, that decision (which considered whether a district court was permitted to issue an asset-freeze) stated that "when [Congress] gave the district court authority [by way of 15 U.S.C. § 53(b)] to grant a permanent injunction against violations of any provisions of law enforced by the Commission, [it] also gave the district court authority to grant any ancillary relief necessary to accomplish complete justice because it did not limit that traditional equitable power explicitly or by necessary and inescapable inference." *Id.* at 1113. As such, it would appear that an asset-turnover order is permissible.

Local Rule 55-1

Finally, the Court noted the lack of compliance with Local Rule 55-1 in the original papers. The FTC has now complied with that Rule (and/or the docket clearly reveals compliance). *See* Tepfer Decl. ¶¶ 8-9, 11-13; Docket Nos. 504-506.

The Proposed Default Judgment Order

The FTC has lodged at Docket No. 503-2 a [Proposed] Default Judgment and Order for Permanent Injunction and Other Equitable Relief. The following observations may be made about that document:

- At 3:18-4:4, the FTC refers only to applications for default entry, not actual default entry, in connection with twelve defendants. Default was entered as to eleven of those twelve defendants on July 18, 2016. *See* Docket Nos. 504-506. The proposed judgment/order should be adjusted to

reflect that fact.[6] As to the last of the defendants listed in that paragraph – AMD Financial Network, Inc. – the proposed judgment/order inaccurately reflects only that an application of default entry was filed on May 5, 2016, when in fact default was also entered as to that defendant on that date. *See* Docket No. 417. Again, the proposed judgment/order should be amended in that regard.

- It is this Court's understanding that this action has been stayed as to Zen. *See* Docket No. 512. Yet, the proposed judgment/order still refers to Zen. See Docket No. 503-2, at 4:1-2 and 10:10-14. Presumably, the proposed judgment/order should be amended in that regard.
- There appears to be a word missing in the proposed judgment/order at 32:17 before the words "and obtain."

Conclusion

If the Court eventually concludes that none of the above issues call for holding off on granting the requested default judgment, it would grant the FTC's motion. The open issues would appear to be: 1) whether the FTC has done a sufficient job of alleging the elements of the claims against the defaulting defendants, individually (and has done a sufficient job of laying out for the Court what the relevant elements of the claims are); 2) whether, under Fed. R. Civ. P. 54(c), the FTC gave sufficient notice of the amount at stake to the seven defaulting defendants it reports giving such notice to *after* their defaults were taken; 3) whether, given its relatively limited attention to the issue, the FTC has sufficiently demonstrated satisfaction of the standard it asserts is applicable to determinations of whether permanent injunctive relief is appropriate; and 4) adjustment of the proposed judgment/order in accordance with the bullet-points listed immediately above.

---

[6] Similar alterations will need to occur at 5:19-20, 6:4-5, 6:9-10, 6:15-16, 6:20-7:1, 7:5-6, 7:11-12, 7:16-18, 8:1-2, 8:5-6, 8:10-11, 8:15-16, whereat the proposed order introduces each of the defaulting defendants individually and repeats the incomplete information about an application for entry of default having been filed (as opposed to default actually having been entered).