DAVID C. SHONKA
Acting General Counsel
REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
ZACHARY A. KELLER
zkeller@ftc.gov; Tex. Bar No. 24087838
DAMA J. BROWN
Dbrown1@ftc.gov; Mi. Bar No. P54775
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9382 (Keller); (214) 979-9374 (Brown)
(214) 953-3079 (fax)
RAYMOND MCKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Ste 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)
Attorneys for Plaintiff Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**BUNZAI MEDIA GROUP, INC.,** *et al.*<br><br>**Defendants.** | Case No. CV 15-4527-GW(PLAx)<br><br>**PLAINTIFF'S AMENDED SECOND MOTION FOR DEFAULT JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Hearing Date: August 22, 2016**<br>**Time: 8:30 a.m.**<br>**Location: Courtroom 10, Spring St.**<br>**Judge: Hon. George H. Wu** |

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

1

## <u>Table of Contents</u>

I.     Procedural History ........................................................................2

II.    Defendants' Common Enterprise Scheme .....................................4

     A.     Defendants' Deceptive Business Practices ...........................4

     B.     Defaulting Defendants Operated as Part of a Common Enterprise .....5

III.   The FTC Has Adequately Pled that Defaulting Defendants Violated the FTC Act, ROSCA, and EFTA ........................................................8

     A.     FTC Act Violations .............................................................8

     B.     ROSCA Violations .............................................................13

     C.     EFTA Violations ................................................................14

IV.    The Default Judgment ..................................................................16

     A.     Default Judgment Legal Standard.......................................16

     B.     The *Eitel* Factors Weigh in Favor of Entering a Default Judgment against the Defaulting Defendants ........................................17

          1.     The FTC Will Be Prejudiced If a Default Judgment Is Not Entered ................................................................17

          2.     The FTC Sufficiently Alleged Meritorious Claims against the Defaulting Defendants ..........................................18

          3.     The Sum of the Money Sought is Proportionate ....................18

          4.     Possibility of Dispute Concerning Material Facts..................19

          5.     Default is Not Due to Excusable Neglect ..............................20

          6.     Strong Policy Favoring Decisions on the Merits....................20

V.     The Requested Injunctive Relief is Warranted .............................21

VI.    The Requested Equitable Monetary Relief against Defaulting Defendants is Warranted........................................................................24

VII.   Conclusion...................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988) .................20

*Benny v. Pipes*, 799 F.2d 489 (9th Cir. 1987) ........................................................20

*Draper v. Coombs,* 792 F.2d 915 (9th Cir. 1986) ..................................................17

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986)......................................................17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000) .....22

*FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 205 (S.D.N.Y. 2002) ......................17

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) ............................22

*FTC v. Bronson Partners, LLC*, 654 F.3d 359 (2d. Cir 2011) ...............................24

*FTC v. Centro Nat. Corp.*, No. 14-23879-CIV, 2014 WL 7525697 (S.D. Fla. Dec. 10, 2014) .................................................................................................................6

*FTC v. Colgate Palmolive Co.*, 380 U.S. 374 (1965).............................................23

*FTC v. Commerce Planet, Inc.*, 878 F.Supp.2d 1048 (C.D. Cal. 2012).......... 11, 24

*FTC v. Consumer Health Benefits Ass'n*, 10 Civ. 3551 (ILG) (RLM), 2012 U.S. Dist. LEXIS 72161 (E.D. N.Y. May 23, 2012) ....................................................6

*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) ..........................................................25

*FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001).................................................................9

*FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001)...............................................................23

*FTC v. H.N. Singer*, 668 F.2d 1107 (9th Cir. 1982)......................................... 21, 24

*FTC v. Inc21.com*, 745 F. Supp. 2d 975 (N.D. Cal. 2010)...................... 12, 13, 23

*FTC v. Ivy Capital*, No. 2:11-CV-283 JCM (GWF), 2013 WL 1224613 (D. Nev. Mar. 26, 2013), *aff'd in part, vacated in part*, 616 Fed. Appx. 360 (9th Cir. Oct. 5, 2015) .................................................................................................................22

*FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000)................. passim

*FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp.2d 1006 (C.D. Cal. 2012) ............................................................................................................... 23, 24

*FTC v. Nat'l Urological Group, Inc.*, 645 F.Supp.2d 1167 (N.D. Ga. 2008).........5

*FTC v. National Lead Co.*, 352 U.S. 419 (1957)....................................................23

*FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010) ................................................13

*FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127 (9th Cir. 2010)........................7

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) *cert. denied*, 514 U.S. 1083 (1995) ..................................................................................... 9, 12, 13, 21

*FTC v. Ruberoid Co.*, 343 U.S. 470 (1952)....................................................... 23, 24

*FTC v. Windward Mktg., Ltd.*, No. 96-615F, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) ...............................................................................................................12

*FTC v. Wolf*, 1997-1 Trade Cas. (CCH) ¶ 71,713 (S.D. Fla. 1997) ................. 7, 19

*Geddes v. United Fin. Group*, 559 F.2d 557 (9th Cir. 1977) ................................16

*High Country Broad Co., Inc.,* 3 F.3d at 1244 (9th Cir. 1993) .............................20

**AMENDED MEMO IN SUPPORT OF SECOND MOTION FOR DEFAULT**

*Jacob Siegel Co. v. FTC*, 327 U.S. 608 (1946) ..........................................................24

*Litton Indus. v. FTC*, 575 F.2d 364 (9th Cir. 1982) ..............................................24

*Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260 (9th Cir. 1998) ...........................................................................................................22

*Pepsico, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172 (C.D. Cal. 2002) 18, 19, 20

*Rio Prop., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) .............. 16, 18

*Telebrands Corp. v. FTC*, 457 F.3d 354 (4th Cir. 2006)...........................................24

*Televideo Sys., Inc., v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) ........... 16, 18, 20

*United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199 (1968) ...................................................................................................................22

**Statutes**

15 U.S.C. § 45(n) ..................................................................................................9

15 U.S.C. §1693a(9) ...........................................................................................15

16 C.F.R. § 310.2(u) ...........................................................................................14

Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b)................................8

Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403 ...............................................................................................8

Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a) ...............................................................................................................8

Section 907(a) of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a) .........................................................................................................8

**Rules**

12 C.F.R. § 205.10(b) .................................................................................. 15, 16

**AMENDED MEMO IN SUPPORT OF SECOND MOTION FOR DEFAULT**

1    PLEASE TAKE NOTICE that on August 22, 2016, at 8:30 a.m., before the

2    Honorable George Wu, United States District Judge, Plaintiff Federal Trade

3    Commission (FTC) will move for Default Judgment against Defendants BunZai

4    Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media

5    Brands, Inc.; Agoa Holdings, Inc.; Safehaven Ventures, Inc.; Heritage Alliance

6    Group, Inc.; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge,

7    Inc.; Kai Media, Inc.; Insight Media, Inc.; Focus Media Solutions, Inc.; Secured

8    Commerce, LLC; USM Products, Inc.; Merchant Leverage Group, Inc.; DMA

9    Media Holdings, Inc.; Shalita Holdings, Inc.; and All Star Beauty Products, Inc.

10   (collectively, the "Defaulting Defendants"), based on their failure to plead or

11   defend this lawsuit.

12   This motion is made pursuant to Federal Rule of Civil Procedure 55(b)(2)

13   and Rule 55-1 of the Local Rules of Practice for the Central District of California.

14   The motion is based upon the well-pled allegations in the FTC's Amended

15   Complaint [Dkt. 235]; the previously filed Declaration of FTC Investigator Brent

16   McPeek [Dkt. 482-1]; the FTC's Supplemental Filing Concerning Default

17   Judgment [Dkt. 486]; the FTC's Supplemental Filing Concerning Default

18   Judgment [Dkt. 503-1]; and the Declaration of Plaintiff's Counsel in Support of

19   Plaintiff's Second Motion for Default Judgment [Dkt. 503-3]. Under the

20   previously filed [Proposed] Default Judgment and Order for Permanent Injunction

and Other Equitable Relief, filed concurrently with this Motion, the FTC seeks permanent injunctive relief and equitable monetary relief against the Defaulting Defendants.

**MEMORANDUM**

**I.      Procedural History**

On June 16, 2015, the FTC filed a Complaint for Permanent Injunction and other Equitable Relief ("Complaint") against 22 defendants, alleging violations of Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403, and Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § l693e(a), in connection with the sale of skincare products through a negative option continuity plan. [Dkt. 3].

On October 9, 2015, the FTC filed its First Amended Complaint for Permanent Injunction and Other Equitable Relief ("Amended Complaint") [Dkt. 235], adding 10 additional Defendants and one Relief Defendant who were identified as part of the common enterprise in the Receiver's Report. [*See generally* Dkt. 120]. The allegations against the Defendants were unchanged between the Complaint and the Amended Complaint. [*See generally* Dkts. 3 and 235]. Likewise, the requested relief was unchanged. [*Compare* Dkt. 3, at 38-39, *with* Dkt. 235, at 45-46].

1    As the Court previously noted, the FTC properly served the Amended

2  Complaint on the Defaulting Defendants. [Dkt. 524, at 2; *see also* Dkts. 486, at 2-

3  3; 373; 376; 266; 379; 374; 372; 378; 371; 406]. None of the Defaulting

4  Defendants have appeared or answered the Amended Complaint. The time to file

5  answers, as prescribed by Federal Rule of Civil Procedure 12(a)(1)(A), expired

6  without any of Defaulting Defendants asking the FTC or this Court for an

7  extension of time.

8    On May 5, 2016, the Clerk of Court entered a Default against Secured

9  Commerce, LLC. [Dkt. 414]. On July 18, 2016, the Clerk of Court entered

10  Defaults against Agoa Holdings, Inc. [Dkt. 504]; BunZai Media Group, Inc. [*Id.*];

11  DSA Holdings, Inc. [*Id.*]; Heritage Alliance Group, Inc. [*Id.*]; Insight Media, Inc.

12  [*Id.*]; Kai Media, Inc. [Dkt. 505]; Lifestyle Media Brands, Inc. [*Id.*]; Media Urge,

13  Inc. [*Id.*]; Safehaven Ventures, Inc. [*Id.*]; SBM Management, Inc. [*Id.*]; and

14  Pinnacle Logistics, Inc. [Dkt. 506].  On August 9, 2016, the Clerk of Court

15  entered Defaults against DMA Media Holdings, Inc. [Dkt. 526], and AMD

16  Financial Network, Inc. [Dkt. 525]. On August 10, 2016, the Clerk of Court

17  entered Defaults against All Star Beauty Products, Inc. [Dkt. 527]; Shalita

18  Holdings, Inc. [*Id.*]; Merchant Leverage Group, Inc. [*Id.*]; USM Products, Inc.

19  [*Id.*]; and Focus Media Solutions, Inc. [*Id.*]. These Defaulting Defendants had

20  notice of the amount of equitable monetary relief the FTC sought. [*See* Dkt. 487,

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

3

*citing* Dkt. 353-1 at p.7; Dkt. 232-1 at p.2 ¶7].

**II.      Defendants' Common Enterprise Scheme**

      **A.      Defendants' Deceptive Business Practices**

Defendants collectively operated a common enterprise, described below, to market skincare products over the Internet using deceptive offers with hidden costs, negative option features, and return policies. [Dkt. 235, at 5 ¶2]. Specifically, Defendants falsely offered "risk free trials" or "gifts" of products to consumers nationwide, using online banners, popup advertisements, and websites. [*Id.*]. In truth, Defendants' offers were designed to trick consumers into purchasing Defendants' products and enrolling in a continuity plan that charged consumers for additional products each month. [*Id.*].

Defendants required consumers who accepted their "risk free trial" or "gift" to provide credit or debit card billing information, purportedly to pay nominal shipping and handling fees to receive the advertised products. However, after receiving consumers' billing information, Defendants charged consumers the full costs of the products—imposing charges of up to $97.88 onto consumers' credit or debit cards. [*Id.*]. Defendants also enrolled consumers into a negative option continuity plan, in which Defendants shipped additional products each month and charged consumers' credit or debit cards the full costs of the products, usually $97.88 per month. [*Id.*] Finally, Defendants refused to provide consumers with

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

refunds for product returns unless the products were returned unused and unopened within 30 days of the order's placement. [Dkt. 235, at 28 ¶54].

## B.   Defaulting Defendants Operated as Part of a Common Enterprise

In its Minute Order, this Court observed that the FTC did not "clarify[y] for the Court where it has pled the elements of its various claims as to each defendant individually (as opposed to collectively)." [Dkt. 524, at 2]. However, as explained below, because the FTC has alleged Defendants acted as a common enterprise, the FTC need not plead the specific role of each Corporate Defendant.

Defaulting Defendants ran their scheme through a tangled web of companies that operated as a common enterprise. In a common enterprise, Defendants are liable for the acts of other members.[1] Because the FTC has alleged that the Defaulting Corporations were members of a common enterprise and are accordingly jointly and severally liable for each other's actions, the FTC properly used the term "Defendants" generally, rather than specifically defining the particular role of each Corporate Defendant. "The pleading need not allege facts to state independent claims against each of the Proposed Defendants; under

---

[1] *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1182 (C.D. Cal. 2000); *FTC v. Wolf*, 1997-1 Trade Cas. (CCH) ¶ 71,713, at 79,080 (S.D. Fla. 1997); *see also FTC v. Nat'l Urological Group, Inc.*, 645 F.Supp.2d 1167, 1182 (N.D. Ga. 2008) ("When corporations act as a common enterprise, each may be held liable for the deceptive acts and practices of the other.").

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

5

common enterprise liability, . . . each defendant may be jointly and severally liable for the acts described in the pleading."[2]

For example, in *J.K. Publications*, the FTC alleged common enterprise and "[did] not make a distinction between [three corporate defendants]"—JKP, MJD, and Herbal Care.[3] The court held that no distinction existed between the companies and that therefore, "to the extent that JKP and MJD are found to have violated the FTC Act, Herbal Care will be held jointly and severally liable."[4] The pleading standard espoused by this caselaw is supported by sound policy. Pleading with more specificity would be difficult, if not impossible, in common enterprise cases, as these cases often concern situations where, as here, "no real distinction" exists between Corporate Defendants.[5]

To determine the existence of a common enterprise, a court may consider a variety of factors including: common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to maintain separation of

---

[2] *FTC v. Consumer Health Benefits Ass'n*, 10 Civ. 3551 (ILG) (RLM), 2012 U.S. Dist. LEXIS 72161, *31 (E.D. N.Y. May 23, 2012); *see also FTC v. Centro Nat. Corp.*, No. 14-23879-CIV, 2014 WL 7525697, at *7 (S.D. Fla. Dec. 10, 2014) (rejecting the argument by seven corporate and four individual defendants that the FTC's failure to separately allege the precise activities of the eleven defendants compelled dismissal).

[3] *Id.*

[4] *Id.*

[5] *See, e.g.*, *Id.* at 1202.

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT
6

companies; unified advertising; pooled resources and staff; and evidence which reveals that no real distinction existed between the corporate Defendants.[6] It has been held by the Ninth Circuit that "entities constitute a common enterprise when they exhibit either vertical or horizontal commonality – qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues."[7]

Plaintiff's Amended Complaint sufficiently alleged that the Defaulting Defendants acted as a common enterprise. First, the Amended Complaint contains specific allegations concerning each Defaulting Defendant and alleged that these Defendants participated in the common enterprise.[8] The Amended Complaint then alleged the Defaulting Defendants engaged in the alleged conduct as an interrelated network of companies that had common ownership, officers, managers, business functions, employees, and office locations. [Dkt. 235, at 22 ¶42]. Further, the Amended Complaint alleged the Defaulting Defendants

---

[6] *J.K. Publ'ns*, 99 F. Supp. 2d at 1202 (C.D. Cal. 2000); *Wolf*, 1997-1 Trade Cas. (CCH) at 79,080 .

[7] *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010).

[8] *See* Dkt. 235, at 7 ¶9 (BunZai Media Group, Inc.); *id.* at 8 ¶10 (Pinnacle Logistics, Inc.); *id.* at 8 ¶11 (DSA Holdings, Inc.); *id.* at 9 ¶12 (Lifestyle Media Brands, Inc.); *id.* at 9 ¶13 (Agoa Holdings, Inc.); *id.* at 10 ¶15 (Safehaven Ventures, Inc.); *id.* at 10 ¶16 (Heritage Alliance Group, Inc.); *id.* at 11 ¶17 (AMD Financial Network, Inc.); *id.* at 11 ¶18 (SBM Management, Inc.); *id.* at 11-12 ¶19 (Media Urge, Inc.); *id.* at 12-13 ¶22 (Kai Media, Inc.); *id.* at 13 ¶23 (Insight Media, Inc.); *id.* at 13 ¶24 (Focus Media Solutions, Inc.); *id.* at 14 ¶25 (Secured Commerce, LLC); *id.* at 15 ¶27 (USM Products, Inc.); *id.* at 15 ¶28 (Merchant Leverage Group, Inc.); *id.* at 16 ¶29 (DMA Media Holdings, Inc.); *id.* at 16 ¶30 (Shalita Holdings, Inc.); and *id.* at 16 ¶31 (All Star Beauty Products, Inc.).

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

7

commingled funds, used the same sales techniques, and had a centralized recordkeeping system. [*Id.*]. Because the Defaulting Defendants operated as a common enterprise, they are all jointly and severally liable for the violations alleged in the Amended Complaint.[9]

## III.   The FTC Has Adequately Pled that Defaulting Defendants Violated the FTC Act, ROSCA, and EFTA

The next issue is whether the FTC has "pled the elements of its various claims." [Dkt. 524, at 3]. The Amended Complaint alleged that, acting as part of a common enterprise, Defaulting Defendants violated Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

### A. FTC Act Violations

The FTC has alleged four FTC Act counts: Counts One through Four.

An act or practice is deceptive under Section 5 of the FTC Act, 15 U.S.C. § 45(a), if it includes:

- a. A representation, omission, or practice that
- b. Is likely to mislead consumers acting reasonably under the circumstances and

---

[9] *J.K. Publ'ns, Inc.*, 99 F. Supp. 2d at 1182.

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

8

c.  Is material to consumers.[10]

An act or practice is unfair and violates Section 5, 15 U.S.C. § 45(n), of the FTC Act if:

a.  It is likely to cause substantial injury to consumers that is
b.  Not reasonably avoidable and
c.  Not outweighed by countervailing benefits to consumers or competition.[11]

**Count 1: Defendants Failed To Disclose Adequately Material Terms of Their Offer in Violation of Section 5(a) of The FTC Act, 15 U.S.C. § 45(a)**

In Count 1, the Amended Complaint alleged that, in numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skincare products, including, but not limited to, AuraVie products, Defendants represented, directly or indirectly, expressly or by implication, that consumers who provide their credit or debit card billing information will be charged only a nominal shipping and handling fee to receive a trial shipment of Defendants' skincare products, and that consumers' satisfaction is guaranteed. [*See* Dkt. 235, at 35 ¶70].

---

[10] *FTC v. Gill,* 265 F.3d 944, 950 (9th Cir. 2001); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994) *cert. denied*, 514 U.S. 1083 (1995) (quoting and adopting the standard set forth in *In re Cliffdale Assocs.*, 103 F.T.C. 110, 164–65 (1984)).

[11] 15 U.S.C. § 45(n).

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

9

The Amended Complaint further alleged that, in numerous instances, when Defendants made these representations, Defendants failed to disclose, or disclose adequately to consumers, material terms and conditions of their offer, including:

    a.  That Defendants would use consumers' credit or debit card information to charge consumers the full costs of the trial products, usually $97.88, upon the expiration of a limited trial period;

    b.  The dates on which the trial period began and ended;

    c.  That Defendants would automatically enroll consumers in a negative option continuity plan with additional charges;

    d.  The cost of the continuity plan, and the frequency and duration of the recurring charges;

    e.  The means consumers had to use to cancel the negative option program to avoid additional charges; and

    f.  The requirements of their refund policies. [*See* Dkt. 235, at 36 ¶71].

These omissions were material. [*See* Dkt. 235, at 36 ¶71]. Accordingly, the FTC adequately pled in Count 1 that Defendants violated the FTC act by making a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances and is material to consumers.

**Count 2: Defendants Falsely Represented that Consumers Could Try Their Products "Risk Free" in Violation of Section 5(a) of the FTC Act**

Count 2 of the Amended Complaint alleged that Defendants falsely represented, expressly or by implication, directly or indirectly, that consumers could try AuraVie or their other skincare products "risk-free." [Dkt. 235, at 37 ¶¶73-74; *see also id.* ¶¶45-67]. Consumers could not try Defendants' products "risk-free," because Defendants charged consumers the full cost if the "risk-free"

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

10

product was opened and not returned within 10 days of placing the order, often

assessing a restocking fee of up to $15, and consumers had to bear the additional

expense of returning the product to the Defendants. In addition, Defendants failed,

in numerous instances, to refund consumers' charges assessed for the trial order,

despite consumers having returned the product according to the offer's terms and

conditions. The Ninth Circuit has found that a false representation that a product is

"free" or "risk free" is material and violates Section 5.[12] Accordingly, the FTC has

adequately pled in Count 2 that Defendants violated the FTC act by making a

material representation, omission, or practice that is likely to mislead consumers

acting reasonably under the circumstances.

**Count 3: Defendants falsely represented that Defendants were accredited by and had a rating of "A-" with the Better Business Bureau in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)**

Count 3 of the Amended Complaint alleged that, in numerous instances in

connection with the advertising, marketing, promotion, offering for sale, or sale of

skincare products, Defendants falsely represented that Defendants were accredited

by and had a rating of "A-" with the Better Business Bureau. [Dkt. 235, at 37-38,

---

[12] In *FTC v. Commerce Planet, Inc.*, the Court held that "[t]his misrepresentation is undoubtedly material because the information about a free kit goes to the cost of the product, an important factor in a consumer's decision on whether or not to purchase a product. The notion that consumers will get a free kit makes it more likely that they will unwittingly provide their credit card information, thinking they are only paying for shipping and handling, when in fact, they are obligating themselves to pay a subscription fee for the continuity program." 878 F.Supp.2d 1048, 1068 (C.D. Cal. 2012).

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT
11

1    ¶¶76-77; *see also id.* at ¶¶30 and 50]. Such express claims are presumed

2    material.[13] Accordingly, the FTC has adequately pled in Count 3 that Defendants

3    violated the FTC act by making a material representation, omission, or practice

4    that is likely to mislead consumers acting reasonably under the circumstances.

5        **Count 4: Defendants Unfairly Charged Consumers For Their "Risk**
        **Free Trial" In Violation Of Section 5 Of The FTC Act, 15 U.S.C. §**
6        **45(n)**

7        Count 4 of the Amended Complaint alleged that, in numerous instances,

8    Defendants caused charges to be submitted for payment to the credit and debit

9    cards of consumers without the express informed consent of consumers. [Dkt.

10   235, at 38 ¶79]. The Amended Complaint further alleged that such actions caused

11   or were likely to cause substantial injury to consumers that consumers cannot

12   reasonably avoid themselves and that is not outweighed by countervailing benefits

13   to consumers or competition. [Dkt. 235, at 38 ¶79].

14       Courts have regularly found unauthorized billing practices to be unfair.[14]

15   Taking consumers' money without authorization is presumed to cause substantial

16

17

18   _____

     [13] *Pantron I Corp.*, 33 F.3d at 1095-96.

19   [14] *FTC v. Inc21.com*, 745 F. Supp. 2d 975, 1003-05 (N.D. Cal. 2010) (unauthorized charges to
     telephone bills were unfair); *J.K. Publ'ns*, 99 F. Supp. 2d. at 1203 (unauthorized credit card
     charges); *FTC v. Windward Mktg., Ltd.*, No. 96-615F, 1997 WL 33642380, at *10, 13 (N.D. Ga.
20   Sept. 30, 1997) (unauthorized bank debits).

     AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT
                                    12

injury.[15] The injury is substantial even if the amount taken is relatively small.[16] This injury is not reasonably avoidable: consumers cannot reasonably avoid an unauthorized charge that they only discover after it occurs.[17] Finally, consumers do not benefit from being debited or charged for products or services "they never agreed to purchase, didn't know were being provided to them, and never wanted in the first place."[18]

Accordingly, the FTC has adequately alleged in Count 4 that Defendants committed unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n), by causing substantial injury to consumers that is not reasonably avoidable and not outweighed by countervailing benefits to consumers or competition.

**B. ROSCA Violations**

Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold on the Internet through a negative option feature, unless the seller:

---

[15] *See J.K. Publ'ns*, 99 F. Supp. 2d at 1201 (finding substantial injury where "consumers were injured by a practice for which they did not bargain").

[16] *Pantron I Corp.*, 33 F.3d at 1102 ("[C]onsumer injury is substantial when it is the aggregate of many small individual injuries.").

[17] *Inc21.com*, 745 F. Supp. 2d at 1004 ("[T]he burden should not be placed on defrauded customers to avoid charges that were never authorized to begin with.").

[18] *Inc21.com*, 745 F. Supp. 2d at 1004-05; *see also FTC v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010) (consumers are "injured by a practice for which they did not bargain"); *J.K. Publ'ns*, 99 F. Supp. 2d at 1202.

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT
13

a. Clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information,

b. Obtains the consumer's express informed consent before making the charge, and

c. Provides a simple mechanism to stop recurring charges.[19]

ROSCA adopts the Telemarketing Sales Rule's definition of "negative option feature."[20] Under this rule, a negative option is "an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."[21]

Count 5 of the Amended Complaint alleged that, in marketing their "risk-free trial," Defendants failed to: (a) clearly and conspicuously disclose all material terms of the negative option feature; (b) obtain the consumer's express informed consent to the negative option feature before charging; (c) provide simple mechanisms for a consumer to stop recurring charges, in violation of Section 4 of ROSCA, 15 U.S.C. § 8403. [Dkt. 235, at 40-41 ¶87]. Accordingly, the FTC has, in Count 5, adequately pled three separate violations of ROSCA by Defendants.

**C. EFTA Violations**

---

[19] *See* 15 U.S.C. § 8403 (2006).

[20] *Id.*

[21] 16 C.F.R. § 310.2(u) (2006).

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

14

The Electronic Fund Transfer Act, and its implementing statute Regulation E, regulate the circumstances under which a merchant may make regularly recurring debits from a consumer's bank account. EFTA and Regulation E require that, before a merchant can make such recurring debits, it must obtain a written authorization signed or similarly authenticated by the consumer.[22]

Section 903(9) of EFTA, 15 U.S.C. §1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."  Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer.  The person that obtains the authorization shall provide a copy to the consumer."  Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. §205.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization."[23] The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily

---

[22] 15 U.S.C. § 1693e(a) (2006); 12 C.F.R. § 205.10(b) (2006).

[23] *Id.* ¶10(b), cmt 5.

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT
15

1   identifiable as such and the terms of the preauthorized transfer are clear and

2   readily understandable …"[24]

3   　　　Count 6 of the Amended Complaint alleged that Defendants debited

4   consumers accounts without obtaining a written authorization signed or

5   authenticated by a consumer and without providing a copy of a written

6   authorization signed or similarly authenticated by the consumer, in violation of

7   Section 907(a) of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C.

8   § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b). [*See*

9   Dkt. 235, at 42-43 ¶ ¶93-94]. Accordingly, in Count 6, the FTC has adequately

10   pled two separate violations of EFTA.

11   **IV.    The Default Judgment**

12   　　　**A.    Default Judgment Legal Standard**

13   　　　Rule 55(b)(2) enables this Court to issue a judgment against a party that has

14   defaulted. Upon entry of default by the Clerk under Rule 55(a), the Amended

15   Complaint's factual allegations regarding liability are taken as true, while

16   allegations regarding the amount of damages must be proven.[25]

17

18   ---

[24] *Id*. ¶ 10(b), cmt 6.

19   [25] *Rio Prop., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *Televideo Sys., Inc., v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Group*, 559 F.2d

20   557, 560 (9th Cir. 1977).

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

Granting a default judgment is within the Court's sound discretion.[26] In

determining whether to issue a default judgment, the trial court may consider a

variety of factors in exercising its discretion, including the seven factors

articulated in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation

omitted). These factors are: (1) the possibility of prejudice to plaintiff; (2) the

merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money

at stake; (5) the possibility of a dispute concerning material facts; (6) whether

default was due to excusable neglect; and (7) the policy favoring a decision on the

merits. In this case, the *Eitel* factors weigh in favor of entering default judgments

against the Defaulting Defendants.

**B.     The *Eitel* Factors Weigh in Favor of Entering a Default
        Judgment against the Defaulting Defendants**

**1.      The FTC Will Be Prejudiced If a Default Judgment
         Is Not Entered**

The FTC will be prejudiced if a default judgment is not entered against the

Defaulting Defendants because it will be forced to commit time, resources and

personnel to prosecute a lawsuit in which the Defaulting Defendants have refused

to participate.[27] Here, the Defaulting Defendants did not answer the Amended

---

[26] *See Draper v. Coombs*, 792 F.2d 915, 924-925 (9th Cir. 1986).

[27] *See, e.g.*, *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 205, 208-09 (S.D.N.Y. 2002) (finding
the denial of motion for default judgment would be "unfairly prejudicial" to the FTC when the
defendant failed to provide any explanation for its failure to defend).

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT
17

Complaint or participate in this lawsuit in any way. Their complete and unexplained refusal to participate leaves no other way for the FTC to litigate its claims against them.

### 2. The FTC Sufficiently Alleged Meritorious Claims against the Defaulting Defendants

The second and third *Eitel* factors, measuring the merits of the FTC's substantive claim and the sufficiency of the Amended Complaint, also weigh in favor of default judgment. These factors "require that a plaintiff state a claim on which [it] may recover."[28] As detailed above in Section III, the FTC has made well-plead allegations in all six substantive counts against the Defaulting Defendants.[29] These allegations, taken as true by virtue of entry of defaults by the Clerk,[30] establish both the sufficiency and underlying merits of the FTC's Amended Complaint as to each Defaulting Defendant.

### 3. The Sum of the Money Sought is Proportionate

The fourth *Eitel* factor, the sum of money at stake, favors immediate entry of a default judgment. The fourth factor balances "the amount of money at stake

---

[28] *See Pepsico, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002).

[29] This Court has already held, in granting temporary and preliminary relief, that "[t]he [FTC's] Complaint states a claim upon which relief may be granted under Sections 5, 13, and 19 of the FTC Act, 15 U.S.C. §§ 5(a), 53(b), and 57b and under 15 U.S.C. §§ 8404 and 1693o(c)." [Dkt. 14].

[30] *See TeleVideo Sys.*, 826 F.2d at 917-918, and *Rio Prop., Inc.*, 284 F.3d at 1019.

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

18

1    in relation to the seriousness of the defendant's conduct."[31]

2          Here, the sum of money the FTC seeks against the Defaulting Defendants is

3    proportionate to harm caused by Defendants' scheme. The total amount of

4    consumer harm in this case is $72,692,812. [*See* Dkt. 482-1 at 2 ¶7] (calculating

5    the sum of consumer harm using Defendants' tax returns and Quickbook records).

6          As is clear from the well-pled allegations in the Amended Complaint, these

7    figures are appropriate given the gravity of the Defaulting Defendants' violations.

8    Every penny received by Defendants was obtained through deception. Each of the

9    Defaulting Defendants listed above were a part of the common enterprise that

10   bilked money from consumers. [Dkt. 235, at 22 ¶42]. Participants in a common

11   enterprise are held jointly and severally liable for the law violations.[32] Therefore,

12   it is appropriate for all Defaulting Defendants to be held jointly and severally

13   liable for equitable monetary relief in the full amount of consumer injury caused

14   by their collective actions.

15             **4.    Possibility of Dispute Concerning Material Facts**

16         The fifth *Eitel* factor, the possibility of a dispute concerning material facts,

17   also strongly favors the entry of judgment. The Defaulting Defendants have not

18   disputed any of the facts underlying the claims in this litigation but rather have

19   ――――――――――――――
[31] *PepsiCo Inc.*, 238 F. Supp. 23 at 1175.

20   [32] *J.K. Publ'ns, Inc.*, 99 F. Supp. 2d at 1202; *Wolf*, 1997-1 Trade Cas. (CCH) at 79,080 .

chosen not to participate in this litigation. All material allegations in the Amended Complaint, except those relating to damages, are therefore taken as true.[33] There is no dispute here concerning material facts.

### 5.       Default is Not Due to Excusable Neglect

The sixth factor, whether the default was due to excusable neglect, also favors entry of default judgment. The Defaulting Defendants were properly served with the Amended Complaint [Dkt. 486, at 2-3] and failed to answer or make any appearance at all. In these circumstances, a default judgment is appropriate.[34]

### 6.       Strong Policy Favoring Decisions on the Merits

While the final *Eitel* factor favors deciding cases on the merits when possible, here, this factor is outweighed by the other factors. A decision on the merits is impractical, if not impossible, when a defendant fails to participate in a legal proceeding.[35] Here, the Court should not be precluded from entering a default judgment when the Defaulting Defendants not only failed to answer the FTC's Amended Complaint but also did not participate in any way in this lawsuit.

---

[33] *See TeleVideo*, 826 F.2d at 917-18.

[34] *See High Country Broad Co., Inc.,* 3 F.3d at 1244, 1245 (9th Cir. 1993) (it is "perfectly appropriate" for a district court to enter a default judgment when a corporation fails to retain counsel); *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1987) (finding a defendant's conduct culpable when it has received actual or constructive notice of filing of the action and has intentionally failed to answer); *see also Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (no abuse of discretion in denying motion to set aside a default when a party had notice of the filing and failed to answer the complaint).

[35] *See Pepsico, Inc.,* 238 F.Supp.23 at 1177.

Accordingly, Defaulting Defendants' total failure to participate in the lawsuit has rendered a decision on the merits impractical and/or impossible, making entries of default judgments against them appropriate.

**V.     The Requested Injunctive Relief is Warranted**

The FTC filed this action under Section 13(b) of the FTC Act to secure permanent injunctive and monetary relief against Defaulting Defendants and others. Section 13(b) provides that "in proper cases, the Commission may seek, and after proper proof, the court may issue, a permanent injunction" against violations of laws enforced by the FTC. 15 U.S.C. § 53(b). The Ninth Circuit has held that a case alleging violations of a law enforced by the FTC constitutes a proper case for which injunctive relief may be sought.[36] Moreover, Section 13(b) preserves the Court's inherent authority not only to grant permanent injunctive relief but any ancillary equitable relief that is necessary to render complete justice.[37]

In determining whether to award injunctive relief, the Court acknowledged that it should consider "two general facts: (1) the deliberateness and seriousness of the present violation; and (2) the defendant's past record with respect to deceptive

---

[36] *FTC v. H.N. Singer*, 668 F.2d 1107, 1111-13 (9th Cir. 1982).

[37] *See Pantron I Corp.*, 33 F.3d at 1102 (9th Cir. 1994) (*quoting H.N. Singer*, 668 F.2d at 1113).

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

21

and unfair marketing practices."[38] The business practices at issue in this case concern egregious, intentional deception of consumers with hidden terms and conditions and abusive customer service tactics. [Dkt. 235, ¶45-67]. Defendants deceived thousands of consumers resulting in millions of dollars in consumer injury. [*See* Dkt. 482-1 at 2 ¶7]. Moreover, Defaulting Defendants deceptive scheme was longstanding: Defaulting Defendants participated in the scheme from at least 2010 until this Court's TRO. [Dkt. 235, at 23 ¶45].

Based on these factors, the FTC seeks injunctive relief to prohibit the Defaulting Defendants' deceptive practices alleged in the Amended Complaint and to "fence in" future conduct. A permanent injunction is appropriate to prevent Defaulting Defendants from restarting their illegal conduct after this lawsuit is concluded.[39] The FTC's attached proposed Order against each Defaulting Defendant bans them from advertising, marketing, promoting, or offering any good or service with a Negative Option Feature, as defined by the Order (Section

---

[38] Dkt. 524, at 11 (citing *FTC v. Ivy Capital*, No. 2:11-CV-283 JCM (GWF), 2013 WL 1224613, *16 (D. Nev. Mar. 26, 2013), *aff'd in part, vacated in part*, 616 Fed. Appx. 360 (9th Cir. Oct. 5, 2015)).

[39] "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968)); *see also FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1238 (9th Cir. 1999) (quoting *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1274 (9th Cir. 1998) (noting that Defendants "must show that 'subsequent events [have] made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur'")).

I).[40] The proposed Order also prohibits certain business activities, including (1) failing to disclose material terms and conditions of any offer, with listed examples of required disclosures; (2) misrepresenting any material fact, including those listed; (3) failing to obtain express informed consent prior to charging a consumer for a transaction; and (4) failing to obtain written authorization for Preauthorized Electronic Fund Transfers.

These are appropriate injunctive terms in this type of case. The injunctive relief proposed by the FTC is tailored to the facts in this case and intended to prevent future illegal conduct by Defendants.[41] Moreover, such "fencing-in" relief is permissible, as equitable relief "'is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past.'"[42]  The Court's order may "contain[] provisions… that are broader than the conduct that is

---

[40]      Courts in the Ninth Circuit have approved categorical bans, similar to what the FTC seeks in this case, as proper injunctive relief. *See, e.g., FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp.2d 1006, 1014-15 (C.D. Cal. 2012) (defendants banned from informercial marketing and telemarketing); *Gill*, 265 F.3d at 957-958 (upholding ban on participation in credit repair business); *Inc21.com Corp.*, 745 F. Supp. 2d at 1010 (ban on telemarketing).

[41] For example, Section I of the Proposed Default Order, filed concurrently with this Motion, bans Defaulting Defendants from selling via negative option, the sales method at issue in this case. Section III prohibits Defaulting Defendants from engaging in credit card laundering. Section II prohibits Defaulting Defendants from making misrepresentations identical or similar to those alleged in the FTC's Amended Complaint. And Section III consists of prohibitions related to merchant accounts, which would stymie any future attempts by Defaulting Defendants to unfairly charge consumers without their authorization.

[42] *FTC v. Colgate Palmolive Co.*, 380 U.S. 374, 395 (1965) (quoting *FTC v. Ruberoid Co.*, 343 U.S. 470, 473 (1952)); *see also id.* ("Having been caught violating the [FTC] Act, respondents 'must expect some fencing in.'") (quoting *FTC v. National Lead Co.*, 352 U.S. 419, 431 (1957)).

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

23

declared unlawful."[43] In other words, the Court may enter an order that "close[s] all roads to the prohibited goal."[44] The injunctive relief requested is all related to conduct at issue in this case and intended to prevent future law violations similar to those described in the Amended Complaint. [Dkt. 235, ¶45-67].

## VI.   The Requested Equitable Monetary Relief against Defaulting Defendants is Warranted

The Court's broad equitable authority includes the power to order monetary relief in the form of consumer redress, rescissions of contracts, restitution, or disgorgement of unjust enrichment.[45]

For monetary relief, the proposed Order against Defaulting Corporate Defendants imposes an equitable monetary judgment of $72,692,812 against all Defaulting Corporate Defendants, jointly and severally, for their participation in the common enterprise [Section IV].[46]

---

[43] *Telebrands Corp. v. FTC*, 457 F.3d 354, 357 n.5 (4th Cir. 2006).

[44] *Ruberoid Co*., 343 U.S. at 473 (1952); *see also Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612-13 (1946) (allowing for fencing-in provisions except "where the remedy selected has no reasonable relation to the unlawful practices found to exist"); *See John Beck Amazing Profits*, 888 F. Supp. 2d at 1001 ("Courts have routinely imposed some form of 'fencing in,' barring violators from participating in certain lines of business or forms of marketing"); *Litton Indus. v. FTC*, 575 F.2d 364, 370 (9th Cir. 1982) (fencing in provisions serve to close all roads to the prohibited goal, so that orders may not be bypassed with impunity).

[45] *See Singer*, 668 F.2d at 1113.

[46] Importantly, the FTC need only reasonably approximate the amount of consumer injury. After the FTC has satisfied this obligation, the burden shifts to Defendants to show that the figures are inaccurate. *See Commerce Planet*, 815 F.3d at 593 (*quoting FTC v. Bronson Partners, LLC*, 654 F.3d 359, 368 (2d. Cir 2011)) ("If the FTC makes the required threshold showing, the burden then shifts to the defendant to show that the FTC's figures overstate the amount of the

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

24

1    The proposed Order also requires third parties to turn over any assets of

2  Defaulting Defendants [Section VII], and provides for the protection of Defaulting

3  Defendants' customer information [Section VI]. The proposed Order also contains

4  recordkeeping and periodic reporting provisions that are standard in FTC cases to

5  aid the FTC in monitoring defendants' compliance with court orders. [Sections

6  VIII-XI]. This permanent injunctive relief is warranted and appropriate given the

7  egregiousness of the violations of the FTC Act, ROSCA, and EFTA described in

8  the Amended Complaint [Dkt. 235, ¶¶ 45-67].

9  **VII.   Conclusion**

10    For the above reasons, Plaintiff requests that this Court enter the proposed

11  default order, filed concurrently with this Motion, against the Defaulting

12  Defendants.

13                                     Respectfully submitted,

14

15  Dated: 8/17/2016              */s/ Reid Tepfer*_____
                                  REID A. TEPFER
16                                LUIS H. GALLEGOS
                                  Attorneys for the Plaintiff
17                                Federal Trade Commission
                                  1999 Bryan Street, Suite 2150
18                                Dallas, Texas 75201

---

19  defendant's unjust gains. Any risk of uncertainty at this second step 'fall[s] on the wrongdoer
    whose illegal conduct created the uncertainty.'"); *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir.
20  1997).

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT

(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (facsimile)
rtepfer@ftc.gov
lgallegos@ftc.gov

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT
26

1

## CERTIFICATE OF SERVICE

2

3      The undersigned certifies that on August 17, 2016, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served pursuant to the ECF notice generated by the Court.

4

5

6   Erik S. Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
7   Beverly Hills, CA 90212
esyverson@raineslaw.com
8   Counsel for Oz Mizrahi

9   Shai Oved
The Law Offices of Shai Oved
10  7445 Topanga Cyn. Blvd., Suite 220
Canoga Park, California 91303
11  Attorney for Alan Argaman and Secured Merchants, LLC

12  Robert M. Ungar
Crosswind Law
13  14724 Ventura Blvd. Penthouse
Sherman Oaks, CA 91403
14  Counsel for Alon Nottea and
Roi Reuveni

15

16  Robert Esensten
Esensten Law
17  12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
Counsel for Doron Nottea and
18  Motti Nottea

19  Charlene Cantrell Koonce
Receiver
20  Kelly M. Crawford

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT
27

Counsel to Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201

Sagar Parikh
Beverly Hills Law Corp. PC
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
Attorney for Chargeback Armor, Inc.

Jeffrey Benice
Law Offices of Jeffrey S. Benice
A Professional Law Corporation
3080 Bristol Street
Sixth Floor, Suite 630
Costa Mesa, CA 92626
Telephone: (714) 641-3600 Ext. 214
*Attorney for Igor Latsanovski and CalEnergy, Inc.*

/S/ REID TEPFER
REID TEPFER

AMENDED SECOND MOTION FOR DEFAULT AND MEMO IN SUPPORT
28