**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No.  CV 15-4527-GW(PLAx) |
| **Plaintiff,** | **[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |
| **v.** | |
| **BUNZAI MEDIA GROUP, INC.,** *et al.* | |
| **Defendants.** | |

Plaintiff, Federal Trade Commission ("FTC" or "Commission"), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") on June 16, 2015. (Dkt. 3). Plaintiff filed its First Amended Complaint for Permanent Injunction and Other Equitable Relief ("Amended Complaint") on October 9, 2015, seeking a permanent injunction and other equitable relief against 32 Defendants and one Relief Defendant. (Dkt. 235). Plaintiff's Amended Complaint asserts the same claims, and seeks the same relief, as their initial Complaint but

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

1 adds several defendants and a relief defendant count. Plaintiff's Complaint and

2 Amended Complaint allege that Defendants, acting as a common enterprise,

3 violated Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.

4 § 45; Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15

5 U.S.C. § 8404; and Section 917(c) of the Electronic Funds Transfer Act

6 ("EFTA"), 15 U.S.C. § 1693o(c).

7      The FTC having filed its Second Motion for Entry of Default Judgment and

8 Order for Permanent Injunction and Other Equitable Relief (Motion), and the

9 Court having considered the FTC's Motion, supporting exhibits, and the

10 Supplement to these filings (Dkt. 486), the FTC's Motion is hereby granted.

11 THEREFORE, IT IS ORDERED as follows:

12                        **FINDINGS**

13 1.     "'The general rule of law is that upon default the factual allegations of the

14 complaint, except those relating to the amount of damages, will be taken as true.'"

15 *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

16 2.     This Court is satisfied that Defaulting Defendants were properly served

17 with the First Amended Complaint:

18        a.  Defendants AMD Financial Network, Inc.; Focus Media Solutions, Inc.;

19            Secured Commerce LLC; USM Products, Inc.; Merchant Leverage

20            Group, Inc.; DMA Media Holdings, Inc.; Shalita Holdings, Inc.; and All

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

1    Star Beauty Products, Inc. were served as described in the Proofs of

2    Service filed with the Clerk of the Court.  (Dkts. 406, 373, 376, 379,

3    374, 372, 378, 371); and

4        b.  Defendants BunZai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA

5           Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.;

6           Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; AMD

7           Financial Network, Inc.; SBM Management, Inc.; Kai Media, Inc.; and

8           Insight Media, Inc. were served through their officer, managing or

9           general agent, or other agent authorized by appointment or by law, as

10          acknowledged at Dkt. 486.

11   3.    None of the Defaulting Defendants has answered or otherwise appeared in

12   this action.

13       a.  The Clerk of the Court has entered a Default against Secured

14          Commerce, LLC, on May 5, 2016 (Dkt. 418).

15       b.  The Clerk of the Court has entered Defaults against BunZai Media

16          Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle

17          Media Brands, Inc.; Agoa Holdings, Inc.; Safehaven Ventures, Inc.;

18          Heritage Alliance Group, Inc.; SBM Management, Inc.; Kai Media, Inc.;

19          Media Urge, Inc.; and Insight Media, Inc. on July 18, 2016. (Dkts. 504,

20          505, and 506).

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

1       c.  The Clerk of the Court entered Defaults against All Star Beauty

2          Products, Inc.; AMD Financial Network, Inc.; DMA Media Holdings,

3          Inc.; Focus Media Solutions, Inc.; Merchant Leverage Group, Inc.;

4          Shalita Holdings, Inc.; and USM Products, Inc. on August 9 and 10,

5          2016 (Dkts. 525, 526, and 527).

6     4.  Therefore, the factual allegations of the Amended Complaint, except those

7   relating to the amount of damages, will be taken as true.

8   5.     This is an action by the Commission under Sections 13(b) and 19 of the

9   FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 5 of ROSCA, 15 U.S.C. § 8404,

10   and Section 917(c) of EFTA, 15 U.S.C. § 1693o(c).

11   6.     The Commission's Complaint and Amended Complaint seek permanent

12   injunctive relief against Defendants in connection with online sale of skincare

13   products through a negative option continuity plan in violation of Section 5(a) of

14   the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, and

15   Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and equitable monetary relief in

16   the form of consumer redress and/or disgorgement. (Dkt. 235 at p.45-46).

17                      JURISDICTION AND VENUE

18   7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331,

19   1337(a), and 1345 and 15 U.S.C. §§ 45(a), 53(b), and 57b.

20

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

8.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 15 U.S.C. § 53(b).

**PLAINTIFF**

9.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. Additionally, the FTC enforces ROSCA, 15 U.S.C. §§ 8401-05, which prohibits certain methods of negative option marketing on the Internet, and EFTA, 15 U.S.C. § 1693 *et seq*., which regulates the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.

**10.**     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, ROSCA, and EFTA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 8404, and 1693o(c).

**DEFAULTED DEFENDANTS**

11.     **BunZai Media Group, Inc.**, also doing business as AuraVie, Miracle Face Kit, and Attitude Cosmetics, was a California corporation. (Dkt. 235 at p.7 ¶9). This Defendant was properly served with Plaintiff's Summons and Amended

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 504).

12.   **Pinnacle Logistics, Inc.** was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.8 ¶10). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 506).

13.   **DSA Holdings, Inc.** was a California corporation with its principal place of business at the same location as Pinnacle Logistics, Inc. (Dkt. 235 at p.8 ¶11). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 504).

14.   **Lifestyle Media Brands, Inc.** was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.9 ¶12). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 505).

15.   **Agoa Holdings, Inc.** was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.9

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

¶13). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 504).

16.    **Safehaven Ventures, Inc.** was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.10 ¶15). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 505).

17.    **Heritage Alliance Group, Inc.** also doing business as AuraVie Distribution, was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.10 ¶16). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 504).

18.    **AMD Financial Network, Inc.** was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.11 ¶17). This Defendant was properly served with Plaintiff's Summons and Complaint (Dkt. 406) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on August 9, 2016. (Dkt. 525).

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

19.     **SBM Management, Inc.** was a California corporation. (Dkt. 235 at p.11 ¶18). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 505).

20.     **Media Urge, Inc.** was a California corporation. (Dkt. 235 at p.11 ¶19). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 505).

21.     **Kai Media, Inc.** was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.12 ¶22). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 505).

22.     **Insight Media, Inc.** was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.13 ¶23). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 2) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on July 18, 2016. (Dkt. 504).

23.     **Focus Media Solutions, Inc.** was a California corporation. (Dkt. 235 at p.13 ¶24). This Defendant was properly served with Plaintiff's Summons and

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Amended Complaint (Dkt. 373) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on August 10, 2016. (Dkt. 527).

24.   **Secured Commerce, LLC** was a California limited liability company. (Dkt. 235 at p.14 ¶25). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 376) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on May 5, 2016. (Dkt. 418).

25.   **USM Products, Inc.** was a California corporation. (Dkt. 235 at p.15 ¶27). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 379) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on August 10, 2016. (Dkt. 527).

26.   **Merchant Leverage Group, Inc.** was a California corporation. (Dkt. 235 at p.15 ¶28). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 3) but failed to appear or defend.  The Clerk of the Court entered a Default against this Defendant on August 10, 2016. (Dkt. 527).

27.   **DMA Media Holdings, Inc.** was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.16 ¶29). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 3) but failed to appear or defend. The Clerk of

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

the Court entered a Default against this Defendant on August 9, 2016. (Dkt. 526).

28.     **Shalita Holdings, Inc.** was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.16 ¶30). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 3) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on August 10, 2016. (Dkt. 527).

29.     **All Star Beauty Products, Inc.** was a California corporation with its principal place of business at the same location as BunZai Media Group, Inc. (Dkt. 235 at p.16 ¶31). This Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. 486 at 3) but failed to appear or defend. The Clerk of the Court entered a Default against this Defendant on August 10, 2016. (Dkt. 527).

COMMERCE

30.     At all times material to this Complaint, Defendants maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44. (Dkt. 235 at p.23 ¶44). Defendants' Internet skincare product business was marketed, and sold products, to consumers nationwide. (Dkt. 235 at p.5 ¶2).

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

**COMMON ENTERPRISE**

31.     The Court finds that Defaulting Defendants participated as members of a common enterprise and:

      a.   conducted the business practices at issue through an interrelated network of companies with common ownership, officers, managers, business functions, employees and office locations (Dkt. 235 at p.22 ¶42); and

      b.   the companies commingled funds, used the same deceptive sales techniques, and had centralized record keeping. (Dkt. 235 at p.22 ¶50).

32.     These allegations, taken as true, establish that, as members of a common enterprise, Defaulting Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, and Section 907(a) of EFTA, 15 U.S.C. § 1693e(a). (Dkt. 235 at p.6 ¶3 and p.22 ¶42).

**DEFAULTING DEFENDANTS' LAW VIOLATIONS**

33.     The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as members of a common enterprise, Defaulting Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by failing to disclose, or disclose adequately, material terms and conditions of their offer, including:

      a.   that Defendants would use  consumer's credit and debit card information to charge consumers the full cost of the trial products upon expiration of

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1    a limited trial period (Dkt. 235 at p.36 ¶71(a));

2    b.   the dates on which the trial period began and ended (Dkt. 235 at p.36

3         ¶71(b));

4    c.   that Defendants would automatically enroll consumers in a negative

5         option continuity plan with additional charges (Dkt. 235 at p.36 ¶71(c));

6    d.   the cost of the continuity plan, and the frequency and duration of the

7         recurring charges (Dkt. 235 at p.36 ¶71(d));

8    e.   the means consumers must use to cancel the negative option program to

9         avoid additional charges (Dkt. 235 at p.36 ¶71(e)); and

10   f.   requirements of their refund policies. (Dkt. 235 at p.36 ¶71(f)).

11   34.   Accordingly, the Court finds Defaulting Defendants liable under Count 1 of

12   the Amended Complaint. (Dkt. 235 at p.36).

13   35.   The Court finds that, in connection with the online sale of skincare products

14   through a negative option continuity plan and as members of a common

15   enterprise, Defaulting Defendants violated Section 5(a) of the FTC Act, 15 U.S.C.

16   § 45(a), by falsely representing, expressly or by implication, that consumers could

17   try their products "risk free." (Dkt. 235 at p.37 ¶73-75).

18   36.   Accordingly, the Court finds Defaulting Defendants liable under Count 2 of

19   the Amended Complaint. (Dkt. 235 at p.37).

20

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

37.   The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as members of a common enterprise, Defaulting Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by falsely representing, expressly or by implication, that Defendants are accredited by  and have a rating of "A-" with the Better Business Bureau. (Dkt. 235 at p.37-38 ¶76-78).

38.   Accordingly, the Court finds Defaulting Defendants liable under Count 3 of the Amended Complaint. (Dkt. 235 at 37).

39.   The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as members of a common enterprise, Defaulting Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. §§ 45(a) and (n) by having caused charges to submitted for payment to the credit and debit cards of consumers without their express informed consent. (Dkt. 235 at p.38 ¶79-81).

40.   Accordingly, the Court finds Defaulting Defendants liable under Count 4 of the Amended Complaint. (Dkt. 235 at 38).

41.   The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as members of a common enterprise, Defaulting Defendants violated Section 4 of ROSCA, 15 U.S.C. § 8403, by failing to:

[Proposed] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1         a.  clearly and conspicuously disclose all material terms of the negative

2              option feature of the skincare products transaction before obtaining the

3              consumer's billing information (Dkt. 235 at p.40 ¶87(a));

4         b.  obtain the consumer's express informed consent to the negative option

5              feature before charging the consumer's credit card, debit card, bank

6              account, or other financial account for the transaction (Dkt. 235 at p.40

7              ¶87(b)); and/or

8         c.  provide simple mechanisms for a consumer to stop recurring charges for

9              skincare products to the consumer's credit card, debit card, bank

10             account, or other financial account. (Dkt. 235 at p.41 ¶87(c)).

11   42.    Accordingly, the Court finds Defaulting Defendants liable under Count 5 of

12   the Amended Complaint. (Dkt. 235 at 41).

13   43.    The Court finds that, in connection with the online sale of skincare products

14   through a negative option continuity plan and as members of a common

15   enterprise, Defaulting Defendants violated Section 907(a) of EFTA, 15 U.S.C.

16   § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), by:

17        a.  debiting consumers' bank accounts on a recurring basis without

18             obtaining a written authorization signed or similarly authenticated from

19             consumers for preauthorized electronic fund transfers from their

20             accounts (Dkt. 235 at p.42 ¶93); and

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1    b.  debiting consumers' bank accounts on a recurring basis without

2        providing a copy of a written authorization signed or similarly

3        authenticated by the consumer for preauthorized electronic fund

4        transfers from the consumer's account. (Dkt. 235 at p.42 ¶94).

5  44.    Accordingly, the Court finds Defaulting Defendants liable under Count 6 of

6  the Amended Complaint. (Dkt. 235 at 42).

7                    **PERMANENT INJUNCTIVE RELIEF**

8  45.    Section 13(b) of the FTC Act authorizes courts to issue a permanent

9  injunction whenever a defendant violates the laws enforced by the Commission

10 and is likely to continue to violate them.  *FTC v. H.N. Singer, Inc*., 668 F.2d 1107,

11 1111 (9th Cir. 1982); *FTC v. Gem Merch. Corp*., 87 F.3d 466, 468 (11th Cir.

12 1996); *FTC v. Medlab*, *Inc*., 615 F. Supp. 2d 1068, 1082 (N.D. Cal. 2009). To

13 determine whether a defendant is likely to engage in similar violations in the

14 future, courts look to two general factors:  (a) the deliberateness and seriousness

15 of the present violation, and (b) the defendant's past record with respect to

16 deceptive and unfair marketing practices.  *Sears, Roebuck & Co. v. FTC*, 676 F.2d

17 385, 392 (9th Cir. 1982); *Ivy Capital*, 2013 WL 1224613, at *16.  The court may

18 also weigh the "adaptability or transferability of the unfair practice to other

19 products." *Id*.  This Court finds that a permanent injunction against all defaulting

20 defendants is proper and serves the public interest.

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

                                                    **PAGE 15**

46.     Further, "[a] court may frame an injunction based on violation of the FTC Act broadly enough to prevent the defendant from engaging in similar illegal conduct in the future." *FTC v. Neovi, Inc*., No. 06-1952 JLS, 2010 WL 3789713, at *2 (S.D. Cal. Sept. 27, 2010) (citing *FTC v. Colgate-Palmolive*, 380 U.S. 374, 395 (1965)). Numerous courts have imposed bans enjoining future participation in a particular line of business. *See, e.g., FTC v. Gill*, 265 F.3d 944, 957-58 (9th Cir. 2001) (ban on engaging in the credit repair business); *Ivy Capital*, 2013 WL 1224613, at *16 (ban on business coaching); *FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp. 2d 1006, 1013 (C.D. Cal. 2012) (ban on telemarketing and producing or disseminating infomercials); *Grant Connect*, 827 F. Supp. 2d at 1233 (ban on marketing and selling grant products and business opportunities); *FTC v. Dinamica Financiera*, No. 2:09-03554, 2010 WL 9488821, at *12 (C.D. Cal. Aug. 19, 2010) (ban on loan modification and foreclosure relief services); *FTC v. Neiswonger*, 494 F. Supp. 2d 1067, 1084 (E.D. Mo. 2007) (ban on marketing business opportunities); *FTC v. Bay Area Bus. Council, Inc.,* No. 02-5762 (N.D. Ill. Apr. 16, 2004) (ban on telemarketing and on sale of credit-related products), aff'd, 423 F.3d 627 (7th Cir. 2005); *FTC v. Credit Enhancement Servs.*, No. 02-2134 (E.D.N.Y. Mar. 31, 2004) (ban on marketing or selling credit-related goods or services); *FTC v. Consumer Alliance*, No. 02-2429 (N.D. Ill. Sept.29, 2003) (ban on telemarketing and sales of credit card protection and credit-related

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

1   products). Based on the allegations in the Amended Complaint (Doc. No. 235 at

2   p.23-35), such a ban, prohibiting defaulting Defendants from engaging in future

3   negative options sales, is appropriate here.

4                              **EQUITABLE MONETARY RELIEF**

5   47.      Where consumers suffer economic injury resulting from defendants'

6   violations of the FTC Act, equity requires monetary relief in the full amount of

7   consumers' losses (or ill-gotten gains). *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th

8   Cir. 2009) (affirming summary judgment holding defendants liable for the full

9   amount of loss incurred by consumers); *Inc21.com*, 745 F. Supp. 2d at 1011.

10  48.      To determine the proper monetary relief, the FTC need only reasonably

11  approximate the amount of consumer injury, at which point the burden shifts to

12  Defendants to show that the figures are inaccurate.  *See Commerce Planet*, 878 F.

13  Supp. 2d at 1089 (citing *FTC v. Direct Mktg. Concepts, Inc*., 624 F.3d 1, 15 (1st

14  Cir. 2010); *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997)). "Fuzzy figures due

15  to a defendant's uncertain bookkeeping cannot carry a defendants' burden to show

16  inaccuracy." *Id*.

17  49.      Where defendants act as a common enterprise, each may be held jointly and

18  severally liable for the unlawful acts and practices of the other. *Grant Connect*,

19  827 F. Supp. 2d at 1216; *J.K. Publ'ns*, 99 F. Supp. 2d at 1202.

20

[P̶R̶O̶P̶O̶S̶E̶D̶] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

50.     The common enterprise's net sales (total sales minus refunds, returns, and chargebacks) amounted to at least $72,692,812 from the conduct alleged in the Commission's Amended Complaint. (Doc. No. 482-1 at 2 ¶7). Defaulting Defendants received notice of the amount sought by the Commission in this action, by service upon their owners, officers, or agents. (Dkt. 486, *see also* Dkt. 482).

51.     The Commission is entitled to equitable monetary relief against Defaulting Defendants in the amount of $72,692,812, for which Defaulting Defendants are jointly and severally liable. (Doc. No. 482-1 at 2 ¶7).

52.     This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

53.     Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     "**Acquirer**" means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization  that operates or licenses a credit card system (*e.g.* Visa, MasterCard, American Express, and Discover) to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

B.   "**Charge**" or "**Charging**" means causing billing information to be submitted for payment, including against a consumer's credit card, debit card, bank account, phone bill, or other account, or otherwise attempting to collect money or other consideration.

C.   "**Clear and conspicuous**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

   1.   In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

   2.   A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

   3.   An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      On a product label, the disclosure must be presented on the principal display panel.

6.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

7.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

8.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

9.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.      "**Credit Card Laundering**" means:

1.      Presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and any Defendant;

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

2.     Employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or

3.     Obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

E.     "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

F.     "**Continuity Plan**" means any plan, arrangement, or system in which a consumer is periodically charged for products or services *without* prior notification by the seller before each charge.

G.     "**Defendants**" means Defaulting Defendants and Alon Nottea, Motti Nottea, Doron Nottea, Igor Latsanovski, Oz Mizrahi, Roi Reuveni, Paul Medina, Alan Argaman, and CalEnergy, Inc.

H.     "**Defaulting Defendants**" means all of the Defaulting Corporate Defendants, individually, collectively, or in any combination.

1.     "**Defaulting Corporate Defendants**" means BunZai Media Group,

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

1   Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.;

2   Agoa Holdings, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.;

3   SBM Management, Inc.; Media Urge, Inc.; Kai Media, Inc.; Insight Media, Inc.;

4   Secured Commerce, LLC; Shalita Holdings, Inc.; USM Products, Inc.; All Star

5   Beauty Products, Inc.; AMD Financial Network, Inc.; DMA Media Holdings,

6   Inc.; Focus Media Solutions, Inc.; and Merchant Leverage Group, Inc.; and their

7   successors and assigns.

8   I.      "**Electronic Fund Transfer**" means any transfer of funds, other than a

9   transaction originated by check, draft, or similar paper instrument, which is

10  initiated through an electronic terminal, telephonic instrument, or computer or

11  magnetic tape so as to order, instruct, or authorize a financial institution to debit or

12  credit an account.  Such term includes point-of-sale transfers, automated teller

13  machine transactions, direct deposits or withdrawals of funds, and transfers

14  initiated by telephone.  Such term does not include:

15        1.      Any check guarantee or authorization service that does not directly

16  result in a debit or credit to a consumer's account;

17        2.      Any transfer of funds, other than those processed by automated

18  clearinghouse, made by a financial institution on behalf of a consumer by means

19  of a service that transfers funds held at either Federal Reserve banks or other

20  depository institutions and that is not designed primarily to transfer funds on

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

behalf of a consumer;

3.      Any transaction the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the Securities and Exchange Commission;

4.      Any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a consumer and a financial institution for the purpose of covering an overdraft or maintaining an agreed upon minimum balance in the consumer's demand deposit account; or

5.      Any transfer of funds which is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution which is not pursuant to a prearranged plan and under which periodic or recurring transfers are not contemplated.

J.      "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services.

K.      "**Merchant**" means a person who is authorized under a written contract with an Acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services.

L.      "**Merchant Account**" means an account with an Acquirer that authorizes and allows a Merchant to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a

1  charitable contribution.

2  M.      "**Negative Option Feature**" means, in an offer or agreement to sell or

3  provide any good or service, a provision under which the consumer's silence or

4  failure to take an affirmative action to reject a good or service or to cancel the

5  agreement is interpreted by the seller or provider as acceptance or continuing

6  acceptance of the offer or agreement.

7  N.      "**Preauthorized Electronic Fund Transfer**" as defined by the Electronic

8  Fund Transfer Act, 15 U.S.C. § 1693a(10), means an electronic fund transfer

9  authorized in advance to recur at substantially regular intervals.

10  O.      "**Receiver**" means Charlene Koonce, the person appointed by the Court in

11  this matter pursuant to the Temporary Restraining Order and the Preliminary

12  Injunction.

13  **ORDER**

14  **I.    BAN ON NEGATIVE OPTION SALES**

15          **IT IS ORDERED** that Defaulting Defendants are permanently restrained

16  and enjoined from advertising, marketing, promoting, or offering for sale any

17  good or service with a Negative Option Feature, whether directly or through an

18  intermediary, including by consulting, planning, participating, facilitating, or

19  advising.

20

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

## II.    PROHIBITED BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defaulting Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from:

A.    Before a customer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose, in a clear and conspicuous manner all material terms and conditions of any offer, including:

1.    The amount, timing, and manner of all fees, charges, or other amounts that a consumer will be charged or billed, including but not limited to the date of the charge and whether it will be a credit card charge or checking account debit;

2.    The dates that any limited time sales offer begins and ends;

3.    The identity of the seller, including the seller's name, physical address, and customer service telephone number;

4.    The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer; and

5.    Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer.

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

B.      Before a customer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose, in a clear and conspicuous manner all material terms and conditions of any refund or cancellation policies, including:

      1.      The specific steps and means by which such requests must be submitted;

      2.      The customer service telephone number that a customer must call to cancel or return goods or services;

      3.      The email address, web address, or street address to which such requests must be directed;

      4.      Any mechanism that customers must use to return any goods or services, including any requirement for specific tracking methods or delivery confirmation for a package;

      5.      If there is any policy of not making refunds or cancellations, including any requirement that a product will not be accepted for return or refund unless it is unopened and in re-sellable condition, a statement regarding this policy; and

      6.      The date by which a customer is required to request a refund;

C.      Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any fact material, including:

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

PAGE 26

1.  That a good or service is free, a bonus, a gift, a trial, without cost;

2.  That a good or service is available for a minimal processing, service, or administrative fee or without further obligation;

3.  That a purchase is "risk free" or offered with a satisfaction guarantee or money-back guarantee;

4.  That the seller is accredited or rated favorably by the Better Business Bureau;

5.  A seller's affiliation with, or endorsement or sponsorship by, any person or entity;

6.  The amount that a consumer's credit or debit card will be charged and the timing of the charge(s);

7.  That a transaction has been authorized by a consumer;

8.  The dates that any limited time sales offer begins and ends;

9.  The requirements or terms of the seller's refund or cancellation policies;

10. The identity of the seller, including the seller's name, physical address, and customer service telephone number;

11. The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;

12. Any material restriction, limitation, or condition to purchase, receive,

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1    or use goods or services that are the subject of a sales offer; and

2         13.    Any material aspect of the performance, efficacy, nature, or central

3                characteristics of a good or service.

4    D.    Providing false information to any bank or other billing entity, directly or

5    indirectly, to contest a consumer's request for a refund, cancellation, chargeback,

6    or reversal of payment;

7    E.    Failing to obtain a consumer's express informed consent by causing billing

8    information to be submitted for payment, or collecting or attempting to collect

9    payment for goods or services without the consumer's express verifiable

10   authorization, which shall include: (a) the customer's signature, including an

11   electronic or digital form of signature that is recognized as a valid signature under

12   federal law; or (b) express oral authorization that is audio-recorded and made

13   available to the customer and the customer's bank or other billing entity and that

14   evidences clearly both the customer's authorization of payment and the

15   customer's receipt of the following information: (i) The number of debits,

16   charges, or payments (if more than one); (ii) the date(s) the debit(s), charge(s), or

17   payment(s) will be submitted for payment; (iii) the amounts of the debit(s),

18   charge(s), or payment(s); (iv) the customer's name; (v) the customer's billing

19   information identified with sufficient specificity such that the customer

20   understands what account will be used to collect payment; (vi) identification of

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

the seller's name, physical address, and telephone number; (vii) the date of the customer's oral authorization.;

F.      Failing to obtain written authorization signed or similarly authenticated from consumers for Preauthorized Electronic Fund Transfers from the consumer's account; or

G.      Failing to provide a copy of a written authorization signed or similarly authenticated by a consumer for Preauthorized Electronic Fund Transfers from the consumer's account.

### III.     PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

**IT IS FURTHER ORDERED** that Defaulting Defendants, Defaulting Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from Credit Card Laundering.

### IV.     MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of **SEVENTY-TWO MILLION SIX HUNDRED AND NINETY-TWO THOUSAND EIGHT HUNDRED AND TWELVE Dollars ($72,692,812)** is entered in favor of the Commission against Defaulting

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1  Corporate Defendants, jointly and severally, as equitable monetary relief.

2    B.    Defaulting Corporate Defendants are ordered to pay to the Commission the

3  amount of **SEVENTY-TWO MILLION SIX HUNDRED AND NINETY-**

4  **TWO THOUSAND EIGHT HUNDRED AND TWELVE Dollars**

5  **($72,692,812)**, within 7 days of entry of this Order.

6              **V.    ADDITIONAL MONETARY PROVISIONS**

7          **IT IS FURTHER ORDERED** that:

8  A.    Within 7 days of entry of this Order, Defaulting Defendants must submit

9  their Taxpayer Identification Numbers (Social Security Numbers or Employer

10  Identification Numbers) to the Commission, for use in collecting and reporting on

11  any delinquent amount arising out of this Order, in accordance with 31 U.S.C.

12  §7701.

13  B.    All money paid to the Commission pursuant to this Order may be deposited

14  into a fund administered by the Commission or its designee to be used for

15  equitable relief, including consumer redress and any attendant expenses for the

16  administration of any redress fund. If a representative of the Commission decides

17  that direct redress to consumers is wholly or partially impracticable or money

18  remains after redress is completed, the Commission may apply any remaining

19  money for such other equitable relief (including consumer information remedies)

20  as it determines to be reasonably related to Defaulting Defendants' practices

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

alleged in the Amended Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defaulting Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

C.     Any asset freeze is modified to permit the payments/transfers identified in the Monetary Judgment Section.

## VI.    CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defaulting Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly:

A.     Failing to provide sufficient consumer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defaulting Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.      Disclosing, using, or benefitting from consumer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a consumer's account

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1  (including a credit card, bank account, or other financial account), that any

2  Defaulting Defendant obtained prior to entry of this Order in connection with the

3  sale of any product through a negative option continuity plan; and

4  C.      Failing to destroy such consumer information in all forms in their

5  possession, custody, or control within 10 days after entry of this Order.

6          Provided, however, that consumer information need not be disposed of, and

7  may be disclosed, to the extent requested by a government agency or required by

8  law, regulation, or court order.

9      **VII.   TURNOVER OF ASSETS HELD BY THIRD PARTIES**

10         **IT IS FURTHER ORDERED** that any financial institution, business

11  entity, or person that holds, controls, or maintains custody of any account or asset

12  of Defaulting Defendants, or any account or asset held on behalf of, or for the

13  benefit of, such Defaulting Defendant, shall turn over such account or asset to the

14  Commission, by wire transfer pursuant to directions provided by counsel for the

15  Commission, or as otherwise directed in writing by counsel for the Commission,

16  within seven days of receiving a request by the Commission by any means,

17  including, but not limited to, via facsimile.

18

19

20

**[Proposed] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

# VIII.    ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defaulting Defendants obtain acknowledgments of receipt of this Order:

A.    Each Defaulting Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 20 years after entry of this Order, each Defaulting Defendant, for any business that he, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which each Defaulting Defendant delivered a copy of this Order, such Defaulting Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## IX.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defaulting Defendants make timely submissions to the Commission:

A.     One year after entry of this Order, each Defaulting Defendant must submit a compliance report, sworn under penalty of perjury:

1.     Each Defaulting Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with such Defaulting Defendant; (b) identify all of such Defaulting Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant which Defaulting Defendants must describe if he knows or should know due to his own involvement; (d) describe in detail whether and how each Defaulting Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, each Defaulting Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses,

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

including all residences; (b) identify all business activities, including any business for which such Defaulting Defendant performs services whether as an employee or otherwise and any entity in which such Defaulting Defendant has any ownership interest; and (c) describe in detail such Defaulting Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 20 years after entry of this Order, each Defaulting Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defaulting Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any entity that such Defaulting Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, each Defaulting Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defaulting Defendant performs services whether as an employee or otherwise and any entity in which such Defaulting Defendant has any ownership interest, and identify the

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

Case 2:15-cv-04527-GW-PLA   Document 530-2   Filed 08/17/16   Page 36 of 40   Page ID #:17499

name, physical address, and any Internet address of the business or entity.

C.     Each Defaulting Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defaulting Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  *FTC v. BunZai Media Group, Inc*., et al. FTC File No. X150047.

## X.     RECORDKEEPING

**IT IS FURTHER ORDERED** that each Defaulting Defendant must create certain records for 20 years after entry of the Order, and retain each such record

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

for 5 years.  Specifically, each Defaulting Defendant for any business that such Defaulting Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      A copy of each unique advertisement or other marketing material, including Internet and social media advertising or webpages.

## XI.    COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring each Defaulting Defendant's compliance with this Order, including any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Commission, each Defaulting Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Defaulting Defendants. Defaulting Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any such Defaulting Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to any Defaulting Defendant or any individual or entity affiliated with any such Defaulting Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XII.    CONSUMER REPORTING AGENCIES

Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning any

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1   Defaulting Defendant, pursuant to Section 604(1) of the Fair Credit Reporting

2   Act, 15 U.S.C. §1681b(a)(1).

## XIII.   RECEIVERSHIP TERMINATION

**IT IS FURTHER ORDERED** that **Charlene Koonce** of **Scheef & Stone, LLP** shall continue to serve as the Court's Receiver and is hereby directed and authorized to accomplish the following:

A.      Complete the transfer, liquidation, or other disposition of the assets of the Defaulting Corporate Defendants and any other assets ordered to be transferred to the Receiver under the provisions of this Order;

B.      Prepare, file, and pay any payroll tax obligations due on or before the date of the Receiver's report described in Subsection C below, for the Defaulting Corporate Defendants;

C.      Prepare and file with the Court a report describing the Receiver's activities under this Order and the Preliminary Injunction and an application for compensation, expenses, and all other relief necessary to terminate the receivership estate and discharge the Receiver as to Stipulating Defendants;

D.      Prepare and file a tax return for the receivership estate, and provide all other reports and filings necessary to comply with applicable state or federal law;

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

1    E.    Any money that the Court finds should be awarded to the

2  Receiver shall be paid only from the monies or other assets in the possession of,

3  or under the control of, the Receiver. No party shall have an obligation to pay any

4  money to the Receiver for compensation or expenses;

5    F.    Upon the Court's approval of the Receiver's final application for

6  compensation and expenses, distribute to the Commission all remaining funds in

7  partial satisfaction of the judgment. Such payment must be made by electronic

8  fund transfer in accordance with instructions to be provided by a representative of

9  the Commission.

10  The Receiver must complete all duties within 120 days after the entry of

11  this Order, but any party or the Receiver may request that the Court extend the

12  Receiver's term for good cause. Upon completion of the above tasks, the duties of

13  the Receivership shall terminate, and the Receiver shall be discharged.

14  **XIV.   RETENTION OF JURISDICTION**

15  **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this

16  matter for purposes of construction, modification, and enforcement of this Order.

17

18  **SO ORDERED this ___ day of _____, 2016.**

19

   _____

20  **UNITED STATES DISTRICT JUDGE**

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF

PAGE 40