**The Law Offices of Shai Oved**
Shai Oved, Esq. (SBN 185526)
7445 Topanga Cyn Blvd., Suite 220
Canoga Park, CA 91303
Telephone:  (818) 992-6588
Facsimile:  (818) 992-6511
Email:        ssoesq@aol.com

Attorneys for Alan Argaman, Secured Merchants, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                      Plaintiff,<br><br>                      vs.<br><br>BUNZAI MEDIA GROUP, INC., et al.,<br>                      Defendants.<br>_____<br><br>SECURED MERCHANTS, LLC, CHARGEBACK ARMOR, INC. AND ALAN ARGAMAN,<br><br>                      Cross-Claimants<br>                      v.<br>ALON NOTTEA, an individual,<br><br>                      Cross-Defendant | Case No. 2:15-cv-04527-GW (PLAx)<br><br>**ALAN ARGAMAN, and SECURED MERCHANTS, LLC,'S   RENEWED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; JOINDER TO RELIEF DEFENDANT CHARGEBACK ARMOR, INC.'S MOTION FOR SUMMARY JUDGMENT; REQUEST FOR JUDICIAL NOTICE**<br><br>**Hearing Date:  October 17, 2016**<br>**Time: 8:30 am**<br>**Location:  Courtroom 10 – Spring St.**<br>**Judge: Hon. George H. Wu** |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 17, 2016 at 8:30 am in Courtroom 10 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles, CA 90012, ALAN ARGAMAN ("Argaman"), and SECURED MERCHANTS, LLC ("SM"), (collectively "Defendants) will and hereby do move the Court for summary judgment against Plaintiff FEDERAL TRADE COMMISSION.

1

1    The Defendants are entitled to judgment as a matter of law because there is no

2    genuine issue of material fact that: (1) SM was not a part of the Common Enterprise

3    alleged in the First Amended Complaint; and (2) Argaman did not participate in or

4    have the ability to control the alleged illegal conduct.

5    This Renewed Motion is based upon: this Notice of Motion; the attached

6    Memorandum of Points and Authorities; the former Declarations of Alan Argaman;

7    the Compendium of Exhibits; the Statement of Uncontroverted Facts and Conclusions

8    of Law; all the pleadings, papers, and records on file in this matter; any reply brief

9    filed in connection with this Motion; and upon such argument that may be presented

10   at the hearing on this Motion.  Movants Join in the Motion filed by Chargeback

11   Armor, Inc., for summary judgement and ask this Court to take Judicial Notice of the

12   former Motion for Summary Judgment filed as Document 354 on April 18, 2016.

13   This Motion is made following the status conference which took place on
     September 1, 2016, setting the matter for hearing on October 17, 2016, at 8:30 a.m.

14

15

16   DATED:  September 19, 2016          Respectfully submitted,

17                                        The Law Offices of Shai Oved

18

19                                        By:   /s/ Shai Oved
                                                Shai Oved, Esq.
20                                              Attorneys for Alan Argaman, and
                                                Secured Merchants, LLC

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................6

II. FACTUAL BACKGROUND .................................................................7

III. LEGAL ARGUMENT............................................................................8

A. SM Was Not a Part of Any Common Enterprise With the
AuraVie Defendants ................................................................... 9

1. Lack of Common Officers or Employees....................................9

2. No Evidence of Common Control. .......................................... 11

3. The Evidence Regarding the Sharing of Office Space Does not
Support the Imposition of Common Enterprise Liability............................ 13

4. There Is No Evidence of Comingling Funds. .......................... 14

5. Lack of Common Officers or Employees.................................. 14

6. SM Did Not Share Business Functions With The AuraVie
Defendants ................................................................... 15

B. There Is No Basis For Holding Argaman Liable .................................... 16

IV. CONCLUSION .................................................................................. 24

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.,* 477
U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .............................. 8

*Delaware Watch Co. v. FTC,* 332 F. 2d 745, 746 (2d Cir.
1964*)* ............................................................................................................ 9

*FTC v. Am. Standard Credit Sys Inc.*, 874 F. Supp, 1080, 1089
(C.D. Cal. 1994) ......................................................................................... 22

*FTC v. Amy Travel. Serv., Inc.,* 875 ........................................................... 22
F.2d 564, 574 (7th Cir. 1989)

*FTC v. CHBA,* Case No. 1:10-cv-3551, Order at 9,
(E.D.N.Y May 23, 2012)............................................................................... 9

*FTC v. Freecom C'ommo'n, Inc.*, 401 F.3d 1192, 1205
(10th Cir. 2005) ......................................................................................... 21

*FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1210
(D. Nev. 2011) ........................................................................................... 14

*FTC v. Kuykendall,* 371 F. 3d 745, 758-59 (10th Cir. 2004)...................... 13

*FTC v. National Urological Grp. Inc.*, 645 F. Supp. 2d 1167,
1183 n. 7 (N.D. Ga. 2008) ......................................................................... 13

*FTC v. Neovi*, 598 F. Supp.2d 1104, 1116 (S.D. Cal. 2008) ..................... 14

*FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43
(9th Cir. 2010) ........................................................................................... 14

*FTC v. Publishing Clearing House, Inc.*, 104 F.3d
1168, 1171 (9th Cir. 1997) ......................................................................... 16

*FTC v. Stefanchik*, 559 F.3d 924, 931 ......................................................... 22
(9th Cir. 2009)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*FTC. v. Swish Mag.*, No. C 09-03814 RS, 2010
WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) ................................................21

*FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1277 .................................21
(M.D. Fla. 2012)

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68, 127 S. Ct. 2201,
167 L. Ed. 2d 1045 (2007) ...........................................................................17

*Scott v. Harris,* 550 U.S. 372, 378, 380-81, 127 S. Ct. 1769, 167 L. Ed.
2d 686 (2007) .................................................................................................8

**STATUTES**

Fed. R. Civ. P. 56(a). ......................................................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Argaman owns SM, which is a technology company. (Argaman Decl. at ¶ 2, Argaman Depo., 141:15-25, 142:1-3).  SM provided technical services on a fee for service basis to a number of companies including some of the other defendants in this case.  SM invested some of the proceeds from its work for other clients in relief defendant Chargeback Armor, Inc., (hereinafter "CBA").  Based on these arms-length and legal business relationships, the FTC seeks to hold Argaman and SM jointly and severally liable for the allegedly $70 million deceptive advertising and unauthorized billing scheme that the AuraVie Defendants (defined for the purposes of this Motion as all Defendants other than SM, Argaman, CBA, and Secured Commerce, LLC) perpetrated and to hold CBA liable as a relief defendant.  The FTC does this while conceding that SM only made approximately $340,000 in total for its services provided to the AuraVie entities (specifically SBM management). (Exh. 833).  The FTC seeks to do this by asserting that SM was a part of a "common enterprise" with the AuraVie defendants.  Neither the law nor the facts support this conclusion. Despite having the benefit of pre-complaint discovery, the ability to conduct a "raid" on the premises of the defendants in this case, the full weight of the government behind it, and almost a year of discovery, the FTC cannot produce sufficient admissible evidence to create a genuine issue of material fact regarding SM's involvement in the common enterprise.  Because the claims against Argaman and CBA both are derivative from the claim against SM, those claims also fail as a matter of law. As a result, the Court should grant the Defendants' motion for summary judgment.

## II.

## FACTUAL BACKGROUND

Argaman is the sole member/manager and owner of SM.   (Argaman Decl. at ¶ 1).  The FTC has tried to argue  otherwise, but has failed to provide any admissible evidence of this and Argaman's testimony and the documentation shows otherwise.  Thus, SM is not controlled by, owned, or operated by any of the other defendants, and was not used by these other defendants in furtherance of the alleged "AuraVie" consumer fraud. (Argaman Decl. at ¶ 1, 3).

Argaman, by and through his company SM, simply acted as an arms' length technology vendor  developing and installing a portal system through which chargebacks made by consumers could be viewed and processed.  Argaman developed technology; he had no interaction with customers.   (Argaman Decl. at ¶ 5-6, Argaman Depo., 109:8-25).  As further discussed below, Argaman, by and through SM, also provided technology for Interactive Voice Response systems and helped design a straight sale website.  (Argaman Decl. at ¶ 5, 6, 9).

The FTC's efforts to inflate and distort Argaman's role to include the shipping of AuraVie products and designing of the AuraVie risk free trial website lack supporting admissible evidence.

Relief Defendant CBA was formed on February 18, 2015 (Exh. 811), long after the AuraVie Defendants' skin care sales business had been shuttered.  The First Amended Complaint does not allege that CBA engaged in any wrongdoing.  Rather, the only allegation against CBA is that SM made a capital investment of $250,000 of its own funds into CBA in exchange for equity.  The First Amended Complaint alleges that this money is ill-gotten gain from the alleged deception; however, ample documentation, including bank records, invoices, and contracts show  that the funds that SM invested in CBA were not from any work that SM did for the other Defendants but rather for work not connected to the AuraVie Defendants.   (Exh. 834, 835, 836, 837, 838, Argaman Decl. at ¶ 19, Costache Decl. at ¶ 4-5).

The Defendants anticipate that the FTC will attempt to rely on its answers to contention interrogatories that it served on the last day of discovery to attempt to support the FTC's own motion for summary judgment and to oppose the Defendants' motion.  Defendants submit that the Court should not consider these answers as they are not verified (and counsel is informed that they have not yet been verified) as required by Rule 33. (Exh. 802-804).  Moreover, the answers themselves are patently inaccurate and not reliable, which perhaps explain why no one at the FTC would verify them.  As explained below, throughout the answers documents are cited to support bold assertions when in fact the document bear little or no relationship to the facts for which they are offered.  Given the stakes for Mr. Argaman, SM, and CBA, the FTC's cavalier attitude towards their discovery obligations is beneath what citizens should expect from their government.

## III.

## LEGAL ARGUMENT

Summary judgment is appropriate where the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 378, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). For a dispute of fact to be genuine, the evidence must be such that a reasonable trier of fact could return a verdict for the non-moving party. *See Scott*, 550 U.S. at 380-81. A mere scintilla of evidence in favor of the non-moving party is insufficient to withstand summary judgment. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

//

### A. SM Was Not a Part of Any Common Enterprise With the AuraVie Defendants.

SM conducted a limited amount of arms-length business with the AuraVie entities. (Argaman Decl. at ¶ 5-6). Those business relationships do not provide an adequate factual basis for imposing joint and several liability for the conduct of the AuraVie entities on SM's part of a common enterprise.

Courts allow the FTC to use the common enterprise doctrine to expand the agency's reach beyond those who themselves deceptively market a product where the "same individuals were transacting an integrated business through a maze of interrelated companies." *Delaware Watch Co. v. FTC, 332 F. 2d 745, 746* (2d Cir. 1964). Applying *Delaware Watch*, courts rely on several factors to assess the existence of a common enterprise: whether companies (1) maintain officers and employees in common; (2) operate under common control; (3) share offices; (4) commingle funds; and (5) share advertising and marketing. See *FTC v. CHBA, Case No. 1:10-cv-3551, Order at 9*, (E.D.N.Y May 23, 2012). No one factor is determinative, rather, the entirety of the factual circumstances dictates whether a common enterprise exists and whether a company should be found to be a part of it. *Delaware Watch*, 332 F.2d 1143.

Here, neither any individual factor nor the overall circumstances support finding SM to be a part of the common enterprise involving the AuraVie Defendants.

### 1. Lack of Common Officers or Employees.

Most of the work done by SM is done by technical personnel in India. (Argaman Decl. at ¶ 2). Argaman, the sole managing member and owner of SM at all times since SM was formed, was not an employee or officer of any of the AuraVie Defendants. (Argaman Decl. at ¶ 1, 3, 4).

Doron Nottea is the only link between SM and the AuraVie Defendants, and that link is inadequate to impose joint and several liability upon SM as Mr. Nottea never undertook any actions in furthering SM's business. Mr. Nottea was not an officer or employee of SM. (Argaman Decl. at ¶ 4, Argaman Depo., 131:4-24).

1  Doron Nottea has for many years operated an "adult" products business

2  independent of the AuraVie Defendants.  Doron Nottea has done some bookkeeping,

3  including bill payment, for AuraVie Defendants.  There is no evidence that he is an

4  officer or employee of the AuraVie Defendants or had the ability to control those

5  entities.

6  Moreover, Argaman and Doron Nottea have known each other for years.

7  Several years ago Argaman proposed to Doron Nottea that the two of them share

8  office space for their two separate business ventures and possibly explore doing

9  business together.  To this end, Secured Commerce, another Defendant, was formed.

10  However, Secured Commerce did very limited business and was eventually shuttered.

11  (Argaman Decl. at ¶ 8-9, Argaman Depo., 139:1-21).

12  Due to this friendship and Doron Nottea's experience with bookkeeping,

13  Argaman made Doron Nottea an authorized signatory on the bank account for SM.

14  Doron Nottea was simply on the SM bank account for convenience purposes, as

15  Argaman travels internationally often and wanted the convenience of having his friend

16  and business associate write checks on behalf of SM under the direction of Argaman.

17  (Argaman Decl. at ¶ 4).  However, Doron Nottea, actually never wrote any checks on

18  behalf of SM, and was never intended to be, nor was in practice, a part of the actual

19  operations of SM.  (Argaman Decl. at ¶ 4).

20  In the Interrogatory Responses, the FTC references a document Bates Stamped

21  by the FTC as AuraVie-0003002 and represents that this document shows Alon

22  Nottea and Argaman are both managers of SM.  However, when one glances at this

23  referenced document, it appears to be a table of contents for a document that is for

24  "Ruby Sky Development, LLC. (Exh. 820).  This document does not support this

25  baseless allegation.

26  Next, the FTC says in its Responses that there is an executive summary for SM

27  that names various management team members (AuraVie-0003024).  However,

28

AuraVie-0003024 is a document entitled "Chargeback Rebuttal" and thus completely nonsensical in this context. (Exh. 822).

Finally, the FTC boldly alleges that SM shared many employees with the other Corporate Defendants.  Notably, there is no evidentiary support provided for this assertion in the Responses. (Exh. 803, p. 9).  The FTC's unsupported assertions do not defeat SM's properly supported motion.

## 2.  No Evidence of Common Control.

There is no evidence that there was common control between SM and the AuraVie Defendants.  Argaman ran a technology company that provided technological services to a variety of companies including the AuraVie Defendants. There is no evidence that Argaman controlled the AuraVie Defendants or that Alon Nottea, Motti Nottea, Doron Nottea, Igor Latsanovski, Oz Mizrahi, or Roi Reuveni controlled Secured Merchants.  (Argaman Decl. at ¶ 1, 3). There is also no evidence that Argaman knew, intended that, or actually provided any services through SM to further the AuraVie Defendants' allegedly deceptive and unfair business practices. (Argaman Decl. at ¶ 5, 6, 10, 11, 12, 13, 14, 15, 16, 17).

Indeed, both the Court and the Receiver previously recognized that Secured Merchants is an independent business that generated the majority of its income from customers other than the AuraVie Defendants. (Doc. 120, p. 77:21-22). These facts are fundamentally inconsistent with common control or a common enterprise.

In its Interrogatory Responses, the FTC states that Doron Nottea referenced SM as one of the "Bunzai Companies," in document AuraVie-0003453.  Yet, this document is nothing more than a single page of an unknown document and contains no reference to Doron Nottea, Argaman, or SM.  (Exh. 827).  This is the type of "investigation," "discovery" and "fact-uncovering" that the FTC has been able to achieve in the nearly one year that this matter has been litigated.   SM was not one of the "Bunzai Companies." (Argaman Decl. at ¶ 3, 7, 10-17).

Also in its Interrogatory Responses, FTC references alleged invoices that discuss SM meeting with "Igor" (presumably referring to Defendant Igor Lastanovsky).  Again, no such invoices are referenced or attached to the Responses. (Exh. 803 p. 9).

SM's only connection with the AuraVie merchants was in providing IT services to those merchants primarily for viewing and handling chargebacks and for developing their IVR system.  Secured Merchants' role was to provide the technology for handling chargebacks and an IVR system; Secured Merchants was not involved in actually handling chargebacks or dictating the content of the IVR.  (Argaman Decl. at ¶ 5-6).

Simply put, it provided the technology, and the AuraVie Defendants used it however they wished; SM did not instruct them on how to use the technology, did not instruct them on how the technology could be used for illegal practices, nor did SM/Argaman have any actual or constructive knowledge of its technology being used for any wrongdoing as they were not privy to the meetings and communications between the AuraVie Defendants.  SM sent invoices that were paid for the services rendered, no different than a landlord renting a premises to the AuraVie Defendants, or USPS being used for shipping of the AuraVie products and being paid for this. (Argaman Decl. at ¶ 5-6, 12-16).

Secured Commerce, a company that was started by Argaman and Doron Nottea, sent one invoice for website development to the AuraVie Defendants.  As has been explained repeatedly, and testified to under oath, that website was a "straight sale" website where consumers simply could purchase the AuraVie products outright in one transaction, not a negative option/continuity/risk-free trial website, and the services were invoiced for a total of $13,500, which hardly provides a basis for holding Secured Commerce responsible for all of AuraVie's negative option sales.  (Argaman Decl. at ¶ 9, Argaman Depo., 49:8-25).

Yet, in its Interrogatory Responses, the FTC continues to blindly assert that SM and Argaman did other web design work for the AuraVie Defendants without providing any support for this assertion.

This type of third-party vendor relationship is not common control and not the basis for imposing common enterprise liability.  See *FTC v. Kuykendall*, 371 F. 3d 745, 758-59 (10th Cir. 2004) (finding no common enterprise based on commonly owned company providing and being paid for services such as equipment leasing, billing, and collecting); *FTC v. National Urological Grp. Inc.*, 645 F. Supp. 2d 1167, 1183 n. 7 (N.D. Ga. 2008) (finding common enterprise where companies were not "compensated for services" performed on the "on the other companies behalf.").

Here, unlike the situation in *Kuykendall*, SM is not commonly owned with the AuraVie Defendants as Argaman is the sole owner, so the imposition of common enterprise liability is even more unwarranted.

### 3.  The Evidence Regarding the Sharing of Office Space Does not Support the Imposition of Common Enterprise Liability.

SMs/Argaman shared office space with Doron Nottea and his adult business in Suite 105 of the Canby building.  Doron Nottea also used Suite 109 in that building for his adult business.  Because he also performed some bookkeeping for the AuraVie entities, Doron Nottea kept books and records for those entities in Suite 105.  There is no evidence that Suite 105 was in any way the operational "nerve center" for the AuraVie entities or Alon Nottea who ran those entities operated out of Suite 105.

The evidence shows that the AuraVie entities operated out of the 7900 Gloria, Van Nuys CA address and briefly from a space at the Canby building in Suite 103. Neither Secured Merchants nor Argaman had anything to do with those spaces.  The AuraVie entities leased, paid for, and occupied those spaces without the involvement of Argaman or SM.  (Argaman Decl. at ¶ 10-11).

When the AuraVie entities vacated that space some remaining inventory was moved into the space used by Doron Nottea's adult business pending disposition.

These incidental contacts fail to establish that SM was a part of a common enterprise.

### 4. There Is No Evidence of Comingling Funds.

Typically, one of the strongest indicators that defendants operate as a common enterprise is the comingling of funds. There is no evidence of that here. The AuraVie entities paid Secured Commerce and Secured Merchants for services rendered, but that does not constitute the requisite comingling of funds. See *Kuykendahl* supra 371 F. 3d at 758-59. Courts analyzing whether funds have been comingled so as to constitute a common enterprise focus on whether the companies pooled funds, shared expenses, and had unhindered movement of funds between them. See *FTC v. Neovi*, 598 F. Supp.2d 1104, 1116 (S.D. Cal. 2008); *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43 (9th Cir. 2010) (finding a common enterprise where companies pooled revenues and assets for their collective use); *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1210 (D. Nev. 2011) (same, where companies transferred funds among themselves through various undocumented loans and accounts receivable). The FTC has not provided any evidence of that type of conduct here, and the absence of this type of evidence is fatal to the allegation that SM participated in any common enterprise.

### 5. SM Did Not Share Advertising and Marketing With the AuraVie Defendants.

There is no evidence SM engaged in any shared advertising or marketing with the AuraVie entities.

As evidence of this, in its Interrogatory Responses, the FTC quotes from an unknown document, explaining that SM was in the business of selling skincare products, according to its founders. The documents referenced, AuraVie-0003024 - AuraVie-0003025, have nothing to do with this assertion. (Exh. 822, 823).

At its core, this is a case about deceptive marketing and advertising and not a shred of evidence has been produced by the FTC showing that SM had anything to do with the advertising or marketing in question.

This alone makes it clear that there is simply no basis for the imposition of any liability upon SM or Argaman.

### 6. **SM  Did Not Share Business Functions With The AuraVie Defendants.**

In the First Amended Complaint, the FTC makes conclusory allegations that all of the corporate defendants shared business functions and that this supports finding a common enterprise.  This vague and overbroad allegation does not rescue the failed effort to pin common enterprise liability on SM.  Secured Merchants had limited business relations with the AuraVie entities, for which they sent invoices and were paid.  (Argaman Decl. at ¶ 5-6).  This does not create a common enterprise.

Similarly, the fact that Secured Merchants shared office space with Doron Nottea and that Mr. Nottea provided some bookkeeping services for both the AuraVie Defendants and Secured Merchants (again, the "bookkeeping services" were limited to being an authorized signer on a bank account and having the ability to write checks, but not even actually writing checks) (Argaman Decl. at ¶ 4) does not transform routine arms' length business relationships into a common enterprise.

SM invoiced the AuraVie Defendants, particularly SBM Management, for approximately $340,000 for technical services. (Exh. 833).  These invoices detail these services and it is abundantly evidence upon looking at these invoices that the invoices are completely unrelated to the alleged sale of skincare using deceptive marketing and advertising.

There is no evidence that SM shared in any profits generated by the AuraVie entities.  SM was a vendor paid for technological services. Nevertheless, the FTC seeks to hold SM and (and though this entity Argaman) jointly and severally liable for the full amount of alleged consumer injury, an amount the FTC has stated to be in excess of $75 million.

The FTC brings this case under Section 13(b) of the FTC Act, 15 USC §53(b), which allows this Court to award a permanent injunction and other equitable relief.

Imposing joint and several liability upon SM under these facts (or lack thereof) is anything but equitable.  SM's motion for summary judgment should be granted.

**B.  <u>There Is No Basis For Holding Argaman Liable.</u>**

The FTC seeks to hold Argaman liable based on his role at SM.  As explained above, the FTC lacks sufficient evidence to hold SM liable as part of an alleged common enterprise.  With the lack of evidence against SM, there is no basis for finding Argaman liable.

There is also no basis for finding Argaman liable for any alleged actions he took apart from his work through SM.   The Ninth Circuit has established a two-prong test for determining when an individual may be personally liable for corporate violations of the FTC Act; the FTC must prove that the individual: 1) participated directly in or had authority to control the unlawful acts or practices; and 2) had actual knowledge of the misrepresentation involved, was recklessly indifferent to the truth or falsity of the representation, or was aware of a high probability of fraud and intentionally avoided learning the truth.  *FTC v. Network Serv. Depot, Inc.*, 617 F.3d 1127, 1138 (9th Cir. 2010); *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

There is no evidence that Argaman participated in or had the authority to control the alleged illegal conduct or that he possessed the requisite knowledge.

The Ninth Circuit has explained that "the common law has generally understood [recklessness] in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known'" *Network Serv. Depot, Inc.*, 617 F.3d at 1141 n. 12 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).)

Where the material facts are substantially undisputed, knowledge can be a question of law properly decided by summary judgment. See *Network Serv. Depot, Inc.*, 617 F.3d at 1139.

16

There is no evidence showing that Argaman actually knew of or was recklessly indifferent to purported misrepresentations or unfairness concerning the negative option, continuity, risk-free trials, and/or any of the other forms of deceptive advertising and marketing alleged.  (Argaman Decl. at ¶ 7, 12-16).

In the FTC's Interrogatory Responses, Argaman is alleged to have provided various services, such as assisting a call center with Alon Nottea (AuraVie-0002640 - AuraVie-0002641).  These two documents relate to something called "Hatch" and contain graphics that have no reference to SM, Alon Nottea, a call center, or Argaman.  (Exh. 813-814).

The FTC further boldly claims that there are screenshots that show Argaman designing, creating, or managing a website offering risk free trial offers of skincare products.  Predictably, the "evidence" cited here is yet another document that has nothing to do with the allegation, let alone support the allegation.  See AuraVie-0003379, Exh. 825.  Bizarrely, this document appears to be some sort of cover sheet from the FTC, not even a document related to AuraVie.

Presumably, the FTC is referring to document AuraVie-0003380 (Exh. 839).  However, this is nothing more than the AuraVie webmaster reaching out to SM for technical services involving internet protocols.  A plain reading of the email shows that Argaman/SM are not discussing anything whatsoever related to the designing, creating, or managing of the website.  Argaman simply pointed Victor Azal to the authority on the internet protocol governing authority, ARIN.  (Argaman Decl. at ¶ 23).

As Argaman stated in his deposition, he only ever worked on an AuraVie site that was a straight sale site, i.e. had no continuity, risk free trial offers, negative options, etc.  See Argaman Depo., 49:8-18).  The FTC chose not to ask Argaman about Exh. 839 at his deposition, and cannot now speculate about what this document means to defeat summary judgment.

1    Next, the FTC claims Argaman ordered a product that the Defendants sold

2    using negative option and continuity plans, referencing AuraVie-0000264.  This

3    document is literally a blank page with the words "Fluent" in the top left.  It is unclear

4    how this document supports the FTC's assertions.  (Exh. 805).

5        The FTC continues its fairy tale by creating an "AuraVie Day, which is

6    supposedly a promotional day to promote AuraVie products.  The document cited

7    here, AuraVie-0001601, refers to a two day detox plan.  (Exh. 806).   The FTC has

8    completely misinterpreted this document as a plain reading of the document itself

9    shows that it has nothing to do with an actual promotional day but refers to a diet plan

10   of some sort.  Most notably, this document does not reference SM or Argaman in any

11   way, shape, form, and indeed, these parties never engaged in or had any knowledge of

12   an AuraVie Day.   Once again, the FTC failed to ask Mr. Argaman about this

13   document at his deposition, but now speculates as to what it might mean.  This is

14   inadequate to defeat summary judgment.

15       In its Interrogatory Response, the FTC states that Argaman also supposedly set

16   up toll-free numbers so Defendants could defraud and deceive banks and law

17   enforcement according to the Interrogatory Responses. The sole document referred to

18   in support of this very serious allegation is AuraVie-0002784.  (Exh. 816).  This

19   document is an Articles of Incorporation for Pinnacle Logistics, a company Argaman

20   or SM had no relationship with and this document does not even have anything to do

21   with toll free numbers.   Once again, the FTC failed to question Argaman about this

22   document or this subject matter during his deposition.

23       Next, the FTC maintains in its Responses that Argaman supposedly introduced

24   Doron Nottea to a product called LeElle and then furthermore consulted on the design

25   and ownership of this product, a product that the Defendants purportedly sold. (Exh.

26   802, p. 12).

27       The sole support provided for this is a picture of the product.  It is hard to

28   envision how, even after giving the FTC the entire benefit of the doubt, this picture of

a bottle of stretch mark reduction cream shows that Argaman introduced Doron Nottea to this product, that Argaman helped design the packaging for this product, and that Defendants sold this product.  (Exh. 809).  Once again, the FTC failed to question Argaman on this subject during his deposition.

Next, in the Responses, the FTC quotes from a supposed Standard Service Agreement that Argaman "possessed," yet does not reference the document or provide a copy of it.  (Exh. 802, p. 13).   This is not admissible evidence sufficient to defeat summary judgment.

The FTC then continues its pattern of making serious allegations without providing any relevant support whatsoever, this time claiming that Argaman, through Secured Commerce, assisted in shipping AuraVie products.  (Exh. 802, p. 13). The documents referenced in support of this, AuraVie-0002607 - AuraVie-0002608, are a Statement of Information for CBA, and a blank page, respectively.  (Exh. 811-812). These have nothing to do with shipping AuraVie products and nothing of the sort occurred as discussed above.  Once again, no questions were asked regarding this document at Argaman's deposition.

The FTC also alleges that Argaman was  privy to the alleged wrongdoing of the other Defendants, as he allegedly received "emails discussing the numerous shell companies and merchant accounts Defendants used to sell AuraVie products by negative option continuity plans," or AuraVie-0000476 - AuraVie-0000478. (Exh. 802, p 16) (Exh.  824). This document has nothing to do with any shell companies or merchant accounts and Argaman is not even copied on all of the emails.  No questions were asked regarding this document at Argaman's deposition.

In the Responses, Exh 802, p. 16, Exh. 807, the FTC cites AuraVie-0001847 as evidence that Argaman knew about "load balancing;" however, this document is apparently a payroll sheet that does not even reference Argaman or SM.  Indeed, this document actually supports Argaman's defenses as he was not a part of the

1  individuals listed as on the payroll  team and did not have anything to do with any

2  load balancing.  No deposition questions were asked regarding this document.

3      Putting aside the FTC's nonsensical Interrogatory Responses, the evidence and

4  testimony clearly show that Argaman, by and through SM, was a vendor, and did not

5  interact with consumers of the AuraVie products, did not design the content on the

6  AuraVie website, did not create the copy used by the AuraVie Defendants to market

7  and sell their product, did not create the scripts used by the AuraVie Defendants'

8  customer call center, did not himself process or approve/deny any consume

9  chargebacks made against AuraVie, and did not decide which products to ship or sell.

10  (Argaman Decl. at ¶ 2, 3, 5, 6, 12-16).

11      As explained above, the technology services that SM provided to the AuraVie

12  Defendants was developing and installing a portal through which chargebacks could

13  be viewed and processed and an IVR system.  There is no evidence that SM or

14  Argaman responded to chargebacks on behalf of the AuraVie entities or was

15  responsible for how customer service calls were disposed of.  (Argaman Decl. at ¶ 5,

16  6, 13, 16).

17      Argaman provided technology services, not customer service, and there is no

18  credible, probative, admissible evidence to the contrary.  (Argaman Decl. at ¶ 12-16).

19  The case law is clear this Argaman's limited involvement is insufficient for imposing

20  individual liability.  Notably, Argaman was not even paid any monies from SM or the

21  AuraVie Defendants at any time, let alone from the sale of AuraVie products.

22  (Argaman Decl. at ¶ 22).

23      Compare *FTC v. Freecom C'ommo'n, Inc.*, 401 F.3d 1192, 1205 (10th Cir.

24  2005) (finding individual defendant liable where evidence of frequent meeting

25  attendance, final control over all senior hiring and marketing campaigns, and status as

26  controlling shareholder of a closely held corporation supported inference of authority

27  to control corporate defendant) with *FTC. v. Swish Mag.*, No. C 09-03814 RS, 2010

28  WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) (rejecting FTC's argument that individual

1 defendant's "status as CEO, standing alone, plausibly demonstrates his control over
2 the company and warrants the inference of involvement in the deception" in granting
3 CEO's motion to dismiss) and *FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1277
4 (M.D. Fla. 2012) (although individual defendant had authority over day-to-day affairs
5 of corporate defendant, it was not until another employee was terminated and she
6 obtained authority over the sales division one could infer she had the authority to
7 control the sales people and their use of a deceptive sales script.)

8       The FTC argues that Argaman was involved in other aspects of the common
9 enterprise including shipping and affiliate marketing and cites documents as support.
10 However, these documents do not support the assertion for which the FTC offers
11 them.

12       Exhibit 831, cited by the FTC numerous times in this case, relates to the fact
13 that the product size of the AuraVie product changed in 2013.  Mr. Medina asked Mr.
14 Argaman to make sure that this change was reflected properly on the straight sale
15 website that Mr. Argaman helped set up (AuraVie.com) and to confirm the new lower
16 shipping rate for the smaller package.  This email and the conduct surrounding it
17 demonstrate nothing about Mr. Argaman directly participating in the alleged deceptive
18 conduct.  It simply confirms what Argaman readily admitted: that he did helped create
19 the AuraVie straight sale website that was not alleged by the FTC to have been a part
20 of any wrongdoing as it did not used any negative option sell method or anything of
21 the sort.

22       Exhibit 832, also cited by the FTC numerous times, relates to the "straight sale"
23 offer website for the AuraVie products and to the work that Mr. Argaman discussed in
24 his deposition regarding developing a website for that offer.  It does not relate in any
25 way to affiliate marketing or the negative option offer/continuity that is the predicate
26 for the FTC allegations.  (Argaman Decl. at ¶ 9).

27       Neither of these exhibits, nor any of the evidence in the case, supports the
28 assertion that Argaman participated directly in or had the ability to control the alleged

1  illegal conduct, and his limited technology consulting work is an insufficient basis

2  upon which to impose individual liability.

3      This failure renders this case different from those in which individual liability is

4  imposed and requires his dismissal.  See e.g.  *FTC v. Stefanchik*, 559 F.3d 924, 931

5  (9th Cir. 2009) (individual defendant, who was owner, sole shareholder, director and

6  manager of company, held liable where he controlled the marketing activity and

7  representations about the product, was informed after his counsel reviewed the scripts

8  that he would need to be able to substantiate his claims (and could not), and was

9  informed by others that the sales representatives were misleading consumers); *FTC v.

10 Publ. Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1996) (finding that

11 defendant controlled the deceptive acts in question, where "substantial facts before the

12 Circuit . . . detailed the defendant's relationship not only to the corporation but also to

13 its telemarketing scheme.") (emphasis added); *FTC v. Amy Travel. Serv., Inc.*, 875

14 F.2d 564, 574 (7th Cir. 1989) (finding "clear" evidence of defendants' authority and

15 involvement where they "were the principal shareholders and officers of the closely

16 held corporations," "created the businesses, opened new ones, wrote telemarketing

17 scripts, and hired personnel" and "controlled the financial affairs of the companies and

18 reviewed the sales reports and other information"); *FTC v. Am. Standard Credit Sys

19 Inc.*, 874 F. Supp., 1080, 1089 (C.D. Cal. 1994) (finding FTC entitled to injunctive

20 relief against CEO and company president who participated in the day-to-day

21 operations of the company, formulated, reviewed, approved implemented, and

22 disseminated their company's marketing policies and procedures, and "monitored the

23 marketing activities'.' of its third-party marketers).

**IV.**

**CONCLUSION**

26     For the aforementioned reasons, Argaman, and SM should be granted summary

27 judgment against the FTC on all of the claims the FTC alleges against these

28 Defendants as there is simply no evidence (after a year of litigation and months of trial

1  preparation) that these Defendants can be held liable for any wrongdoing, even if this

2  matter proceeded to a trial.  These defendants must be dismissed from the case, be

3  awarded their costs, and any monies of theirs that are frozen by the FTC and the

4  FTC's Receiver must be unfrozen and released to them.

5                                              Respectfully submitted,

6  DATED:  September 19, 2016          The Law Offices of Shai Oved

7

8                                              By:    /s/ Shai Oved
                                                Shai Oved, Esq.
9                                               *Attorneys for* Alan Argaman and Secured
                                                Merchants, LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28