DAVID C. SHONKA
Acting General Counsel

DAMA J. BROWN
Dbrown1@ftc.gov
Regional Director

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
ZACHARY A. KELLER
zkeller@ftc.gov; Texas Bar No. 24087838
DAMA J. BROWN
Dbrown1@ftc.gov; Michigan Bar No. P54775
Federal Trade Commission
1999 Bryan Street, Ste 2150
Dallas, Texas 75206
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9382 (Keller); (214) 979-9374 (Brown)
(214) 953-3079 (fax)
RAYMOND MCKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Ste 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BUNZAI MEDIA GROUP, INC.,** *et al.*<br><br>**Defendants.** | **Case No. CV 15-4527-GW(PLAx)**<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANTS ALAN ARGAMAN AND SECURED MERCHANTS, LLC'S STATEMENT OF UNCONTROVERTED FACTS** |

## STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. SM is a technology company that has only had one member, manager, and owner at all times it has existed. (Argaman Decl. at ¶ 1). | 1. Disputed.<br><br>    1. Plaintiff does not dispute that SM is a technology company.<br><br>    2. Plaintiff disputes:<br><br>That SM had one member: Along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC ("SM"), listing his title as "Managing Member." Ex. 412-5. Moreover, Doron Nottea was listed as a member of SM in bank documents. Ex. 176-2.<br><br>That SM had one manager: SM's Operating Agreement for the company lists Defendants Alon Nottea alongside Argaman as the Managers. Ex. 255-22. SM's Executive Summary lists Defendants Paul Medina and Alon Nottea alongside Defendant Argaman as managers. Ex. 256-2.<br><br>That SM had one owner: Ownership for limited liability companies is represented as membership interests. Therefore, Plaintiff reasserts: along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of SM, listing his title as "Managing |

1

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| | Member." In addition, Doron Nottea was listed as a member of SM in bank documents. Ex. 176-2. |
| 2. Argaman has been the sole member, manager, and owner of SM since SM was formed. (Argaman Decl. at ¶ 1). | 2. Disputed.<br><br>Plaintiff disputes:<br><br>That SM had one member: Along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of SM, listing his title as "Managing Member." Ex. 412-5. Moreover, Doron Nottea was listed as a member of SM in bank documents. Ex. 176-2.<br><br>That SM had one manager: SM's Operating Agreement for the company lists Defendant Alon Nottea alongside Argaman as the Managers. Ex. 255-22. SM's Executive Summary lists Defendants Paul Medina and Alon Nottea alongside Defendant Argaman as managers. Ex. 256-2.<br><br>That SM had one owner: Ownership for limited liability companies is represented as membership interests. Therefore, Plaintiff reasserts: along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of SM, listing his title as "Managing Member." Ex. 412-5. Moreover, Doron Nottea was listed as a member of SM in bank documents. Ex. 176-2. |
| 3. The only business that SM did with the AuraVie Defendants in this case is providing technological services to SBM Management, which services | 3. Disputed.<br><br>  1.  Plaintiff does not dispute that SM provided services |

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

were memorialized in detailed invoices and were arms-length business transactions. (Argaman Decl. at ¶ 5-6, Argaman Depo., 109:8-25, Exhibit 833 )

concerning the sale of AuraVie product to SBM Management, Inc. and that those services were memorialized in invoices.

2. Plaintiff does dispute:

That SM's services for SBM Management, Inc. were the "only business that SM did with the AuraVie Defendants":

The services SM provided SBM Management, Inc. served the entire common enterprise, not just SBM Management. Dkt. 120, at 24-25. For example, SM contested chargebacks for the sale of AuraVie products, Dkt. 353-19, at 274:1-5; Ex. 348-3, which were sold by various Corporate Defendants and not SBM. Dkt. 120, at 24-25. SM purportedly had or was acquiring an ownership interest in Chargeback Armor, Inc. ("CBA"), the company that Defendants Alon Nottea and Paul Medina have sworn processed chargebacks for the common enterprise. Dkts. 231-1, at 50, 53; 353-19, at 138:3-16; 353-32, at 23:9-23; *see also* Ex. 404. Moreover, an email from CBA's purported CEO Mike Costache to a client noted that after SM "established a new company . . . we're transitioning all clients to be billed by this entity," Dkt. 231-1, at 8, which demonstrates the interconnected nature of the SM and CBA

3

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | enterprises. *See* Exs. 280-1; 404; 414. |
|---|---|
| 4. This service provided by SM to the AuraVie Defendants consisted of developing and installing a portal system through which chargebacks made by consumers could be viewed and processed and providing the technology for the Interactive Voice Response (IVR) system. (Argaman Decl. at ¶ 5, 6, 13, 16). | 4. Disputed.<br><br>Plaintiff disputes that the services SM provided to the other AuraVie Defendants were limited to these two services.<br><br>Services that SM provided to other members of the common enterprise included: (1) chargeback resolution through their "ChargeBack Armor" service Dkt. 121-7, at 2; Exs. 256; 257; (2) automated customer service systems through their "voice logix" system and other assistance with Defendants' call center; Dkt. 121-7, at 2; Exs.47; 257-2; and (3) assisting Defendants in managing consumer relations for their negative option continuity plans through LimeLight, a third party customer relationship management platform. *See, e.g.,* Dkts. 121-6, at 12; 353-32, at 20:20-21:17.<br><br>Plaintiff further disputes that the SM "Chargeback Armor" service consisted of merely "installing a portal system." The SM company description, however, states that, as part of their "ChargeBack Armor" service, SM "handle[s] the entire chargeback dispute process on your behalf." Ex. 257. Moreover, SM provided "real-time" information concerning the "results" of their chargeback refutation. *Id.* |
| 5. SM did not process (accept or deny) chargebacks nor did it dictate | 5. Disputed. |

4

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS'
STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| the content of the IVR system. (Argaman Decl. at ¶ 5, 6, 17). | 1. Plaintiff does not dispute that SM did not dictate the content of the IVR system.<br><br>2. Plaintiff disputes:<br><br>That SM did not process chargebacks: The meaning of this contention is unclear. Plaintiff does not dispute that payment processors and banks are ultimately responsible for accepting or denying consumer chargeback demands.<br><br>However, SM "processed" Auravie's chargebacks, including through its "ChargeBack Armor" service to the extent "processed" means that SM provided the services that accounted for and sought to mitigate chargeback demands resulting from the scheme's deceptive practices. SM described "ChargeBack Armor" as "[c]redit card chargeback *processing*, management & dispute services." Ex. 256 (emphasis added). Indeed, the SM company description states that, as part of their "ChargeBack Armor" service, SM "handle[s] the entire chargeback dispute process on your behalf." Ex. 257. |
| 6. The only AuraVie website that Argaman created or designed was the straight-sale AuraVie website that did not use negative options, continuity, or risk free trials. (Argaman Depo., 49:8-18) | 6. Disputed.<br><br>1. Plaintiff disputes the entirety of this contention:<br><br>Argaman was an owner and the manager of Defendant Secured Commerce, LLC, Dkt. 299 ¶ 39, |

5

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS'
STATEMENT OF UNCONTROVERTED FACTS**

| | which designed the landing page used for deceptively marketing and selling AuraVie's skincare products. Ex. 46. Emails also show Argaman working on and discussing a "risk-free" trial Miracle Face Kit order page for AuraVie. Ex. 531. |
|---|---|
| 7. SM never employed any of the other Defendants in this case at any time, nor was ever owned, operated or controlled by any other Defendants in this case. (Argaman Decl. at ¶ 1, 3). | 7. Disputed.<br><br>   1.  Plaintiff disputes the entirety of this contention:<br><br>Ownership: Defendant Roi Reuveni contracted on behalf of SM, listing his title as "Managing Member." Ex. 412-5. Moreover, Doron Nottea was listed as a member of SM in bank documents. Ex. 176-2.<br><br>Control: SM employed, and was operated, owned or controlled by, many Defendants. SM's "Executive Summary," created in June 2013, states that the company's management consisted of Defendants Alon Nottea, Argaman, and Paul Medina. Ex. 256-2. SM's Operating Agreement draft names Defendants Argaman and Alon Nottea as the company's two managers. Ex. 255-5. Moreover, Defendant Roi Reuveni testified that he was employed by SM. Dkt. 353-19, at 186:12-187:11.<br><br>Employees and Operations: Although SM was purportedly owned solely by Argaman, Defendant Paul Medina requested approval from both Doron Nottea and Argaman to transfer one of |

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | the Limelight accounts over to SM. Ex. 59. Moreover, Doron coordinated the common enterprise's certified public accountant, David Davidian, handling payroll for SM employees, telling Nottea that such payments would "come off from your [i.e., SM's] account," relating to payment of a SM employee. Dkt. 396-3, at 10-11. |
|---|---|
| 8. Doron Nottea was put as an authorized signer on the SM bank account for convenience purposes, but never actually wrote any checks on behalf of SM. (Argaman Decl. at ¶ 4). | 8. Disputed.<br><br>1. Plaintiff does not dispute that Doron Nottea never wrote any actual checks on behalf of SM but qualifies this response by noting that Doron Nottea instructed the common enterprise's certified professional accountant, David Davidian, to execute payroll transfers with SM's account, which Davidian told Doron would "come off from your [i.e., SM's] account," relating to payment of a SM employee. Dkt. 396-3, at 10-11. Thus while Doron Nottea did not physically write checks on behalf of SM, others executed checks against SM's account on Doron's behalf.<br><br>2. Plaintiff disputes:<br><br><u>That Doron Nottea was only placed on the SM bank account for</u> |

7

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| | <u>convenience purposes</u>: Doron Nottea was not listed on the SM bank account for convenience. He was listed on the company's bank account because he (1) shared operational responsibilities with Argaman; *see, e.g.,* Ex. 59; (2) provided bookkeeping services to SM; Dkt. 353-19, at 152:23-153:9; and (3) provided instructions and authorization to the common enterprise's certified public accountant relating to paying employees. Dkts. 396-3, at 10-11; 396-4, at 24-26. Moreover, Doron Nottea was listed as a member of SM in bank documents. Ex. 176-2. |
| 9. Argaman never engaged in any advertising or marketing, directly, or indirectly, for the sale of AuraVie skincare products. (Argaman Decl. at ¶ 5-7). | 9. Disputed.<br><br>   1. Plaintiff disputes the entirety of this contention:<br><br>Defendant Argaman was an owner of Defendant Secured Commerce, LLC, Dkt. 299 ¶39, which designed the landing page used for deceptively marketing and selling AuraVie's skincare products according to an invoice. Ex. 46. Moreover, emails show Argaman working on and discussing a "risk-free" trial Miracle Face Kit order page. Ex. 531. Emails further show Argaman being consulted alongside Defendants Alon and Doron Nottea concerning advertising for a skincare product. Exs. 360; 362; *see also* Ex. 361.<br><br>Acting either on behalf of one of his corporate entities or in his individual |

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS'**
**STATEMENT OF UNCONTROVERTED FACTS**

| | capacity, Defendant Argaman also designed and managed the AuraVie Angels advertising campaign. Dkt. 353-19, at 49-50; Exs. 185; 494. |
|---|---|
| 10. Argaman never had any control, ownership, or operational role in any of the AuraVie Defendants. (Argaman Decl. at ¶ 5-7, 10-17). | 10. Disputed. <br><br> 1.  Plaintiff disputes the entirety of this contention: <br><br> Ownership: Defendant Argaman was an owner of Defendants Secured Commerce, LLC and SM, Dkts. 244 ¶39; 245 ¶ 39; 299 ¶39, as well as CBA. Exs. 281-3; 404. Secured Commerce designed the landing page used for deceptively marketing and selling AuraVie's skincare products according to an invoice. Ex. 46. <br><br> Control: Argaman was an operator, board member, and the Chief Technology Officer of CBA. Dkt. 231-1 at 36; Ex. 281-3. He operated Secured Commerce, LLC, serving a role that included designing and creating the AuraVie landing page. Dkt. 299 ¶39; Ex. 46. He also operated SM alongside Defendant Doron Nottea and the other individual Defendants as discussed in Responses No. 1 and 2, *supra*. <br><br> Other Operational Roles: Argaman provided a variety of services to Defendants. *See*, *e.g.,* Ex. 149. He provided technical expertise to the other Corporate Defendants, including (1) establishing a relationship with or |

9

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS'**
**STATEMENT OF UNCONTROVERTED FACTS**

| | otherwise managing third party and in-house call centers for AuraVie consumer complaints, Exs. 149; 386; 432; 441; 516, (2) managing software for continuity sales, *see*, *e.g.,* Dkts. 121-6, at 12; 353-32, at 20:20-21:17, and (3) creating at least one AuraVie order page. Exs. 46; 440; 531; *see also* Dkt. 353-19, at 261:7-18. He also participated in product selection for the Corporate Defendants, Exs. 360; 362; *see also* Ex. 361, and assisted in establishing dozens of phone numbers for Defendants' shell corporations. Ex. 432. Finally, he managed or was involved in managing AuraVie's shipping logistics for to Pinnacle Logistics, Inc., although it is unclear whether he was acting as an employee of Pinnacle or in his individual capacity. Exs. 367; 370. Argaman also coordinated the use of "Chargeback Armor," a service first employed by SM (and later spun off into Defendant CBA) to respond to AuraVie's consumer chargebacks. Dkt. 231-1, at 8; Ex. 404. |
|---|---|
| 11. Argaman did not have knowledge of, nor was he recklessly indifferent to, the alleged misrepresentations that the AuraVie Defendants made to consumers. (Argaman Decl. at ¶ 10-16). | 11. Disputed.<br><br>    1. Plaintiff disputes the entirety of this contention:<br><br>Defendant Argaman had knowledge of, or was recklessly indifferent to, the Auravie Defendants' misrepresentations to consumers. He was an owner of Defendant Secured Commerce, LLC, which designed the |

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS'
STATEMENT OF UNCONTROVERTED FACTS**

primary landing page template for AuraVie's deceptive business practices. Dkt. 299 ¶39; Exs. 46; 531. He provided integration services for the common enterprise's customer service management software that managed continuity sales, Limelight. *See* Dkts. 121-6, at 9-21; 121-7, at 1-3; 353-19, at 262:3-19; *see also* Dkt. 353-32, at 20:20-21:17. Furthermore, he helped the common enterprise process large numbers of continuity plan cancellations and "resolve consumer disputes before they [became] chargebacks." Ex. 257-2*; see also* Dkt. 353-19, at 274:1-5; Exs. 256; 348-3.

The scope of the roles he played in the scheme was comprehensive: Argaman at least (1) participated in AuraVie's "AuraVie Angels" campaign; Dkt. 353-19, at 49-50; Exs. 185; 187; 494; (2) was involved with shipping logistics of the products; Exs. 174; 367; 370; (3) pitched similar products to other Defendants as potential business opportunities; Dkt. 121-7, at 1-3; Exs. 360; 362; *see also* Ex. 361; (4) managed chargebacks and refunds; Dkt. 353-19, at 274:1-5; Exs. 256; 257-2; 348-3; and (5) designed the "free trial" landing page for the scheme. Exs. 46; 531. Such a broad swath of responsibilities undermines any attempt by Defendant Argaman to feign ignorance of the business he was engaged in.

11

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| 12. Argaman never designed, selected, or created any of the products AuraVie sold to consumers. (Argaman Decl. at ¶ 15). | 12. Disputed. |
|---|---|
| | 1. Plaintiff does not dispute that Argaman did not design or create any AuraVie products. |
| | 2. Plaintiff does dispute: |
| | <u>That Argaman did not aid in selecting products</u>: |
| | *Attitudeline/INFINI*: Defendant Argaman sold Attitudeline/INFINI skincare products, a product that Defendants marketed or sold, or assisted others in marketing or selling, by negative option continuity plans (or assisted others in marketing or selling in the same manner). Ex. 368. |
| | *LeElle*: Argaman sent Doron Nottea a presentation concerning a product called LeElle. Ex. 361. Argaman was later consulted concerning the company's packaging design, and he also provided input concerning who would own the new product Defendants were marketing. Exs. 360; 361; 362. |
| 13. Argaman never dealt directly or indirectly with any AuraVie consumers. (Argaman Decl. at ¶ 13, 14, 16). | 13. Disputed. |
| | 1. Plaintiff disputes the entirety of this contention: |
| | Defendant Argaman helped create an automated response system to purportedly allow large numbers of consumers to cancel their AuraVie |

12

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS'
STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| | continuity plans. He also helped establish a relationship with or manage a call center in India, as well as providing AuraVie services to combat consumers' chargeback demands. Dkt. 121-7, at 1; Exs. 149-2; 386; 414. Each of these responsibilities within the common enterprise constituted indirect contact with AuraVie's victims.<br><br>Furthermore, he was an owner of Defendant Secured Commerce, LLC Dkt. 299 ¶39, which designed the primary landing page for AuraVie's deceptive business practices—the medium through which AuraVie interacted with its consumers. Ex. 46. Thus Argaman indirectly dealt with AuraVie's victims through the website he designed.<br><br>Finally, he was responsible for planning and executing the AuraVie Angels campaign. *See* Dkt. 353-19, at 49-50; Exs. 185; 494. His design of an advertising campaign directed at potential AuraVie consumers is another instance of his indirect contact with AuraVie's victims. |
| 14. Argaman didn't play a role in the creation of the scripts used by the AuraVie call centers. (Argaman Decl. at ¶ 13). | 14. Undisputed. |
| 15. Argaman was never paid by SM or any of the AuraVie Defendants. (Argaman Decl. at ¶ 22). | 15. Disputed.<br><br>1. Plaintiff does not dispute that Argaman was never paid by SM or by any of the |

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | AuraVie Defendants but qualifies this response by noting that where, as here, one is the owner of an entity, any revenues generated by the entity and not paid out as either employee salary or as a capital withdrawal remain on the company's books as retained earnings. These retained earnings function to increase the enterprise value. The enterprise value is a gain to the owners of the enterprise. So, even if not actually paid as an employee or as a capital withdrawal, Argaman nevertheless accrued economic value from the scheme's deceptive business practices. Ex. 46. SM admits to receiving more than $300,000 from Defendant SBM Management, Inc. for chargeback services relating to the sale of skincare products. Dkt. 353-31, at 138, ¶236. |
| --- | --- |
| 16. SM never employed any of the Defendants in this case. | 16. Disputed.<br><br>1. Plaintiff disputes the entirety of this contention:<br><br>SM employed several of the Individual Defendants as well as employees of other Corporate Defendants: |

14

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS'
STATEMENT OF UNCONTROVERTED FACTS**

*Roi Reuveni*: testified he worked for both CBA and SM. Dkt. 353-19, at 186:12-187:11. Moreover, he held himself out as a managing member of SM. Ex. 412-5.

*Alon Nottea and Paul Medina*: SM's "Executive Summary," created in June 2013, states that the company's management consisted of Defendants Alon Nottea, Argaman, and Paul Medina. Ex. 256-2. SM's Operating Agreement draft names Defendants Argaman and Alon Nottea as the company's two managers. Ex. 255-5.

*Doron Nottea*: Paul Medina requested approval from Doron alongside Argaman to switch one of the Limelight accounts over to SM. Ex. 59. Nottea provided bookkeeping services, controlled SM's bank account, created the email address securedmerchantsllc@gmail.com, and provided authorization for the common enterprise's accountant to make payroll disbursements. Dkts. 353-19, at 152:23-153:9; 396-3, at 10-11; 396-4, at 24-26.

*Robert Stayner and Tyler Reitenbach*: Regarding the Corporate Defendants, both Stayner and Reitenbach were employees of SM while employees of other Corporate Defendants. Dkt. 396-4, at 25. Stayner was also an employee of SBM Management, Ex. 391-2, while Reitenbach was an

15

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | employee of CBA and Pinnacle Logistics, Inc. Dkt. 396-3, at 25-28; Ex. 370. |
|---|---|
| 17. SM or Argaman never approved or denied chargebacks for the AuraVie Defendants. (Argaman Decl. at ¶ 6, 17, Costache Decl. at ¶ 4). | 17. Disputed.<br><br>1. Plaintiff disputes the entirety of this contention:<br><br>Plaintiff reasserts Response 5, *supra*.: The meaning of this contention is unclear. Plaintiff does not dispute that payment processors and banks are ultimately responsible for accepting or denying chargeback demands. However, SM disputed consumer chargeback requests, including through its ChargeBack Armor service. Ex. 281-1.<br><br>SM's role in founding and developing CBA is also relevant here. Defendant Argaman and SM provided $250,000 to CBA, Dkt. 353-30, at 403, ¶235, owned and operated CBA's website, Ex. 280, and oversaw CBA's chargeback statistics. Dkt. 231-1, at 7. In turn, an internal document titled "Secured Merchants" described the "ChargeBack Armor" services as helping "win back lost revenue by reversing chargebacks in your favor" and "handl[ing] the entire chargeback dispute process on your behalf." Ex. 257-1. Mike Costache, then a SM employee and soon-to-be purported CBA CEO, sent an email to a SM client that included referring to SM as "the technology company that developed the CBA product" and then |

16

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | noted that SM is "transitioning all clients to be billed" by CBA. Dkt. 231-1, at 8.<br><br>Relief Defendant CBA refuted consumer chargebacks for the unauthorized AuraVie charges. Dkt. 353-32, at 23:9-23:23. CBA boasted to potential investors that "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Ex. 281-2. Defendants Alon Nottea and Paul Medina corroborated that Chargeback Armor, Inc. processed chargebacks for the common enterprise. Dkts. 353-19, at 138:3-16; 353-32, at 23:9-23. |

## CONCLUSIONS OF LAW

| | |
|---|---|
| 1. Section 5 of the FTC Act prohibits unfair or deceptive acts or practices. 15 U.S.C. 45(a)(1). | 1. Undisputed. |
| 2. An act or practice is "unfair" if it causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. 15 U.S.C. §45(n). | 2. Undisputed. |
| 3. An act or practice is "deceptive" if: (1) there is a representation; (2) that is likely to mislead consumers acting reasonably under the circumstances; and (3) the representation is material. See *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994). | 3. Undisputed. |
| 4. A corporation is liable for monetary | 4. Undisputed. |

17

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| relief under section 13(b) of the FTC Act for violations of section 5 if the FTC shows that the corporation engaged in misrepresentations or omissions of a kind usually relied on by reasonably prudent persons and that consumer injury resulted. See *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994). | |
| 5. To establish liability of an individual for a corporate violation of FTC Act §5, the FTC may establish knowledge by demonstrating that the individual defendant had actual knowledge of material misrepresentations, was recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth. *See FTC* v. *Network Serv. Depot, Inc.*, 617 F.3d 1127, 1138 (9th Cir. 2010) (discussing individual liability for restitution); *FTC* v. *Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (same). | 5. Undisputed. |
| 6. To establish common enterprise liability, it must be shown that individuals transact business through a "maze of interrelated companies." *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2013) (quoting *Delaware Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964). | 6. Disputed.<br><br>    To determine whether a common enterprise exists, "the pattern and frame-work of the whole enterprise must be taken into consideration." *Del. Watch Co. v. FTC*, 332 F.2d 745, 746-47 (2d Cir. 1964) (affirming company was liable because it was part of a "maze of interrelated companies"). Regarding |

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS'
STATEMENT OF UNCONTROVERTED FACTS**

| | this analysis, the Ninth Circuit has held that "entities constitute a common enterprise when they exhibit either vertical or horizontal commonality – qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues." *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010). Other courts have recognized that "[i]t is not necessary that the FTC prove any particular number of entity connections and any specific connection. Instead, it must be proved that the defendants maintained an 'unholy' alliance." *FTC v. Websource Media, LLC*, 574 F. Supp. 2d 714, 722 (S.D. Tex. 2008) (citing *FTC v. Ameridebt*, 343 F. Supp. 2d 451, 462 (D. Md. 2004)). |
|---|---|
| *7.* The FTC has not shown any material issue of fact in this case. | 7. Disputed.<br><br>*See* Plaintiff's Motion for Summary Judgment, Dkts. 353; 353-1. |

Dated: 9/30/16

/s/ REID TEPFER
REID A. TEPFER
LUIS H. GALLEGOS
ZACHARY A. KELLER
Attorneys for the Plaintiff
Federal Trade Commission

19
**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS'
STATEMENT OF UNCONTROVERTED FACTS**

1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (facsimile)
rtepfer@ftc.gov
lgallegos@ftc.gov
zkeller@ftc.gov

**STATEMENT OF GENUINE DISPUTES TO DEFENDANTS'
STATEMENT OF UNCONTROVERTED FACTS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 30, 2016, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Central District of California, using the electronic case filing system of the court. The attorneys listed below were served by pursuant to the ECF notice generated by the Court, or by email.

Erik S Syverson
Raines Feldman LLP
9720 Wilshire Boulevard Fifth Floor
Beverly Hills, CA 90212
esyverson@raineslaw.com
*Counsel for Oz Mizrahi*

Robert M. Ungar
Crosswind Law
14724 Ventura Blvd Penthouse
Sherman Oaks, CA 91403
rmu@crosswindlaw.com
*Counsel for Alon Nottea and Roi Rueveni*

Robert Esensten
Esensten Law
12100 Wilshire Blvd., Suite 1660
Los Angeles, CA 90025
resensten@esenstenlaw.com
*Counsel for Doron Nottea and Motti Nottea*

Jeffrey Benice
Law Offices of Jeffrey S. Benice
A Professional Law Corporation
3080 Bristol Street
Sixth Floor, Suite 630
Costa Mesa, CA 92626
Telephone: (714) 641-3600 Ext. 214

*Counsel for Igor Latsanovski and CalEnergy, Inc.*

Sagar Parikh
Beverly Hills Law Corp. PC
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
SP@BeverlyHillsLawCorp.com
*Attorney for Paul Medina, Secured Merchants, LLC, and Chargeback Armor, Inc.*

Charlene Cantrell Koonce
Receiver
Scheef & Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
charlene.koonce@solidcounsel.com
*Receiver*

Kelly M. Crawford
Scheef and Stone
500 N. Akard, Suite 2700
Dallas, Texas 75201
kelly.crawford@solidcounsel.com
*Counsel to Receiver*

/S/ REID TEPFER
REID TEPFER

21
PLAINTIFF'S OPPOSITION TO RELIEF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT