**The Law Offices of Shai Oved**
Shai Oved, Esq. (SBN 185526)
7445 Topanga Cyn Blvd., Suite 220
Canoga Park, CA 91303
Telephone:  (818) 992-6588
Facsimile:   (818) 992-6511
Email:         ssoesq@aol.com

Attorneys for Alan Argaman, and Secured Merchants, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br>vs.<br><br>BUNZAI MEDIA GROUP, INC., et al.,<br><br>Defendants.<br>_____<br><br>SECURED MERCHANTS, LLC, CHARGEBACK ARMOR, INC. AND ALAN ARGAMAN,<br><br>Cross-Claimants<br>v.<br>ALON NOTTEA, an individual,<br><br>Cross-Defendant | Case No. 2:15-cv-04527-GW (PLAx)<br><br>**ALAN ARGAMAN, SECURED MERCHANTS, LLC,'s REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  October 17, 2017<br>Time: 8:30 am<br>Location:  Courtroom 10 – Spring St.<br>Judge: Hon. George H. Wu |

ALAN ARGAMAN ("Argaman"), and SECURED MERCHANTS, LLC ("SM"), (collectively, "Defendants") hereby submit their Reply Memorandum of Points and Authorities In Further Support of their Motion for Summary Judgment.

In their Motion for Summary Judgment, the Defendants provided sworn testimony and documents evidencing that: (1) SM was not a part of any alleged

**ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

1

common enterprise; and (2) Argaman did not participate in the alleged illegal conduct. In Opposition to the Defendants' Motion, the FTC relies on documents lacking any foundation and offers the FTC's own speculation on what documents might mean as grounds for denying the Defendants' Motion. The FTC's effort fails to carry its burden, and the Defendants' Motion for Summary Judgment should be granted. It should be noted that in their Opposition, as further discussed below, the FTC raises misleading issues and makes misstatements of fact, which previously necessitated in the submission of an additional Declaration from Alan Argaman and a Declaration from Mike Costache in support of the form Reply (Docket No. 424 and Declarations filed May 13, 2016). The current Opposition again does not raise any admissible evidence of genuine issues in dispute.

      The most notable difference now is that all other parties have settled without any admission of liability, or have been defaulted. The FTC suggests that because Secured Commerce, LLC, has defaulted, Argaman concedes liability. This is not the case as Argaman did not control, have any ownership interest or ability to respond on behalf of said entity which was owed by Notea, who had settled without admitting liability or wrongdoing. For these reasons, the Court should grant the Renewed Motion for Summary Judgment.

DATED: October 3, 2016           The Law Offices of Shai Oved

                                            By:   /s/ Shai Oved
                                                   Shai Oved, Esq.
                                                   Attorneys for Alan Argaman, and
                                                   Secured Merchants, LLC.

**ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................... 6

II. LEGAL ARGUMENT ............................................................................... 7

A. SM Was Not a Part of Any Common Enterprise With the
   AuraVie Defendants ............................................................................. 8

1. Lack of Common Control and Interrelated Companies. ............................ 8

2. No Commingling Funds ............................................................................ 11

3. SM Did Not, Directly or Indirectly, Market AuraVie. .............................. 12

4. There is No Evidence of Shared Office Space and There is a
   Distinction of Entities .......................................................................... 12

5. SM Did Not Have Any Involvement in AuraVie's Capital
   Structure and Finances ........................................................................ 13

B. There Is No Basis For Holding Argaman Liable ..................................... 13

III. CONCLUSION ........................................................................................ 16

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

3

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ............................. 7

*Delaware Watch Co. v. FTC,* 332 F. 2d 745, 746 (2d Cir. 1964) ................................................................................................. 8

*FTC v. CHBA,* Case No. 1:10-cv-3551, Order at 9, (E.D.N.Y May 23, 2012) ................................................................................ 8

*FTC v. Freecom C'ommo'n, Inc.*, 401 F.3d 1192, 1205 (10th Cir. 2005) ............................................................................................ 15

*FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1210 (D. Nev. 2011) ............................................................................................ 14

*FTC v. Kuykendall,* 371 F. 3d 745, 758-59 (10th Cir. 2004) ........................ 11

*FTC v. National Urological Grp. Inc.*, 645 F. Supp. 2d 1167, 1183 n. 7 (N.D. Ga. 2008) .................................................................... 11

*FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43 (9th Cir. 2010) ............................................................................................. 15

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

4

*FTC. v. Swish Mag.*, No. C 09-03814 RS, 2010
WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) ................................................. 15

*FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1277 ................................ 15
(M.D. Fla. 2012)

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68, 127 S. Ct. 2201,
167 L. Ed. 2d 1045 (2007) ........................................................................... 15

*FTC. v. Swish Mag.*, No. C 09-03814 RS, 2010
WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) ................................................. 15

*FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1277 ................................ 15
(M.D. Fla. 2012)

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68, 127 S. Ct. 2201,
167 L. Ed. 2d 1045 (2007) ........................................................................... 15

**ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The undisputed facts show that SM and Argaman through SM were third-party IT service providers to the AuraVie Defendants --nothing more. In the face of sworn testimony and documents evidencing this limited role, the FTC responds not with deposition testimony contradicting Argaman's assertions, not with admissible documents evidencing SM/Argaman's involvement in the common enterprise, but with documents that confirm Argaman's limited involvement or with documents for which the FTC offers no testimony or evidentiary foundation but rather about which the FTC speculates to try and inflate SM and Argaman's role into something more than the evidence shows that it is.

Tellingly, the FTC did not submit any declarations or deposition testimony, and there are none, showing that SM/Argaman's role was any different than as Argaman has described. Indeed, Alon Nottea, the acknowledged leader of the alleged common enterprise, has testified that SM/Argaman's role was limited:

"Neither Alan Argaman, the sole owner of SM, nor SM were involved with nor had management control over AuraVie marketing or charging or processing of AuraVie customer credit cards, debit cards or bank accounts. Neither Argaman nor SM were owners, managers, employees, or officers of BMG, SBM, or any retail merchant company that sold AuraVie. SM offered a software they called "chargeback armor" that we utilized to help us better manage our chargebacks. Argaman/SM never managed accounts AuraVie had with limelight. SM and Argaman never designed any websites or landing pages for AuraVie. AuraVie had its own internal designers. SM was paid on a fee for services basis." (See Deposition of Alon Nottea). There is no

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

6

genuine dispute of material fact regarding the limited role played by SM and Argaman.  Similarly, there is no genuine dispute of material fact that the funds that SM invested in CBA did not come from the conduct challenged by the FTC.   The MSJ should be granted and the case dismissed with prejudice as to Argaman, and SM. And all frozen monies belonging to them should be unfrozen and released to them.

## II.

## LEGAL ARGUMENT

The Supreme Court has held that to defeat summary judgment: "[t]he mere existence of a scintilla of evidence. . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 214, quoted and followed in *Maceachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1097 (C.D. Cal. 2009).  As this Court has held, the opponent cannot rest on its pleadings: "There must be specific, admissible evidence identifying the basis for the dispute." *Maceachern*, 623 F. Supp. 2d at 1097 (citing *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982)); *see also SEC v. Murphy*, 626. F.2d 633, 640 (9th Cir. 1980).  Thus, any opposition to the Defendant's Motion must set forth admissible evidence that is significantly probative, and not merely colorable, of any fact that is claimed to be disputed. *Murphy*, 626 F.2d at 640.

Instead of disputing the Uncontroverted Facts with specific, admissible, and significantly probative evidence, the FTC resorts to speculating about the meaning of documents that they failed to inquire about during Argaman's deposition and making numerous irrelevant arguments that serve only as red herrings with no relation to the conduct challenged in the complaint.

Defendants have established that there are no triable issues as to the following: (1) Defendants were not a part of the common enterprise and thus can't be held jointly

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

7

and severally liable as a common enterprise; and (2) Argaman did not participate in, did not have the authority to control, and had no knowledge of the deceptive activities, meaning he cannot be subjected to liability for injunctive and monetary relief.

Because none of these facts are adequately disputed by the FTC's Opposition, as more fully discussed below, Defendants are entitled to summary judgment as a matter of law and the First Amended Complaint must be dismissed with prejudice.

### A. SM Was Not a Part of Any Common Enterprise With the AuraVie Defendants.

As stated in the Motion, Courts allow the FTC to use the common enterprise doctrine to expand the agency's reach beyond those who themselves deceptively market a product where the "same individuals were transacting an integrated business through a maze of interrelated companies." *Delaware Watch Co. v. FTC*, 332 F. 2d 745, 746 (2d Cir. 1964). Applying *Delaware Watch*, courts rely on several factors to assess the existence of a common enterprise: whether companies (1) maintain officers and employees in common; (2) operate under common control; (3) share offices; (4) commingle funds; and (5) share advertising and marketing. See *FTC v. CHBA, Case No. 1:10-cv-3551, Order at 9*, (E.D.N.Y May 23, 2012). No one factor is determinative, rather, the entirety of the factual circumstances dictates whether a common enterprise exists and whether a company should be found to be a part of it. *Delaware Watch*, 332 F.2d 1143.

Here, neither any individual factor nor the overall circumstances support finding that Argaman, or SM were part of any common enterprise involving the AuraVie Defendants.

#### 1. Lack of Common Control and Interrelated Companies

Most of the work done by SM is done by technical personnel in India. (Argaman Decl. at ¶ 2). Argaman, the sole managing member and owner of SM at all

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

8

times since SM was formed, was not an employee or officer of any of the AuraVie Defendants.  (Argaman Decl. at ¶ 1, 3, 4).

The FTC ignores that SM had numerous other clients besides SBM and indeed this is why this Court granted SM's Motion to Release and Unfreeze Funds last fall. The FTC also ignores that numerous other vendors provided services to the AuraVie Defendants in addition to SM.

Additionally, Doron Nottea's relationship with SM is inadequate to impose joint and several liability upon SM as Mr. Nottea was not in control of SM's bank account.  Being an authorized signer on a bank account does not mean that one is in control of that bank account.  Indeed, the FTC has no evidence showing that Nottea deposited or withdrew or transferred any funds from any SM bank account. Additionally, Nottea was not an officer or employee of SM. (Argaman Decl. at ¶ 4, Argaman Depo., 131:4-24).

As far as Nottea being listed as a "member" on a bank account document, this was something that was filled in by a bank employee and not something that Argaman wrote in.  (Argaman Decl. at ¶ 24).

Additionally, the email cited as purportedly referring to SM as a "Bunzai" company does not say that and is another example of the FTC mischaracterizing the evidence.  See Exhibit 394

With regards to Reuveni, Reuveni was an outside consultant for SM, as testified to in Reuveni's  declaration in support of his Opposition to the FTC's MSJ and in his deposition.  See Reuveni Declaration and Exhibit 553, p. 54:7-11.  Reuveni was never an employee of SM, but only a temporary independent contractor, by and through his company Trigen, LLC.  (Argaman Decl. at ¶ 25).

In its Opposition, the FTC cites numerous Exhibits which purportedly show that SM was controlled by, owned by, managed by, and/or operated by other Defendants,

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

besides Argaman. However, each and every one of these Exhibits cited is mischaracterized and none of them show what the FTC purports to argue.

The "operating agreement" that the FTC cites, containing the name of Alon Nottea, is an unsigned draft, as can be seen on the face of the document itself, and indeed, SM was not even formed until June 25, 2013, (Argaman Decl. at ¶ 26). Argaman has always been the sole owner and operator of SM. (Argaman Decl. at ¶ 1).

With regards to Argaman's relationship with Igor Lastanovksy, Argaman met with Igor to potentially discuss doing business (unrelated to AuraVie) involving technical start-up ideas that Igor wanted to potentially invest in, but nothing materialized. (Argaman Decl. at ¶ 27).

Next, Reitenbach and Stayner are not Defendants in this matter. Exhibit 391-2 shows Stayner working for SBM not SM. SM hired Reitenbach when he was out of a job and no longer working for Pinnacle Logistics. Exhibit 370 is taken out of context and has nothing to do with the claim being made. Stayner received a total of $5,666 from SM for temporary services over two months for services unrelated to AuraVie. (Argaman Decl. at ¶ 37). The above is not sufficient to hold that SM is in interrelated company along with the other AuraVie Corporate Defendants nor do these arms-length relationships with bank account signers and independent contractors show any common control.

Notably, the FTC does not argue, and indeed cannot show, that SM, or Argaman, controlled any of the AuraVie Corporate Defendants.

SM's only connection with the AuraVie merchants was in providing IT services to those merchants primarily for viewing and handling chargebacks and for developing their IVR system. Secured Merchants' role was to provide the technology for handling chargebacks and an IVR system; Secured Merchants was not involved in

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

10

actually handling chargebacks or dictating the content of the IVR. (Argaman Decl. at ¶ 5-6).

This type of third-party vendor relationship is not common control and not the basis for imposing common enterprise liability. See *FTC v. Kuykendall*, 371 F. 3d 745, 758-59 (10th Cir. 2004) (finding no common enterprise based on commonly owned company providing and being paid for services such as equipment leasing, billing, and collecting); *FTC v. National Urological Grp. Inc.*, 645 F. Supp. 2d 1167, 1183 n. 7 (N.D. Ga. 2008) (finding common enterprise where companies were not "compensated for services" performed on the "on the other companies behalf.").

Here, unlike the situation in *Kuykendall*, where there was a commonly owned company that was providing vendor-like services and no common enterprise liability was found, SM is not commonly owned with the AuraVie Defendants as Argaman is the sole owner, so the imposition of common enterprise liability is even more unwarranted. Indeed, the Receiver, in her Initial Report, admitted that SM is a legitimate company. Doc. 120.

### 2. No Commingling of Funds

The FTC seeks to transform SM being paid $340,000 for services rendered into commingling of funds. Not surprisingly, the FTC offers no legal or factual support for its alchemy.

With regard to the $250,000 that was invested in CBA, these were monies that were not from SBM Management, Inc. and thus cannot be considered as "tainted" or part of the AuraVie scheme. (Argaman Decl. at ¶ 18-20).

The FTC also mischaracterizes the Defendant's position by stating that "sending an invoice to SBM legitimized the mere shifting of money between (to borrow Doron's phrase) the "BunZai compan[ies]" as arms-length."

The Defendants have never claimed as such. What is claimed is that SM provided legitimate, technological, arms-length services to SBM in exchange for

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

payment, which payments were made pursuant to invoices. (Argaman Decl. at ¶ 28). There is no shifting of money that the FTC claims to have occurred. Notably, there is no evidence provided of this shifting of money between SM and SBM.

### 3. SM Did Not, Directly or Indirectly, Market AuraVie

The FTC in its Opposition argues that Argaman created landing pages for AuraVie, showing that he helped marketed AuraVie. The FTC also argues that Argaman and SM participated in other marketing campaigns for AuraVie. This is not true.

Argaman, either individually, or through SM/Secured Commerce, did not create any landing page for AuraVie, other than a straight-sale landing page. (Argaman Depo., 49:8-18; Argaman Decl. at ¶ 9). Any emails relating to websites, such as Exhibit 531, deal with technological services related to Limelight and have nothing to do with the actual content of the website, designing the website, or creating the website. (Argaman Decl. at ¶ 36).

AuraVie Angels was not a marketing campaign that SM/Argaman worked on. (Argaman Decl. at ¶ 29).

### 4. There Is No Evidence of Shared Office Space and There is a Distinction of Entites

The FTC in its Opposition argues that SM operated out of the same offices as the AuraVie Defendants.

However, the evidence shows that the AuraVie entities operated out of the 7900 Gloria, Van Nuys CA address and briefly from a space at the Canby building in Suite 103. Neither Secured Merchants nor Argaman had anything to do with those spaces. The AuraVie entities leased, paid for, and occupied those spaces without the involvement of Argaman or SM. (Argaman Decl. at ¶ 10-11).

When the AuraVie entities vacated that space some remaining inventory was moved into the space used by Doron Nottea's adult business pending disposition.

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

12

These incidental contacts fail to establish that SM was a part of a common enterprise.

Additionally, SM was not a predecessor to CBA as CBA is a wholly separate company formed in February 2015. (Costache Decl. at ¶ 4). Costache was never an employee of SM. (Costache Decl. at ¶ 10).

Next, the chargeback armor technology was not developed for AuraVie specifically. (Argaman Decl. at ¶ 30).

**5. SM Did Not Have Any Involvement in AuraVie's Capital Structure and Finances**

The FTC in its Opposition next argues that SM was involved in AuraVie's finances, capital structure, and operations. These are unsupported allegations.

SM did not provide any chargeback resolution services, as it simply created the technology, but did not approve or deny or process chargebacks. Nor did SM actually provide IVR services, having only provided the technology for it. (Argaman Decl. at ¶ 5-6).

With regards to Limelight, SM integrated the chargeback armor software technology into Limelight, which is a third-party company is unrelated to SM. (Argaman Decl. at ¶ 30).

With regards to the purported SM "executive summary," this appears to be an incomplete draft document that does not show that it was authored by Argaman, nor does it contain any date. Indeed, this is not something that Argaman ever created used. (Argaman Decl. at ¶ 31).

**B. There Is No Basis For Holding Argaman Liable.**

The FTC has never shown and indeed cannot show that Argaman received a single penny from any of the AuraVie Defendants. (Argaman Decl. at ¶ 22).

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

13

1 As Argaman stated in his deposition, he only ever worked on an AuraVie site that was a straight sale site, i.e. had no continuity, risk free trial offers, negative options, etc. See Argaman Depo., 49:8-18). The FTC chose not to ask Argaman about Exh. 839 at his deposition, and cannot now speculate about what this document means to defeat summary judgment. This straight sale website that did not contain any prohibited advertising or marketing cannot be considered "critical to the scheme's success."

The FTC shows a screenshot of a Miracle face kit and uses this as evidence that Argaman designed this website. However, Argaman did not create the website and Exhibit 531 shows as an attachment "SHIPPING ID 10.jpg; SHIPPING ID 9.jpg". These shipping IDs are part of Limelight and do not refer to design as neither Argaman nor SM designed this page. (Argaman Decl. at ¶ 36). (Argaman Decl. at ¶ 9).

Moreover, Argaman never decided what products AuraVie would sell, never set up any shell corporation's phone numbers, did not have anything to do with shipping, marketing, or advertising, did not create AuraVie websites, and did not manage any promotional campaigns for AuraVie. (Argaman Decl. at ¶ 2, 7, 12-16, 23, 29, 32, 33, 34).

With regards to knowledge, Argaman did not have actual or constructive knowledge of any of the allege wrongdoing that AuraVie was involved in, such as "load balancing" or "high risk accounts" as Argaman was simply not privy to this. (Argaman Decl. at ¶ 12-16, 33). Argaman cannot be held liable because he was copied on select emails out of the thousands that the FTC reviewed. Indeed, none of these emails used by the FTC contain any responses by Argaman with regards to any of these alleged wrongdoings.

**ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

14

The Exhibits the FTC points to as showing purported chargeback statistics does not contain any reference to chargeback statistics and moreover, Argaman had no role with CBA.  (Argaman Decl. at ¶ 21).

The Ninth Circuit has explained that "the common law has generally understood [recklessness] in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known'" *Network Serv. Depot, Inc.*, 617 F.3d at 1141 n. 12 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).)

Where the material facts are substantially undisputed, knowledge can be a question of law properly decided by summary judgment. See *Network Serv. Depot, Inc.*, 617 F.3d at 1139.

There is no evidence showing that Argaman actually knew of or was recklessly indifferent to purported misrepresentations or unfairness concerning the negative option, continuity, risk-free trials, and/or any of the other forms of deceptive advertising and marketing alleged.  (Argaman Decl. at ¶ 7, 12-16).

This case is unlike *FTC v. Freecom C'ommo'n, Inc.*, 401 F.3d 1192, 1205 (10th Cir. 2005) (finding individual defendant liable where evidence of frequent meeting attendance, final control over all senior hiring and marketing campaigns, and status as controlling shareholder of a closely held corporation supported inference of authority to control corporate defendant) and more like *FTC. v. Swish Mag.*, No. C 09-03814 RS, 2010 WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) (rejecting FTC's argument that individual defendant's "status as CEO, standing alone, plausibly demonstrates his control over the company and warrants the inference of involvement in the deception" in granting CEO's motion to dismiss) and *FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1277 (M.D. Fla. 2012) (although individual defendant had authority over day-to-day affairs of corporate defendant, it was not until another employee was

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

15

terminated and she obtained authority over the sales division one could infer she had the authority to control the sales people and their use of a deceptive sales script.)

### III.
### CONCLUSION

For the aforementioned reasons, Argaman, and SM should be granted summary judgment against the FTC on all of the claims the FTC alleges against these Defendants as there is simply no admissible evidence that these Defendants can be held liable for any wrongdoing, even if this matter proceeded to a trial. These defendants must be dismissed from the case, be awarded their costs, and any monies of theirs that are frozen by the FTC and the FTC's Receiver must be unfrozen and released to them.

DATED: October 3, 2016            The Law Offices of Shai Oved

                                  By:   /s/ Shai Oved
                                        Shai Oved, Esq.
                                        *Attorneys for* Alan Argaman and
                                        Secured Merchants, LLC

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   REPLY TO PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES