**The Law Offices of Shai Oved**
Shai Oved, Esq. (SBN 185526)
7445 Topanga Cyn Blvd., Suite 220
Canoga Park, CA 91303
Telephone:  (818) 992-6588
Facsimile:  (818) 992-6511
Email:       ssoesq@aol.com

Attorneys for Alan Argaman, Secured Merchants, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

vs.

BUNZAI MEDIA GROUP, INC., et al.,

    Defendants.

_____

SECURED MERCHANTS, LLC,
CHARGEBACK ARMOR, INC.
AND ALAN ARGAMAN,

    Cross-Claimants

        v.

ALON NOTTEA, an individual,

    Cross-Defendant

) **Case No. 2:15-cv-04527-GW (PLAx)**
)
) **ALAN ARGAMAN, AND**
) **SECURED MERCHANTS, LLC,'S**
) **INC.'S   RESPONSE TO FTC'S**
) **STATEMENT OF GENUINE**
) **DISPUTES OF MATERIAL FACTS**
) **IN SUPPORT OF RENEWED**
) **MOTION FOR SUMMARY**
) **JUDGMENT**
)
) **Hearing Date:  October 17, 2016**
) **Time: 8:30 am**
) **Location:  Courtroom 10 – Spring St.**
) **Judge: Hon. George H. Wu**
)
)
)
)
)
)

Defendants ALAN ARGAMAN ("Argaman"), and SECURED MERCHANTS, LLC ("SM"), (collectively "Defendants") hereby submit this Response to the FTC's Statement of Genuine Disputes of Material Facts as follows:

- 1 -

| Defendants' Uncontroverted Fact | FTC's Response |
|---|---|
| 1. SM is a technology company that has only had one member, manager, and owner at all times it has existed. (Argaman Decl. at ¶ 1 filed as Docket No. 424 on May 13, 2016.  All references to Argaman Declaration and/or Declaration of Costache herein are to the same Docket.) | 1. Disputed.<br>1. Plaintiff does not dispute that SM is a technology company.<br>2. Plaintiff disputes:<br>That SM had one member: Along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC, listing his title as "Managing Member." Ex. 412-5. Moreover, Doron Nottea was listed as a member of Secured Merchants in bank documents. Ex. 176-2.<br>That SM had one manager: SM's Operating Agreement for the company lists Defendants Alon Nottea alongside Argaman as the Managers. Ex. 255-22. SM's Executive Summary lists Defendants Paul Medina and Alon Nottea alongside Defendant Argaman as managers. Ex. 256-2.<br>That SM had one owner: Ownership for limited liability companies is represented as membership interests. Therefore, Plaintiff reasserts: along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC, listing his title as "Managing Member." |

Defendants' Response: SM has always had one owner and one managing member, Argaman.  (Argaman Decl. at ¶ 1).  The operating agreement that the FTC refers to is an unsigned document and was never executed.  Reuveni was a consultant for SM, through his company Trigen, LLC.  (Argaman Decl. at ¶ 25).  The "executive summary" referred to by the FTC is an document of unknown origin and not something that was created by Argaman.  (Argaman Decl. at ¶ 31).

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 2. Argaman has been the sole member, manager, and owner of SM since SM was formed. (Argaman Decl. at ¶ 1). | 2. Disputed.<br>Plaintiff disputes:<br>That SM had one member: Along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC, listing his title as "Managing Member." Ex. 412-5. Moreover, Doron Nottea was listed as a member of Secured Merchants in bank documents. Ex. 176-2.<br>That SM had one manager: SM's Operating Agreement for the company lists Defendants Alon Nottea alongside Argaman as the Managers. Ex. 255-22. SM's Executive Summary lists Defendants Paul Medina and Alon Nottea alongside Defendant Argaman as managers. Ex. 256-2.<br>That SM had one owner: Ownership for limited liability companies is represented as membership interests. Therefore, Plaintiff reasserts: along with Defendant Argaman, Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC, listing his title as "Managing Member." |
| Defendants' Response: SM has always had one owner and one managing member, Argaman. (Argaman Decl. at ¶ 1). The operating agreement that the FTC refers to is an unsigned document and was never executed. Reuveni was a consultant for SM, through his company Trigen, LLC. (Argaman Decl. at ¶ 25). The "executive summary" referred to by the FTC is an document of unknown origin and not something that was created by Argaman. (Argaman Decl. at ¶ 31). | |
| 3. The only business that SM did with the AuraVie Defendants in this case is providing technological services to SBM Management, which services were memorialized in detailed | 3. Disputed.<br>1. Plaintiff does not dispute that SM provided services concerning the sale of AuraVie to SBM |

- 3 -

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| invoices and were arms-length business transactions. (Argaman Decl. at ¶ 5-6, Argaman Depo., 109:8-25, Exhibit 833 ) | Management, Inc. and that those services were memorialized in invoices.<br><br>2. Plaintiff does dispute:<br>That SM's services for SBM were the "only business that SM did with the AuraVie Defendants":<br>The services SM provided SBM Management, Inc. served the entire common enterprise, not just SBM Management. (Dkt. #120, at 24.) For example, SM contested chargebacks for the sale of AuraVie products (Ex. 555, at 75:1-5; 348-3), which were sold by various Corporate Defendants and not SBM (Dkt. #120, at 24). SM also had an ownership interest in Chargeback Armor (Dkt. #231-1, at 50 and 53; *see also* exs. 256-1; 257-2; 280-1; 414), the company which Defendant Alon Nottea admitted was used to refute chargebacks for the common enterprise. Ex. 550, at 171:3-171:6. |

Defendants' Response: SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks.  It only provided the technology for the chargebacks. (Argaman Decl. at ¶ 5-6).  SM was not an owner of CBA.  (Costache Decl. at ¶ 1, 8, 9, 12, 13).  CBA never processed chargebacks for AuraVie as it was not even formed until February 2015.  (Costache Decl. ¶ 4).

| | |
|---|---|
| 4. This service provided by SM to the AuraVie Defendants consisted of developing and installing a portal system through which chargebacks made by consumers could be viewed and processed and providing the technology for the Interactive Voice Response (IVR) system. (Argaman Decl. at ¶ 5, 6, 13, 16). | 4. Disputed<br>Plaintiff disputes that the services Secured Merchants provided to the other AuraVie Defendants were limited to these two services. Services that Secured Merchants provided to other members of the common enterprise included: (1) chargeback resolution through their |

- 4 -

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | "ChargeBack Armor" service (Ex. 555, at 75:1-5; 256; 257; Dkt. #121-7, at 2); (2) automated customer service systems through their "voice logix" system (Dkt. #121-7, at 2) and other assistance with Defendants' call center (Ex. 47); and (3) assisting Defendants in managing consumer relations for their negative option continuity plans through LimeLight, a third party customer relationship management. (*See*, *e.g.*, Dkt. #121-6, at 12; ex. 946, at 20:3-20:16.) Plaintiff further disputes that Secured Merchants "Chargeback Armor" service consisted of merely "installing a portal system." Secured Merchants company description states that, as part of their "ChargeBack Armor" service, Secured Merchants "handle[s] the entire chargeback dispute process on your behalf." Ex. 257. Moreover, Secured Merchants provided "realtime" information concerning the "results" of their chargeback refutation. |

| |
|---|
| Defendants' Response: SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks. It only provided the technology for the chargebacks. Nor did SM provide any IVR services, dictate the content of the IVR, or dictate what the IVR said to customers. (Argaman Decl. at ¶ 5-6). The executive summary referenced by the FTC in Exhibit 257 was a draft document of unknown origin and not something that SM or Argaman created. (Argaman Decl. at ¶ 31). |

| | |
|---|---|
| 5. SM did not process (accept or deny) chargebacks nor did it dictate the content of the IVR system. (Argaman Decl. at ¶ 5, 6, 17). | 5. Disputed.<br>1. Plaintiff does not dispute that SM did not dictate the content of the IVR system.<br>2. Plaintiff disputes:<br>That SM did not process chargebacks:<br>The meaning of this contention is |

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

|  | unclear. Plaintiff does not dispute that payment processors and banks are ultimately responsible for accepting or denying consumer chargeback demands. However, SM "processed" Auravie's chargebacks, including through its ChargeBack Armor service, if by "processed" Defendants mean that SM provided the services that accounted for and sought to mitigate chargeback demands resulting from the scheme's deceptive practices. Secured Merchants described ChargeBack Armor as "Credit card chargeback processing, management & dispute services." Ex. 256. Indeed, Secured Merchants company description states that, as part of their "ChargeBack Armor" service, Secured Merchants "handle[s] the entire chargeback dispute process on your behalf." Ex. 257. |
|---|---|

Defendants' Response: SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks.  It only provided the technology for the chargebacks. Nor did SM provide any IVR services, dictate the content of the IVR, or dictate what the IVR said to customers. (Argaman Decl. at ¶ 5-6).  The executive summary/company description referenced by the FTC in Exhibit 257 was a draft document of unknown origin and not something that SM or Argaman created. (Argaman Decl. at ¶ 31).

| 6. The only AuraVie website that Argaman created or designed was the straight-sale AuraVie website that did not use negative options, continuity, or risk free trials. (Argaman Depo., 49:8-18) | 6. Disputed.<br>1. Plaintiff disputes the entirety of this contention:<br>Defendant Argaman was an owner and the manager of Defendant Secured Commerce LLC (Dkt. #299 ¶ 39), which designed the landing page used for deceptively marketing and |
|---|---|

- 6 -

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | selling AuraVie's skincare products according to an invoice. Ex. 46. Moreover, emails show Defendant Argaman working on and discussing with Defendant Alon Nottea a Miracle Face Kit website. Ex. 531. |

**Defendants' Response:** Argaman only created a straight sale website, through Secured Commerce, for AuraVie, which site did not contain any deceptive marketing or advertising.  (Argaman Decl. at ¶ 9).

| | |
|---|---|
| 7. SM never employed any of the other Defendants in this case at any time, nor was ever owned, operated or controlled by any other Defendants in this case. (Argaman Decl. at ¶ 1, 3). | 7. Disputed. 1. Plaintiff disputes the entirety of this contention: Ownership: Defendant Roi Reuveni contracted on behalf of Secured Merchants LLC, listing his title as "Managing Member." Ex. 412-5. Moreover, Doron Nottea was listed as a member of Secured Merchants in bank documents. Ex. 176-2. Control: SM employed, and was operated, owned or controlled by, many Defendants. Secured Merchants' "Executive Summary," created in June 2013, states that the company's management consisted of Defendants Alon Nottea, "Avi" Argaman, and Paul Medina. Ex. 256-2. Secured Merchants LLC's operating agreement draft names Defendant Argaman and Defendant Alon Nottea as the company's two managers. Ex. 255-5. Moreover, Defendant Roi Reuveni testified that he was employed by Secured Merchants LLC. Ex. 553, at 16:9-16:11. Employees and Operations: Although SM was purportedly owned solely by |

- 7 -

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | Alan Argaman, Paul Medina requested approval from Doron and Defendant Alan Argaman to switch one of the Limelight accounts over to SM. Ex. 59. Moreover, Nottea coordinated the common enterprise's certified public accountant's paying of SM employees, telling Nottea that such payments would "come off from your [i.e., SM's] account," relating to payment of a SM employee. Ex. 289. |

Defendants' Response: Reuveni was a consultant for SM, not an employee. (Argaman Decl. at ¶ 25). Reuveni's Declaration in Support of his Opposition to the FTC's MSJ and Reuveni's deposition transcript also reflect this. The executive summary/company description referenced by the FTC in Exhibit 257 was a draft document of unknown origin and not something that SM or Argaman created. (Argaman Decl. at ¶ 31). Exhibit 59 does not have anything to do with the ownership of SM as the FTC does not explain how asking about moving a Limelight account to SM relates to ownership of SM.

| | |
|---|---|
| 8. Doron Nottea was put as an authorized signer on the SM bank account for convenience purposes, but never actually wrote any checks on behalf of SM. (Argaman Decl. at ¶ 4). | 8. Disputed.<br>1. Plaintiff does not dispute that Doron Nottea never wrote any actual checks on behalf of SM but qualifies this response by noting Nottea's role in having the common enterprise's certified public accountant provide a "pay stub" for payroll that will "come off from your [i.e., SM's] account," relating to payment of a SM employee.<br>2. Plaintiff disputes:<br>That Doron Nottea was only placed on the SM bank account for convenience purposes: Doron Nottea was not listed on the SM bank account |

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | | for convenience. He was listed on the company's bank account because he, along with Alan Argaman, (1) controlled SM (Ex. 59); (2) provided bookkeeping services to SM (Ex. 551, at 58:23-59:9); and (3) provided instructions and authorization to the common enterprise's certified public accountant relating to paying employees. Exs. 287; 289. Moreover, Doron Nottea was listed as a member of Secured Merchants in bank documents. Ex. 176-2. |

**Defendants' Response:** Doron Nottea was not listed as a member of SM on bank account documents by Argaman, but by a bank employee. (Argaman Decl. at ¶ 24). Exhibit 287 relates to W2s for SM being sent to "Global Media." It is unclear how this makes Doron Nottea a member of SM. Exhibit 289 is also to somebody entitled "Global Media" and relates to an employee of SM, and does not have anything to do with the ownership of SM.

| | |
|---|---|
| 9. Argaman never engaged in any advertising or marketing, directly, or indirectly, for the sale of AuraVie skincare products. (Argaman Decl. at ¶ 5-7). | 9. Disputed.<br>1. Plaintiff disputes the entirety of this contention:<br>Defendant Argaman was an owner of Defendant Secured Commerce, LLC, (Dkt. #299 ¶ 39), which designed the landing page used for deceptively marketing and selling AuraVie's skincare products according to an invoice. Ex. 46. Moreover, emails show Defendant Argaman working on and discussing with Defendant Alon Nottea a Miracle Face Kit website. Ex. 531. Moreover, emails show Defendant Argaman being consulted, along with Defendants Alon and Doron Nottea, concerning advertising for a skincare product. Ex. 360; *see also* ex. 361. |

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | Acting either on behalf of one of his corporate entities or in his individual capacity, Defendant Argaman designed and managed the AuraVie Angels advertising campaign. Exs. 185; 187; 494; 497. |

Defendants' Response: Argaman only created a straight sale website, through Secured Commerce, for AuraVie, which site did not contain any deceptive marketing or advertising.  (Argaman Decl. at ¶ 9).  The AuraVie Angels, assuming it was an advertising campaign, which is not shown on the face of Exhibits 185, 187, 494, or 497, was not something Argaman assisted in marketing or advertising.  (Argaman Decl. at ¶ 29).  The Exhibits discuss Argaman providing technological services, such as creating a blog.  It is not disputed that Argaman, by and through SM, conducted such arms-length vendor business with the AuraVie Defendants.

| | |
|---|---|
| 10. Argaman never had any control, ownership, or operational role in any of the AuraVie Defendants. (Argaman Decl. at ¶ 5-7, 10-17). | 10. Disputed.<br>1. Plaintiff disputes the entirety of this contention:<br>Ownership: Defendant Argaman was an owner of Defendants Secured Commerce, LLC (Dkt. #299 ¶ 39), Secured Merchants (Dkts. 244 ¶ 39; 245 ¶ 39), and Chargeback Armor, Inc. Ex. 281-3. Secured Commerce designed the landing page used for deceptively marketing and selling AuraVie's skincare products according to an invoice. Ex. 46. SM provided a variety of services described in genuine dispute response #4. Chargeback Armor was a service used by Defendants to respond to consumer chargebacks. Ex. 550, at 171:3-171:6.<br>Control: Argaman was an operator, board member, and the Chief Technology Officer of Relief Defendant CBA. Exs. 231-1 at 36, 281. He operated Secured Commerce, |

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

LLC (Dkt. #299 ¶ 39), serving a role that included designing and creating the AuraVie landing page. Ex. 46. He also operated SM alongside Defendant Doron Nottea and the other individual Defendants discussed in Facts No. 1 and 2, *supra*.

Other Operational Roles: Argaman provided a variety of services to Defendants. *See*, *e.g.,* Ex. 149. He provided technical expertise to the other Corporate Defendants, including establishing a relationship with or otherwise managing a third party and in-house call centers for AuraVie consumer complaints (Exs. 149; 386; 432; 441; 516), software for continuity sales ((*See*, *e.g.,* Dkt. #121-6, at 12; ex. 946, at 20:3-20:16), and websites. Exs. 46; 440; 441; 531; *see also* Ex. 555, at 49:5-49:18. He also participated in product selection and packaging for the Corporate Defendants (Exs. 360, 362; *see also* 361), and assisted in establishing dozens of phone numbers for Defendants' shell corporations. Ex. 432. Finally, he managed or was involved in managing shipping logistics relating to Pinnacle Logistics, Inc., although it is unclear whether he was acting as an employee of Pinnacle or in his individual capacity. Exs. 367; 370.

Defendants' Response: Argaman only created a straight sale website, through Secured Commerce, for AuraVie, which site did not contain any deceptive marketing or advertising.  (Argaman Decl. at ¶ 9).  Additionally, Argaman never had any ownership of CBA.  (Argaman Decl. at ¶ 21; Costache Decl. at ¶7, 8).  Argaman never created

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF
GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY
JUDGMENT

any numbers for shell corporations, and Exhibit 432 does not even refer to this as the word shell is not contained anywhere in that Exhibit.  (Argaman Decl. ¶ 33).  Exhibit 367 appears to be an email that was accidentally sent to Argaman, as Argaman simply forwards it to Doron Nottea without replying to it or commenting on it. Again, Argaman cannot control who emails him or what he is emailed about.  Exhibit 370 relates to changing IDs for products, a technological service that SM and Argaman provided as arms-length vendors .

| | |
|---|---|
| 11. Argaman did not have knowledge of, nor was he recklessly indifferent the AuraVie Defendants made to consumers. (Argaman Decl. at ¶ 10-16). | 1. Plaintiff disputes the entirety of this contention:<br>Defendant Argaman had knowledge of, or was recklessly indifferent to, the Auravie Defendants' misrepresentations to consumers. He was an owner of Defendant Secured Commerce LLC (Dkt. 299 ¶ 39), which designed the primary landing page template for AuraVie's deceptive business practices. Ex. 46. He provided integration services for the common enterprise's customer service management software, Limelight (*See* Dkt. #121-6, at 9-21; Dkt. #121-7, at 1-3; Ex. 555, at 51:3-19; *see also* Ex. 946, at 19:23-20:17), which was used for continuity sales. The scope of the roles he played in the scheme was comprehensive: Argaman at least (1) participated in AuraVie's "AuraVie Angels" campaign (Exs. 185; 187; 494; 497); (2) was involved with shipping logistics of the products (Exs. 174; 367; 370); (3) pitched similar products to other Defendants as potential business opportunities (Ex. 361; *see also* Ex. 362); managed chargebacks and refunds (Exs. 256; 257-2; Ex. 555, at 75:1-5; 348-3; Dkt. #121-7, at 1-3); and (4) designed the |

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

"free trial" landing page for the scheme. Exs. 46; 531. Such a broad swath of responsibilities undermines any attempt by Defendant Argaman to feign ignorance of the business he was engaged in. Furthermore, he helped the common

enterprise process large numbers of continuity plan cancellations and "resolve consumer disputes before they [became] chargebacks." Ex. 257-2. *See also* ex. 256; Ex. 555, at 75:1-5; 348-3.

**Defendants' Response:** Argaman only created a straight sale website, through Secured Commerce, for AuraVie, which site did not contain any deceptive marketing or advertising. (Argaman Decl. at ¶ 9).  Exhibit 367 appears to be an email that was accidentally sent to Argaman, as Argaman simply forwards it to Doron Nottea without replying to it or commenting on it. Again, Argaman cannot control who emails him or what he is emailed about.  Exhibit 370 relates to changing IDs for products, a technological service that SM and Argaman provided as arms-length vendors. The AuraVie Angels, assuming it was an advertising campaign, which is not shown on the face of Exhibits 185, 187, 494, or 497, was not something Argaman assisted in marketing or advertising.  (Argaman Decl. at ¶ 29).  The Exhibits discuss Argaman providing technological services, such as creating a blog.  It is not disputed that Argaman, by and through SM, conducted such arms-length vendor business with the AuraVie Defendants.  SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks.  It only provided the technology for the chargebacks. Nor did SM provide any IVR services, dictate the content of the IVR, or dictate what the IVR said to customers.  (Argaman Decl. at ¶ 5-6).  With regards to Limelight, SM and Argaman simply connected the chargeback armor technology to Limelight.  LL is not a company that Argaman has any affiliation with.  (Argaman Decl. at ¶ 30).

| 12. Argaman never designed, selected, or created any of the products AuraVie sold to consumers. (Argaman | 12. Disputed.<br>1. Plaintiff does not dispute that Argaman did not design |
| --- | --- |

| Decl. at ¶ 15). | or create any AuraVie products. 2. Plaintiff does dispute: That Argaman did not aid in selecting products: *Attitudeline/INFINI*: Defendant Argaman sold Attitudeline/INFINI skincare products, a product that Defendants marketed or sold, or assisted others in marketing or selling, by negative option continuity plans (or assisted others in marketing or selling in the same manner). Ex. 368. *LeElle*: Defendant Argaman sent Doron Nottea a presentation concerning a product called LeElle. Ex. 361. Defendant Argaman was later consulted concerning the company's packaging design. Ex. 361. Defendant Argaman also provided input concerning who would own the new product Defendants were marketing. Ex. 362. |
|---|---|

**Defendants' Response:** LeElle was a product that was unrelated to AuraVie and moreover, was never sold or marketed regardless.  (Argaman Decl. at ¶ 32). Attitudeline/INFINI were not products that Argama/SM ever sold or marketed. (Argaman Decl. at ¶ 34).  Moreover, Exhibit 368 does not even show that these skin products had anything to do with AuraVie.

| 13. Argaman never dealt directly or indirectly with any AuraVie consumers. (Argaman Decl. at ¶ 13, 14, 16). | 13. Disputed. 1. Plaintiff disputes the entirety of this contention: Defendant Argaman helped create an automated response system to allow large numbers of consumers to cancel their AuraVie continuity plans. He also helped establish a relationship with or manage a call center in India. Exs. 149; 386; Ex. 121-7, at 1. *See* |
|---|---|

- 14 -

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | *also* 441.<br><br>Furthermore, he was an owner of Defendant Secured Commerce LLC (Dkt. 299 ¶ 39), which designed the primary landing page template for AuraVie's deceptive business practices. Ex. 46.<br><br>Finally, he was responsible for planning and executing the AuraVie Angels campaign. *See* Exs. 185; 494; 497. |

**Defendants' Response:** Argaman only created a straight sale website, through Secured Commerce, for AuraVie, which site did not contain any deceptive marketing or advertising. (Argaman Decl. at ¶ 9). SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks. It only provided the technology for the chargebacks. Nor did SM provide any IVR services, dictate the content of the IVR, or dictate what the IVR said to customers. (Argaman Decl. at ¶ 5-6). The AuraVie Angels, assuming it was an advertising campaign, which is not shown on the face of Exhibits 185, 187, 494, or 497, was not something Argaman assisted in marketing or advertising. (Argaman Decl. at ¶ 29). The Exhibits discuss Argaman providing technological services, such as creating a blog. It is not disputed that Argaman, by and through SM, conducted such arms-length vendor business with the AuraVie Defendants.

| | |
|---|---|
| 15. Argaman was never paid by SM or any of the AuraVie Defendants. (Argaman Decl. at ¶ 22). | 15. Disputed.<br><br>*1.* Plaintiff does not dispute that Argaman was never paid by SM or by any of the AuraVie Defendants but qualifies this response by noting that where, as here, one is the owner of an entity, any revenues generated by the entity and not paid out as either employee salary or as a capital withdrawal remain on the company's books as retained earnings. These retained earnings function to increase the enterprise value. The enterprise value is a gain to the owners of the enterprise. So, even if not actually paid as an employee |

- 15 -

| | |
|---|---|
| | or as a capital withdrawal, Defendant Argaman nevertheless accrued economic value from the scheme's deceptive business practices. Ex. 46. SM admits to receiving more than $300,000 from Defendant SBM Management for chargeback services relating to the sale of skincare products. Ex. 918-57, ¶236. |

**Defendants' Response:** This is a the creation of a novel legal theory by the FTC, relating to purported increase in "enterprise value" of SM. There is no legal support for this assertion nor does the FTC's dispute contain any evidence that Argaman was paid by SM or any of the AuraVie Defendants. Even assuming SM received the $300,000, the FTC provides no evidence showing any of this money went to Argaman. (Argaman Decl. at ¶ 22).

| | |
|---|---|
| 16. SM never employed any of the Defendants in this case. | 16. Disputed.<br>1. Plaintiff disputes the entirety of this contention:<br>SM employed several of the Individual Defendants as well as employees of other Corporate Defendants:<br>*Roi Reuveni*: testified he worked for both Chargeback Armor and Secured Merchants. Ex. 553-5, at 16:1-16:23. Moreover, he held himself out as a managing member of Secured Merchants. Ex. 412-5.<br>*Alon Nottea and Paul Medina*: Secured Merchants' "Executive Summary," created in June 2013, states that the company's management consisted of Defendants Alon Nottea, "Avi" Argaman, and Paul Medina. Ex. 256-2. Secured Merchants LLC's operating agreement draft names Defendant Argaman and Defendant Alon Nottea as the company's two |

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | managers. Ex. 255-22.<br>*Doron Nottea*: Paul Medina requested approval from Doron and Defendant Alan Argaman to switch one of the Limelight accounts over to SM. Ex. 59. Nottea provided bookkeeping services (Ex. 557-11, at 58:21-25), controlled SM's bank account, created the email address securedmerchantsllc@gmail.com (Ex. 357; *see also* Ex. 942), and provided authorization for the common enterprise's accountant to make payroll disbursements. Ex. 289-1.<br>*Robert Stayner and Tyler Reitenbach*: Regarding the Corporate Defendants, both Stayner (Ex. 287-2) and Reitenbach (Ex. 287-2) were employees of SM while employees of other Corporate Defendants. Stayner was also an employee of SBM Management (Ex. 391-2), while Reitenbach was an employee of CBA and Pinnacle Logistics, Inc. Exs. 563, 370. |
| **Defendants' Response:** SM has always had one owner and one managing member, Argaman. (Argaman Decl. at ¶ 1). The operating agreement that the FTC refers to is an unsigned document and was never executed. Reuveni was a consultant for SM, through his company Trigen, LLC. (Argaman Decl. at ¶ 25). The "executive summary" referred to by the FTC is an document of unknown origin and not something that was created by Argaman. (Argaman Decl. at ¶ 31). SM/Argaman cannot control what email addresses Doron Nottea creates. (Argaman Decl. at ¶ 35). Stayner and Reitenbach are not defendants in this case and thus the FTC using this "evidence" to dispute this uncontroverted fact is disingenuous at best. Doron Nottea did not control SM's bank account. (Argaman Decl. at ¶ 4, 24). | |
| 17. SM or Argaman or CBA never approved or denied chargebacks for the AuraVie Defendants. (Argaman | 17. Disputed.<br>1. Plaintiff disputes the entirety of this contention: |

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Decl. at ¶ 6, 17, Costache Decl. at ¶ 4). | Plaintiff reasserts its response to Fact #5: The meaning of this contention is unclear. Plaintiff does not dispute that payment processors and banks are ultimately responsible for accepting or denying chargeback demands. However, SM disputed consumer chargeback requests, including through its ChargeBack Armor service. Ex. 281-1.

SM's role in founding and developing CBA is also relevant here. Defendant Argaman and SM provided $250,000 to CBA (Ex. 916-57, ¶235; Ex. 917-65, at ¶235), owned and operated CBA's website (Ex. 280), and oversaw CBA's chargeback statistics. Dkt. #231-1, at 7. In turn, a document titled "Secured Merchants" described the "ChargeBack Armor" services as helping "win back lost revenue by reversing chargebacks in your favor" and "handl[ing] the entire chargeback dispute process on your behalf." Ex. 257-1. Mike Costache, then a SM employee and soon-to-be purported CBA CEO, sent an email to a SM client that included referring to SM as "the technology company that developed the CBA product" and then noted that SM is "transitioning all clients to be billed" by CBA. Dkt. #231-1, at 8.

Relief Defendant CBA refuted consumer chargebacks for the unauthorized AuraVie charges. Ex. 946-9, at 24:9-24:23. CBA boasted to potential investors that "33,000 |

- 18 -

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| | chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Ex. 281-2. Defendant Alon Nottea corroborated that Chargeback Armor, Inc. processed chargebacks for the common enterprise. Ex. 550-26, at 172:3-6. |

**Defendants' Response:** SM never processed chargebacks, contested chargebacks, or approved or denied chargebacks.  It only provided the technology for the chargebacks.  Nor did SM provide any IVR services, dictate the content of the IVR, or dictate what the IVR said to customers.  (Argaman Decl. at ¶ 5-6).  Costache was never an employee of SM. (Costache Decl. at ¶ 10).  CBA was not even active until February 2015 and thus could not have contested AuraVie chargebacks.  (Costache Decl. at ¶ 4).  The $250,000 provided from SM to CBA was an arms-length business investment and full tracing was shown for this transaction.  (Argaman Decl. at ¶ 18-20; Costache Decl. at ¶ 5-6).

| | |
|---|---|
| 18. CBA was not formed until February 2015, by Mike Costache. (Costache Decl. at ¶ 4, Exh. 811). | 18. Disputed.<br>1. Plaintiff disputes the entirety of this contention:<br>Although not formally incorporated until March 2015, the company operated informally before incorporation. For example, CBA boasted in its Executive Summary to potential investors that "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Ex. 281-2. Moreover, an email from Costache to a client stated that SM was transitioning to billing under Chargeback Armor. Dkt. #231-1, at 8. |

**Defendants' Response:**  It is unclear how a company could operate "informally" before it is even in existence.  (Costache Decl. at ¶4).  Moreover, the executive summary is a draft document that was never used or sent out.  (Costache Decl. at ¶13).

| | |
|---|---|
| 19. Costache has at all times been the | 1. Plaintiff does not dispute |

- 19 -

| | |
|---|---|
| sole incorporator, shareholder, director, and board member of CBA. (Costache Decl. at ¶ 1). | that Costache incorporated CBA. 2. Plaintiff does dispute: That Costache was the sole shareholder of CBA: Defendant Alon Nottea solicited investors for Chargeback Armor (ex. 910-33, ¶234; Ex. 917-65, ¶234), and the purported Chargeback Armor CEO referred to him as his "business partner." Dkt. 120, at 19. Roi Reuveni was COO of the company. Ex. 917, at ¶237. SM was offered equity ownership interest in CB armor in exchange for its $250,000 investment. Dkt. #231-1, at 53; *see also* Dkt. #231-1, at 50. Alon Nottea's email signature was from Chargeback Armor. Dkt. #231-1, at 27. Moreover, purported CEO Mike Costache also consulted with the Individual Defendants concerning hiring and contracting decisions. Dkt. #231-1, at 11-13, 23, and 26. Additionally, in a March 23, 2015 email, Costache represented that Alon Nottea was a board member of the company and Roi Reuveni was COO. Dkt. #231-1, at 52. That Costache was the sole director of CBA: A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Chargeback Armor's Executive Summary lists Defendant Alon Nottea as President, Defendant Alan Argaman as Chief Technology |

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

Officer, and Defendant Roi Reuveni as Customer Service Manager. Doron Nottea was a signatory on Chargeback Armor's bank account and is listed as secretary of the company on its Bank of America account.

That Costache was the sole board member of CBA: Insofar as "sole director" and "sole board member" are equivalent, Plaintiff reasserts: A Chargeback Armor, Inc. services agreement dated March 2, 2015 describes the company's board of directors as consisting of Mike Costache, Alon Nottea, and Avi Argaman. Dkt. #231-1, at 36. Chargeback Armor's Executive Summary lists Defendant Alon Nottea as President, Defendant Alan Argaman as Chief Technology Officer, and Defendant Roi Reuveni as Customer Service Manager. Ex. 281-3. Doron Nottea was a signatory on Chargeback Armor's bank account and is listed as secretary of the company on its Bank of America account. Dkt. #231-1, at 46, 48. In a March 24, 2015 email, Costache represented that Defendant Alon Nottea was a board member. Dkt. #231-1, at 53.

**Defendants' Response:** It is unclear how soliciting investors, even assuming that Alon Nottea did that, makes one an owner, shareholder, board member, or director of a company. The same argument applies when discussing Costache purportedly taking advice from certain individuals. Reuveni was a consultant and the FTC has even provided the contract for this consultancy. (Costache Decl. at ¶ 11). The executive summary is a draft document that was never used or sent out. (Costache Decl. at ¶13). Nottea was not an employee of CBA, but only on the bank account for convenience

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| purposes.  (Costache Decl. at ¶ 2, 3, 8, 9, 12). | |
| 20. Argaman was never employed by or had any ownership interest in CBA. (Argaman Decl. at ¶ 21, Costache Decl. at ¶ 7). | 20. Disputed. 1. Plaintiff disputes the entirety of this contention: Chargeback Armor's Executive Summary lists Argaman as Chief Technology Officer. Ex. 281-3. He was also listed as a member of the company's board of directors. Dkt. #231-1, at 36. Indeed, Argaman and his Secured Merchants company owned and operated CBA. Dkt. 231-1, at 53. *See* Ex. 280. He incorporated it in concert with other Individual Defendants. Ex. 404. SM provided CBA $250,000 in startup capital. Ex. 916-57, ¶235; Ex. 917-65, at ¶235. He participated in discussions concerning high-level corporate decisions for Chargeback Armor ranging from updates regarding the launch of the company to opening the company's corporate bank account. Exs. 184, 369. He received reports concerning new Chargeback Armor customers. Ex. 184. Finally, he was billed by Nova 8 Media for design services for CBA. Ex. 414. |
| **Defendants' Response:** The executive summary is a draft document that was never used or sent out.  (Costache Decl. at ¶13).  Argaman was never an owner of CBA and did not operate CBA.  (Argaman Decl. at ¶ 21; Costache Decl. at ¶ 2, 3, 8, 9, 12).  It is not disputed that Argaman and SM provided vendor-type technological services as arms-length business transactions, thus it is unclear what relevant the Nova 8 Media bill has. | |
| 21. The $250,000 that SM invested in CBA was an arms-length business transaction and these funds came from entities other than the AuraVie | 21. Plaintiff disputes the entirety of this contention: That the $250,000 Investment in CBA was Arms-Length: Defendant Secured |

- 22 -

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Defendants. (Argaman Decl. at ¶ 18, 19, 20, Costache Decl. at ¶ 5, Exh. 834-838). | Merchants LLC provided $250,000 to CBA (Ex. 916-57, ¶235; Ex. 917-65, at ¶235; Dkt. #231-1, at 53), which was itself operated by several of SM's managers, officers and employees. SM received more than $300,000 in funds for providing chargeback services relating to the sale of Defendants' skincare products. Ex. 918-57, ¶236. That the funds came from entities other than the AuraVie Defendants: Defendants failed to establish that the funds transferred from Chargeback Armor's sole bank account were not funds received from the common enterprise. The only evidence provided to support this merely establishes that SM had clients in addition to the Defendants. *See* Dkt. 354, at 23 (citing Exs. 834-838). |
| Defendants' Response:  The $250,000 provided from SM to CBA was an arms-length business investment and full tracing was shown for this transaction.  (Argaman Decl. at ¶ 18-20; Costache Decl. at ¶ 5-6).  CBA never processed chargebacks for AuraVie as it was not even formed until February 2015.  (Costache Decl. ¶ 4). | |
| 22. CBA never received any ill-gotten gain from the AuraVie Defendants. (Costache Decl. at ¶ 4, Exh. 838). | 22. Plaintiff disputes the entirety of this contention: CBA received ill-gotten gains as part of the common enterprise. Specifically, CBA was paid to process chargebacks and perform other services for the AuraVie Defendants. CBA also received $250,000 from Secured Merchants, LLC (Ex. 917-65, ¶235; Dkt. #231-1, at 53), which received more than $300,000 in funds for providing chargeback and other services relating to the sale of |

- 23 -

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | Defendants' skincare products. Exs. 918-57, ¶236; 918-57, ¶236; 550-26, at 172:3-172:6. Moreover, CBA served the common enterprise by refuting consumer chargebacks relating to the unauthorized AuraVie charges. CBA boasted to potential investors that "33,000 chargebacks were processed in 2014 for our fist [sic] client, AuraVie, an anti-aging skincare company." Dkt. #231-1, at 5. Defendant Alon Nottea corroborated that Chargeback Armor, Inc. processed chargebacks for the common enterprise. Ex. 550-26 p. 172:3-172:6. |
|---|---|
| **Defendants' Response:** The $250,000 provided from SM to CBA was an arms-length business investment and full tracing was shown for this transaction.  (Argaman Decl. at ¶ 18-20; Costache Decl. at ¶ 5-6).  CBA never processed chargebacks for AuraVie as it was not even formed until February 2015.  (Costache Decl. ¶ 4). | |
| *6.* To establish common enterprise liability, it must be shown that individuals transact business through a "maze of interrelated companies." *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2013) (quoting *Delaware Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964). | 6.  Defendants are substituting a necessary showing for a factor courts consider in determining whether there is a common enterprise: "Factors in determining common enterprise include: (1) common control; (2) sharing office space and offices; (3) whether business is transacted through a 'maze of interrelated companies'; and (4) commingling of funds." *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2012). |
| **Defendants' Response:** The factors the FTC lists are not met regardless, as show in the Reply to the FTC's Opposition.  There was no sharing of office space, interrelated companies, or commingling. | |

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| *7. The FTC has not shown any material issue of fact in this case.* | 7. Disputed. *See* Plaintiff's Motion for Summary Judgment, Dkts. 353; 353-1. |

**Defendants' Response:** The Opposition to the MSJ addresses these issues.

DATED:  October 3, 2016

The Law Offices of Shai Oved

By:   /s/ Shai Oved
Shai Oved, Esq.
*Attorneys for* Alan Argaman, and
Secured Merchants, LLC

ALAN ARGAMAN, AND SECURED MERCHANTS, LLC,'S   RESPONSE TO FTC'S STATEMENT OF
GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF RENWED MOTION FOR SUMMARY
JUDGMENT