DAVID C. SHONKA
Acting General Counsel

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
ZACHARY A. KELLER
zkeller@ftc.gov; Tex. Bar No. 24087838
DAMA J. BROWN
Dbrown1@ftc.gov; Mi. Bar No. P54775

Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9382 (Keller); (214) 979-9374 (Brown)
(214) 953-3079 (fax)

RAYMOND MCKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** Plaintiff, v. **BUNZAI MEDIA GROUP, INC.,** *et al.,* **Defendants.** | **Case No. CV 15-4527-GW(PLAx)** <br><br> **PLAINTIFF FEDERAL TRADE COMMISSION'S NOTICE OF MOTION AND MOTION TO DISMISS RELIEF DEFENDANT CHARGEBACK ARMOR, INC.; MEMORANDUM IN SUPPORT THEREOF** <br><br> Date: April 13, 2017 <br> Time: 8:30 a.m. <br> Courtroom: 9D <br> Judge: Honorable George H. Wu |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 13, 2017, at 8:30 a.m., before the Honorable George H. Wu, Plaintiff Federal Trade Commission will move the Court to dismiss Plaintiff's action against relief defendant Chargeback Armor, Inc., with prejudice, pursuant to FED. R. CIV. P. 41(a)(2).

## I. Introduction

Plaintiff seeks to dismiss relief defendant Chargeback Armor, Inc. from this action pursuant to FED. R. CIV. P. 41(a)(2), based upon newly discovered evidence received after the postponement of trial. Because Plaintiff's complaint was filed in good faith and its claims were substantially justified at the time of filing and throughout this litigation, Plaintiff respectfully requests that this Court dismiss its claim against the relief defendant with prejudice and without costs.

## II. Factual and Procedural Background

Plaintiff Federal Trade Commission ("FTC") sued 15 corporate and seven individual defendants on June 16, 2015, to stop a deceptive negative option scheme that caused more than $72.7 million in consumer injury.[1] Defendants operated a common enterprise that marketed skincare products online, using deceptive offers with hidden costs and negative option features that violated the Federal Trade Commission Act ("FTC Act"),[2] the Restore Online Shoppers' Confidence Act ("ROSCA"),[3] and the Electronic Funds Transfer Act ("EFTA").[4] Simultaneous with its complaint, the FTC sought and, after a hearing, obtained an

---

[1] Dkt. 3.
[2] 15 U.S.C. § 45(a).
[3] 15 U.S.C. § 8403.
[4] 15 U.S.C. § 1693e(a).  Dkt. 3 ¶¶ 34-85.

*ex parte* temporary restraining order ("TRO") with an asset freeze and the appointment of a receiver.[5] Following stipulations and contested hearings, the Court later issued preliminary injunctions ("PIs") against all 22 named defendants.[6] Pursuant to the TRO and PIs, hundreds of financial accounts and dozens of businesses belonging to defendants were frozen and placed under a court-appointed receiver's control.[7]

Based upon a review of financial and business records,[8] Plaintiff amended its complaint in October 2016 to add eight corporations and two individuals as defendants.[9] Plaintiff also named, as a relief defendant, Chargeback Armor, Inc. ("CBA"), which had received $250,000 from defendants and retained $133,000 of that sum in a frozen Bank of America commercial account.[10]

On August 27, 2015, attorney Sagar Parikh appeared on behalf of defendants Alan Argaman, Secured Merchants, LLC ("SM"), and CBA. His clients admitted that SM had given CBA $250,000, but contended the funds were a capital infusion paid with the intention that CBA would later issue stock or

---

[5] Dkts. 4 and 14.
[6] Dkts. 105, 107, 108, 147, and 200.
[7] *See, e.g.*, Dkt. 120 at 14 n.18.
[8] *Id.*
[9] Dkt. 235.
[10] These funds were initially frozen pursuant to the TRO because defendant Doron Nottea was an account signatory. *See* Dkt. 120 at 23.

repay the funds to SM.[11] His clients acknowledged that CBA had never issued stock or repaid the funds;[12] therefore, no consideration was exchanged. His clients also claimed the funds were unrelated to the deceptive common enterprise. However, despite several requests, defendants failed to produce dispositive records from their bank, in the form of checks or deposit tickets, to document the origin of the disputed funds. Instead, CBA produced account statements and third party contracts that did not show the origin of the funds.

CBA denied Plaintiff's allegations and moved repeatedly for the release of the frozen funds and a dismissal of the FTC's action. In support of its motions, CBA provided copies of its account statements and third party contracts—none of which showed the funds were unrelated to the defendants' deceptive scheme. The Court denied CBA's motion to release funds[13] and its two motions for summary judgment, finding that genuine issues of material fact remained for determination at trial.[14]

Plaintiff obtained settlement agreements[15] or defaults[16] against 26 of the 33

---

[11] *See*, *e.g.*, Dkt. 392-2 at 3-4.
[12] *Id.*
[13] Dkt. 264
[14] Dkts. 456 and 556.
[15] Dkts. 439, 440, 441, 508, and 547.
[16] Dkts. 532 and 575.

defendants before the June 2016 trial date. On the eve of trial, Plaintiff reached a global settlement agreement in principle with the remaining defendants, including CBA, for which FTC staff was prepared to seek Commission approval.[17] Confirmation of the settlement was placed on the record before the Court on June 20, 2016, by all parties. However, CBA later repudiated the settlement and again asserted that the frozen funds were not related to the deceptive scheme.[18]

Subsequently, by January 2017, Plaintiff obtained bank records that suggest the funds held in CBA's account may not be directly traceable to funds collected from consumers as part of the common enterprise.[19] Although Plaintiff continues to have equitable arguments and legal support for its claim against CBA, it has offered to recommend to the Commission that CBA be dismissed from the complaint. Unfortunately, CBA has refused to agree to a dismissal, incorrectly asserting that it is entitled to costs for malicious prosecution—a claim that is prohibited under the doctrine of sovereign immunity and for which the Federal Tort Claims Act provides no exception.

---

[17] *See, e.g.*, Dkt. 478.

[18] *See e.g.*, Dkt. 541 at 4-5.

[19] Given the complexity of defendants' operation, their use of dozens of shell corporations, and the hundreds of intermingled financial accounts, FTC counsel still cannot say with complete certainty that the funds received by CBA were not related to the underlying common enterprise.

### III. Argument

#### A. Legal Standard for Voluntary Dismissal without Costs

The Federal Rules of Civil Procedure provide that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."[20] Where a court grants a dismissal with prejudice under Rule 41(a)(2), awarding attorney's fees is improper absent exceptional circumstances.[21] This case presents no such exceptional circumstances.

#### B. Dismissal without Costs Is Proper

CBA has seemingly refused a stipulated dismissal only because it believes it is entitled to attorney's fees or costs for malicious prosecution. However, a claim for malicious prosecution is barred by the doctrine of sovereign immunity.[22] Moreover, even if such a claim was not barred, no evidence of malice or bad faith exists.

---

[20] FED. R. CIV. P. 41(a)(2).

[21] *See Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006) ("[I]f the dismissal is with prejudice, attorney fees may be imposed under Rule 41(a)(2) only in 'exceptional circumstances.'"); *Rodriguez v. Serv. Emples. Int'l*, No. C-10-01377 JCS, 2011 U.S. Dist. LEXIS 117793, *10 (N.D. Cal. October 12, 2011); *Gonzalez v. Proctor and Gamble Co.*, No. 06cv869 WQH (WMc), 2008 U.S. Dist. LEXIS 16872 at *8-9 (S.D. Cal. 2008) ("A plaintiff faced with the imposition of attorneys' fees and costs as a condition of voluntary dismissal may request that the action be dismissed with prejudice to avoid payment."); *Burnette v. Godshall*, 828 F.Supp. 1439, 1443 (N.D.Cal.1993) ("Since the ... cause of action has been dismissed with prejudice, costs and attorney fees cannot be awarded to Defendants because there is no future risk of litigation.").

[22] *See McMillan v. DOI*, 907 F. Supp. 322, 327 n.4 (D. Nev. November 7, 1995).

The United States, as a sovereign, is immune from suit except where it consents to be sued.[23] Any waiver of sovereign immunity "must be unequivocally expressed."[24] This rule of strict construction has been specifically applied to claims for attorney fee awards against the United States.[25]

The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity and permits private parties to sue the United States in federal court for certain torts committed by persons acting on behalf of the United States.[26] However, FTCA expressly excepts malicious prosecution claims from this waiver.[27] In addition, attorney's fees may not be awarded under the Act.[28]

---

[23] *See United States v. Mitchell*, 445 U.S. 535 (1980); *see also Price v. United States*, 174 U.S. 373, 376 (1894) ("The United States cannot be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the government is submitted to the courts for judicial determination.").

[24] *United States v. King*, 395 U.S. 1, 4 (1969).

[25] *Library of Congress v. Shaw*, 478 U.S. 310 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983); *Nichols v. Pierce*, 740 F.2d 1249, 1258-59 (D.C. Cir. 1984); *Commissioner of Highways v. United States*, 684 F.2d 443, 444 (7th Cir. 1982); *Nibali v. United States*, 634 F.2d 494, 497 (Ct. Cl. 1980).

[26] 28 USC §§ 2671-2680.

[27] FTCA does not waive sovereign immunity for "[a]ny claim arising out of . . . malicious prosecution[.]" 28 U.S.C. § 2680(h). Although FTCA allows claims of malicious prosecution "with regard to acts or omissions of investigative or law enforcement officers of the United States Government," FTC staff are not "investigative or law enforcement officers" which are specifically defined in the statute to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *See id.*

Even if malicious prosecution claims were not barred by sovereign immunity, CBA's claim would fail because there is no evidence of bad faith or malicious conduct on the Plaintiff's part. In fact, Plaintiff acted properly and in accord with the available evidence and the court-appointed receiver's findings when naming CBA as a relief defendant.[29] In particular, at the time Plaintiff filed its amended complaint, it possessed evidence showing both that CBA participated in defendants' scheme and received funds from it.[30] Indeed, the Court's prior decisions in this matter demonstrate that Plaintiff's position was reasonable based on available evidence. The Court three times denied CBA's requests for relief, including a motion to release frozen assets and two motions for summary judgment.[31] In denying these motions, the Court found that genuine issues of material fact existed.[32]

CBA appears to base its malicious prosecution claim on the belief that records documenting the source of funds at issue were provided to the FTC 22

---

[28] "Congress has not waived the government's sovereign immunity for attorney['s] fees and expenses under the FTCA." *Anderson v. United States*, 127 F.3d 1190, 1191–92 (9th Cir. 1997), *cert. denied*, 523 U.S. 1072 (1998).

[29] The Receiver concluded that "[t]he source of its assets . . . demonstrated the freeze on Chargeback Armor's assets was proper." Dkt. 120 at 24.

[30] *See generally* Dkt. 231.

[31] *See* Dkts. 264, 456, and 556.

[32] *See* Dkt. 456 (noting that "the parties argue over the *meaning* of evidence, not the *absence* of evidence" and holding that "there is sufficient evidence to pose triable issues with respect to . . . whether Chargeback Armor, Inc. is properly considered a relief defendant") and Dkt. 556.

months ago. While the production of such records at an earlier stage of litigation would not defeat the FTC's sovereign immunity, a review of defendants' productions, Court filings, and exhibit lists establish that the records were never produced by defendant.[33]

## IV. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant a dismissal as to relief defendant Chargeback Armor, Inc., with prejudice and without costs.

Respectfully submitted,

Dated: 3/14/17

*/s/ REID TEPFER*
REID A. TEPFER
LUIS H. GALLEGOS
Attorneys for the Plaintiff
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (facsimile)
rtepfer@ftc.gov
lgallegos@ftc.gov

---

[33] *See* Dkts. 214 (motion to modify TRO), 354 (MSJ), 541 (second MSJ), and 451-1 (joint exhibit list).

## CERTIFICATE OF CONFERENCE

This motion is made following the conference with counsel for the Relief Defendant Chargeback Armor, Inc. and Defendants Alan Argaman and Secured Merchants LLC, pursuant to L.R. 7-3, which took place on March 8 and 9, 2017. Relief Defendant Chargeback Armor, Inc. opposes this motion; Defendants Alan Argaman and Secured Merchants LLC do not oppose.

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 14, 2017, a true and correct copy of the foregoing document was served by ECF to the attorneys listed below.

Shai Oved
Law Offices of Shai Oved
7445 Topanga Canyon Blvd, Ste. 220
Canoga Park, CA 91303
Counsel for Secured Merchants, LLC and Alan Argaman

Sagar Parikh
Beverly Hills Law Corp.
433 N. Camden Dr., 6th Floor
Beverly Hills, CA 90210
Counsel for Chargeback Armor, Inc.

*/S/ REID TEPFER*
REID TEPFER