DAVID C. SHONKA
Acting General Counsel

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
ZACHARY A. KELLER
zkeller@ftc.gov; Tex. Bar No. 24087838
DAMA J. BROWN
Dbrown1@ftc.gov; Mi. Bar No. P54775

Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9382 (Keller); (214) 979-9374 (Brown)
(214) 953-3079 (fax)

RAYMOND MCKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**BUNZAI MEDIA GROUP, INC.,** *et al.*,<br><br>**Defendants.** | **Case No. CV 15-4527-GW(PLAx)**<br><br>**JOINT STATEMENT ON THE PARTIES' POSITIONS CONCERNING THE AVAILABILITY OR UNAVAILABILITY OF ATTORNEY'S FEES** |

## Position of Plaintiff Federal Trade Commission

### I. Procedural History

Plaintiff Federal Trade Commission ("FTC") sued 15 corporate and seven individual defendants on June 16, 2015, to stop a deceptive negative option scheme that caused more than $72.7 million in consumer injury.[1] Defendants operated a common enterprise that marketed skincare products online, using deceptive offers with hidden costs and negative option features that violated the Federal Trade Commission Act ("FTC Act"),[2] the Restore Online Shoppers' Confidence Act ("ROSCA"),[3] and the Electronic Funds Transfer Act ("EFTA").[4] Simultaneous with its complaint, the FTC sought and, after a hearing, obtained an *ex parte* temporary restraining order ("TRO") with an asset freeze and the appointment of a receiver.[5] Following stipulations and contested hearings, the Court later issued preliminary injunctions ("PIs") against all 22 named defendants.[6] Pursuant to the TRO and PIs, hundreds of financial accounts and dozens of businesses belonging to defendants were frozen and placed under a

---

[1] Dkt. 3.
[2] 15 U.S.C. § 45(a).
[3] 15 U.S.C. § 8403.
[4] 15 U.S.C. § 1693e(a). Dkt. 3 ¶¶ 34-85.
[5] Dkts. 4 and 14.
[6] Dkts. 105, 107, 108, 147, and 200.

JOINT STATEMENT CONCERNING ATTORNEY'S FEES

court-appointed receiver's control.[7]

Based upon a review of financial and business records,[8] Plaintiff amended its complaint in October 2016 to add eight corporations and two individuals as defendants.[9] Plaintiff also named, as a relief defendant, Chargeback Armor, Inc. ("CBA"), which had received $250,000 from defendants and retained $133,000 of that sum in a frozen Bank of America commercial account.[10]

On August 27, 2015, attorney Sagar Parikh appeared on behalf of defendants Alan Argaman, Secured Merchants, LLC ("SM"), and CBA. His clients admitted that SM had given CBA $250,000, but contended the funds were a capital infusion paid with the intention that CBA would later issue stock or repay the funds to SM.[11] His clients acknowledged that CBA had never issued stock or repaid the funds;[12] therefore, no consideration was exchanged. His clients also claimed the funds were unrelated to the deceptive common enterprise. However, despite several requests, defendants failed to produce dispositive records from their bank, in the form of checks or deposit tickets, to document the

---

[7] *See, e.g.*, Dkt. 120 at 14 n.18.

[8] *Id.*

[9] Dkt. 235.

[10] These funds were initially frozen pursuant to the TRO because defendant Doron Nottea was an account signatory. *See* Dkt. 120 at 23.

[11] *See, e.g.*, Dkt. 392-2 at 3-4.

[12] *Id.*

origin of the disputed funds. Instead, CBA produced account statements and third party contracts that did not show the origin of the funds.

CBA denied Plaintiff's allegations and moved repeatedly for the release of the frozen funds and a dismissal of the FTC's action. In support of its motions, CBA provided copies of its account statements and third party contracts—none of which showed the funds were unrelated to the defendants' deceptive scheme. The Court denied CBA's motion to release funds[13] and its two motions for summary judgment, finding that genuine issues of material fact remained for determination at trial.[14]

Plaintiff obtained settlement agreements[15] or defaults[16] against 26 of the 33 defendants before the June 2016 trial date. On the eve of trial, Plaintiff reached a global settlement agreement in principle with the remaining defendants, including CBA, for which FTC staff was prepared to seek Commission approval.[17] Confirmation of the settlement was placed on the record before the Court by all parties on June 20, 2016. However, CBA later repudiated the settlement and again

---

[13] Dkt. 264

[14] Dkts. 456 and 556.

[15] Dkts. 439, 440, 441, 508, and 547.

[16] Dkts. 532 and 575.

[17] *See, e.g.*, Dkt. 478.

asserted that the frozen funds were not related to the deceptive scheme.[18]

Subsequently, by January 2017, Plaintiff obtained bank records that suggest the funds held in CBA's account may not be directly traceable to funds collected from consumers as part of the common enterprise.[19] Although Plaintiff continues to have equitable arguments and legal support for its claim against CBA, it has offered to recommend to the Commission that CBA be dismissed from the complaint. Unfortunately, CBA has refused to agree to a dismissal, incorrectly asserting that it is entitled to costs for malicious prosecution—a claim that is prohibited under the doctrine of sovereign immunity and for which the Federal Tort Claims Act provides no exception.

## II.   Legal Authority

### A.  The FTC is Generally Protected by the Doctrine of Sovereign Immunity

The United States, as a sovereign, is immune from suit except where it consents to be sued.[20] Any waiver of sovereign immunity "must be unequivocally

---

[18] *See e.g.*, Dkt. 541 at 4-5.

[19] Given the complexity of defendants' operation, their use of dozens of shell corporations, and the hundreds of intermingled financial accounts, FTC counsel still cannot say with complete certainty that the funds received by CBA were not related to the underlying common enterprise.

[20] *See United States v. Mitchell*, 445 U.S. 535 (1980); *see also Price v. United States*, 174 U.S. 373, 376 (1894) ("The United States cannot be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the government is submitted to the courts for judicial determination.").

4
JOINT STATEMENT CONCERNING ATTORNEY'S FEES

expressed."[21] This rule of strict construction has been specifically applied to claims for attorney fee awards against the United States.[22]

### B. CBA Has No Meritorious Claim to Attorney's Fees under Any Exception to Sovereign Immunity

CBA asserts that it is has a malicious prosecution claim against the FTC that entitles it to attorney's fees. This claim is frivolous. The Federal Tort Claims Act ("FTCA"),[23] is a federal statute that waives sovereign immunity and permits private parties to sue the United States in federal court for torts committed by persons acting on behalf of the United States. However, the FTCA expressly bars claims that arise from intentional torts committed by a federal government employee, specifically including malicious prosecution.[24] Moreover, even if malicious prosecution claims were not barred, attorney's fees cannot be awarded under the FTCA because "Congress has not waived the government's sovereign

---

[21] *United States v. King*, 395 U.S. 1, 4 (1969).

[22] *Library of Congress v. Shaw*, 478 U.S. 310 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983); *Nichols v. Pierce*, 740 F.2d 1249, 1258-59 (D.C. Cir. 1984); *Commissioner of Highways v. United States*, 684 F.2d 443, 444 (7th Cir. 1982); *Nibali v. United States*, 634 F.2d 494, 497 (Ct. Cl. 1980).

[23] 28 USC §§ 2671-2680.

[24] The FTCA does not waive sovereign immunity for "[a]ny claim arising out of . . . malicious prosecution . . . ." 28 U.S.C. § 2680(h). Although the FTCA allows claims of malicious prosecution "with regard to acts or omissions of investigative or law enforcement officers of the United States Government," FTC staff are not "investigative or law enforcement officers" "investigative or law enforcement officers," which are specifically defined in the statute to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *See id.*

immunity for attorney['s] fees and expenses under the FTCA."[25]

Nor would CBA have a claim under the Equal Access to Justice Act,[26] which provides limited waivers to sovereign immunity. EAJA permits, as a matter of discretion, the award of attorney's fees and costs where the government has brought its action in bad faith.[27] EAJA also authorizes an award of fees and expenses to a prevailing party, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."[28] CBA is unable to qualify for attorney's fees under either provision.

CBA cannot establish that the FTC brought its enforcement action in bad faith. The bad faith exception is a narrow one.[29] To qualify for an award under the bad faith exception, CBA would have the high burden of proving, through clear and convincing evidence, that the FTC brought the instant enforcement

---

[25] *Anderson v. United States*, 127 F.3d 1190, 1191–92 (9th Cir. 1997), *cert. denied*, 523 U.S. 1072 (1998).

[26] 28 U.S.C. § 2412.

[27] *See* 28 U.S.C. § 2412(b); *see also Metropolitan Van and Storage, Inc. v. United States*, 101 Fed. Cl. 173, 184 (Fed. Cl. 2011), *citing Gavette v. Office of Pers. Mgmt.*, 808 F.2d 1456, 1460 (Fed. Cir. 1986).

[28] 28 U.S.C. § 2412(d)(1).

[29] *See Brown v. Sullivan*, 916 F.2d 492, 495 (9th Cir. 1990); *see also Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 756 (9th Cir.), *cert. denied*, 479 U.S. 825, 107 S. Ct. 100, 93 L. Ed. 2d 51 (1986) (internal quotation marks omitted) ("An award of attorney fees under the bad faith exception is punitive, and the penalty can be imposed only in exceptional cases and for dominating reasons of justice.").

action "vexatiously, wantonly, or for oppressive reasons."[30] There is no evidence to suggest the FTC brought its action in bad faith. Indeed, all the evidence demonstrates that the FTC brought its suit in good faith, relying upon evidence and findings of the Court's Receiver.

CBA appears to base its claim that the FTC maliciously prosecuted the matter on the belief that records documenting the source of funds at-issue were provided to the FTC 22 months ago. While the production of such records at an earlier stage of litigation would still not defeat the FTC's sovereign immunity defense, notably a review of Defendants' productions, Court filings, and exhibit lists show that the records were not previously produced by Defendant.[31] Moreover, despite claims to the contrary, defense counsel acknowledged that he has found no record of ever producing these documents to the FTC.[32]

CBA would likewise be unable to recover attorney's fees under EAJA because the FTC's position was substantially justified. The Supreme Court has held that the government's position is substantially justified when the government had a "reasonable basis in law and fact for proceeding."[33] The substantial

---

[30] *F.D. Rich v. United States ex rel. Indus. Lumber, Co., Inc.*, 417 U.S.116, 129 (1974).

[31] *See* Dkts. 214 (motion to modify TRO), 354 (MSJ), 541 (second MSJ), and 451-1 (joint exhibit list).

[32] *See* Conference Transcript at 13:18-14:25.

[33] *Pierce v. Underwood*, 487 U.S. 552, 565 n.2 (1988).

justification test is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion"—in other words, "if there is a genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action."[34] Substantial justification does not mean "justified to a high degree," but rather, "justified to a degree that could satisfy a reasonable person."[35]

Here, based on evidence and the Receiver's findings, CBA was properly named as a relief defendant.[36] At the time the FTC filed its amended complaint, evidence suggested both that CBA was participated in Defendants' scheme and received funds from it. The FTC's position was substantially justified, as demonstrated by the Court's decisions in this matter. The Court denied CBA's motion to release frozen assets and two MSJs.[37] In denying the MSJs, the Court found that genuine issues of material fact existed.[38] These rulings make clear that the FTC's claim against CBA was "justified to a degree that could satisfy a reasonable person."[39]

---

[34] *Id.* at 565.

[35] *Id.* at 565-66.

[36] The Receiver concluded that "[t]he source of its assets . . . demonstrated the freeze on Chargeback Armor's assets was proper." Dkt. 120 at 24.

[37] *See* Dkts. 264, 456, and 556.

[38] *See* Dkt. 456 (noting that "the parties argue over the *meaning* of evidence, not the *absence* of Evidence" and holding that "there is sufficient evidence to pose triable issues with respect to . . . whether Chargeback Armor, Inc. is properly considered a relief defendant") and Dkt. 556.

[39] *Pierce v*, 487 U.S. at 565 n.2; *see also United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 382 (7th Cir. 2010) ("[T]here is a presumption that a government case strong

Further to CBA's detriment, courts have held that the government is not liable for attorney's fees accrued resulting from petitioning counsel's own mistakes.[40] As noted above, CBA's counsel repeatedly failed to produce his own clients' financial records that would support its defense. Counsel was explicitly informed from the inception of litigation against CBA that records establishing the source of funds were needed. Such records were also sought by the FTC through discovery. Instead of producing records to establish its defense, counsel filed multiple briefs and arguments, both in Court and at mediation hearings, none of which were properly supported. Accordingly, CBA is not entitled to any attorney's fees or costs.

Lastly, Defendants Alan Argaman and Secured Merchants LLC have advised that, at this time, they do not believe they have no claim to attorney's fees from the FTC and are not seeking them. The FTC agrees that these Defendants would not be entitled to attorney's fees from the FTC under any theory.

---

enough to survive both a motion to dismiss and a motion for summary judgment is substantially justified.")

[40] *Jack v. Sec'y of the Interior*, No. 3:13-cv-00657-RCJ-WGC, 2015 U.S. Dist. LEXIS 55513 (N.D. Nev. April 28, 2015) ("[I]t was Plaintiffs' own failure in providing sufficient evidence . . . that created the need to refile the motion. It is completely unreasonable for Plaintiffs to think that Defendants should reimburse them for this mistake."); *see also Fox v. Vice*, 563 U.S. 826, 834 (2011) (stating that a fee award should not reimburse the plaintiff for work that "that bore no relation to the grant of relief"); 28 U.S.C. § 2412(d)(2)(D) ("Fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings").

### Position of Relief Defendant Chargeback Armor, Inc.

Our position is that we believe attorney's fees and costs would be recoverable from the FTC via a malicious prosecution action after this case is dismissed.

### Position of Defendants Alan Argaman and Secured Merchants LLC

Neither FTC, on the one hand, nor Alan Argaman/Secured Merchants, LLC, on the other hand contend that attorney fees are recoverable by the other absent of a finding bad in prosecuting this action which may be recoverable in a separate action for malicious prosecution. No waiver is intended by such contention and all rights are expressly reserved. Argaman/Secured Merchants, LLC, believe some or all of the attorneys may be recoverable under the tort of another theory as to third parties.

Dated: 3/16/17

Respectfully submitted,

/s/ REID TEPFER_____
REID A. TEPFER
LUIS H. GALLEGOS
Attorneys for the Plaintiff
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (facsimile)
rtepfer@ftc.gov

lgallegos@ftc.gov

Dated: March 16, 2017     __/s/ Shai Oved_____
Shai Oved
Attorney for Alan Argaman and
Secured Merchants, LLC

Dated: March 16, 2017     _/s/ Sagar Parikh_____
Sagar Parikh
Attorney for Chargeback Armor, Inc.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that on March 16, 2017, a true and correct copy of the foregoing document was served by ecf to the attorneys listed below.

Shai Oved
Law Offices of Shai Oved
7445 Topanga Canyon Blvd, Ste. 220
Canoga Park, CA 91303
Counsel for Secured Merchants LLC, and Alan Argaman

Sagar Parikh
Beverly Hills Law Corp.
433 N. Camden Dr., 6th Floor
Beverly Hills, CA 90210
Counsel for Chargeback Armor, Inc.

                            */S/ REID TEPFER*
                            REID TEPFER