1                    OFFICIAL TRANSCRIPT PROCEEDING

2

                      FEDERAL TRADE COMMISSION

3

4

5

   MATTER NO.      X150047

6

   TITLE                  AURAVIE

7

   DATE          RECORDED:   MARCH 9, 2017

8

                 TRANSCRIBED:  MARCH 13, 2017

9

   PAGES         1 THROUGH 21

10

11

12

      TELEPHONIC CONFERENCE BETWEEN REID TEPFER, LUIS

13          GALLEGOS, SHAI OVED AND SAGAR PARIKH

                    411172682.wav

14

15

16

17

18

19

20

21

22

23

24

25

1                    FEDERAL TRADE COMMISSION

2                        I N D E X

3

4    RECORDING:                              PAGE:

5    Telephonic conference                    4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  FEDERAL TRADE COMMISSION

 2

 3    In the Matter of:          )

 4    AuraVie                    )  Matter No. X150047

 5                               )

 6    ------------------------------)

 7                              March 9, 2017

 8

 9

10

11          The following transcript was produced from a

12    digital file provided to For The Record, Inc. on March

13    10, 2017.

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2                    -    -    -    -    -

 3              TELEPHONIC CONFERENCE

 4              MR. TEPFER:  -- everyone, we're on the

 5   record now.  Thanks for joining the call.  Before we

 6   get started, let's just have everyone on the call

 7   identify themselves for the court reporter.  This is

 8   Reid Tepfer for the Federal Trade Commission.

 9              MR. GALLEGOS:  This is Luis Gallegos

10   representing the Federal Trade Commission.

11              MR. PARIKH:  Sagar Parikh on behalf of

12   Chargeback Armor.

13              MR. OVED:  Shai Oved on behalf of Alan

14   Argaman and Secured Merchants, LLC.

15              MR. TEPFER:  Okay, great.  And this call is

16   just pursuant to the Magistrate's order to discuss the

17   availability or unavailability of attorney's fees.  As

18   a preliminary matter, I just wanted to say, you know,

19   if we could keep the call targeted to the matter at

20   hand and, you know, just discuss that issue

21   specifically.

22              And Shai, I think it might make sense to

23   start discussing your client just because that -- it

24   doesn't seem like there's a lot to address there.  In

25   your statement to us, it seems like you did not
```

1    believe at this time that you had any claim or

2    entitlement to attorney's fees.  Is that correct?

3            MR. OVED:  Well, we're certainly not, you

4    know, making an admission or a concession.  I looked

5    at your brief, I looked at Sagar's brief, and for the

6    record, you know, we joined in both -- both of them.

7    Our position is that if there is a finding of bad

8    faith, attorney fees may be awarded in a separate

9    cause of action or a claim for attorney fees for

10   malicious prosecution.  We're not there in this

11   action.

12           And, you know, like you've said, we haven't

13   requested attorney fees from the FTC.  We have

14   identified in our informal brief that we circulated

15   that under the theory of a tort of another -- Argaman

16   and/or Secured Merchants may have claims as two-third

17   parties to recover attorney fees.  And, again, those

18   wouldn't be directed necessarily at the FTC at this

19   point.

20           So, without conceding or acknowledging or

21   admitting that we can't seek attorney fees, we're not

22   foreclosing that idea and we're just reserving our

23   rights.  But, yes, for the purposes of the

24   Magistrate's order, we haven't sought attorney fees

25   from anyone or from the FTC, correct.

1          MR. TEPFER:  Okay.  Well, if I'm

2    understanding correctly, it doesn't -- it doesn't --

3    because you're not claiming attorney's fees or seeking

4    that, you know, it doesn't seem like we have a

5    dispute.  It sounds like you believe you may be

6    entitled to, I guess, damages or fees against co-

7    defendants.  Is that correct?

8          MR. OVED:  I think the co-defendants are

9    out.  They would be cross-defendants at this point.

10          MR. TEPFER:  Okay.  But am I correct in

11    that's who you believe you are entitled to attorney's

12    fees from?

13          MR. OVED:  Correct.

14          MR. TEPFER:  Okay.  Well, I mean, as far as

15    the parties that are on this call, I don't want to use

16    up too much of your time unnecessarily.  And, you

17    know, it doesn't -- I feel like you -- you know, we

18    don't have a dispute and you should feel free to

19    disconnect in that case because it -- because you're

20    not seeking attorney's fees against the FTC at this

21    time.

22          MR. OVED:  Okay.  So, I appreciate that.  I

23    mean, our positions are -- are -- essentially we're in

24    agreement as to our issues.  I don't mind sticking on

25    the call just to stick on the call or stay on the call

1    pursuant to the Court's order.   I know you guys have

2    your own arguments to make.

3              MR. TEPFER:   Sure.   All right.   Well, then

4    I'll move on to Chargeback Armor.   And I think, you

5    know, it makes sense to state the FTC's position on

6    the attorney's fees issues and -- I'm sorry, did we

7    have someone else join the call?

8              (No response.)

9              MR. TEPFER:   Shai, are you still there?

10             MR. OVED:   I am still here.

11             MR. TEPFER:   And Sagar --

12             MR. PARIKH:   Yeah, I'm still here, too.

13             MR. TEPFER:   Okay.   And did anyone else join

14   the call?

15             (No response.)

16             MR. TEPFER:   All right.   Well, then I'll

17   move on to discussing Chargeback Armor's claims and

18   I'll just state my position and we can see where you

19   disagree.

20             My understanding is that Chargeback Armor

21   contends it's entitled to attorney's fees or other

22   damages due to the FTC's purported malicious

23   prosecution of Chargeback Armor.

24             After I state my positions, I would be

25   interested to learn whether that is, you know, still

1  the stance of Chargeback Armor, because that's, at

2  this time, a little unclear to me.  You failed to

3  provide, Sagar, the FTC responsive briefing on this

4  issue, contrary to the Magistrate's order, and we

5  haven't heard back from you yet either concerning

6  whether you intend to oppose the FTC's motion for an

7  order voluntarily dismissing Chargeback Armor.  So,

8  you know, your stance is unclear to us at this time.

9           But sort of regardless, as you're aware, the

10  FTC's position is that Chargeback Armor would not be

11  entitled to costs, fees or damages due to any

12  purported malicious prosecution, first, because the

13  claim is barred by sovereign immunity and, second,

14  because there is no evidence of bad faith in this

15  case.  And I'll take those issues one at a time.

16           As stated in our briefing, the U.S., as

17  sovereign, is immune from suit except where it

18  consents to be sued and that applies to the FTC.  The

19  Federal Tort Claims Act does not waive sovereign

20  immunity for claims of malicious prosecution.  It

21  expressly does not waive them.  It does provide an

22  exception to that rule.  Malicious prosecution can be

23  brought in regards to acts or omissions of

24  investigative or law enforcement officers of the U.S.,

25  but FTC staff and attorneys don't qualify as

1    investigative or law enforcement officers.

2           And to address the, I guess, authority that

3    you provided, Sagar, you provided as the sole support

4    for the malicious prosecution case against FTC a news

5    article concerning a malicious prosecution case

6    involving the Environmental Protection Agency.  I'd

7    point out that that article states that it was a rare

8    ruling and that action was brought against

9    investigators and not attorneys.

10          Even if Chargeback Armor's claim wasn't

11   barred by sovereign immunity, the second issue is that

12   it wouldn't succeed because there is no evidence of

13   malice or bad faith in this case.  The FTC's taken a

14   reasonable position throughout the case and that's

15   shown by several facts.  The FTC properly amended its

16   complaint to name CBA based on evidence and the

17   receiver's recommendation.  At the time the FTC filed

18   its amended complaint, evidence suggested that

19   Chargeback Armor was participating in defendant's

20   scheme and received funds from it.

21          And I'm happy to discuss that evidence.  But

22   I'll just note that the receiver, likewise, noted in a

23   report that the asset freeze as to Chargeback Armor

24   was proper, and the Court's rulings also demonstrate

25   the reasonableness of the FTC's position.  You'll

1    recall that the Court denied Chargeback Armor's motion

2    to release frozen assets and twice denied Chargeback

3    Armor's motions for summary judgment.  And in doing

4    so, the Court found that there were genuine issues of

5    material fact that we argued over the meaning of

6    evidence and not the absence of evidence and that

7    there was sufficient evidence to pose triable issues.

8            If my understanding is correct, from reading

9    your initial briefing, Sagar, it seems as though the

10   allegations of malicious prosecution were based off a

11   belief that records documenting the source of

12   Chargeback Armor's funds were provided 22 months ago,

13   specifically the checks that the FTC received by

14   January 2017.  That belief is incorrect.

15           And I have now, at this point, provided you

16   copies of all production emails that you sent to the

17   FTC, which I trust you've reviewed.  And you'll note

18   that those checks are not in any of those productions.

19   So, in short, it was the failure to produce these

20   documents and not any malicious prosecution on behalf

21   of the FTC.

22           You know, I should also note, you know, the

23   evidence that the FTC had suggested that, you know,

24   given the complexity of the defendant's operation,

25   they used numerous shell corporations, hundreds of

```
 1    intermingled accounts, we can't say with absolute

 2    certainty that the funds are not related.  But, you

 3    know, in the -- as a matter of discretion, we're

 4    offering to relief liability here, and I should also

 5    note that Central District of California case law

 6    supports release defendant liability here.  But,

 7    again, as a matter of discretion, we've made this

 8    offer.

 9              Sagar, you can -- you know, you can feel

10    free to let me know what of that you disagree with.

11              MR. PARIKH:  I mean, I think we just -- I

12    think we disagree with regards to the sovereign

13    immunity part, you know.  I think you're just

14    referring to semantics.  I mean, whether we can sue

15    the attorneys or whether we can sue the investigator,

16    I mean, we can sue the FTC, you know, for malicious

17    prosecution.

18              And with regards to the checks, you know, I

19    sent you the email confirming that we showed you the

20    checks at the Diane Faber mediation, and Ms. Faber

21    will even attest to that if it ever gets to that.  So,

22    our position is we presented you the checks in person.

23    Mr. Costashe actually brought them to the mediation,

24    which is why there's an email after the mediation

25    memorializing that, hey, Reid, you know, per the
```

1    checks we showed you the other day, or whatever it

2    says, you know.  But, clearly, it's evidence in that

3    there were checks presented to you.

4            So, our position is you guys had the

5    information and, again, our position is that obviously

6    now that you're offering this dismissal, you know,

7    you've realized that Chargeback should never have been

8    sued in the first place.  And I don't agree that the

9    fact that the Court denied the motion to unfreeze the

10   accounts, that that -- to me, that doesn't really show

11   anything.  That just shows that Judge Wu didn't have

12   enough information at that point to undo the

13   preliminary injunction that he had granted the year

14   before, you know.  To me it just shows he was trying

15   to maintain the status quo.  That's all that means.

16           And, again, with regards to the summary

17   judgment motions, again, it doesn't really appear the

18   judge ruled on those on the merits.  I mean, clearly

19   there wasn't even a notice of ruling addressing any of

20   the specific points in there.  It was more of just,

21   hey, you filed an MSJ and they filed an MSJ, so they

22   basically cancel each other out and, you know, I'm

23   just denying everything.  I mean, that's essentially

24   what I remember from the orders.  I don't think that

25   really is persuasive either way.  But, look, we can

1    agree to disagree on that.

2          I mean, as far as the second point about the

3    motion to dismiss, at this point, we have no

4    opposition, but that's as of today.  I mean, I don't

5    know if we will -- you know, I don't know what your

6    time line is and when you're planning to file it, but

7    I can just say that at this time we have no opposition

8    to such a motion to dismiss.

9          MR. TEPFER:  Well --

10         MR. PARIKH:  But, yeah, we are still seeking

11   attorney's fees if we are going to settle it.  But,

12   obviously, we can't -- you know, we can't stop you

13   from filing your motion to dismiss.  And if such a

14   motion were filed, it would probably be granted even

15   if we somehow tried to oppose it.  And, obviously, we

16   wouldn't be able to get any attorney's fees under that

17   -- under that pretext.

18         MR. TEPFER:  Well, I'd just like to make a

19   copy things clear concerning about opposition and --

20   and, you know, some of the discussion about those

21   checks.  Just to confirm, you're acknowledging that

22   you never emailed those checks to us.  Is that right?

23         MR. PARIKH:  I don't know.  I don't know.  I

24   can acknowledge that I haven't found such an email.  I

25   don't know if I've emailed them.  I believe I have.

1   But I don't know.  I mean, that's correct.  I haven't

2   presented you with an email yet that shows that I've

3   sent them to you.  That's correct.

4           MR. TEPFER:  And did you review your email

5   looking for the time that you sent me those checks

6   supposedly?

7           MR. PARIKH:  I did look, yes.  I didn't look

8   at your -- whatever Mr. McPeek sent me because I

9   couldn't open that.  But I did look through my own

10   emails, you know.  But, again, it could have been

11   deleted because the high size email.  But, again, to

12   me, it doesn't matter.  It doesn't matter if they were

13   presented in an email or whatever it was.  The point

14   is --

15           MR. TEPFER:  No, I just wanted to --

16           MR. PARIKH:  -- you know, are you --

17           MR. TEPFER:  I just wanted to clarify for --

18           MR. PARIKH:  Well, that's fine.  But I don't

19   know, I don't know.  I can't say unequivocally.  I

20   mean, I can confirm that I haven't presented you with

21   an email with the checks attached, that's fine.

22           MR. TEPFER:  So, at this time --

23           MR. PARIKH:  But I can also confirm --

24           MR. TEPFER:  Sure.  So, at this time, you've

25   found no evidence that you've emailed them to us.  If

1    I could also confirm, you acknowledge that you did not

2    attach those emails as exhibits to your mediation

3    brief, your motion to unfreeze assets or either of

4    your motions for summary judgment.  Is that correct?

5              MR. PARIKH:  I don't know.  I can't -- I

6    can't --

7              MR. TEPFER:  You don't remember --

8              MR. PARIKH:  -- confirm that.  I don't know.

9              MR. TEPFER:  Can you review those records

10   and let us know if I'm mistaken?  Because I've

11   reviewed it and I do not see that those checks were

12   included.

13             MR. PARIKH:  Yeah, yeah, but, Reid -- but,

14   Reid, what about the mediation?  Is that what you're

15   denying now?  I mean, I get you're trying to put this

16   on the record and protect yourself and I understand

17   that.  But, you know, I mean, you read the email that

18   I sent you, right?  I mean, why would I -- why would I

19   send you an email that's saying, hey, per the checks

20   you saw at the mediation -- I mean, what purpose --

21   what checks does that refer to?  I mean, are you

22   saying that you didn't receive checks at the -- you

23   didn't see checks at the mediation?  Is that your

24   position?

25             MR. TEPFER:  Yes, that's our position, is we

1    received no documents at the mediation.

2              MR. PARIKH:  Okay.  Okay, that's fine.

3              MR. TEPFER:  All right.  Additionally, I

4    would note that -- do you acknowledge that you did not

5    include those checks as a trial exhibit for the June

6    21st trial?  Is that correct?

7              MR. PARIKH:  I don't know.  We had a bunch

8    of trial exhibits.  I don't recall if the checks were

9    on there or not.

10             MR. TEPFER:  Okay.  And just to -- so, as

11   far as the sovereign immunity issue, you disagree that

12   sovereign immunity would prevent you from bringing a

13   malicious prosecution claim against FTC attorneys.

14   That's -- that's your position?

15             MR. PARIKH:  Well, no, I -- no, no, no, no,

16   I didn't say FTC attorneys.  I said you're -- I said

17   you're just being -- you know, you're taking on

18   semantics here.  I mean, whether it's the FTC

19   investigators or attorneys or whatever the case is, we

20   believe that malicious prosecution can be brought

21   against the Federal Trade Commission, just like it was

22   brought against the federal agency in that EPA case,

23   which again that's not an article that I sent you;

24   it's an article about a case.  I mean, there's a case

25   cited in there.

```
1              MR. TEPFER:  Right.

2              MR. PARIKH:  It's not just some, you know,

3    like, opinion article.  It was an article covering the

4    case that actually was filed and --

5              MR. TEPFER:  But that case was against an

6    investigator.

7              MR. PARIKH:  Yes, an investigator for the

8    EPA.  So, that's what I'm saying, here we could do a

9    malicious prosecution against your investigator for

10   the FTC, which I look at that as coming after the FTC.

11   I don't know.  You know, again, I think you're looking

12   at semantics here.  But, you know, I don't know what

13   the difference is.  But, to me, yes, a malicious

14   prosecution action could be brought against the FTC,

15   whether it's indirectly by suing its investigator who

16   did the research to add Chargeback Armor or whether

17   it's, you know, in some other fashion.  But it would

18   be the FTC in our opinion.

19             MR. TEPFER:  And I --

20             MR. PARIKH:  But, again -- yes, go ahead.

21             MR. TEPFER:  I just want to be clear that --

22   you know, that we understand on the -- where you stand

23   on our motion because, you know, we want to have

24   properly done the meet-and-confer.  You're stating

25   that you would oppose it?
```

```
 1          MR. PARIKH:  No, no, no, I'm saying at this

 2   point there is no opposition.

 3          MR. GALLEGOS:  Is that no opposition?

 4   Because it's unclear, Sagar.  This is Luis.

 5          MR. PARIKH:  I don't know what else to say

 6   other than at this point we are not planning on

 7   opposing it.

 8          MR. TEPFER:  Oh, I'm sorry, I misheard.  No

 9   opposition.

10          MR. GALLEGOS:  Yeah.

11          MR. PARIKH:  At this point, there's no

12   opposition, yes.  That's why I was asking you what's

13   the time line on this.  You know, because if you file

14   it four weeks from now or something, well, then, you

15   know, we may oppose it at that time.  I don't know.

16   I'm just saying at this time, on this conversation, on

17   the record, there is no opposition.  But that assumes

18   that you're filing it today or tomorrow or something

19   like that.  And, you know, that's what it is.

20          And the reason I say it like that is because

21   I have not been able to confirm with my client as he's

22   unavailable currently.  But, you know, that's --

23   that's the reason I'm saying at this time there's no

24   opposition.  But my client may have different ideas.

25   And if so, then, you know, we'll oppose it.
```

1           MR. TEPFER:  Well, I feel like you have to

2      confirm with your client, Sagar.

3           MR. PARIKH:  That's fine.  Well, wait, wait,

4      you asked me -- you know, you asked me verbally.

5      That's why I'm answering.  That's why, if you notice,

6      I haven't responded to your email.  That's fine.  I

7      mean, if you want me to confirm first, that's fine.  I

8      mean, I don't know when he'll be available.  I believe

9      he's out of the country.  It might be later next week

10     or whatever it is.  But that's fine.

11          I mean, if you want me to say that at this

12     point we don't know, that's what I'm saying, we don't

13     know.  I -- you know, I would assume there's no

14     opposition, but like I said, that's at this point.

15     After speaking with my client, it may change.  So, if

16     you want to take that as we don't know, then that's

17     fine.  We don't know at this point whether or not

18     we'll oppose it.

19          MR. TEPFER:  All right.  Well --

20          MR. PARIKH:  I don't even know if we can

21     oppose it.  You know, I have to look into the

22     research.  I'll have to research whether or not a

23     motion to dismiss can even be opposed.  I mean, I

24     assume you're doing it with prejudice.  I don't

25     know -- I don't even know if there is any mechanism

1    for us to oppose it even if we wanted to oppose it.

2    That's not a -- it's not a typical motion, obviously.

3    I mean, it's a motion just to remove us from the case

4    voluntarily.

5              MR. TEPFER:  Well, as far -- I guess to

6    bring it back to the attorney's fees issues, is there

7    anything else that you think we need to address?  I

8    don't want to use up too much of you all's time.

9              MR. PARIKH:  No.  No, no, we're good.  We're

10   good to go.

11             MR. OVED:  Nothing more on my end either.

12             MR. TEPFER:  Okay.  Luis?

13             MR. GALLEGOS:  Nothing on my end.

14             MR. TEPFER:  All right.  Well, thank you

15   both.

16             MR. PARIKH:  Very good.

17             MR. TEPFER:  And we'll talk soon.  Bye.

18             MR. OVED:  Bye.

19             MR. PARIKH:  Bye.

20             (The call was concluded.)

21             (The recording was concluded.)

22

23

24

25

```
 1                 CERTIFICATE OF TRANSCRIPTIONIST

 2

 3

 4            I, Elizabeth M. Farrell, do hereby certify

 5    that the foregoing proceedings and/or conversations

 6    were transcribed by me via CD, videotape, audiotape or

 7    digital recording, and reduced to typewriting under my

 8    supervision; that I had no role in the recording of

 9    this material; and that it has been transcribed to the

10    best of my ability given the quality and clarity of

11    the recording media.

12            I further certify that I am neither counsel

13    for, related to, nor employed by any of the parties to

14    the action in which these proceedings were

15    transcribed; and further, that I am not a relative or

16    employee of any attorney or counsel employed by the

17    parties hereto, nor financially or otherwise

18    interested in the outcome of the action.

19

20

21    DATE:  3/13/2017

22                        ELIZABETH M. FARRELL, CERT

23

24

25
```