DAVID C. SHONKA
Acting General Counsel

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
ZACHARY A. KELLER
zkeller@ftc.gov; Tex. Bar No. 24087838
DAMA J. BROWN
Dbrown1@ftc.gov; Mi. Bar No. P54775

Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9382 (Keller); (214) 979-9374 (Brown)
(214) 953-3079 (fax)

RAYMOND MCKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**BUNZAI MEDIA GROUP, INC.**, *et al.*,<br><br>**Defendants.** | **Case No. CV 15-4527-GW(PLAx)**<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S REPLY IN SUPPORT OF MOTION TO DISMISS RELIEF DEFENDANT CHARGEBACK ARMOR, INC.**<br><br>Date: April 27, 2017<br>Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Honorable George H. Wu |

## I. Introduction

Because this case presents no exceptional circumstances, the Court should dismiss Relief Defendant Chargeback Armor, Inc. ("CBA") with prejudice and without awarding costs or fees. In arguing to the contrary, CBA relies upon the wrong legal standard and misstatements of fact. CBA's false assertions are contradicted by its own counsel's statements on the record. Moreover, CBA's damages claim is barred by sovereign immunity. Even if it were not, all evidence shows the FTC proceeded in its action in good faith and upon a reasonable basis.

## II. Argument
### A. CBA's Counsel Admitted He Has No Evidence He Ever Produced Important Evidence.

The FTC has moved to dismiss CBA after determining that CBA's funds may not be directly traceable to AuraVie consumers. This determination was based upon deposited checks received by January 2017 ("Deposited Checks"). At no point did CBA produce this evidence to the FTC. While the FTC still has equitable arguments and legal authority supporting its case against CBA, as a matter of discretion, FTC counsel offered to recommend that the Commission dismiss CBA from the action.

CBA insinuated in its Opposition to this motion that it had previously produced these Deposited Checks to the FTC.[1] Importantly, CBA would not be entitled to fees or damages even if this claim were true.[2] But it is not. While CBA did produce other checks and incomplete banking records, it never provided the Deposited Checks detailing the original source of the disputed funds to the FTC. Instead, the FTC received these Deposited Checks from third-party banks.[3] In fact, CBA's counsel, Sagar Parikh, admitted on the record that he did not know if he ever provided these Deposited Checks, in direct contradiction to CBA's claims in its opposition brief:

> I don't know. I can acknowledge that I haven't found such an email. I don't know if I've emailed them. I believe I have. But I don't know. I mean, that's correct. I haven't presented you with an email yet that shows that I've sent them to you. That's correct.[4]

And while Mr. Parikh may have claimed not to know whether he produced these Deposited Checks, the evidence shows he failed to do so. Counsel for the FTC

---

[1] *See* Doc. No. 584 at 2 ("From the outset of the case, Costache voluntarily turned over all emails, contracts, and bank statements (as well as checks) that related to CBA's purported involvement with AuraVie.").

[2] *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) ("Except to the extent it has waived its immunity, the Government is immune from claims for attorney's fees[.]"); *see also* Section II.C. (discussing how the FTC proceeded against CBA in good faith and upon a reasonable basis).

[3] *See* Decl. of Tepfer at ¶2; Decl. of Gallegos at ¶2.

[4] *See* Doc. No. 583-1 at 13:23-14:3; *see also id.* at 14:19-21 ("I mean, I can confirm that I haven't presented you with an email with the checks attached, that's fine.").

searched all production from Mr. Parikh and never found such an email.[5] Mr. Parikh himself searched for an email where he produced them; he admits his efforts turned up nothing.[6] Moreover, CBA did not make Initial Disclosures as required by the Federal Rules, where it would have been obligated to identify this critical evidence.[7]

CBA also did not provide the Court this evidence in support of any of its many motions. In an on-the-record discussion, Mr. Parikh claimed not to know whether CBA filed these documents with its motion to modify the TRO or its two motions for summary judgment.[8] But the docket shows CBA did not.[9] Mr. Parikh also claimed not to know whether these Deposited Checks were included as trial exhibits.[10] They were not.[11] None of these filings even referenced the Deposited Checks.

Once the FTC received this evidence, it elected to seek dismissal. But this issue could have been resolved sooner, and without Court involvement, had CBA

---

[5] *See* Decl. of Tepfer at ¶5; Decl. of Gallegos at ¶3.

[6] *See id.* at 14:7 ("I did look, yes. . . . But I did look through my own emails, you know.").

[7] *See* Decl. of Tepfer at ¶8; Decl. of Gallegos at ¶5.

[8] Doc. No. 583-1 at 15:1-15:12.

[9] *See generally* Doc. Nos. 214 (motion to modify TRO), 354 (MSJ), and 541 (second MSJ).

[10] *See* Doc. No. 583-1 at 16:4-16:9.

[11] *See generally* Doc. 451-1 (joint exhibit list).

provided this evidence. CBA claimed its CEO, Mike Costache, "did everything in his power to make it known to the FTC that CBA was simply a technological provider" and that Mr. Costache "immediately cooperated" with the Court's Receiver. But in reality, Mr. Costache was not cooperative. Mr. Costache flooded FTC attorneys with a deluge of phone calls and emails throughout this case. These emails served no purpose other than to attempt to harass or threaten FTC lawyers and did not address the issues in this case.[12] In fact, Judge Abrams recently concluded—based in part on Mr. Costache's emails—that at least one party was not working in good faith to resolve this matter.[13] That has been FTC counsel's experience since the outset of this case, and it has needlessly complicated and prolonged this litigation.

### B. CBA Relies on the Wrong Standard in Concluding It Is Entitled to Attorney's Fees

Where a plaintiff seeks a dismissal *with* prejudice under Federal Rule 41(a)(2), awarding attorney's fees is improper absent exceptional circumstances.[14]

---

[12] *See, e.g.*, Decl. of Tepfer, Att. A-I.

[13] *See* Doc. No. 579; *see also* Decl. of Tepfer, Att. I.

[14] *See Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006) ("[I]f the dismissal is with prejudice, attorney fees may be imposed under Rule 41(a)(2) only in 'exceptional circumstances.'"); *Rodriguez v. Serv. Emples. Int'l*, No. C-10-01377 JCS, 2011 U.S. Dist. LEXIS 117793, *10 (N.D. Cal. October 12, 2011); *Gonzalez v. Proctor and Gamble Co.*, No. 06cv869 WQH (WMc), 2008 U.S. Dist. LEXIS 16872 at *8-9 (S.D. Cal. 2008) ("A plaintiff faced with the imposition of attorneys' fees and costs as a condition of voluntary dismissal may request that the action be dismissed with prejudice to avoid payment."); *Burnette v. Godshall*,

This case presents no exceptional circumstances. CBA's request runs contrary to the "American Rule" governing attorney's fees,[15] and it is barred by sovereign immunity.[16]

In arguing to the contrary,[17] CBA failed to cite a single case where a plaintiff sought a voluntary dismissal *with* prejudice.[18] In none of the cases cited by CBA was a defendant awarded attorney's fees, let alone damages, following a dismissal with prejudice. And none of CBA's cases involved the federal

---

828 F.Supp. 1439, 1443 (N.D.Cal.1993) ("Since the ... cause of action has been dismissed with prejudice, costs and attorney fees cannot be awarded to Defendants because there is no future risk of litigation.").

[15] *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ([I]t is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees.").

[16] *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) ("Except to the extent it has waived its immunity, the Government is immune from claims for attorney's fees[.]"); *Nichols v. Pierce*, 740 F.2d 1249, 1258-59 (D.C. Cir. 1984); *Commissioner of Highways v. United States*, 684 F.2d 443, 444 (7th Cir. 1982); *Nibali v. United States*, 634 F.2d 494, 497 (Ct. Cl. 1980).

[17] *See* Doc. No. 584 at 4.

[18] CBA cites a host of cases where a plaintiff sought a dismissal *without* prejudice. *See Taragan v. Eli Lilly & Co.*, 838 F.2d 1337, 1338 (D.C. Cir. 1988); *GAF Corp. v. Transamerica Ins. Co.*, 665 F.2d 364, 366-67 (D.C. Cir. 1981); *Evans v. Safeway Stores, Inc.*, 623 F.2d 121 (8th Cir. 1980); *Esquivel v. Arau*, 913 F. Supp. 1382, 1385 (C.D. Cal. 1996); *Behrle v. Olshansky*, 139 F.R.D. 370, 376 (W.D. Ark. 1991); *Zucker v. Katz*, No. 87 CIV. 7595, 1990 WL 20171, *2 (S.D.N.Y. Feb. 21, 1990); *Whitehead v. Miller Brewing Co.*, 126 F.R.D. 581, 582 (M.D. Ga. 1989). CBA also relies upon an irrelevant case concerning limitations on the right to take a case into federal court after nonsuiting the same case in state court. *See Eager v. Kain*, 158 F. Supp. 222, 223 (E.D. Tenn. 1957). Another case CBA cited concerned a lawsuit brought against a municipality after that municipality voluntarily dismissed a separate lawsuit against defendants. *Carter v. Village of Ocean Beach*, 759 F.3d 159, 161 (2d Cir. 2014). These cases are irrelevant to the issue before the Court.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISMISS
RELIEF DEFENDANT CHARGEBACK ARMOR, INC.

government as a plaintiff. Simply put, CBA relied on the wrong standard and came to an incorrect conclusion.

### C. CBA's Damages Claim Is Barred by Sovereign Immunity And Meritless

In an attempt to sidestep the sovereign immunity that would thwart a properly filed claim, CBA has requested that the Court award $379,500 in alleged damages as part of a dismissal.

CBA's damages claim is barred by sovereign immunity, just like its attorney's fees claim. While CBA failed to provide any legal basis for its damages, it has previously contended that it is entitled to damages on a malicious prosecution theory.[19] But the Federal Tort Claims Act expressly excludes malicious prosecution claims from its limited waiver of sovereign immunity, except in limited circumstances that do not apply here.[20]

In fact, the FTC had a reasonable basis for bringing this action against CBA and proceeded in good faith. The FTC named CBA as relief defendant consistent

---

[19] Doc. No. 583 at 11.

[20] FTCA does not waive sovereign immunity for "[a]ny claim arising out of . . . malicious prosecution[.]" 28 U.S.C. § 2680(h). Although FTCA allows claims of malicious prosecution "with regard to acts or omissions of investigative or law enforcement officers of the United States Government," FTC staff are not "investigative or law enforcement officers" which are specifically defined in the statute to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *See id.*

with the findings of the Court's Receiver, which had access to and reviewed records for hundreds of bank accounts related to the underlying scheme.[21] Moreover, at the time the FTC amended its complaint, it possessed evidence showing both that CBA participated in defendants' scheme and received funds from it.[22]

Further, the Court's prior rulings demonstrate that the FTC acted reasonably based on available evidence. The Court three times denied CBA's requests for relief, denying a motion to release frozen assets and two motions for summary judgment.[23] In denying these motions, the Court found that genuine issues of material fact existed.[24] Accordingly, CBA has no entitlement to damages.

### D. Conclusion

For the foregoing reasons, this Court should dismiss CBA from this action with prejudice and without awarding costs or fees.

---

[21] The Receiver concluded that "[t]he source of its assets . . . demonstrated the freeze on Chargeback Armor's assets was proper." Dkt. 120 at 24.

[22] *See generally* Dkt. 231.

[23] *See* Doc No. 264, 456, and 556.

[24] *See* Doc. No. 456 (noting that "the parties argue over the *meaning* of evidence, not the *absence* of evidence" and holding that "there is sufficient evidence to pose triable issues with respect to . . . whether Chargeback Armor, Inc. is properly considered a relief defendant") and Doc No. 556.

| | |
|---|---|
| | Respectfully submitted, |
| Dated: 4/13/17 | */s/ REID TEPFER*<br>REID A. TEPFER<br>LUIS H. GALLEGOS<br>Attorneys for the Plaintiff<br>Federal Trade Commission<br>1999 Bryan Street, Suite 2150<br>Dallas, Texas 75201<br>(214) 979-9395 (Tepfer)<br>(214) 979-9383 (Gallegos)<br>(214) 953-3079 (facsimile)<br>rtepfer@ftc.gov<br>lgallegos@ftc.gov |

# CERTIFICATE OF SERVICE

The undersigned certifies that on April 13, 2017, a true and correct copy of the foregoing document was served by ECF to the attorneys below.

Shai Oved
Law Offices of Shai Oved
7445 Topanga Canyon Blvd, Ste. 220
Canoga Park, CA 91303
Counsel for Secured Merchants, LLC and Alan Argaman

Sagar Parikh
Beverly Hills Law Corp.
433 N. Camden Dr., 6th Floor
Beverly Hills, CA 90210
Counsel for Chargeback Armor, Inc.

*/S/ REID TEPFER*
REID TEPFER