DAVID C. SHONKA
Acting General Counsel

REID TEPFER
rtepfer@ftc.gov; Tex. Bar No. 24079444
LUIS GALLEGOS
lgallegos@ftc.gov; Okla. Bar No. 19098
ZACHARY A. KELLER
zkeller@ftc.gov; Tex. Bar No. 24087838
DAMA J. BROWN
Dbrown1@ftc.gov; Mi. Bar No. P54775

Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer); (214) 979-9383 (Gallegos);
(214) 979-9382 (Keller); (214) 979-9374 (Brown)
(214) 953-3079 (fax)

RAYMOND MCKOWN
rmckown@ftc.gov; Cal. Bar No. 150975
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
(310) 824-4343(voice); (310) 824-4380 (fax)

Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**BUNZAI MEDIA GROUP, INC.,** *et al.,*<br><br>Defendants. | Case No. CV 15-4527-GW(PLAx)<br><br>**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT KHRISTOPHER BOND, AKA RAY IBBOT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br>**Hearing Date: July 20, 2017**<br>**Time: 8:30 a.m.**<br>**Location: 350 W. 1st St., Los Angeles, CA, Courtroom 9D**<br>**Judge: Hon. George H. Wu** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**Table of Contents**

I.  Procedural History ............................................................................... 5

II. Defendants' Common Enterprise Scheme ......................................... 6

   A.  Defendants' Deceptive Business Practices..................................... 6

   B.  Corporate Defendants Operated as Part of a Common Enterprise ............................. 7

III.    The FTC Has Adequately Pled that Defendants Violated the FTC Act, ROSCA, and EFTA 10

   A.  FTC Act Violations.......................................................................... 10

     Count 1: Defendants Failed To Disclose Adequately Material Terms of Their Offer in Violation of Section 5(a) of The FTC Act, 15 U.S.C. § 45(a).......................................... 11

     Count 2: Defendants Falsely Represented that Consumers Could Try Their Products "Risk Free" in Violation of Section 5(a) of the FTC Act ............................................. 12

     Count 3: Defendants falsely represented that Defendants were accredited by and had a rating of "A-" with the Better Business Bureau in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) ...................................................................... 13

     Count 4: Defendants Unfairly Charged Consumers For Their "Risk Free Trial" In Violation Of Section 5 Of The FTC Act, 15 U.S.C. § 45(n) ............................. 13

   B.  ROSCA Violations........................................................................... 15

   C.  EFTA Violations .............................................................................. 16

IV.    The FTC Has Adequately Pled Facts to Subject Defendant Bond to Individual Liability ........................................................................................ 17

V.  The Default Judgment ......................................................................... 19

   A.  Default Judgment Legal Standard ................................................. 19

   B.  The *Eitel* Factors Weigh in Favor of Entering a Default Judgment against the Defendant Bond............................................................................. 20

     1. The FTC Will Be Prejudiced If a Default Judgment Is Not Entered ........................ 20

     2. The FTC Sufficiently Alleged Meritorious Claims against the Defendant Bond..... 20

     3. The Sum of the Money Sought is Proportionate ..................................... 21

     4. Possibility of Dispute Concerning Material Facts .................................... 22

     5. Default is Not Due to Excusable Neglect ............................................. 23

     6. Strong Policy Favoring Decisions on the Merits ..................................... 23

VI.    The Requested Injunctive Relief is Warranted ................................. 23

VII.   The Requested Equitable Monetary Relief against DendantBond is Warranted .... 27

VIII.  Conclusion ............................................................................................ 28

1

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

**Table of Authorities**

**Cases**

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988) ........................................ 23
*Benny v. Pipes*, 799 F.2d 489 (9th Cir. 1987) .................................................................. 23
*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ................................................................ 20
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000) ........................... 25
*FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 205 (S.D.N.Y. 2002) ........................................... 20
*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) .............................................. 25
*FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564 (7th Cir. 1989) .............................................. 18
*FTC v. Centro Nat. Corp.*, No. 14-23879-CIV, 2014 WL 7525697 (S.D. Fla. Dec. 10, 2014) .... 7
*FTC v. Colgate Palmolive Co.*, 380 U.S. 374 (1965) .......................................................... 26
*FTC v. Commerce Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016) ............................................... 27
*FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048 (C.D. Cal. 2012) .................................... 10
*FTC v. Consumer Health Benefits Ass'n*, 10 Civ. 3551 (ILG) (RLM), 2012 U.S. Dist. LEXIS
    72161, (E.D. N.Y. May 23, 2012) ...................................................................... 7
*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) ........................................…………….... 26
*FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) .............................................................. 10, 25
*FTC v. H.N. Singer*, 668 F.2d 1107 (9th Cir. 1982) ....................................................... 24, 27
*FTC v. Inc21.com*, 745 F. Supp. 2d 975 (N.D. Cal. 2010) ............................................ 14, 15, 25
*FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000) ...................... 7, 8, 9, 14, 15, 22
*FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp.2d 1006 (C.D. Cal. 2012) ............... 25, 26
*FTC v. Nat'l Urological Group, Inc.*, 645 F.Supp.2d 1167 (N.D. Ga. 2008) ............................ 7
*FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010) ........................................................ 15
*FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127 (9th Cir. 2010) ...................................... 9
*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) ....................................... 10, 13, 14, 24
*FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) ...................................... 18
*FTC v. Ruberoid Co.*, 343 U.S. 470 (1952) ................................................................ 26
*FTC v. Sharp*, 782 F. Supp. 1445 (D. Nev. 1991) .......................................................... 18
*FTC v. Windward Mktg., Ltd.*, No. 96-615F, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) .... 14
*FTC v. Wolf*, 1997-1 Trade Cas. (CCH) ¶ 71,713 (S.D. Fla. 1997) ................................. 7, 8, 22
*Geddes v. United Fin. Group*, 559 F.2d 557 (9th Cir. 1977). ............................................ 19
*High Country Broad Co., Inc.*, 3 F.3d at 1244 (9th Cir. 1993) ........................................... 23
*Jacob Siegel Co. v. FTC*, 327 U.S. 608 (1946) ............................................................ 26
*Litton Indus. v. FTC*, 575 F.2d 364 (9th Cir. 1982) ...................................................... 26
*PepsiCo, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172 (C.D. Cal. 2002) ..................... 21, 23
*Telebrands Corp. v. FTC*, 457 F.3d 354 (4th Cir. 2006) ................................................... 26

**Statutes**

15 U.S.C. § 1693e ..................................................................................... 5, 10, 16, 17
15 U.S.C. § 45 ............................................................................................. 5, 10, 11
15 U.S.C. § 53 ................................................................................................... 24
15 U.S.C. § 8403 ..................................................................................... 5, 10, 15, 16
15 U.S.C. §1693a ............................................................................................... 16
12 C.F.R. § 205.10 .................................................................................... 10, 16, 17
16 C.F.R. § 310.2 ............................................................................................... 16

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12
    C.F.R. §205.10 ................................................................................................................... 17

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

**PLEASE TAKE NOTICE** that on July 20, 2017, at 8:30 a.m., before the Honorable George Wu, United States District Judge, Plaintiff Federal Trade Commission (FTC) will move for Default Judgment against Defendant Khristopher Bond, a.k.a. Ray Ibbbot, based on his failure to plead or defend this lawsuit.

This motion is made pursuant to Federal Rule of Civil Procedure 55(b)(2) and Rule 55-1 of the Local Rules of Practice for the Central District of California. The motion is based upon the well-pled allegations in the FTC's Amended Complaint [Dkt. 235]; the attached Declaration of Plaintiff's Counsel in Support of Default Judgment against Khristopher Bond; the FTC's Supplemental Filing Concerning Default Judgment [Dkt. 503-1]; and the Proof of Service of Khristopher Bond [Dkt. 569]. Under the [Proposed] Default Judgment and Order for Permanent Injunction and Other Equitable Relief, filed concurrently with this Motion, the FTC seeks permanent injunctive relief and equitable monetary relief against Defendant Khristopher Bond, a.k.a. Ray Ibbot.

**MEMORANDUM**

## I.   Procedural History

On June 16, 2015, the FTC filed a Complaint for Permanent Injunction and other Equitable Relief ("Complaint") against 22 defendants, alleging violations of Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"),15 U.S.C. § 8403, and Section 907(a) of the Electronic Fund Transfer Act("EFTA"), 15 U.S.C. § l693e(a), in connection with the sale of skincare products through a negative option continuity plan. [Dkt. 3]. On October 9, 2015, the FTC filed its First Amended Complaint for Permanent Injunction and Other Equitable Relief ("Amended Complaint") [Dkt. 235], adding 10 additional Defendants and one Relief Defendant who were identified as part of the common enterprise in the Receiver's Report. [*See generally* Dkt. 120].

Defendant Khristopher Bond failed to appear or answer the Amended Complaint. The time to file answers, as prescribed by Federal Rule of Civil Procedure 12(a)(1)(A), expired without any Defendant Bond asking the FTC or this Court for an extension of time.

On January 27, 2017, the Clerk of Court entered a Default against Khristopher Bond. Defendant Bond had notice of the amount of equitable monetary relief the FTC sought, as Defendant was served with a copy of the

5

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

Proposed Default Order. [*See* Dkt. 569 at 6].

## II. Defendants' Common Enterprise Scheme

### A. Defendants' Deceptive Business Practices

Defendants collectively operated a common enterprise, described below, to market skincare products over the Internet using deceptive offers with hidden costs, negative option features, and return policies. [Dkt. 235, at 5 ¶2].

Specifically, Defendants falsely offered "risk free trials" or "gifts" of products to consumers nationwide, using online banners, popup advertisements, and websites. [*Id.*]. In truth, Defendants' offers were designed to trick consumers into purchasing Defendants' products and enrolling in a continuity plan that charged consumers for additional products each month. [*Id.*].

Defendants required consumers who accepted their "risk free trial" or "gift" to provide credit or debit card billing information, purportedly to pay nominal shipping and handling fees to receive the advertised products. However, after receiving consumers' billing information, Defendants charged consumers the full costs of the products—imposing charges of up to $97.88 onto consumers' credit or debit cards. [*Id.*]. Defendants also enrolled consumers into a negative option continuity plan, in which Defendants shipped additional products each month and charged consumers' credit or debit cards the full costs of the products, usually $97.88 per month. [*Id.*] Finally, Defendants refused to provide consumers

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

1 with refunds for product returns unless the products were returned unused and
2 unopened within 30 days of the order's placement. [Dkt. 235, at 28 ¶54].

### B. Corporate Defendants Operated as Part of a Common Enterprise

4       Because the FTC has alleged Defendants acted as a common enterprise,
5 the FTC need not plead the specific role of each Corporate Defendant.
6 Defendants, including Defendant Bond, ran their scheme through a tangled web of
7 companies that operated as a common enterprise. In a common enterprise,
8 Defendants are liable for the acts of other members.[1]

9       Because the FTC has alleged that the Corporate Defendants were
10 members of a common enterprise and are accordingly jointly and severally liable
11 for each other's actions, the FTC properly used the term "Defendants" generally,
12 rather than specifically defining the particular role of each Corporate Defendant.
13 "The pleading need not allege facts to state independent claims against each of the
14 Proposed Defendants; under common enterprise liability, . . . each defendant may
15 be jointly and severally liable for the acts described in the pleading."[2]

---

[1] *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1182 (C.D. Cal. 2000); *FTC v. Wolf*, 1997-1 Trade Cas. (CCH) ¶ 71,713, at 79,080 (S.D. Fla. 1997); *see also FTC v. Nat'l Urological Group, Inc.*, 645 F.Supp.2d 1167, 1182 (N.D. Ga. 2008) ("When corporations act as a common enterprise, each may be held liable for the deceptive acts and practices of the other.").
[2] *FTC v. Consumer Health Benefits Ass'n*, 10 Civ. 3551 (ILG) (RLM), 2012 U.S. Dist. LEXIS 72161, *31 (E.D. N.Y. May 23, 2012); *see also FTC v. Centro Nat. Corp.*, No. 14-23879-CIV, 2014 WL 7525697, at *7 (S.D. Fla. Dec. 10, 2014) (rejecting the argument by seven corporate and four individual defendants that the FTC's failure to separately allege the precise activities of the eleven defendants compelled dismissal).

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

For example, in *J.K. Publications*, the FTC alleged common enterprise and "[did] not make a distinction between [three corporate defendants]"—JKP, MJD, and Herbal Care.[3] The court held that no distinction existed between the companies and that therefore, "to the extent that JKP and MJD are found to have violated the FTC Act, Herbal Care will be held jointly and severally liable."[4] The pleading standard espoused by this caselaw is supported by sound policy. Pleading with more specificity would be difficult, if not impossible, in common enterprise cases, as these cases often concern situations where, as here, "no real distinction" exists between Corporate Defendants.[5]

To determine the existence of a common enterprise, a court may consider a variety of factors including: common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to maintain separation of companies; unified advertising; pooled resources and staff; and evidence which reveals that no real distinction existed between the corporate Defendants.[6] It has been held by the Ninth Circuit that "entities constitute a common enterprise when they exhibit either vertical or horizontal commonality – qualities that may be

---

[3] *Id.*
[4] *Id.*
[5] *See, e.g.*, *id.* at 1202.
[6] *J.K. Publ'ns*, 99 F. Supp. 2d at 1202 (C.D. Cal. 2000); *Wolf*, 1997-1 Trade Cas. (CCH) at 79,080.

8

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

demonstrated by a showing of strongly interdependent economic interests or the

pooling of assets and revenues."[7]

　　　　Plaintiff's Amended Complaint sufficiently alleged that the Defendants

acted as a common enterprise. First, the Amended Complaint contains specific

allegations concerning each Corporate Defendant and alleged that these

Defendants participated in the common enterprise.[8] The Amended Complaint then

alleged the Corporate Defendants engaged in the alleged conduct as an

interrelated network of companies that had common ownership, officers,

managers, business functions, employees, and office locations. [Dkt. 235, at 22

¶42]. Further, the Amended Complaint alleged the Defendants   commingled

funds, used the same sales techniques, and had a centralized recordkeeping

system. [Id.]. Because the Corporate Defendants operated as a common enterprise,

they are all jointly and severally liable for the violations alleged in the Amended

Complaint.[9]

---

[7] *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010).

[8] See Dkt. 235, at 7 ¶9 (BunZai Media Group, Inc.); *id.* at 8 ¶10 (Pinnacle Logistics, Inc.); *id.* at
8 ¶11 (DSA Holdings, Inc.); *id.* at 9 ¶12 (Lifestyle Media Brands, Inc.); *id.* at 9 ¶13 (Agoa
Holdings, Inc.); *id.* at 10 ¶15 (Safehaven Ventures, Inc.); id. at 10 ¶16 (Heritage Alliance
Group, Inc.); *id.* at 11 ¶17 (AMD Financial Network, Inc.); *id.* at 11 ¶18 (SBM Management,
Inc.); *id.* at 11-12 ¶19 (Media Urge, Inc.); *id.* at 12-13 ¶22 (Kai Media, Inc.); *id.* at 13 ¶23
(Insight Media, Inc.); *id.* at 13 ¶24 (Focus Media Solutions, Inc.); *id.* at 14 ¶25 (Secured
Commerce, LLC); *id.* at 15 ¶27 (USM Products, Inc.); *id.* at 15 ¶28 (Merchant Leverage Group,
Inc.); id. at 16 ¶29 (DMA Media Holdings, Inc.); *id.* at 16 ¶30 (Shalita Holdings, Inc.); and *id.*
at 16 ¶31 (All Star Beauty Products, Inc.).

[9] J.K. Publ'ns, Inc., 99 F. Supp. 2d at 1182.

9

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

### III. The FTC Has Adequately Pled that Defendants Violated the FTC Act, ROSCA, and EFTA

The next issue is whether the FTC has "pled the elements of its various claims." [Dkt. 524, at 3]. The Amended Complaint alleged that, acting as part of a common enterprise, Defendants violated Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

### A. FTC Act Violations

The FTC has alleged four FTC Act counts: Counts One through Four.

An act or practice is deceptive under Section 5 of the FTC Act, 15 U.S.C. § 45(a), if it includes:

   a.  A representation, omission, or practice that
   b. Is likely to mislead consumers acting reasonably under the circumstances and
   c.  Is material to consumers.[10]

An act or practice is unfair and violates Section 5, 15 U.S.C. § 45(n), of the FTC Act if:

   a. It is likely to cause substantial injury to consumers that is
   b. Not reasonably avoidable and
   c. Not outweighed by countervailing benefits to consumers or

---

[10] *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994) *cert. denied*, 514 U.S. 1083 (1995) (quoting and adopting the standard set forth in *In re Cliffdale Assocs.*, 103 F.T.C. 110, 164–65 (1984)).

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

competition.[11]

**Count 1: Defendants Failed To Disclose Adequately Material Terms of Their Offer in Violation of Section 5(a) of The FTC Act, 15 U.S.C. § 45(a)**

In Count 1, the Amended Complaint alleged that, in numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skincare products, including, but not limited to, AuraVie products, Defendants represented, directly or indirectly, expressly or by implication, that consumers who provide their credit or debit card billing information will be charged only a nominal shipping and handling fee to receive a trial shipment of Defendants' skincare products, and that consumers' satisfaction is guaranteed. [See Dkt. 235 at 35 ¶70].

The Amended Complaint further alleged that, in numerous instances, when Defendants made these representations, Defendants failed to disclose, or disclose adequately to consumers, material terms and conditions of their offer, including:

> a. That Defendants would use consumers' credit or debit card information to charge consumers the full costs of the trial products, usually $97.88, upon the expiration of a limited trial period;
> b. The dates on which the trial period began and ended;
> c. That Defendants would automatically enroll consumers in a negative option continuity plan with additional charges;
> d. The cost of the continuity plan, and the frequency and duration of the

---

[11] 15 U.S.C. § 45(n).

recurring charges;

 e. The means consumers had to use to cancel the negative option program to avoid additional charges; and

f. The requirements of their refund policies. [See Dkt. 235, at 36 ¶71]. These omissions were material. [See Dkt. 235, at 36 ¶71].

Accordingly, the FTC adequately pled in Count 1 that Defendants violated the FTC act by making a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances and is material to consumers.

## Count 2: Defendants Falsely Represented that Consumers Could Try Their Products "Risk Free" in Violation of Section 5(a) of the FTC Act

Count 2 of the Amended Complaint alleged that Defendants falsely represented, expressly or by implication, directly or indirectly, that consumers could try AuraVie or their other skincare products "risk-free." [Dkt. 235, at 37 ¶¶73-74; see also id. ¶¶45-67]. Consumers could not try Defendants' products "risk-free," because Defendants charged consumers the full cost if the "risk-free" product was opened and not returned within 10 days of placing the order, often assessing a restocking fee of up to $15, and consumers had to bear the additional expense of returning the product to the Defendants. In addition, Defendants failed, in numerous instances, to refund consumers' charges assessed for the trial order, despite consumers having returned the product according to the offer's terms and conditions. The Ninth Circuit has found that a false representation that a product is

"free" or "risk free" is material and violates Section 5.[12] Accordingly, the FTC has adequately pled in Count 2 that Defendants violated the FTC act by making a material representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances.

**Count 3: Defendants falsely represented that Defendants were accredited by and had a rating of "A-" with the Better Business Bureau in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)**

Count 3 of the Amended Complaint alleged that, in numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of skincare products, Defendants falsely represented that Defendants were accredited by and had a rating of "A-" with the Better Business Bureau. [Dkt. 235, at 37-38, ¶¶76-77; see also id. at ¶¶30 and 50]. Such express claims are presumed material.[13] Accordingly, the FTC has adequately pled in Count 3 that Defendants violated the FTC act by making a material representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances.

**Count 4: Defendants Unfairly Charged Consumers For Their "Risk Free Trial" In Violation Of Section 5 Of The FTC Act, 15 U.S.C. § 45(n)**

---

[12] In *FTC v. Commerce Planet, Inc.*, the Court held that "[t]his misrepresentation is undoubtedly material because the information about a free kit goes to the cost of the product, an important factor in a consumer's decision on whether or not to purchase a product. The notion that consumers will get a free kit makes it more likely that they will unwittingly provide their credit card information, thinking they are only paying for shipping and handling, when in fact, they are obligating themselves to pay a subscription fee for the continuity program." 878 F.Supp.2d 1048, 1068 (C.D. Cal. 2012).
[13] *Pantron I Corp.*, 33 F.3d at 1095-96.

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

Count 4 of the Amended Complaint alleged that, in numerous instances, Defendants caused charges to be submitted for payment to the credit and debit cards of consumers without the express informed consent of consumers. [Dkt. 235, at 38 ¶79]. The Amended Complaint further alleged that such actions caused or were likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. [Dkt. 235, at 38 ¶79].

Courts have regularly found unauthorized billing practices to be unfair.[14] Taking consumers' money without authorization is presumed to cause substantial injury.[15] The injury is substantial even if the amount taken is relatively small.[16] This injury is not reasonably avoidable: consumers cannot reasonably avoid an unauthorized charge that they only discover after it occurs.[17] Finally, consumers do not benefit from being debited or charged for products or services "they never agreed to purchase, didn't know were being provided to them, and never wanted

---

[14] *FTC v. Inc21.com*, 745 F. Supp. 2d 975, 1003-05 (N.D. Cal. 2010) (unauthorized charges to telephone bills were unfair); *J.K. Publ'ns*, 99 F. Supp. 2d. at 1203 (unauthorized credit card charges); *FTC v. Windward Mktg., Ltd.*, No. 96-615F, 1997 WL 33642380, at *10, 13 (N.D. Ga. Sept. 30, 1997) (unauthorized bank debits).

[15] *See J.K. Publ'ns*, 99 F. Supp. 2d at 1201 (finding substantial injury where "consumers were injured by a practice for which they did not bargain").

[16] *Pantron I Corp.*, 33 F.3d at 1102 ("[C]onsumer injury is substantial when it is the aggregate of many small individual injuries.").

[17] *Inc21.com*, 745 F. Supp. 2d at 1004 ("[T]he burden should not be placed on defrauded customers to avoid charges that were never authorized to begin with.").

14

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

in the first place."[18]

Accordingly, the FTC has adequately alleged in Count 4 that Defendants committed unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n), by causing substantial injury to consumers that is not reasonably avoidable and not outweighed by countervailing benefits to consumers or competition.

## B. ROSCA Violations

Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold on the Internet through a negative option feature, unless the seller:

> a. Clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information,
> b. Obtains the consumer's express informed consent before making the charge, and
> c. Provides a simple mechanism to stop recurring charges.[19]

ROSCA adopts the Telemarketing Sales Rule's definition of "negative option feature."[20] Under this rule, a negative option is "an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to

---

[18] *Inc21.com*, 745 F. Supp. 2d at 1004-05; *see also FTC v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010) (consumers are "injured by a practice for which they did not bargain"); *J.K. Publ'ns*, 99 F. Supp. 2d at 1202.

[19] *See* 15 U.S.C. § 8403.

[20] *Id.*

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

cancel the agreement is interpreted by the seller as acceptance of the offer."[21]

Count 5 of the Amended Complaint alleged that, in marketing their "risk-free trial," Defendants failed to: (a) clearly and conspicuously disclose all material terms of the negative option feature; (b) obtain the consumer's express informed consent to the negative option feature before charging; (c) provide simple mechanisms for a consumer to stop recurring charges, in violation of Section 4 of ROSCA, 15 U.S.C. § 8403. [Dkt. 235, at 40-41 ¶87]. Accordingly, the FTC has, in Count 5, adequately pled three separate violations of ROSCA by Defendants.

### C. EFTA Violations

The Electronic Fund Transfer Act, and its implementing statute Regulation E, regulate the circumstances under which a merchant may make regularly recurring debits from a consumer's bank account. EFTA and Regulation E require that, before a merchant can make such recurring debits, it must obtain a written authorization signed or similarly authenticated by the consumer.[22]

Section 903(9) of EFTA, 15 U.S.C. §1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals." Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides that "[p]reauthorized

---

[21] 16 C.F.R. § 310.2(u).
[22] 15 U.S.C. § 1693e(a); 12 C.F.R. § 205.10(b).

electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. §205.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization."[23] The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable …"[24]

Count 6 of the Amended Complaint alleged that Defendants debited consumers accounts without obtaining a written authorization signed or authenticated by a consumer and without providing a copy of a written authorization signed or similarly authenticated by the consumer, in violation of Section 907(a) of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b). [See Dkt. 235, at 42-43 ¶ ¶93-94]. Accordingly, in Count 6, the FTC has adequately pled two separate violations of EFTA.

**IV.  The FTC Has Adequately Pled Facts to Subject Defendant Bond to Individual Liability**

---

[23] Id. ¶10(b), cmt 5.
[24] Id. ¶ 10(b), cmt 6.

To obtain injunctive and monetary relief against individuals for injury to consumers resulting from a company's conduct, the FTC must establish that the individuals both: (1) participated directly in the unlawful acts or practices or had authority to control them; and (2) had some knowledge of these acts or practices.[25] Authority to control the company can be demonstrated by "active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer."[26] The FTC may satisfy the knowledge requirement by showing either actual knowledge of the misrepresentations, reckless indifference to the truth or falsity of the misrepresentations, or an awareness of a high probability of fraud coupled with an intentional avoidance of the truth.[27] The degree of participation in business affairs is probative of knowledge.[28] To establish individual liability, the FTC need not show that the individual intended to defraud consumers.[29]

The FTC has sufficiently pled facts in the Amended Complaint against Defendant Bond to establish the elements of his individual liability. The FTC alleged that Defendant Bond is or was an owner of BunZai Media Group, Inc.

---

[25] *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170–71 (9th Cir. 1997); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989).
[26] *Amy Travel*, 875 F.2d at 573.
[27] *Publ'g Clearing House*, 104 F.3d at 1171; *Amy Travel*, 875 F.2d at 574.
[28] *Publ'g Clearing House*, 104 F.3d at 1170; *FTC v. Sharp*, 782 F. Supp. 1445, 1450 (D. Nev. 1991) (Pro, J.).
[29] *Publ'g Clearing House*, 104 F.3d at 1171.

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

[Doc. No. 235 at 20]. The FTC further alleged he formulated, directed, controlled, had the authority to control, or participated in the acts or practices set forth in this Complaint. [*Id.*]. More specifically, "Defendant Bond was integrally involved in the day-to-day operations of BunZai Media Group, Inc. and, among other things, trained customer-service representatives on responding to consumer complaints." [*Id.*]. These detailed factual allegations are sufficient to establish Defendant Bond's individual liability for the law violations described in the FTC's Amended Complaint.

## V.    The Default Judgment

### A. Default Judgment Legal Standard

Rule 55(b)(2) enables this Court to issue a judgment against a party that has defaulted. Upon entry of default by the Clerk under Rule 55(a), the Amended Complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proved.[30]

Granting a default judgment is within the Court's sound discretion.[31] In determining whether to issue a default judgment, the trial court may consider a variety of factors in exercising its discretion, including the seven factors

---

[30] *Rio Prop., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *Televideo Sys., Inc., v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).
[31] *See Draper v. Coombs*, 792 F.2d 915, 924-925 (9th Cir. 1986).

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

articulated in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). These factors are: (1) the possibility of prejudice to plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits. In this case, the *Eitel* factors weigh in favor of entering default judgments against Defendant Bond.

### B. The *Eitel* Factors Weigh in Favor of Entering a Default Judgment against the Defendant Bond

#### 1. The FTC Will Be Prejudiced If a Default Judgment Is Not Entered

The FTC will be prejudiced if a default judgment is not entered against Defendant Bond because it will be forced to commit time, resources and personnel to prosecute a lawsuit in which Defendant Bond have refused to participate.[32] Here, the Defendant Bond did not answer the Amended Complaint or participate in this lawsuit in any way. Their complete and unexplained refusal to participate leaves no other way for the FTC to litigate its claims against them.

#### 2. The FTC Sufficiently Alleged Meritorious Claims against the Defendant Bond

---

[32] *See, e.g.*, *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 205, 208-09 (S.D.N.Y. 2002) (finding the denial of motion for default judgment would be "unfairly prejudicial" to the FTC when the defendant failed to provide any explanation for its failure to defend).

1

2          The second and third *Eitel* factors, measuring the merits of the FTC's

3    substantive claim and the sufficiency of the Amended Complaint, also weigh in

4    favor of default judgment. These factors "require that a plaintiff state a claim on

5    which [it] may recover."[33] As detailed above, the FTC has made well-plead

6    allegations in all six substantive counts against the Defendant Bond and has

7    sufficiently alleged his knowledge and participation or control sufficient to

8    establish his individual liability.[34] These allegations, taken as true by virtue of

9    entry of defaults by the Clerk,[35] establish both the sufficiency and underlying

10   merits of the FTC's Amended Complaint as to Defendant Bond.

### 3. The Sum of the Money Sought is Proportionate

11         The fourth *Eitel* factor, the sum of money at stake, favors immediate entry of

12   a default judgment. The fourth factor balances "the amount of money at stake in

13   relation to the seriousness of the defendant's conduct."[36]

14         Here, the sum of money the FTC seeks against the Defendant Bond is

15   proportionate to harm caused by Defendants' scheme. The total amount of

16   consumer harm in this case is $72,692,812. [*See* Dkt. 482-1 at 2 ¶7] (calculating

17

18   [33] *See Pepsico, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002).

     [34] This Court has already held, in granting temporary and preliminary relief, that "[t]he [FTC's]
19   Complaint states a claim upon which relief may be granted under Sections 5, 13, and 19 of the
     FTC Act, 15 U.S.C. §§ 5(a), 53(b), and 57b and under 15 U.S.C. §§ 8404 and 1693o(c)." [Dkt.
     14].

20   [35] *See TeleVideo Sys.*, 826 F.2d at 917-918, and *Rio Prop., Inc.*, 284 F.3d at 1019.
     [36] *PepsiCo Inc.*, 238 F. Supp. 23 at 1175.

21

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

the sum of consumer harm using Defendants' tax returns and Quickbook records).

As is clear from the well-pled allegations in the Amended Complaint, thesefigures are appropriate given the gravity of the Defendants' violations. Every penny received by Defendants was obtained through deception. Defendant Bond was integral part of the common enterprise that bilked money from consumers. [Dkt. 235, at 22 ¶38]. Participants in a common enterprise are held jointly and severally liable for the law violations.[37] Therefore, it is appropriate for Defendant Bond to be held jointly and severally liable for equitable monetary relief in the full amount of consumer injury caused by their collective actions.

### 4. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor, the possibility of a dispute concerning material facts, also strongly favors the entry of judgment. Defendant Bond has not disputed any of the facts underlying the claims in this litigation but rather have also strongly favors the entry of judgment. Defendant Bond have not disputed any of the facts underlying the claims in this litigation but rather have chosen not to participate in this litigation. All material allegations in the Amended Complaint, except those relating to damages, are therefore taken as true.[38] There is no dispute here concerning material facts.

---

[37] *J.K. Publ'ns, Inc.*, 99 F. Supp. 2d at 1202; *Wolf*, 1997-1 Trade Cas. (CCH) at 79,080.
[38] *See TeleVideo*, 826 F.2d at 917-18.

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

### 5. Default is Not Due to Excusable Neglect

The sixth factor, whether the default was due to excusable neglect, also favors entry of default judgment. Defendant Bond were properly served with the Amended Complaint [Dkt. 569] and failed to answer or make any appearance at all. In these circumstances, a default judgment is appropriate.[39]

### 6. Strong Policy Favoring Decisions on the Merits

While the final *Eitel* factor favors deciding cases on the merits when possible, here, this factor is outweighed by the other factors. A decision on the merits is impractical, if not impossible, when a defendant fails to participate in a legal proceeding.[40] Here, the Court should not be precluded from entering a default judgment when the Defendant Bond not only failed to answer the FTC's Amended Complaint but also did not participate in any way in this lawsuit. Accordingly, Defendant Bond's total failure to participate in the lawsuit has rendered a decision on the merits impractical and/or impossible, making entries of default judgments against them appropriate.

## VI.   The Requested Injunctive Relief is Warranted

---

[39] *See High Country Broad Co., Inc.*, 3 F.3d at 1244, 1245 (9th Cir. 1993) (it is "perfectly appropriate" for a district court to enter a default judgment when a corporation fails to retain counsel); *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1987) (finding a defendant's conduct culpable when it has received actual or constructive notice of filing of the action and has intentionally failed to answer); *see also Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (no abuse of discretion in denying motion to set aside a default when a party had notice of the filing and failed to answer the complaint).
[40] *See Pepsico, Inc.*, 238 F.Supp.23 at 1177.

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

1

2          The FTC filed this action under Section 13(b) of the FTC Act to secure

3   permanent injunctive and monetary relief against Defendant Bond and others.

4   Section 13(b) provides that "in proper cases, the Commission may seek, and after

5   proper proof, the court may issue, a permanent injunction" against violations of

6   laws enforced by the FTC. 15 U.S.C. § 53(b). The Ninth Circuit has held that a

7   case alleging violations of a law enforced by the FTC constitutes proper case for

8   which injunctive relief may be sought.[41] Moreover, Section 13(b) preserves the

9   Court's inherent authority not only to grant permanent injunctive relief but any

10  ancillary equitable relief that is necessary to render complete justice.[42]

11         In determining whether to award injunctive relief, the Court acknowledged

12  that it should consider "two general facts: (1) the deliberateness and seriousness of

13  the present violation; and (2) the defendant's past record with respect to deceptive

14  and unfair marketing practices."[43] The business practices at issue in this case

15  concern egregious, intentional deception of consumers with hidden terms and

16  conditions and abusive customer service tactics. [Dkt. 235, ¶45-67]. Defendants

17  deceived thousands of consumers resulting in millions of dollars in consumer

18  _____

19  [41] *FTC v. H.N. Singer*, 668 F.2d 1107, 1111-13 (9th Cir. 1982).
    [42] *See Pantron I Corp.*, 33 F.3d at 1102 (9th Cir. 1994) (quoting *H.N. Singer*, 668 F.2d at 1113).
    [43] Dkt. 524, at 11 (citing *FTC v. Ivy Capital*, No. 2:11-CV-283 JCM (GWF), 2013 WL
20  1224613, *16 (D. Nev. Mar. 26, 2013), *aff'd in part, vacated in part*, 616 Fed. Appx. 360 (9th
    Cir. Oct. 5, 2015)).

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

injury. [See Dkt. 482-1 at 2 ¶7]. Moreover, Defendants' deceptive scheme was longstanding: Defendants' scheme began as early as 2010. [Dkt. 235, at 23 ¶45].

Based on these factors, the FTC seeks injunctive relief to prohibit the Defendant Bond's deceptive practices alleged in the Amended Complaint and to "fence in" future conduct. A permanent injunction is appropriate to prevent Defendant Bond from restarting his illegal conduct after this lawsuit is concluded.[44] The FTC's attached proposed Order against Defendant Bond bans him from advertising, marketing, promoting, or offering any good or service with a Negative Option Feature, as defined by the Order (Section I).[45] The proposed Order also prohibits certain business activities, including (1) failing to disclose material terms and conditions of any offer, with listed examples of required disclosures; (2) misrepresenting any material fact, including those listed; (3) failing to obtain express informed consent prior to charging a consumer for a

---

[44] "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968)); *see also FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1238 (9th Cir. 1999) (quoting *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1274 (9th Cir. 1998) (noting that Defendants "must show that 'subsequent events [have] made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur'").

[45] Courts in the Ninth Circuit have approved categorical bans, similar to what the FTC seeks in this case, as proper injunctive relief. *See, e.g.*, *FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp.2d 1006, 1014-15 (C.D. Cal. 2012) (defendants banned from informercial marketing and telemarketing); *Gill*, 265 F.3d at 957-958 (upholding ban on participation in credit repair business); *Inc21.com Corp.*, 745 F. Supp. 2d at 1010 (ban on telemarketing).

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPER BOND

transaction; and (4) failing to obtain written authorization for Preauthorized Electronic Fund Transfers.

These are appropriate injunctive terms in this type of case. The injunctive relief proposed by the FTC is tailored to the facts in this case and intended to prevent future illegal conduct by Defendants.[46] Moreover, such "fencing-in" relief is permissible, as equitable relief "'is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past.'"[47] The Court's order may "contain[] provisions… that are broader than the conduct that is declared unlawful."[48] In other words, the Court may enter an order that "close[s] all roads to the prohibited goal."[49] The injunctive relief requested is all related to conduct at issue in this case and intended to prevent future law violations similar

---

[46] For example, Section I of the Proposed Default Order, filed concurrently with this Motion, bans Defendant Bond from selling via negative option, the sales method at issue in this case. Section III prohibits Defendant Bond from engaging in credit card laundering. Section II prohibits Defendant Bond from making misrepresentations identical or similar to those alleged in the FTC's Amended Complaint. And Section III consists of prohibitions related to merchant accounts, which would stymie any future attempts by Defendant Bond to unfairly charge consumers without their authorization.

[47] *FTC v. Colgate Palmolive Co.*, 380 U.S. 374, 395 (1965) (quoting *FTC v. Ruberoid Co.*, 343 U.S. 470, 473 (1952)); *see also id.* ("Having been caught violating the [FTC] Act, respondents 'must expect some fencing in.'") (quoting *FTC v. National Lead Co.*, 352 U.S. 419, 431 (1957)).

[48] *Telebrands Corp. v. FTC*, 457 F.3d 354, 357 n.5 (4th Cir. 2006).

[49] *Ruberoid Co.*, 343 U.S. at 473 (1952); *see also Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612-13 (1946) (allowing for fencing-in provisions except "where the remedy selected has no reasonable relation to the unlawful practices found to exist"); *see John Beck Amazing Profits*, 888 F. Supp. 2d at 1001 ("Courts have routinely imposed some form of 'fencing in,' barring violators from participating in certain lines of business or forms of marketing"); *Litton Indus. v. FTC*, 575 F.2d 364, 370 (9th Cir. 1982) (fencing in provisions serve to close all roads to the prohibited goal, so that orders may not be bypassed with impunity).

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

to those described in the Amended Complaint. [Dkt. 235, ¶45-67].

### VII.   The Requested Equitable Monetary Relief against DendantBond is Warranted

The Court's broad equitable authority includes the power to order monetary relief in the form of consumer redress, rescissions of contracts, restitution, or disgorgement of unjust enrichment.[50]

For monetary relief, the proposed Order against Defaulting Corporate Defendants imposes an equitable monetary judgment of $72,692,812 against all Defaulting Corporate Defendants, jointly and severally, for their participation in the common enterprise [Section IV].[51]

The proposed Order also requires third parties to turn over any assets of Defendant Bond[Section VII], and provides for the protection of Defendants' customer information [Section VI]. The proposed Order also contains recordkeeping and periodic reporting provisions that are standard in FTC cases to aid the FTC in monitoring defendants' compliance with court orders. [Sections VIII-XI]. This permanent injunctive relief is warranted and appropriate given the

---

[50] *See Singer*, 668 F.2d at 1113.

[51] Importantly, the FTC need only reasonably approximate the amount of consumer injury. After the FTC has satisfied this obligation, the burden shifts to Defendants to show that the figures are inaccurate. *See FTC v. Commerce Planet*, 815 F.3d 593, 604 (9th Cir. 2016) (quoting *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 368 (2d. Cir 2011)) ("If the FTC makes the required threshold showing, the burden then shifts to the defendant to show that the FTC's figures overstate the amount of the defendant's unjust gains. Any risk of uncertainty at this second step 'fall[s] on the wrongdoer whose illegal conduct created the uncertainty.'"); *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997).

27

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPER BOND

egregiousness of the violations of the FTC Act, ROSCA, and EFTA described in the Amended Complaint [Dkt. 235, ¶¶ 45-67].

## VIII.  Conclusion

For the above reasons, Plaintiff requests that this Court enter the proposed default order, filed concurrently with this Motion, against Defendant Bond.

Respectfully submitted,

Dated: 6/14/17

*/s/ REID TEPFER*
REID A. TEPFER
LUIS H. GALLEGOS
Attorneys for the Plaintiff
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9395 (Tepfer)
(214) 979-9383 (Gallegos)
(214) 953-3079 (facsimile)
rtepfer@ftc.gov
lgallegos@ftc.gov

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 14, 2017, a true and correct copy of the foregoing document was served by ECF to the individuals listed below.

Shai Oved
Law Offices of Shai Oved
7445 Topanga Canyon Blvd, Ste. 220
 Canoga Park, CA 91303
Counsel for Secured Merchants, LLC

Alan Argaman, *pro se*
AlanLeAAA@gmail.com

*/S/ REID TEPFER*
REID TEPFER

MOTION FOR DEFAULT JUDGMENT AGAINST KHRISTOPHER BOND