1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No.  CV 15-4527-GW(PLAx) |
| **Plaintiff,** | **[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AS TO DEFENDANT KRISTOPHER BOND, AKA RAY IBBOT, INDIVIDUALLY OR MANAGER OF BUNZAI MEDIA GROUP, INC.** |
| **v.** | |
| **BUNZAI MEDIA GROUP, INC.,** *et al.* | |
| **Defendants.** | |

Plaintiff, Federal Trade Commission ("FTC" or "Commission"), filed its

Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") on

June 16, 2015. (Dkt. 3).  Plaintiff filed its First Amended Complaint for

Permanent Injunction and Other Equitable Relief ("Amended Complaint") on

October 9, 2015, seeking a permanent injunction and other equitable relief against

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF**

32 Defendants and one Relief Defendant. (Dkt. 235).  Plaintiff's Amended Complaint asserts the same claims, and seeks the same relief, as its initial Complaint but adds several defendants and a relief defendant count.  Plaintiff's Complaint and Amended Complaint allege that Defendants, acting as a common enterprise, violated Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45; Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404; and Section 917(c) of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c).

The FTC having filed its Motion for Entry of Default Judgment and Order for Permanent Injunction and Other Equitable Relief Against Defendant Kristopher Bond (Motion), and the Court having considered the FTC's Motion, supporting exhibits, and the Supplement to these filings (Dkt. TBD), the FTC's Motion is hereby granted.  THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.      "'The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

2.      This Court is satisfied that Kristopher Bond, aka Ray Ibbot ("Defaulting Defendant") was properly served with the First Amended Complaint and a proposed Default Judgment Order.  Defaulting Defendant Kristopher Bond was

served as described in the Proofs of Service filed with the Clerk of Court. (Dkt. TBD).

3.      The Defaulting Defendant has not answered or otherwise appeared in this action. The Clerk of Court entered a Default against Kristopher Bond on _____.  (Dkt. TBD).

4.      Therefore, the factual allegations of the Amended Complaint, except those relating to the amount of damages, will be taken as true.

5.      This is an action by the Commission under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 5 of ROSCA, 15 U.S.C. § 8404, and Section 917(c) of EFTA, 15 U.S.C. § 1693o(c).

6.      The Commission's Complaint and Amended Complaint seek permanent injunctive relief against Defaulting Defendant in connection with online sale of skincare products through a negative option continuity plan in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, and Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and equitable monetary relief in the form of consumer redress and/or disgorgement. (Dkt. 235 at pp.45-46).

JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345 and 15 U.S.C. §§ 45(a), 53(b), and 57b.

8.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (b)(2),
and 15 U.S.C. § 53(b).

**PLAINTIFF**

9.      The FTC is an independent agency of the United States Government created
by statute. 15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15
U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting
commerce.  Additionally, the FTC enforces ROSCA, 15 U.S.C. §§ 8401-05,
which prohibits certain methods of negative option marketing on the Internet, and
EFTA, 15 U.S.C. § 1693 *et seq*., which regulates the rights, liabilities, and
responsibilities of participants in electronic fund transfer systems.

10.     The FTC is authorized to initiate federal district court proceedings, by its
own attorneys, to enjoin violations of the FTC Act, ROSCA, and EFTA, and to
secure such equitable relief as may be appropriate in each case, including
rescission or reformation of contracts, restitution, the refund of monies paid, and
the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A),
56(a)(2)(B), 57b, 8404, and 1693o(c).

**DEFAULTED DEFENDANT**

11.     **Kristopher Bond,** also known as Ray Ibbot, was an owner of BunZai
Media Group, Inc. (Dkt. 235 at p.20 ¶38).  At times material to the Amended
Complaint, he formulated, directed, controlled, had authority to control, or

participated in the acts and practices set forth in the Amended Complaint. *Id.* He was integrally involved in the day-to-day operations of BunZai Media Group, Inc. and, among other things, trained customer-service representatives on responding to consumer complaints. *Id.* By and through the corporate defendants, he has harmed consumers nationwide with his unfair and deceptive business practices. *Id.* Defaulting Defendant resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States. *Id.* Defaulting Defendant was properly served with Plaintiff's Summons and Amended Complaint (Dkt. TBD) but failed to appear or defend. The Clerk of the Court entered a Default against the Defaulting Defendant on _____. (Dkt. TBD).

### COMMERCE

12.     At all times material to this Complaint, Defaulting Defendant maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44. (Dkt. 235 at p.20 ¶38). Defendants' Internet skincare product business was marketed, and sold products, to consumers nationwide. (Dkt. 235 at p.5 ¶2).

### COMMON ENTERPRISE

13.     The Court finds that Defaulting Defendant participated as a member of a common enterprise and:

      a.  conducted the business practices at issue through an interrelated network of companies with common ownership, officers, managers, business functions, employees, and office locations (Dkt. 235 at p.22 ¶42); and

      b.  the companies commingled funds, used the same deceptive sales techniques, and had centralized record keeping. (Dkt. 235 at p.22 ¶50).

14.    These allegations, taken as true, establish that, as a member of a common enterprise, Defaulting Defendant violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, and Section 907(a) of EFTA, 15 U.S.C. § 1693e(a). (Dkt. 235 at p.6 ¶3 and p.22 ¶42).

## DEFAULTING DEFENDANT'S LAW VIOLATIONS

15.    The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as a member of a common enterprise, Defaulting Defendant violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by failing to disclose, or disclose adequately, material terms and conditions of their offer, including:

      a.  that Defendants would use consumers' credit and debit card information to charge consumers the full cost of the trial products upon expiration of a limited trial period (Dkt. 235 at p.36 ¶71(a));

      b.  the dates on which the trial period began and ended (Dkt. 235 at p.36 ¶71(b));

    c.  that Defendants would automatically enroll consumers in a negative option continuity plan with additional charges (Dkt. 235 at p.36 ¶71(c));

    d.  the cost of the continuity plan, and the frequency and duration of the recurring charges (Dkt. 235 at p.36 ¶71(d));

    e.  the means consumers must use to cancel the negative option program to avoid additional charges (Dkt. 235 at p.36 ¶71(e)); and

    f.  requirements of their refund policies. (Dkt. 235 at p.36 ¶71(f)).

16.    Accordingly, the Court finds Defaulting Defendant liable under Count 1 of the Amended Complaint. (Dkt. 235 at pp.35-36 ¶¶ 70-72).

17.    The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as a member of a common enterprise, Defaulting Defendant violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by falsely representing, expressly or by implication, that consumers could try their products "risk free." (Dkt. 235 at p.37 ¶¶73-75).

18.    Accordingly, the Court finds Defaulting Defendant liable under Count 2 of the Amended Complaint. (Dkt. 235 at p.37 ¶¶73-75).

19.    The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as a member of a common enterprise, Defaulting Defendant violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by falsely representing, expressly or by implication, that Defendants are

accredited by and have a rating of "A-" with the Better Business Bureau. (Dkt. 235 at pp.37-38 ¶¶ 76-78).

20.    Accordingly, the Court finds Defaulting Defendant liable under Count 3 of the Amended Complaint. (Dkt. 235 at p.37-38 ¶¶ 76-78).

21.    The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as a member of a common enterprise, Defaulting Defendant violated Section 5(a) of the FTC Act, 15 U.S.C. §§ 45(a) and (n) by having caused charges to submitted for payment to the credit and debit cards of consumers without their express informed consent. (Dkt. 235 at p.38 ¶¶ 79-81).

22.    Accordingly, the Court finds Defaulting Defendant liable under Count 4 of the Amended Complaint. (Dkt. 235 at p.38 ¶¶ 79-81).

23.    The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as a member of a common enterprise, Defaulting Defendant violated Section 4 of ROSCA, 15 U.S.C. § 8403, by failing to:

    a.  clearly and conspicuously disclose all material terms of the negative option feature of the skincare products transaction before obtaining the consumer's billing information (Dkt. 235 at p.40 ¶87(a));

b.  obtain the consumer's express informed consent to the negative option feature before charging the consumer's credit card, debit card, bank account, or other financial account for the transaction (Dkt. 235 at p.40 ¶87(b)); and/or

c.  provide simple mechanisms for a consumer to stop recurring charges for skincare products to the consumer's credit card, debit card, bank account, or other financial account. (Dkt. 235 at p.41 ¶87(c)).

24.  Accordingly, the Court finds Defaulting Defendant liable under Count 5 of the Amended Complaint. (Dkt. 235 at 41 ¶¶ 87-88).

25.  The Court finds that, in connection with the online sale of skincare products through a negative option continuity plan and as a member of a common enterprise, Defaulting Defendant violated Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), by:

a.  debiting consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts (Dkt. 235 at p.42 ¶93); and

b.  debiting consumers' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly

1    authenticated by the consumers for preauthorized electronic fund

2    transfers from the consumers' account. (Dkt. 235 at p.42 ¶94).

3    26.    Accordingly, the Court finds Defaulting Defendant liable under Count 6 of

4    the Amended Complaint. (Dkt. 235 at pp. 42-43 ¶¶ 93-96).

5    **PERMANENT INJUNCTIVE RELIEF**

6    27.    Section 13(b) of the FTC Act authorizes courts to issue a permanent

7    injunction whenever a defendant violates the laws enforced by the Commission

8    and is likely to continue to violate them.  *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107,

9    1111 (9th Cir. 1982); *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir.

10   1996); *FTC v. Medlab*, *Inc.*, 615 F. Supp. 2d 1068, 1082 (N.D. Cal. 2009).  To

11   determine whether a defendant is likely to engage in similar violations in the

12   future, courts look to two general factors:  (a) the deliberateness and seriousness

13   of the present violation, and (b) the defendant's past record with respect to

14   deceptive and unfair marketing practices.  *Sears, Roebuck & Co. v. FTC*, 676 F.2d

15   385, 392 (9th Cir. 1982); *Ivy Capital*, 2013 WL 1224613, at *16.  The court may

16   also weigh the "adaptability or transferability of the unfair practice to other

17   products."  *Id*.  This Court finds that a permanent injunction against Defaulting

18   Defendant is proper and serves the public interest.

19   28.    Further, "[a] court may frame an injunction based on violation of the FTC

20   Act broadly enough to prevent the defendant from engaging in similar illegal

conduct in the future." *FTC v. Neovi, Inc.*, No. 06-1952 JLS, 2010 WL 3789713, at *2 (S.D. Cal. Sept. 27, 2010) (citing *FTC v. Colgate-Palmolive*, 380 U.S. 374, 395 (1965)). Numerous courts have imposed bans enjoining future participation in a particular line of business. *See, e.g., FTC v. Gill*, 265 F.3d 944, 957-58 (9th Cir. 2001) (ban on engaging in the credit repair business); *Ivy Capital*, 2013 WL 1224613, at *16 (ban on business coaching); *FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp. 2d 1006, 1013 (C.D. Cal. 2012) (ban on telemarketing and producing or disseminating infomercials); *Grant Connect*, 827 F. Supp. 2d at 1233 (ban on marketing and selling grant products and business opportunities); *FTC v. Dinamica Financiera*, No. 2:09-03554, 2010 WL 9488821, at *12 (C.D. Cal. Aug. 19, 2010) (ban on loan modification and foreclosure relief services); *FTC v. Neiswonger*, 494 F. Supp. 2d 1067, 1084 (E.D. Mo. 2007) (ban on marketing business opportunities); *FTC v. Bay Area Bus. Council, Inc.,* No. 02-5762 (N.D. Ill. Apr. 16, 2004) (ban on telemarketing and on sale of credit-related products), aff'd, 423 F.3d 627 (7th Cir. 2005); *FTC v. Credit Enhancement Servs.*, No. 02-2134 (E.D.N.Y. Mar. 31, 2004) (ban on marketing or selling credit-related goods or services); *FTC v. Consumer Alliance*, No. 02-2429 (N.D. Ill. Sept.29, 2003) (ban on telemarketing and sales of credit card protection and credit-related products). Based on the allegations in the Amended Complaint (Dkt. 235 at

pp.23-35), such a ban, prohibiting Defaulting Defendant from engaging in future negative options sales, is appropriate here.

### EQUITABLE MONETARY RELIEF

29.     Where consumers suffer economic injury resulting from defendants' violations of the FTC Act, equity requires monetary relief in the full amount of consumers' losses (or ill-gotten gains).  *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) (affirming summary judgment holding defendants liable for the full amount of loss incurred by consumers); *Inc21.com*, 745 F. Supp. 2d at 1011.

30.     To determine the proper monetary relief, the FTC need only reasonably approximate the amount of consumer injury, at which point the burden shifts to Defendants to show that the figures are inaccurate.  *See Commerce Planet*, 878 F. Supp. 2d at 1089 (citing *FTC v. Direct Mktg. Concepts, Inc*., 624 F.3d 1, 15 (1st Cir. 2010); *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997)).  "Fuzzy figures due to a defendant's uncertain bookkeeping cannot carry a defendants' burden to show inaccuracy." *Id*.

31.     Where defendants act as a common enterprise, each may be held jointly and severally liable for the unlawful acts and practices of the other.  *Grant Connect*, 827 F. Supp. 2d at 1216; *J.K. Publ'ns*, 99 F. Supp. 2d at 1202.

32.     The common enterprise's net sales (total sales minus refunds, returns, and chargebacks) amounted to at least $72,692,812 from the conduct alleged in the

Commission's Amended Complaint. (Dkt. 482-1 at p. 2 ¶7). Defaulting Defendant received notice of the amount sought by the Commission in this action, by service upon him personally. (Dkt. TBD).

33.     The Commission is entitled to equitable monetary relief against Defaulting Defendant in the amount of $72,692,812, for which Defaulting Defendant is jointly and severally liable. (Dkt.. 482-1 at p. 2 ¶7).

34.     This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

35.     Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      "**Acquirer**" means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization  that operates or licenses a credit card system (*e.g.* Visa, MasterCard, American Express, and Discover) to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

B.      "**Charge**" or "**Charging**" means causing billing information to be submitted for payment, including against a consumer's credit card, debit card,

bank account, phone bill, or other account, or otherwise attempting to collect money or other consideration.

C.      "**Clear and conspicuous**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

5.      On a product label, the disclosure must be presented on the principal display panel.

6.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

7.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

8.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

9.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.      "**Credit Card Laundering**" means:

1.      Presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and any Defendant;

2.      Employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit

into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or

3. Obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

E. "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

F. "**Continuity Plan**" means any plan, arrangement, or system in which a consumer is periodically charged for products or services *without* prior notification by the seller before each charge.

G. "**Defendants**" means Defaulting Defendant and Alon Nottea; Motti Nottea; Doron Nottea; Igor Latsanovski; Oz Mizrahi; Roi Reuveni; Paul Medina; Alan Argaman; BunZai Media Group, Inc.; Pinnacle Logistics, Inc.; DSA Holdings, Inc.; Lifestyle Media Brands, Inc.; Agoa Holdings, Inc.; Zen Mobile Media, Inc.; Safehaven Ventures, Inc.; Heritage Alliance Group, Inc.; AMD Financial Network, Inc.; SBM Management, Inc.; Media Urge, Inc.; Adageo, LLC; CalEnergy, Inc.; Kai Media, Inc.; Insight Media, Inc.; Focus Media Solutions, Inc.; Secured Commerce, LLC; Secured Merchants, LLC; USM Products, Inc.;

Merchant Leverage Group, Inc.; DMA Media Holdings, Inc.; Shalita Holdings, Inc.; and All Star Beauty Products, Inc. and their successors and assigns.

H.     "**Defaulting Defendant**" means Kristopher Bond, also known as Ray Ibbot.

I.     "**Electronic Fund Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.  Such term does not include:

1.     Any check guarantee or authorization service that does not directly result in a debit or credit to a consumer's account;

2.     Any transfer of funds, other than those processed by automated clearinghouse, made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and that is not designed primarily to transfer funds on behalf of a consumer;

3.     Any transaction the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the Securities and Exchange Commission;

4.      Any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a consumer and a financial institution for the purpose of covering an overdraft or maintaining an agreed upon minimum balance in the consumer's demand deposit account; or

5.      Any transfer of funds which is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution which is not pursuant to a prearranged plan and under which periodic or recurring transfers are not contemplated.

J.      "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services.

K.      "**Merchant**" means a person who is authorized under a written contract with an Acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services.

L.      "**Merchant Account**" means an account with an Acquirer that authorizes and allows a Merchant to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

M.      "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the

1  agreement is interpreted by the seller or provider as acceptance or continuing

2  acceptance of the offer or agreement.

3  N.   "**Preauthorized Electronic Fund Transfer**" as defined by the Electronic

4  Fund Transfer Act, 15 U.S.C. § 1693a(10), means an electronic fund transfer

5  authorized in advance to recur at substantially regular intervals.

6  **ORDER**

7  **I.   BAN ON NEGATIVE OPTION SALES**

8      **IT IS ORDERED** that Defaulting Defendant is permanently restrained and

9  enjoined from advertising, marketing, promoting, or offering for sale any good or

10  service with a Negative Option Feature, whether directly or through an

11  intermediary, including by consulting, planning, participating, facilitating, or

12  advising.

13  **II.   PROHIBITED BUSINESS ACTIVITY**

14      **IT IS FURTHER ORDERED** that Defaulting Defendant, Defaulting

15  Defendant's officers, agents, employees, and attorneys, and all other persons in

16  active concert or participation with any of them, who receive actual notice of this

17  Order, whether acting directly or indirectly, in connection with promoting or

18  offering for sale any good or service, are permanently restrained and enjoined

19  from:

20  A.    Before a customer consents to pay for such good or service, failing to

disclose, or assisting others in failing to disclose, in a clear and conspicuous manner all material terms and conditions of any offer, including:

1. The amount, timing, and manner of all fees, charges, or other amounts that a consumer will be charged or billed, including but not limited to the date of the charge and whether it will be a credit card charge or checking account debit;

2. The dates that any limited time sales offer begins and ends;

3. The identity of the seller, including the seller's name, physical address, and customer service telephone number;

4. The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer; and

5. Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer.

B. Before a customer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose, in a clear and conspicuous manner all material terms and conditions of any refund or cancellation policies, including:

1. The specific steps and means by which such requests must be submitted;

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

2.     The customer service telephone number that a customer must call to cancel or return goods or services;

3.     The email address, web address, or street address to which such requests must be directed;

4.     Any mechanism that customers must use to return any goods or services, including any requirement for specific tracking methods or delivery confirmation for a package;

5.     If there is any policy of not making refunds or cancellations, including any requirement that a product will not be accepted for return or refund unless it is unopened and in re-sellable condition, a statement regarding this policy; and

6.     The date by which a customer is required to request a refund;

C.     Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any fact material, including:

1.     That a good or service is free, a bonus, a gift, a trial, without cost;

2.     That a good or service is available for a minimal processing, service, or administrative fee or without further obligation;

3.     That a purchase is "risk free" or offered with a satisfaction guarantee or money-back guarantee;

4.      That the seller is accredited or rated favorably by the Better Business Bureau;

5.      A seller's affiliation with, or endorsement or sponsorship by, any person or entity;

6.      The amount that a consumer's credit or debit card will be charged and the timing of the charge(s);

7.      That a transaction has been authorized by a consumer;

8.      The dates that any limited time sales offer begins and ends;

9.      The requirements or terms of the seller's refund or cancellation policies;

10.     The identity of the seller, including the seller's name, physical address, and customer service telephone number;

11.     The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;

12.     Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer; and

13.     Any material aspect of the performance, efficacy, nature, or central characteristics of a good or service.

1   D.      Providing false information to any bank or other billing entity, directly or

2   indirectly, to contest a consumer's request for a refund, cancellation, chargeback,

3   or reversal of payment;

4   E.      Failing to obtain a consumer's express informed consent by causing billing

5   information to be submitted for payment, or collecting or attempting to collect

6   payment for goods or services without the consumer's express verifiable

7   authorization, which shall include: (a) the customer's signature, including an

8   electronic or digital form of signature that is recognized as a valid signature under

9   federal law; or (b) express oral authorization that is audio-recorded and made

10  available to the customer and the customer's bank or other billing entity and that

11  evidences clearly both the customer's authorization of payment and the

12  customer's receipt of the following information: (i) The number of debits,

13  charges, or payments (if more than one); (ii) the date(s) the debit(s), charge(s), or

14  payment(s) will be submitted for payment; (iii) the amounts of the debit(s),

15  charge(s), or payment(s); (iv) the customer's name; (v) the customer's billing

16  information identified with sufficient specificity such that the customer

17  understands what account will be used to collect payment; (vi) identification of

18  the seller's name, physical address, and telephone number; (vii) the date of the

19  customer's oral authorization;

20

**[PROPOSED] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

F.     Failing to obtain written authorization signed or similarly authenticated from consumers for Preauthorized Electronic Fund Transfers from the consumer's account; or

G.     Failing to provide a copy of a written authorization signed or similarly authenticated by a consumer for Preauthorized Electronic Fund Transfers from the consumer's account.

## III.     PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

**IT IS FURTHER ORDERED** that Defaulting Defendant, Defaulting Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from Credit Card Laundering.

## IV.     MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.     Judgment in the amount of **SEVENTY-TWO MILLION SIX HUNDRED AND NINETY-TWO THOUSAND EIGHT HUNDRED AND TWELVE Dollars ($72,692,812)** is entered in favor of the Commission against Defaulting Defendant, jointly and severally, as equitable monetary relief.

B.     Defaulting Defendant is ordered to pay to the Commission the amount of

**SEVENTY-TWO MILLION SIX HUNDRED AND NINETY-TWO**

**THOUSAND EIGHT HUNDRED AND TWELVE Dollars ($72,692,812)**,

within 7 days of entry of this Order.

## V.     ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.     Within 7 days of entry of this Order, Defaulting Defendant must submit his

Taxpayer Identification Numbers (Social Security Numbers or Employer

Identification Numbers) to the Commission, for use in collecting and reporting on

any delinquent amount arising out of this Order, in accordance with 31 U.S.C.

§7701.

B.     All money paid to the Commission pursuant to this Order may be deposited

into a fund administered by the Commission or its designee to be used for

equitable relief, including consumer redress and any attendant expenses for the

administration of any redress fund.  If a representative of the Commission decides

that direct redress to consumers is wholly or partially impracticable or money

remains after redress is completed, the Commission may apply any remaining

money for such other equitable relief (including consumer information remedies)

as it determines to be reasonably related to Defendants' practices alleged in the

Amended Complaint.  Any money not used for such equitable relief is to be

deposited to the U.S. Treasury as disgorgement.  Defaulting Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

C.      Any asset freeze is modified to permit the payments/transfers identified in the Monetary Judgment Section.  Upon completion of those payments, the asset freeze is dissolved as to Defaulting Defendant.

## VI.    CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defaulting Defendant, Defaulting Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly:

A.      Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Defaulting Defendant must provide it, in the form prescribed by the Commission, within 14 days.

B.      Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a consumer's account

1  (including a credit card, bank account, or other financial account), that

2  Defaulting Defendant obtained prior to entry of this Order in connection with the

3  sale of any product through a negative option continuity plan; and

4  C.      Failing to destroy such customer information in all forms in Defaulting

5  Defendant's possession, custody, or control within 10 days after entry of this

6  Order.

7         Provided, however, that customer information need not be disposed of, and

8  may be disclosed, to the extent requested by a government agency or required by

9  law, regulation, or court order.

10        **VII.    TURNOVER OF ASSETS HELD BY THIRD PARTIES**

11        **IT IS FURTHER ORDERED** that any financial institution, business

12  entity, or person that holds, controls, or maintains custody of any account or asset

13  of Defaulting Defendant, or any account or asset held on behalf of, or for the

14  benefit of, Defaulting Defendant, shall turn over such account or asset to the

15  Commission, by wire transfer pursuant to directions provided by counsel for the

16  Commission, or as otherwise directed in writing by counsel for the Commission,

17  within 7 days of receiving a request by the Commission by any means, including,

18  but not limited to, via facsimile.

19

20

# VIII.   ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defaulting Defendant obtain acknowledgments of receipt of this Order:

A.     Defaulting Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 20 years after entry of this Order, Defaulting Defendant, for any business that he, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which each Defaulting Defendant delivered a copy of this Order, Defaulting Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

# IX.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defaulting Defendant make timely submissions to the Commission:

A.     One year after entry of this Order, Defaulting Defendant must submit a compliance report, sworn under penalty of perjury:

1.     Defaulting Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defaulting Defendant; (b) identify all of Defaulting Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant which Defaulting Defendant must describe if he knows or should know due to his own involvement; (d) describe in detail whether and how Defaulting Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, Defaulting Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which

Defaulting Defendant performs services whether as an employee or otherwise and any entity in which Defaulting Defendant has any ownership interest; and (c) describe in detail Defaulting Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 20 years after entry of this Order, Defaulting Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Defaulting Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any entity that Defaulting Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, Defaulting Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Defaulting Defendant performs services whether as an employee or otherwise and any entity in which Defaulting Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Defaulting Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defaulting Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  *FTC v. BunZai Media Group, Inc*., et al. FTC File No. X150047.

## X.     RECORDKEEPING

**IT IS FURTHER ORDERED** that Defaulting Defendant must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, Defaulting Defendant for any business that Defaulting

Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      A copy of each unique advertisement or other marketing material, including Internet and social media advertising or webpages.

## XI.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defaulting Defendant's compliance with this Order, including any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, Defaulting Defendant must:  submit additional compliance reports

or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Defaulting Defendant. Defaulting Defendant must permit representatives of the Commission to interview any employee or other person affiliated with Defaulting Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defaulting Defendant or any individual or entity affiliated with Defaulting Defendant, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XII.    CONSUMER REPORTING AGENCIES

Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Defaulting

Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

### XIII.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this \_\_\_ day of _____, 2016.**

_____
**UNITED STATES DISTRICT JUDGE**